JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Benjamin Thomson
250 Vesey Street
New York, New York 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306

*Proposed Counsel for Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF | : | Case No. 20-12345 |
| ROCKVILLE CENTRE, NEW YORK,[1] | : | |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE
DEBTOR TO (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, BENEFITS
AND OTHER RELATED ITEMS; (II) REIMBURSE PREPETITION EMPLOYEE
BUSINESS EXPENSES; (III) CONTINUE EMPLOYEE BENEFIT PROGRAMS; AND
(IV) PAY ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING**

The above-captioned debtor and debtor-in-possession ("Debtor") moves the Court

(this "Motion"), pursuant to sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d) of

title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of interim and

final orders, in substantially the forms attached as Exhibit A (the "Proposed Interim Order") and

Exhibit B (the "Proposed Final Order"), respectively:  (a) authorizing, but not directing, the

---

[1]     The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last
four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park
Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

Debtor to pay and honor, in the ordinary course of business, claims and obligations related to

(i) Prepetition Employee Compensation and Prepetition Deductions (each as defined herein),

(ii) unreimbursed and unpaid prepetition Business Expenses (as defined herein), and (iii) all

prepetition costs and expenses incident to the foregoing payments and contributions, including

payroll-related taxes and processing and administrative costs (items (i) through (iii) collectively,

the "Employee Obligations"); (b) authorizing, but not directing, the Debtor to continue to

provide administrative support for and participate in certain employee benefits programs; (c)

authorizing, but not directing, the Debtor to continue to act as collection and paying agent for

certain employee benefits programs shared with participating non-debtor employers; and (d)

granting related relief.  In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.      General Background

2.      On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate and pursue its

religious, non-profit mission and ministry, and manage its properties and affairs as a debtor in

possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has

been appointed in this case, and no statutory committee has been appointed.

3.      The Debtor is the seat of the Roman Catholic Church on Long Island.  The State

of New York established the Debtor as a religious corporation in 1958.  See 1958 N.Y. SESS.

LAWS Ch. 70 (1958), § 1.  The Debtor is one of eight Catholic dioceses in New York and is the

eighth-largest diocese in the United States when measured by the number of baptized Catholics. The Debtor's total Catholic population is approximately 1.4 million, which constitutes roughly half of Long Island's total population of 3.0 million. Pursuit of the Debtor's mission depends upon the continuing financial support provided by the faithful in anticipation of, and in mutual support of, the Debtor's religious and charitable mission.

4.      To carry out its Catholic mission, the Debtor works closely with its 135 parishes. Parishes play a central role in the lives of Catholics by administering key aspects of the Catholic Faith, including: baptism, education, communion, Mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support. None of the parishes are debtors herein. In addition, the Debtor supports separate charitable organizations to further its pursuit of the Catholic mission to serve the poor, the hungry, those in need, and those that cannot help themselves. None of those entities are debtors herein. The Debtor is also continuing its outreach to comfort, educate, and enlighten the faithful, especially in these times of quarantine and isolation due to COVID-19 protocols and precautions.

5.      Following the enactment in 2019 of the Child Victims Act ( the "CVA"), which revived what had been time-barred claims, approximately 200 lawsuits have been brought by abuse claimants against the Debtor. In its effort to fairly and equitably address this tragic legacy, the Debtor has undertaken a substantial effort to identify and marshal over 60 years of insurance policies, including both primary and excess coverage, with the goal of securing a valuable resource of the Debtor, its parishes, and its affiliates, so that it can be used for the care and compensation of abuse survivors. The Debtor has made such insurance policies and related information, together with historical financial information for itself and its charitable,

educational, and service affiliates, available to counsel for the abuse claimants and the Debtor's insurers.

6.      Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in *the Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11 Petition and First Day Pleadings* filed on the Petition Date.

**B.      Overview of the Debtor's Workforce**

7.      As of the Petition Date, the Debtor employed approximately 160 full-time and 28 part-time employees (each an "Employee" and collectively, the "Employees"), including members of clergy.  Approximately 61 of the Employees are non-exempt employees and approximately 127 are exempt employees.  In addition, the Debtor also utilizes the services of certain independent contractors and temporary employees (collectively, the "Contractors").

8.      In the summer of 2020, the Debtor undertook a series of cost-savings measures focused on its internal organization.  Among these measures were a reorganization of certain departments and headcount reductions, which reduced the size of the Debtor's workforce by 17 employees.  The Debtor anticipates that these actions, along with other cost savings measures, will result in approximately $5 million in annual savings, of which approximately $1.2 million is related to headcount reductions.  As a result of the headcount reductions, the Debtor estimates that it incurred approximately $203,000 in potential state and federal unemployment insurance obligations (the "Unemployment Obligations"), depending on the length of time the impacted individuals remain unemployed.

9.      The Employees and Contractors perform a variety of critical functions for the Debtor, including administration of programs essential to the Debtor's charitable, religious and

educational mission and a variety of services related to finance, legal, corporate governance and

human resources.  The Employees and Contractors also provide administrative services to

affiliates of the Debtor in exchange for reimbursements pursuant to administrative services

agreements.  The Employees' and Contractors' skills, along with their knowledge and

understanding of the Debtor's operations and infrastructure are essential to the effective

operation of the Debtor's ministry.  Disruption of the Employees' and Contractors' continued

services would jeopardize the Debtor's efforts to reorganize.

10.    Any interruption in payment of the Employee Obligations will impose additional

hardship on Employees and Contractors and is certain to jeopardize their continued performance

during this critical time.  As of the Petition Date, many Employees and Contractors may be owed

or have accrued various sums for wages, salaries, various employee benefits, contractual

compensation and other accrued compensation and related costs and expenses (collectively, the

"Prepetition Employee Compensation"), unreimbursed and unpaid prepetition Business

Expenses (collectively, the "Prepetition Business Expenses") and certain payroll deductions as

described below.

### C.    Compensation and Prepetition Deductions

11.    The Debtor pays the Employees' wages semimonthly.  The Employees accrue

additional compensation through the Benefits Programs described below.  The Debtor estimates

that its Employee compensation costs total approximately $1.3 million per month.

12.    The compensation for the Employees hired on or after July 1, 2009 is paid

semimonthly on a two week delay.  The compensation for the Employees hired before that date

is paid on a current basis, meaning that their semimonthly pay includes accrued compensation up

to and including the date of the payroll issuance.  The Debtor makes employer contributions

earned by the Employees to the various Benefits Programs monthly at the same times as the

second payroll payment of each month.  The Debtor makes certain deductions from the
Employees' paychecks for the purpose of (a) making payments on behalf of the Employees in
connection with, among other things, the Benefit Programs; (b) garnishing Employee wages
pursuant to court orders, including for tax levies, child support obligations and spousal support
obligations; and (c) remitting, on the Employees' behalf, various federal, state, or local income,
Social Security, Medicare/Medicaid, and other taxes to the appropriate taxing authority ((a)
through (c), collectively, the "Prepetition Deductions").  The Debtor must then match the
withheld amounts from its own funds for Social Security and Medicare taxes and pay, based on a
percentage of gross payroll, additional amounts for federal and state unemployment insurance
(collectively, the "Employer Payroll Taxes").  The Debtor also makes payments to Contractors
and staffing agencies on account of their Contractors for the Contractors' services.

13.    By this Motion, the Debtor is requesting authority to pay all of the Prepetition
Employee Compensation and Prepetition Deductions, which the Debtor estimates total $884,000
and $77,000, respectively, as of the Petition Date.  Of these amounts, the Debtor estimates that
$36,000 of Prepetition Employee Compensation and $4,000 of Prepetition Deductions are
attributable to insiders of the Debtor.  The Debtor believes that the amount of Prepetition
Employee Compensation owing to or on account of any particular Employee will not exceed
$13,650, the amount allowable as a priority claim under section 507(a)(4) or section 507(a)(5) of
the Bankruptcy Code.

D.    **Business Expenses**

14.    In the ordinary course of its business, the Debtor reimburses Employees and
Contractors for certain reasonable and customary expenses necessarily incurred in the scope of
their service to the Debtor (collectively, the "Business Expenses").  Reimbursement for work
travel, including prison ministry and other field ministry programs, comprise the majority of the

-6-

Business Expenses.  To obtain reimbursement of Business Expenses, an Employee or Contractor is required to submit receipts in an electronic expense report for approval through accounts payable.  In addition, the Debtor has arrangements with a number of financial institutions to issue corporate credit cards to Employees for Business Expenses.  These credit card arrangements are described further in *the Debtor's Motion for Entry of Interim and Final Orders (i) Authorizing the Continued Use of the Debtor's Cash Management System, Bank Accounts and Business Forms and (ii) Granting Related Relief.*  Employees and Contractors are similarly required to submit expense reports and obtain approval for Business Expenses paid with the corporate credit cards.

15.      The Debtor's reimbursement of such ordinary course expenses is critical to the maintenance of employee morale, the efficient operation of the Debtor's business, and thus the preservation of the Debtor's chapter 11 estate on a postpetition basis.

16.      In the aggregate, the Debtor's Employees and Contactors incur, on average, approximately $33,000 per month in Business Expenses.  Although the Debtor requests that the Employees and Contractors submit reimbursement requests promptly, there is inevitably some lag time between the incurrence of a Business Expense and processing the Debtor's reimbursement thereof.  Based on historical figures, the Debtor estimates that it owes approximately $49,000 on account of Prepetition Business Expenses.  By this Motion, the Debtor is requesting authority to pay all Prepetition Business Expenses in the ordinary course of its business.

## E.      The Benefit Programs

17.      The Debtor provides administrative support for and participates in plans (the "Main Benefit Plans") providing retirement, health and welfare benefits for its Employees and the employees of other participating employers (the "Participating Employers").  The five Main

Benefit Plans are (each as defined herein):  (a) the Priests' Pension Plan; (b) Priests' Benefits

Plan; (c) Employees' Pension Plan; (d) 403(b) Employees' Retirement Plan; and (e) Employees'

Benefits Program.  The Main Benefit Plans are each funded by separate trusts for the benefit of

their participants.[2]  The Debtor acts as contribution agent for the Main Benefit Plans, collecting

contributions from all Participating Employers and remitting them to the plan trusts or paying

plan-specific administrative expenses.  The Debtor maintains five segregated bank accounts for

this purpose (the "Contribution Agent Accounts"), one for each Sponsored Plan, in order to

ensure that contributions from participants are not comingled with contributions to other Main

Benefit Plans or funds of the Debtor.  The Debtor also acts as paying agent for the Employees'

Benefits Program, receiving funds from the Employees' Benefits Program trust and using those

funds to pay for covered benefits.  The Debtor maintains a segregated bank account for this

purpose (the "Paying Agent Account" and, collectively with the Contribution Agent Accounts,

the "Agent Accounts").  The Debtor is seeking authority to (a) remit any prepetition amounts

held in the Agent Accounts to Main Benefit Plans or for payment of covered benefits or the

payment of plan-specific administrative expenses, as applicable, and (b) continue to provide

administrative support for the Main Benefit Plans on a postpetition basis, including by receiving

funds into and remitting such funds out of the Agent Accounts, in the ordinary course of

business.

18.     The Debtor maintains various other benefit programs for its Employees

(collectively with the Main Benefit Plans, the "Benefit Programs"), including the following:

(a) health, dental, life and disability insurance benefits provided under the Main Benefit Plans;

---

[2]      The 403(b) Employees' Retirement Plan is funded by custodial accounts and annuity contracts held by an
insurance company, which are in the nature of trusts, but not technically trusts.  For ease of reference, these
funding vehicles will be referred to herein as "trusts" along with the other trusts funding plans.

(b) COBRA benefits; (c) paid time off; (d) severance; (e) housing for priests; and (d) various other benefits.

19.      Prepetition Employee Compensation owed as benefits through certain Benefit Programs requires payment by the Debtor, and may be unpaid as of the Petition Date, because such payment obligations (a) accrued either in whole or in part prior to the Petition Date but (b) were not payable in the ordinary course of the Debtor's business until after the Petition Date.  As set forth in greater detail below, the Debtor estimates that it owes an aggregate of approximately $563,000 for accrued but unpaid obligations on account of the Benefits Programs as of the Petition Date.  The Debtor is requesting authority to honor certain of its obligations under the Benefit Programs (including paying prepetition amounts) and to continue certain Benefit Programs on a postpetition basis in the ordinary course of business.

20.      Priests' Pension Plan.  The Diocese of Rockville Centre Qualified Retirement Plan for Diocesan Priests (the "Priests' Pension Plan") is a defined benefit retirement plan that provides for the basic income  needs of priests in old age, as well as certain housing benefits for these priests.  The Priests' Pension Plan is tax-qualified under section 401(a) of the Internal Revenue Code (the "Tax Code") and maintains a separate trust that is tax-qualified under section 501(a) of the Tax Code.  All priests incardinated in the Diocese or on official assignment within the Diocese are eligible to participate in the Priests' Pension Plan.  Contributions to the Priests' Pension Plan are made by the Debtor for priests who are Employees and by the Participating Employers for other priests.  The Debtor acts as a contribution agent for the Priests' Pension Plan, collecting contributions from all participants into a segregated bank account used only for this purpose and remitting those collections to the Priests' Pension Plan.  Priests are eligible to

receive benefits under the plan after reaching age 72 and having at least 10 years of service.  The

plan also provides benefits for priests who become disabled prior to the normal age of retirement.

21.    The Debtor contributes approximately $26,000 per month to the Priests' Pension

Plan as an element of the total compensation of priests who are Employees.  This represents

approximately 15.7% of the total contributions to the Priests' Pension Plan by the Debtor and

Participating Employers.  The Debtor estimates that, as of the Petition Date, it owes $31,000 in

Prepetition Employee Compensation on account of the Priests' Pension Plan.  By this Motion,

the Debtor seeks authority, but not direction, to (a) pay any accrued and unpaid amounts in

respect of the Priests' Pension Plan that are Prepetition Employee Compensation and (b)

continue to provide administrative support for the Priests' Pension Plan for its Employees and

employees of Participating Employers, including by collecting funds on behalf of participants

into a Collection Agent Account and remitting those funds to the Priests' Pension Plan, on a

postpetition basis in the ordinary course of business, consistent with past practice.

22.    <u>Priests' Benefits Plan</u>.  The Diocese of Rockville Centre Health Care and Other

Assistance Plan for Retired and Disabled Diocesan Priests (the "<u>Priests' Benefits Plan</u>") is a

program to provide for health benefits and other assistance to retired and disabled priests.  The

Priests' Benefits Plan is funded with a separate trust that provides benefits including, but not

limited to, medical, dental, life insurance, automobile insurance, supplemental disability, housing

and annual retreat and education reimbursement.  Contributions to the Priests' Benefits Plan are

made by the Debtor for priests who are Employees and by the Participating Employers for other

priests.  The Debtor acts a contribution agent for the Priests' Benefits Plan, collecting

contributions from all participants into a segregated bank account used only for this purpose and

remitting those collections to the Priests' Benefits Plan. The eligibility criteria to receive

benefits in the Priests' Benefits Plan mirrors those of the Priests' Pension Plan.

23.    The Debtor pays approximately $20,000 per month on account of the Priests'

Benefits Plan as an element of the total compensation of priests who are Employees. This

represents approximately 15.7% of the total contributions to the Priests' Benefits Plan by the

Debtor and Participating Employers. The Debtor estimates that, as of the Petition Date, it owes

$23,000 in Prepetition Employee Compensation on account of the Priests' Benefits Plan. By this

Motion, the Debtor seeks authority, but not direction, to (a) pay any accrued and unpaid amounts

in respect of the Priests' Benefits Plan that are Prepetition Employee Compensation and (b)

continue to provide administrative support for the Priests' Benefits Plan for its Employees and

employees of Participating Employers, including by collecting funds on behalf of participants

into a Collection Agent Account and remitting those funds to the Priests' Benefits Plan, on a

postpetition basis in the ordinary course of business, consistent with past practice.

24.    <u>Employee Retirement Plans</u>. The Diocese of Rockville Centre Pension Plan (the

"<u>Employees' Pension Plan</u>") is a Tax Code section 401(a) tax-qualified, separate trust that

provides a defined benefit retirement plan for lay Employees of the Debtor as an employer and

employees of Participating Employers. The Debtor acts a contribution agent for the Employees'

Pension Plan, collecting contributions from all participants into a segregated bank account used

only for this purpose and remitting those collections to the trust.

25.    In 2015, the Employees' Pension Plan froze accruals for Employees with under

30 years of service. For those Employees, the Employees' Pension Plan was replaced by the

Diocese of Rockville Centre 403(b) Employees' Retirement Plan (the "<u>403(b) Employees'</u>

<u>Retirement Plan</u>"), a Tax Code section 403(b) tax-qualified, defined contribution retirement plan.

The 403(b) Employees' Retirement Plan is available to Employees of the Debtor and employees of Participating Employers. The Debtor acts as contribution agent for the 403(b) Employees' Retirement Plan, collecting contributions from all participants into a segregated bank account used only for this purpose and remitting those collections to the trust or paying plan-specific administrative expenses. Contributions to the 403(b) Employees' Retirement Plan are held in various annuity contracts and custodial accounts in the plan's name. The Debtor makes a contribution to the 403(b) Employees' Retirement Plan of 3% of a participating Employee's wages plus a dollar-for-dollar match of the Employee's individual contribution, up to a maximum of 1% of the Employee's wages.

26.     As an element of the total compensation of its Employees, the Debtor contributes approximately $59,000 per month to the Employees' Pension Plan and approximately $34,000 per month to the 403(b) Employees' Retirement Plan. These contributions represent approximately 0.7% and 3.4%, respectively, of the total contributions to these plans by the Debtor, participating employees and Participating Employers. The Debtor estimates that, as of the Petition Date, it owes $112,000 in Prepetition Employee Compensation on account of the Employees' Pension Plan and 403(b) Employees' Retirement Plan. By this Motion, the Debtor seeks authority, but not direction, to (a) pay any accrued and unpaid amounts in respect of the Employees' Pension Plan and 403(b) Employees' Retirement Plan that are Prepetition Employee Compensation and (b) continue to provide administrative support for the Employees' Pension Plan and the 403(b) Employees' Retirement Plan for its Employees and employees of Participating Employers, including by collecting funds on behalf of participants into the Collection Agent Accounts and remitting those funds to the Employees' Pension Plan and the

403(b) Employees' Retirement Plan and paying plan-specific administrative expenses, on a postpetition basis in the ordinary course of business, consistent with past practice.

27.   <u>Employees' Benefits Program</u>.  The Debtor provides administrative support for the Diocese of Rockville Centre Health and Welfare Benefits Program (the "<u>Employees' Benefits Program</u>").  The Employees' Benefits Program provides medical coverage, dental coverage, life insurance, disability insurance and similar welfare benefits for employees of the Debtor and employees of Participating Employers (including predominantly active lay employees but also active priests).  The Debtor acts a contribution agent for the Employees' Benefits Program, collecting contributions from all participants into a segregated bank account used only for this purpose and remitting those collections to the Employees' Benefits Program's trust.  The Debtor also acts as paying agent for the Employees' Benefits Program, receiving funds from the trust and using those funds to pay covered benefits.  The Debtor maintains a segregated bank account for this purpose.  Employees who are regularly scheduled to work 28 or more hours per week may participate in the Employees' Benefits Program.  Premiums contributed from employees and participating employers, as well as reimbursements from insurance companies for expenditures over the individual stop-loss cap, are held in trust for the plan.  This trust is tax-exempt under section 501(c)(3) of the Tax Code.

28.   The Debtor shares the cost of premiums and administrative expenses of the Employees' Benefits Program with participating Employees and Participating Employers.  The Debtor's share of such costs and expenses is approximately $190,000 per month, or approximately 6.3% of the total.  The Debtor estimates that, as of the Petition Date, it owes $228,000 in Prepetition Employee Compensation on account of the Employees' Benefits Program.  By this Motion, the Debtor seeks authority, but not direction, to (a) pay any accrued

-13-

and unpaid amounts in respect of the Employees' Benefits Program that are Prepetition

Employee Compensation and (b) continue to provide administrative support for the Employees'

Benefits Program for its Employees and employees of Participating Employers, including by

receiving and remitting funds into the Agent Accounts and paying plan benefits and plan-specific

administrative expenses out of the Agent Accounts, on a postpetition basis in the ordinary course

of business, consistent with past practice.

29.     Housing for Priests.  The Debtor provides a housing benefit (the "Housing

Benefit") for priests who are Employees of the Diocese to live in parish rectories.  The Housing

Benefit pays $500 per month for each participating priest, which is the monthly rent for a priest

living in a parish rectory.  The amount is paid directly to parishes on behalf of the participating

Employees.  The Debtor estimates that, as of the Petition Date, it owes $24,000 in Prepetition

Employee Compensation on account of the Housing Benefit for Employees.  By this motion, the

Debtor is seeking authorization, but not direction, to pay prepetition amounts owed on account of

the Housing Benefit and continue the Housing Benefit on a postpetition basis in the ordinary

course of business, consistent with past practice.

30.     Severance.  The Debtor maintains a severance program for all of its full-time

Employees.  Pursuant to the program, the Debtor provides Employees who are terminated in

certain covered circumstances with one weeks' pay for each full year of service, subject to a

minimum of four weeks' pay.  The Debtor estimates that it owes $4,300 in Prepetition Employee

Compensation on account of the severance program related to terminations that occurred prior to

the Petition Date.  By this Motion, the Debtor is seeking authorization, but not direction, to pay

prepetition amounts owed on account of the severance program and continue the severance

program on a postpetition basis in the ordinary course of business, consistent with past practice.

31.     COBRA.  Pursuant to New York's continuation coverage requirements (which are similar to the Consolidate Omnibus Budget Reconciliation Act of 1985 requirements), the Debtor offers eligible former employees and dependents the opportunity to elect to continue coverage under certain of the health plans maintained by the Debtor (the "COBRA Benefits"). Following eligible employee termination, such former employees are billed directly and are solely responsible for payment of premiums.

32.     As of the Petition Date, the Debtor does not believe that it owes any accrued and unpaid amounts in respect of the COBRA Benefits, apart from *de minimis* costs associated with the administration thereof.  By this Motion, the Debtor seeks to continue to pay the administrative costs associated with the COBRA Benefits on a postpetition basis in the ordinary course of business, consistent with past practice.

33.     Paid Time Off.  The Debtor provides certain Employees with various types of paid time off ( "Paid Time Off"), including (a) a number of paid vacation days (the "Vacation Days"), (b) paid holidays, and (c) paid personal and sick time (the "Sick Time").  The Vacation Days accrue each month and up to two years of unused Vacation Days may be rolled over from one calendar year to the next.  At the end of a calendar year, any unused Vacation Days in excess of this cap are automatically converted into Sick Time.  When an Employees retires or is terminated, the Debtor's policy is to pay that Employee for all accrued but unused Vacation Days.  Additionally, when an Employee retires, if that Employee has at least ten years of service and 60 or more days of accrued but unused Sick Time, the Debtor pays that Employee for half of their accrued Sick Time, up to a maximum of 30 days.  The Debtor estimates that, as of the Petition Date, the total value of the Paid Time Off accrued by Employees but not yet used is $1,629,000.

34.     By this Motion, the Debtor is seeking authorization, but not direction, to continue to honor Paid Time Off obligations, including obligations that accrued as of the Petition Date, on a postpetition basis, in the ordinary course of business, consistent with past practice, and, on a final basis only, to continue the prepetition policy of paying out unused Paid Time Off upon an Employee's termination consistent with the Debtor's past practices.  Any such payout to a terminated Employee of Paid Time Off accrued prepetition would be limited to the amount would constitute an allowed priority claim under section 507(a)(4) of the Bankruptcy Code.

35.     <u>Training for Clergy</u>.  The Debtor is responsible for the formation of clergy, which it accomplishes in part through educational sponsorship of seminarians studying to become priests, individuals studying to become deacons and continuing education for priests and deacons.  Providing for the training of priests and deacons is critical to the Debtor's ability to continue its mission.  This sponsorship includes the payment of tuition, and, in some cases, room and board (the "<u>Tuition Payments</u>").  As of the Petition Date, there were approximately 30 seminarians studying at a number of universities under the sponsorship of the Diocese, along with smaller numbers of priests, deacons and individuals studying to become deacons.  The Debtor estimates that, as of the Petition Date, it owes approximately $164,000 on account of Tuition Payments.  The vast majority of this amount represents payments invoiced, but not yet due, for the Fall 2020 semester, which is in progress as of the Petition Date.  If the Tuition Payments are not made, the seminarians and others may be unable to continue attending classes. The Debtor expects that the Tuition Payments for the Spring 2021 semester will total approximately $450,000.  By this Motion, the Debtor seeks to pay prepetition Tuition Payments and to continue to pay postpetition Tuition Payments in the ordinary course of business, consistent with past practice.

36.     <u>Benefits for Diocesan Priests</u>.  The Debtor provides other benefits to clergy assigned within the territory of the Debtor, including treatment for addiction, including stays at an outpatient treatment center, and sponsorship of sabbaticals.  As of the Petition Dater, there were no clergy in addiction treatment centers sponsored by the Debtor and no clergy on sabbatical sponsored by the Debtor.  By this Motion, the Debtor seeks to continue to offer these benefits in the ordinary course of business, consistent with past practice.

### F.     Costs and Expenses Incident to the Foregoing

37.     The Debtor accrues certain costs and expenses (the "<u>Payroll Costs</u>") attendant to its compensation and benefit programs, including (a) payments to ADP, Inc., which provides payroll and other services, (b) payments to its insurance providers, (c) the Employer Payroll Taxes, including the Unemployment Obligations, and (d) other charges for administration of the Prepetition Employee Compensation, Prepetition Deductions and Benefit Programs.  The Debtor's payments to ADP, Inc. include payroll processing costs for itself and participants in the Main Benefit Plans.  The Main Benefit Plans, in turn, reimburse approximately 73% of this processing cost.  By having all participants in the Main Benefit Plans use a single payroll provider, the Debtor's costs of administering the Main Benefit Plans are reduced.  If participants in the Main Benefit Plans were to use different payroll processors, administration would be impractical.  The Debtor estimates that there are approximately $170,000 of Employer Payroll Taxes, excluding the Unemployment Obligations, that were accrued but unpaid as of the Petition Date.  The Unemployment Obligations are payable over a period of up to 26 weeks, and the total amount of such obligations depends on the length of time impacted individuals remain unemployed.

38.     The Debtor estimates that the aggregate amount of Payroll Costs accrued but unpaid as of Petition Date (the "<u>Prepetition Payroll Costs</u>"), is approximately $183,000 plus up

to $203,000 in Unemployment Obligations.  Payment of the Prepetition Payroll Costs is

necessary because the failure to pay any such amounts might disrupt services provided by

third-party providers with respect to payment of Employee compensation, deductions related to

the same and Benefit Programs.  By paying the Prepetition Payroll Costs, the Debtor seeks to

avoid any disruptions of such services and thereby ensure that its Employees obtain all

compensation and benefits without interruption.  Accordingly, the Debtor seeks authorization to

pay all Prepetition Payroll Costs on a postpetition basis in the ordinary course of business.

## RELIEF REQUESTED

39.     The Debtor requests entry of interim and final orders, substantially in the forms of

the Proposed Interim Order and Proposed Final Order, authorizing, but not directing it to (a) pay

the Employee Obligations, (b) pay Prepetition Payroll Costs (c) remit any amounts held in the

Agent Accounts on behalf of participants in the Main Benefit Plans to the Main Benefit Plans for

which such amounts were collected or for payment of covered benefits, as applicable, and

(d) continue to offer certain Benefits Programs and provide administrative support for the Main

Benefit Plans for its Employees and the Employees of Participating Employers.  The Debtor

estimates that as of the Petition Date, it owes approximately $1,584,000 for such amounts. The

Debtor also requests that all applicable banks and other financial institutions receive, process,

honor and pay all related checks and electronic payment requests, whether such checks or

electronic payment requests were presented before or after the Petition Date, provided that

sufficient funds are on deposit in the applicable accounts, relating to the Employee Obligations.

Finally, the Debtor requests that the Proposed Order be enforceable immediately upon entry.

## BASIS FOR RELIEF

40.     It is in the best interest of the Debtor's estate that all of the Employee Obligations

and Prepetition Payroll Costs be satisfied in full.  It is also in the best interest of the Debtor's

-18-

estate that it be allowed to maintain certain of its Benefit Programs and continue to provide

administrative support for the Main Benefit Plans in the ordinary course of business.  The

Court's authority to approve the satisfaction of prepetition obligations is based on the

Bankruptcy Code and the common law "doctrine of necessity."  The Court's authority to permit

the Debtor to maintain certain of its Benefit Programs is based on section 363(c) of the

Bankruptcy Code and the "doctrine of necessity."

  **A.**  **Numerous Sections of the Bankruptcy Code and the
Doctrine of Necessity Permit the Debtor to Preserve
<u>the Value of the Estate by Satisfying the Employee Obligations</u>**

  41.  At least five Bankruptcy Code provisions support the satisfaction of the Employee

Obligations and the other prepetition amounts requested herein:  (a) under section 507(a)(4),

prepetition claims for "wages, salaries, or commissions, including vacation, severance, and sick

leave pay earned by an individual" are entitled to priority claim status, (b) under section

507(a)(5), unsecured claims for contributions to an employee benefit plan are entitled to priority

claim status if certain conditions are met, (c) under section 541(d), property of the estate includes

only property for which the debtor holds "legal title and not an equitable interest," (d) section

105(a) permits a court to "issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title" and (e) section 363(b)(1) provides that after notice and a

hearing, and based on a "sound business purpose," a debtor may "use, sell, or lease, other than in

the ordinary course of business, property of the estate." *See Official Comm. of Unsecured

Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143

(2d Cir. 1992) (describing rule that "requires that a judge determining a § 363(b) application

expressly find from the evidence presented before him at the hearing a good business reason to

grant such an application.") (internal quotations and citation omitted); *In re Nine W. Holdings,

Inc.*, 588 B.R. 678, 686 (Bankr. S.D.N.Y. 2018) (finding that a debtor has broad discretion to

"use, sale, or lease, other than in the ordinary course of business" pursuant to section 363(b)(1),

"so long as such use is supported by a good business reason."); *In re MF Glob. Ltd.*, 535 B.R.

596, 605 (Bankr. S.D.N.Y. 2015) ("In approving a transaction conducted pursuant to section

363(b)(1), courts consider whether the trustee exercised sound business judgment."); *In re Ashley

River Consulting, LLC*, 2015 Bankr. LEXIS 2268, at **23-24 (Bankr. S.D.N.Y. July 10, 2015)

(in approving transactions pursuant to section 363(b)(1), "courts consider whether the trustee

exercised sound business judgment.") (internal citations omitted); *In re Decora Indus.,* 2002 U.S.

Dist. LEXIS 27031, at **7-8 (D. Del. May 20, 2002) (a debtor satisfies the requirements of

§ 363(b)(1) through the "sound exercise of business judgment").

### 1.   Employee Wages and Related Costs are Entitled to Priority Status under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code

42.     Claims for Prepetition Employee Compensation are entitled to priority treatment.

Specifically, section 507(a)(4) of the Bankruptcy Code provides that employees holding

prepetition claims for "wages, salaries, or commissions, including vacation, severance, and sick

leave pay earned" within 180 days before the petition date are entitled to priority claim status up

to an allowed amount of $13,650 on account of such claim.  *See* 11 U.S.C. § 507(a)(4)(A).

Similarly, section 507(a)(5) of the Bankruptcy Code provides that employees are granted a

priority claim for "contributions to an employee benefit plan arising from services rendered

within 180 days before the" petition date.  *See* 11 U.S.C. § 507(a)(5)(A).  These claims are

similarly subject to a cap equal to "(i) the number of employees covered by each such plan

multiplied by $13,650; less (ii) the aggregate amount paid to such employees under

section 507(a)(4), plus the aggregate amount paid by the estate on behalf of such employees to

any other employee benefit plan."  11 U.S.C. § 507(a)(5)(B).

43.     In addition, the Prepetition Payroll Costs are also entitled to priority treatment

under section 507(a)(5).  *See Allegheny Int'l, Inc. v. Metropolitan Life Ins. Co.*, 145 B.R. 820,

822-23 (W.D. Pa. 1992) (explaining that "[i]t would be useless to prioritize expenses for

contributions to an employee benefit plan and not prioritize the expenses necessary to administer

those plans"); *In re Garden Ridge Corp.*, No. 04-10324 (KJC), 2006 Bankr. Lexis 278, at *6

(Bankr. D. Del. Mar. 2, 2006) (noting that "[w]age priority has been a feature of the bankruptcy

laws since 1898 [and that] '[i]ts purpose is to alleviate hardship on workers . . .' who may have

no other source of income and 'to encourage employees to stand by an employer in financial

difficulty.'") (citing 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 507.05[1]

(15th ed. 2005)).

44.     The Debtor believes that the amount of prepetition wages and salaries owing to or

on account of any particular Employee will not exceed $13,650, the amount allowable as a

priority claim under section 507(a)(4) or section 507(a)(5) of the Bankruptcy Code.  The Debtor

is required to pay such priority claims in full in order to confirm a chapter 11 plan of

reorganization.  *See* 11 U.S.C. § 1129(a)(9)(B).  Accordingly, granting the relief sought herein

should only affect the timing of payments to Employees and should not negatively impact any

recoveries on general unsecured claims.

## 2.      Prepetition Deductions are Held by the Debtor are not Property of the Estate

45.     Sections 541(b)(7) and 541(d) of the Bankruptcy Code provide ground for

granting the relief requested with respect to certain Prepetition Deductions.  Based upon these

Bankruptcy Code provisions, many amounts withheld or deducted by a debtor from employee

paychecks are not available for general distribution to a debtor's creditors because they are not

property of the estate, either by Bankruptcy Code definition or a trust fund theory.

-21-

46.   Section 541(b)(7) expressly addresses this issue, providing that the following are

excluded from the definition of property of the estate:

> any amount—
>
> (A) withheld by an employer from the wages of employees for payment as contributions—
>
>> (i) to — (I) an employee benefit plan that is subject to [ERISA] or … a governmental plan …; (II) a deferred compensation plan…; or (III) a tax-deferred annuity…
>>
>> or
>>
>> (ii) to a health insurance plan regulated by State law …
>
> (B) received by an employer from employees for payment as contributions—
>
>> (i) to — (I) an employee benefit plan that is subject to [ERISA] or … a governmental plan …; (II) a deferred compensation plan…; or (III) a tax-deferred annuity…
>>
>> or
>>
>> (ii) to a health insurance plan regulated by State law …

11 U.S.C. § 541(b)(7).  Thus, by the express terms of the Bankruptcy Code, certain of the

Prepetition Deductions made to Employee paychecks by the Debtor are not property of the

estate, despite the fact that such amounts may be held by the Debtor in its bank accounts.

47.   Section 541(d) provides that "property in which the debtor holds, as of the

commencement of the case, only legal title and not an equitable interest" becomes property of a

debtor's estate only to the extent of the debtor's legal title therein.  11 U.S.C. § 541(d).  It is well

established in this district that "property a debtor holds in trust for another is not property of the

estate" within the meaning of section 541 of the Bankruptcy Code.  *Golden v. The Guardian (In

re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); *see also In re Columbia Gas

Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property that a debtor holds in

express or constructive trust for another does not become property of the estate when the debtor

files for bankruptcy); *EBS Pension LLC v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231, 235 (Bankr. D. Del. 2000) (same).

48.     More specifically, it is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities do not constitute property of the estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also In re Calabrese*, 689 F.3d 312, 321 (3d Cir. 2012) (finding that third-party sales taxes collected by a retailer "resemble trust fund taxes" and never become "property of the estate" but "are merely held by the debtor on behalf of the party that owes the tax . . ."); *Old Rep. Nat'l Tile Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 98-99 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

49.     Many of the Prepetition Deductions are either wage withholdings described in section 541(b)(7) or held by the debtor in trust for various taxing authorities and are, thus, not property of the estate.  Failure to pay could lead to costly litigation or reduced employee morale. As such, payment is in the best interests of the estate.  Because these amounts are not property of the estate, application or payment of the Prepetition Deductions for their intended purposes in the ordinary course of business will not reduce the value available for distribution to creditors.

### 3.    The Doctrine of Necessity
### <u>Authorizes the Payment of the Employee Obligations</u>

50.    Payment of the Employee Obligations is supported by the "doctrine of necessity."

"The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the

proposition that a court can authorize the payment of prepetition claims if such payment is

essential to the continued operation of the debtor."  *In re Motor Coach Indus. Int'l*, No. 09-078-

SLR, 2009 U.S. Dist. LEXIS 10024, at *7 n.5 (D. Del. Feb. 10, 2009).  Under the doctrine of

necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay

critical prepetition claims, even though such payment is not explicitly authorized under the

Bankruptcy Code.  *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992)

(citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that

"if payment of a pre-petition claim 'is essential to the continued operation of [debtor], payment

may be authorized'")).

51.    Courts have been consistently and appropriately reluctant to interfere with

corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or

in gross abuse of the bankrupt's retained business discretion."  *Lubrizol Enters., Inc. v.

Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985).  To that end, once a debtor

articulates a sound basis for its business decisions, courts generally will not entertain objections

to a debtor's conduct.  *See In re Dura Auto. Sys.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS

2764, at *259-60 (Bankr. D. Del. Aug. 15, 2007).  In other words, if a debtor's actions satisfy the

business judgment rule, those actions generally will be approved.  *Id.*; *see also In re Integrated

Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

52.    The relief sought herein is essential to the Debtor's efforts to reorganize. The

Debtor seeks the relief requested in this Motion with respect to the Employees because any delay

or disruption in the provision of the Employee Obligations and Prepetition Payroll Costs likely

will destroy the Debtor's relationships with the Employees and irreparably impair workforce

morale at the very time when the dedication, confidence and cooperation of the Employees is

most critical.

53.     In light of the foregoing, the Debtor respectfully submits that the payment of the

Employee Obligations, as requested herein, is (a) in the best interest of the Debtor, its estate and

its creditors and (b) necessary to prevent immediate and irreparable harm to the Debtor and its

estate.

54.     Courts in this district have routinely approved the payment of prepetition claims

of employee wages, salaries, expenses and benefits in various chapter 11 cases. *See*, *e.g.*, *In re*

*Internap Technology Solutions, Inc.*, No. 20-22393 (RDD) [Docket No. 185] (Bankr. S.D.N.Y.

May 5, 2020); *In re Barchella Landscape & Masonry Corp.*, No. 18-23880 (RDD) [Docket No.

8] (Bankr. S.D.N.Y. Dec. 10, 2018); *In re Cumulus Media Inc.*, No. 17-13381 (SCC) [Docket

No. 48] (Bankr. S.D.N.Y. Nov. 30, 2017); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) [Docket

No. 94] (Bankr. S.D.N.Y. Oct. 14, 2014).[3]  Likewise, courts have routinely authorized debtors to

satisfy obligations with respect to independent contractors and other temporary personnel. See,

e.g., In re SquareTwo Fin. Servs. Corp., Case No. 17-10659 (JLG) (Bankr. S.D.N.Y. Apr. 28,

2017) [Dkt. No. 171]; In re Breitburn Energy Partners LP, Case No. 16-11390 (SMB) (Bankr.

S.D.N.Y. June 15, 2016) [Dkt. No. 138]; In re MPM Silicones, LLC, Case No. 14-22503 (RDD)

(Bankr. S.D.N.Y. May 16, 2014) [Dkt. No. 215].

---

[3]     Because of their voluminous nature, the orders cited herein are not attached to this Motion.  Copies of these
orders, however, are available on request to the Debtor's proposed chapter 11 counsel.

**B.** **Section 363 of the Bankruptcy Code and the Doctrine of Necessity**
**Permit the Debtor to Preserve the Value of the Estates by Continuing**
**The Benefit Programs**

55.     The Court may authorize continuation of certain of the Debtor's Benefit Programs

in the ordinary course of business, pursuant to section 363 of the Bankruptcy Code.  *See In re*

*Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 Bankr. LEXIS 3334, at \*7 (Bankr. S.D.N.Y.

Sept. 24, 2010) (finding that when section 503(c) does not apply, "[t]he alternative method for

approving [incentive plans, including severance plans] is as an 'ordinary course' transaction by

the Debtors pursuant to 11 U.S.C. § 363"); *see also* 4 *Collier on Bankruptcy* ¶ 503.17 (Richard

Levin & Henry J. Sommer eds., 16th ed.) (noting that when section 503(c)(3) applies, "[t]he

majority view is that this standard is no different from the business judgment standard applied

under section 363(b)").

56.     In addition, continuation of the Benefit Programs is supported by the "doctrine of

necessity."  As discussed above, "[t]he 'doctrine of necessity' or 'necessity of payment' doctrine

is a general rubric for the proposition that a court can authorize the payment of prepetition claims

if such payment is essential to the continued operation of the debtor."  *In re Motor Coach Indus.*

*Int'l*, 2009 U.S. Dist. LEXIS 10024, at \*7 n.5.

57.     The relief sought herein is essential to the Debtor's efforts to reorganize. The

Debtor seeks the relief requested in this Motion with respect to the Employees because any delay

or disruption in the provision of the Benefits Programs likely will destroy the Debtor's

relationships with the Employees and irreparably impair workforce morale at the very time when

the dedication, confidence and cooperation of the Employees is most critical.

58.     In light of the foregoing, the Debtor respectfully submits that the continuation of

certain of its Benefit Programs, as requested herein, is (a) in the best interest of the Debtor, its

estate and its creditors and (b) necessary to prevent immediate and irreparable harm to the

Debtor and its estates.

### C. The Court Should Authorize All Applicable Banks and Financial Institutions to Honor and Pay Checks in Connection with the Employee Obligations and the Continuation of Certain of the Debtor's Benefit Programs

59.     In addition, by this Motion, the Debtor requests that all applicable banks and other

financial institutions (collectively, the "Banks") be authorized, when requested by the Debtor, to

receive, process, honor and pay any and all checks presented for payment of, and to honor all

fund transfer requests made by the Debtor related to, the Employee Obligations and the Benefit

Programs, whether such checks were presented or fund transfer requests were submitted prior to

or after the Petition Date, provided that sufficient funds are available in the applicable accounts

to make the payments.  The Debtor represents that these checks are drawn on specific

disbursement accounts and can be readily identified as relating directly to the authorized

payment of amounts or programs discussed herein.  Accordingly, the Debtor believes that such

checks should be honored.

### REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY

60.     Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtor seeks

(a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of

the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that

"[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court

shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay

all or part of a claim that arose before the filing of the petition."  Bankruptcy Rule 6004(h)

provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral

is stayed until the expiration of 14 days after entry of the order, unless the court orders

otherwise."  From this, courts have ruled that, where the failure to grant any such requested relief

would result in immediate and irreparable harm to a debtor's estate, a court may allow a debtor

to pay all or part of a claim that arose prepetition immediately.

61.     As set forth above, the payment of the Employee Obligations and continuation of

certain of the Debtor's Benefit Programs are necessary to prevent immediate and irreparable

damage to the Debtor's estate and prevent Employees from experiencing additional hardships

during an already difficult time.  Without the continued efforts of its Employees, the Debtor's

ability to reorganize will be markedly more difficult.  Accordingly, the Debtor submits that

ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein

and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it

applies.

## RESERVATION OF RIGHTS

62.     Nothing contained herein is intended to be or should be construed as:  (a) an

admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights

or any other party-in-interests' rights to dispute any claim on any grounds; (c) a promise to pay

any claim; (d) an implication or admission that any particular claim would constitute a claim for

an Employee Obligation or an obligation under the Benefit Programs; or (e) the assumption of

any executory contract or unexpired lease.

## NOTICE

63.     The Debtor will provide notice of this Motion to:  (a) the Office of the United

States Trustee for Region 2; (b) the 35 law firms representing the largest number of holders of

CVA claims against the Debtor; (c) the Internal Revenue Service; (d) the Office of the Attorney

General for the State of New York; (e) the United States Attorney's Office for the Southern

District of New York; (f) the Banks; and (g) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

64.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Interim

Order and Proposed Final Order and grant such other and further relief as may be appropriate.

Dated:  October 1, 2020
(New York, New York)

Respectfully submitted,

*/s/  Corinne Ball*
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Benjamin Thomson
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  cball@jonesday.com
          brosenblum@jonesday.com
          trgeremia@jonesday.com
          bthomson@jonesday.com

*Proposed Counsel for the Debtor and
Debtor-in-Possession*

-30-

# **<u>EXHIBIT A</u>**

## **PROPOSED INTERIM ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN OF NEW YORK**

| | |
|---|---|
| | : |
| In re: | : |
| | : |
| THE ROMAN CATHOLIC DIOCESE OF | : |
| ROCKVILLE CENTRE, NEW YORK,[1] | : |
| | : |
| Debtor. | : |
| | : |

Chapter 11

Case No. 20-12345 (___)

## INTERIM ORDER AUTHORIZING THE DEBTOR TO
## (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, BENEFITS AND OTHER
## RELATED ITEMS; (II) REIMBURSE PREPETITION EMPLOYEE BUSINESS
## EXPENSES; (III) CONTINUE EMPLOYEE BENEFIT PROGRAMS; AND (IV) PAY
## ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING

This Court has considered the *Debtor's Motion for an Order Authorizing the Debtor to*

*(I) Pay Prepetition Employee Wages, Salaries, Benefits and Other Related Items; (II) Reimburse*

*Prepetition Employee Business Expenses; (III) Continue Employee Benefit Programs; and (IV)*

*Pay All Costs and Expenses Incident to the Foregoing* (the "Motion"),[2] the First Day Declaration

and the statements of counsel and the evidence adduced with respect to the Motion at a hearing

before the Court (the "Hearing").  This Court has found that (i) this Court has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is

good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is

applicable.  After due deliberation, this Court has determined that the relief requested in the

Motion is in the best interests of the Debtor, its estate and its creditors, and is necessary to

---

[1]     The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last
four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park
Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

prevent immediate and irreparable harm to the Debtor and its estate; and good and sufficient
cause having been shown;

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein on an interim basis.

2.      Subject to the requirements of sections 507(a)(4) and (a)(5) of the Bankruptcy
Code, the Debtor is authorized, in its discretion, to pay (a) Prepetition Employee Compensation
in an aggregate amount not to exceed $884,000 and (b) Prepetition Deductions in an aggregate
amount not to exceed $77,000.

3.      The Debtor is authorized, in its discretion, to pay the Prepetition Business
Expenses, in an amount not to exceed $49,000.

4.      The Debtor is authorized, in its discretion, to honor Paid Time Off accrued by
Employees prior to the Petition Date in the ordinary course of business, consistent with past
practice.

5.      The Debtor is authorized, in its discretion, pay prepetition Tuition Payments in an
amount not to exceed $164,000 and sponsor education programs for clergy formation by making
Tuition Payments in the ordinary course of business, consistent with past practice.

6.      The Debtor is authorized, in its discretion, to continue the Benefit Programs on a
postpetition basis in the ordinary course of business, consistent with past practice.

7.      The Debtor is authorized to remit any amounts held in the Agent Accounts on
behalf of participants in the Main Benefit Plans on the Petition Date to the Main Benefit Plans
for which such amounts were collected or for payment of covered benefits and plan-specific
administrative expenses, as applicable, consistent with past practice.

8.      The Debtor is authorized, in its discretion to continue to provide administrative
support for the Main Benefit Plans, including by receiving funds into and remitting such funds
out of the Agent Accounts, in the ordinary course of business, consistent with past practice.

9.      The Debtor is authorized, in its discretion, to pay the Prepetition Payroll Costs
that were accrued and unpaid as of Petition Date, including all payroll-related taxes subsequently
determined upon audit, or otherwise, to be owed to the relevant taxing authorities for periods
prior to Petition Date, in an aggregate amount not to exceed $386,000.

10.     The Banks are authorized, when requested by the Debtor, to receive, process,
honor and pay all checks presented for payment of, and to honor all fund transfer requests made
by the Debtor related to, the Employee Obligations and the Benefit Programs, whether such
checks were presented or fund transfer requests were submitted prior to or after the Petition Date,
provided that sufficient funds are available in the applicable accounts to make the payments.
The Banks are authorized to rely on the Debtor's designation of any particular check or funds
transfer as approved by this Order.

11.     Any Bank that honors a prepetition check or other item drawn on any account that
is the subject of this Order:  (a) at the direction of the Debtor; (b) in a good-faith belief that the
Court has authorized such prepetition check or item to be honored; or (c) as a result of an
innocent mistake made despite the above-described protective measures, shall not be liable to the
Debtor or its estate on account of such prepetition check or other item being honored
postpetition.

12.     Nothing in the Motion or this Order, nor the Debtor's payment of claims pursuant
to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim
against the Debtor; (b) a waiver of the Debtor's rights or any other party-in-interests' rights to

dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined hereunder; or (e) the assumption of any executory contract or unexpired lease.

13.     The final hearing (the "Final Hearing") to consider entry of the Final Order is scheduled for _____, 2020 at _____ _.m. (prevailing Eastern time) before this Court.  On or before _____, 2020, the Diocese shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing, (b) any party which has filed prior to such date a request for notices with this Court and (c) counsel for the official committee of unsecured creditors (the "Committee"). The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of Court no later than on _____, 2020 at 4:00 p.m. (prevailing Eastern time), which objections shall be served so as to be received on or before such date by:  (a) the Diocese, c/o The Roman Catholic Diocese of Rockville Centre, New York, 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023; (b) proposed counsel to the Diocese, Jones Day, 250 Vesey Street, New York, New York 10281-1047 Attn: Corinne Ball, Esq., Todd Geremia, Esq., Benjamin Rosenblum, Esq., Benjamin Thomson, Esq.; (c) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Greg M. Zipes, Esq. and Shara Cornell, Esq.; and (d) counsel for the Committee.

14.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

15.    This Order shall be immediately effective and enforceable upon its entry.  To the extent that it may be applicable, the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

16.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2020
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT A**

**PROPOSED FINAL ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN OF NEW YORK**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| THE ROMAN CATHOLIC DIOCESE OF | : Case No. 20-12345 (___) |
| ROCKVILLE CENTRE, NEW YORK,[1] | : |
| | : |
| Debtor. | : |

## FINAL ORDER AUTHORIZING THE DEBTOR TO
## (I) PAY PREPETITION EMPLOYEE WAGES, SALARIES, BENEFITS AND OTHER
## RELATED ITEMS; (II) REIMBURSE PREPETITION EMPLOYEE BUSINESS
## EXPENSES; (III) CONTINUE EMPLOYEE BENEFIT PROGRAMS; AND (IV) PAY
## ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING

This Court has considered the *Debtor's Motion for an Order Authorizing the Debtor to*

*(I) Pay Prepetition Employee Wages, Salaries, Benefits and Other Related Items; (II) Reimburse*

*Prepetition Employee Business Expenses; (III) Continue Employee Benefit Programs; and (IV)*

*Pay All Costs and Expenses Incident to the Foregoing* (the "Motion"),[2] the First Day Declaration

and the statements of counsel and the evidence adduced with respect to the Motion at a hearing

before the Court (the "Hearing"). This Court has found that (i) this Court has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is

good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is

applicable. After due deliberation, this Court has determined that the relief requested in the

Motion is in the best interests of the Debtor, its estate and its creditors, and is necessary to

---

[1]   The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

prevent immediate and irreparable harm to the Debtor and its estate; and good and sufficient

cause having been shown;

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein on a final basis.

2.      Subject to the requirements of sections 507(a)(4) and (a)(5) of the Bankruptcy

Code, the Debtor is authorized, in its discretion, to pay (a) Prepetition Employee Compensation,

in an aggregate amount not to exceed $884,000 and (b) Prepetition Deductions in an aggregate

amount not to exceed $77,000.

3.      The Debtor is authorized, in its discretion, to pay the Prepetition Business

Expenses, in an amount not to exceed $49,000.

4.      The Debtor is authorized, in its discretion, to (a) honor Paid Time Off accrued by

Employees prior to the Petition Date in the ordinary course of business, consistent with past

practice and (b) make cash payments to Employees upon termination on account of Paid Time

Off in the ordinary course of business, consistent with past practice, but only to the extent that

the Employee's claim for such cash payment would constitute an allowed priority claim under

section 507(a)(4) of the Bankruptcy Code or relates to Paid Time Off accrued after the Petition

Date.

5.      The Debtor is authorized, in its discretion, pay prepetition Tuition Payments in an

amount not to exceed $164,000 and to sponsor education programs for clergy formation by

making Tuition Payments in the ordinary course of business, consistent with past practice.

6.      The Debtor is authorized, in its discretion, to continue the Benefit Programs on a

postpetition basis in the ordinary course of business, consistent with past practice.

7.      The Debtor is authorized to remit any amounts held in the Agent Accounts on

behalf of participants in the Main Benefit Plans on the Petition Date to the Main Benefit Plans

for which such amounts were collected or for payment of covered benefits or the payment of plan-specific administrative expenses, as applicable, consistent with past practice.

8.       The Debtor is authorized, in its discretion to continue to provide administrative support for the Main Benefit Plans including by receiving funds into and remitting such funds out of the Agent Accounts, in the ordinary course of business, consistent with past practice.

9.       The Debtor is authorized, in its discretion, to pay the Prepetition Payroll Costs that were accrued and unpaid as of Petition Date, including all payroll-related taxes subsequently determined upon audit, or otherwise, to be owed to the relevant taxing authorities for periods prior to Petition Date, in an aggregate amount not to exceed $386,000.

10.      The Banks are authorized, when requested by the Debtor, to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to, the Employee Obligations and the Benefit Programs, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Banks are authorized to rely on the Debtor's designation of any particular check or funds transfer as approved by this Order.

11.      Any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order:  (a) at the direction of the Debtor; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite the above-described protective measures, shall not be liable to the Debtor or its estate on account of such prepetition check or other item being honored postpetition.

12.     Nothing in the Motion or this Order, nor the Debtor's payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights or any other party-in-interests' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined hereunder; or (e) the assumption of any executory contract or unexpired lease.

13.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

14.     This Order shall be immediately effective and enforceable upon its entry.  To the extent that it may be applicable, the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2020          _____
          New York, New York                   UNITED STATES BANKRUPTCY JUDGE