JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Benjamin Thomson
250 Vesey Street
New York, New York 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306

*Proposed Counsel for Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| THE ROMAN CATHOLIC DIOCESE OF | : Case No. 20-12345 |
| ROCKVILLE CENTRE, NEW YORK,[1] | : |
| | : |
| Debtor. | : |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE CONTINUED USE OF THE**
**DEBTOR'S CASH MANAGEMENT SYSTEM, BANK ACCOUNTS**
**AND BUSINESS FORMS AND (II) GRANTING RELATED RELIEF**

The Roman Catholic Diocese of Rockville Centre, New York, as debtor and debtor-in-

possession (the "Debtor"), respectfully represents as follows in support of this motion (the

"Motion"):

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

## BACKGROUND

**A.     General Background**

1.     On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate and pursue its religious, non-profit mission and ministry, and manage its properties and affairs as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case, and no statutory committee has been appointed.

2.     The Debtor is the seat of the Roman Catholic Church on Long Island.  The State of New York established the Debtor as a religious corporation in 1958.  *See* 1958 N.Y. SESS. LAWS Ch. 70 (1958), § 1.  The Debtor is one of eight Catholic dioceses in New York and is the eighth-largest diocese in the United States when measured by the number of baptized Catholics. The Debtor's total Catholic population is approximately 1.4 million, which constitutes roughly half of Long Island's total population of 3.0 million.  Pursuit of the Debtor's mission depends upon the continuing financial support provided by the faithful in anticipation of, and in mutual support of, the Debtor's religious and charitable mission.

3.     To carry out its Catholic mission, the Debtor works closely with its 135 parishes. Parishes play a central role in the lives of Catholics by administering key aspects of the Catholic Faith, including:  baptism, education, communion, Mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support.  None of the parishes are debtors herein.  In addition, the Debtor supports separate charitable organizations to further its pursuit of the Catholic mission to serve the poor, the hungry, those in need, and those that cannot help themselves.  None of those entities are debtors herein.  The Debtor is also continuing its outreach to comfort, educate, and enlighten the faithful, especially in these times of quarantine and isolation due to COVID-19 protocols and precautions.

4.      Following the enactment in 2019 of the Child Victims Act ( the "CVA"), which revived what had been time-barred claims, approximately 200 lawsuits have been brought by abuse claimants against the Debtor.  In its effort to fairly and equitably address this tragic legacy, the Debtor has undertaken a substantial effort to identify and marshal over 60 years of insurance policies, including both primary and excess coverage, with the goal of securing a valuable resource of the Debtor, its parishes, and its affiliates, so that it can be used for the care and compensation of abuse survivors.  The Debtor has made such insurance policies and related information, together with historical financial information for itself and its charitable, educational, and service affiliates, available to counsel for the abuse claimants and the Debtor's insurers.

5.      Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the *Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date.

**B.      The Debtor's Cash Management System**

6.      In the ordinary course of business, the Debtor utilizes a centralized cash management system (the "Cash Management System") to collect, manage, invest and disburse funds in support of its mission.  The Debtor holds accounts with a number of financial institutions (the "Banks") in order to facilitate the Cash Management System.  A list of the Debtor's bank accounts can be found attached hereto as Exhibit C (the "Bank Accounts").

7.      A diagram setting forth the flow of funds among the Bank Accounts and summarizing the Cash Management System, as it exists on the Petition Date, is attached hereto as Exhibit D.

i.      The Debtor's Bank Accounts

8.      In the ordinary course of business, the Debtor maintains the Bank Accounts

described herein to facilitate the financial operations of its central administrative offices.

9.      *The Main Accounts*.  As of the Petition Date, the Debtor maintained the following

accounts (the "Main Accounts") with JPMorgan Chase Bank, N.A. ("JPMorgan Chase"):  (a) its

primary operating account (the "Main Operating Account"); and (b) a money market account

(the "Main Money Market Account").  The Main Money Market Account is invested in short-

term U.S. Government securities.

10.     *The Main Investment Accounts*.  Historically, the Debtor maintained its long-term

investments in accounts with Unitas Investment Fund, Inc. and The Vanguard Group Inc. (the

"Main Investment Accounts").  The Main Investment Accounts held a diversified portfolio of

securities.  Similarly, the Debtor maintained long-term investments subject to donor restrictions,

such as endowments and bequests, in separate Main Investment Accounts.  As of the Petition

Date, the Debtor no longer maintained any funds not subject to donor restrictions for long-term

investment in the Main Investment Accounts.  Instead, the Debtor's long-term investments are

held in the Main Money Market Account.  The long-term investments subject to donor

restrictions are held in separate FHO Accounts (as defined herein), including Legacy

Endowment Funds (as defined herein) held with Unitas Investment Fund, Inc.

11.     *The Utilities Adequate Assurance Account*.  The Debtor maintains an account with

JPMorgan Chase (the "Utilities Adequate Assurance Account") in which it intends to place a

deposit, in an amount approved by the Court, as adequate assurance of payment for the Debtor's

utility services.

12.     *The IOR Accounts.*  The Debtor maintains two accounts (the "IOR Accounts")
with the Institute for the Works of Religion, a financial institution located inside Vatican City.
As of the Petition Date, the IOR Accounts had *de minimis* balances.  The Debtor is in the process
of closing the IOR Accounts and expects they will be closed soon after the Petition Date.

13.     *Other Deposit Accounts*.  The Debtor maintains a number of other deposit
accounts for a variety of other purposes in order to facilitate its Cash Management System.  Each
account is listed in Exhibit C.

ii.     The Insurance Accounts

14.     The Debtor maintains a number of Bank Accounts (the "Insurance Accounts") in
support of its insurance programs.  The Insurance Accounts are denoted as such in Exhibit C.
The funds in the Insurance Accounts are held on behalf of the participants in and the
beneficiaries of the Debtor's insurance programs.  Additional information on the insurance
programs and the relief the Debtor is requesting with respect to the funds held in the Insurance
Accounts can be found in *Debtor's Motion for Entry of Interim and Final Orders Authorizing the
Debtor to Continue Its Insurance Programs and Pay Related Obligations* (the "Insurance
Motion").

15.     *The PSIP Accounts.*  The Debtor maintains two accounts (the "PSIP Accounts")
with JPMorgan Chase related to its Protected Self-Insurance Program ("PSIP"), which is
described in the Insurance Motion:  (a) a primary operating account (the "PSIP Operating
Account"); and (b) a money market account utilized to generate interest for short periods if there
are excess funds in the PSIP Operating Account (the "PSIP Money Market Account").

16.     The PSIP Operating Account is used to collect insurance premiums on behalf of
the entities that participate in PSIP.  Claim payments disbursed by Network Adjusters (as defined

herein) to participating entities that have suffered losses are funded by these PSIP Operating

Account premium deposits.  In addition, PSIP uses those premiums, in part, to obtain insurance

coverage from Ecclesia Assurance Company and other third party insurers for PSIP participants.

As a result, the PSIP Operating Account receives recovery payments from insurance carriers to,

in some instances, offset claim payments processed by Network Adjusters.

17.     *The Network Adjusters Disbursement Account*.  The Debtor maintains an account

(the "Network Adjusters Disbursement Account") with JPMorgan Chase to fund payments to

entities that have suffered a loss that is either covered by PSIP or for which PSIP has received

coverage from a third-party insurer on behalf of such entity.  Network Adjusters, Inc. ("Network

Adjusters") is a third-party claims administrator that manages claims and pays claimants using

funds drawn from the Network Adjusters Disbursement Account.

18.     *The NYS Workers Comp Deposit Account*.  As required by the State of New York

in respect of the Debtor's former self-insurance program for workers' compensation, the Debtor

has posted cash security with the New York State Workers' Compensation Board (the "NYS

Workers Comp Deposit Account").  As of the Petition Date, the balance in the NYS Workers

Comp Deposit Account was approximately $7.6 million.  More information about the obligations

that the funds in the NYS Workers Comp Deposit Account support can be found in the Insurance

Motion.

19.     *The Letter of Credit Account*.  As of the Petition Date, the Debtor maintained a

certificate of deposit (the "PSIP LC Collateral Account") with JPMorgan Chase as collateral for

an irrevocable letter of credit (the "Letter of Credit") issued by JPMorgan Chase in favor of Old

Republic Insurance Company.  As of the Petition Date, the PSIP LC Collateral Account had a

market value of approximately $972,000.  More information about the Letter of Credit and the

PSIP LC Collateral Account can be found in the Insurance Motion.

      iii.      <u>Restricted Funds and Funds Held for Others</u>

20.     In the ordinary course of business, the Debtor holds funds on behalf of other

entities that work with the Debtor to advance its mission or funds with donor restrictions limiting

their use.  As described further herein, the Debtor maintains separate Bank Accounts (the "<u>FHO</u>

<u>Accounts</u>") for the funds it holds for others and the funds it holds with donor restrictions.  The

FHO Accounts are denoted as such in Exhibit C.  Funds held in the FHO Accounts are accounted

for individually and kept separate from the general operating funds of the Debtor.

21.     *The CMA Accounts*.  The Catholic Ministries Appeal ("<u>CMA</u>") is an annual

campaign to support particular charitable, religious and educational missions undertaken by the

Debtor and entities that are sponsored by and/or affiliated with the Debtor.  Funds raised through

the CMA are used only to support those particular missions.  The CMA is described in greater

detail in the First Day Declaration.  The Debtor maintains the following two accounts (the "<u>CMA</u>

<u>Accounts</u>") with JPMorgan Chase for funds raised through the CMA in order to keep such funds

segregated from the Debtor's general operating funds:  (a) a primary operating account (the

"<u>CMA Operating Account</u>"); and (b) a money market account utilized to generate interest for

short periods if there are excess funds in the CMA Operating Account (the "<u>CMA Money</u>

<u>Market Account</u>").

22.     *Contribution and Disbursement Agent Accounts*.  The Debtor provides

administrative support for one healthcare plan for employees, one plan for healthcare and other

assistance for retired priests, and three retirement plans (collectively, the "<u>Benefit Plans</u>") for

employees and retirees of the Debtor and certain affiliated employers.  The Benefit Plans are

funded by separate trusts for the benefit of their participants.[2]  More information about the

Benefit Plans can be found in the First Day Declaration.  In order to facilitate payments into and

out of the Benefit Plans, the Debtor maintains a number of contribution and paying agent

accounts (the "Agent Accounts").  The Debtor also maintains money market agent accounts

associated with the Agent Accounts utilized to generate interest for short periods if there are

excess funds in the Agent Accounts.  The Agent Accounts permit the Debtor to collect

contributions from participating employers and make consolidated transfers to the Benefit Plans

on behalf of all participants.  Similarly, the Agent Accounts permit the Debtor to draw funds

from the Benefit Plans and make payments to certain vendors and pay plan-specific

administrative expenses.  Using the Agent Accounts reduces the administrative costs of the

Benefit Plans.

     23.    *Non-School Assessment Accounts*.  The Debtor assists its parishes and the

furtherance of Catholic education by acting as an agent to collect a "non-school assessment"

from parishes in the territory of the Debtor that do not have schools.  The money collected is

used to fund efforts related to Catholic Education.  The primary function is to fund the parish and

regional schools.  This money goes through one of two identified, segregated accounts (the

"Non-School Assessment Accounts") used solely for this purpose: (a) a primary operating

account (the "NSA Operating Account"); and (b) a money market account utilized to generate

interest for short periods if there are excess funds in the NSA Operating Account (the "NSA

Money Market Account").  Funds collected into the Non-School Assessment Accounts are

transferred to the Department of Education, Diocese of Rockville Centre (the "Department of

---

[2]     The 403(b) Employees' Retirement Plan is funded by custodial accounts and annuity contracts held by an insurance company, which are in the nature of trusts, but not technically trusts.  For ease of reference, these funding vehicles will be referred to herein as "trusts" along with the other trusts funding plans.

Education"), which was incorporated by the Regents of the University of the State of New York on April 26, 1974. The Department of Education then disburses the funds to the parish and regional schools that receive this support and for other operational needs.

24.     *The Legacy Endowment Funds*.  The Debtor maintains 19 separate accounts (the "Legacy Endowment Funds") with Unitas Investment Fund, Inc. to hold endowment funds donated to the Debtor subject to donor-restrictions on their use.  The average balance in each account as of the Petition Date was approximately $32,600.  The costs and administrative burden of moving the Legacy Endowment Funds to new accounts at banks that are authorized depositories under the U.S. Trustee Guidelines would be unreasonably high compared to the small balances that exist in many of these accounts.

25.     *Restricted Donations/Collections Account*.  The Debtor maintains an additional account (the "Restricted Donations/Collections Account") with JPMorgan Chase to hold other funds that it holds on behalf of others and funds with donor-restrictions that are not held in any of the other accounts described above.  The Restricted Donations/Collections Account also, from time to time, holds contributions to the Benefit Plans made by participating employers when such contributions first need to be allocated among the Agent Accounts.  The purpose of this account is to ensure such funds are never comingled with the Debtor's general operating funds. The Debtor tracks the funds held in the Restricted Donations/Collections Account according to the beneficial owner of the funds or the restriction, as applicable, such that it can trace the origin and use of each dollar held in or transferred from the Restricted Donations/Collections Account.

iv.     Non-Debtor Accounts

26.     As of the Petition Date, there were three Bank Accounts (the "Non-Debtor Accounts") in the Debtor's name that belong to non-debtor entities (the "Non-Debtors").  The

Non-Debtor Accounts are denoted as such in Exhibit C.  The Debtor does not maintain any of its funds in any of the Non-Debtor Accounts and does not exercise operational control over them. Activity in the Non-Debtor Accounts is not included in the Debtor's financial accounting.

27.    *High School Accounts*.  Holy Trinity Diocesan High School (the "High School") in Hicksville, New York maintains two accounts (the "High School Accounts") with Citibank, N.A. ("Citibank"):  (a) a primary operating account (the "High School Operating Account"); and (b) a money market account utilized to generate interest for short periods if there are excess funds in the High School Operating Account (the "High School Money Market Account").  As of the Petition Date, the High School Accounts bore the Debtor's name and tax identification number.  However, the Debtor does not maintain any of its funds in the High School Accounts and does not exercise operational control over them.

28.    The High School is working to open new accounts in its own name to replace the High School Accounts as quickly as it can.  In the meantime, the High School requires use of the High School Accounts in order to pay its teachers and staff, the vendors that support the High School's operations and all the other expenses incident to running the High School. Accordingly, by this Motion the Debtor requests authorization for the High School to continue to use the High School Accounts in the ordinary course of its business and to transfer its funds from the High School Accounts to new operating accounts in its own name when such accounts are opened.

29.    *Cursillo de Cristianidad Operating Account*.  Cursillos de Cristianidad is an independent, non-debtor organization that maintains an account with JPMorgan Chase (the "Cursillo de Cristianidad Operating Account").  The Cursillo de Cristianidad Operating Account bears the Debtor's name and tax identification number, however the Debtor does not maintain

any funds in or exercise control over this account.  As of the Petition Date, the Cursillo de Cristianidad Operating Account had a *de minimis* balance.

      v.      <u>Credit Card Programs</u>

30.     In the ordinary course of its business, the Debtor maintains four different credit card accounts (the "<u>Credit Card Accounts</u>") to provide credit cards for employees of the Debtor to use to make business purchases.  The Debtor generally pays the balance for each of the Credit Card Accounts in full on a monthly basis.  Debt incurred under each of the Credit Card Accounts is unsecured.  As of the Petition Date, the aggregate balance on the Credit Card Accounts was $585.  The Debtor generally incurs approximately $17,000 per month in charges and fees in aggregate under the Credit Card Accounts.

31.     *American Express Corporate Cards*.  The Debtor has 27 American Express corporate credit cards used by employees of the Debtor for general business expenses.

32.     *Visa Corporate Cards*.  The Debtor has four additional corporate credit cards issued by Signature Bank on the Visa network used by employees of the Debtor for general business expenses.

33.     *Exxon Mobile Fuel Cards*.  The Debtor has 13 Exxon Mobile fuel cards used by employees of the Debtor to purchase fuel for work-related travel.

34.     *Home Depot Credit Card*.  The Debtor has one credit card issued by Home Depot Credit Services used to purchase construction and property-maintenance products from Home Depot.

35.     Use of the Credit Card Accounts gives the Debtor greater flexibility in making necessary purchases.  Accordingly, the Debtor requests that the Court authorize the Debtor to continue to pay any balances due on the Credit Card Accounts, including charges and fees

incurred prepetition or postpetition, in the ordinary course of business and to continue to incur

unsecured debt under the Credit Card Accounts in the ordinary course of business.

### C.        Compliance With U.S. Trustee Guidelines

36.        The *Operating Guidelines and Reporting Requirements for Debtors in Possession
and Trustees* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among

other things, deposit all estate funds into an account with an authorized depository that agrees to

comply with the requirements of the Office of the United States Trustee for the Southern District

of New York (the "U.S. Trustee").  As of the Petition Date, all of the Bank Accounts with non-

zero balances, other than the Legacy Endowment Funds and the IOR Accounts, were held with

banks that are authorized depositories under the U.S. Trustee Guidelines and are insured by the

Federal Deposit Insurance Corporation.  Moreover, all of the Bank Accounts, other than the IOR

Accounts, are located in the U.S.  Accordingly, the Debtor submits that all of the Banks are in

compliance with the U.S. Trustee Guidelines.

37.        To the extent that any of the Bank Accounts do not comply with section 345 of

the Bankruptcy Code or any other requirements of the U.S. Trustee, the Debtor requests that the

Court grant the Debtor 45 days, without prejudice to seek an additional extension, to come into

compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's

requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee.

### D.        Existing Business Forms and Checks

38.        In the ordinary course of business, the Debtor uses numerous business forms,

including, without limitation, checks, business cards, letterhead, purchase orders and invoices

(the "Business Forms").  In particular, the Debtor issues payroll checks on existing stock that

cannot be easily altered.  To minimize expense to its estate and avoid confusion on the part of

employees, customers and suppliers, the Debtor respectfully requests that the Court authorize it

to continue to use all correspondence and Business Forms, as such forms were in existence immediately prior to the Petition Date without reference to the Debtor's status as a debtor in possession; provided, however, that upon depletion of the Debtor's Business Forms stock, the Debtor will obtain new Business Forms reflecting its status as a debtor in possession, and, to the extent reasonably practicable, the Debtor will cause any checks electronically generated during this chapter 11 case to contain the designation "Debtor in Possession."  Such authorization will enable the Debtor to avoid the expense and delay of ordering new Business Forms.

### E.   Bank Fees

39.   In the ordinary course of business, the Debtor incurs and pays, honors, or allows to be deducted from the appropriate Bank Accounts certain monthly service fees and other charges, costs, and expenses charged by the Banks (collectively, the "Bank Fees").  The Debtor estimates that approximately $12,000 in monthly Bank Fees are due and owing as of the Petition Date.  To maintain the integrity of its Cash Management System, the Debtor respectfully requests authority to pay the full amount of the Bank Fees, including fees for prepetition transactions that are charged postpetition, and to continue to pay the Bank Fees in the ordinary course of business postpetition.

## JURISDICTION AND VENUE

40.   This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

41.   Pursuant to sections 345, 363, 364 and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(a) of Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the Southern District of New York (the

"Local Rules"), the Debtor moves for the entry of an interim order (the "Interim Order") in

substantially the form attached hereto as Exhibit A and a final order (the "Final Order") in

substantially the form attached hereto as Exhibit B:

(i)      authorizing the Debtor to continue to use its current Cash Management System, including to continue to receive and disburse funds held for others and donor-restricted funds into and out of the FHO Accounts;

(ii)     authorizing the Non-Debtors to (a) continue to utilize their respective Non-Debtor Accounts in the ordinary course of business, including to make any payments on account of obligations of the Non-Debtors incurred before or after the Petition Date, and, on a final basis only, (b) transfer any Non-Debtor funds from the Non-Debtor Accounts to new accounts not in the Debtor's name when such accounts are opened;

(iii)    authorizing the Debtor to continue to use (a) its existing Bank Accounts, including authorizing the Debtor to open and close bank accounts, and (b) its existing business forms and checks, as modified to the extent described herein;

(iv)    authorizing the Debtor to continue to use its existing Credit Card Accounts, including (a) to pay in the ordinary course any charges and fees incurred prepetition or postpetition and (b) to incur unsecured debt under the Credit Card Accounts in the ordinary course of business; and

(v)     authorizing the Banks to honor certain transfers and charge Bank Fees.

## BASIS FOR RELIEF

**A.**    **The Continued Use of the Cash Management System, Bank Accounts and Business Forms Is Essential to the Debtor's Ongoing Operations and Is in the Best Interests of the Debtor's Estate and Creditors**

     i.    The Debtor Should Be Permitted to Continue the Cash Management System and Bank Accounts

42.    The Debtor hereby seeks authority to continue the collection, concentration,

disbursement and investment of cash pursuant to its Cash Management System. Bankruptcy

courts routinely permit chapter 11 debtors to continue using their existing cash management

systems, generally treating requests for such relief as a relatively "simple matter." *In re Baldwin*

*United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  In addition, in granting such relief,

courts recognize that an integrated cash management system "allows efficient utilization of cash

resources and recognizes the impracticalities of maintaining separate cash accounts for the many

different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr.

D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993).  The requirement to

maintain all accounts separately "would be a huge administrative burden and economically

inefficient." *Id.* at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995)

(stating that a cash management system allows a debtor "to administer more efficiently and

effectively its financial operations and assets"); *Charter Co. v. Prudential Ins. Co. of Am. (In re

Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that the debtors' postpetition use of

their prepetition "routine cash management system" was "entirely consistent" with applicable

provisions of the Bankruptcy Code).[3]

43.     In addition, section 363(c)(1) of the Bankruptcy Code authorizes a debtor in

possession to "use property of the estate in the ordinary course of business without notice or a

hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to

provide a debtor in possession with the flexibility to engage in those transactions that make up

the bulk of its day-to-day operations without incurring the excessive monitoring costs that would

result from the need to provide notice of, and obtain approval for, such ordinary course activities.

*See*, *e.g.*, *Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir.

---

[3]     Because orders approving the continued use of preexisting cash management systems generally are entered
at the time of or shortly after the commencement of a bankruptcy case, and because the benefits to affiliated
debtors of such systems are widely recognized, few if any requests for the entry of such orders are ever
contested. In fact, references to court orders authorizing the continued use of centralized cash management
systems generally are found in opinions regarding collateral proceedings, rather than in reported decisions
approving or disapproving the use of a particular system. *See, e.g.*, *In re FRG, Inc.*, 107 B.R. 461, 465
(Bankr. S.D.N.Y. 1989) (involving motion to transfer venue, but referring to an order authorizing the
debtors to continue to utilize their prepetition cash management system).

1997); *In re Enron Corp.*, No. 01-16034 (ALG), 2003 WL 1562202, at \*15 (Bankr. S.D.N.Y. Mar. 21, 2003); *Chaney v. Official Comm. of Unsecured Creditors (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Within the purview of section 363(c) of the Bankruptcy Code, a debtor in possession is authorized to continue the "routine transactions" associated with its cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, investment and disbursement of cash pursuant to the Cash Management System.

44.     The Cash Management System constitutes an ordinary course and essential business practice of the Debtor. It provides significant benefits to the Debtor's estate including, among other things, the ability to (a) control and monitor funds, (b) invest idle cash, (c) ensure the maximum availability of funds when and where necessary and (d) reduce costs and administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. The Debtor's continued smooth financial operations requires the continuation of the Cash Management System during the pendency of this chapter 11 case.

45.     Moreover, as a practical matter, it would be difficult, expensive, disruptive and administratively burdensome to require the Debtor to close all of its existing Bank Accounts and open new, segmented debtor-in-possession bank accounts at the very outset of these bankruptcy cases as required by the U.S. Trustee Guidelines.[4] The U.S. Trustee Guidelines aim to ensure that there exists a clear distinction between prepetition and postpetition claims and payments and

---

[4]     Under the U.S. Trustee Guidelines, "[a]ll pre-petition bank accounts controlled by [a] debtor must be closed immediately upon the filing of the petition, and [a] debtor shall immediately open new debtor-in-possession operating, payroll, and tax accounts at a United States Trustee Authorized Depository."

prevent the inadvertent payment of prepetition claims. The Debtor has determined that closing

the 38 Bank Accounts that comprise its Cash Management System and replacing each with a

new debtor-in-possession account would require a large expenditure of the Debtor's limited

administrative and financial resources and provide little, if any, benefit with respect to the aims

of the U.S. Trustee Guidelines. This is so, in particular, because the Debtor has the capacity to

draw the necessary distinctions between prepetition and postpetition obligations and payments

without closing all of its Bank Accounts and opening new ones. To protect against the possible

inadvertent payment of prepetition claims, the Debtor immediately will advise the Banks not to

honor checks issued prior to the Petition Date, except as otherwise expressly permitted by an

order of the Court and directed by the Debtor.

46.     In addition, preserving a "business as usual" atmosphere and avoiding the

unnecessary distractions that inevitably would be associated with any substantial disruption of

the Cash Management System will (a) facilitate the Debtor's stabilization of its postpetition

operations and (b) maximize value for stakeholders by allowing the Debtor to continue its

operations without disruption. Accordingly, maintaining the existing Cash Management System

is not only essential, but is in the best interest of creditors and other parties in interest.[5]

47.     Bankruptcy courts in this district have regularly waived certain U.S. Trustee

Guidelines and allowed the continued use of cash management systems and prepetition bank

accounts in the ordinary course of a debtor's prepetition business. *See, e.g.*, *In re Windstream*

*Holdings, Inc.*, 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (allowing debtors to continue

using their cash management system); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374

(MEW) (Bankr. S.D.N.Y. Dec. 17, 2018) (same); *In re Nine West Holdings, Inc.*, No. 18-10947

---

[5]     As a matter of course, the Debtor will continue to maintain current records with respect to all transfers of
cash, so that all transactions can be readily ascertained, traced and recorded properly.

(SCC) (Bankr. S.D.N.Y. June 26, 2018) (same).  The Debtor respectfully submits that the present circumstances warrant similar relief in this chapter 11 case.

ii.      The Debtor Should Be Permitted to Continue Using its Existing Business Forms

48.      As described above, in the ordinary course of business, the Debtor uses numerous varieties of Business Forms. To minimize expenses to its chapter 11 estate, the Debtor requests authority to continue to use all Business Forms as such forms were in existence immediately before the Petition Date, without reference to the Debtor's status as a debtor in possession.  The Debtor also requests authorization to use its existing check stock without the "debtor in possession" label for checks that it manually writes until such check stock runs out. As soon as practicable after the Petition Date, the Debtor will include "debtor in possession" on the checks it prints electronically.  Upon depletion of the Debtor's Business Forms, the Debtor will obtain new Business Forms stock reflecting its status as a debtor in possession.

49.      In other chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g.*, *In re Windstream Holdings, Inc.*, 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (authorizing use of existing business forms); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 17, 2018) (same); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 26, 2018) (same).  The Debtor respectfully submits that the present circumstances warrant similar relief in these Chapter 11 Cases.

**B.      The Court Should Authorize Banks Participating in the Cash Management System to Honor Certain Transfers**

50.      Concurrently with the filing of this Motion, the Debtor has filed motions requesting authority to pay, in its sole discretion and in the ordinary course of its business, certain prepetition obligations to employees, insurers and other entities.  With respect to some of

this debt, prior to the Petition Date, the Debtor issued checks or initiated drafts, wires or ACH transfers that may have yet to clear the banking system.  In other cases, the Debtor would issue the relevant checks or authorize the transfers postpetition on account of such prepetition debt once the Court entered an order permitting the Debtor to do so.  The Debtor intends to inform the Banks which prepetition checks, drafts, wires or ACH transfers should be honored pursuant to orders of the Court authorizing such payment.

51.      As a result of the foregoing, the Debtor requests the Banks be authorized to accept and honor all representations from the Debtor as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition Date.  Pursuant to the relief requested in this Motion, the Banks shall not be liable to any party on account of (a) following the Debtor's instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item handling procedures.  Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with the Court's order or otherwise.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

52.      Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") empowers the Court to grant the relief requested in this Motion within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  FED. R. BANKR. P. 6003.

53.      As set forth above, the immediate continued use of the Bank Accounts, Cash Management System and Business Forms and related relief is essential to prevent immediate and

potentially irreparable damage to the Debtor's operations. Accordingly, the Debtor submits that ample cause exists to justify immediate payment of any claims as set forth in this Motion under Bankruptcy Rule 6003.

## **WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)**

54.     Pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6004(h), the Debtor also seeks, to the extent they apply, (a) a waiver of the notice requirements under Bankruptcy Rules 2002(a)(2) and 6004(a) and (b) a waiver of any stay of the effectiveness of the Interim Order and the Final Order under Bankruptcy Rule 6004(h).

55.     Bankruptcy Rules 2002(a)(2) and 6004(a) require twenty-one days' notice by mail of the proposed use of property outside the ordinary course of business, unless the Court orders otherwise for cause shown. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, any disruption to the Cash Management System likely would cause irreparable harm to the Debtor's estate. Accordingly, the Debtor submits that ample cause exists to justify: (a) shortened and limited notice of the Motion with respect to the relief to be granted by the Interim Order; (b) the immediate entry of the Interim Order granting certain of the relief sought herein pursuant to Bankruptcy Rule 6003(b); and (c) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies, with respect to both the Interim Order and the Final Order.

## **RESERVATION OF RIGHTS**

56.     Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; or (d) a request to assume any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

### NOTICE

57.      The Debtor will provide notice of this Motion to:  (a) the Office of the United

States Trustee for Region 2; (b) the 35 law firms representing the largest number of holders of

CVA claims against the Debtor; (c) the Internal Revenue Service; (d) the Office of the Attorney

General for the State of New York; (e) the United States Attorney's Office for the Southern

District of New York; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002;

and (g) the Banks.  The Debtor submits that, in light of the nature of the relief requested, no other

or further notice need be given.

### NO PRIOR REQUEST

58.      No prior request for the relief sought herein has been made to this Court or any

other court.

*[Remainder of page left blank intentionally]*

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order

and Final Order and grant such other and further relief as may be appropriate.

Dated:  October 1, 2020
(New York, New York)

Respectfully submitted,

*/s/  Corinne Ball*
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Benjamin Thomson
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  cball@jonesday.com
        trgeremia@jonesday.com
        brosenblum@jonesday.com
        bthomson@jonesday.com

*Proposed Counsel for the Debtor and
Debtor-in-Possession*

**EXHIBIT A**

**PROPOSED INTERIM ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|                                                          |     |                      |
| :------------------------------------------------------- | :-- | :------------------- |
|                                                          | :   |                      |
| In re:                                                   | :   | Chapter 11           |
|                                                          | :   |                      |
| THE ROMAN CATHOLIC DIOCESE OF                            | :   | Case No. 20-12345 (___) |
| ROCKVILLE CENTRE, NEW YORK,[1]                           | :   |                      |
|                                                          | :   |                      |
|      Debtor.                    | :   |                      |

---

### INTERIM ORDER (I) AUTHORIZING THE CONTINUED
### USE OF THE DEBTOR'S CASH MANAGEMENT
### SYSTEM, BANK ACCOUNTS AND BUSINESS
### FORMS AND (II) GRANTING RELATED RELIEF

This Court has considered the *Debtor's Motion for Entry of Interim and Final Orders (I)*

*Authorizing the Continued Use of the Debtor's Cash Management System, Bank Accounts and*

*Business Forms and (II) Granting Related Relief* (the "Motion"),[2] the First Day Declaration, the

statements of counsel and the evidence adduced with respect to the Motion at a hearing before

this Court (the "Hearing").  This Court has found that (i) this Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28

U.S.C. § 157(b), (iii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409,

(iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is

good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is

applicable.  After due deliberation, this Court has determined that the relief requested in the

Motion is in the best interests of the Debtor, its estate and its creditors; and good and sufficient

cause having been shown;

---

[1]     The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED on an interim basis as set forth herein.

2.        The Debtor is authorized to: (a) maintain its Cash Management System, in substantially the same form as the Cash Management System described in the Motion; (b) receive and disburse funds held for others and donor-restricted funds into and out of the FHO Accounts; (c) implement ordinary course changes to the Cash Management System; (d) to use its existing Credit Card Accounts, including (i) to pay in the ordinary course any charges and fees incurred prepetition or postpetition and (ii) to incur unsecured debt under the Credit Card Accounts in the ordinary course of business; (e) open and close Bank Accounts, provided, however, that the Debtor gives notice to the U.S. Trustee and any official committees appointed in this chapter 11 case prior to opening or closing a Bank Account; (f) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform its obligations under the documents governing the Bank Accounts; and (g) utilize existing Business Forms.

3.        The Debtor is authorized to continue to use the Bank Accounts under existing account numbers without interruption.

4.        The Debtor shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, its books and records, to the same extent by the Debtor before the Petition Date.

5.        The Non-Debtors are authorized to continue to utilize their respective Non-Debtor Accounts in the ordinary course of business, including to any make payments on account of obligations of the Non-Debtors incurred before or after the Petition Date.

6.      The Banks are authorized to continue to service and administer the Bank

Accounts as debtor-in-possession accounts without interruption, and to receive, process, honor

and pay any and all checks, ACH transfers and other instructions for payment, drafts drawn on or

electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or

makers thereof or other persons or parties entitled to issue instructions with respect thereto, as

the case may be, provided, however, that any check, advice, draft or other notification drawn or

issued by the Debtor before the Petition Date may be honored by any bank only if directed by the

Debtor.  Nothing in this Order shall require any Bank to process, honor and pay any checks,

make ACH transfers or honor other instructions for payment, drafts drawn on or electronic

transfer requests made on, the Bank Accounts, whether in the ordinary course of business or

otherwise, when such action requires the Bank to extend credit to the Debtor.

7.      All Banks provided with notice of this Order maintaining any of the Bank

Accounts shall not honor any checks issued against the Bank Accounts prior to the

commencement of this chapter 11 case, except as otherwise authorized by an order of this Court

and directed by the Debtor.

8.      The Debtor shall not be required to include the legend "D.I.P." and the

corresponding bankruptcy case number on existing checks or business forms; provided, however,

that any new check stock ordered by the Debtor shall contain the designation "Debtor-in-

Possession;" provided further, that, to the extent reasonably practicable, the Debtor will cause

any checks that are generated electronically during this chapter 11 case to contain the designation

"Debtor in Possession."

9.      The Banks are authorized to accept and honor all representations from the Debtor

regarding which checks, drafts, wires or ACH transfers should be honored or dishonored

consistent with any order of this Court, whether such checks, drafts, wires or ACH transfers are dated prior to, on, or subsequent to the Petition Date; provided, however, that to the extent the Debtor directs the Banks to dishonor any disbursements or the Banks inadvertently dishonor any disbursements, the Debtor may issue replacement disbursements consistent with the orders of this Court.  The Banks shall not be liable to any party on account of: (a) following the Debtor's instructions or representations as to any order of this Court; (b) honoring any prepetition check or item in a good faith belief that this Court has authorized such prepetition check or item to be honored; or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.

10.     Any Bank, without further order of this Court, is (a) authorized to charge, and the Debtor is authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtor; and (b) authorized, but not directed, to charge back returned items to the Bank Accounts in the normal course of business.

11.     To the extent that any of the Bank Accounts do not comply with section 345(b) of the Bankruptcy Code or any other requirements of the U.S. Trustee, the Debtor is hereby granted a 45-day extension from the Petition Date to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee; provided, however, that such extension is without prejudice to the Debtor's right to request a further extension or the waiver of the requirements of section 345(b) of the Bankruptcy Code in this chapter 11 case.

12.     Any Banks are further authorized to (a) honor the Debtor's directions with respect to the opening and closing of any Bank Account and (b) accept and hold, or invest, the Debtor's

funds in accordance with the Debtor's instructions; <u>provided</u>, in each case, that the Debtor's

Banks shall not have any liability to any party for relying on such representations.

13.     Nothing in the Motion or this Interim Order, nor the Debtor's payment of claims

pursuant to this Interim Order, shall be deemed or construed as: (a) an admission as to the

validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim

on any grounds; (c) a promise to pay any claim; or (d) a request to assume any executory

contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient

notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such

notice.

15.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to

the payments authorized by this Order.

16.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(a) and 6004(h)

or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable

upon its entry.

17.     The final hearing (the "<u>Final Hearing</u>") to consider entry of the Final Order is

scheduled for _____, 2020 at ____ _.m. (prevailing Eastern time) before this Court.  On or

before _____, 2020, the Debtor shall serve, by United States mail, first-class postage

prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing</u>

<u>Notice</u>"), together with copies of this Interim Order and the Motion, on: (a) the parties having

been given notice of the Interim Hearing, (b) any party which has filed prior to such date a

request for notices with this Court and (c) counsel for the official committee of unsecured

creditors (the "<u>Committee</u>"). The Final Hearing Notice shall state that any party in interest

objecting to the entry of the proposed Final Order shall file written objections with the Clerk of

Court no later than on _____, 2020 at 4:00 p.m. (prevailing Eastern time), which

objections shall be served so as to be received on or before such date by: (a) the Debtor, c/o The

Roman Catholic Diocese of Rockville Centre, New York, 50 North Park Avenue P.O. Box 9023,

Rockville Centre, NY 11571-9023; (b) proposed counsel to the Debtor, Jones Day, 250 Vesey

Street, New York, New York 10281-1047 Attn: Corinne Ball, Esq., Todd Geremia, Esq.,

Benjamin Rosenblum, Esq., Benjamin Thomson, Esq.; (c) William K. Harrington, U.S.

Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York,

NY 10014, Attn: Greg M. Zipes, Esq. and Shara Cornell, Esq; and (d) counsel for the

Committee.

18.    The Debtor is hereby authorized to take such actions and to execute such

documents as may be necessary to implement the relief granted in this Order.

19.    The requirements set forth in Local Rule 9013-1(a) are satisfied.

20.    This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the interpretation, implementation and/or enforcement of this Order.


Dated: _____, 2020       _____
      New York, New York                             UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**PROPOSED FINAL ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF | : | Case No. 20-12345 (___) |
| ROCKVILLE CENTRE, NEW YORK,[1] | : | |
| | : | |
| Debtor. | : | |
| | : | |

**FINAL ORDER (I) AUTHORIZING THE CONTINUED**
**USE OF THE DEBTOR'S CASH MANAGEMENT**
**SYSTEM, BANK ACCOUNTS AND BUSINESS**
**FORMS AND (II) GRANTING RELATED RELIEF**

This Court has considered the *Debtor's Motion for Entry of Interim and Final Orders (I)*

*Authorizing the Continued Use of the Debtor's Cash Management System, Bank Accounts and*

*Business Forms and (II) Granting Related Relief* (the "Motion"),[2] the First Day Declaration, the

statements of counsel and the evidence adduced with respect to the Motion at a hearing before

this Court (the "Hearing").  This Court has found that (i) this Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28

U.S.C. § 157(b), (iii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409,

(iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is

good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is

applicable.  After due deliberation, this Court has determined that the relief requested in the

Motion is in the best interests of the Debtor, its estate and its creditors; and good and sufficient

cause having been shown;

---

[1]   The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtor is authorized to: (a) maintain its Cash Management System, in substantially the same form as the Cash Management System described in the Motion; (b) receive and disburse funds held for others and donor-restricted funds into and out of the FHO Accounts; (c) implement ordinary course changes to the Cash Management System; (d) to use its existing Credit Card Accounts, including (i) to pay in the ordinary course any charges and fees incurred prepetition or postpetition and (ii) to incur unsecured debt under the Credit Card Accounts in the ordinary course of business; (e) open and close Bank Accounts, provided, however, that the Debtor gives notice to the U.S. Trustee and any official committees appointed in this chapter 11 case prior to opening or closing a Bank Account; (f) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform its obligations under the documents governing the Bank Accounts; and (g) utilize existing Business Forms.

3.      The Debtor is authorized to continue to use the Bank Accounts under existing account numbers without interruption.

4.      The Debtor shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, its books and records, to the same extent by the Debtor before the Petition Date.

5.      The Non-Debtors are authorized to (a) continue to utilize their respective Non-Debtor Accounts in the ordinary course of business, including to any make payments on account of obligations of the Non-Debtors incurred before or after the Petition Date, and (b) transfer any

Non-Debtor funds from the Non-Debtor Accounts to new accounts not in the Debtor's name
when such accounts are opened.

6.      The Banks are authorized to continue to service and administer the Bank
Accounts as debtor-in-possession accounts without interruption, and to receive, process, honor
and pay any and all checks, ACH transfers and other instructions for payment, drafts drawn on or
electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or
makers thereof or other persons or parties entitled to issue instructions with respect thereto, as
the case may be, provided, however, that any check, advice, draft or other notification drawn or
issued by the Debtor before the Petition Date may be honored by any bank only if directed by the
Debtor.  Nothing in this Order shall require any Bank to process, honor and pay any checks,
make ACH transfers or honor other instructions for payment, drafts drawn on or electronic
transfer requests made on, the Bank Accounts, whether in the ordinary course of business or
otherwise, when such action requires the Bank to extend credit to the Debtor.

7.      All Banks provided with notice of this Order maintaining any of the Bank
Accounts shall not honor any checks issued against the Bank Accounts prior to the
commencement of this chapter 11 case, except as otherwise authorized by an order of this Court
and directed by the Debtor.

8.      The Debtor shall not be required to include the legend "D.I.P." and the
corresponding bankruptcy case number on existing checks or business forms; provided, however,
that any new check stock ordered by the Debtor shall contain the designation "Debtor-in-
Possession;" provided further, that, to the extent reasonably practicable, the Debtor will cause
any checks that are generated electronically during this chapter 11 case to contain the designation
"Debtor in Possession."

9.      The Banks are authorized to accept and honor all representations from the Debtor regarding which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court, whether such checks, drafts, wires or ACH transfers are dated prior to, on, or subsequent to the Petition Date; provided, however, that to the extent the Debtor directs the Banks to dishonor any disbursements or the Banks inadvertently dishonor any disbursements, the Debtor may issue replacement disbursements consistent with the orders of this Court.  The Banks shall not be liable to any party on account of: (a) following the Debtor's instructions or representations as to any order of this Court; (b) honoring any prepetition check or item in a good faith belief that this Court has authorized such prepetition check or item to be honored; or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.

10.     Any Bank, without further order of this Court, is (a) authorized to charge, and the Debtor is authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtor; and (b) authorized, but not directed, to charge back returned items to the Bank Accounts in the normal course of business.

11.     To the extent that any of the Bank Accounts do not comply with section 345(b) of the Bankruptcy Code or any other requirements of the U.S. Trustee, the Debtor is hereby granted a 45-day extension from the Petition Date to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee; provided, however, that such extension is without prejudice to the Debtor's right to request a further extension or the waiver of the requirements of section 345(b) of the Bankruptcy Code in this chapter 11 case.

12.     Any Banks are further authorized to (a) honor the Debtor's directions with respect to the opening and closing of any Bank Account and (b) accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions; provided, in each case, that the Debtor's Banks shall not have any liability to any party for relying on such representations.

13.     Nothing in the Motion or this Final Order, nor the Debtor's payment of claims pursuant to this Final Order, shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; or (d) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

15.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

16.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(a) and 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted in this Order.

18.     The requirements set forth in Local Rule 9013-1(a) are satisfied.

19.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the interpretation, implementation and/or enforcement of this Order.

Dated: _____, 2020
   New York, New York

         _____
         UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**SCHEDULE OF BANK ACCOUNTS**

| Account Name | Bank | Type of Account | Last 4 Digits of Acct. # |
|---|---|---|---|
| Main Operating Account | JPMorgan Chase | Checking | 0928 |
| Main Money Market Account | JPMorgan Chase | Money Market | 0769 |
| Utilities Adequate Assurance Account | JPMorgan Chase | Checking | 2063 |
| IOR Account (USD) | Institute for the Works of Religion | Checking | 1001 |
| IOR Account (EUR) | Institute for the Works of Religion | Checking | 1002 |
| St. Pius Residence Operating Account | JPMorgan Chase | Checking | 7252 |
| Pastoral Care Account | JPMorgan Chase | Checking | 6502 |
| Signature Money Market Account | Signature Bank | Money Market | 3567 |
| DSI Dividend Account | JPMorgan Chase | Checking | 6552 |
| Mission Office Operating Account | JPMorgan Chase | Checking | 0902 |
| Mission Office Money Market Account | JPMorgan Chase | Money Market | 0767 |
| PSIP Operating Account^ | JPMorgan Chase | Checking | 0936 |
| PSIP Money Market Account^ | JPMorgan Chase | Money Market | 0770 |
| Network Adjusters Disbursement Account^ | JPMorgan Chase | Checking | 0932 |
| NYS Workers Comp Deposit Account^ | NYS Workers Compensation Board | US Treasury Bond | 1432 |
| PSIP LC Collateral Account^ | JPMorgan Chase | Certificate of Deposit | 8495 |
| Wageworks Claim Reimbursement Intermediate Account^ | JPMorgan Chase | Zero Balance Account | 7695 |
| PSIP Claims Intermediate Account^ | JPMorgan Chase | Zero Balance Account | 0656 |
| CMA Operating Account* | JPMorgan Chase | Checking | 0969 |
| CMA Money Market Account* | JPMorgan Chase | Money Market | 0773 |
| Health & Welfare Contribution Account* | JPMorgan Chase | Checking | 1128 |
| Health & Welfare Contribution Money Market Account* | JPMorgan Chase | Money Market | 4873 |
| Health & Welfare Paying Agent Account* | JPMorgan Chase | Checking | 0951 |

^ Denotes an Insurance Account
* Denotes a FHO Account
† Denotes a Non-Debtor Account

| Account Name | Bank | Type of Account | Last 4 Digits of Acct. # |
|---|---|---|---|
| Health & Welfare Paying Agent Money Market Account* | JPMorgan Chase | Money Market | 0772 |
| Lay Pension Contribution Account* | JPMorgan Chase | Checking | 8210 |
| Lay Pension Money Market Account* | JPMorgan Chase | Money Market | 1340 |
| Priest Pension Contribution Account* | JPMorgan Chase | Checking | 3148 |
| Priest Pension Money Market Account* | JPMorgan Chase | Money Market | 8192 |
| Priest Welfare & Benefits Contribution Account* | JPMorgan Chase | Checking | 0910 |
| Priest Welfare & Benefits Money Market Account* | JPMorgan Chase | Money Market | 0768 |
| 403(b) Contribution Account* | JPMorgan Chase | Checking | 2823 |
| NSA Operating Account* | JPMorgan Chase | Checking | 3593 |
| NSA Money Market Account* | JPMorgan Chase | Money Market | 3154 |
| Legacy Endowment Funds* | Unitas Investment Fund, Inc. | Brokerage | Various |
| Estate of Spanburg CD* | Peoples United Bank | Certificate of Deposit | 1315 |
| Restricted Donations/Collections Account* | JPMorgan Chase | Checking | 5710 |
| High School Operating Account[†] | Citibank | Checking | 8107 |
| High School Money Market Account[†] | Citibank | Money Market | 2259 |
| Cursillo de Cristiandad Operating Account[†] | JPMorgan Chase | Checking | 3151 |

^ Denotes an Insurance Account
* Denotes a FHO Account
[†] Denotes a Non-Debtor Account

**EXHIBIT D**

**CASH MANAGEMENT SYSTEM FLOWCHART**

# CASH MANAGEMENT SYSTEM FLOW CHART



Note: there are additional accounts not captured in above diagram. See Exhibit C: Schedule of Bank Accounts for account numbers and names of depository institutions where accounts are located

# PSIP CASH MANAGEMENT SYSTEM FLOW CHART





= revenue or proceeds

= Diocese account

= other ministry members

= other 3rd party

*Note: there are additional accounts not captured in above diagram. See Exhibit C: Schedule of Bank Accounts for account numbers and names of depository institutions where accounts are located*