JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew M. Butler
250 Vesey Street
New York, New York 10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306

*Proposed Counsel for the Debtor
and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | : |
| | : |
| Debtor. | : |

Chapter 11

Case No. 20-12345

**DEBTOR'S MOTION FOR AN
ORDER ESTABLISHING ADEQUATE ASSURANCE
PROCEDURES WITH RESPECT TO DEBTOR'S UTILITY PROVIDERS**

The above-captioned debtor and debtor in possession (the "Debtor") moves the Court

(this "Motion"), pursuant to section 366 of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 6003 and 6004 Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rule 9013-1(a) of Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the Southern District of New York (the "Local Rules"), for the entry of an

order, in substantially the form attached as Exhibit A (the "Proposed Order"): (i) establishing

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

procedures for addressing any requests that a utility company may make for additional assurance of payment (collectively, the "Utility Companies" and each a "Utility Company");

(ii) prohibiting the Utility Companies from altering, refusing or discontinuing services to, or discriminating against, the Debtor; (iii) approving the proposed adequate assurance deposit as adequate assurance of postpetition payment to the Utility Companies; and (iv) granting related relief.  In support of this Motion, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A.      General Background**

3.      On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate and pursue its religious, non-profit mission and ministry, and manage its properties and affairs as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases, and no statutory committee has been appointed.

4.      The Debtor is the seat of the Roman Catholic Church on Long Island.  The State of New York established the Debtor as a religious corporation in 1958.  *See* 1958 N.Y. SESS. LAWS Ch. 70 (1958), § 1.  The Debtor is one of eight Catholic dioceses in New York and is the eighth-largest diocese in the United States when measured by the number of baptized Catholics. The Debtor's total Catholic population is approximately 1.4 million, which constitutes roughly half of Long Island's total population of 3.0 million.  Pursuit of the Debtor's mission depends upon the continuing financial support provided by the faithful in anticipation of, and in mutual

support of, the Debtor's religious and charitable mission.

5.      To carry out its Catholic mission, the Debtor works closely with its 135 parishes. Parishes play a central role in the lives of Catholics by administering key aspects of the Catholic Faith, including: baptism, education, communion, Mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support. None of the parishes are debtors herein. In addition, the Debtor supports separate charitable organizations to further its pursuit of the Catholic mission to serve the poor, the hungry, those in need, and those that cannot help themselves. None of those entities are debtors herein. The Debtor is also continuing its outreach to comfort, educate, and enlighten the faithful, especially in these times of quarantine and isolation due to COVID-19 protocols and precautions.

6.      Following the enactment in 2019 of the Child Victims Act ( the "CVA"), which revived what had been time-barred claims, approximately 200 lawsuits have been brought by abuse claimants against the Debtor. In its effort to fairly and equitably address this tragic legacy, the Debtor has undertaken a substantial effort to identify and marshal over 60 years of insurance policies, including both primary and excess coverage, with the goal of securing a valuable resource of the Debtor, its parishes, and its affiliates, so that it can be used for the care and compensation of abuse survivors. The Debtor has made such insurance policies and related information, together with historical financial information for itself and its charitable, educational, and service affiliates, available to counsel for the abuse claimants and the Debtor's insurers.

7.      Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the *Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring*

*Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11*

*Petition and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date.

### B.   The Utility Companies

8.      The Debtor currently uses various types of utility services, including, but not limited to, electric, phone and telecommunications, water, waste, and other similar utility services (collectively, the "Utility Services") provided by, among others, the Utility Companies identified on Exhibit C hereto (the "Utility List").[2]   The Debtor estimates that its average total monthly obligations to the Utility Companies on account of services rendered is approximately $48,712.87.

9.      The Utility Companies provide services essential to the Debtor's operations.   As such, any interruption in Utility Services could prove damaging.   Any disruption in this service would disrupt an essential element of the Debtor's organization.   Temporary or permanent discontinuation of Utility Services could irreparably disrupt the Debtor's operations and fundamentally undermine the Debtor's efforts in this chapter 11 case.

10.      Included in the Utility Services are amounts the Debtor pays on account of utilities for senior priests residing at the St. Pius X Residence.   The St. Pius residence is located within Dominican Village, a not-for-profit Retirement and Assisted Living Community established by the Amityville Dominican Sisters on the grounds of their motherhouse on Long Island.   The Debtor receives reimbursements on account of such utility payments in full on a

---

[2] For each Utility Company, Exhibit C identifies, to the extent known:  (a) the name and type of service of the Utility Company; and (b) the address and contact information for the Utility Company.  The inclusion of any entity on, or any omission of any entity from, Exhibit C is not an admission by the Debtor that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtor reserves its rights with respect thereto.  In addition, the Debtor is requesting that this Motion apply to all its Utility Companies, whether or not any given Utility Company is included on the Utility List.

monthly basis from the Diocese of Rockville Centre Healthcare and Other Assistance Plan for

Retired And Disabled Diocesan Priests.  The Debtor expects this arrangement to cease in 2021

when the priest retirement plan will take direct responsibility for the utility payments.  The

Debtor expects to continue to receive monthly reimbursement in full on account of payments

made for utilities at the St. Pius X Residence and thus is requesting authority, but not direction,

to continue this practice during the chapter 11 case.

11.     Section 366(c)(2) of the Bankruptcy Code requires the Debtor to provide the

Utility Companies with adequate "assurance of payment" within thirty days of the

commencement of this chapter 11 case to prevent a utility from altering, refusing or

discontinuing a Debtor's utility service.  The Debtor proposes to satisfy the requirement to

provide "adequate assurance" in two ways.

12.     *First*, the Debtor intends to pay any postpetition obligations to the Utility

Companies in a timely fashion and in the ordinary course, as it has substantially done prior to the

Petition Date.

13.     *Second*, the Debtor also proposes to deposit, as adequate assurance of payment,

approximately $24,356.43, equal to half a month of the Debtor's average cost of services for the

Utility Services, into a segregated, interest bearing account (the "Adequate Assurance Deposit")

within 20 days of the Petition Date.  The Debtor estimates that the proposed Adequate Assurance

Deposit is sufficient under the circumstances, particularly in light of any prepetition deposits,

letters of credit, surety bonds or other similar forms of adequate assurance already provided to

the Utility Companies.  The Debtor submits that the Adequate Assurance Deposit, together with

the Debtor's ability to pay for future utility services in the ordinary course of business

(the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future

payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy

Code.

### C.   The Adequate Assurance Procedures

14.   To address the right of any Utility Company under section 366(c)(2) of the

Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtor proposes to

adopt and follow the following procedures (the "Adequate Assurance Procedures"):

(a)   Any Utility Company desiring adequate assurance of future payment for utility service beyond the Proposed Adequate Assurance must serve a request (an "Additional Assurance Request") at the following addresses: (i) Roman Catholic Diocese of Rockville Centre, 50 North Park Ave. PO Box 9023 Rockville Centre, NY 11571 (Attn: Thomas Renker); and (ii) Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Corinne Ball, Esq., Benjamin Rosenblum, Esq., and Andrew M. Butler, Esq.) (collectively, the "Notice Parties").

(b)   Any Additional Assurance Requests must: (i) be made in writing; (ii) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company; (iii) set forth the location(s) for which Utility Services are provided and the relevant account number(s); (iv) describe any deposits, prepayments or other security currently held by the requesting Utility Company; (v) describe any payment delinquency or irregularity by the Debtor for the postpetition period, if any; and (vi) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficiently adequate to assure future payment.

(c)   If any Additional Assurance Request is delivered to the Notice Parties, the Debtor shall have 21 days from receipt of such Additional Assurance Request (the "Resolution Period") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Resolution Period may be extended by agreement or approval of the Court.

(d)   The Debtor is authorized to resolve, in its discretion, any Additional Assurance Request by mutual agreement with the requesting Utility Company without further order of the Court and, in connection with any such agreement and in its discretion, may provide the requesting Utility Company with alternative adequate assurance of payment, including cash deposits, prepayments or other forms of security, if the Debtor believes such alternative assurance is reasonable.

(e)   If the Debtor resolves any Additional Assurance Request by mutual agreement with the requesting Utility Company, the Debtor may reduce

the Adequate Assurance Deposit in an amount equal to the average cost of half a month of such requesting Utility Company's services.

(f)    If the Debtor determines that an Additional Assurance Request is not reasonable and the parties are not able to resolve such request during the Resolution Period, the Debtor will request a hearing before the Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "<u>Determination Hearing</u>"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

(g)    Pending resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such a request may not discontinue, alter or refuse service to the Debtor on account of unpaid charges for prepetition services or an alleged lack of adequate assurance of payment.

**D.    Modifications to the Utility List**

15.    If the Debtor identifies additional Utility Companies—or determines that a company was improperly designated as a utility—the Debtor seeks authority, in its discretion, to add or remove parties from the Utility List.  The Debtor will promptly serve on any Utility Company that is subsequently added to the Utility List (a "<u>Subsequently Added Utility</u>") a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, and will increase the Adequate Assurance Deposit by an amount equal to half a month of the Debtor's average cost of services from the Subsequently Added Utility.  For any Utility Company that is subsequently removed from the Utility List, the Debtor will decrease the Adequate Assurance Deposit by an amount equal to half a month of the Debtor's average cost of services from the removed Utility Company.

16.    The Debtor shall have the Resolution Period to resolve any Subsequently Added Utility's Additional Assurance Request by mutual agreement without further order of the Court, or to schedule a Determination Hearing with the Court.  The Debtor requests that the terms of any order approving this Motion, and the Adequate Assurance Procedures set forth therein, apply to any Subsequently Added Utility.  The Debtor further requests that all Utility Companies,

including Subsequently Added Utilities, be prohibited from altering, refusing or discontinuing

Utility Services to the Debtor absent further order of the Court.

## RELIEF REQUESTED

17.    The Debtor requests entry of an order, substantially in the form of the Proposed

Order, (a) establishing procedures for addressing any requests that Utility Companies may make

for additional assurance of payment; (b) prohibiting the Utility Companies from altering,

refusing or discontinuing services to, or discriminating against the Debtor; and (c) approving an

adequate assurance deposit as adequate assurance of postpetition payment to the Utility

Companies.  The Debtor also requests that all applicable banks and other financial institutions

receive, process, honor, and pay all related checks and electronic payment requests, whether such

checks or electronic payment requests were presented before or after the Petition Date, provided

that sufficient funds are on deposit in the applicable account, relating to the Utility Services.

Finally, the Debtor requests that the Proposed Order be enforceable immediately upon entry.

## BASIS FOR RELIEF

**A.    Approval of the Procedures for the Provision
of Adequate Assurance Procedures Is Reasonable and Appropriate**

18.    Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may not alter,

refuse or discontinue a chapter 11 debtor's utility service if the utility receives from the debtor

adequate "assurance of payment" within thirty days of the commencement of the debtor's

chapter 11 case.[3]

---

[3] While section 366(b) of the Bankruptcy Code allows a utility to alter, refuse or discontinue service "if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment," the language of section 366(c)(2) controls here because the Debtor is a chapter 11 debtor.  *See* 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 366.03[2] (16th ed. 2016) ("It is unclear how the 30-day period [in section 366(c)(2) of the Bankruptcy Code] meshes with the normal 20-day period in section 366(b).  The

19.     As detailed in the legislative history of the Bankruptcy Code, section 366 is

designed to protect debtors from utility service cutoffs upon the filing of a bankruptcy case,

while also ensuring that utility companies receive adequate "assurance of payment" for

postpetition utility service.  *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978

U.S.C.C.A.N. 5963, 6306.  Section 366(c)(1) of the Bankruptcy Code provides that "assurance

of payment" can mean several enumerated forms of security (*e.g.*, cash deposits, letters of credit,

prepayment for utility service), as well as "another form of security that is mutually agreed on

between the utility and the debtor or the trustee."  However, section 366(c)(1)(B) expressly

provides that administrative expense priority "shall not constitute an assurance of payment."  In

addition, section 366(c)(3)(B) of the Bankruptcy Code directs that a court may not consider "the

absence of security [before the petition date]," a debtor's prepetition history of making timely

payments to a utility, or the availability of an administrative expense priority, in determining

whether adequate assurance of payment exists.

20.     While section 366(c) of the Bankruptcy Code provides direction as to what does

and does not constitute "assurance of payment" and what can and cannot be used to determine

whether such assurance is adequate, Congress did not divest the Court of its power to determine

what *amount*, if any, is necessary to provide adequate assurance of payment to a Utility

Company.  Section 366(c) of the Bankruptcy Code does not establish a minimum amount of

adequate "assurance of payment," explicitly empowers the Court to determine the appropriate

level of adequate assurance required in each case and permits a party in interest to request

---

(continued…)

better view is that, because section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period in
that subsection, rather than the 20-day period in section 366(b), should apply.").

modification of the amount of adequate assurance after notice and a hearing. *See* 11 U.S.C.

§ 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may

order modification of the amount of an assurance of payment . . . .").

21.     Thus, section 366 of the Bankruptcy Code would not prevent a court from ruling

that, on the facts of the case before it, the amount required to adequately assure future payment

to a utility company is nominal, or even zero.  Prior to the enactment of section 366(c) of the

Bankruptcy Code, courts enjoyed precisely the same discretion to make such rulings pursuant to

section 366(b) of the Bankruptcy Code, and frequently did. *See Virginia Elec. & Power Co. v.*

*Caldor, Inc.– N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security'

should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to

'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the

power to require no 'deposit or other security' where none is necessary to provide a utility

supplier with 'adequate assurance of payment.'").

22.     Moreover, the requirement of the statute is that the assurance of payment only be

"adequate."  Courts construing section 366(b) of the Bankruptcy Code have long recognized that

adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability

to pay. *See*, *e.g.*, *In re Caldor, Inc.– N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b)

requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide

a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute

guarantee of payment.'") (citation omitted), *aff'd sub nom.*, 117 F.3d 646 (2d Cir. 1997); *In re*

*Adelphia Bus. Solutions, Inc.*, 280 BR. 63, 80 (Bankr. S.D.N.Y. 2002) (same); *Steinebach v.*

*Tucson Elec. Power Co (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate

assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility

be protected from an unreasonable risk of non-payment"); *In re Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b) of the Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances").[4]

23.    Additionally, courts are not bound by state or local regulations that set adequate assurance of payment postpetition.  *In re Begley*, 41 B.R. 402, 405-06 (Bankr. E.D. Pa. 1984), *aff'd*, 760 F.2d 46 (3d Cir. 1985).  Therefore, despite its language allowing a utility to take adverse action against the debtor should the debtor fail to provide adequate assurance of future payment "satisfactory to the utility," section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once a court determines the appropriate amount of adequate assurance.

24.    The Debtor submits that, given the foregoing, entry of the Proposed Order is consistent with, and fully satisfies, the requirements of section 366 of the Bankruptcy Code.  The Debtor proposes to (a) place cash deposits into an escrow account for the Utility Companies' benefit and (b) establish procedures pursuant to which the Utility Companies can seek greater or different security, to the extent necessary.  Such assurance of payment should significantly alleviate, if not eliminate, any concern of non-payment on the part of the Utility Companies, and is thus "adequate."

25.    Similar relief is routinely granted in other cases.  *See, e.g., In re FTD Companies, Inc.*, No. 19-11240 (LSS) (Bankr. D. Del. July 1, 2019) [ECF No. 272]; *In re BCBG Max Azria*

---

[4] Courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Caldor*, 117 F.3d at 650 (quoting *Penn Jersey*, 72 B.R. at 985).

*Global Holdings, LLC,* No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) [ECF No. 240]

(approving payment equal to two weeks of utility service into a segregated interest bearing

account as adequate assurance to utility providers); *In re Breitburn Energy Partners LP,* No. 16-

11390 (SMB) (Bankr. S.D.N.Y. June 16, 2016) [ECF No. 145] (same); *In re Peabody Energy*

*Corp.*, No. 16-42529 (Bankr. E.D. Mo. Apr. 15, 2016) [ECF No. 122]; *In re Sabine Oil & Gas*

*Corp.,* No. 15-11835 (SCC) (Bankr. S.D.N.Y. Aug. 10, 2015) [ECF No. 144] (same).[5]

> **B.    The Court Should Authorize All Applicable Banks and Financial Institutions to Honor and Pay Checks in Connection with the Adequate Assurance Procedures**

26.    In addition, by this Motion, the Debtor requests that all applicable banks and other

financial institutions (collectively, the "Banks") be authorized, when requested by the Debtor, to

receive, process, honor and pay any and all checks presented for payment of, and to honor all

fund transfer requests made by, the Debtor related to the payment of Utility Services, including

the Adequate Assurance Procedures, whether such checks were presented, or fund transfer

requests were submitted, prior to or after the Petition Date, provided that sufficient funds are

available in the applicable accounts to make the payments.  The Debtor represents that these

checks are drawn on specific disbursement accounts and can be readily identified as relating

directly to the authorized payment of the Utility Services.  Accordingly, the Debtor believes that

such checks should be honored.

<u>**REQUESTS FOR IMMEDIATE RELIEF AND WAIVER OF STAY**</u>

27.    Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtor seeks

(a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of

---

[5] Because of their voluminous nature, the orders cited herein are not attached to this Motion.  Copies of these orders, however, are available upon request to proposed counsel to the Debtor.

the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  From this, courts have ruled that, where the failure to grant any such requested relief would result in immediate and irreparable harm to a debtor's estate, a court may allow a debtor to pay all or part of a claim that arose prepetition immediately.

28.     As set forth above, providing adequate assurance to the Utility Companies is necessary to prevent immediate and irreparable damage to the Debtor and preserve the value of its assets.  If the Utility Companies were to cease the transmission of Utility Services to the Debtor, the Debtor's operations would come to an immediate halt, thereby destroying the value of the Debtor's ministry.  Accordingly, the Debtor submits that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## RESERVATION OF RIGHTS

29.     Nothing contained herein is intended to be or should be construed as:  (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute a claim for the provision of Utility Services; or (e) the assumption of any executory contract or unexpired lease.

## NOTICE

30.      The Debtor will provide notice of this Motion to:  (a) the Office of the United
States Trustee for Region 2; (b) the 35 law firms representing the largest number of holders of
CVA claims against the Debtor; (c) the Internal Revenue Service; (d) the office of the attorney
general for the State of New York; (h) the United States Attorney's Office for the Southern
District of New York; (i) the Utility Companies identified on Exhibit C hereto; (j) the relevant
Banks; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The
Debtor submits that, in light of the nature of the relief requested, no other or further notice need
be given.

## NO PRIOR REQUEST

31.      No prior request for the relief sought herein has been made to this Court or any
other court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order

and grant such other and further relief as may be appropriate.

Dated:  October 1, 2020
       New York, New York

Respectfully submitted,

/s/  Corinne Ball
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew M. Butler
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  cball@jonesday.com
      trgeremia@jonesday.com
      brosenblum@jonesday.com
      abutler@jonesday.com

*Proposed Counsel for the Debtor and
Debtor in Possession*

**EXHIBIT A**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| THE ROMAN CATHOLIC DIOCESE OF | : Case No. 20-12345 (___) |
| ROCKVILLE CENTRE, NEW YORK, | : |
| | : |
| Debtor. | : |

## ORDER ESTABLISHING ADEQUATE ASSURANCE
## PROCEDURES WITH RESPECT TO THE DEBTOR'S UTILITY PROVIDERS

This Court has considered the *Debtor's Motion for Order Establishing Adequate Assurance Procedures with Respect to the Debtor's Utility Providers* (the "Motion"),[1] the First Day Declaration, and the statements of counsel and the evidence adduced with respect to the Motion at a hearing before this Court, if any (the "Hearing"). This Court has found that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) notice of the Motion and the Hearing was sufficient under the circumstances and (iv) there is good cause to waive the 14-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable. After due deliberation, this Court has determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors, and is necessary to prevent immediate and irreparable harm to the Debtor and its estate; and good and sufficient cause having been shown;

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2.      The Debtor is authorized, in the Debtor's discretion, to pay any amounts as described herein.

3.      Subject to the procedures described below, no Utility Company, including any Subsequently Added Utility, may (a) alter, refuse, terminate or discontinue utility services to, and/or discriminate against, the Debtor on the basis of the commencement of this chapter 11 case or on account of outstanding prepetition invoices or (b) require additional assurance of payment, other than the Proposed Adequate Assurance, as a condition to the Debtor receiving such utility services.

4.      The Debtor shall deposit, as adequate assurance, $24,356.43 into a newly created, segregated, interest bearing bank account with a banking institution that has executed a uniform deposit agreement with the U.S. Trustee (the "Adequate Assurance Deposit") within 20 days of the Petition Date.

5.      The Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for future utility services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code.

6.      The following Adequate Assurance Procedures are approved in all respects:

(a)      Any Utility Company desiring adequate assurance of future payment for utility service beyond the Proposed Adequate Assurance must serve a request (an "Additional Assurance Request") at the following addresses: (i) Roman Catholic Diocese of Rockville Centre, 50 North Park Ave. PO Box 9023 Rockville Centre, NY 11571 (Attn: Thomas Renker); and (ii) Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Corinne Ball, Esq., Benjamin Rosenblum, Esq., and Andrew M. Butler, Esq.).

(b)      Any Additional Assurance Requests must: (i) be made in writing; (ii) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company; (iii) set forth the location(s) for which utility services are provided and the relevant account number(s);

(iv) describe any deposits, prepayments or other security currently held by the requesting Utility Company; (v) describe any payment delinquency or irregularity by the Debtor for the postpetition period, if any; and (vi) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficiently adequate to assure future payment.

(c)     If any Additional Assurance Request is delivered to the Notice Parties, the Debtor shall have 21 days from receipt of such Additional Assurance Request (the "Resolution Period") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request.  The Resolution Period may be extended by agreement or approval of the Court.

(d)     The Debtor is authorized to resolve, in its discretion, any Additional Assurance Request by mutual agreement with the requesting Utility Company without further order of this Court and, in connection with any such agreement and in its discretion, may provide the requesting Utility Company with alternative adequate assurance of payment, including cash deposits, prepayments or other forms of security, if the Debtor believes such alternative assurance is reasonable.

(e)     If the Debtor resolves any Additional Assurance Request by mutual agreement with the requesting Utility Company, the Debtor may reduce the Adequate Assurance Deposit in an amount equal to the average cost of half a month of such requesting Utility Company's services.

(f)     If the Debtor determines that an Additional Assurance Request is not reasonable and the parties are not able to resolve such request during the Resolution Period, the Debtor will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "Determination Hearing"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

(g)     Pending resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such a request may not discontinue, alter or refuse service to the Debtor on account of unpaid charges for prepetition services or an alleged lack of adequate assurance of payment.

7.     All Utility Companies shall be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code unless and until: (a) the Debtor, in its discretion, agrees to (i) an Additional Assurance Request or (ii) an alternative assurance of payment with the Utility Company during the Resolution Period; or (b) this Court enters an order at any Determination Hearing requiring that additional adequate assurance of payment be provided.

8.     To the extent that the procedures set forth herein are not in technical compliance with certain time periods set forth in section 366 of the Bankruptcy Code, the Debtor has demonstrated good cause for the extension of the 30-day period and 20-day protective time periods under sections 366(c)(2) and 366(b) of the Bankruptcy Code, respectively.

9.     Nothing herein constitutes a finding that any entity is or is not a Utility Company hereunder or under section 366 of the Bankruptcy Code, whether or not such entity is listed on the Utility List.

10.     The Debtor is authorized, in its discretion, to amend the Utility List to add any Utility Company, and this order and the Adequate Assurance Procedures shall apply to any Subsequently Added Utility.  The Debtor shall add to the Adequate Assurance Deposit an amount equal to half a month of the Debtor's average cost of utility service for each Subsequently Added Utility.

11.     The Debtor shall serve a copy of this order on each Utility Company listed on the Utility List within two business days after the date of this order is entered, and shall promptly serve this order on any Subsequently Added Utility.

12.     The Debtor shall have the Resolution Period to resolve any Subsequently Added Utility's Additional Assurance Request by mutual agreement without further order of this Court or to schedule a Determination Hearing with this Court.

13.     The relief granted herein is for all Utility Companies providing Utility Services to the Debtor and on Utility Companies subsequently added to the Utility List when they are served with this order.

14.     Nothing in the Motion or this order, nor the Debtor's payment of claims pursuant to this order, shall be deemed or construed as: (a) an admission as to the validity of any claim

against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is a claim of a type specified or defined hereunder; or (e) the assumption of any executory contract or unexpired lease.

15.     The Banks are authorized, when requested by the Debtor, to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by, the Debtor related to the payment of Utility Services, including as provided in the Adequate Assurance Procedures, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.  The Banks are authorized to rely on the Debtor's designation of any particular check or funds transfer as approved by this order.

16.     Any Bank that honors a prepetition check or other item drawn on any account that is the subject of this order either: (a) at the direction of the Debtor; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite the above-described protective measures, shall not be liable to the Debtor or its estate on account of such prepetition check or other item being honored postpetition.

17.     Nothing contained in the Motion or this order is intended or should be construed to create an administrative priority claim on account of any claim.

18.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this order.

19.     This order shall be immediately effective and enforceable upon its entry.  To the extent that it may be applicable, the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

20.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this order.

21.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this order.


Dated: _____, 2020        _____
        New York, New York          UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

**(UTILITY LIST)**

| | UTILITY PROVIDER | ACCOUNT NUMBER | ADDRESS | SERVICE PROVIDED | PROPOSED ADEQUATE ASSURANCE |
|---|---|---|---|---|---|
| 1. | AT&T | 0541242290001 | C/O Bankruptcy 4331 Communications Dr, Flr 4W Dallas, TX 75211 | Telecom | $8 |
| 2. | Cablevision Lightpath, Inc | 57832 | 1111 Stewart Ave Bethpage, NY 11714 | Telecom | $734 |
| 3. | Cogent Communications Inc | DIOCESEO00001 | 25 Broadway New York, NY 10004 | Telecom | $1,126 |
| 4. | National Grid | 06435-16009, 93302-86004 | 2400 Sunrise Hwy Bellmore, NY 11710 | Natural Gas | $634 |
| 5. | Network Outsource, Inc | N/A | 135 Denton Avenue New Hyde Park, NY 11040 | Telecom | $13,594 |
| 6. | Optimum | 07801-559897-01, 07801-306490-02-5, 07839-406892-02-3, 07858-555405-01-6, 07858-497432-01-0, 07858-502659-01-2 | 1111 Stewart Ave Bethpage, NY 11714 | Telecom | $630 |
| 7. | Premier Global Services | 8781827, 8781827 | 2300 Lakeview Parkway Suite 300 Alpharetta, GA 30009 | Telecom | $78 |
| 8. | Verizon | 152-479-053-0001-80, 251-745-371-0001-22, 251-455-075-0001-92, 454-770-848-0001-79, 651-745-370-0001-52, 651-756-895- | C/O Bankruptcy Administration 500 Technology Drive Suite 550 Weldon Spring, | Telecom | $3,428 |

| | UTILITY PROVIDER | ACCOUNT NUMBER | ADDRESS | SERVICE PROVIDED | PROPOSED ADEQUATE ASSURANCE |
|---|---|---|---|---|---|
| | | 0001-71, 651-455-2666-0001-55, 551-468-452-0001-87, 582446579, 582446579 | MO 63304 | | |
| 9. | Village of Rockville Centre | 042025-001, 042025-000, Diocese Of RVC, 005136-002, 005136-003 | PO Box 950 Rockville Centre, NY 11571-0950 | Electricity/Waste/Water | $2,737 |
| 10. | Windstream | 205526190, 205795484 | ATTN: LESC 4001 Rodney Parham Road Little Rock, AR 72212 | Telecom | $1,387 |