JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Benjamin Thomson
250 Vesey Street
New York, New York  10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306

*Proposed Counsel for Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | : : | Case No. 20-12345 |
| | : | |
| Debtor. | : : | |

### DEBTOR'S MOTION FOR AN ORDER (I) AUTHORIZING THE RETENTION AND PAYMENT, *NUNC PRO TUNC* TO THE PETITION DATE, OF PROFESSIONALS UTILIZED BY THE DEBTOR IN THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING CERTAIN RELATED RELIEF

The above-captioned debtor and debtor-in-possession (the "Debtor") moves the Court

(this "Motion"), pursuant to sections 105(a), 327, 328 and 330 of title 11 of the United States

Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the Southern District of New York

(the "Local Rules"), for the entry of an order, in substantially the form attached as Exhibit A

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

(the "Proposed Order"), (i) authorizing the retention and payment, *nunc pro tunc* as of the

Petition Date, of certain professionals employed by the Debtor in the ordinary course of business

without the submission of separate retention applications and the issuance of separate retention

orders for each individual professional and (ii) granting certain related relief.  In support of this

Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate and pursue its

religious, non-profit mission and ministry, and manage its properties and affairs as a debtor in

possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has

been appointed in this case, and no statutory committee has been appointed.

3.      The Debtor is the seat of the Roman Catholic Church on Long Island.  The State

of New York established the Debtor as a religious corporation in 1958.  *See* 1958 N.Y. SESS.

LAWS Ch. 70 (1958), § 1.  The Debtor is one of eight Catholic dioceses in New York and is the

eighth-largest diocese in the United States when measured by the number of baptized Catholics.

The Debtor's total Catholic population is approximately 1.4 million, which constitutes roughly

half of Long Island's total population of 3.0 million.  Pursuit of the Debtor's mission depends

upon the continuing financial support provided by the faithful in anticipation of, and in mutual

support of, the Debtor's religious and charitable mission.

4.      To carry out its Catholic mission, the Debtor works closely with its 135 parishes. Parishes play a central role in the lives of Catholics by administering key aspects of the Catholic faith, including:  baptism, education, communion, mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support.  None of the parishes are debtors herein.  In addition, the Debtor supports separate charitable organizations to further its pursuit of the Catholic mission to serve the poor, the hungry, those in need, and those that cannot help themselves.  None of those entities are debtors herein.  The Debtor is also continuing its outreach to comfort, educate, and enlighten the faithful, especially in these times of quarantine and isolation due to COVID-19 protocols and precautions.

5.      Following the enactment in 2019 of the Child Victims Act ( the "CVA"), which revived what had been time-barred claims, approximately 200 lawsuits have been brought by abuse claimants against the Debtor.  In its effort to fairly and equitably address this tragic legacy, the Debtor has undertaken a substantial effort to identify and marshal over 60 years of insurance policies, including both primary and excess coverage, with the goal of securing a valuable resource of the Debtor, its parishes, and its affiliates, so that it can be used for the care and compensation of abuse survivors.  The Debtor has made such insurance policies and related information, together with historical financial information for itself and its charitable, educational, and service affiliates, available to counsel for the abuse claimants and the Debtor's insurers.

6.      Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the *Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring*

*Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11*

*Petition and First Day Pleadings* (the "<u>First Day Declaration</u>") filed on the Petition Date.

## RELIEF REQUESTED

7.        Pursuant to sections 105(a), 327, 328 and 330 of the Bankruptcy Code,

Bankruptcy Rule 2014 and Local Rule 2014-1, the Debtor hereby seeks entry of an order,

substantially in the form of the Proposed Order, authorizing it to retain, employ and pay certain

professionals (each, an "<u>Ordinary Course Professional</u>" and, collectively, the "<u>Ordinary Course</u>

<u>Professionals</u>") in the ordinary course of the Debtor's business on the terms and conditions set

forth herein, without the submission of separate retention or fee applications and the issuance of

separate retention and compensation orders for each individual Ordinary Course Professional.

## BASIS FOR RELIEF

8.        The Debtor's officers and management, in the performance of their duties,

regularly call upon a variety of Ordinary Course Professionals to provide services to assist them

and the Debtor in carrying out their assigned duties and responsibilities.  These Ordinary Course

Professionals provide valuable—often critical—assistance in addressing issues important to the

Debtor and its business.  The schedule attached hereto as <u>Exhibit B</u> and incorporated herein by

reference provides a nonexclusive list of the Ordinary Course Professionals the Debtor has

identified to date (the "<u>OCP List</u>").

9.        The Debtor desires to employ the Ordinary Course Professionals to render

professional and other services to the estate in the same manner and for the same purposes as

such services were provided prior to the Petition Date.  It is essential that the employment of the

Ordinary Course Professionals, many of whom are familiar with the Debtor's business and

affairs, be continued, to avoid disruption of the Debtor's normal operations.  It would be costly,

time-consuming and administratively cumbersome for the Debtor and this Court to require each

Ordinary Course Professional to apply separately for approval of its employment and

compensation through the filing of multiple pleadings in these cases.  Requiring separate

applications also is simply unnecessary under applicable law and would be burdensome to the

estate.

### The Ordinary Course Professionals Are Not Professionals Under Section 327(a) of the Bankruptcy Code

10.     To determine whether an entity to be employed in a bankruptcy case is a

"professional" within the meaning of section 327(a) of the Bankruptcy Code, most courts have

applied either a "quantitative" or a "qualitative" test.  See In re First Merchants Acceptance

Corp., Case No. 97-1500, 1997 WL 873551, at *2 (D. Del. Dec. 15, 1997).  Under the

quantitative test, courts have required that an entity providing professional services must play a

"central role" in the administration of the estate before it is considered a professional under

section 327 of the Bankruptcy Code.[2]  Id.  By contrast, under the qualitative test, an entity is

---

[2]     See, e.g., In re Palm Coast, Matanza Shores Ltd. P'ship, 101 F.3d 253, 257 (2d Cir. 1996) (citing In re Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981), as establishing as the "benchmark for the purposes of" section 327 of the Bankruptcy Code that professional persons are "limited to persons in those occupations which play a central role in the administration of the debtor proceeding"); In re Fortune Natural Res. Corp., 366 B.R. 558, 563 (Bankr. E.D. La. 2007) (adopting the quantitative test in ruling that "professional persons" under section 327 of the Bankruptcy Code are those who "play a central role in the administration" of the debtor's estate) (citing In re Seatrain Lines, Inc., 13 B.R. at 981); Elstead v. Nolden (In re That's Entm't Mktg. Group), 168 B.R. 226, 230 (N.D. Cal. 1994) (defining "professional person" under section 327 of the Bankruptcy Code as a person whose role is "central to the administration of the estate") (citation omitted); In re Sieling Assocs. Ltd. P'ship, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (same); In re D'Lites of Am., Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989) (section 327 approval not necessary for one who provides services to the debtor that are incidental to its ongoing business operations); Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (finding that "the phrase 'professional persons' . . . is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate").

considered a professional if it is permitted to exercise discretion and autonomy in addressing the administration of the estate.[3] Id.

11.     Seeking to synthesize the two approaches, the <u>First Merchants</u> court developed a nonexclusive list of factors to be considered when determining whether an entity to be employed by a debtor is a professional within the meaning of section 327(a) of the Bankruptcy Code. These factors include:

> (a)     whether the entity controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization;
>
> (b)     whether the entity is involved in negotiating the terms of a plan of reorganization;
>
> (c)     whether the entity's employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;
>
> (d)     whether the entity is given discretion or autonomy to exercise its own professional judgment in some part of the administration of the debtor's estate;
>
> (e)     the extent of the entity's involvement in the administration of the debtor's estate; and
>
> (f)     whether the entity's services involve some degree of special knowledge or skill, such that the entity can be considered a professional within the ordinary meaning of the term.

See <u>First Merchants</u>, 1997 WL 873551, at *3.

12.     These factors must be considered in their totality—none of the factors alone are dispositive. <u>Id.</u> Nevertheless, professionals assisting in routine operation of a debtor's business and affairs, rather than the administration of its bankruptcy estate, are not professionals that must be retained under section 327 of the Bankruptcy Code. <u>Id.</u> at *4.

---

[3]     See, e.g., <u>U.S. Trustee v. McQuaide (In re CNH, Inc.)</u>, 304 B.R. 177, 179-80 (Bankr. M.D. Pa. 2004) (discussing both the quantitative and qualitative tests before finding that a nursing supervisor was not a "professional" under section 327 of the Bankruptcy Code); <u>In re Neidig Corp.</u>, 117 B.R. 625, 629 (Bankr. D. Colo. 1990) (most common factor in determining whether person is a professional is amount of autonomy or discretion person is given by debtor or trustee in performing its services); <u>In re Fretheim</u>, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (applying qualitative test and stating that "it must be determined whether an employee is to be given discretion or autonomy in some part of the administration of the debtor's estate").

13.    Considering all of the <u>First Merchants</u> factors, the Debtor believes that the

Ordinary Course Professionals are not "professionals" within the meaning of section 327(a) of

the Bankruptcy Code.  In particular, the Ordinary Course Professionals generally will not be

involved in the administration of this chapter 11 case and will not be involved in counseling and

advising the Debtor with respect to the material restructuring issues to be addressed.  Instead,

Ordinary Course Professionals will provide services in connection with the ongoing management

of the Debtor's day-to-day business and affairs.  Indeed, in most instances, the professionals

were retained prepetition and the services to be provided would be necessary whether or not the

Debtor had commenced these chapter 11 cases.  To the extent that services provided by the

Ordinary Course Professionals involve some element of administration of the Debtor's estate,

that involvement will be minimal or tangential.  As a result, the Debtor does not believe that the

retention and payment of the Ordinary Course Professionals must be approved by the Court.

Nevertheless, out of an abundance of caution, the Debtor seeks the relief requested in this

Motion to avoid any subsequent controversy regarding the Debtor's employment and payment of

the Ordinary Course Professionals during the pendency of this chapter 11 case.

14.    Accordingly, the Debtor requests that the Court dispense with the requirement of

individual retention and fee applications for each Ordinary Course Professional, and implement

the following procedures (the "<u>OCP Procedures</u>"):

(a)    In order to be retained, each Ordinary Course Professional shall file with the Court
and serve a Declaration in Support of Ordinary Course Retention (each, an "<u>OCP
Declaration</u>"), substantially in the form attached hereto as <u>Exhibit C</u>, on:
(i) the Debtor, c/o The Diocese of Rockville Centre, 50 N Park Ave, Rockville
Centre, NY 11571 (Attn:  Thomas Renker); (ii) Jones Day, 250 Vesey Street, New
York, NY 10281 (Attn:  Corinne Ball, Esq., Benjamin Rosenblum, Esq. and
Benjamin Thomson, Esq.); (iii) counsel to any statutory committees appointed in
this chapter 11 case; and (iv) the Office of the United States Trustee (the "<u>U.S.
Trustee</u>"), U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York,
NY, 1014 (Attn:  Greg M. Zipes, Esq. and Shara Cornell, Esq.) (each, a "<u>Notice</u>

Party" and collectively, the "Notice Parties").

(b)     The Notice Parties shall have 14 days after the filing and service of an OCP
Declaration to object to the retention of the Ordinary Course Professional filing
such declaration (the "Objection Deadline").  Any objecting party shall serve its
objection upon the Notice Parties and the relevant Ordinary Course  Professional
on or before the Objection Deadline.  If an objection cannot be resolved within
14 days after the Objection Deadline, then the retention of the Ordinary Course
Professional that is the subject of the objection shall be scheduled for hearing by
the  Debtor at the next regularly scheduled omnibus hearing date that is no less
than 20 days from that date or on a date otherwise  agreed to by the parties.  The
Debtor shall not be authorized to retain and pay such Ordinary Course Professional
until all outstanding objections have been withdrawn, resolved or overruled by an
order of the Court.

(c)     If no objection is received from any of the Notice Parties by the Objection
Deadline with respect to an Ordinary Course  Professional, the Debtor shall be
authorized to retain and pay that Ordinary Course Professional in accordance with
the OCP Procedures.

(d)     The Debtor shall be permitted to pay each Ordinary Course Professional, without
prior application to the Court, 100% of the fees and disbursements incurred by
such professional, upon the submission to, and approval by, the Debtor of an
appropriate invoice setting forth in reasonable detail the nature of the services
rendered and disbursements actually incurred after the Petition Date; provided,
however, that the fees and disbursements for any one Ordinary Course
Professional shall not exceed a total of $50,000 per month on average over a
rolling three-month period (the "OCP Fee Limit").

(e)     To the extent that an Ordinary Course Professional seeks compensation in excess
of the OCP Fee Limit (the "Excess Fees"), such Ordinary Course Professional
shall file with the Court a fee application for any Excess Fees in accordance with
sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local
Rules, the fee guidelines promulgated by the U.S. Trustee and any and all orders
of the Court, unless the U.S. Trustee agrees otherwise.

(f)     Other than Ordinary Course Professionals, all professionals employed by the
Debtor to assist in the prosecution of this chapter 11 case will be retained by the
Debtor pursuant to separate retention applications.  Such professionals will be
compensated in accordance with the applicable provisions of the Bankruptcy
Code, the Bankruptcy Rules, the Local Rules and other orders of this Court.

15.     The Debtor reserves the right to supplement the list of Ordinary Course

Professionals from time to time as necessary.  Although the Debtor has attempted to identify all

of its current Ordinary Course Professionals, some Ordinary Course Professionals may have been

inadvertently omitted.  Further, the nature of the Debtor's business requires the retention of

additional Ordinary Course Professionals from time to time.  In either event, the Debtor

proposes to file a notice (a "<u>Supplemental Notice of Ordinary Course Professionals</u>") with the

Court listing the additional Ordinary Course Professionals that the Debtor intends to employ,

together with the attendant additional Ordinary Course Professional Declarations, if required, and

to serve the same upon (a) the U.S. Trustee, (b) counsel to any official committee appointed in

this chapter 11 case and (c) all persons and entities that have filed a request for service of filings

in this chapter 11 case pursuant to Bankruptcy Rule 2002.  The Debtor further proposes that if no

objection to retention of any additional Ordinary Course Professional is filed with the Court and

served on the Debtor within 14 days after the service of the Supplemental Notice of Ordinary

Course Professionals, retention of the additional Ordinary Course Professional(s) should be

deemed approved by the Court without the need for a hearing or further order.

16.     In addition, the Debtor also proposes that an Ordinary Course Professional

retained pursuant to a Supplemental Notice of Ordinary Course Professionals shall be paid in

accordance with the terms and conditions set forth above.

17.     Although certain legal counsel who are Ordinary Course Professionals (each,

a "<u>Legal Ordinary Course Professional</u>") may hold unsecured claims against the Debtor for

prepetition services rendered to the Debtor, the Debtor does not believe that any of the Legal

Ordinary Course Professionals have an interest adverse to the Debtor, its creditors or other

parties-in-interest on the matters for which they would be employed, and thus all of the Legal

Ordinary Course Professionals whom the Debtor proposes to retain meet the special counsel

retention requirement under section 327(e) of the Bankruptcy Code.

18.     Relief similar to that requested herein has been routinely granted by courts in this

district.  *See, e.g.*, *In re Sears Holdings Corp.*, No. 18-23538 [Docket No. 795] (RDD) (Bankr.

S.D.N.Y. Nov. 16, 2018); *In re Nine West Holdings, Inc.*, No. 18-10947 [Docket No. 221] (SCC)

(Bankr. S.D.N.Y. May 7, 2018); *In re CGG Holding (U.S.) Inc.*, No. 17-11637 [Docket No. 112]

(MG) (Bankr. S.D.N.Y. July 17, 2017); *In re NII Holdings, Inc.*, No. 14-12611 [Docket No. 99]

(SCC) (Bankr. S.D.N.Y. Oct. 14, 2014).[4]

## RESERVATION OF RIGHTS

19.     Nothing contained herein is intended to be or should be construed as:  (a) an

admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to

dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or

admission that any particular professional is an Ordinary Course Professional; or (e) the

assumption of any executory contract or unexpired lease.

## NOTICE

20.     The Debtor will provide notice of this Motion to:  (a) the Office of the United

States Trustee for Region 2; (b) the 35 law firms representing the largest number of holders of

CVA claims against the Debtor; (c) the Internal Revenue Service; (d) the Office of the Attorney

General for the State of New York; (e) the United States Attorney's Office for the Southern

District of New York; and (f) any party that has requested notice pursuant to Bankruptcy Rule

2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further

notice need be given.

---

[4]     Because of their voluminous nature, the orders cited herein are not attached to this Motion.  Copies of these
orders are, however, available upon request to proposed chapter 11 counsel to the Debtor.

## **NO PRIOR REQUEST**

21.    No prior request for the relief sought herein has been made to this Court or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order

and grant such other and further relief as may be appropriate.

Dated:  October 1, 2020                              Respectfully submitted,
New York, New York

                                                    */s/  Corinne Ball*
                                                    Corinne Ball
                                                    Todd Geremia
                                                    Benjamin Rosenblum
                                                    Benjamin Thomson
                                                    JONES DAY
                                                    250 Vesey Street
                                                    New York, NY 10281-1047
                                                    Telephone:  (212) 326-3939
                                                    Facsimile:  (212) 755-7306
                                                    Email:  cball@jonesday.com
                                                            trgeremia@jonesday.com
                                                            brosenblum@jonesday.com
                                                            bthomson@jonesday.com

                                                    *Proposed Counsel for the Debtor and*
                                                    *Debtor-in-Possession*

**EXHIBIT A**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF | : | Case No. 20-12345 (___) |
| ROCKVILLE CENTRE, NEW YORK,[1] | : | |
| | : | |
| Debtor. | : | |
| | : | |

### ORDER (I) AUTHORIZING THE RETENTION AND PAYMENT, *NUNC PRO TUNC* TO THE PETITION DATE, OF PROFESSIONALS UTILIZED BY THE DEBTOR IN THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING CERTAIN RELATED RELIEF

This Court has considered the *Motion of the Debtor for an Order (I) Authorizing the Retention and Payment, Nunc Pro Tunc to the Petition Date, of Professionals Utilized by the Debtor in the Ordinary Course of Business and (II) Granting Certain Related Relief* (the "Motion"),[2] the First Day Declaration and the statements of counsel and the evidence adduced with respect to the Motion at any hearing held before this Court (the "Hearing"). This Court has found that (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 and (iii) notice of the Motion and the Hearing was sufficient under the circumstances. After due deliberation, this Court has determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors, and is necessary to prevent immediate and irreparable harm to the Debtor and its estate and good and sufficient cause having been shown;

---

[1]    The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein:

2.      Pursuant to sections 105(a), 327, 328 and 330 of the Bankruptcy Code and

Bankruptcy Rule 2014(a), to the extent deemed necessary or appropriate by the Debtor, the

Debtor is authorized to employ Ordinary Course Professionals in the ordinary course of the

Debtor's business, effective as of the Petition Date.

3.      Subject to paragraph 4 of this Order, the Debtor shall be permitted to pay each

Ordinary Course Professional, without prior application to this Court, 100% of the fees and

disbursements incurred by such professional, upon the submission to, and approval by, the

Debtor of an appropriate invoice setting forth in reasonable detail the nature of the services

rendered and disbursements actually incurred after the Petition Date, provided, however, that the

fees and disbursements for any one Ordinary Course Professional shall not exceed a total of

$50,000 per month on average over a rolling three-month period (the "OCP Fee Limit").

4.      The Debtor is hereby permitted to pay each Ordinary Course Professional,

including but not limited to those identified on the OCP List attached to the Motion as Exhibit B,

without prior application of this Court:

(a)      In order to be retained, each Ordinary Course Professional shall file with the Court
        and serve a Declaration in Support of Ordinary Course Retention (each, an "OCP
        Declaration"), substantially in the form attached hereto as Exhibit C, on:
        (i) the Debtor, c/o The Diocese of Rockville Centre, 50 N Park Ave, Rockville
        Centre, NY 11571 (Attn:  Thomas Renker); (ii) Jones Day, (a) 250 Vesey Street,
        New York, NY 10281 (Attn:  Corinne Ball, Esq.; Benjamin Rosenblum, Esq. and
        Benjamin Thomson, Esq.); (iii) counsel to any statutory committees appointed in
        this chapter 11 case; and (iv) the Office of the United States Trustee (the "U.S.
        Trustee"), U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York,
        NY, 1014 (Attn:  Greg M. Zipes, Esq. and Shara Cornell, Esq.) (each, a "Notice
        Party" and collectively, the "Notice Parties").

(b)      The Notice Parties shall have 14 days after the filing and service of an OCP
        Declaration to object to the retention of the Ordinary Course Professional filing
        such declaration (the "Objection Deadline").  Any objecting party shall serve its

objection upon the Notice Parties and the relevant Ordinary Course Professional on or before the Objection Deadline. If an objection cannot be resolved within 14 days after the Objection Deadline, then the retention of the Ordinary Course Professional that is the subject of the objection shall be scheduled for hearing by the Debtor at the next regularly scheduled omnibus hearing date that is no less than 20 days from that date or on a date otherwise agreed to by the parties. The Debtor shall not be authorized to retain and pay such Ordinary Course Professional until all outstanding objections have been withdrawn, resolved or overruled by an order of the Court.

(c)    If no objection is received from any of the Notice Parties by the Objection Deadline with respect to an Ordinary Course Professional, the Debtor shall be authorized to retain and pay that Ordinary Course Professional in accordance with the OCP Procedures.

(d)    The Debtor shall be permitted to pay each Ordinary Course Professional, without prior application to the Court, 100% of the fees and disbursements incurred by such professional, upon the submission to, and approval by, the Debtor of an appropriate invoice setting forth in reasonable detail the nature of the services rendered and disbursements actually incurred after the Petition Date; provided, however, that the fees and disbursements for any one Ordinary Course Professional shall not exceed the OCP Fee Limit.

(e)    To the extent that an Ordinary Course Professional seeks compensation in excess of the OCP Fee Limit (the "Excess Fees"), such Ordinary Course Professional shall file with the Court a fee application for any Excess Fees in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines promulgated by the U.S. Trustee and any and all orders of the Court, unless the U.S. Trustee agrees otherwise.

(f)    Other than Ordinary Course Professionals, all professionals employed by the Debtor to assist in the prosecution of this chapter 11 case will be retained by the Debtor pursuant to separate retention applications. Such professionals will be compensated in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and other orders of this Court.

5.    The Debtor may supplement or otherwise amend the OCP List as necessary or appropriate from time to time by filing a supplemental or amended OCP List with this Court. An Ordinary Course Professional listed on a supplemental or amended OCP List shall be retained and paid in accordance with the terms and conditions set forth above.

6.      Notwithstanding any of the foregoing, the Debtor shall separately retain any Ordinary Course Professional that becomes materially involved in the administration of this chapter 11 case pursuant to section 327 of the Bankruptcy Code.

7.      The Debtor shall file and provide to (a) the U.S. Trustee, (b) counsel to any official committee appointed in this chapter 11 case and (c) all persons and entities that have filed a request for service of filings in this chapter 11 case pursuant to Bankruptcy Rule 2002, on a quarterly basis (within a commercially reasonable period following each fiscal quarter), a statement setting forth:  (i) the name of the Ordinary Course Professional; (ii) the amount of compensation paid to such Ordinary Course Professional during such quarterly period; and (iii) the aggregate amount of compensation paid to such Ordinary Course Professional since the Petition Date.

8.      Nothing in the Motion or this Order shall be deemed or construed as:  (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular professional is an Ordinary Course Professional; or (e) the assumption of any executory contract or unexpired lease.

9.      The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

10.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the interpretation, implementation and/or enforcement of this Order.

Dated: _____, 2020
       New York, New York            _____
                                     UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**
**NONEXCLUSIVE SCHEDULE OF ORDINARY COURSE PROFESSIONALS**

**EXHIBIT B**

**NONEXCLUSIVE SCHEDULE OF
ORDINARY COURSE PROFESSIONALS**

| Vendor Name | Address | Description |
|---|---|---|
| Nixon Peabody LLP | 50 Jericho Quadrangle, Suite 300 Jericho, NY 11753 | Legal Services |
| Baker Tilly Virchow Krause, LLP | 125 Bayliss Road, Suite 300 Madison, WI 53707 | Accounting Services |
| Actuarial & Technical Solutions Inc | 3900 Veterans Memorial Highway, Suite 300 Bohemia, NY 11716 | Accounting Services |
| Crowe LLP | 320 E Jefferson Boulevard South Bend, IN 46624 | Accounting Services |
| Jackson Lewis P.C. | 1133 Westchester Avenue, Suite S125 West Harrison, NY 10604 | Legal Services |
| Sahn Ward Coschignano, PLLC | 333 Earle Ovington Boulevard, Suite 601 Uniondale, NY 11553 | Legal Services |
| Proskauer Rose LLP | Eleven Times Square New York, NY 10036 | Legal Services |
| Certilman Balin Adler & Hyman LLP | 90 Merrick Avenue, 9th Floor East Meadow, NY 11554 | Legal Services |
| Smith & Downey | 320 East Towsontown Boulevard, Suite 1 East Baltimore, MD 21286 | Legal Services |
| Changing Our World Inc | 1285 Avenue of the Americas, 5th Floor New York, NY 10019 | Consulting Services |
| Burnett Risk Control International, LLC | 6300 Royal Aberdeen Court Charlotte, NC 28277 | Claim Valuation Services |
| Patrick F Adams P.C. | 3500 Sunrise Highway, Building 300 Great River, NY 11739 | Legal Services |
| Mullholand Minion Davey McNiff & Beyrer | 374 Hillside Avenue Williston Park, NY 11596 | Legal Services |
| Bryan Cave Leighton Paisner LLP | 1290 Avenue of the Americas, 33rd Floor New York, NY 10104 | Legal Services |
| NAVEX Global Inc | 5500 Meadows Road, Suite 500 Lake Oswego, OR 97035 | Human Resource Services |
| Harris Beach, PLLC | 333 Earle Ovington Boulevard, Suite 901 Uniondale, NY 11553 | Legal Services |
| Biddle Consulting Group, Inc. | 193 Blue Ravine Road, Suite 270 Folsom, CA 95630 | Human Resource Services |

| The Law Offices of Kenneth R Feinberg PC | 1455 Pennsylvania Avenue NW, Suite 390 Washington, DC 20004 | Legal Services |
|---|---|---|

**EXHIBIT C**

**DECLARATION IN SUPPORT**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|                                                    |     |                     |
| -------------------------------------------------- | --- | ------------------- |
|                                                    | :   |                     |
| In re:                                             | :   | Chapter 11          |
|                                                    | :   |                     |
| THE ROMAN CATHOLIC DIOCESE OF                      | :   | Case No. 20-12345 (___) |
| ROCKVILLE CENTRE, NEW YORK,[1]                     | :   |                     |
|                                                    | :   |                     |
| Debtor.                                            | :   |                     |
|                                                    | :   |                     |

**DECLARATION IN SUPPORT OF ORDINARY COURSE RETENTION**

I, **[_____]**, declare, under penalty of perjury, as follows,

pursuant to the provisions of 28 U.S.C. § 1746:

1.      I am a member, partner or similar representative of the following company or firm

(in each case, the "Firm"), which maintains offices at the address and phone number listed

below:


Firm:


Address and Phone Number:


2.      This declaration is submitted in connection with an order of the United States

Bankruptcy Court for the Southern District of New York (the "Order") authorizing the above-

captioned debtor (the "Debtor") to retain, *nunc pro tunc* as of the Petition Date (defined below),

certain professionals in the ordinary course of business during the pendency of the Debtor's

chapter 11 case.  Since October 1, 2020 (the "Petition Date"), the Debtor has requested that the

---

[1]      The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last
four digits of its federal tax identification number are 7437, and its mailing address is 50 North Park
Avenue P.O. Box 9023, Rockville Centre, NY 11571-9023.

Firm provide services (or continue to provide services) to the Debtor, and the Firm has agreed to provide such services.

3.      The Firm, through me, and other members, partners, associates or employees of the Firm, has provided, and/or plans to provide, the following services to the Debtor from and after the Petition Date:  [_____].

4.      To the best of my knowledge, information and belief, formed after due inquiry:  (i) except for the proposed retention of the Firm in this chapter 11 case, the Firm does not provide services to any party in connection with this chapter 11 case; and (ii) the Firm does not represent or hold an interest adverse to the Debtor with respect to the matters for which the Firm would be employed.

5.      Now or in the future, the Firm may provide services to certain creditors of the Debtor or other interested parties to the chapter 11 case, but in this regard, the Firm's work for these clients will not include the provision of services for such person in connection with this chapter 11 case.

6.      The Firm is owed approximately $[_____] on account of services rendered and expenses incurred prior to the Petition Date in connection with the Firm's employment by the Debtor.

7.      The Firm further states that it has not shared, has not agreed to share, nor will it agree to share, any compensation received in connection with this chapter 11 case with any party or person except to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules, although such compensation may be shared with any member or partner of, or any person employed by, the Firm.

8.      If, at any time during its employment by the Debtor, the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information

-2-

contained in this declaration.

Dated: _____

By: _____
[Name]

Sworn to and subscribed before me
this ____day of ____, 2020