PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
10100 Santa Monica, Boulevard, 11th Floor
Los Angeles, California 90067
Telephone:    (310) 277-6910
Facsimile:    (310) 201-0760
Email:        jstang@pszjlaw.com

-and-

Ilan D. Scharf, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777
Email:        ischarf@pszjlaw.com
              kdine@pszjlaw.com
              bmichael@pszjlaw.com

Proposed Counsel for the Official Committee
of Unsecured Creditors of The Roman Catholic Diocese
of Rockville Centre, New York

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br>                        Debtor. | Chapter 11<br>Case No. 20-12345 (SCC) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO (I) APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF OTTERBOURG P.C.
EFFECTIVE AS OF OCTOBER 1, 2020 AS COUNSEL TO THE INDEPENDENT
ADVISORY COMMITTEE AND (II) APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF GOLDIN,
A TENEO COMPANY, AS FINANCIAL ADVISOR TO THE
<u>INDEPENDENT ADVISORY COMMITTEE, EFFECTIVE AS OF OCTOBER 1, 2020</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Diocese of Rockville Centre, New York (the "**Diocese**" or the "**Debtor**") in the above-captioned case (the "**Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), by and through its undersigned proposed counsel, hereby objects (the "**Objection**") to both (I) the *Application for Entry of an Order Authorizing the Employment and Retention of Otterbourg P.C. Effective as of October 1, 2020 as Counsel to the Independent Advisory Committee* [Docket No. 60] (the "**Otterbourg Application**") and (II) the *Application for Entry of an Order Authorizing the Retention and Employment of Goldin, a Teneo Company, as Financial Advisor to the Independent Advisory Committee, Effective as of October 1, 2020* [Docket No. 61] (the "**Goldin Application**" and, together with the Otterbourg Application, the "**Applications**"). In support of its Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      In the years preceding this Case, the Diocese transferred millions of dollars in assets to affiliated or related Catholic entities. In May 2019, the Diocese's Board of Trustees (the "**Board**") created the Independent Advisory Committee (the "**IAC**") that was tasked with the evaluating post-2014 transfers of assets by the Diocese with a value in excess of $2.5 million. The IAC also was authorized by the Diocese to pursue colorable claims arising out of such transactions, including through negotiation or legal action on behalf of the Diocese. The Diocese disclosed four transactions investigated by the IAC: (a) a $47.6 million transfer from the Diocese to the Cemetery Corporation and Cemetery Trust (each as defined in the Moore Decl., ¶ 49); (b) a transfer of real property to the Seminary Corporation (as defined in the Moore Decl., ¶ 64); (c) a transfer of real property for two high schools to the Diocese's allegedly incorporated Department of Education (as defined in the Moore Decl., ¶ 56); and (d) a transfer of $3 million to

2

the Catholic Foundation (as defined in the Moore Decl., ¶ 40) (the "**Affiliate Transfers**").[1] Each of the transferees is closely affiliated with the Debtor.

2. Bankruptcy Code Section 327(a) makes no provision for the Debtor's retention of professionals on behalf of the IAC. The IAC is not the Diocese nor has the Diocese sought any Bankruptcy Court approval for the continued operation of the IAC. There is no valid statutory basis to retain professionals for the IAC and the Applications should be denied.

3. Further, the Applications are a barely disguised effort to obfuscate the Committee's rights to investigate and seek standing to pursue fraudulent conveyance or transfer claims traditionally available for creditors. To fulfill its statutory and fiduciary duty, the Committee will evaluate and assess the Diocese's prepetition transfers. This role is especially important when the fiduciary duties of the debtor in possession to unsecured creditors are strained by the existence of transfers to affiliates.[2] Additionally, the costs of any investigation and recovery will be borne by unsecured creditors. The Diocese is inviting a parallel track investigation resulting in an unnecessary duplication of effort and services because the Committee will not ignore its statutory rights and duties to investigate the very same transactions being investigated by the IAC.

4. The Committee notes that the IAC was hired by the Diocese eighteen months before commencement of this Case, and, thus, there was arguably a reason for its

---

[1] *See Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 3] (the "**Moore Decl.**") at par. 123.

[2] *In re Innkeepers USA Trust, et al.*, 442 B.R. 227 (Bankr. S.D. N. Y. 2010)("In a bankruptcy case, it is "Bankruptcy 101" that a debtor and its board of directors owe fiduciary duties to the debtor's creditors to maximize the value of the estate…."). *See also* John A. E. Pottow, University of Michigan Law School Scholarship Repository, Law & Economics Working Papers, "Fiduciary Duties in Bankruptcy and Insolvency" *available at* https://repository.law.umich.edu/law_econ_current/135/ (last accessed October 28, 2020) (Creditors' Committee's right to investigate and bring actions on behalf of estate protects against a debtor in possession's conflicted allegiances).

3

existence before the Diocese decided to commence this Case. However, now that the Diocese commenced its Case, it is inappropriate to assign estate causes of action to the IAC. The Committee is capable of investigating and, if appropriate, pursuing such claims.

### RELEVANT FACTS[3]

**A.    Background**

5.    On October 1, 2020 (the "**Petition Date**"), the Debtor commenced its Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as debtor in possession.

6.    The State of New York established the Diocese as a religious corporation in 1958.[4]

7.    No trustee or examiner has been appointed in this Case.

8.    On October 16, 2020 the United States Trustee for Region 2 appointed nine members to the Committee. The Committee is comprised of eight survivors of childhood sexual abuse by individuals for whom the Diocese is responsible and one representative of a minor with a tort claim pending against the Diocese.

**B.    The Independent Advisory Committee**

9.    Prior to the Petition Date, the Diocese appointed the IAC to "review certain transactions between the Diocese and Diocese affiliates outside the ordinary course of

---

[3] All facts described herein are Debtor's own assertions. The Committee has not verified their validity and is not admitting to their truth. In addition, the Committee has thus far received little information from the Debtor. As such, the Committee reserves the right to modify, clarify, or amend any factual assertions in this Objection.

[4] Moore Decl. at ¶ 11.

administration and support that the Diocese provides to the Diocese Affiliates."[5] The IAC identified the Affiliate Transfers as requiring further review.[6]

10. Each IAC member is an "independent contractor."[7] The Diocese's Board appointed the IAC pursuant to a Charter.[8]

11. There is nothing in the IAC Charter prohibiting the Board from cancelling the Charter and dissolving the IAC.[9] The IAC members each agreed to keep information shared with them confidential, thereby putting it beyond the reach of the Committee or any other party in interest.[10]

## OBJECTION

12. The Committee objects to retention of professionals pursuant to both Applications. The Diocese seeks to retain professionals to represent the IAC pursuant to section 327 of the Bankruptcy Code, which does not contemplate or authorize retention of professionals by anyone other than a trustee or debtor in possession.

13. Bankruptcy courts have discretion when evaluating proposed professionals, which must be exercised "in a way that it believes best serves the objectives of the bankruptcy

---

[5] *Id.* ¶ 121.

[6] *Id.* ¶ 121.

[7] Otterbourg App., ¶ 10.

[8] A copy of the Independent Advisory Committee Charter (the "**IAC Charter**") is attached as Exhibit 2 to the Feldman Declaration attached as Exhibit C to the Otterbourg App. and Exhibit 2 to the Chiu Declaration attached as Exhibit A to the Goldin Application.

[9] *Id.* § III.A.2 (The Board "may remove any member from the Committee at any time.")

[10] *Supplemental Declaration Of Arthur J. Gonzalez In Support of (1) Application for Entry of an Order Authorizing the Employment and Retention of Otterbourg P.C. Effective as of October 1, 2020 as Counsel to the Independent Advisory Committee and (2) Application for Entry of an Order Authorizing the Retention and Employment of Goldin, a Teneo Company, as Financial Advisor to the Independent Advisory Committee, Effective as of October 1, 2020* ("**Gonzalez Supp. Decl.**") [Docket No. 101], Ex. A.

5

system."[11]  Specifically, courts' ultimate concerns "must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding."[12]

14.     The Applications fail to present any valid justification for the appointment and compensation of either Otterbourg or Goldin as an estate professional pursuant to section 327.  Indeed, given the Debtor's making of these Applications, its ability to remove and replace members of the IAC or, potentially, to dissolve it, it is crystal clear that the "IAC" lacks any meaningful independence.  Thus, the appointment of additional professionals for the Debtor – for the alleged purpose of an "independent" committee" – is contrary to the estates interests and detrimental to creditors' recovery.  Therefore the Committee respectfully requests that the Court deny the Applications.

A.  **The IAC Cannot Retain Professionals Pursuant to Section 327 of the Bankruptcy Code**

15.     The Diocese does not present a single reason why its retention of professionals for the IAC is justified.  Section 327(a) provides, in relevant part, that "the trustee, with the court's approval, may employ one or more … professional persons … to assist the trustee in carrying out the trustee's duties under this title."[13]  Nothing in section 327 authorizes the retention of professionals by any party other than a trustee or debtor in possession.  Here, the proposed professionals are not being retained by the Diocese.  Instead, the Diocese – in an

---

[11] *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992) (quoted with approval by *Bank Brussels Lambert v. Coan (In re AroChem Corp.*, 176 F.3d 610, 621 (2d Cir. 1999)).

[12] *Id.*; 11 U.S.C. § 327 note (1990) (Purpose of Rules Relating to Retention of Professionals and Duty and Function of Trustee) (One of section 327(a)'s purposes "is to protect the bankruptcy estate and its creditors" and avoid "all unreasonable expenses either in preservation or distribution.")

[13] In this Case, the Diocese, as a debtor in possession, has all the rights and powers of a trustee (except the right to compensation under section 330) pursuant to section 1107(a) of the Bankruptcy Code.

6

apparent admission that it is hopelessly conflicted with respect to Affiliate Transfers – has delegated its duties to the IAC, an entity that the Diocese takes pains to demonstrate is comprised on independent contractors that are not officers, directors or employees of the Diocese. The Diocese itself then seeks to retain professionals for this separate entity. However, the Bankruptcy Code does not contemplate retention of professionals by such an entity. Arguably, the Debtor may retain professionals on behalf of officers, directors or employees under certain circumstances. However, the IAC's members are – by the IAC's and the Diocese's admission – none of those things.[14]

16. The Diocese itself underscored the IAC's lack of standing to hire professionals when it, not the IAC, signed the Applications. Prior to the bankruptcy filing, the IAC retained professionals pursuant to engagement letters executed by the IAC and the respective professionals. The Diocese signed each engagement letter <u>solely</u> with respect to agreement as to compensation for the professionals. Yet, the Applications are signed by the Debtor's general counsel on behalf of the Debtor. Thus, it is clear that the Debtor recognizes that the IAC itself has no standing to retain professionals; otherwise, the IAC would have sought the retentions and signed the Applications. The Court should not accept the Diocese's efforts to end-run section 327(a) of the Bankruptcy Code, and should deny the Applications.

**B. The Committee's Statutory Obligations and Clear <u>Independence from Debtor Make It the Appropriate Entity to Investigate Transfers</u>**

17. The Committee is capable, qualified and the best-situated entity to investigate and, if appropriate, pursue recovery of any pre-petition transfers. The three basic functions of a creditors' committee are to (1) monitor the Debtor's operations, (2) investigate the

---

[14] Gonzalez Supp. Decl. at ¶ 3.

Debtor's assets, and (3) negotiate a plan.[15] Section 1103(c)(2) specifically charges the Committee with the duty to "investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business and any other matter relevant to the case or to the formulations of a plan."[16] "The investigative authority granted to a committee is extremely broad and a committee may undertake whatever investigation is appropriate to enable it to fulfill its duty to monitor the operations of the debtor and participate in formulation of a plan."[17]

18.  In order to perform its statutory duties and fulfill its fiduciary obligations, the Committee has the right and duty to independently analyze prepetition transfers, including the Affiliate Transfers, regardless of the IAC's work or conclusions. Given this necessity, denying the IAC professionals will in no way harm the Debtor's estate or jeopardize an appropriate investigation into the issues surrounding any prepetition transfers. To the contrary, the professional fees saved by avoiding the additional layer of costs will preserve the Debtor's limited resources.

19.  Moreover, there is no artificial limitation on the scope of the review of transactions that may be done by the Committee. The Charter limits the IAC's review to "transfers of assets made since 2014 with a value over $2,500,000."[18] However, there may be material voidable transfers that do not meet this high dollar amount or fall within this time

---

[15] 11 U.S.C. § 1103; *see also In re Cumberland Farms, Inc.*, 154 B.R. 9, 12 (Bankr. D. Mass. 1993).
[16] 11 U.S.C. § 1103(c)(2).
[17] 7 *Collier on Bankruptcy* ¶ 1103.05[1][c] (16th ed. 2009)
[18] Charter at § II.A.1.

period.[19] The IAC's scope prevents it from performing the necessary work of investigating all transfers subject to a cost-benefit consideration. The Committee is not limited by similar arbitrary constraints.

20. The Committee can appropriately investigate the Affiliate Transfers and any other transfers made by the Diocese. Given the presence of an active Committee that will conduct the very investigation the IAC is charged with conducting, there is no need to add another layer of administrative expense to this case by appointing more professionals. Accordingly, the Applications are not in the best interest of the estate.

## RESERVATION OF RIGHTS

21. The Committee reserves the right to supplement and amend this Objection and introduce evidence at any hearing on approval of the Applications or with respect to further action regarding the scope of work, if any, to be performed by the IAC. To the extent the Diocese or any other party seeks to introduce evidence in support of the Applications at a hearing, the Committee reserves its right to seek discovery regarding such evidence. Further, the Committee reserves the right to respond, further object, join in, or amend any objection made by any person relating to the Applications.

## CONCLUSION

22. The Committee questions whether the IAC can continue its work during the pendency of this Case. First, the statutory predicate under the Bankruptcy Code or other applicable law for the IAC to perform under the Charter has not been explained by the Diocese or the IAC. Second, the Committee is concerned about the IAC's independence given that it can

---

[19] For example, there may be transfers that are individually below $2.5 million, but with a higher aggregate; there may be transfers of real property whose value is in excess of $2.5 million, but was carried on the Diocese's books at a lower amount; there may be intentionally fraudulent transfers that were made before 2014.

be dissolved at the Board's will.  Finally, the Diocese and the IAC have not disclosed whether and to what extent there has been any negotiation over the past eighteen months to resolve issues with the Affiliate Transfers.  The only matter that is clear at this time is that section 327 does not provide authority to for the Diocese to retain the IAC's professionals.

WHEREFORE, the Committee respectfully requests that this Court deny the relief requested in Applications and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
October 28, 2020

PACHULSKI STANG ZIEHL & JONES LLP

*/s/Ilan D. Scharf*
James I. Stang, Esq. (admitted *pro hac vice*)
10100 Santa Monica, Boulevard, 11th Floor
Los Angeles, California 90067
Telephone:    (310) 277-6910
Facsimile:     (310) 201-0760
Email:          jstang@pszjlaw.com

-and-

Ilan D. Scharf, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:     (212) 561-7777
Email:          kdine@pszjlaw.com
                    ischarf@pszjlaw.com
                    bmichael@pszjlaw.com

Proposed Counsel for the Official Committee of Unsecured Creditors of The Roman Catholic Diocese of Rockville Centre, New York