Peter Feldman, Esq.
Jennifer S. Feeney, Esq.
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Telephone:     (212) 661-9100
Facsimile:     (212) 682-6104

*Proposed Counsel to the*
*Independent Advisory Committee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In re:                                                                  :
                                                                              :   Chapter 11
THE ROMAN CATHOLIC DIOCESE OF          :
ROCKVILLE CENTRE, NEW YORK               :   Case No.: 20-12345 (SCC)
                                                                              :
                              Debtor.                              :
-------------------------------------------------------- x

**STATEMENT OF THE INDEPENDENT ADVISORY COMMITTEE IN FURTHER SUPPORT OF (1) APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF OTTERBOURG P.C. EFFECTIVE AS OF OCTOBER 1, 2020 AS COUNSEL TO THE INDEPENDENT ADVISORY COMMITTEE AND (2) APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GOLDIN, A TENEO COMPANY, AS FINANCIAL ADVISOR TO THE <u>INDEPENDENT ADVISORY COMMITTEE, EFFECTIVE AS OF OCTOBER 1, 2020</u>**

The Independent Advisory Committee (the "IAC") appointed by the Board of the Roman Catholic Diocese of Rockville Centre, New York (the "Debtor" or the "Diocese"), submits this statement (the "Statement") in opposition to the objections (collectively, the "Objections")[1] to the applications to retain Otterbourg P.C. ("Otterbourg") as the IAC's legal counsel (the "Otterbourg Application") and Goldin, a Teneo Company ("Goldin") as the IAC's financial advisor (the "Goldin Application"),[2] and in support of the Applications. The IAC relies upon the declaration of Arthur J. Gonzalez dated November 11, 2020 (the "Reply Dec."), attached as **Exhibit A**, and incorporates by reference the previously filed declarations of Mr. Gonzalez. [Dkt. Nos. 60-2, 61-3, 101]. The IAC respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The IAC was formed in the Spring of 2019 by the Diocese's governing Board of Trustees (the "Board"), as a special committee for the purpose of independently investigating whether colorable claims exist in favor of the Diocese on account of certain transfers to affiliates. Specifically, the IAC was charged with reviewing all transactions between the Diocese and its affiliated entities (the "Affiliates") in excess of $2.5 million that occurred on or after January 1, 2014 (the "Affiliate Transactions"). The IAC's extensive investigation took over one year to complete. Upon its completion, in July 2020, the IAC advised the Diocese that it had determined one or more colorable claims exist in favor of the Diocese arising from the Affiliate Transactions.

2.      To avoid any actual or potential conflict, the Board selected as members of the IAC three independent persons with stellar backgrounds and reputations for integrity – Arthur J. Gonzalez, Melanie L. Cyganowski and Harrison J. Goldin. The IAC members have no affiliation

---

[1] Objections have been filed by the United States Trustee (the "UST Objection") [Dkt. No. 102], and the Official Committee of Unsecured Creditors (the "UCC Objection") [Dkt. No. 103].

[2] *See* Dkt. Nos. 60, 61 (collectively, the "Applications").

1

with the Diocese or the Affiliates investigated.[3] Although the IAC is part of the Diocese, by design and in practice, the IAC operates independently to discharge its delegated powers without hint of conflict. As explained in the Reply Dec., the IAC conducted its investigation, deliberated and reached its conclusions without interference, oversight or input from the Diocese or its representatives. *See* Reply Dec., ¶ 12.

3. Pursuant to its Charter, the IAC is charged with pursuing, through negotiation or legal action, the colorable claims it determined existed, to seek recovery for the Diocese and its stakeholders. However, the IAC could not pursue any avoidance claims until the filing of this Chapter 11 case, when the avoidance claims first became claims of the Diocese. The IAC is prepared to expeditiously pursue the colorable claims it determined existed on behalf of the Diocese for the benefit of the Debtor's estate.

4. However, to pursue the claims, the IAC requires legal and financial professionals that are independent of the professionals that represent the Diocese more generally in its Chapter 11 case. The IAC selected Otterbourg and Goldin pre-petition to assist the IAC, and does so now, post-petition, because they are well-regarded firms with significant experience in bankruptcy cases generally, and have extensive knowledge of the Affiliate Transactions specifically as a result of their pre-petition work for the IAC. *See* Reply Dec., ¶ 20. The IAC considers the retention of Otterbourg and Goldin essential to the fulfillment of its duties to the Diocese and its stakeholders. *Id*.

5. Notwithstanding the foregoing, the Official Committee of Unsecured Creditors (the "UCC") and the Office of the United States Trustee (the "UST") filed the Objections to the

---

[3] In the UST Objection, the UST asserts that Goldin does not disclose its prior payments from the Debtor. *See* UST Objection, n.1. As financial advisor to the IAC, Goldin received a total of $1,463,497.

Applications. Neither Objection has merit. Indeed, the premise of each is diametrically opposed to the other. The UCC contends without any basis that the IAC is not part of the Diocese and therefore, the Debtor cannot rely on § 327(a) of the Bankruptcy Code to retain professionals for the IAC. By contrast, the UST asserts that the Applications must be rejected because the IAC members are directors of the Diocese, persons in control of the Diocese, or employees of the Diocese, and as a result Otterbourg and Goldin are not "disinterested."

6. Neither of these contrary views is correct. The IAC is not a stranger to the case but is part of the Diocese, having been formed by the Board as a committee of the Board. Further, the members of the IAC are not directors, employees or persons in control of the Diocese, but are independent contractors retained by the Diocese with a precise delegation of limited responsibilities and authority. The IAC is prepared to proceed with that delegation – to pursue the claims it determined to be colorable. In order to do so, it respectfully requests that the Applications be approved.

## ARGUMENT

### I. The UCC's Objection is Without Merit

7. The Applications are filed in good faith, to retain independent professionals for the IAC so that it can pursue claims arising from the Affiliate Transactions on behalf of the Diocese for the benefit of the estate. The UCC, however, ignores the purpose of the Applications, and instead baldly asserts that the "Applications are a barely disguised effort to obfuscate the [UCC's] rights to investigate and seek standing to pursue fraudulent conveyance or transfer claims," mistakenly contending that the Applications are nothing more than an "end-run" around § 327(a) because the IAC allegedly is not a part of the Diocese. *See* UCC Obj., ¶¶ 3, 16.

8. The UCC's position is erroneous and predicated upon a mistaken set of assumptions, as the UCC's failure to provide any factual or legal support for its position

3

establishes. While the UCC asserts that it "is capable, qualified and the best-situated entity to investigate and, if appropriate, pursue recovery of any pre-petition transfers," this does not provide a basis to preclude the Debtor's use of § 327(a) to retain Otterbourg and Goldin to represent the IAC with respect to the claims it found to exist. *See* UCC Obj., ¶ 17. That retention does not in any way interfere with the UCC's rights to investigate the Diocese or, to the extent permissible under applicable law, to seek standing to pursue claims, a matter that is not before the Court.

**A. The Debtor has Standing to File the Applications Under § 327(a)**

9.    By the Applications, the Diocese seeks orders retaining Otterbourg and Goldin, as legal counsel and financial advisor, respectively, for the IAC to pursue claims arising from the Affiliate Transactions on behalf of the Diocese for the benefit of the estate. That is a proper use of § 327(a). The IAC is not an interloper without relation to the Debtor as the UCC seeks to imply. Rather, the IAC is a part of the Diocese – formed by the Diocese's Board as a special committee of the Board for a particular and discrete purpose. The resolution of the Diocese's Board that formed the IAC (the "Resolution") expressly states that the IAC was formed as "a special advisory committee *of the Board* . . . consisting of independent members who are disinterested with respect to the transfers, which [committee] shall act in the interests of the Diocese and its stakeholders. Resolution, p. 1 (emphasis added).[4]

10.    Further, the Board took pains in the IAC Charter it issued (the "Charter"), to set forth the IAC's limited duties and responsibilities, as a committee "of the Board," delegating to it the authority to investigate the Affiliate Transactions free of conflict, providing that the IAC shall "evaluate whether the Diocese's transfers of assets made since 2014 with a value over $2,500,000 to certain affiliated entities . . . give rise to a colorable claim in favor of the Diocese to recover

---

[4]    The Resolution is annexed as Exhibit A to the Reply Dec.

value assuming the applicability of the avoiding powers set forth in subchapter 5 of the Bankruptcy Code," Charter at § II.A.1,[5] and adding that, "[i]n the event the [IAC] determines that any [Affiliate] Transaction gives rise to colorable claim in favor of the Diocese, pursue such claim, including through negotiation or legal action, including commencement of litigation, on behalf of the Diocese for value restoration with respect to such [Affiliate] Transaction," Charter at § II.A.3.

11. The IAC's retention of Otterbourg and Goldin was within the scope of its delegated authority. To provide the IAC with the professional assistance it required, to be paid by the Diocese, the IAC Charter expressly authorizes the IAC to "[r]etain independent financial and legal advisors . . . on terms and conditions acceptable to the [IAC] and as the [IAC] deems appropriate, to serve as the [IAC's] advisors in connection with its purpose, duties and responsibilities." Charter at § II.A.2

12. Special committees, of course, are a common vehicle created to permit an entity to conduct independent investigations and pursue claims free from conflict. As such, in the bankruptcy context, it is equally customary for debtors-in-possession to retain independent professionals for special committees of the board – and often for the same reasons that the Diocese filed the Applications in this case – to arm the special committee with the independent professionals it needs to exercise its duties and satisfy its mandate.[6] *See*, *e.g.*, *Intelsat S.A.*, Case No. 20-32299 (KLP), Dkt. Nos. 437, 459 (Bankr. E.D. Va. 2020); *Sanchez Energy Corp.*, Case No. 19-34508 (MI), Dkt. No. 565 (Bankr. S.D. Tex. Nov. 5, 2019); *Payless Holdings LLC*, Case

---

[5] The Charter is annexed to the Otterbourg Application, Feldman Declaration, Exhibit 2 [Dkt. No. 60-3]; and as an exhibit to the Resolution attached as Exhibit A to the Reply Dec.

[6] Generally (but not always), these retentions are pursuant to § 327(e). While the scope of § 327(e) is narrower than § 327(a), both sections provide the debtor-in-possession with standing to seek retention of professionals using identical language: "The trustee, with the court's approval, may employ…." As such, orders entered under § 327(e) are equally applicable on the issue of a debtor's standing to retain professionals for a special committee.

5

No. 19-40883 (KAS), Dkt. No. 983 (Bank. E.D. Mo. May 8, 2019); *VER Technologies Holdco LLC*, 18-10834 (KG), Dkt. No. 340 (Bank. D. Del. May 22, 2018); *Westinghouse Electric Co.*, Case No. 17-10751 (MEW), Dkt. No. 1196 (Bankr. S.D.N.Y. Aug. 21, 2017); *Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS), Dkt. No. 764 (Bankr. D. Del. Jan. 9, 2013); *ShengdaTech Inc.*, Case No. 11-52649 (GWZ), Dkt. No. 192 (Bankr. D. Nev. Oct. 21, 2011); *In re Boston Generating, LLC*, No. 10-14419 (SCC), Dkt. No. 654 (Bankr. S.D.N.Y. Jan. 20, 2011), all attached as **Exhibit B**.

13. Even the UCC grudgingly acknowledges that a debtor may rely on § 327 to retain professionals who do not represent the debtor but instead represent its directors, officers or employees. UCC Obj., ¶ 15 ("Arguably, the Debtor may retain professionals on behalf of officers, directors or employees under certain circumstances."). However, because the IAC members are independent contractors, and not the Debtor's directors, officers or employees, the UCC contends that this case is different.

14. The UCC of course is mistaken. It is not the status of the IAC *members* that is relevant to the § 327 analysis – it is the status of the *IAC*. Here, the IAC is a special committee "of the" Diocese's Board, and as such, as much a part of the Debtor as any other entity for which a debtor may retain counsel under § 327. *See*, *e.g.*, *Allied*, *supra*, (debtor retained counsel for two-person special committee; at least one member was not a director).[7]

---

[7] Similarly, without merit is the UCC's reliance on the fact that Otterbourg and Goldin were retained pre-petition pursuant to retention agreements signed by the IAC. Not only is such an arrangement not unusual, it has been approved in other cases. *See, e.g.*, *Intelsat S.A.* Case No. 20-32299 (KLP), Dkt. No. 437 (Bankr. E.D. Va. June 30, 2020); *VER Technologies Holdco, LLC*, 18-10834 (KG), Dkt. No. 340 (Bank. D. Del. May 22, 2018). Moreover, the Charter expressly delegated to the IAC the authority to retain counsel to be paid for by the Diocese.

6

6349242.1

### B. The IAC Does Not Interfere with the UCC's Duties

15. The UCC contends that the Applications should be denied because the IAC's continued existence during the Debtor's Chapter 11 case purportedly interferes with the UCC's ability to investigate the Debtor under § 1103,[8] and to seek standing to prosecute claims.[9] This prong of the UCC's Objection is not truly an objection to the Applications, and the continued existence of the IAC is not a matter before this Court. Moreover, the Debtor has the right to investigate and pursue claims to recover assets for the estate, and the UCC's role in the case does not negate the Debtor's rights.

16. It is neither the IAC's role nor its function to participate in a determination of the proper scope of the UCC's investigation of the Debtor. The IAC does note, however, that nothing in its mandate interferes with the UCC's duties as an official committee appointed under § 1102.

17. Rather than interfere with the UCC, both the IAC's continued existence, and the retention of Otterbourg and Goldin to assist it, enhance the estate for all stakeholders. As set forth in the Reply Dec., after an extensive investigation, the IAC has determined that colorable claims exist. *See* Reply Dec., ¶ 3. The IAC is immediately prepared to pursue those claims for the Debtor's estate. *Id*. Contrary to the UCC's assertion, the retention of the IAC's professionals will not cause additional and unnecessary costs to the estate. An extraordinary amount of work, at significant cost to the Diocese, has already been completed by the IAC's professionals. What will add unnecessary costs to the estate is the denial of the Applications, which will thwart the IAC from

---

[8] The UCC Objection (at ¶ 17) contends that it is required to investigate the Debtor ("Section 1103(c)(2) specifically charges the Committee with the duty to 'investigate'…."). That of course overstates the scope of the section, which authorizes, but does not require, a committee's investigation ("A committee appointed under Section 1102 of this title *may*….").

[9] Under the governing law in this Circuit, absent the debtor's consent, standing to prosecute claims may be conferred on a creditor's committee only if, *inter alia*, the debtor unjustifiably fails to bring the action. *Unsecured Creditors Comm. of Debtor STN Enter., Inc. v. Noyes (In re STN Enter.)*, 779 F.2d 901 (2d Cir. 1985). Here, the IAC has been charged with prosecuting colorable claims it already has identified.

7

pursuing these claims as an independent special committee free of any conflicts, resulting in a substantial loss of knowledge acquired by the IAC and its professionals prior to the commencement of this case.

## II.    The IAC Members are not "Insiders" and Otterbourg and Goldin are "Disinterested"

18.    In contrast to the UCC and its erroneous assertion that the IAC is not part of the Diocese, the UST asserts that the Applications should be denied because the IAC members are "insiders" or employees of the Diocese, and therefore, because Ms. Cyganowski and Mr. Goldin are IAC members, their firms, Otterbourg and Goldin, are not "disinterested." The UST is equally in error and its objection should also be overruled. Contrary to the UST's contention, the IAC members are neither "directors," persons "in control" nor "employees" of the Diocese, and the UST has failed to cite any legal authority to support its flawed assertion. *See* UST Obj., ¶¶ 17-26.

### A.    The Legal Standard

19.    Under § 327(a), the trustee may employ attorneys and other professional persons that are "disinterested persons." 11 U.S.C. § 327(a). In turn, a person is "disinterested" under § 101(14) if *inter alia* that person is not an "insider" and is not, and was not within 2 years before the date of the filing of the petition, an "employee of the debtor." 11 U.S.C. §§ 101(14)(A), (B). The UST asserts that the IAC's professional firms are not "disinterested" because the IAC members are either "insiders" or "employees" under §§ 101(14)(A), (B).

20.    Under § 101(31)(B), the term "insider," as it relates to corporations, "includes" in relevant part, a "director" or "person in control" of the debtor. 11 U.S.C. §§ 101(31)(B)(i), (iii). The UST asserts that the IAC members are "insiders" claiming that they are directors or persons in control of the Debtor under § 101(31)(B).[10]

---

[10]    If the Court were to find that the IAC members are persons "in control" of the Debtor, such a finding is not fatal to the approval of the Applications. Ms. Cyganowski and Mr. Goldin could resign from the IAC, thus resolving

8

21. Courts view the list of insiders under § 101(31) as non-exhaustive and have acknowledged that an insider, in the context of a corporation, can encompass more than just the six categories enumerated in § 101(31)(B). *In re 455 CPW Assocs.*, No. 99–5068, 2000 WL 1340569, at *5 (2d Cir. Sept. 14, 2000) (summary order); *In re Borders Grp., Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011).[11] Although flexible, the definition of the term "insider" is not without boundaries. *Cf. 455 CPW Assocs.*, *supra*, at *5. Under prevailing law, the IAC members are not "insiders" as they are neither "directors" nor persons "in control" of the Debtor.[12]

### B. The IAC Members Are Not Directors Under § 101(31)(B)(i)

22. The UST makes the erroneous argument that because the IAC has been granted discrete authority over certain causes of action, the IAC members have been transformed into members of the Diocese's Board. However, as described in the Reply Dec., the IAC members are not directors (or trustees) of the Diocese – they do not sit on the Board and do not perform any function of corporate governance or authority. *See* Reply Dec., ¶ 14.

23. Because the term "director" is not defined in the Bankruptcy Code, to determine the meaning of the word, courts rely on the dictionary definition of the term, which provides that

---

any such issue. Alternatively, Otterbourg could be retained under § 327(e), which does not contain the same disinterested standard as § 327(a), with Goldin retained as Otterbourg's expert.

[11] Insider status can also be determined on a case-by-case, non-statutory, basis on the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs. *CPY Co. v. Ameriscribe Corp. (In re Chas. P. Young Co.)*, 145 B.R. 131, 136 (Bankr. S.D.N.Y. 1992). The UST Objection does not specifically allege that the IAC members are non-statutory insiders. For the reasons set forth in this Statement, all of the factors for identifying non-statutory insiders weigh in favor of finding that the IAC members are not insiders of the Diocese. *See In re TS Emp., Inc.*, 597 B.R. 543, 550 (Bankr. S.D.N.Y. 2019) (citations omitted); *see also In re Winslow*, 473 B.R. 94, 103 (E.D.N.C. 2012).

[12] The cases cited by the UST are boilerplate and do not discuss the term "insider" in any way relevant to the UST's arguments. *See In re WorldCom*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004) (no discussion of the term "insider"); *In re Granite Partners, L.P.*, 219 B.R. 22, 27 (Bankr. S.D.N.Y. 1998) (same); *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001) (same); *In re Vebeliunas*, 231 B.R. 181, 191 (Bankr. S.D.N.Y. 1999) (same); *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 35 (Bankr. S.D.N.Y. 1998) (same). Even the cases that the UST cites that do discuss the term "insider" do not address the meaning of the terms "director" or "person in control." *See In re A. Tarricone, Inc.*, 286 B.R. 256, 264 (Bankr. S.D.N.Y. 2002); *U.S. Bank N.A. v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 971 (2018).

9

6349242.1

a "director" is "an individual who sits on the board of directors of a corporation." *In re Borders Grp., Inc.*, 453 B.R. 459, 468 (Bankr. S.D.N.Y. 2011) (*citing Rupp v. United Security Bank (In re Kunz)*, 489 F.3d 1072, 1077 (10th Cir. 2007)); *In re Glob. Aviation Holdings Inc.*, 478 B.R. 142, 147 (Bankr. E.D.N.Y. 2012); *see also* Director, Black's Law Dictionary (11th ed. 2019) ("A person appointed or elected to sit on a board that manages the affairs of a corporation or other organization by electing and exercising control over its officers."). As the *Borders* court stated, the term director "plainly means a person who is a member of the governing board of the corporation and participates in corporate governance." *Borders*, 453 B.R. at 468. Director-like status is not enough. *Id.* (finding "director-level" employees to not be "directors" under § 101(31)(B) and not insiders); *Kunz*, 489 F.3d at 1077 (finding that a "director emeritus" was not a "director" under § 101(31)(A) and not an insider where he had no board voting rights); *Glob. Aviation*, 478 B.R. at 148 (finding that individuals were not "directors" under § 101(31)(B) and not insiders where they were not members of the board of the debtors or participated in corporate governance).

24.    Like the individuals in *Borders*, *Kunz*, and *Global Aviation*, the IAC members are not members of the Diocese's Board.[13] Further, the IAC Members do not participate in the transaction of the business of the Board, they are not charged with the management of the affairs of the Debtor, they do not attend or vote at meetings of the Board and their presence is not considered in establishing a quorum of the Board. *See* Reply Dec., ¶ 14. In fact, the IAC members have never attended a meeting of the Board, do not receive agendas, discussion topics, reports or minutes of any such meetings that were held during the IAC's tenure. *Id*. The fact that the Board

---

[13]    Indeed, the IAC understands that Diocese's By-Laws limit the members of the Board to the Diocese's Bishop, Vicar General and Chancellor. *See* Reply Dec., Ex. C, By-Laws of the Roman Catholic Diocese of Rockville Centre, New York, Art. 1.

10

6349242.1

authorized the IAC to review and pursue certain colorable claims in connection with the Affiliate Transactions does not transform the IAC members into "directors."[14]

### C. The IAC Members Are Not Persons in Control of The Debtor Under § 101(31)(B)(iii)

25. Similarly, the IAC members are not "persons in control" of the Debtor under § 101(31)(B)(iii) and the UST fails to cite a single authority otherwise. The Board's limited delegation to the IAC does not grant the IAC members with the managerial control over the Diocese's operations, contractual decisions, or corporate policy required to establish the requisite "control" to be considered an insider. The IAC has no knowledge of, input or decision-making authority over any day to day operations of the Diocese, its strategic planning, or any decisions regarding its finances, personnel or disposition of assets, which are all overseen by the Board and the Diocese's pastoral officers. *See*, Reply Dec., ¶ 15.

26. As the United States Court of Appeals for the Second Circuit has stated, "courts have required evidence of *extensive* control before finding insider status under [identical 'person in control' provision of] § 101(31)(C)(v)." *455 CPW Assocs.*, *supra*, at *5 (emphasis added) (affirming bankruptcy court decision finding that an individual who was responsible for the day-to-day functions of the debtor was not an insider where such authority was delegated by someone else who was in control); *see also Chas P. Young*, 145 B.R. at 136-37 (stating that actual management over the debtor's affairs, including debtor's personnel or contract decisions, production schedules or accounts payable, can qualify a party as an insider where such a party has a "stranglehold" over the debtor).

---

[14] The UST Objection does not assert that the IAC members are "officers" of the Debtor under § 101(31)(B)(ii). Courts have held that the term "officer" means a "person elected or appointed by the board of directors to manage the daily operations of a corporation, such as the CEO, president, secretary, or treasurer." *Borders*, 453 B.R. at 468-69. The IAC members are not "officers" of the Debtor as they do not manage the daily operations of the Diocese.

6349242.1

27. Simply put, the IAC members do not "exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *In re Sullivan Haas Coyle, Inc.*, 208 B.R. 239, 243 (Bankr. N.D. Ga. 1997) (finding financial consultant was not "person in control" where consultant could not sign checks for the debtor or hire or fire employees; had no role in production or the operation of the business; and consulting agreement was terminable at will by either party); *In re KDI Holdings, Inc.*, 277 B.R. 493, 512 (Bankr. S.D.N.Y. 1999).

28. The UST has not and cannot establish that the IAC members have extensive control over the Diocese because they do not. Instead, the record is clear that the Diocese exercised its fiduciary duties to delegate authority to the IAC over a discrete matter. As a matter of law, that is an insufficient basis to establish insider status.

### D. The IAC Members Are Not Employees of The Diocese Under § 101(14)(B)

29. The Bankruptcy Code does not define the term "employee," but New York law does. Under applicable state law, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Meyer v. U.S. Tennis Ass'n*, 607 Fed. App'x 121, 122 (2d Cir. 2015) (quotations omitted); *Rose v. Nw. Mut. Life Ins. Co.*, 220 F. Supp. 3d 363, 373 (E.D.N.Y. 2016). "Broadly speaking, an employee is someone who works for another *subject to substantial control, not only over the results produced but also over the means used to produce the results*. A person who works for another subject to less extensive control is an independent contractor[.]" *O'Brien v. Spitzer*, 7 N.Y.3d 239, 242 (2006) (emphasis added).[15]

---

[15] The UST cites to a dictionary definition of the term "employee", which states that an employment relationship is one in which the "employer has the right to control the details of work performance." UST Objection, ¶ 25 (citing Black's Law Dictionary (11th ed. 2019)). Even if the dictionary definition of the term "employee" was controlling, the Diocese does not "control the details of the [IAC's] work performance." The UST asserts that the IAC members

12

6349242.1

30.     The Diocese does not maintain the control over the IAC members required for employee status:

a. The IAC members were retained as independent contractors, not as employees, and are required as independent contractors to pay all applicable taxes on the fees paid to them.

b. The Diocese does not have control over the IAC members' work product, much less the substantial control required by law. The IAC members did not consult the Diocese, much less take any direction from it, when conducting their investigation, in their deliberations, or in the conclusions they ultimately reached, which were only reported to the Diocese at the conclusion of the investigation and over which the Diocese had no control to thereafter alter or modify the conclusions reached. The IAC members did not provide any interim reports or conclusions to the Diocese prior to providing its final conclusions to the Diocese. *See*, Reply Dec., ¶ 12.

c. Contrary to the UST's assertions, that the Diocese appointed the IAC members and may terminate them does not render the IAC members employees. Independent contractors are retained and subject to termination. *See Rose*, 220 F. Supp. 3d at 373 ("the mere retention of general supervisory powers over an independent contractor does not create an employment relationship"). For the same reason, the IAC members do not become employees because the Diocese pays them a set fee. Independent contractors also are paid a fee.

**E.  There is No Appearance of Impropriety**

31.     The reputations of the three IAC members do not need to be burnished. *See* Reply Decl., Ex. B, CVs of IAC members. The IAC members are well-known for their integrity and professional accomplishments as reflected by their appointments to positions of trust by Courts

---

are employees because they are "chosen and installed by the Debtor, are answerable to the Debtor, must report their findings to the Debtor, are paid by the Debtor, and can be fired at will by the Debtor." But nowhere does the UST assert that the Diocese *controls* the details of the IAC's work performance, which is the standard set forth in Black's Law Dictionary.

13

6349242.1

and indeed, by the UST. Yet, the UST suggests here that the retention of Otterbourg and Goldin somehow has the appearance of impropriety. That assertion is unfounded. Mr. Gonzalez, as an unaffiliated member of the IAC, had ultimate decision-making authority to retain Otterbourg as counsel and Goldin as financial advisors to the IAC. *See* Reply Dec., ¶ 17. Additionally, it was and is Mr. Gonzalez's responsibility as Chair of the IAC to review and approve Otterbourg and Goldin's monthly statements and to determine if the fees and expenses are reasonable. Neither Ms. Cyganowski nor Mr. Goldin have any role in that regard. *See*, Reply Dec., ¶ 19; Otterbourg App., Ex. B, ¶ 15. Now, of course, as part of the Chapter 11 process, the Court and all parties in interest will have the right to review and object to the fee requests of the IAC professionals who must comply with § 330 of the Bankruptcy Code.[16]

32.  Moreover, the UST has not raised a concern over the "appearance of impropriety" in other, similar circumstances, including where an examiner appointed pursuant to § 1104 or a fee examiner has retained his or her own firm. Patently, there is substantially less impartial oversight in such cases because unlike here, in such circumstances, there is no unaffiliated person reviewing the fee requests of the examiner's firm before they are filed with the court. Nonetheless, in a multiple of such cases, the UST has not objected to the retention on grounds of "appearance of impropriety." *See, e.g.*, *In re Firestar Diamond, Inc.*, Case No. 18-10509 (SHL), Dkt. No. 175 (Bankr. S.D.N.Y. May 18, 2018) (approving application of examiner to retain his own law firm); *In re Wonderwork, Inc.*, Case No. 16-13607 (MKV), Dkt. No. 198 (Bankr. S.D.N.Y. June 28, 2017) (same); *In re Dynegy Holdings, LLC*, Case No. 11-38111 (CGM), Dkt. No. 416 (Bankr. S.D.N.Y. Feb 10, 2012) (same); *In re Extended Stay*, 09-13764 (JMP), Dkt. No. 618 (Bankr.

---

[16]  Further, Ms. Cyganowski and Mr. Goldin are compensated for their services on the IAC separately from the fees paid to Otterbourg and Goldin by the Diocese.

S.D.N.Y. Dec. 11, 2009) (same); *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP), Dkt. No. 2803 (Bankr. S.D.N.Y. Feb. 11, 2009) (same); *In re AMR Corp.*, Case No. 11-15463 (SHL), Dkt. Nos. 3896 (Bankr. S.D.N.Y. Aug. 6, 2012) (order authorizing fee examiner to retain his own law firm); *In re Commonwealth of Puerto Rico*, Case No. 17-03283 (LTS), Dkt. No. 1993 (D.P.R. Dec. 13, 2017) (same); *In re City of Detroit*, Case No. 13-53846 (SWR), Dkt. No. 383 (Bankr. E.D. Mich. Aug. 19, 2013) (same), all attached as **Exhibit C**.

## CONCLUSION

33. The Debtor has standing under § 327(a) to seek the retention for the IAC of independent professionals to assist the IAC in pursuing the colorable claims it has identified. The IAC members are neither insiders nor employees of the Debtor. The Applications should be granted and the Objections overruled.

Dated: November 11, 2020
New York, New York

OTTERBOURG P.C.

*/s/ Peter Feldman*
Peter Feldman, Esq.
Jennifer S. Feeney, Esq.
230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104
*Proposed Counsel to the
Independent Advisory Committee*

15

6349242.1