**Hearing Date:  March 1, 2021 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  February 22, 2021 at 4:00 p.m. (Prevailing Eastern Time)**

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
10100 Santa Monica, Boulevard, 11th Floor
Los Angeles, California 90067
Telephone:    (310) 277-6910
Facsimile:    (310) 201-0760
Email:        jstang@pszjlaw.com

-and-

Ilan D. Scharf, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777
Email:        ischarf@pszjlaw.com
              kdine@pszjlaw.com
              bmichael@pszjlaw.com

Counsel for the Official Committee
of Unsecured Creditors of The Roman Catholic Diocese
of Rockville Centre, New York

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br><br>                Debtor. | Chapter 11<br><br>Case No. 20-12345 (SCC) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE
2004 AUTHORIZING EXAMINATIONS AND PRODUCTION OF DOCUMENTS**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of

Rockville Centre, New York (the "**Diocese**" or the "**Debtor**") in the above-captioned case (the

"**Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), by

and through its undersigned counsel, hereby moves (the "**Motion**") this Court for entry of an

order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**") authorizing the examination pursuant to Bankruptcy Rule 2004 of the Debtor.  In

support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor has admitted that there are colorable claims that it is conflicted from

pursuing on account of pre-petition transfers by the Debtor to entities related to the Debtor.  The

Debtor attempted to circumvent this inherent conflict through the appointment of the

Independent Advisory Committee ("**IAC**") to investigate, litigate and settle such claims.

However, the IAC's appointment is legally flawed and unworkable because the IAC cannot settle

fraudulent transfer claims on behalf of the Debtor's estate.  Since the Debtor filed applications to

retain counsel and financial advisors on behalf of the IAC four months ago, there has been no

resolution of the IAC's further role, if any, in this case.

2.      In order to bridge this impasse and find the best way to move those colorable

claims forward, the Committee has repeatedly requested a copy of the IAC Report (defined

below).  Despite these requests, the Committee has been provided with no information regarding

the pre-petition work completed by the IAC or the potential fraudulent transfer claims.

Additionally, the Debtor has been unable to resolve the issues with the IAC raised by the

Committee and the Court, including the statutory provisions limiting the IAC to an advisory role,

as well as the concern that the retention of additional professionals for the IAC is an unnecessary

drain of estate resources.[1]

---

[1] *Official Committee of Unsecured Creditors' Objection to the Retention Applications*, Docket No. 103; *see also*
Declaration of James I. Stang ("**Stang Decl.**"), Ex. A (Transcript of 11/18/20 Hearing, 52:1–53:10).

DOCS_NY:42112.7 18491/002

3.    The Committee seeks information from the Debtor about the potential claims investigated by the IAC and, reportedly, described in the IAC Report.  The Committee seeks information in order to assess, among other things, (a) the work performed by the IAC; (b) whether the Debtor made any fraudulent transfers; (c) the appropriate mechanism for pursuing the potential fraudulent transfer claims; and (d) whether any entities hold property for the Debtor's benefit (collectively, the "**Investigation Matters**").  The Committee seeks such information in order to carry out its duties under section 1103 of the Bankruptcy Code in a cost-effective manner and to work to maximize unsecured creditors' recoveries in this Case.

4.    Specifically, the Committee seeks the IAC's report to the Diocese regarding its analysis of the potential claims.  Without the report, it is impossible for the Committee to evaluate the work that has already been performed by the IAC and the potential future role for the IAC in this Case.  Additionally, the Committee seeks access to the information the IAC relied on in drafting its report to conduct an independent analysis of the estate's potential claims.

5.    Through this Motion, the Committee seeks entry of an order, pursuant to Bankruptcy Rule 2004, (i) requiring the Debtor to produce the IAC Report and (ii) authorizing the Committee to issue subpoenas to the Debtor for information related to the Investigation Matters.

## RELEVANT FACTS[2]

**A.    Background**

6.    On October 1, 2020 (the "**Petition Date**"), the Debtor commenced its Chapter 11 case by filing a voluntary petition for relief under Bankruptcy Code Chapter 11.  Pursuant to

---

[2] Many facts described herein are Debtor's own allegations and the Committee has not verified their validity and is not admitting to their truth.  In addition, as noted below, the Committee has thus far received little information regarding the IAC's investigation from the Debtor.  As such, the Committee reserves the right to modify, clarify, or amend any factual assertions in this Motion.

sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as debtor in possession.

7.     No trustee or examiner has been appointed in this case.

8.     On October 16, 2020, the United States Trustee for Region 2 appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  The Committee consists of nine individuals who hold claims against the Debtor, including eight individuals who were sexually abused as minors by perpetrators for whom the Debtor was responsible and one representative of a minor with a civil rights claim against the Debtor.[3]

**B.     The IAC's Pre-Petition Activity**

9.     The Diocese appointed the IAC to "review certain transactions between the Diocese and Diocese Affiliates outside the ordinary course of administration and support that the Diocese provides to the Diocese Affiliates."[4]  The IAC reportedly reviewed four transactions: (i) the Diocese's transfer of certain assets and all liabilities of its Cemetery Division to two separate entities, the Cemetery Corporation and Cemetery Trust on September 1, 2017;[5] "(ii) the January 2017 transfer of the real property parcel located in Huntington, New York to Seminary Corporation; (iii) the September 2017 transfer of assets, operations and liabilities of the Diocesan high schools to the Department of Education; and (iv) the 2018 transfer of $3 million to the Catholic Foundation."[6]

---

[3] *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 71].

[4] Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Diocese of Rockville Centre, New York, In Support of Chapter 11 Petition and First Day Pleadings (the "**Moore Decl.**") dated October 1, 2020 [Docket 3] at ¶ 121.

[5] *Id.*; *see also id.* ¶53.

[6] *Id.* ¶ 121.

DOCS_NY:42112.7 18491/002

10.     The IAC members were paid a fixed monthly fee of $25,000 for the chair and

$20,000 for the other two members since its appointment.[7]  Upon information and belief, the

IAC members are not currently being paid.  The IAC hired Otterbourg P.C. ("**Otterbourg**") as

its counsel and Goldin, a Teneo Company ("**Goldin**") as its financial advisor.[8]  The IAC

accessed over 220,000 documents—including Diocese records, such as minutes, financial

statements, reports, and emails—and interviewed key Diocese personnel.[9]

**C.      The IAC's Report of Colorable Claims**

11.     On October 12, 2020, the Diocese filed applications on behalf of the IAC to retain

Otterbourg and Goldin as bankruptcy professionals.[10]  The Committee objected to the Retention

Applications.[11]

12.     In its reply to the Committee's objection, the Diocese stated that the "IAC has

independently determined . . . that the transfers it was charged with evaluating give rise to

colorable claims on behalf of the Diocese."[12]

13.     The IAC also filed a statement in support of the Retention Applications, stating

that it completed its "extensive investigation" in July 2020 and "advised the Diocese that it had

determined one or more colorable claims exist in favor of the Diocese arising from the Affiliate

Transactions."[13]

---

[7] *Id.* ¶ 125.

[8] *Id.* ¶ 126.

[9] *Id.* ¶¶ 126–27.

[10] *Application to Employ Otterbourg P.C. as Counsel to the Independent Advisory Committee*, Docket No. 60 ("**Otterbourg Application**"); *Application to Employ Goldin, A Teno Company as Financial Advisor to the Independent Advisory Committee*, Docket No. 61 ("**Goldin Application**" and, together with the Otterbourg Application, "**Retention Application**").

[11] *Official Committee of Unsecured Creditors' Objection to the Retention Applications*, Docket No. 103.

[12] *Debtor's Reply in Support of the Retention Applications*, Docket No. 150, p. 7 of 22.

[13] *Statement of the IAC in Further Support of the Retention Applications*, Docket No. 152, p. 2 of 16.

DOCS_NY:42112.7 18491/002

14.    At the November 18, 2020 omnibus hearing, Mr. Peter Feldman from Otterbourg stated that in July or August 2020 "there was a report that was delivered by the IAC, a written report by the IAC to the diocese" (the "**IAC Report**").[14]

### D.    The Diocese's Reluctance to Disclose Information

15.    On November 17, 2020, the Committee provided the Diocese with a list of document requests, including three of the requests included on **Exhibit A**.[15]

16.    On November 19, 2020, the Committee requested that Mr. Feldman, as counsel to the IAC, provide the Committee a copy of the IAC Report.[16]  On November 20, 2020, Mr. Feldman declined to produce the IAC Report and referred the Committee to the Diocese.[17]  On November 23, 2020, the Committee requested that the Diocese provide the Committee a copy of the IAC Report.[18]  The Committee never received a written response from the Diocese, but was told in phone conversations that the Diocese would not produce the IAC Report.[19]

17.    The Committee has received no additional information regarding the IAC's work or the underlying transfers.[20]

18.    Given the Diocese's proven reluctance to disclose information, the Committee is hopeful that the Court's authority, through an order authorizing the Committee to seek information from the Diocese pursuant to Rule 2004, will avoid unnecessary delay and expense.

---

[14] Stang Decl., Ex. A (Transcript of 11/18/20 Hearing, 60:8–10).

[15] Stang Decl., Ex. B (11/17/20 Dine Email).

[16] Stang Decl., Ex. C (Letter to P. Feldman).

[17] Stang Decl., Ex. D (E-mail from P. Feldman).

[18] Stang Decl., Ex. E (Letter to C. Ball).

[19] Stang Decl., ¶ 10.

[20] Stang Decl., ¶ 11.

## JURISDICTION

19.     This Court has subject matter jurisdiction to consider this matter pursuant to 28

U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the

relief sought herein are sections 1103 and 1109(b) of the Bankruptcy Code and Bankruptcy Rule

2004.

## RELIEF REQUESTED

20.     The Committee respectfully requests entry of an order pursuant to Bankruptcy

Rule 2004 (i) requiring the Debtor to produce the IAC Report and all related exhibits,

attachments, and underlying documents; and (ii) authorizing the Committee to issue subpoenas

that direct production of Investigation Matters from the Debtor, substantially in the form annexed

hereto as **Exhibit A** (the "**Request**").

## BASIS FOR RELIEF

21.     Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the

court may order the examination of any entity." Bankruptcy Rule 2004(a). Bankruptcy Rule

2004 is primarily used for "revealing the nature and extent of the bankruptcy estate, and for

discovering assets, examining transactions, and determining what wrongdoing occurred." *In re

Kelton*, 389 B.R. 812, 820 (Bankr. S.D. Ga. 2008); *see also In re Lufkin*, 255 B.R. 204, 208

(Bankr. E.D. Tenn. 2000) (Rule 2004's purpose is to "determine the condition, extent, and

location of the debtor's estate in order to maximize distribution to unsecured creditors"); *In re

The Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (Rule 2004's purpose

is to assist in "revealing the nature and extent of the estate, and to discover assets of the debtor

which may have been intentionally or unintentionally concealed").

7

22.     Pursuant to Bankruptcy Rule 2004, a party in interest may seek both document and oral discovery related to "acts, conduct, or property of the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Bankruptcy Rule 2004(b).  Under Bankruptcy Rule 2004(c), the "attendance of an entity for examination and the production of documents. . . may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial."  Bankruptcy Rule 2004(c).  In turn, Bankruptcy Rule 9016 makes Federal Rule of Civil Procedure 45 (governing subpoenas) applicable in cases under the Bankruptcy Code. Bankruptcy Rule 9016.

23.     Unlike discovery under the Federal Rules of Civil Procedure (the "**Civil Rules**"), discovery under Bankruptcy Rule 2004 can be used as a "pre-litigation discovery device." *In re Wilson*, 2009 WL 304672, at *5 (Bankr. E.D. La. 2009); *see also In re Hughes,* 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002).  As such, a Bankruptcy Rule 2004 motion need not be tied to specific factual allegations at issue between parties.  *In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

24.     Moreover, the scope of a Bankruptcy Rule 2004 examination is broader than that of discovery under the Civil Rules or the Bankruptcy Rules governing adversary proceedings.  *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he scope of a Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure.").  In fact, courts have recognized that Bankruptcy Rule 2004 examinations may be "broad" and "unfettered," and can legitimately be in the nature of a

"fishing expedition." *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa.

2008); *see also In re Lev*, 2008 WL 207523, at *3 (Bankr. D.N.J. 2008); *In re Bakalis*, 199 B.R.

443, 447 (Bankr. E.D.N.Y. 1996); *In re The Bennet Funding Group, Inc.*, 203 B.R. 24, 28

(Bankr. N.D.N.Y. 1996) (Rule 2004's purpose is to assist in "revealing the nature and extent of

the estate, and to discover assets of the debtor which may have been intentionally or

unintentionally concealed"); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (E.D. Pa.

1990). "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets,

any third party who can be shown to have a relationship with the debtor can be made subject to a

Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432, (Bankr. S.D.N.Y.

1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

25.     The decision whether to authorize the requested discovery rests within the

bankruptcy court's sound discretion. *See, e.g., In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D.

Ohio 1992). Courts authorize discovery under Bankruptcy Rule 2004 to assist in recovering

assets for the benefit of a debtor's creditors. *See In re Vantage Petroleum Corp.*, 34 B.R. 650,

651 (Bankr. E.D.N.Y. 1983) (allowing discovery under Rule 2004 to help the debtor "discover

and recover assets for benefit of creditors of the debtor").

26.     In addition, section 105(a) of the Bankruptcy Code authorizes the Court to "issue

any order . . . that is necessary or appropriate to carry out provisions of this title." 11 U.S.C.

§ 105(a). The Committee's investigation will, among other things, assist the Committee to fulfill

its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of

the [D]ebtor." 11 U.S.C. § 1103(c)(2).

27.     Here, the requested relief is well within the scope of Bankruptcy Rule 2004.  The

Committee seeks to maximize creditors' recoveries in this Case.  As such, the Committee needs

the information it seeks to properly evaluate the value of the potential transfer claims and the IAC's analysis of the claim after its yearlong investigation.  The Committee cannot engage in discussions regarding the future of the IAC and the prosecution of the potential claims without the IAC Report and the underlying information.

28.     Based on the foregoing, the Court should enter an order (i) requiring the Debtor to produce the IAC Report and all related exhibits, attachments, and underlying documents and (ii) authorizing the Committee to issue subpoenas (a) seeking Investigation Material from the Diocese and (b) testimony regarding the Investigation Material.

## NO PRIOR REQUEST

29.     No prior request for the relief sought in this Motion has been made to this or any other Court.

## NOTICE

30.     Notice of this Motion has been given to (a) the U.S. Trustee; (b)  Counsel to the Debtor; (c) all parties listed on the matrixes of creditors provided by the Debtor's in these Cases; and (d) all parties that filed a notice of appearance in these Cases as of the date hereof. In light of the nature of the relief requested herein, the Committee submits that no other or further notice is required.

WHEREFORE, the Committee respectfully requests that this Court: (i) enter an order substantially in the form attached hereto as **Exhibit B**, granting the relief sought herein; and (ii) grant such other and further relief to the Committee as the Court may deem proper.

PACHULSKI STANG ZIEHL & JONES LLP

Dated:  New York, New York
        February 12, 2021

*/s/ James I. Stang*
James I. Stang, Esq. (admitted *pro hac vice*)
10100 Santa Monica, Boulevard, 11th Floor
Los Angeles, California 90067

10

Telephone:      (310) 277-6910
Facsimile:      (310) 201-0760
Email:          jstang@pszjlaw.com

-and-

Ilan D. Scharf, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:      (212) 561-7700
Facsimile:      (212) 561-7777
Email:          kdine@pszjlaw.com
                ischarf@pszjlaw.com
                bmichael@pszjlaw.com

Counsel for the Official Committee
of Unsecured Creditors of The Roman Catholic
Diocese of Rockville Centre, New York

DOCS_NY:42112.7 18491/002

# **<u>EXHIBIT A</u>**

**EXHIBIT A**

**Subpoena to The Roman Catholic Diocese of Rockville Centre, New York**

**INSTRUCTIONS**

A.      You are required to conduct a thorough investigation and produce all Documents (as defined below) in your possession, custody, and control including all Documents in the possession, custody and control of your attorneys, investigators, experts, officers, trustees, members, directors, employees, agents, representatives, and anyone acting on Your behalf.

B.      The use of either the singular or plural shall not be deemed a limitation.  The use of the singular should be considered to include the plural and vice versa.

C.      The words "and," "or," and "and/or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of the Request those responses that might otherwise be construed to be outside the scope.

D.      If You are unable to comply with a particular category(ies) of the requests below and Documents responsive to the category are in existence, state the following information:

1.      The date of the Document;

2.      The type of Document (*e.g.*, letter, memorandum, report, etc.);

3.      The name, address, telephone number and title of the author(s) of the Document;

4.      The name, address, telephone number and title of each recipient of the Document;

5.      The number of pages in the Document;

6.      The document control number, if any;

7.      The present location(s) of the Document and the name, address and telephone number of the person(s) who has (have) possession of the Document;

8.      A specific description of the subject matter of the Document;

9.      The reason why the Document cannot be produced or why you are unable to comply with the particular category of request.

**E.**    You are under a continuing duty to timely amend your written response and to produce additional Documents if you learn that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the Plaintiff during the discovery process or in writing.

**F.**    You are required to produce the full and complete originals, or copies if the originals are unavailable, of each Document responsive to the categories below along with all non-identical copies and drafts in its or their entirety, without abbreviations, excerpts, or redactions. Copies may be produced in lieu of originals if the entirety (front and back where appropriate) of the Document is reproduced and the Responding Party or its authorized agent or representative states by declaration or affidavit under penalty of perjury that the copies provided are true, correct, complete, and an accurate duplication of the original(s).

**G.**    You are required to produce the Documents as they are kept in the usual course of business or your operations, or to organize and label them to correspond with each category in these requests.

**H.**    You are required to produce Electronically Stored Information in searchable form.

**I.**    For Documents that are currently in paper format:

1.    Documents must be scanned and produced electronically in single page TIFF format with corresponding OPT file, DAT file, as well as OCR or extracted text and .lst file.

2.    To the extent available, provide Beginning Production Number, Ending Production Number, Folder information, custodian information and family information.

**J.**    For Documents that contain Electronically Stored Information, the following guidelines are to apply:

1.    Single page, Group IV TIFFs with links to native files (for Excel or similar spread sheet or accounting files, at a minimum) with

corresponding OPT file, DAT file, as well as OCR or extracted text and .lst file.

2.      Maintain family integrity.

3.      Perform custodian-level reduplication.

4.      Concordance standard delimited DAT load file with the following metadata fields: Beginning Production Number, Ending Production Number, Beginning Attachment Number, End Attachment Number, Family ID, Page Count, Custodian, Original Location Path, Email Folder Path, Document Type, Doc Author, Doc Last Author, Comments, Categories, Revisions, File Name, File Size, MD5 Hash, Date Last Modified, Time Last Modified, Date Created, Time Created, Date Last Accessed, Time Last Accessed, Date Sent, Time Sent, Date Received, Time Received, To, From, CC, BCC, Email Subject, Path to Native, Path to Full Text, Original Time Zone.

5.      OCR or extracted text for all ESI:  (a) Separate .txt files corresponding to beginning production number of each document; (b) Separate .lst file for fulltext.

6.      Process all data in GMT and provide a metadata field indicating original time zone.

**K.**      If you withhold or redact a portion of any Document under a claim of privilege or other protection, each such Document must be identified on a privilege log, which shall be produced contemporaneously with the non-privileged Documents responsive to this Request for Production, and which privilege log shall state the following information:

1.      The date of the Document;

2.      The type of Document (*e.g.*, letter, memorandum, report, etc.);

3.      The name, address, telephone number and title of the author(s) of the Document;

4.      The name, address, telephone number and title of each recipient of the Document;

5.      The number of pages in the Document;

6.      The document control number, if any;

7.      The present location(s) of the Document and the name, address and telephone number of the persons) who has (have) possession of the Document;

8.     A general description of the subject matter of the Document or the portion redacted without disclosing the asserted privileged or protected communication;

9.     The specific privilege(s) or protection(s) that you contend applies.

**L.**     Unless otherwise specified, the relevant time period to which each Request for Production relates is October 1, 2010 through the date You produce Documents responsive to the Requests.

## DEFINITIONS

Unless otherwise stated, the following definitions shall apply to these Requests:

1. "**Bankruptcy Case**" means and refers to the chapter 11 case of The Roman Catholic Diocese of Rockville Centre, New York currently pending in the United States Bankruptcy Court for the Southern District of New York under the case captioned as *In re The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (SCC).

2. "**Bankruptcy Code**" means and refers to 11 U.S.C. §101 *et seq*. (as amended from time to time).

3. "**Communications**" means and includes all oral and written communications of any nature, type or kind including, but not limited to, any Documents, telephone conversations, discussions, meetings, facsimiles, e-mails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

4. "**Concerning**" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to.

5. "**Debtor**" or "**Diocese**" means and includes both the civil entity and Canon law juridic person identified as The Roman Catholic Diocese of Rockville Centre, New York on its

voluntary petition for chapter 11 relief, and any predecessor thereof, as well as any person

(including the bishop or apostolic administrator of the Diocese) acting on behalf of the Diocese.

6.  "**Document**" is used herein in the broadest possible sense as specified in and interpreted

under Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, all

originals and copies, duplicates, drafts, and recordings of any written, graphic or otherwise

recorded matter, however produced, reproduced, or stored, and all "writings" as defined in Rule

1001 of the Federal Rules of Evidence, and all other tangible things by which human

communication is transmitted or stored, meaning any kind of printed, recorded, graphic, or

photographic matter, however printed, produced, reproduced, copies, reproductions, facsimiles,

drafts and both sides thereof, including without limitation any kind of written, typewritten,

graphic, photographic, printed, taped or recorded material whatsoever, regardless whether the

same is an original, a copy, a reproduction, a facsimile, telex or telefax, and regardless of the

source or author thereof, including without limitation, any writing filed for reporting or other

purposes with any state, federal or local agency; notes; memoranda, including but not limited to

memoranda of telephone conversations; letters; audited financial statements; unaudited financial

statements; financial ledgers; intra-office or inter-office communications; circulars; bulletins;

manuals; results of investigations; progress reports; study made by or for business or personal

use; financial reports and data of any kind; working papers; contracts; agreements; affidavits;

declarations; statements; bills; books of accounts; vouchers; transcriptions of conversations or

tape recordings; desk calendars; bank checks; purchase orders; invoices; charge slips; receipts;

expense accounts; statistical records; cost sheets; journals; diaries; time sheets or logs; computer

data; job or transaction files; appointment books; books, records, and copies; electronic mail

messages; extracts and summaries of other documents; drafts of any of the above, whether used

or not; and any other writing or recording; computer and other business machine printouts, programs, listings, projections, as well as any carbon or photographic or copies, reproductions or facsimiles thereof and all copies which differ in any way from the original, including without limitation, all forms of electronic media, data, data storage and other forms of electronic or computer-stored or computer-generated communications, data, or representations. This includes, but is not limited to, such material in the form of Electronically Stored Information: that is, any data present in memory or on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), saved in an archive, present as "deleted" but recoverable electronic files in memory or on any media, and, present in any electronic file fragments (files that have been deleted and partially overwritten with new data) from files containing such material. Where any otherwise duplicate document contains any marking not appearing on the original or is altered from the original, then such item shall be considered to be a separate original document.  Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

7.  "**Electronically Stored Information**" or "**ESI**" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by You, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information-storing electronic devices of You and Your employees, or on associated external storage media, backup tapes, and other archival copies of same.  Unless otherwise specified, documents, reports, and other Electronically Stored Information created

using any version of Microsoft Word, Powerpoint, Excel, Visio, or Access, Word Perfect,

Oracle, or any other Microsoft, Adobe, or other currently available "off-the-shelf" application

shall be produced in native form; that is, the form in which the document is currently stored on

whatever media it currently resides.  The document should not be locked, resaved, restructures,

"scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be

produced in a copy precisely reproducing its entire state as present in Your systems.  Unless

otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in

whatever database and/or file/directory structures are used by Your mail processing software.

All metadata and other unapparent or hidden data related to mail messages shall be produced,

including, but not limited to, any file attachments, message priority flags, message read/access

timestamps, and, in the case of e-mail sent to distribution lists, information on the membership of

such lists at the time the e-mail was sent.

8.    "**Each**" shall mean each and every.

9.    "**Person**" means and includes individuals and entities, civil or canonical, including, but

not limited to, communities, houses, ministries, regions, funds, missions, or apostolic

institutions, as those terms are used under the laws of the Roman Catholic Church, for profit and

not for profit corporations, partnerships, unincorporated associations, limited liability companies,

trusts, firms, cooperatives, fictitious business names, educational institutions, governmental

agencies whether local, state, or federal, and any and all of their agents, representatives,

employees, predecessors, and/or any other Person acting on its/their behalf or subject to its/their

control.

10.  "**You**", "**Your**", and "**Yours**" means and refers to the Responding Party.

## **REQUESTS FOR PRODUCTION**

1. All documents produced to or reviewed by the Independent Advisory Committee ("**IAC**").

2. All communications between the Diocese and the IAC, including the IAC's report on potentially colorable claims from July or August 2020.

3. Documents regarding any interviews conducted by the IAC.

4. All reports prepared by the IAC and provided to the Debtor.

# <u>EXHIBIT B</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br><br>      Debtor. | Chapter 11<br><br>Case No. 20-12345 (SCC) |

### ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO OBTAIN DISCOVERY PURSUANT TO BANKRUPTCY RULE 2004

This matter coming before the Court on the Motion of the Official Committee of Unsecured Creditors (the "Committee") of The Diocese of Rockville Centre, New York for entry of an order, pursuant to Bankruptcy Rule 2004, authorizing the examination pursuant of the Debtor (the "Motion");[1] the Court having reviewed and considered the Motion and accompanying papers; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (iii) notice of the Motion as described in the Motion was proper under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor, it is hereby ORDERED that

   1.  The Motion is GRANTED.

   2.  The Debtor will produce to the Committee the IAC Report and all related exhibits, attachments, and underlying documents within thirty days of entry of this order.

---

[1] Capitalized terms not defined herein shall have the meanings and definitions ascribed to them in the Motion.

3.      The Committee is authorized to, in its discretion, seek examinations of the Debtor with respect to Investigation Material pursuant to Bankruptcy Rule 2004 substantially as described in the Requests attached as Exhibit A to the Motion.

4.      The Committee is authorized to issue subpoenas directing production of the Investigation Material pursuant to Rule 2004 on the Debtor.

5.      The Committee may issue other discovery requests and subpoenas as may be necessary to accomplish the discovery authorized by this Order.

6.      Nothing contained herein shall prejudice the Committee's rights under Bankruptcy Rule 2004 and other applicable laws to seek further document productions and written and oral examinations in connection with these Cases.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: New York, New York
       March __, 2021                    _____
                                         THE HONORABLE SHELLEY C. CHAPMAN
                                         UNITED STATES BANKRUPTCY JUDGE