**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 20-12345 (SCC) |

## <u>DECLARATION OF JAMES I. STANG, ESQ.</u>

Pursuant to 28 U.S.C. § 1746, I, James I. Stang, hereby submit this declaration (the "**Declaration**") under penalty of perjury:

1.      I am partner at the law firm of Pachulski Stang Ziehl & Jones LLP ("**PSZJ**") with an office at 780 Third Avenue, 36th Floor, New York, NY 10017.  I am duly admitted to practice law in State of California and the United States District Courts for the Southern, Eastern, Central, and Northern Districts of California.

2.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.  If called as a witness, I would testify as to those facts.

3.      The Court has approved PSZJ's employment as counsel to the Official Committee of Unsecured Creditors (the "**Committee**") in The Roman Catholic Diocese of Rockville Centre, New York (the "**Diocese**" or the "**Debtor**") in the above-captioned case (the "**Case**") [Docket No. 163].

4.      I submit this Declaration in support of the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Examinations and Production of Documents* (the "**Motion**"),[1] filed concurrently herewith.

---

[1] Capitalized terms not defined herein shall have the meanings and definitions ascribed to them in the Motion.

5.      Attached hereto at **Exhibit A** is a true and correct copy of the transcript of the November 18, 2020 hearing in this case.

6.      Attached hereto at **Exhibit B** is a true and correct copy of an e-mail sent by Karen B. Dine to counsel for the Diocese on November 17, 2020 conveying the Committee's proposed document requests.

7.      Attached hereto at **Exhibit C** is a true and correct copy of a letter I sent to Peter Feldman on November 19, 2020 requesting a copy of the IAC Report.

8.      Attached hereto at **Exhibit D** is a true and correct copy of an e-mail from Peter Feldman to me sent on November 20, 2020 deferring to the Diocese regarding production of the IAC Report.

9.      Attached hereto at **Exhibit E** is a true and correct copy of a letter I sent to Corinne Ball on November 23, 2020 requesting a copy of the IAC Report.

10.     I never received a written response from the Diocese to my November 20, 2020 letter, but was told in phone conversations that the Diocese would not produce the IAC Report.

11.     The Committee has received no additional information regarding the IAC's work or the underlying transfers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  I executed this Declaration on February 12, 2020 at Santa Monica, CA.

*/s/ James I. Stang*
James I. Stang, Esq.

# EXHIBIT A

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - x

11   Adv. Case No. 20-01226-scc

12   - - - - - - - - - - - - - - - - - - - - - - - - - x

13   THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

14               Plaintiff,

15           v.

16   ARK 320 DOE, et al.,

17               Defendants.

18   - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

Page 2

1 Adv. Case No. 20-01227-scc

2 - - - - - - - - - - - - - - - - - - - - - - - - - - x

3 THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

4        Plaintiff,

5    v.

6 ARROWOOD INDEMNITY COMPANY, et al.,

7        Defendants.

8 - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10

11    United States Bankruptcy Court

12    One Bowling Green

13    New York, NY  10004

14

15    November 18, 2020

16    11:02 AM

17

18

19

20

21 B E F O R E :

22 HON SHELLEY C. CHAPMAN

23 U.S. BANKRUPTCY JUDGE

24

25 ECRO:  UNKNOWN

Page 3

1 HEARING re Doc #60 Application to Employ Otterbourg P.C. as

2 Counsel to the Independent Advisory Committee

3

4 HEARING re Doc #61 Application to Employ Goldin, A Teneo

5 Company as Financial Advisor to the Independent Advisory

6 Committee

7

8 Adversary proceeding: 20-01226-scc The Roman Catholic

9 Diocese Of Rockville Centre v. ARK 320 DOE, et al.,

10 Pre-trial Conference

11

12 Adversary proceeding: 20-01227-scc The Roman Catholic

13 Diocese Of Rockville Centre v. Arrowood Indemnity Company,

14 et al

15 Pre-trial Conference

16

17

18

19

20

21

22

23

24

25 Transcribed by:  Sonya Ledanski Hyde

Page 4

1 A P P E A R A N C E S :

2

3 JONES DAY LLP

4    Attorneys for the Debtor

5    250 Vesey Street

6    New York, NY 10281

7

8 BY:  CHRISTOPHER DIPOMPEO (TELEPHONICALLY)

9    CORINNE BALL (TELEPHONICALLY)

10    BENJAMIN ROSENBLUM (TELEPHONICALLY)

11    TODD R. GEREMIA (TELEPHONICALLY)

12    ERIC P. STEPHENS (TELEPHONICALLY)

13    ANDREW BUTLER (TELEPHONICALLY)

14    BENJAMIN THOMPSON (TELEPHONICALLY)

15

16 PACHULSKI STANG ZIEHL & JONES LLP

17    Attorneys for the Committee of Unsecured Creditors

18    780 Third Avenue, 34th Floor

19    New York, NY 10017

20

21 BY:  JAMES STANG (TELEPHONICALLY)

22

23

24

25

Page 5

1 REED SMITH LLP

2    Special Insurance Counsel

3    599 Lexington Avenue

4    New York, NY 10022

5

6 BY:  JOHN BERRINGER (TELEPHONICALLY)

7

8 COUGHLIN DUFFY

9    Attorneys for Arrowood

10    350 Mount Kemble Avenue

11    Morristown, NJ 07962

12

13 BY:  KEVIN COUGHLIN (TELEPHONICALLY)

14

15 CLYDE & CO

16    Attorneys for Lloyd's London & London Market Companies

17    55 W. Monroe

18    Chicago, IL 60603

19

20 BY:  CATHY SUGAYAN (TELEPHONICALLY)

21

22

23

24

25

2 (Pages 2 - 5)

Page 6

1  OTTERBOURG PC

2     Proposed Counsel to the Independent Advisory Committee

3     230 Park Avenue

4     New York, NY 10169

5

6  BY:  PETER FELDMAN (TELEPHONICALLY)

7

8  UNITED STATES DEPARTMENT OF JUSTICE

9     Attorneys for the U.S. Trustee

10    201 Varick Street, Suite 1006

11    New York, NY 10014

12

13  BY:   GREG ZIPES

14

15  ALSO PRESENT TELEPHONICALLY:

16

17  KAREN MORIARTY

18  LEANDER JAMES

19  JOSHUA WEINSTOCK

20  ARTHUR GONZALEZ

21  BRENDA ADRIAN

22  ILAN SCHARF

23  HARRIS J. GOLDIN

24  CHARLES JONES

25  JEFF ANDERSON

Page 7

1   MELANIE CYGANOWSKI

2   JENNIFER FEENEY

3   TRUSHA GOFFE

4   PATRICK STONEKING

5   JAMES MOFFITT

6   MATIN BUNIN

7   JILLIAN DENNEHY

8   LAUREN LIFLAND

9   BRENDA HARKAVY

10  JARED BORRIELLO

11  ANDREW BUTLER

12  ANDREW CIRIELLO

13  MICKEE HENNESSY

14  WARREN MARTIN

15  BRETT MOORE

16  CHARLES MOORE

17  BENJAMIN ROSENBLUM

18  AMANDA TERSIGNI

19  BENJAMIN THOMSON

20  BRITTANY MICHAEL

21  GEORGE CALHOUN

22  PETER MCNAMARA

23  ELIZABETH CATE

24  KAREN DINE

25  FRANK OSWALD

Page 8

1  JEFF KAHANE

2  SHARA CORNELL

3  THOMAS SLOME

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 9

1          P R O C E E D I N G S

2        THE COURT:  Good morning, everyone.  This Judge

3  Chapman.  We're here this morning for a hearing in the case

4  of the Roman Catholic Diocese of Rockville Centre, case

5  number 20-12345.  This hearing is being conducted entirely

6  telephonically via the Court Solutions platform.  A

7  recording is being made of the proceedings.  No individual

8  or private recordings are permitted.

9        I have a lengthy roster of those who have signed

10  up to participate this morning.  Please identify yourself

11  for the record when you speak and identify the party on

12  whose behalf you are appearing and please do so each time

13  you speak so that we can create an accurate record.

14        I am looking at an agenda that was filed on the

15  docket on November 16th at docket number 160.  So that's my

16  starting point. If I could please ask everyone to keep your

17  phones on mute unless and until you speak, that would help.

18  Thank you very much.  And who would like to start on behalf

19  of the debtor today?

20        MR. DIPOMPEO:  Good morning, Your Honor.  This is

21  Christopher DiPompeo of Jones Day for the debtor.

22        THE COURT:  Good morning.

23        MR. DIPOMPEO:  I'm joined this morning -- morning.

24  I'm joined this morning by my colleagues Corinne Ball, Ben

25  Rosenblum, Todd Geremia, Eric Stephens, Andrew Butler, and

3 (Pages 6 - 9)

Page 10

1 Ben Thompson.

2 Your Honor, the agenda that you referred to which

3 the debtor filed on Sunday included two uncontested motions,

4 pre-trial conferences, and two adversary proceedings, and

5 two contested motions in connection with the IAC. Yesterday

6 afternoon, we saw the Court entered orders with respect to

7 the two uncontested motions which were the insurance motion

8 and the Pachulski retention application.

9 THE COURT: Yes, exactly.

10 MR. DIPOMPEO: So unless -- yep -- unless the

11 Court would like to discuss anything with respect to those

12 motions, I think we can move to the next agenda item which

13 is the pre-trial conference and the automatic stay adversary

14 proceeding.

15 THE COURT: Very good.

16 MR. DIPOMPEO: Okay. So with respect to that --

17 oh, I'm sorry.

18 THE COURT: Go ahead. No, go ahead.

19 MR. DIPOMPEO: I was going to say with respect to

20 that adversary proceeding, a few things that happened since

21 we were last before the Court on November 4th. First, the

22 debtor has been diligently working to serve the 200-plus

23 defendants with the complaint and summons with a very good

24 cooperation from state court counsel for the defendants. In

25 fact, counsel for all but four defendants have agreed to

Page 11

1 accept service on behalf of their clients. And as we

2 discussed at the first day hearing, that's important to

3 protect the confidentiality of survivors so we're glad that

4 that's worked out -- worked out well.

5 Service of the complaint and summons went out last

6 week to all but those four defendants and we're still

7 working out some kinks with counsel for a small number of

8 defendants. The good news is we don't anticipate any issues

9 with having service fully complete well in advance of the

10 January 10th answer deadline.

11 Second, we continue to have discussion with the

12 committee about whether we can reach agreement on a

13 consensual preliminary injunction. I know the committee has

14 previously told the Court that those discussions are focused

15 on information the committee believes it would need in order

16 to agree to a consensual stay of the state court litigation.

17 And last night we received the committee's proposed document

18 requests. Those requests were more extensive than we were

19 anticipating. They were 15 pages long and contained 117

20 separate requests, and we're obviously still digesting those

21 requests. I don't think it's worth going into the details

22 now unless the Court has questions, but I did think it's

23 worth noting that the requests are very broad, both in terms

24 of topics and scope. And so while we're still hopeful that

25 we'll be able to reach agreement, the breadth of their

Page 12

1 request does at least increase the possibility that we'll

2 have to go forward with the contested hearing on December

3 10th.

4 You know, frankly, at this point, even if there

5 were agreement on the topics of discovery which I'm sure

6 there is, I think it would be very difficult to negotiate

7 the scope of 117 document requests in just the three weeks

8 we have before December 10th.

9 THE COURT: Well, I don't -- thank you for that.

10 I don't immediately understand the nexus between the ability

11 to resolve on a consensual basis the duration of the stay

12 and the need for that volume of discovery on that time

13 table. So I don't know if this is the time to discuss that.

14 Perhaps there should be an initial round of discussions

15 between the debtors and committee counsel but that seems to

16 me -- I agree with your observation that there wouldn't be

17 time to work through that volume of discovery before the

18 December 10th hearing, and I'm sure Mr. Stang will tell me

19 why I am not looking at this correctly. But I simply do not

20 understand why there would need to be that kind of

21 connection when -- just to bring everybody back to the

22 original page.

23 The scope of the stay requested by the Diocese by

24 my recollection was only until February 1st. So I don't

25 know why we would expend a lot of extra time and resources

Page 13

1 negotiating over document requests. I mean, there will be

2 discovery. The discovery will be broad -- appropriately

3 broad -- and expeditious. I just don't understand the nexus

4 between those two, and I'm frankly not willing just to

5 resign myself to having a contested hearing. I will if it

6 comes to that, of course. Perhaps Mr. --

7 MR. STANG: Your Honor --

8 THE COURT: Perhaps Mr. Stang would like to

9 comment.

10 MR. STANG: Thank you, Your Honor. James Stang

11 for the committee.

12 Your Honor, we are not expecting that the debtor

13 will comply with all of those discovery -- with all those

14 requests by the -- in time for the February 1 hearing. We

15 have in other cases or in your cases, used the preliminary

16 injunction stipulation as a means of obtaining information

17 that we think is -- gives the nexus because they're asking

18 for a stay -- an extraordinary stay -- against non-debtor

19 parties and the discovery goes to, amongst other things,

20 information about those third parties. So that's the nexus

21 -- is that if you're going to have stay -- a litigation

22 against third parties -- there should be conditions to that

23 and the conditions should include discovery that is

24 pertinent to those entities and, frankly, to the debtor.

25 But we're not expecting that all of those requests

4 (Pages 10 - 13)

Page 14

1 are going to be fulfilled by next hearing on the preliminary
2 injunction or the next time it expires. What we would be
3 looking for is a resolution as best as we can reach it on
4 the scope of the discovery and then commitments for rolling
5 productions, and if progress is being made, as we have done
6 in other cases, the stipulation has been continued.
7        But that's the nexus. You're asking us to stay.
8 You're asking plaintiffs to stay litigation against third
9 parties who've not made -- taken the big step to being in
10 Chapter 11. They want the protections and effect of the
11 automatic stay and there should be something in
12 consideration of that. That's the nexus, Your Honor.
13        THE COURT: All right. Thank you for that. I
14 mean, the practical reality is that today is November 18th.
15 Next week is Thanksgiving which hopefully you all will be
16 spending not with a lot of other people and then, you know,
17 the 10th will be upon us before we know it. So it's helpful
18 -- your explanation was helpful and it's encouraging that
19 you are amenable to a more surgical approach with good faith
20 continuing endeavors by the debtor to produce all the
21 documents that you reasonably require, but I very much
22 encourage to try to do both, to work on prioritizing,
23 refining the document requests as quickly as possible so
24 that we can -- well, first of all, enable the production to
25 begin such that you feel that there's sufficient progress

Page 15

1 that the stay can be extended. So I understand the nexus
2 but I also really want both paths to be pursued. The
3 debtor's replay brief is due on December 3rd. So you really
4 got about, you know, a week before Thanksgiving hits to kind
5 of get to a fork in the road and figure out which way we're
6 going to go on this.
7        If we're going to be having a contested hearing
8 over the stay on December 10th, we have a whole heck of a
9 lot of work to do because I will insist that we have that
10 hearing on Zoom and that will require a lot of preparation,
11 both on the part of the Court, the court staff, and the
12 parties to ensure that it will be technologically smooth.
13 So we're going to need to figure this out pretty quickly.
14        So I'll leave it there for now and before we sign off
15 for today, we're going to -- what I'd like to do is pick a
16 date for, as my former colleague Judge Gerber used to say, a
17 stop, look, and listen to hear where you are so we know what
18 to plan for. Is that acceptable?
19        MR. STANG: Your Honor, this is Mr. Stang.
20 Absolutely.
21        THE COURT: All right.
22        MR. DIPOMPEO: And Your Honor, this is Christopher
23 DiPompeo. That's also acceptable to us. And we're also --
24 we're going to continue discussions. We do have a call
25 scheduled for later this week with the committee and we're

Page 16

1 mindful of the Court's offer at the last status conference
2 to help sort out disputes that may arise in the course of
3 the negotiations. And to the extent it would help in this
4 negotiation, we certainly will take advantage of that.
5        THE COURT: All right. Very good. All right. So
6 should we turn to the shorthand -- my shorthand -- the
7 insurance adversary which is number 20-101227, Roman
8 Catholic Diocese of Rockville Centre versus Arrowood
9 Indemnity, et al?
10        MR. BERRINGER: Your Honor, this is John Berringer
11 of special counsel -- insurance counsel to the debtors and
12 I'm --
13        THE COURT: Yes.
14        MR. BERRINGER: -- counsel in the adversary
15 proceeding.
16        THE COURT: Good morning.
17        MR. BERRINGER: The status of the -- good morning,
18 Your Honor. The status of the proceeding as of now is that
19 we have granted, subject to stipulations and Court approval,
20 a number of extensions of the time to answer so that the --
21 and the carriers have been requesting that they all come --
22 get the same date and it's, as I understand it, December
23 28th. So we have not had answers to the complaint yet from
24 any of the insurers. It's my understanding that a number
25 of the insurers have not -- insured defendants -- have not

Page 17

1 appeared. I believe that's primarily certain of the
2 participants in the London market policies at issue.
3        We understand and anticipate that there will a
4 motion to withdraw the reference made by one or more
5 insurers, presumably at the December 28th date for an
6 answer. The committee has indicated that they're going to
7 move to intervene. The debtor does not oppose that motion
8 to intervene, but we understand that Arrowood and perhaps
9 other insurers will be opposing the motion to intervene.
10        In terms of moving the case forward, we believe
11 that the motions by the debtor for a bar date and for
12 approval of a proof of claim form will be a precursor to
13 determining what discovery, if any, is needed by the
14 insurance companies beyond the information that will be
15 provided in the proof of claim form. So we believe that we
16 should not be moving forward with discovery in our case
17 until we see the parameters of the kind of information the
18 claimant -- the victims -- are going to have to put forward
19 in their proof of claim form which may -- hopefully will
20 address much of what the insurance companies need in order
21 to evaluate the value of the case.
22        And with all of that said, we think that the best
23 way to proceed at this point would be to set a new
24 conference date in the new year after the answers have been
25 filed and any motions have been made in terms of either

5 (Pages 14 - 17)

Page 18

1 withdrawing the reference or intervening on behalf of the
2 committee. So we think that's sort of -- we're in limbo
3 right now waiting for further developments in terms of
4 answers and motion practice. Thank you.
5     THE COURT: Okay. And then I'm happy to hear from
6 -- I see Mr. or Ms. Coughlin has raised his or her hand.
7     MR. COUGHLIN: Yes. Good morning, Your Honor.
8 It's Kevin Coughlin of behalf of Arrowood. I just --
9     THE COURT: Okay.
10     MR. COUGHLIN: -- want to comment briefly on
11 something Mr. Berringer has raised and that is the scope of
12 discovery. As Your Honor may or may not know, the insurers
13 and the Diocese have been in an unlitigated dispute for
14 almost two years and the insurers have been requesting
15 information from the Diocese that entire period. And those
16 requests by 95 percent have been unanswered and the Diocese'
17 position that the only discovery that's going to be needed
18 here is what I'd characterize as plaintiff's damages type
19 discovery to help full out the proof of claim
20 underestimates, respectfully, the scope of what the insurers
21 have been looking for and will be looking for.
22     There's no secret. This has been -- pedophilia's
23 been a problem in the Church for decades and decades, and we
24 have cases that will be before Your Honor as part of the
25 proofs of claim that go back decades. And insurers have the

Page 19

1 intention of seeking discovery on what the Diocese knew,
2 when and what they did with respect to, for example, moving
3 priests from parish to parish and what was behind that. So
4 we envision a very robust discovery process once the case is
5 positioned after December 28th to develop those very
6 important defenses. So I think we should prepare of that,
7 with all due respect. Thank you, Your Honor.
8     THE COURT: May I ask -- thank you -- may I -- let
9 me catch up with both of you and sort this out. So who is
10 it that's -- I don't know if you know or if either of you
11 know -- who is it that's going to making a motion to
12 withdraw the reference?
13     MR. COUGHLIN: I can tell you, Your Honor -- this
14 is Kevin Coughlin again -- that's under consideration by my
15 client but we've not received final instructions yet.
16     THE COURT: Okay. And just for my edification --
17 well, I'll leave that question unanswered. Obviously, a
18 motion to withdraw the reference is filed with the district
19 court and the district courts decides whether or not to
20 withdraw the reference.
21     I will tell you that in the absence of direction
22 to the contrary from the district court, the case is before
23 me until it's not and that means that the case will proceed
24 until a higher authority tells me that it doesn't. And that
25 includes continuing to conduct discovery and my intention

Page 20

1 would be to keep going as I would if the motion to withdraw
2 the reference has not -- had not been decided. So that's
3 just a statement of my general approach. Obviously, each
4 case is different but that's just what I would state for
5 everyone's edification. Whether or not the committee
6 intervenes is on a different track. I hear you on discovery
7 and, you know, would address that as and when any discovery
8 disputes in future would arise and are unable to be
9 resolved.
10     I see that someone on behalf of certain other
11 insurers has their hand raised. Mr. or Ms. Sugayan.
12     MS. SUGAYAN: Thank you, Your Honor. It's Cathy
13 Sugayan. I'm attorney at Clyde & Co. in the Chicago office
14 and I represent certain underwriters at Lloyd's London and
15 London Market Companies.
16     Just first off, we agree with Mr. Berringer and
17 thank the debtor. We do have an extension of time in which
18 to response and we -- London is considering the motion to
19 withdraw the reference. What I really wanted to get to is
20 the issue on discovery and it's a follow up to what Attorney
21 Stang was talking and also Attorney Coughlin.
22     We've been in a couple of these before -- not with
23 Jones Day or Reed Smith. I'm very familiar with Jim Stang.
24 We've been through a number of bankruptcies with him. But I
25 think it's really important to advise the Court that all the

Page 21

1 parties are pretty much looking for the same information.
2 The insurers want information from the claimants so as a
3 result one of the things we tried to do first off is work
4 with the creditors committee and also with the debtor to
5 work on a proof of claim form that everyone can kind of
6 agree with so everyone can get the information that we need
7 up front. It's like the most like less intrusive way, I
8 guess, to -- actually, least intrusive way -- to obtain
9 information from the survivors who we know it's a very
10 personal thing to them and it's difficult to provide this
11 information. And it's easier to do through a confidential
12 form.
13     THE COURT: May I interrupt you for a moment,
14 please?
15     MS. SUGAYAN: Sure.
16     THE COURT: You make a good point. And again,
17 each case is different and we have to be aware of that, but
18 are there not proofs of claim forms from other Diocese cases
19 that are good templates for what (indiscernible)?
20     MS. SUGAYAN: There are, Your Honor, and we will
21 go forward and do that. I guess I'm just trying to let the
22 debtor and debtor's coverage counsel and also Mr. Stand who
23 I've worked with before know that the carriers are
24 interested in being involved in this case. We'd like to
25 work with them upfront rather than having things filed and

6 (Pages 18 - 21)

Page 22

1  then contesting and filing things after the fact. To the
2  extent that we can reach agreement earlier, I think it's
3  best for all parties.
4        The other piece of information we need is
5  information from the Diocese and as Mr. Stang alluded to --
6  I know, for example, in Rochester, the committee there
7  stipulated to a stay of proceedings against non-debtor
8  related entities which, by the way, happen to be additional
9  insureds under the London Market policies. So it behooves
10 us to try to bring everything together if we can. Our
11 insurance policies are a common asset of the debtor's estate
12 as well as these parishes. And so we sort of join the
13 committee in seeking the information it seeks from the
14 debtor with respect to, you know, the claims.
15       THE COURT: All right. Thank you. Well, I'm
16 fully supportive of the continuing to talk to each other
17 approach, but I don't want anyone to mistake that -- and
18 I've said this before -- for any reluctance on my part to
19 decide disputes that are brought before me. So negotiation,
20 less paper, less litigation is good, but I'm absolutely
21 prepared to resolve disputes when they're teed up before me.
22       Mr. Berringer, did you want to respond again to
23 any of that?
24       MR. BERRINGER: Yes, just briefly, Your Honor, to
25 inform the Court that we were aware of the use of the proof

Page 23

1  of claim form in other bankruptcies involving sexual abuse
2  and we have used those forms as a template. We have shared
3  the proof of claim form with counsel for the insurers and
4  hope to arrive at a form that will obviate the need for at
5  least some of the broad discovery that apparently the
6  insurers are seeking. And I -- you know, we're hopeful that
7  we can continue to refine that proof of claim form so it
8  will provide much of the information which I think the
9  insurers legitimately may need in order to access the case
10 and the value of the case in terms of ultimate resolution.
11       THE COURT: Okay. All right. I think that's all
12 we might have on this. To the extent that folks are looking
13 for a date, I think the easiest thing to do as this
14 progresses a bit is just to reach out to Ms. Eisen and my
15 chambers and she can give you any dates that you require.
16 All right?
17       MR. BERRINGER: Okay. That sounds good, Your
18 Honor.
19       THE COURT: All right. Let me just ask for the
20 sake of good order, does anybody else wish to be heard with
21 respect to the status of the insurance adversary proceeding?
22 All right. At this point, we can move on to the contested
23 matters which are the Otterbourg retention and the Goldin
24 retention. And who am I hearing from from Jones Day?
25       MR GEREMIA: Your Honor, can you hear me? This is

Page 24

1  Todd Geremia from Jones Day.
2        THE COURT: Yes. Hello, Mr. Geremia. How are
3  you?
4        MR GEREMIA: I'm well. How are you, Your Honor?
5        THE COURT: I'm okay.
6        MR GEREMIA: So by these applications, the debtor
7  seeks retention of counsel, namely Otterbourg and a
8  financial advisor, Goldin, to assist its independent
9  advisory committee in moving forward to pursue what that
10 committee has already concluded and shared with the debtor,
11 our colorable claims for the benefit of the debtor. As Your
12 Honor knows, the U.S. Trustee and the official committee of
13 unsecured creditors has objected to these retention
14 applications.
15       I will initially defer to Mr. Feldman for the
16 independent advisory committee to, among other things, set
17 out the relevant facts in support of these applications and
18 answer any questions that the Court has with respect to
19 those. And then I, on behalf of the debtor, can address any
20 remaining issues concerning her objections and the best
21 interest of the estate with respect to these applications.
22 If that is good for Your Honor --
23       THE COURT: All right.
24       MR GEREMIA: -- we will proceed with Mr. Feldman.
25       THE COURT: All right. I'll hear from Mr.

Page 25

1  Feldman. Mr. Feldman, are you there?
2        MR. FELDMAN: I am, Your Honor. Can you hear me?
3        THE COURT: Yes, I can. Thank you.
4        MR. FELDMAN: Great. Thank you. Peter Feldman,
5  Otterbourg PC, proposed counsel to the independent advisory
6  committee of the Diocese which I'll refer to as -- excuse me
7  -- the IAC to make it easier.
8        Your Honor, I don't want to belabor the factual
9  background. It's set forth, I think, very clearly in the
10 declarations that were submitted by the chair of the IAC,
11 Mr. Arthur Gonzalez, but I do think that it is helpful to
12 place the retention applications in a context by going
13 through and discussing some of the background, and
14 particularly, to understand why the AIC considers it
15 imperative to its proper functioning for these applications
16 to be granted.
17       As Your Honor is aware, the applications are
18 intended to retain Otterbourg as legal counsel and Goldin
19 Associates as financial advisor to the AIC and these were
20 the very firms that assisted the IAC in the pre-petition
21 extensive investigation that the IAC conducted. Needless to
22 say, as a result of those -- that year-long investigation,
23 these two firms have substantial information regarding the
24 investigation issues, including the colorable claims that
25 the AIC concluded existed.

7 (Pages 22 - 25)

Page 26

1    Let me give some background to the IAC and the --
2 I'm sorry --
3    THE COURT: Mr. Feldman --
4    MR. FELDMAN: Yes, ma'am. Yes, Your Honor.
5    THE COURT: Let me interrupt you. Please assume
6 that I've read the pleadings multiple times but I'm happy to
7 hear your presentation. I have a number of questions but
8 here's my first question.
9    MR. FELDMAN: Yes.
10    THE COURT: In the papers, a number of
11 transactions were identified that have been identified by
12 the IAC as appropriate for litigation or settlement --
13 transfers that were made in the relevant period of time. I
14 don't get a sense from the application the percent
15 completion of the universe of transactions that the IAC was
16 investigating. In other words, how much work is yet to be
17 done on identifying additional colorable claims related to
18 transactions?
19    MR. FELDMAN: If I can break that down into two
20 pieces, Your Honor.
21    THE COURT: Okay.
22    MR. FELDMAN: I'm sorry. Did I interrupt you?
23    THE COURT: No, no, no. Go ahead.
24    MR. FELDMAN: So there were several transactions
25 that the IAC investigated because its investigatory mandate

Page 27

1 was to investigate these affiliated transactions for filiate
2 transactions with a value of $2-1/2 million or more that
3 were conducted in the January 1, 2014, forward. And that
4 resulted in not -- sort of a handful of transactions.
5 Transaction involving the cemetery assets and related funds,
6 the transfer of certain real property that had been owned by
7 the Diocese that was transferred to the seminary
8 corporation. There was some additional assets and -- that
9 were transferred to -- the board of education is it's
10 called. It's a separate entity. And there was a smaller
11 transaction -- 3 million -- that was made to the Catholic
12 Foundation. Those are the transactions that were
13 investigated because they were in the range and the $2-1/2
14 million value or more.
15    I'm not aware of any other transactions that fell
16 onto that category and therefore, the focus of the IAC was
17 on those several -- there was several transactions in
18 respect of each what are deemed -- like the cemetery
19 transaction has several -- but that was the focus of the IAC
20 -- those four transactions, if I can call them that.
21    There are other transactions that may exist -- and
22 I can't speak to that -- that were of a value of less that
23 $2-1/2 million. As to those, the IAC did not investigate,
24 was not part of its mandate, and they didn't have the -- the
25 IAC had no delegated authority with respect to the less than

Page 28

1 $2-1/2 million transaction. I cannot speak to that.
2    THE COURT: Okay.
3    MR. FELDMAN: It's not part of the IAC's mandate.
4    THE COURT: It's not contemplated that the -- that
5 hypothetically if the IAC were to continue that the IAC's
6 mandate would be expanded to include transaction smaller
7 than involving $2.5 million?
8    MR. FELDMAN: That is my understanding, Your
9 Honor. We would -- the IAC, if continue, would be focused
10 on the transactions that it already investigated and for
11 which it found claims exist.
12    THE COURT: Okay. All right. Thank you. I
13 interrupted you. Please continue.
14    MR. FELDMAN: Well, I will try and move forward.
15 I did want to identify -- and I know the Court has read the
16 papers -- but the -- what the Diocese did was it created a
17 committee through its resolution. It's a committee of the
18 board itself. This is set forth in the resolution which is
19 attached to the papers of the -- I think it's in Mr.
20 Gonzalez's reply declaration. I think it's that docketed at
21 153.
22    THE COURT: No. I get all this. This is not --
23 by statute, the board can only consist of the bishop and two
24 other individuals and that this is -- who's ever shuffling
25 papers, put your phone on mute, please -- and that this is a

Page 29

1 creation -- you know, a creation of a committee and, you
2 know, quote/unquote, of the board that has a delegation from
3 the Diocese to investigate the transactions. So I
4 understand the architecture of this. The difference, of
5 course, is that unlike other cases in which there's a so-
6 called special committee, the special committee is
7 ordinarily comprised of independent directors who sit on the
8 board of the debtor. That's not the case here and that
9 appears to be because that's precluded by statute. At least
10 that's the way I understand it.
11    MR. FELDMAN: That is correct, Your Honor. The
12 statute that formed the Diocese, and Mr. Geremia will get
13 into this, I'm sure as well as the bylaws of the Diocese,
14 prescribe a limited board of the three persons. And the --
15 but beyond that, the members of the IAC are not directors,
16 as Your Honor noted, and they don't have director duties.
17 They don't -- they're not involved in the types of matters
18 that directors get involved with -- setting corporate or in
19 this case, diocesan policies, procedures dealing with
20 personnel, finances, and the like.
21    They have a very discrete mandate, one that is
22 very limited in scope. So -- and although there are more --
23 it is more typical for special committees to be comprised of
24 directors, perhaps in this case, that's not so, but I don't
25 think there's any basis that there should a difference in

8 (Pages 26 - 29)

Page 30

1  the type of persons who are -- who comprise the special
2  committee. The fact that some of directors and some aren't
3  should not, I don't think, make a difference for the ability
4  of the debtor to conduct an investigation as it's done in
5  pre-petition period and to pursue these claims for the
6  benefit of the estate. And there's at least one of the
7  matters that we've attached to our --
8      THE COURT: Well, you haven't -- you're rather
9  assuming the conclusion that you want. I mean, that's the -
10  - that is the question. That is the very question. The --
11  of 327 retention and to base it upon precedent -- the
12  precedents are special committees comprised of members of
13  the board of directors of the debtors. So we can't simply
14  jump to the conclusion that, so, you know, it should be fine
15  here, notwithstanding the fact that these individuals are
16  not members of the board because they cannot be. That
17  assumes the conclusion and the resolution of the very issue
18  that I'm going to be struggling with here today.
19      MR. FELDMAN: There is at least one matter which I
20  believe to be the Allied Holdings matter where at least one
21  of -- and I grant you, Your Honor, most of the cases in the
22  orders that we've attached to the paper that we submitted
23  are of special committees composed of directors. At least
24  one, the Allied Holdings matter, and at least one of the two
25  members of that committee who was not a director -- he was a

Page 31

1  member of the financial consulting firm of Duff & Phelps --
2  and it appears that the other party was an officer of an
3  affiliate of the debtor but not necessarily a director.
4  It's unclear so I can't represent one way or the other. But
5  at least in that one instance, there is a -- that that
6  instance involved a non-director as a member of a special
7  committee.
8      But I understand the Court's point that that's --
9  typically, you're going to see it because you can add
10  members to the board, let's say, but in this instance, it's
11  not how it proceeded. I understand the Court's point. I
12  know Mr. Geremia will speaking to that.
13      I'd like to just point out then, since the Court
14  is aware of the fact that the IAC conducted an extensive
15  investigation that involved countless -- review of countless
16  documents that reviewed -- and I should point out the
17  Diocese, although had no supervisory role and no input and
18  did not provide direction or any influence with respect to
19  the investigation or the IAC's conclusions, it did -- in
20  fact, it was very cooperative. It provided all the
21  documentation requested and we had substantial documents,
22  both emails -- I think there was -- I don't know if it's
23  pages or documents. I get confused by the manner in which
24  these are counted. But there are well in excess of 200,000
25  pages, I believe, excess of emails of senior diocesan

Page 32

1  personnel.
2      We interviewed senior diocesan personnel,
3  including both of the bishops. The bishop who was involved
4  prior to January 2017 and Bishop Barres the current bishop -
5  - we interviewed -- the COO and general counsel Mr. Renker -
6  - interviewed the CFO, Mr. Doodian and we interviewed the --
7  because insurance is important, we interviewed Mr. Chapin,
8  the head of the risk management. We spoke numerous times to
9  the financial consultants for the debtor -- then the Diocese
10  not the debtor -- and spoke to their insurance professionals
11  as well. So it was a very complete investigation and as
12  I've noted, there were no -- there was no oversight. There
13  was no input or supervisory control by the Diocese.
14      I think at bottom, the -- I think it should be
15  clear that this is - that the -- in addition to be
16  independent, I should point out -- it's in the papers but --
17  each of the -- and this is part of the issue the Court
18  raised -- each of the IAC members is an independent
19  contractor and -- but nonetheless, it engaged in a thorough
20  investigation and one which, at this juncture, the IAC has
21  been delegated by the debtor to pursue the claims that it
22  found existed. Those claims the IAC is ready to proceed to
23  pursue immediately if the Court were to retain professionals
24  for it. That's the issue.
25      If the Court -- if the IAC doesn't continue -- if

Page 33

1  it's -- if these professionals -- and it's my firm and the
2  Goldin firm -- because of the one year's worth of
3  investigatory knowledge that we acquired -- that these firms
4  have acquired -- if the Court is not to retain these firms,
5  then I think a great deal of knowledge, expertise, and cost
6  will go out the window.
7      I don't mean to suggest that other parties can't -
8  - other firms can't come in and learn it, but I do think
9  there's a steep learning curve. I think that there will be
10  time lost and great expense. I think that it would be --
11  it's not surprising that in Mr. Gonzalez's declaration he
12  said that the retention of these two firms is essential to
13  the IAC's continued process in this case to pursue these
14  claims on behalf of the estate.
15      And so, with that, Your Honor, in view of the
16  Court's knowledge of the record before it, I don't see any
17  reason to belabor and duplicate what the Court knows. I'll
18  turn this over to Mr. Geremia or back to Mr. Geremia.
19      THE COURT: All right. Thank you very much. Mr.
20  Geremia?
21      MR GEREMIA: Thank you, Your Honor. And I will
22  start with the issue that Your Honor just raised now which
23  is the status of the IAC. And just to, I think, focus that
24  issue, I want to turn to what the committee -- the UCC's --
25  objection is to these retention applications.

9 (Pages 30 - 33)

Page 34

1      And that objection is -- it's on page 3 of the
2  sur-reply -- that the independent advisory committee is not
3  a committee of the board.  And as Your Honor noted and as
4  Mr. Feldman noted, there is, in this context, the board's --
5  the Diocese board of Trustees as prescribed by statute to
6  three individuals, the bishop, the vicar general, and the
7  chancellor, and the IAC members are none of those.  But the
8  sur-reply relies on a provision of a New York not-for-profit
9  law that overlooks and cites only in a footnote a provision
10  of that law that we believe disposes of this application and
11  under which it should be overruled.
12      That is, New York not-for-profit law, section
13  712(e) which applies to the Diocese Corporation provides,
14  and I'm quoting here:  Committees other than committees of
15  the board, whether created by the board or by the members,
16  shall be committees of the corporation.  So the IAC, in
17  accordance with not only the statute but the board
18  resolution that created it and the offer letters that were
19  extended to the IAC members, is a committee of the Diocese
20  board of Trustees.
21      That, I think, disposes of the committee's
22  objection and answers the question that Your Honor raised is
23  a concern that this special committee is not a committee of
24  the board.  It is by statute by New York not-for-profit law.
25  And as Mr. Feldman noted, the board resolution is in

Page 35

1  accordance with this.  The second whereas clause -- it's a
2  long sentence but reading in the middle of the first
3  sentence, states that, the board shall establish a special
4  advisory committee of the board, in parenthesis, the
5  independent advisory committee, consisting of the
6  independent members that were named.  And as we noted in our
7  papers -- actually, in the letter that we submitted in
8  response to the request to submit a sur-reply -- the offer
9  letters that went to each of the members similarly states
10  for each of them that the IAC is a committee of the Diocese
11  board.  And really is the extent of the UCC's substance to
12  the objection, that the IAC is not part of the Diocese.  And
13  it just frankly is by statute.
14      The committee points to the fact that -- and this
15  is the only context in which the statute was referenced in
16  this paper -- that no such committee shall have the
17  authority to bind the board.  That is not the question,
18  respectfully, that's before the Court in connection with
19  these applications.  The question is whether the Diocese
20  should be permitted to retain these professionals to assist
21  the IAC.  And in any event, it is, on this record, a moot
22  and hypothetical question because the Diocese has already
23  conveyed in open court to the Court and to the committee
24  that it wants the IAC to pursue these claims on behalf of
25  the Diocese.

Page 36

1      The IAC has already determined that the claims are
2  colorable so it has every plan and intention to move forward
3  with respect to the claims and to authorize the IAC to do
4  that.  And in any event, the sur-reply walks through a
5  number of cases --
6      THE COURT:  But the claims will involve,
7  generically, seeking the return of properties.  Just
8  generically.  Right?  Or damages or some kind.  Right?
9      MR GEREMIA:  That is correct.
10      THE COURT:  Okay.  And the basis of those claims
11  is that it was improper and consistent with law, however you
12  want to characterize it, for the Diocese to have transferred
13  those properties.  Correct?
14      MR GEREMIA:  I could defer to Mr. Feldman for a
15  characterization of them because he and his committee but in
16  general terms --
17      THE COURT:  I mean, it's a transfer that you want
18  to seek to undo or get value back in the amount of the
19  transfer.  Right?
20      MR. FELDMAN:  Your Honor, this is Peter Feldman
21  from Otterbourg.  That is correct.  We want to recover
22  value.
23      THE COURT:  Right.  So -- right.  So you're going
24  to have a special committee of the board of the Diocese
25  comprised of people who were selected and are paid by the

Page 37

1  Diocese suing the Diocese.  Right?
2      MR GEREMIA:  Yes, Your Honor.  The -- yes.  That
3  is correct and that -- I'm sorry.
4      THE COURT:  And that's what it' going to be?
5  You're going to have a board of individuals selected and
6  paid by the Diocese, represented by firms paid by the
7  Diocese suing the Diocese.  And --
8      MS. BALL:  Your Honor, no.
9      THE COURT:  Excuse me.
10      MS. BALL:  Your Honor --
11      THE COURT:  Excuse me.  Those are the -- that is
12  the construct.  Those are the facts.  Ms. Ball, if you'd
13  like to speak, I'd appreciate not being interrupted.
14      MS. BALL:  My apologies, Your Honor.
15      THE COURT:  Go ahead.
16      MS. BALL:  Your Honor, I just -- one clarification
17  and Mr. Feldman, I would defer to you.  This is -- hindsight
18  is always 20/20 but the lawsuit here, it's not the Diocese
19  suing the Diocese.  The lawsuit here, these are, as Mr.
20  Stang has pointed out to Your Honor, these are separate
21  affiliates.
22      THE COURT:  No, I understand the transfer --
23      MS. BALL:  This situation -- so it is not the
24  Diocese that would be the defendant.
25      THE COURT:  I understand that the transferees are

10 (Pages 34 - 37)

Page 38

1 the affiliates. I understand that.

2    MS. BALL: This is much like any other affiliate

3 transfer in many other cases where with hindsight, judging

4 with -- by facts that were developed, there may be claims.

5 Whether it was Sears and Mr. Lampert or in any other context

6 in many of the cases cited by Mr. Feldman, but I had -- only

7 want to point out I did not want Your Honor to think that

8 the Diocese was going to be on both sides of the V in any

9 such claims.

10    Mr. Feldman can concur.

11    MR. FELDMAN: Yes. I was going to -- yes, I will

12 concur. This is Peter Feldman on behalf of the IAC and I

13 guess proposed counsel on behalf of the IAC. Yes, I mean,

14 each of the four separate matters that were investigated --

15 transactions -- are all to parties -- entities -- that are

16 separately incorporated. There is a relationship to the --

17 there is a relation to the Diocese. I think the bishop may

18 have some involvement in one or more of these but each of

19 them is a separate entity, in fact, represented by separate

20 counsel. I believe certain of those counsel are on the call

21 today. So the -- we've always looked at this, Your Honor,

22 as -- precisely as Ms. Ball has described it. It's a

23 lawsuit by the Diocese as a debtor in possession against

24 entities that are affiliates of the debtor but who -- that

25 are separate entities, separately represented and -- so it

Page 39

1 wouldn't be the Diocese suing the Diocese. It would be the

2 Diocese suing these other entities.

3    THE COURT: All right. Well, let's pick up where

4 I interrupted Mr. Geremia sometime ago.

5    MR GEREMIA: Thank you, Your Honor. And, you

6 know, just to reframe it. The only question -- the only

7 substance behind the UCC's objection is the notion that the

8 IAC is not a committee of the board so it's not really the

9 Diocese that is requesting that these professionals be

10 retained. That's simply not true under the facts and under

11 the very statute that the committee invokes in its sur-reply

12 which makes very clear that a committee other than a

13 committee of the board that is created by the board shall be

14 regarded as a committee of the corporation, so a committee

15 of the Diocese.

16    And that is -- you know, as Your Honor and Mr.

17 Feldman and Ms. Ball are aware, special committees of the

18 board are frequently appointed in bankruptcy cases to

19 investigate intra-affiliate transactions such as these. The

20 whole notion that's behind the IAC was to appoint

21 individuals -- set up a structure whereby we had a conflict-

22 free committee that was pursing the investigation of these

23 claims. We appointed members that have no prior affiliation

24 with the Diocese, that have no conflict, that have stellar

25 reputations. So to be able to do this in a manner that

Page 40

1 freed them of conflicts to pursue the claims, which as we

2 set out in our papers, under the code, the debtor is a

3 fiduciary to the estate and has the obligation to

4 investigate the estate's claims. So it is in furtherance of

5 the fiduciary duty to the estate the debtor -- I'm sorry,

6 Your Honor. Is that -- I got some feedback. I thought you

7 were speaking.

8    THE COURT: No, it wasn't me.

9    MR GEREMIA: That the debtor is seeking to retain

10 professionals that the IAC needs to continue its

11 investigation and to pursue the claims which the Diocese

12 wants the IAC to do to either negotiation or, if necessary,

13 commencing of litigation to do that.

14    THE COURT: All right. Well, it's something that

15 you said reminded me of something that I wanted to say at

16 the outset, but let me say it now than letting the moment

17 pass.

18    This is about whether or not the retention of

19 these firms is permissible under the bankruptcy code and

20 appropriate in this case. This has nothing whatsoever to do

21 with the three individuals who comprise the IAC, all of whom

22 are well-known to me and are -- have impeccable reputations

23 and decades of experience. So this has nothing whatsoever

24 to do with any questions or concerns that I have about any

25 of those individuals and their dedication to the task that

Page 41

1 they have undertaken and the seriousness and the confidence

2 with which they will continue to pursue it. So I don't want

3 there to be any sense or any implication that I'm thinking

4 about it in those terms. I'm approaching this as whether or

5 not this is permissible under the bankruptcy code.

6    I think it would be a good time now to hear from

7 Mr. Stang but also there has been an objection lodged by the

8 Office of the U.S. Trustee. I'm scrolling to see. I do see

9 Mr. Zipes is on the line. But, Mr. Stang, I'd like to hear

10 from you first or whoever it is on your team will speak to

11 this matter.

12    MR. STANG: Thank you, Your Honor. James Stang,

13 Pachulski Stang Ziehl & Jones for the committee.

14    Your Honor, I want to start with where you just

15 left off and we say this in our opening opposition. This

16 has absolutely nothing to do with the skills, the

17 reputation, the integrity of Judges Gonzalez, Cyganowski or

18 Mr. Goldin. You focused on -- nothing at all. These people

19 are impeccably qualified, but the problem is that the IAC is

20 not empowered under New York law to go beyond the role of

21 investigator. And you -- these employment applications have

22 begged that question from the very beginning and you

23 identified this at the first status conference when you

24 said, in effect, I wanted to know more about what this

25 committee is. And after several pleadings, we all have

11 (Pages 38 - 41)

Page 42

1  gotten down to two sentences from the New York -- from New
2  York law -- as to how this matter should be decided.  And as
3  counsel pointed out, it's under subsection (e) of section
4  712 of the non-profit corporation law.  There is no
5  question, no debate -- it would be a physical impossibility
6  for the IAC to be a committee of the board.  The only thing
7  it can be is a committee of the corporation, and the statute
8  is clear.  No such committee shall have the authority to
9  bind the board.
10      And, in fact, if you go back to the charter which
11 I will try to pull up -- I'm not good with multiple screens
12 -- but the charter in fact says, and this is an exhibit to
13 the employment applications and this is the -- at docket 60,
14 Your Honor.  It's 60, hyphen 3, page 25 of 49.  Go down to
15 the --
16      THE COURT:  Hold on, Mr. Stang.  Let me try to --
17 let me catch up with you.
18      MR. STANG:  Sorry.  Sorry, Your Honor.
19      THE COURT:  The charter is Exhibit B to the Goldin
20 application?
21      MR. STANG:  I'm showing it as Exhibit -- I'm in
22 the Otterburg application, Your Honor, which is docket 60.
23 It is Exhibit -- across the top where it shows what -- you
24 know, the docket number, it says, Exhibit C and it says page
25 25 of 49.

Page 43

1      THE COURT:  Okay.  Hold on.  Let me catch with
2  you, please.
3      MR. STANG:  Okay.
4      THE COURT:  Okay.  I'm with you.  Go ahead.  Thank
5  you.
6      MR. STANG:  And so if you go to that -- to the
7  bottom of roman numeral II which is captions, duties,
8  responsibilities, and authorities, subsection A has four
9  subparts and the last one really highlights the relationship
10 of this committee to the debtor.  Communicate its
11 investigative findings and analysis with the board -- which
12 has been done -- and make such recommendations -- I want to
13 underscore recommendations -- for addressing any such
14 findings and analysis as it deems appropriate.
15      Now the -- this really highlights that this entity
16 -- the committee of the corporation -- has restrictions of
17 what it can do.  I don't know if that's what they were --
18 what they were intending --
19      THE COURT:  But Mr. Stang --
20      MR. STANG:  Yes.
21      THE COURT:  -- let me direct your attention to
22 A(3).
23      MR. STANG:  Yes.  I understand.
24      THE COURT:  In the (indiscernible) committee
25 decides that any transaction give rise to a colorable claim

Page 44

1  in favor of the Diocese to pursue such claims including
2  renegotiation -- well, action -- including commencement of
3  litigation on behalf of the Diocese.  So the charter --
4      MR. STANG:  Your Honor, I read that.  I'm sorry.
5      THE COURT:  Yep.  Go ahead.
6      MR. STANG:  I read that and I understand what it
7  says.  But they -- it can't do that.  The board cannot
8  circumvent New York law.
9      THE COURT:  But whoever (indiscernible) I'm sorry.
10 Whoever is typing, please put your phone on mute.
11 Everybody, please, put your phones on mute unless you're
12 talking to me.  Thank you.
13      MR. STANG:  The board -- thank you -- the board
14 can only do what New York law allows it to do.  And you're
15 right.  Paragraph 3 goes beyond what New York law allows the
16 board to do in a committee structure.  This is, to me,
17 really clear.  It can only be one of two things: the
18 committee of the board, which we know this -- the IAC -- is
19 not a committee of the corporation.
20      When the debtor said in its original -- or sorry -
21 - when the employment application said it's a committee of
22 the debtor.  It's a special committee.  It's really
23 sidestepping the issue.  It begs the question of what -- or
24 it doesn't really answer the question -- what is the IAC?
25 So as a committee of the corporation, it was certainly

Page 45

1  appropriate for it to investigate the avoidance transactions
2  that have been highlighted by Mr. Feldman, but that's as far
3  as it can go.
4      So, to me, the real question -- and this is really
5  the focus of Mr. Feldman's presentation and I think the
6  debtor's -- which is, we have spent -- we meaning the debtor
7  -- I think it's close to $2 million on this investigation
8  between the fees to the IAC members, the fees paid to
9  Otterburg, and the fees paid to the Goldin firm.  And I
10 suspect and you have said this or intimated it, at least I
11 read it as -- between the lines -- how do we preserve the
12 value of this investigation?  How do we stop throwing the
13 baby out with the bath water?
14      And I think the answer is to that is really
15 simple.  They complete their investigation.  Maybe they have
16 completed it.  It sounds like they have, but I'm not going
17 to speak for the IAC on that regard, and then they work with
18 the appropriate party -- whoever that may be -- to pursue
19 through negotiation or if need be, litigation, the
20 resolution of these claims.
21      The debtor said in its pleadings that the
22 committee is trying to turn this into a standing motion and
23 we're not.  This is not what's before you.  We're not
24 pretending it is.  Now the Diocese has said repeatedly that
25 it was so conflicted on these -- on this investigation and

12 (Pages 42 - 45)

Page 46

1 the other responsibilities of the IAC that it needed to have
2 an independent committee. Maybe down the road that will be,
3 in part, a basis for a standing motion, but we're not there
4 yet.
5      So how do we keep the value of what the Otterburg
6 firm, Mr. Goldin's firm, and the IAC have done? We have
7 asked in our discovery requests for information about these
8 -- basically, the IAC's tasks. We would -- we're not asking
9 the IAC to be disbanded. We would go to the IAC and ask to
10 consult on their investigation. And so if you look at the
11 employment order that has been proposed, there are parts of
12 it which are absolutely fine from the perspective of the
13 committee.
14      What's not okay from our perspective are the
15 provisions, and I think in the application, if you go up to
16 the body of it, Your Honor, because the order just says
17 motion granted. But if you go to the body of the applicant,
18 and I'm in the Otterburg application, Your Honor, and this
19 is at page --
20      THE COURT: Okay, what page?
21      MR. STANG: Let's see, I'm at Document 60-2, it is
22 60(b) -- I'm sorry, Exhibit B, Page 407.
23      THE COURT: Yes, I'm there.
24      MR. STANG: It says, continuing the IAC's review.
25 And determine whether it gives rise. Now, maybe that's been

Page 47

1 finished, maybe it hasn't. That is an appropriate thing for
2 a committee of the corporation to do. B and C, which are
3 pursue the claims, and then prepare the necessary memorandum
4 related to pursuing the claims, we think is beyond -- what
5 I'm saying, is beyond the scope of the IAC should be doing,
6 and therefore beyond the scope of what its professionals
7 should be doing.
8      And then D, E and F, taken within the context of B
9 and C being stricken, are also okay. So the investigation,
10 I don't know how much is left. I couldn't tell from what
11 Mr. Feldman said, how -- I thought you had asked him, what
12 percentage is still outstanding, but whatever. If they're
13 done, they're done. If they're not done, the expenses and
14 cost of completing it will be subject to fee applications
15 and will be subject to a reasonableness standard.
16      But that's as far as it can go. And whether the
17 Debtor picks up the issue of pursuing these through properly
18 hired professionals, or the committee does it, or some other
19 person appointed by the Court does it, that's not what we're
20 talking about today. But we don't lose the value of what
21 they've done.
22      THE COURT: Okay, I have a number of questions,
23 maybe that are not all just for you. But --
24      MR. STANG: You can start with me.
25      THE COURT: I can't recall if it was Mr. Feldman

Page 48

1 or Mr. Geremia talking. I was quoted a provision of the New
2 York Not For Profit Corporation Law that was characterized
3 as being dispositive of your objection. Do you recall that?
4      MR. STANG: Yes, Your Honor.
5      THE COURT: Can you run -- can you run back
6 through that and explain to me why you disagree with that
7 argument or statement?
8      MR. STANG: Well, because I think they were -- I
9 don't know, they were being a little vague in their words.
10 Just, we can all turn to Section 712(e). There are two
11 things. There's a committee of the board, and there's a
12 committee of the corporation. That's what E says. And the
13 second sentence of E says, no such committee shall have the
14 authority to bind the board.
15      THE COURT: I'd like to read along with you. Can
16 you tell me where I find this? Is this in your surreply?
17      MR. STANG: Yes, Your Honor. It is footnoted on
18 Page 4, 4 of 8. It is in Paragraph 5.
19      THE COURT: Paragraph 5.
20      MR. STANG: And it's the last -- the whole
21 paragraph addresses it, but the last sentence.
22      MR. GEREMIA: No, I don't believe it's quoted in
23 there, but that could be part of the issue.
24      MR. STANG: Well, it's footnoted.
25      THE COURT: I'm looking at this paragraph, and let

Page 49

1 me just -- I just want to get this point very clear. And
2 I'm looking at it, it's the surreply that the committee
3 filed. it's entered at Docket 159.
4      MR. STANG: Yes, Your Honor.
5      THE COURT: Right? Am I at the right spot? Okay,
6 and it said it's a requirement that a committee of a board
7 contains three directors. It's not (indiscernible) rule, et
8 cetera, et cetera, under New York law. A not-for-profit
9 corporation's directors are charged with managing this
10 corporation. Nothing in the New York Not For Profit Law
11 permits committees of non-directors to bind the board with
12 their decisions, merely because such non-directors may have
13 contractual, et cetera.
14      Okay, and then you drop a footnote to Section
15 712(e), while the law permits the creation of committees of
16 non-directors, such committees are not permitted to bind the
17 board with their decisions, and therefore can assume only
18 advisory roles.
19      MR. STANG: That's it, Your Honor.
20      THE COURT: Okay. All right. Now, my next
21 question is, so when you took me through the Otterburg
22 application, so I'm a little confused. Because what you're
23 suggesting is that your issue is not with the continuation
24 of the IAC itself, and continuing to do work within the
25 scope of investigating the claims. But you're drawing the

13 (Pages 46 - 49)

Page 50

1 line at hiring the professional firms to pursue the claims,
2 right?
3      MR. STANG: Yes, Your Honor. I think where maybe
4 some of the confusion is, they -- the Debtor insists that
5 this is a committee of the board. And what we have said is,
6 you can call it what you want, but it isn't a committee of
7 the board. You can keep on calling it that if you want, but
8 it's only -- it can only exist as a committee of the
9 corporation. Calling it committee of the board doesn't make
10 it such. The law tells you what it is.
11      And because the membership doesn't, you know,
12 isn't in accordance with the statute, it can only be one
13 other thing. And that has advisory powers, which is what we
14 think in the employment order would be permitted. Again,
15 we're not seeking to disband the IAC, we're challenging the
16 characterization of it as a committee of the board.
17      MR. GEREMIA: Your Honor, if I may?
18      THE COURT: Yes, go ahead.
19      MR. GEREMIA: It is a committee of the diocese.
20 That is clear under 712(e). And the whole reason for this -
21 -
22      THE COURT: Now, you -- do take me back. You show
23 me where -- what that is based on.
24      MR. GEREMIA: That's based on 712(e), that we were
25 just reading from. And I don't know if Your Honor has it in

Page 51

1 front of you, because it wasn't quoted in the surreply
2 letter, I can read --
3      THE COURT: Is it in your -- is it in your letter?
4      MR. GEREMIA: No, Your Honor. Our letter was
5 submitted before the surreply. This came up only in
6 connection with the surreply, which we have not responded to
7 in writing.
8      THE COURT: I'm sorry. Okay, bear with me. I
9 apologize. I would like to pull up a document where I can
10 read what you're about to quote back to me. Because you
11 folks are not on the same page here. Mr. Stang is very
12 clearly saying that this is a committee of the corporation,
13 and you are very clearly saying that it's a committee of the
14 board. So let me --
15      MR. GEREMIA: I'm sorry, it's a committee -- I
16 think it's a distinction without a difference. It's a
17 committee of the diocese. The basis for the objection is
18 this is not the diocese asking for these professionals, and
19 that is simply not true. It's the diocese -- it's a
20 committee of the dioceses that is asking for these
21 professionals. And is in pertinent respect, no different
22 than multiple situations where special committees of Debtors
23 are permitted to have professionals to investigate and
24 pursue avoidance claims, and that's what this is about.
25      THE COURT: But you know, we're really chasing --

Page 52

1 we're really running around in a circle here. In the
2 special committee cases that are well familiar to me and to
3 all of you, the special committee is not a special committee
4 of the corporation; it is a special committee of the board.
5      Mr. Stang is telling me that this is a committee
6 of the corporation, and you've now just told me that it is a
7 committee of the diocese. So the diocese here is the
8 corporation. So this is not a special committee of the
9 board. And based on those --
10      MR. GEREMIA: It's a committee of the diocese --
11 sorry.
12      THE COURT: And based on 712(e), it can only
13 advise. That's the language that I just read from the
14 statute.
15      MR. GEREMIA: That is, I think I have two
16 responses to that point, because that's where the objection
17 has come down to, essentially, is the advisory
18 characteristic of the IAC. And number one, that is at best
19 a hypothetical question, but really a moot question, because
20 the diocese has already made clear that it is going to
21 pursue these claims, and that it will authorize the IAC to
22 pursue these claims. So the notion that the board is going
23 to pursue the claims --
24      THE COURT: But the statute says -- I'm sorry,
25 hold on, hold on. 712(e) says, "Committees other than

Page 53

1 committees of the board" -- so we now seem to agree that
2 this IAC is not a committee of the board. Which, you both
3 just said it. It's a committee of the corporation, or it's
4 a committee of the diocese. So it's not a committee of the
5 board. "Committees other than committees of the board,
6 created by the board or by the members shall be committees
7 of the corporation. No such committee shall have the
8 authority to bind the board." And now what you're telling
9 me is, never mind what the statute says, the IAC can bind
10 the board.
11      MR. GEREMIA: I'm not saying never mind what the
12 statute says, Your Honor, I'm saying it's a moot question,
13 because the diocese, as we've already conveyed, has accepted
14 the recommendation of the IAC and intends to pursue these
15 claims. And it wants professionals to do that, which is, it
16 is frankly, the diocese's fiduciary duty to investigate
17 these claims. And Mr. Stang started by saying we're not in
18 power to go --
19      THE COURT: But look at (indiscernible). This is,
20 we're twisting -- we're being twisted into a pretzel here.
21 I mean, let's just play out the strings. Litigation gets
22 very ugly, and gets very intense, and then you get to the
23 point where there's the possibility of a settlement.
24      MR. GEREMIA: Yes.
25      THE COURT: And (indiscernible)

14 (Pages 50 - 53)

Page 54

1    MR. GEREMIA: The diocese will be the plaintiff in
2 that litigation.
3    THE COURT: But the diocese will have been the
4 transactor in that transaction. The diocese will have been
5 -- will have been the transferor in that transaction that
6 will have been authorized by current or former members of
7 the diocese board, or the diocese management.
8    MR. GEREMIA: And I think that's often the case in
9 avoidance actions, that you've got a Debtor that is the
10 plaintiff on one side of the V, seeking to avoid
11 transactions, in many cases, with affiliates. I mean,
12 that's no different than the --
13    THE COURT: Well --
14    MR. GEREMIA: Than a fairly typical scenario in
15 which an avoidance action is brought, and that is why we
16 established the IAC as a conflict-free committee to
17 investigate these claims. I mean, Mr. Stang began by saying
18 --
19    THE COURT: I need to go back to Mr. Stang, if you
20 will. Please just pause for a moment.
21    MR. GEREMIA: I will.
22    THE COURT: Mr. Stang, so going back to our kind
23 of parsing through the Otterbourg application, to your
24 knowledge -- maybe I should have asked Mr. Feldman or Mr.
25 Geremia this. Has the IAC prepared a report, you know, in

Page 55

1 the nature of a report that, for example, an examiner would
2 prepare?
3    MR. STANG: Your Honor, you're asking me that
4 question, or Mr. Feldman?
5    THE COURT: Yeah, I mean, do you know? If not, I
6 can just ask Mr. Feldman.
7    MR. STANG: I believe in one of the pleadings, it
8 was Mr. Feldman's response, or Otterbourg's response. They
9 say they have informed the diocese that have concluded it's
10 a colorable claim, but otherwise have not given it a report
11 of their findings. But Mr. Feldman would know better, but
12 that's my recollection of the pleadings.
13    THE COURT: Okay. And hypothetically, and again,
14 I find it useful to use somewhat exaggerated hypotheticals
15 to see if I can get the right answer. Hypothetically, if I
16 were to say to you that Mr. Stang, what would you think of
17 my selecting a firm to pursue these claims, or what would
18 you think of a process in which all interested parties
19 suggested other professionals to pursue these claims?
20    MR. STANG: It's -- well, I hadn't really thought
21 about the professional part of it. Again, I'm concerned
22 about the baby with the bathwater problem. But to answer
23 your question --
24    THE COURT: Well, I mean, that's the point here,
25 right? The point is that the IAC has done a lot of valuable

Page 56

1 work, and it's identified colorable claims that the diocese
2 wishes to pursue for the benefit of the victims. So that's
3 all as it should be.
4    And we're getting -- we are discussing with great
5 degree of difficulty, and I hope obvious care, whether or
6 not the Otterbourg firm and the Goldin firm should be the
7 professionals to pursue that litigation. And it's
8 definitely a square peg in a round hole, from my
9 perspective. And nobody wants to waste effort, nobody wants
10 to deplete assets of the estate. Certainly I'm not
11 interested in having the committee redo, you know, work. I
12 know the committee has an independent obligation to do its
13 own review. I respect that; that's fine.
14    But we have to come up with an answer for how
15 these claims get pursued. It's not going to be the Jones
16 Day firm, that's clear, and we're not going to leapfrog
17 into, you know, into the standing issue. You know, and
18 there's a practical impediment for that, because as you well
19 know, one of the factors there is whether or not the Debtor,
20 the corporation has refused to bring the action. So that's
21 just not going to be true, because they want to bring the
22 action. So what do we do?
23    MR. STANG: Well, Your Honor, this is what I
24 think. Well, first of all, I don't know if it's just their
25 refusal to -- it can be also their inability to. But I want

Page 57

1 to make a distinction between who brings the action, who the
2 plaintiff is, and who the plaintiff's professionals are.
3 And what the Debtors tried to do here is not address the
4 first issue, but only address the second. And that was the
5 problem.
6    And that's why from the beginning, everyone, you
7 know, we said you queried, you know, what is this thing, the
8 IAC? So obviously you can employ, under the federal rules
9 of evidence, your own expert. You could appoint an examiner
10 with expanded powers, if that's something that -- if that's
11 a concept that you buy into. I don't know, I haven't
12 researched your opinions to see if you think such a unicorn
13 exists. You could appoint a trustee, perhaps, with limited
14 authority, or you could appointment -- the committee could
15 be asked to be the one doing it on behalf of the Debtor.
16 I'm not trying to preclude any of those things at today's
17 hearing.
18    But there are people who can be appointed, or
19 entities that can be appointed who can pursue this
20 litigation without the conflicts that the Debtor has, which
21 it admits it has, and without using an entity that doesn't
22 has the power, under state law, to do what they've been
23 charged with. So I think there are alternatives, and
24 whether Otterbourg and the Goldin firm are unable to
25 represent that entity or person, we'd have to see what

15 (Pages 54 - 57)

Page 58

1 conflicts might exist by virtue of their prior
2 representation. I wouldn't on today's call preclude that, I
3 just haven't analyzed it.
4     THE COURT: I'm sorry, I lost you at the very end.
5     MR. STANG: Oh, if the question is, I can appoint
6 Ms. X, and can the Otterbourg firm and the Goldin firm
7 represent them in pursuing the litigation, you know, the
8 answer is I don't know that. I don't want to preclude it.
9 I just haven't thought about what conflicts might exist by
10 virtue of the representation of the IAC. I just don't know.
11 I'm not telling you you have to (indiscernible) new people.
12     THE COURT: Let me try it again, because I'm
13 confused. If the issue is not the continuing existence of
14 the IAC, but rather the firm that represents the IAC in
15 pursuing the claims on behalf of the diocese, then why would
16 we be continuing to talk about the Otterbourg firm? IN
17 other words --
18     MR. STANG: I'm sorry, Your Honor. I think I was
19 confused. But I don't think under any circumstance the IAC
20 as it's presently created can pursue the litigation. Now,
21 can you turn around and say I'm going to appoint the IAC as
22 an examiner, with expanded powers to pursue the litigation?
23 I don't know. Can I appoint the IAC as a trustee, in
24 effect, to pursue the litigation? You know, I just -- by
25 virtue of what they've done so far, what their relationship

Page 59

1 to the diocese has been, as a committee and a corporation, I
2 haven't thought that through.
3     But it is clear to me that you had the authority
4 to appoint someone or something to pursue the litigation.
5 That's who the plaintiff will be. Again, whether it can be
6 the IAC is a greater conversation, that I'm not going to
7 discuss.
8     THE COURT: So I could appoint the IAC or one or
9 more members of the IAC as an examiner. And then that
10 person could retain his or her own counsel. Problem solved?
11     MR. STANG: I have not -- well, I don't know. I
12 have not thought through, for today's hearing, whether the
13 IAC or any of its members could qualify under the code for
14 that position. I haven't thought it through. But, I see
15 where you're going, and the answer is, I think it's maybe.
16 I just haven't thought through whether the relationship
17 (indiscernible) for the Debtor to date precludes that.
18     THE COURT: Okay. Okay, all right, all right.
19 This is productive. Let me give Mr. Zipes an opportunity,
20 because I think his -- the U.S. Trustee's objections are a
21 horse of a different color, so to speak. So Mr. Zipes?
22     MR. FELDMAN: Your Honor --
23     THE COURT: Good morning.
24     MR. FELDMAN: Your Honor, this is Peter Feldman.
25 Can I interrupt? This is Peter -- may I interrupt?

Page 60

1     THE COURT: Sure.
2     MR. FELDMAN: I just want to clarify one thing on
3 the record. I think Your Honor asked a question about
4 whether there had been a report, and Mr. Stang gave an
5 answer, which I don't think was wholly accurate, and perhaps
6 it was obviously --
7     THE COURT: Okay.
8     MR. FELDMAN: So in, I think it's July, maybe
9 August of 2020, there was a report that was delivered by the
10 IAC, a written report by the IAC to the diocese. The -- I
11 don't think our papers denied that. I think we said we
12 communicated our findings, or the IAC communicated its
13 findings and deliberations to the diocese. I don't think
14 they ever said that there was no report, because there is a
15 report, and I didn't want the Court to be misled.
16     Not saying Mr. Stang was misleading the Court. I
17 apologize if it came across that way, (indiscernible) that
18 the answer was not wholly correct, so I just wanted to
19 clarify the record for that purpose. Thank you.
20     THE COURT: All right, thank you very much.
21     MR. FELDMAN: I know you asked Mr. Zipes.
22     THE COURT: Okay, all right. Thank you, thank
23 you. Is everybody doing okay? Do we need to take -- you
24 know, we're all on the phone here. If we need to take a
25 break at any point, someone should let me know. All right,

Page 61

1 Mr. Zipes, may I hear from you, please?
2     MR. ZIPES: Yes, good afternoon, Your Honor. Good
3 to hear your voice, and I hope to see you soon. First of
4 all, I want to echo the statements that were made about Mr.
5 Goldin, and Ms. Cyganowski, and Judge Gonzalez, about their
6 qualifications. And this is not about their qualifications
7 in any way. And I do appreciate Mr. Stang's comments as
8 well.
9     As the Court said, our objection is maybe of a
10 different stripe. I did want to -- I raised my hand at
11 certain points during the discussion, I didn't want to
12 interrupt people. I just wanted to make the point that
13 although it wasn't entirely clear in the motion to retain
14 professionals, what their exact role as within the Debtor, I
15 think it is clear now that they are, at least from the
16 Debtor's point of view, that they are diocese, part of the
17 diocese.
18     And I'll go even further than that, the Debtors
19 have stated in, as admissions, Judge Gonzalez's statement in
20 his declaration, that the IAC is a special committee of the
21 board. They specifically have been stating that they're a
22 creature of the board here, and I do appreciate the
23 statements that generally, I think if this was not a
24 religious corporation, there would be no question, but that
25 they would be independent, they would have been retained as

16 (Pages 58 - 61)

Page 62

1  independent directors of the board to investigate, and
2  everything that flows from that.
3       But Your Honor, the U.S. Trustee presents a
4  statutory argument, and the matters before the Court here
5  are the retention of professionals of the Debtor. These are
6  -- these proposed functions, whatever you want to call them,
7  are core duties of the Debtor. They're not painting the
8  walls of, you know, the grounds of the church or anything
9  like that. These are suing and being sued, 323 of the
10 Bankruptcy Code, and there is the question of whether they
11 are insiders as well. It is pretty clear that insiders of
12 the corporation, under the Bankruptcy Code, 101 defines it
13 as director -- among other things, director, officer, or
14 person in control.
15      So there is a lot of discussions right now about,
16 are they directors, where do they fit in? They're in
17 control, because they have the ability to sue on behalf of
18 the Debtor on significant matters. These are matters that
19 are of great concern to all the parties who are involved
20 with the case. And they're not insignificant, and they go
21 to the core of what the Debtor really does in a bankruptcy
22 case.
23      So the -- we think that it's very clear that there
24 is a disinterest in this issue here. The board members are
25 insiders of the Debtor, and their firms are being used to

Page 63

1  pursue actions on behalf of the Debtor. The Debtor didn't
2  really address that point. They've been addressing Mr.
3  Stang's points. But this is, again, this is a statutory
4  argument. We can only go with the motions as they're filed,
5  the information that's provided to us. We try to get
6  further information, but this is a highly unusual situation,
7  and directors are -- they are insiders of the Debtor.
8  They're asking their firms to be retained.
9       One fact here, although it's not central it our
10 argument, it does appear that we're at a cleavage point.
11 The investigations have been done. So there are other
12 alternatives, as this Court has been mentioning as
13 possibilities. And it's not as though we're stopping an
14 investigation that's in its tracks at this point. We've
15 reached a certain point.
16      Your Honor, my only other point, because I know
17 you read the papers and everything else, is that if the
18 Court is inclined to go a different rule, there were some
19 statements that the Court could do X or Y, and I don't think
20 that that's precluded, but there are, under 1104,
21 appointment of examiners and appointment of trustees, those
22 have certain procedures, obviously, that involve the U.S.
23 Trustee's office, and I just wanted to state that as well.
24 So, Your Honor, those are the central points I wanted to
25 make to you. I think the record has been clarified by the

Page 64

1  various parties.
2       THE COURT: Okay. All right, thank you. I mean,
3  I do think that -- someone's typing. Please put your phone
4  on mute. I do think that the U.S. Trustee makes important
5  points here, in the alterative that members of the firms are
6  statutory insiders, and therefore the applicants aren't
7  disinterested, and also makes the point briefly, but I think
8  interestingly that notwithstanding their designation by the
9  diocese as independent contractors, that they would be
10 considered employees under an ordinary definition.
11      There's been a lot of talk of the record today
12 about how much power and authority that the individuals
13 would have, which certainly begins to make them feel -- make
14 it feel as if, for the purposes of pursuing these claims,
15 these individuals are indeed persons in control of the
16 Debtor, and are functioning as employees of the corporation.
17      So, that's another level of complexity here. I'm
18 happy to have Mr. Geremia, or Mr. Feldman, or Ms. Ball
19 respond to that if you like, but that definitely has my
20 attention here. It's another way in which I'm presented
21 with a square peg in a round hole.
22      MR. GEREMIA: Thank you, Your Honor. I can
23 address the trustee's objection. What we might do -- I
24 mean, the trustee and the committee counsel have suggested a
25 number of things that have not been framed by these

Page 65

1  applications or the objections, you know, the notion of the
2  Court appointing its own expert, an examiner, a trustee,
3  those issues have not been fleshed out. We have previously
4  offered and discussed with committee counsel the notion of
5  trying to work out an agreement, how the IAC might interact
6  with the UCC. We have not yet been provided any guidance
7  with that, with respect to that issue.
8       One thing, and we hear Your Honor about the
9  committee's objections, that we have discussed with the U.S.
10 Trustee is the notion that the diocese and the IAC will
11 commit to reporting to the Court if the diocese is not going
12 to accept any recommendation of the IAC. In that respect,
13 it's not that much different than the typical situation in
14 which a special committee is established to investigate
15 avoidance claims, and then that committee reports back to
16 the board, and the report and the board either accept that
17 recommendation or not.
18      We will commit to conveying to the Court, if the
19 Debtor is not going to accept the IACs recommendation. As
20 we've already submitted to you today, that is not going to
21 happen. The Debtor is committed to pursuing these claims.
22 There is no question on this record that they will be
23 pursued, and the diocese would be the plaintiff in those
24 avoidance actions. The overall point is that it may make --
25 it may be fruitful for us to go offline and discuss with the

17 (Pages 62 - 65)

Page 66

1 trustee and the committee how this would all be set up,
2 because a number of issues have been raised today that
3 really weren't addressed by the papers.
4      On the specific issues of the trustee's
5 objections, Your Honor raised the point of employees and
6 persons in control. I think the case law and persons in
7 control is fairly well-established, that it has to be
8 extensive control over the Debtor's day-to-day operations,
9 and these IAC members simply don't have that. They have a
10 narrow charge with respect to past transactions. Since
11 2014, two affiliates over threshold amount, that --
12      THE COURT: Yes, I agree with you. I agree with
13 you. Again, this is, you know, this is a very unique set of
14 facts that we have, but I don't disagree with you in terms
15 of the ordinary and the meaning of those words in the
16 statute.
17      I want to make one more point, that frankly I
18 thought Mr. Stang would make, but I'm going to make it, and
19 I'm not putting words in this mouth, but these are just an
20 observation that I want to make. So first principles for me
21 are number one, there's obviously been a great deal of
22 important, thoughtful and difficult work that's been done,
23 and it behooves us all to find a way to take advantage of
24 that, and not have to repeat that work.
25      Secondly, we're all struggling, and it's almost --

Page 67

1 it will almost be two hours, with, you know, it's like a law
2 school exercise, parsing the words of the statute, trying to
3 deal with the unique facts and challenges that this
4 religious nonprofit presents us with and how to overlay that
5 into the requirements of the code. And we're having a hard
6 time, I'm having a hard time making it fit. You know, I
7 feel like I'm just trying to jam apart into a machine and
8 it's really not exactly the right part, and the right fit.
9      But finally, I don't want to lose sight of the
10 fact that one of the important goals of this case is to
11 provide as impeccable a process as is possible, for the
12 benefit of the victims. That's the point of this. And also
13 to enable the diocese to emerge from Chapter 11, and
14 continue its mission and all the important work that it does
15 on behalf of so many people. And because of that, it's
16 important for there not to be any question mark, any cloud,
17 any level of discomfort about how it is that we go about
18 creating a recovery pool, and that includes pursuing
19 litigation that involves transactions in which the diocese
20 was a party. And that's important.
21      So that to the extent that this is a close call,
22 and I certainly appreciate that the Jones Day folks have
23 done an excellent job in advocating for why I shouldn't
24 think that it's a close call, along with Mr. Feldman, and
25 Mr. Stang has been creative, and evidence of willingness to

Page 68

1 think outside the box. But I think, you know, in a
2 situation where, you know, I often say you know, there's an
3 expression in baseball, the tie goes to the runner, so here
4 I think, you know, in a close case, one thing that we ought
5 to put on the scale, thumb on the scale is the appearance of
6 it, and making sure that it's absolutely squeaky-clean and
7 provides the victims with the feeling that it's a really
8 good process that's being conducted in a way that serves
9 their interest, and serves the interest of this case.
10      I am intrigued, and admit that it's one of the
11 things that I was thinking about coming into this hearing as
12 to whether or not using the device, or the role of someone,
13 an examiner, or someone like an examiner, possibly, whether
14 that would be one or more of the members of the IAC, and
15 then looking to a new firm, to pursue the litigation,
16 whether that doesn't check a lot of the boxes, and
17 accomplish a lot of the goals that I would like to
18 accomplish, and that I hope many of you share.
19      So I think it was Mr. Geremia who suggested that
20 perhaps it would be a good idea to take this offline, and
21 let you folks talk, and see what you come up with, and then
22 we can resume the conversation, and then if you come up with
23 something to present that's acceptable to the Court and
24 acceptable to the U.S. Trustee, we could go from there, and
25 if not, I'll render a decision. Was that you, Mr. Geremia

Page 69

1 who suggested that you still need to talk? Go ahead.
2      MR. GEREMIA: Yes, I did. I think that will be
3 fruitful.
4      THE COURT: Okay. Mr. Stang, is that okay --
5      MR. GEREMIA: (indiscernible) I'm sorry, go ahead.
6      THE COURT: Go ahead, I'm sorry. No, go ahead,
7 I'm sorry.
8      MR. GEREMIA: I was going to say, that should be
9 fruitful. And in the event it's not, we would just ask for
10 the opportunity to submit a response to the surreply,
11 because some of the issues that we've confronted today have
12 come about as a consequence of the fact that the diocese
13 hasn't submitted a written response to Your Honor, to that
14 surreply. But I think we should be able to work out the
15 issues offline, talking to the trustee and the committee
16 counsel. So hopefully will not come to that.
17      THE COURT: Okay, all right. That's fine, with
18 respect to the, I guess it's a sur-surreply. And I'm
19 hopefully that you'll have some fruitful discussion. So let
20 me look at the calendar. Would it be useful to all of you
21 to have a date and a time certain to return, or do you want
22 me to leave it more open-ended? I know there's some urgency
23 in getting this resolved.
24      MR. GEREMIA: Let me defer to Ms. Ball, or Mr.
25 Rosenblum, who have other aspects of the schedule in mind.

18 (Pages 66 - 69)

Page 70

1    THE COURT: Okay, Ms. Ball?

2    MS. BALL: Yes, Your Honor. Thank you. I know

3 that we have another hearing on the 9th. We'll be here

4 anyhow. And not to impose on the Court, but I think that we

5 would look to work this out over the intervening period with

6 the holiday. I think Mr. Stang has come up with some very

7 interesting ideas as to how we can work with the IAC or

8 certain of its members in moving forward, and we are -- we

9 would like to explore those further, and get back to you.

10    And maybe the 9th would be soon enough, given

11 intervening events that we're already working on, one of

12 them we've somewhat alluded to, which is getting the bar

13 date motion on file. But we have a lot to work with UCC on

14 in this two-week period.

15    THE COURT: You have a lot. You have a lot of

16 work -- you have a lot of work on your plate, indeed. My

17 only -- and I'm happy to have you come back on the 9th. My

18 only concern is this problem of the fact that I'm only one

19 person with two wonderful law clerks, and so that if on the

20 9th we're going to have a resumed contested hearing on this,

21 while we're preparing for preliminary injunction hearing on

22 the 10th, we'll be quite busy. But that's okay.

23    So if you'd like to take it out to the 9th, that's

24 fine, and I could -- you know, obviously as soon as you have

25 an indication in the direction that it's going, we'd be

Page 71

1 grateful for a heads up.

2    MS. BALL: Your Honor, if I may echo what my

3 partner, Mr. DiPompeo, said earlier, that I think that he

4 has already, we have already undertaken to let you know, and

5 we hope Mr. DiPompeo indicated to you that we reach out some

6 time next week, so hopefully we will -- we are all going to

7 work hard so that the Court does not have that burden on the

8 9th and the 10th, actually.

9    THE COURT: Okay, all right.

10    MS. BALL: And I think he's already suggested that

11 he and committee counsel would reach out. Mr. DiPompeo over

12 here is still available. I don't think you've picked a day,

13 but you suggested well before the 9th, correct?

14    THE COURT: Yes, yes. That's fine. I'm just, I'm

15 aware of how much you have -- you folks have a lot on your

16 plate, and we'll do our part. So whatever it turns out to

17 be, we will do. And I again, with all of the burdens that

18 everybody is dealing with these days, and I don't want to

19 ruin whatever Thanksgiving holiday people manage to be able

20 to safety enjoy.

21    So, okay. So I've got you on my calendar for

22 10:00 on December 9th, I've got you on my cleaner for 10:00

23 on December 10th. If you'd like to have a hearing or a

24 conference before then, just reach out to Ms. Eisen, and

25 we'll make ourselves available. Thank you all so much for

Page 72

1 taking so much time to help me think through these issues,

2 and thank you for the general update on the progress of the

3 case. I'm very pleased with how well and expeditiously

4 things are moving along. Unless anyone has anything else, I

5 think I can let you go get some lunch.

6    MAN: Thank you, Your Honor.

7    MAN: Happy Thanksgiving to everyone.

8    THE COURT: Thank you, thank you.

9    MS. BALL: Happy Thanksgiving, Your Honor, and

10 thank you.

11    THE COURT: Happy Thanksgiving to you all, please

12 stay safe. This concludes the hearing.

13    (Whereupon these proceedings were concluded at

14 12:50 PM)

15

16

17

18

19

20

21

22

23

24

25

Page 73

1    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4 transcript is a true and accurate record of the proceedings.

5

6

7

8 Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20 Veritext Legal Solutions

21 330 Old Country Road

22 Suite 300

23 Mineola, NY 11501

24

25 Date: November 19, 2020

19 (Pages 70 - 73)

| & |
| --- |
| **&**   4:16 5:15,16 20:13 31:1 41:13 |

| 0 |
| --- |
| **07962**   5:11 |

| 1 |
| --- |
| **1**   13:14 27:3 |
| **10004**   2:13 |
| **10014**   6:11 |
| **10017**   4:19 |
| **10022**   5:4 |
| **1006**   6:10 |
| **101**   62:12 |
| **10169**   6:4 |
| **10281**   4:6 |
| **10th**   11:10 12:3,8 12:18 14:17 15:8 70:22 71:8,23 |
| **11**   14:10 67:13 |
| **1104**   63:20 |
| **11501**   73:23 |
| **117**   11:19 12:7 |
| **11:02**   2:16 |
| **12:50**   72:14 |
| **15**   11:19 |
| **153**   28:21 |
| **159**   49:3 |
| **160**   9:15 |
| **16th**   9:15 |
| **18**   2:15 |
| **18th**   14:14 |
| **19**   73:25 |
| **1st**   12:24 |

| 2 |
| --- |
| **2**   45:7 |
| **2-1/2**   27:2,13,23 28:1 |
| **2.5**   28:7 |
| **20-01226**   1:11 3:8 |
| **20-01227**   2:1 3:12 |
| **20-101227**   16:7 |

| **20-12345**   1:3 9:5 |
| --- |
| **20/20**   37:18 |
| **200**   10:22 |
| **200,000**   31:24 |
| **201**   6:10 |
| **2014**   27:3 66:11 |
| **2017**   32:4 |
| **2020**   2:15 60:9 73:25 |
| **230**   6:3 |
| **25**   42:14,25 |
| **250**   4:5 |
| **28th**   16:23 17:5 19:5 |

| 3 |
| --- |
| **3**   27:11 34:1 42:14 43:22 44:15 |
| **300**   73:22 |
| **320**   1:16 3:9 |
| **323**   62:9 |
| **327**   30:11 |
| **330**   73:21 |
| **34th**   4:18 |
| **350**   5:10 |
| **3rd**   15:3 |

| 4 |
| --- |
| **4**   48:18,18 |
| **407**   46:22 |
| **49**   42:14,25 |
| **4th**   10:21 |

| 5 |
| --- |
| **5**   48:18,19 |
| **55**   5:17 |
| **599**   5:3 |

| 6 |
| --- |
| **60**   3:1 42:13,14,22 46:22 |
| **60-2**   46:21 |
| **60603**   5:18 |
| **61**   3:4 |

| 7 |
| --- |
| **712**   34:13 42:4 48:10 49:15 50:20 50:24 52:12,25 |
| **780**   4:18 |

| 8 |
| --- |
| **8**   48:18 |

| 9 |
| --- |
| **95**   18:16 |
| **9th**   70:3,10,17,20 70:23 71:8,13,22 |

| a |
| --- |
| **ability**   12:10 30:3 62:17 |
| **able**   11:25 39:25 69:14 71:19 |
| **absence**   19:21 |
| **absolutely**   15:20 22:20 41:16 46:12 68:6 |
| **abuse**   23:1 |
| **accept**   11:1 65:12 65:16,19 |
| **acceptable**   15:18 15:23 68:23,24 |
| **accepted**   53:13 |
| **access**   23:9 |
| **accomplish**   68:17 68:18 |
| **accurate**   9:13 60:5 73:4 |
| **acquired**   33:3,4 |
| **action**   44:2 54:15 56:20,22 57:1 |
| **actions**   54:9 63:1 65:24 |
| **add**   31:9 |
| **addition**   32:15 |
| **additional**   22:8 26:17 27:8 |
| **address**   17:20 20:7 24:19 57:3,4 |

| 63:2 64:23 |
| --- |
| **addressed**   66:3 |
| **addresses**   48:21 |
| **addressing**   43:13 63:2 |
| **admissions**   61:19 |
| **admit**   68:10 |
| **admits**   57:21 |
| **adrian**   6:21 |
| **adv**   1:11 2:1 |
| **advance**   11:9 |
| **advantage**   16:4 66:23 |
| **adversary**   3:8,12 10:4,13,20 16:7 16:14 23:21 |
| **advise**   20:25 52:13 |
| **advisor**   3:5 24:8 25:19 |
| **advisory**   3:2,5 6:2 24:9,16 25:5 34:2 35:4,5 49:18 50:13 52:17 |
| **advocating**   67:23 |
| **affiliate**   31:3 38:2 39:19 |
| **affiliated**   27:1 |
| **affiliates**   37:21 38:1,24 54:11 66:11 |
| **affiliation**   39:23 |
| **afternoon**   10:6 61:2 |
| **agenda**   9:14 10:2 10:12 |
| **ago**   39:4 |
| **agree**   11:16 12:16 20:16 21:6 53:1 66:12,12 |
| **agreed**   10:25 |
| **agreement**   11:12 11:25 12:5 22:2 |

65:5
**ahead**  10:18,18
  26:23 37:15 43:4
  44:5 50:18 69:1,5
  69:6,6
**aic**  25:14,19,25
**al**  1:16 2:6 3:9,14
  16:9
**allied**  30:20,24
**allows**  44:14,15
**alluded**  22:5
  70:12
**alterative**  64:5
**alternatives**  57:23
  63:12
**amanda**  7:18
**amenable**  14:19
**amount**  36:18
  66:11
**analysis**  43:11,14
**analyzed**  58:3
**anderson**  6:25
**andrew**  4:13 7:11
  7:12 9:25
**answer**  11:10
  16:20 17:6 24:18
  44:24 45:14 55:15
  55:22 56:14 58:8
  59:15 60:5,18
**answers**  16:23
  17:24 18:4 34:22
**anticipate**  11:8
  17:3
**anticipating**
  11:19
**anybody**  23:20
**apart**  67:7
**apologies**  37:14
**apologize**  51:9
  60:17
**apparently**  23:5
**appear**  63:10

**appearance**  68:5
**appeared**  17:1
**appearing**  9:12
**appears**  29:9 31:2
**applicant**  46:17
**applicants**  64:6
**application**  3:1,4
  10:8 26:14 34:10
  42:20,22 44:21
  46:15,18 49:22
  54:23
**applications**  24:6
  24:14,17,21 25:12
  25:15,17 33:25
  35:19 41:21 42:13
  47:14 65:1
**applies**  34:13
**appoint**  39:20
  57:9,13 58:5,21
  58:23 59:4,8
**appointed**  39:18
  39:23 47:19 57:18
  57:19
**appointing**  65:2
**appointment**
  57:14 63:21,21
**appreciate**  37:13
  61:7,22 67:22
**approach**  14:19
  20:3 22:17
**approaching**  41:4
**appropriate**
  26:12 40:20 43:14
  45:1,18 47:1
**appropriately**
  13:2
**approval**  16:19
  17:12
**architecture**  29:4
**aren't**  64:6
**argument**  48:7
  62:4 63:4,10

**ark**  1:16 3:9
**arrive**  23:4
**arrowood**  2:6
  3:13 5:9 16:8 17:8
  18:8
**arthur**  6:20 25:11
**asked**  46:7 47:11
  54:24 57:15 60:3
  60:21
**asking**  13:17 14:7
  14:8 46:8 51:18
  51:20 55:3 63:8
**aspects**  69:25
**asset**  22:11
**assets**  27:5,8
  56:10
**assist**  24:8 35:20
**assisted**  25:20
**associates**  25:19
**assume**  26:5
  49:17
**assumes**  30:17
**assuming**  30:9
**attached**  28:19
  30:7,22
**attention**  43:21
  64:20
**attorney**  20:13,20
  20:21
**attorneys**  4:4,17
  5:9,16 6:9
**august**  60:9
**authorities**  43:8
**authority**  19:24
  27:25 35:17 42:8
  48:14 53:8 57:14
  59:3 64:12
**authorize**  36:3
  52:21
**authorized**  54:6
**automatic**  10:13
  14:11

**available**  71:12,25
**avenue**  4:18 5:3
  5:10 6:3
**avoid**  54:10
**avoidance**  45:1
  51:24 54:9,15
  65:15,24
**aware**  21:17
  22:25 25:17 27:15
  31:14 39:17 71:15

**b**

**b**  2:21 42:19
  46:22,22 47:2,8
**baby**  45:13 55:22
**back**  12:21 18:20
  33:18 36:18 42:10
  48:5 50:22 51:10
  54:19,22 65:15
  70:9,17
**background**  25:9
  25:13 26:1
**ball**  4:9 9:24 37:8
  37:10,12,14,16,23
  38:2,22 39:17
  64:18 69:24 70:1
  70:2 71:2,10 72:9
**bankruptcies**
  20:24 23:1
**bankruptcy**  1:1
  2:11,23 39:18
  40:19 41:5 62:10
  62:12,21
**bar**  17:11 70:12
**barres**  32:4
**base**  30:11
**baseball**  68:3
**based**  50:23,24
  52:9,12
**basically**  46:8
**basis**  12:11 29:25
  36:10 46:3 51:17
**bath**  45:13

**bathwater** 55:22
**bear** 51:8
**began** 54:17
**begged** 41:22
**beginning** 41:22
  57:6
**begins** 64:13
**begs** 44:23
**behalf** 9:12,18
  11:1 18:1,8 20:10
  24:19 33:14 35:24
  38:12,13 44:3
  57:15 58:15 62:17
  63:1 67:15
**behooves** 22:9
  66:23
**belabor** 25:8
  33:17
**believe** 17:1,10,15
  30:20 31:25 34:10
  38:20 48:22 55:7
**believes** 11:15
**ben** 9:24 10:1
**benefit** 24:11 30:6
  56:2 67:12
**benjamin** 4:10,14
  7:17,19
**berringer** 5:6
  16:10,10,14,17
  18:11 20:16 22:22
  22:24 23:17
**best** 14:3 17:22
  22:3 24:20 52:18
**better** 55:11
**beyond** 17:14
  29:15 41:20 44:15
  47:4,5,6
**big** 14:9
**bind** 35:17 42:9
  48:14 49:11,16
  53:8,9
**bishop** 28:23 32:3
  32:4,4 34:6 38:17

**bishops** 32:3
**bit** 23:14
**board** 27:9 28:18
  28:23 29:2,8,14
  30:13,16 31:10
  34:3,5,15,15,17
  34:20,24,25 35:3
  35:4,11,17 36:24
  37:5 39:8,13,13
  39:18 42:6,9
  43:11 44:7,13,13
  44:16,18 48:11,14
  49:6,11,17 50:5,7
  50:9,16 51:14
  52:4,9,22 53:1,2,5
  53:5,6,8,10 54:7
  61:21,22 62:1,24
  65:16,16
**board's** 34:4
**body** 46:16,17
**borriello** 7:10
**bottom** 32:14 43:7
**bowling** 2:12
**box** 68:1
**boxes** 68:16
**breadth** 11:25
**break** 26:19 60:25
**brenda** 6:21 7:9
**brett** 7:15
**brief** 15:3
**briefly** 18:10
  22:24 64:7
**bring** 12:21 22:10
  56:20,21
**brings** 57:1
**brittany** 7:20
**broad** 11:23 13:2
  13:3 23:5
**brought** 22:19
  54:15
**bunin** 7:6
**burden** 71:7

**burdens** 71:17
**busy** 70:22
**butler** 4:13 7:11
  9:25
**buy** 57:11
**bylaws** 29:13

### c

**c** 2:22 4:1 9:1
  42:24 47:2,9 73:1
  73:1
**calendar** 69:20
  71:21
**calhoun** 7:21
**call** 15:24 27:20
  38:20 50:6 58:2
  62:6 67:21,24
**called** 27:10 29:6
**calling** 50:7,9
**captions** 43:7
**care** 56:5
**carriers** 16:21
  21:23
**case** 1:3,11 2:1 9:3
  9:4 17:10,16,21
  19:4,22,23 20:4
  21:17,24 23:9,10
  29:8,19,24 33:13
  40:20 54:8 62:20
  62:22 66:6 67:10
  68:4,9 72:3
**cases** 13:15,15
  14:6 18:24 21:18
  29:5 30:21 36:5
  38:3,6 39:18 52:2
  54:11
**catch** 19:9 42:17
  43:1
**cate** 7:23
**category** 27:16
**catholic** 1:7,13
  2:3 3:8,12 9:4
  16:8 27:11

**cathy** 5:20 20:12
**cemetery** 27:5,18
**central** 63:9,24
**centre** 1:7,13 2:3
  3:9,13 9:4 16:8
**certain** 17:1 20:10
  20:14 27:6 38:20
  61:11 63:15,22
  69:21 70:8
**certainly** 16:4
  44:25 56:10 64:13
  67:22
**certified** 73:3
**cetera** 49:8,8,13
**cfo** 32:6
**chair** 25:10
**challenges** 67:3
**challenging** 50:15
**chambers** 23:15
**chancellor** 34:7
**chapin** 32:7
**chapman** 2:22 9:3
**chapter** 14:10
  67:13
**characteristic**
  52:18
**characterization**
  36:15 50:16
**characterize**
  18:18 36:12
**characterized**
  48:2
**charge** 66:10
**charged** 49:9
  57:23
**charles** 6:24 7:16
**charter** 42:10,12
  42:19 44:3
**chasing** 51:25
**check** 68:16
**chicago** 5:18
  20:13

christopher 4:8
9:21 15:22
church 18:23 62:8
circle 52:1
circumstance
58:19
circumvent 44:8
ciriello 7:12
cited 38:6
cites 34:9
claim 17:12,15,19
18:19,25 21:5,18
23:1,3,7 43:25
55:10
claimant 17:18
claimants 21:2
claims 22:14
24:11 25:24 26:17
28:11 30:5 32:21
32:22 33:14 35:24
36:1,3,6,10 38:4,9
39:23 40:1,4,11
44:1 45:20 47:3,4
49:25 50:1 51:24
52:21,22,23 53:15
53:17 54:17 55:17
55:19 56:1,15
58:15 64:14 65:15
65:21
clarification
37:16
clarified 63:25
clarify 60:2,19
clause 35:1
clean 68:6
cleaner 71:22
clear 32:15 39:12
42:8 44:17 49:1
50:20 52:20 56:16
59:3 61:13,15
62:11,23
clearly 25:9 51:12
51:13

cleavage 63:10
clerks 70:19
client 19:15
clients 11:1
close 45:7 67:21
67:24 68:4
cloud 67:16
clyde 5:15 20:13
code 40:2,19 41:5
59:13 62:10,12
67:5
colleague 15:16
colleagues 9:24
color 59:21
colorable 24:11
25:24 26:17 36:2
43:25 55:10 56:1
come 16:21 33:8
52:17 56:14 68:21
68:22 69:12,16
70:6,17
comes 13:6
coming 68:11
commencement
44:2
commencing
40:13
comment 13:9
18:10
comments 61:7
commit 65:11,18
commitments
14:4
committed 65:21
committee 3:2,6
4:17 6:2 11:12,13
11:15 12:15 13:11
15:25 17:6 18:2
20:5 21:4 22:6,13
24:9,10,12,16
25:6 28:17,17
29:1,6,6 30:2,25
31:7 33:24 34:2,3

34:19,23,23 35:4
35:5,10,14,16,23
36:15,24 39:8,11
39:12,13,14,14,22
41:13,25 42:6,7,8
43:10,16,24 44:16
44:18,19,21,22,25
45:22 46:2,13
47:2,18 48:11,12
48:13 49:2,6 50:5
50:6,8,9,16,19
51:12,13,15,17,20
52:2,3,3,4,5,7,8
52:10 53:2,3,4,4,7
54:16 56:11,12
57:14 59:1 61:20
64:24 65:4,14,15
66:1 69:15 71:11
committee's 11:17
34:21 65:9
committees 29:23
30:12,23 34:14,14
34:16 39:17 49:11
49:15,16 51:22
52:25 53:1,5,5,6
common 22:11
communicate
43:10
communicated
60:12,12
companies 5:16
17:14,20 20:15
company 2:6 3:5
3:13
complaint 10:23
11:5 16:23
complete 11:9
32:11 45:15
completed 45:16
completing 47:14
completion 26:15
complexity 64:17

comply 13:13
composed 30:23
comprise 30:1
40:21
comprised 29:7
29:23 30:12 36:25
concept 57:11
concern 34:23
62:19 70:18
concerned 55:21
concerning 24:20
concerns 40:24
concluded 24:10
25:25 55:9 72:13
concludes 72:12
conclusion 30:9
30:14,17
conclusions 31:19
concur 38:10,12
conditions 13:22
13:23
conduct 19:25
30:4
conducted 9:5
25:21 27:3 31:14
68:8
conference 3:10
3:15 10:13 16:1
17:24 41:23 71:24
conferences 10:4
confidence 41:1
confidential 21:11
confidentiality
11:3
conflict 39:21,24
54:16
conflicted 45:25
conflicts 40:1
57:20 58:1,9
confronted 69:11
confused 31:23
49:22 58:13,19

[confusion - dealing]                                                Page 5

**confusion** 50:4
**connection** 10:5
  12:21 35:18 51:6
**consensual** 11:13
  11:16 12:11
**consequence**
  69:12
**consideration**
  14:12 19:14
**considered** 64:10
**considering** 20:18
**considers** 25:14
**consist** 28:23
**consistent** 36:11
**consisting** 35:5
**construct** 37:12
**consult** 46:10
**consultants** 32:9
**consulting** 31:1
**contained** 11:19
**contains** 49:7
**contemplated**
  28:4
**contested** 10:5
  12:2 13:5 15:7
  23:22 70:20
**contesting** 22:1
**context** 25:12
  34:4 35:15 38:5
  47:8
**continuation**
  49:23
**continue** 11:11
  15:24 23:7 28:5,9
  28:13 32:25 40:10
  41:2 67:14
**continued** 14:6
  33:13
**continuing** 14:20
  19:25 22:16 46:24
  49:24 58:13,16
**contractor** 32:19

**contractors** 64:9
**contractual** 49:13
**contrary** 19:22
**control** 32:13
  62:14,17 64:15
  66:6,7,8
**conversation** 59:6
  68:22
**conveyed** 35:23
  53:13
**conveying** 65:18
**coo** 32:5
**cooperation** 10:24
**cooperative** 31:20
**core** 62:7,21
**corinne** 4:9 9:24
**cornell** 8:2
**corporate** 29:18
**corporation** 27:8
  34:13,16 39:14
  42:4,7 43:16
  44:19,25 47:2
  48:2,12 49:10
  50:9 51:12 52:4,6
  52:8 53:3,7 56:20
  59:1 61:24 62:12
  64:16
**corporation's**
  49:9
**correct** 29:11 36:9
  36:13,21 37:3
  60:18 71:13
**correctly** 12:19
**cost** 33:5 47:14
**coughlin** 5:8,13
  18:6,7,8,10 19:13
  19:14 20:21
**counsel** 3:2 5:2
  6:2 10:24,25 11:7
  12:15 16:11,11,14
  21:22 23:3 24:7
  25:5,18 32:5
  38:13,20,20 42:3

59:10 64:24 65:4
69:16 71:11
**counted** 31:24
**countless** 31:15
  31:15
**country** 73:21
**couple** 20:22
**course** 13:6 16:2
  29:5
**court** 1:1 2:11 9:2
  9:6,22 10:6,9,11
  10:15,18,21,24
  11:14,16,22 12:9
  13:8 14:13 15:11
  15:11,21 16:5,13
  16:16,19 18:5,9
  19:8,16,19,22
  20:25 21:13,16
  22:15,25 23:11,19
  24:2,5,18,23,25
  25:3 26:3,5,10,21
  26:23 28:2,4,12
  28:15,22 30:8
  31:13 32:17,23,25
  33:4,17,19 35:18
  35:23,23 36:6,10
  36:17,23 37:4,9
  37:11,15,22,25
  39:3 40:8,14
  42:16,19 43:1,4
  43:19,21,24 44:5
  44:9 46:20,23
  47:19,22,25 48:5
  48:15,19,25 49:5
  49:20 50:18,22
  51:3,8,25 52:12
  52:24 53:19,25
  54:3,13,19,22
  55:5,13,24 58:4
  58:12 59:8,18,23
  60:1,7,15,16,20
  60:22 61:9 62:4
  63:12,18,19 64:2

65:2,11,18 66:12
68:23 69:4,6,17
70:1,4,15 71:7,9
71:14 72:8,11
**court's** 16:1 31:8
  31:11 33:16
**courts** 19:19
**coverage** 21:22
**create** 9:13
**created** 28:16
  34:15,18 39:13
  53:6 58:20
**creating** 67:18
**creation** 29:1,1
  49:15
**creative** 67:25
**creature** 61:22
**creditors** 4:17
  21:4 24:13
**current** 32:4 54:6
**curve** 33:9
**cyganowski** 7:1
  41:17 61:5

|  **d**  |
|---|

**d** 9:1 47:8
**damages** 18:18
  36:8
**date** 15:16 16:22
  17:5,11,24 23:13
  59:17 69:21 70:13
  73:25
**dates** 23:15
**day** 4:3 9:21 11:2
  20:23 23:24 24:1
  56:16 66:8,8
  67:22 71:12
**days** 71:18
**deadline** 11:10
**deal** 33:5 66:21
  67:3
**dealing** 29:19
  71:18

[debate - document]                                                                    Page 6

debate   42:5
debtor   1:9 4:4
   9:19,21 10:3,22
   13:12,18,24 14:20
   17:7,11 20:17
   21:4,22 22:7,14
   24:6,10,11,19
   29:8 30:4 31:3
   32:9,10,21 38:23
   38:24 40:2,5,9
   43:10 44:20,22
   45:6,21 47:17
   50:4 54:9 56:19
   57:15,20 59:17
   61:14 62:5,7,18
   62:21,25 63:1,1,7
   64:16 65:19,21
debtor's   15:3
   21:22 22:11 45:6
   61:16 66:8
debtors   12:15
   16:11 30:13 51:22
   57:3 61:18
decades   18:23,23
   18:25 40:23
december   12:2,8
   12:18 15:3,8
   16:22 17:5 19:5
   71:22,23
decide   22:19
decided   20:2 42:2
decides   19:19
   43:25
decision   68:25
decisions   49:12,17
declaration   28:20
   33:11 61:20
declarations
   25:10
dedication   40:25
deemed   27:18
deems   43:14

defendant   37:24
defendants   1:17
   2:7 10:23,24,25
   11:6,8 16:25
defenses   19:6
defer   24:15 36:14
   37:17 69:24
defines   62:12
definitely   56:8
   64:19
definition   64:10
degree   56:5
delegated   27:25
   32:21
delegation   29:2
deliberations
   60:13
delivered   60:9
denied   60:11
dennehy   7:7
department   6:8
deplete   56:10
described   38:22
designation   64:8
details   11:21
determine   46:25
determined   36:1
determining
   17:13
develop   19:5
developed   38:4
developments
   18:3
device   68:12
difference   29:4,25
   30:3 51:16
different   20:4,6
   21:17 51:21 54:12
   59:21 61:10 63:18
   65:13
difficult   12:6
   21:10 66:22

difficulty   56:5
digesting   11:20
diligently   10:22
dine   7:24
diocesan   29:19
   31:25 32:2
diocese   1:7,13 2:3
   3:9,13 9:4 12:23
   16:8 18:13,15,16
   19:1 21:18 22:5
   25:6 27:7 28:16
   29:3,12,13 31:17
   32:9,13 34:5,13
   34:19 35:10,12,19
   35:22,25 36:12,24
   37:1,1,6,7,7,18,19
   37:24 38:8,17,23
   39:1,1,2,9,15,24
   40:11 44:1,3
   45:24 50:19 51:17
   51:18,19 52:7,7
   52:10,20 53:4,13
   54:1,3,4,7,7 55:9
   56:1 58:15 59:1
   60:10,13 61:16,17
   64:9 65:10,11,23
   67:13,19 69:12
diocese's   53:16
dioceses   51:20
dipompeo   4:8
   9:20,21,23 10:10
   10:16,19 15:22,23
   71:3,5,11
direct   43:21
direction   19:21
   31:18 70:25
director   29:16
   30:25 31:3,6
   62:13,13
directors   29:7,15
   29:18,24 30:2,13
   30:23 49:7,9,11
   49:12,16 62:1,16

63:7
disagree   48:6
   66:14
disband   50:15
disbanded   46:9
discomfort   67:17
discovery   12:5,12
   12:17 13:2,2,13
   13:19,23 14:4
   17:13,16 18:12,17
   18:19 19:1,4,25
   20:6,7,20 23:5
   46:7
discrete   29:21
discuss   10:11
   12:13 59:7 65:25
discussed   11:2
   65:4,9
discussing   25:13
   56:4
discussion   11:11
   61:11 69:19
discussions   11:14
   12:14 15:24 62:15
disinterest   62:24
disinterested   64:7
disposes   34:10,21
dispositive   48:3
dispute   18:13
disputes   16:2 20:8
   22:19,21
distinction   51:16
   57:1
district   1:2 19:18
   19:19,22
doc   3:1,4
docket   9:15,15
   42:13,22,24 49:3
docketed   28:20
document   11:17
   12:7 13:1 14:23
   46:21 51:9

[documentation - feedback]                                                           Page 7

documentation
  31:21
documents  14:21
  31:16,21,23
doe  1:16 3:9
doesn't  50:9,11
  68:16
doing  47:5,7
  57:15 60:23
don't  47:20 48:22
  58:8,10 66:9,14
  67:9 71:18
doodian  32:6
drawing  49:25
drop  49:14
due  15:3 19:7
duff  31:1
duffy  5:8
duplicate  33:17
duration  12:11
duties  29:16 43:7
  62:7
duty  40:5 53:16

e

e  2:21,21 4:1,1 9:1
  9:1 34:13 42:3
  47:8 48:10,12,13
  49:15 50:20,24
  52:12,25 73:1
earlier  22:2 71:3
easier  21:11 25:7
easiest  23:13
echo  61:4 71:2
ecro  2:25
edification  19:16
  20:5
education  27:9
effect  14:10 41:24
  58:24
effort  56:9
eisen  23:14 71:24
either  17:25 19:10
  40:12 65:16

elizabeth  7:23
emails  31:22,25
emerge  67:13
employ  3:1,4 57:8
employees  64:10
  64:16 66:5
employment
  41:21 42:13 44:21
  46:11 50:14
empowered  41:20
enable  14:24
  67:13
encourage  14:22
encouraging
  14:18
endeavors  14:20
ended  69:22
engaged  32:19
enjoy  71:20
ensure  15:12
entered  10:6 49:3
entire  18:15
entirely  9:5 61:13
entities  13:24 22:8
  38:15,24,25 39:2
  57:19
entity  27:10 38:19
  43:15 57:21,25
envision  19:4
eric  4:12 9:25
essential  33:12
essentially  52:17
establish  35:3
established  54:16
  65:14 66:7
estate  22:11 24:21
  30:6 33:14 40:3,5
  56:10
estate's  40:4
et  1:16 2:6 3:9,14
  16:9 49:7,8,13
evaluate  17:21

event  35:21 36:4
  69:9
events  70:11
everybody  12:21
  44:11 60:23 71:18
everyone's  20:5
evidence  57:9
  67:25
exact  61:14
exactly  10:9 67:8
exaggerated
  55:14
examiner  55:1
  57:9 58:22 59:9
  65:2 68:13,13
examiners  63:21
example  19:2 22:6
  55:1
excellent  67:23
excess  31:24,25
excuse  25:6 37:9
  37:11
exercise  67:2
exhibit  42:12,19
  42:21,23,24 46:22
exist  27:21 28:11
  50:8 58:1,9
existed  25:25
  32:22
existence  58:13
exists  57:13
expanded  28:6
  57:10 58:22
expecting  13:12
  13:25
expeditious  13:3
expeditiously
  72:3
expend  12:25
expense  33:10
expenses  47:13
experience  40:23

expert  57:9 65:2
expertise  33:5
expires  14:2
explain  48:6
explanation  14:18
explore  70:9
expression  68:3
extended  15:1
  34:19
extension  20:17
extensions  16:20
extensive  11:18
  25:21 31:14 66:8
extent  16:3 22:2
  23:12 35:11 67:21
extra  12:25
extraordinary
  13:18

f

f  2:21 47:8 73:1
fact  10:25 22:1
  30:2,15 31:14,20
  35:14 38:19 42:10
  42:12 63:9 67:10
  69:12 70:18
factors  56:19
facts  24:17 37:12
  38:4 39:10 66:14
  67:3
factual  25:8
fairly  54:14 66:7
faith  14:19
familiar  20:23
  52:2
far  45:2 47:16
  58:25
favor  44:1
february  12:24
  13:14
federal  57:8
fee  47:14
feedback  40:6

**feel** 14:25 64:13
64:14 67:7
**feeling** 68:7
**feeney** 7:2
**fees** 45:8,8,9
**feldman** 6:6 24:15
24:24 25:1,1,2,4,4
26:3,4,9,19,22,24
28:3,8,14 29:11
30:19 34:4,25
36:14,20,20 37:17
38:6,10,11,12
39:17 45:2 47:11
47:25 54:24 55:4
55:6,11 59:22,24
59:24 60:2,8,21
64:18 67:24
**feldman's** 45:5
55:8
**fell** 27:15
**fiduciary** 40:3,5
53:16
**figure** 15:5,13
**file** 70:13
**filed** 9:14 10:3
17:25 19:18 21:25
49:3 63:4
**filiate** 27:1
**filing** 22:1
**final** 19:15
**finally** 67:9
**finances** 29:20
**financial** 3:5 24:8
25:19 31:1 32:9
**find** 48:16 55:14
66:23
**findings** 43:11,14
55:11 60:12,13
**fine** 30:14 46:12
56:13 69:17 70:24
71:14
**finished** 47:1

**firm** 31:1 33:1,2
45:9 46:6,6 55:17
56:6,6,16 57:24
58:6,6,14,16
68:15
**firms** 25:20,23
33:3,4,8,12 37:6
40:19 50:1 62:25
63:8 64:5
**first** 10:21 11:2
14:24 20:16 21:3
26:8 35:2 41:10
41:23 56:24 57:4
61:3 66:20
**fit** 62:16 67:6,8
**fleshed** 65:3
**floor** 4:18
**flows** 62:2
**focus** 27:16,19
33:23 45:5
**focused** 11:14
28:9 41:18
**folks** 23:12 51:11
67:22 68:21 71:15
**follow** 20:20
**footnote** 34:9
49:14
**footnoted** 48:17
48:24
**foregoing** 73:3
**fork** 15:5
**form** 17:12,15,19
21:5,12 23:1,3,4,7
**formed** 29:12
**former** 15:16 54:6
**forms** 21:18 23:2
**forth** 25:9 28:18
**forward** 12:2
17:10,16,18 21:21
24:9 27:3 28:14
36:2 70:8
**found** 28:11 32:22

**foundation** 27:12
**four** 10:25 11:6
27:20 38:14 43:8
**framed** 64:25
**frank** 7:25
**frankly** 12:4 13:4
13:24 35:13 53:16
66:17
**free** 39:22 54:16
**freed** 40:1
**frequently** 39:18
**front** 21:7 51:1
**fruitful** 65:25
69:3,9,19
**fulfilled** 14:1
**full** 18:19
**fully** 11:9 22:16
**functioning** 25:15
64:16
**functions** 62:6
**funds** 27:5
**further** 18:3
61:18 63:6 70:9
**furtherance** 40:4
**future** 20:8

**g**

**g** 9:1
**general** 20:3 32:5
34:6 36:16 72:2
**generally** 61:23
**generically** 36:7,8
**george** 7:21
**gerber** 15:16
**geremia** 4:11 9:25
23:25 24:1,2,4,6
24:24 29:12 31:12
33:18,18,20,21
36:9,14 37:2 39:4
39:5 40:9 48:1,22
50:17,19,24 51:4
51:15 52:10,15
53:11,24 54:1,8
54:14,21,25 64:18

64:22 68:19,25
69:2,5,8,24
**getting** 56:4 69:23
70:12
**give** 23:15 26:1
43:25 59:19
**given** 55:10 70:10
**gives** 13:17 46:25
**glad** 11:3
**go** 10:18,18 12:2
15:6 18:25 21:21
26:23 33:6 37:15
41:20 42:10,14
43:4,6 44:5 45:3
46:9,15,17 47:16
50:18 53:18 54:19
61:18 62:20 63:4
63:18 65:25 67:17
68:24 69:1,5,6,6
72:5
**goals** 67:10 68:17
**goes** 13:19 44:15
68:3
**goffe** 7:3
**going** 10:19 11:21
13:21 14:1 15:6,7
15:13,15,24 17:6
17:18 18:17 19:11
20:1 25:12 30:18
31:9 36:23 37:4,5
38:8,11 45:16
52:20,22 54:22
56:15,16,21 58:21
59:6,15 65:11,19
65:20 66:18 69:8
70:20,25 71:6
**goldin** 3:4 6:23
23:23 24:8 25:18
33:2 41:18 42:19
45:9 56:6 57:24
58:6 61:5
**goldin's** 46:6

gonzalez 6:20
25:11 41:17 61:5
gonzalez's 28:20
33:11 61:19
good 9:2,20,22
10:15,23 11:8
14:19 16:5,16,17
18:7 21:16,19
22:20 23:17,20
24:22 41:6 42:11
59:23 61:2,2 68:8
68:20
gotten 42:1
grant 30:21
granted 16:19
25:16 46:17
grateful 71:1
great 25:4 33:5,10
56:4 62:19 66:21
greater 59:6
green 2:12
greg 6:13
grounds 62:8
guess 21:8,21
38:13 69:18
guidance 65:6

h

hand 18:6 20:11
61:10
handful 27:4
happen 22:8
65:21
happened 10:20
happy 18:5 26:6
64:18 70:17 72:7
72:9,11
hard 67:5,6 71:7
harkavy 7:9
harris 6:23
hasn't 69:13
head 32:8
heads 71:1

hear 15:17 18:5
20:6 23:25 24:25
25:2 26:7 41:6,9
61:1,3 65:8
heard 23:20
hearing 3:1,4 9:3
9:5 11:2 12:2,18
13:5,14 14:1 15:7
15:10 23:24 57:17
59:12 68:11 70:3
70:20,21 71:23
72:12
heck 15:8
hello 24:2
help 9:17 16:2,3
18:19 72:1
helpful 14:17,18
25:11
hennessy 7:13
higher 19:24
highlighted 45:2
highlights 43:9,15
highly 63:6
hindsight 37:17
38:3
hired 47:18
hiring 50:1
hits 15:4
hold 42:16 43:1
52:25,25
holdings 30:20,24
hole 56:8 64:21
holiday 70:6
71:19
hon 2:22
honor 9:20 10:2
13:7,10,12 14:12
15:19,22 16:10,18
18:7,12,24 19:7
19:13 20:12 21:20
22:24 23:18,25
24:4,12,22 25:2,8
25:17 26:4,20

28:9 29:11,16
30:21 33:15,21,22
34:3,22 36:20
37:2,8,10,14,16
37:20 38:7,21
39:5,16 40:6
41:12,14 42:14,18
42:22 44:4 46:16
46:18 48:4,17
49:4,19 50:3,17
50:25 51:4 53:12
55:3 56:23 58:18
59:22,24 60:3
61:2 62:3 63:16
63:24 64:22 65:8
66:5 69:13 70:2
71:2 72:6,9
hope 23:4 56:5
61:3 68:18 71:5
hopeful 11:24
23:6
hopefully 14:15
17:19 69:16,19
71:6
horse 59:21
hours 67:1
hyde 3:25 73:3,8
hyphen 42:14
hypothetical
35:22 52:19
hypothetically
28:5 55:13,15
hypotheticals
55:14

i

iac 10:5 25:7,10
25:20,21 26:1,12
26:15,25 27:16,19
27:23,25 28:5,9
29:15 31:14 32:18
32:20,22,25 33:23
34:7,16,19 35:10
35:12,21,24 36:1

36:3 38:12,13
39:8,20 40:10,12
40:21 41:19 42:6
44:18,24 45:8,17
46:1,6,9,9 47:5
49:24 50:15 52:18
52:21 53:2,9,14
54:16,25 55:25
57:8 58:10,14,14
58:19,21,23 59:6
59:8,9,13 60:10
60:10,12 61:20
65:5,10,12 66:9
68:14 70:7
iac's 28:3,5 31:19
33:13 46:8,24
iacs 65:19
idea 68:20
ideas 70:7
identified 26:11
26:11 41:23 56:1
identify 9:10,11
28:15
identifying 26:17
ii 43:7
il 5:18
ilan 6:22
immediately
12:10 32:23
impeccable 40:22
67:11
impeccably 41:19
impediment 56:18
imperative 25:15
implication 41:3
important 11:2
19:6 20:25 32:7
64:4 66:22 67:10
67:14,16,20
impose 70:4
impossibility 42:5
improper 36:11

**inability** 56:25
**inclined** 63:18
**include** 13:23
  28:6
**included** 10:3
**includes** 19:25
  67:18
**including** 25:24
  32:3 44:1,2
**incorporated**
  38:16
**increase** 12:1
**indemnity** 2:6
  3:13 16:9
**independent** 3:2,5
  6:2 24:8,16 25:5
  29:7 32:16,18
  34:2 35:5,6 46:2
  56:12 61:25 62:1
  64:9
**indicated** 17:6
  71:5
**indication** 70:25
**indiscernible**
  21:19 43:24 44:9
  49:7 53:19,25
  58:11 59:17 60:17
  69:5
**individual** 9:7
**individuals** 28:24
  30:15 34:6 37:5
  39:21 40:21,25
  64:12,15
**influence** 31:18
**inform** 22:25
**information** 11:15
  13:16,20 17:14,17
  18:15 21:1,2,6,9
  21:11 22:4,5,13
  23:8 25:23 46:7
  63:5,6
**informed** 55:9

**initial** 12:14
**initially** 24:15
**injunction** 11:13
  13:16 14:2 70:21
**input** 31:17 32:13
**insiders** 62:11,11
  62:25 63:7 64:6
**insignificant**
  62:20
**insist** 15:9
**insists** 50:4
**instance** 31:5,6,10
**instructions** 19:15
**insurance** 5:2
  10:7 16:7,11
  17:14,20 22:11
  23:21 32:7,10
**insured** 16:25
**insureds** 22:9
**insurers** 16:24,25
  17:5,9 18:12,14
  18:20,25 20:11
  21:2 23:3,6,9
**integrity** 41:17
**intended** 25:18
**intending** 43:18
**intends** 53:14
**intense** 53:22
**intention** 19:1,25
  36:2
**interact** 65:5
**interest** 24:21
  68:9,9
**interested** 21:24
  55:18 56:11
**interesting** 70:7
**interestingly** 64:8
**interrupt** 21:13
  26:5,22 59:25,25
  61:12
**interrupted** 28:13
  37:13 39:4

**intervene** 17:7,8,9
**intervenes** 20:6
**intervening** 18:1
  70:5,11
**interviewed** 32:2
  32:5,6,6,7
**intimated** 45:10
**intra** 39:19
**intrigued** 68:10
**intrusive** 21:7,8
**investigate** 27:1
  27:23 29:3 39:19
  40:4 45:1 51:23
  53:16 54:17 62:1
  65:14
**investigated**
  26:25 27:13 28:10
  38:14
**investigating**
  26:16 49:25
**investigation**
  25:21,22,24 30:4
  31:15,19 32:11,20
  39:22 40:11 45:7
  45:12,15,25 46:10
  47:9 63:14
**investigations**
  63:11
**investigative**
  43:11
**investigator** 41:21
**investigatory**
  26:25 33:3
**invokes** 39:11
**involve** 36:6 63:22
**involved** 21:24
  29:17,18 31:6,15
  32:3 62:19
**involvement**
  38:18
**involves** 67:19
**involving** 23:1
  27:5 28:7

**issue** 17:2 20:20
  30:17 32:17,24
  33:22,24 44:23
  47:17 48:23 49:23
  56:17 57:4 58:13
  62:24 65:7
**issues** 11:8 24:20
  25:24 65:3 66:2,4
  69:11,15 72:1
**item** 10:12

**j**

**j** 6:23
**jam** 67:7
**james** 4:21 6:18
  7:5 13:10 41:12
**january** 11:10
  27:3 32:4
**jared** 7:10
**jeff** 6:25 8:1
**jennifer** 7:2
**jillian** 7:7
**jim** 20:23
**job** 67:23
**john** 5:6 16:10
**join** 22:12
**joined** 9:23,24
**jones** 4:3,16 6:24
  9:21 20:23 23:24
  24:1 41:13 56:15
  67:22
**joshua** 6:19
**judge** 2:23 9:2
  15:16 61:5,19
**judges** 41:17
**judging** 38:3
**july** 60:8
**jump** 30:14
**juncture** 32:20
**justice** 6:8

**k**

**kahane** 8:1
**karen** 6:17 7:24

**keep** 9:16 20:1
46:5 50:7
**kemble** 5:10
**kevin** 5:13 18:8
19:14
**kind** 12:20 15:4
17:17 21:5 36:8
54:22
**kinks** 11:7
**knew** 19:1
**know** 11:13 12:4
12:13,25 14:16,17
15:4,17 18:12
19:10,10,11 20:7
21:9,23 22:6,14
23:6 28:15 29:1,2
30:14 31:12,22
39:6,16 41:24
42:24 43:17 44:18
47:10 48:9 50:11
50:25 51:25 54:25
55:5,11 56:11,12
56:17,17,19,24
57:7,7,11 58:7,8
58:10,23,24 59:11
60:21,24,25 62:8
63:16 65:1 66:13
67:1,6 68:1,2,2,4
69:22 70:2,24
71:4
**knowledge** 33:3,5
33:16 54:24
**known** 40:22
**knows** 24:12
33:17

**l**

**lampert** 38:5
**language** 52:13
**lauren** 7:8
**law** 34:9,10,12,24
36:11 41:20 42:2
42:4 44:8,14,15
48:2 49:8,10,15

50:10 57:22 66:6
67:1 70:19
**lawsuit** 37:18,19
38:23
**leander** 6:18
**leapfrog** 56:16
**learn** 33:8
**learning** 33:9
**leave** 15:14 19:17
69:22
**ledanski** 3:25 73:3
73:8
**left** 41:15 47:10
**legal** 25:18 73:20
**legitimately** 23:9
**lengthy** 9:9
**letter** 35:7 51:2,3
51:4
**letters** 34:18 35:9
**letting** 40:16
**level** 64:17 67:17
**lexington** 5:3
**lifland** 7:8
**limbo** 18:2
**limited** 29:14,22
57:13
**line** 41:9 50:1
**lines** 45:11
**listen** 15:17
**litigation** 11:16
13:21 14:8 22:20
26:12 40:13 44:3
45:19 53:21 54:2
56:7 57:20 58:7
58:20,22,24 59:4
67:19 68:15
**little** 48:9 49:22
**lloyd's** 20:14
**lloyd's** 5:16
**llp** 4:3,16 5:1
**lodged** 41:7
**london** 5:16,16
17:2 20:14,15,18

22:9
**long** 11:19 25:22
35:2
**look** 15:17 46:10
53:19 69:20 70:5
**looked** 38:21
**looking** 9:14
12:19 14:3 18:21
18:21 21:1 23:12
48:25 49:2 68:15
**lose** 47:20 67:9
**lost** 33:10 58:4
**lot** 12:25 14:16
15:9,10 55:25
62:15 64:11 68:16
68:17 70:13,15,15
70:16 71:15
**lunch** 72:5

**m**

**ma'am** 26:4
**machine** 67:7
**making** 19:11
67:6 68:6
**man** 72:6,7
**manage** 71:19
**management** 32:8
54:7
**managing** 49:9
**mandate** 26:25
27:24 28:3,6
29:21
**manner** 31:23
39:25
**mark** 67:16
**market** 5:16 17:2
20:15 22:9
**martin** 7:14
**matin** 7:6
**matter** 1:5 30:19
30:20,24 41:11
42:2
**matters** 23:23
29:17 30:7 38:14

62:4,18,18
**mcnamara** 7:22
**mean** 13:1 14:14
30:9 33:7 36:17
38:13 53:21 54:11
54:17 55:5,24
64:2,24
**meaning** 45:6
66:15
**means** 13:16
19:23
**melanie** 7:1
**member** 31:1,6
**members** 29:15
30:12,16,25 31:10
32:18 34:7,15,19
35:6,9 39:23 45:8
53:6 54:6 59:9,13
62:24 64:5 66:9
68:14 70:8
**membership**
50:11
**memorandum**
47:3
**mentioning** 63:12
**merely** 49:12
**michael** 7:20
**mickee** 7:13
**middle** 35:2
**million** 27:2,11,14
27:23 28:1,7 45:7
**mind** 53:9,11
69:25
**mindful** 16:1
**mineola** 73:23
**misleading** 60:16
**misled** 60:15
**mission** 67:14
**mistake** 22:17
**moffitt** 7:5
**moment** 21:13
40:16 54:20

**monroe** 5:17
**moore** 7:15,16
**moot** 35:21 52:19
  53:12
**moriarty** 6:17
**morning** 9:2,3,10
  9:20,22,23,23,24
  16:16,17 18:7
  59:23
**morristown** 5:11
**motion** 10:7 17:4
  17:7,9 18:4 19:11
  19:18 20:1,18
  45:22 46:3,17
  61:13 70:13
**motions** 10:3,5,7
  10:12 17:11,25
  63:4
**mount** 5:10
**mouth** 66:19
**move** 10:12 17:7
  23:22 28:14 36:2
**moving** 17:10,16
  19:2 24:9 70:8
  72:4
**multiple** 26:6
  42:11 51:22
**mute** 9:17 28:25
  44:10,11 64:4

**n**

**n** 4:1 9:1 73:1
**named** 35:6
**narrow** 66:10
**nature** 55:1
**necessarily** 31:3
**necessary** 40:12
  47:3
**need** 11:15 12:12
  12:20 15:13 17:20
  21:6 22:4 23:4,9
  45:19 54:19 60:23
  60:24 69:1

**needed** 17:13
  18:17 46:1
**needless** 25:21
**needs** 40:10
**negotiate** 12:6
**negotiating** 13:1
**negotiation** 16:4
  22:19 40:12 45:19
**negotiations** 16:3
**never** 53:9,11
**new** 1:2,7,13 2:3
  2:13 4:6,19 5:4
  6:4,11 17:23,24
  34:8,12,24 41:20
  42:1,1 44:8,14,15
  48:1 49:8,10
  58:11 68:15
**news** 11:8
**nexus** 12:10 13:3
  13:17,20 14:7,12
  15:1
**night** 11:17
**nj** 5:11
**non** 13:18 22:7
  31:6 42:4 49:11
  49:12,16
**nonprofit** 67:4
**noted** 29:16 32:12
  34:3,4,25 35:6
**noting** 11:23
**notion** 39:7,20
  52:22 65:1,4,10
**notwithstanding**
  30:15 64:8
**november** 2:15
  9:15 10:21 14:14
  73:25
**number** 9:5,15
  11:7 16:7,20,24
  20:24 26:7,10
  36:5 42:24 47:22
  52:18 64:25 66:2
  66:21

**numeral** 43:7
**numerous** 32:8
**ny** 2:13 4:6,19 5:4
  6:4,11 73:23

**o**

**o** 2:21 9:1 73:1
**objected** 24:13
**objection** 33:25
  34:1,22 35:12
  39:7 41:7 48:3
  51:17 52:16 61:9
  64:23
**objections** 24:20
  59:20 65:1,9 66:5
**obligation** 40:3
  56:12
**observation** 12:16
  66:20
**obtain** 21:8
**obtaining** 13:16
**obviate** 23:4
**obvious** 56:5
**obviously** 11:20
  19:17 20:3 57:8
  60:6 63:22 66:21
  70:24
**offer** 16:1 34:18
  35:8
**offered** 65:4
**office** 20:13 41:8
  63:23
**officer** 31:2 62:13
**official** 24:12
**offline** 65:25
  68:20 69:15
**oh** 10:17 58:5
**okay** 10:16 18:5,9
  19:16 23:11,17
  24:5 26:21 28:2
  28:12 36:10 43:1
  43:3,4 46:14,20
  47:9,22 49:5,14
  49:20 51:8 55:13

59:18,18 60:7,22
  60:23 64:2 69:4,4
  69:17 70:1,22
  71:9,21
**old** 73:21
**once** 19:4
**open** 35:23 69:22
**opening** 41:15
**operations** 66:6
**opinions** 57:12
**opportunity**
  59:19 69:10
**oppose** 17:7
**opposing** 17:9
**opposition** 41:15
**order** 11:15 17:20
  23:9,20 46:11,16
  50:14
**orders** 10:6 30:22
**ordinarily** 29:7
**ordinary** 64:10
  66:15
**original** 12:22
  44:20
**oswald** 7:25
**otterbourg** 3:1
  6:1 23:23 24:7
  25:5,18 36:21
  42:22 45:9 46:5
  46:18 49:21 54:23
  56:6 57:24 58:6
  58:16
**otterbourg's** 55:8
**ought** 68:4
**outset** 40:16
**outside** 68:1
**outstanding** 47:12
**overall** 65:24
**overlay** 67:4
**overlooks** 34:9
**overruled** 34:11
**oversight** 32:12

owned 27:6

**p**

p 4:1,1,12 9:1
p.c. 3:1
pachulski 4:16
10:8 41:13
page 12:22 34:1
42:14,24 46:19,20
46:22 48:18 51:11
pages 11:19 31:23
31:25
paid 36:25 37:6,6
45:8,9
painting 62:7
paper 22:20 30:22
35:16
papers 26:10
28:16,19,25 32:16
35:7 40:2 60:11
63:17 66:3
paragraph 44:15
48:18,19,21,25
parameters 17:17
parenthesis 35:4
parish 19:3,3
parishes 22:12
park 6:3
parsing 54:23
67:2
part 15:11 18:24
22:18 27:24 28:3
32:17 35:12 46:3
48:23 55:21 61:16
67:8 71:16
participants 17:2
participate 9:10
particularly
25:14
parties 13:19,20
13:22 14:9 15:12
21:1 22:3 33:7
38:15 55:18 62:19
64:1

partner 71:3
parts 46:11
party 9:11 31:2
45:18 67:20
pass 40:17
paths 15:2
patrick 7:4
pause 54:20
pc 6:1 25:5
pedophilia's
18:22
peg 56:8 64:21
people 14:16
36:25 41:18 57:18
58:11 61:12 67:15
71:19
percent 18:16
26:14
percentage 47:12
period 18:15
26:13 30:5 70:5
70:14
permissible 40:19
41:5
permits 49:11,15
permitted 9:8
35:20 49:16 50:14
51:23
person 47:19
57:25 59:10 62:14
70:19
personal 21:10
personnel 29:20
32:1,2
persons 29:14
30:1 64:15 66:6,6
perspective 46:12
46:14 56:9
pertinent 13:24
51:21
peter 6:6 7:22
25:4 36:20 38:12
59:24,25

petition 25:20
30:5
phelps 31:1
phone 28:25
44:10 60:24 64:3
phones 9:17 44:11
physical 42:5
pick 15:15 39:3
picked 71:12
picks 47:17
piece 22:4
pieces 26:20
place 25:12
plaintiff 1:14 2:4
54:1,10 57:2 59:5
65:23
plaintiff's 18:18
57:2
plaintiffs 14:8
plan 15:18 36:2
plate 70:16 71:16
platform 9:6
play 53:21
pleadings 26:6
41:25 45:21 55:7
55:12
please 9:10,12,16
21:14 26:5 28:13
28:25 43:2 44:10
44:11 54:20 61:1
64:3 72:11
pleased 72:3
plus 10:22
pm 72:14
point 9:16 12:4
17:23 21:16 23:22
31:8,11,13,16
32:16 38:7 49:1
52:16 53:23 55:24
55:25 60:25 61:12
61:16 63:2,10,14
63:15,16 64:7
65:24 66:5,17

67:12
pointed 37:20
42:3
points 35:14
61:11 63:3,24
64:5
policies 17:2 22:9
22:11 29:19
pool 67:18
position 18:17
59:14
positioned 19:5
possession 38:23
possibilities 63:13
possibility 12:1
53:23
possible 14:23
67:11
possibly 68:13
power 53:18
57:22 64:12
powers 50:13
57:10 58:22
practical 14:14
56:18
practice 18:4
pre 3:10,15 10:4
10:13 25:20 30:5
precedent 30:11
precedents 30:12
precisely 38:22
preclude 57:16
58:2,8
precluded 29:9
63:20
precludes 59:17
precursor 17:12
preliminary
11:13 13:15 14:1
70:21
preparation
15:10

**prepare** 19:6 47:3 55:2
**prepared** 22:21 54:25
**preparing** 70:21
**prescribe** 29:14
**prescribed** 34:5
**present** 6:15 68:23
**presentation** 26:7 45:5
**presented** 64:20
**presently** 58:20
**presents** 62:3 67:4
**preserve** 45:11
**presumably** 17:5
**pretending** 45:24
**pretty** 15:13 21:1 62:11
**pretzel** 53:20
**previously** 11:14 65:3
**priests** 19:3
**primarily** 17:1
**principles** 66:20
**prior** 32:4 39:23 58:1
**prioritizing** 14:22
**private** 9:8
**problem** 18:23 41:19 55:22 57:5 59:10 70:18
**procedures** 29:19 63:22
**proceed** 17:23 19:23 24:24 32:22
**proceeded** 31:11
**proceeding** 3:8,12 10:14,20 16:15,18 23:21
**proceedings** 9:7 10:4 22:7 72:13 73:4

**process** 19:4 33:13 55:18 67:11 68:8
**produce** 14:20
**production** 14:24
**productions** 14:5
**productive** 59:19
**professional** 50:1 55:21
**professionals** 32:10,23 33:1 35:20 39:9 40:10 47:6,18 51:18,21 51:23 53:15 55:19 56:7 57:2 61:14 62:5
**profit** 34:8,12,24 42:4 48:2 49:8,10
**progress** 14:5,25 72:2
**progresses** 23:14
**proof** 17:12,15,19 18:19 21:5 22:25 23:3,7
**proofs** 18:25 21:18
**proper** 25:15
**properly** 47:17
**properties** 36:7 36:13
**property** 27:6
**proposed** 6:2 11:17 25:5 38:13 46:11 62:6
**protect** 11:3
**protections** 14:10
**provide** 21:10 23:8 31:18 67:11
**provided** 17:15 31:20 63:5 65:6
**provides** 34:13 68:7

**provision** 34:8,9 48:1
**provisions** 46:15
**pull** 42:11 51:9
**purpose** 60:19
**purposes** 64:14
**pursing** 39:22
**pursue** 24:9 30:5 32:21,23 33:13 35:24 40:1,11 41:2 44:1 45:18 47:3 50:1 51:24 52:21,22,23 53:14 55:17,19 56:2,7 57:19 58:20,22,24 59:4 63:1 68:15
**pursued** 15:2 56:15 65:23
**pursuing** 47:4,17 58:7,15 64:14 65:21 67:18
**put** 17:18 28:25 44:10,11 64:3 68:5
**putting** 66:19

**q**

**qualifications** 61:6,6
**qualified** 41:19
**qualify** 59:13
**queried** 57:7
**question** 19:17 26:8 30:10,10 34:22 35:17,19,22 39:6 41:22 42:5 44:23,24 45:4 49:21 52:19,19 53:12 55:4,23 58:5 60:3 61:24 62:10 65:22 67:16
**questions** 11:22 24:18 26:7 40:24 47:22

**quickly** 14:23 15:13
**quite** 70:22
**quote** 29:2 51:10
**quoted** 48:1,22 51:1
**quoting** 34:14

**r**

**r** 2:21 4:1,11 9:1 73:1
**raised** 18:6,11 20:11 32:18 33:22 34:22 61:10 66:2 66:5
**range** 27:13
**reach** 11:12,25 14:3 22:2 23:14 71:5,11,24
**reached** 63:15
**read** 26:6 28:15 44:4,6 45:11 48:15 51:2,10 52:13 63:17
**reading** 35:2 50:25
**ready** 32:22
**real** 27:6 45:4
**reality** 14:14
**really** 15:2,3 20:19,25 35:11 39:8 43:9,15 44:17,22,24 45:4 45:14 51:25 52:1 52:19 55:20 62:21 63:2 66:3 67:8 68:7
**reason** 33:17 50:20
**reasonableness** 47:15
**reasonably** 14:21
**recall** 47:25 48:3

**received** 11:17
19:15
**recollection** 12:24
55:12
**recommendation**
53:14 65:12,17,19
**recommendations**
43:12,13
**record** 9:11,13
33:16 35:21 60:3
60:19 63:25 64:11
65:22 73:4
**recording** 9:7
**recordings** 9:8
**recover** 36:21
**recovery** 67:18
**redo** 56:11
**reed** 5:1 20:23
**refer** 25:6
**reference** 17:4
18:1 19:12,18,20
20:2,19
**referenced** 35:15
**referred** 10:2
**refine** 23:7
**refining** 14:23
**reframe** 39:6
**refusal** 56:25
**refused** 56:20
**regard** 45:17
**regarded** 39:14
**regarding** 25:23
**related** 22:8 26:17
27:5 47:4
**relation** 38:17
**relationship**
38:16 43:9 58:25
59:16
**relevant** 24:17
26:13
**relies** 34:8
**religious** 61:24
67:4

**reluctance** 22:18
**remaining** 24:20
**reminded** 40:15
**render** 68:25
**renegotiation**
44:2
**renker** 32:5
**repeat** 66:24
**repeatedly** 45:24
**replay** 15:3
**reply** 28:20 34:2,8
35:8 36:4 39:11
**report** 54:25 55:1
55:10 60:4,9,10
60:14,15 65:16
**reporting** 65:11
**reports** 65:15
**represent** 20:14
31:4 57:25 58:7
**representation**
58:2,10
**represented** 37:6
38:19,25
**represents** 58:14
**reputation** 41:17
**reputations** 39:25
40:22
**request** 12:1 35:8
**requested** 12:23
31:21
**requesting** 16:21
18:14 39:9
**requests** 11:18,18
11:20,21,23 12:7
13:1,14,25 14:23
18:16 46:7
**require** 14:21
15:10 23:15
**requirement** 49:6
**requirements**
67:5
**researched** 57:12

**resign** 13:5
**resolution** 14:3
23:10 28:17,18
30:17 34:18,25
45:20
**resolve** 12:11
22:21
**resolved** 20:9
69:23
**resources** 12:25
**respect** 10:6,11,16
10:19 19:2,7
22:14 23:21 24:18
24:21 27:18,25
31:18 36:3 51:21
56:13 65:7,12
66:10 69:18
**respectfully** 18:20
35:18
**respond** 22:22
64:19
**responded** 51:6
**response** 20:18
35:8 55:8,8 69:10
69:13
**responses** 52:16
**responsibilities**
43:8 46:1
**restrictions** 43:16
**result** 21:3 25:22
**resulted** 27:4
**resume** 68:22
**resumed** 70:20
**retain** 25:18 32:23
33:4 35:20 40:9
59:10 61:13
**retained** 39:10
61:25 63:8
**retention** 10:8
23:23,24 24:7,13
25:12 30:11 33:12
33:25 40:18 62:5

**return** 36:7 69:21
**review** 31:15
46:24 56:13
**reviewed** 31:16
**right** 14:13 15:21
16:5,5 18:3 22:15
23:11,16,19,22
24:23,25 28:12
33:19 36:8,8,19
36:23,23 37:1
39:3 40:14 44:15
49:5,5,20 50:2
55:15,25 59:18,18
60:20,22,25 62:15
64:2 67:8,8 69:17
71:9
**rise** 43:25 46:25
**risk** 32:8
**road** 15:5 46:2
73:21
**robust** 19:4
**rochester** 22:6
**rockville** 1:7,13
2:3 3:9,13 9:4
16:8
**role** 31:17 41:20
61:14 68:12
**roles** 49:18
**rolling** 14:4
**roman** 1:7,13 2:3
3:8,12 9:4 16:7
43:7
**rosenblum** 4:10
7:17 9:25 69:25
**roster** 9:9
**round** 12:14 56:8
64:21
**ruin** 71:19
**rule** 49:7 63:18
**rules** 57:8
**run** 48:5,5
**runner** 68:3

running   52:1

**s**

s   4:1 9:1
safe   72:12
safety   71:20
sake   23:20
saw   10:6
saying   47:5 51:12
   51:13 53:11,12,17
   54:17 60:16
says   42:12,24,24
   44:7 46:16,24
   48:12,13 52:24,25
   53:9,12
scale   68:5,5
scc   1:3,11 2:1 3:8
   3:12
scenario   54:14
scharf   6:22
schedule   69:25
scheduled   15:25
school   67:2
scope   11:24 12:7
   12:23 14:4 18:11
   18:20 29:22 47:5
   47:6 49:25
screens   42:11
scrolling   41:8
sears   38:5
second   11:11 35:1
   48:13 57:4
secondly   66:25
secret   18:22
section   34:12 42:3
   48:10 49:14
see   17:17 18:6
   20:10 31:9 33:16
   41:8,8 46:21
   55:15 57:12,25
   59:14 61:3 68:21
seek   36:18
seeking   19:1
   22:13 23:6 36:7

40:9 50:15 54:10
seeks   22:13 24:7
selected   36:25
   37:5
selecting   55:17
seminary   27:7
senior   31:25 32:2
sense   26:14 41:3
sentence   35:2,3
   48:13,21
sentences   42:1
separate   11:20
   27:10 37:20 38:14
   38:19,19,25
separately   38:16
   38:25
seriousness   41:1
serve   10:22
serves   68:8,9
service   11:1,5,9
set   17:23 24:16
   25:9 28:18 39:21
   40:2 66:1,13
setting   29:18
settlement   26:12
   53:23
sexual   23:1
shara   8:2
share   68:18
shared   23:2 24:10
shelley   2:22
shorthand   16:6,6
show   50:22
showing   42:21
shows   42:23
shuffling   28:24
side   54:10
sides   38:8
sidestepping
   44:23
sight   67:9
sign   15:14

signed   9:9
significant   62:18
similarly   35:9
simple   45:15
simply   12:19
   30:13 39:10 51:19
   66:9
sit   29:7
situation   37:23
   63:6 65:13 68:2
situations   51:22
skills   41:16
slome   8:3
small   11:7
smaller   27:10
   28:6
smith   5:1 20:23
smooth   15:12
solutions   9:6
   73:20
solved   59:10
someone's   64:3
somewhat   55:14
   70:12
sonya   3:25 73:3,8
soon   61:3 70:10
   70:24
sorry   10:17 26:2
   26:22 37:3 40:5
   42:18,18 44:4,9
   44:20 46:22 51:8
   51:15 52:11,24
   58:4,18 69:5,6,7
sort   16:2 18:2
   19:9 22:12 27:4
sounds   23:17
   45:16
southern   1:2
speak   9:11,13,17
   27:22 28:1 37:13
   41:10 45:17 59:21
speaking   31:12
   40:7

signed   9:9
special   5:2 16:11
   29:6,6,23 30:1,12
   30:23 31:6 34:23
   35:3 36:24 39:17
   44:22 51:22 52:2
   52:3,3,4,8 61:20
   65:14
specific   66:4
specifically   61:21
spending   14:16
spent   45:6
spoke   32:8,10
spot   49:5
square   56:8 64:21
squeaky   68:6
staff   15:11
stand   21:22
standard   47:15
standing   45:22
   46:3 56:17
stang   4:16,21
   12:18 13:7,8,10
   13:10 15:19,19
   20:21,23 22:5
   37:20 41:7,9,12
   41:12,13 42:16,18
   42:21 43:3,6,19
   43:20,23 44:4,6
   44:13 46:21,24
   47:24 48:4,8,17
   48:20,24 49:4,19
   50:3 51:11 52:5
   53:17 54:17,19,22
   55:3,7,16,20
   56:23 58:5,18
   59:11 60:4,16
   66:18 67:25 69:4
   70:6
stang's   61:7 63:3
start   9:18 33:22
   41:14 47:24
started   53:17

starting 9:16
state 10:24 11:16
  20:4 57:22 63:23
stated 61:19
statement 20:3
  48:7 61:19
statements 61:4
  61:23 63:19
states 1:1 2:11 6:8
  35:3,9
stating 61:21
status 16:1,17,18
  23:21 33:23 41:23
statute 28:23 29:9
  29:12 34:5,17,24
  35:13,15 39:11
  42:7 50:12 52:14
  52:24 53:9,12
  66:16 67:2
statutory 62:4
  63:3 64:6
stay 10:13 11:16
  12:11,23 13:18,18
  13:21 14:7,8,11
  15:1,8 22:7 72:12
steep 33:9
stellar 39:24
step 14:9
stephens 4:12
  9:25
stipulated 22:7
stipulation 13:16
  14:6
stipulations 16:19
stoneking 7:4
stop 15:17 45:12
stopping 63:13
street 4:5 6:10
stricken 47:9
strings 53:21
stripe 61:10
structure 39:21
  44:16

struggling 30:18
  66:25
subject 16:19
  47:14,15
submit 35:8 69:10
submitted 25:10
  30:22 35:7 51:5
  65:20 69:13
subparts 43:9
subsection 42:3
  43:8
substance 35:11
  39:7
substantial 25:23
  31:21
sue 62:17
sued 62:9
sufficient 14:25
sugayan 5:20
  20:11,12,13 21:15
  21:20
suggest 33:7
suggested 55:19
  64:24 68:19 69:1
  71:10,13
suggesting 49:23
suing 37:1,7,19
  39:1,2 62:9
suite 6:10 73:22
summons 10:23
  11:5
sunday 10:3
supervisory 31:17
  32:13
support 24:17
supportive 22:16
sur 34:2,8 35:8
  36:4 39:11 69:18
sure 12:5,18
  21:15 29:13 60:1
  68:6
surgical 14:19

surprising 33:11
surreply 48:16
  49:2 51:1,5,6
  69:10,14,18
survivors 11:3
  21:9
suspect 45:10

t

t 73:1,1
table 12:13
take 16:4 50:22
  60:23,24 66:23
  68:20 70:23
taken 14:9 47:8
talk 22:16 58:16
  64:11 68:21 69:1
talking 20:21
  44:12 47:20 48:1
  69:15
task 40:25
tasks 46:8
team 41:10
technologically
  15:12
teed 22:21
telephonically 4:8
  4:9,10,11,12,13
  4:14,21 5:6,13,20
  6:6,15 9:6
tell 12:18 19:13
  19:21 47:10 48:16
telling 52:5 53:8
  58:11
tells 19:24 50:10
template 23:2
templates 21:19
teneo 3:4
terms 11:23 17:10
  17:25 18:3 23:10
  36:16 41:4 66:14
tersigni 7:18
thank 9:18 12:9
  13:10 14:13 18:4

19:7,8 20:12,17
  22:15 25:3,4
  28:12 33:19,21
  39:5 41:12 43:3
  44:12,13 60:19,20
  60:22,22 64:2,22
  70:2 71:25 72:2,6
  72:8,8,10
thanksgiving
  14:15 15:4 71:19
  72:7,9,11
they've 47:21
thing 21:10 23:13
  42:6 47:1 50:13
  57:7 60:2 65:8
  68:4
things 10:20
  13:19 21:3,25
  22:1 24:16 44:17
  48:11 57:16 62:13
  64:25 68:11 72:4
think 10:12 11:21
  11:22 12:6 13:17
  17:22 18:2 19:6
  20:25 22:2 23:8
  23:11,13 25:9,11
  28:19,20 29:25
  30:3 31:22 32:14
  32:14 33:5,8,9,10
  33:23 34:21 38:7
  38:17 41:6 45:5,7
  45:14 46:15 47:4
  48:8 50:3,14
  51:16 52:15 54:2
  55:16,18 56:24
  57:12,23 58:18,19
  59:15,20 60:3,5,8
  60:11,11,13 61:15
  61:23 62:23 63:19
  63:25 64:3,4,7
  66:6 67:24 68:1,1
  68:4,19 69:2,14
  70:4,6 71:3,10,12

72:1,5
**thinking** 41:3
  68:11
**third** 4:18 13:20
  13:22 14:8
**thomas** 8:3
**thompson** 4:14
  10:1
**thomson** 7:19
**thorough** 32:19
**thought** 40:6
  47:11 55:20 58:9
  59:2,12,14,16
  66:18
**thoughtful** 66:22
**three** 12:7 29:14
  34:6 40:21 49:7
**threshold** 66:11
**throwing** 45:12
**thumb** 68:5
**tie** 68:3
**time** 9:12 12:12
  12:13,17,25 13:14
  14:2 16:20 20:17
  26:13 33:10 41:6
  67:6,6 69:21 71:6
  72:1
**times** 26:6 32:8
**today** 9:19 14:14
  15:15 30:18 38:21
  47:20 64:11 65:20
  66:2 69:11
**today's** 57:16 58:2
  59:12
**todd** 4:11 9:25
  24:1
**told** 11:14 52:6
**top** 42:23
**topics** 11:24 12:5
**track** 20:6
**tracks** 63:14
**transaction** 27:5
  27:11,19 28:1,6

43:25 54:4,5
**transactions**
  26:11,15,18,24
  27:1,2,4,12,15,17
  27:20,21 28:10
  29:3 38:15 39:19
  45:1 54:11 66:10
  67:19
**transactor** 54:4
**transcribed** 3:25
**transcript** 73:4
**transfer** 27:6
  36:17,19 37:22
  38:3
**transferees** 37:25
**transferor** 54:5
**transferred** 27:7
  27:9 36:12
**transfers** 26:13
**trial** 3:10,15 10:4
  10:13
**tried** 21:3 57:3
**true** 39:10 51:19
  56:21 73:4
**trusha** 7:3
**trustee** 6:9 24:12
  41:8 57:13 58:23
  62:3 64:4,24 65:2
  65:10 66:1 68:24
  69:15
**trustee's** 59:20
  63:23 64:23 66:4
**trustees** 34:5,20
  63:21
**try** 14:22 22:10
  28:14 42:11,16
  58:12 63:5
**trying** 21:21
  45:22 57:16 65:5
  67:2,7
**turn** 16:6 33:18
  33:24 45:22 48:10
  58:21

**turns** 71:16
**twisted** 53:20
**twisting** 53:20
**two** 10:3,4,5,7
  13:4 18:14 25:23
  26:19 28:23 30:24
  33:12 42:1 44:17
  48:10 52:15 66:11
  67:1 70:14,19
**type** 18:18 30:1
**types** 29:17
**typical** 29:23
  54:14 65:13
**typically** 31:9
**typing** 44:10 64:3

**u**

**u.s.** 2:23 6:9 24:12
  41:8 59:20 62:3
  63:22 64:4 65:9
  68:24
**ucc** 65:6 70:13
**ucc's** 33:24 35:11
  39:7
**ugly** 53:22
**ultimate** 23:10
**unable** 20:8 57:24
**unanswered**
  18:16 19:17
**unclear** 31:4
**uncontested** 10:3
  10:7
**underestimates**
  18:20
**underscore** 43:13
**understand** 12:10
  12:20 13:3 15:1
  16:22 17:3,8
  25:14 29:4,10
  31:8,11 37:22,25
  38:1 43:23 44:6
**understanding**
  16:24 28:8

**undertaken** 41:1
  71:4
**underwriters**
  20:14
**undo** 36:18
**unicorn** 57:12
**unique** 66:13 67:3
**united** 1:1 2:11
  6:8
**universe** 26:15
**unknown** 2:25
**unlitigated** 18:13
**unquote** 29:2
**unsecured** 4:17
  24:13
**unusual** 63:6
**update** 72:2
**upfront** 21:25
**urgency** 69:22
**use** 22:25 55:14
**useful** 55:14 69:20

**v**

**v** 1:15 2:5 3:9,13
  38:8 54:10
**vague** 48:9
**valuable** 55:25
**value** 17:21 23:10
  27:2,14,22 36:18
  36:22 45:12 46:5
  47:20
**varick** 6:10
**various** 64:1
**veritext** 73:20
**versus** 16:8
**vesey** 4:5
**vicar** 34:6
**victims** 17:18 56:2
  67:12 68:7
**view** 33:15 61:16
**virtue** 58:1,10,25
**voice** 61:3
**volume** 12:12,17

**[w - zoom]**

| w | | |
|---|---|---|
| **w**  5:17 | **wholly**  60:5,18 | **york**  1:2,7,13 2:3 |
| **waiting**  18:3 | **willing**  13:4 | 2:13 4:6,19 5:4 |
| **walks**  36:4 | **willingness**  67:25 | 6:4,11 34:8,12,24 |
| **walls**  62:8 | **window**  33:6 | 41:20 42:1,2 44:8 |
| **want**  14:10 15:2 | **wish**  23:20 | 44:14,15 48:2 |
| 18:10 21:2 22:17 | **wishes**  56:2 | 49:8,10 |
| 22:22 25:8 28:15 | **withdraw**  17:4 | **you've**  52:6 54:9 |
| 30:9 33:24 36:12 | 19:12,18,20 20:1 | 71:12 |
| 36:17,21 38:7,7 | 20:19 | |
| 41:2,14 43:12 | **withdrawing**  18:1 | z |
| 49:1 50:6,7 56:21 | **wonderful**  70:19 | **ziehl**  4:16 41:13 |
| 56:25 58:8 60:2 | **words**  26:16 48:9 | **zipes**  6:13 41:9 |
| 60:15 61:4,10,11 | 58:17 66:15,19 | 59:19,21 60:21 |
| 62:6 66:17,20 | 67:2 | 61:1,2 |
| 67:9 69:21 71:18 | **work**  12:17 14:22 | **zoom**  15:10 |
| **wanted**  20:19 | 15:9 21:3,5,25 | |
| 40:15 41:24 60:18 | 26:16 45:17 49:24 | |
| 61:12 63:23,24 | 56:1,11 65:5 | |
| **wants**  35:24 40:12 | 66:22,24 67:14 | |
| 53:15 56:9,9 | 69:14 70:5,7,13 | |
| **warren**  7:14 | 70:16,16 71:7 | |
| **wasn't**  51:1 61:13 | **worked**  11:4,4 | |
| **waste**  56:9 | 21:23 | |
| **water**  45:13 | **working**  10:22 | |
| **way**  15:5 17:23 | 11:7 70:11 | |
| 21:7,8 22:8 29:10 | **worth**  11:21,23 | |
| 31:4 60:17 61:7 | 33:2 | |
| 64:20 66:23 68:8 | **wouldn't**  58:2 | |
| **we've**  19:15 20:22 | **writing**  51:7 | |
| 20:24 30:7,22 | **written**  60:10 | |
| 38:21 53:13 63:14 | 69:13 | |
| 65:20 69:11 70:12 | x | |
| **week**  11:6 14:15 | **x**  1:4,10,12,18 2:2 | |
| 15:4,25 70:14 | 2:8 58:6 63:19 | |
| 71:6 | y | |
| **weeks**  12:7 | **y**  63:19 | |
| **weinstock**  6:19 | **yeah**  55:5 | |
| **went**  11:5 35:9 | **year**  17:24 25:22 | |
| **whatsoever**  40:20 | **year's**  33:2 | |
| 40:23 | **years**  18:14 | |
| **who've**  14:9 | **yep**  10:10 44:5 | |
| | **yesterday**  10:5 | |

# EXHIBIT B

## Brittany M. Michael

| | |
|---|---|
| **From:** | Karen B. Dine |
| **Sent:** | Tuesday, November 17, 2020 8:12 PM |
| **To:** | 'Butler, Andrew M.'; Stephens, Eric P.; Ball, Corinne; Geremia, Todd R.; Rosenblum, Benjamin; DiPompeo, Christopher J.; Thomson, Benjamin J.; James Stang; Ilan D. Scharf; Brittany M. Michael |
| **Subject:** | DRVC Draft Document Requests in connection with Preliminary Injunction Discussions |
| **Attachments:** | DOCS_NY-#41475-v4-DRVC__Document_Production_Request.DOCX |

Counsel, further to our discussions regarding the extension of the preliminary injunction, we attach a draft of the document request that the Committee is proposing to issue in connection any such extension.

Additionally, below is a list of a number of items specifically addressed at the 341 on which it was agreed there would be follow-up.

Please let us know your questions or comments or if we should set up a call to discuss.

Regards, Karen



**Karen B. Dine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7731
Tel: 212.561.7700 | Cell: 917.279.7047 | Fax: 212.561.7777
KDine@pszjlaw.com
vCard | Bio



# **EXHIBIT C**



**PACHULSKI**
**STANG**
**ZIEHL**
**JONES**

L A W   O F F I C E S
LIMITED LIABILITY PARTNERSHIP

L O S   A N G E L E S ,   C A
S A N   F R A N C I S C O ,   C A
W I L M I N G T O N , D E
N E W   Y O R K ,   N Y

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

**TELEPHONE: 310/277 6910**

FACSIMILE: 310/201 0760

James I. Stang

November 19, 2020

310.772.2354
jstang@pszjlaw.com

**Via E-mail (pfeldman@otterbourg.com)**

Peter Feldman, Esq.
Otterbourg P.C.
230 Park Avenue
New York, New York 10169

Re:   In re. The Roman Catholic Diocese of Rockville Centre, New York Case No. 20-12345

Dear Peter:

I am writing to follow-up on the hearing yesterday in the above-referenced matter regarding the applications (the "Applications") to retain professionals for the Independent Advisory Committee ("IAC"). On behalf of the Committee, we propose to meet and confer with you and counsel for the Debtor to discuss the IAC Applications and the role of the IAC early next week.

In order to have a productive meet and confer, please provide a copy of the "report" that you referenced yesterday during the hearing with respect to the causes of action investigated by the IAC by close of business tomorrow.

I look forward to hearing from you.

Very truly yours,

James I. Stang

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE: 415/263 7000**

FACSIMILE: 415/263 7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302/652 4100**

FACSIMILE: 302/652 4400

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212/561 7700**

FACSIMILE: 212/561 7777

WEB: www.pszjlaw.com



Peter Feldman, Esq.
November 19, 2020
Page 2


cc:     Corinne Ball (via email)
        Todd Geremia (via email)
        Christopher J. DiPompeo (via email)
        Benjamin Rosenblum (via email)
        Andrew M. Butler (via email)
        Jennifer S. Feeney (via email)
        Ilan D. Scharf (via email)
        Karen B. Dine (via email)

# EXHIBIT D

## Sophia Lee

| | |
|---|---|
| **From:** | Peter Feldman <pfeldman@otterbourg.com> |
| **Sent:** | Friday, November 20, 2020 11:26 AM |
| **To:** | Sophia Lee |
| **Cc:** | James Stang; 'abutler@jonesday.com'; 'epstephens@jonesday.com'; 'cball@jonesday.com'; 'trgeremia@jonesday.com'; 'brosenblum@jonesday.com'; 'cdipompeo@jonesday.com'; Jennifer S. Feeney; Ilan D. Scharf; Karen B. Dine |
| **Subject:** | RE: In re The Roman Catholic Diocese of Rockville Centre, USBC Case No. 20-12345 |

Jim:

I am in receipt of your letter dated November 19, 2020 requesting the production of the IAC's report that I mentioned during the November 18, 2020 hearing before Judge Chapman on the Diocese's applications to retain Otterbourg and Goldin (the "Applications").  As you know (*see* UCC's objection to the Applications at ¶11), the IAC is subject to a confidentiality agreement.  Specifically, the IAC is required to maintain the confidentiality of information about the Diocese that the Diocese considers to be confidential. It is the IAC's understanding that the report contains such confidential information.  Additionally, the report contains information that is subject to one or more privileges.

In view of the foregoing, we are unable to produce the report to you by close of business today, the time frame for the production set forth in your letter. We suggest that you seek the production directly from the Diocese.

I am available to discuss your request but as any resolution must also involve the Diocese, I suggest that the production of the report be one of the items for the proposed meet and confer between the Diocese and the UCC. However, please contact me if you want to speak directly (917-306-4449). Thank you.

Regards,
Peter Feldman



**Peter Feldman** • Otterbourg P.C. • 230 Park Avenue • New York, NY 10169 • Direct: (212) 905-3615 • Cell: (917) 306-4449 • Fax: (212) 682-6104 • pfeldman@otterbourg.com • otterbourg.com

The information contained in this communication may be privileged and/or confidential and is intended only for the individual to whom it is addressed or agent responsible to deliver it to the intended recipient. If you have received this communication in error, please immediately notify us by telephone.

**From:** Sophia Lee [mailto:slee@pszjlaw.com]
**Sent:** Thursday, November 19, 2020 12:55 PM
**To:** Peter Feldman <pfeldman@otterbourg.com>
**Cc:** James Stang <jstang@pszjlaw.com>; 'abutler@jonesday.com' <abutler@jonesday.com>; 'epstephens@jonesday.com' <epstephens@jonesday.com>; 'cball@jonesday.com' <cball@jonesday.com>; 'trgeremia@jonesday.com' <trgeremia@jonesday.com>; 'brosenblum@jonesday.com' <brosenblum@jonesday.com>; 'cdipompeo@jonesday.com' <cdipompeo@jonesday.com>; Jennifer S. Feeney <jfeeney@otterbourg.com>; Ilan D.

Scharf <ischarf@pszjlaw.com>; Karen B. Dine <kdine@pszjlaw.com>
**Subject:** In re The Roman Catholic Diocese of Rockville Centre, USBC Case No. 20-12345

Attached please find correspondence from James I. Stang in the above-referenced case.

Thank you.


**Sophia Lee**
Legal Secretary to James I. Stang
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 310.203.4276
Tel: 310.277.6910 | Fax: 310.201.0760
slee@pszjlaw.com



Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

# EXHIBIT E



LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

James I. Stang

November 23, 2020

310.772.2354
jstang@pszjlaw.com

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

**TELEPHONE: 310/277 6910**

FACSIMILE: 310/201 0760

**Via E-mail (cball@jonesday.com)**

Corinne Ball, Esq.
Jones Day
250 Vesey Street
New York, NY 10281

Re:    In re: The Roman Catholic Diocese of Rockville
Centre, New York Case No. 20-12345

Dear Corinne:

I am writing to follow-up on the November 18, 2020 hearing in the above-referenced matter regarding the applications (the "Applications") to retain professionals for the Independent Advisory Committee ("IAC") and our letter dated November 19, 2019 to Mr. Feldman regarding the same. On November 20, 2020, Mr. Feldman responded to our request for a meet and confer with him and you by deferring the matter to the Debtor.

On behalf of the Committee, we therefore request a meet and confer with you to discuss the IAC Applications and the role of the IAC early this week.

In order to have a productive meet and confer, please provide a copy of the report that Mr. Feldman referenced at the November 18 hearing with respect to the causes of action investigated by the IAC by close of business tomorrow.  Please also provide copies of all confidentiality agreements and/or non-disclosure agreements between the Debtor and the IAC.

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE: 415/263 7000**

FACSIMILE: 415/263 7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE: 302/652 4100**

FACSIMILE: 302/652 4400

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE: 212/561 7700**

FACSIMILE: 212/561 7777

WEB: www.pszjlaw.com

DOCS_NY:41607.1 18491/002



Corinne Ball, Esq.
November 23, 2020
Page 2

I look forward to hearing from you.

Very truly yours,

*James I. Stang*

James I. Stang

JIS

cc:    Todd Geremia (via email)
       Christopher J. DiPompeo (via email)
       Benjamin Rosenblum (via email)
       Andrew M. Butler (via email)
       Peter Feldman (via email)
       Jennifer S. Feeney (via email)
       Ilan D. Scharf (via email)
       Karen B. Dine (via email)