**Objection Deadline: October 17, 2022 at 4:00 p.m. (Eastern Time)**
**Hearing Date: November 30, 2022 at 10:00 a.m. (Eastern Time)**

JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street
New York, New York  10281
Telephone:      (212) 326-3939
Facsimile:      (212) 755-7306

*Counsel for the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | : | Case No. 20-12345 (MG) |
|  | : |  |
| Debtor. | : |  |

**NOTICE OF HEARING ON THE DEBTOR'S MOTION FOR ENTRY OF**
**AN ORDER AUTHORIZING THE DEBTOR TO "OPT IN" TO TREATMENT AS**
**A PARTICIPATING CHARTERED ORGANIZATION UNDER THE BOY SCOUTS OF**
**AMERICA CHAPTER 11 PLAN AND GRANTING RELATED RELIEF PURSUANT TO**
**§§ 105(A) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019**

 **PLEASE TAKE NOTICE** that on **October 7, 2022**, the above-captioned debtor and debtor-in-possession (the "Debtor") filed the *Debtor's Motion for Entry of an Order Authorizing the Debtor to "Opt In" to Treatment as a Participating Chartered Organization under the Boy Scouts of America Chapter 11 Plan and Granting Related Relief Pursuant to §§ 105(A) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019* (the "Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

 **PLEASE TAKE FURTHER NOTICE** that any objections to the Motion must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York, be filed by **October 17, 2022 at 4:00 p.m. (Prevailing Eastern Time)**, and shall be served on (a) the Debtor, c/o The Roman Catholic Diocese of Rockville Centre,

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11570.

New York, P.O. Box 9023, Rockville Centre, NY 11571-9023; (b) counsel to the Debtor, Jones Day, 250 Vesey Street, New York, New York 10281-1047 Attn: Corinne Ball, Esq., Todd Geremia, Esq., Benjamin Rosenblum, Esq., and Andrew Butler, Esq.; and (c) William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Greg M. Zipes, Esq. and Shara Cornell, Esq.

PLEASE TAKE FURTHER NOTICE that a hearing to consider such Motion and any objections related thereto (the "Hearing") will be held on **November 30, 2022 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 100004.

PLEASE TAKE FURTHER NOTICE that the hearing shall be held via Zoom for Government. Parties wishing to appear at the hearing via Zoom for Government, whether making a "live" or "listen only" appearance before the Court, must make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl on or before November 29, 2022, at 4:00 p.m. (Eastern Time). After the deadline for parties to make electronic appearances has passed, parties who have made their electronic appearance through the Court's website will receive an invitation from the Court with a Zoom link that will allow them to attend the hearing. Requests to receive a Zoom link should not be emailed to the Court, and the Court will not respond to late requests that are submitted on the day of the hearing. Further information on the use of Zoom for Government can be found at the Court's website at https://www.nysb.uscourts.gov/zoom-video-hearing-guide.

PLEASE TAKE FURTHER NOTICE that copies of each pleading can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov, or (ii) from the Debtor's notice and claims agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/drvc or by calling (888) 490-0633. Note that a PACER password is needed to access documents on the Court's website.

-3-

Dated: October 7, 2022
         New York, New York

Respectfully submitted,

*/s/ Corinne Ball*
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  cball@jonesday.com
          trgeremia@jonesday.com
          brosenblum@jonesday.com
          abutler@jonesday.com

*Counsel for the Debtor
and Debtor in Possession*

Objection Deadline: October 17, 2022 at 4:00 p.m. (Eastern Time)
Hearing Date: November 30, 2022 at 10:00 a.m. (Eastern Time)

JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street
New York, New York  10281
Telephone:     (212) 326-3939
Facsimile:     (212) 755-7306

*Counsel for Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF | : | Case No. 20-12345 (MG) |
| ROCKVILLE CENTRE, NEW YORK,[1] | : | |
| | : | |
| Debtor. | : | |

**DEBTOR'S MOTION FOR**
**ENTRY OF AN ORDER AUTHORIZING**
**THE DEBTOR TO "OPT IN" TO TREATMENT AS A PARTICIPATING**
**CHARTERED ORGANIZATION UNDER THE BOY SCOUTS OF AMERICA**
**CHAPTER 11 PLAN AND GRANTING RELATED RELIEF PURSUANT TO**
**§§ 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019**

The Roman Catholic Diocese of Rockville Centre, New York, as debtor and debtor-in-possession (the "Debtor" or the "Diocese"), hereby moves the Court for the entry of an order authorizing the Debtor to "opt in" to treatment as a "Participating Chartered Organization" under the Boy Scouts of America chapter 11 plan and granting related relief pursuant to §§ 105(a) and

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

363 of the Bankruptcy Code and Bankruptcy Rule 9019 (the "Motion"). In support of the Motion, the Debtor represents as follows:

**Background**

1.      On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate and pursue its religious, non-profit mission and ministry, and manage its properties and affairs as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

2.      The Debtor is the seat of the Roman Catholic Church on Long Island. The State of New York established the Debtor as a religious corporation in 1958. *See* 1958 N.Y. SESS. LAWS Ch. 70 (1958), § 1. The Debtor is one of eight Catholic dioceses in New York and is the eighth-largest diocese in the United States when measured by number of baptized Catholics. The Debtor's total Catholic population is 1.4 million, which constitutes roughly half of Long Island's total population of 3.0 million. Pursuit of the Debtor's mission depends upon the continuing financial support provided by the faithful in anticipation of, and in mutual support of, the Debtor's religious and charitable mission.

3.      To carry out its Catholic mission, the Debtor works closely with its 135 parishes. Parishes play a central role in the lives of Catholics by administering key aspects of the Catholic Faith, including: baptism, education, communion, Mass, confirmation, marriage, and bereavement, including last rites, funeral services and grief support. None of the parishes are debtors herein. In addition, the Debtor supports separate charitable organizations to further its pursuit of the Catholic mission to serve the poor, the hungry, those in need, and those that cannot help themselves. None of those entities are debtors herein. The Debtor is also continuing its outreach to comfort, educate, and enlighten the faithful, especially in these times of quarantine

and isolation due to COVID-19 protocols and precautions.

4.      Following the enactment in 2019 of the Child Victims Act (the "CVA"), which revived what had been time-barred claims, approximately 200 prepetition lawsuits have been brought by abuse claimants against the Debtor (the "State Court Actions").  In its effort to fairly and equitably address this tragic legacy, the Debtor has undertaken a substantial effort to identify and marshal over 60 years of insurance policies, including both primary and excess coverage, with the goal of securing a valuable resource of the Debtors, its parishes, and its affiliates, so that it can be used for the care and compensation of abuse survivors.  The Debtor has made such insurance policies and related information, together with historical financial information for itself and its charitable, educational, and service affiliates, available to counsel for the abuse claimants and the Debtor's insurers.

5.      Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the *Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date.

### Jurisdiction and Venue

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Boy Scouts of America Bankruptcy Case

**A.   The BSA Petition Date and the Debtor's Connection to the BSA Case.**

7.       On February 18, 2020 (the "BSA Petition Date"), the Boy Scouts of America and Delaware BSA, LLC (collectively, "BSA") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, commencing jointly administered cases bearing case numbers 20-10343 and 20-10342, for the primary purpose of addressing sexual abuse claims asserted against BSA.

8.       In addition to alleging liability for sexual abuse against BSA, sexual abuse claims in the BSA case implicate certain partner organizations presently or formerly authorized by BSA to sponsor or otherwise support scouting units.  Many parishes located within the geographic region of the Diocese are chartered organizations.  The Diocese does not consider itself a chartered organization as that term is used in the ordinary sense.  However, the Diocese is considered a "Chartered Organization" for purposes of the BSA Plan.  *See* BSA Plan, Article V.S.8.  And, despite the fact that the Diocese does not believe it is a chartered organization in the ordinary sense, certain claimants have asserted liability against the Diocese for scouting-related abuse.

9.       The Diocese has been named as a co-defendant in certain lawsuits with the BSA and certain sexual abuse proofs of claim filed against the Diocese in this case indicate that the claimant has also submitted a claim against the BSA.   In addition, certain sexual abuse claims asserted in the Diocese's bankruptcy case implicate BSA either because (i) the alleged abuser was a scoutmaster, or (ii) the alleged abuse occurred in connection with scouting events, among other reasons.  Based on the Diocese's review, which is ongoing, approximately 30 sexual abuse proofs of claim filed in this chapter 11 case may relate to BSA or BSA-related activities in some fashion.

**B. The Third Modified Fifth Amended Plan.**

10.     On February 15, 2022, BSA filed the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (as may be amended, modified, or supplemented, and together with any exhibits and schedules thereto, the "BSA Plan").[2]

11.     The BSA Plan is the product of extensive negotiations among various parties, including BSA, the Coalition of Abused Scouts for Justice, the Official Committee of Tort Claimants, and the Future Claimants' Representative, and provides for the global resolution of Abuse Claims against BSA, Related Non-Debtor Entities, Local Councils, Contributing Chartered Organizations, Settling Insurance Companies, and their respective Representatives (as each are defined in the BSA Plan).[3]  To that end, the BSA Plan proposes to establish a trust for sexual abuse survivors to be funded with approximately $2.69 billion.

12.     The BSA Plan runs for over 450 pages (including exhibits) and is remarkably complicated.  To aid Chartered Organizations in their review of the BSA Plan, BSA published a supplemental disclosure that summarizes Chartered Organizations options under the BSA Plan and the opt-out election procedures for such Chartered Organizations.[4]  As part of its evaluation of the BSA Plan, the Diocese and its advisors reviewed the BSA Plan, the Disclosure Statement,[5] and the Supplemental Disclosure, in addition to other pertinent filings in the BSA case.  The Diocese's advisors have also discussed the BSA Plan with counsel to BSA.

---

[2] BSA Plan, Dkt. No. 8813.

[3] BSA Plan at 8.

[4] *Supplemental Disclosure Regarding Plan Modifications and Summary of Chartered Organizations' Options Under the Debtors' Modified Chapter 11 Plan of Reorganization, Opt-Out Election Procedures for Participating Chartered Organizations, and Supplemental Voting Deadline of March 7, 2022 at 4:00 p.m. (Eastern Time) for Holders of Class 9 Indirect Abuse Claims*, Dkt. No. 8904 (the "Supplemental Disclosure").

[5] *Amended Disclosure Statement for the Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, Dkt. No. 6445.

13.     The Bankruptcy Court issued an extensive opinion on confirmation of the BSA

Plan on July 29, 2022.  Following BSA's modifications to the BSA Plan and proposed

confirmation order made consistent with the rulings in the Bankruptcy Court's opinion, the BSA

Plan was confirmed by the Bankruptcy Court on September 8, 2022.[6]

### C.  Treatment of Chartered Organizations Under the Plan.

14.     Under the BSA Plan, a Chartered Organization may be classified and treated as a

"Contributing," "Participating," or "Opt-Out" Chartered Organization.   By this Motion, the

Diocese seeks to opt-in to be treated as a "Participating Chartered Organization", but we discuss

all three options below.

15.     Contributing Chartered Organizations include, *inter alia*, any Chartered

Organizations that choose to negotiate to make a substantial monetary contribution to the

Settlement Trust.[7]  According to BSA's filed disclosures in the case, Contributing Chartered

Organizations receive the following protections from Abuse Claims:

a.     **Protection from Direct Abuse Claims:** All Abuse Claims against Contributing
Chartered Organizations will be channeled to the Settlement Trust, and the
Contributing Chartered Organizations will be released from all Abuse Claims.
Claims that are unrelated to Scouting will not be channeled or released.

b.     **Insurance:** In exchange for the protections described above, Contributing
Chartered Organizations will voluntarily release their rights to any insurance
policies issued to BSA or the Local Councils, and the Plan may assign or otherwise
provide for the Settlement Trust to access such insurance rights. Contributing
Chartered Organizations also will release their rights to any insurance policies
issued by Settling Insurance Companies with respect to coverage for Abuse Claims.
Contributing Chartered Organizations' rights under insurance policies issued to
them directly are preserved for claims unrelated to Scouting.

c.     **Indirect Abuse Claims:** In exchange for the protections of the channeling

---

[6] *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, Dkt. No. 10316. Certain insurers filed notices of appeal following entry of the confirmation order.

[7] Supplemental Disclosure at 5.

injunction, all Indirect Abuse Claims are voluntarily waived.[8]

16.     Participating Chartered Organizations, on the other hand, include Chartered Organizations that are not Contributing Chartered Organizations and that: (a) do not object to confirmation of the BSA Plan, (b) do not inform BSA's counsel in writing that they do not wish to be Participating Chartered Organizations, and (c) are not debtors in bankruptcy. A Chartered Organization that is a debtor in bankruptcy as of the BSA Confirmation Date will be a Participating Chartered Organization only if it advises BSA's counsel in writing that it wishes to make the election to be a Participating Chartered Organization.[9]

17.     According to BSA's filed disclosures in the case, Participating Chartered Organizations receive the following treatment:

a.     **Protection from Direct Abuse Claims:** All 1976-forward Abuse Claims against Participating Chartered Organizations, as well as all pre-1976 Abuse Claims against Participating Chartered Organizations for which there is insurance issued by a Settling Insurance Company, will be channeled to the Settlement Trust, and abuse survivors will release the Participating Chartered Organizations for such claims. Abuse survivors will not be able to assert Scouting-related Abuse Claims that are channeled to the Settlement Trust directly against Participating Chartered Organizations. This does not impact claims against Participating Chartered Organizations that are unrelated to Scouting. The Plan also provides that all Participating Chartered Organizations will receive the protection of a twelve-month injunction from prosecution of Abuse Claims beginning on the Effective Date (subject to further extension) to afford Participating Chartered Organizations an opportunity to negotiate an appropriate contribution with the Settlement Trust to become a Contributing Chartered Organization.

b.     **BSA and Local Council Insurance:** In exchange for all 1976-forward Abuse Claims against the Participating Chartered Organizations being channeled to the Settlement Trust and abuse survivors releasing the Participating Chartered Organizations for such claims, the Participating Chartered Organizations will voluntarily release their rights to any insurance policies issued to BSA or Local Councils by the Settling Insurance Companies, and the Plan may assign or otherwise provide for the Settlement Trust to sell those policies back to the Settling Insurance Companies. Similarly, because all Abuse Claims (pre- and post-1976) covered by policies issued by a Settling Insurance Company will be channeled to

---

[8] *Id*. at pp. 5-6.

[9] *Id*. at pp. 4-7.

the Settlement Trust, Participating Chartered Organizations will release any rights to coverage under any insurance policies issued by a Settling Insurance Company for such Abuse Claims. Otherwise, Participating Chartered Organizations will retain whatever rights they previously had (if any) in all pre-1976 BSA and Local Council insurance policies. Participating Chartered Organizations also must assign, among other things, any causes of action against non-settling insurance companies related to Abuse Claims that first occurred on or after January 1, 1976.

c.   **Chartered Organization Insurance:** Abuse Claims against Participating Chartered Organizations will be released and channeled to the Settlement Trust if a Settling Insurance Company issued a liability policy (other than an automobile policy or director's and officer's policy) that does not specifically exclude abuse or molestation to a Participating Chartered Organization, and a claimant alleges abuse during the period of that policy. In exchange for the benefits of this release and Channeling Injunction, Participating Chartered Organizations will voluntarily release the Settling Insurance Companies from these Abuse Claims. Participating Chartered Organizations retain all rights for abuse claims unrelated to Scouting under policies issued by Settling Insurance Companies. Participating Chartered Organizations also retain all rights for any claims (both related and unrelated to Scouting) under independent insurance policies issued by non-settling insurance companies.

d.   **Indirect Abuse Claims:** In exchange for the protections of the channeling injunction, all Indirect Abuse Claims are voluntarily waived.[10]

18.   Finally, according to BSA's filed disclosures in the case, Opt-Out Chartered Organizations are those that: (a) objected to confirmation of the BSA Plan, or (b) informed counsel for the BSA in writing that they do not wish to be Participating Chartered Organizations. However, as noted above, a Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date will be treated as an Opt-Out Chartered Organization by default and will be treated as a Participating Chartered Organization only if it advises BSA's counsel in writing that it wishes to make the election to be a Participating Chartered Organization.[11]

19.   Under the BSA Plan, Opt-Out Chartered Organizations receive the following more limited protections:

---

[10] *Id*. at 4-5. Participating Chartered Organizations also assign their indemnification claims against perpetrators to BSA.

[11] *Id*. at 6-7.

- 11 -

a.   **Protection from Direct Abuse Claims:** Opt-Out Chartered Organizations will remain liable for all Abuse Claims regardless of whether such Abuse Claims arose before or after January 1, 1976; provided, however, Abuse Claims against Opt-Out Chartered Organizations will be channeled to the Settlement Trust if a Settling Insurance Company issued a liability policy (other than an automobile policy or director's and officer's policy) that does not specifically exclude abuse or molestation (i) to BSA or a Local Council that includes the Opt-Out Chartered Organization, or (ii) directly to the Opt-Out Chartered Organization for the period that a claimant alleges to have been abused.

b.   **Insurance:** Opt-Out Chartered Organizations will retain rights in BSA and Local Council insurance policies except for any rights in insurance policies issued by any Settling Insurance Company, which policies are being sold back to the Settling Insurance Companies. Opt-Out Chartered Organizations (and Settling Insurance Companies) are not releasing any rights under any insurance policies issued directly to Opt-Out Chartered Organizations. However, all parties may enforce and rely upon the release and channeling of Abuse Claims against the Chartered Organizations otherwise provided in the Plan.

c.   **Indirect Abuse Claims:** All Indirect Abuse Claims, including against BSA and the Local Councils, will be preserved and channeled to the Settlement Trust.

d.   **Expedited Distribution:** For the avoidance of doubt, any abuse survivor that chooses to receive an Expedited Distribution (a one-time payment of $3,500 from the Settlement Trust) continues to automatically release all Chartered Organizations with respect to that Abuse Claim under the Plan, regardless of which option a Chartered Organization chooses under the Plan. And Chartered Organizations will also still receive the benefit of this release even if they elect to "opt out" of being a "Participating Chartered Organization."[12]

20.    To briefly summarize, an Opt-Out Chartered Organization will receive the benefit of a channeling injunction only for "Abuse Claims" (i.e., scouting-related abuse claims) for which coverage exists under a liability policy issued by a Settling Insurance Company to BSA, a Local Council, or the Opt-Out Organizations, while Participating Chartered Organizations will receive the benefit of a release and channeling injunction for pre-1976 Abuse Claims against Participating Chartered Organizations for which there is insurance issued by a Settling Insurance Company, as well as for all 1976-forward Abuse Claims.

---

[12] *Id.*

### D. The Roman Catholic Ad Hoc Committee's Settlement

21.     The Roman Catholic Ad Hoc Committee (the "RCAHC"), an ad hoc committee of Roman Catholic Entities, filed an objection to confirmation of the BSA Plan on February 25, 2022, challenging, among other things, the BSA Plan's treatment of Chartered Organizations.[13] On March 17, 2022, the RCAHC and its individual members reached a settlement with BSA, the Ad Hoc Committee of Local Councils, the Coalition, the Tort Claimants' Committee, the FCR, and the Settling Insurance Companies (the "RCAHC Settlement").[14]

22.     The RCAHC Settlement, among other things, expands the group of entities that will receive the protections of Participating Chartered Organizations (as such treatment is no longer reserved only for those entities that chartered troops), imposes limitations on discovery of Roman Catholic Entities sought by abuse survivors, calls for the creation of a three-member "Chartered Organization Advisory Group," and requires the Settlement Trust to maintain a data room of insurance policies for five years.[15]

23.     In connection with the RCAHC Settlement, the RCAHC has agreed to work in good faith with BSA to encourage Roman Catholic Entities to become Participating Chartered Organizations under the BSA Plan.[16]

24.     The parishes within the Diocese's jurisdiction, as non-debtors, are treated as Participating Chartered Organizations by default.  In light of this chapter 11 case, however, the Diocese must elect to "opt in" to treatment as a Participating Chartered Organization.  The Diocese advised BSA's counsel that it wished to make the election to be a Participating

---

[13] Dkt. No. 9028.

[14] *See Twelfth Mediator's Statement*, Dkt. No. 9386.

[15] *Id*. at 5-10.

[16] *Id*. at 7, ¶ 4.

Chartered Organization, but solely to the extent such election was authorized by this Court.

## Relief Requested

25. By this Motion, the Diocese requests, pursuant to §§ 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, entry of an Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Diocese to "opt in" to treatment as a Participating Chartered Organization under the BSA Plan.

## Basis for Relief Requested

26. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Rule 9019, in turn, provides that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Section 105(a) of the Bankruptcy Code further authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27. In determining whether to authorize the use of property outside of the ordinary course of business, bankruptcy courts require a sound business justification of the debtor-in-possession. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him [or her] at the hearing a good business reason to grant such an application."); *In re Nine West Holdings, Inc.*, 588 B.R. 678, 686 (Bankr. S.D.N.Y. 2018) ("a debtor has broad discretion to 'use, sell, or lease, other than in the ordinary course of business, property of the estate,' so long as such use is supported by good business reason.")

28. Similarly, in exercising its discretion to approve a settlement or compromise in accordance with Bankruptcy Rule 9019, a bankruptcy court should "canvas the issues, and the

court's approval of the proposed settlement will be sustained on appeal if the settlement is found not to fall 'below the lowest point in the range of reasonableness.'" *In re Ionosphere Clubs*, 156 B.R. at 426 (S.D.N.Y. 1993), quoting *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983). However, "the court may not simply rubber stamp the recommendation of a trustee or debtor in possession but, instead, must make an independent, 'full and fair assessment of the wisdom of the proposed compromise.'" *In re Ramsen Partners, Ltd.*, 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003) (internal citations omitted).

29. In making this determination, the Court must consider the following factors:

(1)  The probability of success in the litigation,

(2)  The difficulties, if any, to be encountered in the matter of collection,

(3)  The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it, and

(4)  The paramount interest of creditors and a proper deference to their reasonable views.

*Id*. (internal citations omitted). The Court should also consider other potentially relevant factors including the competency and experience of the trustee and trustee's counsel, the nature and breadth of releases to be issued as a result of the settlement, the extent to which the settlement is not the product of fraud or collusion, and whether the proposed settlement is supported by an adequate record. *Id*.

30. The Diocese wishes to "opt in" to treatment as a Participating Chartered Organization under the BSA Plan. To the extent applicable, opting in to treatment as a Participating Chartered Organization would allow the Diocese to receive the benefit of a release and channeling injunction for pre-1976 Abuse Claims for which there is insurance issued by a Settling Insurance Company, as well as for all 1976-forward Abuse Claims.

31. In exchange for these protections, the Diocese would be required to release all

rights to insurance policies issued to BSA or Local Councils by the Settling Insurance Companies, as well as its rights to any causes of action against non-settling insurance companies related to BSA Abuse Claims that first occurred on or after January 1, 1976.  The Diocese would also waive certain indirect claims relating to scouting-related abuse and indemnification claims against perpetrators of scouting related abuse.

32.     The Diocese believes that a compromise on the terms set forth above should be approved by this Court because it is fair and equitable, in the best interest of the estate, and a product of the Diocese's reasonable business judgment.  Importantly, the proposed compromise affords the Diocese protection from certain Abuse Claims (that is, scouting-related abuse claims) that it otherwise would not receive.  The Diocese believes that the protections of the BSA-related insurance rights being surrendered are completely offset by the releases received and that the scouting-related indemnification claims being waived or exchanged are of minimal value.

33.     The Diocese submits that the proposed compromise was the result of arm's-length negotiations.   The compromise embodied in the BSA Plan is recommended by the RCAHC, an ad hoc committee that was formed to protect the interests of Roman Catholic entities.  The members of the ad hoc committee were represented by sophisticated counsel.

34.     The Diocese also submits that it is notable that parties have overwhelmingly chosen to be Participating Chartered Organizations under the BSA Plan.  As Judge Silverstein observed, "[a]ll but a couple of hundred of the more than 100,000 Chartered Organizations listed on the Omni website are Participated Chartered Organizations."[17]  While the Diocese has conducted its own independent analysis of the pros and cons of becoming a Participating Chartered Organization, the Diocese submits that the overwhelming participation of others in the

---

[17] July 29, 2022 Opinion, Dkt No. 10136 at p.47.

BSA Plan is suggestive that such settlement is above the lowest point in the range of reasonable required by Bankruptcy Rule 9019.

35.     Such participation is not limited to financially-healthy Chartered Organizations; rather, courts in other cases have authorized debtors to "opt in" to "Participation Chartered Organization" status.  *See In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846, Dkt. No. 1451 (Bankr. E.D. La., April 14, 2022) (approving the Archdiocese of New Orleans' election).

36.     For these reasons, the Diocese seeks authorization from this Court to "opt in" to treatment as a Participating Chartered Organization under the BSA Plan.

### Notice

37.     The Debtor will provide notice of this Motion in accordance with the procedures set forth in the *Order Implementing Certain Notice and Case Management Procedures* [Docket No. 136].  Out of an abundance of caution, the Debtor will also provide notice of this Motion to each sexual abuse claimant that, based on information in the proofs of claim, the Debtor has reason to believe may allege liability in connection with the BSA organization.  Due to the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion need be provided.

### No Prior Request

38.     No prior request for the relief sought herein has been made to this Court or any other court.

[*Remainder of Page Intentionally Blank*]

WHEREFORE, the Diocese respectfully requests entry of an Order, substantially in the form attached as **Exhibit A**, authorizing the Diocese to "opt in" to treatment as a Participating Chartered Organization under the BSA Plan and such other and further relief as the Court may deem proper.

Dated: October 7, 2022                    Respectfully submitted,


                                          /s/ Corinne Ball
                                          Corinne Ball
                                          Todd Geremia
                                          Benjamin Rosenblum
                                          Andrew Butler
                                          JONES DAY
                                          250 Vesey Street
                                          New York, NY 10281-1047
                                          Telephone:  (212) 326-3939
                                          Facsimile:  (212) 755-7306
                                          Email:   cball@jonesday.com
                                                   trgeremia@jonesday.com
                                                   brosenblum@jonesday.com
                                                   abutler@jonesday.com

                                          *Counsel for the Debtor*
                                          *and Debtor in Possession*

# EXHIBIT A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | : | Case No. 20-12345 (MG) |
|  | : |  |
| Debtor. | : |  |

**ORDER AUTHORIZING THE DEBTOR TO "OPT IN" TO**
**TREATMENT AS A PARTICIPATING CHARTERED ORGANIZATION**
**UNDER THE BOY SCOUTS OF AMERICA CHAPTER 11 PLAN AND**
**GRANTING RELATED RELIEF PURSUANT TO**
**§§ 105(A) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019.**

Upon the *Debtor's Motion to "Opt in" to Treatment as a Participating Chartered Organization under the Boy Scouts of America Chapter 11 Plan and Granting Related Relief Pursuant to §§ 105(A) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019* (the "Motion"),[2] pursuant to Federal Rule of Bankruptcy Procedure 9006(b); the Court having reviewed the Motion and having considered the statements of counsel and the evidence adduced with respect to the Motion at any hearing before the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. §157(b)(2), (d) notice of the Motion and the Hearing was sufficient under the circumstances, and (e) cause exists under Bankruptcy Rule 9019 to permit the Debtor to "opt in" to treatment as a Participating Chartered Organization under the Boy Scouts Chapter 11 Plan;

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.    The Debtor is authorized to elect to become a Participating Chartered Organization under the BSA Plan and is entitled to receive treatment as such insofar as the Debtor is able to successfully "opt in" as provided by the BSA Plan.

2.    Notice of the Motion as provided therein is deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York are satisfied by such notice.

3.    This Order shall be immediately effective and enforceable upon its entry.

4.    This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation or enforcement of this Order.

Dated: _____, 2022                    _____
       New York, NY                         UNITED STATES BANKRUPTCY COURT