```
                                                    Page 1
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   Case No. 20-12345-mg

 4   - - - - - - - - - - - - - - - - - - - - - - - - - x

 5   In the Matter of:

 6

 7   THE ROMAN CATHOLIC DIOCESE OF

 8   ROCKVILLE CENTRE, NEW YORK,

 9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                   United States Bankruptcy Court

14                   One Bowling Green

15                   New York, NY  10004

16

17                   October 27, 2022

18                   2:04 PM

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: KS
```

Page 2

1   HEARING re Hearing Using Zoom for Government RE: Application

2   to Employ Jefferies LLC as Investment Banker. (Doc # 1357,

3   1370, 1371, 1375)

4

5   HEARING re Hearing Using Zoom for Government RE: Debtors

6   Motion for Entry of an Order Authorizing the Debtor to File

7   Portions of the Bidding Procedures and Sale Motion Under

8   Seal. (Doc # 1356, 1355, 1370, 1375)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    JONES DAY LLP

4         Attorneys for Debtor in Possession

5         250 Vesey Street

6         New York, NY, 10281

7

8    BY:   BENJAMIN ROSENBLUM (TELEPHONICALLY)

9          NICHOLAS MORIN (TELEPHONICALLY)

10

11   PACHULSKI STANG ZIEHL JONES LLP

12        Attorneys for Creditor Committee

13        10100 Santa Monica Blvd., Suite 1300

14        Los Angeles, CA 90067

15

16   BY:   KAREN B. DINE (TELEPHONICALLY)

17         IAN NASATIR (TELEPHONICALLY)

18

19   PACHULSKI STANG ZIEHL JONES LLP

20    Attorneys for Creditor Committee

21   10100 Santa Monica Blvd., Suite 1300

22   Los Angeles, CA 90067

23

24   BY:   BRITTANY MICHAEL (TELEPHONICALLY)

25

Page 4

1    TOGUT, SEGAL & SEGAL LLP

2     Attorney for Catholic Cemeteries

3     One Penn Plaza, Suite 3335

4     New York, NY 10119

5

6    BY:   JARED C BORRIELLO (TELEPHONICALLY)

7

8

9    ALSO PRESENT TELEPHONICALLY:

10

11   JAMES MOFFITT

12   JOHN REFIOR

13   WILLIAM HAO

14   ANDREW FRISOLI

15   ROBERT WHITE

16   RICHARD MORGNER

17   ARIELLE FELDSHON

18

19

20

21

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2              CLERK:  Good afternoon.  Starting the recording

3    for October 27, 2022 at 2 p.m., calling the Roman Catholic

4    Diocese of Rockville Centre, New York, Case Number 20-12345.

5    If we could start taking appearances?  Who's going to be the

6    main counsel from Jones Day this afternoon?

7              MR. ROSENBLUM:  Hi, good morning.  Benjamin

8    Rosenblum from Jones Day on behalf of the Debtor.  I will

9    let -- at least be starting us off.

10             CLERK:  Okay, thank you.  And then, Corinne, are

11   you speaking as well?

12             MR. ROSENBLUM:  I don't anticipate Corinne is

13   going to be speaking.  I think it'll be me and Nicholas

14   Morin from Jones Day.

15             CLERK:  Thank you.  And Andrew Butler, is he also

16   going to be joining with the listen only line?

17             MR. ROSENBLUM:  I don't believe he'll attend

18   today.

19             CLERK:  Oh okay, thank you.  All right, Karen, if

20   you could unmute and give your appearance for the record,

21   please?

22             MS. DINE:  Karen Dine, Pachulski Stang Ziehl and

23   Jones on behalf of the Committee.

24             CLERK:  Okay, thank you.  And I'm sorry, are you

25   speaking first on behalf of the Committee or is someone

Page 6

1   else?

2           MS. DINE:  No, I will speak first on behalf of the

3   Committee.

4           CLERK:  Okay, thank you.  All right, Brittany?

5           MS. MICHAEL:  Yes, Brittany Michael from Pachulski

6   Stang Ziehl and Jones on behalf of the Committee.  And with

7   me in this conference room are three Committee members as

8   well as Ian Nasatir from Pachulski on behalf of the

9   Committee.

10          CLERK:  Okay, is anyone going to be speaking this

11  afternoon?

12          MS. MICHAEL:  No.

13          CLERK:  Okay.  Thank you.

14          MR. MORIN:  And to the extent you didn't catch me,

15  Nicholas Morin from Jones Day, also on behalf of the Debtor.

16  I'll be speaking after Mr. Rosenblum finishes up.

17          CLERK:  Okay.  Thank you, Nicholas.

18          MR. MORIN:  No problem.

19          CLERK:  All right.  James Moffitt?

20          MR. MOFFITT:  James Moffitt from Clyde and Co. for

21  certain underwriters of Lloyd's London and certain London

22  market insurers.  I don't anticipate speaking today.

23          CLERK:  Okay, thank you.  All right, is there

24  anyone else that has joined the line that will be speaking

25  this afternoon and has not given an appearance yet?  All

Page 7

1  right.  Hello, Kathy?  Are you going to be speaking this

2  afternoon?

3          KATHY:  Probably not.

4          CLERK:  Okay, thank you.  Good afternoon, Jared,

5  will you be speaking this afternoon?  Jared Curtis?

6          MR. CURTIS:  Good afternoon.  No, I will not be

7  speaking this afternoon.

8          CLERK:  Okay, sorry.  Jared Borriello, is that

9  correct?

10          MR. BORRIELLO:  That's correct.

11          CLERK:  Thank you.  All right, the party that

12  joined with the 908-601-1130 number, please identify

13  yourself, please?  Again, the 908-601-1130 number, if you

14  could unmute and identify yourself, please?

15          MR. REFIOR:  John Refior.

16          CLERK:  Okay, John, are you speaking this

17  afternoon?

18          MR. REFIOR:  No.

19          CLERK:  Okay, thank you very much.

20          MR. REFIOR:  Thank you.

21          CLERK:  All right, are there any -- any of the

22  parties that have joined that are speaking on the record and

23  have not given their appearance yet?  All right, just

24  waiting for a participant to join.  Hello, William?

25  William, are you going to be speaking this afternoon?

Page 8

1    Again, William, are you going to be speaking this afternoon?

2            MR. HAO:  No, I'm not.

3            CLERK:  Okay.  And Andrew Frisoli, is he joining

4    as well?

5            MR. HAO:  Yes, I believe so.

6            CLERK:  Okay, thank you.  Is he speaking?

7            MR. HAO:  I don't believe we were -- we're not

8    speaking.

9            CLERK:  Oh him, I mean --?

10           MR. HAO:  No, I don't believe so.

11           CLERK:  Okay, all right.  Thank you.  All right,

12   Robert White, are you speaking this afternoon?  All right, I

13   think he dropped -- oh actually, Robert, are you speaking

14   this afternoon?  You need to unmute.

15           MR. WHITE:  Sorry.  I'm available, if the Judge

16   requests anything from Jeffries.  I think Richard Morgner

17   from our team will also be on.

18           CLERK:  Okay.  Who else?  Thank you.  Who's

19   joining now?  Afternoon, Richard, are you speaking on the

20   record, Richard Morgner?

21           MR. MORGNER:  I -- if asked.

22           CLERK:  All right.  And you're appearing on behalf

23   of the Diocese of Rockville?

24           MR. MORGNER:  I am.

25           CLERK:  Thank you.  All right, the party that

Page 9

1    joined with the 952-239-2663 number, please identify

2    yourself.  Again, the 952-239-2663 number.  Okay, if you

3    don't identify yourself, we'll have to put you back in the

4    waiting room.  You can unmute by hitting star six.

5              MS. FELDSHON:  Hi, my name is Arielle Feldshon and

6    I'm here on behalf of the Zalkin Law Firm.

7              CLERK:  Okay, all right, do you anticipate

8    speaking this afternoon?

9              MS. FELDSHON:  No, I do not.

10             CLERK:  You said it's Arielle Zalkin?

11             MS. FELDSHON:  Arielle Feldshon.  I can spell that

12   if you'd like.

13             CLERK:  Please.

14             MS. FELDSHON:  F as in Frank-E-L-D as in dog-S as

15   in Sam-H-O-N as in Nancy.

16             CLERK:  And Arielle is the first name, A-R-I-E-L?

17             MS. FELDSHON:  It's close, A-R-I-E-L-L-E.

18             CLERK:  Okay, thank you.  All right, Judge, we

19   have most of the parties on.  I don't know if you want to

20   give some of the participants a few more minutes, so if you

21   want to start?

22             THE COURT:  No, we can go ahead and start.  Good

23   afternoon, everybody, this is Judge Glenn.  We're here in

24   the Roman Catholic Diocese of Rockville Centre, 20-12345.

25   Two matters on the agenda today, for the motion to employ

Page 10

1    Jeffries at ECF Document Number 1357, let's deal with that

2    first.  Who's going to speak first on that motion?

3           MR. MORIN:  I will, Your Honor.  It's Nicholas

4    Morin from Jones Day on behalf of the Debtor and Debtor in

5    possession.

6           THE COURT:  Okay, go ahead.

7           MR. MORIN:  So Your Honor, I can do this however

8    you'd like.  What I'd thought about doing was because both

9    of the motions today, which are both uncontested relate to a

10   sale process motion, which is not on for today that's been

11   kicked to the 11/16, thought I might give Your Honor a brief

12   overview of the sale process and the assets to be sold, if

13   that would be helpful.

14          THE COURT:  That would.  And indeed, when we get

15   to the sealing motion, I have questions about the process

16   and what information is going to be publicly available, etc.

17          MR. MORIN:  Sure.

18          THE COURT:  But why don't you give me the

19   overview?

20          MR. MORIN:  Sure.  So let's just set the stage a

21   little bit.  So in terms of an overview of the process,

22   there are sort of three categories of assets that the

23   Debtors are seeking to market in the bidding procedures

24   motion, which is not on for today, that's on for the 16th.

25          Those three categories are the Debtor's four FCC

Page 11

 1    licenses, the -- and that's the first category, the call

 2    signs for those are KNZ65, KNZ67, KNZ68 and WHR845.  The

 3    second category is the three cell towers that the Debtor

 4    owns.  Those are all located in Long Island.  I believe in

 5    Syosset, Uniondale and Islip.

 6            And the third category is sort of all related

 7    contracts type of category, which could be assumed and

 8    assigned in connection with the sale process, but I'll just

 9    clarify a point here, we have reserved the right to reject

10    all of those contracts.  And it's really for us, the idea is

11    around you know, maximization of value, right?

12            So if there's a transaction structure that's

13    proposed during the marketing process, that's going to

14    maximize the value of the assets and also contemplate a

15    rejection of those contracts, we obviously want the

16    flexibility to pursue that.

17            So that is sort of what we're trying to sell.  One

18    other thing I'll flag for Your Honor, and you will have seen

19    this if you've perused the bidding procedures motion is an

20    unsolicited offer that the Debtor received for the FCC

21    licenses a little while back this year.

22            And so, this unsolicited offer came in.  After

23    considering the situation, the Debtor decided to do what

24    many Debtors decide to do when they're trying to sell

25    assets, which is, you know, proceed and pursue into a

Page 12

1    regular way sale process.

2              In order to do that, as Your Honor is very

3    familiar with, we would file a standard bidding procedures

4    motion, which we've done, and seek to retain an investment

5    banker to scour the market for interest and maximize the

6    value of the assets.

7              As we've discussed, the bidding procedures motion

8    itself is kicked to the 11/16, so and we did that to

9    facilitate discussions between you know, various parties

10   because we liked to do things consensually, if we can.  But

11   notwithstanding that adjournment, we wanted to push forward

12   with the motions today, and we can talk about all of that

13   later on.

14              In terms of additional context, just in terms of

15   timeline, so Your Honor is aware, the original proposed

16   timeline, and really we don't intend to shift these dates

17   around much at all because we think we can stick to this

18   timeline, is that bids would come in on January 9th, that's

19   what we've penciled in so far.

20              Auction would be, if we need an auction, about a

21   week later on January 16th.  And then, I think sale hearing

22   a week or so after that, you know, subject to the Court's

23   availability, obviously, on January 24th, 2023.  And so,

24   that's kind of the overall timeline.

25              Some of the earlier dates around filing assumption

Page 13

1    of assignment notice, that kind of stuff because of our

2    objection deadline, that's going to shift, because obviously

3    we've moved that, you know, the hearing date.  But the rest

4    of it I think will stay static, if we have our way.

5              In terms -- and then, in terms of other relief, so

6    our bidding procedures asks for some other things as well.

7    Those things are not obviously up for today.  Again, those

8    are for 11/16, so we won't get into any of that right now.

9    But did want to just provide Your Honor with that general

10   kind of overview of what we're trying to do.

11             So unless there are any questions about that, I

12   can jump into the applications and the motion today, which

13   are uncontested, happy to walk through those.

14             THE COURT:  Well, let me ask a few questions now,

15   is whether even before the formal retention, Jeffries has

16   taken steps to identify potentially interested buyers,

17   whether any NDAs have been signed.  Give me the landscape of

18   the efforts --

19             MR. MORIN:  Sure.

20             THE COURT:  -- to sell.  You raised the

21   unsolicited bid that has set you on the path of a more

22   normal bankruptcy type of sale.  So what has happened?

23             MR. MORIN:  Right.  So I think -- and a lot of

24   this we were going to cover in the sale bidding procedures

25   hearing, but I'm happy to talk about it right now to tell

Page 14

1    Your Honor what has happened.  So the unsolicited offer came

2    in.  We -- you know, we sat down and had a think about what

3    to do with it.

4           One of the things that the unsolicited offeror

5    wanted to see was some of the contracts related to the

6    assets they'd be buying.  We had a look at those contracts,

7    they contain CONFI provisions, and we're sensitive around

8    post-petition breaches of pre-petitioned contracts.

9           We don't want to just walk into that and deal with

10   consequences that, you know, may not be favorable to the

11   estate.  So --

12           THE COURT:  And I gather you asked the

13   counterparties for consent, and they declined to give it?

14           MR. MORIN:  You would've seen that in the motion

15   as well, yes.

16           THE COURT:  I did.

17           MR. MORIN:  That's exactly right.  So we went to

18   those folks, and we said, hey, we've received this offer.

19   We'd really like to pursue it.  They'd like to see the

20   contracts.  We have to come to you because the CONFI says we

21   do.  Will you let us share these contracts?  The answer was,

22   no.

23           And that has sort of motivated some of the other

24   relief that Your Honor may have seen in the motion that we

25   filed.  In terms of who has signed an NDA, that unsolicited

Page 15

1    offeror has signed an NDA.  No information has been

2    exchanged because of a lot of the context of what we're

3    dealing with.

4              In terms of other marketing processes, because of

5    -- and you know, what Jeffries maybe would have done in a

6    normal situation, some of the provisions in those contracts

7    make that maybe a little challenging as well.  So we haven't

8    pushed forward, I think much with a sale process as of yet.

9    And I --

10             THE COURT:  How many different parties under the

11   terms of the contracts at least, how many different parties'

12   consent is required to be able to share information?  Is it

13   just one or is it more than one?

14             MR. MORIN:  It's one.

15             THE COURT:  Okay.

16             MR. MORIN:  So we have not -- Jeffries has not, on

17   the Debtor's behalf at this point -- run a comprehensive

18   process yet because of some of the limitations in those

19   contracts.  And I think when we sat down and we thought

20   about this, we said, let's just get comfort in our bidding

21   procedures motion, that we can do what anybody does in a

22   Chapter 11 case when they're trying to sell assets, run a

23   very vanilla sale process, right?  That's kind of the point

24   of what we're trying to --

25             THE COURT:  Well, let me ask a couple of more

Page 16

1   questions.

2              MR. MORIN:  Yeah, yeah.

3              THE COURT:  What information have you shared with

4   the Committee at this point?

5              MR. MORIN:  The Committee is aware of the identity

6   and the amount of the unsolicited offeror.  I think they're

7   aware of our discussions that we've been having with various

8   parties.  I will let the Committee speak to other stuff, but

9   I think we've been trying to keep them in the loop on

10  generally kind of what's going on.

11             THE COURT:  All right, and what about the US

12  Trustee?

13             MR. MORIN:  The US Trustee, I do not think we've

14  had too many conversations with the US Trustee on sort of

15  the economics or you know, kind of -- other than the

16  filings, not direct conversations with them on the process,

17  with the filings.

18             THE COURT:  Okay, just so I'm certainly aware that

19  the date for the bidding procedures motion has been pushed

20  off to November, I know from the motion, you're seeking an

21  order determining that various contract provisions are

22  unenforceable in bankruptcy.  And you contemplate all of

23  that at the one hearing on approval of the bidding

24  procedures?

25             MR. MORIN:  Correct, that's right.

Page 17

1                THE COURT:  My hesitancy in speaking further is,

2      those are clearly important issues.  And how long it will

3      take me to decide those issues is unclear to me.  My

4      November and December calendars have gotten pretty full

5      already.  I'll just tell you that right now.

6                I mean, I -- it's my practice for my whole time on

7      the bench, I don't let things linger.  I try to get things

8      decided, but things are -- you know, I've got a lot of

9      hearings coming up in Celsius, and a lot of -- and other

10     things.  And so, frankly, after a pretty light couple of

11     years during COVID, things have sort of really turned around

12     and changed.  I am very busy.  So --

13               MR. MORIN:  Understood.

14               THE COURT:  You know, it may be -- I don't know

15     this yet, okay?  But it may be that I will deal first with

16     the issues of enforceability of various contract provisions

17     without actually reaching the issues over the bidding

18     procedures, because I think that how you go forward with

19     marketing will very much depend on whether all of the stuff

20     that has confidentiality provisions gets blown out and you

21     can share, who you can share with, under what conditions,

22     etc.  So I don't know.  I'm just -- I wanted to get the lay

23     of the land today, and we'll see how we proceed.

24               It could well be that when we have the November

25     hearing on bidding procedures, what we're actually going to

Page 18

1    have is a hearing on whether or not various lease and

2    contract provisions are enforceable in bankruptcy.

3            MR. MORIN:  Right.  So that was actually -- you

4    know, and I think that's what we were intending, frankly.

5    And it just -- it seemed to be the right time to ask for the

6    relief, right?  We want to have a very vanilla process.  We

7    want to be able to do what you normally do.

8            And we want to be able to honestly you know, if

9    we're trying to sell FCC licenses with contracts attached to

10   them, which we think is a good thing for the estate to be

11   able to do, to explore, you know, not necessarily that's how

12   we go, but to explore that option, it's hard to sell a

13   contract to somebody if they can't read the contract.

14           So you know, it's -- all of these things are sort

15   of gating issues around a very vanilla process, and we

16   thought let's just try to do this all at one time.

17           THE COURT:  I -- you know, it could well be that

18   after I rule on what contract provisions are or are not

19   enforceable that you will want to make some modifications in

20   the bidding procedures themselves.  It's hard for me to say

21   at this point, you know?

22           MR. MORIN:  Sure.

23           THE COURT:  You know, one issue that I will tell

24   you I have -- I can't remember at this point having dealt

25   with it whether rights are -- when our rights are first

Page 19

1    refusable enforceable in bankruptcy?  Because that is an

2    issue as well.  I don't know what your position is, whether

3    you have a position yet on whether rights of first refusal

4    are enforceable.

5              I mean, if they are, I understand, you know, the

6    argument that it could chill bidding.  But maybe not.  But

7    you know, I -- so I don't know what your position is,

8    whether your position is that rights of first refusal are

9    unenforceable, or whether just the confidentiality

10   provisions are unenforceable.

11             You know, I could envision where things remain

12   sealed until a marching process is complete, but I can't

13   imagine approving a sale without all parties in interest

14   knowing what it is that's being sold.

15             MR. MORIN:  So absolutely.  And I don't know how

16   we -- again, as I said, I don't know how we sell something

17   without people understanding what they're buying.

18             THE COURT:  Well, people -- I mean, you know, the

19   people maybe beyond the Creditor's Committee and the US

20   Trustee and the Debtors, so --

21             MR. MORIN:  Right, right, right, right, right,

22   that's entirely fair.

23             THE COURT:  May I ask another question?

24             MR. MORIN:  Yes.

25             THE COURT:  Have you -- did you -- and I couldn't

Page 20

1  find where you'd done it, did you give -- did you serve the

2  FCC with any of these papers so far?

3           MR. MORIN:  The FCC?

4           THE COURT:  Yes.

5           MR. MORIN:  I don't think with these papers, but

6  they are contemplated to be a noticed party vis-a-vi the

7  sale notice.  So they will get information regarding kind

8  of, you know, the facts that we're selling.  And regulatory

9  approval is obviously in our heads, so it's not something

10  we're forgetting.

11           THE COURT:  Yeah, I don't know whether the FCC

12  will have relevant input on the issues of what information

13  should be made available to prospective bidders, when

14  ultimately it's the FCC licenses that are at issue.  So I

15  would just suggest that you serve the FCC with notices of

16  these hearings.

17           MR. MORIN:  Yeah.

18           THE COURT:  They could decide they will or won't

19  participate.

20           MR. MORIN:  Right.

21           THE COURT:  But I'd hate to find myself in a

22  situation where I conclude, they should've been here and

23  they haven't been given notice.

24           MR. MORIN:  Right.  Absolutely.  No, we will -- as

25  soon as we're done with this hearing, we'll get them --

Page 21

1              THE COURT:  Okay, all right.

2              MR. MORIN:  And just to circle back on the ROFR

3     and I think the CONFI points, I think I've already talked

4     about why we think the CONFI points are important.  I think

5     the ROFR, again, it's not an issue for today.

6              THE COURT:  You know, there are people who listen

7     in to these hearings who may not be tuned into the jargon,

8     so you'd better speak in English.

9              MR. MORIN:  Right of First Refusal.  Sorry,

10    apologies.  I've been saying the word ROFR quite a bit in

11    these cases.

12             THE COURT:  Okay.

13             MR. MORIN:  So Right of First Refusal, I think,

14    and again, I won't get too much into argument because that

15    is a matter for a couple of weeks from now, I think.  But I

16    think if Your Honor reviews our papers, you'll see citation

17    to an Adelphia decision that was decided --

18             THE COURT:  I saw it.

19             MR. MORIN:  Right.  From this District, and we

20    think that one was well reasoned.  And the bid chilling sort

21    of issues that were discussed there, we think match up here.

22    So I think that's -- I'll leave it at that, I don't want to

23    get too much into it.

24             THE COURT:  Okay.

25             MR. MORIN:  So I will again, if any other

Page 22

1    questions, happy to talk about them.

2              THE COURT:  Yes, yeah.

3              MR. MORIN:  Okay, so I will jump in now to the

4    requests relief.  So I think Your Honor wanted to start with

5    the Jeffries retention application, and I'm happy to do

6    that.

7              THE COURT:  Yes, thank you.

8              MR. MORIN:  That is at Docket Number 1357.  The

9    affidavit of service for that document is 1376.  And as I

10   flagged after we -- after the Debtor received the

11   unsolicited offer, we're trying to put in place a regular

12   way process to maximize the value of the assets related to

13   the bid that we received.

14             And we're trying to do that, again, the regular

15   way, setup regular way sale process and retain an investment

16   (indiscernible).  And that's what we're doing in this

17   motion, trying to have Jeffries retained.  And what I will

18   say, Your Honor, for one housekeeping point, Mr. Richard

19   Morgner, who is a Managing Director at Jeffries put in a

20   declaration in support of the Jeffries retention

21   application.

22             Mr. Morgner is on the line, and I believe if he

23   called to testify, he would testify to the contents of this

24   declaration.  So at this point, Your Honor, I would ask to

25   move the Morgner declaration into evidence.

Page 23

1            THE COURT:   What is the Docket Number?

2            MR. MORIN:   That's Docket Number 1357.  It is Page

3    41 of 85 on that document.

4            THE COURT:   All right.  Are there any objections

5    to the Court admitting the Morgner declaration ECF 1357,

6    Pages 41 of -- Page 41 of 45 into evidence?  Hearing no

7    objection, it's admitted into evidence.

8                 (Morgner Declaration ECF 1357 Admitted into

9                 Evidence.)

10            MR. MORIN:   Okay.  Thank you, Your Honor.  And I

11   will now just jump into the rest of the motion.  So in terms

12   --

13            THE COURT:   Let me ask you first.

14            MR. MORIN:   Yeah.

15            THE COURT:   Is there somebody from the US

16   Trustee's Office on the line?  Again, I don't see it on the

17   screen, but have you had any communication with people in

18   the US Trustee's Office?  Because they're usually -- they're

19   focused on things like the scope of indemnities and things

20   like that.  Have you had discussions with them?

21            MR. MORIN:   No, they have not reached out to us.

22   They were served with the motion or the application.

23            THE COURT:   Right.

24            MR. MORIN:   But they have not reached out to us to

25   talk about anything.

Page 24

1           THE COURT:  All right, let me just ask.  Is there

2    anyone from the US Trustee's Office at the hearing today?

3    Speak up, if you are.  Hearing none, go ahead.

4           MR. MORIN:  Okay, so in terms of authority, Your

5    Honor, we are basing this request for relief on the standard

6    provisions, 327, 328 of the Code.  327 provides, among other

7    things, that a Debtor my employ attorneys or other

8    professional persons.

9           328 of the Bankruptcy Code provides that a Debtor

10   may compensate Section 327 professional on any reasonable

11   terms and conditions including on a fixed or percentage

12   basis.  And so, we respectfully submit that Jeffries'

13   retention here satisfies these code provisions.

14          THE COURT:  All right.  Let me hear from the

15   Committee.  Does the Committee have -- no objections were

16   filed to this motion, I realize that.  And specifically, no

17   objection was filed.  But I wanted to go forward with the

18   hearing today, as much to talk about the sealing motion as

19   anything else.  But let me hear from the Committee.  Ms.

20   Dine, are you going to speak for the Committee?

21          MS. DINE:  Yes, Your Honor.  Karen Dine, Pachulski

22   Stang Ziehl and Jones on behalf of the Committee.

23          THE COURT:  Nice to see you again.

24          MS. DINE:  And it's nice to see you as well.  And

25   --

Page 25

1           THE COURT:  One of these days in the courtroom

2     again.  But go ahead.

3           MS. DINE:  We look forward to that.  And Your

4     Honor, you should mention that while -- not standing with

5     me, there are a number of Committee members who are on the

6     call and listening today.  The Committee is generally

7     supportive of the sale of these assets, and you know,

8     maximizing the value that may be available for Creditors.

9           We reviewed the Jeffries application quite

10    closely.  We actually had conversations with Counsel for

11    Jeffries about the fee and they agreed to some modification

12    based on those discussions, and we have no objection to

13    their retention.

14          THE COURT:  All right, the retention is approved.

15    Thank you very much.

16          MR. MORIN:  Very good, Your Honor.  And so, with

17    that, we can move onto the second motion.  Apologies.  And

18    that would be the sealing motion that Your Honor raised.

19    That's at Docket 1356.  I can walk through my presentation

20    here, or we can go to questions, whatever Your Honor would

21    prefer.

22          THE COURT:  Well, I -- look, again, there were no

23    objections to this motion, either.  I can tell you what I'm

24    going to do, and then I will tell you -- give you a little

25    bit more background.  I'm granting the motion without

Page 26

1    prejudice to the Court unsealing unredacted documents,

2    either on motion or on the Court's own motion

3            THE COURT:  You know, it seems to me -- so I've

4    read the unredacted papers that were provided.  I am, on the

5    whole, very skeptical about sealing motions.  I've authored

6    quite a few opinions.  There have been some when I've

7    approved sealing, depending on the context, and many when

8    I've not approved it.

9            I have often, and I've said this in opinions, that

10   redaction rather than -- that you know, partial redactions

11   rather than wholesale sealing is the -- maybe the

12   appropriate course.  I'm a very strong believer that all

13   parties in interest are entitled to the information that

14   enables them to you know, reach their own conclusion,

15   whether they think a transaction or some other action is in

16   the best interests of the Debtor.

17           And obviously, if they don't have the information,

18   if makes it very hard for them to do that.  So you know, for

19   example, the redactions so far have been pretty extensive.

20   I'm approving them for now.  I think when we get to the

21   issue of what's enforceable, what's not enforceable, things

22   could change rapidly at that point.

23           My goal is to have as much information publicly

24   available to all parties in interest, including all

25   individual Creditors so they can, if they have a view, they

Page 27

1    can express the view.  So like I say, for today, I'm

2    granting it.

3            We don't have -- the lease counterparties haven't

4    filed briefs at this point on the issue.  They're certainly

5    entitled to, and I'll look with interest on what they have

6    to say.  You know, in a number of different contexts, you

7    know, for example, when a Debtor tried to seal terms post-

8    settlement because the counterparty to the settlement wanted

9    it sealed, I denied sealing.

10           I thought that all parties in interest were

11   entitled to know what the economic terms were.  And the

12   Debtor's argument that it could affect their ability to

13   negotiate other claims and things like that, I rejected it.

14   There have been times when I, in MF Global, when they were

15   selling commodities, exchange licenses at -- in the early

16   stage, I permitted this stuff to be sealed because I didn't

17   want to chill further negotiation with parties.

18           So that's just -- those aren't necessarily

19   applicable here, but you know, for anybody on here today or

20   who reads the transcript, I'm going to look very carefully

21   at what information should be made public.  And I'm not

22   suggesting the Debtor thinks other than that.  The Debtor's

23   being very cautious.  There are provisions and contracts

24   that require confidentiality.

25           The fact that a contract required confidentiality,

Page 28

```
 1   that's between two parties.  That's not the -- in a

 2   bankruptcy proceeding with the, you know, with my

 3   stakeholders, so --

 4            MR. MORIN:  Okay.

 5            THE COURT:  -- I will look at it carefully.

 6            MR. MORIN:  Okay.  Maybe just a little bit of

 7   color from our side as to what we were thinking --

 8            THE COURT:  Okay.

 9            MR. MORIN:  -- just to explain in response to Your

10   Honor's comments.  I think as Your Honor noted, the sealing

11   motion is motivated by cautiousness, right?

12            THE COURT:  Right.

13            MR. MORIN:  Post-petition breaches of pre-

14   petitioned contracts have consequences.  We don't

15   necessarily want to have to deal with those consequences if

16   we're just honoring the terms of the agreement.  So that's

17   kind of point number one.  And then, I think point number

18   two is that the information that's redacted, our provisions

19   and the obviously if Your Honor's looked at the bidding

20   procedures motion, that could impact the sale process, we

21   think.  And we think that --

22            THE COURT:  If you can't give interested parties

23   copies of the contracts that they're bidding on, what are

24   they supposed to do?

25            MR. MORIN:  Said very well.  So we -- but if we
```

Page 29

1    think -- if those provisions are made public, at least at

2    this stage in the process, we think it could be negative for

3    the sale process, because one, if Your Honor gives us the

4    relief that we will talk about at -- on 11/16, we may spook

5    people for now reason, right?

6              These provisions are going away.  You don't even

7    have to think about them, but here they are in the paper, I

8    don't know, right?  So that's just point number one.  Point

9    number two I think would be, if Your Honor doesn't grant us

10   the relief, now we've put a bull's eye on these provisions,

11   which is not exactly ideal, people may very well find them,

12   right, if they're allowed to read the contracts in which

13   these provisions are in, right?  But we don't necessarily

14   love the dynamic of putting a bull's eye on provisions we

15   don't like.

16              THE COURT:  Right.

17              MR. MORIN:  So that's --

18              THE COURT:  I'm fine.  I understand your argument.

19   I'm granting you the motion for now.  I just want to make it

20   clear that when we get to the issues of which of those

21   contract provisions are enforceable and which not, the

22   landscape will change.

23              MR. MORIN:  That -- okay, makes very much sense.

24   Okay.  With that, I think I don't have anything else to talk

25   about.  So if Your Honor has any questions, I'm happy to

Page 30

1    take them.

2              THE COURT:  No, that's fine.  And anybody -- Ms.

3    Dine, is there anything you want to --?

4              MS. DINE:  Your Honor, I have a housekeeping

5    matter not with respect to this motion and --

6              THE COURT:  Please go ahead.

7              MS. DINE:  So Your Honor, the Debtor has filed a

8    motion at Docket 1349 requesting the ability to become and

9    opt-in participant in the BSA plan.  The hearing is set for

10   November 30th.

11             THE COURT:  The Boy Scout Settlement, right.

12             MS. DINE:  Yes.  The hearing is set for November

13   30th.  I believe the original objection deadline was a few

14   days ago.  We had sent an email to Chambers requesting that

15   for the Committee and for all parties, the deadline be

16   extended to November 16th.

17             And I wanted to -- and obviously we had requested

18   that of the Debtor and they've not been willing to agree to

19   the extension.  And I just wanted to raise that now to see

20   if we could determine when that objection deadline would be.

21             MR. ROSENBLUM:  Your Honor, may I be heard on

22   that?

23             THE COURT:  Yes, go ahead.  Yes, identify yourself

24   for the record, when you speak.

25             MR. ROSENBLUM:  Yes, Your Honor.  Benjamin

Page 31

1    Rosenblum from Jones Day on behalf of the Debtor.  Your

2    Honor, with respect to the Boy Scouts motion, I just want to

3    be clear for the record, the Committee had approached us

4    with a different request in terms of both duration of the

5    objection deadline that they were requesting, and in terms

6    of the scope of the parties that they were wishing to cover

7    with respect to the extension deadline.

8              The Debtor had noticed the motion on more than

9    what was required under the case management order.

10   Nonetheless, we told the Committee that we would give them

11   an additional week on top of the 10 days, and the reason,

12   because we're not folks who you know, turn down or oppose

13   extensions of objection deadlines for no reason, we would

14   put the motion on appropriate notice.

15             We told them we'd give them an extra seven days as

16   a courtesy, but also, we've been trying to talk with the

17   Committee about this motion for a year.  And that's the

18   reason why the Debtor opposed the extension of the

19   Committee's objection deadline beyond the 17 days that we

20   said that they could have to object.

21             THE COURT:  So the hearing is what day again?

22             MR. ROSENBLUM:  It's November 30th.

23             THE COURT:  And Ms. Dine, tell me what date you're

24   asking for?

25             MS. DINE:  We had asked for November 16th, Your

Page 32

1    Honor, for the Committee and all the parties.

2            THE COURT:  And Mr. Rosenblum, your willingness to

3    agree was to what date?

4            MR. ROSENBLUM:  I believe it was the 21st, the

5    24th, Your Honor, which has obviously passed.

6            THE COURT:  Right.  I'll tell you all what my

7    concern is.  I have this packed calendar.  I do plan to take

8    the Thanksgiving holiday, but I have a very packed calendar

9    for November and December.  And I'm concerned about having

10   sufficient time for me and my law clerks to really be on top

11   of the issues when you know, when matters come on the

12   calendar.  I'm just on -- on the second screen, I'm looking

13   through my November and December calendars.

14           MS. DINE:  Your Honor?

15           THE COURT:  Yes?

16           MS. DINE:  Karen Dine again from Pachulski Stang

17   Ziehl and Jones on behalf of the Committee, if I may?  I

18   certainly understand that concern, and I do note that Your

19   Honor today with the consent I believe of the US Trustee and

20   of the Debtor, the US Trustee's objection deadline is now

21   November 7th.  And if that were something more comfortable

22   for Your Honor, that would be fine with the Committee.

23           THE COURT:  The November 7th date?

24           MS. DINE:  Yeah.

25           THE COURT:  Let's go with that.  You know, I --

Page 33

1   Ms. Dine, I really try to be -- extend reasonable courtesies

2   to everybody.  You've all been very professional.  You're

3   all doing a terrific job.

4           I'm just finding myself really under the gun, and

5   I want to be sure that the Court has sufficient time, so

6   that when we get to the hearing, I don't promise the

7   decision right at the hearing, but I try to get things out

8   very quickly.  You're all entitled to decisions.  The issues

9   are important.  So your deadline is extended to November

10  7th, okay?

11          MS. DINE:  That is very much appreciated, Your

12  Honor.  And certainly, we understand, and our hope would be

13  that to the extent we have concerns about the motion, that

14  that will be something we can work out consensually with the

15  Debtor before that date.

16          THE COURT:  Well, and that was the last thing I

17  wanted to say in -- is that the Committee and the Debtors --

18  Debtor should really see to what extent can you resolve

19  these issues?  These are important issues.  I'm not -- and

20  I'm not doubting it at all.  You know, the best -- frankly,

21  you know, sometimes neither of you are happy when the Court

22  rules.

23          The best result is one that you can agree on

24  consensually.  I won't belabor the point.  I just hope that

25  you'll engage with each other over this and see whether you

Page 34

1    can resolve whatever issues you otherwise would put to the

2    Court, okay?

3              MS. DINE:  Thank you, Your Honor.  And if I may

4    again, Karen Dine, Pachulski, Stang on behalf of the

5    Committee, just to clarify that the objection deadline is

6    extended for the Committee and for other parties?

7              THE COURT:  Yes.

8              MS. DINE:  Thank you.

9              THE COURT:  Okay.  I'm -- some of that willingness

10   is that you know, frankly, I have a trial on November 9th,

11   10th and 14th, and we're pretty heavily engaged in getting

12   ready for that trial.  So you know, let me leave it with

13   that.

14             MS. DINE:  Understood.  Thank you, Your Honor.

15             THE COURT:  Okay.  Anything else for today?  Mr.

16   Rosenblum, anything you wanted to raise?

17             MR. ROSENBLUM:  No, Your Honor.  I mean, I just

18   (indiscernible) understand Your Honor's ruling on that.  I

19   mean, this is -- I do want to note that we will endeavor to

20   work with the Committee on a consensual basis to resolve

21   whatever concerns, and we don't know what their concerns are

22   with respect to this motion.

23             But I do have to re-emphasize the Debtor's

24   frustration that we've reached out multiple times since 2021

25   to try to engage with the Committee in this --

Page 35

1            THE COURT:  You already made that point.

2            MR. ROSENBLUM:  His motion was filed 20 days ago.

3            THE COURT:  You already made that point, okay?

4            MR. ROSENBLUM:  Thank you, Your Honor.

5            THE COURT:  Especially in your frustration, once

6    is enough.  All right.  Anything else anybody wants to raise

7    for today?  Okay.  So if you -- I -- maybe you've already

8    done this, but if not, Mr. Morin, submit the orders in Word

9    format and they'll promptly be entered, okay?

10            MR. MORIN:  Thank you.  We'll get them over.

11            THE COURT:  All right, thank you.  We're

12   adjourned.

13            MS. DINE:  Thank you.

14            (Whereupon these proceedings were concluded at

15   2:51 PM)

16

17

18

19

20

21

22

23

24

25

Page 36

1                         I N D E X

2

3                         RULINGS

4                                           Page      Line

5    Retention application is approved        24        14

6

7    Motion to seal without prejudice to the Court unsealing

8    unredacted documents, either on motion or on the Court's own

9    motion                                  26         1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 37

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 31, 2022