**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br><br>                       Debtor. | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 20-12345 (MG) |

**MEMORANDUM OPINION AUTHORIZING THE DEBTOR TO "OPT-IN" TO TREATMENT AS A PARTICIPATING CHARTERED ORGANIZATION UNDER THE <u>BOY SCOUTS OF AMERICA CHAPTER 11 PLAN</u>**

*A P P E A R A N C E S:*

JONES DAY
*Attorneys for the Debtor*
250 Vesey Street, Floor 32
New York, NY 10281
By:    Andrew Butler, Esq.
           Benjamin Rosenblum, Esq.

PACHULSKI STANG ZIEHL & JONES LLP
*Attorneys for the Creditors Committee*
10100 Santa Monica Bldv., Ste 1300
Los Angeles, CA 90067
By:    James I. Stang, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
By:    Greg Zipes

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor" or the "Diocese") filed a motion to authorize the Debtor to "opt-in" to treatment as a "Participating Chartered Organization" under the Boy Scouts of America chapter 11 plan (the "BSA Plan") and for related relief. ("Motion," ECF Doc. # 1349.) The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 1, 2020 (the "Petition Date"). (Motion ¶ 1.) Prior to the Petition Date, the Child Victims Act of 2019 revived previously time-barred sex abuse claims, and approximately 200 lawsuits were filed by abuse claimants against the Debtor. (*Id.* ¶ 4.) The Debtor has sought to identify and marshal over 60 years of insurance policies to secure valuable resources of the Debtor's which may be used to compensate abuse survivors. (*Id.*) In conjunction with those efforts, the Debtor's motion seeks to take advantage of a settlement agreement regarding the BSA Plan that the Debtor contends will substantially support its goals. No objections were filed to the Motion.

The Court held a hearing on the Motion on November 30, 2022. The Court granted the Motion, and an order has already been entered. (*See* ECF Doc. # 1498.) When it granted the Motion, the Court stated that considering the public interest in the issues presented, it expected to issue an opinion explaining the reasons for granting the Motion. Because an appeal is pending challenging the confirmed BSA Plan, the BSA Plan has not yet become effective and the Debtor and the claimants have not yet received any benefits from the BSA Plan.

## I.     BACKGROUND

**A. The Boy Scouts of America Chapter 11 Bankruptcy Case**

On February 18, 2020, the Boy Scouts of America and Delaware BSA, LLC (collectively, "BSA") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Delaware bankruptcy court for the primary purpose of addressing sexual abuse claims against the BSA.[1]  On February 15, 2022, the BSA filed a plan of reorganization, which was modified and then confirmed on September 8, 2022.  (Motion ¶¶ 10, 13.)  The BSA Plan proposes to establish a trust for sexual abuse survivors to be funded with approximately $2.69 billion (the "Settlement Trust").  (*Id.* ¶ 11.)  The sexual abuse claims against the BSA implicate certain partner organizations presently or formerly authorized by the BSA to sponsor or support scouting units.  (*Id.* ¶ 8.)  These organizations include many parishes within the geographic region of the Diocese, which are considered "Chartered Organizations" under the BSA Plan.  (Motion ¶ 8.)

Certain of Debtor's claimants have asserted liability against the Diocese for scouting-related abuse.  (*Id.*)  The Debtor has also been named as a co-defendant to the BSA in certain lawsuits, and certain claims filed against the Debtor in this case indicate that the claimant has also submitted a claim against the BSA.  (*Id.* ¶ 9.)  In addition, certain sexual abuse claims asserted in the Diocese's bankruptcy case implicate BSA either because (i) the alleged abuser was a scoutmaster, or (ii) the alleged abuse occurred in connection with scouting events, among other reasons.  (*Id.*)  Based on the Diocese's ongoing review, approximately 30 sexual abuse proofs of claim filed in this chapter 11 case may relate to BSA or BSA-related activities.  (*Id.*)

---

[1]  *See* Case Nos. 20-10342 and 20-10343 (U.S.B.C. Del.).

1. <u>The Debtor Seeks Classification as a Participating Chartered Organization Under the BSA Plan</u>

A Chartered Organization may be classified and treated as a "Contributing," "Participating," or "Opt-Out" Chartered Organization. (*Id.* ¶ 14.) Contributing Chartered Organizations are Chartered Organizations that choose to negotiate to make a substantial monetary contribution to the Settlement Trust and release their rights to any insurance policies in exchange for all scouting-related abuse claims against the Contributing Chartered Organization being channeled to the Settlement Trust. (*Id.* ¶ 15.)

In contrast, Participating Chartered Organizations—the designation the Debtor seeks—are Chartered Organizations that are not Contributing Chartered Organizations and that (a) do not object to confirmation of the BSA Plan, (b) do not inform BSA's counsel in writing that they do not wish to be Participating Chartered Organizations, and (c) are not debtors in bankruptcy. (*Id.* ¶ 16.) A Chartered Organization that is a debtor in bankruptcy as of the BSA Confirmation Date, as the Debtor is here, will be a Participating Chartered Organization only if it advises BSA's counsel in writing that it wishes to make the election to be a Participating Chartered Organization. (*Id.* ¶ 16.) Although the parishes within the Diocese's jurisdiction, as non-debtors, are treated as Participating Chartered Organizations by default, the Diocese must elect to opt-in to treatment as a Participating Chartered Organization. (*Id.* ¶ 24.)

2. <u>Treatment as a Participating Chartered Organization</u>

The BSA Plan provides that all scouting-related abuse claims against a Participating Chartered Organization which occurred (i) after 1976, and (ii) before 1976 for which there is qualifying insurance to be channeled to the Settlement Trust in exchange for the Participating Chartered Organization's release of rights to related insurance policies. (*Id.* ¶ 17.) Specifically, the BSA Plan provides for Participating Chartered Organizations to be treated as follows:

4

**a. Protection from Direct Abuse Claims:** All 1976-forward Abuse Claims against Participating Chartered Organizations, as well as all pre-1976 Abuse Claims against Participating Chartered Organizations for which there is insurance issued by a Settling Insurance Company, will be channeled to the Settlement Trust, and abuse survivors will release the Participating Chartered Organizations for such claims. Abuse survivors will not be able to assert Scouting-related Abuse Claims that are channeled to the Settlement Trust directly against Participating Chartered Organizations. This does not impact claims against Participating Chartered Organizations that are unrelated to Scouting. The Plan also provides that all Participating Chartered Organizations will receive the protection of a twelve-month injunction from prosecution of Abuse Claims beginning on the Effective Date (subject to further extension) to afford Participating Chartered Organizations an opportunity to negotiate an appropriate contribution with the Settlement Trust to become a Contributing Chartered Organization.

**b. BSA and Local Council Insurance:** In exchange for all 1976-forward Abuse Claims against the Participating Chartered Organizations being channeled to the Settlement Trust and abuse survivors releasing the Participating Chartered Organizations for such claims, the Participating Chartered Organizations will voluntarily release their rights to any insurance policies issued to BSA or Local Councils by the Settling Insurance Companies, and the Plan may assign or otherwise provide for the Settlement Trust to sell those policies back to the Settling Insurance Companies. Similarly, because all Abuse Claims (pre- and post-1976) covered by policies issued by a Settling Insurance Company will be channeled to the Settlement Trust, Participating Chartered Organizations will release any rights to coverage under any insurance policies issued by a Settling Insurance Company for such Abuse Claims. Otherwise, Participating Chartered Organizations will retain whatever rights they previously had (if any) in all pre-1976 BSA and Local Council insurance policies. Participating Chartered Organizations also must assign, among other things, any causes of action against non-settling insurance companies related to Abuse Claims that first occurred on or after January 1, 1976.

**c. Chartered Organization Insurance:** Abuse Claims against Participating Chartered Organizations will be released and channeled to the Settlement Trust if a Settling Insurance Company issued a liability policy (other than an automobile policy or director's and officer's policy) that does not specifically exclude abuse or molestation to a Participating Chartered Organization, and a claimant alleges abuse during the period of that policy. In exchange for the benefits of this release and Channeling Injunction, Participating Chartered Organizations will voluntarily release the Settling Insurance Companies from these Abuse Claims. Participating Chartered Organizations retain all rights for abuse claims unrelated to Scouting under policies issued by Settling Insurance Companies. Participating Chartered

>Organizations also retain all rights for any claims (both related and unrelated to Scouting) under independent insurance policies issued by non-settling insurance companies.
>
>**d. Indirect Abuse Claims:** In exchange for the protections of the channeling injunction, all Indirect Abuse Claims are voluntarily waived.

(*Id.* (quoting BSA Plan).)

### B. The Roman Catholic Ad Hoc Committee's Settlement

The Roman Catholic Ad Hoc Committee (the "RCAHC"), an ad hoc committee of Roman Catholic Entities, objected to confirmation of the BSA Plan, challenging the BSA Plan's treatment of Chartered Organizations. (*Id.* ¶ 21.) The RCAHC and its individual members subsequently reached a settlement with BSA, the Ad Hoc Committee of Local Councils, the Coalition, the Tort Claimants' Committee, the FCR, and the Settling Insurance Companies (the "RCAHC Settlement").[2] (*Id.*) Pursuant to the RCAHC Settlement, the RCAHC has agreed to work in good faith with BSA to encourage Roman Catholic entities such as the Debtor to become Participating Chartered Organizations under the BSA Plan. (*Id.* ¶ 23.)

## II.    LEGAL STANDARD

### A. Use of Property Outside of the Ordinary Course of Business

Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In determining whether to authorize the use of property outside of the ordinary course of business, bankruptcy courts require sound business justification. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him [or her] at the hearing a good business reason to grant such an

---

[2]    The capitalized terms used in this sentence are defined in the RCAHC Settlement.

application."). The debtor carries the burden of demonstrating that a use, sale or lease out of the ordinary course of business will aid the debtor's reorganization. *Id.*

### B. Approval of a Compromise or Settlement

Bankruptcy Rule 9019 provides that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). In determining whether to approve a compromise or settlement under Rule 9019(a), the Court should "canvas the issues, and the court's approval of the proposed settlement will be sustained on appeal if the settlement is found not to fall 'below the lowest point in the range of reasonableness.'" *In re Ionosphere Clubs*, 156 B.R. 414, 426 (S.D.N.Y. 1993), quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). The Court "may not simply rubber stamp the recommendation of a trustee or debtor in possession." *In re Ramsen Partners, Ltd.*, 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003) (internal citations omitted).

Instead, it must make "an independent, full and fair assessment of the wisdom of the proposed compromise." *Id.* This assessment must be based on consideration of the following factors:

1. The probability of success in litigation;
2. The difficulties, if any, to be encountered in the matter of collection;
3. The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
4. The paramount interest of creditors and a proper deference to their reasonable views.

*Id.* Other potentially relevant factors include the competency and experience of the trustee and his or her counsel, the nature and the breadth of the releases to be issued as a result of the settlement, the extent to which the settlement is not the product of fraud or collusion, and whether the proposed settlement is supported by an adequate record. *Id.*

Section 105(a) of the Bankruptcy Code further authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

### III.    DISCUSSION

The Diocese advised BSA's counsel that it wishes to opt-in to treatment as a Participating Chartered Organization to the extent such election was authorized by this Court. (*Id.* ¶ 24.)

**A. The Debtor has shown a sound business justification to opt-in to the BSA Plan.**

Section 363(b) allows for the Debtor to use property of the estate outside of the ordinary course of business where the Debtor has shown there is good business reason to do so. 11 U.S.C. § 363(b)(1); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). Here, the Debtor has shown that opting into treatment as a Participating Chartered Organization under the BSA Plan provides the Diocese with the benefit of the release. Opting in also channels injunctions for pre-1976 abuse claims for which there is insurance from a Settling Insurance Company and all post-1976 abuse claims to the Settlement Trust. (Motion ¶ 30.) In exchange, the Debtor releases all rights to insurance policies issued to BSA or Local Councils by the Settling Insurance Companies and to causes of action related to BSA abuse claims in or after 1976 and other indirect related claims. (*Id.* ¶ 31 (quoting the BSA Plan).)

The protections of the BSA-related insurance rights that will be surrendered are offset by the releases received and the other scouting-related indemnification claims to be waived are of minimal value. This compromise is fair and equitable, is in the best interest of the estate, and is the result of the Debtor's exercise of reasonable business judgment. The Debtor has demonstrated that opting into the BSA Plan as a Participating Chartered Organization is a reasonable and appropriate use of property outside of the ordinary course of business, supported by a sound business justification.

### B. The proposed compromise meets the requirements of Rule 9019.

Rule 9019 allows the Court to approve a compromise or settlement where such compromise or settlement is found to be above the "lowest point in the range of reasonableness." FED. R. BANKR. P. 9019(a); *In re Ionosphere Clubs*, 156 B.R. at 426 (S.D.N.Y. 1993). As discussed above, the Debtor has shown that opting in to the BSA Plan is a reasonable exercise of its business judgment. Most eligible parties have elected to be treated as Participating Chartered Organizations as the Debtor seeks to do under the BSA Plan for similar reasons. This overwhelming participation of other parties in becoming Participating Chartered Organizations under the BSA Plan, in addition to the Debtor's own assessment of the costs and benefits of such an election, supports a finding that the compromise is above the "lowest point in the range of reasonableness."

The Court may also consider the circumstances under which the compromise was reached when assessing its reasonableness. *In re Ramsen Partners, Ltd.,* 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003). The Debtor represents that the proposed compromise was the result of arm's-length negotiations and is recommended by the Roman Catholic Ad Hoc Committee that, with the support of sophisticated counsel, negotiated the settlement to protect the interests of Roman Catholic entities like the Debtor. (Motion ¶ 33.) The process by which the compromise was reached was itself reasonable and further supports a finding that the substantive agreement is similarly reasonable. The Debtor has met its burden to show that the proposed compromise may be approved under Rule 9019, in addition to sections 363(b).

## IV. CONCLUSION

For the reasons explained above, the Court granted the Motion and authorized the Debtor to opt-in to the BSA Plan as a Participating Chartered Organization. An order consistent with this decision was issued by this Court on December 2, 2022.[3]

**IT IS SO ORDERED.**

Dated:   December 9, 2022
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge

---

[3]   *See* ECF Doc. # 1498.