**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | ) ) ) ) | Case No. 20-12345 (MG) |
| Debtor. | ) ) | |

**DECLARATION OF PAUL MCCARTHY**
**IN SUPPORT OF OBJECTION OF THE T-MOBILE ENTITIES**
**TO THE MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING AND APPROVING THE SALE OF THE DEBTOR'S ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES,**
**(II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

I, PAUL MCCARTHY, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am the Senior Director Spectrum Portfolio Management and Strategy at T-Mobile US, Inc. ("T-Mobile"), an American wireless network operator and carrier, which is headquartered in Bellevue, Washington. In that role, my responsibilities include, among other things: (a) managing portfolio and strategy associated with complex multibillion-dollar assets used by T-Mobile for 5G services and (b) managing the T-Mobile team responsible for acquisition of new 2.5 GHz spectrum and contractual obligations associated with over 1,500 2.5 GHz leases and over 900 licensee relationships.

2.     Prior to the April 2020 merger between T-Mobile and Sprint Corporation, I was the Director, Spectrum Development at Sprint Corporation from September 2013 until May 2020, where I, among other things, (a) co-created an approximately $7 billion oversubscribed financing program for first of its kind spectrum collateralization, which saved Sprint Corporation approximately $1

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York. The last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, New York 11571-9023.

billion in interest and fees, (b) lead strategic direction and funding requests to improve the multi-billion dollar Sprint spectrum portfolio to align company-wide strategy and RF network plans, (c) negotiated terms at C levels for M&A transactions involving portfolio assets for merger with T-Mobile and divesture to DISH Network Corporation, and (d) created a proprietary method to value spectrum opportunities across multiple bands to support acquisitions, leasing and swaps. Prior thereto, I was the Director, Spectrum Development at Clearwire Corporation from January 2009 to September 2013. There, I was responsible for, among other things, (a) 2.5 GHz spectrum leases and licenses, (b) performed due diligence and completed, start to finish, complex strategic negotiations with third parties, and (c) managed over five hundred (500) relationships with commercial license holders. Prior to that, from January 2000 to October 2008, I was the Director, Corporate Strategic Development (Broadband Spectrum) at Sprint Corporation. Among other things, I (a) led key elements of strategy for the company's 4G plans, (b) directed critical elements of multi-year efforts to develop an approximately $5 billion wireless broadband network, (c) held a leadership role on successful Federal Communications Commission rulemaking proceedings, which included an industry-wide effort to enable 2.5 GHz mobility, and (d) assembled multibillion-dollar nationwide portfolio of licenses through purchases, swaps, leases, and mergers.

   3. I submit this declaration (the "Declaration") in support of the *Objection of the T-Mobile Entities to the Motion of the Debtor for Entry of an Order (I)(A) Approving Bidding Procedures for the Sale of the Debtor's Assets, (B) Authorizing the Debtor to Enter into One or More Stalking Horse Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory*

*Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "Sale Objection")[2] filed contemporaneously herewith.

4. Unless otherwise stated in this Declaration, all facts set forth herein are based on my (a) personal knowledge, (b) materials provided by, or my discussions with, other members of T-Mobile's management team, (c) information provided by advisors or employees of the T-Mobile Entities working under my supervisions, (d) information obtained from my personal review of relevant documents, (e) information supplied to me by counsel for the T-Mobile Entities, (f) as to matters involving United States bankruptcy law or rules or other applicable rules, my reliance on the advice of counsel or other advisors to the T-Mobile Entities, or (g) my opinion based upon my experience and knowledge.

5. Educational Broadband Service spectrum licenses are valuable rights regulated by the Federal Communications Commission (the "FCC") and may be used by national wireless carriers, such as the Lessee and its affiliates to provide their customers with mobile wireless coverage nationwide. In fact, T-Mobile is the only national carrier using EBS spectrum. Not all spectrum is created equal, as only certain spectrum frequencies can be used for mobile wireless communications.

6. The Spectrum that the Lessee utilizes pursuant to the FCC Leases allows the Lessee to provide, on a daily basis, over one million of its customers with mobile wireless coverage in all of Long Island, Queens, and certain other areas in New York and Connecticut (the "Coverage Area"). The Coverage Area includes the Debtor's own Rockville Centre, New York community.

7. The FCC regulates the use of radio frequencies, including the Spectrum, in the United States to ensure that, among other things, multiple users are not utilizing the same frequencies in the same geographic regions at the same time resulting in interference between uncoordinated users.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Objection.

The FCC Licenses are the only licenses for use of these specific frequencies in the Coverage Area and are thus inherently unique.

8. The leased Spectrum is impossible to replace. As an initial matter, the Spectrum could not be replaced with other mobile wireless bands in the Coverage Area for the simple fact that the FCC is not issuing any more 2.5 GHz band spectrum in the Coverage Area (and none is otherwise available in the open market). Even if other mobile wireless bands were available in the Coverage Area, they would not provide the Lessee with adequate protection because no other spectrum would allow the Lessee to provide the same optimal, fast and efficient mobile wireless service to customers in the Coverage Area.

9. Relatedly, national wireless providers like the Lessee rely upon contiguous spectrum holdings to ensure seamless service for their customers. The Lessee has built a nationwide network on the 2.5 GHz spectrum and loss of the Spectrum would create a gap in the Lessee's broader spectrum portfolio and harm the Lessee's superior bandwidth capacity. Thus, damage to the Lessee's business would be substantial, including, among other things, loss of broadband wireless capacity impairing its ability to provide 5G service to its customers, loss of market share to its competitors and reputational damage arising therefrom. Further, the EBS Spectrum is used by the Lessee to meet certain FCC and Department of Justice approved merger commitments made in connection with the Sprint merger, and those commitments may not be met with loss of the Spectrum.

10. The Lessee's continued exclusive access to the Spectrum is necessary because both the Spectrum and the Lessee's utilization of it for its 5G Ultra Capacity network are unique, difficult to value, and impossible to either replace or acquire.

11. The Lessee would suffer substantial damages if it no longer possessed the right to utilize the Spectrum. Additionally, such damages would include those arising from the Lessee being stripped of other invaluable bargained for contractual rights under the FCC Leases—rights of first

refusal, exclusivity/no-shop provisions and anti-assignment provisions (collectively, the "<u>Lease Preservation Rights</u>")—that facilitate the Lessee's national growth strategy. The Lease Preservation Rights are designed to ensure the Lessee's use of the Spectrum for at least the next two decades and are necessary because access to the Spectrum provided by each FCC Lease is a unique part of the Lessee's broader strategy and furthers its national deployment.

DocuSign Envelope ID: AF261333-8750-4EDC-8A46-0560734575

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: January 17, 2023
Chicago, Illinois

By: _____
Paul McCarthy
Senior Director Spectrum Portfolio Management and Strategy
T-Mobile US, Inc.