**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 20-12345 (MG) |
| | ) | |
| THE ROMAN CATHOLIC DIOCESE OF | ) | Chapter 11 |
| ROCKVILLE CENTRE, NEW YORK, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Iain Nasatir, Esq.
Karen Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

**BURNS BAIR LLP**
Timothy W. Burns (*pro hac vice*)
Jesse J. Bair (*pro hac vice*)
10 E. Doty St., Suite 600
Madison, Wisconsin 53703
608-286-2808
tburns@burnsbair.com
jbair@burnsbair.com

*Attorneys for Official Committee of Unsecured Creditors.*

Dated:  New York, New York
         January 19, 2023

DOCS_NY:46709.11 18491/002

# TABLE OF CONTENTS

**Page**

SECTION I . RULES OF INTERPRETATION..............................................................................1

SECTION II. DEFINITIONS ........................................................................................................2

SECTION III. PLAN OBJECTIVES AND MEANS OF FUNDING ........................................16

SECTION IV. TREATMENT OF UNCLASSIFIED CLAIMS....................................................18

SECTION V. CLASSIFICATION OF CLAIMS. ......................................................................19

SECTION VI. TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS............................20

SECTION VII. TREATMENT OF IMPAIRED CLAIMS ........................................................21

SECTION VIII. ACCEPTANCE OR REJECTION OF PLAN ..................................................25

SECTION IX. TRUST AND FUTURE ABUSE CLAIMS TRUST..........................................26

SECTION X. LIQUIDATION AND PAYMENT OF ABUSE CLAIMS .................................27

SECTION XI. INSURANCE MATTERS....................................................................................29

SECTION XII. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................34

SECTION XIII. LITIGATION ....................................................................................................42

SECTION XIV. CONDITIONS PRECEDENT ..........................................................................42

SECTION XV. EFFECTS OF PLAN CONFIRMATION AND DISCHARGE ........................43

SECTION XVI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES.............................................................................................................................52

SECTION XVII. NON-MONETARY COMMITMENTS............................................................52

SECTION XVIII. MISCELLANEOUS PROVISIONS. .............................................................53

SECTION XIX. RECOMMENDATIONS AND CONCLUSION .............................................60

The Official Committee of Unsecured Creditors proposes the following Plan under Chapter 11 of the Bankruptcy Code.

Refer to the Disclosure Statement for this Plan for a discussion of the Debtor's history, businesses, assets, Case, risk factors, summary and analysis of the Plan, and certain other related matters.

Subject to section 1127 of the Bankruptcy Code and those restrictions on modification in Section XVIII, the Committee reserves the right to amend, alter or modify the Plan one or more times before its substantial consummation.

## SECTION I.
## RULES OF INTERPRETATION

1.1    The rules of construction in Bankruptcy Code section 102 apply to this Plan to the extent not inconsistent with any other provision in this Section I.

1.2    In computing any period prescribed or allowed by the Plan, unless otherwise provided, Bankruptcy Rule 9006(a) shall apply.  If any act is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be considered to have been completed as of the required date. Enlargement of any period prescribed or allowed by the Plan shall be governed by Bankruptcy Rule 9006(b).

1.3    A term used in this Plan and not defined in this Plan has the meaning attributed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.4    The definition given to any term or provision supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Trust Documents.

1.5    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

1.6    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.

1.7    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

1.8    Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a part of the Plan.

1.9    Unless otherwise specified, all references to sections, clauses or exhibits are references to this Plan's sections, clauses or exhibits.

1

1.10    Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

1.11    All definitions in the Bankruptcy Code and below will be subject to the rules of construction in section 102 of the Bankruptcy Code. In addition, using the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to" or "relating to" mean regarding, from, based on, arising out of, or connected with.

1.12    Nothing in this Plan is an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

## SECTION II
## DEFINITIONS

2.1    "Abuse" means any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, or any other conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law).

2.2    "Abuse Claim" means any claim (as defined in section 101(5) of the Bankruptcy Code), including, but not limited to any Future Abuse Claim, against the Debtor resulting or arising in whole or in part, directly or indirectly from Abuse, and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese or any other person or entity for whose acts or failures to act the Diocese is or was allegedly responsible. "Abuse Claim" does not include any Abuse Related Contingent Contribution/Reimbursement/Indemnity Claims, Extra-Contractual Claims, or Insurance Claims. To avoid doubt, Abuse Claim includes no Claims first arising after the Petition Date or based only on conduct following the Petition Date.

2.3    "Abuse Claims Reviewer" means the person, including the designee of such person, whose role is defined in the Trust Allocation Protocol. Subject to the Plan's provisions for replacement of the Abuse Claims Reviewer, the Abuse Claims Reviewer is _____.

2.4    "Abuse Claimant" means the holder of an Abuse Claim, the estate of a deceased Abuse Claimant, or the personal executor or personal representative of the estate of a deceased Abuse Claimant and under the Trust Allocation Protocol and the Future Abuse Claim Trust Allocation Protocol.

2.5    "Abuse Litigation" means a lawsuit asserting an Abuse Claim against the Debtor or any Participating Party.

DOCS_NY:46709.11 18491/002

2.6    "Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim" means any Entity's Claim against any other Entity for contribution, indemnity, or reimbursement arising because of such Entity having paid or defended against any Abuse Claim including but not limited to a joint tortfeasor or the like.    To avoid doubt, an Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim is not an Abuse Claim.

2.7    "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, (b) Professional Fee Claims, (c) any Claim specified in section 503(b)(9) of the Bankruptcy Code and (d) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code.

2.8    "Administrative Claimant" means the holder of an Administrative Claim.

2.9    "Allianz Insurers" means, collectively, Interstate Fire & Casualty Company, Fireman's Fund Insurance Company, and National Surety Corporation.

2.10    "Allowance Date" means the date a Claim becomes Allowed.

2.11    "Allowed" means a Claim or part of it:  (a) that has been allowed by a Final Order; (b) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, for which no proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Deadline; (c) as to which a proof of claim in a liquidated and non-contingent amount has been timely filed and as to which no objection has been filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Final Order; (d) that is expressly allowed by the terms of this Plan; or (e) that is deemed allowed under the Trust Allocation Protocol.

2.12    "Arrowood" means Arrowood Indemnity Company, formerly known as Royal Indemnity Company, as successor by merger to Royal Insurance Company of America.

2.13    "Arrowood Insurance Claims" means Insurance Claims against Arrowood.

2.14    "Arrowood Insurance Recoveries" means Insurance Recoveries regarding Arrowood Insurance Claims.

2.15    "Avoidance Rights" means those rights to avoid and recover transfers, liens, or obligations, described in sections 544 – 553, inclusive, of the Bankruptcy Code, and any other rights provided for under applicable law that avoid certain transfers.

2.16    "Award" means the amount payable to an Abuse Claimant as determined in accordance this Plan.

2.17    "Ballot" means the ballot used by a Creditor to accept or reject the Plan, and under which Claimants will make certain elections regarding the treatment of their Claims as provided in the Plan.

2.18   "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, and any amendments thereto applicable to this Case.

2.19   "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, or such other court having jurisdiction over this Case or any proceeding within.

2.20   "Bankruptcy Rules" means the Rules and Forms of Practice and Procedures in Bankruptcy promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to the Case, with all amendments and modifications thereto.

2.21   "Bishop" means Bishop John O. Barres, or such other individual who may become the acting diocesan bishop of the Diocese.

2.22   "Business Day" means any day other than Saturday, Sunday, or a "legal holiday," as that term is defined in Bankruptcy Rule 9006(a).

2.23   "Canon Law" means and refers to the 1983 Code of Canon Law applicable to the Roman Catholic Church.  References to Canon Law in the Plan are for discussion purposes only. Nothing in the Plan or any Plan Document shall make Canon Law binding on any Person; nor shall Canon Law govern any provision of the Plan or any Plan Document.

2.24   "Case" means the case under Chapter 11 of the Bankruptcy Code commenced by The Roman Catholic Diocese of Rockville Centre on October 1, 2020, Case No. 20-12345.

2.25   "Cash" means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

2.26   "Causes of Action"  means any claims, demands, rights, actions, causes of action and suits of the Debtor's Estate, of any kind or character, known or unknown, suspected or unsuspected, matured or unmatured, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, of the Debtor's Estate, including but not limited to (1) rights of setoff, counterclaim or recoupment, and Claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims or interests; (3) Claims under section 362 of the Bankruptcy Code; (4) such Claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Rights; (6) claims for tax refunds; (7)  and (8) any other claims which may be asserted against third parties or insiders.

2.27   "Cemetery" means the Catholic Cemeteries of the Roman Catholic Diocese of Rockville Centre, Inc. and Diocese of Rockville Centre Catholic Cemetery Permanent Maintenance Trust.

2.28   "Channeled Claim" means any Abuse Claim, and/or Claim against a Participating Party or Settling Insurer arising from, in connection with, or related to an Abuse Claim or any of the Settling Insurer Policies, including any Related Insurance Claim.  Each Claim described in this Section shall include all such Claims whenever and wherever arising or asserted, whether sounding

4

in tort, contract, warranty or any other theory of law, equity or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy. A Channeled Claim does not include an Abuse Claim against: a Person having personally committed an act or acts of Abuse, and the Holy See. A Channeled Claim includes any Claim against a Participating Party or Settling Insurer based on allegations it is an alter ego of an Entity that is not a Participating Party or Settling Insurer or that the Participating Party's or Settling Insurer's corporate veil should be pierced as to Claims against an Entity that is not a Participating Party or Settling Insurer.

2.29    "Channeling Injunction" means the injunction provided for under Section 16.9 and any injunction provided for in, or required by, any Bankruptcy Court-approved agreement with a Participating Party or a Settling Insurer.

2.30    "Chapter 11 Professionals" means, collectively, the Debtor's Professionals, the Future Claims Representative, the Future Claims Representative's Professionals, the Special Mediator, the Special Mediator's Professionals, the Mediator, and the Committee's Professionals.

2.31    "Claim" means any past, present or future claim, demand, action, requests Cause of Action, suit, proceeding or liability of any kind or nature, whether at law or equity, known or unknown, asserted or unasserted, expected or unexpected, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, required, injunctive, or any other relief, including cross-claims, counterclaims, third-party claims, suits lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights Causes of Action, orders, or  claims, as that term is defined in section 101(5) of the Bankruptcy Code; despite any statute of limitations defense.

2.32    "Claimant" means a holder of a Claim.

2.33    "Claims Bar Date" means any date set by Final Order of the Bankruptcy Court as the last date for filing Claims against the Estate, including (i) March 30, 2021 (General Bar Date), (ii) August 14, 2021 (Sex Abuse Claim Bar Date), and (iii) October 10, 2022 (Adult Abuse Claims Bar Date).

2.34    "Claims Objection Deadline" means, unless extended by the Court, the first Business Day that follows the sixtieth (60th) day after the Effective Date, by which any objection to a Claim (excluding Class 4 Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

2.35    "Closing" means the payments and transfers to the Trust of those assets required to be paid and transferred under Section 10.10.2.

2.36    "Co-Defendant" means a defendant in a lawsuit in which the Debtor is also named as a defendant, and/or who is alleged to be fully or partially responsible for a Claim asserted, or which may be asserted in the future, against both such defendant and the Debtor, including Co-Debtor as described in section 509 of the Bankruptcy Code. A Participating Party or Settling Insurer is not a Co-Defendant.

5

2.37    "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Case, as such committee may be reconstituted occasionally.

2.38    "Committee's Professionals" means all professionals that the Committee has retained or may retain to provide professional services under section 1103(a) of the Bankruptcy Code and/or retained by Bankruptcy Court order, including the *Order Authorizing the Retention of Experts* (Docket No. 783).

2.39    "Confirmation Date" means the date of the entry of the Confirmation Order.

2.40    "Confirmation Hearing" means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued occasionally.

2.41    "Confirmation Order" means a Final Order confirming the Plan.

2.42    "Contingent" means, regarding a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the duty to make payment on which depends upon a future event that might occur.

2.43    "Contribution Date" means the fifteenth (15th) day after entry of the Confirmation Order.

2.44    "Current Obligations" means (a) all accounts payable and other liabilities or obligations of the Debtor that arose or accrued in the ordinary course of the Debtor's business after the Petition Date and before the Confirmation Date (excluding any Abuse Claims) and (b) any taxes incurred after the Petition Date and became or become legally due by the Debtor after the Petition Date and before the Confirmation Date.

2.45    "Debtor" means The Roman Catholic Diocese of Rockville Centre, a New York not-for-profit corporation.

2.46    "Debtor's Professionals" means all professionals that the Debtor has retained or may retain to provide professional services under section 1103(a) of the Bankruptcy Code and/or retained by Bankruptcy Court order, including the *Order Authorizing the Retention of Experts* (Docket No. 783).

2.47    "Department of Education" means the Department of Education, Diocese of Rockville Centre.

2.48    "Diocese" means The Roman Catholic Diocese of Rockville Centre, the Debtor or the Reorganized Debtor.

2.49    "Disallowed Claim" means (i) a Claim, or any part of it, that has been disallowed by a Final Order; (ii) a Claim listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or considered timely filed with the Bankruptcy Court under the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim not listed in the Schedules and as to which no proof of Claim has been timely filed or

DOCS_NY:46709.11 18491/002

considered timely filed with the Bankruptcy Court under the Bankruptcy Code, Final Order, or other applicable law.

2.50    "Disclosure Statement" means the Disclosure Statement relating to this Plan, as it may be amended occasionally.

2.51    "Disclosure Statement Order" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

2.52    "Disputed Claim" means a Claim as to which a proof of Claim is filed or is considered filed under Bankruptcy Rule 3003(b)(1) and as to which an objection: (1) has been timely filed; (2) has neither been overruled nor been denied by a Final Order; and (3) has not been withdrawn.

2.53    "Distribution" means any transfer of Cash or other property or instruments to a Claimant by the Debtor, Reorganized Debtor, or the Trustee.

2.54    "Direct Action Claim" means any Claim by any Entity against a Settling Insurer identical or similar to, or relating to, any Abuse Claim.

2.55    "Ecclesia" means Ecclesia Assurance Company.

2.56    "Effective Date" means the first Business Day after the Confirmation Date on which (i) all conditions to effectiveness specified in Section 14.1 have been satisfied or waived and (ii) no stay of the Confirmation Order is in effect.

2.57    "Estate" means the bankruptcy estate of the Debtor as created under section 541 of the Bankruptcy Code.

2.58    "Evanston" means Evanston Insurance Company, successor by merger to Associated International Insurance Company.

2.59    "Exculpated Parties" means the Participating Parties; the Released Parties; the Settling Insurers, the Committee and each of its members and each of their representatives; the Debtor's Professionals; the Committee's Professionals; the Future Claimant Representative; the Future Claimant Representative's Professionals; the Special Mediator; the Special Mediator's Professionals; the Mediator; the Settling Insurers; and all of their respective Related Parties.

2.60    "Extra-Contractual Claim" means any Claim against any Settling Insurer relating to: (a) allegations that any Settling Insurer acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim because of alleged bad faith; (b) failure to act in good faith; (c) failure to provide Insurance Coverage under any Insurance Policy; (d) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied or otherwise; (e) violation of any statute, regulation or code governing unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising, including any violation of any unfair claims practices act or similar statute, regulation, or code; (f) failure to investigate or provide a defense or an adequate defense; (g) any other act or omission of any Settling Insurer of any type for which the claimant seeks relief other

7

than coverage or benefits under a policy of insurance; (h) any Settling Insurer's handling of any Claim or any request for Insurance Coverage, including any request for coverage for and/or defense of any Claim, including any Abuse Claim; (i) any Claim that, directly or indirectly relates to the Insurance Policies and any contractual duties arising therefrom, including any contractual duty to defend any party thereto against any Abuse Claims; and/or (j) the conduct of the parties regarding the negotiation of any Insurance Settlement Agreement.

2.61    "Final Order" means an order, judgment, or other decree (including any modification of amendment thereof) of the Bankruptcy Court, a U.S. District Court, or any other court having jurisdiction that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal or review has been taken, (i) it has been resolved and no longer remains pending or (ii) the Debtor, the Committee, or the Trustee (after the Effective Date) and a Participating Party or Settling Insurer, as applicable, have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order.

2.62    "Full Settlement Alternative" means the implementation and operation of the Plan if there is a full settlement among the Debtor, the Committee, the Other Insured Entities and the Insurers in SECTION III hereof.

2.63    "Future Abuse Claim" means an Abuse Claim that occurred before the Petition Date, but was not filed by the Sexual Abuse Bar Date and for which a valid legal excuse for not filing by the Sexual Abuse Bar Date exists. For the avoidance of doubt, Future Abuse Claims are not classified in Class 4 (Abuse Claims) and are classified as Future Abuse Claims in Class 7.

2.64    "Future Abuse Claims Trust" means the trust to be established under the Plan and the Future Abuse Claims Trust Agreement. For the avoidance of doubt, "Future Abuse Claims Trust" does not include the Trust.

2.65    "Future Abuse Claims Trust Agreement" means the agreement attached as Exhibit ___ to the Plan.

2.66    "Future Abuse Claims Trust Allocation Protocol" means the protocol for the allocation, treatment and distribution of Future Abuse Claims Trust Assets substantially in the form attached as Exhibit _____ to the Plan.

2.67    "Future Abuse Claims Trust Assets" means all property funded to the Future Abuse Claims Trust under the Plan.

2.68    "Future Abuse Claims Trust Documents" means the Future Abuse Claims Trust Agreement, the Future Abuse Claims Trust Allocation Protocol, and other documents defined as "Future Abuse Claims Trust Documents" in the Future Abuse Claims Trust Agreement and shall include any documents reasonably necessary or desirable to implement the Plan that relate to the creation, administration, operation and funding of the Future Abuse Claims Trust, as any of the same may be amended, modified, or supplemented

2.69    "Future Abuse Claims Trustee" means _____, the trustee of the Future Abuse Claims Trust, and any successor trustee appointed under the Future Abuse Claims Trust Agreement.

2.70    "Future Claimants Representative" means Robert E. Gerber in his role as Future Claimant Representative in accordance with the *Order Appointing a Legal Representative for Future Claimants* (Docket No. 799), or such other individual who may be appointed to succeed Robert E. Gerber.

2.71    "Future Claimants Representative's Professionals" means all professionals that the Future Claimants Representative has retained or may retain to provide professional services under section 1103(a) of the Bankruptcy Code and/or retained by Bankruptcy Court order, including the *Order Authorizing the Retention of Experts* (Docket No. 783).

2.72    "General Unsecured Claim" means any Claim against the Debtor not otherwise separately classified under the Plan.

2.73    "Insurance Claims" means all Claims against any Non-Settling Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by:

(a) the Debtor related to an Abuse Claim including those for (i) indemnity and payment of any Abuse Claim; (ii) failure or refusal to provide Insurance Coverage of an Abuse Claim under any insurance policy; (iii) tortious or wrongful Claims handling including the failure or refusal to timely compromise and settle any Abuse Claims against the Debtor under any insurance policy; and (iv) the interpretation or enforcement of the terms of any insurance policy; and/or

(b) the Participating Parties or Settling Insurers related to an Abuse Claim against the Participating Party or Settling Insurer, whether independently or jointly liable with the Debtor on such Abuse Claim, including (i) indemnity and payment of any Abuse Claim; (ii) failure or refusal to provide Insurance Coverage under any Insurance Policy for an Abuse Claim against the Debtor, a Participating Party or a Settling Insurer; (iii) tortious or wrongful Claims handling including the failure or refusal to timely compromise and settle any Abuse Claims against the Debtor, a Participating Party, or a Settling Insurer under any insurance policy; and (iv) the interpretation or enforcement of the terms of any insurance policy.

The term "Insurance Claims" includes any Claims against a Non-Settling Insurer for reimbursement of defense costs or related expenses under any Non-Settling Insurer's Insurance Policy incurred by the Debtor or a Participating Party through or after the Effective Date.

2.74    "Insurance Coverage" means insurance available under any Insurance Policy, whether known or unknown to the Debtor or the Committee, to indemnify and/or defend all or any part of an Abuse Claim asserted against (a) the Debtor and/or (b) a Participating Party.

2.75    "Insurance Coverage Adversary Proceeding" means the adversary proceeding docketed as Adversary Proceeding No. 19-02021 pending in the Bankruptcy Court and any related proceedings in the District Court, including case Nos. 20-cv-11011-JLR (S.D.N.Y.); 21-cv-00071-JPC (S.D.N.Y.); 21-cv-09304-JLR (S.D.N.Y.); and 21-cv-007706-AKH (S.D.N.Y.) pending in the District Court;  the Court of Appeals; or the United States Supreme Court.

9

2.76    "Insurance Policy" means an insurance policy providing Insurance Coverage, including, without limitation, those policies on Exhibit ____.

2.77    "Insurance Recoveries" means the rights to any proceeds, including any interest or income earned thereon, and other relief, from (a) any award, judgment, relief, or other determination entered or made as to any Insurance Claims, including regarding any Causes of Action related to or arising in connection with any Insurance Claims; (b) any amounts payable by an Insurer under any settlement agreement with the Debtor, a Participating Party or a Settling Insurer regarding Insurance Claims; and (c) any proceeds of any Insurance Policy paid or payable to the Debtor, a Participating Party or a Settling Insurer regarding Insurance Claims.  Insurance Recoveries do not include any recoveries of a Settling Insurer under any agreement or contract providing reinsurance to the Settling Insurer.

2.78    "Insurance Settlement Agreements" means, collectively or separately any agreements between the Debtor and/or the Trust and any Settling Insurer that resolve Insurance Claims under Section 11.8.

2.79    "Insurer" means a Person (including all of its affiliates, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy, except that Insurer does not include Arrowood.

2.80    "Interest" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

2.81    "Lay Pension Plan" means the Diocese of Rockville Centre Pension Plan on the terms and conditions set forth in the Diocese of Rockville Centre Pension Plan Amendment and Restatement as of January 1, 2020, as the same may from time to time be restated or amended.

2.82    "Litigation Only Alternative" means the operation and implementation of the Plan if there are no settlements among the Committee, the Other Insured Entities, and the Insurers or the Committee otherwise elects not to accept the Partial Settlement Alternative in Section III.

2.83    "Lexington" means Lexington Insurance Company.

2.84    "LMI" means, collectively, Certain Underwriters at Lloyd's, London subscribing various Insurance Policies; Ancon Insurance Co. (UK) Ltd.; Assicurazioni Generali T.S.; Dominion Insurance Co. Ltd.; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd. and London & Edinburgh Insurance Co. Ltd. as successor to London & Edinburgh General Insurance Co. Ltd.); River Thames Insurance Company Limited (as the legal successor to Unionamerica Insurance Company Limited, which was itself the legal successor to: (i) St. Paul Reinsurance Company Limited (formerly known as Mercury Reinsurance Company (UK) Limited and St. Paul Fire & Marine Insurance Company (UK) Limited) and (ii) certain business of St. Paul Travelers Insurance Company Limited (formerly known as St. Katherine Insurance Company Limited, St. Katherine Insurance Company Public Limited Company and St Paul International Insurance Company Limited); Riverstone Insurance (UK) Limited (as successor in interest to Terra Nova Insurance Ltd.); Harper Insurance Ltd. (formerly known as Turegum Insurance Company); and Sompo Japan Nipponkoa Insurance Company of Europe Limited

10

(formerly known as Yasuda). "LMI" does not include any other Insurers, including insolvent Insurers, who subscribed to Insurance Policies attributable to LMI.

2.85    "Mediator" means Paul J. Van Osselaer in his role under the Mediation Order or such other individual that may be appointed to mediate the Case.

2.86    "Mediation Order" means the *Order Appointing a Mediator*, (Docket No. 794).

2.87    "Medicare Beneficiary" means an Abuse Claimant who has received, applied for, or is eligible to receive Medicare or Medicaid benefits.

2.88    "Non-Insurance Trust Assets" means all funds and assets received by the Trust from the Diocese and any Participating Parties.

2.89    "Non-Settling Insurer" means Arrowood and any Insurer that is not a Settling Insurer.

2.90    "Other Insured Entities" means those Persons on Exhibit __ that are insured or covered or allegedly insured or covered under an Insurance Policy. "Other Insured Entities" does not include a Person having personally committed an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party, the Seminary, the Cemetery, the Department of Education, and the Holy See.

2.91    "Other Priority Claims" are all Priority Claims except Priority Tax Claims, Professional Claims, and U.S. Trustee Fees.

2.92    "Partial Settlement Alternative" means the operation or implementation of the Plan if the Committee elects to accept less than all the settlements with the Other Insured Entities and any Insurers at set forth in SECTION III.

2.93    "Participating Party" means Other Insured Entities, the Seminary, the Cemetery, the Department of Education or any other Persons or Entities providing consideration in exchange for (a) the release of any Abuse Related Contribution/Indemnity Claim by the Debtor against such Participating Party, (b) the benefit of the Channeling Injunction, and/or (c) any other benefits for Participating Parties under the Plan. For clarity, the Persons and Entities listed on Exhibit ___ are Participating Parties. Upon the sole consent of the Trustee, a Person or Entity may become a Participating Party after the Effective Date if the Bankruptcy Court approves the agreement between the Person or Entity and the Trustee under its retained jurisdiction. Upon the Bankruptcy Court's final approval of such an agreement, Exhibit __ will be amended by the Trustee to include such Person or Entity. For the purposes of defining a Participating Party, the Entities on Exhibit __ shall include their respective predecessors, successors, assigns, employees, officers, agents, attorneys, Representatives, and directors. A Settling Insurer is not a Participating Party. In no event shall a Person having personally committed an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party or the Holy See become a Participating Party.

2.94    "Penalty Claim" means a Claim for a fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including any Claim not meant to compensate the Claimant for actual pecuniary loss.

2.95    "Pension Plans" means the Lay Pension Plan and the Priest Pension Plan.

2.96    "Person" means an individual or entity, a corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated organization or association, federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality of it; and any other individual or entity within the definitions of (i) "person" in section 101(41) of the Bankruptcy Code or (ii) "entity" in section 101(15) of the Bankruptcy Code.

2.97    "Personal Injury Claim" means the Claims listed on Exhibit __. To avoid doubt, no Abuse Claim is a Personal Injury Claim.

2.98    "Petition Date" means October 1, 2020, the date the Debtor filed its petition commencing the Case.

2.99    "Plan" means this Plan of Reorganization (and all exhibits annexed thereto), Plan Documents and any modifications and/or amendments thereto.

2.100    "Plan Documents" means all agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated occasionally, that are necessary or appropriate to implement the Plan, the Trust, and the Future Abuse Claims Trust.

2.101    "Priest Pension Plan" means the Diocese of Rockville Centre Qualified Retirement Plan for Diocesan Priests on the terms and conditions set forth in the Diocese of Rockville Centre Qualified Retirement Plan for Diocesan Priests amendment and restatement effective as of January 1, 2020, as the same may from time to time be restated or amended.

2.102    "Post-Confirmation Notice Parties" means the Reorganized Debtor, the Trust, the Office of the U.S. Trustee and any Person that files a request to be a Post-Confirmation Notice Party.

2.103    "Priority Claim" means any Claim which, if Allowed, would be entitled to priority under section 507 of the Bankruptcy Code.

2.104    "Priority Claimant" means the holder of a Priority Claim.

2.105    "Priority Tax Claim" means a claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

2.106    "Professional" means any Person or Entity that is a Debtor's Professional, Committee's Professional, Future Claimant Representative, Future Claimant Representative's Professional, Special Mediator, Special Mediator's Professional, or Mediator.

2.107    "Professional Fee Claim" means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of the Professionals before the Effective Date.

DOCS_NY:46709.11 18491/002

2.108   "Pro Rata" means proportionate, and when applied to a Claim means the ratio of the amount distributable because of an Allowed Claim in a Class to the amount distributable because of all Allowed Claims in such class.

2.109   "Proponent" means the Committee.

2.110   "Punitive Damages" means the part of a Claim for punitive or exemplary damages.

2.111   "Related Insurance Claim" means (i) any Claim against any Settling Insurer for defense, indemnity, reimbursement, contribution, subrogation, or similar relief that, directly or indirectly, relates to an Abuse Claim; (ii) any Extra-Contractual Claim that, directly or indirectly, relates to any Abuse Claim, including any Claim that, directly or indirectly, relates to the Settling Insurers' handling of any Abuse Claim; (iii) any Direct Action Claim; and (iv) any Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim.

2.112   "Related Parties" means, regarding any Entity, such Entity's present or former members, parents, indirect parents, principals, shareholders, managers, claims managers, officers, directors, employees, representatives, attorneys, or agents acting in such capacity and the predecessors, successors, assignors and assigns of each of the foregoing.

2.113   "Released Parties" means (a) the Participating Parties and their Related Parties and (b) a Settling Insurer and such Settling Insurer's Related Parties to the extent that the liability of such Related Party arises under Insurance Policies issued by the Settling Insurer.  The term "Released Parties" does not include: a Person having personally committed an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party and the Holy See.

2.114   "Reorganized Debtor" means the Debtor on and after the Effective Date.  Unless otherwise expressly stated or the context otherwise requires, references to "the Debtor" and "the Reorganized Debtor" throughout the Plan are an effort to anticipate whether an event may occur before or after the Effective Date.  In this regard, and generally for the Plan, any written agreement made by the Diocese as part of the Plan before the Effective Date (unless provided otherwise) will survive the Confirmation Date and the Effective Date and will bind the Reorganized Debtor and every other party to such (including, but not limited to, the Plan as confirmed).

2.115   "Representatives" means the current and former officers, directors, agents, attorneys, employees, financial advisors and legal representatives of a Person or Entity, but excluding (i) a Person having personally committed an act or acts of Abuse resulting in a Claim against the Debtor, a Participating Party or a Settling Insurer, (ii) a successor or predecessor of the Debtor for such successor's or predecessor's independent liability for an act or acts of Abuse, and (iii) the Holy See.

2.116   "Revested Assets" means all assets and/or property, real or personal, owned by the Debtor that are not transferred to the Trust under the Plan.  Notwithstanding the foregoing, any Insurance Policy of a Non-Settling Insurer is not a Revested Asset.

2.117   "S/A/P Claims" means, collectively, Secured Claims, Administrative Claims, Priority Claims, and Priority Tax Claims.

DOCS_NY:46709.11 18491/002

2.118   "S/A/P Claims Reserve" means the reserve to be established by the Reorganized Debtor for Administrative Claims, Priority Claims, and Priority Tax Claims.

2.119   "Schedules" means the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs filed pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

2.120   "Section 363 Sale" means a sale of property under section 363 of the Bankruptcy Code.

2.121   "Secured Claims" means a Claim (i) secured by a lien on collateral to the extent of the value of such collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any right of setoff of the Holder thereof in accordance with section 553 of the Bankruptcy Code.

2.122   "Seminary" means the Seminary of the Immaculate Conception of the Diocese of Rockville Centre.

2.123   "Settled" means, regarding a Claim, a Claim resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or a U.S. District Court.

2.124   "Settlement Fund" means a fund established to pay Abuse Claims and costs and expenses of the Trust.  The assets of the Settlement Fund will include cash; personal property; real property, or proceeds of property sales; Avoidance Rights, except those against Participating Parties and the Settling Insurers compromised and released under the Plan; and certain Causes of Action.

2.125   "Settlement Offer" means each settlement offer made to the Other Insured Entities and each Insurer in Section 3.1 and represents an offer to compromise with a particular Entity and its Related Parties.

2.126   "Settling Insurer" means: (a) each of those Insurers on Exhibit ___ to the Plan, as the same may be amended under this Plan; and (b) such Insurer's predecessors, successors and assigns, but only to the extent that: (i) such predecessor's liability was assumed by the Insurer on Exhibit ___ to the Plan, and (ii) such successor's or assign's liability is derivative of the liability of the Insurer on Exhibit ___to the Plan and not independent of the liability of the Insurer on Exhibit ___ to the Plan.  For purposes of defining the releases, injunctions, exculpation provisions, and other provisions and protections provided to Settling Insurers herein, the terms "Settling Insurer," "Released Parties," and "Exculpated Parties" herein also include all Related Parties, if their liability arises out of, or is related to, any Settling Insurer Policy.  Upon the sole consent of the Trustee, a Person or Entity may become a Settling Insurer after the Effective Date if the Bankruptcy Court approves the agreement between the Person or Entity and the Trustee under its retained jurisdiction.  Upon the Bankruptcy Court's final approval of such an agreement, Exhibit ___ will be amended by the Trustee to include such Person or Entity.  Under the Full Settlement Alternative, all Insurers will be Settling Insurers.

2.127   "Settling Insurer Injunction" means the injunction(s) provided in Section 15.10 and any injunction provided in an agreement whereby an Insurer becomes a Settling Insurer.

2.128   "Settling Insurer Policies" means "Policies" as defined in any settlement agreement between a Settling Insurer and the Debtor (or the Trust for any settlement agreements entered into after the Effective Date).

2.129   "Special Mediator" means Arthur J. Gonzalez in his role as special mediator under the *Joint Stipulation and Order Concerning the Independent Advisory Committee and the Investigation and Pursuit of Certain Claims* (Docket No. 512).

2.130   "Special Mediator's Professionals" means professionals that the Special Mediator has retained or may retain to provide professional services under section 1103(a) of the Bankruptcy Code and/or retained by Bankruptcy Court order, including the *Order Authorizing the Retention of Experts* (Docket No. 783).

2.131   "Total Settlement Demand Amount" means the aggregate of the Settlement Offers.

2.132   "Trust" means the trust to be established under the Plan and the Trust Agreement. For the avoidance of doubt, "Trust" does not include the Future Abuse Claims Trust.

2.133   "Trust Agreement" means the agreement attached as Exhibit ___ to the Plan.

2.134   "Trust Allocation Protocol" means the protocol for the allocation, treatment and distribution of Trust Assets substantially in the form attached as Exhibit ____ to the Plan.

2.135   "Trust Assets" means all property funded to the Trust under the Plan.

2.136   "Trust Documents" means the Trust Agreement, the Trust Allocation Protocol, and other documents defined as "Trust Documents" in the Trust Agreement and shall include any documents reasonably necessary or desirable to implement the Plan that relate to the creation, administration, operation and funding of the Trust.

2.137   "Trustee" means _____, the trustee of the Trust, and any successor trustee appointed under the Trust Agreement.

2.138   "U.S. District Court" means a United States District Court.

2.139   "Unclaimed Property" means any Cash or other property unclaimed for one hundred and eighty (180) days after the Distribution.

2.140   "U.S. Trustee" means the Office of the United States Trustee for the Southern District of New York.

2.141   "Unresolved" means, regarding a Claim, a Claim that has neither been Allowed or Disallowed nor liquidated.

# SECTION III
# PLAN OBJECTIVES AND MEANS OF FUNDING

3.1    **Committee's Offer To Other Insured Entities and Insurers to Resolve Abuse Claims**.

| Party | Settlement Offer |
|---|---|
| Other Insured Entities | $200,000,000.00 |
| Cemetery | $80,000,000.00 |
| Seminary | 85% of the net proceeds of the sale of 206 acres of the real property owned by the Seminary[1] |
| Department of Education | $6,000,000.00[2] |
| LMI | Amount provided directly to LMI under the Mediation Order |
| Allianz Insurers | Amount provided directly to Allianz Insurers under the Mediation Order |
| Lexington | Amount provided directly to Lexington under the Mediation Order |
| Evanston | Amount provided directly to Evanston under the Mediation Order |
| Ecclesia | $15,000,000.00 |

3.2    **Deadline To Accept and Fund Settlement Offer**.

The deadline for each Entity to either accept or reject its Settlement Offer is the date first set for the hearing on approval of the Disclosure Statement, or such later date as agreed to by the Committee in its sole discretion.  The deadline for each Entity to fund its Settlement Offer, or such

---

[1] The Seminary shall be entitled to retain possession and title to the buildings and approximately sixteen (16) acres associated with the operations of the Seminary; provided however, that if any portion of this property is leased, sold, or subject to an option for lease or sale on or before the date that is six months after the termination of the Future Abuse Claims Trust for the benefit of Abuse Claimants, 85% of the net proceeds of such transaction shall be paid to the Trust.

[2] In addition to the payment described above, the Department of Education must provide the Trust with a reversionary interest in the real and/or personal property owned by the Department of Education if any portion of the property is leased, sold, or subject to an option for lease or sale on or before the date that is six months after the termination of the Future Abuse Claims Trust for the benefit of Abuse Claimants.

16

other settlement amount as agreed to by the Committee in its sole discretion, is the Contribution Date.

### 3.3    Full Settlement Alternative

The Full Settlement Alternative occurs if all of the Other Insured Entities; the Cemetery, Seminary, and Department of Education; and all of the Insurers accept the Settlement Offers or the Committee agrees to accept a different amount in lieu thereof.  Under the Full Settlement Alternative, all Other Insured Entities, Cemetery, Seminary, and Department of Education become Participating Parties and all Insurers become Settling Insurers.  The Trust Assets will consist of the Settlement Fund, including contributions from the Diocese, the Participating Parties, and the Settling Insurers.  Trust Assets will fund Distributions to Abuse Claimants, under the Trust Allocation Protocol. The Diocese and Participating Parties will retain their Arrowood Insurance Claims.

### 3.4    Partial Settlement Alternative

Only in the Committee's sole and absolute discretion, the Partial Settlement Alternative occurs if, by the first date set for the hearing on approval of the Disclosure Statement, (a) the Other Insured Entities, Seminary, Cemetery, and Department of Education commit to fund their Settlement Offer or (b) if the Committee agrees to accept a different amount in lieu thereof, but less than all of the Insurers (a) accept their Settlement Offers or (b) commit to fund a different amount that the Committee accepts in lieu of their Settlement Offer.  Under the Partial Settlement Alternative, all Other Insured Entities, Cemetery, Seminary, and Department of Education become Participating Parties.  Only those Insurers that accept their respective Settlement Offers or for whom the Committee agrees to accept a different amount in lieu thereof become Settling Insurers. The Diocese's, the Participating Parties' and the Settling Insurers' Insurance Claims against any Non-Settling Insurer, except Arrowood, shall be transferred to the Trust and shall be a Trust Asset. The Trust Assets will consist of the Settlement Fund, including contributions from the Diocese, the Participating Parties, and the Settling Insurers, if any, and the assignment of Insurance Claims (except Arrowood Insurance Claims) held by the Diocese, the Settling Insurers, and the Participating Parties.  The Diocese and the Participating Parties will retain their Arrowood Insurance Claims.  Trust Assets will fund Distributions to Abuse Claimants, under the Trust Allocation Protocol.  Under the Partial Settlement Alternative, Abuse Claimants whose Claims occurred during the coverage period of a Non-Settling Insurers' policy may, subject to the Trustee's consent and the Trust Documents, pursue their Abuse Claims in a court of competent jurisdiction against the Debtor and any other defendant; *provided, however*, that any such Claims are subject to the terms of this Plan and that Claims against the Debtor or a Participating Party may be paid only from the proceeds of an Insurance Policy issued by a Non-Settling Insurer.

The Diocese, each Participating Party, and Settling Insurer will receive the benefit of injunctions and releases provided under this Plan.  Nothing in this Plan is intended to replace and does not affect, diminish, or impair the liabilities of any Non-Settling Insurer or any Person that is not a Participating Party under applicable non-bankruptcy law, including the law governing joint and several liabilities.

3.5     **Litigation Only Alternative**

The Litigation Only Alternative occurs if the Other Insured Entities do not commit to fund the Settlement Offer and the Committee does not agree to accept a different amount in lieu thereof. The Other Insured Entities and the Non-Settling Insurers will not be released from any of their obligations and/or liabilities and shall not benefit from any injunctions. The Trust Assets will consist of the Settlement Fund, including contributions from the Diocese and the assignment of the Diocese's Insurance Claims. For clarity, the Insurance Claims of the Other Insured Entities who are not Participating Parties will not be assigned under the Litigation Only Alternative. Trust Assets will fund Distributions to Abuse Claimants, under the Trust Allocation Protocol. Under the Litigation Only Alternative, Abuse Claimants may elect to pursue their Abuse Claims in any court of competent jurisdiction against the Debtor and any other defendant; *provided, however*, that any such Claims and the pursuit of any such litigation are subject to the terms of this Plan and the Trust Allocation Protocol and that Claims against the Debtor may recover only from the proceeds of an Insurance Policy and may not recover from any Revested Assets.

# SECTION IV
# TREATMENT OF UNCLASSIFIED CLAIMS.

4.1     **Administrative Claims**.

Each holder of an Allowed Administrative Claim against the Debtor shall, in full satisfaction, receive settlement, release, and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, either (a) on or as soon as possible following the Effective Date or, if later, the Allowance Date; or (b) upon such terms as agreed to in writing by the Administrative Claimant. Provided, however, that any Administrative Claim incurred post-petition by the Debtor in the ordinary course of its operations or arising under one or more post-petition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed under the terms of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Diocese, on the one hand, and the holder of such Administrative Claim, on the other.

4.2     **Professional Claims**.

4.2.1     **Bar Dates for Professional Claims**. All Professionals or other Persons requesting compensation or reimbursement of expenses under any of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Case) shall file and serve on the Post-Confirmation Notice Parties an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than (a) forty-five (45) days after a notice of the Effective Date is filed with the Bankruptcy Court, or (b) such later date as the Bankruptcy Court shall order upon application made before the end of such 45-day period (the "Professional Claims Bar Date")

4.2.2    **Objections to Professional Claims**.  Objections to Professional Claims or Claims of other Persons for compensation or reimbursement of expenses must be filed and served on the Post-Confirmation Notice Parties and the Professionals or other Persons to whose application the objections are addressed on or before  (a) forty-five (45) days after the Professional Claims Bar Date or (b) such later date as (i) the Bankruptcy Court shall order upon application made before the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Professional or other Person.

4.2.3    Notwithstanding anything in Section 4.2, the allowance of a Professional Claim shall not affect, impair, diminish or be an adjudication of any claim excepted from the exculpation in Section 15.8.

4.3    **U.S. Trustee Fees.**

All fees due and payable under 28 U.S.C. § 1930 and not paid before the Effective Date shall be paid in Cash as soon as practicable after the Effective Date.  After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee, in Cash, until the Case is closed, and a Final Decree is entered.  In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Diocese.  The Trust will have no liability for U.S. Trustee fees.

4.4    **Priority Tax Claims**.

As for each Allowed Priority Tax Claim not paid before the Effective Date, the Reorganized Debtor shall (i) pay such Claim in Cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Diocese, in writing.

4.5    Holders of Administrative Expense Claims and Priority Tax Claims who do not object to confirmation of the Plan shall be deemed to have consented to treatment, as set forth in the Plan, that differs from that set forth in 11 U.S.C. § 1129(a)(9).

**SECTION V**
**CLASSIFICATION OF CLAIMS.**

5.1    All Claims except Administrative Claims and Priority Tax Claims are placed in these classes for all purposes including voting, confirmation of the Plan and distribution under the Plan.  A Claim is classified in a particular class only to the extent the Claim qualifies within the description of that class and is classified in a different class to the extent the Claim qualifies within the description of that different class.  If a Claim is acquired or transferred, the Claim will be placed in the class where it would have been placed if it were owned by the original holder of such Claim. If a Claimant has more than one Claim in the same class, such Claims will be aggregated and treated as a single Claim.  If a Claimant has Claims in different classes, such Claims will be aggregated only within the same class and not between classes.

19

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claims | Unimpaired | Deemed to Accept |
| 3 | RESERVED | Not Applicable | Not Applicable |
| 4 | Abuse Claims (except Future Abuse Claims) | Impaired | Yes |
| 5 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 6 | Personal Injury Claims | Impaired | Yes |
| 7 | Future Abuse Claims | Impaired | Yes |
| 8 | Abuse Related Contingent Contribution/Reimbursement/ Indemnity Claims | Impaired | Deemed to Reject |

5.2     Except regarding Abuse and Personal Injury Claims, the treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each holder of a Claim (regardless of the type of non-Abuse or Personal Injury Claim) may have against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights those holders have in or against the Debtor or its property.  All Distributions under the Plan will be tendered to the entity holding the Claim.  EXCEPT AS SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE FROM AND NO RIGHTS WILL BE RETAINED AGAINST THE DEBTOR OR ITS PROPERTY ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.

## SECTION VI
## TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.

6.1     **Class 1:  Other Priority Claims.**

The holders of Allowed Other Priority Claims will receive either (a) payment from the Reorganized Debtor of the full amount of their Allowed Claims in Cash, without interest on or as soon as practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

6.2     **Class 2: Secured Claims.**

6.2.1     **Impairment and Voting**.  Class 2 is unimpaired under the Plan.  Holders of Secured Claims are deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.  For purposes of distributions under the Plan, each holder of a Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (i.e., Class 2-1, Class 2-2, etc.), and each such subclass is deemed to be a separate Class for the Plan.

6.2.2    **Alternative Treatment**.    On or as soon as practicable following the Effective Date, the Reorganized Debtor in its discretion may select one of these alternative treatments for each Allowed Secured Claim in Class 2, which treatment shall be in full and final satisfaction, settlement and release of, and in exchange for, such Allowed Secured Claim:

(a)    *Abandonment or Surrender*. The Reorganized Debtor shall abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

(b)    *Cash Payment*.    The Reorganized Debtor shall pay to the holder of such Claim Cash equal to the Allowed amount of such Claim upon the sale of the collateral, or such lesser amount to which the holder of such Claim and Reorganized Debtor or the Trust shall agree, in full satisfaction and release of such Claim.

(c)    Unimpairment.  The Reorganized Debtor may leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the Bankruptcy Code.

6.2.3    **Unsecured Deficiency Claim**.  Any unsecured deficiency Claim asserted by a holder of an Allowed Secured Claim in Class 2 shall be filed with the Bankruptcy Court within thirty (30) days following the date of the abandonment or surrender of such Creditor's collateral or such Creditor's receipt of its distribution under the Plan.  Any Allowed unsecured deficiency Claim shall be treated under Section 6.3 of the Plan.

6.3    **Class 5:  General Unsecured Claims.**

General Unsecured Claims shall be unimpaired under the Plan.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which a General Unsecured Claim becomes an Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim, (i) Cash equal to the unpaid part of such Allowed General Unsecured Claim; (ii) reinstatement of such claim to be paid in the ordinary course of business of the Reorganized Debtor; (iii) such other treatment such that it will not be impaired under section 1124 of the Bankruptcy Code; or (iv) such other less favorable treatment as to which the Debtor or the Reorganized Debtor and the Holder of such Allowed General Unsecured Claim shall have agreed upon in writing.

If a General Unsecured Claim is unliquidated and was subject to existing litigation pending in state or federal court before the Petition Date, if the Diocese does not object to such Claim before the Claims Objection Deadline, then following the Claims Objection Deadline, such litigation shall no longer be stayed and such litigation may be continued against the Diocese as the Reorganized Debtor and such litigation shall continue as the same existed on the Petition Date.

**SECTION VII**
**TREATMENT OF IMPAIRED CLAIMS**

7.1    **Class 4: Abuse Claims (Except Future Abuse Claims)**

7.1.1    **Impaired and Voting**.  Class 4 is impaired under the Plan. The Class 4 Claimants are entitled to vote on the Plan. Only for purposes of voting, each Claim in Class 4 is deemed to be Allowed in the amount of $1.00.

7.1.2    **Treatment of Class 4.**  On the Effective Date, the Trust shall pay all Abuse Claims (except Future Abuse Claims) in accordance with and under the Plan and Trust Documents. The payment of the Class 4 Claims by the Trust is not a release, accord or novation of the Debtor's or the Participating Parties' liability because of the Class 4 Claims; provided, however, that the Debtor's liability because of the Class 4 Claims shall be discharged under Bankruptcy Code section 1141(d), subject to Sections 7.1.5 and 15.1 and all of the Participating Parties' liabilities are subject to the Channeling Injunction and releases under the Plan.  Under no circumstance shall the Abuse Claims Reviewer's review of a Class 4 Claim affect the rights of a Non-Settling Insurer. Class 4 Claimants shall have their Claims treated under the Trust Allocation Protocol.  Neither the Trust nor the Diocese have any obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence/prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, though the Trust (or the Diocese, as applicable), may choose to do so.

The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the distributions Class 4 Claimants receive, or are entitled to receive, based on the Plan. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Class 4 Claims.

7.1.3    **Diocese Cooperation with Trustee and Abuse Claims Reviewer.**  The Diocese and its counsel shall reasonably cooperate with the Trustee and the Abuse Claims Reviewer with any inquiries by either in the administration of the Trust Allocation Protocol.

7.1.4    **Class 4 Claim Objections**.  No Class 4 Claimant may challenge the merit, validity, or amount of any other Class 4 Claim.  Except for any objection to a Class 4 Claim filed by the Committee, any objection to a Class 4 Claim pending as of the Effective Date is deemed withdrawn with prejudice.  The Trustee has the exclusive right to object to a Class 4 Claim and shall succeed to the rights of the Committee because of the Committee's objection to a Class 4 Claim.  The Reorganized Debtor shall not have the right to object to a Class 4 Claim.

7.1.5    **Diocese Discharge of Class 4 Claim Liability.**  The Debtor shall be discharged as set forth in Section 15.1 herein of any liability because of all Class 4 Claims, even if the Claimant rejects the Plan.  As provided in Bankruptcy Code section 524(e), unless otherwise provided in this Plan, such discharge shall not affect the liability of any other Person or Entity on, or the property of any other Person or Entity for, the Class 4 Claims including the liability of any Co-Defendant or Non-Settling Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor or the Reorganized Debtor under this Plan and Bankruptcy Code section 1141(d).  Nothing in this Plan is intended to affect, diminish or impair any Class 4 Claimant's rights against a Co-Defendant, including that Co-Defendant's joint and several liability for Abuse.

Notwithstanding the above, to preserve coverage under any Non-Settling Insurer's Insurance Policies, Class 4 Claimants specifically reserve, and do not release, any claims they may have against the Diocese, the Reorganized Debtor, or any other Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct regarding insurance coverage for, or defense or settlement of, any Class 4 Claim, and any such judgments or awards will be handled under the Plan and the Trust Allocation Protocol. The Class 4 Claims will not be released or enjoined as against the Diocese, the Reorganized Debtor, or any other Participating Party for any Abuse that may be covered under any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, the Reorganized Debtor, any other Participating Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to Final Order, but recourse is limited as described above.

7.1.6    **Remand of State Court Actions**.  On the thirtieth (30th) day after the Effective Date, all actions related to Class 4 Claims removed to the Bankruptcy Court shall be remanded to the state courts where the actions originally were commenced; provided that an action shall not be remanded if the plaintiff files a written request to the contrary with the Bankruptcy Court prior thereto.  The Bankruptcy Court shall enter an order in each of the removed actions remanding them under the Plan.

7.1.7    **Litigation of Class 4 Claims Against Non-Settling Insurers.**  Under the Partial Settlement or Litigation Only Alternatives, a Class 4 Claimant, with the consent of the Trustee and under the Trust Allocation Protocol and Trust Agreement, may commence an action against the Diocese and, if applicable, one or more Participating Parties, solely for liquidating a Class 4 Claim in order to pursue Insurance Recoveries regarding such Class 4 Claim from Non-Settling Insurers.  The Diocese will not have to expend any funds regarding such defense, except to the extent required by the terms of any Insurance Policy issued by a Non-Settling Insurer.  Consistent with the discharge provided for in Section 15.1  and the rights of a Participating Party, any judgment obtained in such action may not be enforced against the Diocese, a Participating Party and/or any of the non-insurance assets of the Diocese or such Participating Party, including, but not limited to, the Revested Assets or any assets acquired by the Reorganized Debtor after the Effective Date, and such judgment shall be paid under the Plan and the Trust Allocation Protocol and shall be fully enforceable solely against and paid by any Non-Settling Insurer under the terms of that Non-Settling Insurer's Insurance Policy.  Any recovery from the prosecution of such an action is deemed assigned to the Trust to the extent provided in the Plan, including as provided in Trust Allocation Protocol.

7.2    **Class 6: Personal Injury Claims**

7.2.1    **Impaired and Voting.**  Class 6 is impaired under the Plan.  Class 6 Claimants are entitled to vote on the Plan.  Only for purposes of voting, the claims in Class 6 are deemed to be $1.00.

7.2.2    **Treatment.**  On the Effective Date, the Class 6 Claimants may elect to litigate against the non-Debtor Co-Defendants or select to receive from the Trust $250,000 minus

23

any amounts already expended by the Diocese or the non-Debtor Co-Defendants on pre-petition defense costs relating litigation of such Class 6 Claim.  If a Class 6 Claimant elects to litigate, the Trust shall provide the Reorganized Debtor with $250,000 minus any amounts already expended by the Diocese or the non-Debtor Co-Defendants on pre-petition defense costs relating litigation of such Class 6 Claim to satisfy the self-insured retention under the relevant Ecclesia policy.  Nothing herein shall enlarge the rights or Claims of Class 6 Claimants or limit or waive any defenses to the Class 6 Claims.  Unless otherwise provided in this Plan, the Plan shall not affect the liability of any other Person on, or the property of any other Person for, the Class 6 Claims, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Diocese under this Plan and Section 1141(d) of the Bankruptcy Code.  Nothing in the Plan is intended to affect, diminish, or impair the Class 6 Claimant's right against any other parties, including such party's joint and several liability.

### 7.3   **Class 7: Future Abuse Claims**

7.3.1   **Impaired and Voting.**  Class 7 is impaired under the Plan.  The Future Claims Representative is entitled to vote on this Plan on behalf of Class 7 Claimants. Only for purposes of voting, the Future Claims Representative is deemed to have an Allowed Claim in the amount of $1.00.

7.3.2   **Treatment.**  The Future Abuse Claims Trust will be funded by the Trust with ___ percent (__%) of the Non-Insurance Trust Assets pursuant to the provisions of this Plan.  On the Effective Date, the Future Abuse Claims Trust shall pay all Future Abuse Claims in accordance with and the Plan and Future Abuse Claims Trust Documents.  The payment of the Future Abuse Claims by the Future Abuse Claims Trust is not a release, accord or novation of the Debtor's or the Participating Parties' liability because of the Future Abuse Claims; provided, however, that the Debtor's liability because of the Future Abuse Claims shall be discharged under Bankruptcy Code section 1141(d), subject to Sections 7.1.5 and 15.1 and all of the Participating Parties' liabilities are subject to the Channeling Injunction and releases under the Plan.  Under no circumstance shall the Abuse Claims Reviewer's review of a Future Abuse Claim affect the rights of a Non-Settling Insurer. Future Abuse Claimants shall have their Claims treated under the Future Abuse Claims Trust Allocation Protocol.

The Non-Settling Insurers remain fully liable for their obligations related in any way to the Future Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the distributions Future Abuse Claimants receive, or are entitled to receive, based on the Plan.  For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Future Abuse Claims Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Future Abuse Claims.

7.3.3   **Diocese Cooperation with Future Abuse Claims Trustee and Abuse Claims Reviewer.**  The Diocese and its counsel shall reasonably cooperate with the Future Abuse Claims Trustee and the Abuse Claims Reviewer with any inquiries by either in the administration of the Future Abuse Claims Trust Allocation Protocol.

7.3.4   **Future Abuse Claim Objections**.  No Class 7 Claimant may challenge the merit, validity, or amount of any other Class 7 Claim.  Except for any objection to a Class 7 Claim

24

filed by the Committee, any objection to a Class 7 Abuse Claim pending as of the Effective Date is deemed withdrawn with prejudice. The Future Abuse Claims Trustee has the exclusive right to object to a Class 7 Claim and shall succeed to the rights of the Committee because of the Committee's objection to a Class 7 Claim. The Reorganized Debtor shall not have the right to object to a Class 7 Claim.

7.3.5 **Diocese Discharge of Future Abuse Claim Liability.** The Debtor shall be discharged as set forth in Section 15.1 herein of any liability because of all Class 7 Claims, even if the Claimant rejects the Plan. As provided in Bankruptcy Code section 524(e), unless otherwise provided in this Plan, such discharge shall not affect the liability of any other Person or Entity on, or the property of any other Person or Entity for, the Future Abuse Claims including the liability of any Co-Defendant or Non-Settling Insurer, which liability shall continue unaffected by the terms of this Plan or the discharge granted to the Debtor or the Reorganized Debtor under this Plan and Bankruptcy Code section 1141(d). Nothing in this Plan is intended to affect, diminish or impair any Future Abuse Claimant's rights against a Co-Defendant, including that Co-Defendant's joint and several liability for Future Abuse Claims.

Notwithstanding the above, to preserve coverage under any Non-Settling Insurer's Insurance Policies, Class 7 Claimants specifically reserve, and do not release, any claims they may have against the Diocese or any other Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct regarding insurance coverage for, or defense or settlement of, any Future Abuse Claim, and any such judgments or awards will be handled under the Plan and the Trust Allocation Protocol. The Class 7 Claims will not be released or enjoined as against the Diocese or any other Participating Party for any Future Abuse Claim that may be covered under any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, the Reorganized Debtor, any other Participating Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to Final Order, but recourse is limited as described above.

7.4 **Class 8: Abuse Related Contingent Contribution/Reimbursement/Indemnity Claims.**

Each Abuse Related Contingent Contribution/Reimbursement/Indemnity Claim held by (a) any Person or Entity against the Debtor shall be disallowed and will receive no distribution under the Plan. Notwithstanding the disallowance of an Abuse Related Contingent Contribution / Reimbursement / Indemnity Claim, an Abuse Claimant who liquidates his or her claim in an amount greater than $0, consents to application of its portion of the reserve established by the Trustee under the Trust Agreement to pay any Co-Defendant for its contribution / reimbursement / indemnity claim, if any, against the Debtor.

**SECTION VIII**
**ACCEPTANCE OR REJECTION OF PLAN**

8.1 **Impaired Classes to Vote.**

25

Each holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

8.2     **Acceptance by Class of Creditors**.  An impaired Class of holders of Claims, shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

## SECTION IX
## TRUST AND FUTURE ABUSE CLAIMS TRUST

9.1     **Establishment of Trusts**.  On the Effective Date, the Trust shall be established under the Trust Documents and the Future Abuse Claims Trust shall be established under the Future Abuse Claims Trust Documents.  The Trust Documents and Future Abuse Claims Trust Documents, including the Trust Agreement and Future Abuse Claims Trust Agreement, are incorporated herein by reference.

9.2     **Trust Funding**.  The Trust will be funded as follows:

9.2.1    On the Effective Date the Diocese, by wire transfer, will pay or deliver to the Trust the sum of $41 million, and, further, as provided on Schedule A, the Diocese shall transfer, assign or otherwise deliver the assets identified on Schedule A to the Trust. The Participating Parties, if any, by wire transfer, will pay or deliver to the Trust their agreed upon amount.

9.2.2    Under the Full or Partial Settlement Alternatives, the Settling Insurers shall pay the trust in accordance with any applicable settlement agreements.

9.2.3    On the Effective Date, with no further act by any party, the Diocese and the Committee will be deemed to have assigned to the Trustee and the Trust all Avoidance Rights (not otherwise released, time-barred, compromised, enjoined or discharged under the Plan).

9.2.4    Under the Litigation Only Alternative, on the Effective Date, with no further act by any party, the Diocese and the Participating Parties shall be deemed to have assigned the Insurance Claims and the proceeds of such Insurance Claims to the Trust and such assignment shall immediately be deemed effective.  On the Effective Date, the Trust will be empowered to receive assignment of Litigation Awards and to take all steps necessary to pursue recovery from Non-Settling Insurers.

9.2.5    Under the Partial Settlement Alternative, on the Effective Date, with no further act by any party, the Diocese and the Participating Parties, if any, shall be deemed to have assigned the Insurance Claims, except the Arrowood Insurance Claims, and the proceeds of such Insurance Claims to the Trust and such assignment shall immediately be deemed effective.  On the Effective Date, the Trust will be empowered to receive assignment of Litigation Awards and to take all steps necessary to pursue recovery from Non-Settling Insurers.

9.2.6    The Trust shall transfer ___ percent (__%) of the Non-Insurance Trust Assets to the Future Abuse Claims Trust.

26

9.3     **Reserve Accounts.**

As set forth in the Trust Agreement and Future Abuse Claims Trust Agreements, the Trustee and Future Abuse Claims Trustee shall establish reserves for various purposes.

9.4     **No Execution**.  All funds held in the Trust will remain property of the Trust until the funds have been actually paid to and received by a Person or Entity entitled to receive payment under the Plan, Confirmation Order and Trust Documents.  Except as provided in the Plan, Confirmation Order and the Trust Documents, the Trust shall not be responsible for any Claims against the Debtor. All funds held in the Future Abuse Claims Trust will remain property of the Future Abuse Claims Trust until the funds have been actually paid to and received by a Person or Entity entitled to receive payment under the Plan, Confirmation Order and Future Abuse Claims Trust Documents.  Except as provided in the Plan, Confirmation Order and the Future Abuse Claims Trust Documents, the Future Abuse Claims Trust shall not be responsible for any Claims against the Debtor.

## SECTION X
## LIQUIDATION AND PAYMENT OF ABUSE CLAIMS

10.1    **Liquidation and Payment of Abuse Claims.**

10.1.1  The Trust and Future Abuse Claims Trust shall pay Abuse Claims under the terms of the Plan, Confirmation Order, the Trust Agreement, the Trust Allocation Protocol, the Future Abuse Claims Trust Agreement, and the Future Abuse Claims Trust Allocation Protocol, as applicable.

10.1.2  The Abuse Claims Reviewer's determinations shall not be a finding or fixing of the fact or liability or the amount payable for any Abuse Claim with any binding legal effect, other than for distribution purposes by the Trust under the Trust Allocation Protocol or the Future Abuse Claims Trust under the Future Abuse Claims Trust Allocation Protocol.  The Trustee's, Future Abuse Claims Trustee's or Abuse Claims Reviewer's determination of qualification of an Abuse Claim, payment on account of an Abuse Claim or reserve for payment on account of an Abuse Claim is not an admission of liability by the Debtor, a Participating Party, the Trust, or the Future Abuse Claims Trust regarding any Abuse Claims and has no *res judicata* or collateral estoppel effect on the Debtor, any Participating Party, the Trust, the Future Abuse Claims Trust, any Non-Settling Insurer or Settling Insurer.  Trust and Future Abuse Claims Trust distributions do not release the Debtor or any other Participating Party nor are Trust Distributions or Future Abuse Claims Trust Distributions an agreement or novation of the Debtor's or other Participating Party's liability because of the Abuse Claims.  The Trust's or Future Abuse Claims Trust's act of making a distribution is immaterial to, and shall not be construed as, a determination or admission of the Diocese's or any Participating Party's liability for, or damages regarding, any Abuse Claim.  The determination of qualification, estimation of Abuse Claims, and payment of distributions is not a settlement, release, accord, or novation of any Abuse Claims and cannot be used by any Joint Tortfeasor as a defense to any alleged joint liability.  The Trustee's, Future Abuse Claims Trustee's or Claims Reviewer's determination of qualification of an Abuse Claim, payment on account of an Abuse Claim or reserve for payment on account of an Abuse Claim does not impair an Abuse Claimant's rights to obtain a judgment, including a judgment based on joint and

27

several liability, against the Diocese, a Participating Party, or any Non-Settling Insurer, to establish the Diocese's and/or a Participating Party's liability on the Abuse Claim, but any such judgment awarded to an Abuse Claimant will be reduced by the Trust Distributions or Future Abuse Claims Trust Distributions already paid by the Trust or Future Abuse Claims Trust to such Abuse Claimant on his or her Abuse Claim(s).

10.1.3  Nothing in the Trust Documents or Future Abuse Claims Trust Documents shall (i) impose any costs, directly or indirectly, upon the Estate, any Participating Party or any Settling Insurer relating to the treatment of Abuse Claims or (ii) otherwise modify the rights or obligations of the Estate, any Participating Party or Settling Insurer as otherwise in the Plan.

10.1.4  Neither the Debtor's or the Participating Parties' obligations to Abuse Claimants shall be deemed to have been paid in full, nor their liability to Abuse Claimants satisfied, because of reserves for, distributions because of or payments received by Abuse Claimants from the Trust or Future Abuse Claims Trust, except as modified by the discharge provisions in Section 15.  The Trust, Future Abuse Claims Trust or the Diocese and Participating Parties may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims.  In addition, the Non-Settling Insurers remain fully liable for their obligations related to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the amount of distributions Abuse Claimants receive, or are entitled to receive, based on the Plan. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust or Future Abuse Claims Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Abuse Claims.

## 10.2    **Effect of No Award on Abuse Claims.**

If an Abuse Claim is denied payment under the Trust Allocation Protocol or Future Abuse Claims Trust Allocation Protocol, the holder of such Abuse Claim will have no further rights against the Diocese, Participating Parties, the Trust, Trustee, Future Abuse Claims Trust, or Future Abuse Claims Trustee relating to such Abuse Claim.

## 10.3    **Treatment of Punitive Damages.**

Claims for punitive or exemplary damages in connection with any of the Claims will be treated as Penalty Claims and will receive no distribution under the Plan.

## 10.4    **Withdrawal of Abuse Claims.**

An Abuse Claimant may withdraw an Abuse Claim at any time on written notice to the Trustee or Future Abuse Claims Trustee, as applicable.  If withdrawn, the Claim will be withdrawn with prejudice and may not be reasserted.

## 10.5    **Medicare Reimbursement and Reporting Obligations.**

10.5.1  The Trust and Future Abuse Claims Trust shall register as a Responsible Reporting Entities ("RRE") under the reporting provisions of section 111 of MMSEA

10.5.2 The Trust and Future Abuse Claims Trust shall timely submit all reports required under MMSEA because of any claims settled, resolved, paid, or otherwise liquidated by the Trust or Future Abuse Claims Trust. The Trust or the Future Abuse Claims Trust, as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for tracking, assessing, or receiving reports made under MMSEA (collectively, "CMS") to determine whether, and, if so, how, to report to CMS under MMSEA.

10.5.3 For Abuse Claims that occurred after December 5, 1980, before remitting funds to Claimants' counsel, or to the Claimant if such Claimant is acting pro se, regarding any Abuse Claim, the Trustee or Future Abuse Claims Trustee shall obtain (i) a certification that said Claimant (or such Claimant's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim and (ii) that the Claimants' counsel or Claimant (if Claimant is acting pro se) indemnifies the Trust for any such obligations

10.6    **No Admission.**

Section 10.5 does not imply, and shall not be an admission that the Debtor, any Participating Party or any Settling Insurer are "applicable plans" within the meaning of Medicare, Medicaid and SCHIP Extension Act of 2007, or that they have any legal obligation to report any actions undertaken by the Trust or Future Abuse Claims Trust or contributions to the Trust or Future Abuse Claims Trust under Medicare, Medicaid and SCHIP Extension Act of 2007 or any other statute or regulation.

10.7    **Delay Regarding Failure To Comply**.

The failure by one or more Medicare Beneficiaries or other Abuse Claimants to follow these provisions shall not delay or impair the payment by the Trustee or Future Abuse Claims Trustee to any other Medicare Beneficiary or other Abuse Claimant following these provisions.

10.8    **Documentation by Estate of Abuse Claimant.**

If the Abuse Claimant is the estate of an Abuse Claimant, then the letters or documentation required under Section 10.5 need not be dated within 120 days of payment by the Trustee or the Future Abuse Claims Trustee to such Claimant.

**SECTION XI
INSURANCE MATTERS**

11.1    **Applicability.**

This Article only applies under the Partial Settlement and Litigation Only Alternatives.

11.2    **Transfer of Insurance Rights under the Partial Settlement Alternative**

29

On the Effective Date, and with no further action by any party, but subject to this Plan, the Diocese and each of the Participating Parties will be deemed to have assigned to the Trust the Diocese's and the Participating Parties' rights to all Insurance Claims, except the Arrowood Insurance Claims, and Insurance Recoveries, except Arrowood Insurance Recoveries, against the Non-Settling Insurers.    The foregoing transfer shall be effective to the maximum extent permissible under applicable law and the terms of the Insurance Policies and shall not be construed: (a) as an assignment of the Insurance Policies or (b) to entitle any person or entity to Insurance Coverage other than those Persons or entities entitled to such coverage under the terms of the Insurance Policies.  The determination of whether the assignment of Insurance Claims provided for in this Section is valid, and does not defeat or impair the Insurance Coverage shall be made by the Bankruptcy Court at the Confirmation Hearing. If a party in interest fails to timely file an objection to the proposed assignment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the assignment and will be forever barred from asserting that the assignment in any way affects the ability of the Trust to pursue Insurance Claims, Insurance Coverage, and/or Insurance Recoveries from the Non-Settling Insurers. If the Bankruptcy Court determines that the assignment of the Insurance Claims and Insurance Recoveries is valid and does not defeat or impair the Insurance Coverage, following the Effective Date, the Trust shall assume responsibility for, and be bound by, all of the obligations of the Debtor and Participating Parties under the Insurance Policies; provided, however, that the Trust's assumption of such responsibility shall not relieve the Diocese or the Participating Parties from any obligation that such entities may have under the Insurance Policies.

### 11.3    Transfer of Insurance Rights under the Litigation Only Alternative

On the Effective Date, and with no further action by any party, but subject to this Plan, the Diocese and each of the Participating Parties will be deemed to have assigned to the Trust the Diocese's and the Participating Parties' rights to all Insurance Claims and Insurance Recoveries against the Non-Settling Insurers.  The foregoing transfer shall be effective to the maximum extent permissible under applicable law and the terms of the Insurance Policies and shall not be construed: (a) as an assignment of the Insurance Policies or (b) to entitle any person or entity to Insurance Coverage other than those Persons or entities entitled to such coverage under the terms of the Insurance Policies.  The determination of whether the assignment of Insurance Claims provided for in this Section is valid, and does not defeat or impair the Insurance Coverage shall be made by the Bankruptcy Court at the Confirmation Hearing. If a party in interest fails to timely file an objection to the proposed assignment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the assignment and will be forever barred from asserting that the assignment affects the ability of the Trust to pursue Insurance Claims, Insurance Coverage, and/or Insurance Recoveries from the Non-Settling Insurers. If the Bankruptcy Court determines that the assignment of the Insurance Claims and Insurance Recoveries is valid and does not defeat or impair the Insurance Coverage, following the Effective Date, the Trust shall assume responsibility for, and be bound by, the obligations of the Debtor and Participating Parties under the Insurance Policies; provided, however, that the Trust's assumption of such responsibility shall not relieve the Diocese or the Participating Parties from any duty that such entities may have under the Insurance Policies.

### 11.4    Appointment of Trustee as Estate Representative to Enforce Insurance Rights and Obtain Insurance Recoveries.

Under section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee is appointed as the representative of the Diocese and Participating Parties to retain and enforce the Diocese's and Participating Parties' Insurance Coverage and for Insurance Claims regarding the Abuse Claims against the Diocese and Participating Parties for any Insurance Claims transferred to the Trust. The determination of whether the appointment of the Trust as the Debtor's and the Debtor's Estate's representative provided for in Section 11.2 is valid and does not defeat or impair the Insurance Coverage, shall be made by the Bankruptcy Court at the Confirmation Hearing. If a party in interest fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trust to pursue Insurance Claims identified as transferred to the Trust under Sections 11.2 and 11.3 (the "**Transferred Insurance Claims**"), Insurance Coverage, and/or Insurance Recoveries related to Transferred Insurance Claims from the Non-Settling Insurers. If the Bankruptcy Court determines that the appointment is valid and does not defeat or impair the Insurance Coverage, following the Effective Date, the Trust shall assume responsibility for, and be bound by, all of the obligations of the Diocese and Participating Parties under the Insurance Policies; provided, however, that the Trust's appointment shall not relieve the Diocese or the Participating Parties from any obligation that such entities may have under the Insurance Policies.

### 11.5    Consequences of Determination That Assignment or Appointment is Invalid.

If a Final Order is entered holding that the assignment of Insurance Claims provided for in Sections 11.2 and 11.3, or that the appointment of the Trust as the Diocese's and Participating Parties' representative provided for in Section 11.4, is invalid or would defeat or impair the Insurance Coverage regarding an Insurance Policy, as to such Insurance Policy, the assignment and/or appointment, as the case may be, will be deemed not to have been made. If the assignment and/or appointment is not deemed to have been made, the Diocese and each of the Participating Parties will retain the Insurance Claims under such Insurance Policy.

11.5.1  The Trust, the Reorganized Debtor, and any Participating Parties shall enter into a common interest agreement related to pursuing any Transferred Insurance Claims.

11.5.2  The Reorganized Debtor and the Participating Parties will assert their Insurance Claims to the extent requested by the Trust against any Non-Settling Insurer. All Insurance Recoveries identified as transferred to the Trust under Sections 11.2 and 11.3 received by the Reorganized Debtor and the Participating Parties will be immediately paid to the Trust. The Reorganized Debtor and Participating Parties will select and retain counsel to pursue their Insurance Claims under this Section, subject to the Trustee's approval, which approval shall not be unreasonably withheld.

11.5.3  The Reorganized Debtor and Participating Parties shall cooperate with the Trust regarding the Transferred Insurance Claims, including that the Reorganized Debtor and Participating Parties will provide the Trustee and its counsel with all discovery requests, pleadings, moving documents and other papers that the Reorganized Debtor or Participating Parties intend to make or file regarding the Transferred Insurance Claims and any related counterclaims against the Non-Settling Insurers before making such requests or filing. The Reorganized Debtor and

31

Participating Parties shall keep the Trustee advised of any settlement discussions regarding any litigation against a Non-Settling Insurer and will involve the Trust's counsel in all settlement discussions with any Non-Settling Insurer.

11.5.4 The Trust shall pay the reasonable attorneys' fees, costs and expenses allowed by the Bankruptcy Court incurred by the Reorganized Debtor and Participating Parties in pursuing the Transferred Insurance Claims under this Section 11.5, subject to a monthly cap to be established by the Trustee, in consultation with the Reorganized Debtor and Participating Parties.

11.5.5 The Trust shall, in addition to reasonable attorneys' fees, costs and expenses provided for in Section 11.5.4, reimburse the Reorganized Debtor and Participating Parties for any reasonable out of pocket costs and expenses it incurs as a direct consequence of pursuing such Transferred Insurance Claims, but will not compensate the Reorganized Debtor and Participating Parties for any time any of its employees spends. All Insurance Recoveries received by the Reorganized Debtor or Participating Parties because of such Transferred Insurance Claims shall be held in trust to benefit the Trust and shall be immediately remitted by the Reorganized Debtor or Participating Parties to the Trust.

11.6    **Preservation of Insurance Rights.**

Nothing in this Plan shall be construed to impair or diminish any Non-Settling Insurer's obligations under any Insurance Policy. No provision of this Plan shall impair or diminish any Non-Settling Insurer's legal, equitable, or contractual obligations relating to the Insurance Policies issued by the Non-Settling Insurers or the Insurance Claims against the Non-Settling Insurers. If any court determines that any provision of this Plan impairs or diminishes any Non-Settling Insurer's obligations regarding the Insurance Claims or Insurance Recoveries, such provision shall be given effect only if it shall not cause such impairment or diminishment.

11.7    **Post-Judgment Actions Against Non-Settling Insurers.**

If the Trust or any Abuse Claimant obtains a judgment against the Reorganized Debtor or Participating Parties, the Reorganized Debtor or Participating Parties will cooperate with the Trust or Abuse Claimant in the pursuit of any action brought by the Trust or Abuse Claimant against a Non-Settling Insurer that the Trust contends provides Insurance Coverage for such judgment. The Reorganized Debtor and/or Participating Parties will provide the Trust or Abuse Claimant with any non-privileged and relevant documents and information reasonably requested by the Trust or Abuse Claimant in pursuit of such an action. The Trust will reimburse the Reorganized Debtor and Participating Parties for any reasonable out of pocket costs they incur, including attorneys' fees, as a direct consequence of such cooperation, but will not compensate the Reorganized Debtor and Participating Parties for any time their employees spend.

11.8    **Settlement with Non-Settling Insurers Under the Partial Settlement Alternative.**

Following the Effective Date, the Reorganized Debtor and the Participating Parties shall not enter into a settlement agreement affecting any Insurance Policy with any Non-Settling Insurer, except Arrowood, without the express written consent of the Trustee, which consent may be granted or withheld at the Trustee's sole and absolute discretion. Following the Effective Date,

32

the Trust shall exclusively act on the Reorganized Debtor's and Participating Parties' behalf to negotiate a settlement with any Non-Settling Insurer, except Arrowood, because of such Insurance Claims, unless Section 11.5 apply.  The Diocese and Participating Parties shall retain authority to negotiate and enter into a settlement agreement with Arrowood.  Such settlements may provide for the Non-Settling Insurer to become a Settling Insurer.

11.9    **Settlement with Non-Settling Insurers Under the Litigation Only Alternative.**

Following the Effective Date, the Reorganized Debtor and the Participating Parties shall not enter into a settlement agreement affecting any Insurance Policy with any Non-Settling Insurer without the express written consent of the Trustee, which consent may be granted or withheld at the Trustee's sole and absolute discretion.  Following the Effective Date, the Trust shall exclusively act on the Reorganized Debtor's and Participating Parties' behalf to negotiate a settlement with any Non-Settling Insurer because of such Insurance Claims, unless Section 11.5 applies.  Such settlements may provide for the Non-Settling Insurer to become a Settling Insurer.

11.10    **Cooperation with Non-Settling Insurer in Defense of Claims.**

Without limiting the Diocese and/or Participating Party's obligations under Section 11.5, if any Abuse Claimant prosecutes an action against the Diocese and/or Participating Party, the Diocese and/or Participating Party will cooperate, under the terms of any applicable Insurance Policy, with a Non-Settling Insurer providing a defense to such a Claim.  The Trust will reimburse the Reorganized Debtor and/or the Participating Party the reasonable attorneys' fees, costs and expenses allowed by the Bankruptcy Court incurred as a direct consequence of such cooperation, subject to a monthly cap to be established by the Trustee, in consultation with the Reorganized Debtor and Participating Parties, but the Trust will not compensate the Reorganized Debtor or Participating Parties for any time their employees spend.  To the extent a Non-Settling Insurer has refused to defend an Abuse Claim, the Reorganized Debtor and/or Participating Party will not cooperate with such Insurer and may enter into stipulated judgments with the Abuse Claimant or the Trustee.  The Trust will not reimburse the Reorganized Debtor or Participating Party for any out-of-pocket costs if the Non-Settling Insurer has refused to defend the Abuse Claim.

If the Trust asserts any claim that the Diocese has breached such duties or obligations under the Non-Settling Insurer Insurance Policies causing a loss of coverage, it shall give the Diocese notice and an opportunity to cure any alleged breach, and the Diocese shall not be liable for any alleged breach causing a loss of coverage except when (i) the breach relates to post-Effective Date conduct of the Diocese, and (ii) the Diocese willfully or intentionally violates its continuing obligations under the Non-Settling Insurer Insurance Policies. In addition, any such claim will not be automatically allowed; the Diocese may defend against such claim.

11.11    **Insurance Neutrality.**

Other than as expressly provided in this Section, no provision of this Plan shall diminish or impair the right of any Insurer to assert any defense to any Insurance Claim.  That the Trust is liquidating and paying/reserving monies because of the Abuse Claims shall not be construed to diminish any duty of any Insurer under any Insurance Policy to provide Insurance Coverage to the Diocese for Abuse Claims.  The duties and obligations, if any, of the Non-Settling Insurers under

each Non-Settling Insurer's Insurance Policy shall not be impaired, altered, reduced or diminished by: (a) the discharge granted to the Debtor under the Plan under section 1141(d) of the Bankruptcy Code, (b) the exonerations, exculpations and releases in the Plan or (c) the Channeling Injunction.

11.12  **Judgment Reduction**

In connection to any action by the Trust to enforce Insurance Claims regarding an Insurance Policy issued by a Non-Settling Insurer, if any Insurer obtains a judicial determination or binding arbitration award that, it would be entitled to obtain a sum certain from a Settling Insurer because of a claim for contribution, subrogation, indemnification, or other similar claim against a Settling Insurer for such Settling Insurer's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of such Settling Insurer for any Claims released or resolved under any settlement agreement with a Settling Insurer, the Diocese, the Trustee or other Participating Party, as applicable, shall be deemed to have reduced its judgment or Claim against, or settlement with, such other Insurer to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against such Settling Insurer. To make sure such a reduction is accomplished, such Settling Insurer shall be entitled to assert this Section as a defense to any action against it brought by any other Insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect such Settling Insurer and the Released Parties under a settlement agreement with a Settling Insurer from any liability for the judgment or Claim. If a Non-Settling Insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against a Settling Insurer, such Claim may be asserted as a defense against the Trust or Diocese in any litigation of Insurance Claims (and the Trust or Diocese may assert the legal and equitable rights of such Settling Insurer in response thereto); and to the extent such a Claim is found to be valid by the court presiding over such action, the liability of such Non-Settling Insurer to the Trust, the Diocese or other Participating Party shall be reduced dollar for dollar by the amount so determined. The Bankruptcy Court shall retain non-exclusive jurisdiction to determine the amount, if any, of any judgment reduction under this Section. In addition, any court of competent jurisdiction may determine the amount, if any, of any judgment reduction under this Section.

## SECTION XII
## MEANS FOR IMPLEMENTATION OF THE PLAN

12.1  **Debtor's Funding of Plan**.

On or before the Effective Date, Cash in the total amount of $41 million shall be transferred by wire transfer to the Trust by or on behalf of the Debtor. The Diocese will also take all steps necessary to effectuate transfer of ownership of the assets identified on Schedule A to the Trust.

12.2  **Sale of Telecommunication Assets**.

If the sale contemplated in the *Motion of the Debtor for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Debtor's Assets, (B) Authorizing The Debtor To Enter Into One Or More Stalking Horse Purchase Agreements and To Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving*

34

*Assumption and Assignment Procedures and (E) Scheduling A Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 1459] closes prior to the Effective Date, the Diocese shall transfer the net proceeds from that sale to the Trust. If the sale is still pending on the Effective Date, the Diocese shall transfer the net proceeds no later than five business days following its receipt of such funds. If no such sale is pending on the Effective Date, the Diocese shall take all steps necessary to effectuate transfer of ownership of the assets to the Trust, subject to regulatory approval if applicable.

12.3    **Transfer of Real Property**.

On the Effective Date, the Diocese shall take all steps necessary to effectuate transfer of ownership to the Trust of all real property titled to the Diocese. If any real property is sold prior to the Effective Date, the net proceeds from such sale shall be transferred to the Trust on the Effective Date.

12.4    **Transfer of Real Property**.

The Diocese will, in consultation with the Committee or Trustee as applicable, sell Ecclesia, subject to regulatory approval. Upon the closing of such a sale, the Diocese shall transfer the net proceeds to the Trust.

12.5    **Participating Party or Settling Insurer Settlement Contribution.**

On or before the Effective Date, transfers to the Trust by or on behalf of a Participating Party or Settling Insurer shall be made by wire transfer to the Trust.

12.6    **Debtor and Trust Waiver and Release of Estate's Causes of Action Against Participating Parties and Settling Insurers.**

In consideration of the contributions and other consideration to be provided by each Participating Party and Settling Insurer, the Debtor and Trust, as applicable, irrevocably and unconditionally, without limitation, shall release, acquit, and forever discharge such Participating Party and Settling Insurer from any Causes of Action of the Estate against any Participating Party or Settling Insurer, or the property thereof, such release to be effective upon the Effective Date.

Notwithstanding the above**,** to preserve coverage under any Non-Settling Insurer's Insurance Policies, Abuse Claimants specifically reserve, and do not release, any claims they may have against the Diocese, the Reorganized Debtor, or any other Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled under the Plan and the Trust Allocation Protocol. The Abuse Claims will not be released or enjoined as against the Diocese, the Reorganized Debtor, or any other Participating Party for any Abuse that may be covered under

35

any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, the Reorganized Debtor, any other Participating Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to Final Order, but recourse is limited as described above.

### 12.7   Debtor and Participating Party Contributions

The Debtor's and Participating Party's contributions are being made in respect of the uninsured or underinsured  exposure of the Debtor and the Participating Parties for Abuse Claims and, to the extent required under applicable law, to satisfy self-insured retentions or deductibles under Non-Settling Insurer Insurance Policies.

### 12.8   Additional Documentation; Non-Material Modifications.

From and after the Effective Date, the Trustee, the Future Abuse Claims Trustee, the Reorganized Debtor, and the Participating Parties are authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements in this Plan without further Order of the Bankruptcy Court.  Also, the Trustee, the Reorganized Debtor, and the Participating Parties may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement in this Plan, without Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of a Class 4 Claim without the prior written agreement of such holder.  A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented under this Section, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class.  An Order of the Bankruptcy Court approving any amendment or modification made under this Section shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

### 12.9   Non-Settling Insurers Unaffected.

The rights and obligations of Non-Settling Insurers and Co-Defendants shall be unaffected by this Section.

### 12.10   Closing.

Closing will be conducted in the New York offices of Pachulski, Stang, Ziehl & Jones LLP, or at such other location designated by the Committee, including remotely, as soon as reasonably practicable following the Effective Date for the Diocese and the Participating Parties to execute and deliver the Plan Documents and completing those actions necessary for the Reorganized Debtor and the Participating Parties to establish and fund the Trust and make other distributions required to be made upon, or promptly following, the Effective Date.  As soon as practicable after conditions in Section 14.1 have been satisfied or waived under Section 14.2, the Diocese shall file notice of the Closing and the occurrence of the Effective Date.

### 12.11   Obligations of the Reorganized Debtor and Participating Parties.

The Reorganized Debtor and the Participating Parties will:

a)       In the exercise of their respective business judgment, review all Claims filed against the Estate except for Abuse and Personal Injury Claims and, if advisable, object to such Claims;

b)       After the Effective Date, not object to any Abuse Claims or Personal Injury Claims.  Despite the foregoing, the Reorganized Debtor shall timely provide the Abuse Claims Reviewer with information regarding Abuse Claims as may be requested by the Abuse Claims Reviewer.

c)       Fulfill the Diocese's obligations under the Insurance Policies issued by the Non-Settling Insurers and under applicable non-bankruptcy law, with the Diocese's reasonable attorneys' fees, costs and expenses, if any, incurred in doing so to be paid by the Non-Settling Insurers and/or the Trust, as provided under the Insurance Policies, this Plan, or the Trust Documents, as applicable;

d)       Honor the Diocese's obligations arising under any settlement agreement between the Diocese and any Participating Party approved by the Bankruptcy Court; and,

e)       Perform all of their obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

## 12.12   **Objections to Claims.**

Objections to a Claim (except for Abuse and Personal Injury Claims) as to which no objection is pending as of the Effective Date, must be filed by the Claims Objection Deadline, provided that the Reorganized Debtor may request extensions of the Claims Objection Deadline, or of any Bankruptcy Court approved extensions thereof, by Filing a motion with the Bankruptcy Court. A motion seeking to extend the deadline to object to any Claim is not an amendment to the Plan.  No party in interest other than the Trustee may object to a Class 4 or Class 6 Claim.  No party in interest other than the Future Abuse Claims Trustee may object to a Class 7 Claim.  The process and deadlines for any objections to Abuse Claims are as set forth in the Trust Allocation Protocol or the Future Abuse Claims Trust Allocation Protocol.

## 12.13   **Provisions Governing Distributions.**

12.13.1 **Distribution Only to Holders of Allowed Claims.**  Except as otherwise provided in the Plan, distributions under this Plan and the Plan Documents will be made only to the holders of Allowed Claims and in the case of Abuse Claims, pursuant only to the Plan and the Trust Documents or Future Abuse Claims Trust Documents, as applicable.  Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim will receive no distribution otherwise provided to the Claimants under this Plan or the Plan Documents.

12.13.2 **Transmittal of Distributions.**  Except as otherwise provided in this Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to be made under this Plan, Confirmation Order, Trust Documents, or Future Abuse Claims Trust Documents, as applicable, to Abuse Claimants and Personal Injury Claimants that opt to not litigate will be made by the Trustee or Future Abuse Claims Trustee, as applicable, and distributions to all other Claimants will be made by the Reorganized Debtor.  Distributions to Abuse Claimants and

37

Personal Injury Claimants will be made (a) to the client trust account for attorneys of record of Abuse Claimants, (b) if the Abuse Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim filed with the Claims Agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor or Trustee, as applicable, by such Claimant in writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor, Trustee, or Future Abuse Claims Trustee to the mailing address in the schedules filed by the Debtor in this Case.  Distributions to other Claimants will be made by wire or first class United States mail, postage prepaid, (a) to the client trust account for attorneys of record of the Claimant, (b) if the Claimant does not have an attorney of record, to the latest mailing address in a proof of claim filed with the Claims Agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Debtor, as applicable, by such Claimant in writing, or (c) if no such proof of claim has been filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor, to the mailing address in the schedules filed by the Debtor in this Case. If a Claimant's distribution is not mailed or is returned to the Reorganized Debtor, Trustee, or Future Abuse Claims Trustee because of the absence of a proper mailing address, the Reorganized Debtor, Trustee, or Future Abuse Claims Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having not found a correct mailing address.  The Trustee or the Future Abuse Claims Trustee, as applicable, shall have no liability to an Abuse Claimant because of distributions made to the client trust account of an Abuse Claimant's attorney.

12.13.3 **Timing of Distributions.**  Unless otherwise agreed by the Reorganized Debtor, Trustee, or Future Abuse Claims Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day, with interest to the extent expressly contemplated by this Plan or any applicable agreement or instrument.

Any Claimant otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Trustee, Future Abuse Claims Trustee, or Diocese as undeliverable, or is deemed to be an undeliverable Distribution, provide the Trustee or Diocese with a written notice asserting its claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Reorganized Debtor, the Trust, the Trustee, the Future Abuse Claims Trust, the Future Abuse Claims Trustee, or their property.  Any undeliverable Distributions not claimed under this Section will become available to distribute to other Claimants or be retained by the Reorganized Debtor under the Plan.  Nothing in the Plan requires the Reorganized Debtor, the Trust, the Trustee, the Future Abuse Claims Trust, or the Future Abuse Claims Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

12.13.4 **Time Limit on Negotiation of Instruments**.  If an instrument delivered as a Distribution to a Claimant is not negotiated within one hundred and twenty (120) days after such instrument was sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and it shall become cash available to the Trustee for

38

any Trust purpose, the Future Abuse Claims Trustee for any Future Abuse Claims Trust purpose, or the Reorganized Debtor, as the case may be.

12.13.5 **Form of Distributions.** Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, all distributions will be made, at the option of the Reorganized Debtor or Trustee, by a check by first class mail, postage prepaid or wire transfer.

12.13.6 **No Professional Fees or Expenses.** No professional fees or expenses incurred by a Claimant will be paid by the Debtor, the Reorganized Debtor, or the Trustee regarding any Claim except as specified in this Plan or the Trust Documents.

## 12.14 **Reservation of Rights to Object to Claims Other Than Abuse or Personal Injury Claims.**

Unless a Claim is expressly described as an Allowed Claim under the Plan, or otherwise becomes an Allowed Claim before the Effective Date, upon the Effective Date, the Reorganized Debtor shall be deemed to have a reservation of any rights, interests and objections of the Debtor to any Claims and motions or requests for the payment of or because of Claims, whether administrative expense, priority, secured or unsecured (but not Abuse or Personal Injury Claims), whether under the Bankruptcy Code, other applicable law or contract. Subject to the Claims Objection Deadline, the Debtor's failure to object to any Claim in the Case shall be without prejudice to the Reorganized Debtor's rights to contest or otherwise defend against such Claim in the Bankruptcy Court in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

## 12.15 **Service of Objections.**

An objection to a Claim shall be deemed properly served on the holder of such Claim if the objector effects service by any of the following methods: (i) under Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such holder in the Case.

## 12.16 **Determination of Claims.**

From and after the Effective Date, any Claim (except for Abuse or Personal Injury Claims) as to which a Proof of Claim or motion or request for payment was timely filed in the Case or deemed timely filed by Order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated under (i) an Order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties with no Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery regarding such Claim, filed by the

DOCS_NY:46709.11 18491/002

Diocese or any other party in interest on or before any applicable deadline for Filing such objection or application regarding such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied under the Plan. Nothing in this Section shall be or be deemed a waiver of any Claims, rights, interests or Causes of Action that the Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157. Notwithstanding the foregoing, no party in interest other than the Trustee or Future Abuse Claim Trustee, as applicable, may object to an Abuse Claim or a Personal Injury Claim.

### 12.17   **No Distributions Pending Allowance.**

No payments or distributions will be made regarding all or any part of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that if only a portion of such Claim is an Allowed Claim, the Reorganized Debtor may, in their discretion, make a distribution because of the part of such Claim that is an Allowed Claim.

### 12.18   **Claim Estimation.**

To effectuate distributions under the Plan and avoid undue delay in the administration of the Case, the Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court or the District Court under section 502(c) of the Bankruptcy Code, estimating or limiting, because of a Disputed Claim, the amount of (i) property that must be withheld from or reserved for distribution purposes because of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose allowed under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine (i) whether such Claims are subject to estimation under section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan. Notwithstanding the foregoing, no party in interest except the Trustee or Future Abuse Claim Trustee, as applicable, may seek to estimate an Abuse Claim or a Personal Injury Claim.

### 12.19   **Timing of Distributions S/A/P Claims.**

On the Effective Date, the Reorganized Debtor shall establish the S/A/P Claims Reserve for all Disputed S/A/P Claims and Allowed S/A/P Claims not paid before the Effective Date. As soon as practicable after (and to the extent) that a Disputed S/A/P Claim becomes an Allowed S/A/P Claim, the Reorganized Debtor shall make a payment from the S/A/P Claims Reserve to the holder of such Claim in the Allowed amount of such Claim. After (and to the extent) a Disputed S/A/P Claim is determined not to be an Allowed S/A/P Claim, the part of the S/A/P Claims Reserve reserved for such Claim shall be released from the S/A/P Claims Reserve and distributed or retained by the Reorganized Debtor, as applicable, under the Plan.

### 12.20   **Setoffs.**

The Diocese may, to the extent permitted under applicable law, set off against any Allowed Claim and the distributions to be made under the Plan because of such Allowed Claim, the Claims, rights and Causes of Action of any nature that the Diocese may hold against the holder of such

40

Allowed Claim not otherwise waived, released or compromised under the Plan; provided, however, that neither such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Diocese of any such Claims, rights and Causes of Action that the Diocese possesses against such holder.

12.21    **No Interest on Claims.**

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Diocese and a holder of a Claim and approved by an Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order, Trust Agreement, or Future Abuse Claims Trust Agreement interest shall not accrue on or be paid on any Disputed Claim regarding the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

12.22    **Withholding Taxes.**

The Diocese shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Diocese may require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

12.23    **Closing of the Case.**

As soon as practicable after the Effective Date, when the Diocese deem appropriate, the Diocese will seek authority from the Bankruptcy Court to close the Case under the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Case shall, whether or not specified therein, be without prejudice to the right of the Diocese, the Trustee, Future Abuse Claim Trustee, or any other party in interest to reopen the Case for any matter over which the Bankruptcy Court or the U.S. District Court for the Southern District of New York has retained jurisdiction under this Plan. Any order closing this Case will provide that the Bankruptcy Court or the U.S. District Court for the Southern District of New York, as appropriate, will retain (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in this Case, and the obligations created by this Plan and the Plan Documents; and (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents.

12.24    **No De Minimis Distributions.**

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $100 will be made by the Reorganized Debtor, the Trustee, or Future Abuse Claim Trustee, as applicable, to any Holder of an Allowed Claim. No consideration will be provided in lieu of the de minimis distributions not made under this Section. Allowed Claims entitled to a Pro Rata distribution of less than $100 shall continue to accrue until the Pro Rata distribution because of such Claim will be $100 or more.

41

12.25   **Manner of Cash Payments.**

Cash payments to domestic Claimants will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Trustee or Future Abuse Claim Trustee, as applicable, or at the Trustee's or Future Abuse Claim Trustee's option, by wire transfer from a domestic bank. Cash payments to foreign Claimants may be paid, at the Trustee's or Future Abuse Claim Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

## SECTION XIII
## LITIGATION

13.1   **Preservation of Causes of Action.**

The Trustee, on behalf of the Trust, shall retain the Trust's Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, the Bankruptcy Court. The Trustee, on behalf of the Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any such Causes of Action, subject to the requirements of the Bankruptcy Code. To the extent the Committee is the named plaintiff in any Cause of Action vested in the Trust, the Trustee may be substituted as the named plaintiff without additional notice to the parties in such Cause of Action.

13.2   The Reorganized Debtor shall retain and exclusively enforce the Debtor's Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, the Bankruptcy Court. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any such Causes of Action, without obtaining Bankruptcy Court approval.

## SECTION XIV
## CONDITIONS PRECEDENT

14.1   **Conditions to Effectiveness.**

The Effective Date will occur when each of the following conditions have been satisfied or waived under Section 14.2:

(a)   The Bankruptcy Court shall have entered a Final Order or Final Orders approving all settlement agreements involving the Participating Parties and Settling Insurers (for agreements executed before the Confirmation Date) and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to each party, and no stay of such Orders shall be in effect;

(b)   the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Committee and no stay of such Order shall be in effect;

(c)   The Future Abuse Claims Trustee and Debtor have signed the Future Abuse Claims Trust Agreement;

42

(d)      The Trustee and Debtor have signed the Trust Agreement; and

(e)      The Debtor, the Participating Parties (if applicable), and the Settling Insurers (if applicable) have made the transfers to the Trust described in Section 12.1 and 12.5.

14.2    **Waiver of Conditions.**

Any condition in Section 14.1 may be waived by the mutual written consent of the Proponent, the Debtor and the Participating Parties.

14.3    **Non-Occurrence of Effective Date.**

Subject to further order of the Bankruptcy Court, if the Effective Date does not occur within ninety (90) days of entry of a Final Order confirming the Plan, the Plan shall become null and void. A statement shall be filed with the Court within three (3) Business Days after either the Effective Date or the occurrence of any event that renders the Plan null and void.

## SECTION XV
## EFFECTS OF PLAN CONFIRMATION AND DISCHARGE

15.1    **Discharge.**

Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date under section 1141(d) of the Bankruptcy Code, the Diocese will be discharged from all liability for any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtor, or the Debtor's Representatives before the Confirmation Date, or that otherwise arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of this Case, and including all Claims and Debts based upon or arising out of an Abuse Claim and from any liability of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim is filed or is deemed filed under section 501 of the Bankruptcy Code; (b) such Claim is Allowed under this Plan; or (c) the holder of such Claim has accepted this Plan.

Abuse Claimants specifically reserve, and do not release, any claims they may have against the Diocese or any other Participating Party that implicate coverage under any Non-Settling Insurer's Insurance Policies, but recourse is limited to the proceeds of the Non-Settling Insurer's Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurers because of their conduct regarding insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled under the Plan and the Trust Allocation Protocol. The Abuse Claims will not be released or enjoined as against the Diocese or any other Participating Party for any Abuse that may be covered under any Non-Settling Insurer's Insurance Policies until such claims are settled with the Diocese, any other Participating Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to Final Order, but recourse is limited as described above.

43

Abuse Claimants and the Trust shall be permitted to name the Diocese or any other Participating Party in any proceeding to resolve whether the Diocese or any other Participating Party has liability for Abuse Claims and the amount of any such liability, solely for the purpose of obtaining insurance coverage from Non-Settling Insurers. The discharge hereunder does not apply to, and shall not limit in any way the obligations of Non-Settling Insurers to defend and pay, the Diocese's or any other Participating Party's liability for Abuse Claims under Non-Settling Insurer Insurance Policies.

Personal Injury Claimants specifically reserve, and do not release, any claims they may have against the Diocese that implicate coverage under Ecclesia Insurance Policies, but recourse is limited to Co-Defendants and the proceeds of the Ecclesia Insurance Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against Ecclesia because of its conduct regarding insurance coverage for, or defense or settlement of, any Personal Injury Claim. The Personal Injury Claims will not be released or enjoined as against the Diocese until such claims are settled with the Diocese, any Co-Defendants and Ecclesia or are fully adjudicated, resolved, and subject to Final Order, but recourse is limited as described above.

Personal Injury Claimants shall be permitted to name the Diocese in any proceeding to resolve whether the Diocese has liability for Personal Injury Claims and the amount of any such liability, solely for the purpose of obtaining insurance coverage from Ecclesia. The discharge hereunder does not apply to, and shall not limit in any way the obligations of Ecclesia to defend and pay, the Diocese's or any other Participating Party's liability for Personal Injury Claims under Ecclesia Insurance Policies.

15.2    **NOTHING CONTAINED IN THIS PLAN SHALL CONSTITUTE A RELEASE OF ANY ABUSE CLAIM AGAINST A PERSON HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLING INSURER; A SUCCESSOR OR PREDECESSOR OF THE DEBTOR TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE; AND THE HOLY SEE.**

15.3    **FOR AVOIDANCE OF DOUBT, EXCEPT AS REQUIRED BY THE INSURANCE POLICIES OF NON-SETTLING INSURERS, THE DEBTOR MAY ELECT NOT TO DEFEND ANY ABUSE LITIGATION THAT IS AUTHORIZED TO BE PROSECUTED AGAINST THE DEBTOR PURSUANT TO THIS PLAN AND NO JUDGMENT OBTAINED AGAINST THE DEBTOR IN SUCH ABUSE LITIGATION CAN BE EXECUTED AGAINST THE REVESTED ASSETS OR FROM ANY ASSETS ACQUIRED BY THE REORGANIZED DEBTOR SUBSEQUENT TO THE EFFECTIVE DATE.**

15.4    **SCOPE OF DISCHARGE.**

**SECTION 15.1 DOES NOT APPLY TO (A) THE OBLIGATIONS OF ANY NON-SETTLING INSURERS FOR ANY CLAIMS; (B) THE OBLIGATIONS ARISING UNDER ANY SETTLEMENT AGREEMENT BETWEEN THE DEBTOR, ANY PARTICIPATING**

44

**PARTY OR ANY SETTLING INSURER APPROVED BY THE BANKRUPTCY COURT (INCLUDING THE DEBTOR'S INDEMNIFICATION OBLIGATIONS, IF ANY), WHICH ARE NOT AND WILL NOT BE DISCHARGED; (C) THE PERFORMANCE BY THE REORGANIZED DEBTOR OF ANY AND ALL OBLIGATIONS DUE TO THE NON-SETTLING INSURERS UNDER THEIR INSURANCE POLICIES WITH RESPECT TO ANY ABUSE CLAIM; (D) A PERSON HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLING INSURER; (E) A SUCCESSOR OR PREDECESSOR OF THE DEBTOR TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE; AND (F) THE HOLY SEE.**

15.5    **POSTPETITION ABUSE CLAIMS.**

**EXCEPT TO THE EXTENT PROVIDED FOR IN A SETTLEMENT AGREEMENT WITH A PARTICIPATING PARTY OR A SETTLING INSURER, ABUSE CLAIMS ARISING OR OCCURRING AFTER THE PETITION DATE WILL NOT BE DISCHARGED, RELEASED, IMPAIRED AGAINST THE DEBTOR OR A PARTICIPATING PARTY, OR THE SUBJECT OF THE CHANNELING INJUNCTION OR SETTLING INSURER INJUNCTION.**

15.6    **Vesting of Assets.**

Under sections 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Revested Assets on the Effective Date shall be free and clear of all liens, Claims, and interests of Creditors, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions imposed by the Plan or the Confirmation Order.

15.7    **Continued Existence of Reorganized Debtor.**

The Debtor will, as the Reorganized Debtor, continue to exist after the Effective Date as separate entities under the applicable laws of the State of New York, with all the powers of a not-for-profit, non-stock member corporation having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

15.8    **EXCULPATION AND LIMITATION OF LIABILITY.**

**EXCEPT AS EXPRESSLY PROVIDED IN THIS PLAN, NONE OF THE EXCULPATED PARTIES WILL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY HOLDER OF A CLAIM, ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RELATED PARTIES, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE**

45

CASE, INCLUDING THE EXERCISE OF THEIR RESPECTIVE BUSINESS JUDGMENT AND THE PERFORMANCE OF THEIR RESPECTIVE FIDUCIARY OBLIGATIONS, THE PURSUIT OF CONFIRMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN, THE TRUST OR THE FUTURE ABUSE CLAIMS TRUST, EXCEPT LIABILITY FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE (PROVIDED HOWEVER THE DIOCESE WILL BE DISCHARGED FROM ANY SUCH LIABILITY FOR SUCH ACTS OR OMISSIONS OCCURRING PRIOR TO THE CONFIRMATION DATE) OR, EXECEPT AS PROVIDED BELOW, ANY CAUSES OF ACTION ARISING FROM OR RELATED TO DENIALS OF COVERAGE OR COVERAGE DEFENSES RAISED BY NON-SETTLING INSURERS, AND IN ALL RESPECTS, SUCH PARTIES WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN OR IN THE CONTEXT OF THE CASE. FOR THE AVOIDANCE OF DOUBT, THIS SECTION AND THE DEFINITION OF "EXCULPATED PARTIES" SHALL NOT, DIRECTLY OR INDIRECTLY, INURE TO OR FOR THE BENEFIT OF (I) A PERSON OR PERSONS HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLING INSURER, (II) A SUCCESSOR OR PREDECESSOR OF THE DEBTOR TO THE EXTENT OF SUCH SUCCESSOR'S OR PREDECESSOR'S INDEPENDENT LIABILITY FOR AN ACT OR ACTS OF ABUSE, (III) THE HOLY SEE, OR (IV) ANY NON-SETTLING INSURER.

IF THE TRUST ASSERTS ANY CLAIM THAT THE DIOCESE HAS BREACHED DUTIES OR OBLIGATIONS UNDER ANY NON-SETTLING INSURER INSURANCE POLICIES RESULTING IN A LOSS OF COVERAGE, IT SHALL GIVE THE DIOCESE NOTICE AND AN OPPORTUNITY TO CURE ANY ALLEGED BREACH, AND IN ANY EVENT, THE DIOCESE SHALL NOT BE LIABLE FOR ANY ALLEGED BREACH RESULTING IN A LOSS OF COVERAGE EXCEPT TO THE EXTENT THAT (I) THE BREACH RELATES TO POST-EFFECTIVE DATE CONDUCT OF THE DIOCESE, AND (II) THE DIOCESE WILLFULLY OR INTENTIONALLY FAILS TO COMPLY WITH ITS CONTINUING OBLIGATIONS UNDER THE NON-SETTLING INSURER INSURANCE POLICIES. IN ADDITION, ANY SUCH CLAIM WILL NOT BE AUTOMATICALLY ALLOWED; THE DIOCESE WILL HAVE THE RIGHT TO DEFEND AGAINST SUCH CLAIM.

PARTICIPATING PARTIES, SETTLING INSURERS, THE REORGANIZED DEBTOR, THE TRUST, THE TRUSTEE, THE FUTURE ABUSE CLAIMS TRUST, THE FUTURE ABUSE CLAIMS TRUSTEE, THE FUTURE CLAIMANT REPRESENTATIVE, THE MEDIATOR, THE SPECIAL MEDIATOR AND PROFESSIONALS EMPLOYED BY THE FOREGOING SHALL NOT HAVE ANY LIABILITY TO ANY GOVERNMENTAL ENTITY OR INSURER ON ACCOUNT OF PAYMENTS MADE TO AN ABUSE CLAIMANT, INCLUDING BUT NOT LIMITED TO LIABILITY UNDER THE MEDICARE SECONDARY PAYER ACT.

15.9    **EFFECTIVE DATE INJUNCTIONS.**

ON THE EFFECTIVE DATE, THE INJUNCTIONS PROVIDED FOR IN THIS PLAN SHALL BE DEEMED ISSUED, ENTERED, VALID AND ENFORCEABLE ACCORDING TO THEIR TERMS. THE INJUNCTIONS SHALL BE PERMANENT AND IRREVOCABLE AND MAY ONLY BE MODIFIED BY THE BANKRUPTCY COURT.

15.10   CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES AND SETTLING INSURERS.

15.10.1 APPLICABILITY. THIS SECTION 15.10- IS ONLY APPLICABLE UNDER THE FULL OR PARTIAL SETTLEMENT ALTERNATIVE.

15.10.2 IN CONSIDERATION OF THE UNDERTAKINGS OF THE PARTICIPATING PARTIES AND SETTLING INSURERS, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DEBTOR OR THE TRUSTEE, THE FUNDING OF THE TRUST, OTHER CONSIDERATION, AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PARTICIPATING PARTIES, SETTLING INSURERS AND THE DEBTOR OR THE TRUSTEE, AND THE PROTECTIONS AFFORDED THE PARTICIPATING PARTIES AND SETTLING INSURERS, AND PURSUANT TO SECTIONS 105, 363 AND 1123 OF THE BANKRUPTCY CODE AND SUBJECT TO THE PROVISIONS OF THE PLAN AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN:

a)      ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST; AND

b)      ALL PERSONS OR ENTITIES THAT HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIM (INCLUDING ALL DEBT HOLDERS, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, OTHER INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS OF ANY KIND OR NATURE WHATSOEVER) ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIM, INCLUDING:

(i)      COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY PARTICIPATING PARTY, SETTLING INSURERS THEIR RESPECTIVE PREDECESSORS, SUCCESSORS, AND ASSIGNS, OR THEIR RESPECTIVE EMPLOYEES, OFFICERS, AND DIRECTORS, OR AGAINST THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER;

(ii)      ENFORCING, ATTACHING, COLLECTING OR RECOVERING, BY ANY MANNER OR MEANS, FROM ANY

PARTICIPATING PARTY OR SETTLING INSURER OR FROM THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER, WITH RESPECT TO ANY SUCH CHANNELED CLAIM, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY PARTICIPATING PARTY OR SETTLING INSURER;

(iii)    CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND AGAINST ANY PARTICIPATING PARTY, OR SETTLING INSURER OR THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER WITH RESPECT TO ANY SUCH CHANNELED CLAIM (EXCEPT AS PROVIDED IN THE PLAN; AND

(iv)    ASSERTING, IMPLEMENTING OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:

(1)    ANY OBLIGATION DUE ANY PARTICIPATING PARTY OR SETTLING INSURER;

(2)    ANY PARTICIPATING PARTY OR SETTLING INSURER; OR

(3)    THE PROPERTY OF ANY PARTICIPATING PARTY OR SETTLING INSURER WITH RESPECT TO ANY SUCH CHANNELED CLAIM.

15.11    ANY INJUNCTION CONTAINED IN A BANKRUPTCY-COURT APPROVED AGREEMENT WITH A PARTICIPATING PARTY OR SETTLING INSURER IS INCORPORATED INTO THE PLAN BY REFERENCE, IS DEEMED FULLY SET FORTH IN THIS PLAN AND IS IN ADDITION TO THE CHANNELING INJUNCTION. ANY DIFFERENCES BETWEEN THE CHANNELING INJUNCTION IN SECTION 15.10 AND THE INJUNCTION(S) DEEMED SET FORTH BY THIS SUBPARAGRAPH ARE NOT INTENDED TO AFFECT, DIMINISH OR IMPAIR THE INJUNCTION(S) INCORPORATED HEREIN AND CONTAINED IN SUCH AGREEMENT.

15.12    NOTWITHSTANDING ANY PROVISION OF THIS PLAN, THE FOREGOING "CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES OR SETTLING INSURERS" PROVIDES ABSOLUTELY NO PROTECTION TO (I) A PERSON HAVING PERSONALLY COMMITTED AN ACT OR ACTS OF ABUSE RESULTING IN A CLAIM AGAINST THE DEBTOR, A PARTICIPATING PARTY OR A SETTLING INSURER, (II) THE HOLY SEE; (III) ANY PERSON OR ENTITY ON ACCOUNT OF CLAIMS EXCEPTED FROM THE EXCULPATION UNDER SECTION 15.8; AND (IV) ANY NON-SETTLING INSURER.

15.13    TO THE EXTENT NOT OTHERWISE ENJOINED IN SECTION 15.10, ASSERTION AND ENFORCEMENT OF CHANNELED CLAIMS, AND ANY ATTEMPT TO ASSERT OR ENFORCE SUCH CLAIMS, BY ANY PERSON OR ENTITY, AGAINST

48

**A PARTICIPATING PARTY OR SETTLING INSURER IS HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED.**

15.14 **NOTWITHSTANDING ANY PROVISION OF THIS PLAN, THE FOREGOING "CHANNELING INJUNCTION PREVENTING PROSECUTION OF ABUSE CLAIMS AGAINST PARTICIPATING PARTIES AND SETTLING INSURERS" IS NOT INTENDED TO AFFECT, DIMINISH OR IMPAIR THE RIGHTS OF ANY ABUSE CLAIMANT TO COMMENCE OR PROSECUTE AN ABUSE CLAIM AGAINST THE DEBTOR OR A PARTICIPATING PARTY PROVIDED THAT SUCH COMMENCEMENT OR PROSECUTION IS SUBJECT TO THE TERMS AND CONDITIONS OF THE DEBTOR'S DISCHARGE, THE TRUST AGREEMENT, THE TRUST ALLOCATION PROTOCOL, THE FUTURE ABUSE CLAIM TRUST AGREEMENT, AND THE FUTURE ABUSE CLAIM TRUST ALLOCATION PROTOCOL.**

**ABUSE CLAIMANTS SPECIFICALLY RESERVE, AND DO NOT RELEASE, ANY AND ALL CLAIMS THAT THEY MAY HAVE AGAINST THE DIOCESE OR ANY OTHER PARTICIPATING PARTY THAT IMPLICATE COVERAGE UNDER ANY NON-SETTLING INSURER'S INSURANCE POLICIES, BUT RECOURSE IS LIMITED TO THE PROCEEDS OF THE NON-SETTLING INSURER'S INSURANCE POLICIES AND ALL OTHER DAMAGES (INCLUDING EXTRA-CONTRACTUAL DAMAGES), AWARDS, JUDGMENTS IN EXCESS OF POLICY LIMITS, PENALTIES, PUNITIVE DAMAGES AND ATTORNEY'S FEES AND COSTS THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS BECAUSE OF THEIR CONDUCT CONCERNING INSURANCE COVERAGE FOR, OR DEFENSE OR SETTLEMENT OF, ANY ABUSE CLAIM, AND ANY SUCH JUDGMENTS OR AWARDS WILL BE HANDLED IN ACCORDANCE WITH THE PLAN AND THE TRUST ALLOCATION PROTOCOL. THE ABUSE CLAIMS WILL NOT BE RELEASED OR ENJOINED AS AGAINST THE DIOCESE OR ANY OTHER PARTICIPATING PARTY FOR ANY ABUSE THAT MAY BE COVERED UNDER ANY NON-SETTLING INSURER'S INSURANCE POLICIES UNTIL SUCH CLAIMS ARE SETTLED WITH THE DIOCESE, ANY OTHER PARTICIPATING PARTY AND SUCH NON-SETTLING INSURER OR ARE FULLY ADJUDICATED, RESOLVED, AND SUBJECT TO FINAL ORDER, BUT RECOURSE IS LIMITED AS DESCRIBED ABOVE.**

**ABUSE CLAIMANTS AND THE TRUST SHALL BE PERMITTED TO NAME THE DIOCESE OR ANY OTHER PARTICIPATING PARTY IN ANY PROCEEDING TO RESOLVE WHETHER THE DIOCESE OR ANY OTHER PARTICIPATING PARTY HAS LIABILITY FOR ABUSE CLAIMS AND THE AMOUNT OF ANY SUCH LIABILITY, SOLELY FOR THE PURPOSE OF OBTAINING INSURANCE COVERAGE FROM NON-SETTLING INSURERS. THE DISCHARGE HEREUNDER DOES NOT APPLY TO, AND SHALL NOT LIMIT IN ANY WAY THE OBLIGATIONS OF NON-SETTLING INSURERS TO DEFEND AND PAY, THE DIOCESE'S OR ANY OTHER PARTICIPATING PARTY'S LIABILITY FOR ABUSE CLAIMS UNDER NON-SETTLING INSURER INSURANCE POLICIES.**

49

15.15   **SETTLING INSURER INJUNCTION.**

**IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DEBTOR OR THE TRUSTEE, THE FUNDING OF THE TRUST, OTHER CONSIDERATION, AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE SETTLING INSURERS AND THE DEBTOR OR THE TRUSTEE, AND THE PROTECTIONS AFFORDED THE SETTLING INSURERS, AND PURSUANT TO SECTIONS 105, 363 AND 1123 OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ANY AND ALL PERSONS OR ENTITIES (INCLUDING, WITHOUT LIMITATION, ALL DEBT HOLDERS, ALL EQUITY HOLDERS, GOVERNMENTAL, TAX, AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIM HOLDERS, OTHER INSURERS, AND ALL OTHERS HOLDING CLAIMS OR INTERESTS) ARE PERMANENTLY ENJOINED AND BARRED FROM ASSERTING AGAINST A SETTLING INSURER ANY CLAIM (INCLUDING, WITHOUT LIMITATION, ANY INSURANCE COVERAGE CLAIM OR EXTRA-CONTRACTUAL CLAIM) OR INTEREST OF ANY KIND OR NATURE WHATSOEVER ARISING FROM OR RELATING IN ANY WAY TO (i) ANY ABUSE CLAIM OR (ii) ANY OF THE SETTLING INSURER POLICIES OR (iii) ANY CLAIM AGAINST ANY SETTLING INSURER FOR CONTRIBUTION, INDEMNITY, DEFENSE, SUBROGATION, OR SIMILAR RELIEF THAT ARISES DIRECTLY OR INDIRECTLY FROM ANY CLAIM AGAINST THE DEBTOR OR ANY PARTICIPATING PARTY.**

**NOTHING CONTAINED IN THIS SECTION IS INTENDED TO AFFECT, DIMINISH OR IMPAIR ANY INJUNCTIONS CONTAINED IN AN AGREEMENT BETWEEN THE DEBTOR OR THE TRUSTEE AND ANY SETTLING INSURER. SUCH INJUNCTIONS ARE INCORPORATED HEREIN BY REFERENCE AND ARE DEEMED FULLY SET FORTH HEREIN.**

**NOTWITHSTANDING THE ABOVE, ECCLESIA AND THE ECCLESIA INSURANCE POLICIES ARE NOT RELEASED WITH RESPECT OT THE CLASS 6 CLAIMS.**

15.16   **TERM OF INJUNCTIONS OR STAYS AND CONFIRMATION OF SETTLEMENTS WITH PARTICIPATING PARTIES AND SETTLING INSURERS.**

**ALL INJUNCTIONS AND/OR STAYS PROVIDED FOR IN THIS PLAN, THE INJUNCTIVE PROVISIONS OF SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND ALL INJUNCTIONS OR STAYS PROTECTING PARTICIPATING PARTIES AND ANY SETTLING INSURER THAT HAS PURCHASED ITS INSURANCE POLICY OR POLICIES IN A SECTION 363 SALE, ARE PERMANENT AND WILL REMAIN IN FULL FORCE AND EFFECT FOLLOWING THE EFFECTIVE DATE AND ARE NOT SUBJECT TO BEING VACATED OR MODIFIED.   DEBTOR'S SETTLEMENT AGREEMENTS, IF ANY, WITH THE SETTLING INSURERS, AND THE PARTICIPATING PARTIES PREVIOUSLY AUTHORIZED BY THE**

**BANKRUPTCY COURT ARE HEREBY AFFIRMED AND ANY OBLIGATIONS OF DEBTOR WITH RESPECT TO SUCH SETTLEMENT AGREEMENTS ARE EXCEPTED FROM THE DEBTOR'S DISCHARGE AND SHALL BE ASSUMED BY THE REORGANIZED DEBTOR AND TRUSTEE, AS APPLICABLE, ON THE EFFECTIVE DATE.**

15.17  **RELEASE OF AVOIDANCE RIGHTS AGAINST PARTICIPATING PARTIES AND SETTLING INSURERS.**

**ON THE EFFECTIVE DATE, ALL AVOIDANCE RIGHTS, INCLUDING THOSE ARISING UNDER SECTIONS 544, 547, 548, 549, 550, AND 553 OF THE BANKRUPTCY CODE, AGAINST EACH OF THE PARTICIPATING PARTIES AND SETTLING INSURERS AND THE DEBTOR AND REORGANIZED DEBTOR SHALL BE DEEMED SETTLED, COMPROMISED, AND RELEASED BY THIS PLAN.**

15.18  **RELEASE OF CLAIMS AGAINST PARTICIPATING PARTY OR SETTING INSURER.**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED BY THE REORGANIZED DEBTOR PURSUANT TO SECTION XVII, OBLIGATIONS UNDER ANY SETTLEMENT AGREEMENT AND CLAIMS EXCEPTED FROM EXCULPATION AND DISCHARGE UNDER SECTION 16.4 AND 16.7,  ON THE EFFECTIVE DATE, THE DEBTOR, REORGANIZED DEBTOR AND THE ESTATE WAIVE, RELEASE AND DISCHARGE ANY AND ALL CLAIMS OR CAUSES OF ACTION OF EVERY KIND AND NATURE THAT DEBTOR, REORGANIZED DEBTOR, OR THE ESTATE HAVE OR MAY HAVE AGAINST A PARTICIPATING PARTY OR SETTLING INSURER, INCLUDING AVOIDANCE RIGHTS, AND ANY CLAIM THAT SUCH PARTICIPATING PARTY OR SETTLING INSURER OR ITS ASSETS ARE A PART OF OR OWNED BY THE DEBTOR OR THE ESTATE.  NO SUCH CLAIM WILL SURVIVE THE EFFECTIVE DATE OR BE DEEMED TO BE ASSIGNED TO THE TRUST. WITH RESPECT TO ANY RELEASES IN A BANKRUPTCY COURT-APPROVED AGREEMENT WITH A PARTICIPATING PARTY OR SETTLING INSURER, NOTHING CONTAINED IN THIS PLAN IS INTENDED TO AFFECT, DIMINISH OR IMPAIR SUCH RELEASES.**

15.19  **Pension Plan**. No provision in the Plan, Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases shall be construed to exculpate, discharge, release or relieve the Debtor, the Other Insured Entities, or any other party, in any capacity, from any liability or responsibility to any Person regarding the Pension Plans under any law, governmental policy, or regulatory provision.  The Pension Plans shall not be enjoined or precluded from enforcing any such liability or responsibility because of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, release and discharge of Claims against the Debtor), the Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Case.  The Trust shall not have any liability to any Person on account of the Pension Plans, including liability as a member of a "Controlled Group" as defined in 29 U.S.C. § 1301(a)(14)(A) or on any other basis.

51

As of the Effective Date, the Reorganized Debtor shall assume and continue the Pension Plans to the extent of its obligations under the Pension Plans and applicable law. Notwithstanding the foregoing, the Reorganized Debtor reserves all of its rights under the Pension Plan.  For the avoidance of doubt, any claims asserted by any beneficiary of the Pension Plan shall be reinstated and shall remain with the same priority and validity as before the Petition Date.

## SECTION XVI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 16.1    Assumed Employee and Retiree Benefit Plans.

To the extent not previously assumed, all employee and retiree benefit plans to which the Debtor are a party will be deemed assumed by the Reorganized Debtor on the Effective Date.

### 16.2    General; Assumed if Not Rejected.

Subject to the requirements of Section 365, all executory contracts and unexpired leases of the Debtor not rejected by order of the Bankruptcy Court or are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtor on the Effective Date.  If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court.  All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Debtor.  In the event of a dispute regarding the amount of any such payments, or the ability of the Debtor to provide adequate assurance of future performance, the Reorganized Debtor will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of the Final Order resolving such dispute.

### 16.3    Claims for Contract Rejection.

All proofs of claim regarding Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within 30 days after the Effective Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for filing Claims arising from such rejection, proofs of Claim with respect thereto must be filed within 30 days after the later to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date, the date such order becomes a Final Order, or such Claims will be forever barred.

## SECTION XVII
## NON-MONETARY COMMITMENTS

### 17.1    Non-Monetary Commitment to Healing and Reconciliation.

To further promote healing and reconciliation, and to continue its efforts to prevent Abuse and other injury to children from occurring in the Diocese in the future, the Committee requests the Diocese agree that it will undertake the commitments in Exhibit "___" attached hereto and incorporated herein.  The Diocese must inform the Committee which commitments it will adopt at least seven (7) days before the first date set for the hearing on approval of the Disclosure Statement.

DOCS_NY:46709.11 18491/002

## SECTION XVIII
## MISCELLANEOUS PROVISIONS.

18.1    **Retention of Jurisdiction.**

Notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date:

18.1.1  Except as otherwise stated in this Plan or in the Confirmation Order, the Bankruptcy Court will retain jurisdiction over all matters arising under, to further, or in connection with this Plan, including the following:

a)      The determination of objections to Disputed Claims; the determination of requests for payment of Claims entitled to priority under section 507 of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

b)      The resolution of controversies and disputes regarding interpretation and implementation of this Plan and the Plan Documents;

c)      The granting of relief in aid of this Plan and the Plan Documents including the entry of appropriate orders (which may include removal of actions in non-Bankruptcy Court forums to the Bankruptcy Court, contempt or other sanctions) to protect the Reorganized Debtor, the Participating Parties, the Settling Insurers, and the Released Parties from actions prohibited under this Plan or the Plan Documents;

d)      Amendments to and modifications of this Plan;

e)      Subject to the limitations and exclusions described above, the determination of any and all applications, adversary proceedings, and contested or litigated matters pending on the Effective Date;

f)      Allowance of post-confirmation fees provided for in the Plan, including but not limited to in Section 11.5.4;

g)      The approval of a settlement agreement whereby a Person or Entity, including a Non-Settling Insurer, may become a Participating Party or Settling Insurer and whereby the Bankruptcy Court may appoint a future claims representative and provide for treatment of future claims; and

h)      The closing of this Case.

18.2    **Remand of Removed Actions and Relief From Automatic Stay/Discharge.**

On the Effective Date and without further order of the Bankruptcy Court or the District Court, (a) all actions removed by the Debtor or any other Co-Defendant during the Case are remanded to the Court from which they were removed and (b) such actions are not subject to the automatic stay or the injunction in Bankruptcy Code section 524(a)(2).  Nothing herein is intended to affect, diminish or impair those provisions of this Plan that prohibit execution of any judgment

53

against the Reorganized Debtor's Revested Assets or assets the Reorganized Debtor acquire after the Effective Date.

### 18.3    Modification of Plan.

The Committee reserves the right, under the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of the Confirmation Order.    After the entry of the Confirmation Order, the Proponent may, upon order, amend or modify this Plan under section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### 18.4    Severability.

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted, unless such term or provision is inconsistent with the intent of the Committee, in which case the Plan may be unilaterally withdrawn by the Committee.    Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted under this Section, is valid and enforceable under its terms.  In the event of a successful collateral attack on any provision of this Plan (i.e., an attack other than through a direct appeal of the Confirmation Order), the remaining provisions of this Plan will remain binding on the Diocese, the Participating Parties, the Settling Insurers, the non-Settling Insurers, the Trustee, the Future Abuse Claims Trustee, the Committee, all Claimants, all Creditors, and all other parties in interest.

### 18.5    Headings.

The headings of the Sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

### 18.6    Notices.

All notices or requests to the Reorganized Debtor in connection with this Plan shall be in writing and served either by (i) United States mail, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed given when received by the following parties:

If to the Debtor or Reorganized Debtor:

With a copy to:

If to the Trustee:

With a copy to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attention:     James I. Stang; Ilan D. Scharf

If to the Future Abuse Claims Trustee:


With a copy to:


18.7    **Notices to Claimants.**

All notices and requests to a Person or Entity holding any Claim will be sent to them at the last known address listed for such Person or Entity with the Bankruptcy Court or with the Debtor's Claims Agent, or to the last known address of their attorney of record. The holder of a Claim may designate in writing any other address, which designation will be effective upon actual receipt by the Reorganized Debtor, the Trustee, and the Future Abuse Claims Trustee. Any Person or Entity entitled to receive notice under this Plan will have the obligation to provide the Reorganized Debtor, the Trustee, and the Future Abuse Claims Trustee with such Person's or Entity's current address for notice purposes. The Reorganized Debtor, the Trustee, and the Future Abuse Claims Trustee will have no obligation to attempt to locate a more current address if any notice proves to be undeliverable to the most recent address provided to the Reorganized Debtor, the Trustee, and the Future Abuse Claims Trustee.

18.8    **Post-Confirmation Court Approval.**

Any action requiring Bankruptcy Court, U.S. District Court or state court approval after the Effective Date will require the Person or Entity seeking such approval to file an application, motion, or other request with the Bankruptcy Court, U.S. District Court, or state court, as applicable, and obtain a Final Order approving such action before the requested action may be taken. The Person or Entity filing such application, motion, or other request shall serve such application, motion, or other request, together with a notice setting forth the time in which objections must be filed with the court, on the Reorganized Debtor, the Committee, the Trustee, and the Future Abuse Claims Trustee by first-class mail, electronic mail, ECF, overnight courier, facsimile, or hand delivery.  Unless the court orders otherwise, all notices shall provide the recipients at least 21 days in which to file an objection to the application, motion, or other request. If no objection is timely filed, the court may authorize the proposed action without further notice or a hearing.  If an objection is timely filed, the court will determine whether to conduct a hearing, or to require the submission of further documentation, prior to ruling on the application, motion, or other request.

18.9    **Election Under Section 1129(b) of the Bankruptcy Code.**

The Proponent requests confirmation of the Plan under section 1129(b) of the Bankruptcy Code if the requirements of all provisions of section 1129(a) of the Bankruptcy Code, except section (a)(8) thereof, are met regarding the Plan.  In determining whether the requirements of section 1129(a)(8) of the Bankruptcy Code have been met, any Class that does not have as an element of it an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class.

### 18.10   Consummation of the Plan.

The Proponent reserves the right to request that the Confirmation Order include a finding by the Bankruptcy Court that Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order.

### 18.11   Exemption from Transfer Taxes.

Under section 1146(a) of the Bankruptcy Code, Trustee's, Debtor's or Reorganized Debtor's  delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, whether occurring before or after the Confirmation Date , including any deeds, bills of sale or assignments executed –with any sale or  disposition of assets contemplated by this Plan (i.e. the Properties), shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

### 18.12   Waivers.

Except as otherwise provided in the Plan or in the Confirmation Order, any term of the Plan may be waived by the party benefited by the term to be waived.

### 18.13   Setoffs, Recoupments, and Defenses.

Except for the Sections of the Plan about the Abuse Claims, nothing in the Plan shall constitute a waiver or release by the Debtor, Reorganized Debtor, Participating Parties, the Trustee, or the Future Abuse Claims Trustee of any rights of setoff or recoupment, or of any defense, they may have regarding any Claim (including rights under section 502(d) of the Bankruptcy Code). Except as otherwise provided in the Plan or in the Confirmation Order or in agreements previously approved by a Final Order, the Debtor, Reorganized Debtor, Participating Parties, the Trustee, or the Future Abuse Claims Trustee may, but will not be required to, set off against any Claim or any distributions regarding such Claim, any of the Claims, rights and Causes of Action of any nature that the Debtor, the Reorganized Debtor, Participating Parties, the Trustee, or the Future Abuse Claims Trustee, as applicable, may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of any distribution hereunder or any other action or omission of the Debtor, Reorganized Debtor, Participating Parties, the Trustee, or the Future Abuse Claims Trustee, nor any provision of the Plan, shall constitute a waiver or release by the Debtor, the Reorganized Debtor, Participating Parties, the Trustee, or the Future Abuse Claims Trustee, as applicable, of any such Claims, rights and Causes of Action that the Debtor, the Reorganized Debtor, Participating Parties, the Trustee, or the Future Abuse Claims Trustee, as applicable, may possess against such holder.

DOCS_NY:46709.11 18491/002

18.14   **Compromise of Controversies.**

18.14.1      Bankruptcy Court Approval of Settlements

In consideration for the classification, distributions and other benefits provided under the Plan, the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved under the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each compromise and settlement provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination under the standards of Bankruptcy Rule 9019 that such compromises and settlements are in the best interests of the Debtor and the Estates.

18.14.2      Settlement with Participating Parties and Settling Insurers.

Specifically included within the Bankruptcy Court's approval of compromises and settlements of Claims and controversies is the Bankruptcy Court's approval of the agreements with Participating Parties and Settling Insurers. If a conflict exists between the Plan and such agreements, the agreements control such conflict. Such agreements contain the protections and benefits afforded the Participating Party and Settling Insurer, as well as the rights and obligations of the parties thereto, to the extent of any conflict with the Plan.  Such agreements bind the Trust.

18.15   **Withdrawal or Revocation of the Plan.**

The Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date but the consent of the Proponent is required.  If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such event nothing herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Person or Entity, or to prejudice in any other manner the rights of a Proponent, whether one or more, or any other entity in further proceedings involving a Proponent and specifically shall not modify or affect the rights of any party under any prior orders of the Bankruptcy Court.

18.16   **Default.**

Except as otherwise provided in the Plan or in the Confirmation Order, if the Reorganized Debtor, a Participating Party, a Settling Insurer, or the Trustee shall default in the performance of any of their respective obligations under the Plan or under the Plan Documents and shall not have cured such a default within any applicable cure period (or, if no cure period is specified in the Plan or Plan Documents or in any instrument issued to or retained by a Claimant under the Plan, then within 30 days after receipt of written notice of default), then the entity to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be an event of default regarding any other Claim.

18.17   **Governing Law.**

Except when federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan or under the Plan Documents shall be governed by and construed and enforced under the laws of the State of New York without giving effect to the principles of conflicts of laws.

57

18.18    **Reservation of Rights.**

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and the Effective Date does not occur, the rights of all parties in interest in the Case are and will be reserved in full. Any concessions or settlement reflected, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by any such concession or settlement.

18.19    **Controlling Documents.**

To the extent any provision of a settlement agreement with a Participating Party or Settling Insurer is inconsistent with this Plan, such settlement agreement, as applicable, shall control.

18.20    **Successors and Assigns.**

The Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all Claimants and all other parties in interest affected thereby and their respective successors, heirs, legal representatives and assigns.

18.21    **Direction to a Party.**

On and after the Effective Date, the Trust, the Future Abuse Claims Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

18.22    **Certain Actions.**

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtor or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), under applicable non-bankruptcy law, with no requirement of further action by the officers of the Debtor.

18.23    **Rounding of Fractional Numbers.**

All fractional numbers, including payments or distributions under the Plan, Trust Documents, and Future Abuse Claims Trust Documents shall be rounded (up or down) to the nearest whole number.

18.24    **Dissolution of the Committee.**

DOCS_NY:46709.11 18491/002

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective Orders entered during the Case, which shall remain in full force and effect according to their terms, provided that such parties shall have a right to be heard regarding any (i) applications for Professional Claims and (ii) requests for compensation and reimbursement of expenses under section 503(b) of the Bankruptcy Code for making a substantial contribution in the Case.

18.25   **Saturday, Sunday or Legal Holiday.**

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

18.26   **Exhibits.**

All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

– Rest of Page Intentionally Left Blank –

DOCS_NY:46709.11 18491/002

## SECTION XIX
## RECOMMENDATIONS AND CONCLUSION

The Committee strongly believes that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Creditors holding Claims with recoveries significantly greater than any available alternatives.

Dated: New York, New York
      January 9, 2023

DOCS_NY:46709.11 18491/002

**EXHIBITS TO BE FILED SEPERATELY**

DOCS_NY:46709.11 18491/002