**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE
CENTRE, NEW YORK,

                                        Debtor.

Chapter 11

Case No. 20-12345 (MG)

## MEMORANDUM OPINION SUSTAINING IN PART AND OVERRULING IN PART DEBTOR'S EIGHTH OMNIBUS OBJECTION TO CLAIMS

*A P P E A R A N C E S :*

JONES DAY
*Attorneys for the Debtor*
250 Vesey Street, Floor 32
New York, NY 10281
By:    Corinne Ball, Esq.
       Todd Geremia, Esq.
       Victoria Dorfman, Esq.
       Benjamin Rosenblum, Esq.
       Andrew Butler, Esq.

MARSH LAW FIRM PLLC and PFAU COCHRAN VERTETIS AMALA PLLC
*Counsel for Plaintiff 2020-1999553 (Claim No. 90100)*
31 Hudson Yards, 11th Floor
New York, NY 10001
By:    James R. Marsh, Esq.
       Jason P. Amala, Esq.

JEFF ANDERSON & ASSOCIATES, PA
*Counsel for Claimants 90208, 90209, 90317, 90327, 90330, 90345, 90349, 90391, 90472, 90512, 90514, and 90517*
363 7th Ave., 12th Floor
New York, NY 10001
By:    Patrick Stoneking, Esq.

SWEENEY, REICH & BOLZ, LLP
*Counsel for Claimants 90244, 90245 and 90324*
1981 Marcus Ave., Suite 200
Lake Success, NY 11042
By:    Michael G. Dowd, Esq.
       Michael H. Reich, Esq.

EISENBERG & BAUM, LLP
*Counsel for Claimant 90355*
24 Union Sq. East, PH
New York, NY 10003
By:     Paul A. Rachmuth, Esq.

HERMAN LAW
*Counsel for Claimants 90231 and 90264*
225 W. 34th Street, 9th Floor
New York, NY 10122
By:     Stuart S. Mermelstein, Esq.

KAZEROUNI LAW GROUP, APC
*Counsel for Claimant 30035*
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
By:     Mohammad Kazerouni, Esq.

LEVY KONIGSBERG, LLP
*Counsel for Claimant 2020-2006954 (Claim # 90174)*
605 3rd Avenue, 33rd Fl.
New York, NY 10158
By:     John Guinan, Esq.

MATTHEWS & ASSOCIATES
*Counsel for Claimant 90495*
2905 Sackett Street
Houston, TX 77098
By:     Marla Briscoe, Esq.

PHILLIPS & PAOLICELLI, LLP
*Counsel for Claimant 90181*
747 Third Avenue 6th Floor
New York, NY 10017
By:     Daniel J. Woodard, Esq.

POLLOCK COHEN LLP
*Local Counsel for Claimant 90544*
111 Broadway, Ste. 1084
New York, NY 10006
By:     Adam Pollock, Esq.

WORLOW LAW
*Counsel for Claimant 90544*
615 Willow Street
North Little Rock, AR 72114
By:      Jacob Worlow, Esq.

SLATER SCHULMAN LLP
*Counsel for Claimants 90020, 90053, 90075 and 90392*
445 Broad Hollow Road, Suite 419
Melville, NY 11747
By:      Stephenie Lannigan Bross, Esq.

WEITZ & LUXENBERG, P.C.
*Counsel for Claimant 90090*
700 Broadway
New York, NY 10003
By:      Jared Scotto, Esq.


**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the eighth omnibus objection (the "Objection," ECF Doc. #

1730) brought by The Roman Catholic Diocese of Rockville Centre (the "Debtor" or "Diocese")

for the entry of an order ("Order") to disallow or expunge certain claims (the "Claims," ECF

Doc. # 1730, Schedule 1) on the grounds that the claimants subject to this Objection (collectively

the "Claimants" and each a "Claimant") have not pled sufficient allegations that the Debtor had

notice of the alleged abuse as required by New York law.

As explained in more detail below, the Court concludes that some of the Claims have

sufficiently pled notice allegations and others have not.  The Court's decision rests on the

following principles of law.  First, the Court concludes that it is not sufficient under federal

pleading standards which govern this Objection for Claimants to include only conclusory

allegations that the Debtor "knew or should have known" about the abuser's propensity for

abuse.  Second, the Court concludes that because the Debtor did not specifically ask the

Claimants to plead notice on the proof of claim form the Debtor created, and because many of the Claimants filed complaints in New York state court prior to this bankruptcy case believing they would be held to state pleading standards, that fairness requires giving substantially all Claimants a chance to amend their claims to meet the federal pleading standard. Finally, while the Court is not prepared to permit broad discovery for those Claimants whose claims are being dismissed to re-plead their claims, the Court will schedule a case conference for all parties to discuss matters related to notice evidence.

In support of the Objection, the Debtor filed the declaration of Todd R. Geremia (the "Geremia Decl.," ECF Doc. # 1731). Thirteen responses were filed on behalf of twenty-nine of the thirty Claimants subject to the Objection.[1] The Debtor also filed a reply (the "Reply," ECF Doc. # 1936).

Accordingly, as set forth in the table below, for the reasons discussed below, the Court **SUSTAINS** the Objection as to certain claims, but for all but one of the Claims **SUSTAINS** the Objections **WITH LEAVE TO AMEND**. The Court also **OVERRULES** the Objection with respect to certain claims, where the Claimants have sufficiently alleged notice.

---

[1]     Jeff Anderson & Associates filed a response (the "Anderson Response," ECF Doc. # 1863) for claim numbers 90208, 90209, 90317, 90327, 90330, 90345, 90349, 90391, 90472, 90512, 90514 and 90517. Sweeney, Reich & Bolz, LLP filed a response (the "Sweeney Response," ECF Doc. # 1856) for claim numbers 90244, 90245 & 90324. Eisenberg & Baum filed a response (the "Eisenberg Response," ECF Doc. # 1861) for claim number 90355. Herman Law filed two responses, one for claim 90231 (the "Herman 90231 Response," ECF Doc. # 1865) and one for claim 90264 (the "Herman 90264 Response," ECF Doc. # 1869). Kazerouni Law filed a response (the "Kazerouni Response," ECF Doc. # 1864) for claim number 30035. Levy Konigsberg, LLP filed a response (the "Levy Response," ECF Doc. # 1860) for claim 90174. Marsh Law Firm PLLC and Pfau Cochran Vertetis Amala PLLC filed a response and a declaration (the "Amala Response," ECF Doc. # 1871 and the "Amala Declaration," ECF Doc. # 1872) for claim 90100. Matthews & Associates filed a response (the "Matthews Response," ECF Doc. # 1874) for claim number 90495. Phillips & Paolicelli, LLP filed a response and a declaration (the "Phillips Response," ECF Doc. # 1867 and the "Woodward Declaration," ECF Doc. # 1866) for claim number 90181. Pollock Cohen filed a response (the "Pollock Response," ECF Doc. # 1868) for claim number 90544. Slater Schulman LLP filed a response and a declaration (the "Slater Response," ECF Doc. # 1857 and the "Bross Declaration," ECF Doc. # 1858) for claim numbers 90020, 90053, 90075, 90392. Weitz & Luxenberg P.C. filed a response (the "Weitz Response," ECF Doc. # 1870) for claim number 90090. No response was filed for claim number 90542.

| OBJECTION SUSTAINED WITH LEAVE TO AMEND | OBJECTION SUSTAINED WITH PREJUDICE | OBJECTION OVERRULED |
| --- | --- | --- |
| Claims 90208, 90209, 90317, 90330, 90345, 90349, 90391, 90472, 90512, 90514, 90517, 90231, 90264, 30035, 90174, 90053, 90392, 90020, 90245, 90324, 90544, 90075, 90327, 90100, 90181 | Claim 90542 | Claims 90244, 90355, 90495 and 90090 |

## I.     BACKGROUND

### A.  General Case Background

Following the enactment in 2019 of the Child Victims Act (the "CVA"), which revived what had been time-barred claims, approximately 200 lawsuits were filed in state courts in New York by abuse claimants against the Debtor and others, including parishes and affiliates (the "State Court Actions").  (Objection ¶ 4.)  In its effort to address these claims, the Debtor states that it undertook a substantial effort to identify and marshal fairly and equitably over 60 years of insurance policies, including both primary and excess coverage, with the goal of securing a valuable resource of the Debtor, its parishes, and its affiliates, so that it can be used for the care and compensation of abuse survivors.  (*Id.*)  The Debtor has made available to counsel insurance policies and related information, together with historical financial information for itself and its charitable, educational, and service affiliates, for the abuse claimants and the Debtor's insurers. (*Id.*)

### B.  The Claim Objection Procedures

On October 9, 2020, the Debtor filed its schedules of assets and liabilities and statements of financial affairs (ECF Doc. ## 57, 58), which were thereafter amended.  (*See* ECF Doc. ## 299, 635, 977, 1649.)  On January 27, 2021, the Court entered the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* ("Bar Date

Order," ECF Doc. # 333).  Under the Bar Date Order, the Court set (a) March 30, 2021, as the

deadline for each person or entity to file a proof of claim (the "General Bar Date"), and (b)

August 14, 2021, at 5:00 p.m. as the deadline for each individual holding a Sexual Abuse Claim[2]

to file a proof of such claim (the "Sexual Abuse Bar Date").  By subsequent order, the Court

established October 10, 2022 as a supplemental bar date for certain holders of Sexual Abuse

Claims that had their claims revived pursuant to the Adult Survivors Act (the "Adult Survivors

Sexual Abuse Bar Date").  (*See* ECF Doc. # 1262.)

On February 21, 2023, the Court entered the *Amended Order Approving Claim Objection*

*Procedures and Granting Related Relief* (the "Claim Objection Procedures Order," ECF Doc. #

1679).  The Claim Objection Procedures Order allows the Debtor to assert omnibus claim

objections on the grounds set forth in Bankruptcy Rule 3007(d), which include that the claims

are duplicates, have been amended, or that the Debtor is not liable to the claimant for the amount

or claim stated.  (*See* Claims Objection Procedures Order § 3(a).)

### C.  The Debtor's Objection

The Debtor has filed a series of Omnibus Objections to claims, grouping the claims

subject to each omnibus objection by certain common arguments.  The Eighth Omnibus

Objection objects to thirty Claims, tabulated in Schedule 1 to the Objection, alleging that the

Claimants failed to allege that the Debtor had notice that the alleged abuser had the propensity to

engage in sexual abuse.  (Objection ¶ 15–17.)  The Debtor contends that such allegations are

required under New York law.  (*Id.*)

Here, the Debtor states that the proofs of claim at issue in this Objection meet all of the

following criteria:

---

[2]    "Sexual Abuse Claim" has the same meaning as the term is defined in the Bar Date Order.

- the accused perpetrator has only a single Proof of Claim in this case alleging that he engaged in sexual abuse;

- the accused perpetrator is not on the list of perpetrators for whom the Debtor has paid an award to a claimant through the Debtor's Independent Reconciliation and Compensation Program ("IRCP"), or as to whom there has been an adverse determination before the Diocesan Review Board ("DRB") (*see* "List of Accused Clergy," available through https://dm.epiq11.com/case/rdrockville/info.);

- the accused perpetrator is not on a list of accused abusers compiled by the Official Committee of Unsecured Creditors ("UCC") in this case, to "supplement[]" the Diocese's list; the UCC asserts that the individuals on its list "have been accused of committing sexual abuse" and either allegations against them have been found credible or sexual abuse lawsuits have been filed against them (*see* "UCC List," Geremia Decl. Exhibit E);

- the Proof of Claim either (i) does not contain any information in response to a question whether the claimant reported the alleged abuse to the Debtor or whether there was any witness to the abuse, or (ii) affirmatively states that no such report was made nor was there any witness to the alleged abuse; and

- There is not otherwise any supported allegation or indication that the Diocese was aware prior to the alleged abuse, that the alleged perpetrator was likely to engage in such conduct.

(Objection ¶ 18.)

### D.  The Responses

Fourteen responses (the "Responses") were filed.  The arguments in these Responses are summarized as follows.  First, the Debtor raised the same arguments in State Court and lost on a Motion to Dismiss before Judge Jaeger; more generally, New York law does not require that plaintiffs plead notice with specificity.  (*See, e.g.*, Anderson Response ¶¶ 15–22.)  Second, the Debtor should not be able to rely on its own lists to determine whether it had notice of a particular priest's abuse.  (*See, e.g.*, Matthews Response ¶¶ 28–30.)  Third, it is unfair to dismiss the claims without allowing them to proceed to discovery, particularly because (1) the Debtor is the one with access to this evidence and (2) the Claimants were going to be permitted to get this discovery in state court before the Debtor filed for bankruptcy.  (*See e.g.*, Amala Response ¶¶ 17,

39.)  Fourth, the Proof of Claim form created by the Debtor did not include specific questions about notice making it unfair to dismiss claims on those grounds.  (*See, e.g.*, Sweeney Response ¶¶ 26–27.)  Fifth, where a plaintiff pleads a cause of action for general negligence, rather than negligent hiring or supervision, there is no requirement to plead notice.  (Amala Response ¶¶ 45–56.)

### E.  Grand Jury Report

Many of the Claims and State Court complaints reference the findings of the Suffolk County Supreme Court Special Grand Jury, Term 1D, (the "Grand Jury"), empaneled on May 6, 2002, and thereafter extended to February 28, 2003, to complete its investigation into the Diocese of Rockville Centre and its Priests and Parishes.  (Kazerouni Response, Exhibit A (hereinafter "Grand Jury Report"[3]) at 2).  The Grand Jury heard testimony from 97 witnesses and considered 257 exhibits.  (*Id.*)  The Grand Jury Report was released on May 6, 2002.  (*Id.*)  It found that the Debtor had engaged in a practice of "[a]ggressive legal strategies . . . employed to defeat and discourage lawsuits even though Diocesan officials knew they were meritorious." (Grand Jury Report at 106.)  The Grand Jury Report found that the "general failure of supervision from officials of the Diocese, to individual pastors and other priests living in rectories, compounded and perpetuated these violations with devastating consequences for children."  (*Id.* at 5.)

### F.  State Court Litigation and Discovery

Following the enactment of the CVA, many of the Claimants filed lawsuits in the Supreme Court of the State of New York, County of Nassau-CVA-R Part (the "State Court").  In

---

[3]        Grand Jury Report, Suffolk County Supreme Court, Special Grand Jury, Term 1D, May 6, 2002, foreperson Rosanne Bonventre, dated January 17, 2003, available at https://www.bishop-accountability.org/reports/2003_02_10_SuffolkGrandJury/Suffolk_Full_Report.pdf (last accessed April 21, 2023).

November of 2019, the State Court entered a case management order (the "Case Management

Order," attached as Exhibit 3 to the Amala Declaration), which applied only to cases filed

pursuant to CPLR 214-G where the Debtor is a named party/defendant.  (Case Management

Order at 1.)  The Case Management Order stated that one of its objectives was the

"[s]tandardization of initial discovery so that the parties can obtain the necessary information to

evaluate cases for possible settlement at minimum cost" and "[c]oordination of motion practice,

discovery, and other matters . . . ."  (*Id.* at 1–2.)  The order created separate "liaison counsel" to

represent the interests of plaintiffs and defendants and directed the liaison counsel to work

together to propose "Standard Consolidated Disclosures" for all parties, including the Survivor,

to exchange discovery.  (*Id.* at 2–4.)

Shortly before the Case Management Order was issued, the Debtor filed a motion to

dismiss (the "Motion to Dismiss") forty-four of the complaints pursuant to CPLR 3211(a)(5) and

3211(a)(7).  *See ARK3 Doe v. Diocese*, No. 900010/2019 (N.Y. Sup. Ct., Nassau Cnty) at Doc. #

92  The Debtor argued that the CVA was unconstitutional (Part I), and that each individual

complaint failed to properly plead a cause of action for negligence, negligent retention, negligent

supervision, and several other causes of action (Parts II through VIII).  (*See id*. at Doc. No. 96,

attached to the Anderson Response as Exhibit A.)  The State Court denied the Motion to Dismiss

as to all the claims for the forty-four complaints.  (*Id.* at Doc. # 145, attached to the Anderson

Response as Exhibit B.)  One of those forty-four complaints that survived a motion to dismiss

was filed by Claimant 90020, who is subject to this Objection.  (*See* Slater Response ¶ 5.)  After

losing these motions to dismiss, the Debtor brought a motion to stay proceedings pending appeal,

which was also denied.  (*ARK3*, No. 900010/2019 at Doc. # 161, attached to the Anderson

Response as Exhibit C.)

After the denial of the motion to dismiss and stay motions, several plaintiffs, including at least one Claimant subject to his Objection, served the Debtor with pre-motion to dismiss interrogatories. (*See, e.g.*, Amala Declaration Exhibit 9.) Several plaintiffs also filed discovery motions based on the Debtor's failure to comply with discovery orders. (*ARK3*, No. 900010/2019 at Doc. # 159). These motions were not resolved before the Debtor filed for bankruptcy. (Amala Response ¶ 16.)

## II.   LEGAL STANDARD

### A.  Allowance and Disallowance of a Claim

Section 101 of the Bankruptcy Code provides that a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) is otherwise allowable. 11 U.S.C. §§ 101(5)(A) & 101(10). Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

Under section 502(b)(1), claims may be disallowed if they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

"The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶

502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019).  Pursuant to Federal

Bankruptcy Rule 3001(f), a claimant establishes a *prima facie* case against a debtor upon filing a

proof of claim alleging facts sufficient to support the claim.  Fed. R. Bankr. P. 3001(f).  If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON

BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019).

 "To overcome this *prima facie* evidence, an objecting party must come forth with

evidence which, if believed, would refute at least one of the allegations essential to the claim."

*Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing

"evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive

legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of

the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors*

*Liquidation Co. GUC Trust* (*In re Motors Liquidation Co.*), No. 12 Civ. 6074 (RJS), 2013 WL

5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  The claimant must

assert a plausible basis for imposing a right to payment of an allowed claim.  *See In re*

*Residential Cap., LLC*, 531 B.R. 1, 12 (Bankr. S.D.N.Y.) ("Federal pleading standards apply

when assessing the validity of a proof of claim."); *In re MF Glob. Inc.*, No. 11-2790 (MG) SIPA,

2015 WL 1239102, at *3 (Bankr. S.D.N.Y. Mar. 16, 2015) (same).

### B.  The Effect of the Claims Objection Procedures in This Case on the Legal Standard

 While these controlling principles contemplate the possibility of an objection that refutes

essential allegations required to state a claim, thereby shifting the burden to the claimant to prove

by a preponderance of the evidence that the claim should be allowed, the Claim Objection

Procedures Order entered in this case separates procedures applicable for claim objections that

can be resolved as a matter of law (a "Sufficiency Hearing") and those applicable to claim

objections that raise disputed issues of fact (a "Merits Hearing").  The Claim Objections

Procedure Order provides that Bankruptcy Rule 7012(b) is the applicable legal standard for a

Sufficiency Hearing.[4]  Claims Objections and Responses that raise disputed issues of fact must

---

[4]      The Debtor may object to claims in accordance with the following Claim Objection Procedures:

. . . .

g) Orders and Hearings Procedures.

i. If no Response to a claim objection is timely filed and served by the
established deadline regarding any particular claim(s), the Debtor may submit a
form of order sustaining the claim objection regarding such claim(s) without any
further notice or hearing.

ii. The hearing to consider a claim objection as to which a Response is properly
filed and served (each, a "Contested Claim") shall be set for a contested hearing
(each, a "Claim Hearing") to be scheduled by the Debtor, in its discretion, as set
forth herein. The Debtor shall schedule a Claim Hearing for a Contested Claim
as follows:

iii. For a non-evidentiary hearing to address whether the Contested Claim has
failed to state a claim against the Debtor which can be allowed and should be
dismissed pursuant to Bankruptcy Rule 7012(b) (a "Sufficiency Hearing").
Unless the Debtor serves the holder of the claim (the "Claimant") with a Notice
of Merits Hearing (as defined herein), the Sufficiency Hearing shall go forward
at the return date set inaccordance with (f)(i) above (or such other date as may
be scheduled by the Debtor). The legal standard of review that will be applied
by the Court at a Sufficiency Hearing will be equivalent to the standard applied
by the Court upon a motion to dismiss for failure to state a claim upon which
relief can be granted, in accordance with Bankruptcy Rule 7012(b).

iv. For an evidentiary hearing on the merits of a Contested Claim (a "Merits
Hearing"), the Debtor, in its discretion, may serve upon the relevant Claimant
(by email or overnight delivery) and file with the Court, a notice that the hearing
will be a Merits Hearing (a "Notice of Merits Hearing") at least thirty (30)
calendar days prior to the date of such Merits Hearing. The rules and procedures
applicable to such Merits Hearing will be set forth in any scheduling order
issued by the Court in connection therewith.

v. In advance of a Sufficiency Hearing and/or Merits Hearing, the Debtor and
the claimant shall meet and confer with respect to the appropriate confidentiality
procedures, if any, that shall govern the hearing on the matter.

vi. Discovery with respect to a Contested Claim will not be permitted until either
a) the Debtor has served the relevant Claimant a Notice of Merits Hearing with
respect to the Contested Claim or b) further Court order.

be heard at a Merits Hearing.  In other words, the Claims Objection Procedures Order limits the

bases for Debtor's objections in non-evidentiary hearings to challenges under Rule 12(b)(6).

This is consistent with authorities in this Circuit stating that where a party objects to a claim as

facially defective, the analysis of the claim "is guided by the familiar standards applicable to a

motion to dismiss."  *Gray v. Rescap Borrower Claims Trust (In re Residential Cap., LLC)*, 563

B.R. 477, 487 (S.D.N.Y. 2016).

### C.  Federal Rule 12(b)(6) Standard

Given that the hearing on this Objection is a Sufficiency Hearing and not a Merits

Hearing, the Court will evaluate the Objection under Federal Rule 12(b)(6).  (*See* Objection at 3

(Notice of Hearing)) (not noticing the hearing on the Objection as a Merits hearing).)

Under Rule 12(b)(6), a party need only plead "a short and plain statement of the claim"

with sufficient factual "heft to sho[w] that the pleader is entitled to relief."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation omitted).  Under this standard, the

pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative

level," *id.* at 555, and present claims that are "plausible on [their] face," *id.* at 570.  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

---

vii. In advance of a Merits Hearing, the Debtor and the Claimant shall meet and confer with respect to the appropriate discovery, if any, that shall govern the Merits Hearing on the matter.

viii. Given the number of claims, orders resolving claim objections could have inadvertent errors. If an order resolving a claim objection has such an error, the Court may enter an amended, corrected or replacement order about such claim without further notice or hearing, upon confirmation by the Debtor and the holder of the claim.

. . . .

Claim Objection Procedures Order at 4–5.

possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citation omitted).

The court assumes that *all non-conclusory factual allegations* in the complaint are true

and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662

(2009).

> Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a
> 'short and plain statement of the claim showing that the pleader is entitled to
> relief.' '[D]etailed factual allegations' are not required, but the Rule does call
> for sufficient factual matter, accepted as true, to state a claim to relief that is
> plausible on its face. A claim has facial plausibility when the pleaded factual
> content allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged. *Two working principles underlie Twombly.*
> *First, the tenet that a court must accept a complaint's allegations as true is*
> *inapplicable to threadbare recitals of a cause of action's elements, supported*
> *by mere conclusory statements. Second, determining whether a complaint*
> *states a plausible claim is context specific, requiring the reviewing court to*
> *draw on its experience and common sense. A court considering a motion to*
> *dismiss may begin by identifying allegations that, because they are mere*
> *conclusions, are not entitled to the assumption of truth. While legal*
> *conclusions can provide the complaint's framework, they must be supported*
> *by factual allegations. When there are well-pleaded factual allegations, a*
> court should assume their veracity and then determine whether they plausibly
> give rise to an entitlement to relief."

*Id.* at 663–64. (emphasis added; internal citations omitted); *see In re Roman Cath. Diocese of*

*Rockville Ctr., New York*, No. 20-12345 (MG), 2023 WL 2993304 at * 8 (Bankr. S.D.N.Y. Apr.

19, 2023).

The Second Circuit has repeatedly adopted the principals established by *Twombly* and

*Iqbal*, namely, that conclusory allegations which merely recite the elements of a cause of action

are insufficient. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at

678) (adopting and quoting the standards prescribed by *Iqbal* and *Twombly*); *Krys v. Pigott*, 749

F.3d 117, 128 (2d Cir. 2014) (same); *see also Read v. Corning Inc.*, 371 F. Supp. 3d 87, 92

(W.D.N.Y. 2019) (holding that "[p]laintiffs need not plead evidence, but that does not mean they

can proceed on the basis of conjecture, based on a few scraps of information, or broad, conclusory allegations . . .").

The Court must apply federal pleading standards under Rule 12(b)(6) and Rule 8(a) to determine whether the Claimants have set forth non-conclusory factual allegations which, if proved, would entitle the Claimants to relief.  If the Objection sets forth facts which would refute one essential element of the claim, the burden shifts to the Claimants to prove by a preponderance of the evidence that the claim should be allowed.  But that dispute would have to be addressed at a Merits Hearing, initially applying a summary judgment standard.  In applying these Rule 12(b)(6) pleading requirements to evaluate the sufficiency of these disputed claims, the Court concludes that before expunging claims with prejudice, it needs to consider the context in which claims were asserted and the objections were filed.  Here, Claimants were required to complete a proof of claim form prepared and circulated by the Debtor that did not require factual allegations supporting asserted liability of the Diocese.  Is it appropriate to sustain objections to claims that provided the information that the Debtor requested, although the Debtor now asserts that such information is insufficient to state a claim against the Diocese?  For some claims the answer is YES and for others NO, as explained below.

### III.    **DISCUSSION**

Because this is a Sufficiency Hearing, the Court's central inquiry is whether, under New York law, Claimants have pled sufficient facts related to notice to survive a motion to dismiss under Rule 12(b)(6).  The Court finds that some of the Claimants have and some have not.

The Court's analysis will proceed as follows.  First, the Court will discuss the particular negligence causes of action at issue here including general negligence, premises liability, negligent hiring, supervision, and retention claims, and why notice is a necessary component in

order for the Debtor to have liability on these theories under New York Law. Second, the Court

will discuss what allegations related to notice must be pled under Rule 12(b)(6) to survive a

motion a dismiss, where, as here, the Debtor is the party most likely to be in possession of the

notice evidence. Third, the Court will analyze each of the Claims subject to the Objection to

determine whether it has met this pleading standard. Finally, the Court will discuss why it finds

proper to give substantially all Claimants leave to amend.

### A. The Law of Negligence for Sex Abuse Claims in New York

New York law recognizes two theories of liability to hold an employer liable for the tort

of an employee: 1) vicarious liability where the employer is held liable for torts of the *employee*

that occur *within the scope of employment* and 2) direct negligence where the employer is held

liable for the *employer*'s negligent hiring, supervision, and retention of the tortfeaser employee.

*Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 229 A.D.2d 159, 161 (1997) ("In instances

where an employer cannot be held vicariously liable for its employee's torts, the employer can

still be held liable under theories of negligent hiring, negligent retention, and negligent

supervision.").

To hold an employer liable for an employee's tort under a vicarious liability theory, the

tort must be within the scope of an employment. *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251

(2002). Courts have uniformly rejected vicarious liability claims from plaintiffs in sexual abuse

cases on the grounds that sexual assault is "wholly personal" and "not in furtherance of [an

employer's] business."[5] Because vicarious liability theories are not available in sexual abuse

---

[5]    *N.X.*, 97 N.Y.2d at 251. *See also Whitting v. The Roman Cath. Diocese of Rockville Centre*, No.
900032/2019, slip op. (N.Y. Sup. Ct., Nassau Cnty. May 19, 2020), Doc. No. 47 (attached as Ex. A to the Geremia
Decl.), in which Justice Jaeger dismissed claims for battery, assault, and intentional infliction of emotional distress,
and observed that "[s]exual abuse of a minor is a clear departure from a tortfeasor's scope of employment if '. . .
committed solely for personal reasons, and unrelated to furtherance of his employer's business.'" *Id.* at 16 (quoting

cases, only direct negligence theories for negligent hiring, retention, or supervision are available

to Claimants, which, unlike vicarious liability claims, require proof of notice to the employer.

*See Kenneth R.,* 229 A.D.2d at 163 ("There is no common-law duty to institute specific

procedures for hiring employees unless the employer knows of facts that would lead a reasonably

prudent person to investigate the prospective employee.") (internal citations omitted).

     Further, as discussed below, there is no theory of direct negligence for sexual abuse

claims against an employer that would excuse a Claimant from pleading and proving notice,

even if Claimants couch their claims as sounding in *in loco* parentis, generalized negligence or

premises liability.

     1.  <u>Requirements to Succeed on a Negligent, Hiring, Retention or Supervision
Claim</u>

Under New York law:

> To state a claim for negligent hiring, retention or supervision . . . , a plaintiff
> must plead, in addition to the elements required for a claim of negligence: (1)
> the existence of an employee-employer relationship; (2) that the employer
> knew or should have known of the employee's propensity for the conduct
> which caused the injury; and (3) "a nexus or connection between the
> defendant's negligence in hiring and retaining [or supervising] the offending
> employee and the plaintiff's injuries."

*Sokola v. Weinstein*, No. 950250/2019, 2023 WL 2055855, at *3 (N.Y. Sup. Ct., N.Y. Cnty. Feb.

7, 2023) (citing *Kenneth R.*, 229 A.D.2d at 161) (internal citations omitted).

     "The employer's negligence lies in . . . plac[ing] the employee in a position to cause

foreseeable harm, harm which would most probably have been spared had the injured party had

---

*Doe v. Rohan*, 17 A.D.3d 509, 512 (2d Dep't 2005)). In the New York County Supreme Court, Justice Silver and Justice Love ruled the same way in dozens of cases against other entities. *See, e.g., PC-2 Doe v. Archdiocese of New York*, No. 950202/2020, slip op. at 4-5 (N.Y. Sup. Ct., N.Y. Cnty. July 1, 2020), Doc. No. 34 (attached as Ex. B to Geremia Decl.) ("[T]he Archdiocese cannot be held vicariously liable for the intentional torts committed by an alleged perpetrator . . . ."); *Broder v. Roman Cath. Archdiocese of New York, et al.*, No. 950149/2021, 2022 WL 3565219, at *2 (N.Y. Sup. Ct., N.Y. Cnty. Aug. 18, 2022) ("As the alleged abuse did not further the employer's business and was clearly outside the scope of the actor's employment, defendants cannot be liable solely on the commission of said crimes.").

the employer taken reasonable care in making decisions respecting the hiring and retention of [its] employees." *Detone v. Bullit Courier Serv., Inc.*, 140 A.D.2d 278, 279 (1st Dep't 1988). "Moreover, there is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee." *Mason v. Ben Roy Das*, *Inc.*, 825 N.Y.S. 2d 515, 516 (2d Dep't 2006); Further, an employer is "under no duty to inquire as to whether an employee has been convicted of crimes in the past." *Estevez-Yalcin v. Children's Vill.*, 331 F. Supp. 2d 170, 175 (S.D.N.Y. 2004) (citation and internal quotations omitted); s*ee also Koran I. v. New York City Bd. Of Educ.*, 683 N.Y.S.2d 228, 230 (1st Dep't 1998) (reversing lower court decision and granting board of education's motion for summary judgment where "a routine background check would not have revealed [a school volunteer's] propensity to molest minors").

New York law also has requirements for the timing, type, and recipient of the notice. As to timing, the employer must have had actual or constructive notice of the propensity for sexual misconduct *before* the harm at issue. *See Doe v. Alsaud,* 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) ("New York courts have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is aware of specific prior acts or allegations against the employee"). As to the type of notice, the notice must be of a propensity for sexual abuse, not other types of misconduct, such as physical abuse. *See Alsaud*, 12 F. Supp. 3d at 681 (collecting cases holding that an employer has notice of the likelihood of a harm only where the prior misconduct is "of the same kind that caused the injury"). The person who receives the notice must be under the control of the employer for the notice to be imputed to the employer. In other words, if another person, such as a parent or a classmate has notice, that notice cannot be imputed to the Debtor. For example, the New York County Supreme Court dismissed a claim

18

against the Archdiocese of New York on this basis, even while allowing the claim to proceed

against a parochial school within the Archdiocese as to which there were legally sufficient

allegations of notice. *See Jonathan A. v. Bd. of Educ. of City of New York*, 779 N.Y.S.2d 3, 5–6

(1st Dep't 2004) (granting school's motion for summary judgment regarding liability for sexual

abuse of child during after-school program because the abuser was not an employee of the school

and because the afterschool program "selected its own employees and ran its own programs");

*ARK271 Doe v. Archdiocese of New York*, No. 950303/2020, 2022 WL 2954141 (N.Y. Sup. Ct.,

N.Y. Cnty. July 19, 2022) (dismissing claim against Archdiocese where affidavit averred that

Archdiocese was independent from Salesian High School and Salesian Society, where alleged

abuse occurred, but denying dismissal as to Salesian Society).

> 2.  Requirements to Succeed on *Loco Parentis*, General Negligence and Premises
>     Liability Claims

Contrary to the contentions of the Claimants, there is no exception to the requirement that

the employer have notice of the propensity to commit sexual abuse to succeed on a direct

negligence claim.  (*See* Phillips Response ¶ 32 (arguing that notice is not required in the *loco*

*parentis* context); *Id*. ¶ 59 (arguing that general negligence claims do not require that the

defendant had notice); Slater Response ¶ 34 (arguing that "notice is not an element of a

[premises liability] cause of action").)  Neither *in loco parentis*, general negligence, nor premises

liability claims obviate the need to show notice.  Each theory is discussed in turn below.

> a.  *Loco Parentis*

The New York Court of Appeals has held that New York schools are under a special duty

to supervise students in their charge:

> Schools are under a duty to adequately supervise the students in their charge
> and they will be held liable for foreseeable injuries proximately related to the
> absence of adequate supervision. Schools are not insurers of safety, however,
> for they cannot reasonably be expected to continuously supervise and control

19

> all movements and activities of students; therefore, schools are not to be held
> liable for every thoughtless or careless act by which one pupil may injure
> another. The nature of the duty owed was set forth in the seminal case of
> *Hoose v Drumm* (281 NY 54, 57-58): "[A] teacher owes it to his [or her]
> charges to exercise such care of them as a parent of ordinary prudence would
> observe in comparable circumstances." The duty owed derives from the
> simple fact that a school, in assuming physical custody and control over its
> students, effectively takes the place of parents and guardians.

*Mirand v. City of N.Y.*, 84 N.Y.2d 44, 49 (1994) (other internal quotation marks and citations

omitted).

As an initial matter, "[b]reach of duty of *in loco parentis* is not . . . an independent cause

of action under New York law." *Doe v. Poly Prep Country Day School*, No. 20-04718, 2022

WL 4586237, at *10 (E.D.N.Y. 2022) (quotation marks omitted). Rather, "*[i]n loco parentis*

defines the duty owed within the context of a negligence cause of action." *Id.* (quotation marks

omitted). Consequently, no Claimant has a "claim" of *in loco parentis* against the Diocese. Nor

can *in loco parentis* support a claim of liability in this case. The Diocese is not a school and

therefore is not subject to the special duty of *in loco parentis*. *See C.Q. v. Est. of Rockefeller*,

No. 20-CV-2205 (VSB), 2021 WL 4942802, at *6 n.5 (S.D.N.Y. Oct. 21, 2021) ("New York

courts have been reluctant to apply the doctrine of *in loco parentis* too far outside the school

context."); *Digiorgio v. Roman Catholic Diocese of Brooklyn*, No. 520009/2019, 2021 WL

1578326, at *9 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 22, 2021) ("It does not appear, however, that the

doctrine of *in loco parentis* can simply be applied to churches by way of analogy to schools, as

plaintiff suggests. That would discount the instant application as to the Diocese on that basis

alone.").

While the duty of *in loco parentis* could be applied to the Claimants subject to this

Objection who were abused in schools, where a student alleges he was abused by a school

employee, the inquiry concerning whether a school has breached its *in loco parentis* duty is

20

focused on whether the school knew or had reason to know that the school's employee presented this danger. This is effectively identical to the notice inquiry on claims for negligent hiring, retention, and supervision. In *Poly Prep*, for example, the Eastern District of New York also dismissed a claim for breach of the duty of *in loco parentis*. The inquiry concerning whether the danger posed by the alleged abuser "could have been reasonably foreseen" by the school, as a matter of the *in loco parentis* duty, was the same as whether the school had "prior knowledge or notice of the individual's propensity or likelihood to engage in such conduct." 2022 WL 4586237, at *11 (quoting *Dia CC v. Ithaca City Sch. Dist.*, 304 A.D.2d 955, 956 (3d Dep't 2003), and *Diamond Jewels v. Lewis*, No. 15-CV-05760, 2019 WL 5896224, at *23 (E.D.N.Y. Nov. 12, 2019)). This makes sense; where the asserted danger is an allegedly abusive teacher or staff member in the school, the questions are did the school know or should it have known of the dangers posed to students by this teacher or staff member. Accordingly, any claim for negligence asserting a breach of a duty of *in loco parentis*—even assuming this duty were to apply to the Diocese—would not alter the inquiry here whether the Claimants have pleaded allegations of fact showing notice to the Diocese of the accused abuser's propensity.

### b. General Negligence

Certain of the Claimants argue that general negligence claims are distinct causes of action from negligent hiring, retention, and supervision claims. (*See, e.g.*, Phillips Response ¶ 58. (arguing that "[t]rial courts addressing this question in other CVA actions have similarly acknowledged the disparate analyses applicable to" negligent hiring, retention, and supervision, versus general negligence claims). The Claimants argue that general negligence claims do not require a showing that the defendant had notice of the propensity for abuse. *See id.* ¶ 59. The Court disagrees. In general, courts have required the same sort of knowledge evidence to find a

defendant liable in the context of general negligence claims as negligent hiring, retention, and supervision claims.  In *Doe v. City of New York*, for example, a court in the Southern District of New York dismissed plaintiff's claims for negligent hiring, retention, or supervision and a separately asserted claim for negligence "for essentially the same reason: She has not pleaded factual allegations that make it plausible that the City or Espey knew or should have known that of Hall and Martins's propensity to commit sexual assaults—or that Espey knew of the danger that these detectives posed to the public." *Doe*, 2018 WL 3824133, at * 7.  In *Doe*, conclusory allegations that the defendant "knew or should have known" did not suffice and the court held that "[a]lthough Doe provides factual allegations of sexual misconduct by other Brooklyn South Narcotics officers . . . she provides no specific allegations of prior sexual misconduct by Hall or Martins that would have put Espey or the City on notice that either detective posed a danger." *Id.*

The Responses cite several cases where a student was attacked by another student in school, which put in issue a school's duty to supervise students, for the proposition that general negligence claims do not require proof that the defendant had notice.  (*See, e.g.,* Kazerouni Response ¶ 50 (citing *Ka Coon v. Board of Education*, 160 A.D.2d 403 (1st Dep't 1990); *Garcia v. City of New York*, 222 A.D.2d 192 (1st Dep't 1996); *Logan v. New York*, 148 A.D.2d 167 (1st Dep't 1989).)  But these cases are inapposite.  These are cases where a student was attacked by another student in school, which put in issue a school's duty to supervise students.  Claimants here, by contrast, allege that an abusive priest, teacher, or other employee caused their injury.  This distinction is particularly important because courts have adopted specific rules in the context of a school's duty to supervise students to prevent student-on-student abuse that have not been applied in the context of school staff abusing children.  For example, in *Garcia v. City of*

*New York*, the court held that "[w]hile we recognize the general rule that educational institutions are not the insurers of the safety of their students and cannot be held liable for every instance in which one pupil injures another . . . , schools are, however, under a duty to adequately supervise their students and are liable for foreseeable injuries which are proximately caused by the absence of such supervision." *Garcia v. City of New York*, 222 A.D.2d 192, 194.  In essence, because student-on-student injuries resulting from a lack of supervision of students are so common, courts have adopted a special rule that the defendant need not have had notice of the *specific student's* propensity for violence, so long as the danger "can be reasonably foreseen and could have been prevented by adequate supervision of the school." *Id.* at 196; *see also Ka Coon v. Board of Education*, 554 N.Y.S.2d 110, 110 (noting that in the context of a school's duty to supervise students, notice of the specific danger which caused the injury is not required).  The Claimants have cited no authority that this special rule applies to the scenario here, where an adult employee of the school, rather than a fellow student, is the abuser.  More to the point, however, no authority is provided why a duty and potential liability would extend to a diocese, several levels removed from day-to-day supervision of a school.  Accordingly, the Court finds that pleading a general negligence cause of action does not obviate the Claimants' requirement to plead notice.

### c.  Premises Liability

Couching a claim as a premises liability claim also does not excuse a plaintiff from showing that the defendant had notice of the abuser's propensity for abuse.  "Under New York law, landowners have a duty to maintain their property in a reasonably safe condition." *Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 388–89 (E.D.N.Y. 2021) (quotation marks omitted).  But, where an alleged abuser on the property is what constitutes the allegedly unsafe

condition, a claim for premises liability "is simply a repackaging of the plaintiff's claim of alleged failure to supervise." *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 572 (E.D.N.Y. 2021), *appeal dismissed sub nom. Doe v. Poly Prep Country Day Sch.*, No. 21-2669, 2022 WL 14807756 (2d Cir. May 3, 2022) (quoting *Wilson v. Diocese of New York Episcopal Church*, No. 96-cv-2400, 1998 WL 82921, at *6 (S.D.N.Y. Feb. 26, 1998)); *see also Murray v. Nazareth Reg'l High Sch.,* 579 F. Supp. 3d at 388–89 ("[I]t is not the premises that were the proximate cause of the alleged injury to the plaintiff, but rather the alleged failure of the defendants to realize [the priest's] alleged potential to commit sexual abuse."). Claims for "premises liability" predicated on injuries caused by an allegedly abusive teacher are thus either dismissed as duplicative of claims for negligent supervision, *see id* at 571–572., or subjected to the same standard that the plaintiff must "sufficiently allege that the Diocese knew or should have known of [the alleged abuser's] history of abuse." *Murray*, 579 F. Supp. 3d at 389 (dismissing claim for premises liability on this ground).

### B. Pleading Standards for Negligence Claims

Except with respect to general negligence claims and premises liability claims, which were discussed *supra*, the Claimants do not appear to dispute that notice is a required element of negligent hiring, supervision, and retention claims (hereinafter referred to as "Negligent Management Claims"). (*See, e.g.*, Levy Response ¶ 2 (noting that "the central issue here is whether the Debtor possessed actual or knowledge of Fr. Lane's propensity to commit sexual abuse")). Where the parties part ways is on the question of whether at the *motion to dismiss* stage, the Claimant is required to plead specific facts regarding notice or whether a generic allegation that the "Debtor knew or should have known" about the abuse suffices. (*Compare* Amala Response ¶ 38 (arguing that at the motion to dismiss stage plaintiff need only show that

facts showing notice may exists) *with* Objection ¶ 17 (arguing that at the pleading stage plaintiffs must plead specific facts about notice).)  As explained above, the reason that the motion to dismiss standard rather than the ordinary burden shifting standard for claim objections applies here is that the Claims Objection Procedures provide that the Rule 12(b)(6) standard applies for a Sufficiency Hearing.  The Debtor cites federal caselaw interpreting New York law which find that a plaintiff must plead specific facts regarding notice.  The Claimants cite to New York state law cases that come to the opposite result.  The Court discusses each line of cases in turn and concludes that both the Claims Objection Procedures and case law require the Court to apply federal pleading standards.  *See In re Residential Cap., LLC*, 531 B.R. 1, 12 (Bankr. S.D.N.Y.) ("Federal pleading standards apply when assessing the validity of a proof of claim."), *on reconsideration in part*, 537 B.R. 161 (Bankr. S.D.N.Y. 2015); *In re MF Glob. Inc.*, No. 11-2790 (MG) SIPA, 2015 WL 1239102, at *3 (Bankr. S.D.N.Y. Mar. 16, 2015) (same).  Accordingly, allegations of specific facts about notice are required to survive the Objection.

### 1.  Case Law Requiring Specific Facts About Notice

The Debtor cites several federal cases applying New York law that require specific facts about notice, namely an abuser's propensity to commit abuse notice at the pleading stage, to survive a motion to dismiss.  In *Doe v. Poly Prep Country Day School*, 2022 WL 4586237, at *8–10, the court granted a motion to dismiss negligence claims regarding sexual abuse against a school because there were no proper allegations that the school had notice of an accused teacher's propensity to engage in sexual abuse.  The district court explained that "the mere proximity of others to the alleged abuse" does not give rise to a cognizable theory of constructive notice, and nor do a variety of alleged acts that do not themselves constitute abuse.  *Id.* at *9. The court enumerated various allegations and rejected each of them, individually and

collectively, as adequate to allege notice to the school sufficient to support a claim under the

CVA:

- "Plaintiff's allegation that Miller [the accused abuser] 'peripatetically' taught his students while speaking to a teddy bear, . . . does not plausibly suggest that Miller had a propensity to commit sexual abuse."
- "Similarly, any allegation that Miller was eccentric and stood out among Poly faculty as a loner . . . does not plausibly suggest that Miller had a propensity to sexually assault students."
- "Moreover, Plaintiff's allegations that Miller gave good grades to Plaintiff and responded positively to Plaintiff in class, despite Plaintiff's poor performance in other classes . . . do not plausibly speak to Miller's alleged propensity."
- "And, the allegation that an English teacher sat down at a table across from Miller and Plaintiff and rolled his eyes and slightly shook his head, which signaled to Plaintiff that the English teacher recognized that Miller was grooming Plaintiff and had taken an inappropriate interest in Plaintiff . . . likewise fails to plausibly indicate Miller's alleged propensity."

*Id.* (ellipses indicate omitted references to Amended Complaint).

The *Poly Prep* court concluded that "[n]otably, Plaintiff fails to point to any analogous

case(s) supporting the conclusion that allegations of this nature – individually or collectively –

plausibly amount to an indication of propensity to commit sexual abuse." *Id.*

The Debtor also relies on *Doe v. Alsaud* which held that allegations that an employer

"knew or should have known" about the abuse are not sufficient at the pleading stage. 12 F.

Supp. 3d 674, 680 (S.D.N.Y. 2014). In *Alsaud*, the plaintiff, who was raped by an employee of a

Saudi Oger, a Saudi construction company, while the employee was staying at a hotel for work

purposes, alleged that the company "knew or should have known of [the employee's]

predisposition to abusing women, his violent propensities, and of his status as a sexual predator."

*Id.* The court reasoned that "notwithstanding alleged predisposition for sexual violence, and the

FAC's allegation that 'a] reasonable background check would have reflected the same,' the FAC

does not allege (i) a single prior act or allegation of sexual misconduct committed by [the

employee]; or (ii) a fact suggesting that Saudi Oger knew or should have known of any such

prior acts." *Id.* (internal citation omitted). The court concluded that the lack of such allegations was fatal to the complaint because "New York courts have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is aware of specific prior acts or allegations against the employees." *Id.* The court also held that not only did the employer have to be aware of prior misconduct but the misconduct "must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Id.* at 681.

In a case involving catholic clergy abuse, *Murray v. Nazareth Reg'l High Sch.* the court granted a motion to dismiss a negligent supervision claim against a diocese that owned and operated the school where the abuse took place. 579 F. Supp. 3d 383, 389–390 (E.D.N.Y. 2021). The court reasoned that the plaintiff did not allege that the diocese was aware of specific prior acts of the employee. *Id.* Though the plaintiff pleaded that the abuser had been transferred several times, the court held that the claim was insufficiently pled because "plaintiff asks me to combine [the employee's] employment history prior to 1967 with a broader allegation that the Church has been known to utilize transfers to cover-up clergy sexual abuse and conclude this sufficiently states a claim for relief." *Id.* at 390.

The Court concludes that there is ample support for the proposition that federal courts require specific facts about notice at the pleading stage in the context of negligent, hiring, retention and supervision claims related to sexual abuse.[6] None of the thirteen Claimants have

---

[6]     *See also Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 362 (S.D.N.Y. 2021) (dismissing negligent screening, hiring, and supervision claims where plaintiff alleged that defendant "was aware that 'drivers' were sexually assaulting female customers because [defendant] received nearly 6,000 reports of sexual assault during its rides in the United States in 2017 and 2018" but failed to allege "any instances of past misconduct by [the driver] or any other facts with respect to him that should have led [defendant] to concern"); *Doe v. City of N.Y.*, No. 18-CV-00670, 2018 WL 3824133, at *7 (E.D.N.Y. Aug. 9, 2018) (dismissing negligent hiring, retention, and supervision claims where plaintiff alleged past "sexual misconduct by other Brooklyn South Narcotics officers," but made no specific factual allegations of prior sexual misconduct by the detectives alleged to have committed the sexual

cited a single federal case applying New York law[7] that stands for the proposition that conclusory allegations that the Debtor "knew or should have known" are sufficient to survive a motion to dismiss in this context.

### 2. New York State Case Law Not Requiring Specific Facts About Notice

As even the Debtor concedes, several state courts applying the standard applicable to a motion to dismiss pursuant to New York Civil Practice Law and Rule 3211(a)(7) have permitted complaints to proceed on the basis that the plaintiff has alleged the employer "knew or should have known" about the abuser's propensity for abuse.  (*See* Reply ¶ 4.)  Specifically, the Debtor filed motions to dismiss 44 complaints in New York state court on the exact arguments put forth in this Objection—Judge Steven M. Jaeger denied the motions to dismiss.  *See ARK3 Doe v. Diocese*, 900010/2019 (Brief in Support of Motion to Dismiss, Doc. # 96 at 42) (N.Y. Sup. Ct., Nassau Cnty. March 22, 2023) (attached to Anderson Response as Exhibit A).  The Debtor suffered losses on all 44 of the complaints.  (Anderson Response ¶ 6.)

In his decisions, Justice Jaeger largely used the same reasoning for all 44 cases.  He held that "there is not statutory requirement that causes of action sounding in negligent hiring, negligent retention, or negligent supervision be pleaded with specificity."  *See, e.g.*, *ARK3 Doe v.*

---

assaults at issue); *see also Poppel v. Est. of Archibald*, No. 19-CV-01403, 2020 WL 2749719, at *6 (S.D.N.Y. May 27, 2020) (dismissing, with leave to replead, claims for negligent hiring, supervision, and retention asserted against a university pursuant to the CVA; plaintiffs "do not allege facts regarding Archibald's [alleged abuser] propensity to commit sexual abuse before he was hired" and do not allege "facts that 'would lead a reasonably prudent person to investigate'").

[7]       Some Claimants refer to decisions applying the law of states other than New York, in an attempt to bypass the requirement that they adequately plead facts showing that the Diocese knew or should have known of the specific, alleged abuser's propensity to sexually abuse children. (*See* Herman Law Claim 90231 Response ¶ 23 (citing *W.F. v. Roman Cath. Diocese of Paterson*, No. CV 20-7020, 2021 WL 2500616, at *5 (D.N.J. June 7, 2021).) The Court will not rely on out of state case law, where, as here, the claims are state law causes of action.  But even if the Court did rely on *W.F. v. Roman Cath. Diocese of Paterson*, it does not support Claimant's argument.  In that case, the Court denied a motion to dismiss because the plaintiff had pleaded "facts peculiar to [the offending priest]" and alleged that the offending priest was "transferred and reassigned pursuant to a policy" that re-assigned offending priests.  2021 WL 2500616, at *5.  Thus, *W.F. v. Roman Cath. Diocese of Paterson* does not stand for the proposition that conclusory allegations of notice suffice.  *See id.*

*Diocese*, 900010/2019 (Doc. # 145) at 17 (N.Y. Sup. Ct., Nassau Cnty. May 18, 2020) (attached

to Anderson Response as Exhibit B).  Justice Jaeger further explained that "liability for negligent

supervision is based not on the tortious conduct of the employee but on the negligence of the

Defendant-employer for failing to supervise the employee in a situation which involves the risk

of harm by the employee to other."  (*Id.* at 18.)  When passing on the specific facts of the

complaint at issue Justice Jaeger held that the following allegations sufficed to survive a motion

to dismiss:

- "[P]rior to the sexual abuses of Plaintiff, Defendants learned or should have learned that Fr. Soave was not fit to work with children"
- "Defendants, by and through their agents, servants and/or employees, became aware or should have become aware of Fr. Soave's propensity to commit sexual abuse and of the risk to plaintiff's safety"
- "Defendants negligently retained Fr. Soave with knowledge of Fr. Soave's propensity for the type of behavior which resulted in Plaintiff's injuries in the action."

(*Id.* at 18-19).

In addition to Justice Jaeger's decision in these 44 cases, the Claimants also provide

examples of other New York state cases coming to the same conclusion.  For example, in *Novak

v. Sisters of Heart of Mary,* the court concluded that the abuse survivor's complaint sufficiently

pled negligence when he alleged a Catholic religious order "had knowledge that the priest was

abusing students, including the plaintiff, or that he had the propensity to abuse."  180 N.Y.S.3d

187, 189 (2d Dep't 2022).  The appellate court reversed the trial court's dismissal of the

plaintiff's lawsuit because "[h]ere, at the pleading stage of the litigation where the plaintiff's

allegations in the complaint are treated as true and are accorded the benefit of every possible

favorable inference, the complaint is sufficiently pled as to the causes of action to recover

damages for negligence, including the negligent hiring, retention, and supervision of the priest,

and inadequate supervision of the plaintiff."  *Id.* at 189–90.

The Court agrees with the Claimants that there is a significant body of New York law that allows generic allegations about notice at the motion to dismiss stage with respect to Negligent Management Claims. But the Court is required to apply federal pleading standards. *See In re Residential Cap., LLC*, 531 B.R. at 12 ("Federal pleading standards apply when assessing the validity of a proof of claim."). Under the New York state-law pleading standard, "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one." *Kenneth R.*, 229 A.D.2d at 161 (quoting *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 275 (1977)). This is not the standard in federal court. Under well-established federal law, a claimant must assert allegations of fact that make his claim rise above a speculative level to plausible.[8] Accordingly, notwithstanding the state court case law, the Court will require specific facts about notice, but with some adjustments to reflect the specific context of the Claim Objections in light of the form of the Proof of Claim.

### C. Whether the Claims Survive Under Federal Pleading Standards

The Court has reviewed each of the thirty proofs of claim that are challenged in the Eighth Omnibus Objection to Claims, as well as any state court complaints attached to the claims. Further, because the Debtor's counsel agreed that the Court can consider additional

---

[8]   *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"); *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (plaintiff must allege enough "factual content to nudge his claim … across the line from conceivable to plausible") (quotation marks and alteration omitted); *Trump v. Vance*, 480 F. Supp. 3d 460, 494 (S.D.N.Y. 2020); *Yamashita v. Scholastic, Inc.*, No. 16-cv-9201, 2017 WL 74738, at *1-*2 (S.D.N.Y. 2017) (dismissing plaintiff's claims of copyright infringement as a "fishing expedition" where "[t]he complaint speculate[d] about 'various ways' defendants might have infringed"), *aff'd*, 936 F.3d 98, 105 (2d Cir. 2019) (remarking that the complaint was "no more than a collection of speculative claims").

allegations included in the Claimants' responses in determining the sufficiency of the Claim, the Court has considered all such allegations as well.[9]

The Court concludes that the Claims subject to the Objection fall into four categories:

(1) Claims that contain no specific facts and only conclusory allegations that the Debtor "knew or should have known" about the abuser's propensity for abuse (the "Conclusory Claims"[10]);

(2) Claims that allege some specific facts regarding notice, but not enough facts to plausibly allege notice (the "Insufficient Facts Claims"[11]);

(3) Claims which allege sufficient facts to plausibly state a claim that the Debtor had notice of the propensity for abuse (the "Sufficient Facts Claims"[12]); and

(4) Claims that contain allegations that the survivor reported the abuse, which Debtor's counsel concedes should survive the Objection (the "Subsequent Report Claims"[13]).

Second Circuit caselaw permits the Court to consider documents attached as exhibits or statements or documents incorporated by reference. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016).

With one exception,[14] for both the Conclusory Claims [(1) above], and the Insufficient Facts claims, [(2) above], the Objection is **SUSTAINED WITH LEAVE TO AMEND.** Each

---

[9]   April 5, 2023 Hr'g Tr. at 37:15–23 (ECF Doc. # 2009) (Debtor's counsel agrees that the Court can "consider any additional facts alleged by the Claimants and their responses to the claim objection in deciding the legal sufficiency of the claim").

[10]   The Conclusory Claims include claim numbers 90208, 90209, 90317 ,90330, 90345, 90349, 90391, 90472, 90512, 90514, 90517, 90231, 90264, 30035, 90174, 90053, 90392, 90542 and 90020.

[11]   The Insufficient Facts Claims include claim numbers 90245, 90324, 90544, 90045, 90327, 90100 and 90181

[12]   The Sufficient Facts Claims include claim numbers 90244 and 90090

[13]   The Subsequent Report Claims include claim numbers 90355 and 90495.

category of claims is discussed in turn below.  With respect to the Sufficient Facts Claims and the Subsequent Report Claims, the Objection is **OVERRULED.**

### 1. Conclusory Claims

The Conclusory Claims contain no specific factual allegations about notice in either the proof of claim, the attached state court complaint or in the Claimant's response.[15]  Conclusory allegations that the Debtor "knew or should have known" about the propensity for abuse do not suffice under federal pleading standards.  *See, e.g.*, *Poly Prep*, 2022 WL 4586237, at *8–9 (dismissing negligence claims where there was no allegation that the defendant was aware of specific acts or allegations of abuse prior to the alleged abuse of the plaintiff).

### 2. Insufficient Facts Claims

While each of the Insufficient Fact Claims provides some specific factual allegations related to notice, the Court concludes that these allegations do not contain sufficient "factual content to nudge [the] claim . . . across the line from conceivable to plausible."  *Ashcroft v. Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570) (internal quotations omitted).  But for each of the claims discussed in this section, the Court sustains the Objection with leave to amend.  The specific claims and allegations are discussed below.

---

[14]    No response was filed to the Objection to one of the Conclusory Claims—claim number 90542—even though the Claimant was represented by counsel when the proof of claim was filed, and counsel received notice of the Objection.  The Objection establishes that the Claim is insufficient as a matter law.  Therefore, the Objection to claim number 90542 is **SUSTAINED WITH PREJUDICE.**

[15]    The Court notes that one of the Conclusory Claims—Claim 90020—survived a motion to dismiss in state court with these identical allegations.  [Redacted] v. *Diocese of Rockville Centre and Queen of the Most Holy Rosary*, Index No. 900045/2019 (Doc. # 43.)  The Claimant's counsel has not provided any authority that the state court ruling is entitled to comity.  The Court sustains the Objection with respect to claim 90020 with leave to amend.

### a. Claim 90245

In the response for Claim 90245, counsel adds the following specific allegations

regarding notice:

> Fr. Rimmer, who [Claimant] was not related to, would show up at St. Therese
> of Lisieux with him and have him serve as a sacristan, despite not being one.
> Given the Debtor's extensive notice of sexual misconduct by priests operating
> within its territory its agents and employees should have found it odd that a
> priest took such an unusual interest in an eleven-year-old boy.

(Sweeney Response ¶ 35).

The Court finds these allegations stop short of a plausible allegation that the Debtor's

employees had notice of the abuse. Courts have rejected the contention that general allegations

that a diocese was aware of sexual abuse can be used to bolster facts that would be otherwise

insufficient to establish notice. *See Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d at 390

(rejecting the argument that plaintiff can "combine [the abuser's] employment history prior to

1967 with a broader allegation that the Church has been known to utilize transfers to cover-up

clergy sexual abuse and conclude this sufficiently states a claim for relief"). An allegation that it

would appear "odd to witnesses" that the Claimant was serving as a Sacristan is *not* enough to

plausibly establish that others at the church had notice that Fr. Nilson was *abusing* the Claimant.

Combining that allegation with generalized allegations that "the Debtor's extensive notice of

sexual misconduct by priests operating within its territory," *see Murray v. Nazareth Reg'l High

Sch.*, fairs no better. *Id*. Caselaw establishes that more is required to state a claim against a

diocese. Allegations that an abuser took special interest in the survivor, combined with the

general allegation that a diocese had notice of a general problem with priest sexual abuse (*but not

specifically of the alleged abuser),* would essentially dispense with the requirement that the

Claimant plead with "specificity as to what the Diocese did or did not know" about the specific

abuser. *See id*. Such generalized allegations in the hope that discovery *might* yield something

more concrete simply does not comport with New York law *and* federal pleading requirements.
The Court does not doubt that the Claimant could add additional facts here to state a plausible
claim, such as allegations that other priests whose abuse the Diocese *did have notice of* often
used boys they abused as Sacristans or additional facts clarifying why the use of Sacristan should
put the Diocese on notice of abuse that could nudge this claim from "conceivable" to "plausible."
*Ashcroft v. Iqbal*, 556 U.S. at 683.  However, the facts as pleaded are not sufficient to state a
claim.

### b.  Claim 90324

In the response for Claim 90324 counsel added the following specific allegations
regarding notice:

> Fr. Nilsson gave [claimant] an unusual amount of attention, would publicly
> discipline him for minor infractions, and was often following him into the
> sacristy to force his fingers or inanimate objects into Claimant's anus.

(Sweeney Response ¶ 36.)

The Court finds that the allegations that Fr. Nilsson "gave [C]laimant an usual amount of
attention," are even less specific than the allegations in Claim 90245, that the Claimant served as
a Sacristan, and thus these allegations fail to allege a plausible link between notice of a priest
giving special attention and notice of abuse.  (See *id.*)  As to the abuser's alleged public abuse,
notice of physical abuse or public discipline is not sufficient to put the Diocese on notice of
sexual abuse.  *See Alsaud*, 12 F. Supp. 3d at 681 (collecting cases holding that an employer has
notice of the likelihood of a harm only where the prior misconduct is "of the same kind that
caused the injury").  As to the allegations that Fr. Nilsson followed the Claimant into the sacristy
in order to abuse claimant, without allegations that there were witnesses to this behavior, this
allegation does not sufficiently allege notice.

### c. *Claim 90544*

The response with respect to Claim 90455 includes an allegation that the survivor told his parents about Sister Gay's abuse, "but they didn't believe him." (Pollock Response ¶ 20.) As discussed above, the fact that a parent has notice of abuse, is not sufficient to impute notice to the Diocese. An agent of the Diocese must have had notice of the abuse. (*See supra* § III.A.1.) Accordingly, this claim fails to allege sufficient allegations about notice.

### d. *Claim 90075*

The proof of claim form for claim 90075 contains allegations that though were no witnesses to the abuse and that the abuser physically and emotionally abused the Claimant in front of other faculty. (*See* Claim 90075 at 10.) As noted above, the fact that an agent of the Diocese had notice of the abuser's propensity to commit other types of abuse, such as physical and emotional abuse, does not put them on notice of the sexual abuse. Accordingly, these allegations do not sufficiently state a claim. *See Alsaud*, 12 F. Supp. 3d at 68.

### e. *Claim 90327*

The proof of claim form for Claim 90327 contains the following allegation regarding notice: "[a classmate] witnessed [the alleged perpetrator] bring [claimant] into the room next to the cafeteria on multiple occasions. He did not witness the abuse but did witness [the alleged abuser] isolating [claimant]." (Claim 90327 at 10.) Again, because the survivor's classmate is not an agent of the Debtor, absent an allegation that the classmate told an employee or agent of the Diocese about suspicions of abuse, the classmate's notice cannot be imputed to the Diocese. (*See supra* § III.A.1). Accordingly, this claim fails to sufficiently allege that the Diocese had notice.

a.  *Claim 90100*

The proof of claim for Claim 90100 includes the allegation that "I am not aware of any witnesses to the sexual abuse, although others at the church knew that Father Kohli was regularly meeting with me one-on-one in the rectory." (Claim 90100 at 11.)  In *Poly Prep*, the court held that "any suggestion that the mere proximity of others to the alleged abuse creates constructive notice . . . is not supported by caselaw and is unpersuasive."  2022 WL 4586237 at *9.  The court also noted that a New York state case, *Johansmeyer v. New York City Department of Education*, 165 A.D.3d 634 (2d Dep't 2018), on which the plaintiff relied, did not stand for the proposition that "school has constructive notice of a teacher's propensity to commit sexual assault based on the fact, without more, that the teacher spent time alone with a student."  *Poly Prep,* 2022 WL 4586237 at *9 n.8.

At the hearing, counsel for Claimant 90100 argued that this allegation was sufficient to establish constructive notice because "the rectory is [a priest's] private residential quarters. There is no reason that a child should be going up into the private residential quarters."[16]  But the allegations in the proof of claim directly refute that statement.  The Proof of Claim indicates that the claimant's "mother was concerned about me and asked Father Kohli to counsel me.  She would pick me up from school and drop at the rectory at St. Joseph's for one-on-one counseling sessions with [Father Kohli]." (Claim 90100 at 10.)  Given that the allegations indicate that the claimant's mother knew and approved of him being in the rectory for a specific purpose, it is difficult for the Court with only that allegation, to find that the Claimant has plausibly alleged that the Debtor was on notice that the Claimant was being abused.  The Court can certainly imagine a scenario where the allegation that a Claimant met alone with a priest in the rectory

---

[16]        April 5, 2023 Hr'g Tr. at 82:17–19.

without explanation, when combined with other red flags, such as an erratic history of transfers, could plausibly allege notice. Here, however, the allegations essentially amount to a contention that the church was on notice because officials knew that the survivor met alone with the priest. This is not sufficient. *Poly Prep*, 2022 WL 4586237 at * 9 n.8.

> ### b. *Claim 90181*

The response with respect to Claim 90181 includes the following allegation:

> Although I do not recall other teachers, staff or administrators directly witnessing the abuse I suffered at the hands of Murtaugh in the locker room or in his car in the parking lot, these occurrences were so numerous and in such open and obvious locations, where others were present, that it seems highly unlikely that no staff member or teacher did not see him in close proximity to me and our [sic] touching me inappropriately.

(Phillips Response ¶ 19.)

The court in *Poly Prep* rejected similar allegations that "the possibility of seeing into Miller's classroom from the study hall . . . amount[s] to Defendant having constructive notice of the alleged assaults" because there were no allegations that "*anyone*— including students, Poly staff, Poly faculty or Poly Administrators—witnessed the alleged abuse." 2022 WL 4586237 at *9. Here too, in the absence of allegations that any of these staff members witnessed the abuse, the Court does not find allegations about the proximity of others to the alleged abuse to be sufficient.

### 3. Sufficient Facts Claims

The Sufficient Facts Claims allege enough facts regarding notice to "to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. Each claim is discussed in turn below.

a. *Claim 90244*

The response for Claim 90244 contains allegations that Fr. Kondziolka gave the Claimant "abnormal amounts of attention . . . in the form of relentless abuse . . which should have been a red flag in a church setting." (Sweeney Response ¶ 33.)  While as noted repeatedly throughout this Opinion, physical abuse does not put the Diocese on notice of sexual abuse, the Claim also includes additional allegations.  Specifically, the response includes the allegation that prior to his abuse of the claimant, Fr. Kondziolka had a series of erratic transfers:

> Fr. Kondziolka was transferred four (4) times between 1960 and 1967, or two (2) years before Claimant's abuse began. Non-offending priests typically have fixed, five-year terms at the parishes they are assigned to.

(Sweeney Response ¶ 34.)  For the proposition that priests typically have fixed five-year terms, the response cites to the Grand Jury Report.  (*See id*.)  As an initial matter, because the Grand Jury Report is cited and linked to in the allegations, the Court concludes that the Grand Jury Report is incorporated by reference, and the Court will consider the Grand Jury Report as part of the allegations.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016); *see also Doe v. Roman Catholic Diocese of Greensburg*, 581 F.Supp.3d 176, 187 (2022) (taking "judicial notice of the evidence to which Mr. Doe refers, a multi-year Pennsylvania Grand Jury Investigative Report on child sexual abuse in the Catholic Church in Pennsylvania, published in 2018") (citing *Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).  The portion of the Grand Jury Report that the response cites to states that:

> Over his 25-year career, Priest D had an average service period in each assignment of just more than three years. The standard term for parish assignments was at least five years. These excessive transfers alone should have been a warning sign to supervisors and fellow priests. They weren't.

(Sweeney Response ¶ 34 (citing Grand Jury Report at 30).)

The Grand Jury Report alleges 1) that a normal term was at least five years and 2) that the Diocese was generally aware that excessive transfers were a red flag.  (Grand Jury Report at 30.)  Given that Fr. Kondziolka was transferred four times in seven years prior to the abuse of the survivor, the Court concludes it is plausible that these multiple transfers put the Diocese on notice that of the abuse.  The Debtor argues that *Murray v. Nazareth Reg'l High Sch.* held that "notice cannot be inferred from broad allegations about the Church's practices . . . with respect to assignment theory."  (Objection ¶ 38 (citing 579 F.Supp.3d at 389-90).)  In *Murray v. Nazareth Reg'l High Sch.*, the court remarked that:

> The Catholic Church is a global institution with a vast number of dioceses and clergymen and plaintiff's reliance on Church practices writ large or a specific report about a different diocese in Pennsylvania are not enough to state a claim against a diocese in New York.

579 F. Supp. 3d at 389.

But here the Grand Jury Report contains factual findings about the specific Diocese at issue here, the Diocese of Rockville Centre.  Thus, the Claimant is not making broad general allegations about the Catholic Church writ-large but is making specific allegations that the transfers are erratic based on the normal term of service within the Diocese of Rockville Centre, as set forth in the Grand Jury Report.  (*See* Sweeney Response ¶ 34.)  To be clear, including allegations from the Grand Jury Report that the Debtor knew about a problem of sexual abuse within the Diocese alone is not a sufficient allegation that the Diocese was on notice of a specific abuser's propensity for abuse.  But here, because the allegations in the Grand Jury Report serve to bolster the plausibility that the transfers of this *particular abuser* put the Diocese on notice of the abuser's propensity for abuse, the Court concludes that the Claimant has sufficiently alleged notice.

*b. Claim 90090*

The response with respect to Claim 90090 includes the following allegations regarding

notice:

> An inference must be drawn that the perpetrators were aware or should have
> been aware of what each were doing because they were torturing [claimant] in
> the same sadistic manner at approximately the same time in the same space. It
> would be unreasonable to believe three nuns working as teachers in the same
> school and using sodomy as a disciplinary "tool" would not be aware of what
> the other was doing.

(Weitz Response ¶ 45.)

As an initial matter, these allegations ask the Court to impute the nun's notice of sexual

abuse to the Diocese. The Court notes that the extent to which notice of an employee can be

imputed to an employer was not briefed by any party. The Court draws no ultimate conclusions

about the legal propriety of imputing this knowledge, but notes that the Diocese argues only that

"where a claimant alleges that he informed individuals or entities other than the Diocese (e.g.,

the claimant's parent or a classmate or an entity not under the Diocese's control), the requisite

notice cannot be imputed to the Diocese." (Objection ¶ 28.) This statement does not foreclose

the possibility that notice can be imputed to the Diocese through its employees. (*See id.*) Thus,

for the purposes of the motion to dismiss, the Court will assume that notice can be imputed to the

Diocese through the nuns, provided that any of the nuns had notice of the abuse.

The Court also concludes that the Claimant has plausibly alleged that the nuns had the

requisite prior notice of the abuse. *See. Alsaud,* 12 F. Supp. 3d at 680. Specifically, the Court

finds that the allegation that two subsequent nuns abused the survivor in the same unique and

horrific manner plausibly alleges that the similar abuse was not a coincidence. Accordingly, the

Court concludes that it is plausible that the subsequent two nuns had notice of the first nun's

abuse and that the latter nuns may have been emboldened by the first nun's abuse to commit

abuse in the same manner.  While the temporality of the various abuse is not crystal clear in the

proof of claim, none of the allegations foreclose a situation where the abuse of the first nun

continued after the abuse of the second and third nun began.  (*See* Claim 90090 at 12.)  In simple

terms, it is plausible that the second and third nuns had notice of the first nun's abuse and did not

report it, which allowed the first nun to continue the abuse.

### 4.  The Subsequent Report Claims

The Objection states that none of the Claims subject to the Objection allege that the

Claimant reported the abuse to the Debtor, but the Court's independent review indicates

otherwise.  (*See* Objection ¶ 18.)  The Court's review located two claims, the Subsequent Report

Claims where Claimants allege that they subsequently reported the abuse to agents of the

Diocese.  For the reasons discussed below, the Court overrules the Objection with respect to the

Subsequent Report Claims.

With respect to Claim 90355, the proof of claim attaches a civil court complaint which

contains the allegation that "[p]laintiff decided to tell about the abuse to a school priest soon after

it happened and was told that he 'probably imagined it,' and nothing was done."  (Claim 90355

at 9 (¶ 14 of civil complaint).)  With respect to Claim 90495, the response to the Objection

indicates that the survivor's "mother reported the [abuse] to someone at St. Patrick's," a parish

within the Diocese of Rockville Center.  (Matthews Response ¶¶ 4, 34).  At the hearing, the

Court asked Debtor's counsel about whether a claim would survive a motion to dismiss if it

contained allegations of a subsequent report to an employee of the Diocese.[17]  Counsel for the

Debtor responded that "candidly, that one may" survive a motion to dismiss because "we

---

[17]    During the hearing in error the Court indicated that Claim 90495 contained allegations that the "claimant told a priest about the abuse." April 4, 2023 Hr'g Tr. at 72:13–17.  Those allegations are actually made in Claim 90355, not claim 90495. Claim 90495 also contains allegations of a subsequent report of the abuse, but not to a priest.

included a[s] part of our criteria whether a report was made." (April 4, 2023 Hr'g Tr. at 72:18–20.) The Court then stated, "I think you missed your criteria when you include that in the claim objection" and Debtor's counsel responded, "that one we may have." (*Id.* at 73:5–7.) The Court notes that neither of the Subsequent Report Claims contain allegations that the Diocese had notice of the propensity for abuse prior to the survivors being abused, which the law requires.

Facts admitted by a party "are judicial admissions that bind th[at] [party] throughout th[e] litigation." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir.2006). Binding parties in this way "promotes efficiency and judicial economy by facilitating the concession of specific issues, thereby 'provid[ing] notice to all litigants of the issues remaining in dispute . . . .'" *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) (quoting *Banks v. Yokemick,* 214 F.Supp.2d 401, 405–06 (S.D.N.Y. 2002). The Court notes that counsel did not unequivocally say that he was withdrawing the objection. Nevertheless, counsel never corrected their statement that they "may have" missed their criteria in a subsequent filing with the Court. (April 4, 2023 Hr'g Tr. at 73:5–7.) Accordingly, the Court concludes that the Debtor agrees that the objections to Subsequent Report Claims were improper based on the Debtor's stated criteria and should be **OVERRULED**. For the avoidance of doubt, this ruling does not mean that the Court would otherwise find a subsequent report of abuse to be sufficient notice to survive a motion to dismiss, the Court's decision here turns solely on the fact that these Claims do not comply with the Debtor's stated criteria for the Objection.

### D. Whether Claimants are Entitled to a Chance to Amend Claims

As noted throughout the Opinion, the Court concludes that many of the Claimants are entitled to leave to amend their Claims. In their responses, the Claimants raise concerns that it is not fair for the Court to dismiss their Claims with prejudice. The Court agrees.

Many of the Claimants' Responses relate to whether the Dioceses had notice of the abusers' propensity to commit acts of sexual abuse.  New York law requires such notice, but the facts are more likely in the possession of the Diocese, except perhaps for some well-known serial offenders.  To be clear, New York law requires the *Claimants* to properly allege facts to show the Diocese was provided with facts that satisfied the notice requirement.  Notice is an element of the claim; the Diocese does not have to negate all possibility of notice.  *See Twombly*, 550 U.S. at 570.

The Court takes seriously the fairness concerns raised in the various responses.  Both the Debtor and the Committee have compiled lists of clergy for whom the Debtor may have had notice of a propensity for abuse.  (*See* Matthews Response ¶ 28.)  Even the Debtor concedes that its list (the "Clergy List") is "not exhaustive."  (*See* Clergy List attached as Exhibit E to ECF Doc. # 454 (the "Bar Date Package") at 46.)  The Clergy List compiled by the Debtor includes clergy credibly accused of abuse.  But the Debtor states that the fact that the name of a member of the clergy is not on the list "does not mean that you should not file a Sexual Abuse Proof of Claim."  (Bar Date Package at 46.)  Further, though the Committee's list supplements the Debtor's list, counsel for the Committee clarified that the Committee did not do any independent investigation and just "gathered public information to augment the list that the Diocese had produced."  (April 5, 2023 Hr'g Tr. at 113:6–13.)

The Debtor's Bar Date Package specifically instructed a Claimant to file a proof of claim even if you "did not report your sexual abuse to the Diocese or to anyone else."  (Bar Date Package at 6.)  And the proof of claim form created by the Debtor did not ask for allegations regarding prior notice of propensity of abuse.  (*See id* at 27 (proof of claim form asking only if there were witnesses to the abuse, not whether the Diocese had notice).)  Many of the Claimants

filed state court complaints before the bankruptcy believing that they would be evaluated under the less exacting New York pleading standards, rather than federal standards. These circumstances counsel providing leave to amend unless the claim and any supporting state court complaint refute the existence of a claim against the Diocese.

The Claimants also contend that they should be entitled to discovery before the Court dismisses the Claims, particularly where the evidence that the Claimants would need to plead with more particularity is in the possession of the Debtor. (*See, e.g.*, Amala Response ¶ 39.) In certain circumstances the caselaw recognizes that requirements to plead with particularity should be relaxed, for example, to allow facts to be plead on information and belief, in situations where "facts [are] peculiarly within the opposing party's knowledge*." DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see Berk v. Tradewell, Inc.*, 2003 WL 21664679, *12 (S.D.N.Y. 2003) (noting that where "the documents necessary to plead the scheme with greater particularity are in the possession of the defendants" there can be grounds for "reading Rule 9(b)'s requirements permissively"). However, the requirement to allege specific facts is not eliminated in these situations. The Second Circuit has stated, in the context of a trustee pleading fraud in a bankruptcy case, that:

> even the so-called relaxed standard does not eliminate the particularity requirement, although we recognize that the degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts.

*Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987).

Such cases address pleadings in the context of Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. The pleading standard here is not a "heightened one," but the Court considers the principles articulated in these cases helpful considering the high bar set in the federal cases for pleading facts about notice in sexual abuse cases. But these cases do not

change the Court's conclusion that the Claimants for whom the Objection is sustained have not

met their burden.  *See id.* ("A complaint like plaintiff's, which fails to adduce any specific facts

supporting an inference of knowledgeable participation in the alleged fraud, will not satisfy even

a relaxed standard.").

During another hearing in the Diocese case on April 19 and 20, 2023, the Court asked

questions about who was in possession of relevant documents going to notice, such as personnel

files. [18]   Counsel for Debtor and the Committee told the Court that 1) the Debtor was in

possession of personnel files, including so-called "confidential personnel files"; 2) those

personnel files had been produced to the Committee[19] and 3) those personnel files had, with very

few exceptions, ***not*** been produced to the Claimants' counsel subject to this Objection.[20]

While the Court finds that most Claimants subject to the Objection should be granted

leave to amend, the Court is not prepared to open broad discovery for claims that are dismissed

without prejudice.  Rather, the Court will schedule a hearing to discuss documents in the

possession of the Diocese that should be produced to counsel for the Claimants before they must

file amended claims.  Another court faced with a sexual abuse claims wisely counseled that even

if it is "tempting to throw the door open to [the Claimants] and to let counsel explore all relevant

facts," dismissal is appropriate where, as here, the specific factual allegations "against the

---

[18]    *See, e.g.*, April 19, 2023 Hr'g Tr. at 200:11–14 ( the Court asks "after the Chapter 11 case was filed did the Diocese produce to the Committee further information regarding . . . the notice issue").

[19]    *See id.* at 200:15–22 (Eric Stephens, counsel to the Debtor, testifies that "the Diocese . . . has produced to the Committee the complete personnel file of every individual who has been accused of abuse either [by] a CVA plaintiff or a claimant with a POC . . . .There were . . . a number of individual accused for whom the Diocese did not have a file."); *id.* at 201:15–21 (noting that the "confidential portion of the personnel files . . . [have] been produced").

[20]    *See id.* at 269:24–270:3 (Counsel for the Committee states that "the only counsel who would have access to [personnel] files would be state court counsel . . .[who represent] Committee members . . . . "). The Claimants' counsel involved in these contested claim objections were not present (and had no reason to be present) during the April 19-20, 2023 hearing, were not representing parties to the issue addressed during that hearing, and are not bound by anything that occurred at the hearing.

Diocese are rather general and few in number." *Murray*, 579 F. Supp. 3d at 391.  The law requires specific allegations, and the Claimants for whom the Court sustains the objection, have not alleged specific allegations.  The Court will enter a separate order scheduling a hearing.

### IV.    CONCLUSION

For the reasons discussed above, the Court **SUSTAINS** the Objection in **PART** and **OVERRULES** it in **PART** as set forth herein.  Within seven (7) days from the date of this Order, counsel for the Debtor, the Committee, and the Claimants shall confer and submit any order required to grant the relief requested in the Objection consistent with the terms of this Opinion.  The Court will enter a separate order scheduling a case conference.

Dated:    May 1, 2023
          New York, New York

                                        *Martin Glenn*
                                        MARTIN GLENN
                                Chief United States Bankruptcy Judge