Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY  10004

15

16                    April 25, 2023

17                    1:58 PM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  KS

Page 2

1    HEARING re Hearing Using Zoom for Government RE: First

2    Interim Application For Allowance of Compensation By Lerman

3    Senter PLLC as Special FCC Counsel for the Period From

4    October 14, 2022 Through January 31, 20233 (Docket

5    Nos. 1804, 1944).

6

7    HEARING re Hearing Using Zoom for Government RE: Seventh

8    Interim Application For Allowance of Compensation and

9    Reimbursement of Expenses By Berkeley Research Group, LLC As

10   Financial Advisor For The Period From October 1, 2022

11   Through January 31, 2023 [Docket No. 1806, 1944].

12

13   HEARING re Hearing Using Zoom for Government RE: Seventh

14   Interim Application For Allowance of Compensation and

15   Reimbursement of Expenses By Burns Bair LLP as Special

16   Insurance Counsel For The Period From October 1,

17   2022 Through January 31, 2023 [Docket No. 1809, 1944, 1493,

18   1540, 1578, 1631, 1682, 1721, 1894, 1944].

19

20

21

22

23

24

25

Page 3

1   HEARING re Hearing Using Zoom for Government RE: Seventh

2   Interim Application of Sitrick and Company, Inc. for

3   Professional Services Rendered and Reimbursement of Expenses

4   Fees for Professional Services Rendered and Disbursements

5   Incurred for the Period of October 1, 2022 to January 31,

6   2023 [Docket No. 1815, 1944, 1476, 1477, 1504, 1517, 1518,

7   1542, 1619, 1620, 1660, 1694, 1698, 1699, 1788, 1944].

8

9   HEARING re Hearing Using Zoom for Government RE: Seventh

10   Application for Interim Professional Compensation for Reed

11   Smith LLP, Special Counsel, period: 10/1/2022 to 1/31/2023

12   [Docket No. 1827, 1944, 1472, 1482, 1507, 1521,

13   1525, 1551, 1616, 1638, 1667, 1668, 1687, 1752, 1944, 1953].

14

15   HEARING re Hearing Using Zoom for Government RE: Seventh

16   Interim Application For Allowance of Compensation and

17   Reimbursement of Expenses By Pachulski Stang Ziehl & Jones

18   LLP as Counsel to the Official Committee of

19   Unsecured Creditors for the Period From October 1, 2022

20   Through January 31, 2023 [Docket Nos. 1803, 1813,

21   1944, 1492, 1539, 1578, 1630, 1682, 1742, 1944)

22

23

24

25

1    HEARING re Hearing Using Zoom for Government RE: Jones Day's

2    Seventh Interim Application for Allowance of

3    Compensation for Services Rendered and Reimbursement of

4    Actual and Necessary Expenses Incurred During

5    Retention Period from October 1, 2022 to January 31, 2023

6    [Docket No. 1823, 1944, 1494, 1496, 1519, 1536,

7    1544, 1571, 1622, 1639, 1710, 1716, 1732, 1944].

8

9    HEARING re Hearing Using Zoom for Government RE: Second

10   Interim Fee Application of Jefferies LLC for Compensation

11   for Professional Services Rendered and Reimbursement of

12   Expenses Incurred as Investment Banker for the Debtor

13   and Debtor in Possession from October 1, 2022 to and

14   Including January 31, 2023 [Docket No. 1841, 1944,

15   1945].

16

17   HEARING re Hearing Using Zoom for Government RE: Seventh

18   Interim Application of Alvarez & Marsal North America LLC

19   for Allowance of Compensation for Services Rendered and

20   Reimbursement of Expenses Incurred as Restructuring

21   Advisor to the Debtor During the Period from October 1, 2022

22   Through January 31 [Docket No. 1824, 1944, 1491, 1496, 1538,

23   1544, 1623, 1639, 1717, 1732, 1944, 1953].

24

25

Page 5

1    HEARING re Hearing Using Zoom for Government RE: Nixon

2    Peabody LLP with Summary Sheet for Seventh Interim

3    Application of Nixon Peabody LLP as Special Counsel to the

4    Debtor from October 1, 2022 through January 31,

5    2023 [Docket No. 1825, 1944, 1457, 1478, 1499, 1500, 1511,

6    1532, 1557, 1559, 1677, 1715, 1732, 1840, 1944].

7

8    HEARING re Hearing Using Zoom for Government RE: Fourth

9    Application for Interim Professional Compensation for

10   Services Rendered and Reimbursement of Actual and Necessary

11   Expenses Incurred for Forchelli Deegan Terrana LLP,

12   Special Counsel, period: 10/1/2022 to 1/31/2023 [Docket No.

13   1828, 1944].

14

15   HEARING re Hearing Using Zoom for Government RE: Third

16   Application for Interim Professional Compensation of Binder

17   & Schwartz LLP for the Period from October 1, 2022 through

18   January 31, 2023 [Docket No. 1829, 1843, 1944,

19   1484, 1515, 1533, 1564, 1621, 1670, 1713, 1842, 1944].

20

21

22

23

24

25

Page 6

1   HEARING re Hearing Using Zoom for Government RE: Fourth

2   Application for Interim Professional Compensation for

3   Services as Future Claims Representative for Robert E.

4   Gerber, Other Professional, period: 10/3/2022 to 1/31/2023

5   [Docket No. 1833, 1837, 1944, 1434, 1528, 1531, 1579, 1582,

6   1610, 1613, 1661, 1699, 1724, 1820, 1944].

7

8   HEARING re Hearing Using Zoom for Government RE: Fourth

9   Application for Interim Professional Compensation for

10  Services as Financial Advisor to Future Claims

11  Representative for Michael R. Hogan, Other Professional,

12  period: 10/3/2022 to 1/31/2023 [Docket No. 1834, 1944, 1529,

13  1580, 1611, 1662, 1727, 1821, 1944].

14

15  HEARING re Hearing Using Zoom for Government RE: Fourth

16  Application for Interim Professional Compensation for

17  Services as Counsel to Future Claims Representative for

18  Joseph Hage Aaronson LLC, Other Professional, period:

19  10/3/2022 to 1/31/2023 [Docket No. 1835, 1837, 1944, 1530,

20  1581, 1612, 1663, 1725, 1822, 1944].

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   DENTONS US LLP

 4        Attorneys for Jeffries LLC

 5        1221 Avenue of the Americas, 25th Floor

 6        New York, NY 10020

 7

 8   BY:  SARAH M. SCHRAG

 9

10   BRG

11        Attorneys for BRG

12        201 S Main St Ste 450

13        Salt Lake City, UT 84111

14

15   BY:  RAY STRONG

16

17   JONES DAY LLP

18        Attorneys for the Debtor

19        250 Vesey Street

20        New York, NY, 10281

21

22   BY:  ANDREW BUTLER

23

24

25
```

Page 8

```
 1   JOSEPH HAGE AARONSON LLC

 2        Future Claims Rep

 3        800 Third Avenue, 30th Floor

 4        New, NY 10022

 5

 6   ROBERT E. GERBER

 7

 8   FORCHELLI DEEGAN TERRANA LLP

 9        Special Counsel to the Debtor

10        333 Earle Ovington Boulevard, Suite 1010

11        Uniondale, NY 11553

12

13   BY:  GERARD R. LUCKMAN

14

15   NIXON PEABODY LLP

16        Special Counsel to the Debtor

17        Tower 46

18        55 West 46th Street, 24th Floor

19        New York, NY 10036

20

21   BY:  CHRISTOPHER M. DESIDERIO

22

23

24

25
```

Page 9

1   PACHULSKI STANG ZIEHL & JONES LLP

2       Attorneys for the Committee

3       780 Third Avenue, 34th Floor

4       New York, NY 10017

5

6   BY:  JAMES I. STANG

7        KAREN B. DINE

8

9   REED SMITH LLP

10       Special Insurance Counsel to the Debtor

11       599 Lexington Avenue

12       New York, NY 10022

13

14   BY:  AARON JAVIAN

15

16   BINDER SCHWARTZ LLP

17       Attorneys for Special Mediator Arthur Gonzalez

18       366 Madison Avenue, 6th Floor

19       New York, NY 10017

20

21   BY:  ERIC FISHER

22

23   ALSO PRESENT TELEPHONICALLY:

24   JEFFREY R. ANDERSON

25   JESSE BAIR

Page 10

1   JOHN BUCHEIT

2   JILLIAN DENNEHY

3   TODD R. GEREMIA

4   MICHAEL HOGAN

5   TODD JACOBS

6   AARON JAVIAN

7   MICHELLE MCMAHON

8   BRITTANY MITCHELL MICHAEL

9   ANDREW MINA

10   JAMES MOFFITT

11   CHARLES MOORE

12   KAREN MORIARTY

13   BENJAMIN ROSENBLUM

14   PATRICK STONEKING

15   RAY STONG

16   RICHARD TOLLNER

17   NORA ANNE VALENZA-FROST

18   JAMES J. VINCEQUERRA

19   GREG ZIPES

20   BRENDA L. ADRIAN

21   TIMOTHY BURNS

22   ELIZABETH CATE

23   ANGELA CIPOLLA

24   ARIELLE FELDSHON

25   TRUSHA GOFFE

Page 11

1    UDAY GORREPATI

2    ADAM HOROWITZ

3    DIETRICH KNAUTH

4    GEORGIA KOSMAKOS

5    JAMES J. NANI

6    JOHN REFIOR

7    MICHAEL REICH

8    MATTHEW ROBERTS

9    CHARLOTTE A. SCHERER

10   ADAM M. SMITH

11   NORA ANNE VALENZA-FROST

12   CHELSIE WARNER

13   CHARLE B. D'ESTRIES

14

15

16

17

18

19

20

21

22

23

24

25

Page 12

```
 1                    P R O C E E D I N G S
 2              THE COURT:  All right.  Good afternoon, everybody.
 3     This is Judge Glenn.  We're here in the Diocese case with
 4     respect to a large number of Fee Applications.  I have -- as
 5     we go through, I have questions about a few of them, but
 6     we'll deal with them as we go through.  So, let's begin.
 7     So, let's start with the Jones Day Application.
 8              MR. BUTLER:  Yes, sir.  This is Andrew Butler with
 9     Jones Day for the Debtor.
10              THE COURT:  Good afternoon.
11              MR. BUTLER:  Good afternoon.
12              THE COURT:  All right, go ahead.
13              MR. BUTLER:  Your Honor, we have an Interim Fee
14     Application set for today.  An agenda for this Interim Fee
15     Application was filed at Docket No. 2033.  Our Interim Fee
16     Application is Docket No. 1823, and it covers October 1,
17     2022, through January 31, 2023.  If Your Honor has any
18     further questions about the Interim Fee Application, I'm
19     happy to answer --
20              THE COURT:  Yeah, let me -- I'm just going through
21     my notes.  All right, so the Fee Application seeks approval
22     for $3,826,536.75 in fees and $75,428.26 in expenses.  Is
23     that correct, Mr. Butler?
24              MR. BUTLER:  That's correct, Your Honor.
25              THE COURT:  All right.  I don't have any
```

Page 13

1    questions.  Does anybody else wish to be heard with respect

2    to the Jones Day Application?  All right.

3              MR. ZIPES:  Your Honor --

4              THE COURT:  Go ahead.

5              MR. ZIPES:  I'm sorry.  Your Honor, Greg Zipes

6    with the U.S. Trustee's Office.

7              THE COURT:  Hi, Mr. Zipes.

8              MR. ZIPES:  My -- good afternoon.  My office has

9    reviewed these Fee Applications and there's an understanding

10   with the parties that we're going to be doing a more fulsome

11   review at the end of the case.  But the case has now lasted

12   quite a bit of time and I may be speaking with the parties

13   about doing a more fulsome review with the next Fee

14   Application as opposed to waiting till the end of the case,

15   and I just wanted to let the Court know that's the case.

16   There's -- my office is reviewing matters.

17             THE COURT:  All right.  Thank you.  Anybody else

18   want to be heard?  All right.  The Application is approved.

19             MR. BUTLER:  Thank you, Your Honor.

20             THE COURT:  All right.  Let's go to the Seventh

21   Interim Application of Reed Smith.  It's ECF Docket 1827.

22             MR. JAVIAN:  Good afternoon, Your Honor.  Aaron

23   Javian, Reed Smith, LLP.  Reed Smith acts as Special

24   Insurance Counsel to the Debtors.  We're seeking approval of

25   our fees during the fee period in the amount of $714,248.50

Page 14

1    and our expenses in the amount of $3,576.61, for a total of

2    $717,825.11.  If Your Honor has any questions, I'm happy to

3    respond or answer them.

4              THE COURT:  Does anybody else wish to be heard

5    with respect to the Reed Smith application?  I'm just

6    reviewing my notes.  Give me a moment.  All right.  It's

7    approved, as well.

8              MR. JAVIAN:  Thank you.

9              THE COURT:  Next is Alvarez & Marsal North

10   America, LLP.  The application is ECF 1824, seeks fees of

11   $435,787.50 and expenses of $354.18.  Who wants to be heard

12   with respect to this application?

13             MR. MOORE:  Hello, Your Honor.  This is Charles

14   Moore from Alvarez & Marsal, Restructuring Advisor to the

15   Debtor.

16             THE COURT:  All right.  Does anybody else wish to

17   be heard with respect to the Alvarez & Marsal application?

18   All right.  It's approved, as well.

19             MR. MOORE:  Thank you, Your Honor.

20             THE COURT:  All right.  Next, I have the Nixon

21   Peabody application.  It's at ECF 1825.  It seeks fees of

22   $424,476.50 and expenses of $516.17.  Who wants to be heard?

23             MR. Good afternoon, Your Honor.  Chris Desiderio

24   from Nixon Peabody on behalf of Nixon Peabody, who acts as

25   Special Counsel to the Debtors.  No objection received.  We

Page 15

1    request the Application be granted.

2           THE COURT:  Does anybody else wish to be heard

3    with respect to the Nixon Peabody application?  Just give me

4    a second.  All right.  It's approved, as well.  All right.

5    Next, I have the Seventh Interim Application of Sitrick &

6    Company.  It's at ECF 1815.  It seeks fees of $27,233.50 and

7    expenses of $560.00.  Who wants to be heard with respect to

8    the Sitrick application?

9           MS. ADRIAN:  Your Honor, this is Brenda Adrian

10   with Sitrick & Company.

11          THE COURT:  Okay.  Let me see whether anybody else

12   -- and I've reviewed all of these, along with my law clerks,

13   as well.  Anybody else wish to be heard with respect to the

14   Sitrick application?  All right.  It's approved.  Okay.

15   Next is the Pachulski Stang Ziehl & Jones application, which

16   is ECF Document 1803.  It seeks fees of $3,050,729.50 and

17   expenses of $639,143.42.  Mr. Stang, are you presenting or

18   is somebody else?

19          MR. STANG:  Hello?  There we go.  Thank you, Your

20   Honor.  James Stang, Pachulski Stang Ziehl & Jones for the

21   Committee and for the firm.  Your Honor, those are current

22   recitals of the amounts we're seeking.  I want to just make

23   two comments.  First, we have a subcommittee of the

24   Committee that reviews our fees on a monthly basis, so the

25   client has direct review of those applications and invoices

Page 16

1    before they get filed with the Court.  Second, Paragraph 13

2    of our application, we reference the fact that we are

3    putting 10 percent of the fees that we collect in the case

4    to a trust fund.  It came to my attention last week that

5    accounting -- I'll blame accounting -- was not putting those

6    monies into a separate trust account.  Since I learned of

7    that, we have funded from interim payments we just received,

8    almost all of the 10 percent and we will top it off with

9    whatever monies we get from this application.  And in the

10   future, we will ensure, and accounting has been instructed,

11   that 10 percent is to go into that account as it's received.

12           THE COURT:  Okay.  Thank you very much, Mr. Stang.

13   I do have -- I don't have any questions about the fees.

14   Well, let me see, is there anybody else that wants to be

15   heard on the Pachulski fee application?  I don't have any

16   questions about the fees, and I guess I should have said at

17   the start, I'm not picking on you about this, Mr. Stang.

18   You've pointed this out multiple times at hearings, this

19   case has been incredibly expensive.  The area that I do have

20   a question about is in the expenses.

21           MR. STANG:  Yes, sir.

22           THE COURT:  The expenses include a line item for

23   outside services and that, which totaled $586,788.50.  It's

24   over 91 percent of the expenses.  So, this category of

25   "outside services" came up at a prior hearing and I had a

Page 17

 1    colloquy with Ms. Dine about it and so, what I'm going to

 2    refer to is in the hearing transcript of December 16, 2022,

 3    at Pages 16 and 17.  And at the time of that last hearing,

 4    the largest item was the same category of "outside

 5    services", and I raised questions about it at that hearing.

 6    And here's the colloquy, Ms. Dine said, "There was an Order

 7    entered earlier in the case allowing for the retention of

 8    certain experts without going through the application

 9    process and having the fees passed through counsel.  And so,

10    the outside services, I think, in this application period

11    are for Claro Group, who is our Claims Advisor.  They are

12    reviewing the claims and evaluating the claims for us, as

13    well as Rock Creek Advisors, who is a firm that addresses

14    pension and benefit issues and they have been looking, with

15    us, at the Debtor's pension and welfare plans."  Ms. Dine

16    went on from there, but -- and I responded, "It would be

17    helpful if there was some description provided so that you

18    know would inform me better about what it's for.  When I see

19    a big sticker price on an item, whether it's described as

20    "outside services" or exactly what it is, in the case the

21    Debtor, it was "hosting charges" was the description of it.

22    It would be helpful to me, you have more of a better

23    description, okay?"

24           And Ms. Dine responded, "Absolutely, Your Honor,

25    and frankly, when I was looking at the application in

Page 18

```
 1    preparation for the hearing, I was thinking that probably we

 2    should have explained that, and we'll do that in the

 3    future."  Let me just say that the reference, in my remarks,

 4    to the Debtor's expense report, which includes "hosting

 5    services", and that was explained to me what that was, it

 6    was data, obviously.  So, your firm started to include more

 7    details in its bills for other categories of expenses, but

 8    the details for expenses within "outside services" is still

 9    lacking.  For instance, across the Interim Fee Applications

10    and invoices, it appears that your firm paid the following

11    amounts simply to "invoices" for the following services

12    without further description, totaling hundreds of thousands

13    of dollars.  I mean, you know, I won't give you the specific

14    amounts now.  So, these amounts for "outside services" are

15    being paid or eclipsing the amounts for many of the retained

16    professionals in the case that are subject to filing fee

17    applications.

18            And while Ms. Dine stated that your firm is

19    procedurally responsible for fronting these costs and filing

20    its own application, under the current procedural

21    arrangements, you know, I want to know more.  This is huge

22    dollars, and I don't know if -- I don't expect you -- if you

23    can give it to me, that's fine.  If not, I'd like to see it

24    in a subsequent -- I don't know what -- what the Order that

25    Judge Chapman entered that permitted this.  I never would
```

Page 19

```
 1    have, but that's -- you know, I'm not going back on what

 2    Chapman -- what Judge Chapman did.  But it's a huge number,

 3    Mr. Stang and I need to have more transparency about what it

 4    is.  If -- you know, if it involves confidential

 5    information, for example, I don't have a problem about

 6    redacted copies being filed on the docket and with me

 7    getting unredacted copies.  But I'm just uncomfortable, and

 8    I don't know, Mr. Zipes, whether this is an office your

 9    office has looked at or not, and I don't mean to be picking

10    on you about it.  I raised this before with Ms. Dine and I'm

11    just not satisfied.

12              MR. STANG:  Your Honor.  I'm sorry, I don't want

13    to cut in front of Mr. Zipes, but --

14              THE COURT:  No, you -- but go ahead, Mr. Stang.

15    Go ahead.

16              MR. STANG:  Your Honor, I'm -- I haven't gotten

17    the message yet from Ms. Michael or Ms. Dine but within 10

18    days, we will submit to you a more detailed description of

19    the services provided by Claro, now known as Stout through a

20    corporate acquisition and the Rock Creek folks.

21              THE COURT:  There was also -- there was also a big

22    amount for CBRE.  Was that real estate related?

23              MR. STANG:  Yes, that's regarding real estate

24    title records and valuations.

25              THE COURT:  Okay.
```

 1            MR. STANG:  But we'll do the same for them, as

 2    well.

 3            THE COURT:  Okay.

 4            MR. STANG:  And Your Honor, do you want to see

 5    their invoices, or do you want a narrative description of

 6    what they've done with a breakout of the dollar amount for

 7    each one?

 8            THE COURT:  Let me ask Mr. Zipes about whether

 9    your office has looked at this or not.

10            MR. ZIPES:  Your Honor.  Good afternoon, Greg

11    Zipes.  We haven't looked at the specific invoice, but we

12    have had general discussions and sometimes the issue is that

13    there's ongoing litigation and there's a concern that

14    there's a desire to be somewhat vague and sometimes it's

15    more vague than other times.

16            THE COURT:  Yeah.  I don't have a problem, you

17    know, and that's why I say, I'm open to have this stuff

18    redacted if there's a reasonable argument.  Yeah, I think

19    unredacted copies have to be given to the U.S. Trustee's

20    office, and unredacted copies have to be given to me.  But

21    to the extent appropriate, I don't have a problem about

22    redacted copies going -- it was just big dollar numbers and

23    I'm not -- I don't mean to be faulting anybody.  I raised

24    this before and I'm just not there yet on it.

25            MR. STANG:  Your Honor, I would ask for this.

20-12345-mg   Doc 2139   Filed 06/09/23   Entered 06/09/23 12:28:46   Main Document
Pg 21 of 38

Page 21


1    Allow us to give you, on the record, on the docket, a

2    narrative of the description of what each is doing, without

3    invoices.  Submit to you -- I don't know if the right word

4    is "seal" or off the record, the invoices, copy U.S. Trustee

5    with those, as well, and then, if you feel that invoices

6    should be filed on the docket redacted, we'll certainly do

7    that.  I don't know if the Debtor or other professionals are

8    also paying in a sense, "off the books", to professionals,

9    but --

10            THE COURT:  We'll find a different term to apply

11   for that, okay?

12            MR. STANG:  Okay.  Fair enough.  "Off-line",

13   maybe?  You know, if it's the amount of dollars that are

14   involved here that drew your attention to us, that's fine.

15   I just want to make sure the goose and the gander are

16   treated the same.

17            THE COURT:  Yeah.  If the amount -- let me go back

18   a second.  Hold on.  You know, when I -- because I -- the

19   Debtor's application, the largest expense item on this one

20   is "hosting charges", $54,201.87, and I asked about an

21   explanation about it before.  So, I understand what that is.

22   So, there -- let's put it -- the total expenses that the

23   Debtor is seeking in this application is $75,428.26.  The

24   biggest item is "hosting charges", which I got a

25   satisfactory explanation for.  So, I don't think -- I mean,

Veritext Legal Solutions

212-267-6868            www.veritext.com            516-608-2400

Page 22

1    if there were similar items, I would certainly be asking you

2    about the same thing because I did before, okay.

3           MR. STANG:  Our expenses clearly dwarf those.

4           THE COURT:  Yeah.

5           MR. STANG:  And so, we will, within 10 days, Your

6    Honor, submit -- this is what I'm proposing, submit to you

7    and -- well, file a narrative for each of the professionals

8    that compose the major components of those expenses and then

9    submit to Chambers and to the U.S. Trustee, unredacted

10   copies of invoices.

11          THE COURT:  Let me -- I didn't go back to look at

12   the exact amounts from the last Interim Fee Application.  Is

13   it of similar -- do you remember or know whether it's a

14   similar magnitude?

15          MR. STANG:  I don't, but we can do it for both

16   periods, Your Honor.

17          THE COURT:  Let me suggest this, and I don't want

18   to delay, particularly if you've -- what Ms. Dine said, that

19   you were fronting these costs, and I'm not looking to have

20   your firm out of pocket for it.  What I'm going to do is,

21   I'm going to approve now all the other expenses.  Subtract

22   out the $586,788.50.  Let me see the -- you know, put on the

23   docket a narrative -- brief narrative and send me the --

24   send the Court and the U.S. Trustee the invoices and I'll

25   act on it promptly.  I'm not looking to have your firm out

Page 23

```
 1    of pocket for this amount or any other amount.  So, I'm not

 2    looking --

 3             MR. STANG:   (indiscernible)

 4             THE COURT:   -- to punish anybody for that, so --

 5             MR. STANG:   But we certainly aren't -- but we

 6    aren't taking your comments to be in that -- in that tenor.

 7    So, that's fine, Your Honor.

 8             THE COURT:   And what I would suggest is, if the

 9    "outside services" item remains a large sticker item going

10    forward, provide the narrative with the application and

11    then, to the extent you need, to file the invoices redacted,

12    okay?

13             MR. STANG:   Okay, got it.

14             THE COURT:   Okay.  All right.  So, again, I'm

15    approving your Fee Application.  The Application for Fees

16    and the Application for Expenses, holding back for,

17    hopefully, a very prompt resolution by the Court, that

18    "outside services" item.  And I won't keep you waiting very

19    long.

20             MR. STANG:   And Your Honor, I wrote down

21    $586,788.50.

22             THE COURT:   That's what I have written down.

23             MR. STANG:   Okay.  Thank you.

24             THE COURT:   You can double check it because I'm

25    going from notes I have in front of me and I could have made
```

Page 24

1     a mistake when I did it, so --

2              MR. STANG:  That accounting department that didn't

3     do the 10 percent, I will ask them to double check.

4              THE COURT:  Okay.  All right.  Thanks.  Okay.  So,

5     next is the Seventh Interim Fee Application of Burns Bair,

6     LLP as Special Insurance Counsel to the Committee.  And

7     they're seeking fees of $411,679.25 and expenses of

8     $11,848.82.

9              MR. BAIR:  Your Honor, this is Jesse Bair from

10    Burns Bair, Special Insurance Counsel for the Committee.

11    Your Honor recited those numbers correctly.  If you have any

12    questions, we're happy to respond.

13             THE COURT:  Okay.  I do have some comments for

14    you.  I'm -- does anybody else want to be heard with respect

15    to this, the Burns Bair, LLP application?  Okay.  I'm going

16    to approve it but listen to this carefully because it's been

17    raised before, okay.  The application does not provide a

18    summary chart that breaks out its billings by project

19    category as specified by the Southern District Amended

20    Guidelines.  This makes it very difficult to calculate

21    whether the preparation of your fee application fits within

22    -- well, I'll refer to it as the "Mesa Air Guidelines",

23    actually a case that Mr. Stang's firm represented the Debtor

24    in, where I dealt with, what's a reasonable -- what's the

25    range for fees for preparing fee applications?  So, the

Page 25

1    admission of a group summary chart is an issue that your

2    firm was reminded of during the most recent Omnibus Hearing

3    on December 16, 2022.  You can look at the transcript, at

4    Pages 17 and 18, yet you still fail to include the chart.

5    It won't happen again, meaning, I won't approve your fees

6    again if you don't do what the Rules require.

7             MR. BAIR:  Yeah, thank you Your Honor.  The charts

8    we included were intended to address your concern, but --

9             THE COURT:  Well, it didn't.

10            MR. BAIR:  -- it appeared that we misapprehended

11   what the concern was.  And so, we will discuss with the

12   professionals on our end and make sure that our submission

13   includes the correct chart going forward.

14            THE COURT:  Okay.  All right.  The next on my list

15   is the Berkeley Research Group, ECF 1806.  Who is appearing

16   for them?

17            MR. STRONG:  That me, Your Honor.  Ray Strong on

18   behalf of Berkeley Research Group.  During the period -- the

19   reporting period, Berkeley is asking for approval of interim

20   fees of $573,973.50 and expenses of $32,042.00.  We've

21   received no objections.  I'm happy to answer questions --

22            THE COURT:  $32.42 were the expenses, right?

23            MR. STRONG:  Correct.

24            THE COURT:  Okay.  All right.  Anybody else --

25   anybody have anything they want to say about this

Page 26

1    application?  All right.  It's approved.

2             MR. STRONG:  Thank you, Your Honor.

3             THE COURT:  Okay.  Next is Forchelli Deegan

4    Terrana, LLP.  The application is ECF 1828.  It seeks fees

5    of $17,612.50 and no expenses.

6             MR. LUCKMAN:  Good afternoon, Your Honor.  Gerard

7    Luckman, Forchelli Deegan Terrana, Special Real Estate

8    Counsel to the Debtor.

9             THE COURT:  Nice to see you again.

10            MR. LUCKMAN:  Good seeing you too, Your Honor.

11            THE COURT:  Even if it's --

12            MR. LUCKMAN:  It's been a while.

13            THE COURT:  Even if it's across the screen.  All

14   right.  Anybody have anything they want to say about this

15   application?  All right.  It's approved.

16            MR. LUCKMAN:  Thank you, Your Honor.

17            THE COURT:  Thanks, Mr. Luckman.  All right.  All

18   right.  Next is the Binder & Schwartz Third Interim Fee

19   Application as Counsel to Special Mediator Arthur Gonzalez.

20   The application is ECF 1829.

21            MR. FISHER:  Good afternoon, Your Honor.  Eric

22   Fisher on behalf of Binder & Schwartz.  The application is

23   in the amount of $7,107.30 and no expenses and there's no

24   objection to the application.

25            THE COURT:  All right.  I -- I -- I have a problem

Page 27

1    -- your -- Mr. Fisher.  Correct me if I'm wrong, okay.  The

2    time spent preparing -- well, for both preparing the fee

3    application and the retention application was 43 percent of

4    the total billed in the interim period.  The Mesa Air

5    decision that I referred to earlier, quite some time ago, I

6    said that the range -- I didn't come up with a precise

7    range, but I said that fees incurred in preparing fee

8    applications should generally not exceed the 3 to 5 percent

9    range of the application.  And what I said is, the larger

10   the fee application, the smaller the percentage, the higher

11   the -- the smaller the fee application, it may be a higher

12   percentage.  And I separate out the time preparing fee

13   applications, from retention applications because they're

14   not the same.  The time preparing the retention application

15   is recoverable.  But when we reviewed the individual time

16   records, it shows that the majority of the time that was

17   billed is, indeed, spent on the fee applications.  And

18   here's what's bothering me, there's 12 hours of time charged

19   preparing fee applications and 5 hours for the substantive

20   work.  And maybe I'm getting it wrong and please correct me

21   if I'm wrong, but it just -- I mean, it can't cost more to

22   prepare a fee application than what you're charging for the

23   work you're doing.

24            MR. FISHER:  Your Honor, you're not -- you're not

25   getting it wrong.  The value of the work on the substantive

Page 28

1      matters exceeds the value of the time spent on the fee

2      application, and I appreciate the problem, and I think part

3      of the problem is that the substantive time that we devote

4      to this matter is important, but minimal.  And I will tell

5      the Court that before submitting these applications, we

6      actually do write off a lot of the time associated with

7      preparing the fee applications.  But I'm open to any

8      solutions to this problem that the Court proposes, including

9      writing off substantially more of the fee application time.

10             THE COURT:  Look, the reason -- I don't know

11     whether you ever read my Mesa decision, I repeated the same

12     reasoning in a Borders Books opinion I wrote quite some time

13     ago, again, and I've really been consistent throughout -- in

14     applying the range.  Look, from my standpoint, it makes

15     practical good sense.  I mean, you can't -- the amount that

16     you can bill for preparing fee applications, which is

17     recoverable, has got to be fraction of what you're putting

18     in time.  I mean, you can do it -- look, I recognize that

19     when I get fee applications for relatively small amounts,

20     such as the ones that you're submitting, it -- you know, I

21     don't look at those applications quite the same, for the

22     same level of detail that I would get in a big application.

23     Mr. Zipes, I don't know whether -- did you -- has your

24     office looked at this issue here or --

25             MR. ZIPES:  Your Honor, I don't want to pick on

Page 29

1    Mr. Fisher, but we had an issue at the beginning of the case

2    with retention -- time spent on the retention application.

3    And I think, as he stated, he struggles with the fact that

4    his firm doesn't have a lot of hours dealing with this and I

5    -- I don't have a great solution for that.  I mean, it's --

6    it is -- it is what it is.  And I -- so, Your Honor, I think

7    we were deferring this issue because --

8              THE COURT:  All right.

9              MR. ZIPES:  -- there might be -- there might be

10   months where he's putting in substantially more time and the

11   percentages might true up a little bit more.  But I do think

12   it's a live issue, Your Honor.  I'm not --

13             THE COURT:  Let me just put it this way -- look,

14   what Mr. Fisher and his firm have done in other, much more

15   substantial cases in front of me, can't be what leads me to

16   what the result should be here.  I'd just say, you know,

17   I've had considerable experience with Mr. Fisher and his

18   firm and have only the strongest, positive feelings about

19   the quality of their work, and the fairness in everything

20   they've done.  So -- but, okay -- here's what I'm going to

21   do.  I'm going to approve fees in the amount of $5,000.00.

22   You've got to -- you know, Mr. Fisher, I know that Judge

23   Gonzalez has a more limited role in this case, and unless

24   that changes, your fee applications are not going to -- are

25   going to pale in comparison to the fees of the other

Page 30

```
 1    professionals in the case.  I just -- you just need to look

 2    at this more carefully going forward.  I certainly

 3    understand, as I suggested, that if a fee -- and I recognize

 4    this, the smaller the total fee application, the higher the

 5    percentage is going to be, but it's okay because you have to

 6    do fee applications.  But I'm going to leave it to you and

 7    your colleagues' professional judgment to figure out how to

 8    do this in a way that is appropriate.  It just can't be that

 9    I'm approving more for preparing the fee application than

10    for the work.  It just -- it just can't happen.  Okay?

11              MR. FISHER:  Understood, Your Honor, and I --

12              THE COURT:  All right.  Submit an Order that

13    approves your fees in the amount of $5,000.00.  You had no

14    expenses that you were seeking, okay?

15              MR. FISHER:  Correct.

16              MR. ZIPES:  Your Honor, it's Greg Zipes.  Can I --

17    can I just make a suggestion?

18              THE COURT:  Absolutely.

19              MR. ZIPES:  I know that the applications need to

20    be filed every 120 days and that's one of the rules that

21    we're dealing with.  I do think that, perhaps, if the Court

22    is willing to consider this, that fee applications be filed

23    maybe every six months and notwithstanding the rule and --

24              THE COURT:  Well, I'm not going to do that with

25    the Jones Day or Pachulski (indiscernible)
```

1          MR. ZIPES:  No, absolutely.  Absolutely, Your

2     Honor.  And I'm, sort of, suggesting this on the fly, as

3     well.  But there are different ways of dealing with it.

4          THE COURT:  All right.  You know, Mr. Zipes, why

5     don't you talk with -- because there are some others that,

6     you know -- I have the Joseph Hage Aaronson application for

7     $6,810.00 and no expenses.  You know, it's the Future Claims

8     Representative's counsel.  There are -- I think that the

9     Lerman Senter application was seeking $6,544.39 and I'll

10    deal with some other issues about that one, but I'm open to

11    -- maybe, Mr. Zipes, you can come up with a proposal that,

12    for applications totaling less than, figure out what the

13    dollar is, they can be filed less frequently, okay?

14         MR. ZIPES:  We'll do that, Your Honor.  I don't

15    want to make that a practice, but it --

16         THE COURT:  No.

17         MR. ZIPES:  -- it makes sense in a case like this

18    --

19         THE COURT:  Yeah.

20         MR. ZIPES:  -- where there's a few of these that

21    need to be reviewed.

22         THE COURT:  Okay.  All right.  All right.  So, the

23    next application is the Lerman Senter, PLLC application

24    seeking fees of $6,544.39 and no expenses.  Who is appearing

25    with respect to that application?  Anybody?

1          MS. MICHAEL:  Your Honor, this is Brittany Michael

2     from Pachulski Stang Ziehl & Jones on behalf of the

3     Committee.  I believe, given the small amount at issue, no-

4     one from Lerman is on the line, but -- and we can attempt to

5     answer questions or communicate questions.

6          THE COURT:  Sure.  The fee application -- here's

7     the -- the major problem we spotted.  The fee application,

8     which, again is ECF 1804, is missing 9 hours in invoice

9     entries and does not break out the hours into the required

10    billing categories.  They're going to have to -- I'm not

11    approving the Lerman Senter application.  They're going to

12    need to resubmit it.  That doesn't have to be held until the

13    next fee hearing, but I'm not approving this one.  I mean,

14    it's just -- you know, the fee application is only seeking

15    $6,544.39, but it's missing 9 hours of -- you know, it

16    doesn't have the invoice entries, it doesn't break down

17    hours.  We have requirements, so have a discussion with

18    them, would you please?

19         MS. MICHAEL:  Understood, Your Honor.  We will.

20         THE COURT:  All right.  Next is the Fourth Interim

21    Application of the Future Claims Representative.  It's --

22    the application is ECF 1833.  It seeks fees of $74,340.00

23    and expenses of $197.85.  Mr. Gerber, are you presenting?

24         MR. GERBER:  Yes, Your Honor, with your consent,

25    I'll present, not just on my own behalf, but also for my

Page 33

1      Financial Advisor, Michael Hogan and my firm, as well.

2              THE COURT:  All right.  Let me just say, the Hogan

3      application, which is ECF 1834 seeks $80,537.50 in fees and

4      expenses of $2,775.34.  And the Joseph Hage Aaronson, LLC

5      application is ECF 1835, and it seeks fees of $6,810.00 and

6      no expenses.  Go ahead, Mr. Gerber.  (indiscernible)

7              MR. GERBER:  That's right, and --

8              THE COURT:  You could do them in order, or you can

9      do all three of them.

10             MR. GERBER:  All those numbers are correct, Your

11     Honor, and with your consent, I'll speak only to answer

12     questions.  There were no objections to any of the three.

13             THE COURT:  Does anybody want to be heard with

14     respect to those three applications?  Okay.  I don't have

15     any questions, so I'm approving the Fourth Interim

16     Application of the Future Claims Representative, fees of

17     $74,340.00, expenses of $197.85, the Fourth Interim

18     Application of Michael R. Hogan, ECF 1834, approving fees of

19     $80,537.50, expenses of $2,775.34 and the Fourth Interim Fee

20     Application of Joseph Hage Aaronson, ECF 1835, fees of

21     $6,810.00 and no expenses.  So, those three are approved and

22     you can submit the Orders and they'll be entered.  Okay?

23     Thanks very much.  Okay.  The next is the Second Interim

24     Application of Jefferies, LLC.  It's at ECF Docket No. 1841.

25     It seeks fees of $200,000.00 and expenses of $50,000.00.

Page 34

1    Who is presenting for Jefferies?

2            MS. SCHRAG:  Good afternoon, Your Honor.  Sarah

3    Schrag of Dentons U.S., LLP on behalf of Jefferies.

4            THE COURT:  Okay.  Let me just flip in my notes.

5    Okay, so the Jefferies fees seeking $200,000.00 represents

6    their monthly fees, $50,000.00 per month for the four-month

7    periods pursuant to the engagement letter.  And the

8    $50,000.00 in expenses is the maximum allowable under the

9    engagement letter.  And the application includes the

10   certification of Richard Morgner, it's Exhibit A to the

11   application.  Does anybody have any questions about the

12   Jefferies application?  Okay.  It's all approved.  I would

13   just note that Jefferies expenses included the fees for

14   Sidley Austin in connection with Jefferie' engagement,

15   that's Exhibit B to the application.  And Jefferies provided

16   detailed invoices for its payments to Sidley Austin, and

17   although Jefferies does not provide an actual total for its

18   expenses, a review of Exhibit B reveals that Jefferies out-

19   of-pocket expenses totaled more than $50,000.00 during the

20   interim period, but the expenses are capped by the

21   engagement letter to the $50,000.00.  Do I have that right,

22   Ms. Schrag?

23           MS. SCHRAG:  Yes, that's right, Your Honor.  Thank

24   you.

25           THE COURT:  Okay.  So, if -- the Jefferies

Page 35

1    application is approved.

2            MS. SCHRAG:  Thank you, Your Honor.

3            THE COURT:  Okay.  So, that deals with all of the

4    applications today.  Let me -- just give me a moment,

5    please.  Mr. Butler, anything that you want to raise?

6            MR. BUTLER:  No, Your Honor.  We'll coordinate

7    among the professionals and have a proposed Order submitted

8    to Chambers.

9            THE COURT:  Mr. Stang, anything you want to raise?

10           MR. STANG:  No, Your Honor.  Thank you.

11           THE COURT:  All right.  Anybody else want to be

12   heard?

13           MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

14   Trustee's Office.  Just very quickly --

15           THE COURT:  Sure.

16           MR. ZIPES:  -- the status of this -- of the fee

17   applications is that there are no hold backs, generally, for

18   the period prior to the current interim fee applications.

19   And I -- given that there are uncertainties in the case, my

20   office may be re-examining the holdback issues with the

21   parties.  It's not a pleasant subject for them necessarily,

22   but it may be necessary given the status of the case.  It's

23   --

24           THE COURT:  I agree.

25           MR. ZIPES:  (indiscernible)

Page 36

1           THE COURT:  I agree.  But none of the

2    professionals should be in for -- you know, or surprised.

3    There needs to be adequate notice if your office is going to

4    seek to impose a holdback requirement.

5           MR. ZIPES:  Absolutely.

6           THE COURT:  Okay.  We'll leave it at that today.

7    All right.  We are adjourned.

8           (Whereupon these proceedings were concluded at

9    2:40 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 37

```
 1                   I N D E X

 2

 3                    RULINGS

 4                                        Page      Line

 5  Fee Applications Granted              13        18

 6  Alvarez & Marsal Motion Approved      14        18

 7  Nixon Peabody Motion Approved         15        4

 8  Sitrick & Company Motion              15        14

 9  Pachulski Stang Ziehl & Jones Fee Motion  22    21

10  Granted in Part

11  Seventh Interim Fee Application of    24        16

12  Burns Bair, LLP as Special Insurance

13  Counsel Granted

14  Forchelli Deegan Terrana, LLP Fee Motion  26    15

15  Granted

16  Binder & Schwartz Third Interim Fee   30        13

17  Application as Counsel to Special Mediator

18  Arthur Gonzalez Granted

19  Fourth Interim Application of the Future   33    21

20  Claims Representative Motion Granted

21  Jefferies Application Granted         34        12

22

23

24

25
```

Page 38

1                      C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6

7

8      Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  June 8, 2023