NOAKER LAW FIRM LLC
Patrick Noaker
1600 Utica Ave. S., 9th Floor
St. Louis Park, MN 55416

Counsel for Claimant No. 20018

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 20-12345 (MG) |

### NOTICE OF APPEAL AND STATEMENT OF ELECTION

**Part 1: Identify the appellant(s)**

1. Name(s) of appellant(s):  Claimaint No. 20018.      (Claim No. 20018)

2. Position of appellant in the bankruptcy case that is the subject of this appeal: <u>Creditor</u>

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from: <u>Memorandum Opinion</u>

   <u>Sustaining the Debtor's Ninth Omnibus Objection to Claims signed by the Honorable</u>

   <u>Martin Glenn.</u>

2. State the date on which the judgment, order, or decree was entered: <u>06/09/2023</u>

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: <u>The Roman Catholic Diocese</u>      Attorney:      <u>Jones Day</u>
   <u>of Rockville Centre, New York</u>                                <u>Corrine Ball</u>

Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street, Fl. 32
New York, NY 10281
Phone: (212) 326-3939

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

<u>X</u> – Appellants elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

Dated:  June 19, 2023                          Respectfully submitted,
              New York, New York

                                               /s/Patrick Noaker_____
                                               Patrick Noaker
                                               **NOAKER LAW FIRM LLC**
                                               1600 Utica Avenue S., 9th Floor
                                               St. Louis Park, MN 55416
                                               Telephone: (952) 491-6798
                                               patrick@noakerlaw.com

Order on Debtor's Ninth Omnibus Objection to Claims

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  | : |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE ROMAN CATHOLIC DIOCESE OF | : | Case No. 20-12345 (MG) |
| ROCKVILLE CENTRE, NEW YORK,[1] | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

## ORDER ON DEBTOR'S NINTH OMNIBUS OBJECTION TO CLAIMS

Upon the *Debtor's Ninth Omnibus Objection to Claims* (ECF Doc. No. 1744) that arise

from conduct that the Debtor claims pre-dates the Debtor's formation as a religious corporation

(the "Objection"),[2] pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule")

3007; the Court having reviewed the Objection, the responses thereto, and the Debtor's reply,

and having considered the statements of counsel with respect to the Objection at a hearing before

the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

(d) notice of the Objection and the Hearing was sufficient under the circumstances; and the Court

having determined that the legal and factual bases set forth in the Objection and at the Hearing

establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.      The Objection is SUSTAINED to the extent set forth herein.

---

[1]      The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Objection.

2.    The Objection is SUSTAINED WITH PREJUDICE as to the Claims listed in the

column titled "CLAIMS TO BE DISALLOWED" identified in **Schedule 1** hereto, and these

Claims are disallowed and expunged in their entirety.

3.    The Objection is SUSTAINED WITH LEAVE TO AMEND as to each Claim

listed in the column titled "CLAIMS SUBJECT TO AMENDMENT" identified in **Schedule 1**

hereto.  These Claims shall be disallowed and expunged in their entirety unless amended within

14 days of entry of this Order to plead facts which would allege liability consistent with the

applicable law discussed in the Court's *Memorandum Opinion Sustaining the Debtor's Ninth*

*Omnibus Objection To Claims* (ECF Doc. No. 2110).

4.    The objection by the Debtor to the Claims, as addressed in the Objection and the

schedule hereto, constitutes a separate contested matter with respect to each such claim, as

contemplated by Bankruptcy Rule 9014.  This Order shall be deemed a separate Order with

respect to each Claim.

5.    The rights of the Debtor to assert further objections to any Claims Subject to

Amendment listed on **Schedule 1**, in whole or in part, and on any basis, are fully preserved.

6.    The Debtor, Epiq Corporate Restructuring, LLC, and the Clerk of this Bankruptcy

Court are authorized to take all reasonable actions necessary or appropriate to give effect to this

Order.

7.    Notice of the Objection as provided therein is deemed good and sufficient notice

of such Objection, and the requirements of the Bankruptcy Rules and the Local Rules of the

Bankruptcy Court for the Southern District of New York are satisfied by such notice.

8.    This Order shall be immediately effective and enforceable upon its entry.

     9.      This Court shall retain exclusive jurisdiction over any and all matters arising from

or related to the implementation, interpretation or enforcement of this Order.


**IT IS SO ORDERED.**

Dated:  June 9, 2023
        New York, New York


                                         **/s/ Martin Glenn**
                                     MARTIN GLENN
                       Chief United States Bankruptcy Judge

**<u>SCHEDULE 1</u>**

| | **CLAIM TO BE DISALLOWED** | | **CLAIMS SUBJECT TO AMENDMENT** | |
|---|---|---|---|---|
| | **Claimant Name** | **Claim No.** | **Claimant Name** | **Claim No.** |
| 1 | | 20018 | | 90183 |
| 2 | | 90009 | | 90192 |
| 3 | | 90010 | | 90366 |
| 4 | | 90035 | | 90543 |
| 5 | | 90067 | | |
| 6 | | 90154 | | |
| 7 | | 90333 | | |
| 8 | | 90402 | | |
| 9 | | 90526 | | |

Memorandum Opinion

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br><br><div align="center">Debtor.</div> | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 20-12345 (MG) |

<div align="center">

**MEMORANDUM OPINION SUSTAINING**
**THE DEBTOR'S NINTH OMNIBUS OBJECTION TO CLAIMS**

</div>

*A P P E A R A N C E S :*

JONES DAY
*Counsel for the Debtor*
250 Vesey Street, Floor 32
New York, NY 10281
By:    Todd Geremia, Esq.
        Corrinne Ball, Esq.
        Andrew Butler, Esq.
        Benjamin Rosenblum, Esq.

JEFF ANDERSON & ASSOCIATES, PA
*Counsel for Certain Claimants*
363 7th Avenue, Floor 12
New York, NY 10001
By:    Patrick Stoneking, Esq.

KETTERER BROWNE, & ASSOCIATES, LLC
*Counsel for Claimant No. 90526*
336 South Main Street, Suite 2A-C
Bel Air, MD 21014
By:    Derek T. Braslow, Esq.

LAW OFFICES OF MITCHELL GARABEDIAN
*Counsel for Certain Claimants*
100 State Street, Floor 6
Boston, MA 02109
By:    Mitchell Garabedian, Esq.

MARSH LAW FIRM PLLC
PFAU COCHRAN VERTETIS AMALA PLLC
*Counsel for Claimant No. 90154*
31 Hudson Yards, Floor 11
New York, NY 10001
By:    James R. Marsh, Esq.
        Jason P. Amala, Esq.

MERSON LAW, PLLC
*Counsel for Claimant No. 90183*
950 Third Avenue, Floor 18
New York, NY 10022
By:    Jordan K. Merson, Esq.

NOAKER LAW FIRM LLC
*Counsel for Claimant No. 20018*
1600 Utica Avenue South, Floor 9
St. Louis Park, MN 55416
By:    Patrick Noaker, Esq.

SHELLIST LAZARZ SLOBIN LLP
*Counsel for Claimant No. 90543*
11 Greenway Plaza, Suite 1515
Houston, TX 77046
By:    Dorian Vanderberg-Rodes, Esq.

SLATER SLATER SCHULMAN LLP
*Counsel for Certain Claimants*
445 Broad Hollow Road, Suite 419
Melville, NY 11747
By:    Stephanie Lannigan Bross, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the Debtor's ninth omnibus claims objection (the

"Objection," ECF Doc. # 1744).  The Debtor seeks to disallow thirteen proofs of claim[1] (each, a

"Claim," and collectively, the "Disputed Claims") because, the Debtor argues, the claims arise

from conduct that pre-dates the Diocese's formation as a religious corporation.

---

[1]        *See* "Schedule 1," Motion, Ex. A

2

The Debtor contends that the New York statute incorporating the Diocese ("Incorporating Statute[2]) established the Diocese on February 25, 1958 (the "Incorporation Date"). The Debtor asserts that it cannot be held liable for acts purportedly committed when the Debtor's territory belonged to its predecessor, the Diocese of Brooklyn. Responses (collectively, the "Responses") were filed on behalf of all claimants, many of whom argue that the Debtor existed in some form, albeit not as a religious corporation, as early as April 6, 1957.

The Debtor submitted a reply ("Reply," ECF Doc. # 1976). Following a hearing April 5, 2023 (the "Hearing"), the Debtor submitted the declaration of the Debtor's Chief Operating Officer and General Counsel, Thomas G. Renker ("Renker Decl.," ECF Doc. # 2029) stating that the Debtor did not assume any liabilities from the Diocese of Brooklyn.

For the reasons discussed herein, the Court: 1) **SUSTAINS** the Objection **WITH PREJUDICE** with respect to certain claimants and 2) **SUSTAINS** the Objection **WITH LEAVE TO AMEND** for certain claimants who allege conduct that purportedly occurred between April 6, 1957 and February 25, 1958.

## I.    BACKGROUND

### A.  Case Background

The Debtor commenced this bankruptcy case on October 1, 2020. (*See* ECF Doc. # 1.) On January 27, 2021, the Court entered the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* ("Bar Date Order," ECF Doc. # 333). Under the Bar Date Order, the Court set (a) March 30, 2021 as the deadline for each person or entity to file a proof of claim (the "General Bar Date"), and (b) August 14, 2021 at

---

[2]       1958 N.Y. SESS. LAWS Ch. 70 (1958), § 1, attached as Exhibit B to the Motion.

5:00 p.m. as the deadline for each individual holding a Sexual Abuse Claim[3] (each, a

"Claimant") to file a proof of such claim (the "Sexual Abuse Bar Date").  By subsequent order,

the Court established October 10, 2022 as a supplemental bar date for certain holders of Sexual

Abuse Claims that had their claims revived pursuant to the Adult Survivors Act (the "Adult

Survivors Sexual Abuse Bar Date").  (*See* ECF Doc. # 1262.)

### B. Claims at Issue

The Debtor was established by the Vatican on April 6, 1957 from territory encompassing

Nassau and Suffolk Counties that was formerly part of the Diocese of Brooklyn.  The State of

New York established the Diocese as a religious corporation on February 25, 1958.  (*See*

Incorporating Statute.)  When the Debtor was established, it acquired various assets including

parishes, schools, camps, and other religious organizations that formerly belonged to the Diocese

of Brooklyn.  As discussed below, the distinction between when the Debtor was established by

the Vatican (April 6, 1957) and incorporated by New York (February 25, 19) is an important

issue for certain claims implicated by the Objection.

Each proof of claim form was filed by a Claimant alleges that they were sexually abused

by an adult ("abuser") that was employed by a religious institution, such as a parish, that

formerly belonged to the Diocese of Brooklyn and was acquired by the Debtor upon its creation.

Roughly half of the Claimants append civil complaints filed in New York state courts (the "State

Court Complaints") stating the same.  The claims at issue allege sexual abuse that occurred

before the Diocese was incorporated.

Of the thirteen Disputed Claims, nine allege conduct that occurred in 1956 or earlier,

*before* the Vatican established Debtor (the "Pre-Establishment Claims").  The Pre-Establishment

---

[3]        "Sexual Abuse Claim" has the same meaning as the term is defined in the Bar Date Order.

claims generally contend that the Debtor is liable for torts committed before the Debtor was

established because the Debtor acquired the assets and liabilities of the religious institutions,

operations, and personnel that transferred from the Diocese of Brooklyn to the newly established

Diocese of Rockville Centre.

The remaining four claims allege conduct that occurred *after* the Vatican established the

Debtor in 1957 but before the Debtor was incorporated in 1958 (the "Post-Establishment

Claims").  The Post-Establishment Claims argue that the Debtor *did* exist for tort liability

purposes during the period between its establishment by the Vatican and its incorporation under

New York law.

### C.  Claim Objection Procedures

On February 21, 2023, the Court entered the *Amended Order Approving Claim Objection

Procedures and Granting Related Relief* (the "Claim Objection Procedures," ECF Doc. # 1679).

The Claim Objection Procedures allow the Debtor to assert omnibus claim objections on the

grounds set forth in Bankruptcy Rule 3007(d), which include that the claims are duplicates or

have been amended, and on the grounds that the Debtor is not liable to the claimant for the

amount or claim stated.  (*See* Claims Objection Procedures § 3(a).)

The Claims Objection Procedures state that a non-evidentiary hearing to address whether

a Contested Claim[4] has failed to state a claim against the Debtor and should be dismissed

pursuant to Bankruptcy Rule 7012(b) is a "Sufficiency Hearing."[5]  (*Id*. § 3(g)(iii).)  The "legal

---

[4]      "Contested Claim" has the same meaning as that term is defined in the Claim Objection Procedures Order.

[5]      The Debtor may object to claims in accordance with the following Claim Objection Procedures:
. . . .

g) Orders and Hearings Procedures.

i. If no Response to a claim objection is timely filed and served by the established deadline regarding

5

standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent

to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon

---

any particular claim(s), the Debtor may submit a form of order sustaining the claim objection regarding such claim(s) without any further notice or hearing.

ii. The hearing to consider a claim objection as to which a Response is properly filed and served (each, a "Contested claim") shall be set for a contested hearing (each, a "claim Hearing") to be scheduled by the Debtor, in its discretion, as set forth herein. The Debtor shall schedule a claim Hearing for a Contested claim as follows:

iii. For a non-evidentiary hearing to address whether the Contested claim has failed to state a claim against the Debtor which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012(b) (a "Sufficiency Hearing"). Unless the Debtor serves the holder of the claim (the "claimant") with a Notice of Merits Hearing (as defined herein), the Sufficiency Hearing shall go forward at the return date set in accordance with (f)(i) above (or such other date as may be scheduled by the Debtor). The legal standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted, in accordance with Bankruptcy Rule 7012(b).

iv. For an evidentiary hearing on the merits of a Contested claim (a "Merits Hearing"), the Debtor, in its discretion, may serve upon the relevant claimant (by email or overnight delivery) and file with the Court, a notice that the hearing will be a Merits Hearing (a "Notice of Merits Hearing") at least thirty (30) calendar days prior to the date of such Merits Hearing. The rules and procedures applicable to such Merits Hearing will be set forth in any scheduling order issued by the Court in connection therewith.

v. In advance of a Sufficiency Hearing and/or Merits Hearing, the Debtor and the claimant shall meet and confer with respect to the appropriate confidentiality procedures, if any, that shall govern the hearing on the matter.

vi. Discovery with respect to a Contested claim will not be permitted until either a) the Debtor has served the relevant claimant a Notice of Merits Hearing with respect to the Contested claim or b) further Court order.

vii. In advance of a Merits Hearing, the Debtor and the claimant shall meet and confer with respect to the appropriate discovery, if any, that shall govern the Merits Hearing on the matter.

viii. Given the number of claims, orders resolving claim objections could have inadvertent errors. If an order resolving a claim objection has such an error, the Court may enter an amended, corrected or replacement order about such claim without further notice or hearing, upon confirmation by the Debtor and the holder of the claim.

. . . .

(Claim Objection Procedures Order at 3-4.)

which relief can be granted, in accordance with Bankruptcy Rule 7012(b)." (*Id.*) This standard

of review is provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rule

12(b)(6) Standard"). *See* FED. R. CIV. PRO. 12(b)(6). [6]

### D. The Ninth Omnibus Objection

As indicated above, the Debtor asserts that it cannot be liable for acts that committed

before its inception as a religious corporation on February 25, 1958. All the claims challenged

by this Objection allege conduct occurring before that date. The Debtor argues that no claimant

properly alleges, either in the proofs of claim or State Court Complaint, where applicable, a basis

for holding the Diocese liable for conduct that pre-dates its existence.

The Objection states that in six of the Disputed Claims there is no allegation supporting

why the Debtor is liable for conduct that predated its existence[7]; in two of the Disputed Claims

the Debtor states that there is a conclusory, unsupported assertion that the "Liability of

Defendant Diocese of Brooklyn were transferred to, or assumed by, Defendant Diocese of

Rockville Centre"[8]; and in the remaining five Disputed Claims the claimant alleges only that the

Diocese of Brooklyn is liable.[9] (*Id.*)

Nothing in the statute indicates, expressly or impliedly, whether the Diocese of Rockville

Centre assumed any of the Diocese of Brooklyn's liabilities. (*Id.*) The Debtor argues that under

---

[6]     For a more extensive discussion of the application of the 12(b)(6) standard to the Debtor's Claim Objection
Procedures see *Memorandum Opinion Sustaining Debtor's Fifth Omnibus Objection to Claims ("Fifth Omnibus
Objection Opinion*," ECF Doc. # 2024 at 14–17. *See also Memorandum Opinion Sustaining in Part and Overruling
in Part Debtor's Eighth Omnibus Objection to Claims*, ECF Doc. # 2062 at 13–15.

[7]     Claim Nos. 90035, 90067, 90154, 90183, 90526, and 90543.

[8]     Claim Nos. 90009 and 90010.

[9]     Claim Nos. 20018, 90192, 90333, 90366 and 90402.

New York law, it cannot be held liable for the torts of its predecessor—the Diocese of Brooklyn.

(Objection ¶ 18.)

### E.  Responses to the Objection

The Claimants filed eight responses.  Responses (defined by the names of the filing firms

for ease of reference) on behalf of Pre-Establishment Claimants include:

- The Slater Slater Schulman LLP response ("Slater Response," ECF Doc. # 1885) for Claim Nos. 90035 and 90067 (each, a "Slater Claim").

- The Noaker Law Firm LLC response ("Noaker Response," ECF Doc. # 1887) for Claim No. 20018 (the "Noaker Claim")

- The Marsh Law Firm PLLC and Pfau Cochran Vertetis Amala PLLC response ("Marsh Response," ECF Doc. # 1905) for Claim No. 90154 (the "Marsh Claim").

- The Law Offices of Mitchell Garabedian response ("Garabedian Response," ECF Doc. # 1908) for Claim Nos. 90009 and 90010 (each, a "Garabedian Claim").

- The Ketterer Browne, & Associates, LLC response ("Ketterer Response," ECF Doc. # 1909) for Claim No. 90526 (the "Ketterer Claim").

Responses on behalf of Post-Establishment Claimants include:

- The Merson Law, PLLC response ("Merson Response," ECF Doc. # 1893) for Claim No. 90183 (the "Merson Claim").

- The Shellist Lazarz Slobin LLP response ("Shellist Response," ECF Doc. # 1907) for Claim No. 90543 (the "Shellist Claim").

One Response was filed on behalf of Pre- and Post-establishment claims:

- The Jeff Anderson & Associates response (the "Anderson Response," ECF Doc. # 1899) for Claim Nos. 90333 and 90402, which occurred pre-establishment (the "Anderson Pre-Establishment Claims")

- The Jeff Anderson & Associates response (the "Anderson Response," ECF Doc. #
  1899) for Claim Nos. 90366 and 90192, which occurred post-establishment (the
  "Anderson Post-Establishment Claim").

The Responses make similar arguments, which are summarized below.  The Pre-Establishment Claimants generally acknowledge that the default rule under New York law is that a successor corporation is not liable for the torts of its predecessors (*see, e.g.,* Ketterer Response ¶ 35.)  They nonetheless argue that the Debtor has successor liability under two exceptions to this rule.

First, Claimants contend that the Debtor may have expressly or impliedly assumed the liabilities of the Diocese of Brooklyn when it acquired the parishes formerly under its control (the "Express/Implied Assumption Argument").  (*See, e.g.,* Ketterer Response ¶¶ 38–44.) Claimants argue that the Debtor impliedly assumed tort liabilities because it was unilaterally granted all properties, employees, clergy, operations, assets, and good will of the parishes, without any carveout of liability.  (*Id.* ¶ 25–26 ("[T]he Debtor, in completely assuming all operations of the Roman Catholic Church within the defined geographic area and without making any payment or agreement to the Diocese of Brooklyn, impliedly assumed tort liabilities.").)  The Express/Implied Assumption Argument is made by the Garabedian, Ketterer, Marsh, Merson, and Noaker Responses.

Second, Claimants argue that the *de facto* merger exception (discussed below) applies (the "*De Facto* Merger Argument").  In support of this argument, Claimants assert that the management and employees within the parishes likely continued uninterrupted when the Diocese took over the parishes from the Diocese of Brooklyn.  (*See, e.g.,* Shellist Response ¶ 25.)  The

*De Facto* Merger Argument is made by the Noaker, Shellist, Merson, Ketterer, and Garabedian Responses.

Finally, the Post-Establishment Claimants dispute the Debtor's statement that it was formed in 1958. These Claimants allege abuse occurring in 1957 and note that the Debtor itself has represented that it was established in 1957. (*See* Anderson Response ¶ 1 (asserting that the "Debtor has represented to the world for over sixty years that it was established on April 6, 1957").) Even if the Debtor does not have successor liability for torts that occurred at the parishes before 1957, the Claimants argue that the Debtor has successor liability for whatever form the Diocese took between its creation by the Vatican in 1957 and the Incorporating Statute. (*Id.*)

### F.  Debtor's Reply

The Reply makes three primary arguments. First, the Debtor argues that it is both the Claimants' burden to allege successor liability and that Claimants failed to do so under federal pleading standards. (*Id.* ¶ 6.) Second, the Debtor contends that Claimants' argument that the *de facto* merger exception applies is not supported by the relevant case law. Finally, the Debtor frames the Claimants' dispute over when the Diocese was actually formed for liability purposes (1957 versus 1958) as an issue of Catholic Canon Law. (*Id.* ¶ 5.) Relying on this Court's comments in prior hearings and opinions, the Debtor asserts that the Court must accept the secular Incorporating Statute as the Debtor's creation date. (*Id.* ¶¶ 10–17; *see also id.* at 7 n. 7 (quoting transcript from the March 14, 2021 hearing).)

### G.  The Renker Declaration

Following the Hearing and at the Court's request, the Debtor submitted the Renker Declaration. The declaration states that the Diocese did not assume any liabilities from the

Diocese of Brooklyn with respect to the parishes and all entities within the territory that formerly

belonged to the Diocese of Brooklyn.  (Renker Decl. ¶ 3.)  Renker is unaware of any agreement

between the two parties and asked the Debtor's Archivist and Chancellor to determine if any

such agreement existed.  (*Id.*)  Renker confirms that after searching the Debtor's records, there is

no agreement by which the Debtor assumed the liabilities of the Diocese of Brooklyn for the

entities it acquired.  (*Id.*)

## II.    LEGAL STANDARD

### A.  Allowance and Disallowance of a Claim

Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed,

unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Under section 502(b)(1), claims may

be disallowed if they are "unenforceable against the debtor and property of the debtor, under any

agreement or applicable law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is

allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace

& Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

"The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy

Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal

Rule of Bankruptcy 3001(f) and Code section 502(a)."  4 COLLIER ON BANKRUPTCY ¶

502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019).  If the objector does not

"introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the

claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶

502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019).

"To overcome this *prima facie* evidence, an objecting party must come forth with

evidence which, if believed, would refute at least one of the allegations essential to the claim."

Sherman v. Novak (*In re Reilly*), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing

"evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive

legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of

the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors*

*Liquidation Co. GUC Trust* (*In re Motors Liquidation Co.*), No. 12-CV-6074 (RJS), 2013 WL

5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  The claimant must

assert a plausible basis for imposing a right to payment as an allowed claim.  *See In re*

*Residential Cap., LLC*, 531 B.R. 1, 12 (Bankr. S.D.N.Y.) ("Federal pleading standards apply

when assessing the validity of a proof of claim."), *on reconsideration in part*, 537 B.R. 161

(Bankr. S.D.N.Y. 2015); *In re MF Glob. Inc.*, No. 11-2790 (MG) SIPA, 2015 WL 1239102, at

*3 (Bankr. S.D.N.Y. Mar. 16, 2015) (same).

### B.  Evaluating Omnibus Objections Under the Rule 12(b)(6) Standard

As noted above, this Court's Fifth Omnibus Objection Opinion extensively discussed

how this Court applies the 12(b)(6) Standard to the Diocese's Claim Objection Procedures and

the Court presumes familiarity with the Court's approach.  Pursuant to those procedures, the

Hearing was a non-evidentiary Sufficiency Hearing to determine whether the Disputed Claims

failed to state a claim against the Debtor which can be allowed.  (*See* Claim Objections

Procedures § 3(g)(iii).)

Under Rule 12(b)(6), a party need only plead "a short and plain statement of the claim

with sufficient factual "heft to sho[w] that the pleader is entitled to relief."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007) (internal quotation omitted).  The pleading's "[f]actual

allegations must be enough to raise a right of relief above the speculative level," *id.* at 555, and

present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The court

assumes that all factual allegations in the complaint are true and draws all reasonable inferences

in the plaintiff's favor.  *EEOC v. Staten Island Sav. Bank,* 207 F.3d 144, 148 (2d Cir. 2000).

### C.  Successor Liability

The general rule in New York is that a successor is not responsible for the liabilities of its

predecessor.  *See Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (1983); *see also New

York v. Nat. Serv. Indus., Inc.*, 460 F.3d 201, 206 (2d Cir. 2006); *New York v. Town of

Clarkstown*, 95 F.Supp.3d 660, 682 (S.D.N.Y. 2015); *Douglas v. Stamco*, 363 F.App'x 100,

101–02 (2d Cir. 2010).

This general rule is subject to four exceptions where (i) a successor expressly or

impliedly assumed the predecessor's liabilities; (ii) there was a consolidation or "*de facto*"

merger of predecessor and successor; (iii) the successor corporation was a mere continuation of

its predecessor; or (iv) the transaction between successor and predecessor was entered into

fraudulently to escape obligations.  *See Town of Clarkstown*, 95 F. Supp. 3d at 682; *Douglas*,

363 F. App'x at 102.

A claimant must also plead a non-speculative basis for imposing successor liability

within the framework of these exceptions.  *See Town of Clarkstown*, 95 F. Supp. 3d at 683

(holding that plaintiffs "must, at the very least, set forth the basis for their conclusory claim that

successor liability is appropriate as to [defendant] before the Court may consider allowing

[plaintiffs] to engage in limited discovery on the issue").  "Because the 'general rule' is that a

purchaser of assets does not assume the predecessor's liability, it follows that the proponent of

successor liability must offer proof that one of the aforementioned exceptions to the general rule

13

applies." *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 52

(2d Cir. 2011).

### III.   <u>DISCUSSION</u>

The Court sustains the objection with prejudice with respect to most of the claimants.

However, because the Diocese was formed by the Vatican before it was established as a religious

corporation, the Court will allow certain claimants, discussed below, to amend their proofs of

claim.  The Court's analysis will proceed in the following manner.  First, the Court finds that the

First Amendment, and its intersection with canon law, is not a bar to the Court's ruling on this

Objection.  Second, the Court finds that the Objection must be sustained for Pre-Establishment

Claims because the Diocese i) did not assume the prior liabilities and ii) the *de facto* merger

exception does not apply.  Finally, the Court finds that fairness requires allowing the Post-

Establishment Claimants an opportunity to amend their claims.

#### A.  Pre-Establishment Claims

The Pre-Establishment Claims allege conduct that occurred before the Debtor existed in

any form.  As a category, these claims allege conduct that occurred at institutions or by staff that,

at the time the conduct purportedly occurred, belonged to the Diocese of Brooklyn.  When the

Debtor was created from the territory of the Diocese of Brooklyn, it acquired the institutions in

question.  Accordingly, the Debtor cannot have liability for these acts without imputing

successor liability.

The general rule in New York is that a successor is not responsible for the liabilities of its

predecessor.  *See Schumacher*, 451 N.E.2d at 198.  The general rule prohibiting successor

liability is a common law principle with four exceptions.[10]  The Debtor, as a successor

corporation to the Diocese of Brooklyn,[11] may be held liable for the torts of its predecessor if:

> (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

*Schumacher*, 451 N.E.2d at 198.

It is well-settled under New York law that the burden to prove successor liability falls on

the party claiming that an exception to the general rule applies—here, the Claimants.  *Desclafani*

*v. Pave-Mark Corp.,* No. 07-CV-4639 (HBP), 2008 WL 3914881, at *3 (S.D.N.Y. Aug. 22,

2008) ("The party asserting successor liability has the burden of proving facts which bring the

case within one of these exceptions.") (quoting *Marenyi v. Packard Press Corp.,* 90-CV-4439

(CSH), 1994 WL 16000129 at *6 (S.D.N.Y. June 9, 1994)).

The Pre-Establishment Claimants principally argue that two of these exceptions—the

express/implicit assumption and/or *de facto* merger theories—apply.  Not a single proof of claim

---

[10]     *New York v. Nat'l Serv. Indus., Inc.*, 380 F. Supp. 2d 122, 128 (E.D.N.Y. 2005), *aff'd*, 460 F.3d 201 (2d Cir. 2006) ("[U]nder traditional common law principles, a corporation acquiring the assets of another does not succeed to the liabilities of the successor corporation . . . .").

[11]     Addressing the Ketterer Response's argument that the Debtor is not truly a "successor" to the Diocese of Brooklyn (*see* Ketterer Response ¶ 26 (arguing that "the Diocese of Rockville Centre was not . . . a successor corporation.  Debtor and the Diocese of Brooklyn are related parties, each created by the same entity."), New York courts frequently conflate whether an entity is a successor corporation with whether successor liability exists. Courts have held that the four *Schumacher* exceptions to the general rule are also the bases for finding that a corporation is a successor corporation to begin with.  *See Beck v. Roper Whitney, Inc.,* 190 F. Supp. 2d 524, 531 (W.D.N.Y. 2001) (holding that "fulfillment of any one of the four exceptions is adequate to classify the purchasing corporation as a successor corporation").
        Here, the Debtor did not acquire all of the assets of the Diocese of Brooklyn—only certain properties and operation of entities (e.g., parishes, schools, and other institutions or programs) on those properties within a defined territory carved out from the Diocese of Brooklyn.  The Court need not decide whether the Debtor is a successor corporation because the Court reaches the same conclusion regardless.  If the Debtor is not a successor corporation, the Claimants have provided no basis for imputing liability on the Debtor.  Alternatively, if the Debtor is a successor corporation, the Court determines that the Debtor does not have successor liability.

or State Court Complaint sets forth a theory of successor liability.[12]  Thus, in considering

allegations, the Court must rely entirely on those contained in the Responses.

The Noaker Response presents a common argument made by Claimants in support of

express or implied liability.  The Noaker Response contends that the Noaker Claimant

successfully pled facts supporting express or implied assumption of liability by stating "on or

about 1957, the Diocese of Rockville Centre was formed from the geographical jurisdiction

and/or parishes and/or assets and/or liabilities of the Diocese of Brooklyn."  (Noaker Response ¶

26 (citing complaint appended to proof of claim).)  The Garabedian Response asserts a similar

basis for express or implied liability—that the claimants, in State Court Complaints, plead that

"[l]iabilities of the Diocese of Brooklyn were transferred to, or assumed by, Defendant Diocese

of Rockville Centre following the formation of the Diocese of Rockville Centre."  (Garabedian

Response ¶ 34.)  The Marsh Response misstates the law entirely, claiming that the burden of

proof is on the Debtor to prove the absence of its successor liability.  (Marsh Response ¶ 34

("[T]he Debtor misapplies New York law and puts the burden on the Survivor to prove that it

expressly or impliedly assumed the Diocese of Brooklyn's tort liability.").)  The Ketterer

Response offers no additional facts to support express or implied assumption of liability, and

instead relies entirely on the proposition that the proof of claim form assumes that the Claimant

alleges successor liability, and that the Debtor failed to refute it.  (Ketterer Response ¶ 38.)

With respect to the *De Facto* Merger Argument, the Noaker Response again provides a

representative model of Claimants' allegations.  The Noaker Response states that the Noaker

---

[12]        Some Claimants argue that the Debtor did not ask for theories of successor liability on its Claim Form and
therefore it is not fair to objection to claims on the basis that no successor liability applies.  (*See* Noaker Response ¶
19.)  True, the Claim Form did not require Claimants to plead facts in support of a successor liability theory.
However, the Claimants needed to do so in a response to the Objection.  The Court will not permit discovery into the
Debtor's documents on the theory, without a factual predicate, that documents might exist that explicitly transfer
liabilities from the Diocese of Brooklyn to the Debtor.

Claimant alleges facts that support successor liability under the *de facto* merger doctrine because,

in the State Court Complaint appended to the proof of claim form, the Claimant alleges "on or

about 1957, the Diocese of Rockville Centre was formed from the geographical jurisdiction

and/or parishes and/or assets and/or liabilities of the Diocese of Brooklyn."  (Noaker Response ¶

40.)

The Shellist Response provides the strongest argument in support of a *de facto* merger.

The Shellist Response alleges that ownership and management continued from the Diocese of

Brooklyn to the Diocese of Rockville Centre because both were member branches of the Roman

Catholic Church, thus the diocesan entity operation in Nassau and Suffolk counties continued to

operate under the same overarch corporate umbrella under different names.  (Shellist Response ¶

25.)  The Shellist Response also argues that the Debtor assumed the liabilities of the Diocese of

Brooklyn because it assumed "all operations of the Roman Catholic Church within the defined

geographic area and without making any payment or agreement to the Diocese of Brooklyn."

(*Id.* ¶ 26.)

### 1.   Express or Implied Assumption of Liability

The Express/Implied Assumption Argument contends that the Debtor likely expressly or

impliedly assumed the tort liability of the Diocese of Brooklyn via agreements containing

transfers of assets and liabilities from the Diocese of Brooklyn to the Debtor.  The Court

disagrees.  These Claimants assert that the details of rights and obligations transferred from the

Diocese of Brooklyn to the Diocese of Rockville Centre are not and would not be in the Debtor's

Incorporating Statute.  (Slater Response ¶ 23.)  The flaw with this argument is that the

allegations amount to barebones statements of a legal conclusion, which is insufficient to state a

claim for relief under the 12(b)(6) standard.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

17

elements of a cause of action, supported by mere conclusory statements, do not suffice.")  The threadbare assertions in State Court Complaints provided by the Noaker and Garabedian Responses merely amount to legal conclusions regarding successor liability.  They do not allege facts.

The remainder of these Claimants' argument is that the Debtor's Incorporating Statute is insufficient to show that the Debtor did not assume the liabilities of its predecessor when it acquired the parishes.  (*See, e.g.,* Slater Response ¶ 22 ("[The Incorporating Statute] certainly does not conclusively resolve the allegations of the claims . . . since it does not detail the manner in which assets or liabilities were transferred between the [Diocese of Brooklyn] and the Debtor.").)  At the time the Claimants filed the Responses the Debtor's only proffered evidence was the Incorporating Statute, which at most establishes when the Debtor was created as a religious corporation under New York law.  The Incorporating Statute is silent about how, when, and the conditions pursuant to which assets formerly belonging to the Diocese of Brooklyn were transferred to the Diocese of Rockville Centre.

But this prong of the Express/Implied Assumption Argument is misguided.  Under both the law of succession liability and Rule 12(b)(6), it is the Claimants burden to plead liability and not the Debtor's burden to refute all possibility of liability.  *See Sherman*, 245 B.R. at 773; *see also Xue Ming Wang v. Abumi Sushi Inc.,* 262 F. Supp. 3d 81, 92 (S.D.N.Y. 2017) (explaining that "the party advocating for successor liability bears the burden of proof") (citation omitted).

Claimants have not met their burden.  The proofs of claim and State Court Complaints make no allegations whatsoever as to successor liability, let alone any of the exceptions providing for it.  In their Responses, the Claimants simply pointed to the insufficiency of the Debtor's Incorporating Statute but assert no facts to support an argument that that the Debtor

expressly or impliedly assumed liabilities of the Diocese of Brooklyn.  (*See, e.g.,* Slater
Response ¶ 44 ("The [Incorporating Statute] relied upon by the Debtor, does not 'refute'
anything regarding whether the Debtor expressly or impliedly assumed the liabilities of the
Diocese of Brooklyn for its operations in Nassau and Suffolk counties.").)

As the Hearing was not evidentiary, the Court did not expect Claimants to submit
evidence *proving* successor liability.  But to prevail at a Sufficiency Hearing, the Claimants
needed to plead facts which, if true, provide a basis for explicit or implicit successor liability.
*Twombly*, 550 U.S. at 558 (holding that a complaint is properly dismissed where "the allegations
in [the] complaint, however true, could not raise a claim of entitlement to relief.")

The Claimants instead focused on the inadequacy of the Debtor's Incorporating Statute
and hypothesize that agreements must exist that more clearly delineate the Debtor's assumption
of assets and/or liabilities from the Diocese of Brooklyn, but that argument alone does not
support express or implied assumption of liability.  *See Town of Clarkstown*, 95 F. Supp. 3d at
683; *see also Andres v. Town of Wheatfield*, No. 1:17-CV-0377, 2020 WL 7764833, at *11
(W.D.N.Y. 2020) ("Plaintiffs' argument that '(a)ny dispute about successor liability would
require a fact-intensive inquiry,' is unavailing because even where successor liability is difficult
to determine, Plaintiffs must still properly allege a nonspeculative basis for liability." (internal
citation omitted)).

To give the Court additional comfort that the liabilities were not explicitly assumed, the
Court asked the Debtor to search its records and to file a declaration attesting that it did not enter
into any agreement to assume the liabilities of the Diocese of Brooklyn.  Following the Hearing,
the Debtor submitted the Renker Declaration which attests that there is no agreement by which
the Debtor assumed the liabilities of the Diocese of Brooklyn for the entities it acquired.

19

(Renker Decl. ¶ 3.)  The Court accepts Renker's statements and concludes that there was no

explicit transfer of liabilities from the Diocese of Brooklyn to the Debtor when the Debtor

acquired assets formerly belonging to the Diocese of Brooklyn.  Even if this were a Merits

Hearing that required the Debtor to refute an essential element of the Claim with evidence, the

Debtor has done so with the Renker Declaration.

### 2. *De Facto* Merger

Certain Claimants contend that the *de facto* merger exception to the general rule

prohibiting successor liability applies.  The Court disagrees.  New York courts consider the

following factors in determining whether a *de facto* merger has occurred:

> (1) continuity of ownership; (2) a cessation of ordinary business and
> dissolution of the predecessor as soon as practically and legally possible;
> (3) assumption by the successor of the liabilities ordinarily necessary for the
> uninterrupted continuation of the business of the predecessor; and (4) a
> continuity of management, personnel, physical location, assets, and general
> business operation.

*Sweatland v. Park Corp.,* 181 A.D.2d 243, 245–46.  "Not all of these factors are needed to

demonstrate a merger; rather, these factors are only indicators that tend to show a de facto

merger."  *Id.* at 246 (internal citation and quotation omitted).

New York courts apply a more flexible approach to the continuity of ownership factor for

non-profit corporations such as the Diocese.  *See Dutton v. Young Men's Christian Ass'n of*

*Buffalo Niagara*, 207 A.D.3d 1038, 1040, 1043, *leave to appeal denied,* 210 A.D.3d 1456,

(2022) (stating that "with respect to the continuity of ownership factor, '[s]ince, unlike for-profit

corporations, nonprofits do not have owners, . . . continuity of ownership is not a sine qua non of

de facto merger of nonprofits.'") (internal citation omitted).  *See Ring v. Elizabeth Foundation*

*for Arts*, 136 A.D.3d 525, 527 (1st Dept 2016).

20

Again, the Noaker Claimant pleads no allegations in support of the *De Facto* Merger Argument.  After reciting conclusory assertions that the Debtor was formed from the assets and liabilities of the Diocese of Brooklyn and that the relevant parish and abuser transferred from one diocese to the other, the Noaker Response simply concludes: "[t]hese facts can provide the foundation for successor liability of the Debtor under the doctrine de facto merger.  For this reason, Debtor's Objection must be denied."  (*Id.* ¶ 41.)  The Court disagrees.  The Noaker Response has done nothing more than assert that a parish and abuser transferred from the Diocese of Brooklyn to the Diocese of Rockville Centre.

Though not clear which of the *Sweatland* factors the Noaker Claimant implicates, the Court assumes that it is the "continuity of management, personnel, physical location, assets, and general business operation" prong.  But the Noaker Response merely asserts that a single parish and abuser were transferred, not the broad transfer of substantially all management, personnel, physical location, assets, and general business operations.

The Shellist Response introduces a somewhat novel theory, which is that the first and fourth *Sweatland* factors—continuity of ownership and of management, personnel, physical location, assets, and general business operation—are satisfied because the ownership, operations, and management of the parishes and other religious institutions in that territory continued unchanged as branches of the Roman Catholic Church.  (Shellist Response ¶ 25.)  Put differently, the Shellist Response argues that it is the Roman Catholic Church, not either diocese, that is the constant corporate entity underlying the transfer of assets and liabilities from one diocese to another.  (*Id.*)  This argument fails because the Shellist Response provides no basis for the proposition that the Roman Catholic Church, as a global entity, is recognized as a corporation in New York.

21

Applying the 12(b)(6) standard, the Shellist Response does not plead sufficient facts

which, if true, weigh in favor of finding a *de facto* merger here.  The response raises a novel

argument framing the Roman Catholic Church as the corporation that continued from one

predecessor corporation to the next, under different names, but fails to plead facts which support

a finding that the Roman Catholic Church is the overarching *corporate* entity and that the

dioceses of Brooklyn and Rockville Centre are merely branches thereof.

Additionally, the Shellist Response draws a legal conclusion—that the Debtor impliedly

acquired liabilities from the Diocese of Brooklyn—because it acquired, purportedly without

payment, the assets and operations of religious institutions from the Diocese of Brooklyn.  But

the response pleads no facts which demonstrate *why* the response draws this conclusion.

In sum, the proofs of claim and State Court Complaints fail to make any allegations

regarding successor liability.  The additional allegations made in responses indicate that the

Claimants would not be able to cure these deficiencies if given an opportunity to amend their

claims.  For the reasons set forth above, the Objection is **SUSTAINED WITH PREJUDICE**

with respect to the Pre-Establishment Claims.

### B.  Post-Establishment Claims

#### 1.  The Role of Canon Law in Establishing the Debtor for Tort Liability Purposes

The parties dispute when the Diocese was created for the purpose of the Debtor's tort

liability.  The Debtor states that the Incorporating Statute, dated February 25, 1958, marks the

beginning of its existence.  The Post-Establishment Claimants assert that the Debtor was

established as early as April 6, 1957.  (*See, e.g.,* Anderson Response.)  The Claimants state that

the Debtor was created by the Vatican or "carved out of, or in the language of the Vatican,

'separated' from" the Diocese of Brooklyn.  (Ketterer Response ¶ 26.)  The Debtor frames the

Claimants' position as an argument rooted in Catholic Canon Law and argues that these attempts

at deciphering what "separated" means under canon law and the Vatican's perspective are
prohibited by the First Amendment.  (Reply ¶ 11.)

The Court disagrees with the Debtor that when the Diocese was established for the
secular purpose of tort liability is necessarily an issue of Catholic Canon Law.  The Debtor's
own filings in this case represent that the Debtor was established in 1957.  (*See, e.g.,* ECF Doc. #
25 at 7, ("From at least 1957, when the Diocese was formed . . ."); ECF Doc. # 3 at 5 ("The
Diocese was established by the Vatican in 1957 from territory that was formerly part of the
Diocese of Brooklyn.").)[13]  This Court's prior comments regarding the constitutional prohibition
on deciding issues of Catholic Canon Law relied on clear precedent[14] preventing courts from
deciding *disputes between parties* on interpretations of canon law.  *See, e.g.*, March 14, 2023
Hr'g Tr. at 100:5–10 (stating that "one thing I want to be crystal clear about is the Establishment
Clause of the First Amendment . . . does not permit me to interpret canon law or decide this on
the basis of canon law . . . [T]his is going to be resolved on the basis on New York state law").

For example, the Court has noted that it cannot resolve a dispute between the Diocese and
Claimants over what canon law says about the Diocese's control of other religious orders.[15]  But
here this dispute does not require the Court to decide the Diocese's incorporation date by
choosing between two different interpretations of canon law.  This dispute stems not from canon
law but from the Debtor's own inconsistent statements in this case.  Thus, the Court finds it is

---

[13]      The Diocese's website states that "The Diocese of Rockville Centre was formed from the Diocese of
Brooklyn in 1957."  History, THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE (https://drvc.org/history) (last
accessed Apr. 3, 2023).

[14]      *See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,* 196 F.3d 409, 431 (2d Cir.1999).

[15]      *See* March 14, 2023 H'rg Tr. at 100:1-8 (noting that if there was an issue over what control the Bishop had
over a Franciscan priest, the Court could not resolve that dispute by looking to canon law).

not prohibited from addressing questions regarding the Diocese's creation merely because the

Diocese is a creature of canon law.

Even if determining the Debtor's establishment for tort liability did require an

interpretation of canon law, the Court finds it is not necessary at this juncture for the Court to

determine when the Vatican formally established the Debtor nor when the Diocese of Rockville

Centre came into existence because the Post-Establishment Claims do not adequately plead a

basis for Debtor's liability based on conduct that occurred when the Diocese of Rockville Centre

was a pre-incorporation entity.

### 2. The Post-Establishment Claims

Assuming, *arguendo*, that the Diocese was established as a pre-incorporation religious

organization by the Vatican on the earliest date suggested by Claimants—April 6, 1957—the

Pre-Establishment Claims allege conduct that falls during the time period where the Debtor

existed in some form, albeit not as a religious corporation under New York law.  The Merson

Claim alleges conduct that began in September 1956 and ended in July 1957, and an Amerson

Post-Establishment Claim alleges conduct spanning from 1954 to 1957 (*see* Claim No. 90366).

Another Amerson Post-Establishment Claim alleges conduct that occurred in either 1956 or

1957.  The Shellist Claim alleges conduct that occurred during the summer of 1957—entirely

after April 6, 1957.

*Hwang v. Grace Rd. Church (in New York)* provides a helpful framework to address these

Claimants' argument.  *See generally* No. 14-CV-7187 (KAM) (RML), 2016 WL 1060247, at

*10–12 (E.D.N.Y. Mar. 14, 2016).  New York Courts generally interpret the state's religious

corporation law to automatically transfer assets of the pre-incorporation religious entity to the

resulting religious corporation.  *See Hwang* at 10 (listing cases).  But the court noted that "[t]he

24

determination that a religious corporation assumes the assets of the pre-incorporation religious

entity, however, does not resolve the more decisive question of whether the religious corporation

also assumes the liabilities of the earlier entity." *Id.*

Non-profit corporation law applies where New York's religious corporation law is silent,

as it is to this question. *See id.* (citing N.Y. Relig. Corp. Law § 2-b(1)(a) (providing that "not-

for-profit corporation law applies to every corporation to which this chapter applies" except

where the two bodies of law conflict)). None of the Claimants argue that applicable not-for-

profit corporation law creates liability for the Debtor in these circumstances, nor does it appear

that such an argument would succeed.[16] Under the Rule 12(b)(6) standard, Claimants have plead

no facts whatsoever to support the transfer of liability from the Diocese as a pre-incorporation

entity to its current religious corporate form.

Nonetheless, in consideration of fairness and particularly because the Debtor itself has

provided conflicting representations of when it was established in its own filings in this case, the

Court finds that the Post-Establishment Claimants should be granted leave to amend their claims.

These Claimants may amend their claims to incorporate arguments consistent with the guidance

provided in this section of the opinion—i.e., that relevant non-profit law creates liability for the

Diocese of Rockville Centre's pre-incorporation entity which carries over to the Debtor as a

religious corporation.

---

[16]    For example, Claimants could argue that promoter liability, which imputes liability to a corporation for pre-incorporation acts committed by its promoters, applies. However, a corporation is generally "not liable for the torts of its promoters" (*Gianino v. Panacya, Inc.*, No. 00-CV-1584, 2000 WL 1224810, at *7 (S.D.N.Y. Aug. 29, 2000), unless the corporation knowingly accepts benefits of (or otherwise ratifies) a promoter's contractual agreement or tortious conduct." *Hwang*, 2016 WL 1060247, at *9 (internal citations omitted). Here, even if the Court determined that the alleged abusers acted as the Debtor's promoters, it cannot be said that the Debtor knowingly accepted the benefits of or ratified the tortious conduct of those individuals.

## IV.   CONCLUSION

For the reasons explained above, the Objection is **SUSTAINED WITH PREJUDICE**
with respect to the Pre-Establishment Claims.  It is **ORDERED** that these claims be expunged.
The Objection is **SUSTAINED WITH LEAVE TO AMEND** with respect to the Post-
Establishment Claims.  These claimants may amend their claims to plead facts which would
allege liability consistent with the applicable law discussed in this Memorandum Opinion.
Within seven (7) days from the date of this Order, counsel for the Debtor, the Committee, and
the Claimants shall confer and submit any order required to grant the relief requested in the
Objection consistent with the terms of this Opinion.  The Court will enter a separate order
scheduling a case conference.

Dated:   May 26, 2023
          New York, New York

                                        _____*Martin Glenn*_____
                                             MARTIN GLENN
                                  Chief United States Bankruptcy Judge

JS 44C/SDNY
REV.
10/01/2020

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS
Claimant No. 20018

DEFENDANTS
THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
PATRICK NOAKER, NOAKER LAW FIRM LLC
1600 UTICA AVE. S. 9TH FL., ST. LOUIS PARK, MN 55416
(952) 491-6798

ATTORNEYS (IF KNOWN)
JONES DAY; 250 Vesey Street, Fl. 32, New York, NY 10281
Phone: (212) 326-3939

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
(DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Unsecured creditor's claim for childhood sexual abuse in Chapter 11 Bankruptcy - 11 USC 502

Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No ☐ Yes ☑
Judge Previously Assigned
Hon. Martin Glenn

If yes, was this case Vol. ☐ Invol. ☒ Dismissed. No ☐ Yes ☒ If yes, give date 06/09/2023  & Case No. 20-12345 (MG)

Is THIS AN INTERNATIONAL ARBITRATION CASE?    No ☒    Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*    NATURE OF SUIT

TORTS    ACTIONS UNDER STATUTES

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY
[ ] 362 PERSONAL INJURY - MED MALPRACTICE

**PERSONAL INJURY/**
[ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
[ ] 463 ALIEN DETAINEE
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER

**ACTIONS UNDER STATUTES**
**CIVIL RIGHTS**
[ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner)
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING/ ACCOMMODATIONS
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 448 EDUCATION

**FORFEITURE/PENALTY**
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 690 OTHER

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION
[ ] 840 TRADEMARK

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 740 RAILWAY LABOR ACT
[ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA)
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT (ERISA)

**IMMIGRATION**
[ ] 462 NATURALIZATION APPLICATION
[ ] 465 OTHER IMMIGRATION ACTIONS

**PRISONER CIVIL RIGHTS**
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION
[ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT

**BANKRUPTCY**
[x] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES (U.S. Plaintiff or Defendant)
[ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
[ ] 375 FALSE CLAIMS
[ ] 376 QUI TAM
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 485 TELEPHONE CONSUMER PROTECTION ACT
[ ] 490 CABLE/SATELLITE TV
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 890 OTHER STATUTORY ACTIONS
[ ] 891 AGRICULTURAL ACTS
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 896 ARBITRATION
[ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES

[ ] 880 DEFEND TRADE SECRETS ACT

*Check if demanded in complaint:*

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

DEMAND $_____ OTHER _____    JUDGE _____    DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: ☐ YES ☐ NO    NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN  x  IN ONE BOX ONLY)*     **ORIGIN**

[ ] 1 Original Proceeding    [ ] 2 Removed from State Court    [ ] 3 Remanded from Appellate Court    [ ] 4 Reinstated or Reopened    [ ] 5 Transferred from (Specify District)    [ ] 6 Multidistrict Litigation (Transferred)    [x] 7 Appeal to District Judge from Magistrate Judge

[ ] a. all parties represented

[ ] b. At least one party is pro se.

[ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN  x  IN ONE BOX ONLY)*     **BASIS OF JURISDICTION**     *IF DIVERSITY, INDICATE CITIZENSHIP BELOW.*

[ ] 1 U.S. PLAINTIFF    [x] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)    [ ] 4 DIVERSITY

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

PATRICK NOAKER, NOAKER LAW FIRM LLC
1600 UTICA AVE. S. 9TH FL., ST. LOUIS PARK, MN 55416
(952) 491-6798

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

JONES DAY; 250 Vesey Street, Fl. 32, New York, NY 10281
Phone: (212) 326-3939

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN
THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

**COURTHOUSE ASSIGNMENT**

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS    [x] MANHATTAN

DATE 06-19-2023

SIGNATURE OF ATTORNEY OF RECORD

ADMITTED TO PRACTICE IN THIS DISTRICT
[x] NO
[ ] YES (DATE ADMITTED Mo. _____ Yr. _____)
Attorney Bar Code #

RECEIPT #

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Clear Form        Save        Print