PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Alan J. Kornfeld, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Tel: 212-561-7700; Fax: 212-561-7777
jstang@pszjlaw.com
akornfeld@pszjlaw.com
kdine@pszjlaw.com
bmichael@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK, | Case No. 20-12345 (MG) |
| Debtor. | |

**DECLARATION OF PATRICK STONEKING IN SUPPORT OF
MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DISMISS CHAPTER 11 CASE [D.I. 1912]**

I, Patrick Stoneking, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, declare:

1. I am over twenty-one years of age and am competent to make this declaration (this "Declaration") in support of the *Motion of the Official Committee of Unsecured Creditors to Dismiss Chapter 11 Case* [D.I. 1912] ("Motion to Dismiss"), filed by the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor" or "Diocese").

2. Except as otherwise stated in this Declaration, all facts set forth herein are based on my personal experience, knowledge or understanding.

## I. INTRODUCTION AND BACKGROUND

3. I am an attorney with the law firm Jeff Anderson & Associates PA ("JAA"). JAA has offices in Minnesota, New York and California. JAA is one of the nation's premier law firms representing victims of childhood sexual abuse with over four decades of experience representing thousands of survivors of childhood sexual abuse. Over that time, JAA has litigated cases nationwide against Catholic dioceses and other religious organizations.

4. I have been an attorney with JAA since 2019. I am a certified specialist in civil trial law and have fully litigated hundreds of tort and injury cases in several states, including over two dozen jury trials. I am familiar with all aspects of litigating injury claims, including procedure, discovery, motion practice, trials, and appeals. As part of litigating matters for injured people, I have actively litigated insurance coverage issues on behalf of my clients and represented hundreds of tort claimants in both this proceeding and the Boy Scouts of America bankruptcy. I have practiced in the State of New York since 2011 and I am familiar with the New York Supreme Court's processes, procedures, and timelines associated with childhood sexual abuse cases.

5. Following the passage of New York's Child Victims Act in 2019 which opened the statutory window for asserting sexual abuse claims (the "CVA"), JAA filed complaints on behalf of survivors of childhood sexual abuse against the Diocese and other non-debtor entities. The cases were actively litigated until the Diocese filed for bankruptcy protection.

## II. THE COMMENCEMENT OF THE DIOCESE'S BANKRUPTCY CASE AND IMPACT ON THE STATE COURT CASES

6. On October 1, 2020 (the "Petition Date"), the Diocese filed a bankruptcy case under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Case"). On October 16, 2020, the Office of the United States Trustee formed the Committee, and John Daly, a Survivor and JAA client, was appointed to serve as a member of the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [D.I. 71]. Mr. Daly has served on the Committee since its formation. JAA has continued to represent Mr. Daly in his personal capacity and I have, along with other state court counsel, attended numerous Committee meetings.

7. After the Bankruptcy Case commenced, JAA continued to file lawsuits against the non-debtor affiliates until the CVA window closed in August 2021. These lawsuits asserted the same types of claims on behalf of the survivors with the exception that the Diocese itself was not named as a party. If the Diocese had not filed for bankruptcy protection, there would have been allegations in these lawsuits made against the Diocese that would have mirrored the allegations made by survivors against the Diocese in the pre-petition lawsuits.

8. JAA represents approximately 145 survivors who filed proofs of claim in this Bankruptcy Case ("JAA Survivors"). This group includes survivors for whom lawsuits were filed in both pre-petition and post-petition timeframes. With one exception,[1] every survivor has an associated New York lawsuit associated with their claim (the "State Court Cases"). Of the 145 proofs of claim, the Bankruptcy Court has entered orders sustaining objections to the proofs of claims of 12 of the JAA Survivors without leave to amend, and 22 with leave to amend.

---

[1] One survivor has a proof of claim filed against this Debtor and also has a claim in the Diocese of Camden bankruptcy.

3

9. The State Court Cases are pending, but have been stayed for several years as a result of the preliminary injunction entered in the Bankruptcy Case that has been extended to claims against non-debtors. As a result of the Bankruptcy Court's recent ruling on the preliminary injunction, 62 State Court Cases have been authorized to move forward against the non-debtor defendants. Of those, eight State Court Cases have been removed by the debtor's affiliates to the Eastern District of New York. The remaining State Court Cases are still stayed against both the Diocese and the non-debtor defendants.

10. JAA attorneys, along with our staff of administrative professionals, paralegals, and survivor advocates, are in communication with the JAA Survivors regarding the representation, including developments in the Bankruptcy Case. We often discuss points of strategy and focus on how the Bankruptcy Case potentially impacts their overall claim, including any effect the Bankruptcy Case may have on the State Court Cases. Our communications range from broad messages regarding general developments to highly individualized and in-depth conversations relating to individual concerns and questions. It is often the case where a broad communication will prompt a number of individual contacts and questions in follow-up. We do not share with Survivors who are not members of the Committee information that we learn by virtue of our representation of a member of the Committee, Mr. Daly.

11. To the extent that we can, we give our clients the opportunity to control their own communications preferences. Some survivors want to receive all updates over the phone. Some are uncomfortable receiving mail or even email because of privacy concerns or because communications regarding this case have become so upsetting and damaging to their mental well-being. For all survivors, even those who opt to receive less frequent communications, we

maintain regular contact with them, and I am familiar with their views regarding this litigation, the Diocese, and their civil claims.

### III. THE DIOCESE PLAN AND THE TREATMENT OF SURVIVOR CLAIMS

12. I have reviewed the *Chapter 11 Diocese Plan of Reorganization for The Roman Catholic Diocese of Rockville Centre, New York* [D.I. 1614] (the "Diocese Plan") and related Disclosure Statement [D.I. 1615] (the "Diocese Disclosure Statement") and have specifically considered how these documents impact the Survivors and their claims. I understand that the Diocese seeks through the Diocese Plan to provide third-party releases to a large number of non-debtor entities within its enterprise (the "Non-Debtor Entities"). I have not seen an exhaustive list that describes who the Non-Debtor Entities are, but I am aware that the list includes the Diocese's approximately 135 parishes and potentially hundreds of other non-debtor affiliates. Through its attorneys, the Diocese has expressed an absolute position that that it will never support a plan that does not include full releases for the Non-Debtor Entities.

13. I have also reviewed the Committee's *First Amended Chapter 11 Diocese Plan of Reorganization* [D.I. 1643] (the "Committee Plan") and related Disclosure Statement [D.I. 1644] (the "Committee Disclosure Statement") and have specifically considered how these documents impact the Survivors and their claims. Based on my review, I understand that the Committee Plan provides the Non-Debtor Entities with the opportunity to settle for $200 million, which is the amount I understand is based on the Committee's analysis of fair compensation for the claims against Non-Debtor Entities to be released and the assets available to pay such claims. I understand that the Diocese will object to the Committee Plan on various grounds, including that it does not require a release for the Non-Debtor Entities and that the confirmation of the Committee Plan violates the Diocese's religious freedom.

5

14. The Diocese Plan does not provide sufficient total consideration to Survivors. The proposed contribution from each of the Diocese, the Parishes and affiliates is uncertain and insufficient, and the consideration from the Non-Debtor Entities is inadequate to support the proposed release of claims against them.

### IV. JOINDER IN THE COMMITTEE'S MOTION TO DISMISS THE BANKRUPTCY CASE

15. On March 27, 2023, the Committee filed the Motion to Dismiss. I am familiar with the Motion to Dismiss and the grounds for dismissal set forth in the Motion to Dismiss.

16. On March 31, 2023, JAA filed a joinder to the Motion to Dismiss [D.I. 1974] and, on June 12, 2023, filed an amended joinder [D.I. 2146] (the "Joinders"). True and correct copies of the Joinders are attached to this Declaration as Exhibit 1 and Exhibit 2.

17. The Diocese Plan requires a vote by an overwhelming majority of the creditor body. In my view, a vote on the Diocese's Plan has absolutely no hope of meeting that threshold and it is not even a close question. And because the Diocese will not consider a plan without releasing the Non-Debtor Entities, any plan without adequate contribution to the survivors on behalf of the Non-Debtor Entities is doomed to fail. With this impasse, continuing in this expensive process is tremendously damaging to survivors and as set forth in the Joinders, the JAA Survivors support dismissal of the Bankruptcy Case for the reasons set forth in the Motion to Dismiss.

18. As further set forth in the Joinders, and for the reasons set forth in paragraph 14, I would recommend that the JAA Survivors vote against the Diocese Plan if it were to go out for a vote. Based on my experience representing the survivors in this litigation as well as in other bankruptcy matters, I would expect that the vast majority of survivors will enthusiastically reject the Diocese Plan based on that recommendation.

19. Opposition to the Diocese Plan and support for the Motion to Dismiss would continue to be my recommendation notwithstanding an increase in the non-debtor contribution from $11.1 million to $40 million. Such increase is not reflected in any plan filed with the Bankruptcy Court, but it is also unclear as to how such a change would materially impact the total overall proposed recovery under the Diocese Plan. This change amounts to less than $45,000 per claimant (assuming 648 claims). Even taking into consideration this purported increase, the Diocese Plan is still unacceptable to the JAA Survivors.

20. When compared to the lack of progress in the Bankruptcy Case and the costs that have been incurred over the past almost 3 years, proceeding in state court would be faster and financially more beneficial to the JAA Survivors on the whole. Some movement is better than what Survivors have now, which is no movement at all.

21. The Diocese has also opted to pursue an expensive and harmful strategy of claims objections. For Survivors that the Diocese has targeted, it is quite obvious why they would prefer state court to this bankruptcy process. But beyond that subset of claimants, the claim objection exercise is both expensive and of negligible value to a consensual plan because of the Diocese's absolute position with regard to a channeling injunction. Claimants may have their claim disallowed in this proceeding, but the Diocese Plan will still channel the Survivors' remaining claims against Non-Debtor Entities back into the trust. Any settlement trust will have to use its assets to pay these channeled claims and settlement's size must take this into account, calling the Debtor's entire approach into question. And beyond the dollars and cents needlessly spent on legal fees, the claims objections have taken a tremendous human toll as the Diocese has attacked and accused these Survivors once again, often on legal technicalities.

22. The Diocese may not understand how important these human costs are to Survivors. It may believe that a survivor would automatically opt to follow whatever path results in a higher payment for themselves, but that belief would be incredibly misplaced. These survivors of childhood sexual abuse do not trust this Diocese and are not eager to believe that it somehow has their best interests at heart. They were betrayed by this Diocese when they were at their most vulnerable and they have lived with the horrific impacts associated with that betrayal for decades. They have watched as the Diocese has made public-facing statements about how the Bankruptcy Case "will centralize all litigation and oversee a settlement that ensures that no survivor is left out" while simultaneously spending millions of dollars on attorneys to fight them every step of the way. https://drvcreorganization.com/ (June 29, 2023). Survivors came forward after all of these years in the hope of some sense of justice and accountability; there is little confidence that those can be obtained through this process.

23. In state court, however, I expect that litigation will proceed expeditiously and fairly when it is allowed to go forward.

24. The Diocese's treatment of Survivors under the Diocese Plan is unacceptable. I have seen no indication that this will change. As a result, Survivors are best served by dismissing this bankruptcy and moving on.

## V.  ATTENDANCE AT HEARING ON MOTION TO DISMISS AND AVAILABILITY FOR CROSS-EXAMINATION

25.  I plan to attend the hearing on the Motion to Dismiss, scheduled for July 10th and 11th, in person and will be available for cross-examination with respect to my direct testimony provided by this Declaration. I was deposed by Diocese counsel in connection with the litigation of the Motion to Dismiss on June 23, 2023.

I declare under penalty of perjury that the foregoing is true and correct to the best of knowledge and belief. I executed this Declaration on June 30, 2023 at Manhasset, New York.

　　　　　　　　　　　　　　　　　　　　　　　　 */s/ Patrick Stoneking*　　　　
　　　　　　　　　　　　　　　　　　　　　　　　Patrick Stoneking

# **EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 20-12345 (MG) |
| | ) | |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK, | ) ) | Chapter 11 |
| | ) | **Related Docket No. 1912** |
| Debtor. | ) ) | |

# JOINDER IN MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DISMISS CHAPTER 11 CASE

1

Certain Sexual Abuse Claimants,[1] by and through their undersigned counsel (the "**Survivors**"), hereby join in the *Motion of the Official Committee of Unsecured Creditors to Dismiss Chapter 11 Case* [Docket No. 1912] (the "**Motion to Dismiss**") for the reasons set forth in the Motion to Dismiss and expressly reserve all rights including, but not limited to, their rights to appear and be heard on any issue with respect to the Motion to Dismiss. The Motion to Dismiss is expressly incorporated herein by reference for all purposes.

We are familiar with the terms of the *Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Rockville Centre, New York* [Docket No. 1614] (the "Diocese Plan") filed by the Debtor on January 27, 2023 and would recommend that the Survivors vote against it. Based on our experience representing survivors in other bankruptcy cases, we expect the Survivors to largely follow our recommendation and vote against the Diocese's Plan.

WHEREFORE, for the reasons set forth in the Motion to Dismiss, the Survivors respectfully request that the Court enter an Order dismissing this chapter 11 case and granting such other and further relief as is just and proper.

| | |
|---|---|
| Date: March 31, 2023 | **JEFF ANDERSON & ASSOCIATES** |
| | */s/ Patrick Stoneking* |
| | 363 7th Avenue, 12th Floor |
| | New York, NY 10001 |
| | Telephone: 651-227-9990 |
| | Email: pstoneking@andersonadvocates.com |
| | *Counsel to the Survivors* |

---

[1] Undersigned Counsel represents 145 claimants. Claim numbers associated with these claimants are on the following page as Exhibit A.

# Exhibit A

**Claim Numbers**

| | | | | | |
|---|---|---|---|---|---|
| 90191 | 90192 | 90193 | 90194 | 90195 | 90196 |
| 90197 | 90199 | 90200 | 90201 | 90202 | 90203 |
| 90204 | 90207 | 90208 | 90209 | 90211 | 90212 |
| 90213 | 90214 | 90215 | 90216 | 90217 | 90218 |
| 90219 | 90239 | 90240 | 90241 | 90242 | 90285 |
| 90286 | 90287 | 90288 | 90290 | 90293 | 90294 |
| 90295 | 90296 | 90297 | 90298 | 90299 | 90300 |
| 90301 | 90302 | 90303 | 90304 | 90305 | 90306 |
| 90307 | 90308 | 90309 | 90310 | 90312 | 90316 |
| 90317 | 90319 | 90320 | 90321 | 90327 | 90328 |
| 90329 | 90330 | 90331 | 90332 | 90333 | 90334 |
| 90335 | 90336 | 90337 | 90338 | 90339 | 90340 |
| 90341 | 90342 | 90343 | 90344 | 90345 | 90346 |
| 90347 | 90348 | 90349 | 90350 | 90351 | 90352 |
| 90353 | 90354 | 90362 | 90363 | 90364 | 90365 |
| 90366 | 90367 | 90368 | 90369 | 90370 | 90371 |
| 90372 | 90373 | 90374 | 90383 | 90384 | 90385 |
| 90386 | 90387 | 90388 | 90389 | 90390 | 90391 |
| 90396 | 90397 | 90398 | 90399 | 90400 | 90401 |
| 90402 | 90403 | 90443 | 90444 | 90445 | 90446 |
| 90467 | 90468 | 90469 | 90470 | 90471 | 90472 |
| 90473 | 90474 | 90475 | 90476 | 90477 | 90478 |
| 90511 | 90512 | 90513 | 90514 | 90515 | 90516 |
| 90517 | 90518 | 90519 | 90520 | 90525 | 90528 |
| 90540 | | | | | |

# **EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 20-12345 (MG) |
| | ) | |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK, | ) ) | Chapter 11 |
| | ) | |
| | ) | **Related Docket No.** |
| Debtor. | ) | |
| | ) | |

# AMENDED JOINDER IN MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DISMISS CHAPTER 11 CASE

Certain Sexual Abuse Claimants[1], (the "**Survivors**"), by and through their undersigned counsel ("**Counsel**"), hereby amend their Joinder [Docket No. 1974] to join in the *Motion of the Official Committee of Unsecured Creditors to Dismiss Chapter 11 Case* [Docket No. 1912] (the "**Motion to Dismiss**") for the reasons set forth in the Motion to Dismiss. The Survivors expressly reserve all rights including, but not limited to, their rights to appear and be heard on any issue with respect to the Motion to Dismiss. The Motion to Dismiss is expressly incorporated herein by reference for all purposes.

Counsel is familiar with the terms of the *Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Rockville Centre, New York* (the "**Diocese Plan**"), filed by the Debtor on January 27, 2023 [Docket No. 1614]. Counsel would recommend that the Survivors vote against the Diocese Plan. Based on Counsel's experience representing Survivors in this case, Counsel expects the Survivors to follow Counsel's recommendation and vote against the Diocese's Plan.

---

[1] Undersigned Counsel represents approximately 145 individuals who filed Sexual Abuse Claims against the Debtor.

WHEREFORE, for the reasons set forth in the Motion to Dismiss, the Survivors respectfully request that the Court enter an Order dismissing this chapter 11 case, and granting such other and further relief as is just and proper.

| | |
|---|---|
| Date: June 12, 2023 | **JEFF ANDERSON & ASSOCIATES** |
| | */s/ Patrick Stoneking* |
| | 363 7th Avenue, 12th Floor |
| | New York, NY 10001 |
| | Telephone: 651-227-9990 |
| | Email: pstoneking@andersonadvocates.com |
| | |
| | *Counsel to the Survivors* |

2

## Exhibit A

**Claim Numbers**

| | | | | | |
|---|---|---|---|---|---|
| 90191 | 90192 | 90193 | 90194 | 90195 | 90196 |
| 90197 | 90199 | 90200 | 90201 | 90202 | 90203 |
| 90204 | 90207 | 90208 | 90209 | 90211 | 90212 |
| 90213 | 90214 | 90215 | 90216 | 90217 | 90218 |
| 90219 | 90239 | 90240 | 90241 | 90242 | 90285 |
| 90286 | 90287 | 90288 | 90290 | 90293 | 90294 |
| 90295 | 90296 | 90297 | 90298 | 90299 | 90300 |
| 90301 | 90302 | 90303 | 90304 | 90305 | 90306 |
| 90307 | 90308 | 90309 | 90310 | 90312 | 90316 |
| 90317 | 90319 | 90320 | 90321 | 90327 | 90328 |
| 90329 | 90330 | 90331 | 90332 | 90333 | 90334 |
| 90335 | 90336 | 90337 | 90338 | 90339 | 90340 |
| 90341 | 90342 | 90343 | 90344 | 90345 | 90346 |
| 90347 | 90348 | 90349 | 90350 | 90351 | 90352 |
| 90353 | 90354 | 90362 | 90363 | 90364 | 90365 |
| 90366 | 90367 | 90368 | 90369 | 90370 | 90371 |
| 90372 | 90373 | 90374 | 90383 | 90384 | 90385 |
| 90386 | 90387 | 90388 | 90389 | 90390 | 90391 |
| 90396 | 90397 | 90398 | 90399 | 90400 | 90401 |
| 90402 | 90403 | 90443 | 90444 | 90445 | 90446 |
| 90467 | 90468 | 90469 | 90470 | 90471 | 90472 |
| 90473 | 90474 | 90475 | 90476 | 90477 | 90478 |
| 90511 | 90512 | 90513 | 90514 | 90515 | 90516 |
| 90517 | 90518 | 90519 | 90520 | 90525 | 90528 |
| 90540 | | | | | |