**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | )    **NOT FOR PUBLICATION** |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE | ) |
| CENTRE, NEW YORK, | )    Chapter 11 |
| | ) |
| Debtor. | )    Case No. 20-12345 (MG) |
| | ) |

## MEMORANDUM OPINION SUSTAINING DEBTOR'S TWELFTH OMNIBUS OBJECTION TO CLAIMS

*A P P E A R A N C E S :*

JONES DAY
*Counsel for the Debtor and Debtor in Possession*
250 Vesey Street, 32nd Floor
New York, NY 10281
By:    Corinne Ball, Esq.
       Todd Geremia, Esq.
       Benjamin Rosenblum, Esq.
       Victoria Dorfman, Esq.
       Andrew Butler, Esq.

MERSON LAW, PLLC
*Counsel for Claimant 90565*
950 Third Avenue, 18th Floor
New York, NY 10022
By:    Jordan K. Merson, Esq.
       Sarah R. Cantos, Esq.
       Alice A. Bohn, Esq.

KETTERER, BROWNE & ASSOCIATES
*Counsel for Claimant 90570*
336 S. Main St., Suite 2A-C
Bel Air, MD 21014
By:    Derek T. Braslow, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the twelfth omnibus claims objection (this "Twelfth Omnibus Objection" or "Objection," ECF Doc. # 2118) of the Roman Catholic Diocese of Rockville Centre, New York (the "Debtor") that is the debtor in possession of the above-captioned chapter 11 case. A Proposed Order is attached to the Objection as Exhibit A. The Objection seeks to disallow and expunge each proof of claim identified in Schedule 1 of the Proposed Order because the Debtor determined that each proof of claim was untimely and filed after the Sexual Abuse Bar Date (as defined herein). (Objection ¶¶ 15, 18.) The Debtor served the Twelfth Omnibus Objection on the affected claimants. (*See* Certificate of Service, ECF Doc. # 2166.)

Responses were filed on behalf of Claim No. 90565 ("Merson Response," ECF Doc. # 2176) and Claim No. 90570 ("Braslow Response," ECF Doc. # 2171). The declaration of Jordan K. Merson, ("Merson Declaration") counsel to claimant 90565, is annexed to the Merson Response. (Merson Response at 1.) An affidavit of Jane Doe, ("Doe Affidavit") known as claimant 90570, is annexed to the Braslow Response. (Braslow Response at 8–9.) No responses were filed with the Court for the other six claims listed on Schedule 1, although the Debtor agreed to adjourn the hearing with respect to two of the claims, Claim Nos. 20101 and 90558. (*See* "Notice of Adjournment," ECF Doc. #2164.) The Debtor filed a reply in further support of the Twelfth Omnibus Objection. ("Reply," ECF Doc. # 2191.)

For the reasons discussed below, the Court **SUSTAINS** the Objection, and **DISALLOWS** the claims listed on Schedule 1, other than those that have been adjourned.

# I. **BACKGROUND**

## A.    **The Bankruptcy Case & Claims Process**

The Debtor commenced this bankruptcy case on October 1, 2020.  (*See* ECF Doc. # 1.)

On January 27, 2021, the Court entered the *Order Establishing Deadlines for Filing Proofs of*

*Claim and Approving the Form and Manner of Notice Thereof.*  ("Bar Date Order," ECF Doc. #

333.)  Under the Bar Date Order, the Court set (a) March 30, 2021 as the deadline for each

person or entity to file a proof of claim (the "General Bar Date"), and (b) August 14, 2021 at

5:00 p.m. as the deadline for each individual holding a Sexual Abuse Claim[1] to file a proof of

claim (the "Sexual Abuse Bar Date").  By subsequent order, the Court established October 10,

2022 as a supplemental bar date for certain holders of Sexual Abuse Claims that had their claims

revived by the Adult Survivors Act (the "Adult Survivors Sexual Abuse Bar Date").  (*See* ECF

Doc. # 1262.)  Approximately 750 sexual abuse proofs of claim (collectively, the "Proofs of

Claim") were filed in this chapter 11 case.  This Twelfth Omnibus Objection focuses on eight

Proofs of Claim.  All eight were filed after the Sexual Abuse Bar Date, while three were filed

after the supplemental Adult Survivors Sexual Abuse Bar Date.  All claimants note in their

Proofs of Claim that the abuse took place when they were minors.  Thus, the Adult Survivors Act

and the corresponding Adult Survivors Sexual Abuse Bar Date do not apply to any of them.

On January 10, 2023, the Court entered the *Order Approving Claim Objection*

*Procedures and Granting Related Relief* (ECF Doc. # 1554), which was later amended and

entered as an order on February 21, 2023.  ("Claim Objection Procedures," ECF Doc. # 1679).

---

[1]    "Sexual Abuse Claim" has the same meaning as the term is defined in the Bar Date Order.

The Claim Objection Procedures allow the Debtor to assert omnibus claim objections on the grounds set forth in Bankruptcy Rule 3007(d), which includes that the Debtor is not liable to the claimant for the amount or claim stated.  (*See* Claim Objection Procedures § 3(a).)

### B.    The Instant Claim Objection for Late Claims

The Twelfth Omnibus Objection is directed at eight Proofs of Claim identified in Schedule 1 of the Proposed Order (the "Late Claims").  The Debtor states that these Proofs of Claim were filed after the Sexual Abuse Bar Date and are therefore untimely.  (Objection ¶ 19.) The Debtor avers that the holders of Late Claims were timely served with the Sexual Abuse Bar Date Notice, or in the alternative, were unknown to the debtor and received notice via the Debtor's publication program.  (*Id.*)  The Debtor argues that all the Late Claims: (i) arose before the Petition Date, (ii) were subject to the requirement that they be filed by the Sexual Abuse Bar Date, and (iii) were filed after the Sexual Abuse Bar Date.  (*Id.* ¶ 18.)  Accordingly, the Debtor seeks to disallow and expunge the Late Claims listed in Schedule 1.  (*Id.* ¶ 19.)  The Debtor maintains the right to file subsequent objections to these claims on any applicable ground.  (*Id.* ¶ 21.)

### C.    The Merson Response

The Merson Response argues that the Twelfth Omnibus Objection should be overruled because the claimant is able to demonstrate "excusable neglect."  (Merson Response ¶ 47.)  In the alternative, the claimant argues that if the Court does not overrule the Objection, the Court should make clear in the corresponding order that the claimant will have the ability to participate in any late claims fund that may be established.  (*Id.* ¶ 48.)

The claimant, who was abused as a minor, argues it took him decades of treatment to come to terms with the abuse he suffered as a child, and that he began the process of filing his

claim as soon as he came to terms with what happened to him as a child. (*Id.* ¶ 41.) The claimant argues that the Debtor will not be prejudiced by the late-filed claim because the claim accounts for approximately .0013% of the sexual abuse Proofs of Claim that have been filed. (*Id.* ¶ 20.) The claimant also argues that there is no prejudice because the Debtor is not close to confirming a plan of reorganization. (*Id.* ¶ 23.) While this claim was filed over one year after the Sexual Abuse Bar Date, the claimant argues this would do nothing to negatively impact the efficient court administration of this case. (*Id.* ¶ 35.)

The claimant argues the reason for the delay was that he was never served notice of the Debtor's bankruptcy filing or of the Sexual Abuse Bar Date. (*Id.* ¶ 41.)

### D.    The Braslow Response

In the Braslow Response, the claimant argues that the Twelfth Omnibus Objection should be overruled, and claimant's Proof of Claim should be treated as timely filed. (Braslow Response ¶ 33.)

The claimant, who was abused as a minor, argues that her Proof of Claim should be treated as timely because the claimant can demonstrate excusable neglect. (*Id.* ¶ 5.) The claimant also argues that treating the claim as timely will not prejudice to the Debtor because the Debtor is not close to confirming a plan of reorganization. (*Id.* ¶ 15.) The claimant further contends that the value of her sexual abuse claim will not affect the funds available to other creditors. (*Id.* ¶ 17.) Though the claim was filed over one year late, the claimant argues that deeming the claim timely filed will have no adverse effect on the judicial administration of this case. (*Id.* ¶ 21.)

The claimant's reasons for the delay are similar to the reasons in the Merson Response—the claimant argues that she never received actual or constructive notice of the bankruptcy

proceeding or the Sexual Abuse Bar Date. (*Id.* ¶ 25.) The claimant lives in Vermont and contends that she did not see any published notice. (*Id.*) Further, the claimant contends that it took decades to gain the strength to come forward with this claim. (*Id.*)

### E.    The Reply

The Debtor's Reply argues that neither the Merson claimant nor the Braslow claimant has made the requisite motion to seek relief pursuant to Rule 9006(b)(1). (Reply ¶ 5.) In regard to notice, the Reply argues that both claimants were "unknown" to the Debtor but nevertheless received constructive notice via the Debtor's publication program. (*Id.* ¶ 7.) The applicable bar date was set to the same day as the closure of the window for the Child Victims Act that enabled the claims to be filed under New York state law. (*Id.* ¶ 10.) Thus, whether in or out of bankruptcy, Debtor observe that claimants were expected to bring their claims by August 14, 2021. (*Id.*)

The Reply argues that the responding claimants have failed to establish excusable neglect. The Debtor contends that allowing the Late Claims to proceed would prejudice the Debtor by opening the floodgates to late claims and rendering the applicable bar date meaningless. (*Id.* ¶ 20.) The Debtor argues that the claimants were not diligent in submitting their claims once they knew about the bar date, and while no plan is confirmed, a plan and disclosure statement are on file, and the Debtor is well into the claims allowance process. (*Id.* ¶ 22.) Finally, the Debtor argues that neither claimant has provided an adequate reason for delay, as both claimants were on constructive notice and still failed to file their Proofs of Claim by the applicable bar date. (*Id.* ¶ 26.).

## II.  <u>LEGAL STANDARD</u>

### A.    Default Claim Objection Procedure

Section 101 of the Bankruptcy Code provides that a creditor holds a claim against a

bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities

and (b) is otherwise allowable.  11 U.S.C. §§ 101(5)(A) & 101(10).

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of

claim" to claim an interest in a debtor's bankruptcy estate.  11 U.S.C. § 501(a).  Section 502(a)

provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . .

objects."  11 U.S.C. § 502(a).  Pursuant to Federal Bankruptcy Rule 3001(f), a claimant

establishes a *prima facie* case against a debtor upon filing a proof of claim alleging facts

sufficient to support the claim.  *See* FED. R. BANKR. P. 3001(f); *see also* 4 COLLIER ON

BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019) ("The

proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules,

constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of

Bankruptcy 3001(f) and Code section 502(a).").  Section 502(b) sets out multiple bases for

disallowing filed claims.

Under section 502 of the Bankruptcy Code, if an objection is made, the court shall

determine the amount of such claim as of the petition date.  *In re Solutia, Inc.*, 379 B.R. 473, 483

(Bankr. S.D.N.Y. 2007) (citing 11 U.S.C. § 502(b); FED. R. BANKR. P. 3007).  Section 502(b)(1)

provides that claims may be disallowed if they are "unenforceable against the debtor and

property of the debtor, under any agreement or applicable law . . . ."  11 U.S.C. § 502(b)(1).

### B.  Objections to Late Filed Claims

Section 502 of the Bankruptcy Code provides for the disallowance of late-filed claims where there has been adequate notice of the deadline for submitting proofs of claim.  Section 502(b) of the Bankruptcy Code states, in pertinent part, that "if [an] objection to a claim is made, the court, after notice and a hearing, shall . . . allow such claim . . . except to the extent that . . . proof of such claim is not timely filed . . . ." 11 U.S.C. § 502(b)(9).

Federal Rule of Bankruptcy Procedure 3003(c)(3) gives bankruptcy courts the power to set the deadline by which to timely file a proof of claim in a bankruptcy case and states that "Time for Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."  FED. R. BANKR. P. 3003(c)(3).

### C.  Notice of Bar Date

A late-filed claim can only be disallowed pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) where adequate notice of the bar date is provided.  Rule 2002(a) requires that debtors provide all creditors with at least 21 days' notice by mail of, amongst other things, "the time fixed for filing proofs of claims pursuant to Rule 3003(c)."  FED. R. BANKR. P. 2002(a)(7).  Bankruptcy courts "sensibly assume that the general norms of fair notice, as set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 489–91 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 797–800 (1983), and other such cases, apply to bankruptcy as to other settings in which a person's legal right is extinguished if he fails to respond to a pleading." *Fogel v. Zell*, 221 F.3d 955, 962 (7th Cir. 2000).  The Supreme Court has held that "notice must be of such nature as reasonably to convey the required information . . . ." *Mullane*, 339 U.S. at 314.  "It is well settled that proof that a letter was properly addressed and placed in the mail

system creates a presumption that the letter was received in the usual time by the addressee." *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013) (citing *Hagner v. U.S.*, 285 U.S. 427 (1932)).

What type of notice is required depends on whether a creditor is "known" or "unknown" to the debtor. *See In re XO Commc'ns , Inc.*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003) (citing *U.S.H. Corp. of N.Y.*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998)). A known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *See Pope*, 485 U.S. at 490. An "unknown" creditor is one whose identity or claim is not "reasonably ascertainable" or is merely "conceivable, conjectural, or speculative." *See In re Thomson McKinnon Sec., Inc.*, 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991). If the creditor is unknown to the debtor, constructive notice is generally sufficient. *See XO Commc'ns*, 301 B.R. at 792 (citing *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3rd Cir.1995)). Constructive notice can be satisfied through publication notice since "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 317; *see also Pope.*, 485 U.S. at 490.

### D.    "Excusable Neglect" Test

While courts are entitled to disallow late-filed claims pursuant to section 502(b)(9), Bankruptcy Rule 9006(b)(1) also provides that a court may enlarge the time period for doing an act (like filing a claim), "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006 (emphasis added).

9

The late-filing claimant has the burden of proving excusable neglect. *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005).[2]

Whether neglect is "excusable" under Rule 9006(b)(1) is an equitable determination based on "all relevant circumstances surrounding the party's omissions." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). In *Pioneer*, the Supreme Court considered four factors in determining whether neglect may be considered "excusable":

> (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Id.* at 395. The Second Circuit takes a "hard line" in applying the *Pioneer* test that focuses on and emphasizes the third factor: the reason for the delay, including whether it was within the reasonable control of the movant. *Enron III*, 419 F.3d at 122 (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003)). This is because, in the typical case, the three other *Pioneer* factors (danger of prejudice, length of the delay and impact on judicial proceedings, and the movant's good faith) usually weigh in favor of the party seeking the extension. *Id.* ("[T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[ ] case, the reason-for-delay factor will always be critical to the inquiry.") (internal quotations omitted)).

---

[2]     The parties cite three opinions from the *Enron* bankruptcy in the briefing here. As further discussed below, the first is *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 21756785 (Bankr. S.D.N.Y. July 30, 2003) ("*Enron I*"), where the court permitted certain parties to file late claims. The claimants cite to this for support in their responses. The Debtor cites to two later *Enron* decisions for support: *In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003) ("*Enron II*"), in which the Court rejected other claimants' attempts to file late claims, and *In re Enron Corp.*, 419 F.3d 115 (2nd Cir. 2005) ("*Enron III*"), in which the Second Circuit upheld *Enron II* on appeal.

Under the Second Circuit's approach, "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id.* (internal quotations omitted). Therefore, the Second Circuit has found that there was no excusable neglect in the following situations: (i) where the movant's attorney "had mistakenly relied on a remark by counsel for another party concerning the date by which a notice of appeal had to be filed," *id.* (citing *Silivanch*, 333 F.3d at 370), (ii) where the movant's attorney filed late because he was preoccupied with his bid for public office, *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 251 (2d Cir. 1997), (iii) where a movant did not comprehend a rule, *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) ("The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules."), and (iv) where the failure to file a timely notice resulted from a legal assistant's confusion of the rule. *Silivanch*, 333 F.3d at 370 (citing *United States v. Hooper*, 43 F.3d 26, 28–29 (2d Cir.1994)). Additionally, a bankruptcy court in the Second Circuit has held that a creditor's unfamiliarity with bankruptcy proceedings does not constitute excusable neglect. *See In re Glob. Aviation Holdings Inc.*, 495 B.R. 60, 66 (Bankr. E.D.N.Y. 2013).

Excusable neglect has been found to exist "when the creditor, after conducting a reasonable amount of diligence, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the bar date order." *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137, 141 (S.D.N.Y. 2011) *aff'g In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010) (describing that in both prior instances where the court found excusable neglect "the claimants consciously endeavored

to comply with the Bar Date Order but were justifiably confused as to the application of the

General Bar Date or the Program Securities Bar Date due to the circumstances surrounding the

Lehman Program Securities list").

Further, a court "may consider a movant's severe illness when deciding whether an

instance of neglect is excusable." *Fetik v. New York L. Sch.*, No. 97 Civ. 7746, 1999 WL

459805, at *4 (S.D.N.Y. June 29, 1999) (citing *Klapprott v. United States*, 335 U.S. 601, 614

(1949)); *see also United States v. Burnette*, No. CV-98-6756 (CPS), 2007 WL 201164, at *2

(E.D.N.Y. Jan. 23, 2007) (citing *Carcello v. TJX Companies, Inc.*, 192 F.R.D. 61, 64 (D. Conn.

2000)) (same); *Melvin v. Miller*, No. 3:09-CV-01612 (RNC), 2016 WL 1255548, at *2 (D. Conn.

Mar. 29, 2016) (finding excusable neglect where movant was hospitalized due to severe illness).

## III.  <u>DISCUSSION</u>

The Objection here is directed at eight Late Claims that fall into the following groups:

- Claims for which the Objection has been adjourned.  (Claim Nos. 20101, 90558.)

- Claims for which responses have been filed.  (Claim Nos. 90565, 90570.)

- Claims for which no responses have been filed.  (Claim Nos. 20100, 40004, 90568, 90569.)

The Court does not address the two claims that have been adjourned.  The Court only

analyzes the latter two groups of claims that can be discussed together below: the claims for

which responses (i.e., the Merson and Braslow Responses) were filed, and claims for which no

response was filed.

The Court **SUSTAINS** the objection to these claims for two reasons.  First, the Debtor

has shown that the claims were filed late, despite the Debtor complying with all relevant

authorities in both noticing the bar date and bringing this motion.  Second, the claimants that

have filed responses have not shown that there was excusable neglect on their part in filing late

Proofs of Claim.  Thus, the claimants that did not file responses have also failed to show that

there was any excusable neglect or any other basis for overruling the objection here.

### A.    The Claims Were Filed Late and the Debtor Provided Adequate Notice

The Debtor has shown that absent an extension of the bar date for the Claims at issue, it

is entitled to disallowance of the Claims because they were not timely filed, and the Debtor

otherwise provided adequate notice and complied with other requirements in bringing this

motion.

### 1.  The Claims Were Not Timely Filed

The Proofs of Claim were filed after the Sexual Abuse Bar Date set by the Court.  The

claimants argue that their claims should not be disallowed based on excusable neglect, which the

Court discusses below.

### 2.  The Debtor Provided Adequate Notice

The Debtor complied with all relevant authorities, including the orders of this Court in

noticing the bar date, foreclosing the possibility that the Debtor is somehow responsible for the

late filings here.  The Debtor's claims and noticing agent served copies of the Sexual Abuse Bar

Date notice beginning on January 29, 2021 in accordance with the terms of the Bar Date Order.

(Objection ¶ 17.)  Unknown creditors received notice of the Sexual Abuse Bar Date through a

publication program approved by this Court, which included television, radio, online, print,

social media, mailings, and community outreach.  (*Id.*)  Constructive notice can be satisfied

through publication notice since "in the case of persons missing or unknown, employment of an

indirect and even a probably futile means of notification is all that the situation permits and

creates no constitutional bar to a final decree foreclosing their rights."  *Mullane*, 339 U.S. at 317

(1950); *see also Pope*, 485 U.S. at 490.  The Court holds that notice of the Sexual Abuse Bar

Date was proper and sufficient.

The Debtor followed the objection procedures of Bankruptcy Rule 3007—30 days-notice

was given as required by Bankruptcy Rule 3007(a), and the Objection falls within the kind of

objections specified in Bankruptcy Rule 3007(d).    *See* FED. R. BANKR. P. 3007(d)(4).  The

Objection conspicuously lists the claimants in numerical order and articulates the grounds for the

objections.  *See* FED. R. BANKR. P. 3007(e)(1)–(6).  Therefore, the Debtor clearly followed the

appropriate procedure when it filed the Objection.

### B.    The Responding Claimants Have Failed to Show Excusable Neglect

Neither the Merson Response nor the Braslow Response have shown that the claimants

are entitled to an enlargement of the filing period for their Claims to negate the Debtor's

timeliness objection to their Claims.  Bankruptcy Rule 9006(b)(1) provides, in relevant part, that

a court may enlarge the time period for doing an act "on motion made after the expiration of the

specified period . . . where the failure to act was the result of excusable neglect." FED. R.

BANKR. P. 9006.  The late-filing claimant has the burden of proving excusable neglect.  *See*

*Enron III*, 419 F.3d at 121.

Whether neglect is "excusable" under Rule 9006(b)(1) is an equitable determination

based on "all relevant circumstances surrounding the party's omissions." *Pioneer*, 507 U.S. at

388.  In *Pioneer*, the Supreme Court considered four factors in determining whether neglect may

be considered "excusable":

> (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential
> impact on judicial proceedings; (3) the reason for the delay, including whether it
> was within the reasonable control of the movant; and (4) whether the movant acted
> in good faith.

*Id.* at 395.  While the claimants show that some of the factors weigh in their favor (i.e., four, one, and two), they fail to show that factor three weighs in their favor.  In these circumstances, they fail to carry the burden of showing that their neglect was excusable.

1.  Factor Four

With respect to the fourth factor, the claimants contend, and the Debtor does not dispute, that the claimants acted in good faith in filing their claims.

2.  Factor One

With respect to the first factor, the claimants argue that the danger of prejudice to the Debtor is low if their claims are allowed to proceed.  In determining whether permitting the late filing of claims would cause a debtor prejudice, courts in this district have weighed a number of considerations, including: (1) "the size of the late claim in relation to the estate;" (2) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated;" and (3) "whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim."  *See Enron II*, 298 B.R. at 525 (citing *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995)).

On the first consideration, the claimants argue that the size of the claims at issue is small in relation to the estate.  The Merson and Braslow Responses state that each claim only accounts for 0.0013% of the sexual abuse claims that have been filed.  (Merson Response ¶ 20.)  This is simply a different way of stating that each claim is only one of seven hundred-plus filed in this bankruptcy.  The Debtor does not contest this fact.  None of the parties make specific arguments regarding the actual values of the claims in comparison to other filed claims.

On the second consideration, the Debtor relies on the decisions in *Enron II* and *Lehman Bros. Holdings*, 433 B.R. at 126–27, to argue that permitting the late filing of claims would prejudice the Debtor by opening the floodgates for similar late-filed claims. (Objection ¶ 20; Reply ¶ 20.)

Both claimants make similar arguments why permitting the late-filed claims will not prejudice the Debtor. The Merson Response argues that, unlike in *Enron II*, allowing this claim to proceed will not open some hypothetical floodgate. (Merson Response ¶ 25.) The response points out that while the Debtor has sought to disallow hundreds of claims over fifteen omnibus objections, only the eight contemplated by this current Objection are due to being filed after the bar date. (*Id.* ¶ 26.) As such, by intimating that the floodgates will open if the claimant's claim is allowed to proceed, the Debtor is implying that there is a swath of sexual abuse survivors that have been waiting to file late claims. The response contends that this is illogical, and if other survivors wanted to file claims, they would have done so over the past twenty-two months. (*Id.* ¶ 28.)

The Debtor argues that the risk of floodgates laid out in *Enron II* is particularly acute with respect to the assertions of excusable neglect made by the Merson and Braslow Responses. (Reply ¶ 20.) They argue that the responses assert excusable neglect largely on the basis that they did not receive a direct mailing from the Debtor. (*Id.*) The Debtor contends that if this were an adequate basis for showing excusable neglect, the applicable bar date and the Court-approved publication program, would not bring any finality to the claims process, and thus prejudice the Debtor. (*Id.*) The Debtor is not wrong in its reasoning, but these arguments fail to controvert the claimant's argument that it is unlikely that there are many additional late claims that would be filed on the back of these claims being allowed to proceed.

On the third consideration, focused on progress towards a plan, the claimants further observe that in the *Enron* case cited by the Debtor, the court permitted claimants to file late claims at an earlier stage of the case, where the claims were filed nine months before a plan or disclosure statement, and would not have any effect on the later-proposed plan. (Braslow Response ¶ 16 (citing *Enron I*, 2003 WL 21756785, at *6).) The claimants argue that similarly here, the Debtor's Chapter 11 plan was not filed until after these late claims were filed, and it is still not close to being confirmed. (Merson Response ¶¶ 22–23.)

Further, the claimants argue that the facts of the present case are dissimilar from those in the cases cited by the Debtor, like *Enron II*. (*Id.* ¶ 29.) In *Enron II*, the court found the debtors would be prejudiced where a putative claimant moved to file a late guaranty claim less than three months before the debtor proposed a plan because "the Debtors might be parties to agreements with guarantees or guarantors of such agreements involving other Debtors" and "allowing late-filed proof of claims based on such guarantee or guarantor relationships would adversely affect the Debtors' assessment of their liabilities as well as negatively impact their bankruptcy proceedings." *Enron II*, 298 B.R. at 526. The Debtor cannot show any comparable disturbances here by allowing the claimants to file late.

The Court concludes that the danger of prejudice to the Debtor will be low if the claimants' late-filed claims are allowed to proceed. The first *Pioneer* factor favors the claimants.

### 3. Factor Two

With regards to the second *Pioneer* factor, the claimants argue that there will be no negative impact on judicial proceedings if their late-filed claims are allowed to move forward. The second factor considers the length of the delay in filing a claim and its potential impact on judicial proceedings. The Second Circuit held in *Enron III* that "[n]otwithstanding the centrality

of bar dates…[no] court has established a bright-line rule governing when the lateness of a claim will be considered 'substantial.'" *See* 419 F.3d at 128.  Rather, when determining whether to allow a late-filed proof of claim, "courts generally consider the degree to which, in the context of a particular proceeding, the delay may disrupt the judicial administration of the case." *Id.* (internal quotations omitted).

The claimants observe that courts have allowed claims filed as late as two years after the applicable bar date.  (Braslow Response ¶ 20 (citing *In re Beltrami Enters., Inc.*, 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (allowing a two year late claim reasoning that "there is no indication that in this case the delay had had a negative impact on efficient court administration")).)  In comparison here the Merson claim was filed one year after the applicable bar date, while the Braslow response was filed fifteen months after the applicable bar date.

The most important issue for factor two is whether the delay may disrupt the judicial administration of the case.  Some courts have suggested that a relevant consideration is whether a reorganization plan has been filed or confirmed at the time a late-filed claim is submitted.  *See In re Infiltrator Sys.*, 241 B.R. 278, 281 (Bankr. D. Conn. 1999).  However, the Second Circuit has stated that "we do not think that whether a claim is submitted before the date on which a reorganization plan is filed ought, ordinarily, to be conclusive." *See Enron III*, 419 F.3d at 129.  Both late-filed claims in this case were submitted before a reorganization plan was filed.  The Merson Response argues that this bankruptcy proceeding is no closer to a resolution now than it was at the applicable bar date or when the late claim was filed.  (Merson Response ¶ 34.)  Both claimants argue that a plan is far from being confirmed, and it cannot be argued that permitting the late-filed claims to proceed would do anything to negatively impact the judicial administration of this case.  (Merson Response ¶ 35; Braslow Response ¶ 21.)

The Debtor argues that while no plan has been confirmed, a plan and disclosure statement are on file, negotiations with the Debtor's various constituents are ongoing, and the Debtor is well into the claims allowance process. (Reply ¶ 22.) This is similar, the Debtor argues, to *In re AMR Corp.*, where the Court found that a three month delay in filing a late-claim weighed against a finding excusable neglect. *See* 492 B.R. at 667. In that case, the claimants argued that permitting the late filing of a claim would not affect the judicial administration of the case because the debtors had not yet filed a plan and disclosure statement at the time the claimants filed their motion. *Id.* The court disagreed, finding if that fact alone were dispositive, the bar date itself would serve little purpose. *Id.* However, the Court found that the debtors had made "great strides" in their claims reconciliation process since the bar date had passed, and were "well advanced" in their plan to emerge from Chapter 11. *Id.* This cannot be said to be the case here, as the Debtor is still ostensibly far from confirming a plan.

While the delay for each late-filed claim may be substantial, it should be weighed against the disruption to the judicial administration of the case. Here, as no plan confirmation is near, and each claim represents a minor amount compared to the overall bankruptcy, allowing each late-filed claim would likely not impact the judicial administration of this case. Because of this, the second *Pioneer* factor weighs in favor of permitting the claims to proceed.

4. <u>Factor Three</u>

Both claimants have made strong arguments on the three factors discussed above. They have shown that the claimants have acted in good faith, the danger of prejudice to the debtor is low, and there is little risk of negative impact on judicial proceedings posed by their claims.

However, the Second Circuit takes a "hard line" approach in applying the *Pioneer* factors that focuses on and emphasizes the third factor—the reason for the delay, including whether it

was within the reasonable control of the movant.  *See Enron III*, 419 F.3d at 122 (citing

*Silivanch*, 333 F.3d at 369).  In this case and in many other cases, the three other *Pioneer* factors

(danger of prejudice, length of the delay and impact on judicial proceedings, and the movant's

good faith) usually weigh in favor of the party seeking the extension.  *Id.*  ("[T]he four *Pioneer*

factors do not carry equal weight; the excuse given for the late filing must have the greatest

import.  While prejudice, length of delay, and good faith might have more relevance in a close[ ]

case, the reason-for-delay factor will always be critical to the inquiry.") (internal quotations

omitted).  While both claimants have made strong arguments on the other factors, the third factor

is the most important and often dispositive whether a late-filed claim will be permitted to

proceed.  Under the Second Circuit's approach, "the equities will rarely if ever favor a party who

fail[s] to follow the clear dictates of a court rule," and "where the rule is entirely clear, we

continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under

the *Pioneer* test."  *Id.* (internal quotations omitted).

    Both claimants argue that they did not receive actual notice of the bankruptcy or applicable

bar date in time to file a timely claim.  (Braslow Response ¶ 24, Merson Response ¶ 37.)

However, in addition to serving copies of the Sexual Abuse Bar Date on known holders of

Sexual Abuse Claims, notice was also publicized through an extensive, Court-approved,

publication program which included television, radio, online, print, social media, mailings, and

community outreach, as detailed above.

    The Debtor contends that the Merson Response, and the Proof of Claim itself, show that the

Merson claimant never told the Debtor about their claim.  (Reply ¶ 23.)  The Braslow Response

notes that the claimant lives in Vermont and did not see any published notice.  (Braslow

Response ¶ 24.)  Both claimants can be fairly categorized as "unknown."  An "unknown"

creditor is one whose identity or claim is not "reasonably ascertainable" or is merely "conceivable, conjectural, or speculative." *See Thomson McKinnon*, 130 B.R. at 720. If the creditor is unknown to the debtor, constructive notice is generally sufficient. *See XO Commc'ns*, 301 B.R. at 792 (citing *Chemetron*, 72 F.3d at 346). Constructive notice can be satisfied through publication notice since "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane*, 339 U.S. at 317; *See Pope*, 485 U.S. at 490. Because the Debtor placed the claimants on constructive notice through its publication program, the Debtor fulfilled the notice requirement and was not required to do anything further regarding notice. The fact that individualized notice was not provided to these claimants does not negate the adequacy of the notice provided by the Debtor, and the Court does not find it relevant to excusable neglect.

Generally, excusable neglect has been found to exist "when the creditor, after conducting a reasonable amount of diligence, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the bar date order." *Lehman Bros. Holdings*, 445 B.R. at 141 *aff'g* 433 B.R. 126 (describing that in both prior instances where the court found excusable neglect "the claimants consciously endeavored to comply with the Bar Date Order but were justifiably confused as to the application of the General Bar Date or the Program Securities Bar Date due to the circumstances surrounding the Lehman Program Securities list"). Further, a court "may consider a movant's severe illness when deciding whether an instance of neglect is excusable." *Fetik*, 1999 WL 459805 at *4 (citing *Klapprott*, 335 U.S. at 614).

Both claimants further explain that the delay in bringing their claims was due to the fact that it took decades to come to terms with the abuse they had suffered, and to find the strength to seek legal redress.  (Braslow Response ¶ 25, Merson Response ¶ 40.)  The claimants cite cases where courts found excusable neglect in the following situations: (i) where the untimely filing was caused by counsel's inattentiveness, *Beltrami Enterprises*, 178 B.R. at 392, (ii) where a municipal creditor filed s late claim because it did not discover a debtor hospital's pre-petition obligation until after the bar date, and the court considered "prejudice to the Debtor" to be the most important *Pioneer* factor, *In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891 (Bankr. E.D. Pa. 1995), (iii) where a claimant was injured while employed by the debtor, and the court found that his wife handled all their mail, and she never informed him of the bar date, *In re Pilgrim's Pride Corp.*, 2011 Bankr. LEXIS 570 (Bankr. N.D. Tex. 2011), and (iv) where a creditor had received notice of the bar date, but he was reasonably confused that he did not have a claim until the product he bought from the debtor actually failed, *Infiltrator Systems*, 241 B.R. at 281.

The claimants fail to show that the challenges they faced in bringing their claims constituted excusable neglect.  Unlike in the cases cited by claimants, they have not shown that the challenges complained of caused confusion about the nature of their claims or the relevant deadlines or interfered with the notice process.  Notably, hundreds of other claimants in this case were able to file their claims before the applicable bar date while likely facing similar difficulties.

Additionally, neither claimant provides an explanation for the delay in filing the late claims *after* learning about the applicable bar date.  The Braslow Response states that the claimant learned of the applicable bar date in April 2022, however, that claim was not filed until

November 2022.  (Reply ¶¶ 24–25.)  The Braslow Response provides no excuse for waiting six months to file the claim after learning of the bar date.  The Merson Response reflects that it was executed by the claimant on July 25, 2022 but was not submitted for another month.  (*Id.* ¶ 21.)  Courts in this district have held that "[a] party who misses a court deadline, and who wishes relief based on equitable considerations, must act promptly to take the action that should have been taken earlier."  *In re JCK Legacy Co.*, No. 20-10418 (MEW), 2022 Bankr. LEXIS 2067, at *10 (Bankr. S.D.N.Y. July 28, 2022).  Both claimants failed to do so here.

While the offered reason for delay is a sympathetic one, the equities do not weigh in favor of permitting the late-filed claims to proceed.  Both claimants filed claims over one year after the applicable bar date, a substantial delay.  Further, neither claimant provides a sufficient rationale for the delay in filing their claims after learning of the applicable bar date.  The reason for delay was fully within control of the claimants.  The claimants cite no caselaw showing that the challenges they faced warrant a finding of excusable neglect.  For the reasons stated above, the late-filed Merson and Braslow claims are **DISALLOWED**.[3]

> ### C.    The Non-Responding Claimants Have Failed to Show Excusable Neglect

The claimants who failed to file responses have also failed to show excusable neglect or any other basis to overrule the Debtor's claim objection.  As a result, these claims are also **DISALLOWED**.

---

[3] The Debtor also argued in its Reply that the claimants are not entitled to relief under Bankruptcy Rule 9006(b)(1) because the rule requires the party seeking an extension of a deadline to affirmatively move for such relief.  The claimants have not done so here; they have only cited to Bankruptcy Rule 9006(b)(1) as a basis for opposing the Objection.  While the Debtor may be correct here, finding for the Debtor on this point alone would likely just precipitate a new motion sequence on the same exact issue at a later date.  In any event, the Court need not decide the issue as it has already concluded herein that the claimants have not shown excusable neglect under Bankruptcy Rule 9006(b)(1).

## IV.  <u>CONCLUSION</u>

For the reasons discussed herein, the Court **SUSTAINS** the Objection and **DISALLOWS**

the claims listed in Schedule 1, except for those that have been adjourned.

**IT IS SO ORDERED.**

Dated:    July 12, 2023
          New York, New York

_____
*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge