**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | **FOR PUBLICATION** |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE ) | |
| CENTRE, NEW YORK, ) | Chapter 11 |
| ) | |
| Debtor. ) | Case No. 20-12345 (MG) |
| ) | |

**MEMORANDUM OPINION AND ORDER SUSTAINING DEBTOR'S ELEVENTH
OMNIBUS OBJECTION TO CLAIMS**

*A P P E A R A N C E S:*

JONES DAY
*Counsel for the Debtor*
250 Vesey Street, Floor 32
New York, NY 10281
By:    Corinne Ball, Esq.
       Andrew Butler, Esq.
       Benjamin Rosenblum, Esq.

SLATER SLATER SCHULMAN LLP
*Counsel for Certain Claimants*
445 Broad Hollow Road, Suite 419
Melville, NY 11747
By:    Stephenie Lannigan Bross, Esq.

PFAU COCHRAN VERTETIS AMALA PLLC
*Counsel for Certain Claimants*
31 Hudson Yards, 11th Floor
New York, NY 10001
By:    Jason P. Amala, Esq.

MARSH LAW FIRM PLLC
*Counsel for Certain Claimants*
31 Hudson Yards, 11th Floor
New York, NY 10001
By:    James R. Marsh, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the eleventh omnibus claims objection (the "Objection," ECF Doc. # 2117) of the Roman Catholic Diocese of Rockville Centre, New York (the "Debtor") that is the debtor and debtor-in-possession of the above-captioned chapter 11 case. The Objection seeks to disallow nine proofs of claim identified on Schedule 1 (the "Claims") to a proposed order appended to the Objection ("Proposed Order"). The Debtor asserts that each Claim was released, channeled, and enjoined pursuant to the BSA Plan (as defined below). The deadline for responses was June 16, 2023. Four response briefs were filed on behalf of six claimants ("Responding Claimants").[1] The Debtor filed a reply in support of the Objection. ("Reply," ECF Doc. # 2190.)

For the reasons discussed below, the Court **SUSTAINS** the Objection and **DISALLOWS** the Claims in Schedule 1 to the Proposed Order that have not been adjourned or withdrawn ("Disputed Claims").

## I.    BACKGROUND

This Objection pertains to nine claims that the Debtor argues were released because of the confirmation of a chapter 11 plan of reorganization in the Boy Scouts of America case.

### A.    The Claims Process

On January 10, 2023, the Court entered the *Order Approving Claim Objection Procedures and Granting Related Relief* (ECF Doc. # 1554), which were later amended and entered as an order on February 21, 2023. ("Claim Objection Procedures," ECF Doc. # 1679.)

---

[1] The filed responses and corresponding claims are: (1) ECF Doc. # 2179, for Claim Nos. 90085, 90087 and 90166; (2) ECF Doc. # 2172, for Claim No. 90145; (3) ECF Doc. # 2174, for Claim No. 90157; (4) ECF Doc. # 2177, for Claim No. 90178. Withdrawals were filed for two claims: (1) ECF Doc. # 2169, for Claim No. 90300; and (2) ECF Doc. # 2170, for Claim No. 90400. Claim No. 20089 was adjourned.

The Claim Objection Procedures allow the Debtor to assert omnibus claim objections on the grounds set forth in Bankruptcy Rule 3007(d), including on the grounds that the Debtor is not liable to the claimant for the amount or claim stated. (*See* Claim Objection Procedures § 3(a).)

### B.    The BSA Plan and Confirmation Order

On February 18, 2020, the Boy Scouts of America and Delaware BSA, LLC (collectively, "BSA") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. BSA commenced jointly administered cases bearing case numbers 20-10343 and 20-10342 for the primary purpose of addressing sexual abuse claims asserted against BSA. *See Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF Doc. # 1, *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del. Feb. 18, 2020). On February 15, 2022, BSA filed the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*. *See* ECF Doc. # 8813, *In re Boy Scouts of America*, No. 20- 10343-LSS (Bankr. D. Del. Feb. 15, 2022) (the "BSA Plan," as was and may be amended, modified, or supplemented, and together with any exhibits and schedules thereto).

On July 29, 2022, the Bankruptcy Court in that case issued an extensive opinion on confirmation of the BSA Plan. The BSA Plan and Confirmation Order, modified in accordance with the rulings in the Bankruptcy Court's opinion, was confirmed by the Bankruptcy Court on September 8, 2022. *See Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, ECF Doc. # 10316, *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del. Sept. 8, 2022).

On March 27, 2023, the U.S. District Court for the District of Delaware affirmed the BSA Confirmation Order on appeal.  *See* ECF Doc. # 11057, *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del. Mar. 28, 2023).  An appeal is pending in the U.S. Court of Appeals for the Third Circuit, but on April 19, 2023 the Third Circuit denied motions to stay the effectiveness of the BSA Plan pending those appeals.  *See Order Denying Motions for a Stay Pending Appeal*, ECF Doc. # 27, *In re Boy Scouts of America*, No. 23-1664 (3d Cir. April 19, 2023).  The BSA Plan became effective on April 19, 2023.  *See Notice of Effective Date*, ECF Doc. # 11123, *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del. Apr. 9, 2023).

C.      **The Opt-In Order**

In addition to alleging liability for sexual abuse against BSA, sexual abuse claims in the BSA case implicate certain partner organizations presently or formerly authorized by the BSA to sponsor or otherwise support scouting units.  Many catholic parishes located within the geographic region of the Debtor are chartered organizations.  While the Debtor in this case does not consider itself a BSA chartered organization as that term is used in the ordinary sense, the Debtor states that it is, for purposes of the BSA Plan, expressly defined as a "Chartered Organization."  (*See* Objection ¶ 19 (citing BSA Plan, Article V.S.8).)  The Debtor notes that certain claimants in this case have also asserted claims for for Boy-Scouts-related abuse.  (*Id.* ¶ 20.)

On October 7, 2022, and in accordance with the confirmed BSA Plan, the Debtor filed a *Motion for Entry of an Order Authorizing the Debtor to "Opt In" to Treatment as a Participating Chartered Organization Under the Boy Scouts of America Chapter 11 Plan and Granting Related Relief Pursuant to §§ 105(A) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019*.  ("Opt-In Motion," ECF Doc. # 1349.)  On December 2, 2022, this Court entered the

4

*Order Authorizing the Debtor to "Opt In" to Treatment as a Participating Chartered Organization Under the Boy Scouts of America Chapter 11 Plan and Granting Related Relief Pursuant to §§ 105(A) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.* ("Opt-In Order," ECF Doc. # 1498.) Pursuant to that order, the Debtor made itself a "Participating Chartered Organization," as that is defined in the BSA Plan. The result is that the Debtor in this case is a "Limited Protected Party" under the BSA Plan. BSA Plan, Article I.A.176.

### D. The Claims at Issue & Debtor's Basis for Objection

The Debtor has been named as a co-defendant in certain lawsuits with the BSA and certain sexual abuse proofs of claim filed against the Debtor in this case indicate that the claimant has also submitted a claim against the BSA. In addition, certain sexual abuse claims asserted in the Debtor's bankruptcy case implicate BSA either because, among other reasons, (i) the alleged abuser was a scoutmaster, or (ii) the alleged abuse occurred in connection with scouting events. (Objection ¶ 20.)

The Debtor submits that approximately thirty proofs of claim filed in this chapter 11 case may relate to BSA or BSA-related activities in some fashion. While the Debtor believes that it has defenses with respect to each BSA-related proof of claim, this Objection relates only to a subset of these claims—nine to be exact—that expressly allege abuse occurring after 1975 in connection with scouting-related activities. The Debtor states that these qualify as "Post-1975 Chartered Organization Abuse Claims" under the BSA Plan. (Objection ¶ 21.)

While examined in further detail in the Discussion section below, the Debtor's argument proceeds as follows: (a) all of the Claims here constitute Post-1975 Chartered Organization Abuse Claims, as defined in the BSA Plan; (b) the BSA Plan releases and enjoins such Claims against Limited Protected Parties; and (c) the Debtor is a Limited Protected Party pursuant to the

5

Opt-In Order and BSA Plan. Thus, the Debtor argues that there is no basis for liability on any of the Claims here.

The Debtor notes that Proof of Claim number 90166 was the subject of the Debtor's Sixth Omnibus Objection (*see* ECF Doc. # 1677), which sought to disallow the claim on a different basis than the one asserted in this Objection. The Court sustained the objection to claim number 90166 without prejudice.

### E.      The Responses

Two law firms filed responses opposing the Objection ("Slater Response," ECF Doc. # 2179 and "Amala Responses," ECF Doc. ## 2172, 2174, 2177, together the "Responses"),[2] each on behalf of multiple claimants. The arguments in the Responses are largely (if not purely) legal arguments, and do not add any material claimant-specific facts. The Responses agree with the facts stated above. The contents of the Responses and the legal arguments they make are addressed in the Discussion section below.

## II.      LEGAL STANDARD

### A.      Default Claim Allowance Procedure

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Pursuant to Federal Bankruptcy Rule 3001(f), a claimant

---

[2]    The "Slater Response" refers to the response brief filed on behalf of Claim Nos. 90085, 90087, 90166 because those Claimants are represented by Slater Slater Schulman LLP.

   The "Amala Responses" refers to the responses filed on behalf of Claim Nos. 90145, 90157, 90178 because those Claimants are represented by Pfau Cochran Vertetis Amala PLLC. Each of the Amala Responses are substantively identical for purposes of this Objection, and thus the Amala Response on behalf of Claim No. 90145 will simply be designated as the "Amala Response" for ease of having a single reference to the arguments made by Amala and his firm throughout. Both firms filed declarations in support of their motions.

establishes a *prima facie* case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim. *See* FED. R. BANKR. P. 3001(f); *see also* 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019) ("The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a).").

Under section 502 of the Bankruptcy Code, if an objection is made, the court shall determine the amount of such claim as of the petition date. *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citing 11 U.S.C. § 502(b); FED. R. BANKR. P. 3007). Section 502(b)(1) provides that claims may be disallowed if they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

"To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019). But by producing "evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust* (*In re Motors Liquidation Co.*), No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (reciting identical burden-shifting

7

framework).

To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006). Accordingly, federal pleading rules also apply in assessing a proof of claim's validity. *See Morse v. Rescap Borrower Claims Tr.*, No. 14 Civ. 5800 (GHW), 2015 WL 353931, at *4 (S.D.N.Y. Jan. 26, 2015) (citing *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009)).

### B.  Claim Allowance Procedure Order

In this case, the Claim Objection Procedures specifically identify and limit certain objections to such federal pleading rules:

> For a non-evidentiary hearing to address whether the Contested Claim has failed to state a claim against the Debtor which can be allowed and should be dismissed pursuant to Bankruptcy Rule 7012(b) (a "Sufficiency Hearing"). Unless the Debtor serves the holder of the claim (the "Claimant") with a Notice of Merits Hearing (as defined herein), the Sufficiency Hearing shall go forward at the return date set in accordance with (f)(i) above (or such other date as may be scheduled by the Debtor). The legal standard of review that will be applied by the Court at a Sufficiency Hearing will be equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim upon which relief can be granted, in accordance with Bankruptcy Rule 7012(b).

(Claim Objection Procedures ¶ 3(g)(iii).)

Bankruptcy Rule 7012(b) makes applicable Federal Rule of Civil Procedure 12(b)–(i). *See* FED. R. BANKR. P. 7012(b). In turn, Federal Rule of Civil Procedure 12(b)(6) addresses motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In other words, the Claim Objection Procedures limit the bases for Debtor's objections in non-evidentiary hearings, i.e., Sufficiency Hearings, to challenges under Rule 12(b)(6). This is consistent with law in this Circuit stating that where a party objects to a claim as facially

defective, the analysis of the claim "is guided by the familiar standards applicable to a motion to dismiss." *In re Residential Capital, LLC*, 563 B.R. 477, 487 (S.D.N.Y. 2016).

    **C.**    **Motion to Dismiss Standard**

In turn, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining the plausibility of the allegations, courts must assess the complaint by "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). This tenet, however, is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory, do not suffice." *Id.*

To be plausible, "the complaint's '[factual] allegations must be enough to raise a right to relief above the speculative level.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 500 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Similarly, a complaint is properly dismissed when, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### III.  DISCUSSION

The discussion below proceeds as follows: (A) the Court explains the scope of the dispute and then examines the Debtor's generally applicable arguments with respect to all Claims; (B) the Court analyzes the arguments in the Slater Response and Debtor's Reply thereto; and (C) the Court analyzes the arguments in the Amala Response and Debtor's Reply thereto.

The Debtor's Reply convincingly disposes of the arguments in the Slater and Amala Responses.  The Court concludes that the BSA Plan released the Disputed Claims; therefore, the Disputed Claims must be disallowed here.  Therefore, the Court **SUSTAINS** the Objection and **DISALLOWS** the Disputed Claims.

### A.     The Debtor's Objection and Scope of Dispute

The Debtor asserts that each of the Claims should be disallowed because they are released, channeled, and enjoined pursuant to several provisions of the BSA Plan and Confirmation Order.  As such, the Debtor contends that there is no basis to state a claim against the Debtor upon which relief can be granted.[3]  The Debtor's argument begins with certain points that are not disputed by the claimants.

- The effective date of the BSA Plan was April 19, 2023, thus it is now effective.

- Each of the proofs of claim that are subject of this Objection allege scouting-related abuse that first occurred on or after January 1, 1976, and thus constitute "Post-1975 Chartered Organization Abuse Claims," as defined in the BSA Plan.

- In accordance with a Court Order in this case, the Debtor made itself a "Participating Chartered Organization" and, in turn, makes the Debtor a "Limited Protected Party" under the BSA Plan.  (*See* Opt-In Order.)

---

[3]    The Debtor does not explain what standard it considers applicable for purposes of disallowing the Claims here.  However, as this Court has already explained in the Fourth Omnibus Objection Opinion in this case, *see In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. 58, 69 (Bankr. S.D.N.Y. 2023), the Claim Objection Procedures impose a Rule 12(b)(6) standard, and it is appropriate to dismiss released claims pursuant to that standard.

These three points form the basis for one final and central point to the Debtor's argument, which are not disputed by the Responding Claimants—the now-effective BSA Plan affords the Debtor certain protections from the Claims at issue here. Specifically, the BSA Plan enjoined and released the Claims via a channeling injunction. The Debtor cites the following portions of the BSA Plan in support:

- "Holders of Post-1975 Chartered Organization Abuse Claims and Pre-1976 Chartered Organization Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Post-1975 Chartered Organization Abuse Claim and Pre-1976 Chartered Organization Abuse Claim against any of the Limited Protected Parties and may not proceed in any manner against any of the Limited Protected Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Post-1975 Chartered Organization Abuse Claims and Pre-1976 Chartered Organization Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents." BSA Plan, Article III.B.10.b(iii).

- "[A]ll holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: … (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims…" *Id.* at Article X.J.3.

- "(b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party…" *Id.* at Article X.F.1.

With these undisputed facts established, the Debtor's argument for disallowing the Claims is simple—because the BSA Plan releases the Claims against the Debtor, there is no basis

11

to allege liability against the Debtor on the Claims. *See Gupta v. Headstrong, Inc.*, No. 17-CV-5286 (RA), 2018 U.S. Dist. LEXIS 56008, at *7–8 (S.D.N.Y. Mar. 30, 2018) (holding that it is appropriate to grant a motion to dismiss on the basis of release where the terms of the release are clear and unambiguous); *ResCap Liquidating Tr. v. Liebert Corp. (In re Residential Capital, LLC)*, Nos. 12-12020 (MG), 14- 01969 (MG), 2015 Bankr. LEXIS 1820, at *3–4 (Bankr. S.D.N.Y. June 2, 2015) (granting in part and denying in part motion to dismiss claim in light of third-party release in chapter 11 plan); *accord In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. at 68–72 (disallowing and expunging claims subject to the Debtor's Independent Reconciliation and Compensation Program and other contractual releases, pursuant to the Claim Objection Procedures Order in this case).

A motion to dismiss claims should be granted where the claims are subject to a release that is not subject to any factual dispute. As this Court recognized in the Fourth Omnibus Objection Opinion in this case, the Claim Objection Procedures apply a motion to dismiss standard that makes dismissal of released claims appropriate. *See In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. 58, 69 (Bankr. S.D.N.Y. 2023). Furthermore, the parties agree on all relevant facts pertaining to the Claims and the release (i.e., the BSA Plan). The Responding Claimants argue that as a matter of timing, their claims should not be disallowed *yet*. These are legal arguments that may properly be addressed applying a motion to dismiss standard; there are no disputed facts that must be resolved at a merits hearing.

### B.    Slater Response

The Slater Response argues that, despite its claims being subject to the BSA Plan, the Debtor's attempt to disallow the claims is "premature." The Slater Response observes that there are presently sixteen appeals pending in the Third Circuit from the BSA Confirmation Order.

(Slater Response ¶ 2.) The Third Circuit declined to stay the effective date of the BSA Plan. Nevertheless, the Slater Response argues that the fate of the BSA Plan is unsettled. (*Id.*)

The Slater Response argues that claimants are faced with a potential "legal limbo." (*Id.* ¶ 3.) If their claims in this bankruptcy case are expunged, and then the BSA Confirmation Order is vacated, the claimants argue that they will be left with no compensation and no forum in which to proceed. They argue that this result is fundamentally unfair and unnecessary and would be avoided if this objection is held in abeyance pending resolution of the Third Circuit appeals.

The Debtor reiterates that the BSA Plan is effective, and that the Third Circuit refused to grant a stay pending appeal. Debtor cites authority for the uncontroversial assertion that confirmed and unstayed plans are routinely enforced pending appeal. *See, e.g., In re Prudential Lines*, 170 B.R. 222, 244 (S.D.N.Y. 1994) (noting that "it has long been held that in the absence of a stay pending appeal of the plan confirmation, the bankruptcy court is entitled to implement the plan"). The Slater Response cites no countervailing precedent, and relies only on its argument that the Responding Claimants will have "no forum in which to proceed" if their claims are disallowed and the BSA Confirmation Order is vacated. That is not a meritorious reason to delay ruling on the Debtor's Objection to the Claims at issue here.

C.      **Amala Response**

The Amala Response poses a different argument that despite its Claims being subject to and released by the BSA Plan, certain preexisting injunctions in the case were actually extended by the BSA Plan for some period beyond the Effective Date, which, the Amala Response contends, prevents the Debtor from moving to disallow the Claims.

This argument relies on a Consent Order that was entered during the pendency of the Boy Scouts case. The order not only stayed certain actions by claimants against the BSA debtor and

13

certain affiliated parties, but also prevented the BSA debtor and certain affiliates from "seeking remand, discovery, or dismissal" of the claimant's claims (the "Stay"). (*See* Amala Decl., Ex. 3, at 8.) The parties appear to agree that this Stay applied to claims made against the Debtor, apparently through later amendment(s) to the Consent Order. (*See* Amala Decl., Ex. 2.)

Next, the Amala Response argues that, upon confirmation of the BSA Plan, this Consent Order and Stay was to remain effective for some additional period of time. The Amala Response cites the provision of the BSA Plan that states:

> All injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation **Date shall remain in full force and effect until the latest to occur of, as applicable**: the Effective Date, the Release Date (as defined in the applicable Insurance Settlement Agreement or other settlement agreement), and **the Limited Protected Party Injunction Date** (which Limited Protected Party Injunction Date shall be no later than one (1) year following the Effective Date except as provided in the Settlement Trust Agreement).
>
> To the extent not otherwise in place, pending the occurrence of the Release Date (as defined in the applicable Insurance Settlement Agreement), the United Methodist Release Effective Date (as defined in the United Methodist Settlement Agreement), or other release date set forth in any other settlement agreement, any Claim that would be released or subject to the Channeling Injunction upon the occurrence of conditions set forth herein and in any applicable settlement agreement (including the occurrence of the Release Date or similar defined term (as defined in the applicable settlement agreement) **shall be stayed and enjoined pending satisfaction of such conditions** (the "Post-Confirmation Interim Injunction").

BSA Plan, Article X.D (emphasis added).

The Amala Response argues that this means all survivors' claims against the Debtor remain stayed, cannot be channeled or dismissed until at least April 19, 2024, and cannot be the subject of action by the Debtor, including an action to have the claims dismissed or disallowed.

14

The first problem with the Amala Response is that it does nothing beyond citing this isolated provision to support its argument. It does not show how the defined terms in the BSA Plan relate to one another or the Claims at issue. The Amala Response selects the longest time frame in the list of options for how long "all injunctions and stays" will be extended. This ignores that this list begins with the qualifier "as applicable," and that the list itself includes other triggering dates, like the plan Effective Date, as possible dates for expiration of such stays.

While the BSA Plan implements a complex system to stay, channel, and release various types of claims against many different parties, the Amala Response lays out no principled reasoning to explain why the Stay expires for the specific claims in question one year after the effective date of the plan. Importantly, the Amala Response does not contend that there is any path towards successfully litigating the Claims at issue here. The upshot of the entire argument is that while the BSA Plan clearly releases and enjoins these Claims, the Court must wait one year before entertaining a motion to disallow them, without any explanation what purpose this would serve under the BSA Plan.

The issues with the Amala Response interpretive argument are further compounded when examining the entire BSA Plan and other provisions related to the Claims at issue. No one contests that the Claims here are subject to the channeling injunction in the plan. The release and the channeling injunction in the BSA Plan became effective on the "Effective Date" of the BSA Plan, by its express terms.[4] The Debtor convincingly explains why the BSA Plan allows the

---

[4] *See, e.g.*, BSA Plan, Art. X.J.3. ("Releases by Holders of Abuse Claims. As of the Effective Date…."); *id.*, Art. X.F.1 ("on and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, … any Post-1975 Chartered Organization Abuse Claim against the Limited Protected … shall be permanently and forever stayed, restrained and enjoined…"); *id.*, Art. X.C. (plan becomes binding and effective on the Effective Date); *see also Notice of Effective Date*, ECF Doc. # 11123, *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del. Apr. 9, 2023), Ex. A at 2 ("Article X of the Plan contains important releases of the Debtors and certain third parties, exculpation, and injunction provisions, including, without

Debtor to enforce the channeling injunction and why nothing in the BSA Plan should be construed to limit the Debtor's ability to do so.

First, the channeling injunction begins with the phrase "Notwithstanding anything to the contrary herein . . . ." BSA Plan, Art. X.F.1. Thus, all other provisions of the BSA Plan yield to the channeling injunction, rather than the channeling injunction yielding to the post-confirmation interim injunctions pointed to in the Amala Response.

Second, the BSA Plan also makes plain that the Debtor here may enforce the channeling injunction:

> Any Protected Party, Limited Protected Party, or Opt-Out Chartered Organization may enforce the Channeling Injunction as a defense to any Claim (in whole or in part) brought against such Protected Party, Limited Protected Party, or OptOut Chartered Organization that is enjoined under the Plan as to such Protected Party, Limited Protected Party, or Opt-Out Chartered Organization and may seek to enforce such injunction in a court of competent jurisdiction.

BSA Plan, Article X.G.5.

Third, the BSA Plan further provides that nothing in the BSA Plan shall be construed to limit the scope, enforceability, or effectiveness of the Channeling Injunction:

> Nothing in the Plan or the Settlement Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the Settlement Trust's assumption of all liability with respect to Abuse Claims.

BSA Plan, Article X.G.3.

Considering these provisions, the Amala Response's argument—which is barely explained in the context of the single provision it points to—is also at odds with the remainder of

---

limitation, the Channeling Injunction, the protection for Insureds and Co-Insureds of Settling Insurance Companies, the Post-Confirmation Interim Injunction, and the Insurance Entity Injunction. Pursuant to the Confirmation Order and Affirmation Order, all such provisions are now in full force and effect.").

the BSA Plan and how it treats the Claims at issue. The Debtor has clearly shown that objecting and moving to disallow the Claims is not barred by the BSA Plan; indeed, that action seems to be a contemplated effect of the Plan for Limited Protected Parties that are subject to parallel litigation for such claims.

For those reasons, the Amala Response fails to provide any meritorious reason to delay ruling on the Debtor's Objection to the Claims at issue here. In turn, the Debtor has clearly shown that the Disputed Claims are all subject to releases in the BSA Plan, and that the Disputed Claims should be disallowed.

## IV.    CONCLUSION

For the reasons discussed herein, the Court **SUSTAINS** the Objection and **DISALLOWS** the Disputed Claims.

**IT IS SO ORDERED.**

Dated:    July 13, 2023
         New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge
