PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:      (212) 561-7700
Facsimile:      (212) 561-7777
Email:          jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kdine@pszjlaw.com
                bmichael@pszjlaw.com
and

BURNS BAIR LLP
Timothy W. Burns, Esq. (admitted *pro hac vice*)
Jesse J. Bair, Esq. (admitted *pro hac vice*)
10 E. Doty St., Suite 600
Madison, WI 53703-3392
Telephone: (608) 286-2808
Email:  tburns@burnsbair.com
Email:  jbair@burnsbair.com
*Counsel and Special Insurance Counsel for the Official Committee*
*of Unsecured Creditors of The Roman Catholic Diocese*
*of Rockville Centre, New York*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,[1]<br><br>                Debtor. | Chapter 11<br><br>Case No. 20-12345 (MG) |

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE
2004 AUTHORIZING EXAMINATION OF WITNESSES
<u>AND THE PRODUCTION OF DOCUMENTS</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of The Roman Catholic Diocese of Rockville Centre, New York (the "<u>Diocese</u>" or the "<u>Debtor</u>") in the above-captioned case under chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), by and through its undersigned counsel, hereby moves (the "<u>Motion</u>")[2] this Court for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") authorizing the issuance of a document and examination subpoena to Arrowood Indemnity Company ("<u>Arrowood</u>").[3] In support of the Motion, the Committee respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      Through this Motion, the Committee seeks entry of an order, pursuant to Bankruptcy Rule 2004 authorizing the Committee to issue a subpoena to Arrowood. Arrowood is one of the insurers of the Diocese and certain of its affiliates. The Committee estimates that approximately 358 of the Sexual Abuse Claims filed in the Bankruptcy Case are covered, at least in part, under the Arrowood Policies. As a result, information relating to Arrowood's ability to satisfy its obligations to the Diocese pursuant to the Arrowood Policies is an important piece of the Committee's evaluation of the Diocese's financial condition.

---

[2] The Declaration of Timothy W. Burns, Esq. (the "<u>Burns Declaration</u>") is being filed concurrently herewith in support of the Motion.

[3] "Arrowood" refers to Arrowood Indemnity Company, the Delaware domiciled insurance company, and each of its predecessors, predecessors-in-interest, successors, present and former parents, subsidiaries, affiliates, divisions, departments, area or regional offices, managing general agents, directors, officers, agents, employees, representatives, attorneys, investigators, contractors, subcontractors, experts, consultants, each person within its control, and each person acting or purporting to act on its behalf. Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the *Official Committee of Unsecured Creditors in the Bankruptcy of The Roman Catholic Diocese of Rockville Centre, New York's First Requests for Production and First Interrogatories to Arrowood Indemnity Company* (the "<u>Committee Arrowood Requests</u>"). The Committee Arrowood Requests are attached as **Exhibit B** hereto.

2. Make no mistake, the lynchpin of reaching a consensual Plan in this case remains the adequacy of the Diocese's and the parishes' financial contribution. If the parties cannot reach agreement on that fundamental issue, the Arrowood information becomes less relevant. Nevertheless, if a consensual Plan does become possible because the Diocese and the parishes agree to contribute an appropriate amount, the Committee needs to be able to fully understand Arrowood's ability to pay, especially if the Diocese's rights under the Arrowood Policies are to be assigned to a settlement trust following Plan confirmation.

3. Thus, the Committee seeks information from Arrowood, as authorized by Bankruptcy Rule 2004, to aid in its understanding of the Debtor's property, liabilities, and financial condition. In particular, the Committee seeks documents and information from Arrowood related to Arrowood's ability to perform pursuant to the Arrowood Policies and Arrowood's policies, procedures, and actions in connection with the Arrowood Policies and those policies' coverage for Sexual Abuse Claims. The information being requested from Arrowood is important for the Committee to carry out its duties under section 1103 of the Bankruptcy Code and to work to maximize unsecured creditors' recoveries in this case.

## JURISDICTION

4. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein are sections 1103 and 1109(b) of the Bankruptcy Code and Bankruptcy Rule 2004.

## RELEVANT FACTS

**A.      Background**

5.      On October 1, 2020 (the "<u>Petition Date</u>"), the Debtor commenced its Chapter 11 case by filing a voluntary petition for relief under Bankruptcy Code Chapter 11. Pursuant to Bankruptcy Code Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as debtor in possession.

6.      No trustee or examiner has been appointed in this case.

7.      On October 16, 2020, the United States Trustee for Region 2 appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of nine individuals who hold claims against the Debtor, including eight individuals who were sexually abused as minors by perpetrators for whom the Debtor was responsible and one representative of a minor with a civil rights claim against the Debtor.[4]

8.      Arrowood is responsible for insurance policies that provide coverage to the Diocese and Other Insured Entities relating to Sexual Abuse Claims. The Committee estimates that approximately 59% of the Sexual Abuse Claims filed in this Bankruptcy are covered, at least in part, by Arrowood Policies.

9.      From 1957 until 1976, the Diocese purchased both primary and excess or umbrella insurance coverage (the "<u>Royal Primary Policies</u>" and the "<u>Royal Umbrella Policies</u>") from Royal Indemnity Insurance and Royal Globe Insurance Company (collectively now known as Arrowood Indemnity Company, "<u>Royal</u>" and its affiliates).[5]

---

[4] *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 71].

[5] *See* Declaration of Kenneth Porter in support of the Debtor's Motion for a Preliminary Injunction Under Sections 362 and 105(a) of the Bankruptcy Code, Adv. Pro. 20-1226, Dkt. No. 129, ¶ 6 (July 21, 2022) ("<u>Porter Decl.</u>").

DOCS_NY:48215.2 18491/002

10.     The Royal Policies cover both the Diocese and the Other Insured Entities. The Royal Primary Policies provide the first layer of insurance coverage for the Diocese and the Other Insured Entities. These insurance policies do not have aggregate limits of liability, but they do have per-occurrence limits of liability. These per occurrence policy limits range from $150,000 to $300,000, depending on the policy period.  This means that the Royal Primary Policies cover the first $150,000 to $300,000 of liability, for as many claims as may be asserted for any injury occurring during the policy period. The Royal Primary Policies also provide for an unlimited payment of defense costs for each claim, as long as the Royal Primary Policies' limits of liability have not been exhausted for that claim.[6]

11.     Until 1964, the Royal Primary Policies were the Diocese's only insurance coverage—there are no Royal Umbrella Policies before that date.[7]

12.     From 1964 to 1976, Royal also provided the Diocese with excess or umbrella insurance coverage. The Royal Umbrella Policies cover liability that exceeds the limits of liability for the Royal Primary Policies.  From June 4, 1964 to June 4, 1966, the Royal Umbrella Policies had a $2 million per-occurrence limit of liability with no aggregate limit of liability per policy period. From June 4, 1966 to June 4, 1970, the per-occurrence limits were $4 million, apparently with no aggregate limit of liability per policy period. From June 4, 1970 to October 1, 1973, the Royal Umbrella Policies had per-occurrence and likely aggregate limits of liability of $4 million per policy period.  And, from October 1, 1973 through March 1, 1975, the Royal Umbrella Policies had per occurrence and likely aggregate limits of $7 million per policy period. Finally,

---

[6] *Id.* ¶ 7.

[7] *Id.* ¶ 8.

from March 1, 1975 through October 1, 1976, the Royal Umbrella Policies had per-occurrence and likely aggregate limits of $12 million per policy period.[8]

13.     On the Petition Date, the Diocese commenced an adversary proceeding against various insurers, including Arrowood, seeking a declaratory judgment regarding the scope of its insurance coverage and damages for breach of contract.[9]

14.     Based upon the recently filed Annual Statement for 2022 for the Arrowood Indemnity Company, the Diocese argued in support of its motion for a preliminary injunction that there were "Practical Limits on [Arrowood] Policies [because of] Arrowood's Financial Distress."[10]     In several years of financial filings, Arrowood has acknowledged the Delaware Department of Insurance's involvement in claims management and decisions.  The uncertainty of Arrowood's finances, its future, and the involvement of regulatory authorities create significant impediments to the Committee's ability to assess, negotiate, and potentially reach resolution concerning Arrowood's coverage exposure.

15.     On February 20, 2007, the Insurance Department of the State of Delaware entered the Decision and Final Order of the Insurance Department of the State of Delaware and the Insurance Commissioner for the State of Delaware (the "Arrowood Order").[11]

---

[8] *Id.* ¶¶ 9-10.

[9] The Committee intervened in the action (Docket No. 38).  The reference was withdrawn and the proceeding against Arrowood is now pending in the District Court, Case No. 1:20-cv-110111-JLR. Under the District Court's Order reinstating the Committee as a party to the Arrowood insurance action, the Committee is not permitted to propound its own discovery. Case No. 20-cv-11011, Dk. No. 63, ¶ 2.b. Recently, the Committee asked the Diocese if it would agree to allow the Committee to attend depositions, but the Diocese refused. Burns Declaration Exhibit 3.

[10] *Reply in Support of Motion for a Preliminary Injunction Under Sections 362 and 105(a) of the Bankruptcy Code* [Adv. Pro. 20-01266 Docket No. 184] at 9-10 citing to the Arrowood Annual Statement as of December 31, 2022.

[11] *In the matter of The Proposed Acquisition of Royal Indemnity Company, a Delaware domiciled property/casualty insurance company, Security Insurance Company of Hartford, a Delaware domiciled property/casualty insurance company, Guaranty National Insurance Company, a Delaware domiciled property/casualty insurance company, and Royal Surplus Lines Insurance Company, a Delaware domiciled property/casualty insurance company by Arrowpoint Capital Corp., a Delaware Corporation, and Arrowpoint Capital, LLC, a Delaware limited liability company, John*

16.     Pursuant to the terms of the Arrowood Order, the Insurance Department of the State of Delaware appointed a "Claims Monitor" to "receive and act upon Policyholder complaints," "track indemnity reserve adequacy, monitor litigation management, review claims denials, monitor claims staffing levels, perform ongoing analysis and measurement of claims initiatives, monitor benchmark projected versus actual statistical data, identify and assess new exposures, and assess all extra contractual and bad faith claims," and "oversee the Companies' good faith participation in alternative dispute resolution forums for disputed Policyholder claims."[12]

17.     On February 25, 2022, the Insurance Commissioner for the State of Delaware issued an Order of Supervision by Consent placing Arrowood under supervision pursuant to 18 Del. C. § 5942.[13]

18.     In the Debor's Disclosure Statement, the Debtor included a chart that illustrated a potential per-claimant insurance recovery of approximately $400,000.[14] Given that over half of that amount would likely need to come from Arrowood, it is important for the Committee's assessment of the Diocese's financial condition that the Committee have a complete understanding of Arrowood's ability to pay under its policies.

---

*Tighe, Sean Beatty and Dennis W. Cahill* (Del. Ins. Dep't) [Docket No. 313].   A copy of the Arrowood Order is attached as Exhibit 1 to the Burns Declaration.

[12] Burns Declaration Exhibit 1 (Arrowood Order) at 126.

[13] *In the matter of Arrowood Indemnity Company, a Delaware Domestic Insurance Company*, (Del. Ins. Comm.) [Docket No. 4633-2022]. A copy of this Order is attached as Exhibit 2 to the Burns Declaration.

[14] *See* Disclosure Statement for Plan of Reorganization Proposed by The Roman Catholic Diocese of Rockville Centre, New York, No. 20-12345 [Docket. 1615] at 7 (Jan. 27, 2023) (noting that "[w]hile the current value of the Debtor's third-party insurance rights is unliquidated, the Debtor believes that such insurance rights have substantial value" and explaining the Debtor's belief that "the non-insurance settlement contribution, coupled with the insurance rights contribution, brings both the aggregate and per-claim recovery well in excess of any other Diocesan chapter 11 plan in history").

## RELIEF REQUESTED

19.     The Committee respectfully requests entry of an order pursuant to Bankruptcy Rule 2004 authorizing the Committee to issue a subpoena for examination and the direct production of documents from Arrowood, substantially in the form annexed hereto as **Exhibit B**.

## BASIS FOR RELIEF

20.     Bankruptcy Rule 2004 (a) provides that "[o]n the motion of any party in interest, the court may order the examination of any entity."   Bankruptcy Rule 2004(a). Bankruptcy Rule 2004 is primarily used for "revealing the nature and extent of the bankruptcy estate, and for discovering assets, examining transactions, and determining what wrongdoing occurred." *In re Kelton*, 389 B.R. 812, 820 (Bankr. S.D. Ga. 2008); *see also In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000) (Rule 2004's purpose is to "determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors"); *In re The Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (Rule 2004's purpose is to assist in "revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed").

21.     Pursuant to Bankruptcy Rule 2004, a party in interest may seek both document and oral discovery related to "acts, conduct, or property of the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."   Bankruptcy Rule 2004(b).   Under Bankruptcy Rule 2004(c), the "attendance of an entity for examination and the production of documents. . . may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial."   Bankruptcy Rule 2004(c).   In turn, Bankruptcy Rule 9016 makes Federal Rule of Civil

Procedure 45 (governing subpoenas) applicable in cases under the Bankruptcy Code. Bankruptcy Rule 9016.

22. Unlike discovery under the Federal Rules of Civil Procedure (the "Civil Rules"), discovery under Bankruptcy Rule 2004 can be used as a "pre-litigation discovery device." *In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009). As such, a Bankruptcy Rule 2004 Amended Motion need not be tied to specific factual allegations at issue between parties. *In re Symington*, 209 B.R. 678, 683-684 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits "examination of any party without the requirement of a pending adversary proceeding or contested matter").

23. Moreover, the scope of a Bankruptcy Rule 2004 examination is broader than that of discovery under the Civil Rules or the Bankruptcy Rules governing adversary proceedings. *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he scope of a Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure."). In fact, courts have recognized that Bankruptcy Rule 2004 examinations may be "broad" and "unfettered," and can legitimately be in the nature of a "fishing expedition." *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *see also In re The Bennet Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (Rule 2004's purpose is to assist in "revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed"); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (E.D. Pa. 1990). "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156

B.R. 414, 432, (Bankr. S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *see also*, *Valley Forge Plaza*, 109 B.R. at 674 (finding "[t]hird parties having knowledge of the debtor's affairs, as well as a debtor itself, are subject to examination").

24.     The decision whether to authorize the requested discovery rests within the bankruptcy court's sound discretion. *See, e.g., In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992). Courts authorize discovery under Bankruptcy Rule 2004 to assist in recovering assets for the benefit of a debtor's creditors. *See In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983) (allowing discovery under Rule 2004 to help the debtor "discover and recover assets for benefit of creditors of the debtor").

25.     In addition, Bankruptcy Code Section 105(a) authorizes the Court to "issue any order . . . that is necessary or appropriate to carry out provisions of this title." 11 U.S.C. § 105(a). The Committee's investigation will, among other things, assist the Committee to fulfill its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the [D]ebtor." 11 U.S.C. § 1103(c)(2). The relief requested in this Motion will help the Committee perform this and other statutory functions more efficiently by reducing the burden and cost to the Court, the Committee, the Debtor, and all other parties in interest in this case were the Committee to be required to move for entry of individual orders for each necessary request for discovery pursuant to Bankruptcy Rule 2004. Moreover, the substantive rights of any party to object to or modify the information requested by the Committee will not be reduced or expanded by the relief requested.

26.     Here, the requested relief is well within the scope of Bankruptcy Rule 2004. There is no question that the Arrowood Policies and the proceeds of those policies are assets of

the Diocese.[15] Given the large number of claims that should be covered by the Arrowood Policies, understanding the ability of Arrowood to satisfy its obligations to the Diocese under the Arrowood Policies is an important part of understanding the Diocese's financial condition.

27.     As noted above, the adequacy of the Diocese and parish cash contribution remains the key to reaching a consensual resolution of this case. However, if a consensual Plan does become possible because the Diocese and the parishes agree to contribute an appropriate amount, the Committee needs to be able to fully understand Arrowood's ability to pay, especially if the Diocese's rights under the Arrowood Policies are to be assigned to a settlement trust following Plan confirmation

28.     Based on the foregoing, the Court should enter an order authorizing the Committee to issue the subpoenas seeking the examination and production of documents from Arrowood.

## **NO PRIOR REQUEST**

29.     No prior request for the relief sought in this Motion has been made to this or any other Court.

## **NOTICE**

30.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Debtor; (c) Arrowood; and (d) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  Due to the nature of the relief

---

[15] *See, e.g., Memorandum Opinion and Order Denying the Debtor's Motion for a Preliminary Injunction* [Adv. Pro. 20-01226 Docket No. 202] at 30; *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 837 F.2d 92 (2d Cir. 1998); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir. 1986); *In re Circle K Corp.,* 121 B.R. 257, 261 (Bankr. D. Ariz. 1990); *Minoco Grp. of Cos., Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re Minoco Grp. of Cos., Ltd.),* 799 F. 2d 517, 519 (9th Cir. 1986).

requested herein, the Committee respectfully submits that no further notice of this Motion is required.

WHEREFORE, the Committee respectfully requests that this Court: (i) enter an order substantially in the form attached hereto as **Exhibit A**, granting the relief sought herein; and (ii) grant such other and further relief to the Committee as the Court may deem proper.

Dated:  New York, New York
        August 15, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James I. Stang*
James I. Stang, Esq.
Iain A. W. Nasatir, Esq.
Karen Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777
jstang@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com
bmichael@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

BURNS BAIR LLP

*/s/ Timothy W. Burns*
Timothy W. Burns, Esq. (admitted *pro hac vice*)
Jesse J. Bair, Esq. (admitted *pro hac vice*)
10 E. Doty St., Suite 600
Madison, WI 53703-3392
Telephone: (608) 286-2808
Email:  tburns@burnsbair.com
Email:  jbair@burnsbair.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors of The Roman Catholic Diocese of Rockville Centre, New York*

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br><br>                          Debtor. | Chapter 11<br><br>Case No. 20-12345 (MG) |

### ORDER GRANTING THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING EXAMINATION OF WITNESSES AND THE PRODUCTION OF DOCUMENTS

This matter coming before the Court on the Motion of the Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Diocese of Rockville Centre, New York for entry of an order, pursuant to Bankruptcy Rule 2004, authorizing the issuance of a document and examination subpoena to Arrowood Indemnity Company ("Arrowood")[1] (the "Motion");[2] the Court having reviewed and considered the Motion; the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (iii) notice of the Motion as described in the Motion was proper under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor, it is hereby ORDERED that:

1.      The Motion is GRANTED.

---

[1] "Arrowood" refers to Arrowood Indemnity Company, the Delaware domiciled insurance company, and each of its predecessors, predecessors-in-interest, successors, present and former parents, subsidiaries, affiliates, divisions, departments, area or regional offices, managing general agents, directors, officers, agents, employees, representatives, attorneys, investigators, contractors, subcontractors, experts, consultants, each person within its control, and each person acting or purporting to act on its behalf.

[2] Capitalized terms not defined herein shall have the meanings and definitions ascribed to them in the Motion.

2.     The Committee is authorized to seek an examination of and documents from Arrowood, as more fully described in <u>Exhibit B</u> to the Motion, in accordance with Bankruptcy Rules 2004(c) and 9016.

3.     Nothing contained herein shall prejudice the Committee's rights under Bankruptcy Rule 2004 and other applicable laws to seek further document productions or written or oral examinations from Arrowood or in connection with this case.

4.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: New York, New York
       ___ __, 2023

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

DOCS_NY:48215.2 18491/002

**EXHIBIT B**
**Form of Exhibit of A to Subpoena to Arrowood**

## DEFINITIONS

1. "Abuse Claim" means a claim against the Diocese of Rockville Centre premised upon Sexual Abuse.

2. "Arrowood" means Arrowood Indemnity Company, the Delaware domiciled insurance company, and each of its predecessors, predecessors-in-interest, successors, present and former parents, subsidiaries, affiliates, divisions, departments, area or regional offices, managing general agents, directors, officers, agents, employees, representatives, attorneys, investigators, contractors, subcontractors, experts, consultants, each Person within its control, and each Person acting or purporting to act on its behalf.

3. "Arrowood Annual Statement" means the Annual Statement as of December 31, 2022 of the Condition and Affairs of the Arrowood Indemnity Company.

4. "Arrowood Order" means the Decision and Final Order of the Insurance Department of the State of Delaware and the Insurance Commissioner for the State of Delaware on February 20, 2007, at Docket No. 313, *In the matter of The Proposed Acquisition of Royal Indemnity Company, a Delaware domiciled property/casualty insurance company, Security Insurance Company of Hartford, a Delaware domiciled property/casualty insurance company, Guaranty National Insurance Company, a Delaware domiciled property/casualty insurance company, and Royal Surplus Lines Insurance Company, a Delaware domiciled property/casualty insurance company by Arrowpoint Capital Corp., a Delaware Corporation, and Arrowpoint Capital, LLC, a Delaware limited liability company, John Tighe, Sean Beatty and Dennis W. Cahill* (Del. Ins. Dep't), and all accompanying exhibits, memoranda, proposed orders, findings of facts, and other documents.

5. "Bankruptcy Case" means the above-captioned chapter 11 bankruptcy case styled *In re The Roman Catholic Diocese of Rockville Centre, New York*, (Bankr. S.D.N.Y., Case No. 20-12345 (MG)).

6. "Claim Files" means all Documents, Communications, and other information that constitute, reflect, refer to, or relate in any way to, a claim for insurance coverage by a policyholder. This definition includes, without limitation: (a) all Documents and Communications that constitute, reflect, refer to, or relate in any way to, Your handling, analysis, adjustment, investigation, evaluation of, and decision-making process with respect to, any claim for insurance coverage; (b) all Documents and Communications that constitute, reflect, refer to, or relate in any way to, Your possession, collection, receipt, and gathering of Documents and other information in connection with any claim for insurance coverage by a policyholder; and (c) all of Your internal and external Communications that constitute, reflect, refer to, or relate in any way to, any claim for insurance coverage by a policyholder.

7. "Claims Monitor" means the individual(s) or entity appointed by the Insurance Department of the State of Delaware pursuant to the Arrowood Order to "receive and act upon Policyholder complaints", "track indemnity reserve adequacy, monitor litigation management, review claims

denials, monitor claims staffing levels, perform ongoing analysis and measurement of claims initiatives, monitor benchmark projected versus actual statistical data, identify and assess new exposures, and assess all extra contractual and bad faith claims", and "oversee the Companies' good faith participation in alternative dispute resolution forums for disputed Policyholder claims", and all of their predecessors, predecessors-in-interest, successors, present and former parents, subsidiaries, affiliates, divisions, departments, area or regional offices, managing general agents, directors, officers, agents, employees, representatives, attorneys, investigators, contractors, subcontractors, experts, consultants, each Person within their control, and each Person acting or purporting to act on their behalf.

8. "Communication" means any writing transmitted between Persons or any oral conversation of any kind or character, including by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, email, instant message, and facsimile communications or transmittals of Documents, and all Documents concerning such writings or oral conversations.

9. "Committee" means the Official Committee of Unsecured Creditors in the Bankruptcy of The Roman Catholic Diocese of Rockville Centre, New York.

10. "CVA" means New York's Child Victims Act, codified at N.Y. C.P.L.R. 214-g (McKinney), that was signed into law on February 14, 2019.

11. "CVA window" means the period of time from August 14, 2019, to August 14, 2021, allowed by N.Y. C.P.L.R. 214-g and subsequent amendments for victims of child sexual assault to file civil claims that would otherwise have been time barred.

12. "Describe" means to state with specificity and particularity.

13. "Diocese", "Diocese of Rockville Centre", or "Debtor" means the Roman Catholic Diocese of Rockville Centre, New York, the above-captioned debtor in possession, and includes both the civil entity and the Canon law juridic person identified as the Diocese of Rockville Centre as the "Debtor" on its voluntary petition for chapter 11 relief commencing the above-captioned Bankruptcy Case, and any predecessor thereof, as well as any person (including the bishop or apostolic administrator of the Diocese) acting on behalf of the Diocese.

14. "Document" means the broadest possible sense as specified in and interpreted under Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, graphic or otherwise recorded matter, however produced, reproduced, or stored, and all "writings" as defined in Rule 1001 of the Federal Rules of Evidence, and all other tangible things by which human communication is transmitted or stored, meaning any kind of printed, recorded, graphic, or photographic matter, however printed, produced, reproduced, copies, reproductions, facsimiles, drafts and both sides thereof, including without limitation any kind of written, typewritten, graphic, photographic, printed, taped or recorded material whatsoever, regardless whether the same is an original, a copy, a reproduction, a facsimile, telex or telefax, and regardless of the source or author thereof, including without limitation, any writing filed for reporting or other purposes with any state, federal or local agency; notes; memoranda, including but not limited to memoranda of telephone conversations; letters;

audited financial statements; unaudited financial statements; financial ledgers; intra-office or inter-office communications; circulars; bulletins; manuals; results of investigations; progress reports; study made by or for business or personal use; financial reports and data of any kind; working papers; contracts; agreements; affidavits; declarations; statements; bills; books of accounts; vouchers; transcriptions of conversations or tape recordings; desk calendars; bank checks; purchase orders; invoices; charge slips; receipts; expense accounts; statistical records; cost sheets; journals; diaries; time sheets or logs; computer data; job or transaction files; appointment books; books, records, and copies; electronic mail messages; extracts and summaries of other documents; drafts of any of the above, whether used or not; and any other writing or recording; computer and other business machine printouts, programs, listings, projections, as well as any carbon or photographic or copies, reproductions or facsimiles thereof and all copies which differ in any way from the original, including without limitation, all forms of electronic media, data, data storage and other forms of electronic or computer-stored or computer-generated communications, data, or representations. This includes, but is not limited to, such material in the form of Electronically Stored Information: that is, any data present in memory or on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), saved in an archive, present as "deleted" but recoverable electronic files in memory or on any media, and, present in any electronic file fragments (files that have been deleted and partially overwritten with new data) from files containing such material. Where any otherwise duplicate document contains any marking not appearing on the original or is altered from the original, then such item shall be considered to be a separate original document. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

15. "ESI" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by You, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information-storing electronic devices of You and Your employees, or on associated external storage media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other Electronically Stored Information created using any version of Microsoft Word, Outlook, Powerpoint, Excel, Visio, or Access, Word Perfect, Oracle, or any other Microsoft, Adobe, Corel or other currently available "off-the-shelf" application shall be produced in native form; that is, the form in which the document is currently stored on whatever media it currently resides. The document should not be locked, resaved, restructures, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be produced in a copy precisely reproducing its entire state as present in Your systems. Unless otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in whatever database and/or file/directory structures are used by Your mail processing software. All metadata and other unapparent or hidden data related to mail messages shall be produced, including, but not limited to, any file attachments, message priority flags, message read/access timestamps, and, in the case of e-mail sent to distribution lists, information on the Personship of such lists at the time the e-mail was sent.

16. "Identify" means: (a) with respect to any Person, to state the Person's full name, employer, job title, present or last known address, telephone number, and email address; and (b) with respect to any Document, to state the title, date, author(s), recipient(s), cc recipient(s), bcc recipient(s),

production numbers (if any), and present location and custodian of the Document, or alternatively, to produce an accurate and complete copy of the Document.

17. "Parish" means the juridical person of each parish within the Diocese of Rockville Centre.

18. "Person" means any natural person, including an employee or former employee. "Person" also means any business, legal, or governmental entity, including, without limitation, agencies, corporations, partnerships, proprietorships, groups, associations, companies, or other organizations, as well as any agent or former agent thereof.

19. "Petition Date" means October 1, 2020.

20. "Religious" means any individual whom a diocesan bishop, the Apostolic See, religious superior, or other authority of the Roman Catholic Church has considered, treated, or determined is a member of a Roman Catholic religious institute, society, house, or order and should be treated as religious, and includes but is not limited to, nun, postulant, novice, temporary professed, perpetually professed, religious brother, religious sister, superior, major superior, prior, abbot, abbot primate, abbot superior, supreme moderator, superior of a monastic congregation, provincial, prior provincial, provincial superior, supreme superior, monk, and member of religious institute, and may include cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, simplex, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, vicar, moderator, director, counselor, councilor, president, and master.

21. "Representative" means any person acting or purporting to act for or on behalf of any other person.

22. "Royal" means Royal Indemnity Company and Royal Globe Insurance Company, and each of their predecessors, predecessors-in-interest, successors, present and former parents, subsidiaries, affiliates, divisions, departments, area or regional offices, managing general agents, directors, officers, agents, employees, representatives, attorneys, investigators, contractors, subcontractors, experts, consultants, each Person within their control, and each Person acting or purporting to act on their behalf.

23. "Royal Policies", "Arrowood Policies", or "Policies" means any policy of insurance sold by Royal Indemnity Company or Royal Globe Insurance Company to the Diocese of Rockville Centre, or any policy under which the Diocese of Rockville Centre is insured, as well as any riders, endorsements, amendments, binders, cover notes, placing slips, line slips, daily reports, memoranda of insurance, certificates of insurance, and any changes or modifications thereof.

24. "Sexual Abuse" means any of the following acts of :

(a) Touching by the abuser of the child's intimate body parts (genitals, breasts or buttocks), the touching by the child of the abuser's intimate body parts effected by the use of a position of authority, or by the inducement of the abuser, or

(b) Sexual intercourse, masturbation, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, to the genital or anal openings:

(i) Of the child's body by any part of the abuser's body or any object used by the abuser for this purpose;

(ii) Of the child's body by any part of the body of another person, or by any object used by the abuser or another person for this purpose, when effected by the use of a position of authority by the inducement of the actor;

(c) Inappropriate contact and/or contact that infringes upon another's personal, physical boundaries including but not limited to groping, kissing, extended hugging, and/or any unwelcomed touching;

(d) Grooming, including but not limited to: talk of a sexual nature, talk of a romantic nature, communications expressing love that is unnatural of how a clergy member or other religious should speak to a child.

25. "Supervision Order" means the Order of Supervision by Consent entered by the Insurance Commissioner for the State of Delaware on February 25, 2022, placing Arrowood under supervision pursuant to 18 Del. C. § 5942, Docket No. 4633-2022 in the captioned action: *In the matter of Arrowood Indemnity Company, a Delaware Domestic Insurance Company*, (Del. Ins. Comm.).

26. "Underwriting Files" means all Documents and Communications that constitute, reflect, refer to, or relate in any way to, Your possession, collection, receipt, or gathering of Documents and other information concerning or evidencing the underwriting, placement, purchase, sale, issuance, renewal, failure to renew, increase or decrease in coverage, cancellation, termination, drafting, execution, construction, meaning, or interpretation of, or payment of premiums for, the Arrowood Policies.

27. "You" and "Your" refer to Arrowood.

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION

1.  Unless otherwise defined herein, all words and phrases used in these requests are to be given their plain, customary, and usual meaning.

2.  Arrowood should respond separately and in writing to each request for production of documents set forth herein.

3.  All uses of the conjunctive include the disjunctive, and vice versa. All words in the singular include the plural, and vice versa. All uses of the word "all" include "any," and vice versa. All uses of the word "each" include "every," and vice versa. The use of a verb in any tense

encompasses the use of the verb in all tenses. These constructions should be applied so as to make the requests more inclusive rather than more exclusive.

4. Each request shall operate and be construed independently. Unless otherwise indicated, no request limits the scope of any other requests.

5. The document requests set forth herein cover all Documents that are within Your possession, custody, or control, or that are otherwise available to You, regardless of whether they are currently in Your possession. Consequently, the scope of the document requests includes, but is not limited to, responsive Documents that are in the possession of Your officers, directors, employees, attorneys, accountants, and other agents.

6. Documents should be produced either: (a) as they are kept in the ordinary course of business, complete with the original file folders, binders, or other containers in which they are stored (or legible copies of the labels from those folders, binders, or containers); or (b) organized according to the document request(s) to which they are responsive. If You elect the latter mode of production, each Document or set of Documents from a file folder, binder, or other container should be accompanied by a legible copy of the label from the file folder, binder, or container or some other reliable indicator of the file folder, binder, or container from which it was taken.

7. If any Documents requested or referred to herein are subject to destruction under any document retention and destruction policy or program, the Documents should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action and any appeals therefrom, unless otherwise permitted by the Court.

8. If a request is made for production of Documents which are no longer in Your possession, custody, or control, You should provide the following information: the date on which such Documents were most recently in your possession, custody, or control; what disposition You made

6

of the Documents; Identify the Person currently in possession, custody, or control of the Documents; and Identify any Persons referred to in the Documents and/or sent a copy of the Documents. If the Documents have been destroyed, Identify the Person who destroyed them and the Person who directed that the Documents be destroyed; state when the Documents were destroyed; and state the reasons for destruction of the Documents.

9.   For any Document You withhold, in whole or in part, on the basis of any claim of attorney-client privilege, the work-product doctrine, or other protection from disclosure, You should specify in a log the nature, subject matter, date, and title of such Document; Identify the author(s) and recipient(s) of the Document; and explain the nature and basis of each privilege or protection asserted.

10. Produce all portions of any responsive Document to which a claim of attorney-client privilege, the work-product doctrine, or other protection from disclosure does not apply.

11. If You have a good-faith objection to any specific request, or any part thereof, state the specific nature of Your objection and whether it applies to the entire request or only to a portion thereof. If You object only to part of a request, produce Documents or provide information responsive to the remaining unobjectionable parts.

## **REQUESTS TO PRODUCE**

1.   All Communications between Arrowood and the Claims Monitor regarding the Abuse Claims, the Arrowood Policies, the CVA, or other claims for Sexual Abuse brought under the CVA window against an Arrowood insured.

2.   All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "receive and act upon Policyholder complaints."

3. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "track indemnity reserve adequacy."

4. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "monitor litigation management."

5. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "review claim denials."

6. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "monitor claim staffing levels."

7. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "perform ongoing analysis and measurement of claims initiatives."

8. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "monitor benchmark projected versus actual statistical data."

9. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "identify and assess new exposures."

10. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "assess all extra contractual and bad faith claims."

11. All Documents and Communications relating to the Claims Monitor's mandate in the Arrowood Order to "oversee [Arrowood's] good faith participation in alternative dispute resolution forums for disputed Policyholder claims."

12. All Documents and Communications relating to the Claims Monitor's approval of settlements for any of the Abuse Claims or any other claim for Sexual Abuse brought under the CVA window against an Arrowood insured.

13. All Documents and Communications relating to the Claims Monitor and any declaratory judgment action naming Arrowood as a plaintiff or defendant that involves underlying claims for Sexual Abuse brought under the CVA window against an Arrowood insured.

14. All Documents and Communications relating to the establishment of reserves for each of the Abuse Claims.

15. All Documents and Communications relating to the establishment of reserves for other claims of Sexual Abuse brought under the CVA window against an Arrowood insured.

16. All Documents and Communications relating to any settlements of claims for Sexual Abuse brought under the CVA window against an Arrowood insured.

17. All Documents and Communications relating to practices and procedures developed, initiated, or used with respect to claims for Sexual Abuse brought under the CVA window against an Arrowood insured.

18. All Documents and Communications relating to the New York Department of Financial Services' Insurance Circular Letter No. 11 (2019),[1] and its requirements of property and casualty insurers regarding the CVA.

19. All Documents and Communications relating to the Company's evaluation that it remains a "going concern" per the Arrowood Annual Statement at page 14.1.

20. All Documents and Communications relating to the Assessments described in the Arrowood Annual Statement at page 14.20 insofar as they related to the New York Property and Casualty Security Fund.

---

[1] Available at https://www.dfs.ny.gov/industry_guidance/circular_letters/cl2019_11.

# INSTRUCTIONS FOR INTERROGATORIES

1.  Unless otherwise defined herein, all words and phrases used in these requests are to be given their plain, customary, and usual meaning.

2.  Arrowood should respond separately and in writing to each request set forth herein.

3.  All uses of the conjunctive include the disjunctive, and vice versa. All words in the singular include the plural, and vice versa. All uses of the word "all" include "any," and vice versa. All uses of the word "each" include "every," and vice versa. The use of a verb in any tense encompasses the use of the verb in all tenses. These constructions should be applied so as to make the requests more inclusive rather than more exclusive.

4.  Each request shall operate and be construed independently. Unless otherwise indicated, no request limits the scope of any other request.

5.  These requests call for information (including any information contained in or on any Document or thing) that is known or available to You, or in Your possession, custody, or control, including all information known or available to Your attorneys, agents, representatives, or any other person acting or purporting to act on Your behalf or under the direction or control of You or Your attorneys, agents, representatives or investigators. Separate and complete responses are required for each request.

6.  If You cannot answer any request fully and completely, after exercising due diligence to make inquiry and secure the information necessary to do so, please so state, and (a) answer such request to the fullest extent possible; (b) specify the portion of such request that You claim You are unable to answer fully and completely; (c) state the facts upon which You rely to support Your contention that You are unable to answer that request fully and completely; and (d) state what knowledge, information and belief You have concerning the unanswered portion of each such

DOCS_NY:48215.2 18491/002

request. If your response is qualified in any particular respect, set forth the details of such qualification.

7. If You withhold any information or decline to fully identify any person, document, or communication, or portion thereof, in response to any of the request set forth below on grounds of privilege or any other claim of immunity from discovery, then for each identification, document, communication, or portion thereof withheld, state the following: (a) the type of document (e.g., letter, memorandum, contract, etc.); (b) its title; (c) its date; (d) its subject matter; (e) the name, address, and employer at the time of preparation of the individual(s) who authored, drafted, or prepared it; (f) the name, address, and employer at the time of dissemination of the individual(s) to whom it was directed, circulated, or copied, or who had access thereto; and (g) the grounds on which the Document is being withheld (e.g., "attorney-client privilege," "work product immunity," etc.).

8. If You object or otherwise decline to set forth in your response any of the information requested by any request specify the exact grounds upon which You rely in sufficient detail to permit the Plaintiff and the Court to determine the legal sufficiency of Your objection or position, and provide the most responsive information You are willing to provide without a court order.

## **INTERROGATORIES**

1. Please describe how Arrowood has set or adjusted its reserves in response to the Abuse Claims and other Sexual Abuse claims brought under the CVA window.

2. Please state Arrowood's current reserves set for the Abuse Claims and describe how this sum was calculated.

3. Please state Arrowood's current reserves set for all Sexual Abuse claims brought under the CVA window and how this sum was calculated.

4. Please state if the Claims Monitor has indicated that Arrowood's indemnity reserves for the Abuse Claims are "adequate" and describe the factors that led to this determination.

5. Please describe how the Claims Monitor has communicated with Arrowood to "identify and assess new exposures" relating to the Abuse Claims or any other Sexual Abuse claims brought under the CVA window.

6. Please identify any settlements that Arrowood has entered or approved that relate to any claim for Sexual Abuse brought against one of Arrowood's insureds under the CVA window and provide the dates of these settlements.

7. Please state whether Arrowood has entered or approved any settlement that relates to any claim for sexual abuse brought against one of its insureds under the CVA window.

8. Please identify the number of claims for which Arrowood has "agreed to participate in the defense of certain of those tendered suits that allege abuse by the DRVC and/or the Affiliated Entities…." as described in the Arrowood Annual Statement at page 14.22.

9. Please identify the number of claims alleging abuse by the DRVC and/or the Affiliated Entities during the time within which Arrowood issued liability policies to the DRVC and/or Affiliated Entities and for which Arrowood has denied coverage.

10. Please identify the reasons for the increase in estimated costs of loss and loss adjustment expenses and why they were higher than expected for Abuse, as described in the Arrowood Annual Statement at page 14.36 (Note 25.A.).

11. Please identify any discussion or reporting of Abuse reserves in the Notes to Financial Statements in the Arrowood Annual Statement at pages 14.39-14.41.

12. Please identify the Loss Reserve Philosophy for Abuse and identify any differences between the Loss Reserve Philosophy for Asbestos/Environmental Reserves as discussed in the Arrowood Annual Statement at page 14.39.

13. Please identify how loss development for Abuse is reported or allowed for within Schedule P – Parts 2- 4, at page 34 of the Arrowood Annual Statement.

14. With respect to Interrogatories Nos. 8–13, please identify any material changes to Your responses that must be made to make those responses truthful and accurate in light of developments since the issuance of Arrowood Annual Statement.

DOCS_NY:48215.2 18491/002

Dated: New York, New York
August __, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Draft*
James I. Stang, Esq.
Iain A. W. Nasatir, Esq.
Karen Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777
jstang@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com
bmichael@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

BURNS BAIR LLP
*/s/ Draft*
Timothy W. Burns, Esq. (admitted pro hac vice)
Jesse J. Bair, Esq. (admitted pro hac vice)
10 E. Doty St., Suite 600
Madison, WI 53703-3392
Telephone: (608) 286-2808
Email:  tburns@burnsbair.com
Email:  jbair@burnsbair.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors of The Roman Catholic Diocese of Rockville Centre, New York*