**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br><br>                      Debtor. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 20-12345 (MG) |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE DEBTOR'S**
**SIXTEENTH OMNIBUS OBJECTION**

*A P E A R A N C E S:*

JONES DAY
*Attorneys for the Debtor*
250 Vesey Street, Floor 32
New York, NY 10281
   By:    Corinne Ball, Esq.
             Todd Geremia, Esq.
             Victoria Dorfman, Esq.
             Benjamin Rosenblum, Esq.
             Andrew Butler, Esq.

SLATER SCHULMAN LLP
*Counsel for Claimants 90579, 90587, 90586, 90585, 90581, 90582, 90583, 90584, 90588, 90580, 90577, 90578*
445 Broad Hollow Road, Suite 419
Melville, NY 11747
   By:    Stephenie Lannigan Bross, Esq.

SWEENEY, REICH & BOLZ, LLP
*Counsel for Claimant 90590, 90591* and *90589*
1981 Marcus Ave., Suite 200
Lake Success, NY 11042
   By:    Michael G. Dowd, Esq.
             Michael H. Reich, Esq.

HERMAN LAW
*Counsel for Claimants 90597,* 90592, 90593, 90594, *90595, 90596, 90598*
225 W. 34th Street, 9th Floor
New York, NY 10122
   By:    Stuart S. Mermelstein, Esq.

JEFF ANDERSON & ASSOCIATES, PA
*Counsel for Claimants 90604, 90605, 90606, 90608, 90609*
363 7th Avenue, 12th Floor
New York, NY 10001
By:    Patrick Stoneking, Esq.

MERSON LAW, PLLC
*Counsel for Claimants 90600, 90599, 90610*
950 Third Avenue, 18th Floor
New York, NY 10022
By:    Jordan K. Merson, Esq.
       Sarah R. Cantos, Esq.
       Alice A. Bohn, Esq.

LAW OFFICES OF MITCHELL GARABEDIAN
*Counsel for Claimant 90601*
100 State Street 6th Floor
Boston, MA 02109
By:    Mitchell Garabedian, Esq.

THOMAS COUNSELOR AT LAW, LLC
*Counsel for Claimant 90611*
One World Trade Center, 85th Floor
New York, NY 10007
By:    Kathleen R. Thomas, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is an omnibus objection to claims (the "Objection," ECF Doc. # 2372) by The Roman Catholic Diocese of Rockville Centre (the "Debtor" or "Diocese") pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking to disallow or expunge claims listed on Schedule 1 to the Objection, on the grounds that the claimants have not sufficiently pled that the Debtor controlled the alleged abuser or entity with which the abuser was affiliated.  Fourteen responses (the "Responses") were filed by seven

different law firms.[1] The Debtor filed a reply (the "Reply," ECF Doc. # 2458). The Court held a hearing (the "Hearing") on the Objection on September 6, 2023.

The Objection focuses on proofs of claim that were previously subject to the sixth omnibus objection ("Sixth Omnibus Objection," ECF Doc. # 1677) and were disallowed, with leave to amend, pursuant to this Court's *Order on Debtor's Sixth Omnibus Objection to Claims* (ECF Doc. # 2142) and *Memorandum Opinion and Order Sustaining the Debtor's Sixth Omnibus Objection to Claims*, *In re Roman Cath. Diocese of Rockville Ctr.*, 651 B.R. 399 (Bankr. S.D.N.Y. 2023) (the "Sixth Omnibus Opinion," ECF Doc. # 2132). Familiarity with the Sixth Omnibus Opinion is assumed, as the Court will not recite the detailed reasoning set forth in the opinion.

The claimants who are subject to the Sixteenth Omnibus Objection re-filed Proofs of Claim with amendments. The Debtor argues that, even as amended, the claimants have not stated a claim against the Debtor. The Court agrees. For the reasons set forth herein, the Court **SUSTAINS** the Objection **WITH PREJUDICE.**

## I.     THE OBJECTION AND RESPONSES

The Debtor objects to thirty-three proofs of claim (the "Proofs of Claim") asserted against the Debtor by the respective claimants (the "Claimants"); the Proofs of Claim and Claimants are tabulated in Schedule 1 to the Objection. The Debtor objects to the Proofs of

---

[1] Slater Schulman LLP filed a response (the "Slater Response," ECF Doc. # 2440) for claim numbers 90579, 90587, 90586, 90585, 90581, 90582, 90583, 90584, 90588, 90580, 90577, and 90578. Herman Law filed seven responses for claim numbers 90597, 90592, 90593, 90594, 90595, 90596 and 90598 (identified hereinafter as "Herman Claim [#] Response," ECF Doc. ## 2430, 2431, 2432, 2433, 2434, 2436 and 2438), Jeff Anderson & Associates, PA filed a response (the "Anderson Response, ECF Doc. # 2437) for claim numbers 90604, 90605, 90606, 90608, and 90609. Merson Law PLLC filed two responses, one for claims 90599 and 90600 (the "Omnibus Merson Response," ECF Doc. # 2427) and one for claim 90610 (the "90610 Merson Response," ECF Doc. # 2428). Thomas Counselor at Law, LLC filed a response for claim number 90611 (the "Counselor Response," ECF Doc. # 2423). The Law Offices of Mitchell Garabedian filed a response for claim number 90601 (the "Garabedian Response," ECF Doc. # 2439). Sweeney, Reich & Bolz, LLP filed a response (the "Sweeney Response," ECF Doc. # 2426) for claim numbers 90590, 90591 & 90589.

3

Claim on the grounds that the claims allege abuse that occurred at, and by individuals associated with and controlled by, entities that are separate from the Diocese and not supervised, controlled, managed, or directed by the Diocese. (Objection ¶ 15.) Each of the Proofs of Claim subject to this Sixteenth Omnibus Objection involves a claim that was previously disallowed pursuant to this Court's decision and order on the Debtor's Sixth Omnibus Objection to claims with leave to amend. (*Id.*)

Responses (the "Responses") were filed for all but one[2] of the claims subject to the Objection. The Responses largely re-argue points that the Court rejected in the Sixth Omnibus Opinion or attempt to re-package or re-order facts to plead around the Sixth Omnibus Opinion. As discussed below, the Responses fail to demonstrate that the amended Proofs of Claim adequately allege a claim against the Debtor in connection with alleged abuse at these separate institutions.

## II. LEGAL STANDARD

The Court must apply federal pleading standards under Rule 12(b)(6) and Rule 8(a) of the Federal Rules of Civil Procedure to determine whether the Claimants have set forth non-conclusory factual allegations which, if proved, would entitle the Claimants to relief. *In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R at 409. All of the abuses alleged here were committed by individuals in the first instance, and not the Debtor entity directly. As a

---

[2] No response was filed for Claim 40008. Schedule 1 mistakenly omitted Claim 40008 as the amended claim corresponding to original claim 20048. (*See* Objection, Schedule 1). However, the Claimant received notice of the Objection and the body of the Objection asks that Claim 40008 be disallowed. (*See* Affidavit of Service (ECF Doc. # 2463); Objection ¶ 26.) This Proof of Claim, which was filed as an Adult Survivors Act claim despite not alleging abuse of an adult, is the same claim as Proof of Claim 20048, which was previously disallowed, without leave to amend, pursuant to this Court's Sixth Omnibus Opinion. *See In re Roman Cath. Diocese of Rockville Ctr.*, 651 B.R. at 436. As this claim was previously adjudicated by this Court pursuant to this Sixth Omnibus Opinion, it is barred by principles of res judicata and collateral estoppel. *See Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (recognizing res judicata bars claims where there was a final adjudication on the merits, the previous action involved the same parties, and the claims asserted in the subsequent action could have been raised in the prior action). Accordingly, the Objection with respect to Claim 40008 is **SUSTAINED WITH PREJUDICE**.

result, all causes of action here are premised on the Debtor's duty to prevent the abuse in question, based on its relationships with other individuals or entities.

In the Sixth Omnibus Opinion the Court identified two theories of liability that could impose such a duty on the Debtor: (1) via its direct relationship with the abuser in question ("Abuser Control Theory"); and/or (2) via its direct relationship with Religious Institutions[3] or Orders (the "Institution Control Theory"). Under either theory, conclusory allegations regarding employment or agency are insufficient to state claims for relief under the federal pleading standards. *Diocese of Rockville Ctr*, 651 B.R. at 418. Where a plaintiff alleges that an entity's liability hinges on its status as an employer, the plaintiff must do more than allege that an employment relationship exists in conclusory fashion to state a claim. *Id.* (citing *Kudatzky v. Minskoff*, 709 F. Supp. 2d 217, 217 (S.D.N.Y. 2010); *Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*, No. 17-CV-4058, 2018 WL 6655607, at *2 (S.D.N.Y. 2018)). The same goes for plaintiffs relying on the existence of agency relationships. *Id.* (citing *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 286 (S.D.N.Y. 2014) (finding that plaintiff failed to establish that one defendant was liable for the acts of a co-defendant via an agency relationship, where the plaintiff merely alleged that the defendant had compensated the co-defendant but did not plead any other facts bearing on control over the alleged co-defendant agent).

### III.  DISCUSSION

The Court considers here whether the amended claims allege sufficient facts, using the principles articulated in the Sixth Omnibus Opinion, to state a claim under a control theory. The Court finds that no Claimant subject to the Objection has done so and **SUSTAINS** the Objection.

---

[3] All capitalized terms not otherwise defined shall have the meaning ascribed to them in the Sixteenth Omnibus Opinion.

The Court has carefully reviewed all the Claims and Responses and combed through the newly added facts. None of them are sufficient to state a claim. The Court finds that the allegations and Responses fall into three general categories:

(A) They simply re-assert allegations already deemed insufficient by the Court in ruling on the Sixth Omnibus Claims Objection and Canon Law;

(B) They make new conclusory allegations of an employment or agency relationship supported only by allegations of fact that are insufficient to state a claim; and

(C) They rely on the Bishop's authority under Canon Law to bestow or remove "faculties," which do not allege sufficient facts regarding a secular employment or agency relationship.

The Court discusses each category in turn and then briefly considers and rejects the additional arguments that 1) recent New York state case law changes the result here and 2) Claimants are entitled to discovery.

**A. Reassertions of Allegations Already Deemed Insufficient**

Many of the amended Proofs of Claim simply recycle allegations and assertions that the Court has considered and rejected as insufficient to properly allege a claim for relief against the Debtor. Those same assertions are insufficient to withstand this Sixteenth Omnibus Objection. For each Religious Institution at issue, the Court briefly considers those allegations added to claims, which the Court already rejected in the Sixth Omnibus Opinion.

1. <u>Little Flower</u>

Claims 90581, 90582, 90583, 90584, 90585, 90586, 90587, and 90588 allege abuse concerning Little Flower Children and Family Services, which is run by the distinct legal entity Little Flower Children and Family Services of New York. Each amended Proof of Claim added

a four or five-sentence addendum, asserting that the Diocese is responsible for abuse occurring at Little Flower. According to this brief addendum, "[t]he basis for this assertion is that Little Flower's facility was operated within the geographical confines of the Diocese of Rockville Centre." The Court has already considered the allegation that the abuse occurred within the geography of Long Island and found it insufficient to state a claim against the Debtor. *See Diocese of Rockville Ctr*, 651 B.R. at 426–27.

Proofs of Claim 90592, 90593 and 90594, likewise, allege abuse concerning Little Flower. Each of these amended Proofs of Claim added an eight-paragraph narrative. However, every sentence in this "new" narrative, while reordered and contained in the Proof of Claim form itself, is entirely duplicative of claimants' allegations in responses to the Sixth Omnibus Objection. (*See* ECF Doc. ## 1795 1800, 1801.) The Court has already considered these allegations and determined them wanting. *See Diocese of Rockville Ctr*, 651 B.R. at 422–26.

### 2. Cormaria Retreat Center

Proof of Claim 90589 alleges abuse concerning Cormaria Retreat Center, affiliated with the religious order Religious of the Sacred Heart of Mary. There, the claimant did not alter the allegations in the original Proof of Claim but added two exhibits—Catholic Directory excerpts and a report by Thomas P. Doyle. These same documents were attached to the response to the Debtor's Sixth Omnibus Objection to claims. (*See* ECF Doc. # 1807.) These documents were already considered by the Court on the Sixth Omnibus Objection to claims and found wanting. *See id.*, 651 B.R. at 422–26.

### 3. St. Ignatius Retreat House

Proof of Claim 90601 alleges abuse concerning St. Ignatius Retreat House, which is affiliated with the religious order the Society of Jesus or Jesuits. The Proof of Claim includes a

"new" attorney addendum discussing canon law but contains no new factual allegations. Instead, the addendum cites to the report by Thomas P. Doyle attached to claimant's response to the Debtor's Sixth Omnibus Objection and provisions of Canon Law, also cited in claimant's response to the Sixth Omnibus Objection. (*See* ECF Doc. # 1812-1, Ex. A). The Court addressed this information in detail in disallowing this claim in ruling on the Sixth Omnibus Objection. *Diocese of Rockville Centre*, 651 B.R. at 420–25.

4. Chaminade High School

Two proofs of claim (90599 and 90600) allege abuse in connection with Chaminade High School, affiliated with the religious order known as the Society of Mary or the Marianists. Proofs of Claim 90599 and 90600 assert alleged abuse by the same lay person at Chaminade High School. The amended proof of claim alleges that Chaminade is "a High School within the Diocese of Rockville Centre" and contains a conclusory allegation that Chaminade "operated under the exclusive control of the Diocese." As the "example[s]" of the Diocese's putative "control" over Chaminade and alleged "supervision" of Chaminade's staff, these amended proofs of claim offer the same sort of allegations that the Court has already ruled as insufficient to support an assertion that the Diocese controlled Chaminade or other institutions run by religious orders: that "the Bishop would attend events such as masses, graduations, etc. and supervise [Chaminade teachers and students]," that "[t]here were also [diocesan] priests at the school for confessions, masses and other events," and that the "the Diocese and Chaminade have posted that the Bishop attends sporting events, plays and other events at Chaminade and Chaminade hosts events for the benefit of the Diocese." *See id.*, 651 B.R. at 428–30.

5. Coindre Hall High School

Two proofs of claim (90579 and 90604) allege abuse in connection with Coindre

8

Hall High School, affiliated with the religious order Brothers of the Sacred Heart. Claim 90579 alleges that the Diocese purportedly "supervised, controlled and directed" the Brothers of the Sacred Heart because this religious order is (i) listed in the 1958 Official Catholic Directory, and (ii) a Catholic religious order that has "operated within the territorial confines of the Diocese of Rockville Centre since at least 1939." The Court has already ruled that such allegations are insufficient to state a claim against the Diocese. *See id.*, 651 B.R. at 426–30. The allegations contained in Claim 90604 are discussed *infra* in Section III.C

      6. <u>Lasalle Military Academy</u>

Eight proofs of claim (90578, 90590, 90591, 90596, 90598, 90605, 90606, and 90611) allege abuse in connection with La Salle Military Academy, affiliated with the religious order the Christian Brothers. Proof of claim 90578 asserts that La Salle Military Academy should be deemed part of the Diocese of Rockville Centre because a different school run by the same religious order, the Christian Brothers, is listed on a brochure on the Diocese's website and "[n]owhere in the description of the school is there any indication that the school is not part of the Diocese of Rockville Centre." For reasons already stated by the Court in ruling on the Sixth Omnibus Objection, these allegations are not sufficient to state a claim against the Diocese. *See id.*, 651 B.R. at 428–30.

Proof of Claims 90590 and 90591 re-submit the same material that was already relied upon in connection with the Sixth Omnibus Objection, and simply asserts on the basis of this same information in the amended proof of claim that La Salle Military Academy was "located within the territorial boundary, authority, oversight, and control of the Diocese of Rockville Centre." The Court has already rejected these assertions as insufficient to state a claim against the Diocese. *See, id.*, 651 B.R. at 422–28.

9

As with Proofs of Claim 90592, 90593 and 90594, addressed above, Proof of Claim 90596 similarly re-asserts an eight-paragraph narrative that, while re-ordered and contained in the Proof of Claim form itself, is entirely duplicative of claimants' allegations in responses to the Sixth Omnibus Objection. (*See* ECF Doc. # 1802). The Court has already considered these allegations and determined that they are insufficient to properly state a claim against the Diocese. *See Diocese of Rockville Centre*, 651 B.R. at 422-26.

Proof of Claim 90598 reiterates material already submitted by this claimant's counsel in connection with their response to the Sixth Omnibus Objection, which the Court found insufficient in the Sixth Omnibus Opinion. (*See, e.g.*, ECF Doc. ##. 1808-1, 1808-2, 1808-3.)

Finally, Proof of Claim 90611 asserts that the Diocese exercised influence through Canon Law, "handle[d] all of the tax filings" for LaSalle Military Academy, participated in marketing and promotional events, and was involved in budgeting decisions to conclude that the Diocese "had control, supervision, or authority" over LaSalle Military Academy. The Court has already determined that such allegations are insufficient to state a claim against the Diocese. *Diocese of Rockville Centre*, 651 B.R. at 427–30. Proof of Claim 90611 also asserts that the Diocese "appointed and employed faculty" at LaSalle Military Academy and "shaped the curriculum." But, while the amended Proof of Claim alleges that another specifically named diocesan priest was assigned to La Salle Military Academy by the Diocese, it does not assert that the alleged abuser was a diocesan priest or set forth any factual support for the conclusory assertion that the alleged abuser was assigned to La Salle Military Academy by the Diocese. The Court held in the Sixth Omnibus Objection that this type of allegation was not sufficient. *See Diocese of Rockville Centre*, 651 B.R. at 423–24 (finding the allegation that a Diocese priest, who was not the abuser,

was stationed at the institution to be insufficient to state a claim).  The allegations in Proofs of Claim 90605 and 90606 are discussed are discussed *infra* in Section III.C.

       7.   <u>St. Mary of the Angels Home</u>

Seven proofs of claim (90577, 90580, 90595, 90597, 90608, 90609, 90610) allege abuse in connection with St. Mary of the Angels Home, affiliated with the religious institute Covenant of the Sisters of Mercy.

Proofs of Claim 90577 and 90580 assert that the Diocese "controlled, supervised, directed and/or staffed" St. Mary of the Angels Home on the sole basis that a former Executive Director of the Home testified that, for a time, the Home had a "general liability policy [that] 'was with the Diocese of Rockville Centre.'"  These claimants made the same assertion in responding to the Sixth Omnibus Objection, which the Court deemed insufficient to state a claim against the Diocese.  *See Diocese of Rockville Centre*, 651 B.R. at 435–36.

Proofs of Claim 90595 and 90597 re-assert the same narrative that, while reordered and contained in the Proof of Claim form itself, is entirely duplicative of allegations made by these claimants in responses to the Sixth Omnibus Objection.  (*See* ECF Doc. ## 1798, 1805.)  The Court, as a result, has already considered these allegations and determined that they are insufficient to properly state a claim against the Diocese.  *See Diocese of Rockville Centre*, 651 B.R. at 422–26.

Finally, Proof of Claim 90610, similar to the Proofs of Claim for 90599 and 90600, asserts in conclusory fashion that St. Mary's "operated under the exclusive control of the Diocese" and that this "included the Diocese's hiring, retention, and supervision of employees, including my abuser."  But the asserted factual support in connection with this allegation is the

11

20-12345-mg    Doc 2516    Filed 09/26/23    Entered 09/26/23 08:44:05    Main Document
Pg 12 of 18

same sort of information that the Court has already determined is insufficient to state a claim against the Diocese: "there was a chapel at St. Mary's which, to my understanding, was presided over by a Diocesan priest." The Court rejected a nearly identical allegation in the Sixth Omnibus Opinion. *See Diocese of Rockville Centre*, 651 B.R. at 423–24. The allegations contained in Proofs of Claim 90608 and 90609 are discussed *infra* in Section III.C.

### B. New, but Insufficient, Allegations

While each of the Claims discussed in this section provides some new specific factual allegations related to control, the Court concludes that these allegations do not contain sufficient "factual content to nudge [the] claim . . . across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). With the exception of the new allegations of the conferral of faculties, which are discussed below, the Court considers the Omnibus Merson Response, which relates to Proofs of Claim 90599 and 90430, to be the only response that provides argument about truly new allegations not explicitly ruled on through the Sixth Omnibus Opinion. These allegations include:

- "Teachers at Chaminade would be disciplined by the Diocese." (Omnibus Merson Response ¶ 4.)
- "Diocesan employees would come to Chaminade to check on the teachers and students to supervise them." (*Id.*)
- "[The abuser] received a pension from the Diocese that was created for lay employees of schools, parishes, cemeteries and related pastoral organizations of the Diocese." (*Id.*)

As to the first two allegations, in the Sixth Omnibus Opinion the Court held that "inherent in the allegations that the Debtor *may* hire and appoint *some* personnel to other Catholic entities within the diocesan territory, is the recognition that the Debtor does not hire and appoint *all personnel* at every entity within diocesan territory." *See Diocese of Rockville Centre*, 651 B.R. at 423–24. The Court found these general allegations insufficient to state a claim that a Debtor had control over a *specific* abuser because the Claimants can only allege that "such authority was infrequently exercised, and only exercised for a limited group of non-abusers." *Id.* Here, the Court finds the allegations that "teachers would be disciplined by the Diocese" and that "Diocesan employees would check on the teachers" to suffer from a similar flaw  While these allegations indicate that the Diocese may have on occasion supervised or disciplined teachers generally, there is no allegation that the Diocese exercised this authority over all teachers or over the specific alleged abuser. *See id.*

These allegations are also at bottom conclusory. In an analogous context, the District Court dismissed plaintiff's claims as "conclusory" where she alleged that Fox Corp. "ma[de] hiring and firing decisions for Fox News," and "control[led] the discipline, pay, insurance, records, and supervision of Fox News." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020). In addition, plaintiff claimed that Fox Corp. "hired . . . and controlled" the work of several employees, "including the decision to retain or terminate" them, but the court noted that "[t]hese statements, devoid of any factual detail relating to the details or process of these hires, are also conclusory." *Id.* Ultimately, the court held that "the Amended Complaint's claims that [certain employees] were each hired and retained by Fox Corp., without more, are naked conclusions unworthy of weight." *Id.* Here too, the vague allegations that the Diocese "checked on" or "disciplined" teachers, are "devoid of any factual detail relating to the details or

13

process" by which the Diocese exercised this alleged oversight. *Id.* These conclusory allegations are insufficient to establish an employment or agency relationship between the Debtor and the alleged abuser.

Conversely, the allegation that the alleged abuser received a pension for lay Diocesan employees this allegation contains concrete factual content. A pension is an example of a fringe benefit, which is a factor weighing in favor of an employment relationship. *Sokola v. Weinstein*, No. 950250/2019, 78 Misc.3d 842, 187 N.Y.S.3d 493, 500 (Sup. Ct. N.Y. Cty. Feb. 7, 2023). However, the existence of fringe benefits is only *one* factor considered. *See id.* ("Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule.") *Id.* In considering whether an employment relationship exists, the predominant factor is "the extent of the employer's power to order and control the employee's performance of work." *Id.* Without any other non-conclusory factual allegations regarding any other element of the test, this allegation alone is insufficient to establish the existence of an employment relationship between the Diocese and the alleged abuser.

### C. Allegations Regarding the Conferral of Faculties

The Anderson Response, which relates to Claims 90604, 90605, 90606, 90608, 90609, makes a new argument that the Diocese confers "faculties" on members of religious orders within the Diocese to support the notion that the Diocese employs these individuals or that they work as agents of the Diocese as a matter of New York law. While the Sixth Omnibus Opinion does not address this argument, its articulated principles foreclose it. "Faculties" are a Canon Law concept that, as a matter of Roman Catholic Church doctrine, are the capability to

14

administer its sacraments and engage in other religious rituals.  (Reply ¶ 31.)   The Court found in the Sixth Omnibus Opinion that "the claimants must show that an employment or agency relationship existed between the Debtor and abuser or Religious Institutions/Orders, based on facts relevant to those theories as they are normally established in the secular context."  *See Diocese of Rockville Centre*, 651 B.R. at 422.

Here, none of the Proofs of Claim discussed in the Anderson Response allege any facts that would establish an employment or agency relationship in the secular context.  The thrust of the Anderson Response's argument is that for certain other Proofs of Claim subject to the Sixth Omnibus Objection, the claimants filed amended claims and the Diocese did not re-object to the claims.  These Proofs of Claim contained the allegation that the Bishop "removed [the accused priest's] faculties to function publicly as a priest in the Diocese of Rockville Centre."  (Anderson Response, Ex. 1).  According to the Anderson Response, the Court should infer – from this allegation regarding one abuser – that the Diocese has the power to remove *all* abusers at Religious Institutions within its geographic territory.

The Court need not decide here whether the allegation that the Diocese removed a priest's faculties is sufficient to state a claim, because none of the Proofs of Claim before the Court contain that allegation.  The Proofs of Claim subject to the Anderson Response all allege abuse by a *different* abuser than the abuser whose faculties were revoked.  In the context of the issue presented by this Objection, this means that the claimants must allege facts to show that the specific abuser at issue—and not others working at the same institution—was an employee or agent of the Diocese or that their institution can be deemed an "agent" of the Diocese.  *See Diocese of Rockville Centre,* 651 B.R. at 416–17.  The Anderson response does not point to any such facts alleged in the Proofs of Claim it addresses, but improperly aggregates them by

15

asserting that all individuals within the Diocese over whom the Bishop has the authority to bestow "faculties" should be deemed an employee or agent of the Diocese.  (*See* Anderson Response ¶ 9.)  As discussed in the Sixth Omnibus Opinion, this is insufficient to state a claim. *See Diocese of Rockville Centre,* 651 B.R. at 416–17.

### D.  Effect of New York State Cases Reversed on Appeal

At the Hearing and in the Garabedian Response, counsel relied on two cases in the New York Supreme Court Appellate Division reversing New York Supreme Court decisions purportedly analogous to the case at hand: *J.A.F. v. The Roman Catholic Archdiocese of New York*, 216 A.D.3d 454 (1st Dept May 9, 2023) and *J.D. v. The Archdiocese of New York*, 214 A.D.3d 561 (1st Dept March 23, 2023).  As an initial matter, these cases were decided—and the Court was aware of them—before the issuance of the Sixth Omnibus Opinion.

In both cases, the New York Supreme Court dismissed claims against the Archdiocese of New York.  As with the current case, those claims against the Archdiocese arose from allegations of sexual abuse by individual priests (and in one case, a religious brother) who were associated with different religious institutions.  The plaintiffs alleged that their abusers were agents of the Archdiocese, that the Archdiocese exercised supervision and control over the abusers' appointments or employ, and that a special relationship existed between the plaintiffs, the Archdiocese, and the other defendants.  The same Supreme Court judge dismissed the claims based on documentary evidence submitted by the Archdiocese. *J.A.F.,* 216 A.D.3d at 454-455; *J.D.,* 214 A.D.3d at 561-562.  The Appellate Division reversed, allowing the claims to go forward, because it found that under New York pleading rules the Archdiocese's documentary evidence did not refute the plaintiffs' allegations regarding control. *J.A.F.,* 216 A.D.3d at 454-455; *J.D.,* 214 A.D.3d at 562.  These cases have no relevance to this Objection.  Here, the Debtor

16

is not relying on documentary evidence to refute Claimant's allegations. The Proofs of Claim here fail not because the Debtor has refuted any facts, but because the Claimants have failed to allege sufficient facts in the first instance.

### E. Discovery

Claimants argue that they should get discovery, and effectively be allowed another opportunity to amend their claims before the Court determines whether they have adequately stated a claim against the Diocese. Claimants did not request any such discovery from the Debtor or apply for it with the Court before amending their claims. Nor did the Court afford claimants discovery in ruling on the Sixth Omnibus Objection. The U.S. Supreme Court ruled that "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678. Here, because claimants "have not nudged their claims across the line from conceivable to plausible, their [claims] must be dismissed." *Twombly*, 550 U.S. at 570. These Claimants have essentially had three chances to amend their Claims, as the Court considered new allegations (1) in the responses to the Sixth Omnibus Objection; (2) in the amended Proof of Claims subject to the instant Objection; and (3) allegations in the Responses to the instant Objection. The Claimants have failed to state a Claim in any of these instances. Further leave to amend would thus be futile. Accordingly, the Court **SUSTAINS** the Objection **WITH PREJUDICE.**

## IV. CONCLUSION

Within seven (7) days from the date of this Order, counsel for the Debtor, the Committee, and the Claimants shall confer and submit any further order required to grant the requested relief consistent with the terms of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

Dated:  September 26, 2023
       New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge