**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br><br>　　　　　　　　　　Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 20-12345 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING COMMITTEE MOTION FOR AN ORDER GRANTING LEAVE, STANDING, AND AUTHORITY TO PROSECUTE A CAUSE OF ACTION ON BEHALF OF THE DEBTOR AND ITS ESTATE**

*A P P E A R A N C E S:*

PACHULSKI STANG ZIEHL & JONES LLP
*Counsel for the Official Committee of Unsecured Creditors*
*of The Roman Catholic Diocese of Rockville Centre, New York*
780 Third Avenue, 36th Floor
New York, New York 10017
By:　James I. Stang, Esq.
　　　Iain A. W. Nasatir, Esq.
　　　Karen B. Dine, Esq.
　　　Brittany M. Michael, Esq.
　　　　and

BURNS BAIR LLP
*Special Insurance Counsel for the Official Committee of Unsecured Creditors*
*of The Roman Catholic Diocese of Rockville Centre, New York*
10 E. Doty St., Suite 600
Madison, WI 53703-3392
By:　Timothy W. Burns, Esq.
　　　Jesse J. Bair, Esq.

JONES DAY
*Attorneys for the Debtor and Debtor-in-Possession*
250 Vesey Street, Floor 32
New York, NY 10281
By:　Corrine Ball, Esq.
　　　Todd Geremia, Esq.
　　　Benjamin Rosenblum, Esq.
　　　Andrew Butler, Esq.
　　　　and

REED SMITH LLP
*Special Insurance Counsel for Debtor and Debtor in Possession*
599 Lexington Avenue
New York, NY 10022
  By:    Aaron Javian, Esq.
         John B. Berringer, Esq.
            and
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA 19103
  By:    Timothy P. Law, Esq.

PORZIO, BROMBERG & NEWMAN, P.C.
*Co-Counsel to Arrowood Indemnity Company,*
*formerly known as Royal Indemnity Company,*
*as successor by merger to Royal Insurance Company of America*
1675 Broadway, Suite 1810
New York, NY 10019
  By:    Brett S. Moore., Esq.
         Warren J. Martin Jr., Esq.
            and
COUGHLIN MIDLIGE & GARLAND LLP
Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
  By:    Kevin T. Coughlin, Esq.
         Adam M. Smith, Esq.
         Karen H. Moriarty, Esq.

RIVKIN RADLER LLP
*Counsel to Fireman's Fund Insurance Company,*
*National Surety Corporation, and Interstate Fire & Casualty Company*
926 RXR Plaza
Uniondale, New York 11556-0926
  By:    Siobhain P. Minarovich, Esq.
            and
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street, Suite 3600
Atlanta, GA 30308
  By:    Harris B. Winsberg, Esq.
         Matthew M. Weiss, Esq.
         Matthew G. Roberts, Esq.
            and

PARKER, HUDSON, RAINER & DOBBS LLP
Two N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
By:    Todd C. Jacobs, Esq.
        John E. Bucheit, Esq.

DUANE MORRIS LLP
*Counsel for Certain Underwriters at Lloyd's,*
*London and Certain London Market Companies*
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
By:    Russell W. Roten, Esq.
        Jeff D. Kahane, Esq.
        Nathan Reinhardt, Esq.
        Andrew E. Mina, Esq.
           and
CLYDE & CO US LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603
By:    Catalina Sugayan, Esq.
        James Moffitt, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is a motion (the "Motion," ECF Doc. # 2425) by the Official Committee of Unsecured Creditors (the "Committee") for entry of an order granting leave, standing, and authority to prosecute a proceeding on behalf of the estate of The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor") asserting violations of section 349 of the New York General Business Law ("§ 349") and section 2601 of the New York Insurance Law ("§ 2601") against Interstate Fire & Casualty Company, Fireman's Fund Insurance Company, and National Surety Corporation (collectively, "Allianz") and Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, "LMI") ("LMI" and "Allianz Insurers" are collectively referenced herein as the "Insurers"). Annexed to the Motion are: (i) a proposed form of order granting the Motion (the "Proposed Order," Motion Ex. 1), and (ii) a draft of the proposed complaint against the Insurers (the "Draft Complaint," Motion Ex. 2).

3

The Debtor filed an objection to the Motion ("Debtor Objection," ECF Doc. # 2500.) The Insurers also submitted an objection to the Motion ("Insurers Objection," ECF Doc. # 2501.) The Committee filed a reply ("Reply," ECF Doc. #2510.)

For the reasons outlined below, the Motion is **DENIED.** The claim the Committee seeks to prosecute fails to meet the legal requirements for derivative standing because the cause of action is not colorable and the benefits to the bankruptcy estate do not outweigh the costs.

## I. BACKGROUND

### A. General Background

On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for chapter 11 relief. (Motion ¶ 12.) No trustee or examiner has been appointed, but the Office of the United States Trustee filed notice of the appointment of the Committee pursuant to section 1102 of the Bankruptcy Code. (*Id*. ¶ 13 (citing ECF Doc. # 71).)

On October 1, 2020, the Debtor initiated an adversary proceeding against Insurers to, among others, seek declarations of insurance coverage for the underlying abuse claims. (Insurers Objection at 5.) This proceeding is captioned as *The Roman Catholic Diocese of Rockville Centre, New York v. Arrowood Indemnity Company et al.*, Adversary Proceeding No. 20-01227-mg (Bankr. S.D.N.Y.). (*Id*.) While the Bankruptcy Court granted the Committee's motion to intervene in this action, the Court noted that the Committee intervention was merely an efficient procedural mechanism for the Committee to participate and the Committee would not obtain a cause of action or judgement which it does not otherwise have. (*Id*.) On December 28, 2020, LMI joined by Allianz filed a motion to withdraw the reference from the Bankruptcy court, which was subsequently granted by two judges in the United States District Court for the Southern District of New York. (*Id*.) LMI's adversary proceeding is pending in the District

Court before Judge Arun Subramanian at Case No. 21-CV-00071. (*Id.*) Allianz's adversary proceeding is pending in the District Court before Judge Alvin Hellerstein at Case No. 21-CV-07706. (*Id.*)

On October 20, 2021, the Court entered an *Order Appointing a Mediator* stating in relevant part that the Debtor, Committee, and Insurers shall participate in good faith to develop a plan and that the Mediator shall have discretion to determine the participants in each session. (*Id.* at 6 (citing ECF Doc. # 794).) On March 27, 2023, the Debtor and the Committee filed a joint letter in the Bankruptcy Court explaining that they had conferred and agreed to the appointment of Magistrate Judge Sarah Cave as a mediator for the declaratory judgment actions pending in the District Court. (*Id.* (citing ECF Doc. # 1916).) On April 17, 2023, the Bankruptcy Court took judicial notice of the appointment of Magistrate Judge Cave for the declaratory judgment actions. (*Id.* (citing ECF Doc. # 2018).) As a result of these actions, the Diocese has been speaking with Allianz and LMI in the context of mediation to reach a consensual plan of reorganization. (Debtor Objection at 3.)

On July 18, 2023, the Court denied the Motion of the Official Committee of Unsecured Creditors to Dismiss the Chapter 11 Case without prejudice and ordered the Debtor to file an amended plan of reorganization and disclosure statement, or at the very least, a term sheet for a plan that is supported by both the Debtor and the Committee by October 31, 2023. (Motion ¶ 14 (citing ECF Doc. #1912).)

### B. Background to the Defendants

Defendant LMI refers collectively to a number of underwriters who underwrote at least a portion of the risk under insurance policies purchased by the Diocese covering the period from

5


approximately 1976 to 1986.  (*Id.* ¶ 15.)  LMI exists under the laws of the United Kingdom and other foreign sovereigns with principal places of business in London, England.  (*Id.*)

Defendant Allianz Insurers refers collectively to three insurance providers who were insuring risks and conducting business in the state of New York.  (*Id.* ¶ 16–18.)  Allianz Insurers sold excess insurance policies to the Diocese covering the time period from 1976 to 1986 and provided coverage above the LMI primary policies.  (*Id.* ¶ 19.)

**C. The Motion**

1. <u>Relief Requested</u>

On August 28, 2023, the Committee filed the Motion requesting that the Court enter the Proposed Order, granting the Committee leave, standing, and authority to commence and prosecute an action on behalf of the Debtor and serving the Draft Complaint.  (Motion ¶ 41.)  The Committee also notes that if they propose to settle the action, the Committee will seek a further order from this Court.  (*Id.*)

2. <u>Basis for Relief Requested</u>

The Committee represents that to obtain derivative standing and pursue a cause of action on behalf of the debtor's estate, a party must satisfy a three-part test: (i) a demand was made to the debtor to pursue the claim, (ii) the claim is colorable, and (iii) the debtor unjustifiably failed to prosecute the claim that is likely to benefit the reorganized estate.  (Motion ¶ 43 (citing *Unsecured Creditors Comm. of STN Enters. Inc. v. Noyes (In re STN Enterprises, Inc.)*, 779 F.2d 901, 904 (2d Cir. 1985)).)

The Committee contends that it has satisfied the three-part test.  (Motion ¶ 45, 49, 51-52.)  Regarding the first prong requiring that demand be made to the Debtor, the Committee made a demand by letter to the Debtor on August 14, 2023.  (*Id.* ¶ 45.)  This letter can be found as

Exhibit C attached to the Declaration of Timothy W. Burns, which is attached to the Draft Complaint.  (Motion Ex. 2.)  In its demand, the Committee describes its concerns regarding a settlement between the Debtor and Insurers without the consent of the Committee and demands that the Debtor either provide assurances that it will not enter a settlement without Committee consent or bring a cause of action against the Insurers under § 349 and § 2601.  (Motion Ex. 2, Ex. C to the Timothy W. Burns Declaration, 11.)  In its reply letter dated August 16, 2023, the Debtor declined both to provide assurances that it will not settle without Committee consent and refused to bring the cause of action against the Insurers contemplated in the Draft Complaint.  (Motion Ex. 2, Ex. D to the Timothy W. Burns Declaration, at 13.)  Given the foregoing, the Committee argues that the first prong requiring demand has been satisfied.  (Motion ¶ 45.)

For the second prong requiring a colorable claim, the Committee argues that the claim "would not only survive a motion to dismiss but is likely to prevail on the merits." (Motion ¶ 49.)  First, the Committee notes that § 2601 prohibits knowing misrepresentation to insurance claimants and failing to attempt in good faith to effectuate equitable settlements of insurance claims.  (*Id.* ¶ 4.)  The Committee argues that the Insurers have violated this provision by engaging, or threatening to engage, in settlement discussions with the Debtor without Committee involvement and without assurances that the Debtor will not enter a settlement without Committee consent.  (*Id.* ¶ 49.)  Second, the Committee notes that the above behavior is separately actionable under § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." (*Id.* ¶ 4.)  According to the Committee, the settlement discussions are deceptive because entering, or threatening to enter into, a tentative settlement with a bankrupt policyholder that has "no chance of acceptance by tort claimants or the Court" is misleading to the Debtor's estate, the Survivors,

7

and the public by suggesting that "the Insurers have power that they simply do not have under the law." (*Id.* ¶ 5.) The Committee notes that the Insurers' deceptive practices satisfy the three prongs under § 349, which requires the deceptive practices in question to be consumer-oriented, materially misleading, and caused the Debtor injury. (*Id.* ¶ 49.)

The Committee's factual basis for arguing that these settlement discussions are colorable under § 349 and § 2601 is that any settlement reached between the Debtor and Insurers without Committee approval would lock the Debtor into a "trap" wherein if a proposed plan of reorganization supported by the Committee violates this hypothetical earlier settlement, then the ensuing breach would provide the Insurers with a large administrative claim. (*Id.* ¶ 6.) Furthermore, this administrative claim may confer standing for the Insurers to both object to any plan subsequently negotiated and file their own competing plan. (*Id.* ¶ 7.) According to the Committee, these potential actions by the Insurers would irrevocably harm the estate, cause improper standing, and subject the parties to expenses in litigating a Plan over numerous Insurers' objections or the Insurers' competing plan. (*Id.*) The Committee argues that the Insurers mediation discussions are an attempt to "leverage[] the Diocese's desire to avoid dismissal of its bankruptcy in order to pressure the Diocese to potentially reach a settlement that lacks any hope of being accepted by Survivors or ultimately being approved by this Court." (*Id.* ¶ 2.)

Lastly, under the third prong requiring the cause of action to be likely to benefit the debtor's estate, the Committee contends that because the claim is colorable, it is "likely to succeed on appropriate proof." (*Id.* ¶ 51.) The Committee further indicates that it is the appropriate party to bring this action as its purpose is to defend the interests of the unsecured creditors and requiring the Insurers to "comply with their statutory obligations" under the

insurance policies is necessary to maximize the value of the estate. (*Id.*) In addressing the potential costs and expenses of the litigation, the Committee argues that the costs of prosecuting the action pale in comparison to the "massive repercussions" of a non-consensual settlement between the Debtor and the Insurers as outlined in the preceding paragraph. (*Id.* ¶ 52.)

Furthermore, the Committee contends that the deceptive conduct has been practiced by insurers in other Diocesan bankruptcy cases, specifically *In re Diocese of Rochester* and *In re Diocese of Camden*. (*Id.* ¶ 38.) In these cases, the Committee represents that the insurers had administrative claims which created issues at plan confirmation. (*Id.*)

### D. Opposition to Motion by the Debtor

The Debtor Objection asserts that the Debtor has the authority, "and even the duty," to settle the insurance coverage actions, liquidate such assets for the benefit of creditors, and such a liquidation would be in the best interest of the estate. (*Id.* at 2–3.) The Debtor explains that any settlement reached between itself and the Insurers would be subject to approval by this Court, and the Committee would have an opportunity to object to such settlement. (*Id.* at 3.) The Debtor contends that it has spoken to all relevant parties about settlement, but thus far, no settlement offer has been made which is so beneficial to the estate that the Debtor believes it should be accepted. (*Id.*)

Additionally, the Debtor asserts that the Committee has failed to meet the criteria for derivative standing. (*Id.* at 4–7.) The Debtor first notes that the Committee failed to estimate a recovery due on the estate from prosecution of its claim, and that such a cost-benefit analysis is required by the third prong of derivative standing. (*Id.* at 4 (citing *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 516 (Bankr. S.D.N.Y. 2016)).) The Debtor proceeds to suggest that the process contemplated by the Committee is wasteful of estate resources as there is no settlement to enjoin

9

and it is merely settlement discussions that the Committee seeks to preclude, which is not a violation of insurance or general business law. (*Id.* at 5–6.) Notably, the Debtor urged the Committee to engage constructively with the insurance companies and stated that it will continue to work with the Committee to reach a consensual plan of reorganization. (Motion Ex. 2, Ex. D to the Timothy W. Burns Declaration, 13.)

Lastly, the Debtor refutes the Committee's contention that the *Diocese of Rochester* and the *Diocese of Camden* demonstrate the pitfalls of attempting to settle with insurance companies by stating that these cases actually demonstrate the opposite. (Debtor Objection at 6.) The Debtor argues that both cases demonstrate that a lack of resolution between the Diocese and insurance companies and extensive litigation to that end may prevent the debtor from plan confirmation. (*Id.* at 6–7.)

### E. Opposition to Motion by the Insurers

The Insurers also submitted an objection to the Motion. (Insurers Objection.) The Insurers contend that the Motion should be denied because the Committee's alleged derivative claims fail to meet to the second and third prongs as the claims are not colorable and are unlikely to benefit the reorganized estate. (*Id.* at 7.) The Insurers argue that the basis for the causes of action against them are unripe as they are based on alleged future statutory violations arising from a hypothetical settlement with the Debtor, which indisputably has not yet occurred. (*Id.* at 2.) Furthermore, the Insurers note that the Committee fails to cite to a single authority prohibiting insurance companies from engaging in settlement negotiations with its insured or from advancing a plan without the support of an unsecured creditors committee. (*Id.*) The Insurers argue the claims fail as a matter of law because the Committee failed to plead any facts that give rise to a claim under both § 349 and § 2601. (*Id.* at 15–19.)

The Insurers also suggest that the Motion undermines the parties' efforts to mediate a consensual resolution as the derivative claims constitute an improper collateral attack on the Court's mediation order which specifically states that nothing that occurs during the mediation creates a basis for liability. (*Id.* at 8–9.) Further, the Insurers state that such a claim is barred by the relevant mediation rules and procedures, and that the proposed complaint invades the mediation privilege. (*Id.* at 8–14.) Lastly, the Insurers note that the Committee mischaracterizes the facts from the *Diocese of Rochester* and the *Diocese of Camden* cases as neither judge in those cases has issued any order or decision finding the insurance companies' participation in those bankruptcies and related medications to have been deceptive or in bad faith. (*Id.* at 19–23.) The Insurers note that analogizing the present case to the two other diocese cases is deeply flawed. (*Id.*)

### F. Committee Reply to the Oppositions

On September 22, 2023, the Committee filed a response to the Debtor and Insurers objections. (Reply.) In this Reply, the Committee argues that the Motion does not undermine or otherwise invade the mediation privilege because the Committee is merely requesting to prevent any settlement agreement between the Insurers and the Debtor to which they do not consent. (*Id.* ¶ 7.) Again, they claim that the action of entering such a non-consensual settlement is alone misleading and deceptive under § 349. (*Id.* ¶ 12.) The Committee further contends that the action is ripe as courts have the power to adjudicate claims where the harms are uncertain and such harm is demonstrated in the other diocesan cases. (*Id.* ¶ 13–16.)

The Committee then rejects the Insurer's contention that they did not adequately plead under § 349. (*Id.* ¶ 17.) They claim that the conduct is "consumer-oriented" as the Insurers' conduct affects the interests of hundreds of survivors and is against New York public policy that

11

was designed to protect survivors of sexual abuse. (*Id.* ¶ 18–19.) They proceed to contend that the Draft Complaint alleges an injury to the estate by suggesting that the non-committee approved settlements between insurance companies and diocesan entities in other bankruptcies caused harm to the estate, that such harm is currently looming, and that the threat of irreparable harm is sufficient to justify the relief sought. (*Id.* ¶ 22–23.) Additionally, the Committee disputes the Insurers' and Debtor's portrayal of the *Rochester* and *Camden* bankruptcies by stating that those cases do demonstrate the real harm caused by such behavior because of the administrative claims and plan confirmation difficulties described in the Motion. (*Id.* ¶ 24–28.)

## II.    LEGAL STANDARD

Section 1109(b) of the Bankruptcy Code provides, in relevant part, that a creditor "may raise and may appear and be heard on any issue" in a chapter 11 case. 11 U.S.C.A. § 1109. While the Bankruptcy Code does not expressly authorize individual creditors to sue on behalf of an estate, the Second Circuit has extended standing to bring fraudulent conveyance claims under section 548 and section 549 of the Bankruptcy Code to additional parties such as creditors when to do so is in the best interest of the estate. *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002). To obtain derivative standing, the party typically must satisfy a two-part test: (i) the party presents colorable claims for relief that on appropriate proof would support a recovery, and (ii) the party demonstrates that the debtor unjustifiably failed to bring suit. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 514–15.

For the first prong ("Prong 1")—colorable claims—the inquiry is similar to that undertaken by the courts on motion to dismiss. *Id.* at 515. Therefore, the movant must "state a claim [for] relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), a determination that is "a context-specific task that requires the reviewing court to draw

12

on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Notably, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (internal quotations and citations omitted); *see e.g.*, *Weidberg v. Barnett*, 752 F. Supp. 2d 301, 310 (E.D.N.Y. 2010) (where "any amount that [the plaintiff] might become liable for in the future depends on events that cannot be predicted with certainty . . . plaintiff's claim is not ripe").

For the second prong ("Prong 2")—unjustifiable refusal— the court must determine whether the debtor itself has unjustifiably failed to bring claims on behalf of its estate. *In re Sabine*, 547 B.R. at 516. This inquiry does not require an improper motive for such failure, *see Adelphia Communs. Corp. v. Bank of Am.* (*In re Adelphia Comm'ns Corp.*)*,* 330 B.R. 364, 374 n. 19 (Bankr. S.D.N.Y. 2005); and the creditor need not plead facts alleging the debtor's reason or motive for inaction. *See Canadian Pac. Forest Prods. v. J.D. Irving, Ltd. (In re Gibson Group)*, 66 F.3d 1436, 1439 (6th Cir.1995). Rather, the burden may be met through notice pleading by alleging the existence of an unpursued colorable claim that would benefit the estate.

The second prong in essence has two sub-requirements. First, that the movant make a demand on the directors or show that demand should be futile. *See Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC),* 423 F.3d 166, 176 (2d Cir. 2005) (analogizing derivative requirements in shareholders suits to those in the bankruptcy context); *see also Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) (citing 13 Fletcher § 5963) (noting that to obtain derivative standing in a shareholder suit, the shareholder must either make a demand or show that demand would be futile). Second, that the movant show the

13

proposed action is likely to benefit the reorganization of the estate. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 516.

### III.    DISCUSSION

First, the Court concludes that Prong 1 is not satisfied because the Committee's claim are contingent and not-colorable.  Second, while the Committee has satisfied the first part of Prong 2, the demand requirement, it has not satisfied the second requirement, to show that the claims will benefit the estate.  Accordingly, the Motion is **DENIED.**

**A.  Prong 1: The Committee Has Failed to Plead a Colorable Claim**

Applying a standard akin to that undertaken by courts on a motion to dismiss, the Committee failed to present a colorable claim for relief, failing the first prong of the *Sabine Oil* test.

The claims asserted by the Committee are patently unripe as they are based upon contingent future events.  The causes of action are premised upon various actions that have not occurred and may never occur.  (Insurers Objection at 14.)  "The Committee has pled no concrete facts of any alleged deceptive act in either the Draft Complaint or the Motion that gives rise to a claim that is plausible on its face."  (*Id.*)  The Committee's sole factual basis for these allegations is that the Insurers have engaged in settlement discussions with the Debtor.  (Motion ¶ 49.)  The remaining basis for the Committee's claim is entirely speculative, as it relies on the premise that a settlement be reached which would allegedly trigger a series of devastating consequences.  Both the Debtor and the Insurers have stated that no settlement has been agreed upon.  (Debtor's Objection 3; Insurers Objection 2.)  Although the Committee asserts that courts may adjudicate claims with uncertain harms, the harm alleged here is simply too speculative. (Reply ¶ 13–16.)

The claims also fail as the Insurers are explicitly permitted and even encouraged to engage in settlement discussions with the Debtor.  Notably, the Committee fails to cite any authority that prohibits an insurance company from engaging in settlement negotiations with its insured or from advancing a plan without the support of an unsecured creditors committee.  In the Motion, the Committee also overtly failed to elaborate on the details related to the settlement discussions, which is the existence of a court-sanctioned mediation.

Further, the claims fail as a matter of law.  To reiterate, the Committee is asserting the following claims: (i) § 2601 prohibits knowing misrepresentation to insurance claimants and failing to attempt in good faith to effectuate equitable settlements of insurance claims, and § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." (Motion ¶¶ 4, 49.)  First, under § 2601, the New York State Superintendent of Insurance has the exclusive jurisdiction to pursue any claim that a carrier has engaged in improper settlement practices.  *See Okslen Acupuncture P.C. v. Dinallo*, 884 N.Y.S.2d 804, 811 (N.Y. Sup. Ct. N.Y. Cnty. 2009).  New York courts consistently hold that § 2601 does not contain a private right of action and thus cannot form the basis of a cognizable claim by an individual or entity.  *See, e.g., New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 317–18; *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 614 (1994).

Second, under § 349, a plaintiff must allege that (1) the challenged act or practice was consumer-oriented; (2) the challenged act or practice was misleading in a material way; and (3) the plaintiff suffered injury as a result.  *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33–34 (E.D.N.Y. 2006).  The first and third requirement are disputed.  (Reply ¶ 17; Insurers Objection 16.)  While the Committee claims that the act is consumer oriented because it thwarts New York public policy designed to protect victims of sexual abuse, the Insurers claim that good faith

15

negotiations between insurance companies and policyholders so that victims may be compensated do not constitute consumer-oriented deceptive conduct. (Reply ¶ 18: Insurers Objection 16–18.) The Court agrees that such conduct, even if consumer-oriented, is not deceptive. Further, the Committee also fails the third prong as even if the "threat" of irreparable harm is sufficient to satisfy the statutory requirement for actual injury as the Committee claims, the injury must be neither remote nor speculative. (Reply ¶ 23 (citing *Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232, 268 (S.D.N.Y. 2020)).) Here, the chain of events that the Committee alleges may cause injury are indeed both remote and speculative. Hence, the Committee's allegations do not give rise to actionable claims under the respective provisions.

The Committee has therefore failed to demonstrate that they have pled a colorable claim for which relief may be granted.

### B. Prong 2: The Committee has Made a Demand, but Has Not Shown that the Claim Benefits the Estate

1. Demand

"[I]n the usual case, a shareholder seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) (citing 13 Fletcher § 5963). Here, the Committee undeniably made a demand to the Debtor to bring its causes of action against the Insurers under § 349 and § 2601. This is undisputed. (Motion ¶ 45; Debtor Objection 5.)

As described above, in a letter sent August 14, 2023, the Committee demanded that the Debtor bring this cause of action under § 349 and § 2601 against the Insurers. (Motion ¶ 45; Motion Ex. 2, Ex. C to the Timothy W. Burns Declaration, 11.) On August 16, 2023, the Debtor replied and declined to bring the action contemplated in the Draft Complaint. (Motion Ex. 2, Ex.

16

D to the Timothy W. Burns Declaration, 13.) Thus, the Committee made a demand to the Debtor, which was rejected, satisfying the demand requirement.

2. Benefit to the Estate

In applying a cost-benefit analysis as required by the second part of the second prong, the Committee has not indicated how the Debtor's estate would benefit from the claims.

In determining whether such action is necessary and beneficial, the Court acts as gatekeeper to protect the estate and to ensure that the proposed litigation "reasonably can be expected to be a sensible expenditure of estate resources . . . [that] will not impair reorganization." *Adelphia,* 330 B.R. at 386. Courts have denied standing where the proposed litigation would "delay resolution of [the] reorganization proceeding by impeding approval of the pending plan of reorganization." *Official Comm. Of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co.* (*In re Sunbeam Corp.*)*,* 284 B.R. 355, 375 (Bankr. S.D.N.Y. 2002).

Here, as an initial matter, the Committee has not engaged in the necessary cost-benefit analysis required by this prong. The Committee has not estimated what recovery would be due to the estate from its claim and has merely stated that the relief sought is "enjoining the Insurers from entering any settlement, or attempting to enter any settlement, with the Diocese without the Committee's consent," and "such other and further relief as may be just and proper, including attorney's fees." (Draft Complaint at 57.) The Committee also fails to address the potential cost of the litigation and simply states that the cost of prosecuting is far outweighed by the "massive repercussions" of a non-consensual settlement between the Debtor and the Insurers as outlined in the preceding paragraph. (Motion ¶ 52.) Again, the benefit of the avoidance of the disastrous chain of events described here is speculative based on events that have not occurred and are not certain to occur.

17

Notwithstanding the Committee's deficient analysis, a cost-benefit analysis counsels against bringing this derivative claim.  First, given that the claim is not even colorable because it is based almost entirely on future, speculative events, there is no sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate caused by the litigation.  Second, the claims must be able to provide a basis for recovery.  Here, there is no settlement to enjoin, so the settlement discussions between the Debtor and Insurers is the recovery the Committee seeks.  Enjoining settlement discussions related to a court-sanctioned mediation is an illogical basis for recovery.  Moreover, if the Committee claims that they seek to enjoin the possibility of a settlement without their approval, that is an equally illegal basis for recovery.  This is especially perplexing as any settlement between the Debtor and Insurers would be subject to the Court's approval.  (Debtor Objection at 5.)  Regardless, even if the Court were to find this as a basis for recovery, the Committee's argument inevitably fails the other portions of the cost-benefit analysis.  Third, the proposed litigation must not be a "hopeless filing." *In re Sabine*, 547 B.R. at 516 (citations omitted).  Given that the claim and the harm alleged are both speculative resulting in a claim that is not colorable, this cause of action is a textbook case demonstrating a hopeless filing.  The Committee claims that it does not "expect" litigation costs to be excessive yet does not provide the value of any financial recovery nor elaborate on the economic effects of the disastrous consequences of protracted plan confirmation negotiations.  (Motion ¶ 52.)

As a result, the litigations costs associated with the pursuit of the Committee's claims would substantially outweigh the benefits.

## IV.  CONCLUSION

For the reasons explained above, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated:   October 2, 2023
         New York, New York

<div style="text-align:right">

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge

</div>