Hearing Date and Time:  October 23, 2023 at 2:00 p.m. (Prevailing Eastern Time)
Objection Deadline: October 16, 2023 at 4:00 pm (Prevailing Eastern Time)

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:      (212) 561-7777
Email:          jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kdine@pszjlaw.com
                bmichael@pszjlaw.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 20-12345 (MG) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING EXAMINATION OF WITNESSES AND THE PRODUCTION OF DOCUMENTS**

The Official Committee of Unsecured Creditors (the "Committee") of The Diocese of

Rockville Centre, New York (the "Diocese" or the "Debtor") in the above-captioned case under

chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), through its

undersigned counsel, hereby moves (the "Motion") this Court for entry of an order under Rule

2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

issuance of a document and examination subpoena to (i) Interstate Fire & Casualty Company,

National Surety Corporation, and Fireman's Fund Insurance Company (collectively, the

"Interstate Insurers" or "Interstate"), and Allianz Reinsurance America, Inc., dba, Allianz

Resolution Management ("AZRA"); and (ii) Insurance Services Office ("ISO").  In support of

the Motion, the Committee respectfully states:

### PRELIMINARY STATEMENT

1.      Through this Motion, the Committee seeks entry of an order under

Bankruptcy Rule 2004 authorizing the Committee to issue a subpoena to the Interstate Insurers

and to ISO relating to the breach by the Interstate Insurers of the Bar Date Order by providing

personal survivor information from proofs of claim to third parties who are not "Authorized

Parties" under the Bar Date Order.[2]  In addition to the document requests, the Committee seeks

the identification and will seek examination of witnesses with knowledge relating to the breach

of the Bar Date Order.  The Committee also intends to seek payment from the Interstate Insurers

of the Committee's costs and expenses, including professional fees, related to the examination of

the matters herein.

2.      On September 29, 2023, Interstate filed a letter with this Court revealing

that it had disclosed personal survivor information from proofs of claim to third parties who are

not authorized to receive such information under the Bar Date Order.  *See* Letter of Todd C.

Jacobs on Behalf of the Interstate Insurers [Docket No. 2524] ("Interstate Disclosure").

3.      The admission by Interstate that it breached the Bar Date Order and shared

from the Sexual Abuse Claims information of the most sensitive nature, information that

---

[2] *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 333] (the "Bar Date Order").  Terms used and not otherwise defined herein have the meaning ascribed thereto in the Bar Date Order.  The Committee will also seek all fees and expenses relating to any discovery and/or motion practice relating to the Interstate Insurers' breach of the Bar Date Order.

survivors may have been sharing for the first time and that they may never have shared with

other parties including their family and friends damages every survivor.  Survivors learning of

Interstate's admission have no way of knowing whether their claims were included or whether

their personal information was shared.  The fear that such information may have been disclosed

in itself further traumatizes survivors who relied on this Court's Bar Date Order and the Notice

of Bar Date, both of which guaranteed them that their individual Sexual Abuse Claim

information would be confidential unless they expressly chose otherwise or were notified with an

opportunity to object.

4.    The Interstate Insurers violated the protections the Committee, the Debtor,

and the Court sought to provide survivors and undermined the collective trust of survivors in this

Case.  Further, the Interstate Insurers' actions may affect future survivors in similar cases from

coming forward and filing Sexual Abuse Claims because they cannot trust the confidentiality of

the process.

5.    The seriousness of such a breach was recently recognized in the Norwich

Diocese's bankruptcy, where the debtor's claims agent breached the bar date order by making

the names of sexual abuse claimants available on its website for approximately 21 hours.   The

claims agent was discharged from the case, and the bankruptcy court has issued an order to show

DOCS_NY:48662.5 18491/002

cause regarding potential additional sanctions against the claims agent.[3]  The claims agent also

recently agreed to resolve claims made by survivors for $50,000 per survivor.[4]

6.    According to the Interstate Disclosure, information from approximately

178 proofs of claim in this case, including claimant names; a description of the alleged injury,

including whether it was a claim for sexual abuse; the name of the insured; and a general loss

cause description were provided to a third party service provider, ISO.  ISO included this

survivor information in a database accessible to ISO's third party clients.

7.    ISO is not a party authorized to receive proof of claim information under

the Bar Date Order as, on information and belief, it is not an "insurance company of the Debtor

that may provide coverage for Sexual Abuse Claims" or the "respective successors, reinsurers,

administrators, [or] counsel" for such an insurance company. *See* Bar Date Order ¶ 15(c)(iv).

ISO signed the Authorized Party Confidentiality Agreement only 10 days before the Interstate

Insurers disclosed the breach to this Court and the survivors, and clearly well after receiving the

unauthorized disclosure.  *See* Interstate Disclosure at page 4 of 12.

8.    However, merely signing the Authorized Party Confidentiality Agreement

does not make a party an Authorized Party under the Bar Date Order.  The definition of who may

be an Authorized Party under the Bar Date Order establishes the persons or entities that may

---

[3] *See Order Granting Debtor's Motion for Entry of An Order (I) Discharging Epiq Corporate Restructuring LLC, and (II) Retaining Omni Agent Solutions as the Replacement Claims and Noticing Agent* in *In re Norwich Roman Catholic Diocesan Corp.*, U.S. Bankruptcy Court for the District of Connecticut, Case No. 21-20687 (JJT) ("Norwich Bankruptcy") [Docket No. 1213]; *see also Order to Show Cause Regarding the Discharge of Epiq Corporate Restructuring LLC,* Norwich Bankruptcy [Docket No. 1121], as supplemented, [Docket Nos. 1177, 1221].

[4] *See Order Preliminarily Approving Settlement and Providing for Class Notice, John Doe # 1 and John Doe # 2, on behalf of themselves and all others similarly situated, v. Epiq Corporate Restructuring LLC*, United States District Court for the District of Connecticut, Case No. 3:23-cv-00154-OAW [Docket No. 62].

DOCS_NY:48662.5 18491/002

become Authorized Parties.  Only Authorized Parties may sign on to the Authorized Party

Confidentiality Agreement.  *See* Bar Date Order ¶ 15.

9.     Given the limited definition of Authorized Party, the Committee submits

that ISO's third party clients likely are also not Authorized Parties within the meaning of the Bar

Date Order unless they are insurers in this Case.  The identity of the third parties that accessed

the applicable database has not been disclosed to the Committee.

10.    The Interstate Insurers provided these unauthorized parties with personal

survivor information from Sexual Abuse Claims.  Without question, the Interstate Insurers have

committed a serious breach of the Bar Date Order exposing personal survivor information and

retraumatizing survivors.

11.    Committee counsel has represented committees of sexual abuse survivors

in over twenty cases.  In every one of these cases, the protection of the personal information of

survivors and their claims relating to sexual abuse has been and is of paramount importance.

The Bar Date Order contained numerous confidentiality provisions and promised survivors that:

> Sexual Abuse Proof of Claim Forms received by the Claims Agent
> will be treated as confidential and will be made available ***only to
> Authorized Parties*** (as defined below) unless a Sexual Abuse
> Claimant affirmatively elects to have their Sexual Abuse Claim
> disclosed publicly. The Confidentiality Protocol is for the benefit
> of the Sexual Abuse Claimants.

Bar Date Order ¶ 15(b) (emphasis added).

12.    The Committee is seeking Rule 2004 discovery to fully understand the

scope of the breach by the Interstate Insurers and to assess the sanctions that should be instituted

to compensate survivors for the breach and to deter such a clear and callous disregard of the

confidentiality protocol by the Interstate Insurers.

5

13.     The Committee continues to work with counsel for the Interstate Insurers to voluntarily provide the information being requested herein and will endeavor to resolve or narrow any discovery issues before the hearing.  However, formal relief is necessary because the Interstate Insurers have also violated the confidentiality of survivor proofs of claim in several other Diocesan cases.[5]  While each of these cases are distinct, the Committee here seeks formal relief to insure that it receives at least the same level of discovery as required in other cases and to participate in any coordinated efforts to take discovery.

14.     Finally, while other sanctions may prove appropriate, at the very least, the Interstate Insurers should bear all responsibility for the costs related to this investigation, including fees for the Committee's professionals.  The costs for the investigation to this breach should not be borne by the Diocese reducing the amounts available to survivors.

## JURISDICTION

15.     This Court has subject matter jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought are sections 1103 and 1109(b) of the Bankruptcy Code and Bankruptcy Rule 2004.

## RELEVANT FACTS

**A.     General Background**

16.     On October 1, 2020 (the "Petition Date"), the Debtor commenced its Chapter 11 case by filing a voluntary petition for relief under Bankruptcy Code Chapter 11.

---

[5] The Roman Catholic Diocese of Syracuse, New York, pending in the U.S. Bankruptcy Court for the Northern District of New York, Case No. 20-30663 ("Syracuse") [Docket No. 1439]; The Diocese of Rochester, pending in the Western District of New York, Case No. 19-20905 ("Rochester") [Docket No. 2240]; and the Diocese of Camden, New Jersey pending in the U.S. Bankruptcy Court for the District of New Jersey, Case No. 20-21257 ("Camden") [Docket No. 3385].

Under Bankruptcy Code Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate as debtor in possession.

17. No trustee or examiner has been appointed in this case.

18. On October 16, 2020, the United States Trustee for Region 2 appointed the Committee under section 1102 of the Bankruptcy Code. The Committee consists of nine individuals who hold claims against the Debtor, including eight individuals who were sexually abused as minors by perpetrators for whom the Debtor was responsible and one representative of a minor with a civil rights claim against the Debtor.[6]

**B.      The Interstate Insurers**

19. From 1976 until 1986, the Diocese purchased insurance coverage (the "London Primary Policies") from various insurance syndicates known as the London Market Insurers (the "London Insurers").

20. The Interstate Insurers sold excess insurance policies to the Diocese covering the time period from 1978 to 1986 that provided coverage above the London Primary Policies.

**C.      The Interstate Insurers' Disclosure of the Breach of the Bar Date Order**

21. On September 29, 2023, the Interstate Insurers notified this Court of what the Interstate Insurers purport was "limited disclosure of certain information that may be considered confidential" under the Bar Date Order and the Authorized Party Confidentiality Agreement. The Interstate Insurers also claim this disclosure was for a "Permitted Use" under the Authorized Party Agreement and that ISO is an Authorized Party. *See* Interstate Disclosure.

---

[6] *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 71].

DOCS_NY:48662.5 18491/002

22.    The Interstate Insurers' statements in the Interstate Disclosure belie these assertions and attempt to minimize the issues relating to their breach of the Bar Date Order.

23.    *First*, the information that the Interstate Insurers provided from the proofs of claim include information that is clearly confidential under the Bar Date Order, including the claimant's name, description of the alleged injury as sexual abuse, and claimed loss.  The Bar Date Order provides that the Sexual Abuse Claims are confidential.  *See* Bar Date Order ¶ 15. Moreover, the Bar Date Notice informed survivors that their Sexual Abuse Proofs of Claim would be confidential and maintained under a strict Confidentiality Protocol.  Bar Date Order Annex 1, Section 4.

24.    *Second,* ISO does not fall within the definition of Authorized Party under the Bar Date Order. The Bar Date Order expressly limits Authorized Parties, including regarding insurers and parties related to insurers:

> Any insurance company of the Debtor that may provide coverage for Sexual Abuse Claims, ***together with their respective successors, reinsurers, administrators, and counsel***; provided, however, that the Debtor's insurers shall be provided with all Sexual Abuse Proof of Claim forms alleging any abuse that occurred, even in part, during such insurer's policy periods and that access by Debtor's insurers to Sexual Abuse Proof of Claim forms alleging that abuse occurred wholly outside such insurer's policy periods shall be resolved at a later date, with nothing in this Bar Date Order affecting such potential access;

Bar Date Order ¶ 15(c)(iv) (emphasis added).  ISO does not fall within any of the above categories and so is not an Authorized Party under the Bar Date Order.

25.    *Third*, the Interstate Insurers assert that the disclosure of information was for a "Permitted Use" under the Bar Date Order.  *See* Interstate Disclosure. However, even if the disclosure related to a Permitted Use (the Committee does not concede that it was) that does not allow disclosure to an unauthorized party.

8

26.     The definition of "Permitted Use" is in the Authorized Party

Confidentiality Agreement.  To be a "Recipient" as defined in the Authorized Party

Confidentiality Agreement, the Recipient must be an Authorized Party.  *See* Bar Date Order

Annex 6.

27.     In this Case, the Bar Date Order has been amended to specifically add

additional Authorized Parties not included in the original Bar Date Order.  For example, the Bar

Date Order was amended to make "firms" (and not just counsel) retained by the Debtor or the

Committee under a Bankruptcy Court Order Authorized Parties.  *See Notice of Presentment of*

*Amended List of Parties Authorized to Access Sexual Abuse Proofs of Claim*, Exhibit B [Docket

No. 455].  Notwithstanding the role of Debtor and Committee professionals, and that the

information was to be provided to those professionals for a "Permitted Use," even those parties

directly representing the Committee or the Diocese could not be Authorized Parties without the

amendment to the Bar Date Order.  The Bar Date Order was then further amended to provide for

firms representing the future claims representative access to the Sexual Abuse Proofs of Claim.

*Notice of Presentment of Further Amended List of Parties Authorized to Access Sexual Abuse*

*Proofs of Claim,* Exhibit A. [Docket No. 927].

28.     *Finally,* the unauthorized disclosure to ISO was compounded by ISO

adding the information to the ClaimSearch product – a database searchable by third party clients

of ISO.  According to the Interstate Disclosure, AZRA provided "claimants' names, a categorical

description of their alleged injury, a general loss cause description; and the insured on the policy

at issue" for as many as 178 claimants.  Additionally, "records" with information, including the

identity of the survivor, from the Sexual Abuse Claims was disclosed by ISO to one or more

third parties for two claimants.  *See* Interstate Disclosure.

9

29.     While the Interstate Insurers attempt to ameliorate the seriousness of this disclosure by noting that such third parties are subject to confidentiality agreements, those third parties are not Authorized Parties nor are they signatories to the Authorized Party Confidentiality Agreement.[7]

30.     The Committee is entitled to discovery about the breach of the Bar Date Order by the Interstate Insurers.  The survivors should not be further damaged by this breach by the Interstate Insurers through the cost and expense of the Committee's investigation of the breach.  Such costs should not be borne by the Estate but should instead be borne by the Interstate Insurers based on their clear violation of the Bar Date Order.

## RELIEF REQUESTED

31.     The Committee respectfully requests entry of an order under Bankruptcy Rule 2004 authorizing the Committee to issue a subpoena for examination of witnesses and the direct production of documents from the Interstate Insurers, substantially in the form annexed as **Exhibit B**, and from ISO, substantially in the form annexed as **Exhibit C**.

## BASIS FOR RELIEF

32.     Bankruptcy Rule 2004 (a) provides that "[o]n the motion of any party in interest, the court may order the examination of any entity."  Bankruptcy Rule 2004(a).

33.     Under Bankruptcy Rule 2004, a party in interest may seek both document and oral discovery related to "acts, conduct, or property of the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Bankruptcy Rule 2004(b).  Under Bankruptcy Rule 2004(c),

---

[7] To the extent that the third party ISO clients are insurers in this Case, then they may be Authorized Parties under the Bar Date Order.  To date there has been no disclosure of the third party ISO clients who had access to the database, accessed the database or received the "record" with respect to the Sexual Abuse Claims in this Case.

the "attendance of an entity for examination and the production of documents. . . may be

compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or

trial." Bankruptcy Rule 2004(c). In turn, Bankruptcy Rule 9016 makes Federal Rule of Civil

Procedure 45 (governing subpoenas) applicable in cases under the Bankruptcy Code.

Bankruptcy Rule 9016.

        34.     Unlike discovery under the Federal Rules of Civil Procedure (the "<u>Civil

Rules</u>"), discovery under Bankruptcy Rule 2004 can be used as a "pre-litigation discovery

device." *In re Wilson*, 2009 WL 304672, at *5 (Bankr. E.D. La. 2009). A Bankruptcy Rule

2004 Amended Motion need not be tied to specific factual allegations at issue between parties.

*In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) (Bankruptcy Rule 2004 permits

"examination of any party without the requirement of a pending adversary proceeding or

contested matter").

        35.     The scope of a Bankruptcy Rule 2004 examination is broader than that of

discovery under the Civil Rules or the Bankruptcy Rules governing adversary proceedings. *In re

Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Drexel

Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he scope of a

Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the

Federal Rules of Civil Procedure."). In fact, courts have recognized that Bankruptcy Rule 2004

examinations may be "broad" and "unfettered," and can legitimately be in a "fishing expedition."

*In re Countrywide Home Loans, Inc*., 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *see also In re

Lev*, 2008 WL 207523, at *3 (Bankr. D.N.J. 2008); *In re Bakalis*, 199 B.R. 443, 447 (Bankr.

E.D.N.Y. 1996)*.* "Because the purpose of the Rule 2004 investigation is to aid in the discovery

of assets, any third party who can be shown to have a relationship with the debtor can be made

11

subject to a Rule 2004 investigation."  *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432, (Bankr.

S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

36.    Whether to authorize the requested discovery rests within the bankruptcy

court's sound discretion.  *See, e.g., In re Hammond*, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992).

37.    In addition, Bankruptcy Code Section 105(a) authorizes the Court to

"issue any order . . . that is necessary or appropriate to carry out provisions of this title."  11

U.S.C. § 105(a).

38.    There can be no legitimate question that the potential breach of an order of

the bankruptcy court relates to the administration of the estate.  The Bar Date Order is a critical

component of this case having established the deadline and parameters for creditors, including

survivors of sexual abuse claims to file claim against the Debtor.  The information from the

Sexual Abuse Claims are critical to the Committee and the Diocese's evaluation of the issues.

39.    The Interstate Insurers themselves admitted that the information from the

Sexual Abuse Proofs of Claim "are necessary to assess the Diocese's potential liability to the

claimants and to evaluate [the Interstate Insurers'] coverage obligation[s], if any."  *Interstate*

*Fire & Casualty Company's Joinder in LMI's Response to Diocese's Motion for an Order*

*Establishing Deadlines for Filing Proofs of Claim and Granting Related Relief* (the "Interstate

Insurers' Bar Date Order Objection") [Docket No. 200] ¶ 5.

40.    The Bar Date Order was carefully crafted to encourage survivors to file

forms that required disclosure of detailed information about their abuse to facilitate the

administration of the Estate.  As part of this process, the Committee insisted, and the Bankruptcy

Court agreed, on a detailed Confidentiality Protocol to protect the sensitive information of

survivors so such survivors would be willing to disclose.

41.    The Interstate Insurers' breach of the Bar Date Order undermines the entire claim process, and the Committee is entitled to investigate this breach to determine its scope and magnitude and bring details of the breach of this Court's order to the Court's full attention.

42.    Additionally, the Interstate Insurers' insurance policies and the proceeds of those policies are assets of the Diocese.[8]  To the extent that the Interstate Insurers' have violated the Bar Date Order, any damages owed by the Interstate Insurers to the Estate for such violations are assets of the Diocese.  There is no question that the Court has the power to impose sanctions for the violations of its orders.  *Worms v. Rozhkov (In re Markus)*, 2023 U.S. App. LEXIS 22989 *20 (2d Cir. 2023) (affirming bankruptcy court's decision imposing sanctions and holding that "[j]ust like an Article III court, a bankruptcy court must have the authority, inherently, to address contemptuous conduct that occurs before it.").

43.    Based on the foregoing, the Court should enter an order authorizing the Committee to issue the subpoenas seeking the examination and production of documents from the Interstate Insurers, AZRA and ISO.

## NO PRIOR REQUEST

44.    No prior request for the relief sought in this Motion has been made to this or any other Court.[9]

---

[8] *See, e.g., Memorandum Opinion and Order Denying the Debtor's Motion for a Preliminary Injunction* [Adv. Pro. 20-01226 Docket No. 202] at 30; *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 837 F.2d 92 (2d Cir. 1998); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir. 1986); *In re Circle K Corp.,* 121 B.R. 257, 261 (Bankr. D. Ariz. 1990); *Minoco Grp. of Cos., Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re Minoco Grp. of Cos., Ltd.),* 799 F. 2d 517, 519 (9th Cir. 1986).

[9] Requests for information regarding breaches of confidentiality provisions of the bar date orders in other bankruptcy cases are currently pending, including in the Syracuse and Camden diocesan bankruptcy cases.  The Committee expects that there will be similar requests in other cases where the Interstate Insurers have admitted to the breach of the respective bar date orders.

13

## NOTICE

45.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Debtor; (c) the Interstate Insurers, (d) ISO, and (e) all parties entitled to notice under Bankruptcy Rule 2002.  Due to the nature of the relief requested, the Committee respectfully submits that no further notice of this Motion is required.

WHEREFORE, the Committee respectfully requests that this Court: (i) enter an order substantially in the form attached as **Exhibit A**, granting the relief sought herein; and (ii) grant such other and further relief to the Committee as the Court may deem proper.

Dated:  New York, New York          PACHULSKI STANG ZIEHL & JONES LLP
        October 9, 2023

                                    */s/  James I. Stang*
                                    James I. Stang, Esq.
                                    Iain A. W. Nasatir, Esq.
                                    Karen Dine, Esq.
                                    Brittany M. Michael, Esq.
                                    780 Third Avenue, 36th Floor
                                    New York, NY  10017-2024
                                    Telephone: 212/561-7700
                                    Facsimile: 212/561-7777
                                    jstang@pszjlaw.com
                                    inasatir@pszjlaw.com
                                    kdine@pszjlaw.com
                                    bmichael@pszjlaw.com

                                    *Counsel for the Official Committee of Unsecured Creditors*

14

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br><br>         Debtor. | Chapter 11<br><br>Case No. 20-12345 (SCC) |

**ORDER GRANTING THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING EXAMINATION OF WITNESSES AND THE PRODUCTION OF DOCUMENTS**

This matter coming before the Court on the Motion of the Official Committee of Unsecured Creditors (the "Committee") of The Diocese of Rockville Centre, New York for entry of an order under Bankruptcy Rule 2004 (the "Motion"),[1] authorizing the issuance of a document and examination subpoena to (i) Interstate Fire & Casualty Company, National Surety Corporation, Fireman's Fund Insurance Company, and Allianz Reinsurance America, Inc., dba, Allianz Resolution Management ("AZRA") (collectively, the "Interstate Insurers") and (ii) Insurance Services Office ("ISO"); the Court having reviewed and considered the Motion; the Court having found that (i) the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding under 28 U.S.C. § 157(b)(2), and (iii) notice of the Motion as described in the Motion was proper under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted; and after due deliberation and good and sufficient cause appearing therefor, it is hereby ORDERED that

---

[1] Capitalized terms not defined herein shall have the meanings and definitions ascribed to them in the Motion.

1.      The Motion is GRANTED.

2.      The Committee is authorized to seek an examination of and documents

from the Interstate Insurers and ISO, as more fully described in <u>Exhibits B and C</u> to the Motion,

under Bankruptcy Rules 2004(c) and 9016.

3.      Nothing herein shall prejudice the Committee's rights under Bankruptcy

Rule 2004 and other applicable laws to seek further document productions or written or oral

examinations from the Interstate Insurers or ISO in connection with this case.

4.      The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation of this Order.


Dated: New York, New York
       ___ __, 2023                    _____
                                       THE HONORABLE MARTIN GLENN
                                       CHIEF UNITED STATES BANKRUPTCY JUDGE

2

## EXHIBIT B
### Form of Exhibit of A to Subpoena to the Interstate Insurers and AZRA

### <u>DEFINITIONS</u>

1.  "AZRA" means Allianz Reinsurance America, Inc., dba, Allianz Resolution Management.

2.  "Bankruptcy Case" means the above-captioned chapter 11 bankruptcy case styled *In re The Roman Catholic Diocese of Rockville Centre, New York*, (Bankr. S.D.N.Y., Case No. 20-12345 (SCC)).

3.  Bar Date Order means the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, docket number 333 in the Bankruptcy Case.

4.  "Communication" means any writing transmitted between Persons or any oral conversation of any kind or character, including by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, email, instant message, and facsimile communications or transmittals of Documents, and all Documents concerning such writings or oral conversations.

5.  "Committee" means the Official Committee of Unsecured Creditors in the Bankruptcy of The Roman Catholic Diocese of Rockville Centre, New York.

6.  "Describe" means to state with specificity and particularity.

7.  "Diocese", "Diocese of Rockville Centre", or "Debtor" means the Roman Catholic Diocese of Rockville Centre, New York, the above-captioned debtor in possession, and includes both the civil entity and the Canon law juridic person identified as the Diocese of Rockville Centre as the "Debtor" on its voluntary petition for chapter 11 relief commencing the above-captioned Bankruptcy Case, and any predecessor thereof, as well as any person (including the bishop or apostolic administrator of the Diocese) acting on behalf of the Diocese.

8.  "Document" includes, means the broadest possible sense as specified in and interpreted under Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, graphic or otherwise recorded matter, however produced, reproduced, or stored, and all "writings" as defined in Rule 1001 of the Federal Rules of Evidence, and all other tangible things by which human communication is transmitted or stored, meaning any kind of printed, recorded, graphic, or photographic matter, however printed, produced, reproduced, copies, reproductions, facsimiles, drafts and both sides thereof, including without limitation any kind of written, typewritten, graphic, photographic, printed, taped or recorded material whatsoever, regardless whether the same is an original, a copy, a reproduction, a facsimile, telex or telefax, and regardless of the source or author thereof, including without limitation, any writing filed for reporting or other purposes with any state, federal or local agency; notes; memoranda, including but not limited to memoranda of telephone conversations; letters; audited financial statements; unaudited financial statements; financial ledgers; intra-office or inter-office communications; circulars; bulletins;

manuals; results of investigations; progress reports; study made by or for business or personal use; financial reports and data of any kind; working papers; contracts; agreements; affidavits; declarations; statements; bills; books of accounts; vouchers; transcriptions of conversations or tape recordings; desk calendars; bank checks; purchase orders; invoices; charge slips; receipts; expense accounts; statistical records; cost sheets; journals; diaries; time sheets or logs; computer data; job or transaction files; appointment books; books, records, and copies; electronic mail messages; extracts and summaries of other documents; drafts of any of the above, whether used or not; and any other writing or recording; computer and other business machine printouts, programs, listings, projections, as well as any carbon or photographic or copies, reproductions or facsimiles thereof and all copies which differ in any way from the original, including without limitation, all forms of electronic media, data, data storage and other forms of electronic or computer-stored or computer-generated communications, data, or representations. This includes, but is not limited to, such material in the form of Electronically Stored Information: that is, any data present in memory or on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), saved in an archive, present as "deleted" but recoverable electronic files in memory or on any media, and, present in any electronic file fragments (files that have been deleted and partially overwritten with new data) from files containing such material. Where any otherwise duplicate document contains any marking not appearing on the original or is altered from the original, then such item shall be considered to be a separate original document. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

9.    "ESI" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by You, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information-storing electronic devices of You and Your employees, or on associated external storage media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other Electronically Stored Information created using any version of Microsoft Word, Outlook, Powerpoint, Excel, Visio, or Access, Word Perfect, Oracle, or any other Microsoft, Adobe, Corel or other currently available "off-the-shelf" application shall be produced in native form; that is, the form in which the document is currently stored on whatever media it currently resides. The document should not be locked, resaved, restructures, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be produced in a copy precisely reproducing its entire state as present in Your systems. Unless otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in whatever database and/or file/directory structures are used by Your mail processing software. All metadata and other unapparent or hidden data related to mail messages shall be produced, including, but not limited to, any file attachments, message priority flags, message read/access timestamps, and, in the case of e-mail sent to distribution lists, information on the Personship of such lists at the time the e-mail was sent.

10.    "Identify" means: (a) with respect to any Person, to state the Person's full name, employer, job title, present or last known address, telephone number, and email address; and (b) with respect to any Document, to state the title, date, author(s), recipient(s), cc recipient(s), bcc

2

recipient(s), production numbers (if any), and present location and custodian of the Document, or alternatively, to produce an accurate and complete copy of the Document.

11. "Interstate Disclosure" means the Letter of Todd C. Jacobs on Behalf of the Interstate Insurers filed at docket number 2524 in the Bankruptcy Case.

12. "Interstate Insurers" means Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company.

13. "ISO" means Insurance Services Office.

14. "Person" means any natural person, including an employee or former employee. "Person" also means any business, legal, or governmental entity, including, without limitation, agencies, corporations, partnerships, proprietorships, groups, associations, companies, or other organizations, as well as any agent or former agent thereof.

15. "Petition Date" means October 1, 2020.

16. "Representative" means any person acting or purporting to act for or on behalf of any other person.

17. "Sexual Abuse" means any of the following acts of :

(a) Touching by the abuser of the child's intimate body parts (genitals, breasts or buttocks), the touching by the child of the abuser's intimate body parts effected by the use of a position of authority, or by the inducement of the abuser, or

(b) Sexual intercourse, masturbation, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, to the genital or anal openings:

(i) Of the child's body by any part of the abuser's body or any object used by the abuser for this purpose;

(ii) Of the child's body by any part of the body of another person, or by any object used by the abuser or another person for this purpose, when effected by the use of a position of authority by the inducement of the actor;

(c) Inappropriate contact and/or contact that infringes upon another's personal, physical boundaries including but not limited to groping, kissing, extended hugging, and/or any unwelcomed touching;

(d) Grooming, including but not limited to: talk of a sexual nature, talk of a romantic nature, communications expressing love that is unnatural of how a clergy member or other religious should speak to a child.

18. "Sexual Abuse Claim" means a claim against the Diocese of Rockville Centre premised upon Sexual Abuse.

DOCS_NY:48662.5 18491/002

19.  "You" and "Your" refer to the Interstate Insurers and/or AZRA.

## **INSTRUCTIONS FOR REQUESTS FOR PRODUCTION**

1.  Unless otherwise defined herein, all words and phrases used in these requests are to be given their plain, customary, and usual meaning.

2.  The Interstate Insurers and AZRA should respond separately and in writing to each request for production of documents set forth herein.

3.  All uses of the conjunctive include the disjunctive, and vice versa. All words in the singular include the plural, and vice versa. All uses of the word "all" include "any," and vice versa. All uses of the word "each" include "every," and vice versa. The use of a verb in any tense encompasses the use of the verb in all tenses. These constructions should be applied so as to make the requests more inclusive rather than more exclusive.

4.  Each request shall operate and be construed independently. Unless otherwise indicated, no request limits the scope of any other requests.

5.  The document requests set forth herein cover all Documents that are within Your possession, custody, or control, or that are otherwise available to You, regardless of whether they are currently in Your possession. Consequently, the scope of the document requests includes, but is not limited to, responsive Documents that are in the possession of Your officers, directors, employees, attorneys, accountants, and other agents.

6.  Documents should be produced either: (a) as they are kept in the ordinary course of business, complete with the original file folders, binders, or other containers in which they are stored (or legible copies of the labels from those folders, binders, or containers); or (b) organized according to the document request(s) to which they are responsive. If You elect the latter mode of production, each Document or set of Documents from a file folder, binder, or other container

4

should be accompanied by a legible copy of the label from the file folder, binder, or container or some other reliable indicator of the file folder, binder, or container from which it was taken.

7.    If any Documents requested or referred to herein are subject to destruction under any document retention and destruction policy or program, the Documents should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action and any appeals therefrom, unless otherwise permitted by the Court.

8.    If a request is made for production of Documents which are no longer in Your possession, custody, or control, You should provide the following information: the date on which such Documents were most recently in your possession, custody, or control; what disposition You made of the Documents; Identify the Person currently in possession, custody, or control of the Documents; and Identify any Persons referred to in the Documents and/or sent a copy of the Documents. If the Documents have been destroyed, Identify the Person who destroyed them and the Person who directed that the Documents be destroyed; state when the Documents were destroyed; and state the reasons for destruction of the Documents.

9.    For any Document You withhold, in whole or in part, on the basis of any claim of attorney-client privilege, the work-product doctrine, or other protection from disclosure, You should specify in a log the nature, subject matter, date, and title of such Document; Identify the author(s) and recipient(s) of the Document; and explain the nature and basis of each privilege or protection asserted.

10.  Produce all portions of any responsive Document to which a claim of attorney-client privilege, the work-product doctrine, or other protection from disclosure does not apply.

11.  If You have a good-faith objection to any specific request, or any part thereof, state the specific nature of Your objection and whether it applies to the entire request or only to a portion

5

thereof. If You object only to part of a request, produce Documents or provide information responsive to the remaining unobjectionable parts.

## **REQUESTS TO PRODUCE**

1.  All Communications and Documents relating to any of the statements or assertions contained in the Interstate Disclosure, including but not limited to the following:

a.  AZRA believes that the disclosure was for a Permitted Use under the Authorized Party Agreement and that the entity the information was disclosed to by AZRA, Insurance Services Office ("ISO"), is an Authorized Party under the Order;

b.  AZRA contracts with ISO for access to ISO's "ClaimSearch" product to assist AZRA in processing claims and detecting claims fraud;

c.  When a Participating Organization uses ClaimSearch as it processes a claim a record may be created for that claimant containing certain limited information such as the claimant's name, the insured on the policy at issue, and general and categorical descriptions of the claimant's alleged injury and claimed loss. If a second Participating Organization submits or has submitted a claim or inquiry for that claimant, they may receive a match report containing the record created from the prior Participating Organization's claim submission;

d.  As an automatic part of its claims processing, and to reduce and detect fraud, limited information regarding AZRA's claims are provided to ISO through ISO's ClaimSearch program, including claimants' names, a categorical description of their alleged injury;

e.  As AZRA was processing the claims for this matter, and because of how the claims were provided to AZRA for this matter specifically, the information listed above was automatically sent to ISO for no more than 178 claimants. At the time it was sent, ISO had not been made aware of the Order, and therefore had not signed the Authorized Party Agreement in this case.

f.  For 176 of those claimants, an ISO record was created but there was no match in the ClaimSearch database, meaning the information was not provided to any other Participating Organization, or match reports were created but provided only to AZRA, and not to any other Participating Organization.

g.  Only for 2 of the claimants was a record created that was later provided to another Participating Organization (i.e., another insurance provider).

6

      h.   AZRA is not aware of any further disclosure of this information and AZRA has contacted ISO and worked with ISO to void the confidential claimant information it received. This means that the information is only visible to AZRA and ISO and is not available to any other party.

2.   All Documents and Communications, relating to, or offering insight into, when, why, and/or how Sexual Abuse Claims or information contained therein, were provided or transferred by the Interstate Insurers to AZRA, AZRA to ISO, and ISO to any other entities.

3.   All Documents and Communications, including Documents or Communications, indicating which Sexual Abuse Claims, or information contained therein, were provided or transferred by the Interstate Insurers to AZRA, AZRA to ISO, and ISO to any other entities.

4.   All Documents and Communications relating to any information relating to any Sexual Abuse Claimant, including any state court complaint or other Documents that were provided or transferred by the Interstate Insurers to AZRA, AZRA to ISO, and ISO to any other entities.

5.   All Documents and Communications, including Documents or Communications, indicating the purpose for which Sexual Abuse Claims, or information contained therein, were provided or transferred by the Interstate Insurers to AZRA, AZRA to ISO, and ISO to any other entities.

6.   All Documents and Communications containing discussions or information regarding the timing of any disclosure or transmission of Sexual Abuse Claims by the Interstate Insurers to AZRA.

7.   All Documents and Communications containing discussions or information regarding the timing of any disclosure, provision, or transmission of Sexual Abuse Claims by AZRA to ISO.

8.   All Documents and Communications relating to ISO signing the Authorized Party Confidentiality Agreement attached to the Interstate Disclosure.

7

9. All Documents and Communications relating to the implementation of remedial measures relating to the disclosure, provision, or transmission of Sexual Abuse Claims to AZRA and/or ISO.

10. All Documents and Communications, relating to the timing and manner of the Interstate Insurers filing the Interstate Disclosure in the Bankruptcy Case.

## INSTRUCTIONS FOR INTERROGATORIES

1. Unless otherwise defined herein, all words and phrases used in these requests are to be given their plain, customary, and usual meaning.

2. The Interstate Insurers and AZRA should respond separately and in writing to each request set forth herein.

3. All uses of the conjunctive include the disjunctive, and vice versa. All words in the singular include the plural, and vice versa. All uses of the word "all" include "any," and vice versa. All uses of the word "each" include "every," and vice versa. The use of a verb in any tense encompasses the use of the verb in all tenses. These constructions should be applied so as to make the requests more inclusive rather than more exclusive.

4. Each request shall operate and be construed independently. Unless otherwise indicated, no request limits the scope of any other request.

5. These requests call for information (including any information contained in or on any Document or thing) that is known or available to You, or in Your possession, custody, or control, including all information known or available to Your attorneys, agents, representatives, or any other person acting or purporting to act on Your behalf or under the direction or control of You or Your attorneys, agents, representatives or investigators. Separate and complete responses are required for each request.

DOCS_NY:48662.5 18491/002

6.  If You cannot answer any request fully and completely, after exercising due diligence to make inquiry and secure the information necessary to do so, please so state, and (a) answer such request to the fullest extent possible; (b) specify the portion of such request that You claim You are unable to answer fully and completely; (c) state the facts upon which You rely to support Your contention that You are unable to answer that request fully and completely; and (d) state what knowledge, information and belief You have concerning the unanswered portion of each such request. If your response is qualified in any particular respect, set forth the details of such qualification.

7.  If You withhold any information or decline to fully identify any person, document, or communication, or portion thereof, in response to any of the request set forth below on grounds of privilege or any other claim of immunity from discovery, then for each identification, document, communication, or portion thereof withheld, state the following: (a) the type of document (e.g., letter, memorandum, contract, etc.); (b) its title; (c) its date; (d) its subject matter; (e) the name, address, and employer at the time of preparation of the individual(s) who authored, drafted, or prepared it; (f) the name, address, and employer at the time of dissemination of the individual(s) to whom it was directed, circulated, or copied, or who had access thereto; and (g) the grounds on which the Document is being withheld (e.g., "attorney-client privilege," "work product immunity," etc.).

8.  If You object or otherwise decline to set forth in your response any of the information requested by any request specify the exact grounds upon which You rely in sufficient detail to permit the Plaintiff and the Court to determine the legal sufficiency of Your objection or position, and provide the most responsive information You are willing to provide without a court order.

9

## **<u>INTERROGATORIES</u>**

1.    Describe how the Interstate Insurers transmitted, provided or disclosed the Sexual Abuse Claims or the information relating to the Sexual Abuse Claims to AZRA.

2.    Describe how AZRA transmitted, disclosed or provided the Sexual Abuse Claims or the information relating to the Sexual Abuse Claims to ISO.

3.    Identify each person with knowledge of the transmission, disclosure or provision of the Sexual Abuse Claims or the information relating to the Sexual Abuse Claims to AZRA and/or ISO.

4.    Describe the timing of and how the Interstate Insurers and/or AZRA learned of the information that lead to the filing of the Interstate Disclosure.

5.    Describe any remedial measures taken or adopted following the Interstate Insurers and/or AZRA learning of the disclosure, provision, or transmission of Sexual Abuse Claims to AZRA and/or ISO.

6.    Identify each Person with knowledge of the statements made in the Interstate Disclosure, include such Person's affiliation, title and role.

10

Dated:  New York, New York
       October __, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/  Draft*              

James I. Stang, Esq.
Iain A. W. Nasatir, Esq.
Karen Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777
jstang@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com
bmichael@pszjlaw.com

*Counsel for the Official Committee of Unsecured
Creditors*

DOCS_NY:48662.5 18491/002

**EXHIBIT C**
**Form of Exhibit of A to Subpoena to the Insurance Services Office**

## DEFINITIONS

1.   "AZRA" means Allianz Reinsurance America, Inc., dba, Allianz Resolution Management.

2.   "Bankruptcy Case" means the above-captioned chapter 11 bankruptcy case styled *In re The Roman Catholic Diocese of Rockville Centre, New York*, (Bankr. S.D.N.Y., Case No. 20-12345 (SCC)).

3.   Bar Date Order means the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, docket number 333 in the Bankruptcy Case.

4.   "Communication" means any writing transmitted between Persons or any oral conversation of any kind or character, including by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, email, instant message, and facsimile communications or transmittals of Documents, and all Documents concerning such writings or oral conversations.

5.   "Committee" means the Official Committee of Unsecured Creditors in the Bankruptcy of The Roman Catholic Diocese of Rockville Centre, New York.

6.   "Describe" means to state with specificity and particularity.

7.   "Diocese", "Diocese of Rockville Centre", or "Debtor" means the Roman Catholic Diocese of Rockville Centre, New York, the above-captioned debtor in possession, and includes both the civil entity and the Canon law juridic person identified as the Diocese of Rockville Centre as the "Debtor" on its voluntary petition for chapter 11 relief commencing the above-captioned Bankruptcy Case, and any predecessor thereof, as well as any person (including the bishop or apostolic administrator of the Diocese) acting on behalf of the Diocese.

8.   "Document" includes, means the broadest possible sense as specified in and interpreted under Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, graphic or otherwise recorded matter, however produced, reproduced, or stored, and all "writings" as defined in Rule 1001 of the Federal Rules of Evidence, and all other tangible things by which human communication is transmitted or stored, meaning any kind of printed, recorded, graphic, or photographic matter, however printed, produced, reproduced, copies, reproductions, facsimiles, drafts and both sides thereof, including without limitation any kind of written, typewritten, graphic, photographic, printed, taped or recorded material whatsoever, regardless whether the same is an original, a copy, a reproduction, a facsimile, telex or telefax, and regardless of the source or author thereof, including without limitation, any writing filed for reporting or other purposes with any state, federal or local agency; notes; memoranda, including but not limited to memoranda of telephone conversations; letters; audited financial statements; unaudited financial statements; financial ledgers; intra-office or inter-office communications; circulars; bulletins;

manuals; results of investigations; progress reports; study made by or for business or personal use; financial reports and data of any kind; working papers; contracts; agreements; affidavits; declarations; statements; bills; books of accounts; vouchers; transcriptions of conversations or tape recordings; desk calendars; bank checks; purchase orders; invoices; charge slips; receipts; expense accounts; statistical records; cost sheets; journals; diaries; time sheets or logs; computer data; job or transaction files; appointment books; books, records, and copies; electronic mail messages; extracts and summaries of other documents; drafts of any of the above, whether used or not; and any other writing or recording; computer and other business machine printouts, programs, listings, projections, as well as any carbon or photographic or copies, reproductions or facsimiles thereof and all copies which differ in any way from the original, including without limitation, all forms of electronic media, data, data storage and other forms of electronic or computer-stored or computer-generated communications, data, or representations. This includes, but is not limited to, such material in the form of Electronically Stored Information: that is, any data present in memory or on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), saved in an archive, present as "deleted" but recoverable electronic files in memory or on any media, and, present in any electronic file fragments (files that have been deleted and partially overwritten with new data) from files containing such material. Where any otherwise duplicate document contains any marking not appearing on the original or is altered from the original, then such item shall be considered to be a separate original document. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

9.    "ESI" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by You, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information-storing electronic devices of You and Your employees, or on associated external storage media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other Electronically Stored Information created using any version of Microsoft Word, Outlook, Powerpoint, Excel, Visio, or Access, Word Perfect, Oracle, or any other Microsoft, Adobe, Corel or other currently available "off-the-shelf" application shall be produced in native form; that is, the form in which the document is currently stored on whatever media it currently resides. The document should not be locked, resaved, restructures, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather should be produced in a copy precisely reproducing its entire state as present in Your systems. Unless otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in whatever database and/or file/directory structures are used by Your mail processing software. All metadata and other unapparent or hidden data related to mail messages shall be produced, including, but not limited to, any file attachments, message priority flags, message read/access timestamps, and, in the case of e-mail sent to distribution lists, information on the Personship of such lists at the time the e-mail was sent.

10.    "Identify" means: (a) with respect to any Person, to state the Person's full name, employer, job title, present or last known address, telephone number, and email address; and (b) with respect to any Document, to state the title, date, author(s), recipient(s), cc recipient(s), bcc

2

recipient(s), production numbers (if any), and present location and custodian of the Document, or alternatively, to produce an accurate and complete copy of the Document.

11. "Interstate Disclosure" means the Letter of Todd C. Jacobs on Behalf of the Interstate Insurers filed at docket number 2524 in the Bankruptcy Case.

12. "Interstate Insurers" means Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company.

13. "ISO" means Insurance Services Office.

14. "Person" means any natural person, including an employee or former employee. "Person" also means any business, legal, or governmental entity, including, without limitation, agencies, corporations, partnerships, proprietorships, groups, associations, companies, or other organizations, as well as any agent or former agent thereof.

15. "Petition Date" means October 1, 2020.

16. "Representative" means any person acting or purporting to act for or on behalf of any other person.

17.  "Sexual Abuse" means any of the following acts of :

(a) Touching by the abuser of the child's intimate body parts (genitals, breasts or buttocks), the touching by the child of the abuser's intimate body parts effected by the use of a position of authority, or by the inducement of the abuser, or

(b) Sexual intercourse, masturbation, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, to the genital or anal openings:

(i) Of the child's body by any part of the abuser's body or any object used by the abuser for this purpose;

(ii) Of the child's body by any part of the body of another person, or by any object used by the abuser or another person for this purpose, when effected by the use of a position of authority by the inducement of the actor;

(c) Inappropriate contact and/or contact that infringes upon another's personal, physical boundaries including but not limited to groping, kissing, extended hugging, and/or any unwelcomed touching;

(d) Grooming, including but not limited to: talk of a sexual nature, talk of a romantic nature, communications expressing love that is unnatural of how a clergy member or other religious should speak to a child.

18. "Sexual Abuse Claim" means a claim against the Diocese of Rockville Centre premised upon Sexual Abuse.

3

19.  "You" and "Your" refers to ISO.

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION

1.  Unless otherwise defined herein, all words and phrases used in these requests are to be given their plain, customary, and usual meaning.

2.  ISO should respond separately and in writing to each request for production of documents set forth herein.

3.  All uses of the conjunctive include the disjunctive, and vice versa. All words in the singular include the plural, and vice versa. All uses of the word "all" include "any," and vice versa. All uses of the word "each" include "every," and vice versa. The use of a verb in any tense encompasses the use of the verb in all tenses. These constructions should be applied so as to make the requests more inclusive rather than more exclusive.

4.  Each request shall operate and be construed independently. Unless otherwise indicated, no request limits the scope of any other requests.

5.  The document requests set forth herein cover all Documents that are within Your possession, custody, or control, or that are otherwise available to You, regardless of whether they are currently in Your possession. Consequently, the scope of the document requests includes, but is not limited to, responsive Documents that are in the possession of Your officers, directors, employees, attorneys, accountants, and other agents.

6.  Documents should be produced either: (a) as they are kept in the ordinary course of business, complete with the original file folders, binders, or other containers in which they are stored (or legible copies of the labels from those folders, binders, or containers); or (b) organized according to the document request(s) to which they are responsive. If You elect the latter mode of production, each Document or set of Documents from a file folder, binder, or other container

4

should be accompanied by a legible copy of the label from the file folder, binder, or container or some other reliable indicator of the file folder, binder, or container from which it was taken.

7.  If any Documents requested or referred to herein are subject to destruction under any document retention and destruction policy or program, the Documents should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action and any appeals therefrom, unless otherwise permitted by the Court.

8.  If a request is made for production of Documents which are no longer in Your possession, custody, or control, You should provide the following information: the date on which such Documents were most recently in your possession, custody, or control; what disposition You made of the Documents; Identify the Person currently in possession, custody, or control of the Documents; and Identify any Persons referred to in the Documents and/or sent a copy of the Documents. If the Documents have been destroyed, Identify the Person who destroyed them and the Person who directed that the Documents be destroyed; state when the Documents were destroyed; and state the reasons for destruction of the Documents.

9.  For any Document You withhold, in whole or in part, on the basis of any claim of attorney-client privilege, the work-product doctrine, or other protection from disclosure, You should specify in a log the nature, subject matter, date, and title of such Document; Identify the author(s) and recipient(s) of the Document; and explain the nature and basis of each privilege or protection asserted.

10. Produce all portions of any responsive Document to which a claim of attorney-client privilege, the work-product doctrine, or other protection from disclosure does not apply.

11. If You have a good-faith objection to any specific request, or any part thereof, state the specific nature of Your objection and whether it applies to the entire request or only to a portion

5

thereof. If You object only to part of a request, produce Documents or provide information responsive to the remaining unobjectionable parts.

## REQUESTS TO PRODUCE

1.   All Communications and Documents relating to the disclosure, transmission, or provision by AZRA of any Sexual Abuse Claims or any information relating to any Sexual Abuse Claims to ISO.

2.   All Communications and Documents between the Interstate Insurers, AZRA and ISO relating to ISO's "ClaimSearch" product.

3.   All Communications or Documents relating to the following statements in the Interstate Disclosure:

  a.   When a Participating Organization uses ClaimSearch as it processes a claim a record may be created for that claimant containing certain limited information such as the claimant's name, the insured on the policy at issue, and general and categorical descriptions of the claimant's alleged injury and claimed loss. If a second Participating Organization submits or has submitted a claim or inquiry for that claimant, they may receive a match report containing the record created from the prior Participating Organization's claim submission;

  b.   For 176 of those claimants, an ISO record was created but there was no match in the ClaimSearch database, meaning the information was not provided to any other Participating Organization, or match reports were created but provided only to AZRA, and not to any other Participating Organization.

  c.   Only for 2 of the claimants was a record created that was later provided to another Participating Organization (i.e., another insurance provider).

  d.   AZRA has contacted ISO and worked with ISO to void the confidential claimant information it received. This means that the information is only visible to AZRA and ISO and is not available to any other party.

4.   All Documents and Communications, relating to, or offering insight into, when, why, and/or how Sexual Abuse Claims or information contained therein, were provided, disclosed or transferred by the Interstate Insurers and/or AZRA to ISO, and by ISO to any other entities.

6

5.   All Documents and Communications, including Documents or Communications, indicating which Sexual Abuse Claims, or information contained therein, were provided or transferred by ISO to any other entities.

6.   All Documents and Communications relating to any information relating to any Sexual Abuse Claimant, including any state court complaint or other Documents that were provided or transferred by ISO to any other entities.

7.   All Documents and Communications containing discussions or information regarding the timing of any disclosure, provision, or transmission of Sexual Abuse Claims by AZRA to ISO.

8.   All Documents and Communications relating to ISO signing the Authorized Party Confidentiality Agreement attached to the Interstate Disclosure.

9.   All Documents and Communications relating to the implementation of remedial measures relating to the disclosure, provision, or transmission of Sexual Abuse Claims to AZRA and/or ISO.

10. All Documents and Communications relating to whether any other insurer has provided or transferred to ISO information concerning Sexual Abuse Claims for use in its ClaimsSearch database.

11. All Documents and Communications relating to the use by insurers or others of ISO's ClaimsSearch database, including any requirements of confidentiality surrounding such use.

## INSTRUCTIONS FOR INTERROGATORIES

1.   Unless otherwise defined herein, all words and phrases used in these requests are to be given their plain, customary, and usual meaning.

2.   The Interstate Insurers and AZRA should respond separately and in writing to each request set forth herein.

7

3.   All uses of the conjunctive include the disjunctive, and vice versa. All words in the singular include the plural, and vice versa. All uses of the word "all" include "any," and vice versa. All uses of the word "each" include "every," and vice versa. The use of a verb in any tense encompasses the use of the verb in all tenses. These constructions should be applied so as to make the requests more inclusive rather than more exclusive.

4.   Each request shall operate and be construed independently. Unless otherwise indicated, no request limits the scope of any other request.

5.   These requests call for information (including any information contained in or on any Document or thing) that is known or available to You, or in Your possession, custody, or control, including all information known or available to Your attorneys, agents, representatives, or any other person acting or purporting to act on Your behalf or under the direction or control of You or Your attorneys, agents, representatives or investigators. Separate and complete responses are required for each request.

6.   If You cannot answer any request fully and completely, after exercising due diligence to make inquiry and secure the information necessary to do so, please so state, and (a) answer such request to the fullest extent possible; (b) specify the portion of such request that You claim You are unable to answer fully and completely; (c) state the facts upon which You rely to support Your contention that You are unable to answer that request fully and completely; and (d) state what knowledge, information and belief You have concerning the unanswered portion of each such request. If your response is qualified in any particular respect, set forth the details of such qualification.

7.   If You withhold any information or decline to fully identify any person, document, or communication, or portion thereof, in response to any of the request set forth below on grounds

of privilege or any other claim of immunity from discovery, then for each identification, document, communication, or portion thereof withheld, state the following: (a) the type of document (e.g., letter, memorandum, contract, etc.); (b) its title; (c) its date; (d) its subject matter; (e) the name, address, and employer at the time of preparation of the individual(s) who authored, drafted, or prepared it; (f) the name, address, and employer at the time of dissemination of the individual(s) to whom it was directed, circulated, or copied, or who had access thereto; and (g) the grounds on which the Document is being withheld (e.g., "attorney-client privilege," "work product immunity," etc.).

8.   If You object or otherwise decline to set forth in your response any of the information requested by any request specify the exact grounds upon which You rely in sufficient detail to permit the Plaintiff and the Court to determine the legal sufficiency of Your objection or position, and provide the most responsive information You are willing to provide without a court order.

## **INTERROGATORIES**

1.   Describe the process by which a Participating Organization (as defined in the Interstate Disclosure) or other third party uses ClaimSearch as it processes a claim and a record may be created for that claimant containing certain limited information such as the claimant's name, the insured on the policy at issue, and general and categorical descriptions of the claimant's alleged injury and claimed loss.

2.   Describe the process by which a Participating Organization or other third party submits or has submitted a claim or inquiry for any claimant included in Claims Search.

9

3.   Describe the process by which a Participating Organization or other third party receives a match report containing the record created from the prior Participating Organization's or third party's claim submission;

4.   Describe how the Interstate Insurers and/or AZRA transmitted, provided or disclosed the Sexual Abuse Claims or the information relating to the Sexual Abuse Claims to ISO.

5.   Identify each person with knowledge of the transmission, disclosure or provision of the Sexual Abuse Claims or the information relating to the Sexual Abuse Claims to ISO.

6.   Describe the timing of and how ISO learned of the Bar Date Order and the confidentiality requirements thereunder.

7.   Identify the number of searches in the ClaimSearch database that would have included the Sexual Abuse Claims relating to the Bankruptcy Case.

8.   Identify the two Sexual Abuse claimants for which a record was created that was later provided to another Participating Organization or third party.

9.   Identify the Participating Organizations or third parties that were provided with a record of the two Sexual Abuse Claims.

10. Identify any and all information from the Sexual Abuse Claims included in the record of the two Sexual Abuse Claims provided to a Participating Organization or third party.

11. Describe any remedial measures taken or adopted following ISO learning of the Bar Date Order and its application to ISO.

12. Describe the circumstances and process of ISO's signing the Authorized Party Confidentiality Agreement attached to the Interstate Disclosure.

13. Identify each Person with knowledge of the statements made in the Interstate Disclosure, include such Person's affiliation, title and role.

10

14. Identify all insurers who have provided information concerning Sexual Abuse Claims to ISO in connection with the ClaimsSearch database.

15. Identify all instances in which information concerning Sexual Abuse Claims in the ClaimsSearch database has been subject to a privacy, confidentiality, or bar date order breach.

Dated:  New York, New York
        October __, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/  Draft*
James I. Stang, Esq.
Iain A. W. Nasatir, Esq.
Karen Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777
jstang@pszjlaw.com
inasatir@pszjlaw.com
kdine@pszjlaw.com
bmichael@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

11