Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY   10004

15

16                    October 23, 2023

17                    2:01 PM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1   Status Conference RE: Mediation (Doc # 2590)

2

3   Hybrid Hearing RE: Order to Show Cause on Motion to Withdraw

4   Attorney. (Doc# 2540, 2542)

5

6   Hybrid Hearing RE: Motion Pursuant to Rule 9019(a) of the

7   Federal Rules of Bankruptcy Procedure for Entry of

8   and Order Approving a Settlement Agreement and Release

9   Between the Seminary, the Committee, and the

10  Diocese. (Doc# 2548, 2549, 2551, 2552)

11

12  Hybrid Hearing RE: Motion for Relief from Stay filed by

13  Daniel J Woodard on behalf of Claimant No. 90507.

14  (Doc # 2478, 2491 2488, 2491, 2492, 2496 to 2498, 2573 to

15  2575, 2577 to 2579, 2592, 2595, 2596)

16

17  Hybrid Hearing RE: Motion for Relief from Stay. (Doc# 2479,

18  2491 2488, 2491, 2492, 2496 to 2498, 2573 to

19  2575, 2577 to 2579, 2592, 2595, 2596)

20

21

22

23

24

25

Page 3

1    Hybrid Hearing RE: Motion for Relief from Stay filed by

2    Patrick Stoneking on behalf of 90472 (Claimant), 90391

3    (Claimant), (Claimant) 90383, 90209 (Claimant), Claimant

4    90397, Claimant 90385, Claimant 90373, Claimant

5    90364, Claimant 90354, Claimant 90336, Claimant 90329,

6    Claimant 90304, Claimant 90294, (Claimant) 90242,

7    90219 (Claimant) (Doc. No. 2480, 2488, 2489, 2491, 2492,

8    2573 to 2575, 2577 to 2579, 2592, 2595, 2596)

9

10   Hybrid Hearing RE: Motion for Relief From Stay Filed by

11   Andrew Silvershein on behalf of Claimants, 90220,

12   90232, 90378, 90406, 90426, 90554, 90555, 90556. (Doc ##

13   2482, 2488, 2491, 2492, 2496 to 2498, 2573 to 2575, 2577 to

14   2579, 2592, 2595, 2596)

15

16   Hybrid Hearing RE: Motion for Relief from Stay filed by

17   Stephenie Lannigan Bross on behalf of claimant 90161,

18   claimant 90068, claimant 90066, claimant 90060, claimant

19   90044, claimant 90034, claimant 90033. (Doc No.

20   2483, 2488, 2491, 2492, 2496 to 2498, 2573 to 2575, 2577 to

21   2579, 2592, 2595, 2596)

22

23

24

25

Page 4

1    Hybrid Hearing RE: Motion for Relief From Stay Filed by

2    Jordan Merson on behalf of Merson Law Sexual

3    Abuse Creditors (doc. no. 2484, 2491, 2496, 2497, 2499, 2573

4    to 2575, 2577 to 2579, 2592, 2595, 2596)

5    Hybrid Hearing RE: Motion for Relief From Stay Filed by

6    Jason P. Amala on behalf of Claimant no. 90111. (Doc

7    # 2487 to 2492, 2496, 2497, 2573 to 2575, 2577, 2578, 2579,

8    2592, 2595, 2596)

9

10   Hybrid Hearing RE: Motion for Relief from Stay. (Doc# 2493,

11   2488, 2491, 2492, 2496 to 2498 2573 to 2575,

12   2577 to 2579, 2592, 2595, 2596

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   LAW OFFICES OF MITCHELL GARABEDIAN

 4        Attorney for Claimant 2020-2006749

 5        100 State Street 6th Floor

 6        Boston, MA 02109

 7

 8   BY:  MITCHELL GARABEDIAN

 9

10   PACHULSKI STANG ZIEHL & JONES LLP

11        Attorneys for the Committee

12        780 Third Avenue, 34th Floor

13        New York, NY 10017

14

15   BY:  KAREN DINE

16

17   JONES DAY LLP

18        Attorneys for the Debtor

19        250 Vesey Street

20        New York, NY, 10281

21

22   BY:  CORINNE BALL

23        TODD GEREMIA

24

25
```

Page 6

1  WESTERMAN BALL EDERER MILLER ZUCKER

2       Attorneys for Seminary of the Immaculate Conception

3       1201 RXR Plaza

4       Uniondale, NY 11556

5

6  BY:  WILLIAM HEUER

7

8  BURNS BAIR LLP

9       Special Insurance Attorneys for the Committee

10      10 E. Doty Street, Suite 600

11      Madison, WI 53703

12

13  BY:  TIMOTHY W. BURNS

14

15  PACHULSKI STANG ZIEHL JONES LLP

16      Attorneys for the Committee

17      10100 Santa Monica Blvd., Suite 1300

18      Los Angeles, CA 90067

19

20  BY:  JAMES I. STANG

21

22

23

24

25

Page 7

1    PFAU COCHRAN VERTETIS AMALA PLLC

2        Attorneys for Claimant 90111

3        403 Columbia Street, Suite 500

4        Seattle, WA 98104

5

6    BY:  JASON P. AMALA

7

8    LAW OFFICE OF MICHAEL G. DOWD

9        Attorneys for Creditor

10        217-59 Corbett Road

11        Bayside, NY 11361

12

13    BY:  MICHAEL G. DOWD

14

15    UNITED STATES DEPARTMENT OF JUSTICE

16        Attorneys for the U.S. Trustee

17        201 Varick Street, Suite 1006

18        New York, NY 10014

19

20    BY:  GREG ZIPES

21

22    ALSO PRESENT TELEPHONICALLY:

23    NATHANIEL ALLARD

24    JOHN B. BERRINGER

25    KENNEDY RHEA BODNAREK

Page 8

1   STEPHANIE LANNIGAN BROSS

2   JOHN E. BUCHEIT

3   MARTIN G. BUNIN

4   GEORGE CALHOUN

5   DYLAN CASSIDY

6   ELIZABETH CATE

7   ANDREW CIRIELLO

8   SHARA CLAIRE CORNELL

9   WAYNE M. COX

10   JOHN DALY

11   JILLIAN DENNEHY

12   CHARLES B. DESTRIES

13   THERESA A. DRISCOLL

14   FR. ERIC FASANO

15   ARIELLE Z. FELDSHON

16   YITZCHAK FOGEL

17   MITCHELL GARABEDIAN

18   ROBERT E. GERBER

19   TRUSHA GOFFE

20   WILLIAM HEIER

21   MICHAEL HOGAN LOVELLS US LLP

22   ADAM HOROWITZ

23   JAMES N. HULME

24   TODD C. JACOBS

25   AARON JAVIAN

1   ANN V. KRAMER

2   RICHARD L. KROEGER

3   JAMES M. MARSH

4   MICHELLE MCMAHON

5   BRITTANY MITCHELL MICHAEL

6   SIOBHAIN PATRICIA MINAROVICH

7   MICHAEL MISKELL

8   JAMES MOFFITT

9   BRETT S. MOORE

10  CHARLES MOORE

11  RAYAN ISSAM NASSER

12  IAIN A.W. NASATIR

13  FRANK A. OSWALD

14  CHRIS PERKINS

15  JOHN REFIOR

16  MATTHEW ROBERTS

17  LISA ROLLE

18  RUSSELL WEBB ROTEN

19  ERIC K. SCHWARZ

20  ANDREW SILVERSHEIN

21  THOMAS R. SLOME

22  ADAM M. SMITH

23  ERIK SORENSEN

24  PATRICK STONEKING

25  CATALINA SUGAYAN

Page 10

1   NORA ANNE VALENZA-FROST

2   JAMES J. VINCEQUERRA

3   CHELSIE WARNER

4   BENJAMIN B. WATSON

5   MATTHEW MICHAEL WEISS

6   BRENDA L. ADRIAN

7   SOMA BISWAS

8   EMILY CHARLTON

9   STEPHEN A. DONATO

10  UDAY GORREPATI

11  KAREN MORIATY

12  ANDREW S. RIVERA

13  VINCE SULLIVAN

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S

2            THE COURT:  All right, please be seated.  Good

3    afternoon, everyone.

4            ALL:  Good afternoon.

5            THE COURT:  All right, let's start by going down

6    through the agenda.  We'll get to more basic status

7    information in a little while.  So the first matter on the

8    calendar is the motion that Mr. Garabedian to withdrawn;

9    it's ECF Docket No. 2542.  There were no responses.  Does

10   anybody wish to be heard?  Go ahead.

11           MR. GARABEDIAN:  Mitchell Garabedian, Your Honor,

12   good afternoon.

13           THE COURT:  Good afternoon.

14           MR. GARABEDIAN:  I set forth in my papers our

15   position.  It's unopposed.  Proof of claim was timely filed.

16   There are no pending motions.  I believe that the allowance

17   of this motion will not materially adversely affect the

18   interests of the client.

19           THE COURT:  So was your client the subject of any

20   of the claim objections?

21           MR. GARABEDIAN:  Yes, he was.  There is a state

22   court action.  I currently have a motion in state court, a

23   motion to withdrawn in state court before that court.

24           THE COURT:  But was there a motion in this court?

25   Did the Diocese object to your client's claim?
```

```
 1              MR. GARABEDIAN:  Yes, at that time.

 2              THE COURT:  And what was -- I didn't look to see

 3     what the result was.

 4              MR. GARABEDIAN:  The case was -- you allowed the

 5     Diocese motion.

 6              THE COURT:  I sustained the Diocese's objection to

 7     the claim?

 8              MR. GARABEDIAN:  Yes.

 9              THE COURT:  Without leave to amend?

10              MR. GARABEDIAN:  Correct.

11              THE COURT:  All right.  And is your client

12     appealing that decision?

13              MR. GARABEDIAN:  The case is currently in state

14     court.

15              THE COURT:  That's not my question.  With respect

16     to many of the claims to which this Court has sustained

17     objections, there have been appeals taken from my decision.

18     Did you or your client appeal the order sustaining the

19     Diocese's objection to your client's claim?

20              MR. GARABEDIAN:  No.

21              THE COURT:  And has the time for an appeal

22     expired?

23              MR. GARABEDIAN:  Yes.

24              THE COURT:  I don't want to invade attorney-client

25     privilege, but did you advise your client of the time within
```

Page 13

```
 1    which your client could appeal?

 2             MR. GARABEDIAN:  I have advised my client and I

 3    really can't get into the attorney-client --

 4             THE COURT:  I don't want to get into the details

 5    of it.  Does anybody from the Diocese want to be heard?

 6             MR. GERMAINE:  No, Your Honor, we have no

 7    objection.

 8             THE COURT:  All right, the motion is granted.

 9             MR. GARABEDIAN:  Thank you.

10             THE COURT:  Submit the order in Word format.  I

11    just want to make some notes.

12             All right.  The next matter on the calendar is the

13    Seminary settlement motion; it's ECF 2548.  It's a motion

14    filed by the Committee.  Who's going to argue, Miss Dine?

15             MS. DINE:  Good afternoon, Your Honor.  Karen Dine

16    of Pachulski Stang Ziehl & Jones on behalf of the Committee.

17             Your Honor, the Committee and the Seminary, along

18    with the Diocese, reached a settlement relating to a

19    prepetition transfer that had been made to the Seminary.

20             THE COURT:  It sounds like a nice piece of

21    property.

22             MS. DINE:  Yes.  It's a beautiful piece of

23    property, and I believe most of it now is going to be state

24    park land, although the Seminary is going to retain

25    approximately --
```

Page 14

1                    THE COURT:  16 acres?

2                    MS. DINE:  -- 16 acres that has the Seminary

3      buildings on them for continued use.  And we have agreed to

4      a split of the proceeds at the time of the sale: 80 percent

5      to the Diocese or to an abuse trust if there ultimately is

6      one, and then 20 percent to the Seminary.

7                    THE COURT:  So my question when I reviewed this

8      settlement -- I know no objections have been filed -- is

9      what happens if this case is dismissed?

10                    MS. DINE:  If this case is dismissed, Your Honor,

11      the settlement goes forward and it essentially becomes the

12      settlement --

13                    THE COURT:  Well, there's no trust that's created

14      because the settlement --

15                    MS. DINE:  If there's no trust --

16                    THE COURT:  -- as I understand it contemplated if

17      there was a plan, there would be a trust established where

18      the proceeds from that sale would be held.  Obviously, if

19      the case is dismissed, there is no trust.

20                    MS. DINE:  That is correct and it will effectively

21      be a settlement of the Diocese and the Seminary with respect

22      to what would have been Diocese's claims for the transfer

23      and the money would go to the Diocese for them to use as

24      appropriate.

25                    THE COURT:  Without restriction on the Diocese.

Page 15

1           MS. DINE:  There is no restriction on the Diocese.

2           THE COURT:  As I don't have it open in front of

3    me, but when I looked at it, I think it contemplated that

4    the proceeds would be held by the Diocese until some point

5    in 2016, I thought.  Do I have that wrong?

6           MS. DINE:  Sorry, Your Honor.

7           THE COURT:  What I was --

8           MS. DINE:  So if the case were still ongoing and

9    the money came in before the trust was established, the

10   Diocese would hold the money to then contribute to the trust

11   when it was established.

12          THE COURT:  Was that a 2016 date?  I'm trying to

13   remember now.

14          MS. DINE:  I'm not sure why there would be a 2016

15   date, Your Honor.

16          THE COURT:  Hold on, let me see.  I must be

17   remembering incorrectly.  Can somebody help me?  I thought

18   if the case remains open, how long are those funds -- but

19   there is no confirmed plan; how long are those funds to be

20   held by the Diocese?

21          MS. DINE:  From the Committee's view --

22          THE COURT:  Let's assume I approve it, let's

23   assume it was sold next week and the case were to remain

24   open, we didn't have a confirmed plan; how would the funds

25   be held?

1             MS. DINE:  I believe that the Diocese would be

2    holding the funds effectively in escrow where it had amount

3    of funds to be applied to a trust if, in fact, that was in

4    the confirmed plan.

5             THE COURT:  And what I'm trying to remember is I

6    thought I saw that there was --

7             MS. DINE:  There may have been --

8             THE COURT:  -- a deadline by which something had

9    to happen.

10             MS. DINE:  I believe we put in a deadline because

11    the sale is, I believe, at least a year or so off, that I

12    believe we put in and ultimately guide language may have

13    been 2026 for when the agreement made --

14             THE COURT:  That's what I was saying, the 2026

15    date that I --

16             MS. DINE:  Yes, when the agreement would terminate

17    because the sale hadn't occurred and the settlement

18    agreement would no longer be effective.

19             THE COURT:  That was the 2026 date.

20             MS. DINE:  Yes, I believe so.

21             THE COURT:  That must be what --

22             MS. DINE:  I may be misremembering, and Mr.

23    Heuer...

24             MR. HEUER:  I was scurrying in the background

25    looking at, yes.

Page 17

```
 1                 THE COURT:  All right.  Let me hear from somebody

 2      from the Diocese.

 3                 MS. BALL:  Corrine Ball, Jones Day, for the

 4      Diocese.  Your Honor, there's a long lead time on the

 5      closing of this sale, but a very short time to get the

 6      contracts in place and keep the sale moving.

 7                 THE COURT:  Is there a buyer?

 8                 MS. BALL:  Yes, there is, Your Honor.

 9                 THE COURT:  Oh, it's the County.

10                 MS. BALL:  No, the State of New York is buying

11      most of it, and a very small portion is being bought by the

12      Town of Lloyd Harbor.

13                 THE COURT:  And are there contracts in place for

14      those purchases?

15                 MS. BALL:  We need to address the lis pendens to

16      get those contracts moving, which is one of the things that

17      the settlement with the Committee will enable us to do, so

18      that Mr. Heuer on behalf of the Seminary can move that sale

19      forward and we can bring in the proceeds, but I don't think

20      they're expected until 2024.

21                 THE COURT:  Okay.  And if you would, Miss Ball,

22      let's assume the case is dismiss, what happens?

23                 MS. BALL:  The sale would forward in the same

24      fashion, Your Honor, and the proceeds would come into the

25      Diocese.
```

Page 18

```
 1              THE COURT:  Without restriction.

 2              MS. BALL:  Without restriction.

 3              THE COURT:  Okay.  Does anybody else wish to be

 4   heard with respect to the Seminary settlement?  Mr. Heuer?

 5              MR. HEUER:  Good afternoon, Your Honor.  William

 6   Heuer, Westerman Ball for the Seminary.

 7              As the parties said, we have the Village of Lloyd

 8   Harbor taking its piece, New York State taking its piece.  I

 9   have draft contracts with each, everyone's eager for the

10   order of approval, and we're moving forward with that

11   process.  It will take about a year, we've been told, by New

12   York State to get through closing just because of their

13   internal process.

14              THE COURT:  So tell me what happens, Mr. Heuer, if

15   at some point in the future before a sale closes the Chapter

16   11 case is dismissed?

17              MR. HEUER:  So in the settlement agreement itself,

18   it provides that if the case is dismissed, this is purely a

19   settlement between the Seminary and the Diocese of the

20   claims that could have been asserted, so the funds would go

21   back to the Diocese.

22              THE COURT:  Okay.  Does anybody else wish to be

23   heard?  The settlement is approved.

24              MS. DINE:  Thank you, Your Honor.

25              MR. HEUER:  Thank you, Your Honor.
```

Page 19

1           THE COURT:  All right.  The next matter under

2    contested matters, the lift stay motions.  There are

3    numerous motions.  There was a joinder by the Committee, an

4    opposition by the Debtor.  Who's going to argue on behalf of

5    the Committee?

6           MR. BURNS:  Good afternoon, Your Honor.  Tim

7    Burns, special insurance counsel to the Committee.

8           In this Court's decision on the Diocese's motion

9    for preliminary injunction, this Court distinguishes between

10   threats to the estate's insurance policies and actions to

11   obtain control of the proceeds of the policies, the latter

12   being subject to automatic stay, the former not.

13          The moving survivor's settlement demands are just

14   threats to the --

15          THE COURT:  I'm sorry, what?

16          MR. BURNS:  Are just threats to the policies.  If

17   we had to anticipate the response from the insurers, it

18   would be a hard no.

19          THE COURT:  Let me ask you this, Mr. Burns.  How

20   many demand letters have been sent to the Diocese by

21   claimants?

22          MR. BURNS:  None have been sent yet, Your Honor.

23   There are 38 ready to be sent.

24          THE COURT:  Is there anything that would have

25   prevented any of the claimants from sending demand letters

Page 20

1    to the Diocese?

2         MR. BURNS:  So, Your Honor, in abundance of

3    caution on our part when the Committee in Rochester sent

4    demands with no objection from the Diocese, the recalcitrant

5    insured their immediate plea objected.  And also Your Honor

6    is probably aware that Judge Kinsella ruled against us on a

7    lift stay motion a few weeks --

8         THE COURT:  I did, I read the transcript because

9    the Diocese attached the transcript.  So in the Diocese's

10   objection in Paragraph 4 on Page 3, it says, "The Diocese is

11   willing to receive and transmit the demand letters from the

12   lift stay claimants to its insurers, and the Diocese has

13   made that clear to the Committee during several meetings

14   held with respect to the lift stay motions."  It goes on

15   from there, but I'll stop there.

16        So it didn't seem to me even to require the

17   Diocese to say you want to make demand of us, make demands.

18   Do you agree after receiving the Diocese's response that

19   there was no impediment from any of the claimants making a

20   demand on the Diocese?

21        MR. BURNS:  The only impediment, the concern that

22   the insureds would raise, a violation --

23        THE COURT:  Well, what standing do the insurers

24   have to object to claimants asserting -- making a demand on

25   the Diocese?

1         MR. BURNS:  Your Honor, I would say they have no

2    standing.

3         THE COURT:  I agree with that.

4         MR. BURNS:  Their prepetition rights aren't

5    affected.

6         THE COURT:  I agree with that completely.  So I

7    don't understand the purpose of this motion when there has

8    been no impediment to claimants making a demand on the

9    Diocese.  It's from the Diocese that they purport to have

10   claims.

11        MR. BURNS:  Your Honor, the only purpose -- we

12   would have withdrawn the motion after the Diocese agreed to,

13   but before we could meet with the Diocese, Judge Kinsella

14   had ruled.  And it seemed to us that it would be imprudent

15   to move forward.

16        THE COURT:  People regularly withdraw motions

17   before me when they decide it's really unnecessary.  Do you

18   agree your motion is unnecessary?

19        MR. BURNS:  I agree, Your Honor, our motion is

20   unnecessary.  I think the insurance companies have no

21   standing to object to this.  I think these are just mere

22   threats to the insurance policies, they're not seeking to

23   obtain control of the proceeds, and the Committee has

24   already said before --

25        THE COURT:  If you agree, I take it, that

Page 22

1    claimants don't have a basis for taking control of the

2    policies at this stage, correct?

3              MR. BURNS:  We would have to seek relief from the

4    state to do so, Your Honor.

5              THE COURT:  Well, it's more than just relief from

6    the stay.  I mean, there's applicable state law with respect

7    to whether or when injured parties can assert claims against

8    an insurer, correct?

9              MR. BURNS:  Well, the --

10             THE COURT:  It's not their insurer; it's the

11   Diocese's insurer.

12             MR. BURNS:  Well, then that would be why we're

13   making claims on the Diocese.  If we make a claim on the

14   Diocese and the insurance companies say yes, that would

15   present an opportunity for potential settlement in --

16             THE COURT:  So what was everybody waiting for if

17   they wanted to make claims on the Diocese; you agree there's

18   nothing that would have been an impediment to that.

19             MR. BURNS:  No, Your Honor, just an abundance of

20   caution.

21             THE COURT:  Go ahead, Mr. Burns.

22             MR. BURNS:  I think the Court understands the

23   issues here written, so we'll rest on our papers.

24             THE COURT:  Okay.  Who's going to argue for the

25   Diocese?

Page 23

1                 MS. BALL:  Your Honor has correctly reflected our

2        willingness to deliver letters.  We note, however --

3                 THE COURT:  That's a giant step, I say

4        facetiously.

5                 MS. BALL:  Oh, we agree, one we're very

6        comfortable making.  However, we put out to Your Honor that

7        reply is replete with references to advancing a plan.  We're

8        not sure that this will assist in achieving that same

9        purpose and, to the extent it does lead to discovery, we

10       would ask that that not occur and we avoid the expense.

11                THE COURT:  Well, let me put it this way.  The

12       Committee has acknowledged that lifting the stay is

13       unnecessary in order for claimants to deliver demand letters

14       to the Diocese.  The motion is denied.

15                MS. BALL:  Thank you, Your Honor.

16                THE COURT:  Okay.  That brings us to the status

17       conference.

18                MR. AMALA:  Your Honor, I apologize.  Your Honor,

19       it's Jason Amala for Claimant No. 90111.  We had filed a

20       motion for relief from stay for the same purpose, and I just

21       want to confirm the Court's (indiscernible).

22                THE COURT:  I'm denying all motions to the stay.

23       I understand.  The motions to lift the stay were filed by

24       claimants, including ones you represent.  The Committee

25       filed a joinder in it.  The motions themselves were really

Page 24

1   quite short; it was quite clear what relief you were

2   seeking.  And I've reviewed all of the motions, the joinder,

3   the Diocese objection, and the motions are denied.

4          Go ahead and send your demand letters, you know,

5   that's fine.

6          MR. AMALA:  Thank you, Your Honor.  That's all I

7   wanted to confirm.  Thank you.

8          THE COURT:  Okay.  All right.  So it brings us to

9   the status conference.  So among the things that I've

10  received, obviously, I received the mediator's status

11  report.  I received the Pachulski Stang letter asking that

12  the Court immediately remove the Diocese letter from the

13  docket.  I also have -- I mean, that was October 20th.

14  October 19th was the Jones Day letter to the Court regarding

15  the status and attached a term sheet to it.

16         I was certainly sorry to hear from the mediators,

17  and I guess it was Mr. Van Osselaer who filed the status

18  report indicating that Magistrate Judge Cave authorized the

19  filing of that.  And mediator's status report in Paragraph

20  No. 1 includes the following sentence, "All parties

21  recognize that those sessions were the likely final sessions

22  if there was to be an agreement reached prior to the Court's

23  October 21, 2023 deadline for those parties to announce a

24  consensual plan of reorganization."

25         I didn't go back to look at the actual wording of

Page 25

1    the order.  There's no question that October 31, the Court

2    designated that as an important date that's in the order

3    that I entered denying the motion to dismiss without

4    prejudice.  That date came about because I asked the

5    Committee and I asked the Debtors how much time did they

6    think was going to be required.  The Committee said 30 days,

7    and Mr. Geremia said October.  I said beginning of October

8    or end of October, and he said October 31.  That was the

9    date that was included in the order.

10        Each side no doubt -- when I say each side,

11   there's obviously more than two sides, but when I'm

12   referring to each side, I'm talking about the Committee and

13   the Debtor -- may have a different view about progress, lack

14   of progress.  Obviously, no plan structure was achieved

15   before -- well, we haven't hit October 31 yet, but close.

16        And I don't want to invade the mediation privilege

17   and what transpired in the mediation.  It's unclear to me

18   what the stumbling blocks are to reaching a consensual plan.

19   Earlier on in this case, I asked the question, what I've had

20   a hard time -- I've said this before -- what I have a hard

21   time understanding is what's the aggregate quantum of the

22   abuse survivor's claims.  And when I raised the issue of

23   estimation for plan purpose, not for distribution, that

24   suggestion was met with a resounding no from both the Debtor

25   and the Committee.

1           Since receiving the mediator's status report, you

2    know, I've pondered if -- you know, it's very hard to come

3    to an agreement on a plan.  Let's assume that the Committee

4    and the state law counsel have a view about what the

5    aggregate amount of the claims in this case are, whether

6    that range or figures, what wight should be given to it.  I

7    mean, I respect the counsel who are involved in this case on

8    all sides.

9           But, you know, you can write circles around what

10   you think the Debtor's assets and the parishes -- they're

11   non-debtors, but they've certainly upped the amount that

12   they've offered to contribute to any plan -- you could draw

13   circles around it.  You could come to some range of what you

14   view the value of all of the collective assets to be.

15          You've all focused on insurance.  I don't know

16   whether anything's been offered up from the insurers or not;

17   I don't want to know that at this stage.  But you all -- you

18   know what the policies are, some without any aggregate

19   policy limits, some with.  I certainly permitted discovery

20   with respect to Arrowood's financial ability to respond in

21   connection with mediation.

22          It's hard for me to know what are the major

23   stumbling blocks to coming to some agreement.  And it may

24   be, you know, the Committee may already have a motion to

25   dismiss drafted that it's going to file on November 1st, I

Page 27

```
1    don't know, and I don't know what the Diocese response to

2    that's going to be.  I know that in the letter that they

3    sent regarding status of the mediation, they certainly

4    recognize the distinct possibility that I may well dismiss

5    this case.  I don't want to be the first judge to dismiss a

6    Diocese case, but I may well be.

7            So what's I've been trying to think about, are

8    there ways to get a better handle on the claims so when I

9    think about, outside of bankruptcy court, how have attempts

10   been made to do that.  The case I'm probably most familiar

11   with is the General Motors bankruptcy and Motors

12   Liquidation, because that's on my watch.  Judge Furman in

13   the district court has the MDL -- I mean, it's largely done

14   now -- and he followed a pattern that's similarly been

15   applied in many MDL cases, mass tort or otherwise, and that

16   is to have some trials of some test cases with multiple

17   sides suggesting cases.

18           So, you know, for example, here, it could be the

19   Diocese picking several cases, the Committee in consultation

20   with the state court counsel picking several cases, where

21   that would be.  I haven't done it, but I'm certainly

22   considering contacting the state court judge in Nassau

23   County who's coordinating all of these cases, whether he has

24   -- I know that supposedly long way from trial, but would he

25   be prepared to try a number of test cases, try them to a
```

Page 28

1   jury, see where they come out; try and get a better handle

2   on what's the range of potential recoveries against parishes

3   and/or the Diocese.

4        I don't know.  I'm thinking out loud.  I had a

5   little reluctance to do that, but I thought I'm just going

6   to do that today.  Put it this way.  Before I will dismiss

7   the case -- and I might do that, I very well might -- and

8   I'm sorry that the mediation has not led to a successful

9   result, but I'm certainly -- one of the questions I'm going

10   to ask the Diocese in response to any reviewed motion, what

11   alternatives do you suggest, because the case isn't just

12   going to go on the way it is.  I've made that clear before.

13   I don't see any reason for that.

14        You know, you can all go slog away in state court,

15   you can appeal from whatever -- if I dismiss it, you can

16   appeal and spend some time on the appellate process, but I

17   don't think that's going to get to a result.  And so, I

18   don't know whether collectively, you have spoken about, no,

19   we can't come to an agreement about what the specific number

20   should be.  Have we thought about a process in state or

21   federal court to try and put, you know, some rings around

22   it.

23        The only thing that I thought of was what's been

24   common in large MDL cases, to actually try some test cases

25   with the expectation or hope that those will become guides

Page 29

1     to settlement; if not settlement precisely here, putting

2     some parameters around what's the exposure of the Diocese

3     and the parishes here.  And I don't know whether you've

4     talked about that, any of that, whether you -- to see

5     whether short of dismissal you have some alternative

6     suggestions about how to move this case forward.

7              Let me stop there.  Does either side want to have

8     anything to say?  Again, met with resounding silence.

9              You're on mute, Mr. Stang.  You're still on mute.

10             MR. STANG:  Now I'm off.  Excuse me, Your Honor.

11    James Stang, Pachulski Stang Ziehl & Jones for the

12    Committee.

13             Your Honor, we do not think there is a serious

14    dispute that the value of the claims far exceeds the amount

15    that the Diocese has offered through its letter.  And I

16    don't know if you're going to get back to the propriety of

17    that letter, but let me focus on the substance of your

18    comments.

19             THE COURT:  Believe it or not, Mr. Stang, I looked

20    at that letter quickly and I really didn't pay much

21    attention to it because I didn't think that was -- that's a

22    different issue from whether it ought to be sealed or

23    whatever.  I'm not addressing that yet.

24             MR. STANG:  Your Honor, I appreciate that, but I

25    do want to come back to the letter because the fact that you

Page 30

```
 1   didn't pay much attention to it is not beside the point, but

 2   a lot of other people have seen that letter and it's been

 3   published through a newspaper.

 4          THE COURT:  So I don't know what good sealing it

 5   or striking it would do now.  The world knows all about it.

 6          MR. STANG:  Well, we reserve rights regarding

 7   other remedies, but let me focus on what you asked about.

 8          The Committee retained a company called Claro --

 9          THE COURT:  I'm sorry, I missed the name.

10          MR. STANG:  C-L-A-R-O.

11          THE COURT:  Okay.

12          MR. STANG:  -- to value the claim.  Claro has been

13   retained in a number of other cases involving sexual abuse.

14   It testified in the Diocese of Camdem case on behalf of the

15   Committee; we do not represent the Committee in Camden.  And

16   I don't think there's any serious question about the

17   qualifications of Katie McNally, who is the witness

18   appearing for Claro, as to her expertise.  I am assuming

19   that the Debtor has employed and use someone like Claro to

20   do the same function.

21          I don't think there's a serious question as to

22   whether the Diocese's and affiliate's offer is substantially

23   less than the amount of the value of the claims.  And the

24   Debtor has tested certain aspects of those proofs of claim

25   through a myriad of objections, and its average estimate in
```

Page 31

1    the letter, we think is grossly overstated because it is not

2    accounting for the fact, as we said from the very first day

3    of the claims objection process, that while claims may be

4    disallowed against the Diocese, they still exist against the

5    parties who would be channeled by any consensual claim.

6            But let me get away from whether the average is

7    accurate or not.  There's been a lot of testing of the

8    claims.  We know that regardless of what you might say about

9    the value of the claims, Purdue, as it currently exists,

10   requires that 75 percent of the survivors who are affected

11   by the plan vote in favor of it, and that's the bare

12   minimum.

13           And so, where I think that the Committee's

14   position is well reasoned through the mediation, at the end

15   of the day, the Diocese offer has to be accepted by more

16   than 75 percent of the survivors.  And you heard the

17   testimony at the motion to dismiss about what positions were

18   likely to be taken in a (indiscernible) that was on file by

19   the Diocese at the time of that motion.

20           The Diocese makes a big deal of the fact that,

21   yes, they're offering this amount, but look at all the

22   insured's coverage that we've got, and I think in the

23   letter, they may actually even use the "b" word, billions.

24   But certainly their position has been, and has been

25   consistent throughout the case, that the real value here is

Page 32

1    with insurance.  Well, it's no cakewalk to get the

2    insurance.  The way that the parties have negotiated about

3    how the insurance may be treated makes it even less of a

4    cakewalk.  And while you may not know the results of the

5    Arrowood discovery that you ordered some weeks ago, Arrowood

6    is not low-hanging fruit by any stretch of the imagination;

7    frankly, none of the carriers are.  There are four coverage

8    actions pending.

9          And so, when we look at the totality of the

10   circumstances, we do not see the Diocese's last and best

11   offer as being adequate.  It just -- I use the expression

12   sometimes, "The picture is much bigger than the frame."  The

13   picture is the liability of the Diocese and the affiliates.

14   There's no question in our mind that the picture exceeds the

15   frame.

16         Now, the reality has to set in that to get a deal,

17   you have to cut the edges of the picture and make it fit.

18   We don't think the Diocese and its affiliates are doing

19   enough to -- or working or cinching their belts enough to

20   get the value that would enable them to do right by the

21   survivors and at the same time continue their mission.

22         Our stance throughout this case has been that

23   recognition that the Diocese and its affiliates perform

24   admissions for various legal reasons and perhaps personal

25   reasons, people think that that admission has to continue

Page 33

1    and should continue and we recognize that in our

2    discussions.  We just don't think that they're trying hard

3    enough.

4           So let's talk about test cases for a moment.  The

5    matters that were released from the preliminary injunction

6    are going forward before Judge Steinman in state court.

7    That may have been the judge you were referring to.

8           THE COURT:  It is.

9           MR. STANG:  Those cases do not represent the

10   universe of all the cases.  They really approach the

11   preliminary injunction opposition in a very narrow way to

12   try to maximize our chances of getting success.  Our goal

13   was to try to see if that release from the injunction would

14   result in advancements in the mediation, and let's just say

15   that it hasn't advanced to the point where we can tell you

16   we have an agreement.

17          THE COURT:  Mr. Stang, let me interrupt you for a

18   moment.  I didn't say this before, but it something that

19   crossed my mind.  With respect to the concept of test cases,

20   I would certainly consider lifting the stay against those

21   actions that named -- you know, for test cases that named

22   the Diocese as well as the parish.  So test cases -- I did

23   think about this -- test cases could include cases in which

24   both the Diocese and a non-Diocese party was also parties to

25   that action.  Because I understand on the injunction motion,

Page 34

```
1    you only sought to deny the injunction with respect to cases

2    against the parish only, not (crosstalk) --

3              MR. STANG:  That's correct.  And Your Honor --

4              THE COURT:  That may not be an answer, but that's

5    -- you know, and it may be that the state court is just

6    totally unwilling to say, great, now I've got more cases

7    because it includes the Diocese as a defendant as well as

8    the parish.

9              MR. STANG:  Your Honor, I thought that's where you

10   were going.  In my notes, I wrote debtor question mark when

11   you were talking about test cases.  So I wasn't going to

12   assume what you meant, but I was thinking you probably were

13   headed in that direction.  And I would ask state court

14   counsel who are on this call to please correct if I'm wrong.

15   I've never appeared before Judge Steinman.  I don't attend

16   the status conferences; Jones Day does.  They apparently

17   represent someone in those cases that they feel they should

18   be taking the lead in the state court.

19             But I'm told that Judge Steinman has not accepted

20   the notion of test cases for the cases he has before him.

21   And as to how he's handling them, the scheduling, I've been

22   told he's being very aggressive in his pretrial scheduling.

23   But I would leave it to state court counsel to tell the

24   Court whether Judge Steinman thinks that for the 200 plus

25   cases he's got -- actually, it may not be fully 200, a lot
```

1    have been remanded but, you know, it's over 100, I know

2    that, you know, how he feels about that.

3              THE COURT:  Yeah, I'm not -- look, I could

4    understand -- well, Judge Steinman will make his own

5    decision whether he's prepared to agree to early trial in a

6    number of test cases.  But if doing that offered the

7    potential of -- in other words, if the bankruptcy case was

8    not dismissed at this time and hypothetically I'm saying

9    each side pick two test cases, three test cases, it would

10   probably be a lot easier for Judge Steinman to have to try

11   six cases than 200 cases.

12             If the outcome of the test cases was essentially

13   come back to the bankruptcy court and mediate further and

14   see whether, now that there have been some circles drawn

15   about high and low values, what's the universe of claims

16   look like?

17             I'm sorry, Mr. Stang, I interrupted you, but

18   that...

19             MR. STANG:  No, no, that's all right.  Your Honor,

20   I'm going to -- and Mr. Amala came right up on the camera; I

21   suspect he wants to say something about the test case

22   concept.  I'm under the impression that we have not had the

23   discussion with the Diocese about releasing the Diocese from

24   the stay.

25             I mean, I've just heard what Miss Ball said about

Page 36

1   the demands, vis-à-vis the insurance, and how the Debtor

2   would resist discovery.  I'm assuming that that's not -- the

3   stay relief against the Diocese is not happening today on a

4   consensual basis.  Perhaps, I'm wrong, but you know, I'm

5   guessing here.

6           I don't think -- I'll let state court counsel

7   speak for themselves about the test case concept.  But we

8   have spent a lot of time, a lot of money on expert advice as

9   to what these cases are worth, and those experts rely on

10  what is now becoming more and more data in New York

11  regarding child sex abuse verdicts.

12          So survivors will lose some cases in state court,

13  they will win some cases, and the notion of test cases on a

14  very limited basis --

15          THE COURT:  Hang on a second.

16          MR. STANG:  -- I think that I would ask --

17          THE COURT:  Mr. Burns, if that's your phone, shut

18  it off because the next time -- everybody better have their

19  phones on mute or off.  Go ahead, Mr. Stang.

20          MR. STANG:  What the gavel is for, Your Honor.

21  You get one ring and boom.

22          THE COURT:  You know, in 17 years, I've never had

23  my gavel out here.  I've thought about it a few times.  I've

24  regretted a few times that I didn't have it here.  Go ahead,

25  Mr. Stang.

Page 37

1              MR. STANG:  So I would ask Mr. Amala or others to

2      comment on the utility of test cases in the context of where

3      we are today.

4              So, Your Honor, my view of it is we know what the

5      values are, we know the difficulties associated with the

6      insurance.  It's not how the Diocese describes it in its

7      letter as if they're just writing checks.  And we don't

8      think that the affiliates and the Diocese -- I'm not going

9      to point fingers as to which we think should spout more

10     because that would get into the mediation, but they need to

11     do more, and we just haven't been able to get there with the

12     extra efforts of our two mediators.

13             THE COURT:  Mr. Amala, do you want to be heard on

14     the test case concept?

15             MR. AMALA:  Sure, Your Honor.  Jason Amala for a

16     number of the claimants.

17             Your Honor, I believe the status conference we had

18     with Judge Steinman, I don't remember if there was a court

19     reporter present, and I was going to offer, if there was,

20     that we can get you a transcript if you'd like to hear his

21     comments or read his comments.

22             I just wanted to mention in response to Mr.

23     Stang's comments or description of that hearing.  The

24     plaintiffs had said we wanted to propose some test cases,

25     the defendants were not agreeable to that at the time, and

Page 38

1    so, Judge Steinman basically said, well look, right now, I'm

2    not going to order it if people won't agree to it.  He

3    didn't -- and that was kind of it.

4            I will say, Your Honor, he also, Judge Steinman,

5    indicated that he was very aware that this Court had set the

6    end of October as a deadline.  And so, Mr. Stang is right,

7    he's been pushing the parties to get moving but he was also

8    cognizant that this Court had set the end of October to see

9    if the deal could be done.

10           So I think if we were to go back to him with the

11   idea that this Court believes that some test cases could be

12   helpful, I don't want to even begin to speak for him, but I

13   think he may be open to that given the tenor of the hearing

14   we had.

15           And, Your Honor, since you asked if I'd like to

16   say a few words on test cases, I personally think it would

17   be a very good idea and very helpful.  I agree with Mr.

18   Stang, there are experts that are testifying these days

19   about the value of the cases.  But I think some test cases

20   would do a very good job of illustrating the value so that

21   we're not having a battle of the experts; we can see what a

22   jury says the cases are worth.

23           And I personally, Your Honor, the bigger issue

24   here could be very helpful is the reason I piped in earlier,

25   Your Honor, and asked about our motion for relief from stay

Page 39

1      to make a demand, insurance policy demand.  That's the first

2      step in these cases of making an individual offer on a case,

3      let the insurance companies respond.  If they don't agree to

4      pay the case, then you go try it, and if you get a big

5      verdict and the carrier didn't pay the offer and they should

6      have, the carrier may have to pay the full freight.

7              The point is, Your Honor, some test cases I think

8      the bigger, not just the value of the cases, but I think in

9      terms of forcing these insurance companies to actually come

10     to the table and not hide behind their coverage defenses.  I

11     think some test cases would do a very good job of moving

12     that along, not just in this bankruptcy but in, frankly, a

13     lot of other bankruptcies.

14             Thank you, Your Honor.

15             THE COURT:  Thank you, Mr. Amala.

16             MR. STANG:  Your Honor, I don't know if other

17     state court counsel wanted to address you, but you said --

18             THE COURT:  Can you hang on for a second?  We've

19     got a jet plane flying nearby here with a lot of noise.

20     Let's let it go by for a minute.

21             Go ahead, Mr. Stang.

22             MR. STANG:  I thought it was a vacuum cleaner in

23     someone's background.

24             Your Honor, you made a comment about these test

25     cases could be in federal or state court.

Page 40

1          THE COURT:  Well, I didn't really mean federal,

2    but I said it anyway.

3          MR. STANG:  And I --

4          THE COURT:  I don't want to get stopped by judges

5    in the district court, but...

6          MR. STANG:  Well, you know --

7          THE COURT:  I really want to try these cases, Mr.

8    Stang.

9          MR. STANG:  You might have to take the stairs

10   rather than the elevator if you did that.

11          I would invite other state counsel on the call,

12   Your Honor, and we certainly would go back to the Committee

13   with the state court counsel participation to explore what

14   you said.  And as you said and as you indicated, it's not

15   October 31st.  We certainly have the time to assess the

16   concept and come back to you shortly before October 31st to

17   give you our reaction.

18          But we do have several other state court counsel

19   on the call and if you're interested in hearing from them, I

20   suspect that -- Mr. Dowd just raised his hand -- I suspect

21   they'd be happy to address you.

22          THE COURT:  I'd be happy to hear from any other

23   state court counsel who want to be heard.

24          MR. DOWD:  Yes, Your Honor.  Michael Dowd.  I

25   represent a number of survivors in this case, and I would

Page 41

1    very much be in favor of using test cases, frankly, to

2    establish value.  I think there's nothing like an American

3    jury.  They hear a case and decide it and it's the fairest

4    and best way, you know, that we have, so I would say very

5    much in favor.

6              THE COURT:  Thank you, Mr. Dowd.

7              MR. DOWD:  You're welcome, Your Honor.

8              THE COURT:  All right.  Any other state court

9    counsel who wish to be heard?

10             So let me -- you all have much more experience; I

11   don't have any experience with these cases before this.  So

12   I'm sure you've all looked at it -- I look at it from time

13   to time -- the Penn State Law School website, and they have

14   these nice lists of those cases that have resulted in

15   confirmed plans and those that have not.  And, you know, I

16   haven't looked at that website exhaustively, but yes, I have

17   spent time on it, a variety of time over months.

18             And, you know, as we get closer to October 31st, I

19   keep asking myself why have those cases succeeded and this

20   one not.  And, you know, I know -- I don't know why.  I

21   don't know why.  I think the one thing that I see is there

22   are more sex abuse claimants in this case; maybe there are,

23   maybe there aren't, you know.  And, you know, every week, I

24   looked at another Diocese has filed, not a pretty picture.

25   And you all collectively have been living with this case,

Page 42

1    and other cases perhaps, and while the only thing that --

2    well, let me come back to the insurance issues.

3            I've said this before when I raised the estimation

4    question, which drew total silence, none of you were

5    interested in that.  And I understand that I couldn't do

6    estimation for distribution purposes because of 157(b)(5),

7    absent consent, not something I'd want to do anyway.

8            So I don't know whether you have other ideas,

9    whether you've shared those ideas with each other or not,

10   how to get this case from where it is now, which as far as

11   I'm concerned is nowhere, close to an exit from the

12   bankruptcy court door.  Much as I would regret to be the

13   first bankruptcy judge to dismiss a Diocese case, that may

14   well be.  It can't go on the way it has.

15           MR. STANG:  Your Honor --

16           THE COURT:  Just a second.

17           MR. STANG:  I'm sorry.

18           THE COURT:  So let me come back to the insurance.

19   So I do know from looking at the Penn State website, some of

20   the cases have included settlements with some but not all

21   insurers, some have not included any settlements with

22   insurers.  You know, that, it seems to me, requires on all

23   of your sides some feeling of what's the likelihood of

24   recovery, when, you know, no recovery.  I mean, I know that

25   the insurers have asserted various defenses to coverage.

Page 43

1             So you may now, Mr. Stang, what the Diocese and

2    the parishes, what pot they put together, but it leaves this

3    giant question mark about insurance.  I can't help you on

4    that one.

5             Go ahead, Mr. Stang, I cut you off.

6             MR. STANG:  Your Honor, in the Diocese of San

7    Diego case, Debtor's counsel advocating before now-retired

8    Judge Adler said the current values should be akin to what

9    was paid in the Diocese of Davenport, and Judge Adler turned

10   to Ms. Boswell and said, "But we have a view of the

11   Pacific."  Every case is different and one of those

12   differences is that they have different assets.

13            And we believe that this is one of the wealthiest

14   Diocese in the country.  Every Diocese, usually in their

15   opening, says we're the poorest Diocese in the country.  I'd

16   like to find the one that's actually the poorest.  But we

17   feel that the Long Island Diocese and its parishes have an

18   ability to pay the values that we are advocating for in

19   mediation.  The insurers are the mediation parties.  There

20   have been mediation offers and counteroffers, and that's

21   where I'll stop, not with everybody, some are more

22   responsive than others, but they have not been left to

23   decide.

24            In the Diocese of Rochester, the case in which we

25   represent the committee, there is a settlement with at least

Page 44

1    one carrier and there isn't a settlement with CNA and CNA

2    has proposed its own plan in competition with the plan that

3    the Diocese and the committee has presented, and we'll see

4    how Judge Warren deals with that.  I think there are some

5    schedule orders that have come out and we'll have a

6    confirmation hearing there sometime, you know, I think in

7    the first quarter of next year.  So we aren't prepared --

8            THE COURT:  May I ask a question?

9            MR. STANG:  Yes, sir.

10           THE COURT:  Does the plan in that case include

11   releases of the parishes?

12           MR. STANG:  Yes, with projection to make sure that

13   the insurance piece doesn't get messed up by virtue of those

14   releases, but yes, it does.  I think I can safely say it's

15   not one that I do day to day, that it's for their non-

16   insurance assets.  They have protection for their non-

17   insurance assets.

18           So I wanted -- you know, why is this case not

19   settling and the others have.  And I think our latest count

20   is that our firm has represented committees in 17 cases that

21   have settled, some of which had global settlements,

22   including carriers; that was more the early model, we got

23   everybody in.  This latter model with the insurance

24   companies being (indiscernible) intransigent is different

25   and the Boys Scouts case is an example of that.  We had

Page 45

1    settling insurers and non-settling insurers and how the non-

2    insurance cases are valued and handled by a trust is rough

3    said or it's been known to at least in state court counsel

4    in the BSA reorganization plan.

5            So, you know, why hasn't this case settled?

6    Because we don't think they're trying hard enough.  Given

7    that we recognize, as I said at the beginning, they're not

8    going out of the business, they're not going out as the

9    bishop.  And we've done a lot of valuations of claims; we've

10   done a lot of valuations of the assets.  We think we know

11   what the picture size is, we think we know what the frame

12   size is.

13           We have talked to the Diocese about how we think

14   they can achieve the number that we are asking for.  We've

15   done that in mediation.  You know, we have a disagreement as

16   to whether that is viable (indiscernible).

17           That's all I have, Your Honor.

18           THE COURT:  Thank you.  Miss Ball.

19           MS. BALL:  Thank you, Your Honor.  I don't know

20   whether to be happy or sad, but you seem to be losing sleep

21   over this case almost as much as I am.

22           I have three things I want to say, but let me

23   start with the most important.  If we cannot build consensus

24   on our post-mediation new offer never before made on or

25   before October 31, we may have nowhere to go.

1          I say that, Your Honor, because the resources are

2   not there.  We took you quite seriously when you said

3   October 31 as the deadline to either be in plan mode or

4   prepare for the end.  There is no more.  However, Your Honor

5   has --

6          THE COURT:  If you'd like, I'll just say no plan

7   October 31, the case gets dismissed.

8          MS. BALL:  Your Honor, indeed, we have asked the

9   Committee for their draft order.

10         THE COURT:  I'm thinking about trying to think

11  about is there some other --

12         MS. BALL:  We have asked Committee twice.

13         THE COURT:  -- something else that needs to be

14  exhausted.

15         MS. BALL:  All right, Your Honor, let's get to

16  that, your idea of test cases.  You know where a test case

17  should be done?  Under a plan, that's where they can and

18  should be done on the same premise that you're talking about

19  now, because the target of these claim valuations.  You

20  heard Mr. Stang, it's not the uninsured exposure, which by

21  the way, we of course think we are covering, but let's not

22  debate that; it's the claim values into the insurance,

23  they're the targets.  Fine, get us in plan mode, do the test

24  case, we'll work with you but do it post-emergence.

25         Judge, there just is no more.  I have to

Page 47

1    underscore that.  The reason Mr. Geremia suggested October

2    31 on that fateful day in May was because we're running out

3    of money, and we planned for getting through with this case.

4    We can do it if we're out by early 2024, which is why we

5    have said and we're focused on the deadline of October 31.

6    I think you're right; we did want all claims to know our

7    post-mediation offer because we thought the end was in

8    sight.  I don't think that that has changed.

9            But by the same token, we are very open to test

10   cases in the context of a post-emergence trial strategy.  It

11   can be done; it was discussed.  It was proposed by the

12   creditor's committee in Camden; it ultimately didn't happen.

13   But that's where that strategy belongs because the target is

14   in the insurers.

15           The claim valuations that we have, we look around,

16   we are doing all that we can without having to close

17   schools, close churches, and sell.

18           THE COURT:  What do you do if there are test cases

19   that result, hypothetically, in a $2 million compensatory

20   damages and $5 million punitive damages, which is not

21   insurable.

22           MS. BALL:  It's also not allowable in bankruptcy.

23           THE COURT:  You're talking about -- I'm talking

24   about test cases in state court, whether it's pre- or post-

25   confirmation.

Page 48

1           MS. BALL:  I would assume the trust distribution

2    procedures, if we were to do it as we take your idea as I

3    suggest, it would not the issue, the 2 million would be

4    there.

5           THE COURT:  If there are test -- all right.  You

6    say post-confirmation.

7           MS. BALL:  That's right.

8           THE COURT:  If it's pre-confirmation and the stay

9    is lifted and case goes to a jury and they return some mega

10   million dollar punitive damage award with a large

11   compensatory damage award, you've just seen the insurance go

12   out the door for the punitive damages.

13          MS. BALL:  And for the claimants, Your Honor.

14          THE COURT:  And there is a, you know, unsettled

15   issue, let me put it that way, in bankruptcy, whether or not

16   punitive damages are recoverable.  Clearly in a Chapter 7

17   case in an insolvent debtor case, they're not, but in a

18   Chapter 11 case, not so clear.  I have an opinion that said

19   you can't recover them in the Chapter 11 case, but I think

20   there's a split in authority on that.

21          MS. BALL:  Fair enough, Your Honor.  But in this,

22   Professor Reilly tells us, there are 36 Diocese cases.  In

23   those that have confirmed plans, most of the trust

24   procedures deal with this issue.  So again, the idea -- and

25   that's why we made --

1          THE COURT:  But you can't get to an agreement with

2     the Committee.

3          MS. BALL:  Well, that's why we made a minimum

4     consideration offer to each claimant in this case, and we

5     believe they deserve to know what our offer is if, indeed,

6     we're facing the end.  That offer was never made prior to

7     our letter of October 19th.

8          Your Honor's question of resources.  There is no

9     more and it should come as no surprise to you that people

10    are thinking of conserving whatever little resources they

11    have left for the alternative scenarios, which could be as

12    dreadful as you just outlined.  We understand, but there is

13    no more.  We can't last; we can't continue to fund the case.

14         So I would urge the parties to try to build

15    consensus around our post-mediation offer and graft on the

16    test cases, because we agree with Your Honor, the main show

17    here is the insurance.

18         Your Honor will read in our letter, most of the

19    cash we're getting is borrowed.  We are out -- as Your Honor

20    knows, you've helped us with some the NDAs; we are out doing

21    everything we can.  But just drumming up donors, for

22    instance, is an idea that was floated.  It's just feasible

23    for a plan.

24         So I think, sad as it is, I guess we have seven

25    days, seven or eight days left to see if we can move towards

Page 50

1  consensus and build on your test case theory as a post-

2  confirmation option because we cannot afford to stay here

3  while you test cases -- well, not you, Your Honor.

4            THE COURT:  I'm not going to test cases.

5            MS. BALL:  I know, I did not mean to put that

6  burden on you -- while these cases are prosecuted, can't do

7  it.

8            With that, Your Honor, I would ask if you have any

9  other questions.

10           THE COURT:  Has the District Court in the Southern

11  District ever ruled on your --

12           MS. BALL:  Not yet, Your Honor.  But as you can

13  imagine, I think you're going to see references to that kind

14  of motion in many amicus briefs being filed this Friday in

15  Purdue, as clearly demonstrating an intent that things like

16  that could be done and district courts could grant those

17  releases.  But as far as I know, I think she's awaiting the

18  outcome.  Judge Schoenfeld -- forgive me -- is awaiting the

19  outcome of December 31.

20           THE COURT:  October 31.

21           MS. BALL:  Oh, sorry.

22           THE COURT:  December 31, the supreme court.

23           MS. BALL:  I am not asking for an extension, not

24  by any stretch.

25           THE COURT:  It may get argued in December, but I

Page 51

1    don't expect it to be decided until the spring, maybe come

2    to the term.

3              MS. BALL:  I think that's probably -- well, we'd

4    like to be out.  We'd like to have claimants paid.

5              THE COURT:  I see that the Boy Scouts --

6              MS. BALL:  We'd like to pay them a lot on the

7    effective date; that's where we all want to be.  And that

8    way, test cases can test the insurance, which is the true

9    target of test cases, while claimants don't have to wait for

10   even longer periods of time.

11             So we would urge people to think about that and

12   thank Your Honor for what we thought was the end date of

13   October 31.

14             THE COURT:  Well, what I understand you to be

15   saying is you don't have any alternatives to suggest to the

16   Court to reach some agreement with the Committee before

17   October 31.  Or, you know, an alternative going forward -- I

18   didn't expect you're going to have a signed deal on October

19   31 and I never said that.

20             MS. BALL:  You didn't?

21             THE COURT:  But if I'm understanding you

22   correctly, the Diocese is only willingness to consider the

23   test case mode is in the context of a confirmed plan.

24             MS. BALL:  We can't afford it.

25             THE COURT:  All right.

Page 52

```
 1            MS. BALL:  We can't afford it, Your Honor.

 2            THE COURT:  Are there any other -- I don't

 3    necessarily expect it today, but certainly within the next

 4    week.  If there any other alternatives that any of the

 5    parties interest wish to put forward to dismissal -- I don't

 6    have a dismissal motion in front of me, but it can't be long

 7    in coming -- I'm open to considering it more so hoping that

 8    you will all consider it.

 9            The one thing that I haven't moved one iota from

10    is this case can't go on the way it has been.  And with

11    great reluctance that I -- and I have no regrets for having

12    done it -- asked you all for a date, got the October 31

13    date, and I meant it, unless you all come to some construct

14    to get this case beyond October 31.  I mean, the motion is

15    going to have to be on regular notice and all that, so now

16    I'm not sure.  It isn't like I automatically sign some order

17    on October 31 dismissing the case, but...

18            Does anybody have anything they want to add?  Mr.

19    Zipes?

20            MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

21    Trustee's Office.

22            I have no great insights into what should be done

23    here, except that one possibility that the parties have been

24    talking about is third-party contributions and releases.

25    And the Purdue case does seem large, but one way to avoid
```

Page 53

```
1    Purdue issues is possibly to have opt-ins rather than opt-
2    outs; that's just a possibility for --
3             THE COURT:  Well, when I -- Mr. Zipes, when I
4    looked at the landscape of confirmed cases, they typically
5    included third-party non-debtor releases.  And I actually
6    asked someone who had something to do with one of the cases
7    elsewhere and I ask about it and he said there were no
8    objections.  No one has suggested -- I don't think it's been
9    suggested in Purdue -- that consensual releases can't be
10   granted.
11            MR. ZIPES:  Correct.
12            THE COURT:  And at least as the law stands in this
13   circuit for now, non-consensual releases that satisfy the
14   factors the Second Circuit set forth in Purdue, and the Boy
15   Scouts seems to have tried to have skirt under it all by
16   getting a plan that's substantially consummated before some
17   other appellate court can get to it.
18            MR. ZIPES:  And, Your Honor --
19            THE COURT:  Go ahead, Mr. Zipes.
20            MR. ZIPES:  I'm sorry, Your Honor.  I was just --
21   when I'm talking about opt-in, it might be too much insider
22   baseball for everybody.
23            THE COURT:  I keep ruling against your office on
24   opt-in.
25            MR. ZIPES:  Your Honor, I understand that, but I'm
```

Page 54

1    just saying to avoid -- that is a possibility is to do it

2    consensually.  I mean, that is --

3              THE COURT:  Well, it leaves -- I don't know what

4    it leaves open.

5              MR. ZIPES:  But, Your Honor, I did want to also

6    address, if I could, on the insurance issues, and there was

7    a specific issue in this case relating to disclosure and

8    there is discovery taking place in that regard.  And it

9    would be helpful from my office's perspective, nothing

10   confidential obviously, but just to get a general update on

11   that.

12             THE COURT:  I'm not sure what you're talking

13   about.  I don't know -- I got lots of things on my calendar

14   at the moment.  I have no idea what you're talking about.

15             MR. ZIPES:  Okay.  Your Honor, I can address that

16   separately, so I'll do that.

17             THE COURT:  Okay.  Anybody else wish to be heard?

18             MR. STANG:  Your Honor, on process --

19             THE COURT:  You have to give your name, Mr. Stang.

20   You have to identify yourself whenever you...

21             MR. STANG:  I apologize.  James Stang for the

22   Committee.

23             Your Honor, we are not going to file a motion to

24   dismiss before October 31st.  My take from your comments is

25   that you will want the Committee to -- absent a stipulation

Page 55

1    by the Debtor and presentment of an offer, you would want

2    the Committee to file a new motion.

3              THE COURT:  Yes.

4              MR. STANG:  Okay.  Wanted to be clear about that

5    and --

6              THE COURT:  I never contemplated a sua sponte

7    dismissal, let me put it that way.

8              MR. STANG:  Got it.  So, Your Honor, I think

9    there's a hearing scheduled for November 2, or at least

10   maybe chambers indicated there was availability.  Perhaps it

11   would make sense for us to reconvene on the 2nd and see what

12   happened on the 31st?

13             MS. BALL:  Your Honor, I think there's a hearing

14   on the 31st on the matter that Mr. Zipes described.

15             THE COURT:  Okay.

16             MS. BALL:  Would that be adjourn date as well?

17             THE COURT:  There's a hearing at 2:00.

18             MS. DINE:  The adjourn date wasn't actually until

19   November 20th, so no.  When we had looked at the calendar,

20   the 31st was no longer on the Court's calendar, so we should

21   confirm whether that date is available.

22             MS. BALL:  We should confer.

23             THE COURT:  Give me a moment, let me look.  The

24   one thing that has changed on my calendar, I had a lengthy

25   trial starting on November 1st.  One group of defendants

1    settled and it was the remaining group and the trial start

2    date has been adjourned to November 6th, so there are

3    invariably dates that remain open because I moved the trial

4    from November 1st to November 6th.

5         Give me a second.

6         MS. BALL:  I believe 31st was one of the omnibus

7    dates that chambers had given us.

8         THE COURT:  Yeah.  I think there's a 2:00.

9         MS. BALL:  Yes.

10        THE COURT:  Just bear with me a second, so decide

11   if we want to do it.  For some reason, this is frozen.

12   Everybody sit still.  I'll be back in a minute.  Don't get

13   up when I come back in.  Let me just see what my calendar

14   looks like.

15        Well, I could hear this matter again at 2:00 on

16   Wednesday, November 1st, or the 2nd is wide open.  I have

17   something in the morning on November 1st, but the 2nd is

18   wide open.  I don't want to just have a session to wring my

19   hands again, you know.  Tell me what you'd like.  Mr. Stang.

20        MR. STANG:  Either date is fine, Your Honor.  I

21   think it will be a quick report because you're right, we'll

22   be ready to either file a motion to dismiss or some

23   alternative.  Given the outcome of today's hearing, we have

24   to discuss that with our client, but the 1st at 2:00 p.m. is

25   fine.  But I agree, we're not going to turn this into a what

Page 57

1    do we do now hearing.

2            THE COURT:  Is the Debtor available on Wednesday,

3    November 1st at 2:00 p.m.?

4            MS. BALL:  Yes, Your Honor.

5            THE COURT:  We'll add it to the calendar.

6            MS. BALL:  Thank you.

7            THE COURT:  You know, with so many good, creative

8    lawyers, I find it difficult to believe that you can't find

9    a way to deal -- I don't underestimate the difficulty here.

10   Let me spare everybody what I have to say.  Think out of the

11   box.

12           Let me ask this.  In those cases where the

13   insurers have not settled, what's happened post-confirmation

14   in those cases that confirmed where insurance went into a

15   trust or whatever?

16           MR. STANG:  Your Honor, James Stang for the

17   Committee.

18           There haven't been a lot of them that have really

19   into a serious lapse of times to the confirmation.  In a

20   case called the Christian Brothers of Ireland, it wasn't an

21   insurance company that was the target post-confirmation, it

22   was the Archdiocese of Seattle because it had an affiliation

23   with one of the Christian Brothers schools or childcare

24   facilities.  And it was very successful in terms extracting

25   that, but it was a very different scenario because the

Page 58

1    Archdiocese of Seattle was not in the financial condition

2    that Arrowood is and, of course, it didn't have the same

3    kinds of coverage defenses.

4            And so, when we look at a budget for what could

5    happen post-confirmation in a scenario that Miss Ball is

6    describing, we have significant costs associated with

7    prosecuting that in terms of the coverage actions because

8    we're not as a settlement trust -- I say we -- the

9    settlement trust obviously is not doing the underlying state

10   court actions.

11           But there's also the issue of Diocese expenses.

12   She has talked about how they are at the end of their

13   resources.  Their involvement would be significant and would

14   not come for free.

15           So the answer to your question is we don't have a

16   lot of track record for the ones where there have been

17   insurance companies left out.  And the one that I can think

18   of that's analogous, I don't think is all that analogous.

19           MS. BALL:  Your Honor, if I may.  I think --

20           THE COURT:  Could you come up to the podium, Miss

21   Ball.  Thank you.

22           MS. BALL:  Thank you.  Corinne Ball for Jones Day.

23   Boy Scouts is another model.  As you know, we have reached

24   out to state court counsel to talk about all the things

25   you're raising.  And in that model, and I know it's one that

Page 59

1    Mr. Stang is familiar with, there is a sharing of

2    compensation awarded in those test cases between the

3    plaintiffs and the settlement trust, but they have managed

4    to do it.

5            But in terms of sharpening our pencils and being

6    creative, I remind Your Honor you already helped us.  We do

7    have a lender in the wings, Global Resolution, to cover this

8    Arrowood hole in expense in the interim.  We have tried to

9    be creative and we will, at least for the next nine days,

10   continue to do so.

11           But I think that's probably the most recent

12   example of settling insurance, non-settling insurance going

13   forward.  And we have the benefit because many of our state

14   court counsel in this case are on the advisory committee in

15   Boy Scouts, so I am sure they would -- if we can reach a

16   construct on our last offer, I am sure we would get the

17   benefit of their thinking as to how they might improve on

18   what was done in Boy Scouts.  They definitely shared with us

19   they have some thoughts about how that might move forward

20   better because you may recall, it took almost two years to

21   even get minimum distributions made, the 3500 per claimant.

22           So, Your Honor, that's out there as well.  And

23   again, creative people do find way when they're dedicated to

24   it.

25           THE COURT:  Last comment I would make is that

Page 60

1    certainly, the Committee can certainly file its motion to

2    dismiss after October 31.  But if there are some renewed

3    constructive talks, you could all informally agree to

4    forebear on filing your motion while you actually explored

5    whether there is a viable construct that could help bridge

6    the gaps where you are.  That's in your court, not mine.

7              I will see you at 2:00 on November 1st for another

8    hybrid hearing, okay?

9              All right, we're adjourned.  Thank you very much.

10             MS. BALL:  Thank you, Your Honor.

11             MR. STANG:  Thank you, Your Honor.

12             (Whereupon these proceedings were concluded at

13   3:29 PM)

14

15

16

17

18

19

20

21

22

23

24

25

Page 61

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 25, 2023

[& - 500]                                                                    Page 1

| & | | | |
|---|---|---|---|
| **&**   5:10 13:16 29:11 | **20-12345**   1:3 | **2496**   2:14,18 3:13,20 4:3,7 4:11 | **2596**   2:15,19 3:8,14,21 4:4,8 4:12 |
| **0** | **200**   34:24,25 35:11 | **2497**   4:3,7 | **2:00**   55:17 56:8 56:15,24 57:3 60:7 |
| **02109**   5:6 | **201**   7:17 | **2498**   2:14,18 3:13,20 4:11 | **2:01**   1:17 |
| **1** | **2016**   15:5,12 15:14 | **2499**   4:3 | **2nd**   55:11 56:16,17 |
| **1**   24:20 | **2020-2006749** 5:4 | **25**   61:25 | **3** |
| **10**   6:10 | **2023**   1:16 24:23 61:25 | **250**   5:19 | **3**   20:10 |
| **100**   5:5 35:1 | **2024**   17:20 47:4 | **2540**   2:4 | **30**   25:6 |
| **10004**   1:14 | **2026**   16:13,14 16:19 | **2542**   2:4 11:9 | **300**   61:22 |
| **10014**   7:18 | **20th**   24:13 55:19 | **2548**   2:10 13:13 | **31**   25:1,8,15 45:25 46:3,7 47:2,5 50:19 50:20,22 51:13 51:17,19 52:12 52:14,17 60:2 |
| **10017**   5:13 | **21**   24:23 | **2549**   2:10 | |
| **1006**   7:17 | **217-59**   7:10 | **2551**   2:10 | |
| **10100**   6:17 | **23**   1:16 | **2552**   2:10 | |
| **10281**   5:20 | **2478**   2:14 | **2573**   2:14,18 3:8,13,20 4:3,7 4:11 | |
| **11**   18:16 48:18 48:19 | **2479**   2:17 | | **31st**   40:15,16 41:18 54:24 55:12,14,20 56:6 |
| **11361**   7:11 | **2480**   3:7 | **2575**   2:15,19 3:8,13,20 4:4,7 4:11 | |
| **11501**   61:23 | **2482**   3:13 | | |
| **11556**   6:4 | **2483**   3:20 | | **330**   61:21 |
| **1201**   6:3 | **2484**   4:3 | **2577**   2:15,19 3:8,13,20 4:4,7 4:12 | **34th**   5:12 |
| **12151**   61:7 | **2487**   4:7 | | **3500**   59:21 |
| **1300**   6:17 | **2488**   2:14,18 3:7,13,20 4:11 | **2578**   4:7 | **36**   48:22 |
| **157**   42:6 | | **2579**   2:15,19 3:8,14,21 4:4,7 4:12 | **38**   19:23 |
| **16**   14:1,2 | **2489**   3:7 | | **3:29**   60:13 |
| **17**   36:22 44:20 | **2491**   2:14,14 2:18,18 3:7,13 3:20 4:3,11 | | **4** |
| **19th**   24:14 49:7 | | **2590**   2:1 | **4**   20:10 |
| **1st**   26:25 55:25 56:4,16,17,24 57:3 60:7 | **2492**   2:14,18 3:7,13,20 4:7 4:11 | **2592**   2:15,19 3:8,14,21 4:4,8 4:12 | **403**   7:3 |
| | | | **5** |
| **2** | | **2595**   2:15,19 3:8,14,21 4:4,8 4:12 | **5**   42:6 47:20 |
| **2**   47:19 48:3 55:9 | **2493**   4:10 | | **500**   7:3 |
| **20**   14:6 | | | |

| | | | |
|---|---|---|---|
| **53703** 6:11 | **90383** 3:3 | **acres** 14:1,2 | **advancing** 23:7 |
| **6** | **90385** 3:4 | **action** 11:22 | **adversely** 11:17 |
| **600** 6:10 | **90391** 3:2 | 33:25 | **advice** 36:8 |
| **6th** 5:5 56:2,4 | **90397** 3:4 | **actions** 19:10 | **advise** 12:25 |
| **7** | **90406** 3:12 | 32:8 33:21 | **advised** 13:2 |
| **7** 48:16 | **90426** 3:12 | 58:7,10 | **advisory** 59:14 |
| **75** 31:10,16 | **90472** 3:2 | **actual** 24:25 | **advocating** 43:7,18 |
| **780** 5:12 | **90507** 2:13 | **actually** 28:24 | **affect** 11:17 |
| **8** | **90554** 3:12 | 31:23 34:25 | **affected** 21:5 |
| **80** 14:4 | **90555** 3:12 | 39:9 43:16 | 31:10 |
| **9** | **90556** 3:12 | 53:5 55:18 | **affiliate's** 30:22 |
| **90033** 3:19 | **98104** 7:4 | 60:4 | **affiliates** 32:13 |
| **90034** 3:19 | **a** | **adam** 8:22 | 32:18,23 37:8 |
| **90044** 3:19 | **a.w.** 9:12 | 9:22 | **affiliation** 57:22 |
| **90060** 3:18 | **aaron** 8:25 | **add** 52:18 57:5 | **afford** 50:2 |
| **90066** 3:18 | **ability** 26:20 | **address** 17:15 | 51:24 52:1 |
| **90067** 6:18 | 43:18 | 39:17 40:21 | **afternoon** 11:3 |
| **90068** 3:18 | **able** 37:11 | 54:6,15 | 11:4,12,13 |
| **90111** 4:6 7:2 | **absent** 42:7 | **addressing** 29:23 | 13:15 18:5 |
| 23:19 | 54:25 | **adequate** 32:11 | 19:6 |
| **90161** 3:17 | **abundance** 20:2 22:19 | **adjourn** 55:16 | **agenda** 11:6 |
| **9019** 2:6 | **abuse** 4:3 14:5 | 55:18 | **aggregate** 25:21 26:5,18 |
| **90209** 3:3 | 25:22 30:13 | **adjourned** 56:2 60:9 | **aggressive** 34:22 |
| **90219** 3:7 | 36:11 41:22 | **adler** 43:8,9 | **ago** 32:5 |
| **90220** 3:11 | **accepted** 31:15 | **admission** 32:25 | **agree** 20:18 |
| **90232** 3:12 | 34:19 | **admissions** 32:24 | 21:3,6,18,19 |
| **90242** 3:6 | **accounting** 31:2 | **adrian** 10:6 | 21:25 22:17 |
| **90294** 3:6 | **accurate** 31:7 | **advanced** 33:15 | 23:5 35:5 38:2 |
| **90304** 3:6 | 61:4 | **advancements** 33:14 | 38:17 39:3 |
| **90329** 3:5 | **achieve** 45:14 | | 49:16 56:25 |
| **90336** 3:5 | **achieved** 25:14 | | |
| **90354** 3:5 | **achieving** 23:8 | | |
| **90364** 3:5 | **acknowledged** 23:12 | | |
| **90373** 3:4 | | | |
| **90378** 3:12 | | | |

60:3
**agreeable**
37:25
**agreed** 14:3
21:12
**agreement** 2:8
16:13,16,18
18:17 24:22
26:3,23 28:19
33:16 49:1
51:16
**ahead** 11:10
22:21 24:4
36:19,24 39:21
43:5 53:19
**akin** 43:8
**allard** 7:23
**allowable**
47:22
**allowance**
11:16
**allowed** 12:4
**alternative**
29:5 49:11
51:17 56:23
**alternatives**
28:11 51:15
52:4
**amala** 4:6 7:1,6
23:18,19 24:6
35:20 37:1,13
37:15,15 39:15
**amend** 12:9
**american** 41:2
**amicus** 50:14
**amount** 16:2
26:5,11 29:14

30:23 31:21
**analogous**
58:18,18
**andrew** 3:11
8:7 9:20 10:12
**angeles** 6:18
**ann** 9:1
**anne** 10:1
**announce**
24:23
**answer** 34:4
58:15
**anticipate**
19:17
**anybody** 11:10
13:5 18:3,22
52:18 54:17
**anything's**
26:16
**anyway** 40:2
42:7
**apologize**
23:18 54:21
**apparently**
34:16
**appeal** 12:18
12:21 13:1
28:15,16
**appealing**
12:12
**appeals** 12:17
**appeared**
34:15
**appearing**
30:18
**appellate**
28:16 53:17

**applicable**
22:6
**applied** 16:3
27:15
**appreciate**
29:24
**approach**
33:10
**appropriate**
14:24
**approval** 18:10
**approve** 15:22
**approved**
18:23
**approving** 2:8
**approximately**
13:25
**archdiocese**
57:22 58:1
**argue** 13:14
19:4 22:24
**argued** 50:25
**arielle** 8:15
**arrowood** 32:5
32:5 58:2 59:8
**arrowood's**
26:20
**asked** 25:4,5
25:19 30:7
38:15,25 46:8
46:12 52:12
53:6
**asking** 24:11
41:19 45:14
50:23
**aspects** 30:24

**assert** 22:7
**asserted** 18:20
42:25
**asserting** 20:24
**assess** 40:15
**assets** 26:10,14
43:12 44:16,17
45:10
**assist** 23:8
**associated** 37:5
58:6
**assume** 15:22
15:23 17:22
26:3 34:12
48:1
**assuming**
30:18 36:2
**attached** 20:9
24:15
**attempts** 27:9
**attend** 34:15
**attention** 29:21
30:1
**attorney** 2:4
5:4 12:24 13:3
**attorneys** 5:11
5:18 6:2,9,16
7:2,9,16
**authority**
48:20
**authorized**
24:18
**automatic**
19:12
**automatically**
52:16

**availability** 55:10
**available** 55:21 57:2
**avenue** 5:12
**average** 30:25 31:6
**avoid** 23:10 52:25 54:1
**awaiting** 50:17 50:18
**award** 48:10 48:11
**awarded** 59:2
**aware** 20:6 38:5

**b**

**b** 1:21 7:24 8:12 10:4 31:23 42:6
**back** 18:21 24:25 29:16,25 35:13 38:10 40:12,16 42:2 42:18 56:12,13
**background** 16:24 39:23
**bair** 6:8
**ball** 5:22 6:1 17:3,3,8,10,15 17:21,23 18:2 18:6 23:1,5,15 35:25 45:18,19 46:8,12,15 47:22 48:1,7 48:13,21 49:3 50:5,12,21,23

51:3,6,20,24 52:1 55:13,16 55:22 56:6,9 57:4,6 58:5,19 58:21,22,22 60:10
**bankruptcies** 39:13
**bankruptcy** 1:1,12,23 2:7 27:9,11 35:7 35:13 39:12 42:12,13 47:22 48:15
**bare** 31:11
**baseball** 53:22
**basic** 11:6
**basically** 38:1
**basis** 22:1 36:4 36:14
**battle** 38:21
**bayside** 7:11
**bear** 56:10
**beautiful** 13:22
**becoming** 36:10
**beginning** 25:7 45:7
**behalf** 2:13 3:2 3:11,17 4:2,6 13:16 17:18 19:4 30:14
**believe** 11:16 13:23 16:1,10 16:11,12,20 29:19 37:17 43:13 49:5

56:6 57:8
**believes** 38:11
**belongs** 47:13
**belts** 32:19
**benefit** 59:13 59:17
**benjamin** 10:4
**berringer** 7:24
**best** 32:10 41:4
**better** 27:8 28:1 36:18 59:20
**beyond** 52:14
**big** 31:20 39:4
**bigger** 32:12 38:23 39:8
**billions** 31:23
**bishop** 45:9
**biswas** 10:7
**blocks** 25:18 26:23
**blvd** 6:17
**bodnarek** 7:25
**boom** 36:21
**borrowed** 49:19
**boston** 5:6
**boswell** 43:10
**bought** 17:11
**bowling** 1:13
**box** 57:11
**boy** 51:5 53:14 58:23 59:15,18
**boys** 44:25
**brenda** 10:6
**brett** 9:9

**bridge** 60:5
**briefs** 50:14
**bring** 17:19
**brings** 23:16 24:8
**brittany** 9:5
**bross** 3:17 8:1
**brothers** 57:20 57:23
**bsa** 45:4
**bucheit** 8:2
**budget** 58:4
**build** 45:23 49:14 50:1
**buildings** 14:3
**bunin** 8:3
**burden** 50:6
**burns** 6:8,13 19:6,7,16,19 19:22 20:2,21 21:1,4,11,19 22:3,9,12,19 22:21,22 36:17
**business** 45:8
**buyer** 17:7
**buying** 17:10

**c**

**c** 5:1 8:24 11:1 30:10 61:1,1
**ca** 6:18
**cakewalk** 32:1 32:4
**calendar** 11:8 13:12 54:13 55:19,20,24 56:13 57:5

[calhoun - client's]                                                              Page 5

**calhoun** 8:4
**call** 34:14
  40:11,19
**called** 30:8
  57:20
**camdem** 30:14
**camden** 30:15
  47:12
**camera** 35:20
**carrier** 39:5,6
  44:1
**carriers** 32:7
  44:22
**case** 1:3 12:4
  12:13 14:9,10
  14:19 15:8,18
  15:23 17:22
  18:16,18 25:19
  26:5,7 27:5,6
  27:10 28:7,11
  29:6 30:14
  31:25 32:22
  35:7,21 36:7
  37:14 39:2,4
  40:25 41:3,22
  41:25 42:10,13
  43:7,11,24
  44:10,18,25
  45:5,21 46:7
  46:16,24 47:3
  48:9,17,17,18
  48:19 49:4,13
  50:1 51:23
  52:10,14,17,25
  54:7 57:20
  59:14

**cases** 27:15,16
  27:17,19,20,23
  27:25 28:24,24
  30:13 33:4,9
  33:10,19,21,22
  33:23,23 34:1
  34:6,11,17,20
  34:20,25 35:6
  35:9,9,11,11
  35:12 36:9,12
  36:13,13 37:2
  37:24 38:11,16
  38:19,19,22
  39:2,7,8,11,25
  40:7 41:1,11
  41:14,19 42:1
  42:20 44:20
  45:2 46:16
  47:10,18,24
  48:22 49:16
  50:3,4,6 51:8,9
  53:4,6 57:12
  57:14 59:2
**cash** 49:19
**cassidy** 8:5
**catalina** 9:25
**cate** 8:6
**catholic** 1:7
**cause** 2:3
**caution** 20:3
  22:20
**cave** 24:18
**centre** 1:7
**certain** 30:24
**certainly** 24:16
  26:11,19 27:3
  27:21 28:9

  31:24 33:20
  40:12,15 52:3
  60:1,1
**certified** 61:3
**chambers**
  55:10 56:7
**chances** 33:12
**changed** 47:8
  55:24
**channeled** 31:5
**chapter** 18:15
  48:16,18,19
**charles** 8:12
  9:10
**charlton** 10:8
**checks** 37:7
**chelsie** 10:3
**child** 36:11
**childcare**
  57:23
**chris** 9:14
**christian** 57:20
  57:23
**churches** 47:17
**cinching** 32:19
**circles** 26:9,13
  35:14
**circuit** 53:13
  53:14
**circumstances**
  32:10
**ciriello** 8:7
**claim** 11:15,20
  11:25 12:7,19
  22:13 30:12,24
  31:5 46:19,22
  47:15

**claimant** 2:13
  3:2,3,3,3,3,4,4
  3:4,5,5,5,6,6,6
  3:7,17,18,18
  3:18,18,19,19
  4:6 5:4 7:2
  23:19 49:4
  59:21
**claimants** 3:11
  19:21,25 20:12
  20:19,24 21:8
  22:1 23:13,24
  37:16 41:22
  48:13 51:4,9
**claims** 12:16
  14:22 18:20
  21:10 22:7,13
  22:17 25:22
  26:5 27:8
  29:14 30:23
  31:3,3,8,9
  35:15 45:9
  47:6
**claire** 8:8
**claro** 30:8,12
  30:18,19
**cleaner** 39:22
**clear** 20:13
  24:1 28:12
  48:18 55:4
**clearly** 48:16
  50:15
**client** 11:18,19
  12:11,18,24,25
  13:1,2,3 56:24
**client's** 11:25
  12:19

close  25:15
    42:11 47:16,17
closer  41:18
closes  18:15
closing  17:5
    18:12
cna  44:1,1
cochran  7:1
cognizant  38:8
collective
    26:14
collectively
    28:18 41:25
columbia  7:3
come  17:24
    26:2,13 28:1
    28:19 29:25
    35:13 39:9
    40:16 42:2,18
    44:5 49:9 51:1
    52:13 56:13
    58:14,20
comfortable
    23:6
coming  26:23
    52:7
comment  37:2
    39:24 59:25
comments
    29:18 37:21,21
    37:23 54:24
committee  2:9
    5:11 6:9,16
    13:14,16,17
    17:17 19:3,5,7
    20:3,13 21:23
    23:12,24 25:5

25:6,12,25
    26:3,24 27:19
    29:12 30:8,15
    30:15 40:12
    43:25 44:3
    46:9,12 47:12
    49:2 51:16
    54:22,25 55:2
    57:17 59:14
    60:1
committee's
    15:21 31:13
committees
    44:20
common  28:24
companies
    21:20 22:14
    39:3,9 44:24
    58:17
company  30:8
    57:21
compensation
    59:2
compensatory
    47:19 48:11
competition
    44:2
completely
    21:6
concept  33:19
    35:22 36:7
    37:14 40:16
conception  6:2
concern  20:21
concerned
    42:11

concluded
    60:12
condition  58:1
confer  55:22
conference  2:1
    23:17 24:9
    37:17
conferences
    34:16
confidential
    54:10
confirm  23:21
    24:7 55:21
confirmation
    44:6 47:25
    48:6,8 50:2
    57:13,19,21
    58:5
confirmed
    15:19,24 16:4
    41:15 48:23
    51:23 53:4
    57:14
connection
    26:21
consensual
    24:24 25:18
    31:5 36:4 53:9
    53:13
consensually
    54:2
consensus
    45:23 49:15
    50:1
consent  42:7
conserving
    49:10

consider  33:20
    51:22 52:8
consideration
    49:4
considering
    27:22 52:7
consistent
    31:25
construct
    52:13 59:16
    60:5
constructive
    60:3
consultation
    27:19
consummated
    53:16
contacting
    27:22
contemplated
    14:16 15:3
    55:6
contested  19:2
context  37:2
    47:10 51:23
continue  32:21
    32:25 33:1
    49:13 59:10
continued  14:3
contracts  17:6
    17:13,16 18:9
contribute
    15:10 26:12
contributions
    52:24
control  19:11
    21:23 22:1

coordinating
  27:23
corbett  7:10
corinne  5:22
  58:22
cornell  8:8
correct  12:10
  14:20 22:2,8
  34:3,14 53:11
correctly  23:1
  51:22
corrine  17:3
costs  58:6
counsel  19:7
  26:4,7 27:20
  34:14,23 36:6
  39:17 40:11,13
  40:18,23 41:9
  43:7 45:3
  58:24 59:14
count  44:19
counteroffers
  43:20
country  43:14
  43:15 61:21
county  17:9
  27:23
course  46:21
  58:2
court  1:1,12
  11:2,5,13,19
  11:22,22,23,23
  11:24,24 12:2
  12:6,9,11,14
  12:15,16,21,24
  13:4,8,10,20
  14:1,7,13,16

14:25 15:2,7
15:12,16,22
16:5,8,14,19
16:21 17:1,7,9
17:13,21 18:1
18:3,14,22
19:1,9,15,19
19:24 20:8,23
21:3,6,16,25
22:5,10,16,21
22:22,24 23:3
23:11,16,22
24:8,12,14
25:1 27:9,13
27:20,22 28:14
28:21 29:19
30:4,9,11 33:6
33:8,17 34:4,5
34:13,18,23,24
35:3,13 36:6
36:12,15,17,22
37:13,18 38:5
38:8,11 39:15
39:17,18,25
40:1,4,5,7,13
40:18,22,23
41:6,8,8 42:12
42:16,18 44:8
44:10 45:3,18
46:6,10,13
47:18,23,24
48:5,8,14 49:1
50:4,10,10,20
50:22,22,25
51:5,14,16,21
51:25 52:2
53:3,12,17,19

53:23 54:3,12
54:17,19 55:3
55:6,15,17,23
56:8,10 57:2,5
57:7 58:10,20
58:24 59:14,25
60:6
court's  19:8
  23:21 24:22
  55:20
courts  50:16
cover  59:7
coverage  31:22
  32:7 39:10
  42:25 58:3,7
covering  46:21
cox  8:9
created  14:13
creative  57:7
  59:6,9,23
creditor  7:9
creditor's
  47:12
creditors  4:3
crossed  33:19
crosstalk  34:2
current  43:8
currently
  11:22 12:13
  31:9
cut  32:17 43:5

d

d  11:1
daly  8:10
damage  48:10
  48:11

damages  47:20
  47:20 48:12,16
daniel  2:13
data  36:10
date  15:12,15
  16:15,19 25:2
  25:4,9 51:7,12
  52:12,13 55:16
  55:18,21 56:2
  56:20 61:25
dates  56:3,7
davenport
  43:9
day  5:17 17:3
  24:14 31:2,15
  34:16 44:15,15
  47:2 58:22
days  25:6
  38:18 49:25,25
  59:9
deadline  16:8
  16:10 24:23
  38:6 46:3 47:5
deal  31:20
  32:16 38:9
  48:24 51:18
  57:9
deals  44:4
debate  46:22
debtor  1:9 5:18
  19:4 25:13,24
  30:19,24 34:10
  36:1 48:17
  53:5 55:1 57:2
debtor's  26:10
  43:7

debtors 25:5
26:11
december
50:19,22,25
decide 21:17
41:3 43:23
56:10
decided 51:1
decision 12:12
12:17 19:8
35:5
dedicated
59:23
defendant 34:7
defendants
37:25 55:25
defenses 39:10
42:25 58:3
definitely
59:18
deliver 23:2,13
demand 19:20
19:25 20:11,17
20:20,24 21:8
23:13 24:4
39:1,1
demands 19:13
20:4,17 36:1
demonstrating
50:15
denied 23:14
24:3
dennehy 8:11
deny 34:1
denying 23:22
25:3

department
7:15
described
55:14
describes 37:6
describing
58:6
description
37:23
deserve 49:5
designated
25:2
destries 8:12
details 13:4
diego 43:7
differences
43:12
different 25:13
29:22 43:11,12
44:24 57:25
difficult 57:8
difficulties
37:5
difficulty 57:9
dine 5:15 13:14
13:15,15,22
14:2,10,15,20
15:1,6,8,14,21
16:1,7,10,16
16:20,22 18:24
55:18
diocese 1:7
2:10 11:25
12:5 13:5,18
14:5,21,23,25
15:1,4,10,20
16:1 17:2,4,25

18:19,21 19:20
20:1,4,9,10,12
20:17,20,25
21:9,9,12,13
22:13,14,17,25
23:14 24:3,12
27:1,6,19 28:3
28:10 29:2,15
30:14 31:4,15
31:19,20 32:13
32:18,23 33:22
33:24,24 34:7
35:23,23 36:3
37:6,8 41:24
42:13 43:1,6,9
43:14,14,15,17
43:24 44:3
45:13 48:22
51:22 58:11
diocese's 12:6
12:19 14:22
19:8 20:9,18
22:11 30:22
32:10
direction 34:13
disagreement
45:15
disallowed
31:4
disclosure 54:7
discovery 23:9
26:19 32:5
36:2 54:8
discuss 56:24
discussed
47:11

discussion
35:23
discussions
33:2
dismiss 17:22
25:3 26:25
27:4,5 28:6,15
31:17 42:13
54:24 56:22
60:2
dismissal 29:5
52:5,6 55:7
dismissed 14:9
14:10,19 18:16
18:18 35:8
46:7
dismissing
52:17
dispute 29:14
distinct 27:4
distinguishes
19:9
distribution
25:23 42:6
48:1
distributions
59:21
district 1:2
27:13 40:5
50:10,11,16
doc 2:1,4,10,14
2:17 3:7,12,19
4:3,6,10
docket 11:9
24:13
doing 32:18
35:6 47:16

[doing - file]                                                                              Page 9

49:20 58:9
**dollar** 48:10
**donato** 10:9
**donors** 49:21
**door** 42:12
  48:12
**doty** 6:10
**doubt** 25:10
**dowd** 7:8,13
  40:20,24,24
  41:6,7
**draft** 18:9 46:9
**drafted** 26:25
**draw** 26:12
**drawn** 35:14
**dreadful** 49:12
**drew** 42:4
**driscoll** 8:13
**drumming**
  49:21
**dylan** 8:5

**e**

**e** 1:21,21 5:1,1
  6:10 8:2,18
  11:1,1 61:1
**eager** 18:9
**earlier** 25:19
  38:24
**early** 35:5
  44:22 47:4
**easier** 35:10
**ecf** 11:9 13:13
**ecro** 1:25
**ederer** 6:1
**edges** 32:17
**effective** 16:18
  51:7

**effectively**
  14:20 16:2
**efforts** 37:12
**eight** 49:25
**either** 29:7
  46:3 56:20,22
**elevator** 40:10
**elizabeth** 8:6
**emergence**
  46:24 47:10
**emily** 10:8
**employed**
  30:19
**enable** 17:17
  32:20
**entered** 25:3
**entry** 2:7
**eric** 8:14 9:19
**erik** 9:23
**escrow** 16:2
**essentially**
  14:11 35:12
**establish** 41:2
**established**
  14:17 15:9,11
**estate's** 19:10
**estimate** 30:25
**estimation**
  25:23 42:3,6
**everybody**
  22:16 36:18
  43:21 44:23
  53:22 56:12
  57:10
**everyone's**
  18:9

**example** 27:18
  44:25 59:12
**exceeds** 29:14
  32:14
**except** 52:23
**excuse** 29:10
**exhausted**
  46:14
**exhaustively**
  41:16
**exist** 31:4
**exists** 31:9
**exit** 42:11
**expect** 51:1,18
  52:3
**expectation**
  28:25
**expected** 17:20
**expense** 23:10
  59:8
**expenses** 58:11
**experience**
  41:10,11
**expert** 36:8
**expertise** 30:18
**experts** 36:9
  38:18,21
**expired** 12:22
**explore** 40:13
**explored** 60:4
**exposure** 29:2
  46:20
**expression**
  32:11
**extension**
  50:23

**extent** 23:9
**extra** 37:12
**extracting**
  57:24

**f**

**f** 1:21 61:1
**facetiously**
  23:4
**facilities** 57:24
**facing** 49:6
**fact** 16:3 29:25
  31:2,20
**factors** 53:14
**fair** 48:21
**fairest** 41:3
**familiar** 27:10
  59:1
**far** 29:14 42:10
  50:17
**fasano** 8:14
**fashion** 17:24
**fateful** 47:2
**favor** 31:11
  41:1,5
**feasible** 49:22
**federal** 2:7
  28:21 39:25
  40:1
**feel** 34:17
  43:17
**feeling** 42:23
**feels** 35:2
**feldshon** 8:15
**figures** 26:6
**file** 26:25 31:18
  54:23 55:2
  56:22 60:1

[filed - group]                                                    Page 10

filed   2:12 3:1
  3:10,16 4:1,5
  11:15 13:14
  14:8 23:19,23
  23:25 24:17
  41:24 50:14
filing   24:19
  60:4
final   24:21
financial   26:20
  58:1
find   43:16 57:8
  57:8 59:23
fine   24:5 46:23
  56:20,25
fingers   37:9
firm   44:20
first   11:7 27:5
  31:2 39:1
  42:13 44:7
fit   32:17
floated   49:22
floor   5:5,12
flying   39:19
focus   29:17
  30:7
focused   26:15
  47:5
fogel   8:16
followed   27:14
following
  24:20
forcing   39:9
forebear   60:4
foregoing   61:3
forgive   50:18

format   13:10
former   19:12
forth   11:14
  53:14
forward   14:11
  17:19,23 18:10
  21:15 29:6
  33:6 51:17
  52:5 59:13,19
four   32:7
fr   8:14
frame   32:12,15
  45:11
frank   9:13
frankly   32:7
  39:12 41:1
free   58:14
freight   39:6
friday   50:14
front   15:2 52:6
frost   10:1
frozen   56:11
fruit   32:6
full   39:6
fully   34:25
function   30:20
fund   49:13
funds   15:18,19
  15:24 16:2,3
  18:20
furman   27:12
further   35:13
future   18:15

g

g   7:8,13 8:3
  11:1

gaps   60:6
garabedian   5:3
  5:8 8:17 11:8
  11:11,11,14,21
  12:1,4,8,10,13
  12:20,23 13:2
  13:9
gavel   36:20,23
general   27:11
  54:10
george   8:4
gerber   8:18
geremia   5:23
  25:7 47:1
germaine   13:6
getting   33:12
  47:3 49:19
  53:16
giant   23:3 43:3
give   40:17
  54:19 55:23
  56:5
given   26:6
  38:13 45:6
  56:7,23
glenn   1:22
global   44:21
  59:7
go   11:10 14:23
  18:20 22:21
  24:4,25 28:12
  28:14 36:19,24
  38:10 39:4,20
  39:21 40:12
  42:14 43:5
  45:25 48:11
  52:10 53:19

goal   33:12
goes   14:11
  20:14 48:9
goffe   8:19
going   11:5
  13:14,23,24
  19:4 22:24
  25:6 26:25
  27:2 28:5,9,12
  28:17 29:16
  33:6 34:10,11
  35:20 37:8,19
  38:2 45:8,8
  50:4,13 51:17
  51:18 52:15
  54:23 56:25
  59:12
good   11:2,4,12
  11:13 13:15
  18:5 19:6 30:4
  38:17,20 39:11
  57:7
gorrepati
  10:10
graft   49:15
grant   50:16
granted   13:8
  53:10
great   34:6
  52:11,22
green   1:13
greg   7:20
  52:20
grossly   31:1
group   55:25
  56:1

[guess - included]                                                           Page 11

| | | | |
|---|---|---|---|
| **guess** 24:17 49:24 | **heard** 11:10 13:5 18:4,23 31:16 35:25 37:13 40:23 41:9 46:20 54:17 | 14:10 15:6,15 17:4,8,24 18:5 18:24,25 19:6 19:22 20:2,5 21:1,11,19 22:4,19 23:1,6 23:15,18,18 24:6 29:10,13 29:24 34:3,9 35:19 36:20 37:4,15,17 38:4,15,23,25 39:7,14,16,24 40:12,24 41:7 42:15 43:6 45:17,19 46:1 46:4,8,15 48:13,21 49:16 49:18,19 50:3 50:8,12 51:12 52:1,20 53:18 53:20,25 54:5 54:15,18,23 55:8,13 56:20 57:4,16 58:19 59:6,22 60:10 60:11 | **hyde** 4:25 61:3 61:8 |
| **guessing** 36:5 | | | **hypothetically** 35:8 47:19 |
| **guide** 16:12 | | | **i** |
| **guides** 28:25 | | | **iain** 9:12 |
| **h** | | | **idea** 38:11,17 46:16 48:2,24 49:22 54:14 |
| **hand** 40:20 | | | **ideas** 42:8,9 |
| **handle** 27:8 28:1 | | | **identify** 54:20 |
| **handled** 45:2 | | | **illustrating** 38:20 |
| **handling** 34:21 | **hearing** 2:3,6 2:12,17 3:1,10 3:16 4:1,5,10 37:23 38:13 40:19 44:6 55:9,13,17 56:23 57:1 60:8 | | **imagination** 32:6 |
| **hands** 56:19 | | | **imagine** 50:13 |
| **hang** 36:15 39:18 | | | **immaculate** 6:2 |
| **hanging** 32:6 | | | **immediate** 20:5 |
| **happen** 16:9 47:12 58:5 | **heier** 8:20 | | **immediately** 24:12 |
| **happened** 55:12 57:13 | **held** 14:18 15:4 15:20,25 20:14 | | **impediment** 20:19,21 21:8 22:18 |
| **happening** 36:3 | **help** 15:17 43:3 60:5 | | **important** 25:2 45:23 |
| **happens** 14:9 17:22 18:14 | **helped** 49:20 59:6 | | **impression** 35:22 |
| **happy** 40:21 40:22 45:20 | **helpful** 38:12 38:17,24 54:9 | | **improve** 59:17 |
| **harbor** 17:12 18:8 | **heuer** 6:6 16:23,24 17:18 18:4,5,6,14,17 18:25 | | **imprudent** 21:14 |
| **hard** 19:18 25:20,20 26:2 26:22 33:2 45:6 | **hide** 39:10 | | **include** 33:23 44:10 |
| | **high** 35:15 | **honor's** 49:8 | |
| | **hit** 25:15 | **hope** 28:25 | |
| | **hogan** 8:21 | **hoping** 52:7 | **included** 25:9 42:20,21 53:5 |
| **headed** 34:13 | **hold** 15:10,16 | **horowitz** 8:22 | |
| **hear** 17:1 24:16 37:20 40:22 41:3 56:15 | **holding** 16:2 | **hulme** 8:23 | |
| | **hole** 59:8 | **hybrid** 2:3,6 2:12,17 3:1,10 3:16 4:1,5,10 60:8 | |
| | **hon** 1:22 | | |
| | **honor** 11:11 13:6,15,17 | | |

includes  24:20
  34:7
including
  23:24 44:22
incorrectly
  15:17
indicated  38:5
  40:14 55:10
indicating
  24:18
indiscernible
  23:21 31:18
  44:24 45:16
individual  39:2
informally
  60:3
information
  11:7
injunction
  19:9 33:5,11
  33:13,25 34:1
injured  22:7
ins  53:1
insider  53:21
insights  52:22
insolvent  48:17
instance  49:22
insurable
  47:21
insurance  6:9
  19:7,10 21:20
  21:22 22:14
  26:15 32:1,2,3
  36:1 37:6 39:1
  39:3,9 42:2,18
  43:3 44:13,16
  44:17,23 45:2

46:22 48:11
49:17 51:8
54:6 57:14,21
58:17 59:12,12
insured  20:5
insured's
  31:22
insureds  20:22
insurer  22:8,10
  22:11
insurers  19:17
  20:12,23 26:16
  42:21,22,25
  43:19 45:1,1
  47:14 57:13
intent  50:15
interest  52:5
interested
  40:19 42:5
interests  11:18
interim  59:8
internal  18:13
interrupt
  33:17
interrupted
  35:17
intransigent
  44:24
invade  12:24
  25:16
invariably
  56:3
invite  40:11
involved  26:7
involvement
  58:13

involving
  30:13
iota  52:9
ireland  57:20
island  43:17
issam  9:11
issue  25:22
  29:22 38:23
  48:3,15,24
  54:7 58:11
issues  22:23
  42:2 53:1 54:6

**j**

j  2:13 10:2
jacobs  8:24
james  6:20
  8:23 9:3,8 10:2
  29:11 54:21
  57:16
jason  4:6 7:6
  23:19 37:15
javian  8:25
jet  39:19
jillian  8:11
job  38:20
  39:11
john  7:24 8:2
  8:10 9:15
joinder  19:3
  23:25 24:2
jones  5:10,17
  6:15 13:16
  17:3 24:14
  29:11 34:16
  58:22
jordan  4:2

judge  1:23
  20:6 21:13
  24:18 27:5,12
  27:22 33:6,7
  34:15,19,24
  35:4,10 37:18
  38:1,4 42:13
  43:8,9 44:4
  46:25 50:18
judges  40:4
jury  28:1 38:22
  41:3 48:9
justice  7:15

**k**

k  9:19
karen  5:15
  10:11 13:15
katie  30:17
keep  17:6
  41:19 53:23
kennedy  7:25
kind  38:3
  50:13
kinds  58:3
kinsella  20:6
  21:13
know  14:8 24:4
  26:2,2,9,15,17
  26:18,22,24
  27:1,1,2,18,24
  28:4,14,18,21
  29:3,16 30:4
  31:8 32:4
  33:21 34:5
  35:1,1,2 36:4
  36:22 37:4,5
  39:16 40:6

**[know - materially]**                                              **Page 13**

41:4,15,18,20
41:20,20,21,23
41:23 42:8,19
42:22,24,24
44:6,18 45:5
45:10,11,15,19
46:16 47:6
48:14 49:5
50:5,17 51:17
54:3,13 56:19
57:7 58:23,25
**known**  45:3
**knows**  30:5
49:20
**kramer**  9:1
**kroeger**  9:2

**l**

**l**  9:2 10:6 30:10
**lack**  25:13
**land**  13:24
**landscape**  53:4
**language**  16:12
**lannigan**  3:17
8:1
**lapse**  57:19
**large**  28:24
48:10 52:25
**largely**  27:13
**latest**  44:19
**law**  4:2 5:3 7:8
22:6 26:4
41:13 53:12
**lawyers**  57:8
**lead**  17:4 23:9
34:18
**leave**  12:9
34:23

**leaves**  43:2
54:3,4
**led**  28:8
**ledanski**  4:25
61:3,8
**left**  43:22
49:11,25 58:17
**legal**  32:24
61:20
**lender**  59:7
**lengthy**  55:24
**letter**  24:11,12
24:14 27:2
29:15,17,20,25
30:2 31:1,23
37:7 49:7,18
**letters**  19:20
19:25 20:11
23:2,13 24:4
**liability**  32:13
**lift**  19:2 20:7
20:12,14 23:23
**lifted**  48:9
**lifting**  23:12
33:20
**likelihood**
42:23
**likely**  24:21
31:18
**limited**  36:14
**limits**  26:19
**liquidation**
27:12
**lis**  17:15
**lisa**  9:17
**lists**  41:14

**little**  11:7 28:5
49:10
**living**  41:25
**lloyd**  17:12
18:7
**llp**  5:10,17 6:8
6:15 8:21
**long**  15:18,19
17:4 27:24
43:17 52:6
**longer**  16:18
51:10 55:20
**look**  12:2 24:25
31:21 32:9
35:3,16 38:1
41:12 47:15
55:23 58:4
**looked**  15:3
29:19 41:12,16
41:24 53:4
55:19
**looking**  16:25
42:19
**looks**  56:14
**los**  6:18
**lose**  36:12
**losing**  45:20
**lot**  30:2 31:7
34:25 35:10
36:8,8 39:13
39:19 45:9,10
51:6 57:18
58:16
**lots**  54:13
**loud**  28:4
**lovells**  8:21

**low**  32:6 35:15

**m**

**m**  8:9 9:3,22
**ma**  5:6
**made**  13:19
16:13 20:13
27:10 28:12
39:24 45:24
48:25 49:3,6
59:21
**madison**  6:11
**magistrate**
24:18
**main**  49:16
**major**  26:22
**make**  13:11
20:17,17 22:13
22:17 32:17
35:4 39:1
44:12 55:11
59:25
**makes**  31:20
32:3
**making**  20:19
20:24 21:8
22:13 23:6
39:2
**managed**  59:3
**mark**  34:10
43:3
**marsh**  9:3
**martin**  1:22
8:3
**mass**  27:15
**materially**
11:17

[matter - new]                                                          Page 14

matter 1:5
  11:7 13:12
  19:1 55:14
  56:15
matters 19:2
  33:5
matthew 9:16
  10:5
maximize
  33:12
mcmahon 9:4
mcnally 30:17
mdl 27:13,15
  28:24
mean 22:6
  24:13 26:7
  27:13 35:25
  40:1 42:24
  50:5 52:14
  54:2
meant 34:12
  52:13
mediate 35:13
mediation 2:1
  25:16,17 26:21
  27:3 28:8
  31:14 33:14
  37:10 43:19,19
  43:20 45:15,24
  47:7 49:15
mediator's
  24:10,19 26:1
mediators
  24:16 37:12
meet 21:13
meetings 20:13

mega 48:9
mention 37:22
mere 21:21
merson 4:2,2
messed 44:13
met 25:24 29:8
mg 1:3
michael 7:8,13
  8:21 9:5,7 10:5
  40:24
michelle 9:4
miller 6:1
million 47:19
  47:20 48:3,10
minarovich 9:6
mind 32:14
  33:19
mine 60:6
mineola 61:23
minimum
  31:12 49:3
  59:21
minute 39:20
  56:12
miskell 9:7
misremembe...
  16:22
missed 30:9
mission 32:21
mitchell 5:3,8
  8:17 9:5 11:11
mode 46:3,23
  51:23
model 44:22,23
  58:23,25
moffitt 9:8

moment 33:4
  33:18 54:14
  55:23
money 14:23
  15:9,10 36:8
  47:3
monica 6:17
months 41:17
moore 9:9,10
moriaty 10:11
morning 56:17
motion 2:3,6
  2:12,17 3:1,10
  3:16 4:1,5,10
  11:8,17,22,23
  11:24 12:5
  13:8,13,13
  19:8 20:7 21:7
  21:12,18,19
  23:14,20 25:3
  26:24 28:10
  31:17,19 33:25
  38:25 50:14
  52:6,14 54:23
  55:2 56:22
  60:1,4
motions 11:16
  19:2,3 20:14
  21:16 23:22,23
  23:25 24:2,3
motors 27:11
  27:11
move 17:18
  21:15 29:6
  49:25 59:19
moved 52:9
  56:3

moving 17:6
  17:16 18:10
  19:13 38:7
  39:11
multiple 27:16
mute 29:9,9
  36:19
myriad 30:25

n

n 5:1 8:23 11:1
  61:1
name 30:9
  54:19
named 33:21
  33:21
narrow 33:11
nasatir 9:12
nassau 27:22
nasser 9:11
nathaniel 7:23
ndas 49:20
nearby 39:19
necessarily
  52:3
need 17:15
  37:10
needs 46:13
negotiated
  32:2
never 34:15
  36:22 45:24
  49:6 51:19
  55:6
new 1:2,7,14
  5:13,20 7:18
  17:10 18:8,11
  36:10 45:24

55:2
**newspaper**
30:3
**nice** 13:20
41:14
**nine** 59:9
**noise** 39:19
**non** 26:11
33:24 44:15,16
45:1,1 53:5,13
59:12
**nora** 10:1
**note** 23:2
**notes** 13:11
34:10
**notice** 52:15
**notion** 34:20
36:13
**november**
26:25 55:9,19
55:25 56:2,4,4
56:16,17 57:3
60:7
**number** 27:25
28:19 30:13
35:6 37:16
40:25 45:14
**numerous** 19:3
**ny** 1:14 5:13,20
6:4 7:11,18
61:23

**o**

**o** 1:21 11:1
30:10 61:1
**object** 11:25
20:24 21:21

**objected** 20:5
**objection** 12:6
12:19 13:7
20:4,10 24:3
31:3
**objections**
11:20 12:17
14:8 30:25
53:8
**obtain** 19:11
21:23
**obviously**
14:18 24:10
25:11,14 54:10
58:9
**occur** 23:10
**occurred** 16:17
**october** 1:16
24:13,14,23
25:1,7,7,8,8,15
38:6,8 40:15
40:16 41:18
45:25 46:3,7
47:1,5 49:7
50:20 51:13,17
51:18 52:12,14
52:17 54:24
60:2 61:25
**offer** 30:22
31:15 32:11
37:19 39:2,5
45:24 47:7
49:4,5,6,15
55:1 59:16
**offered** 26:12
26:16 29:15
35:6

**offering** 31:21
**offers** 43:20
**office** 7:8 52:21
53:23
**office's** 54:9
**offices** 5:3
**oh** 17:9 23:5
50:21
**okay** 17:21
18:3,22 22:24
23:16 24:8
30:11 54:15,17
55:4,15 60:8
**old** 61:21
**omnibus** 56:6
**ones** 23:24
58:16
**ongoing** 15:8
**open** 15:2,18
15:24 38:13
47:9 52:7 54:4
56:3,16,18
**opening** 43:15
**opinion** 48:18
**opportunity**
22:15
**opposition**
19:4 33:11
**opt** 53:1,1,21
53:24
**option** 50:2
**order** 2:3,8
12:18 13:10
18:10 23:13
25:1,2,9 38:2
46:9 52:16

**ordered** 32:5
**orders** 44:5
**osselaer** 24:17
**oswald** 9:13
**ought** 29:22
**outcome** 35:12
50:18,19 56:23
**outlined** 49:12
**outs** 53:2
**outside** 27:9
**overstated**
31:1
**own** 35:4 44:2

**p**

**p** 4:6 5:1,1 7:6
11:1
**p.m.** 56:24
57:3
**pachulski** 5:10
6:15 13:16
24:11 29:11
**pacific** 43:11
**page** 20:10
**paid** 43:9 51:4
**papers** 11:14
22:23
**paragraph**
20:10 24:19
**parameters**
29:2
**parish** 33:22
34:2,8
**parishes** 26:10
28:2 29:3 43:2
43:17 44:11
**park** 13:24

[part - process]

**part** 20:3
**participation**
   40:13
**parties** 18:7
   22:7 24:20,23
   31:5 32:2
   33:24 38:7
   43:19 49:14
   52:5,23
**party** 33:24
   52:24 53:5
**patricia** 9:6
**patrick** 3:2
   9:24
**pattern** 27:14
**pay** 29:20 30:1
   39:4,5,6 43:18
   51:6
**pencils** 59:5
**pendens** 17:15
**pending** 11:16
   32:8
**penn** 41:13
   42:19
**people** 21:16
   30:2 32:25
   38:2 49:9
   51:11 59:23
**percent** 14:4,6
   31:10,16
**perform** 32:23
**periods** 51:10
**perkins** 9:14
**permitted**
   26:19
**personal** 32:24

**personally**
   38:16,23
**perspective**
   54:9
**pfau** 7:1
**phone** 36:17
**phones** 36:19
**pick** 35:9
**picking** 27:19
   27:20
**picture** 32:12
   32:13,14,17
   41:24 45:11
**piece** 13:20,22
   18:8,8 44:13
**piped** 38:24
**place** 17:6,13
   54:8
**plaintiffs** 37:24
   59:3
**plan** 14:17
   15:19,24 16:4
   23:7 24:24
   25:14,18,23
   26:3,12 31:11
   44:2,2,10 45:4
   46:3,6,17,23
   49:23 51:23
   53:16
**plane** 39:19
**planned** 47:3
**plans** 41:15
   48:23
**plaza** 6:3
**plea** 20:5
**please** 11:2
   34:14

**pllc** 7:1
**plus** 34:24
**pm** 1:17 60:13
**podium** 58:20
**point** 15:4
   18:15 30:1
   33:15 37:9
   39:7
**policies** 19:10
   19:11,16 21:22
   22:2 26:18
**policy** 26:19
   39:1
**pondered** 26:2
**poorest** 43:15
   43:16
**portion** 17:11
**position** 11:15
   31:14,24
**positions** 31:17
**possibility** 27:4
   52:23 53:2
   54:1
**possibly** 53:1
**post** 45:24
   46:24 47:7,10
   47:24 48:6
   49:15 50:1
   57:13,21 58:5
**pot** 43:2
**potential** 22:15
   28:2 35:7
**pre** 47:24 48:8
**precisely** 29:1
**prejudice** 25:4
**preliminary**
   19:9 33:5,11

**premise** 46:18
**prepare** 46:4
**prepared**
   27:25 35:5
   44:7
**prepetition**
   13:19 21:4
**present** 7:22
   22:15 37:19
**presented** 44:3
**presentment**
   55:1
**pretrial** 34:22
**pretty** 41:24
**prevented**
   19:25
**prior** 24:22
   49:6
**privilege** 12:25
   25:16
**probably** 20:6
   27:10 34:12
   35:10 51:3
   59:11
**procedure** 2:7
**procedures**
   48:2,24
**proceedings**
   60:12 61:4
**proceeds** 14:4
   14:18 15:4
   17:19,24 19:11
   21:23
**process** 18:11
   18:13 28:16,20
   31:3 54:18

professor
48:22
progress 25:13
25:14
projection
44:12
proof 11:15
proofs 30:24
property 13:21
13:23
propose 37:24
proposed 44:2
47:11
propriety
29:16
prosecuted
50:6
prosecuting
58:7
protection
44:16
provides 18:18
published 30:3
punitive 47:20
48:10,12,16
purchases
17:14
purdue 31:9
50:15 52:25
53:1,9,14
purely 18:18
purport 21:9
purpose 21:7
21:11 23:9,20
25:23
purposes 42:6

pursuant 2:6
pushing 38:7
put 16:10,12
23:6,11 28:6
28:21 43:2
48:15 50:5
52:5 55:7
putting 29:1

q

qualifications
30:17
quantum
25:21
quarter 44:7
question 12:15
14:7 25:1,19
30:16,21 32:14
34:10 42:4
43:3 44:8 49:8
58:15
questions 28:9
50:9
quick 56:21
quickly 29:20
quite 24:1,1
46:2

r

r 1:21 5:1 9:21
11:1 30:10
61:1
raise 20:22
raised 25:22
40:20 42:3
raising 58:25
range 26:6,13
28:2

rather 40:10
53:1
rayan 9:11
reach 51:16
59:15
reached 13:18
24:22 58:23
reaching 25:18
reaction 40:17
read 20:8
37:21 49:18
ready 19:23
56:22
real 31:25
reality 32:16
really 13:3
21:17 23:25
29:20 33:10
40:1,7 57:18
reason 28:13
38:24 47:1
56:11
reasoned 31:14
reasons 32:24
32:25
recalcitrant
20:4
recall 59:20
receive 20:11
received 24:10
24:10,11
receiving 20:18
26:1
recent 59:11
recognition
32:23

recognize
24:21 27:4
33:1 45:7
reconvene
55:11
record 58:16
61:4
recover 48:19
recoverable
48:16
recoveries 28:2
recovery 42:24
42:24
references 23:7
50:13
referring 25:12
33:7
refior 9:15
reflected 23:1
regard 54:8
regarding
24:14 27:3
30:6 36:11
regardless 31:8
regret 42:12
regrets 52:11
regretted
36:24
regular 52:15
regularly
21:16
reilly 48:22
relating 13:18
54:7
release 2:8
33:13

released   33:5
releases   44:11
    44:14 50:17
    52:24 53:5,9
    53:13
releasing   35:23
relief   2:12,17
    3:1,10,16 4:1,5
    4:10 22:3,5
    23:20 24:1
    36:3 38:25
reluctance
    28:5 52:11
rely   36:9
remain   15:23
    56:3
remaining   56:1
remains   15:18
remanded   35:1
remedies   30:7
remember
    15:13 16:5
    37:18
remembering
    15:17
remind   59:6
remove   24:12
renewed   60:2
reorganization
    24:24 45:4
replete   23:7
reply   23:7
report   24:11
    24:18,19 26:1
    56:21
reporter   37:19

represent
    23:24 30:15
    33:9 34:17
    40:25 43:25
represented
    44:20
require   20:16
required   25:6
requires   31:10
    42:22
reserve   30:6
resist   36:2
resolution   59:7
resounding
    25:24 29:8
resources   46:1
    49:8,10 58:13
respect   12:15
    14:21 18:4
    20:14 22:6
    26:7,20 33:19
    34:1
respond   26:20
    39:3
response   19:17
    20:18 27:1
    28:10 37:22
responses   11:9
responsive
    43:22
rest   22:23
restriction
    14:25 15:1
    18:1,2
result   12:3
    28:9,17 33:14
    47:19

resulted   41:14
results   32:4
retain   13:24
retained   30:8
    30:13
retired   43:7
return   48:9
reviewed   14:7
    24:2 28:10
rhea   7:25
richard   9:2
right   11:2,5
    12:11 13:8,12
    17:1 19:1 24:8
    32:20 35:19,20
    38:1,6 41:8
    46:15 47:6
    48:5,7 51:25
    56:21 60:9
rights   21:4
    30:6
ring   36:21
rings   28:21
rivera   10:12
road   7:10
    61:21
robert   8:18
roberts   9:16
rochester   20:3
    43:24
rockville   1:7
rolle   9:17
roman   1:7
roten   9:18
rough   45:2
rule   2:6

ruled   20:6
    21:14 50:11
rules   2:7
ruling   53:23
running   47:2
russell   9:18
rxr   6:3

| s |
|---|

s   5:1 9:9 10:12
    11:1
sad   45:20
    49:24
safely   44:14
sale   14:4,18
    16:11,17 17:5
    17:6,18,23
    18:15
san   43:6
santa   6:17
satisfy   53:13
saw   16:6
saying   16:14
    35:8 51:15
    54:1
says   20:10
    38:22 43:15
scenario   57:25
    58:5
scenarios
    49:11
schedule   44:5
scheduled   55:9
scheduling
    34:21,22
schoenfeld
    50:18

[school - specific]                                                                                Page 19

| | | | |
|---|---|---|---|
| **school** 41:13 | 13:19,24 14:2 | **seven** 49:24,25 | **sir** 44:9 |
| **schools** 47:17 | 14:6,21 17:18 | **several** 20:13 | **sit** 56:12 |
| 57:23 | 18:4,6,19 | 27:19,20 40:18 | **six** 35:11 |
| **schwarz** 9:19 | **send** 24:4 | **sex** 36:11 41:22 | **size** 45:11,12 |
| **scouts** 44:25 | **sending** 19:25 | **sexual** 4:2 | **skirt** 53:15 |
| 51:5 53:15 | **sense** 55:11 | 30:13 | **sleep** 45:20 |
| 58:23 59:15,18 | **sent** 19:20,22 | **shara** 8:8 | **slog** 28:14 |
| **scurrying** | 19:23 20:3 | **shared** 42:9 | **slome** 9:21 |
| 16:24 | 27:3 | 59:18 | **small** 17:11 |
| **sealed** 29:22 | **sentence** 24:20 | **sharing** 59:1 | **smith** 9:22 |
| **sealing** 30:4 | **separately** | **sharpening** | **sold** 15:23 |
| **seated** 11:2 | 54:16 | 59:5 | **solutions** 61:20 |
| **seattle** 7:4 | **serious** 29:13 | **sheet** 24:15 | **soma** 10:7 |
| 57:22 58:1 | 30:16,21 57:19 | **short** 17:5 24:1 | **somebody** |
| **second** 36:15 | **seriously** 46:2 | 29:5 | 15:17 17:1 |
| 39:18 42:16 | **session** 56:18 | **shortly** 40:16 | **someone's** |
| 53:14 56:5,10 | **sessions** 24:21 | **show** 2:3 49:16 | 39:23 |
| **see** 12:2 15:16 | 24:21 | **shut** 36:17 | **sonya** 4:25 |
| 28:1,13 29:4 | **set** 11:14 32:16 | **side** 25:10,10 | 61:3,8 |
| 32:10 33:13 | 38:5,8 53:14 | 25:12 29:7 | **sorensen** 9:23 |
| 35:14 38:8,21 | **settled** 44:21 | 35:9 | **sorry** 15:6 |
| 41:21 44:3 | 45:5 56:1 | **sides** 25:11 | 19:15 24:16 |
| 49:25 50:13 | 57:13 | 26:8 27:17 | 28:8 30:9 |
| 51:5 55:11 | **settlement** 2:8 | 42:23 | 35:17 42:17 |
| 56:13 60:7 | 13:13,18 14:8 | **sight** 47:8 | 50:21 53:20 |
| **seek** 22:3 | 14:11,12,14,21 | **sign** 52:16 | **sought** 34:1 |
| **seeking** 21:22 | 16:17 17:17 | **signature** 61:7 | **sounds** 13:20 |
| 24:2 | 18:4,17,19,23 | **signed** 51:18 | **southern** 1:2 |
| **seem** 20:16 | 19:13 22:15 | **significant** | 50:10 |
| 45:20 52:25 | 29:1,1 43:25 | 58:6,13 | **spare** 57:10 |
| **seemed** 21:14 | 44:1 58:8,9 | **silence** 29:8 | **speak** 36:7 |
| **seems** 42:22 | 59:3 | 42:4 | 38:12 |
| 53:15 | **settlements** | **silvershein** | **special** 6:9 |
| **seen** 30:2 48:11 | 42:20,21 44:21 | 3:11 9:20 | 19:7 |
| **sell** 47:17 | **settling** 44:19 | **similarly** 27:14 | **specific** 28:19 |
| **seminary** 2:9 | 45:1,1 59:12 | **siobhain** 9:6 | 54:7 |
| 6:2 13:13,17 | 59:12 | | |

[spend - take]                                                                    Page 20

| | | | |
|---|---|---|---|
| **spend**  28:16 | **starting**  55:25 | **stephen**  10:9 | **suggested**  47:1 |
| **spent**  36:8 | **state**  5:5 11:21 | **stephenie**  3:17 | 53:8,9 |
| 41:17 | 11:22,23 12:13 | **stipulation** | **suggesting** |
| **split**  14:4 48:20 | 13:23 17:10 | 54:25 | 27:17 |
| **spoken**  28:18 | 18:8,12 22:4,6 | **stoneking**  3:2 | **suggestion** |
| **sponte**  55:6 | 26:4 27:20,22 | 9:24 | 25:24 |
| **spout**  37:9 | 28:14,20 33:6 | **stop**  20:15 29:7 | **suggestions** |
| **spring**  51:1 | 34:5,13,18,23 | 43:21 | 29:6 |
| **stage**  22:2 | 36:6,12 39:17 | **stopped**  40:4 | **suite**  6:10,17 |
| 26:17 | 39:25 40:11,13 | **strategy**  47:10 | 7:3,17 61:22 |
| **stairs**  40:9 | 40:18,23 41:8 | 47:13 | **sullivan**  10:13 |
| **stance**  32:22 | 41:13 42:19 | **street**  5:5,19 | **supposedly** |
| **standing**  20:23 | 45:3 47:24 | 6:10 7:3,17 | 27:24 |
| 21:2,21 | 58:9,24 59:13 | **stretch**  32:6 | **supreme**  50:22 |
| **stands**  53:12 | **states**  1:1,12 | 50:24 | **sure**  15:14 23:8 |
| **stang**  5:10 6:15 | 7:15 | **striking**  30:5 | 37:15 41:12 |
| 6:20 13:16 | **status**  2:1 11:6 | **structure** | 44:12 52:16 |
| 24:11 29:9,10 | 23:16 24:9,10 | 25:14 | 54:12 59:15,16 |
| 29:11,11,19,24 | 24:15,17,19 | **stumbling** | **surprise**  49:9 |
| 30:6,10,12 | 26:1 27:3 | 25:18 26:23 | **survivor's** |
| 33:9,17 34:3,9 | 34:16 37:17 | **sua**  55:6 | 19:13 25:22 |
| 35:17,19 36:16 | **stay**  2:12,17 | **subject**  11:19 | **survivors** |
| 36:19,20,25 | 3:1,10,16 4:1,5 | 19:12 | 31:10,16 32:21 |
| 37:1 38:6,18 | 4:10 19:2,12 | **submit**  13:10 | 36:12 40:25 |
| 39:16,21,22 | 20:7,12,14 | **substance** | **suspect**  35:21 |
| 40:3,6,8,9 | 22:6 23:12,20 | 29:17 | 40:20,20 |
| 42:15,17 43:1 | 23:22,23 33:20 | **substantially** | **sustained**  12:6 |
| 43:5,6 44:9,12 | 35:24 36:3 | 30:22 53:16 | 12:16 |
| 46:20 54:18,19 | 38:25 48:8 | **succeeded** | **sustaining** |
| 54:21,21 55:4 | 50:2 | 41:19 | 12:18 |
| 55:8 56:19,20 | **steinman**  33:6 | **success**  33:12 | |
| 57:16,16 59:1 | 34:15,19,24 | **successful**  28:8 | **t** |
| 60:11 | 35:4,10 37:18 | 57:24 | **t**  61:1,1 |
| **stang's**  37:23 | 38:1,4 | **sugayan**  9:25 | **table**  39:10 |
| **start**  11:5 | **step**  23:3 39:2 | **suggest**  28:11 | **take**  18:11 |
| 45:23 56:1 | **stephanie**  8:1 | 48:3 51:15 | 21:25 40:9 |
| | | | 48:2 54:24 |

| | | | |
|---|---|---|---|
| taken 12:17 31:18 | 47:9,18,24 48:5 49:16 | 39:7,8,11 41:2 41:21 44:4,6 | 40:15 41:12,13 41:17,17 51:10 |
| talk 33:4 58:24 | 50:1,3,4 51:8,8 | 44:14,19 45:6 | timely 11:15 |
| talked 29:4 45:13 58:12 | 51:9,23 59:2 | 45:10,11,13 | times 36:23,24 57:19 |
| talking 25:12 34:11 46:18 47:23,23 52:24 53:21 54:12,14 | tested 30:24 testified 30:14 testifying 38:18 | 46:10,21 47:6 47:8 48:19 49:24 50:13,17 51:3,11 53:8 | timothy 6:13 today 28:6 36:3 37:3 52:3 today's 56:23 |
| talks 60:3 | testimony 31:17 | 55:8,13 56:8 56:21 57:10 | todd 5:23 8:24 together 43:2 |
| target 46:19 47:13 51:9 57:21 | testing 31:7 thank 13:9 18:24,25 23:15 | 58:17,18,19 59:11 thinking 28:4 | token 47:9 told 18:11 34:19,22 |
| targets 46:23 telephonically 7:22 | 24:6,7 39:14 39:15 41:6 45:18,19 51:12 | 34:12 46:10 49:10 59:17 thinks 34:24 | took 46:2 59:20 tort 27:15 |
| tell 18:14 33:15 34:23 56:19 | 57:6 58:21,22 60:9,10,11 | third 5:12 52:24 53:5 | total 42:4 totality 32:9 |
| tells 48:22 tenor 38:13 | theory 50:1 theresa 8:13 | thomas 9:21 thought 15:5 | totally 34:6 towards 49:25 |
| term 24:15 51:2 | thing 28:23 41:21 42:1 | 15:17 16:6 28:5,20,23 | town 17:12 track 58:16 |
| terminate 16:16 | 52:9 55:24 things 17:16 | 34:9 36:23 39:22 47:7 | transcribed 4:25 |
| terms 39:9 57:24 58:7 59:5 | 24:9 45:22 50:15 54:13 58:24 | 51:12 thoughts 59:19 threats 19:10 | transcript 20:8 20:9 37:20 61:4 |
| test 27:16,25 28:24 33:4,19 33:21,22,23 34:11,20 35:6 35:9,9,12,21 36:7,13 37:2 37:14,24 38:11 38:16,19 39:7 39:11,24 41:1 46:16,16,23 | think 15:3 17:19 21:20,21 22:22 25:6 26:10 27:7,9 28:17 29:13,21 30:16,21 31:1 31:13,22 32:18 32:25 33:2,23 36:6,16 37:8,9 38:10,13,16,19 | 19:14,16 21:22 three 35:9 45:22 tim 19:6 time 12:1,21,25 14:4 17:4,5 25:5,20,21 28:16 31:19 32:21 35:8 36:8,18 37:25 | transfer 13:19 14:22 transmit 20:11 transpired 25:17 treated 32:3 trial 27:24 35:5 47:10 55:25 56:1,3 |

| | | | |
|---|---|---|---|
| trials  27:16 | underestimate | use  14:3,23 | village  18:7 |
| tried  53:15 | 57:9 | 30:19 31:23 | vince  10:13 |
| 59:8 | underlying | 32:11 | vincequerra |
| true  51:8 61:4 | 58:9 | using  41:1 | 10:2 |
| trusha  8:19 | underscore | usually  43:14 | violation  20:22 |
| trust  14:5,13 | 47:1 | utility  37:2 | virtue  44:13 |
| 14:15,17,19 | understand | **v** | vis  36:1,1 |
| 15:9,10 16:3 | 14:16 21:7 | v  9:1 | vote  31:11 |
| 45:2 48:1,23 | 23:23 33:25 | vacuum  39:22 | **w** |
| 57:15 58:8,9 | 35:4 42:5 | valenza  10:1 | w  6:13 |
| 59:3 | 49:12 51:14 | valuations | wa  7:4 |
| trustee  7:16 | 53:25 | 45:9,10 46:19 | wait  51:9 |
| trustee's  52:21 | understanding | 47:15 | waiting  22:16 |
| try  27:25,25 | 25:21 51:21 | value  26:14 | want  12:24 |
| 28:1,21,24 | understands | 29:14 30:12,23 | 13:4,5,11 |
| 33:12,13 35:10 | 22:22 | 31:9,25 32:20 | 20:17 23:21 |
| 39:4 40:7 | uninsured | 38:19,20 39:8 | 25:16 26:17 |
| 49:14 | 46:20 | 41:2 | 27:5 29:7,25 |
| trying  15:12 | uniondale  6:4 | valued  45:2 | 37:13 38:12 |
| 16:5 27:7 33:2 | united  1:1,12 | values  35:15 | 40:4,7,23 42:7 |
| 45:6 46:10 | 7:15 | 37:5 43:8,18 | 45:22 47:6 |
| turn  56:25 | universe  33:10 | 46:22 | 51:7 52:18 |
| turned  43:9 | 35:15 | van  24:17 | 54:5,25 55:1 |
| twice  46:12 | unknown  1:25 | varick  7:17 | 56:11,18 |
| two  25:11 35:9 | unnecessary | variety  41:17 | wanted  22:17 |
| 37:12 59:20 | 21:17,18,20 | various  32:24 | 24:7 37:22,24 |
| typically  53:4 | 23:13 | 42:25 | 39:17 44:18 |
| **u** | unopposed | verdict  39:5 | 55:4 |
| u.s.  1:23 7:16 | 11:15 | verdicts  36:11 | wants  35:21 |
| 52:20 | unsettled | veritext  61:20 | warner  10:3 |
| uday  10:10 | 48:14 | vertetis  7:1 | warren  44:4 |
| ultimately  14:5 | unwilling  34:6 | vesey  5:19 | watch  27:12 |
| 16:12 47:12 | update  54:10 | viable  45:16 | watson  10:4 |
| unclear  25:17 | upped  26:11 | 60:5 | way  23:11 |
| under  19:1 | urge  49:14 | view  15:21 | 27:24 28:6,12 |
| 35:22 46:17 | 51:11 | 25:13 26:4,14 | 32:2 33:11 |
| 53:15 | | 37:4 43:10 | 41:4 42:14 |

**[way - à]**                                                                    Page 23

46:21 48:15
51:8 52:10,25
55:7 57:9
59:23
**wayne** 8:9
**ways** 27:8
**we've** 18:11
31:22 39:18
45:9,9,14
**wealthiest**
43:13
**webb** 9:18
**website** 41:13
41:16 42:19
**wednesday**
56:16 57:2
**week** 15:23
41:23 52:4
**weeks** 20:7
32:5
**weiss** 10:5
**welcome** 41:7
**went** 57:14
**westerman** 6:1
18:6
**wi** 6:11
**wide** 56:16,18
**wight** 26:6
**william** 6:6
8:20 18:5
**willing** 20:11
**willingness**
23:2 51:22
**win** 36:13
**wings** 59:7
**wish** 11:10
18:3,22 41:9

52:5 54:17
**withdraw** 2:3
21:16
**withdrawn**
11:8,23 21:12
**witness** 30:17
**woodard** 2:13
**word** 13:10
31:23
**wording** 24:25
**words** 35:7
38:16
**work** 46:24
**working** 32:19
**world** 30:5
**worth** 36:9
38:22
**wring** 56:18
**write** 26:9
**writing** 37:7
**written** 22:23
**wrong** 15:5
34:14 36:4
**wrote** 34:10

**x**

**x** 1:4,10

**y**

**yeah** 35:3 56:8
**year** 16:11
18:11 44:7
**years** 36:22
59:20
**yitzchak** 8:16
**york** 1:2,7,14
5:13,20 7:18
17:10 18:8,12

36:10

**z**

**z** 8:15
**ziehl** 5:10 6:15
13:16 29:11
**zipes** 7:20
52:19,20,20
53:3,11,18,19
53:20,25 54:5
54:15 55:14
**zucker** 6:1

**à**

**à** 36:1