**Hearing Date and Time:  January 16, 2024 at 2:00 p.m.**
**(Prevailing Eastern Time)**
**Objection Date and Time:  January 9, 2024 at 4:00 p.m.**
**(Prevailing Eastern Time)**

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
Hayley R. Winograd, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:      (212) 561-7700
Facsimile:      (212) 561-7777
Email:          jstang@pszjlaw.com
                inasatir@pszjlaw.com
                kdine@pszjlaw.com
                hwinograd@pszjlaw.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br><br>Debtor. | Chapter 11<br>Case No. 20-12345 (MG) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**PURSUANT TO SECTION 105 FOR RELIEF FROM CONFIDENTIALITY**
**AGREEMENT AND THE DECLASSIFICATION OF CERTAIN DOCUMENTS**

# **TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ..................................................................................... 1
II.   JURISDICTION AND VENUE ................................................................................... 3
III.  RELEVANT FACTS ................................................................................................... 4
      A.    The Bankruptcy Case ....................................................................................... 4
      B.    The Confidentiality Agreement ........................................................................ 5
      C.    Mediation Efforts Fail and the Stay of Non-Debtor Actions is Lifted ................... 8
      D.    The Committee Seeks to De-Designate CVA Claims Documents as
            "Confidential" ................................................................................................. 9
      E.    The Debtor Files its Plan and Disclosure Statement ........................................... 11
IV.   ARGUMENT .............................................................................................................. 11
      A.    Legal Standard ................................................................................................ 11
      B.    The Debtor Cannot Show that the CVA Claims Documents are
            "Confidential" ................................................................................................. 12
V.    NO PRIOR REQUEST ............................................................................................... 15
VI.   NOTICE ..................................................................................................................... 15
VII.  CONCLUSION ........................................................................................................... 15

`

# TABLE OF AUTHORITIES

Page

## CASES

*Allen v City of New York*,
420 F. Supp 2d 295 (S.D.N.Y. 2006)…………………………………………………………..12

*Cipollone v. Liggett Group, Inc.*,
785 F.2d 1108 (3d Cir.1986) ...................................................................................12

*Gambale v. Deutsche Bank AG*,
377 F.3d 133 (2d Cir.2004) ....................................................................................11

*Harmon v Diocese of Albany*,
204 A.D.3d 1270 (3d Dept. 2022)...........................................................................12

*In re Parmalat Sec. Litig.*,
258 F.R.D. 236 (S.D.N.Y. 2009)............................................................................11

*In re Roman Cath. Diocese of Rockville Ctr., New York*,
651 B.R. 622 (Bankr. S.D.N.Y. June 1, 2023) ....................................................9

*Pearlstein v BlackBerry Ltd.*,
332 F.R.D. 117 (S.D.N.Y. 2019)............................................................................11

*Roman Cath. Diocese of Rockville Ctr. v. Ark320 Doe (In re Roman Cath. Diocese of Rockville Ctr.)*,
651 B.R. 622 (Bankr. S.D.N.Y. 2023) ...................................................................5

*Salomon Smith Barney, Inc. v. HBO & Co.*,
No. 98CIV8721(LAK),
2001 WL 225040 (S.D.N.Y. Mar. 7, 2001)...........................................................11

*Schiller v. City of New York*,
04 CIV. 7921 KMK JCF,
2007 WL 136149 (S.D.N.Y. Jan. 19, 2007)...........................................................11

*U2 Home Entertainment, Inc. v. KyLin TV, Inc.*,
06-CV-2770 (DLI), 2008 WL 1771913
(E.D.N.Y. Apr. 15, 2008)......................................................................................12

*United States v. Davis*,
No. 85 Civ. 6090(KC),
1988 WL 96843 (S.D.N.Y. Sept.13, 1988) ...........................................................14

## STATUTES

11 U.S.C. §105 .......................................................................................................... 1

28 U.S.C. §§ 1408 and 1409 ......................................................................................4

28 U.S.C. §157 ........................................................................................................ 3

Fed. R. Bankr. P. 7026 ........................................................................................... 11

Fed. R. Civ. P. 26 ...................................................................................................11

The Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese" or the "Debtor") in the above-captioned case (the "Bankruptcy Case"), through its undersigned counsel, hereby moves pursuant to section 105(a) the Bankruptcy Code for entry of an order, substantially in the form of Exhibit A attached hereto, (a) granting the Committee relief from the *Confidentiality Agreement and Protective Order Between the Debtor and the Official Committee of Unsecured Creditors* [Docket No. 320] (the "Confidentiality Agreement") and (b) removing the designation of confidentiality and related restrictions on the CVA Claims Documents.[1] In support of its Motion,[2] the Committee respectfully states as follows:

## I.  PRELIMINARY STATEMENT

1.      The Debtor cannot meet its burden of showing good cause for maintaining the confidentiality of the CVA Claims Documents under the Confidentiality Agreement.

2.      In December 2023, the Diocese filed a disclosure statement (the "Disclosure Statement") for its plan of reorganization (the "Plan")[3] positing that survivors of childhood sexual abuse (the "Survivors") should be forced to choose between the inadequate compensation offered

---

[1]  Capitalized terms used and not otherwise defined herein shall have the meaning ascribed thereto in the Confidentiality Agreement.

[2]  In support of the Motion, the Committee filed the Declaration of Karen B. Dine in Support of Motion of the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. Section 105 for Relief from Confidentiality Agreement and the Declassification of Certain Documents (the "Dine Dec"), concurrently herewith.

[3]  On December 22, 2023, the Debtor filed its (a) *Modified First Amended Plan of Reorganization*; (b) *Modified Disclosure Statement for First Amended Plan of Reorganization*; (c) *Trust Distribution Procedures in Connection with First Amended Plan of Reorganization* (the "TDP"); and (d) exhibits in connection with the Disclosure Statement. [Docket Nos. 2752, 2754, 2755], modifying its *First Amended Chapter 11 Plan of Reorganization*, [Docket No. 2695], and its *Disclosure Statement for First Amended Plan of Reorganization*, [Docket No. 2696].

in the Plan or dismissal of the Bankruptcy Case.[4] In advance of the Plan objection deadline, the Committee informed the Debtor that it disagreed with the blanket confidentiality designations of CVA Claims Documents, and requested that the Debtor de-designate them so that all State Court Counsel and Survivors can access them. In response, the Debtor refused to de-designate the documents, and asserted that the documents contain Survivor PII and "other" confidential material.[5] The Debtor's conclusory contentions are both inaccurate and insufficient to justify the continuing confidential treatment of the CVA Claims Documents. First, the Survivor PII or other protected health information has already been redacted from the CVA Claims Documents. Second, the Debtor fails to explain with any specificity or support why the "other" CVA Claims Documents are purportedly confidential. Its generalized assertions in support of a continuing blanket confidentiality designation fail to meet the "good cause" standard for maintaining confidential designations.

3.      The de-designation of confidentiality of the CVA Claims Documents at this juncture of the Bankruptcy Case is especially necessary so that the Survivors can make a meaningful, informed decision about whether to vote in favor of the Plan. The CVA Claims Documents contain critical information underlying the CVA claims. Access to the CVA Claims Documents would enable the Survivors to evaluate the treatment of their claims under the Plan, and whether the Survivors would be better off under the Plan or pursuing their claims in State Court against the Diocese and the DRVC Related-Parties that the Diocese proposes to release under the Plan. The continued confidentiality of the CVA Claims Documents deprives the

---

[4] The Committee opposes the Plan and objects to the Debtor soliciting votes to accept or reject the Plan. If the Plan is ultimately solicited, the release of the CVA Claims Documents will be critical for the Survivors to evaluate the Plan. Nothing herein is a waiver of any objection that the Committee has to the Plan or to the Disclosure Statement.

[5] As discussed further below, the Confidentiality Agreement required the Debtor to produce the CVA Claims Documents with Survivor PII and certain personal health information redacted.

Survivors, the only creditors in this case, from obtaining crucial information about their claims in connection with any proposed Plan. They continue to be left in the dark regarding information that is exclusively within the Diocese's control. All Survivors must be able to see the universe of the CVA Claims Documents so they can proceed at this stage of the Bankruptcy Case and finally obtain closure and fair compensation for their trauma and suffering—whether that be through a fair and equitable Plan or instead in front of a jury.

4.     It is also a waste of party, estate, and judicial resources to maintain the confidentiality of the CVA Claims Documents at this time. Over the last few years, the Diocese has spent millions of dollars gathering, redacting, and producing the CVA Claims Documents to the Committee pursuant to the Confidentiality Agreement so the parties could pursue negotiations through mediation. In light of the PI Order and commencement of discovery in the Unstayed Actions, the Survivors who are plaintiffs in those actions (the "Survivor Plaintiffs") are now seeking documents from the Diocese that fall within the category of CVA Claims Documents already produced to the Committee. The continued confidentiality of the CVA Claims Documents will force the Survivor Plaintiffs in the Unstayed Actions to start the discovery process anew and pay a second time for the Diocese to review, redact, and produce these same documents all over again, further depleting dwindling estate assets.

5.     For the reasons set forth herein and further below, the Diocese cannot demonstrate good cause for why the CVA Claims Documents should be designated confidential, and accordingly, such documents should be declassified.

## II.  JURISDICTION AND VENUE

6.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

7.      Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code.

### III.  **RELEVANT FACTS**

**A.      The Bankruptcy Case**

9.      On October 1, 2020, the Diocese commenced the Bankruptcy Case in the wake of hundreds of lawsuits filed by Survivors of childhood sexual abuse under the New York Child Victims Act ("CVA") and in anticipation of the assertion of more sexual abuse claims.  There are approximately 400 state court actions (the "State Court Actions") pending against the Debtor and/or parishes, schools, and other Catholic entities (the "DRVC Related Parties").

10.     The Diocese is authorized to continue to operate its business and remain in possession of its properties as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

11.     On October 16, 2020, the United States Trustee for Region 2 appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of nine individuals who hold claims against the Diocese, including eight individuals who were sexually abused as minors by perpetrators for whom the Diocese was responsible and one representative of a minor with a civil rights claim against the Diocese. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 71].

12.     In October 2020, the Debtor and Committee agreed to a standstill of the State Court Actions (the "Consensual Stay"). [Adv. Pro. No. 20-01266, Docket No. 36] (the "Consent

Order")[6] Pursuant to the Consensual Stay, the Survivors agreed not to pursue their civil lawsuits against the DRVC Related Parties in the hope of achieving a consensual plan that would enable the Survivors to obtain closure and fair compensation for their suffering and exploitation.

13. As a condition of the Consensual Stay, the Debtor agreed to provide to the Committee discovery on the underlying CVA claims (the "CVA Claims Documents") as well as financial information concerning the Debtor and certain of its affiliates. *See Roman Cath. Diocese of Rockville Ctr. v. Ark320 Doe (In re Roman Cath. Diocese of Rockville Ctr.)*, 651 B.R. 622, 629 (Bankr. S.D.N.Y. 2023); [Adv. Pro. No. 20-01266, Docket No. 52] (the "January 2021 Consensual Stay Stipulation") ¶ 4 (providing that "[s]ubject to the Committee's execution of a confidentiality and non-disclosure agreement in form and substance acceptable to the Diocese, the Diocese agrees to use commercially reasonable, good faith efforts to promptly begin providing the Committee documents in its possession responsive to the document requests described on Schedule 4 hereto no later than January 31, 2021").

14. The CVA Claims Documents are documents "that would otherwise be produced to plaintiffs in the underlying CVA Actions," and include, in pertinent part: "personnel and assignment history records, and correspondence, letters, emails, reports, complaints, disciplinary records, and laicization documents, concerning allegations of abuse, for each individual accused of committing sexual abuse or facilitating the sexual abuse of any plaintiff in the underlying CVA Actions." January 2021 Consensual Stay Stipulation, Schedule 4.

**B.** **The Confidentiality Agreement**

---

[6] The Consent Order has been extended nine times.

15. To facilitate the production of the Debtor's discovery, on January 20, 2021, the Committee, its counsel (the "<u>Committee Counsel</u>"), and the Debtor entered into the Confidentiality Agreement. Pursuant to the Confidentiality Agreement, the Debtor was permitted to designate CVA Claims Documents as "Confidential Information," which included, for instance, (a) "sensitive nonpublic information" about the Debtor or affiliated entities; (b) protected health information; and (c) personally identifying information of the Survivors ("<u>Survivor PII</u>"). *See* Confidentiality Agreement at 2; I.1; ¶ 8(a). Pursuant to the Confidentiality Agreement, "Confidential Information" is defined as:

> (i) all CVA Claim Documents explicitly designated and marked by the Diocese as "Confidential Information", and (ii) any sensitive nonpublic information produced and explicitly designated and marked by the Diocese as "Confidential Information", in any form or medium, and whether communicated in writing, orally, or otherwise, including but not limited to (A) sensitive non-public data related to the Diocese and any affiliated entities and commercially sensitive internal business information of the Diocese (including, without limitation, financial information, information relating to strategic plans or practices, business, accounting, financial and other records, salaries, bonuses, incentive plans and other compensation and benefits information and accounting and business methods), reports, sealed court records, projections, and insurance information concerning the Diocese; (B) any analyses, compilations, studies, or other documents prepared by the Diocese, its advisors, or other parties which contain or otherwise reflect or are derivative of the information described in clause (A); and (C) the proposed terms or conditions of any plan or settlement, *provided however*, that the Recipients reserve the right to contest the Diocese's designation of any information as Confidential Information as provided under paragraph 3 of this Agreement.

Confidentiality Agreement II.8(a); *id.* at 2 ("the Diocese asserts that certain CVA Claim Documents may include information protected under the Health Insurance Portability and Accountability Act of 1996 ("**HIPPA**")…").[7] Once a document is designated as "confidential,"

---

[7] The Committee and other Recipients dispute the applicability of HIPPA to the CVA Claims Documents. *See* Confidentiality Agreement at 2. Although the Committee does not seek to de-designate documents based on HIPAA in the instant Motion, it reserves all rights to do so pursuant to the terms of the Confidentiality Agreement.

it may not "be used by any Recipient for any purpose other than with respect to the [Bankruptcy] Case or any adversary proceeding related to the [Bankruptcy] Case." *Id.* ¶ 10.

16. The Committee, each Committee Member, the Committee Counsel, and each Joinder Firm (as defined in the Confidentiality Agreement), are the "Recipients" under the Confidentiality Agreement and have access to the Confidential Information. Confidentiality Agreement II.6. State court attorneys who have been retained by one or more members of the Committee "to represent such person(s) in the prosecution of claims arising under the [CVA] and individually in the [Bankruptcy] Case" (the "Committee State Court Counsel") are also permitted access to the Confidential Information. Confidentiality Agreement Section II.6; *id.* at Exhibit A. All other state court counsel to the Survivors—*i.e.*, those who do not also represent members of the Committee— ("State Court Counsel") do not have *any* access to the Confidential Information, and neither they nor their clients have ever seen the CVA Claim Documents.

17. A Recipient may, at any time, challenge the designation of a document as "Confidential Information," and request for the removal of the designation of such documents or materials as Confidential Information. Section I.3 provides, in pertinent part:

> A Recipient … may, at any time, notify the Diocese in writing via email to the undersigned counsel to the Diocese (with a copy to Committee Counsel) (a "**Dispute Notice**") that the Recipient does not concur in the designation of a document or other material as Confidential Information (a "**Disputed Item**").

Confidentiality Agreement I.3. This provision further provides:

> If the Diocese does not agree with the Dispute Notice and the Diocese and the Recipient cannot agree on the designation of the document or material within ten (10) business days of the Diocese's receipt of the Dispute Notice, such Recipient may, at its own expense (except in the case of the Committee), move before the Bankruptcy Court on notice to the Diocese for an order removing the designation of such documents or materials as Confidential Information …

*Id.*

18.     Between October 2020 and May 2022, the Debtor produced the CVA Claims Documents to the Committee, all of which are designated as "Confidential Information." The CVA Claims Documents are redacted to protect Survivor PII and certain protected health information under HIPAA.[8] The Debtor's production was allegedly complete as of May 31, 2022. *See* **Dine Dec. Exhibit A** at 2 (December 4, 2023 email from Eric P. Stephens).

**C.     Mediation Efforts Fail and the Stay of Non-Debtor Actions is Lifted**

19.     Since approximately October of 2021, the Debtor, the Committee, the DRVC Related Parties, and the Debtor's insurers (the "Parties") have engaged in mediation in an effort to consensually resolve this Bankruptcy Case. *See Order Appointing a Mediator* [Docket 794] (appointing Paul Van Osselaer as mediator).

20.     On March 27, 2023, after mediation efforts hit an impasse, the Committee filed a motion to dismiss the Bankruptcy Case [Docket No. 1912] (the "Dismissal Motion") on the basis that the Debtor was incurring substantial or continuing loss to or diminution of the estate and there was an absence of a reasonable likelihood of rehabilitation for the Debtor. On July 18, 2023, the Bankruptcy Court denied the Dismissal Motion without prejudice, ordering that the Debtor "shall file an amended plan of reorganization and disclosure statement, or at minimum, a term sheet for a plan that is supported by both the Debtor and the Committee, by October 31, 2023." *Order Denying the Motion of the Official Committee of Unsecured Creditors to Dismiss the Chapter 11 Case Without Prejudice* [Docket No. 2329] (the "Motion to Dismiss Order"), ¶ 3.

21.     Around the same time, in April 2023, the Committee also withdrew its consent to the stay of 228 of the State Court Actions that did not name the Diocese and did not implicate

---

[8] *See* January 2021 Consensual Stay Stipulation ¶ 12 (providing that prior to the Diocese's production pursuant to the Confidentiality Agreement, "the Diocese shall cause names and other identifying information relating to any plaintiffs asserting a claim of sexual abuse to be redacted pursuant to a confidentiality protocol as agreed between the Diocese and the Committee.")

certain shared insurance coverage between the Diocese and DRVC Related Parties (the "Unstayed Actions") [Adv. No. 20-01226-mg, Docket No. 166]. On June 1, 2023, the Bankruptcy Court entered its decision denying the Debtor's motion to enjoin the Unstayed Actions. *See In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 622 (Bankr. S.D.N.Y. June 1, 2023) (the "PI Order"). Many of the Unstayed Actions are now pending are before Judge Steinman in New York Supreme Court in Nassau County.[9]

22.     Following the Motion to Dismiss Order and the PI Order, the Diocese, the Parties continued mediation in an effort to meet the Bankruptcy Court's October 31 deadline. As of October 18, 2023, the Parties had not reached a settlement, and the mediation was concluded. *See Mediator's Status Report* [Docket No. 2589]. The Debtor did not file a consensual plan of reorganization or a term sheet for such a plan on or before October 31, 2023. The Debtor did file a *non-consensual* Plan and related Disclosure Statement on November 27, 2023, and then filed its modified Plan and Disclosure Statement on December 22, 2023. The Committee opposes the Plan and does not think that the Debtor should be permitted to solicit a Plan that lacks the support of the Committee. Since the PI Order, the Survivor Plaintiffs in the Unstayed Actions have also been engaging in discovery with the Debtor, requesting the production of documents encompassed within the category of the CVA Claims Documents.

**D.     The Committee Seeks to De-Designate CVA Claims Documents as "Confidential"**

---

[9]  The Diocese and the DRVC Related Parties sought removal to Federal Court of the State Court Actions. The majority of those actions have been remanded back to state court. On November 8, 2023, the Delaware Court of Chancery entered the *Liquidation and Injunction Order with Bar Date* (the "Arrowood Liquidation Order") with respect to Arrowood Indemnity Company ("Arrowood"), one of the Debtor's Insurers. As a result of the Arrowood Liquidation Order, the Diocese and Arrowood take the position that all of the State Court Actions that relate to claims that may be covered under Arrowood insurance policies are stayed. Thus, as a result of the Arrowood Liquidation Order, at this time, approximately 43 cases are actively pending before Judge Steinman. The Diocese asserts that it is a party in approximately 11 of the Unstayed Actions because the named defendants are not separately incorporated from the Diocese. *See* **Dine Dec. Exhibit B** (December 1, 2023 Letter from Chris DiPompeo to Kenneth Brown).

23.     On November 16, 2023, Committee Counsel notified Debtor's counsel of their

disagreement with the Debtor's designation of the CVA Claims Documents as confidential, and

requested that such designations be removed, in accordance with Paragraph 3 of the

Confidentiality Agreement:

> This email is sent in accordance with the Confidentiality Agreement and Protective Order Between the Debtor and Official Committee of Unsecured Creditors (Docket No. 320) (the "Protective Order"). Capitalized terms used and not otherwise defined are as defined in the Protective Order.
>
> In accordance with paragraph 3 of the Protective Order, the Committee disputes the designation of the CVA Claim Documents, as produced to the Committee, as Confidential Information and requests that such documents no longer be designated as Confidential Information. Please let us know as soon as possible, but no later than 10 business days following this request, whether you agree that the CVA Claim Documents are no longer designated Confidential Information.

**Dine Dec. Exhibit A** at 3 (November 16, 2023 email from Brittany M. Michael).  In its December

4, 2023 response to Committee, the Debtor's counsel refused to de-designate the documents,

vaguely asserting, in pertinent part, that "those documents contain survivor personally identifying

information, protected health information, and other confidential material that must remain

protected." *Id.* at 2-3 (December 4, 2023 email from Eric P. Stephens).  In its email reply to the

Debtor's counsel, dated December 8, 2023, Committee Counsel explained to Debtor's counsel

that, *inter alia*, "[i]t is the Diocese's burden ultimately to demonstrate the confidentiality of the

documents, and, because the documents are already redacted, we do not believe that there is any

legal justification for such documents to be considered confidential." *Id.* at 1-2 (December 8, 2023

email from Karen B. Dine).

24.     During a December 19, 2023 hearing on other matters, Committee Counsel

informed the Bankruptcy Court of its request to the Debtor to de-designate the CVA Claims

Documents as confidential, reiterating that all Survivors "should be able to find out how strong

their cases are or weak their cases are by seeing the CVA documents … there are hundreds and

hundreds of people who have no access to those documents today." **Dine Dec. Exhibit C** at 54:17-23 (December 19, 2023 Hearing Transcript). In response, the Bankruptcy Court advised the Committee to "make a motion" on this issue. *Id.* at 55:5.

**E.     The Debtor Files its Plan and Disclosure Statement**

25.     As discussed above, on December 20 and 22, 2023, the Debtor filed its Plan and Disclosure Statement, along with the TDP and exhibits in connection with the Disclosure Statement. The deadline for the Committee to object to the Disclosure Statement is January 8, 2024, and a hearing is set for June 16, 2024.

### IV.  ARGUMENT

**A.     Legal Standard**

26.     Rule 26(c), made applicable here through Fed. R. Civ. P. 7026, "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 242 (S.D.N.Y. 2009) (internal quotations omitted). "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.'" *Id.* at 242-43. "A blanket protective order temporarily postpones the good cause showing until a party or intervenor challenges the continued confidential treatment of particular documents." *Id.* at 243 (citing *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 139 (2d Cir.2004)).

27.     "When a party challenges a Confidential designation, the producing party is 'obliged to sustain the burden of establishing that good cause existed for continuing confidential treatment.'" *Pearlstein v BlackBerry Ltd.*, 332 F.R.D. 117, 122 (S.D.N.Y. 2019) (quoting *Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98CIV8721(LAK), 2001 WL 225040, at *1 (S.D.N.Y. Mar. 7, 2001)); *see also Schiller v. City of New York*, 04 CIV 7921 KMK JCF, 2007 WL 136149, at *4-5 (S.D.N.Y. Jan. 19, 2007) (explaining that in cases involving protective orders governing production of documents during discovery, once receiving party challenges confidential designations under a protective order, producing party bears burden of showing

"good cause" justifying the continued designation pursuant to protective order) (citing *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1122 (3d Cir.1986) (where protective order covers all documents that producing party deems confidential, "burden of justifying the confidentiality of each and every document ... remains on [that party]; any other conclusion would turn Rule 26(c) on its head"); *Parmalat,* 258 F.R.D. at 243 ("The burden of establishing good cause then lies with the party seeking to prevent the disclosure of documents.")[10]

28.     "The party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the." *Parmalat,* 258 F.R.D. at 244. "Ordinarily, good cause [for a protective order] exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Schiller,* 2007 WL 136149, at *5 (internal quotations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test … the harm must be significant, not a mere trifle." *Id.* (internal quotations omitted); *see also Allen v City of New York,* 420 F. Supp 2d 295, 302 (S.D.N.Y. 2006) (finding that "generalized and unsupported claims of harm that might result from disclosure" do not constitute good cause sufficient to justify keeping documents confidential); *U2,* 2008 WL 1771913, at *2 ("The law is clear that conclusory statements are insufficient to satisfy the burden of showing good cause.") (internal quotations omitted).

## B.     The Debtor Cannot Show that the CVA Claims Documents are "Confidential"

29.     The Debtor cannot meet its burden of showing good cause for the continuing

---

[10]*See also Harmon v Diocese of Albany,* 204 A.D.3d 1270, 1271 (3d Dept. 2022) ("The burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity."); *U2 Home Entertainment, Inc. v. KyLin TV, Inc.*, 06-CV-2770 (DLI), 2008 WL 1771913, at *2 (E.D.N.Y. Apr. 15, 2008) ("[W]here as here, the confidentiality designation is contested, the party seeking to maintain confidential treatment for the challenged document will have the burden of establishing good cause for the continuation of that treatment.") (internal quotations omitted).

designation of "confidential" on the CVA Claims Documents. The Debtor's generalized assertion that the CVA Claims Documents "contain survivor personally identifying information, protected health information, and other confidential material that must remain protected," (**Dine Dec. Exhibit A**), are conclusory, inaccurate, and plainly insufficient to justify the continued confidentiality designations. As discussed *supra*, all (a) Survivor PII and (b) health information protected by HIPPA contained in the CVA Claims Documents has already been redacted. The Debtor's assertion that the CVA Claims Documents need to be kept confidential on the basis of Survivor PII or protected health information is therefore without merit.

30.    The Debtor's vague and unsupported statement that there is "other confidential material that must remain protected" is equally insufficient to warrant the exceptional remedy of keeping the CVA Claims Documents confidential. The Debtor fails to explain with any specificity, as it must, what "other" purportedly confidential material is in the CVA Claims Documents, or why the CVA Claims Documents must remain confidential. These broad and unsubstantiated assertions in support of the Debtor's insistence for maintaining a blanket confidentiality designation on the CVA Claims Documents fail to demonstrate "good cause" to justify keeping the CVA Claims Documents confidential. *See Schiller*, 2007 WL 136149, at *6 (defendant failed to show "good cause" for maintaining the confidentiality of information where, among other things, their "assertions are, for the most part, entirely conclusory"); *U2.*, 2008 WL 1771913, at *2 (granting plaintiff's motion to de-designate confidential documents and finding defendants have "have failed to sustain their burden of justifying confidential treatment for the" documents where defendants "have provided no evidence whatsoever to support their" assertions of confidentiality, "assert, in conclusory and unsworn fashion, that the information at issue here 'is routinely the subject of protective orders ....', and *fail to make* "a particularized showing of good cause for continued confidential treatment in this case"); *United States v. Davis,* No. 85 Civ. 6090(KC),

1988 WL 96843, at *3 (S.D.N.Y. Sept.13, 1988) (upholding magistrate judge's ruling requiring defendant to produce unredacted copies of discovery materials, where defense objection was supported by a "mere blanket averment by an attorney ... that the redacted information is irrelevant and/or confidential in that it contains proprietary financial information").

31.     It is especially crucial that the CVA Claims Documents be de-designated as "confidential" so that the Survivors can review them to evaluate the Debtor's Plan in order to make an informed decision whether to vote in favor of, or against, the Plan. For instance, the CVA Claims Documents contain critical information that would allow the Survivors to assess and evaluate (a) the strength of the Debtor's defenses if the Survivors pursued their claims in State Court in the event the Bankruptcy Case is dismissed, and (b) how their claims may ultimately be treated through the Plan.[11] But the Survivors can only make a meaningful decision about how to proceed at this stage of the Bankruptcy Case if they are able to see the universe of CVA Claims Documents. The Survivors must be able to see the CVA Claims Documents so they can finally obtain closure and fair compensation for their trauma and suffering—whether that be through a fair and equitable Plan or instead in front of a jury.

32.     Additionally, there is no basis to withhold the CVA Claims Documents from the Survivors especially in light of the PI Order and subsequent commencement of discovery in the Unstayed Actions. As discussed above, the documents that the Survivor Plaintiffs seek from the Debtor are encompassed within the same category of CVA Claims Documents that the Debtor already produced to the Committee. In making its productions to the Committee over the last few years, the Debtor has already spent millions of dollars gathering, reviewing, and redacting CVA Claims Documents. Forcing the Survivor Plaintiffs in the Unstayed Actions to go through this process a second time would be a complete waste of party, estate, and judicial resources.

---

[11]The Committee submits that the Disclosure Statement lacks adequate information and does not disclose how the Survivors' claims will be evaluated, but in the event that this failure of disclosure is corrected and the Plan is solicited, the

The Debtor's refusal to de-designate the CVA Claims Documents so that all State Court Counsel and Survivors can view them at this stage of the Bankruptcy Court serves no legitimate purpose. It only hinders the bankruptcy process because the Survivors will not have adequate information to vote on the Plan, and estate resources will continue to be depleted by re-doing millions of dollars-worth of discovery. By contrast, de-designation of the CVA Claims Documents serves judicial economy and the prospect of a successful reorganization. The Debtor fails to demonstrate why the CVA Claims Documents should be designated confidential, and accordingly, such documents should be de-designated.

### V.  No Prior Request

No prior request for the relief sought in this Motion has been made to this or any other Court.

### VI.  Notice

Notice of this Motion has been provided in accordance with the procedures of the Case Management Order. The Committee respectfully submits that no further notice is required.

### VII.  CONCLUSION

WHEREFORE the Committee respectfully requests entry of an order substantially in the form of Exhibit A hereto granting the relief requested and such other and further relief as the Court may deem just and appropriate.

Dated:    January 2, 2024

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James I. Stang*
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Iain Nasatir, Esq.
Karen Dine, Esq.
Hayley R. Winograd, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777
jstang@pszjlaw.com
*Counsel for the Official Committee of Unsecured Creditors*

---

Survivors will need the information from the CVA Claims Documents to evaluate their potential treatment under the Plan

# Exhibit A

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
Hayley R. Winograd, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:     (212) 561-7777
Email:         jstang@pszjlaw.com
               inasatir@pszjlaw.com
               kdine@pszjlaw.com
               hwinograd@pszjlaw.com

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br>    Debtor. | Chapter 11<br>Case No. 20-12345 (MG) |

**[PROPOSED] ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS PURSUANT TO SECTION 105 FOR RELIEF FROM
CONFIDENTIALITY AGREEMENT AND THE DECLASSIFICATION
OF CERTAIN DOCUMENTS**

4883-7580-5594.2 18491.002

Upon consideration of the *Motion of the Official Committee of Unsecured Creditors Pursuant to Section 105 for Relief from Confidentiality Agreement and the Declassification of Certain Documents* [Docket No. __] (the "<u>Motion</u>"),[1] filed by the Official Committee of Unsecured Creditors (the "<u>Committee</u>") pursuant to Sections 105 of the Bankruptcy Code, for relief from the Confidentiality Agreement and declassification of the CVA Claims Documents as "Confidential Information;" and upon a hearing having been held before the Court on January 16, 2024 (the "<u>Hearing</u>") to consider the relief requested in the Motion; and appearances of all interested parties having been noted on the record of the Hearing; and upon all of the proceedings had before this Court; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interest of the Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**NOW, THEREFORE, IT IS HEREBY FOUND THAT**:

1.      The Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334, consideration of the Motion and the relief requested in the Motion is a core proceeding under to 28 U.S.C. § 157(b), and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409;

2.      The statutory predicate for relief is 11 U.S.C. §§ 105(a);

3.      Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with §§102(1) and 105 of the Bankruptcy Code and Bankruptcy Rule 2002, which

---

[1] Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Motion.

4883-7580-5594.2 18491.002

notice adequately described the nature of the relief requested in the Motion and which notice was good, sufficient, and appropriate under the particular circumstances, and no other or further notice of the Motion or of the entry of this Order, is required;

4.     A reasonable opportunity to object or be heard with respect to the Motion and the relief requested has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee; (ii) the Diocese; and (iii) all creditors and interested parties that have filed a request for service of papers under Bankruptcy Rule 2002;

5.     The Diocese fails to demonstrate good cause for maintaining the confidentiality of the CVA Claims Documents under the Confidentiality Agreement;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**,

6.     The Motion is GRANTED;

7.     All objections to the Motion or the relief requested therein, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled;

8.     The CVA Claims Documents shall no longer be designated as "Confidential Information" under the Confidentiality Agreement and Recipients shall not be subject to any confidentiality or use restriction with respect to the CVA Claims Documents, including, but not limited to, the restrictions set forth in Section I ¶ 10 of the Confidentiality Agreement;[2]

9.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____ \_\_, 2023
     New York, New York

                                               Hon. Martin Glenn
                                               United States Bankruptcy Judge

---

[2] Providing, in pertinent part, that "[n]o Confidential Information may be used by any Recipient for any purpose other than with respect to the Case or any adversary proceeding related to the Case."

4883-7580-5594.2 18491.002