**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

THE ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, NEW YORK,
                              Debtor.

Chapter 11

Case No. 20-12345 (MG)

---

### DECLARATION OF KAREN B. DINE IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO SECTION 105 FOR RELIEF FROM CONFIDENTIALITY AGREEMENT AND THE DECLASSICIATION OF CERTAIN DOCUMENTS

Pursuant to 28 U.S.C. § 1746, I, Karen B. Dine, hereby submit this declaration (the "Declaration") under penalty of perjury:

1.      I am of counsel at the law firm of Pachulski Stang Ziehl & Jones LLP with an office at 780 Third Avenue, 36th Floor, New York, NY 10017.  I am duly admitted to practice law in the United States District Courts for the Southern and Eastern Districts of New York.

2.      I submit this Declaration in support of the *Motion of the Official Committee of Unsecured Creditors Pursuant to Section 105 for Relief from Confidentiality Agreement and the Declassification of Certain Documents* (the "Motion"), filed concurrently herewith.

3.      This Declaration is based upon my personal knowledge and review of the documents listed below.

4.      Attached hereto as **Exhibit A** is a true and correct copy of the November 16-December 8, 2023 email chain between and among Karen B. Dine, Brittany M. Michael, Eric P. Stephens, Todd R. Geremia, and James Stang.

5.      Attached hereto as **Exhibit B** is a true and correct copy of the letter from Christopher DiPompeo to Kenneth H. Brown and Gail S. Greenwood regarding "Consensual Preliminary Injunction of Select Cases," dated December 1, 2023.

6.      Attached hereto as **Exhibit C** is a true and correct copy of the transcript of the hearing held before the Bankruptcy Court on December 19, 2023.

Dated: January 2, 2024

/s/Karen B. Dine
Karen B. Dine, Esq.

**EXHIBIT A**

**Janice Washington**

| | |
|---|---|
| **From:** | Karen B. Dine <kdine@pszjlaw.com> |
| **Sent:** | Friday, December 8, 2023 10:31 AM |
| **To:** | Stephens, Eric P.; Geremia, Todd R. |
| **Cc:** | James Stang; Brittany M. Michael |
| **Subject:** | RE: DRVC: Dispute Notice under Protective Order |

Eric,

There is no deadline under the Confidentiality Agreement for the Committee to request the de-designation of documents.  The Committee believes that de-designation of the documents is warranted at this point given the status of the case and ongoing state court actions.   It is our understanding that now in the state court litigation, the Diocese is taking the position that it will need to undergo a new discovery process, including redactions for the CVA Claims Documents.  The cost of such an effort will either be borne by the survivors in state court or through the bankruptcy case where the survivors have already effectively paid for the Debtor to do its review and redaction of those documents.  It is the Diocese's burden ultimately to demonstrate the confidentiality of the documents, and, because the documents are already redacted, we do not believe that there is any legal justification for such documents to be considered confidential.

Far from favoring certain Committee State Court Counsel, the Committee seeks declassification precisely to enable all state court counsel access to those documents.  The CVA Claims Documents are the documents that you said are the documents that would be discoverable in the state court actions, and have already been redacted to protect survivor pii and certain protected health information (we are not seeking de-designation of protected health information at this time, but, as we stated at the time the stipulation was entered, we do not believe such information is protected and all rights are reserved with respect to any challenge of the designation of the protected health information).

As you also know, the CVA Claims Documents were produced as part of a compromise in connection with the preliminary injunction and agreement to permit the stay of state court actions against non-debtor defendants.  The Committee agreed to the stay, at least in part, because the ongoing production of the documents would limit the prejudice to the survivors from the stay of the state court actions.  The Debtor now seeks to undo the purpose of this agreement by forcing state court plaintiffs to start from the beginning and prejudice them not only by further delay but charging a second time for work already paid for once.  If that is how the process works, then no survivors would voluntarily agree to a stay of actions against non-debtor affiliates.

These materials were not produced subject to the mediation order and are not subject to any mediation privilege.

In order to preserve estate assets and minimize further expense to survivors, we ask that the Diocese reconsider its position.  We reserve our rights to seek relief from Judge Glenn on this matter.

Additionally, with respect to the investigation of the access by the state court counsel of the files in Everlaw, we can run searches that identify searches run by particular attorneys during the requested time period.  However,  on further consideration and consultation with our client, we do not think there is a legitimate basis for providing such attorney-client and work-product privilege information even in connection with an *in camera* review.  There are numerous reasons that state court counsel accessed those files in order to advise their clients on the committee including, but not limited to, evaluating the consequences to survivors from dismissal of the case or whether particular cases selected for insurance demands were appropriate in connection with the Committee's strategy in the case.  In the absence of any evidence that any other state court counsel used information from Everlaw in violation of Confidentiality Agreement, the Committee does not see any basis for disclosing the results of the Everlaw search even to Judge Glenn particularly as

the Committee believes that providing this information may implicate Pachulski Stang Ziehl and Jones's attorney-client privilege with its clients.

At the status conference, Judge Glenn requested that we see if can resolve the question of the Everlaw searches and investigation. Please let us know if you would like to meet and confer with respect to this issue.

**Karen B. Dine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7731
Tel: 212.561.7700 | Cell: 917.279.7047 | Fax: 212.561.7777
KDine@pszjlaw.com
vCard | Bio



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** Stephens, Eric P. <epstephens@jonesday.com>
**Sent:** Monday, December 4, 2023 4:48 PM
**To:** Brittany M. Michael <bmichael@pszjlaw.com>; Geremia, Todd R. <trgeremia@JonesDay.com>
**Cc:** James Stang <jstang@pszjlaw.com>; Karen B. Dine <kdine@pszjlaw.com>
**Subject:** RE: DRVC: Dispute Notice under Protective Order

Brittany, as you know, the Diocese made its final production of CVA Claim Documents to the Committee on May 31, 2022, more than 17 months ago. In that time, and indeed at no point in this more than three year old case, has the Committee raised a concern that the Diocese was incorrectly or improperly designating entire swaths of CVA Claim Documents as Confidential Information pursuant to the Protective Order. Similarly, your email below provides no factual or legal basis for the "dispute" the Committee is purporting to raise, does not set out any ground pursuant to the Protective Order or any other authority for why the Committee believes all of the CVA Claims Documents have been improperly designated as Confidential Information, does not identify any specific document the Committee believes is inappropriately designated, and does not identify any problem that would be addressed by the mass de-designation the Committee is seeking.

In light of those facts, the Diocese does not agree that the CVA Claim Documents are no longer designated Confidential Information. As the Committee knows, those documents contain survivor personally identifying information, protected health information, and other confidential material that must remain protected. Furthermore, the timing and recent events surrounding the Committee's request suggest that it is not made in good faith. Instead, it appears to be an attempt to improperly assist certain, Committee-favored, state court counsel in various actions proceeding in state court before the Regional CVA Part for the Ninth and Tenth Judicial Districts. For the avoidance of doubt, the Diocese objects to any effort to try to abuse the Protective Order and other procedures put in place in this case to foster mediation and a global resolution, as a means to override or short-circuit the state court discovery process. As the Committee would have it, though, documents that were produced to foster mediation should now be stripped of all confidentiality

protection now that the mediators have determined the mediation is concluded.  No party would enter into a mediation process if that's how things worked.

Of course, as we have throughout this case, if there are particular documents that the Committee seeks to have re- or de-designated for a particular purpose, we will consider those requests and respond on their individual merits. We are happy to meet and confer with you about any such request. As you know, the Diocese has agreed to plenty of re- and de-designation requests throughout the case and there's been no need for motion practice on these issues. And it would be wholly improper to engage in motion practice to address the sort of mass de-designation of the Diocese's bankruptcy and mediation document productions that the Committee seems to have in mind here.

Eric P. Stephens (bio)
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3916
Fax: (212) 755-7306
epstephens@jonesday.com

---

**From:** Brittany M. Michael <bmichael@pszjlaw.com>
**Sent:** Thursday, November 16, 2023 7:51 PM
**To:** Stephens, Eric P. <epstephens@jonesday.com>; Geremia, Todd R. <trgeremia@JonesDay.com>
**Cc:** James Stang <jstang@pszjlaw.com>; Karen B. Dine <kdine@pszjlaw.com>
**Subject:** DRVC: Dispute Notice under Protective Order

Eric and Todd,

This email is sent in accordance with the Confidentiality Agreement and Protective Order Between the Debtor and Official Committee of Unsecured Creditors (Docket No. 320) (the "Protective Order").  Capitalized terms used and not otherwise defined are as defined in the Protective Order.

In accordance with paragraph 3 of the Protective Order, the Committee disputes the designation of the CVA Claim Documents, as produced to the Committee, as Confidential Information and requests that such documents no longer be designated as Confidential Information.  Please let us know as soon as possible, but no later than 10 business days following this request, whether you agree that the CVA Claim Documents are no longer designated Confidential Information.

Many thanks,
Brittany

**Brittany M. Michael**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7700 | Cell: 310.488.8144
bmichael@pszjlaw.com
V-Card | Bio

Los Angeles | San Francisco | Wilmington, DE | New York | Houston

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

# Exhibit B

# JONES DAY

51 LOUISIANA AVENUE, N.W.  •  WASHINGTON, DC  20001.2113

TELEPHONE: +1.202.879.3939  •  JONESDAY.COM

DIRECT NUMBER: +1.202.879.7686
CDIPOMPEO@JONESDAY.COM

December 1, 2023

**BY EMAIL**

Kenneth H. Brown
Gail S. Greenwood
Pachulski Stang Ziehl & Jones
One Sansome Street, Ste. 3430
San Francisco, CA 94104

Re:    Consensual Preliminary Injunction of Select Cases
*In re Roman Catholic Diocese of Rockville Centre, New York*

Dear Ken and Gail:

We write regarding various cases inadvertently listed in the Order Denying the Debtor's Motion for a Preliminary Injunction [Adv. Pro. 20-01226 Docket. No. 203] (providing in Exhibit A a list of the CVA Actions no longer subject to the PI) that are being actively litigated in the Regional CVA Part for the Ninth and Tenth Judicial Districts. While Eric Stephens and Jim Stang previously corresponded about a small number of these cases in which Jones Day continues to act as state court litigation counsel, following state court conferences this week, it appears the list is materially larger than previously understood.

There are two types of impacted cases: (i) those implicating Ecclesia insurance policies; and (ii) those in which the defendants include entities that are not separately incorporated from the Diocese of Rockville Centre. As these actions have been set for individual conferences this week in the Regional CVA Part, that Court as well as plaintiff and defense counsel have asked the Diocese to confer with the Committee and report back on how these cases should be treated going forward. Pursuant to that directive, and in light of the Committee's prior expressions of concern on this issue, we seek your agreement that the cases listed below should be restored to the consensual injunction.

In connection with the preliminary injunction motion, the Committee "recognize[d] that prosecution of … claims that fall within" the insurance policies provided by Ecclesia Assurance Company, "could materially affect limits available to the Diocese," thereby implicating the automatic stay. Committee's Brief in Opp. Dkt. 170 ¶ 31, No. 20-01226-mg (Mar. 17, 2023). So the Committee did "not oppose an injunction of such State Court Actions." *Id.* The Committee also agreed that cases against the Debtor are automatically stayed, and did not seek to lift the stay as to those actions. Similarly, the Diocesan high schools (including St. Pius X Preparatory Seminary), as you know, are / were not separately incorporated but are / were Debtor entities.

AMSTERDAM  •  ATLANTA  •  BEIJING  •  BOSTON  •  BRISBANE  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS
DETROIT  •  DUBAI  •  DÜSSELDORF  •  FRANKFURT  •  HONG KONG  •  HOUSTON  •  IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID
MELBOURNE  •  MEXICO CITY  •  MIAMI  •  MILAN  •  MINNEAPOLIS  •  MUNICH  •  NEW YORK  •  PARIS  •  PERTH  •  PITTSBURGH
SAN DIEGO  •  SAN FRANCISCO  •  SÃO PAULO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

We thus seek the Committee's agreement that the following cases remain subject to the consensual injunction and/or automatic stay and should be returned to the list of enjoined cases.

Cases covered by Ecclesia Assurance Company policies:

- Index No. 900261/2021
- Index No. 900235/2021
- Index No. 900160/2021
- Index No. 951159/2021
- Index No. 900369/2021
- Index No. 614400/2021
- Index No. 900398/2021
- Index No. 951160/2021
- Index No. 900146/2021
- Index No. 900041/2021
- Index No. 610849/2021

Cases against high schools that are not separately incorporated from the Diocese:

- Index No. 900307/2021
- Index No. 900363/2021
- Index No. 900403/2021
- Index No. 900095/2021
- Index No. 900099/2021
- Index No. 900094/2021
- Index No. 900144/2021
- Index No. 900269/2021
- Index No. 900289/2021
- Index No. 900344/2021
- Index No. 900147/2021

Notably, five of these cases are stayed on independent grounds: Index No. 900358/2021, due to the death of Plaintiff; and Index Nos. 900144/2021, 900269/2021, 900289/2021, and 900344/2021, due to the Order by the Delaware Court of Chancery in the Arrowood liquidation proceedings.

Please let us know at your earliest convenience if you agree or would like to discuss this.


Sincerely,

*/s/ Christopher DiPompeo*

Christopher DiPompeo

# EXHIBIT C

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY  10004

14

15                    December 19, 2023

16                    2:01 PM

17

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

Page 2

1 HEARING re Jones Day's Ninth Interim Application for

2 Allowance of Compensation for Services Rendered and

3 Reimbursement of Actual and Necessary Expenses Incurred

4 During Retention Period from June 1, 2023 to September 30,

5 2023 for Jones Day, Debtor's Attorney, period: 6/1/2023 to

6 9/30/2023, fee:$4,613,361.75, expenses: $53,593.33.  (Doc #

7 2647, 2673, 2686, 2731)

8

9 HEARING re Ninth Interim Application of Alvarez & Marsal

10 North America, LLC for Allowance of Compensation for

11 Services Rendered and Reimbursement of Expenses Incurred as

12 Restructuring Advisor to the Debtor During the Period June 1

13 , 2023 Through September 30, 2023 for Alvarez & Marsal North

14 America , LLC , Other Professional , period : 6/1 /2023 to

15 9/30/ 2023, fee:$706, l 12.50, expenses: $13,823.51. filed

16 by Alvarez & Marsal North America, LLC . ( Doc # 2648, 2673,

17 2686, 2731)

18

19 HEARING re Ninth Application for Interim Professional

20 Compensation for Reed Smith LLP, Special Counsel, period:

21 6/1/2023 to 9/30/2023, fee:$l ,010,870.50, expenses:

22 $153,662.18. filed by Reed Smith LLP. (Doc # 2649, 2670,

23 2686, 2731)

24

25 HEARING re Ninth Application for Interim Professional

Page 3

1 Compensation for Professional Services Rendered and

2 Reimbursement of Expenses Incurred as Special Counsel to the

3 Debtor from June 1, 2023 through September 30, 2023 for

4 Nixon Peabody LLP. (Doc # 2650, 2670, 2686, 2731)

5

6 HEARING re Sixth Application for Interim Professional

7 Compensation for Services as Future Claims Representative

8 for Robert E. Gerber, Other Professional, period: 6/1/2023

9 to 9/30/2023, fee:$86,240.00, expenses: $448.41. filed by

10 Robert E. Gerber. (Doc # 2651, 2654, 2686, 2731)

11

12 HEARING re Ninth Interim Application For Allowance Of

13 Compensation And Reimbursement Of Expenses By Bums Bair LLP

14 As Special Insurance Counsel For The Period From June 1,

15 2023 Through September 30, 2023 for Bums Bowen Bair LLP,

16 Creditor Comm. Aty, period: 6/1/2023 to 9/30/2023,

17 fee:$516,604.80, expenses: $17,357.31. filed by Bums Bowen

18 Bair LLP. (Doc # 2652, 2654, 2686, 2731)

19

20 HEARING re Sixth Application for Interim Professional

21 Compensation for Services as Counsel to Future Claims

22 Representative for Joseph Hage Aaronson LLC, Other

23 Professional, period: 6/1/2023 to 9/30/2023, fee:$9,810.00,

24 expenses: $0. (Doc # 2653, 2654, 2686, 2731)

25

Page 4

1 HEARING re Informal Conference Request of the Committee re

2 Production of Documents

3

4 HEARING re Ninth Interim Application For Allowance Of

5 Compensation And Reimbursement of Expenses By Berkeley

6 Research Group, LLC As Financial Advisor For The Period From

7 June 1, 2023 Through September 30, 2023 for Berkeley

8 Research Group, LCC, Other Professional, period: 6/1/2023 to

9 9/30/2023, fee:$318,659.00, expenses: $4,230.36. filed by

10 Berkeley Research Group, LCC. (Doc No. 2661, 2685, 2686,

11 2731)

12

13 HEARING re Sixth Application for Interim Professional

14 Compensation for services rendered and reimbursement of

15 actual and necessary expenses incurred for Forchelli Deegan

16 Terrana LLP, Special Counsel, period: 6/1/2023 to 9/30/2023,

17 fee:$9,495.00, expenses: $26.65. filed by Forchelli Deegan

18 Terrana LLP. (Doc # 2663, 2686, 2731)

19

20 HEARING re Ninth Interim Application For Allowance Of

21 Compensation And Reimbursement Of Expenses By Bums Bair LLP

22 As Special Insurance Counsel For The Period From June 1,

23 2023 Through September 30, 2023 for Bums Bowen Bair LLP,

24 Creditor Comm. Aty, period: 6/1/2023 to 9/30/2023,

25 fee:$516,604.80, expenses: $17,357.31. filed by Bums Bowen

Page 5

1 Bair LLP. (Doc # 2662, 2665, 2686, 2731)

2

3 HEARING re Ninth Interim Application For Allowance Of

4 Compensation And Reimbursement Of Expenses By Pachulski

5 Stang Ziehl & Jones LLP As Counsel To The Official Committee

6 Of Unsecured Creditors For The Period From June 1, 2023

7 Through September 30, 2023 for Pachulski Stang Ziehl & Jones

8 LLP, Creditor Comm. Aty, period: 6/1/2023 to 9/30/2023,

9 fee:$3,933,595.25, expenses: $880,996.95. filed by Pachulski

10 Stang Ziehl & Jones LLP. (Doc # 2664, 2665, 2686, 2725,

11 2726, 2731)

12

13 HEARING re Ninth Application for Interim Professional

14 Compensation Quarterly Report For June 2023 through

15 September 2023 for Sitrick And Company Inc., Debtor's

16 Attorney, period: 6/1/2023 to 9/30/2023, fee:$22,244.00,

17 expenses: $0.50. (Doc # 2666, 2686, 2731)

18

19 HEARING re Amended Third Application for Interim

20 Professional Compensation for Lerman Senter PLLC, Special

21 Counsel, period: 6/1/2023 to 9/30/2023, fee:$6,247.50,

22 expenses: $0. (Doc # 2680, 2686, 2721, 2731)

23

24 HEARING re Corrected Motion Of The Official Committee Of

25 Unsecured Creditors Pursuant To Sections 105, 305 and 362 Of

2 (Pages 2 - 5)

Page 6

1  The Bankruptcy Code To Permit Proceeding With Certain State
2  Court Actions And Temporary Suspension Of The Chapter 11
3  Case. (Doc# 2677 to 2679, 2681, 2710, 2711, 2712, 2713,
4  2727, 2729, 2730)
5
6  HEARING re Adversary proceeding: 20-01226-mg The Roman
7  Catholic Diocese of Rockville Centre, Ne v. ARK 320 DOE, et
8  al. Doc# 204 Notice of Hearing /Notice of Status Conference
9  in Connection with Discovery (related document(s)59)
10
11  HEARING re Doc# 2734 Notice of Agenda / Amended Agenda for
12  Matters Scheduled for December 19, 2023 at 2:00 p.m.
13  (Prevailing Eastern Time) (related document(s)2731)
14
15  HEARING re Doc# 2736 Notice of Agenda / Second Amended
16  Agenda for Matters Scheduled for December 19, 2023 at 2:00
17  p.m. (Prevailing Eastern Time) (related document(s)2734)
18
19  HEARING re Doc# 2735 Notice of Hearing /Notice of Status
20  Conference in Connection with Discovery
21
22  HEARING re Informal Conference Request. (Doc ## 320, 794,
23  2732)
24
25  Transcribed by:  Sonya Ledanski Hyde

Page 7

1  A P P E A R A N C E S :
2
3  NIXON PEABODY LLP
4      Attorneys for Nixon Peabody LLP
5      55 W 46th St
6      New York, NY 10022
7
8  BY:  CHRIS DESIDERIO
9
10  PACHULSKI STANG ZIEHL & JONES LLP
11      Attorneys for the Committee
12      780 Third Avenue, 34th Floor
13      New York, NY 10017
14
15  BY:  KAREN DINE
16
17  JONES DAY LLP
18      Attorneys for the Debtor
19      250 Vesey Street
20      New York, NY, 10281
21
22  BY:  ERIC P. STEPHENS
23      TODD GEREMIA
24
25

Page 8

1  BURNS BAIR LLP
2      Special Insurance Attorneys for the Committee
3      10 E. Doty Street, Suite 600
4      Madison, WI 53703
5
6  BY:  JESSE BAIR
7
8  PACHULSKI STANG ZIEHL JONES LLP
9      Attorneys for the Committee
10      10100 Santa Monica Blvd., Suite 1300
11      Los Angeles, CA 90067
12
13  BY:  JAMES I. STANG
14
15  FORCHELLI DEEGAN TERRANA
16      Attorneys for the Debtors
17      333 Earie Ovington Boulevard, Suite 1010
18      Uniondale, NY 11553
19
20  BY:  GERARD R. LUCKMAN
21
22
23
24
25

Page 9

1  LERMAN SENTER PLLC
2      Attorneys for
3      2001 L Street NW, Suite 400
4      Washington, DC 20036
5
6  BY:  STEPHEN CORAN
7
8  REED SMITH LLP
9      Special Insurance Counsel to the Debtor
10      599 Lexington Avenue
11      New York, NY 10022
12
13  BY:  AARON JAVIAN
14
15  UNITED STATES DEPARTMENT OF JUSTICE
16      Attorneys for the U.S. Trustee
17      201 Varick Street, Suite 1006
18      New York, NY 10014
19
20  BY:  GREG M. ZIPES
21
22
23
24
25

3 (Pages 6 - 9)

Page 10

1  JONES DAY LLP
2     Attorneys for the Debtor
3     250 Vesey Street
4     New York, NY, 10281
5
6  BY: CORRINE BALL
7     ANDREW BUTLER
8
9  PACHULSKI STANG ZIEHL & JONES LLP
10    Attorneys for
11    780 Third Avenue, 34th Floor
12    New York, NY 10017
13
14 BY: JAMES I. STANG
15
16 PFAU COCHRAN VERTETIS AMALA PLLC
17    Attorneys for Pfau Cochran Vertetis Amala PLLC
18    403 Columbia Street, Suite 500
19    Seattle, WA 98104
20
21 BY: JASON P. AMALA
22
23
24
25

Page 11

1  ALSO PRESENT:
2
3  CHARLES MOORE
4  PAUL SHIELDS
5  ROBERT E. GERBER
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 12

1            P R O C E E D I N G S
2        THE COURT:  Please be seated.  All right.  Good
3  afternoon.  We are obviously here in the Roman Catholic
4  Diocese of Rockville Centre, 20-12345.  I have the amended
5  agenda.
6        MR. BUTLER:  Good morning, Your Honor.  Andrew
7  Butler with Jones Day for the Debtor.
8        Your Honor, we filed a second amended agenda --
9        THE COURT:  We have the second-amended agenda.
10        MR. BUTLER:  Docket Number 2736.  We apologize for
11  the late addition, Your Honor.
12        The first items set on that hearing agenda are the
13  interim fee applications.  We have two items after that,
14  both discovery items, and one of which will be handled by my
15  colleague, Mr. Stephens, and the other I believe by Ms. Dine
16  from the Pachulski firm.  And then the Committee test case
17  motion after that.
18        On the interim fee applications, Your Honor, two
19  points to begin with.  One, a global update, and then one,
20  an update for the Jones Day fee application in particular if
21  we go there next in the order of the agenda.
22        The global update -- and I'm happy for Mr. Zipes
23  to confirm this as well -- but my understanding is that Mr.
24  Zipes' office, the Office of United States Trustee, has
25  requested a ten percent continuing holdback for this fee

Page 13

1  application going forward.  And my understanding is that all
2  professionals have agreed to that consensually.  And if Mr.
3  Zipes has anything to add, I'm happy to have him do so.
4        THE COURT:  Well, Mr. Butler, we can talk about
5  this a little bit later.  But not including this fee
6  application that I have in front of me, series of fee
7  applications today, I was strongly inclined to have a 50
8  percent holdback going forward.  How long this is going
9  forward, I don't know.  But this case is in terrible shape.
10  The Debtor has quite openly said it can't afford to continue
11  on.  Fees are out of control.  And I will come to this
12  after, but I came to the bench having in mind beginning with
13  the next round of fee applications a 50 percent holdback.
14        So if you want to go ahead with the applications,
15  we can.
16        MR. BUTLER:  Thank you, Your Honor.  That was the
17  global update on the holdback and then a specific update on
18  the Jones Day fee application.
19        Your Honor, often the United States Trustee
20  reviews our applications, discusses those interim
21  applications with us.  We did that again on this round.  The
22  United States Trustee's Office raised a number of issues
23  with us.  We reviewed those issues with them, discussed
24  them, reviewed them internally, and have agreed to an
25  $18,000 consensual reduction with the Office of the United

4 (Pages 10 - 13)

Page 14

1 States Trustee for the Jones Day interim fee application.

2 That's for fees, not costs or expenses. We're thankful that

3 we're able to work that out with the Office of the United

4 States Trustee without a formal objection. I wanted to

5 recognize that and state so on the record.

6 　　　THE COURT: Mr. Zipes, if you could limit it to

7 the discussion of the Jones Day application, but I would

8 like to hear from you about your office's review of this

9 very large group of applications generally. We'll obviously

10 go through them individually. I have some questions on

11 several of them. So go ahead, Mr. Zipes, if you would.

12 　　　MR. ZIPES: Your Honor, as this Court is aware,

13 there's approximately nine interim fee applications that

14 have been filed in this case, and not for every professional

15 because some had not put in fee applications for every

16 interim --

17 　　　THE COURT: Yeah. There were some where the

18 applications were small, it was more cost-effective to hold

19 off and -- with some of them.

20 　　　MR. ZIPES: Yes. And, Your Honor, we did have

21 this discussion about the holdback. And I think that the

22 professionals are reluctantly agreeable to --

23 　　　THE COURT: I'm sure they're not agreeable to the

24 50 percent, but that's my -- well, we can talk about that

25 after.

Page 15

1 　　　MR. ZIPES: But there are statements on the

2 record, as this Court noted. There's a cash problem and

3 this case has been going on. So I don't think, Your Honor,

4 we specifically discussed going forward, but it is a topic

5 of concern.

6 　　　THE COURT: Very much.

7 　　　MR. ZIPES: Yes. And, Your Honor, we do review

8 interim fees and try to get comments, but we don't

9 necessarily have comments to every fee application for every

10 hearing. So we try to get comments as we can. And this

11 Court doesn't necessarily get the benefit of some of the

12 back and forth, and probably rightfully so. But, Your

13 Honor, we do review fee applications for the standard things

14 like vague entries and time entries that don't comply with

15 the U.S. Trustee guidelines and case precedent in this court

16 and in the circuit.

17 　　　So, Your Honor, we do reserve our rights until the

18 end of the --

19 　　　THE COURT: The end of the case, yes.

20 　　　MR. ZIPES: -- case to review legal fees and

21 professional fees generally. And in some cases, it turns

22 out that the discussion is subsumed by lack of funds in the

23 case as well. So there's a certain balance on how much to

24 review on an interim basis versus --

25 　　　THE COURT: Let me just ask you. Mr. Butler has

Page 16

1 indicated the consensual agreement of Jones Day for an

2 $18,000 reduction. Are there other applications that we're

3 going to deal with today as to which there are also

4 consensual adjustments?

5 　　　MR. ZIPES: Your Honor, there aren't any that we

6 brought to any professional's attention, but we are

7 reviewing them. And we sort of send the emails not

8 necessarily connected to specific hearings saying we looked

9 at this fee application and had X, Y, and Z issues. So

10 professionals have been getting that throughout the

11 bankruptcy case.

12 　　　THE COURT: Okay.

13 　　　MR. ZIPES: I don't know if that answers your

14 question.

15 　　　THE COURT: I think it does for now. All right.

16 Mr. Butler, so the Jones Day application sought fees of

17 $4,613,361.75 and expenses of $53,593.33.

18 　　　MR. BUTLER: Yes, Your Honor.

19 　　　THE COURT: And you've indicated that your firm

20 has agreed to an $18,000 reduction in the fees.

21 　　　MR. BUTLER: Yes, Your Honor. As well as a ten

22 percent holdback.

23 　　　MR. BUTLER: And the ten percent holdback. Does

24 anybody wish to be heard with respect to the Jones Day

25 application?

Page 17

1 All right, it is approved with those changes.

2 　　　MR. BUTLER: Thank you, Your Honor.

3 　　　THE COURT: So the next on my list, may not be the

4 same as yours, is the Alvarez & Marsal application. Is

5 there someone who is going to speak to that? I should have

6 said the Jones Day application is ECF 2647. The Alvarez

7 application is 2678.

8 　　　MR. MOORE: Good afternoon, Your Honor. Charles

9 Moore for Alvarez & Marsal.

10 　　　THE COURT: And so the application was for fees of

11 $706,112.50 and expenses of $13,823.51.

12 　　　MR. MOORE: That's correct.

13 　　　THE COURT: Just give me a second. All right.

14 Does anybody else wish to be heard with respect to the

15 Alvarez application?

16 　　　All right. It's approved subject again to the ten

17 percent holdback for this one. Okay?

18 　　　MR. MOORE: Thank you, Your Honor.

19 　　　THE COURT: Thank you very much. Next I have is

20 Reed Smith.

21 　　　MR. JAVIAN: Good afternoon, Your Honor. Aaron

22 Javian for Reed Smith, LLP. Can you hear me?

23 　　　THE COURT: Yes, I can. And the Reed Smith

24 application is ECF 2649. It seeks fees of $1,010,870.50 and

25 expenses of $22,910.93. It also seeks fees and expenses for

5 (Pages 14 - 17)

Page 18

1 Debtor's consulting expert, KCIC LLC, of $130,751.25. Go
2 ahead if you want to be heard.

3     MR. JAVIAN: That's correct, Your Honor. I don't
4 have anything else to add to that other than that I am
5 available if Your Honor has any questions about the fee
6 application.

7     THE COURT: Anybody else wish to be heard? All
8 right.

9     So both the Reed Smith application and the KCIC
10 LLC applications are approved.

11     MR. JAVIAN: Thank you, Your Honor.

12     THE COURT: All right. Next on my list is Nixon,
13 ECF 2650. And Nixon Peabody is -- their application is at
14 ECF 2650. It seeks fees of $273,698.50 and expenses of
15 $647.59. Is someone to speak to the Nixon Peabody
16 application?

17     MR. DESIDERIO: Good afternoon, Your Honor. Chris
18 Desiderio from Nixon Peabody. And that accurately reflects
19 the fee application for this period.

20     THE COURT: All right. Does anybody else wish to
21 be heard with respect to the Nixon Peabody application?

22     It's approved as well.

23     MR. DESIDERIO: Thank you, Your Honor.

24     THE COURT: Next on my list is the sixth interim
25 application of the future claims representative. It's at

Page 19

1 ECF 2651 and it seeks fees of $86,240 and expenses of
2 $448.41. Mr. Gerber?

3     MR. GERBER: Yes. That's correct, Your Honor.
4 And I rest on the motion unless the Court has questions.

5     THE COURT: Does anybody wish to be heard with
6 respect to the future claims representative application?

7     All right. It's approved.

8     Next is the sixth interim fee application of
9 Michael R. Hogan. It's at ECF 2652. Who is going to
10 present on that?

11     MR. GERBER: I'm not sure if Mr. Hogan was able to
12 get on, Your Honor. But the $7,990 that the Court mentioned
13 is the correct figure. He received no payments on account
14 of monthly fee statements that weren't large enough to
15 warrant the filing of.

16     THE COURT: Right. So this one is, as I said, at
17 ECF 2652. He is the financial advisor to the future claims
18 representative. And again, it's $7,990 in fees and no
19 expenses. Anybody wish to be heard?

20     All right. It is approved.

21     Next is the sixth interim fee application of
22 Joseph Hage Aaronson LLC. It's at ECF 2653. It seeks fees
23 of $9,810 and no expenses.

24     Mr. Gerber?

25     MR. GERBER: Yes. I will speak on the firm's

Page 20

1 behalf on that. The Court's understanding of the figures is
2 correct. And once again, I will rest on the motion unless
3 the Court has any questions.

4     THE COURT: All right. Does anybody wish to be
5 heard with respect to that application?

6     All right, it is approved as well.

7     Next is the ninth interim fee application of
8 Berkeley Research Group LLC. It's at ECF 2661 and it seeks
9 fees of $318,659 and expenses of $4,230.36. Who is going to
10 speak to that?

11     MR. SHIELDS: Good afternoon, Your Honor. This is
12 Paul Shields from Berkeley Research Group. And that does
13 accurately reflect the amount sought.

14     THE COURT: Does anybody else wish to be heard
15 with respect to the Berkeley Research? All right. It's
16 approved as well.

17     MR. SHIELDS: Thank you, Your Honor.

18     THE COURT: Thank you. Next is the sixth interim
19 fee application for Forchelli Deegan. And it's at ECF 2663
20 and it seeks fees of $9,495 and expenses of $26.65.

21     MR. LUCKMAN: Good afternoon, Your Honor. Gerard
22 Luckman, Forchelli Deegan Terrana, special counsel to the
23 Debtor. That accurately reflects the application, Your
24 Honor, unless Your Honor has any questions.

25     THE COURT: Anybody else want to be heard with

Page 21

1 respect to that?

2     All right. It is approved as well.

3     MR. LUCKMAN: Thank you, Your Honor.

4     THE COURT: Next is the ninth interim application
5 of Pachulski Stang Ziehl & Jones LLC as counsel to the
6 Committee. It's at ECF 2664 and it seeks fees of
7 $3,933,595.25 and expenses of $880,996.95. Mr. Stang?

8     MR. STANG: Good afternoon, Your Honor. James
9 Stang, Pachulski Stang Ziehl & Jones, appearing for the
10 firm.

11     THE COURT: I have an issue that -- well, first
12 let me see whether anybody else wishes to be heard with
13 respect to the Pachulski application. Mr. Zipes?

14     MR. ZIPES: Your Honor, I don't know if it's
15 appropriate at this time, but I did note that there was a
16 requirement that a letter be sent with expenses related to
17 the litigation, and that was sent to my office. I just
18 wanted to make the Court aware.

19     THE COURT: Thank you, Mr. Zipes.

20     I have -- for the most part, Mr. Stang, I don't
21 have a question except for one issue. And it involves your
22 firm and Burns Bair as well. And I will deal with that
23 issue. So I'm not giving my approval of the application
24 yet. Here's -- let me lay out this issue.

25     The Court was presented with a group of motions

6 (Pages 18 - 21)

Page 22

1   seeking to lift the automatic stay filed by certain
2   claimants for an order pursuant to 362(d) and Bankruptcy
3   Rule 4001(a) to allow the claimants to make settlement
4   demands on the diocese.  The Committee filed a joinder,
5   which is at ECF 2488.
6        I heard argument on those motions, which were
7   really carried by the committee, on October 23rd, 2023 and
8   entered an order denying the motions on October 24th, 2023.
9   Mr. Burns was the one who argue the motion here.
10       When I reviewed the fee applications from the firm
11  and Burns Bair, I tried as best I could to identify the fees
12  that were charged for the motions that -- I mean the gist of
13  the motions was seeking to compel the Diocese -- allow the
14  Claimants to provide a demand, a settlement demand for the
15  Diocese to give to the insurers.  And I would describe the
16  strategy, the motion, as concocted, misguided strategy by
17  the committee.  An absolute waste.  I denied the motion from
18  the bench.  I entered the order the next day.
19       When I asked the question what prevents you from
20  having your clients make -- having the Claimants make a
21  demand?  And the answer was nothing.  I'm still waiting to
22  see that.  I don't know.  There have been some updates as to
23  whether or not those demands have ever been made.
24       MR. STANG:  I can give you that --
25       THE COURT:  Just let me finish.  I'm venting.

Page 23

1        It was an utter, complete waste of time.  And
2   while you didn't carry the laboring -- when I say you, your
3   firm didn't carry the laboring oar on it, I tried to
4   identify what if any fees your firm was charging in
5   connection with that motion -- motions.  There were separate
6   motions filed by claimants, but the real gist of it was the
7   joinder filed by the Committee, and Mr. Burns argued that.
8        So I don't know how much responsibility you and
9   your firm bear for that, whether we charged anything in
10  connection with it.  I don't know whether you can tell me
11  offhand or not.
12       MR. STANG:  I would have the breakdown for Your
13  Honor, but we will attempt to do that.
14       THE COURT:  So I don't know, is Mr. Burns here or
15  is he on the...
16       MR. STANG:  Mr. Bair is here.
17       THE COURT:  Mr. Bair is here.  So you'll bear my
18  ire when you stand.
19       You know, whatever you may think, I think I've
20  bene pretty reserved throughout this case.  There's lots of
21  difficult issues.  This was a joke.  And in going through
22  your firm's fees, you identified $84,366.60.  That doesn't
23  include the argument, not that the argument was really
24  extensive, because the fee period cut off in September and
25  we didn't -- the argument had gotten adjourned and it got

Page 24

1   pushed so it was made in October.  So I don't think I've
2   seen the last of what you would dare put in a fee
3   application for it.
4        But I am appalled.  There are so many difficult
5   issues in this case that you've all worked so hard for.  And
6   it costs a lot of money.  That's not one of them.  It wasn't
7   even close.  So you stand there to bear the brunt of my
8   diatribe about it.  And Mr. Burns made the argument and, you
9   know, he's special insurance counsel.
10       Well, I can tell you what I'm going to do now is
11  I'm ordering the two firms to submit declarations by January
12  3rd that specifically identify the time entries and fee
13  amounts sought in connection with the motions.  And I
14  couldn't parcel it from your firm, Mr. Stang.  As best I
15  could tell form Burns Bair, it was $84,366.  It's being
16  disallowed.  I've already prepared a written order I may
17  mark up a little bit explaining what the standards are that
18  the Court is supposed to apply in reviewing fee
19  applications.
20       Mr. Stang, this obviously has been a really
21  expensive case.  On the whole I think your firm has done
22  excellent work.  And you had the misfortune of standing up
23  first to hear me vent about it.
24       MR. STANG:  Your Honor, both of us represent the
25  Committee.  So I'm not going to put this all on Mr. Bair.

Page 25

1        Our time is what it would be for the declaration.
2   But --
3        THE COURT:  Well, you're not going to charge for
4   the declaration.
5        MR. STANG:  I'm not going to sidestep answering
6   your -- or responding to what you said just because Mr. Bair
7   is special insurance counsel.
8        MR. BAIR:  And I'm happy to respond.
9        THE COURT:  Yeah, and I'm going to have you.
10       So, look, I'm not going to give final approval of
11  your fee application until I know how much of anything needs
12  to be deducted from it.  Or you could talk to Mr. Zipes if
13  there is an amount and agree on a voluntary reduction for
14  this.  And let me be clear, anything having to do with that
15  motion is coming out, is not getting approved.  And I
16  suspect because they are special insurance counsel that they
17  have -- you know, it -- Mr. Burns thought it was a great
18  motion.  Okay, I'm finished venting.
19       MR. STANG:  Your Honor, the professionals' concern
20  was that making a demand upon the Debtor -- and by the way,
21  at some point I think the Debtor said the Committee made the
22  demands.  The Committee did not make the demands.
23       THE COURT:  All right, the claimants.
24       MR. STANG:  It was state court counsel made the
25  demands.  But in speaking with them, it was part of a larger

7 (Pages 22 - 25)

Page 26

1 strategy on how to put pressure on the insurance companies.
2 We felt -- we were concerned that because the insurance
3 policies are property of the estate that putting that demand
4 on the Debtor, who we hope has communicated with its
5 carriers as to whether they're going to pay those demands
6 and if not, why not, could be a violation of the stay.
7     Now, Your Honor, I understand -- I was at the --
8 if I wasn't at the hearing, I was attending it. I heard
9 what you had to say.
10    THE COURT: You were on the screen.
11    MR. STANG: We've been reminded of your
12 characterization of the motion by Debtor's counsel. You are
13 going to see that in a slide presentation they're going to
14 put on today. But we had a legitimate concern. And you
15 didn't.
16    THE COURT: So why didn't you just come and say
17 that, Judge, we think that -- and I said it at the hearing.
18 I asked the question. I said is there anything that stops
19 you from making a demand, a settlement demand? No, of
20 course the automatic stay doesn't stop you from making a
21 settlement -- they can ignore it. They can do what they
22 want.
23    MR. STANG: They could also seek sanctions against
24 us for violating the stay.
25    THE COURT: For making a settlement demand? I

Page 27

1 don't think so.
2     MR. STANG: Well, a demand that was then going to
3 be conveyed to the carriers that could have affected
4 property of the estate given the nature of these policies.
5     THE COURT: Well, if the Debtor receives a demand,
6 I think they're obligated under the policy to pass it on to
7 the insurance company. I mean, it really isn't rocket
8 science. I've had enough to say about this.
9     MR. STANG: Okay. Your Honor, we will submit the
10 declaration and --
11    THE COURT: Let's put it this way. The sooner you
12 submit the declaration, the faster I will approve your fees.
13    MR. STANG: Given the time difference, accounting
14 will be working on it today. Thank you, Your Honor.
15    THE COURT: Okay. Your turn.
16    So the ninth interim fee application of Burns Bair
17 LLP as special insurance counsel to the Unsecured Creditors'
18 Committee. It's at ECF 2662. It seeks fees of $516,604.80
19 and expenses of $17,357.31, which reflects a reduction of
20 $1,808.80 for two flights that were incorrectly included in
21 the September invoice.
22    MR. BAIR: That's correct, Your Honor.
23    THE COURT: So make your appearance and then
24 we'll...
25    MR. BAIR: Yes, Your Honor. Jesse Bair, special

Page 28

1 insurance counsel on behalf of the Committee. And Your
2 Honor correctly reported the figures.
3     THE COURT: Well, when I -- when you say I
4 correctly reported the -- I correctly reported what your fee
5 application is. I told you my clerks and I did the best we
6 could in trying to isolate out how much you were charging
7 for the joinder. What it was a joinder. And we saw it as
8 $84,366.60. I don't know whether we missed something or put
9 something in there that we shouldn't have.
10    MR. BAIR: I don't know offhand, Your Honor. We
11 would have to take a look at that.
12    THE COURT: Okay.
13    MR. BAIR: I don't have a sense of -- that very
14 well could be accurate, Your Honor.
15    THE COURT: Well, again, the order I'm going to
16 enter is going to require that you file a declaration by
17 January 3rd (indiscernible) Debtor, but...
18    MR. BAIR: Your Honor, if I may could I have a
19 moment to lay the background of the motion?
20    THE COURT: Sure. You can.
21    MR. BAIR: And I appreciate Your Honor's ruling.
22    THE COURT: Well, I ruled on the motion right
23 away.
24    MR. BAIR: Yes.
25    THE COURT: It was the next day when I entered the

Page 29

1 order. I was gentle about it at the time. I've only had
2 steam coming out of my ears since, particularly by the fee
3 applications.
4     MR. BAIR: Thank you, Your Honor. By way of
5 background, we represent certain committees in these cases
6 around the country as special insurance counsel. And so in
7 the Rochester Diocesan bankruptcy, the Committee in that
8 case served a number of demand letters. There's one non-
9 settling insurer in that case. And so as a way to hopefully
10 move that case forward towards potentially one day a global
11 resolution, the Committee there sent a series of demand
12 letters to that insurance company. That insurance company
13 responded in part by asserting that the automatic stay
14 applied and that those letters were in violation of the stay
15 such that those demands were ineffective.
16    That issue was never brought before the Court, but
17 that was the response from the carriers. And so --
18    THE COURT: All you had to do was at one of the
19 many hearings in the case, Judge, we would like to serve a
20 demand -- or the claimants would like to serve a demand and
21 we're uncomfortable -- we had this experience in Rochester,
22 and I would have done exactly what I did when I heard the
23 motion. First, I would have asked the Debtor -- I mean,
24 they said at that hearing make a demand. You know?
25    MR. BAIR: Thank you, Your Honor.

8 (Pages 26 - 29)

Page 30

1    THE COURT:  And we wouldn't have incurred that
2  $84,000-plus in fees on a worthless motion.
3    MR. BAIR:  I appreciate that, Your Honor.  After
4  the -- unfortunately, after the Rochester events took place,
5  a decision was made in the Syracuse case to seek relief.
6  Given CNA's position in Rochester, the Committee in Syracuse
7  wanted to ensure that the demands would be effective.
8    THE COURT:  Well, but the demand you made is to
9  the Debtor, not to the insurance company.
10    MR. BAIR:  Understood.  And we actually agree with
11  Your Honor's ruling that the stay doesn't prohibit these
12  demands.  But unfortunately in Syracuse, the judge in that
13  case ruled against the Committee and held that the automatic
14  stay did apply to prohibit the demands.  And so --
15    THE COURT:  A demand on the Debtor?
16    MR. BAIR:  Correct, Your Honor.  And so we lost
17  that decision unfortunately to some of the insurance
18  carriers.
19    And so after the Syracuse decision came out -- and
20  we had dialogue with the Debtor on this -- the Debtor had
21  the view, which turned out to be correct in Your Honor's
22  opinion, that the automatic stay didn't apply.  However, as
23  the Committee, we felt we were in a position --
24    THE COURT:  All you've got to do is ask me.  And I
25  would have turned to the Debtor and said do you have an

Page 31

1  objection to serving a demand on -- some of the demands on
2  here.  You said you did that and they told you no.  So
3  instead you spent $85,000 on a motion.
4    MR. BAIR:  Obviously we will abide by Your Honor's
5  ruling.  I just wanted to inform the Court about the
6  background that informed why this occurred.
7    So after the Syracuse ruling, we felt that if we
8  made demands, the insurance carriers would take the
9  position, which they did in the motions, that those demands
10  would violate the automatic stay and, as Mr. Stang pointed
11  out, potentially seek remedies as a violation of that and/or
12  state that the demands were ineffective.
13    In the insurance company's responses to our
14  motion, which were quite voluminous -- they filed a number
15  of them -- the Syracuse decision was attached, a transcript,
16  to those decisions.  And so again, Your Honor, we were
17  pleased with your ultimate decision that allowed the state
18  court counsel to ultimately send the demand letters.
19    THE COURT:  How many demand letters have been
20  sent?  Because I had asked about this at another hearing.
21  Well, we're still kind of working on it.
22    MR. BAIR:  So of the originally 38, a number of
23  them were Arrowood cases.  And so there are 14 LMI
24  interstate demands that have been sent to date.  We thought
25  there was one more, but we have now learned that the state

Page 32

1  court lawyers were not able to connect with that client, so
2  that one is still pending.  But there are 14 that have been
3  sent.  The responses to those are to our knowledge currently
4  due either at the end of this month or early January.  We
5  don't have insight into what the Debtor has done, but we
6  assume, acting as a reasonably prudent insured, they would
7  have requested their carriers pay those demands.  And
8  obviously --
9    THE COURT:  Well, they don't want to blow their
10  coverage, so they're going to make sure that they let the
11  insurers know there's a demand.
12    MR. BAIR:  We would hope so, Your Honor.  And so
13  obviously we are respectful of Your Honor's decision.  We
14  will of course abide by that.  But I did want to provide the
15  background of the reason the Committee felt that we were
16  forced to bring the motion was the negative decision in the
17  other New York Diocesan case that we -- at least at the time
18  as the Committee did feel comfortable, you know, not seeking
19  relief given the order where we lost.  Obviously Your Honor
20  had a different view of that.  And we are grateful we were
21  able to send the demands.  We were not able to send them in
22  Syracuse.  And so that's why we filed the motion.  Your
23  Honor will give that justification whatever weight he deems
24  appropriate.
25    THE COURT:  I'm telling you, you're not getting

Page 33

1  paid for the motion.
2    MR. BAIR:  Okay, understood.
3    THE COURT:  This case obviously was before Judge
4  Chapman before it moved in front of me.  One of the things
5  I've always tried to make clear -- and we've had a number of
6  status Zoom conferences -- if you have an issue and you
7  can't -- first approach the Debtor.  And if you agree, well,
8  we'll put it in a letter.  And if you can't, you can request
9  a conference.  And I'll usually have within a day or two and
10  resolve it.  And if I heard both sides, if the Debtor took
11  the position no, they can't do this and your position was
12  you should, (indiscernible) the motion.  Okay.
13    MR. BAIR:  I don't have anything further unless
14  Your Honor has any questions.
15    THE COURT:  This is -- you know, it was a big
16  enough piece of that total fee application that was filed
17  that maybe got me on a bad day.  But it just -- it's kind of
18  been chewing at me for awhile.
19    Okay, Mr. Stang?
20    MR. STANG:  Your Honor, I just wanted to
21  supplement or emphasize something Mr. Bair said.  It would
22  be one thing where the Debtor says it's okay, we're not
23  going to assert a stay violation.  But the insurance
24  carriers said this is essentially null and void because it
25  violates the stay.

9 (Pages 30 - 33)

Page 34

1    THE COURT: Ask for a conference and we'll have a
2  quick conference and you'll get a quick answer and you won't
3  spend $85,000 writing a motion.
4    MR. STANG: I just wanted to point out this isn't
5  a two-party issue. It's a multi-party issue with insurance
6  companies who said --
7    THE COURT: I'm the judge.
8    MR. STANG: You are the judge. And we communicate
9  to you through motions. And occasionally --
10    THE COURT: Well, yes, with conferences. And
11  we've had conferences.
12    MR. STANG: I understand. I would be stunned and
13  surprised --
14    THE COURT: I do conferences -- everybody should
15  know, I think other than one session where everyone agreed,
16  the U.S. Trustee was here and we had an off-the-record
17  discussion at some point. But otherwise, everything else is
18  on the record. That's my typical...
19    MR. STANG: I would be loath to speculate whether
20  the insurance carriers would ask you for permission to brief
21  the issue of whether that demand was enforceable when the
22  Debtor communicated it to them without stay relief. But
23  Your Honor --
24    THE COURT: Look, as you know, I wasn't a
25  bankruptcy lawyer. But I did practice law for 34 years as a

Page 35

1  litigator and I actually spent -- it wasn't the majority of
2  my time, but was involved in insurance coverage litigation,
3  and usually on the side of the insurers. So I am not a
4  total neophyte when it comes to insurance coverage issues.
5  Enough said on the subject.
6    MR. STANG: Okay. Thank you, Your Honor.
7    MR. BAIR: Anything further, Your Honor?
8    THE COURT: No.
9    MR. BAIR: Thank you.
10    THE COURT: Next is the sixth interim fee
11  application of Forchelli Deegan Terrana LLP. It's at ECF
12  2663. It's application fees of $9,495 and expenses of
13  $26.65. Is there a representative of the firm?
14    MR. BUTLER: Your Honor, Andrew Butler with Jones
15  Day for the Debtor. I believe Mr. Luckman already addressed
16  this with Your Honor.
17    THE COURT: Yeah. It was -- it's approved. It's
18  approved. Let me get back to where I was.
19    Mr. Stang, from my notes just to come back to -- I
20  don't know whether your firm has fees. What raised
21  questions for me is I didn't know whether it is included in
22  this category. You have a summary of hours and fees
23  organized by task. And for insurance litigation it was
24  $111,980.50. (indiscernible) insurance litigation not
25  involving this. I didn't know whether anything relating to

Page 36

1  the subject we just finished discussing is sort of embedded
2  in that or not.
3    MR. STANG: Your Honor, we will review the bill in
4  total and not just the category that might have encompassed
5  it.
6    THE COURT: Mr. Zipes, did you have any issues
7  about the Pachulski Stang application?
8    MR. ZIPES: Your Honor, my office is frankly still
9  reviewing this one and the -- we are going to offer comments
10  not necessarily in conjunction with this fee hearing. So as
11  everything is (indiscernible).
12    THE COURT: Okay. All right. So I've asked all
13  my questions on it. I'll wait to see what your response is
14  on this. Okay.
15    Next is Sitrick and Company. The application is
16  at ECF 2666. Fees of $22,244 and 50 cents in expenses. I
17  don't even need to hear this, but it's approved.
18    Last is the amended third interim application of
19  Lerman Senter PLLC. It's at ECF 2721. It seeks fees of
20  $4,141, no expenses.
21    Is there someone from the firm in attendance?
22    MR. CORAN: Yes, Your Honor. Steven Coran here
23  for Lerman Senter.
24    THE COURT: Okay. It's a small amount in the
25  scheme of things, but I want to remind you to use project

Page 37

1  billing categories as required by the Southern District
2  amended guidelines. Okay. I'm approving it.
3    MR. CORAN: Thank you.
4    THE COURT: All right. That concludes the fee
5  applications.
6    All right, Mr. Butler, are you running the show
7  today or one of your colleagues?
8    MR. BUTLER: Thank you, Your Honor. Nothing
9  further for the fee applications. I believe Mr. Stephens
10  will be addressing the discovery items.
11    THE COURT: Okay. Mr. Stephens? Sure.
12    MR. STEPHENS: Good afternoon, Your Honor. Eric
13  Stephens of Jones Day on behalf of the Debtor. Very
14  briefly, Your Honor.
15    You will recall that at the last conference and
16  hearing on this matter on November 28th, the Court directed
17  that there be an examination of the Everlaw database in
18  connection with breaches of protective order.
19    Following that directive, we have met and
20  conferred with the Committee and they have informed us that
21  they do not intend to comply with that directive even to
22  provide the Court with reports of Everlaw activity in-
23  camera. We would simply ask that they comply with the
24  Court's directive at the last hearing.
25    THE COURT: And I read -- Mr. Amala, I see him on

10 (Pages 34 - 37)

Page 38

1 the screen. I read his declaration. I guess I saw it
2 today. I don't know if it was filed today. Do you have
3 more issues with Mr. Amala?
4          MR. STEPHENS: I think, Your Honor, the
5 declaration itself doesn't address the conduct that we
6 raised with him. It doesn't mention state court litigation
7 or the subpoena.
8          THE COURT: Sure it does.
9          MR. STEPHENS: I didn't see references to the
10 state court subpoena or state court litigation in the
11 declaration. But we are not seeking any amended
12 declaration.
13         THE COURT: Okay. Mr. Amala, do you want to be
14 heard?
15         MR. AMALA: I don't, Your Honor, other than I
16 would be there in-person, Your Honor, if this was filed on
17 Friday. So apologies I am not there in-person. And I also
18 don't know if I look as weird on your screen as I look on
19 mine. I don't know why that's happening. But anyways, I
20 apologize I'm not there in person, Your Honor, even though I
21 don't have anything to offer. I would have been there in-
22 person. Thank you.
23         THE COURT: Anything you want to add to what's in
24 your declaration?
25         MR. AMALA: I don't, Your Honor.

Page 39

1          THE COURT: Okay. Does somebody from the
2 committee want to address the issue about providing the logs
3 for in-camera review?
4          MR. STANG: Thank you, Your Honor. James Stang,
5 Pachulski Stang Ziehl & Jones for the Committee.
6          Your Honor, at the hearing, we were caught --
7 caught is not the right word. We didn't expect that
8 discussion regarding Everlaw. And the comments that we
9 made, I hope you'll consider that it was kind of on the fly.
10 But we went back and thought about and studied what rights
11 people had under the confidentiality agreement, which is at
12 Docket Number 320.
13         And reading that carefully, Paragraph 6 and
14 Paragraph 10 of the confidentiality order provide for what
15 the Debtor is allowed to see in the context of the Everlaw
16 reports and what the remedies are if there has been an
17 impermissible use of the information. And specifically
18 Paragraph 6 of the order says that the Diocese -- that any
19 information that is conveyed to the Diocese should not track
20 or record the access of confidential information or
21 otherwise notify the Debtor or any other party that a
22 recipient has accessed confidential information from the
23 Everlaw format. It doesn't say Everlaw format, it says from
24 such format.
25         And then Paragraph 10 spells out what the remedy

Page 40

1 is, which is that if there's a use that was not permitted or
2 not contemplated, that the Committee will assist the Diocese
3 in remedying such use or disclosure, which we think has been
4 addressed as to Mr. Amala.
5          We don't believe that the reports that the Debtor
6 has asked for are permissible under the order. Because what
7 they're looking for, without any even smoke, is to find out
8 if state court counsel has violated the terms of the
9 confidentiality agreement.
10         THE COURT: I didn't see this in any writing that
11 you filed with the Court to explain why you say they're not
12 supposed to be able to -- did you?
13         MR. STANG: No, Your Honor.
14         THE COURT: That's the usual way one responds, is
15 by -- it could have been a very short pleading that just
16 recited -- I would have gone back and I would have looked --
17 confirmed that the confidentiality order has the language
18 you've read to me.
19         MR. STANG: Your Honor, we -- if you want us to,
20 we will do that.
21         THE COURT: I want this to go away.
22         MR. STANG: I want it to go away too. Because,
23 frankly, I don't know if there's any there there, and the
24 Debtor has not shown us if there's any there there except
25 for Mr. Amala, who has made the offers he has made to you in

Page 41

1 his declaration.
2          THE COURT: Let me ask this. Did you call Mr.
3 Stephens and say here's the language in the confidentiality
4 order, we don't believe you are entitled to receive it under
5 these circumstances. Did you do that?
6          MR. STANG: Your Honor, I'm going to have to turn
7 to -- I personally did not.
8          THE COURT: Did anybody?
9          MR. STANG: I do not know that Ms. Dine or Ms.
10 Michael did that.
11         MS. DINE: Your Honor, Karen Dine, Pachulski Stang
12 Ziehl & Jones. We did send a note. Mr. Stephens I believe
13 attached it to the letter in which we explained why we did
14 not think that doing the Everlaw searches was a reasonable
15 request. I don't know that we cite it in there, that
16 paragraph. And I know we mentioned it this morning when we
17 had a meet and confer on the next conference issue with Mr.
18 Stephens. But I don't think in our response to them to the
19 Debtor to let them know that we did not think that the
20 searches were appropriate, that we specifically referenced
21 that portion of the confidentiality agreement. But I should
22 say we did raise it with them, and as you heard, they
23 believe that we should go forward. And they were
24 considering making a motion for a protective order, but they
25 asked for this conference.

11 (Pages 38 - 41)

Page 42

1     MR. STANG:  Your Honor, to be frank, one of our
2  colleagues went back over the last couple of days and really
3  reread the confidentiality order and saw the two provisions
4  that I quoted to you.  But we did tell the Debtor that we
5  thought that the disclosures they wanted would violate work
6  product privilege and potentially the attorney-client
7  privilege.  That was communicated to them.  But this part
8  about the two provisions is something that one of my
9  colleagues -- who was involved with the preliminary
10  injunction hearing just as an aside -- went back and really
11  read it.  And she said, look, there are these two provisions
12  in here.  And so we had not raised it with them before.
13     THE COURT:  Okay.
14     MR. STANG:  But I guess, Your Honor, having been
15  through my share of did you violate court order proceedings
16  and especially regarding confidential information, Mr. Amala
17  has taken responsibility for what he did.  He has been very
18  clear in his declaration that he has no knowledge of other
19  state court counsel doing this.  I have -- we have no
20  knowledge that state court counsel misused the information.
21     THE COURT:  We're not going off on a detour
22  (indiscernible).
23     MR. STANG:  I understand.  And if the Debtor --
24  you know what?  I'm going to just leave it at that.
25     THE COURT:  Leave it at that.  Mr. Stephens?

Page 43

1     MR. STEPHENS:  Just very briefly, Your Honor.
2     The first time that the Committee raised Paragraph
3  6 of the protective order was in a meet and confer with me
4  this morning.  I think it's very clear when you read that
5  paragraph, it talks about the mechanism in which the Debtor
6  will produce and provide the documents.  And it was that we
7  could not set up a database that allowed us to snoop on them
8  as they reviewed the documents.  It does not say that in the
9  event that there are violations of the protective order --
10     THE COURT:  All right.  That's enough.  I'm
11  satisfied with Mr. Amala's declaration and his presentation
12  at the last hearing.  This matter is closed.
13     MR. STEPHENS:  Thank you, Your Honor.
14     THE COURT:  What's the discovery issue that you
15  wanted to raise?
16     MS. DINE:  Your Honor, Karen Dine, Pachulski Stang
17  Ziehl & Jones, on behalf of the Committee.
18     As mentioned in the letter requesting the
19  conference to Your Honor, we had learned last Friday that in
20  state court, which we had been understood to say that the
21  debtor had produced new what we'll call CVA claim documents.
22  And naturally given that those were documents to be produced
23  to the Committee in this proceeding, we were concerned about
24  the discovery of new information.
25     Since submitting that letter, we did have a meet

Page 44

1  and confer with Mr. Stephens and Mr. Butler from Jones Day
2  and they explained what the issue was.  It has to do with
3  documents that were provided in response to the original
4  request in the bankruptcy case that were actually provide in
5  a non-redacted form as oppose to the redacted.  And what
6  they were referring to in the court proceeding were
7  materials that were now newly had to be redacted and not new
8  what we'll call CVA claim documents.
9     Mr. Stephens also explained to us what situations
10  might occur in terms of whether certain John Does might be
11  identified, which would lead to the discovery of new CVA
12  claim documents.  We had a very productive discussion about
13  the Debtor will share with us the information they are
14  producing in the state courts so that we can continue to
15  keep an eye on this issue from our perspective.  And they
16  will also be providing us with the Bates numbers for the
17  documents that were produced only in the unredacted form as
18  opposed to a redacted form.  So we think that, at least for
19  now, that that resolve the issue.  And we appreciate your
20  Honor setting it for conference, but we appreciate the
21  Debtor making time in advance of this hearing so we could
22  meet and confer on the issue.
23     Your Honor, if I may?
24     THE COURT:  Go ahead, Ms. Dine.
25     MS. DINE:  I promised Mr. Stephens that I would

Page 45

1  actually also add that they have made clear to us that they
2  have not at this point found any new CVA documents, and
3  that's their position.
4     THE COURT:  Okay.  Mr. Stephens, anything you
5  wanted to...
6     MR. STEPHENS:  No thank you, Your Honor.
7     THE COURT:  Let's move on on the agenda then, on
8  to contested matters.  Committee's motion to proceed with
9  certain state court actions and temporarily suspend the
10  Chapter 11 case.
11     MR. STANG:  Good afternoon.  Pachulski Stang Ziehl
12  & Jones for the Committee.
13     Your Honor, the Committee filed the motion for two
14  purposes.  One was that we hoped -- we hoped that the test
15  cases can serve to breach an impasse that is between the
16  committee and state court counsel on the one hand and the
17  Debtors, the Debtor's affiliates, and perhaps as importantly
18  or maybe more importantly, the insurers.
19     You have time and time again urged all of us to
20  consider alternatives to dismissal.  You've been very
21  proactive that way.  And we appreciated that, to hear your
22  thoughts about how perhaps this could lead to a consensual
23  plan.
24     THE COURT:  One thing that I never said was pick
25  your strongest cases, and those are the ones that ought to

12 (Pages 42 - 45)

Page 46

1  be tried.

2      MR. STANG:  In fact, I think you told us that we

3  weren't going to get to do that.  Right?

4      THE COURT:  Of course your motion omitted that.

5  It just said we think you ought to pick our strongest cases.

6  They need to get the message.

7      MR. STANG:  We did say that.  But on two

8  occasions, both before we identified the cases, we invited

9  the diocese to tell us what cases it would like to have as

10 test cases.  And the answer was no, because they stand on

11 the position that they will only agree to test cases after

12 confirmation of a plan.  Essentially only test cases for the

13 carriers.  But not as to them because they'll have their

14 confirmation order.  And not as to their affiliates because

15 they will have whatever releases would be in the plan.

16     So, no, you didn't tell us that you would just

17 sign off on what we wanted.  But I will tell you in a few

18 moments why we picked those three cases.  It might be of

19 interest to you.

20     So at the October 23rd hearing when you suggested

21 test cases, we listened.  And we prepared the motion on the

22 basis that, well, maybe Judge Glenn has got an idea that for

23 all of the collective wisdom on this side of the podium, you

24 know, we didn't present yet.  And so that's why we filed the

25 motion.

Page 47

1      So on two occasions we asked the Debtor to

2  collaborate with us and have them pick the cases they want.

3  The first time before we identified the cases they said no.

4  And then after we identified the cases, they said no again.

5  Their no is evidenced by a plan that has to the best of our

6  knowledge absolutely no support at the state court counsel

7  level.  And without the support of the state court counsel -

8  - and we heard this maybe ad nauseum in the motion to

9  dismiss -- they are never going to hit the 75 percent that

10 they need.  And for all we know, the percentage may be

11 greater.  Even under Purdue, it might be greater.  Because

12 the 75 percent was the bare minimum.  And there may be

13 circumstances where it should even be higher.  But even at

14 75 percent, they're not going to make it with their plan.

15     So they have taken the position of no, we are

16 simply not going to discuss test cases with you.  Not here

17 are a couple that we think evidence the weaknesses of the

18 cases and we have to then struggle with whether we would

19 tolerate that.

20     THE COURT:  Let me ask you a question.  I

21 recognize you're not state court counsel.  But are there any

22 more developments to report before Judge Steinman, who has

23 indicated his desire to go ahead with -- is it four trials?

24     MR. STANG:  Your Honor, I don't attend his status

25 conferences.  My understanding is he is still pursuing and

Page 48

1  pressuring people to move forward quickly with trials.  I

2  know Mr. Stephens and me spoke this morning about some of

3  the things that he was doing -- he meaning Justice Steinman

4  -- regarding case management orders or form, discovery

5  objections and that sort of thing.

6      But in terms of identifying additional cases, I

7  don't know if other state court counsel are still on the

8  phone.  By the way, Mr. Amala has dropped out of that

9  process because he has an Arrowood --

10     THE COURT:  He has Arrowood cases.

11     MR. STANG:  But if Mr. Stoneking is on, and I saw

12 Mr. Anderson appear, he might be able to give you a better

13 idea of what's actually going on, wherever over there is, in

14 the other courthouse.

15     THE COURT:  I didn't contemplate these trials were

16 going to occur in federal court, they were going to occur in

17 state court.  And Justice Steinman -- I reported I have not

18 spoken to him since the last hearing.  Whatever

19 conversations I've had with Justice Steinman I have reported

20 on the record.  But he's going to be the one to agree, okay,

21 those are the four or the six cases that we'll try.  Not me.

22 I've tried to provide some general guidance and thoughts.  I

23 mean, I thought that the opposition that Jones Day filed

24 missed the mark in a lot of respects.  The notion that

25 personal injury cases don't get tried as bellwether trials

Page 49

1  is not true.  They cite General Motors.  Judge Furman tried

2  a series of personal injury cases.  Sure, there are

3  different priests who are alleged to have committed the

4  abuse, but the basic issue is pick a group of cases of the

5  victims and try those.  Some strong cases, some not-so-

6  strong.  (indiscernible) be involved and let Justice

7  Steinman decide, okay, those are the ones we'll try.  All

8  right.  But they're not going to be tried in my court.

9      I know this is not the disclosure statement

10 hearing.  I've already spoken -- I've now read the

11 disclosure statement front to back.  This is not a

12 disclosure statement hearing.  I don't know whether the

13 Debtor plans to file an amended disclosure statement before

14 January -- what is it, 14th or 16th?

15     MR. STANG:  19th.  16th or 19th.

16     THE COURT:  It's one of those dates.  Yeah.

17     Doesn't disclose anything about the finances of

18 the parishes.  What it says is we have given the Committee

19 information under a protective order.  If they want to stand

20 on the disclosure statement, we'll go forward on -- they'd

21 better not file something three days before the hearing and

22 expect that the hearing is going forward.

23     They put a toggle in their plan, but they haven't

24 said what happens if Judge Glenn denies the motion to

25 approve the disclosure statement.  Okay.

13 (Pages 46 - 49)

Page 50

1    Look, I tried to think -- and you all are better
2    at doing this than I am I'm sure -- are there ways to sort
3    of break the ice to move this case forward that has any hope
4    of moving forward. I came up with the test case, bellwether
5    case approach. Get some data points for what these cases
6    are -- you know, what juries are going to value these cases.
7    I could certainly -- nothing in the -- the
8    disclosure statement gives the aggregate number of abuse
9    claims that have been filed. It gives the number when the
10   Court has sustained objections without leave to amend. It's
11   giving some projections. And again, you know, I looked at
12   it this morning. I'm just pulling it out of my head. You
13   know, whether it's going to be 500 or 450 claims that they
14   think are viable and they think they're going to confirm a
15   plan that only gives survivors $100,000 and rights to
16   insurance. Without saying how many claims -- 135 parishes
17   and other related parties.
18   You've all told me in the past there are some
19   parishes with a lot of claims and some with none or a few.
20   If I were a state court plaintiff with no issues about
21   notice or anything and it was against a parish that only had
22   two or three claims and assets worth $10 million, $20
23   million, I could understand they would be leery about voting
24   in favor of a plan.
25   The disclosure statement suggests $400,000 average

Page 51

1    per claimant plus insurance.
2    Is it enough information for a survivor to decide
3    whether to vote in favor of the plan when they have no idea
4    how many claims against the priest or the parish, where
5    their claim lies, and what are the assets in that parish.
6    I'm sure I will hear this when I get to the disclosure
7    statement hearing. I'm not deciding it now. I have
8    questions about it. Okay?
9    They have a nice little picture chart and colors
10   with -- this was greater recovery than most of the diocese
11   cases that have been resolved before. You know, but Justice
12   Steinman tried six cases and three of them resulted in $10
13   million verdicts and three of them -- you know, two of them
14   washed out completely and one miniscule damages. You know,
15   I mean, sure, creditors would have to think about am I
16   better off with something in hand. And they'll -- you know,
17   if the disclosure statement gets approved, if it goes out
18   for a vote, the creditors will decide. But the disclosure
19   statement is going to have to have adequate information.
20   And I'm sure the Jones Day lawyers will do their best to
21   persuade me that the four corners of that disclosure
22   statement have adequate information. I have my doubts,
23   let's put it that way. I expressed that before. I thought
24   before I got on the bench today, I would make sure I had
25   read it cover to cover.

Page 52

1    MR. STANG: Your Honor, we also, since I know you
2    read everything, attached to Ms. Dine's declaration our
3    initial laundry list of issues. But I will add that when
4    that state court lawyer is advising a client other than a
5    committee member and one who is not on Judge Steinman's
6    released claim list -- because especially with Arrowood now
7    so many of them have gone away -- they have no idea what's
8    in the CVA files. There are state court counsel that
9    haven't signed the agreement that gives them access to the
10   Everlaw. But they have no idea. There is a universe of
11   claimants who will have no idea what the CVA files that have
12   been produced says about their claim, including notice
13   issues. Not a word.
14   And so as you know from -- our papers contain Ms.
15   Michaels' letter to the Debtor asking them to eliminate the
16   confidentiality designation for all the CVA documents, and
17   we have been told no.
18   We have to then move to -- I'll ask you -- I'll
19   ask the Debtor again, will you remove the confidentiality
20   designation from the CVA documents so that all survivors can
21   see the files that pertain to their case. Because we're
22   going to file a motion that -- I think we're going to file a
23   motion that does that. Because they said no to our request
24   as provided for in the various agreements and orders they
25   have regarding CVA access.

Page 53

1    So it's one thing to know about the parishes'
2    assets. That's important. And you said very clearly last
3    time without that by a parish-by-parish basis, you're not
4    approving the disclosure statement.
5    But I would add that people are also in the blind
6    about what the diocese has. And even --
7    THE COURT: Maybe I can be persuaded that I don't
8    need to know how many CVA claims against each parish or
9    diocese-related party. It seems important to me, but maybe
10   I'll be persuaded I don't need that. And not saying there
11   has to be appraisals, but something that shows what are the
12   assets of the parish or diocese-related party. So creditors
13   could make an informed assessment whether to vote in favor
14   of the plan. It doesn't get to a vote unless I am satisfied
15   that the disclosure statement provides adequate information.
16   The purpose of adequate information is to inform the
17   creditors and allow them to make an intelligent choice as to
18   whether to vote in favor of a plan. And I'm missing, you
19   know, half of the standards that the cases have set. You
20   know, that's the gist of it.
21   MR. STANG: We'll have our formal objections. But
22   in addition to what was said in the attachment to Ms. Dine's
23   declaration, which we forwarded to the Debtor very promptly.
24   There is this issue that's going to come up before you
25   regarding whether the survivors should be allowed access to

14 (Pages 50 - 53)

Page 54

1 information regarding what the Diocese knows about their
2 cases. And what's goin on in Judge Steinman's court room
3 in part is that subpoenas are being served on the Debtor as
4 a non-party. It's possible that if you grant these three
5 test cases -- and welcome to -- we've invited them twice.
6 I'll invite them a third time. Please tell us what cases
7 you want to have as test cases. But maybe those will
8 overlap. Maybe bringing -- the Debtor is named in one of
9 the lawsuits. High schools which -- and you saw some
10 correspondence back and forth about whether the actions
11 against the high schools are stayed or not. Maybe we will
12 get into that today.
13     There's one involving ecclesia that we've agreed
14 vis-á-vis the preliminary injunction should not have been on
15 the flight list. It should be back on the no-fly list. But
16 now we're asking you to give relief from the stay as to it.
17     But those survivors would be able to find out how
18 strong their cases are or weak their cases are by seeing the
19 CVA documents. Like I said, there are hundreds and hundreds
20 of people who have no access to those documents today. And
21 whether or not their counsel is signed in Everlaw against a
22 document, access document, or even if they have, if it's
23 limited --
24     THE COURT: And let me ask you this. I'm
25 obviously not deciding it today. You've met and conferred

Page 55

1 with the Debtor about the relief you suggest that you be
2 granted?
3     MR. STANG: We sent them a latter asking them.
4 They told us no.
5     THE COURT: Make a motion. File your opposition.
6     MR. STANG: So, Your Honor, I'll try to cut to the
7 chase here.
8     THE COURT: The motion that you made is denied.
9 Because making a motion is not an opportunity to negotiate
10 with me about who should pick the cases, weak cases, strong
11 cases. You filed a motion and you said let us pick the
12 strongest cases. That's how it works. Okay? That's
13 not what the purpose of bellwether trials are, test cases.
14 It's to set the data points so that potentially all -- the
15 plaintiffs and defendants can all get a sense of this is
16 kind of the -- here's a selection of cases, this is the
17 range of outcomes in those, and it should guide the
18 discussions and negotiations.
19     And, you know, in GM, it served exactly that
20 purpose. Judge Furman tried a bunch of bellwether trials.
21 Some of them settled before they actually were tried. And
22 basically all of them settled.
23     MR. STANG: Your Honor, I appreciate that
24 bellwether is in the context of sheep, so I am mixing my
25 analogies. But the horse won't eve approach the water.

Page 56

1 We've asked them twice. They have -- Ms. Ball could not
2 have been clearer with me --
3     THE COURT: So let the state court counsel tell
4 Justice Steinman these are the cases that already tried. If
5 they say, you know, we don't think there should be any more
6 or -- fine.
7     MR. STANG: But, Your Honor, those cases -- and
8 we made the decision on preliminary injunction opposition as
9 to which cases we would ask to -- which cases the opposition
10 would address and which ones it didn't.
11     But having the empty chair of the diocese in Judge
12 Steinman's courtroom is not as helpful -- it would be much
13 more helpful to have them there.
14     THE COURT: You could have moved to lift the stay.
15     MR. STANG: And how do I have a conversation about
16 data points with someone who just keeps on saying no to me.
17 And so you know what? I would have liked to have done it
18 the way you suggested. But when were told no the first --
19 when Ms. Ball stands up here and says only if there's a
20 confirmed plan, which means only as to the carriers and we
21 get told no twice, what are we supposed to do?
22     So if they want to come up and tell you the three
23 cases that they think are going have state court counsel
24 strike out, so be it. But they won't talk to us about this.
25     So I'm not -- I don't know -- we didn't know what

Page 57

1 to do except say these are our three.
2     THE COURT: So I've lost count of the number of
3 cases that the district court and Eastern District -- it's
4 like eight or nine judges now have remanded to state court.
5     MR. STANG: Well over half. And some are just
6 siting waiting -- they're waiting for a decision.
7     THE COURT: Are they all Arrowood cases or are
8 they...
9     MR. STANG: No, no. We also have the 157 -- the
10 something motion in front of the Southern District of New
11 York where they're trying to get him back that way. And so
12 it's kind of a two-pronged attack to make sure that
13 (indiscernible) removal and then the 157 motion --
14     THE COURT: And anything happen in that?
15     MR. STANG: She withdrew the reference without
16 giving us an opportunity to be heard. We briefed that
17 issue, and she's sitting on a ruling regarding whether the
18 matter should return. But Ms. Dine is standing, so...
19     MS. DINE: Your Honor, Karen Dine, Pachulski Stang
20 Ziehl & Jones on behalf of the Committee.
21     My understanding is there are about 40 cases
22 currently pending before Judge Steinman.
23     THE COURT: Non-Arrowood cases?
24     MS. DINE: Yes. That are active and ongoing is
25 what I meant to say.

15 (Pages 54 - 57)

Page 58

1     THE COURT:  And none of those include the Debtor
2  as a defendant.  Because when you move -- when you --
3     MR. STANG:  Your Honor, there are two high school
4  cases that --
5     MS. DINE:  Actually, there's -- sorry.
6     MR. STANG:  I'm sorry.  I will yield to Ms. Dine.
7     MS. DINE:  Your Honor, there are a number of
8  cases.  We know of at least two where the Debtor has taken
9  the position that those were -- that those are not
10  separately incorporated and basically doing business as.
11  And so the diocese is a defendant in those cases.  And I
12  believe that they have identified several others.  And as
13  you may have seen from the correspondence, they actually
14  recently requested that we reaffirm the stay with respect to
15  those cases.  And what we pointed out to Your Honor is at
16  least with respect to those two, the request to stay the
17  cases have actually been made by the plaintiffs in those
18  cases about six months ago.  And the debtor said, well, the
19  order says they are not stayed, that Your Honor's order on
20  the preliminary injunction says they are not stayed.  So
21  those have gone forward.  So our position is that all of
22  those allegedly DBA cases should continue to go forward,
23  although we did agree that the -- and Your Honor, I believe
24  a notice of presentment was filed today -- that there were
25  places that implicate the ecclesia insurance where we did

Page 59

1  agree that those could be restated effectively.  But that is
2  where we are.  And as Mr. Stang is saying, while those 40
3  cases are going forward, while there is some number that do
4  include the diocese -- and naturally that's the purpose of
5  the test case motion was for relief from the stay for others
6  to go forward against the Diocese.
7     MR. STANG:  Your Honor, one of our test cases
8  involves this DBA.  It was a high school that I knew
9  eventually ended up with the Department of Education.  But
10  before that happened, it was an unincorporated entity.  It
11  was Proof of Claim 960.  And it has LMI, interstate
12  insurance.  And when you add up all the available insurance,
13  we believe it's $149 million per occurrence, including
14  primary and aggregate.  There is an SIR on that one of
15  $200,000.
16     If you counted each act of abuse separately --
17  there's precedent for that -- the allegations are 8 to 13
18  instances of abuse.  So you can see these insurance numbers
19  really start to mount up.
20     And initially Mr. Lee James wrote to the Debtor --
21  I forget which counsel -- and said hey, you know, these seem
22  to be -- you're taking the position that -- are you taking
23  the position these are stayed.  I think Mr. James got the
24  notice of deposition.
25     And they wrote back and said no, no, no, they're

Page 60

1  not stayed because the preliminary injunction order said
2  these aren't stayed.  And there was a schedule and this
3  case, Mr. James' case was on the schedule.  Then --
4     THE COURT:  You all gave me a list of the cases.
5  I mean, I didn't --
6     MR. STANG:  Absolutely.  They then come back and
7  say no, they are not stayed.  And now they're saying they
8  are stayed, they should have been stayed.  Inadvertent?  I
9  don't know.  They should be stayed.
10     So after six months of Mr. James and other people
11  who have cases against those DBAs are working in Justice
12  Steinman's courthouse and moving the cases along.  Now all
13  of the sudden we think they're stayed when in correspondence
14  what you have, Mr. James was told they were not stayed.
15     So we did agree to the ecclesia.  They got moved
16  over to the no-fly list.  But that's one of the test cases
17  to bring the Debtor in -- I mean, the high schools were
18  named.  So the Debtor is there on that one.
19     The second proof of claim -- the second test case
20  has coverage -- occurrence coverage limits of $359 million.
21  The SIR on that is $600,000.  This is against Father Soave,
22  who was one of the most notorious of the abusers.  Numerous
23  times are alleged in the abuse documents.
24     So there are two LMI interstate cases.  One names
25  the debtor by name.  The other names the two high schools or

Page 61

1  a high school, which they'll tell you whether it's
2  (indiscernible) or not, because I can't keep track of what
3  their position is as of today.  And then the third one is an
4  ecclesia case, which we agreed should be off Justice
5  Steinman's list and now we're asking you to relieve it.
6  There the coverages are much less.  But it really highlights
7  why the Debtor and the affiliates need to step up and really
8  cinch their belts and do more.  There the coverage is
9  $750,000 with an SIR of 250.  And there were 30 instances of
10  abuse during the course of -- according to the proof of
11  claim.  So now the defense costs in that case do reduce the
12  750.  So those are the three cases.  We had Arrowood cases,
13  but they had to go away.
14     So like I said, Your Honor, I can't make the horse
15  drink the water.  I know you don't like what we did.  But
16  what was I supposed to do?
17     THE COURT:  So the record is clear, I haven't
18  heard the other side.  I don't need to.  Your motion was
19  filed as ECF 2767.  You asked for too much.  Your motion is
20  denied.  I'm not going to get into negotiating what the
21  scope of the relief should be.  I still think...
22     For the -- I'm just going to use this -- I'm going
23  to use 500 claimants just a number.  You know, they went
24  through the math, subtracted out the number where I had
25  expunged the claims without leave.  I still think if the

16 (Pages 58 - 61)

Page 62

1  case gets dismissed, it's going to be a really interesting
2  issue -- maybe even not so interesting -- in state court
3  whether my rulings applying federal pleading standards has
4  any preclusive effect when each of those rulings acknowledge
5  the state court uses a different pleading standard.
6        I can just say if I was a state court judge, I'd
7  say, oh, that's nice. But that's not state law. We're back
8  in state court. You can all argue about it if it gets back
9  there. Okay.
10       MR. STANG: And certainly not as to the parishes
11 or anybody who is not a debtor.
12       THE COURT: Mr. Stang, if I were one of the many
13 claimants, I would have very mixed feelings if three of them
14 were tried and they resulted in multimillion dollar verdicts
15 and they raced to collect. It's great if you were a
16 claimant who wasn't going to get their case tried for a
17 couple of years whether there's anything left to collect.
18       So I've thought all along and I've said it, I
19 think the claimants are much better off with a confirmed
20 plan. It may be they don't like the one that they've
21 proposed, but after the first few claimants hit home runs at
22 trial, the rest of the claimants are going to think is there
23 going to be anything left by the time I get to try a case?
24       MR. STANG: Your Honor, we filed the emotion to
25 dismiss out of frustration. We had hoped that the Debtor

Page 63

1  and the affiliates and the carriers would see the wisdom of
2  try to engage with us. On October -- November 1st -- I
3  think it was the 1st -- I'm sorry. In connection with the
4  dismissal motion, you talked about a consensual plan.
5        Now, there have been three cases where plans have
6  been filed by committees. Harrisburg and Guam where the
7  disclosure statements weren't even approved, and consensual
8  plans were reached in each.
9        In the Archdiocese of St. Paul Minneapolis, plans
10 went out for vote. More than 90 percent of the survivors
11 voted against the Archdiocese plan and voted for the
12 survivor plan and vice versa. And Judge -- I think it's
13 Kressel -- did not approve either. And it went back and
14 they finally reached an agreement.
15       THE COURT: So will you finally reach an
16 agreement, please?
17       MR. STANG: Your Honor, if I could even know -- if
18 I could even know whether the $200 million, which is their
19 headline number -- and I do mean headline in the pejorative
20 sense -- after all the deducts actually is a number that I
21 could even compute. But they have said -- and we wrote to
22 them and asked them in our objections to the disclosure
23 statement. We have yet to receive a response. When you say
24 it's 200 less all allowed administrative expenses, is there
25 anything left at all? I mean, the fees in this case -- you

Page 64

1  hear reports they are $80 million, $100 million. They're a
2  lot. Is that coming out of the 200? Because that's what
3  your plan says. And what about all the other deducts. So
4  if I knew a number that I could actually put a pin on --
5        THE COURT: Stop with the -- it doesn't do any
6  good making this argument to me.
7        MR. STANG: Your Honor, I've made it to them. We
8  have not received a word in response to our disclosure --
9  our first stab at a disclosure statement list of objections.
10 Not a word.
11       THE COURT: Can I ask you a question? What do you
12 do -- because I know you're involved in cases in the Fifth
13 and Ninth Circuits.
14       MR. STANG: Yes. And we had some in the Tenth.
15       THE COURT: Where third-party releases are not
16 available.
17       MR. STANG: Right.
18       THE COURT: What do you do in those cases?
19       MR. STANG: We get everyone to sign off. You
20 don't get your money unless you sign a release. We have
21 never had an objection. I've had two cases in the Tenth
22 Circuit. The Fifth Circuit, Judge Grabel has still got that
23 pending. We had Spokane --
24       THE COURT: You know she is one of my former law
25 clerks.

Page 65

1        MR. STANG: I know. Spokane. We cite to you all
2  the time. We had Spokane, Fairbanks, Jesuit. San Diego
3  dismissed voluntarily. Stockton. Not a single person held
4  back giving a release. Not one.
5        THE COURT: And what was the recovery per claimant
6  average in those cases? Yeah, well, you don't even talk
7  about that.
8        MR. STANG: It varied. And some of them overlap
9  because, for example, Spokane -- it was like a triangle.
10 Spokane, Fairbanks, and Jesuits were all Jesuit-type cases.
11 And some people collected from all three. So it's a little
12 hard to add up. But it was well north of the headline
13 number when you consider that some of these people had
14 claims against different entities because of the Jesuit
15 connection.
16       And I don't remember Gallup and -- before Judge
17 David Thuma, Gallup and Santa Fe. I don't remember the
18 numbers.
19       But, Your Honor, I've said it in pleadings, I've
20 said it to you. What got paid in another case is
21 irrelevant. It really is. The assets differ. The judge in
22 San Diego. We have a view of the Pacific when she was told
23 we were going to (indiscernible). The insurance programs
24 are different. And so I frankly think --
25       THE COURT: They're tossing in all the insurance.

17 (Pages 62 - 65)

Page 66

1      MR. STANG:  I'm sorry?

2      THE COURT:  They want to toss in all the

3  insurance.

4      MR. STANG:  Yeah.  Thank you for Arrowood.  Thank

5  you very much.  That's a big headline number.

6      THE COURT:  Well, that's -- you know, you take the

7  case as you find it.

8      MR. STANG:  You're right.  And don't tell

9  everybody you're going to make all this money when they know

10 full well that Arrowood is a very tough nut to crack.  I've

11 got insurance counsel who can't wait to tell us why there

12 are coverage defenses and why they don't have to pay --

13     THE COURT:  I'm sure you read the new case

14 yesterday.

15     MR. STANG:  Yes, I did.

16     THE COURT:  I have it sitting on my desk inside.

17     MR. STANG:  Look at the LMI opposition that they

18 filed to the test case motion.  We're not paying any defense

19 costs.  We don't have to pay anything until it's all done.

20 This is what we are facing and why we think the test cases

21 are -- and I heard you.  I know I'm not going to change your

22 mind as I'm arguing, at least I don't think I'm going to.

23     We keep on trying and we keep on getting told our

24 way or the highway.  And I know what they're going to say to

25 you; let the creditors vote.  And the answer is, you know

Page 67

1  what?  If you could even show me that you're making any

2  progress -- on two occasions this Debtor has tried to go

3  around the Committee to talk directly to the state court

4  counsel.  And one time -- we cite it to you in our papers --

5  you said, really?  You know, without the Committee?  No case

6  has ever been confirmed without Committee support in the

7  cases that I've had or any of the ones that my competitors

8  have had.  Not one.

9      And so they have -- they reached out a second time

10 recently to state court counsel again.  This time at least

11 they copied me with their letter.  I'm not aware of a single

12 law firm that has said we like your proposal.  Not one.  And

13 so -- and maybe they've got one, but they ain't getting the

14 75 percent.  Because I know the state court counsel who are

15 on the committee, and you heard them testify.  And this plan

16 is not all that much different except they put the toggle

17 on.  It's really not that much different.

18     So I can't make heads or tails of their disclosure

19 statement, either.  I can't tell who is going to get paid

20 the promised $100,000 or who is not.  Because if you're

21 litigating, you're a litigant-claimant, you don't get it.

22 Of course they get to decide who that is.

23     There's just -- when I reviewed the list of

24 objections today in preparation for the hearing, I go like,

25 wow, another page?  Another page?  There's quite a bit.

Page 68

1      THE COURT:  Let me hear from Ms. Ball.

2      MS. BALL:  Thank you, Your Honor.  And thank you

3  for denying the motion.

4      THE COURT:  It may not stay that way.  If it was a

5  real motion...

6      MS. BALL:  We hear you, Your Honor.  Just as we

7  heard you on all the points you raised again today.  But now

8  that we know you are not suspending the case, is that a...

9      THE COURT:  I am denying their motion.

10     MS. BALL:  All right.  Now that we know that --

11     THE COURT:  But imposing a 50 percent holdback.

12     MS. BALL:  I understand that.  I think we'll work

13 that out on how the $200 million is affected.  But let me

14 start with three facts that we would like to share with you.

15     And they're not known, but every single issue you

16 raised today will be known on a public basis by this time

17 tomorrow.

18     THE COURT:  You're waiting until tomorrow?  Why

19 don't you --

20     MS. BALL:  Well, if you're going to suspend the

21 case, Judge, why would we have filed it?

22     THE COURT:  Because you had confidence in your

23 position.

24     MS. BALL:  I do.  Thank you.  Thank you, Mr.

25 Geremia and Judge.  But all those facts that you talked

Page 69

1  about will be there.

2      But the second thing that I want to remind --

3      THE COURT:  By the way, if I said test cases, it

4  wouldn't necessarily mean suspend the case while that goes

5  on.  But that's a different issue.

6      MS. BALL:  Okay.  The second thing that I want to

7  draw your attention, we keep getting pillared for reaching

8  out to state court counsel.  Your Honor, in this case, as

9  will be obvious from the exhibits we file tomorrow --

10     THE COURT:  Are you filing an amended disclosure

11 statement tomorrow?

12     MS. BALL:  That will follow with the trust

13 distribution procedures as well.  We took -- and we thank --

14 actually, we thank Ms. Dine for her comments on the

15 disclosure statement and we are busily working on that.

16     But we met with at least 16 of the roughly 20

17 state court counsel in all of these cases.  And we shared

18 with each one in detail the number of cases that they had

19 against each parish and what the competition of other cases

20 were in that parish.

21     THE COURT:  Are you putting that in a disclosure

22 statement?

23     MS. BALL:  Yes, we are.  It's all going to be

24 there.  Because we've already shared it.  They all know it.

25     THE COURT:  I wish you had shared it to me before

18 (Pages 66 - 69)

Page 70

1 I spent the time going through every page.

2      MS. BALL:  Well, now you deny the motion, that

3 will be there.

4      In addition to that, Your Honor, we met with

5 counsel.  We asked them exactly the question you just asked,

6 which is what are you going to do.  Your Honor saw from the

7 disclosure statement that we filed that there are 312 cases

8 against parishes that have three or more cases.

9      And so when we met with each of these counsel, we

10 asked them, what are you going to do?  How can dismissal

11 help you at all?  They said, well, we'll have insurance.

12 Given all the complications on foreclosing on churches and

13 schools, we'll still have the insurance.  Which is what led

14 -- frankly, and I think it's a concession that the committee

15 made -- that they're looking for more money.  It's all going

16 to come from three places, Judge.  Co-defendants, which Mr.

17 Stang just spoke eloquently about with the Jesuits, they are

18 free to go after co-defendants here.  Of course, including

19 the Jesuits, the Franciscans, the Marists.  No one is

20 stopping that.  That's free.  Our claim doesn't even touch

21 that.

22      But beyond all that information and disclosure

23 that we have made already, the three places you get more

24 money are working with us to increase the borrowing against

25 Arrowood and line up against New York state with the benefit

Page 71

1 of the decision Your Honor just recognized that we got out

2 of New York Supreme on Friday night against Chubb.  Co-

3 defendants, if you want our help in trying to get them to

4 come in and put in more money, we're happy to do that.  We

5 offered that.  So insurance co-defendants and whatever we

6 can get on an Arrowood borrowing.  They don't talk to us

7 about that.  So this failure to communicate seems to

8 continue.

9      But in any event, our failure to communicate with

10 you, Your Honor, is clearly being remedied.  By this time

11 tomorrow, they will have those exhibits.  Shortly after that

12 --

13      THE COURT:  As I said, I would have appreciated

14 reading it before I spent hours and hours...

15      MS. BALL:  Well, it's not going to change that

16 much.  But it will give you the facts behind what you

17 wanted.

18      I am sorry that Your Honor went through that.  But

19 if we were -- as you know, we had homework to do, which we

20 did.  And in the face of the motion to suspend, part of our

21 homework was, well, if that happens, you shouldn't do it.

22 But if you deny the motion, it will now be there.  And my

23 apologies, Judge, that our homework, we got connected to

24 that consequence which you have now undone and that

25 information would clearly be there.

Page 72

1      So, Your Honor, the other fact it is also

2 unknown to Mr. Stang, through no fault of his own, but I can

3 tell you we are getting responses from state court counsel

4 who are waking up to the reality of what dismissal will mean

5 to them and their clients.  And I think in some respects I

6 don't know how two-thirds of the claimants in this case --

7 well, a little bit less -- almost 65 percent affected by

8 Arrowood, which means that they can't even try their cases,

9 at least for six months.  A lot of people think a lot

10 longer.  It may have caused people to seriously rethink.

11      But we are standing, there is no more from the

12 parishioners and there is no more from the diocese.  That's

13 where we are.  The other three sources remain; co-

14 defendants, insurance, and getting in the boat and rowing

15 with this.

16      THE COURT:  You say no more from the parishes.  It

17 will be interesting to see what happens if some of the

18 plaintiffs' lawyers hit it big against the parishes.  Are

19 they really going to be saying no more?

20      MS. BALL:  Well, Your Honor, aren't you assuming

21 that a parish would withstand the verdict?

22      THE COURT:  I'm sorry?

23      MS. BALL:  Aren't you assuming that a parish would

24 withstand the verdict?

25      THE COURT:  They'll get every penny they can out

Page 73

1 of a parish.

2      MS. BALL:  How?

3      THE COURT:  Well, we'll see I guess.

4      MS. BALL:  We'll see.

5      THE COURT:  Let me ask you a couple of questions.

6 You may know the answers to these.  So there are how many

7 cases in state court that have been filed?  Two-hundred-

8 and...

9      MS. BALL:  You mean overall?  No, Your Honor.

10 Including cases against the Diocese -- Mr. Stephens, correct

11 me -- but it's over 400.

12      MR. STEPHENS:  Yes.  It's approximately 450 in

13 total, Your Honor.  Roughly half of those name the Diocese

14 and are subject to the automatic stay.  And the other

15 roughly 225 were the subject of the PI hearing.

16      THE COURT:  Here's my question.  I don't know,

17 maybe there isn't anybody in this category.  Are there

18 people who filed claims in this case who did not file state

19 court actions?

20      MS. BALL:  Yes.

21      THE COURT:  And what happens if the case is

22 dismissed because the window closed on CVA?  What happens to

23 them?

24      MS. BALL:  Well, that's a very good question, Your

25 Honor.  We have asked the Committee if they've considered

19 (Pages 70 - 73)

Page 74

1 that. I don't know. But maybe they have an answer.
2        THE COURT: So you don't have an answer.
3        MS. BALL: I don't have an answer, Your Honor.
4        THE COURT: Your position is what?
5        MS. BALL: But we have pointed out to them the
6 number of pro se claimants, mostly pro se. Some with
7 lawyers as well. And we've met with individual state court
8 counsel --
9        THE COURT: How many --
10        MS. BALL: This -- we asked that.
11        THE COURT: How many people does that involve?
12 How many people filed claims in this case who do not have a
13 pending state court action?
14        MS. BALL: I am hearing directionally, Your Honor,
15 the number is somewhere in the area of 50.
16        THE COURT: In what?
17        MS. BALL: I think it's in the area of 50.
18        THE COURT: Okay.
19        MS. BALL: Fifty. But we can't -- we obviously
20 can confirm that again with the Committee.
21        THE COURT: I spent a little bit of time thinking
22 about what happens if the case gets dismissed. What are the
23 consequences of it? How many people are there who filed
24 claims in this case but don't have pending state court
25 actions? The CVA window closed. I don't know whether there

Page 75

1 is a state court doctrine that would allow them to file
2 lawsuits in state court. That was one area I thought about.
3        I also thought about what happens to the adversary
4 proceedings that have been filed here.
5        MS. BALL: Your Honor, only one remains unsettled.
6        THE COURT: That's the cemetery?
7        MS. BALL: Cemetery. And I think it will become
8 clear that we are working very hard on bringing a settlement
9 for that and have counted on it as we move forward towards a
10 plan.
11        THE COURT: What happens --
12        MS. BALL: It is dismissed --
13        THE COURT: What happens to the four district
14 court insurance coverage adversaries?
15        MS. BALL: I think if Your Honor looks at our
16 proposed order of dismissal that we attached to the motion
17 to approve our solicitation procedures, we provide that
18 those continue. Post-coverage will still be an issue.
19        THE COURT: Because I looked -- a complaint today,
20 and it alleged 1334 jurisdiction. I little there may be
21 diversity as to all of the insurers who are named, and it
22 doesn't assert diversity jurisdiction. But I did have a
23 question. What happens to those cases? Do they have to
24 start all over again? Maybe they start in New York Supreme
25 Court.

Page 76

1        MS. BALL: I think, Your Honor, that would depend
2 on whether the insurers move to dismiss for a lack of
3 jurisdiction. And we don't think they will succeed. But
4 our order at least preserve those actions.
5        THE COURT: Well, your order can say whatever it
6 wants. It doesn't mean it's necessarily the order that gets
7 entered.
8        MS. BALL: I understand, Your Honor. But that's
9 our proposal.
10        THE COURT: I just don't know whether -- I tried
11 to think through what are the consequences. I thought about
12 insurance coverage claims, I've thought about proofs of
13 claim where there's no state court action that was filed.
14        MS. BALL: Proofs of claim in Delaware on
15 Arrowood. Pursuing the New York State Security Fund as the
16 only insured that has a massive claim worth fighting them
17 on.
18        THE COURT: All right. I don't know. This is not
19 the time for it.
20        MS. BALL: Your Honor, this is -- all I wanted to
21 do was clarify that all that information -- we heard you
22 will be available. We're aiming for this time tomorrow.
23 State court counsel are talking -- oh, by the way, Your
24 Honor, the reason why we were talking to them was so they
25 would be aware of this information. They weren't.

Page 77

1        THE COURT: The only other point I would make on
2 it is as I understand it, the two mediators are willing to
3 resume.
4        MS. BALL: Well, let us think about that, Your
5 Honor. But I apologize for the length of what I said given
6 your action in denying the -- I just wanted to point out
7 those three sources, the ones that Mr. Stang identified in
8 California were made available here to the Claimants, co-
9 defendants. Have at it.
10        THE COURT: In denying Mr. Stang's motion, it is
11 in no way intended to preclude if Justice Steinman has a
12 proposal that he is going to make to counsel in the case and
13 they make another motion to lift the stay as to particular
14 actions to the extent there is a stay. What I ruled in
15 denying there motion is not at all intended to suggest that
16 such a motion wouldn't be appropriately considered and ruled
17 on.
18        MS. BALL: I understand that, Your Honor. And
19 since we've heard -- we understand Judge Steinman has
20 control over his -- I thought it's roughly 50 cases.
21 Correct? And perhaps you can address the discovery issue.
22        MR. GEREMIA: There are roughly 44 --
23        THE COURT: Identify yourself.
24        MR. GEREMIA: May it please the Court. Todd
25 Geremia from Jones day for the Debtor.

20 (Pages 74 - 77)

Page 78

1      Your Honor, there are 44 cases being actively
2  litigated before Judge Steinman that involve parishes.
3  There are a separate group of six of those that are high
4  school cases.
5      As to the 44 cases -- and you heard Mr. Stang
6  talking about the fact that they want to proceed as against
7  parishes and proceed with respect to insurers -- there is
8  that whole universe of cases that is proceeding before Judge
9  Steinman.
10      THE COURT:  None of those are Arrowood cases.
11      MR. GEREMIA:  None of those are Arrowood cases.
12  Judge Steinman has directed that any case subjected to the
13  Arrowood stay will remain stayed unless and until a
14  plaintiff brings the issue before Judge Steinman to try to
15  get that case to resume.
16      THE COURT:  Okay.
17      MR. GEREMIA:  So those cases are proceeding.  The
18  Diocese is providing non-party discovery with respect to the
19  parish cases.  We are just now in the process of working out
20  a coordinated procedure at Judge Steinman's direction to
21  arrange for a uniform set of disclosures, a uniform
22  response, and a procedure to arrange for coordinated
23  depositions of diocesan personnel.
24      One of the many reasons -- there's no point in
25  piling on test cases on top of that.  They've already got

Page 79

1  all these cases being actively litigated.
2      THE COURT:  Well, the test cases may be among
3  those.  I don't know.
4      MR. GEREMIA:  Yeah.  In fact, state counsel
5  proposed four test cases to Judge Steinman from among that
6  universe.
7      THE COURT:  And you're not -- I don't know, who is
8  representing the parishes in those cases?
9      MR. GEREMIA:  Parish have separate counsel, Mr.
10  Davie and Charles Adams.
11      THE COURT:  Did the parishes suggest that test
12  cases ought to include -- you know, if it's going to be
13  meaningful, it's going to be an array of cases, strong and
14  weak.  Because otherwise it's a meaningless exercise.
15  Meaningless exercise for those who it payday.  And I take it
16  you remain unwilling to confer with the Committee about
17  selection of any test cases.
18      MR. GEREMIA:  We do, Your Honor.  I mean, for some
19  of the reasons addressed in our papers, we don't think it's
20  appropriate in this context.
21      THE COURT:  Well, I think your opposition, which I
22  read carefully and read some of the cases cited, is not
23  well-taken.
24      MR. GEREMIA:  It's also going about it improperly.
25  You don't just leapfrog the whole process by plucking out

Page 80

1  cases and saying we're going to --
2      THE COURT:  No.  You would meet and confer and you
3  would agree that we're each going to pick two, we're each
4  going to pick three.  We think they should more or less be -
5  - you know, what the characteristics should be.  That's what
6  happened in GM.  Okay.  There was an initial flurry of
7  activity as to what happened.  But that's essentially what
8  happened.  That's what -- that's what happens when
9  bellwether or test cases are suggested.  There's a dialogue.
10  There is a selection.  They're intended to be representative
11  in some fashion or another.  But people engage in good faith
12  in discussions.  They don't just say just say no.  And
13  that's what your position is.  So we'll deal with it
14  accordingly.
15      MR. GEREMIA:  Yeah.  And we don't think there's
16  ever been a case, abuse context, where this has been an
17  appropriate mechanism.
18      THE COURT:  You know, if the case gets dismissed,
19  you're going to be in that context.  You're going to be in
20  that context.  And you're hanging on by a bare thread.  If a
21  disclosure statement gets denied and the Committee -- I'm
22  not going to sua sponte rule.  If the disclosure statement
23  gets denied and the Committee makes a motion to dismiss,
24  what I said in the last order I entered, I meant.  Okay?  It
25  seems obvious to me the committee didn't really mean it.  I

Page 81

1  questioned whether they really meant it then.  But
2  subsequent history shows they didn't really mean it.  But
3  there comes a point where they say we really meant it, Judge.
4  This has gone on too long.  You know, we put off from the
5  docket for today the motions to remand to state court in New
6  York County.  Those will come on for hearing.
7      MS. BALL:  We are aware of that, Your Honor.  I
8  rise not for two reasons.  One, I am corrected by my
9  colleagues that the number of POCs without a CVA action is
10  150 of our remaining 500.  So the issue is much larger than
11  I had initially thought.  And of course we will share that
12  list with the committee if they don't already have it.
13      Your Honor, just food for thought.  And this is
14  certainly not my area and certainly not Mr. Stang's area.
15  But to the extent that you draw a ring around cases you
16  think will make it to trial, haven't you already preselected
17  cases that aren't representative?
18      THE COURT:  No, we haven't.
19      MS. BALL:  If you just erase --
20      THE COURT:  No, I'm sorry.
21      MS. BALL:  If you just erase the notice issue,
22  Judge, if you erase it, what kind of test cases do you have?
23  You need pretrial procedure.
24      THE COURT:  So tell Justice Steinman that you want
25  noticed cases.

21 (Pages 78 - 81)

Page 82

1    MS. BALL:  Guess what we are doing, Judge Glenn?
2  That is exactly what we are doing.  Thank you.
3    THE COURT:  And produce all of your files so that
4  everybody -- all other claimants can --
5    MS. BALL:  Well, that is -- indeed, I didn't know
6  you wanted to hear about discovery.  But that is indeed
7  pending in front of Judge Steinman.
8    THE COURT:  I know.  If you can't work it out and
9  it comes here, I will decide it.
10    MS. BALL:  Well, Judge Steinman may decide it
11  when?  This coming week?
12    THE COURT:  I'll be very happy if he decides it.
13    MS. BALL:  It's before him.
14    MR. GEREMIA:  There is a process in place to
15  determine if the Diocese is going to be producing abuser-
16  specific files in each case and there will be a process
17  further to that for --
18    THE COURT:  I would be much happier if he decides
19  it than I.
20    MR. GEREMIA:  Yeah.  It's underway in state court.
21    THE COURT:  All right, Mr. Stang?
22    MR. STANG:  Your Honor, my comment wasn't just
23  about those cases about Justice Steinman, it was
24  (indiscernible).
25    Just two comments.

Page 83

1    THE COURT:  Do you have a position on what about
2  those people that filed proofs of claim that haven't filed?
3    MR. STANG:  Section 108.  They have 30 days.
4    Your Honor, we are asking you to continue the
5  disclosure statement if in fact they file it tomorrow.  I
6  wasn't quite sure I heard a commitment to that.  It sounded
7  like we were close.  But we need our full --
8    THE COURT:  It sounds like they're filing exhibits
9  to the disclosure statement.  I don't know whether they're
10  filing the disclosure -- a new disclosure statement.
11    MR. STANG:  Given the holidays and our entitlement
12  to 28 days' notice, we would ask that the disclosure
13  statement hearing be vacated because we will not have the
14  full period of time.  And you made a comment at the last
15  hearing about deadlines -- the effect of holidays.  And we
16  should be given full time and not have to deal with the
17  Christmas --
18    THE COURT:  You were the unreasonable one.
19    MR. STANG:  Sorry?
20    THE COURT:  You were the unreasonable one.
21    MR. STANG:  No, they were.
22    THE COURT:  Oh, were they?
23    MR. STANG:  I think you blamed them.  I think it
24  was shame on you.  Right, right.
25    THE COURT:  You're right.  It was shame on them.

Page 84

1  It was shame on the Debtor.  I apologize, Mr. Stang.
2    MR. STANG:  It's okay.  There will be occasions,
3  I'm sure.  We've already had them earlier today.
4    So we are asking to have that vacated.
5    THE COURT:  I'll have to see what they file.  Put
6  in a letter -- after you see it, you can -- don't file a
7  formal motion.  File a letter request.
8    MR. STANG:  Okay.  Thank you.
9    THE COURT:  First ask them and then --
10    MS. BALL:  The 28 days to the 16th is from today.
11  So we may be behind, but not by much.  And we would
12  anticipate --
13    THE COURT:  You want Mr. Stang to work on New
14  Year's Eve on your papers.
15    MS. BALL:  No.  I will notice it tomorrow.  And to
16  the extent --
17    THE COURT:  You want me to work on New Year's Eve?
18    MS. BALL:  No, I don't.  I hope all of this will
19  be filed this week, Your Honor.  That is our objective.
20    THE COURT:  I'm leaving on Friday and coming back
21  on January 2nd.
22    MS. BALL:  Well, do you want it or not?
23    THE COURT:  And I wasn't planning on reading
24  several hundred pages disclosure statement --
25    MS. BALL:  Well, you already read it.  So

Page 85

1  blackline should be very helpful.
2    THE COURT:  Thank you very much.
3    MS. BALL:  And the exhibits answer your questions.
4    THE COURT:  Thank you very much.
5    MS. BALL:  Well, Your Honor, time is money.
6    THE COURT:  Please -- well...
7    MS. BALL:  And you've just made that clear.  And
8  we painfully understand it.
9    THE COURT:  Maybe it should be a higher holdback.
10  I don't know.  In deciding when I'm going to hear it, I will
11  primarily take account of my schedule and my law clerks'
12  schedules.  Because I am not going to have us knock
13  ourselves out because you decided to file just before the
14  Christmas and New Year holiday.  So we'll see.  So talk to -
15  - let him see what you file.  Talk to Mr. Stang as to
16  whether you can agree on an adjustment schedule.  If not,
17  I'll see what happens when I see it.
18    MS. BALL:  As you said, it will be up to Your
19  Honor in the end.  And we can only recommend to you.  Thank
20  you, Your Honor.
21    THE COURT:  Mr. Stang is correct.  It was one of
22  your colleagues that I got very upset about not respecting
23  professional courtesy with respect to scheduling.  Take my -
24  -
25    MS. BALL:  Your Honor --

22 (Pages 82 - 85)

Page 86

1      THE COURT:  Use some professional courtesy to me
2  as well.  Okay?
3      MS. BALL:  He was well-intentioned and motivated
4  by what he had read in Mr. Moore's declaration about the
5  longer it takes, the less money we have.  Not to burden
6  anyone.  But it's now the 16th.  That's 28 days from today
7  or tomorrow depending on how you count.  So we are doing
8  what we can.
9      And thank you, Your Honor.  We did our homework,
10 we'll be ready.
11     THE COURT:  I want to be clear; I don't want to
12 spend my holiday break reading your papers.  Okay?  That's -
13 - I won't say any more about it now.  Okay.  We are
14 adjourned.
15     (Whereupon these proceedings were concluded at
16 3:54 PM)
17
18
19
20
21
22
23
24
25

Page 87

1          C E R T I F I C A T I O N
2
3      I, Sonya Ledanski Hyde, certified that the foregoing
4  transcript is a true and accurate record of the proceedings.
5
6  *Sonya M. Ledanski Hyde*
7
8  Sonya Ledanski Hyde
9
10
11
12
13
14
15
16
17
18
19
20  Veritext Legal Solutions
21  330 Old Country Road
22  Suite 300
23  Mineola, NY 11501
24
25  Date:  December 21, 2023

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

**[& - 2725]**                                                                    Page 1

| & | | |
|---|---|---|

**&**   2:9,13,16 5:5
  5:7,10 7:10
  10:9 17:4,9
  21:5,9 39:5
  41:12 43:17
  45:12 57:20

**0**

**0**   3:24 5:22
**0.50.**   5:17
**010,870.50**
  2:21

**1**

**1**   2:4,12 3:3,14
  4:7,22 5:6
**1,010,870.50**
  17:24
**1,808.80**   27:20
**10**   8:3 39:14,25
  50:22 51:12
**100**   64:1
**100,000**   50:15
  67:20
**10004**   1:13
**10014**   9:18
**10017**   7:13
  10:12
**10022**   7:6 9:11
**1006**   9:17
**1010**   8:17
**10100**   8:10
**10281**   7:20
  10:4
**105**   5:25
**108**   83:3

**11**   6:2 45:10
**111,980.50.**
  35:24
**11501**   87:23
**11553**   8:18
**12.50**   2:15
**12151**   87:6
**13**   59:17
**13,823.51.**   2:15
  17:11
**130,751.25.**
  18:1
**1300**   8:10
**1334**   75:20
**135**   50:16
**14**   31:23 32:2
**149**   59:13
**14th**   49:14
**150**   81:10
**153,662.18.**
  2:22
**157**   57:9,13
**16**   69:16
**16th**   49:14,15
  84:10 86:6
**17,357.31**
  27:19
**17,357.31.**   3:17
  4:25
**18,000**   13:25
  16:2,20
**19**   1:15 6:12,16
**19th**   49:15,15
**1st**   63:2,3

| 2 | | |
|---|---|---|

**20**   50:22 69:16
**20-01226**   6:6
**20-12345**   1:3
  12:4
**200**   63:18,24
  64:2 68:13
**200,000**   59:15
**2001**   9:3
**20036**   9:4
**201**   9:17
**2023**   1:15 2:4,5
  2:13,13,14,15
  3:3,3,15,15 4:7
  4:7,23,23 5:6,7
  5:14,15 6:12
  6:16 22:7,8
  87:25
**204**   6:8
**21**   87:25
**22,244**   36:16
**22,244.00**   5:16
**22,910.93.**
  17:25
**225**   73:15
**23rd**   22:7
  46:20
**2488**   22:5
**24th**   22:8
**250**   7:19 10:3
  61:9
**26.65.**   4:17
  20:20 35:13
**2647**   2:7 17:6
**2648**   2:16
**2649**   2:22
  17:24

**2650**   3:4 18:13
  18:14
**2651**   3:10 19:1
**2652**   3:18 19:9
  19:17
**2653**   3:24
  19:22
**2654**   3:10,18
  3:24
**2661**   4:10 20:8
**2662**   5:1 27:18
**2663**   4:18
  20:19 35:12
**2664**   5:10 21:6
**2665**   5:1,10
**2666**   5:17
  36:16
**2670**   2:22 3:4
**2673**   2:7,16
**2677**   6:3
**2678**   17:7
**2679**   6:3
**2680**   5:22
**2681**   6:3
**2685**   4:10
**2686**   2:7,17,23
  3:4,10,18,24
  4:10,18 5:1,10
  5:17,22
**2710**   6:3
**2711**   6:3
**2712**   6:3
**2713**   6:3
**2721**   5:22
  36:19
**2725**   5:10

**[2726 - absolute]**                                                                  Page 2

| | | | |
|---|---|---|---|
| **2726**  5:11 | **34**  34:25 | 27:18 | **84,366.60.** |
| **2727**  6:4 | **34th**  7:12 | **53,593.33.**  2:6 | 23:22 28:8 |
| **2729**  6:4 | 10:11 | 16:17 | **85,000**  31:3 |
| **273,698.50** | **359**  60:20 | **53703**  8:4 | 34:3 |
| 18:14 | **362**  5:25 22:2 | **55**  7:5 | **86,240**  19:1 |
| **2730**  6:4 | **38**  31:22 | **59**  6:9 | **86,240.00**  3:9 |
| **2731**  2:7,17,23 | **3:54**  86:16 | **599**  9:10 | **880,996.95.**  5:9 |
| 3:4,10,18,24 | **3rd**  24:12 | | 21:7 |

**2731** 4:11,18 5:1,11
5:17,22 6:13

**3rd** 28:17

**6**

**9**

| | | | |
|---|---|---|---|
| **2732**  6:23 | **4** | **6**  39:13,18 43:3 | **9,495**  20:20 |
| **2734**  6:11,17 | **4,141**  36:20 | **6,247.50**  5:21 | 35:12 |
| **2735**  6:19 | **4,230.36.**  4:9 | **6/1**  2:14 | **9,495.00**  4:17 |
| **2736**  6:15 | 20:9 | **6/1/2023**  2:5,21 | **9,810**  19:23 |
| 12:10 | **4,613,361.75** | 3:8,16,23 4:8 | **9,810.00**  3:23 |
| **2767**  61:19 | 2:6 16:17 | 4:16,24 5:8,16 | **9/30**  2:15 |
| **28**  83:12 84:10 | **40**  57:21 59:2 | 5:21 | **9/30/2023**  2:6 |
| 86:6 | **400**  9:3 73:11 | **600**  8:3 | 2:21 3:9,16,23 |
| **28th**  37:16 | **400,000**  50:25 | **600,000**  60:21 | 4:9,16,24 5:8 |
| **2:01**  1:16 | **4001**  22:3 | **647.59.**  18:15 | 5:16,21 |
| **2nd**  84:21 | **403**  10:18 | **65**  72:7 | **90**  63:10 |
| | **44**  77:22 78:1,5 | | **90067**  8:11 |

**3**

**448.41.** 3:9
19:2

**7**

**960** 59:11
**98104** 10:19

| | | | |
|---|---|---|---|
| **3,933,595.25** | **450**  50:13 | **7,990**  19:12,18 | **a** |
| 5:9 21:7 | 73:12 | **706**  2:15 | **aaron**  9:13 |
| **30**  2:4,13 3:3 | **46th**  7:5 | **706,112.50** | 17:21 |
| 3:15 4:7,23 5:7 | **5** | 17:11 | **aaronson**  3:22 |
| 61:9 83:3 | **50**  13:7,13 | **75**  47:9,12,14 | 19:22 |
| **300**  87:22 | 14:24 36:16 | 67:14 | **abide**  31:4 |
| **305**  5:25 | 68:11 74:15,17 | **750**  61:12 | 32:14 |
| **312**  70:7 | 77:20 | **750,000**  61:9 | **able**  14:3 19:11 |
| **318,659**  20:9 | **500**  10:18 | **780**  7:12 10:11 | 32:1,21,21 |
| **318,659.00**  4:9 | 50:13 61:23 | **794**  6:22 | 40:12 48:12 |
| **320**  6:7,22 | 81:10 | **8** | 54:17 |
| 39:12 | **516,604.80** | **8**  59:17 | **absolute**  22:17 |
| **330**  87:21 | 3:17 4:25 | **80**  64:1 | |
| **333**  8:17 | | **84,000**  30:2 | |
| | | **84,366**  24:15 | |

[absolutely - amended]                                              Page 3

**absolutely** 47:6
  60:6
**abuse** 49:4
  50:8 59:16,18
  60:23 61:10
  80:16
**abuser** 82:15
**abusers** 60:22
**access** 39:20
  52:9,25 53:25
  54:20,22
**accessed** 39:22
**account** 19:13
  85:11
**accounting**
  27:13
**accurate** 28:14
  87:4
**accurately**
  18:18 20:13,23
**acknowledge**
  62:4
**act** 59:16
**acting** 32:6
**action** 74:13
  76:13 77:6
  81:9
**actions** 6:2
  45:9 54:10
  73:19 74:25
  76:4 77:14
**active** 57:24
**actively** 78:1
  79:1
**activity** 37:22
  80:7

**actual** 2:3 4:15
**actually** 30:10
  35:1 44:4 45:1
  48:13 55:21
  58:5,13,17
  63:20 64:4
  69:14
**ad** 47:8
**adams** 79:10
**add** 13:3 18:4
  38:23 45:1
  52:3 53:5
  59:12 65:12
**addition** 12:11
  53:22 70:4
**additional** 48:6
**address** 38:5
  39:2 56:10
  77:21
**addressed**
  35:15 40:4
  79:19
**addressing**
  37:10
**adequate** 51:19
  51:22 53:15,16
**adjourned**
  23:25 86:14
**adjustment**
  85:16
**adjustments**
  16:4
**administrative**
  63:24
**advance** 44:21
**adversaries**
  75:14

**adversary** 6:6
  75:3
**advising** 52:4
**advisor** 2:12
  4:6 19:17
**affected** 27:3
  68:13 72:7
**affiliates** 45:17
  46:14 61:7
  63:1
**afford** 13:10
**afternoon** 12:3
  17:8,21 18:17
  20:11,21 21:8
  37:12 45:11
**agenda** 6:11,11
  6:15,16 12:5,8
  12:9,12,21
  45:7
**aggregate** 50:8
  59:14
**ago** 58:18
**agree** 25:13
  30:10 33:7
  46:11 48:20
  58:23 59:1
  60:15 80:3
  85:16
**agreeable**
  14:22,23
**agreed** 13:2,24
  16:20 34:15
  54:13 61:4
**agreement**
  16:1 39:11
  40:9 41:21
  52:9 63:14,16

**agreements**
  52:24
**ahead** 13:14
  14:11 18:2
  44:24 47:23
**aiming** 76:22
**ain't** 67:13
**al** 6:8
**allegations**
  59:17
**alleged** 49:3
  60:23 75:20
**allegedly** 58:22
**allow** 22:3,13
  53:17 75:1
**allowance** 2:2
  2:10 3:12 4:4
  4:20 5:3
**allowed** 31:17
  39:15 43:7
  53:25 63:24
**alternatives**
  45:20
**alvarez** 2:9,13
  2:16 17:4,6,9
  17:15
**amala** 10:16,17
  10:21 37:25
  38:3,13,15,25
  40:4,25 42:16
  48:8
**amala's** 43:11
**amend** 50:10
**amended** 5:19
  6:11,15 12:4,8
  12:9 36:18
  37:2 38:11

[amended - assets]                                                    Page 4

49:13 69:10
america  2:10
  2:14,16
amount  20:13
  25:13 36:24
amounts  24:13
analogies
  55:25
anderson
  48:12
andrew  10:7
  12:6 35:14
angeles  8:11
answer  22:21
  34:2 46:10
  66:25 74:1,2,3
  85:3
answering  25:5
answers  16:13
  73:6
anticipate
  84:12
anybody  16:24
  17:14 18:7,20
  19:5,19 20:4
  20:14,25 21:12
  41:8 62:11
  73:17
anyways  38:19
apologies
  38:17 71:23
apologize
  12:10 38:20
  77:5 84:1
appalled  24:4
appear  48:12

appearance
  27:23
appearing  21:9
application  2:1
  2:9,19,25 3:6
  3:12,20 4:4,13
  4:20 5:3,13,19
  12:20 13:1,6
  13:18 14:1,7
  15:9 16:9,16
  16:25 17:4,6,7
  17:10,15,24
  18:6,9,13,16
  18:19,21,25
  19:6,8,21 20:5
  20:7,19,23
  21:4,13,23
  24:3 25:11
  27:16 28:5
  33:16 35:11,12
  36:7,15,18
applications
  12:13,18 13:7
  13:13,14,20,21
  14:9,13,15,18
  15:13 16:2
  18:10 22:10
  24:19 29:3
  37:5,9
applied  29:14
apply  24:18
  30:14,22
applying  62:3
appraisals
  53:11
appreciate
  28:21 30:3

44:19,20 55:23
appreciated
  45:21 71:13
approach  33:7
  50:5 55:25
appropriate
  21:15 32:24
  41:20 79:20
  80:17
appropriately
  77:16
approval  21:23
  25:10 54:21
approve  27:12
  49:25 63:13
  75:17
approved  17:1
  17:16 18:10,22
  19:7,20 20:6
  20:16 21:2
  25:15 35:17,18
  36:17 51:17
  63:7
approving  37:2
  53:4
approximately
  14:13 73:12
archdiocese
  63:9,11
area  74:15,17
  75:2 81:14,14
aren't  16:5
  60:2 72:20,23
  81:17
argue  22:9
  62:8

argued  23:7
arguing  66:22
argument  22:6
  23:23,23,25
  24:8 64:6
ark  6:7
arrange  78:21
  78:22
array  79:13
arrowood
  31:23 48:9,10
  52:6 57:7,23
  61:12 66:4,10
  70:25 71:6
  72:8 76:15
  78:10,11,13
aside  42:10
asked  22:19
  26:18 29:23
  31:20 36:12
  40:6 41:25
  47:1 56:1
  61:19 63:22
  70:5,5,10
  73:25 74:10
asking  52:15
  54:16 55:3
  61:5 83:4 84:4
assert  33:23
  75:22
asserting  29:13
assessment
  53:13
assets  50:22
  51:5 53:2,12
  65:21

**[assist - borrowing]**

**assist**  40:2
**assume**  32:6
**assuming**
  72:20,23
**attached**  31:15
  41:13 52:2
  75:16
**attachment**
  53:22
**attack**  57:12
**attempt**  23:13
**attend**  47:24
**attendance**
  36:21
**attending**  26:8
**attention**  16:6
  69:7
**attorney**  2:5
  5:16 42:6
**attorneys**  7:4
  7:11,18 8:2,9
  8:16 9:2,16
  10:2,10,17
**aty**  3:16 4:24
  5:8
**automatic**  22:1
  26:20 29:13
  30:13,22 31:10
  73:14
**available**  18:5
  59:12 64:16
  76:22 77:8
**avenue**  7:12
  9:10 10:11
**average**  50:25
  65:6

**aware**  14:12
  21:18 67:11
  76:25 81:7
**awhile**  33:18

**b**

**b**  1:21
**back**  15:12
  35:18,19 39:10
  40:16 42:2,10
  49:11 54:10,15
  57:11 59:25
  60:6 62:7,8
  63:13 65:4
  84:20
**background**
  28:19 29:5
  31:6 32:15
**bad**  33:17
**bair**  3:13,15,18
  4:21,23 5:1 8:1
  8:6 21:22
  22:11 23:16,17
  24:15,25 25:6
  25:8 27:16,22
  27:25,25 28:10
  28:13,18,21,24
  29:4,25 30:3
  30:10,16 31:4
  31:22 32:12
  33:2,13,21
  35:7,9
**balance**  15:23
**ball**  10:6 56:1
  56:19 68:1,2,6
  68:10,12,20,24
  69:6,12,23
  70:2 71:15

  72:20,23 73:2
  73:4,9,20,24
  74:3,5,10,14
  74:17,19 75:5
  75:7,12,15
  76:1,8,14,20
  77:4,18 81:7
  81:19,21 82:1
  82:5,10,13
  84:10,15,18,22
  84:25 85:3,5,7
  85:18,25 86:3
**bankruptcy**
  1:1,11,23 6:1
  16:11 22:2
  29:7 34:25
  44:4
**bare**  47:12
  80:20
**basic**  49:4
**basically**  55:22
  58:10
**basis**  15:24
  46:22 53:3
  68:16
**bates**  44:16
**bear**  23:9,17
  24:7
**beginning**
  13:12
**behalf**  20:1
  28:1 37:13
  43:17 57:20
**believe**  12:15
  35:15 37:9
  40:5 41:4,12
  41:23 58:12,23

  59:13
**bellwether**
  48:25 50:4
  55:13,20,24
  80:9
**belts**  61:8
**bench**  13:12
  22:18 51:24
**bene**  23:20
**benefit**  15:11
  70:25
**berkeley**  4:5,7
  4:10 20:8,12
  20:15
**best**  22:11
  24:14 28:5
  47:5 51:20
**better**  48:12
  49:21 50:1
  51:16 62:19
**beyond**  70:22
**big**  33:15 66:2
  72:18
**bill**  36:3
**billing**  37:1
**bit**  13:5 24:17
  67:25 72:7
  74:21
**blackline**  85:1
**blamed**  83:23
**blind**  53:5
**blow**  32:9
**blvd**  8:10
**boat**  72:14
**borrowing**
  70:24 71:6

**boulevard**  8:17
**bowen**  3:15,17
  4:23,25
**bowling**  1:12
**breach**  45:15
**breaches**  37:18
**break**  50:3
  86:12
**breakdown**
  23:12
**brief**  34:20
**briefed**  57:16
**briefly**  37:14
  43:1
**bring**  32:16
  60:17
**bringing**  54:8
  75:8
**brings**  78:14
**brought**  16:6
  29:16
**brunt**  24:7
**bums**  3:13,15
  3:17 4:21,23
  4:25
**bunch**  55:20
**burden**  86:5
**burns**  8:1
  21:22 22:9,11
  23:7,14 24:8
  24:15 25:17
  27:16
**busily**  69:15
**business**  58:10
**butler**  10:7
  12:6,7,10 13:4
  13:16 15:25

16:16,18,21,23
17:2 35:14,14
37:6,8 44:1

**c**

**c**  7:1 12:1 87:1
  87:1
**ca**  8:11
**california**  77:8
**call**  41:2 43:21
  44:8
**camera**  37:23
  39:3
**can't**  13:10
  33:7,8,11 61:2
  61:14 66:11
  67:18,19 72:8
  74:19 82:8
**carefully**  39:13
  79:22
**carried**  22:7
**carriers**  26:5
  27:3 29:17
  30:18 31:8
  32:7 33:24
  34:20 46:13
  56:20 63:1
**carry**  23:2,3
**case**  1:3 6:3
  12:16 13:9
  14:14 15:3,15
  15:19,20,23
  16:11 23:20
  24:5,21 29:8,9
  29:10,19 30:5
  30:13 32:17
  33:3 44:4
  45:10 48:4

50:3,4,5 52:21
59:5 60:3,3,19
61:4,11 62:1
62:16,23 63:25
65:20 66:7,13
66:18 67:5
68:8,21 69:4,8
72:6 73:18,21
74:12,22,24
77:12 78:12,15
80:16,18 82:16
**cases**  15:21
  29:5 31:23
  45:15,25 46:5
  46:8,9,10,11
  46:12,18,21
  47:2,3,4,16,18
  48:6,10,21,25
  49:2,4,5 50:5,6
  51:11,12 53:19
  54:2,5,6,7,18
  54:18 55:10,10
  55:11,12,13,16
  56:4,7,9,9,23
  57:3,7,21,23
  58:4,8,11,15
  58:17,18,22
  59:3,7 60:4,11
  60:12,16,24
  61:12,12 63:5
  64:12,18,21
  65:6,10 66:20
  67:7 69:3,17
  69:18,19 70:7
  70:8 72:8 73:7
  73:10 75:23
  77:20 78:1,4,5

78:8,10,11,17
78:19,25 79:1
79:2,5,8,12,13
79:17,22 80:1
80:9 81:15,17
81:22,25 82:23
**cash**  15:2
**categories**  37:1
**category**  35:22
  36:4 73:17
**catholic**  1:7 6:7
  12:3
**caught**  39:6,7
**caused**  72:10
**cemetery**  75:6
  75:7
**centre**  1:7 6:7
  12:4
**cents**  36:16
**certain**  6:1
  15:23 22:1
  29:5 44:10
  45:9
**certainly**  50:7
  62:10 81:14,14
**certified**  87:3
**chair**  56:11
**change**  66:21
  71:15
**changes**  17:1
**chapman**  33:4
**chapter**  6:2
  45:10
**characteristics**
  80:5
**characterizat...**
  26:12

charge 25:3
charged 22:12
  23:9
charging 23:4
  28:6
charles 11:3
  17:8 79:10
chart 51:9
chase 55:7
chewing 33:18
choice 53:17
chris 7:8 18:17
christmas
  83:17 85:14
chubb 71:2
churches 70:12
cinch 61:8
circuit 15:16
  64:22,22
circuits 64:13
circumstances
  41:5 47:13
cite 41:15 49:1
  65:1 67:4
cited 79:22
claim 43:21
  44:8,12 51:5
  52:6,12 59:11
  60:19 61:11
  70:20 76:13,14
  76:16 83:2
claimant 51:1
  62:16 65:5
  67:21
claimants 22:2
  22:3,14,20
  23:6 25:23

29:20 52:11
  61:23 62:13,19
  62:21,22 72:6
  74:6 77:8 82:4
claims 3:7,21
  18:25 19:6,17
  50:9,13,16,19
  50:22 51:4
  53:8 61:25
  65:14 73:18
  74:12,24 76:12
clarify 76:21
clear 25:14
  33:5 42:18
  43:4 45:1
  61:17 75:8
  85:7 86:11
clearer 56:2
clearly 53:2
  71:10,25
clerks 28:5
  64:25
clerks' 85:11
client 32:1 42:6
  52:4
clients 22:20
  72:5
close 24:7 83:7
closed 43:12
  73:22 74:25
cna's 30:6
cochran 10:16
  10:17
code 6:1
collaborate
  47:2

colleague
  12:15
colleagues 37:7
  42:2,9 81:9
  85:22
collect 62:15
  62:17
collected 65:11
collective
  46:23
colors 51:9
columbia
  10:18
come 13:11
  26:16 35:19
  53:24 56:22
  60:6 70:16
  71:4 81:6
comes 35:4
  81:3 82:9
comfortable
  32:18
coming 25:15
  29:2 64:2
  82:11 84:20
comm 3:16
  4:24 5:8
comment
  82:22 83:14
comments 15:8
  15:9,10 36:9
  39:8 69:14
  82:25
commitment
  83:6
committed
  49:3

committee 4:1
  5:5,24 7:11 8:2
  8:9 12:16 21:6
  22:4,7,17 23:7
  24:25 25:21,22
  27:18 28:1
  29:7,11 30:6
  30:13,23 32:15
  32:18 37:20
  39:2,5 40:2
  43:2,17,23
  45:12,13,16
  49:18 52:5
  57:20 67:3,5,6
  67:15 70:14
  73:25 74:20
  79:16 80:21,23
  80:25 81:12
committees
  29:5 63:6
committee's
  45:8
communicate
  34:8 71:7,9
communicated
  26:4 34:22
  42:7
companies
  26:1 34:6
company 5:15
  27:7 29:12,12
  30:9 36:15
company's
  31:13
compel 22:13
compensation
  2:2,10,20 3:1,7

[compensation - counsel]                                                    Page 8

3:13,21 4:5,14
4:21 5:4,14,20
**competition**
69:19
**competitors**
67:7
**complaint**
75:19
**complete** 23:1
**completely**
51:14
**complications**
70:12
**comply** 15:14
37:21,23
**compute** 63:21
**concern** 15:5
25:19 26:14
**concerned** 26:2
43:23
**concession**
70:14
**concluded**
86:15
**concludes** 37:4
**concocted**
22:16
**conduct** 38:5
**confer** 41:17
43:3 44:1,22
79:16 80:2
**conference** 4:1
6:8,20,22 33:9
34:1,2 37:15
41:17,25 43:19
44:20

**conferences**
33:6 34:10,11
34:14 47:25
**conferred**
37:20 54:25
**confidence**
68:22
**confidential**
39:20,22 42:16
**confidentiality**
39:11,14 40:9
40:17 41:3,21
42:3 52:16,19
**confirm** 12:23
50:14 74:20
**confirmation**
46:12,14
**confirmed**
40:17 56:20
62:19 67:6
**conjunction**
36:10
**connect** 32:1
**connected** 16:8
71:23
**connection** 6:9
6:20 23:5,10
24:13 37:18
63:3 65:15
**consensual**
13:25 16:1,4
45:22 63:4,7
**consensually**
13:2
**consequence**
71:24

**consequences**
74:23 76:11
**consider** 39:9
45:20 65:13
**considered**
73:25 77:16
**considering**
41:24
**consulting** 18:1
**contain** 52:14
**contemplate**
48:15
**contemplated**
40:2
**contested** 45:8
**context** 39:15
55:24 79:20
80:16,19,20
**continue** 13:10
44:14 58:22
71:8 75:18
83:4
**continuing**
12:25
**control** 13:11
77:20
**conversation**
56:15
**conversations**
48:19
**conveyed** 27:3
39:19
**coordinated**
78:20,22
**copied** 67:11
**coran** 9:6
36:22,22 37:3

**corners** 51:21
**correct** 17:12
18:3 19:3,13
20:2 27:22
30:16,21 73:10
77:21 85:21
**corrected** 5:24
81:8
**correctly** 28:2
28:4,4
**corresponde...**
54:10 58:13
60:13
**corrine** 10:6
**cost** 14:18
**costs** 14:2 24:6
61:11 66:19
**couldn't** 24:14
**counsel** 2:20
3:2,14,21 4:16
4:22 5:5,21 9:9
20:22 21:5
24:9 25:7,16
25:24 26:12
27:17 28:1
29:6 31:18
40:8 42:19,20
45:16 47:6,7
47:21 48:7
52:8 54:21
56:3,23 59:21
66:11 67:4,10
67:14 69:8,17
70:5,9 72:3
74:8 76:23
77:12 79:4,9

[count - day]                                                                                         Page 9

**count** 57:2
  86:7
**counted** 59:16
  75:9
**country** 29:6
  87:21
**county** 81:6
**couple** 42:2
  47:17 62:17
  73:5
**course** 26:20
  32:14 46:4
  61:10 67:22
  70:18 81:11
**court** 1:1,11
  6:2 12:2,9 13:4
  14:6,12,17,23
  15:2,6,11,15
  15:19,25 16:12
  16:15,19 17:3
  17:10,13,19,23
  18:7,12,20,24
  19:4,5,12,16
  20:3,4,14,18
  20:25 21:4,11
  21:18,19,25
  22:25 23:14,17
  24:18 25:3,9
  25:23,24 26:10
  26:16,25 27:5
  27:11,15,23
  28:3,12,15,20
  28:22,25 29:16
  29:18 30:1,8
  30:15,24 31:5
  31:18,19 32:1
  32:9,25 33:3

33:15 34:1,7
34:10,14,24
35:8,10,17
36:6,12,24
37:4,11,16,22
37:25 38:6,8
38:10,10,13,23
39:1 40:8,10
40:11,14,21
41:2,8 42:13
42:15,19,20,21
42:25 43:10,14
43:20 44:6,24
45:4,7,9,16,24
46:4 47:6,7,20
47:21 48:7,10
48:15,16,17
49:8,16 50:10
50:20 52:4,8
53:7 54:2,24
55:5,8 56:3,3
56:14,23 57:2
57:3,4,7,14,23
58:1 60:4
61:17 62:2,5,6
62:8,12 63:15
64:5,11,15,18
64:24 65:5,25
66:2,6,13,16
67:3,10,14
68:1,4,9,11,18
68:22 69:3,8
69:10,17,21,25
71:13 72:3,16
72:22,25 73:3
73:5,7,16,19
73:21 74:2,4,7

74:9,11,13,16
74:18,21,24
75:1,2,6,11,13
75:14,19,25
76:5,10,13,18
76:23 77:1,10
77:23,24 78:10
78:16 79:2,7
79:11,21 80:2
80:18 81:5,18
81:20,24 82:3
82:8,12,18,20
82:21 83:1,8
83:18,20,22,25
84:5,9,13,17
84:20,23 85:2
85:4,6,9,21
86:1,11
**courtesy** 85:23
  86:1
**courthouse**
  48:14 60:12
**courtroom**
  56:12
**courts** 44:14
**court's** 20:1
  37:24
**cover** 51:25,25
**coverage** 32:10
  35:2,4 60:20
  60:20 61:8
  66:12 75:14,18
  76:12
**coverages** 61:6
**crack** 66:10
**creditor** 3:16
  4:24 5:8

**creditors** 5:6
  5:25 51:15,18
  53:12,17 66:25
**creditors'**
  27:17
**currently** 32:3
  57:22
**cut** 23:24 55:6
**cva** 43:21 44:8
  44:11 45:2
  52:8,11,16,20
  52:25 53:8
  54:19 73:22
  74:25 81:9

─────────── d ───────────

**d** 12:1 22:2
**damages** 51:14
**dare** 24:2
**data** 50:5
  55:14 56:16
**database** 37:17
  43:7
**date** 31:24
  87:25
**dates** 49:16
**david** 65:17
**davie** 79:10
**day** 2:5 7:17
  10:1 12:7,20
  13:18 14:1,7
  16:1,16,24
  17:6 22:18
  28:25 29:10
  33:9,17 35:15
  37:13 44:1
  48:23 51:20
  77:25

**day's** 2:1
**days** 42:2
  49:21 83:3
  84:10 86:6
**days'** 83:12
**dba** 58:22 59:8
**dbas** 60:11
**dc** 9:4
**deadlines**
  83:15
**deal** 16:3 21:22
  80:13 83:16
**debtor** 1:9 2:12
  3:3 7:18 9:9
  10:2 12:7
  13:10 20:23
  25:20,21 26:4
  27:5 28:17
  29:23 30:9,15
  30:20,20,25
  32:5 33:7,10
  33:22 34:22
  35:15 37:13
  39:15,21 40:5
  40:24 41:19
  42:4,23 43:5
  43:21 44:13,21
  47:1 49:13
  52:15,19 53:23
  54:3,8 55:1
  58:1,8,18
  59:20 60:17,18
  60:25 61:7
  62:11,25 67:2
  77:25 84:1
**debtor's** 2:5
  5:15

**debtors** 8:16
  45:17
**debtor's** 18:1
  26:12 45:17
**december** 1:15
  6:12,16 87:25
**decide** 49:7
  51:2,18 67:22
  82:9,10
**decided** 85:13
**decides** 82:12
  82:18
**deciding** 51:7
  54:25 85:10
**decision** 30:5
  30:17,19 31:15
  31:17 32:13,16
  56:8 57:6 71:1
**decisions** 31:16
**declaration**
  25:1,4 27:10
  27:12 28:16
  38:1,5,11,12
  38:24 41:1
  42:18 43:11
  52:2 53:23
  86:4
**declarations**
  24:11
**deducted** 25:12
**deducts** 63:20
  64:3
**deegan** 4:15,17
  8:15 20:19,22
  35:11
**deems** 32:23

**defendant** 58:2
  58:11
**defendants**
  55:15 70:16,18
  71:3,5 72:14
  77:9
**defense** 61:11
  66:18
**defenses** 66:12
**delaware** 76:14
**demand** 22:14
  22:14,21 25:20
  26:3,19,19,25
  27:2,5 29:8,11
  29:20,20,24
  30:8,15 31:1
  31:18,19 32:11
  34:21
**demands** 22:4
  22:23 25:22,22
  25:25 26:5
  29:15 30:7,12
  30:14 31:1,8,9
  31:12,24 32:7
  32:21
**denied** 22:17
  55:8 61:20
  80:21,23
**denies** 49:24
**deny** 70:2
  71:22
**denying** 22:8
  68:3,9 77:6,10
  77:15
**department**
  9:15 59:9

**depend** 76:1
**depending**
  86:7
**deposition**
  59:24
**depositions**
  78:23
**describe** 22:15
**desiderio** 7:8
  18:17,18,23
**designation**
  52:16,20
**desire** 47:23
**desk** 66:16
**detail** 69:18
**determine**
  82:15
**detour** 42:21
**developments**
  47:22
**dialogue** 30:20
  80:9
**diatribe** 24:8
**didn't** 23:2,3
  23:25 26:15,16
  30:22 35:21,25
  38:9 39:7
  40:10 46:16,24
  48:15 56:10,25
  60:5 80:25
  81:2 82:5
**diego** 65:2,22
**differ** 65:21
**difference**
  27:13
**different** 32:20
  49:3 62:5

65:14,24 67:16
67:17 69:5
**difficult**   23:21
24:4
**dine**   7:15 12:15
41:9,11,11
43:16,16 44:24
44:25 57:18,19
57:19,24 58:5
58:6,7 69:14
**dine's**   52:2
53:22
**diocesan**   29:7
32:17 78:23
**diocese**   1:7 6:7
12:4 22:4,13
22:15 39:18,19
40:2 46:9
51:10 53:6,9
53:12 54:1
56:11 58:11
59:4,6 72:12
73:10,13 78:18
82:15
**directed**   37:16
78:12
**direction**   78:20
**directionally**
74:14
**directive**   37:19
37:21,24
**directly**   67:3
**disallowed**
24:16
**disclose**   49:17
**disclosure**   40:3
49:9,11,12,13

49:20,25 50:8
50:25 51:6,17
51:18,21 53:4
53:15 63:7,22
64:8,9 67:18
69:10,15,21
70:7,22 80:21
80:22 83:5,9
83:10,10,12
84:24
**disclosures**
42:5 78:21
**discovery**   6:9
6:20 12:14
37:10 43:14,24
44:11 48:4
77:21 78:18
82:6
**discuss**   47:16
**discussed**
13:23 15:4
**discusses**   13:20
**discussing**   36:1
**discussion**   14:7
14:21 15:22
34:17 39:8
44:12
**discussions**
55:18 80:12
**dismiss**   47:9
62:25 76:2
80:23
**dismissal**   45:20
63:4 70:10
72:4 75:16
**dismissed**   62:1
65:3 73:22

74:22 75:12
80:18
**distribution**
69:13
**district**   1:2
37:1 57:3,3,10
75:13
**diversity**   75:21
75:22
**doc**   2:6,16,22
3:4,10,18,24
4:10,18 5:1,10
5:17,22 6:3,8
6:11,15,19,22
**docket**   12:10
39:12 81:5
**doctrine**   75:1
**document**   6:9
6:13,17 54:22
54:22
**documents**   4:2
43:6,8,21,22
44:3,8,12,17
45:2 52:16,20
54:19,20 60:23
**doe**   6:7
**doesn't**   15:11
23:22 26:20
30:11 38:5,6
39:23 49:17
53:14 64:5
70:20 75:22
76:6
**doing**   41:14
42:19 48:3
50:2 58:10
82:1,2 86:7

**dollar**   62:14
**don't**   13:9 15:3
15:8,14 16:13
18:3 21:14,20
22:22 23:8,10
23:14 24:1
27:1 28:8,10
28:13 32:5,9
33:13 35:20
36:17 38:2,15
38:18,19,21,25
40:5,23 41:4
41:15,18 47:24
48:7,25 49:12
53:7,10 56:5
56:25 60:9
61:15,18 62:20
64:20 65:6,16
65:17 66:8,12
66:19,22 67:21
68:19 71:6
72:6 73:16
74:1,2,3,24,25
76:3,10,18
79:3,7,19,25
80:12,15 81:12
83:9 84:6,18
85:10 86:11
**doty**   8:3
**doubts**   51:22
**draw**   69:7
81:15
**drink**   61:15
**dropped**   48:8
**due**   32:4

[e - fashion]                                                                      Page 12

| e | | | |
|---|---|---|---|
| **e**  1:21,21 3:8 3:10 7:1,1 8:3 11:5 12:1,1 87:1 | **embedded**  36:1 **emotion**  62:24 **emphasize** 33:21 **empty**  56:11 | **event**  43:9 71:9 **events**  30:4 **eventually**  59:9 **everlaw**  37:17 37:22 39:8,15 | 19:1,19,23 20:9,20 21:7 21:16 27:19 35:12 36:16,20 63:24 |
| **earie**  8:17 **earlier**  84:3 **early**  32:4 **ears**  29:2 **eastern**  6:13,17 57:3 | **encompassed** 36:4 **ended**  59:9 **enforceable** 34:21 | 39:23,23 41:14 52:10 54:21 **everybody** 34:14 66:9 82:4 | **expensive** 24:21 **experience** 29:21 **expert**  18:1 |
| **ecclesia**  54:13 58:25 60:15 61:4 | **engage**  63:2 80:11 **ensure**  30:7 **enter**  28:16 | **evidence**  47:17 **evidenced**  47:5 **exactly**  29:22 55:19 70:5 | **explain**  40:11 **explained** 41:13 44:2,9 **explaining** |
| **ecf**  17:6,24 18:13,14 19:1 19:9,17,22 20:8,19 21:6 22:5 27:18 35:11 36:16,19 61:19 | **entered**  22:8 22:18 28:25 76:7 80:24 **entities**  65:14 **entitled**  41:4 **entitlement** 83:11 | 82:2 **examination** 37:17 **example**  65:9 **excellent**  24:22 **except**  21:21 40:24 57:1 | 24:17 **expressed** 51:23 **expunged** 61:25 **extensive**  23:24 **extent**  77:14 |
| **ecro**  1:25 **education**  59:9 **effect**  62:4 83:15 | **entity**  59:10 **entries**  15:14 15:14 24:12 | 67:16 **exercise**  79:14 79:15 | 81:15 84:16 **eye**  44:15 |
| **effective**  14:18 30:7 | **erase**  81:19,21 81:22 | **exhibits**  69:9 71:11 83:8 85:3 | f |
| **effectively**  59:1 **eight**  57:4 **either**  32:4 63:13 67:19 | **eric**  7:22 37:12 **especially** 42:16 52:6 **essentially** | **expect**  39:7 49:22 **expenses**  2:3,6 2:11,15,21 3:2 | **f**  1:21,25 87:1 **face**  71:20 **facing**  66:20 **fact**  46:2 72:1 78:6 79:4 83:5 |
| **eliminate** 52:15 **eloquently** 70:17 | 33:24 46:12 80:7 **estate**  26:3 27:4 | 3:9,13,17,24 4:5,9,15,17,21 4:25 5:4,9,17 5:22 14:2 | **facts**  68:14,25 71:16 **failure**  71:7,9 **fairbanks**  65:2 65:10 |
| **emails**  16:7 | **et**  6:7 **eve**  55:25 84:14,17 | 16:17 17:11,25 17:25 18:14 | **faith**  80:11 **fashion**  80:11 |

**faster** 27:12
**father** 60:21
**fault** 72:2
**favor** 50:24
  51:3 53:13,18
**fe** 65:17
**federal** 48:16
  62:3
**fee** 2:6,15,21
  3:9,17,23 4:9
  4:17,25 5:9,16
  5:21 12:13,18
  12:20,25 13:5
  13:6,13,18
  14:1,13,15
  15:9,13 16:9
  18:5,19 19:8
  19:14,21 20:7
  20:19 22:10
  23:24 24:2,12
  24:18 25:11
  27:16 28:4
  29:2 33:16
  35:10 36:10
  37:4,9
**feel** 32:18
**feelings** 62:13
**fees** 13:11 14:2
  15:8,20,21
  16:16,20 17:10
  17:24,25 18:14
  19:1,18,22
  20:9,20 21:6
  22:11 23:4,22
  27:12,18 30:2
  35:12,20,22
  36:16,19 63:25

**felt** 26:2 30:23
  31:7 32:15
**ferguson** 1:25
**fifth** 64:12,22
**fifty** 74:19
**fighting** 76:16
**figure** 19:13
**figures** 20:1
  28:2
**file** 28:16 49:13
  49:21 52:22,22
  55:5 69:9
  73:18 75:1
  83:5 84:5,6,7
  85:13,15
**filed** 2:15,22
  3:9,17 4:9,17
  4:25 5:9 12:8
  14:14 22:1,4
  23:6,7 31:14
  32:22 33:16
  38:2,16 40:11
  45:13 46:24
  48:23 50:9
  55:11 58:24
  61:19 62:24
  63:6 66:18
  68:21 70:7
  73:7,18 74:12
  74:23 75:4
  76:13 83:2,2
  84:19
**files** 52:8,11,21
  82:3,16
**filing** 19:15
  69:10 83:8,10

**final** 25:10
**finally** 63:14
  63:15
**finances** 49:17
**financial** 4:6
  19:17
**find** 40:7 54:17
  66:7
**fine** 56:6
**finish** 22:25
**finished** 25:18
  36:1
**firm** 12:16
  16:19 21:10,22
  22:10 23:3,4,9
  24:14,21 35:13
  35:20 36:21
  67:12
**firms** 24:11
**firm's** 19:25
  23:22
**first** 12:12
  21:11 24:23
  29:23 33:7
  43:2 47:3
  56:18 62:21
  64:9 84:9
**flight** 54:15
**flights** 27:20
**floor** 7:12
  10:11
**flurry** 80:6
**fly** 39:9 54:15
  60:16
**follow** 69:12
**following**
  37:19

**food** 81:13
**forced** 32:16
**forchelli** 4:15
  4:17 8:15
  20:19,22 35:11
**foreclosing**
  70:12
**foregoing** 87:3
**forget** 59:21
**form** 24:15
  44:5,17,18
  48:4
**formal** 14:4
  53:21 84:7
**format** 39:23
  39:23,24
**former** 64:24
**forth** 15:12
  54:10
**forward** 13:1,8
  13:9 15:4
  29:10 41:23
  48:1 49:20,22
  50:3,4 58:21
  58:22 59:3,6
  75:9
**forwarded**
  53:23
**found** 45:2
**four** 47:23
  48:21 51:21
  75:13 79:5
**franciscans**
  70:19
**frank** 42:1
**frankly** 36:8
  40:23 65:24

[frankly - happening]                                                    Page 14

70:14
**free** 70:18,20
**friday** 38:17
  43:19 71:2
  84:20
**front** 13:6 33:4
  49:11 57:10
  82:7
**frustration**
  62:25
**full** 66:10 83:7
  83:14,16
**fund** 76:15
**funds** 15:22
**furman** 49:1
  55:20
**further** 33:13
  35:7 37:9
  82:17
**future** 3:7,21
  18:25 19:6,17

**g**

**g** 12:1
**gallup** 65:16
  65:17
**general** 48:22
  49:1
**generally** 14:9
  15:21
**gentle** 29:1
**gerard** 8:20
  20:21
**gerber** 3:8,10
  11:5 19:2,3,11
  19:24,25
**geremia** 7:23
  68:25 77:22,24

77:25 78:11,17
79:4,9,18,24
80:15 82:14,20
**getting** 16:10
  25:15 32:25
  66:23 67:13
  69:7 72:3,14
**gist** 22:12 23:6
  53:20
**give** 17:13
  22:15,24 25:10
  32:23 48:12
  54:16 71:16
**given** 27:4,13
  30:6 32:19
  43:22 49:18
  70:12 77:5
  83:11,16
**gives** 50:8,9,15
  52:9
**giving** 21:23
  50:11 57:16
  65:4
**glenn** 1:22
  46:22 49:24
  82:1
**global** 12:19,22
  13:17 29:10
**gm** 55:19 80:6
**go** 12:21 13:14
  14:10,11 18:1
  40:21,22 41:23
  44:24 47:23
  49:20 58:22
  59:6 61:13
  67:2,24 70:18

**goes** 51:17 69:4
**going** 13:1,8,8
  15:3,4 16:3
  17:5 19:9 20:9
  23:21 24:10,25
  25:3,5,9,10
  26:5,13,13
  27:2 28:15,16
  32:10 33:23
  36:9 41:6
  42:21,24 46:3
  47:9,14,16
  48:13,16,16,20
  49:8,22 50:6
  50:13,14 51:19
  52:22,22 53:24
  54:2 56:23
  59:3 61:20,22
  61:22 62:1,16
  62:22,23 65:23
  66:9,21,22,24
  67:19 68:20
  69:23 70:1,6
  70:10,15 71:15
  72:19 77:12
  79:12,13,24
  80:1,3,4,19,19
  80:22 82:15
  85:10,12
**good** 12:2,6
  17:8,21 18:17
  20:11,21 21:8
  37:12 45:11
  64:6 73:24
  80:11
**gotten** 23:25

**grabel** 64:22
**grant** 54:4
**granted** 55:2
**grateful** 32:20
**great** 25:17
  62:15
**greater** 47:11
  47:11 51:10
**green** 1:12
**greg** 9:20
**group** 4:6,8,10
  14:9 20:8,12
  21:25 49:4
  78:3
**guam** 63:6
**guess** 38:1
  42:14 73:3
  82:1
**guidance** 48:22
**guide** 55:17
**guidelines**
  15:15 37:2

**h**

**hage** 3:22
  19:22
**half** 53:19 57:5
  73:13
**hand** 45:16
  51:16
**handled** 12:14
**hanging** 80:20
**happen** 57:14
**happened**
  59:10 80:6,7,8
**happening**
  38:19

**happens**  49:24
  71:21 72:17
  73:21,22 74:22
  75:3,11,13,23
  80:8 85:17
**happier**  82:18
**happy**  12:22
  13:3 25:8 71:4
  82:12
**hard**  24:5
  65:12 75:8
**harrisburg**
  63:6
**haven't**  49:23
  52:9 61:17
  81:16,18 83:2
**head**  50:12
**headline**  63:19
  63:19 65:12
  66:5
**heads**  67:18
**hear**  14:8
  17:22 24:23
  36:17 45:21
  51:6 64:1 68:1
  68:6 82:6
  85:10
**heard**  16:24
  17:14 18:2,7
  18:21 19:5,19
  20:5,14,25
  21:12 22:6
  26:8 29:22
  33:10 38:14
  41:22 47:8
  57:16 61:18
  66:21 67:15

68:7 76:21
  77:19 78:5
  83:6
**hearing**  2:1,9
  2:19,25 3:6,12
  3:20 4:1,4,13
  4:20 5:3,13,19
  5:24 6:6,8,11
  6:15,19,19,22
  12:12 15:10
  26:8,17 29:24
  31:20 36:10
  37:16,24 39:6
  42:10 43:12
  44:21 46:20
  48:18 49:10,12
  49:21,22 51:7
  67:24 73:15
  74:14 81:6
  83:13,15
**hearings**  16:8
  29:19
**held**  30:13 65:3
**help**  70:11 71:3
**helpful**  56:12
  56:13 85:1
**here's**  21:24
  41:3 55:16
  73:16
**hey**  59:21
**he's**  24:9 48:20
**high**  54:9,11
  58:3 59:8
  60:17,25 61:1
  78:3
**higher**  47:13
  85:9

**highlights**  61:6
**highway**  66:24
**history**  81:2
**hit**  47:9 62:21
  72:18
**hogan**  19:9,11
**hold**  14:18
**holdback**
  12:25 13:8,13
  13:17 14:21
  16:22,23 17:17
  68:11 85:9
**holiday**  85:14
  86:12
**holidays**  83:11
  83:15
**home**  62:21
**homework**
  71:19,21,23
  86:9
**hon**  1:22
**honor**  12:6,8
  12:11,18 13:16
  13:19 14:12,20
  15:3,7,13,17
  16:5,18,21
  17:2,8,18,21
  18:3,5,11,17
  18:23 19:3,12
  20:11,17,21,24
  20:24 21:3,8
  21:14 23:13
  24:24 25:19
  26:7 27:9,14
  27:22,25 28:2
  28:10,14,18
  29:4,25 30:3

30:16 31:16
  32:12,19,23
  33:14,20 34:23
  35:6,7,14,16
  36:3,8,22 37:8
  37:12,14 38:4
  38:15,16,20,25
  39:4,6 40:13
  40:19 41:6,11
  42:1,14 43:1
  43:13,16,19
  44:20,23 45:6
  45:13 47:24
  52:1 55:6,23
  56:7 57:19
  58:3,7,15,23
  59:7 61:14
  62:24 63:17
  64:7 65:19
  68:2,6 69:8
  70:4,6 71:1,10
  71:18 72:1,20
  73:9,13,25
  74:3,14 75:5
  75:15 76:1,8
  76:20,24 77:5
  77:18 78:1
  79:18 81:7,13
  82:22 83:4
  84:19 85:5,19
  85:20,25 86:9
**honor's**  28:21
  30:11,21 31:4
  32:13 58:19
**hope**  26:4
  32:12 39:9
  50:3 84:18

**hoped** 45:14,14
  62:25
**hopefully** 29:9
**horse** 55:25
  61:14
**hours** 35:22
  71:14,14
**hundred** 73:7
  84:24
**hundreds**
  54:19,19
**hyde** 6:25 87:3
  87:8

**i**

**ice** 50:3
**idea** 46:22
  48:13 51:3
  52:7,10,11
**identified**
  23:22 44:11
  46:8 47:3,4
  58:12 77:7
**identify** 22:11
  23:4 24:12
  77:23
**identifying**
  48:6
**ignore** 26:21
**impasse** 45:15
**impermissible**
  39:17
**implicate**
  58:25
**important** 53:2
  53:9
**importantly**
  45:17,18

**imposing** 68:11
**improperly**
  79:24
**inadvertent**
  60:8
**inclined** 13:7
**include** 23:23
  58:1 59:4
  79:12
**included** 27:20
  35:21
**including** 13:5
  52:12 59:13
  70:18 73:10
**incorporated**
  58:10
**incorrectly**
  27:20
**increase** 70:24
**incurred** 2:3
  2:11 3:2 4:15
  30:1
**indicated** 16:1
  16:19 47:23
**indiscernible**
  28:17 33:12
  35:24 36:11
  42:22 49:6
  57:13 61:2
  65:23 82:24
**individual** 74:7
**individually**
  14:10
**ineffective**
  29:15 31:12
**inform** 31:5
  53:16

**informal** 4:1
  6:22
**information**
  39:17,19,20,22
  42:16,20 43:24
  44:13 49:19
  51:2,19,22
  53:15,16 54:1
  70:22 71:25
  76:21,25
**informed** 31:6
  37:20 53:13
**initial** 52:3
  80:6
**initially** 59:20
  81:11
**injunction**
  42:10 54:14
  56:8 58:20
  60:1
**injury** 48:25
  49:2
**inside** 66:16
**insight** 32:5
**instances** 59:18
  61:9
**insurance** 3:14
  4:22 8:2 9:9
  24:9 25:7,16
  26:1,2 27:7,17
  28:1 29:6,12
  29:12 30:9,17
  31:8,13 33:23
  34:5,20 35:2,4
  35:23,24 50:16
  51:1 58:25
  59:12,12,18

65:23,25 66:3
  66:11 70:11,13
  71:5 72:14
  75:14 76:12
**insured** 32:6
  76:16
**insurer** 29:9
**insurers** 22:15
  32:11 35:3
  45:18 75:21
  76:2 78:7
**intelligent**
  53:17
**intend** 37:21
**intended** 77:11
  77:15 80:10
**intentioned**
  86:3
**interest** 46:19
**interesting**
  62:1,2 72:17
**interim** 2:1,9
  2:19,25 3:6,12
  3:20 4:4,13,20
  5:3,13,19
  12:13,18 13:20
  14:1,13,16
  15:8,24 18:24
  19:8,21 20:7
  20:18 21:4
  27:16 35:10
  36:18
**internally**
  13:24
**interstate**
  31:24 59:11
  60:24

invite 54:6
invited 46:8
  54:5
invoice 27:21
involve 74:11
  78:2
involved 35:2
  42:9 49:6
  64:12
involves 21:21
  59:8
involving
  35:25 54:13
ire 23:18
irrelevant
  65:21
isn't 27:7 34:4
  73:17
isolate 28:6
issue 21:11,21
  21:23,24 29:16
  33:6 34:5,5,21
  39:2 41:17
  43:14 44:2,15
  44:19,22 49:4
  53:24 57:17
  62:2 68:15
  69:5 75:18
  77:21 78:14
  81:10,21
issues 13:22,23
  16:9 23:21
  24:5 35:4 36:6
  38:3 50:20
  52:3,13
items 12:12,13
  12:14 37:10

it's 17:16 18:22
  18:25 19:7,9
  19:18,22 20:8
  20:15,19 21:6
  21:14 24:15
  27:18 33:17,22
  34:5 35:11,12
  35:17,17 36:17
  36:19,24 43:4
  49:16 50:10,13
  53:1 54:4,22
  57:3,12 59:13
  61:1 62:1,15
  63:12 65:11
  66:19 67:17
  69:23 70:14,15
  71:15 73:11,12
  74:17 76:6
  77:20 79:12,13
  79:14,19,24
  82:13,20 84:2
  86:6
i'd 62:6
i'll 33:9 36:13
  52:18,18 53:10
  54:6 55:6
  82:12 84:5
  85:17
i'm 12:22 13:3
  14:23 19:11
  21:23 22:21,25
  24:10,11,25
  25:5,8,9,10,18
  28:15 32:25
  34:7 37:2
  38:20 41:6
  42:24 43:10

50:2,12 51:6,7
  51:20 53:18
  54:24 56:25
  58:6 61:20,22
  61:22 63:3
  66:1,13,21,22
  66:22 67:11
  72:22 80:21
  81:20 84:3,20
  85:10
i've 23:19 24:1
  24:16 27:8
  29:1 33:5
  36:12 48:19,22
  49:10,10 57:2
  62:18,18 64:7
  64:21 65:19,19
  66:10 67:7
  76:12

| j |
| --- |

james 8:13
  10:14 21:8
  39:4 59:20,23
  60:10,14
james' 60:3
january 24:11
  28:17 32:4
  49:14 84:21
jason 10:21
javian 9:13
  17:21,22 18:3
  18:11
jesse 8:6 27:25
jesuit 65:2,10
  65:14
jesuits 65:10
  70:17,19

john 44:10
joinder 22:4
  23:7 28:7,7
joke 23:21
jones 2:1,5 5:5
  5:7,10 7:10,17
  8:8 10:1,9 12:7
  12:20 13:18
  14:1,7 16:1,16
  16:24 17:6
  21:5,9 35:14
  37:13 39:5
  41:12 43:17
  44:1 45:12
  48:23 51:20
  57:20 77:25
joseph 3:22
  19:22
judge 1:23
  26:17 29:19
  30:12 33:3
  34:7,8 46:22
  47:22 49:1,24
  52:5 54:2
  55:20 56:11
  57:22 62:6
  63:12 64:22
  65:16,21 68:21
  68:25 70:16
  71:23 77:19
  78:2,8,12,14
  78:20 79:5
  81:3,22 82:1,7
  82:10
judges 57:4
june 2:4,12 3:3
  3:14 4:7,22 5:6

5:14

**juries** 50:6

**jurisdiction**
75:20,22 76:3

**justice** 9:15
48:3,17,19
49:6 51:11
56:4 60:11
61:4 77:11
81:24 82:23

**justification**
32:23

**k**

**karen** 7:15
41:11 43:16
57:19

**kcic** 18:1,9

**keep** 44:15
61:2 66:23,23
69:7

**keeps** 56:16

**kind** 31:21
33:17 39:9
55:16 57:12
81:22

**knew** 64:4

**knock** 85:12

**know** 13:9
16:13 21:14
22:22 23:8,10
23:14,19 24:9
25:11,17 28:8
28:10 29:24
32:11,18 33:15
34:15,24 35:20
35:21,25 38:2
38:18,19 40:23

41:9,15,16,19
42:24 46:24
47:10 48:2,7
49:9,12 50:6
50:11,13 51:11
51:13,14,16
52:1,14 53:1,8
53:19,20 55:19
56:5,17,25,25
58:8 59:21
60:9 61:15,23
63:17,18 64:12
64:24 65:1
66:6,9,21,24
66:25 67:5,14
68:8,10 69:24
71:19 72:6
73:6,16 74:1
74:25 76:10,18
79:3,7,12 80:5
80:18 81:4
82:5,8 83:9
85:10

**knowledge**
32:3 42:18,20
47:6

**known** 68:15
68:16

**knows** 54:1

**kressel** 63:13

**l**

**l** 2:15,21 9:3

**laboring** 23:2,3

**lack** 15:22 76:2

**language** 40:17
41:3

**large** 14:9
19:14

**larger** 25:25
81:10

**late** 12:11

**laundry** 52:3

**law** 34:25 62:7
64:24 67:12
85:11

**lawsuits** 54:9
75:2

**lawyer** 34:25
52:4

**lawyers** 32:1
51:20 72:18
74:7

**lay** 21:24 28:19

**lcc** 4:8,10

**lead** 44:11
45:22

**leapfrog** 79:25

**learned** 31:25
43:19

**leave** 42:24,25
50:10 61:25

**leaving** 84:20

**led** 70:13

**ledanski** 6:25
87:3,8

**lee** 59:20

**leery** 50:23

**left** 62:17,23
63:25

**legal** 15:20
87:20

**legitimate**
26:14

**length** 77:5

**lerman** 5:20
9:1 36:19,23

**letter** 21:16
33:8 41:13
43:18,25 52:15
67:11 84:6,7

**letters** 29:8,12
29:14 31:18,19

**let's** 27:11 45:7
51:23

**level** 47:7

**lexington** 9:10

**lies** 51:5

**lift** 22:1 56:14
77:13

**liked** 56:17

**limit** 14:6

**limited** 54:23

**limits** 60:20

**line** 70:25

**list** 17:3 18:12
18:24 52:3,6
54:15,15 60:4
60:16 61:5
64:9 67:23
81:12

**listened** 46:21

**litigant** 67:21

**litigated** 78:2
79:1

**litigating** 67:21

**litigation** 21:17
35:2,23,24
38:6,10

**litigator** 35:1

| | | | |
|---|---|---|---|
| **little** 13:5 24:17 51:9 65:11 72:7 74:21 | **lot** 24:6 48:24 50:19 64:2 72:9,9 | **marists** 70:19 **mark** 24:17 48:24 | **member** 52:5 **mention** 38:6 **mentioned** 19:12 41:16 43:18 |
| **llc** 2:10,14,16 3:22 4:6 18:1 18:10 19:22 20:8 21:5 | **lots** 23:20 **luckman** 8:20 20:21,22 21:3 35:15 | **marsal** 2:9,13 2:16 17:4,9 **martin** 1:22 | **message** 46:6 **met** 37:19 54:25 69:16 |
| **llp** 2:20,22 3:4 3:13,15,18 4:16,18,21,23 5:1,5,8,10 7:3 7:4,10,17 8:1,8 9:8 10:1,9 17:22 27:17 35:11 | **m** | **massive** 76:16 **materials** 44:7 **math** 61:24 **matter** 1:5 37:16 43:12 57:18 | 70:4,9 74:7 **mg** 1:3 6:6 **michael** 19:9 41:10 **michaels'** 52:15 |
| | **m** 9:20 **made** 22:23 24:1,8 25:21 25:24 30:5,8 31:8 39:9 40:25,25 45:1 55:8 56:8 58:17 64:7 70:15,23 77:8 83:14 85:7 | **matters** 6:12 6:16 45:8 **mean** 22:12 27:7 29:23 48:23 51:15 60:5,17 63:19 63:25 69:4 | **million** 50:22 50:23 51:13 59:13 60:20 63:18 64:1,1 68:13 |
| **lmi** 31:23 59:11 60:24 66:17 **loath** 34:19 **logs** 39:2 | | 72:4 73:9 76:6 79:18 80:25 81:2,3 | **mind** 13:12 66:22 **mine** 38:19 |
| **long** 13:8 81:4 **longer** 72:10 86:5 | **madison** 8:4 **majority** 35:1 **make** 21:18 | **meaning** 48:3 **meaningful** 79:13 | **mineola** 87:23 **minimum** 47:12 |
| **look** 25:10 28:11 34:24 38:18,18 42:11 50:1 66:17 | 22:3,20,20 25:22 27:23 29:24 32:10 33:5 47:14 51:24 53:13,17 55:5 57:12 61:14 66:9 67:18 77:1,12 77:13 81:16 | **meaningless** 79:14,15 **means** 56:20 72:8 **meant** 57:25 80:24 81:1 | **miniscule** 51:14 **minneapolis** 63:9 **misfortune** 24:22 **misguided** 22:16 |
| **looked** 16:8 40:16 50:11 75:19 **looking** 40:7 70:15 | **makes** 80:23 **making** 25:20 26:19,20,25 41:24 44:21 | **mechanism** 43:5 80:17 **mediators** 77:2 **meet** 41:17 | **missed** 28:8 48:24 **missing** 53:18 |
| **looks** 75:15 **los** 8:11 **lost** 30:16 32:19 57:2 | 55:9 64:6 67:1 **management** 48:4 | 43:3,25 44:22 80:2 | |

misused 42:20
mixed 62:13
mixing 55:24
moment 28:19
moments 46:18
money 24:6
64:20 66:9
70:15,24 71:4
85:5 86:5
monica 8:10
month 32:4
monthly 19:14
months 58:18
60:10 72:9
moore 11:3
17:8,9,12,18
moore's 86:4
morning 12:6
41:16 43:4
48:2 50:12
motion 5:24
12:17 19:4
20:2 22:9,16
22:17 23:5
25:15,18 26:12
28:19,22 29:23
30:2 31:3,14
32:16,22 33:1
33:12 34:3
41:24 45:8,13
46:4,21,25
47:8 49:24
52:22,23 55:5
55:8,9,11
57:10,13 59:5
61:18,19 63:4
66:18 68:3,5,9

70:2 71:20,22
75:16 77:10,13
77:15,16 80:23
84:7
motions 21:25
22:6,8,12,13
23:5,6 24:13
31:9 34:9 81:5
motivated 86:3
motors 49:1
mount 59:19
move 29:10
45:7 48:1 50:3
52:18 58:2
75:9 76:2
moved 33:4
56:14 60:15
moving 50:4
60:12
multi 34:5
multimillion
62:14

n

n 7:1 12:1 87:1
name 60:25
73:13
named 54:8
60:18 75:21
names 60:24
60:25
naturally
43:22 59:4
nature 27:4
nauseum 47:8
ne 6:7
necessarily
15:9,11 16:8

36:10 69:4
76:6
necessary 2:3
4:15
need 36:17
46:6 47:10
53:8,10 61:7
61:18 81:23
83:7
needs 25:11
negative 32:16
negotiate 55:9
negotiating
61:20
negotiations
55:18
neophyte 35:4
never 29:16
45:24 47:9
64:21
new 1:2,7,13
7:6,13,20 9:11
9:18 10:4,12
32:17 43:21,24
44:7,11 45:2
57:10 66:13
70:25 71:2
75:24 76:15
81:5 83:10
84:13,17 85:14
newly 44:7
nice 51:9 62:7
night 71:2
nine 14:13 57:4
ninth 2:1,9,19
2:25 3:12 4:4
4:20 5:3,13

20:7 21:4
27:16 64:13
nixon 3:4 7:3,4
18:12,13,15,18
18:21
non 29:8 44:5
54:4 57:23
78:18
north 2:10,13
2:16 65:12
note 21:15
41:12
noted 15:2
notes 35:19
notice 6:8,8,11
6:15,19,19
50:21 52:12
58:24 59:24
81:21 83:12
84:15
noticed 81:25
notify 39:21
notion 48:24
notorious
60:22
november
37:16 63:2
null 33:24
number 12:10
13:22 29:8
31:14,22 33:5
39:12 50:8,9
57:2 58:7 59:3
61:23,24 63:19
63:20 64:4
65:13 66:5
69:18 74:6,15

[number - parishes]                                          Page 21

81:9
**numbers** 44:16
59:18 65:18
**numerous**
60:22
**nut** 66:10
**nw** 9:3
**ny** 1:13 7:6,13
7:20 8:18 9:11
9:18 10:4,12
87:23

**o**

**o** 1:21 12:1
87:1
**oar** 23:3
**objection** 14:4
31:1 64:21
**objections** 48:5
50:10 53:21
63:22 64:9
67:24
**objective** 84:19
**obligated** 27:6
**obvious** 69:9
80:25
**obviously** 12:3
14:9 24:20
31:4 32:8,13
32:19 33:3
54:25 74:19
**occasionally**
34:9
**occasions** 46:8
47:1 67:2 84:2
**occur** 44:10
48:16,16

**occurred** 31:6
**occurrence**
59:13 60:20
**october** 22:7,8
24:1 46:20
63:2
**offer** 36:9
38:21
**offered** 71:5
**offers** 40:25
**offhand** 23:11
28:10
**office** 12:24,24
13:22,25 14:3
21:17 36:8
**office's** 14:8
**official** 5:5,24
**oh** 62:7 76:23
83:22
**okay** 16:12
17:17 25:18
27:9,15 28:12
33:2,12,19,22
35:6 36:12,14
36:24 37:2,11
38:13 39:1
42:13 45:4
48:20 49:7,25
51:8 55:12
62:9 69:6
74:18 78:16
80:6,24 84:2,8
86:2,12,13
**old** 87:21
**omitted** 46:4
**once** 20:2

**ones** 45:25
49:7 56:10
67:7 77:7
**ongoing** 57:24
**openly** 13:10
**opinion** 30:22
**opportunity**
55:9 57:16
**oppose** 44:5
**opposed** 44:18
**opposition**
48:23 55:5
56:8,9 66:17
79:21
**order** 12:21
22:2,8,18
24:16 28:15
29:1 32:19
37:18 39:14,18
40:6,17 41:4
41:24 42:3,15
43:3,9 46:14
49:19 58:19,19
60:1 75:16
76:4,5,6 80:24
**ordering** 24:11
**orders** 48:4
52:24
**organized**
35:23
**original** 44:3
**originally**
31:22
**ought** 45:25
46:5 79:12
**outcomes**
55:17

**overall** 73:9
**overlap** 54:8
65:8
**ovington** 8:17
**own** 72:2

**p**

**p** 7:1,1,22
10:21 12:1
**p.m.** 6:12,17
**pachulski** 5:4,7
5:9 7:10 8:8
10:9 12:16
21:5,9,13 36:7
39:5 41:11
43:16 45:11
57:19
**pacific** 65:22
**page** 67:25,25
70:1
**pages** 84:24
**paid** 33:1
65:20 67:19
**painfully** 85:8
**papers** 52:14
67:4 79:19
84:14 86:12
**paragraph**
39:13,14,18,25
41:16 43:2,5
**parcel** 24:14
**parish** 50:21
51:4,5 53:3,3,8
53:12 69:19,20
72:21,23 73:1
78:19 79:9
**parishes** 49:18
50:16,19 62:10

70:8 72:16,18
78:2,7 79:8,11
**parishes'** 53:1
**parishioners**
72:12
**part** 21:20
25:25 29:13
42:7 54:3
71:20
**particular**
12:20 77:13
**particularly**
29:2
**parties** 50:17
**party** 34:5,5
39:21 53:9,12
54:4 64:15
78:18
**pass** 27:6
**past** 50:18
**paul** 11:4
20:12 63:9
**pay** 26:5 32:7
66:12,19
**payday** 79:15
**paying** 66:18
**payments**
19:13
**peabody** 3:4
7:3,4 18:13,15
18:18,21
**pejorative**
63:19
**pending** 32:2
57:22 64:23
74:13,24 82:7

**penny** 72:25
**people** 39:11
48:1 53:5
54:20 60:10
65:11,13 72:9
72:10 73:18
74:11,12,23
80:11 83:2
**percent** 12:25
13:8,13 14:24
16:22,23 17:17
47:9,12,14
63:10 67:14
68:11 72:7
**percentage**
47:10
**period** 2:4,5,12
2:14,20 3:8,14
3:16,23 4:6,8
4:16,22,24 5:6
5:8,16,21
18:19 23:24
83:14
**permissible**
40:6
**permission**
34:20
**permit** 6:1
**permitted** 40:1
**person** 38:16
38:17,20,22
65:3
**personal** 48:25
49:2
**personally**
41:7

**personnel**
78:23
**perspective**
44:15
**persuade** 51:21
**persuaded**
53:7,10
**pertain** 52:21
**pfau** 10:16,17
**phone** 48:8
**pi** 73:15
**pick** 45:24 46:5
47:2 49:4
55:10,11 80:3
80:4
**picked** 46:18
**picture** 51:9
**piece** 33:16
**piling** 78:25
**pillared** 69:7
**pin** 64:4
**place** 30:4
82:14
**places** 58:25
70:16,23
**plaintiff** 50:20
78:14
**plaintiffs** 55:15
58:17
**plaintiffs'**
72:18
**plan** 45:23
46:12,15 47:5
47:14 49:23
50:15,24 51:3
53:14,18 56:20
62:20 63:4,11

63:12 64:3
67:15 75:10
**planning** 84:23
**plans** 49:13
63:5,8,9
**pleading** 40:15
62:3,5
**pleadings**
65:19
**please** 12:2
54:6 63:16
77:24 85:6
**pleased** 31:17
**pllc** 5:20 9:1
10:16,17 36:19
**plucking** 79:25
**plus** 30:2 51:1
**pm** 1:16 86:16
**pocs** 81:9
**podium** 46:23
**point** 25:21
34:4,17 45:2
77:1,6 78:24
81:3
**pointed** 31:10
58:15 74:5
**points** 12:19
50:5 55:14
56:16 68:7
**policies** 26:3
27:4
**policy** 27:6
**portion** 41:21
**position** 30:6
30:23 31:9
33:11,11 45:3
46:11 47:15

58:9,21 59:22
59:23 61:3
68:23 74:4
80:13 83:1
**possible**  54:4
**post**  75:18
**potentially**
29:10 31:11
42:6 55:14
**practice**  34:25
**precedent**
15:15 59:17
**preclude**  77:11
**preclusive**  62:4
**preliminary**
42:9 54:14
56:8 58:20
60:1
**preparation**
67:24
**prepared**
24:16 46:21
**preselected**
81:16
**present**  11:1
19:10 46:24
**presentation**
26:13 43:11
**presented**
21:25
**presentment**
58:24
**preserve**  76:4
**pressure**  26:1
**pressuring**
48:1

**pretrial**  81:23
**pretty**  23:20
**prevailing**  6:13
6:17
**prevents**  22:19
**priest**  51:4
**priests**  49:3
**primarily**
85:11
**primary**  59:14
**privilege**  42:6
42:7
**pro**  74:6,6
**proactive**
45:21
**probably**  15:12
**problem**  15:2
**procedure**
78:20,22 81:23
**procedures**
69:13 75:17
**proceed**  45:8
78:6,7
**proceeding**  6:1
6:6 43:23 44:6
78:8,17
**proceedings**
42:15 75:4
86:15 87:4
**process**  48:9
78:19 79:25
82:14,16
**produce**  43:6
82:3
**produced**
43:21,22 44:17
52:12

**producing**
44:14 82:15
**product**  42:6
**production**  4:2
**productive**
44:12
**professional**
2:14,19,25 3:1
3:6,8,20,23 4:8
4:13 5:13,20
14:14 15:21
85:23 86:1
**professionals**
13:2 14:22
16:10
**professionals'**
25:19
**professional's**
16:6
**programs**
65:23
**progress**  67:2
**prohibit**  30:11
30:14
**project**  36:25
**projections**
50:11
**promised**
44:25 67:20
**promptly**
53:23
**pronged**  57:12
**proof**  59:11
60:19 61:10
**proofs**  76:12
76:14 83:2

**property**  26:3
27:4
**proposal**  67:12
76:9 77:12
**proposed**
62:21 75:16
79:5
**protective**
37:18 41:24
43:3,9 49:19
**provide**  22:14
32:14 37:22
39:14 43:6
44:4 48:22
75:17
**provided**  44:3
52:24
**provides**  53:15
**providing**  39:2
44:16 78:18
**provisions**  42:3
42:8,11
**prudent**  32:6
**public**  68:16
**pulling**  50:12
**purdue**  47:11
**purpose**  53:16
55:13,20 59:4
**purposes**  45:14
**pursuant**  5:25
22:2
**pursuing**  47:25
76:15
**pushed**  24:1
**put**  14:15 24:2
24:25 26:1,14
27:11 28:8

33:8 49:23
51:23 64:4
67:16 71:4
81:4 84:5
**putting** 26:3
69:21

**q**

**quarterly** 5:14
**question** 16:14
21:21 22:19
26:18 47:20
64:11 70:5
73:16,24 75:23
**questioned**
81:1
**questions**
14:10 18:5
19:4 20:3,24
33:14 35:21
36:13 51:8
73:5 85:3
**quick** 34:2,2
**quickly** 48:1
**quite** 13:10
31:14 67:25
83:6
**quoted** 42:4

**r**

**r** 1:21 7:1 8:20
12:1 19:9 87:1
**raced** 62:15
**raise** 41:22
43:15
**raised** 13:22
35:20 38:6
42:12 43:2

68:7,16
**range** 55:17
**reach** 63:15
**reached** 63:8
63:14 67:9
**reaching** 69:7
**read** 37:25
38:1 40:18
42:11 43:4
49:10 51:25
52:2 66:13
79:22,22 84:25
86:4
**reading** 39:13
71:14 84:23
86:12
**ready** 86:10
**reaffirm** 58:14
**real** 23:6 68:5
**reality** 72:4
**really** 22:7
23:23 24:20
27:7 42:2,10
59:19 61:6,7
62:1 65:21
67:5,17 72:19
80:25 81:1,2,3
**reason** 32:15
76:24
**reasonable**
41:14
**reasonably**
32:6
**reasons** 78:24
79:19 81:8
**recall** 37:15

**receive** 41:4
63:23
**received** 19:13
64:8
**receives** 27:5
**recently** 58:14
67:10
**recipient** 39:22
**recited** 40:16
**recognize** 14:5
47:21
**recognized**
71:1
**recommend**
85:19
**record** 14:5
15:2 34:16,18
39:20 48:20
61:17 87:4
**recovery** 51:10
65:5
**redacted** 44:5
44:5,7,18
**reduce** 61:11
**reduction**
13:25 16:2,20
25:13 27:19
**reed** 2:20,22
9:8 17:20,22
17:23 18:9
**reference**
57:15
**referenced**
41:20
**references** 38:9
**referring** 44:6

**reflect** 20:13
**reflects** 18:18
20:23 27:19
**regarding** 39:8
42:16 48:4
52:25 53:25
54:1 57:17
**reimbursement**
2:3,11 3:2,13
4:5,14,21 5:4
**related** 6:9,13
6:17 21:16
50:17 53:9,12
**relating** 35:25
**release** 64:20
65:4
**released** 52:6
**releases** 46:15
64:15
**relief** 30:5
32:19 34:22
54:16 55:1
59:5 61:21
**relieve** 61:5
**reluctantly**
14:22
**remain** 72:13
78:13 79:16
**remaining**
81:10
**remains** 75:5
**remand** 81:5
**remanded** 57:4
**remedied**
71:10
**remedies** 31:11
39:16

**remedy**  39:25
**remedying**
  40:3
**remember**
  65:16,17
**remind**  36:25
  69:2
**reminded**
  26:11
**removal**  57:13
**remove**  52:19
**rendered**  2:2
  2:11 3:1 4:14
**report**  5:14
  47:22
**reported**  28:2
  28:4,4 48:17
  48:19
**reports**  37:22
  39:16 40:5
  64:1
**represent**
  24:24 29:5
**representative**
  3:7,22 18:25
  19:6,18 35:13
  80:10 81:17
**representing**
  79:8
**request**  4:1
  6:22 33:8
  41:15 44:4
  52:23 58:16
  84:7
**requested**
  12:25 32:7
  58:14

**requesting**
  43:18
**require**  28:16
**required**  37:1
**requirement**
  21:16
**reread**  42:3
**research**  4:6,8
  4:10 20:8,12
  20:15
**reserve**  15:17
**reserved**  23:20
**resolution**
  29:11
**resolve**  33:10
  44:19
**resolved**  51:11
**respect**  16:24
  17:14 18:21
  19:6 20:5,15
  21:1,13 58:14
  58:16 78:7,18
  85:23
**respectful**
  32:13
**respecting**
  85:22
**respects**  48:24
  72:5
**respond**  25:8
**responded**
  29:13
**responding**
  25:6
**responds**  40:14
**response**  29:17
  36:13 41:18

  44:3 63:23
  64:8 78:22
**responses**
  31:13 32:3
  72:3
**responsibility**
  23:8 42:17
**rest**  19:4 20:2
  62:22
**restated**  59:1
**restructuring**
  2:12
**resulted**  51:12
  62:14
**resume**  77:3
  78:15
**retention**  2:4
**rethink**  72:10
**return**  57:18
**review**  14:8
  15:7,13,20,24
  36:3 39:3
**reviewed**  13:23
  13:24 22:10
  43:8 67:23
**reviewing**  16:7
  24:18 36:9
**reviews**  13:20
**right**  12:2
  16:15 17:1,13
  17:16 18:8,12
  18:20 19:7,16
  19:20 20:4,6
  20:15 21:2
  25:23 28:22
  36:12 37:4,6
  39:7 43:10

  46:3 49:8
  64:17 66:8
  68:10 76:18
  82:21 83:24,24
  83:25
**rightfully**
  15:12
**rights**  15:17
  39:10 50:15
**ring**  81:15
**rise**  81:8
**road**  87:21
**robert**  3:8,10
  11:5
**rochester**  29:7
  29:21 30:4,6
**rocket**  27:7
**rockville**  1:7
  6:7 12:4
**roman**  1:7 6:6
  12:3
**room**  54:2
**roughly**  69:16
  73:13,15 77:20
  77:22
**round**  13:13,21
**rowing**  72:14
**rule**  22:3 80:22
**ruled**  28:22
  30:13 77:14,16
**ruling**  28:21
  30:11 31:5,7
  57:17
**rulings**  62:3,4
**running**  37:6
**runs**  62:21

[s - signed]                                                    Page 26

| s | | | |
|---|---|---|---|
| **s** 6:9,13,17 7:1 12:1 | **scope** 61:21 | **seen** 24:2 58:13 | **settled** 55:21 55:22 |
| **san** 65:2,22 | **screen** 26:10 38:1,18 | **selection** 55:16 79:17 80:10 | **settlement** 22:3 22:14 26:19,21 |
| **sanctions** 26:23 | **se** 74:6,6 | **send** 16:7 31:18 32:21,21 | 26:25 75:8 |
| **santa** 8:10 65:17 | **searches** 41:14 41:20 | 41:12 | **settling** 29:9 |
| **satisfied** 43:11 53:14 | **seated** 12:2 | **sense** 28:13 55:15 63:20 | **several** 14:11 58:12 84:24 |
| **saw** 28:7 38:1 42:3 48:11 | **seattle** 10:19 | **sent** 21:16,17 29:11 31:20,24 | **shame** 83:24 83:25 84:1 |
| 54:9 70:6 | **second** 6:15 12:8,9 17:13 | 32:3 55:3 | **shape** 13:9 |
| **saying** 16:8 50:16 53:10 | 60:19,19 67:9 69:2,6 | **senter** 5:20 9:1 36:19,23 | **share** 42:15 44:13 68:14 |
| 56:16 59:2 | **section** 83:3 | **separate** 23:5 78:3 79:9 | 81:11 |
| 60:7 72:19 80:1 | **sections** 5:25 | **separately** 58:10 59:16 | **shared** 69:17 69:24,25 |
| **says** 33:22 39:18,23 49:18 | **security** 76:15 | **september** 2:4 2:13 3:3,15 4:7 | **sheep** 55:24 |
| 52:12 56:19 | **see** 21:12 22:22 26:13 36:13 | 4:23 5:7,15 | **she's** 57:17 |
| 58:19,20 64:3 | 37:25 38:9 39:15 40:10 | 23:24 27:21 | **shields** 11:4 20:11,12,17 |
| **schedule** 60:2 60:3 85:11,16 | 52:21 59:18 63:1 72:17 | **series** 13:6 29:11 49:2 | **short** 40:15 |
| **scheduled** 6:12 6:16 | 73:3,4 84:5,6 85:14,15,17,17 | **seriously** 72:10 | **shortly** 71:11 |
| **schedules** 85:12 | **seeing** 54:18 | **serve** 29:19,20 45:15 | **shouldn't** 28:9 71:21 |
| **scheduling** 85:23 | **seek** 26:23 30:5 31:11 | **served** 29:8 54:3 55:19 | **show** 37:6 67:1 |
| **scheme** 36:25 | **seeking** 22:1 22:13 32:18 | **services** 2:2,11 3:1,7,21 4:14 | **shown** 40:24 |
| **school** 58:3 59:8 61:1 78:4 | 38:11 | **serving** 31:1 | **shows** 53:11 81:2 |
| **schools** 54:9,11 | **seeks** 17:24,25 18:14 19:1,22 | **session** 34:15 | **side** 35:3 46:23 61:18 |
| 60:17,25 70:13 | 20:8,20 21:6 27:18 36:19 | **set** 12:12 43:7 53:19 55:14 | **sides** 33:10 |
| **science** 27:8 | **seem** 59:21 | 78:21 | **sidestep** 25:5 |
| | **seems** 53:9 71:7 80:25 | **setting** 44:20 | **sign** 46:17 64:19,20 |
| | | | **signature** 87:6 |
| | | | **signed** 52:9 54:21 |

simply  37:23
  47:16
single  65:3
  67:11 68:15
sir  59:14 60:21
  61:9
siting  57:6
sitrick  5:15
  36:15
sitting  57:17
  66:16
situations  44:9
six  48:21 51:12
  58:18 60:10
  72:9 78:3
sixth  3:6,20
  4:13 18:24
  19:8,21 20:18
  35:10
slide  26:13
small  14:18
  36:24
smith  2:20,22
  9:8 17:20,22
  17:23 18:9
smoke  40:7
snoop  43:7
soave  60:21
solicitation
  75:17
solutions  87:20
somebody  39:1
sonya  6:25
  87:3,8
sooner  27:11
sorry  58:5,6
  63:3 66:1

71:18 72:22
  81:20 83:19
sort  16:7 36:1
  48:5 50:2
sought  16:16
  20:13 24:13
sounded  83:6
sounds  83:8
sources  72:13
  77:7
southern  1:2
  37:1 57:10
speak  17:5
  18:15 19:25
  20:10
speaking  25:25
special  2:20
  3:2,14 4:16,22
  5:20 8:2 9:9
  20:22 24:9
  25:7,16 27:17
  27:25 29:6
specific  13:17
  16:8 82:16
specifically
  15:4 24:12
  39:17 41:20
speculate
  34:19
spells  39:25
spend  34:3
  86:12
spent  31:3 35:1
  70:1 71:14
  74:21
spokane  64:23
  65:1,2,9,10

spoke  48:2
  70:17
spoken  48:18
  49:10
sponte  80:22
st  7:5 63:9
stab  64:9
stand  23:18
  24:7 46:10
  49:19
standard  15:13
  62:5
standards
  24:17 53:19
  62:3
standing  24:22
  57:18 72:11
stands  56:19
stang  5:5,7,10
  7:10 8:8,13
  10:9,14 21:5,7
  21:8,9,9,20
  22:24 23:12,16
  24:14,20,24
  25:5,19,24
  26:11,23 27:2
  27:9,13 31:10
  33:19,20 34:4
  34:8,12,19
  35:6,19 36:3,7
  39:4,4,5 40:13
  40:19,22 41:6
  41:9,11 42:1
  42:14,23 43:16
  45:11,11 46:2
  46:7 47:24
  48:11 49:15

52:1 53:21
  55:3,6,23 56:7
  56:15 57:5,9
  57:15,19 58:3
  58:6 59:2,7
  60:6 62:10,12
  62:24 63:17
  64:7,14,17,19
  65:1,8 66:1,4,8
  66:15,17 70:17
  72:2 77:7 78:5
  82:21,22 83:3
  83:11,19,21,23
  84:1,2,8,13
  85:15,21
stang's  77:10
  81:14
start  59:19
  68:14 75:24,24
state  6:1 14:5
  25:24 31:12,17
  31:25 38:6,10
  38:10 40:8
  42:19,20 43:20
  44:14 45:9,16
  47:6,7,21 48:7
  48:17 50:20
  52:4,8 56:3,23
  57:4 62:2,5,6,7
  62:8 67:3,10
  67:14 69:8,17
  70:25 72:3
  73:7,18 74:7
  74:13,24 75:1
  75:2 76:13,15
  76:23 79:4
  81:5 82:20

[statement - syracuse] Page 28

| | | | |
|---|---|---|---|
| **statement** 49:9 | 77:11,19 78:2 | **struggle** 47:18 | **supplement** |
| 49:11,12,13,20 | 78:9,12,14 | **studied** 39:10 | 33:21 |
| 49:25 50:8,25 | 79:5 81:24 | **stunned** 34:12 | **support** 47:6,7 |
| 51:7,17,19,22 | 82:7,10,23 | **sua** 80:22 | 67:6 |
| 53:4,15 63:23 | **steinman's** | **subject** 17:16 | **supposed** |
| 64:9 67:19 | 52:5 54:2 | 35:5 36:1 | 24:18 40:12 |
| 69:11,15,22 | 56:12 60:12 | 73:14,15 | 56:21 61:16 |
| 70:7 80:21,22 | 61:5 78:20 | **subjected** | **supreme** 71:2 |
| 83:5,9,10,13 | **step** 61:7 | 78:12 | 75:24 |
| 84:24 | **stephen** 9:6 | **submit** 24:11 | **sure** 14:23 |
| **statements** | **stephens** 7:22 | 27:9,12 | 19:11 28:20 |
| 15:1 19:14 | 12:15 37:9,11 | **submitting** | 32:10 37:11 |
| 63:7 | 37:12,13 38:4 | 43:25 | 38:8 49:2 50:2 |
| **states** 1:1,11 | 38:9 41:3,12 | **subpoena** 38:7 | 51:6,15,20,24 |
| 9:15 12:24 | 41:18 42:25 | 38:10 | 57:12 66:13 |
| 13:19,22 14:1 | 43:1,13 44:1,9 | **subpoenas** | 83:6 84:3 |
| 14:4 | 44:25 45:4,6 | 54:3 | **surprised** |
| **status** 6:8,19 | 48:2 73:10,12 | **subsequent** | 34:13 |
| 33:6 47:24 | **steven** 36:22 | 81:2 | **survivor** 51:2 |
| **stay** 22:1 26:6 | **stockton** 65:3 | **subsumed** | 63:12 |
| 26:20,24 29:13 | **stoneking** | 15:22 | **survivors** |
| 29:14 30:11,14 | 48:11 | **subtracted** | 50:15 52:20 |
| 30:22 31:10 | **stop** 26:20 64:5 | 61:24 | 53:25 54:17 |
| 33:23,25 34:22 | **stopping** 70:20 | **succeed** 76:3 | 63:10 |
| 54:16 56:14 | **stops** 26:18 | **sudden** 60:13 | **suspect** 25:16 |
| 58:14,16 59:5 | **strategy** 22:16 | **suggest** 55:1 | **suspend** 45:9 |
| 68:4 73:14 | 22:16 26:1 | 77:15 79:11 | 68:20 69:4 |
| 77:13,14 78:13 | **street** 7:19 8:3 | **suggested** | 71:20 |
| **stayed** 54:11 | 9:3,17 10:3,18 | 46:20 56:18 | **suspending** |
| 58:19,20 59:23 | **strike** 56:24 | 80:9 | 68:8 |
| 60:1,2,7,8,8,9 | **strong** 49:5,6 | **suggests** 50:25 | **suspension** 6:2 |
| 60:13,14 78:13 | 54:18 55:10 | **suite** 8:3,10,17 | **sustained** |
| **steam** 29:2 | 79:13 | 9:3,17 10:18 | 50:10 |
| **steinman** 47:22 | **strongest** 45:25 | 87:22 | **syracuse** 30:5 |
| 48:3,17,19 | 46:5 55:12 | **summary** | 30:6,12,19 |
| 49:7 51:12 | **strongly** 13:7 | 35:22 | 31:7,15 32:22 |
| 56:4 57:22 | | | |

| t | | | |
|---|---|---|---|
| **t** 87:1,1 | **terrana** 4:16 | 55:12,12 59:4 | **things** 15:13 |
| **tails** 67:18 | 4:18 8:15 | 60:16 62:7,7 | 33:4 36:25 |
| **take** 28:11 31:8 | 20:22 35:11 | 64:2 66:5,6 | 48:3 |
| 66:6 79:15 | **terrible** 13:9 | 69:5 70:20 | **think** 14:21 |
| 85:11,23 | **test** 12:16 | 72:12 73:24 | 15:3 16:15 |
| **taken** 42:17 | 45:14 46:10,11 | 75:6 76:8 80:5 | 23:19,19 24:1 |
| 47:15 58:8 | 46:12,21 47:16 | 80:7,8,8,13 | 24:21 25:21 |
| 79:23 | 50:4 54:5,7 | 86:6,12 | 26:17 27:1,6 |
| **takes** 86:5 | 55:13 59:5,7 | **there's** 14:13 | 34:15 38:4 |
| **talk** 13:4 14:24 | 60:16,19 66:18 | 15:2,23 23:20 | 40:3 41:14,18 |
| 25:12 56:24 | 66:20 69:3 | 29:8 32:11 | 41:19 43:4 |
| 65:6 67:3 71:6 | 78:25 79:2,5 | 40:1,23,24 | 44:18 46:2,5 |
| 85:14,15 | 79:11,17 80:9 | 54:13 56:19 | 47:17 50:1,14 |
| **talked** 63:4 | 81:22 | 58:5 59:17 | 50:14 51:15 |
| 68:25 | **testify** 67:15 | 62:17 67:23,25 | 52:22 56:5,23 |
| **talking** 76:23 | **thank** 13:16 | 76:13 78:24 | 59:8,23 60:13 |
| 76:24 78:6 | 17:2,18,19 | 80:9,15 | 61:21,25 62:19 |
| **talks** 43:5 | 18:11,23 20:17 | **they'd** 49:20 | 62:22 63:3,12 |
| **task** 35:23 | 20:18 21:3,19 | **they'll** 46:13 | 65:24 66:20,22 |
| **tell** 23:10 24:10 | 27:14 29:4,25 | 51:16 61:1 | 68:12 70:14 |
| 24:15 42:4 | 35:6,9 37:3,8 | 72:25 | 72:5,9 74:17 |
| 46:9,16,17 | 38:22 39:4 | **they're** 14:23 | 75:7,15,20 |
| 54:6 56:3,22 | 43:13 45:6 | 26:5,13 27:6 | 76:1,3,11 77:4 |
| 61:1 66:8,11 | 66:4,4 68:2,2 | 32:10 40:7,11 | 79:19,21 80:4 |
| 67:19 72:3 | 68:24,24 69:13 | 47:14 49:8 | 80:15 81:16 |
| 81:24 | 69:14 82:2 | 50:14 57:6,11 | 83:23,23 |
| **telling** 32:25 | 84:8 85:2,4,19 | 59:25 60:7,13 | **thinking** 74:21 |
| **temporarily** | 86:9 | 64:1 65:25 | **third** 5:19 7:12 |
| 45:9 | **thankful** 14:2 | 66:24 68:15 | 10:11 36:18 |
| **temporary** 6:2 | **that's** 14:2,24 | 70:15 80:10 | 54:6 61:3 |
| **ten** 12:25 16:21 | 17:12 18:3 | 83:8,9 | 64:15 |
| 16:23 17:16 | 19:3 24:6 | **they've** 62:20 | **thirds** 72:6 |
| **tenth** 64:14,21 | 27:22 32:22 | 67:13 73:25 | **thought** 25:17 |
| **terms** 40:8 | 34:18 38:19 | 78:25 | 31:24 39:10 |
| 44:10 48:6 | 40:14 43:10 | **thing** 33:22 | 42:5 48:23 |
| | 45:3 46:24 | 45:24 48:5 | 51:23 62:18 |
| | 53:2,20,24 | 53:1 69:2,6 | 75:2,3 76:11 |

[thought - understood]                                                    Page 30

76:12 77:20
81:11,13
**thoughts** 45:22
48:22
**thread** 80:20
**three** 46:18
49:21 50:22
51:12,13 54:4
56:22 57:1
61:12 62:13
63:5 65:11
68:14 70:8,16
70:23 72:13
77:7 80:4
**thuma** 65:17
**time** 6:13,17
15:14 21:15
23:1 24:12
25:1 27:13
29:1 32:17
35:2 43:2
44:21 45:19,19
47:3 53:3 54:6
62:23 65:2
67:4,9,10
68:16 70:1
71:10 74:21
76:19,22 83:14
83:16 85:5
**times** 60:23
**today** 13:7
16:3 26:14
27:14 37:7
38:2,2 51:24
54:12,20,25
58:24 61:3
67:24 68:7,16

75:19 81:5
84:3,10 86:6
**todd** 7:23
77:24
**toggle** 49:23
67:16
**told** 28:5 31:2
46:2 50:18
52:17 55:4
56:18,21 60:14
65:22 66:23
**tolerate** 47:19
**tomorrow**
68:17,18 69:9
69:11 71:11
76:22 83:5
84:15 86:7
**took** 30:4
33:10 69:13
**top** 78:25
**topic** 15:4
**toss** 66:2
**tossing** 65:25
**total** 33:16
35:4 36:4
73:13
**touch** 70:20
**tough** 66:10
**towards** 29:10
75:9
**track** 39:19
61:2
**transcribed**
6:25
**transcript**
31:15 87:4

**trial** 62:22
81:16
**trials** 47:23
48:1,15,25
55:13,20
**triangle** 65:9
**tried** 22:11
23:3 33:5 46:1
48:22,25 49:1
49:8 50:1
51:12 55:20,21
56:4 62:14,16
67:2 76:10
**true** 49:1 87:4
**trust** 69:12
**trustee** 9:16
12:24 13:19
14:1,4 15:15
34:16
**trustee's** 13:22
**try** 15:8,10
48:21 49:5,7
55:6 62:23
63:2 72:8
78:14
**trying** 28:6
57:11 66:23
71:3
**turn** 27:15
41:6
**turned** 30:21
30:25
**turns** 15:21
**twice** 54:5 56:1
56:21
**two** 12:13,18
24:11 27:20

33:9 34:5 42:3
42:8,11 45:13
46:7 47:1
50:22 51:13
57:12 58:3,8
58:16 60:24,25
64:21 67:2
72:6 73:7 77:2
80:3 81:8
82:25
**type** 65:10
**typical** 34:18

**u**

**u.s.** 1:23 9:16
15:15 34:16
**ultimate** 31:17
**ultimately**
31:18
**uncomfortable**
29:21
**under** 27:6
39:11 40:6
41:4 47:11
49:19
**understand**
26:7 34:12
42:23 50:23
68:12 76:8
77:2,18,19
85:8
**understanding**
12:23 13:1
20:1 47:25
57:21
**understood**
30:10 33:2
43:20

[underway - week]                                                      Page 31

**underway**
  82:20
**undone**  71:24
**unfortunately**
  30:4,12,17
**uniform**  78:21
  78:21
**unincorporated**
  59:10
**uniondale**  8:18
**united**  1:1,11
  9:15 12:24
  13:19,22,25
  14:3
**universe**  52:10
  78:8 79:6
**unknown**  72:2
**unreasonable**
  83:18,20
**unredacted**
  44:17
**unsecured**  5:6
  5:25 27:17
**unsettled**  75:5
**unwilling**
  79:16
**update**  12:19
  12:20,22 13:17
  13:17
**updates**  22:22
**upset**  85:22
**urged**  45:19
**use**  36:25
  39:17 40:1,3
  61:22,23 86:1
**uses**  62:5

**usual**  40:14
**usually**  33:9
  35:3
**utter**  23:1

**v**

**v**  6:7
**vacated**  83:13
  84:4
**vague**  15:14
**value**  50:6
**varick**  9:17
**varied**  65:8
**various**  52:24
**vent**  24:23
**venting**  22:25
  25:18
**verdict**  72:21
  72:24
**verdicts**  51:13
  62:14
**veritext**  87:20
**versa**  63:12
**versus**  15:24
**vertetis**  10:16
  10:17
**vesey**  7:19 10:3
**viable**  50:14
**vice**  63:12
**victims**  49:5
**view**  30:21
  32:20 65:22
**violate**  31:10
  42:5,15
**violated**  40:8
**violates**  33:25
**violating**  26:24

**violation**  26:6
  29:14 31:11
  33:23
**violations**  43:9
**vis**  54:14,14
**void**  33:24
**voluminous**
  31:14
**voluntarily**
  65:3
**voluntary**
  25:13
**vote**  51:3,18
  53:13,14,18
  63:10 66:25
**voted**  63:11,11
**voting**  50:23

**w**

**w**  7:5
**wa**  10:19
**wait**  36:13
  66:11
**waiting**  22:21
  57:6,6 68:18
**waking**  72:4
**want**  13:14
  18:2 20:25
  26:22 32:9,14
  36:25 38:13,23
  39:2 40:19,21
  40:22 47:2
  49:19 54:7
  56:22 66:2
  69:2,6 71:3
  78:6 81:24
  84:13,17,22
  86:11,11

**wanted**  14:4
  21:18 30:7
  31:5 33:20
  34:4 42:5
  43:15 45:5
  46:17 71:17
  76:20 77:6
  82:6
**wants**  76:6
**warrant**  19:15
**washed**  51:14
**washington**  9:4
**wasn't**  24:6
  26:8 34:24
  35:1 62:16
  82:22 83:6
  84:23
**waste**  22:17
  23:1
**water**  55:25
  61:15
**way**  25:20
  27:11 29:4,9
  40:14 45:21
  48:8 51:23
  56:18 57:11
  66:24 68:4
  69:3 76:23
  77:11
**ways**  50:2
**weak**  54:18
  55:10 79:14
**weaknesses**
  47:17
**week**  82:11
  84:19

| | | x | 50:18 54:25 |
|---|---|---|---|
| **weight** 32:23 | **wisdom** 46:23 | | 85:7 |
| **weird** 38:18 | 63:1 | **x** 1:4,10 16:9 | |
| **welcome** 54:5 | **wish** 16:24 | **y** | **z** |
| **went** 39:10 | 17:14 18:7,20 | | **z** 16:9 |
| 42:2,10 61:23 | 19:5,19 20:4 | **y** 16:9 | **ziehl** 5:5,7,10 |
| 63:10,13 71:18 | 20:14 69:25 | **yeah** 14:17 | 7:10 8:8 10:9 |
| **weren't** 19:14 | **wishes** 21:12 | 25:9 35:17 | 21:5,9 39:5 |
| 46:3 63:7 | **withdrew** | 49:16 65:6 | 41:12 43:17 |
| 76:25 | 57:15 | 66:4 79:4 | 45:11 57:20 |
| **we'll** 14:9 | **withstand** | 80:15 82:20 | **zipes** 9:20 |
| 27:24 33:8 | 72:21,24 | **year** 85:14 | 12:22 13:3 |
| 34:1 43:21 | **won't** 34:2 | **years** 34:25 | 14:6,11,12,20 |
| 44:8 48:21 | 55:25 56:24 | 62:17 | 15:1,7,20 16:5 |
| 49:7,20 53:21 | 86:13 | **year's** 84:14,17 | 16:13 21:13,14 |
| 68:12 70:11,13 | **word** 39:7 | **yesterday** | 21:19 25:12 |
| 73:3,4 80:13 | 52:13 64:8,10 | 66:14 | 36:6,8 |
| 85:14 86:10 | **work** 14:3 | **yield** 58:6 | **zipes'** 12:24 |
| **we're** 14:2,3 | 24:22 42:5 | **york** 1:2,7,13 | **zoom** 33:6 |
| 16:2 29:21 | 68:12 82:8 | 7:6,13,20 9:11 | **á** |
| 31:21 33:22 | 84:13,17 | 9:18 10:4,12 | **á** 54:14 |
| 42:21 52:21,22 | **worked** 24:5 | 32:17 57:11 | |
| 54:16 61:5 | **working** 27:14 | 70:25 71:2 | |
| 62:7 66:18 | 31:21 60:11 | 75:24 76:15 | |
| 71:4 76:22 | 69:15 70:24 | 81:6 | |
| 80:1,3,3 | 75:8 78:19 | **you'll** 23:17 | |
| **we've** 26:11 | **works** 55:12 | 34:2 39:9 | |
| 33:5 34:11 | **worth** 50:22 | **you're** 25:3 | |
| 54:5,13 56:1 | 76:16 | 32:25 47:21 | |
| 69:24 74:7 | **worthless** 30:2 | 53:3 59:22 | |
| 77:19 84:3 | **wouldn't** 30:1 | 64:12 66:8,9 | |
| **what's** 38:23 | 69:4 77:16 | 67:1,20,21 | |
| 43:14 48:13 | **wow** 67:25 | 68:18,20 79:7 | |
| 52:7 54:2 | **writing** 34:3 | 80:19,19,20 | |
| **wi** 8:4 | 40:10 | 83:25 | |
| **willing** 77:2 | **written** 24:16 | **you've** 16:19 | |
| **window** 73:22 | **wrote** 59:20,25 | 24:5 30:24 | |
| 74:25 | 63:21 | 40:18 45:20 | |