JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Eric Stephens
Andrew Butler
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Counsel for the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : |
| | : Chapter 11 |
| THE ROMAN CATHOLIC DIOCESE OF | : |
| ROCKVILLE CENTRE, NEW YORK,[1] | : Case No. 20-12345 (MG) |
| | : |
| Debtor. | : |
| | : |
| | : |

### <u>DECLARATION OF ERIC P. STEPHENS</u>

I, ERIC P. STEPHENS, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a partner in the law firm Jones Day, counsel for the Roman Catholic Diocese of Rockville Centre, New York, the debtor and debtor-in-possession (the "Diocese" or the "Debtor") in this case. I submit this declaration in response to the Court's direction during the January 16, 2024 court conference in this case to provide a declaration concerning the Debtor's Eighth Omnibus Claim Objections, dated March 1, 2023 [Docket No. 1730] (the "Objections").

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

The Court directed a declaration from the Debtor describing "whether all files have been obtained, whether there are any where you haven't obtained the files and when you searched the files, was there any evidence of prior or subsequent alleged sexual abuse in those files." 1/16/2024 Hearing Tr. 29:14-23.

***The Diocese's Document Collection and Production Efforts***

2.      With respect to the Diocese's document production in this case, I previously submitted a Declaration in support of the Diocese's Motion for A Preliminary Injunction Under Sections 362 and 105(a) of the Bankruptcy Code, dated July 21, 2022. Adv. Pro. Docket No. 128. I also submitted written direct testimony, dated April 6, 2023 [Adv. Pro. Docket No. 180] and provided live testimony on April 19, 2023 in connection with that motion. I also submitted a Declaration in Objection to the Motion of the Official Committee for Unsecured Creditors for Relief from Confidentiality Agreement, dated January 9, 2024 [Docket No. 2803].

3.      Prior to the Diocese's filing for chapter 11, I served as one of its principal outside litigation counsel in connection with all of the prepetition State Court Actions, and I currently serve as one of the Diocese's principal outside litigation counsel in connection with active State Court Actions, including in connection with non-party discovery for those actions. I have supervised the Jones Day team responsible for collecting, reviewing, and producing documents from the Debtor's files in connection with the State Court Actions and this bankruptcy case.

4.      As described in my prior sworn statements, over the past four and a half years, the Diocese has produced over 2.5 million pages of records from the Debtor's files. Those records include financial and organizational documents, policies and procedures, as well as personnel files for clergy and lay employees.

5.      As stated in my prior testimony, the Diocese substantially completed its production of CVA Claim Documents on May 31, 2022. Adv. Pro. Dkt. No. 128, ¶ 26 ("On May 31, 2022,

the Diocese sent a letter to the Committee explaining that it had substantially completed its productions of information in response to the Committee's requests."); Adv. Pro. Dkt. No. 180, ¶ 26 (same).

6.      In order to make those productions, Jones Day, with assistance from an outside electronic discovery vendor, gathered digital and paper records from the Diocese (including its Chancery, General Counsel's office, Office of Child Protection, Risk Department, and Archives), as well as the Diocese's current and former outside law firms. Digital records were copied to an electronic database hosted by the electronic discovery vendor. Paper records were scanned by the electronic discovery vendor and those digital scans of the paper records were then copied to the electronic document database. Subject to the limits of the available technology, all of the records added to the electronic database were made text searchable when added to the database.

7.      In order to ensure the completeness of the electronic database, when a new alleged abuser was identified in connection with a State Court Action or a proof of claim in this case, attorneys at Jones Day ran a search to determine whether a personnel file for the alleged abuser had already been located and added to the electronic database. If there was no file for an alleged abuser within the electronic database, attorneys at Jones Day followed up with the Diocese (including its Chancery, General Counsel's office, Office of Child Protection, Risk Department, and Archives) to conduct an additional search for a personnel file for the alleged abuser. When those follow up searches identified additional personnel files (or other CVA Claim Documents), they were promptly collected and added to the electronic database.

8.      Throughout the State Court Actions and this bankruptcy, Jones Day and the Diocese, despite best efforts, have not located a personnel file for every alleged abuser. Circumstances that I am personally aware of where a personnel file cannot be located include those

where: (i) the Diocese does not maintain a personnel file for the alleged abuser, including members

of religious orders; and (ii) there is insufficient (or incorrect) information about the alleged abuser

to identify the pertinent file, including allegations against "John Doe" and "Jane Doe" abusers.

9.      When producing documents to claimants in this bankruptcy or plaintiffs in State

Court Actions, Jones Day, with assistance from the electronic discovery vendor, identifies the

relevant documents within the document database and makes an electronic production of those

records.

### *The Eighth Omnibus Claim Objections*

10.     During the course of this bankruptcy, the Debtor has made a total of 16 Omnibus

Claim Objections pursuant to the Court's January 10, 2023 Order Approving Claim Objection

Procedures and Granting Related Relief. Docket No. 1554. The Debtor's Claim Objections have

addressed duplicate / amended claims, late claims, time barred claims, satisfied claims, IRCP and

BSA released claims, and claims that, in various ways, fail to plead plausible claims against the

Debtor. Pursuant to the Court's directive during the January 16, 2024, the Debtor's discovery

efforts in connection with its Eighth Omnibus Claim Objections are set forth below.

11.     The Debtor's Eighth Omnibus Claim Objections were directed at 30 claims that,

the Debtor asserted on the Objection, were not supported by adequate allegations of notice to the

Diocese in connection with claims of negligence under New York State law. The Proofs of Claim

were subjected to the Eighth Omnibus Claim Objections on the basis of the following criteria:

- the accused perpetrator has only a single Proof of Claim in this proceeding alleging that he engaged in sexual abuse;

- the accused perpetrator is not on the list of perpetrators with respect to whom the Debtor has paid an award to a claimant through the Debtor's Independent Reconciliation and Compensation Program ("IRCP") or as to whom there has been an adverse determination before the Diocesan Review Board ("DRB");

- the accused perpetrator is not on a list of accused abusers compiled by the Official Committee of Unsecured Creditors ("UCC") in this case, to "supplement[]" the Diocese's list; the UCC asserts that the individuals on its list "have been accused of committing sexual abuse" and either allegations against them have been found credible or sexual abuse lawsuits have been filed against them;

- the Proof of Claim either (i) does not contain any information in response to a question whether the claimant reported the alleged abuse to the Debtor or whether there was any witness to the abuse, or (ii) affirmatively states that no such report was made nor was there any witness to the alleged abuse;

- Where a complaint in a civil action is available, it either (i) does not allege that the claimant reported the alleged abuse to the Debtor or that there was any witness to the abuse, or (ii) affirmatively states that no such report was made nor was there any witness to the alleged abuse; and

- There is not otherwise any supported allegation or indication that the Diocese was aware, prior to the alleged abuse, that the alleged perpetrator was likely to engage in such conduct.

Docket No. 1730, ¶ 18.

12.     After receiving oppositions to the Objections from claimants, a reply from the Debtor, and holding a hearing on April 5, 2023, the Court entered an order: overruling the Objections with respect to four claims; sustaining the Objections with prejudice as to a single claim where no opposition was filed; and sustaining the Objections with leave to amend for the remaining 25 claims where, based on claimants' pleadings, the Court determined the claims were either "Conclusory Claims" or "Insufficient Facts Claims." *See* Memorandum Opinion Sustaining in Part and Overruling in Part Debtor's Eighth Omnibus Objection to Claims, dated May 1, 2023, p. 31. Docket No. 2062.

13.     In reaching its decision, the Court determined that the claims afforded leave to amend failed to meet federal pleading standards because "The Conclusory Claims contain no specific factual allegations about notice in either the proof of claim, the attached state court complaint or in the Claimant's response" and the "Insufficient Fact Claims" did not contain sufficient factual content to state a "plausible" claim. *Id*. at 32.

14.    While the Court sustained the Objections based on claimants' pleadings, it also "conclude[d] that many of the Claimants are entitled to leave to amend their Claims" and planned to "schedule a hearing to discuss documents in the possession of the Diocese that should be produced to counsel for the Claimants before they must file amended claims." *Id*. at 42, 45.

15.    On May 16, 2023, the Court held a conference during which it directed the Debtor, the Official Committee of Unsecured Creditors, and pertinent counsel to the claimants to meet and confer to determine the scope of discovery in connection with any claims that the Court disallowed with leave to amend. Those parties then met and conferred and exchanged proposals throughout May and early June. *See* Exhibit A, Letter from T. Geremia to Hon. Chief Judge Glenn, dated June 16, 2023 (describing meetings and exchanges of proposals).

16.    On June 16, 2023, the Debtor agreed to produce to the pertinent claimants' counsel the personnel files for the accused abusers at issue for each of the claims disallowed by the Objections. The Debtor also agreed to a schedule for those productions and to providing a certification on the scope of the Debtor's search, as had been directed by the Court during the May 16 conference. *See* Ex. A. Many, but not all, of those files were located as part of the Diocese's prior searches between 2019 and 2022 that are described above. *See* ¶¶ 2-9, *supra*.

17.    The Diocese's June 16 letter also disclosed that additional files had been located as part of further follow up searches in connection with the Objections. The Diocese's letter confirmed that the Debtor's proposed productions would include the additional files that had been located. Ex. A, n. 2 ("As a further effort to ensure the completeness of its document production in preparation for the document production called for by the Court in its Memorandum Opinion, the Diocese has conducted a supplemental search and collection of files from its Chancery and archives relating to the accused at issue. Those efforts will be described in the forthcoming

certification and the Diocese will include any non-duplicative, non-privileged documents located by this search in its productions to these claimants."). Those searches and the documents located are described more fully below. *See* ¶¶ 21-28, *infra*.

18.     On June 23, 2023, claimants' counsel rejected the Diocese's proposed production; they sought instead to litigate a series of discovery issues before the Diocese would produce the documents, including the contents of the certification that would accompany the Debtor's production. *See* Exhibit B, Letter from J. Amala to Hon. Chief Judge Glenn, dated June 23, 2023. Claimants' response included an acknowledgement of the Diocese's supplemental searches and that "the Debtor [had found] more documents regarding some of the alleged abusers." Ex. B at 1.

19.     On July 19, 2023, the Court entered its Memorandum Opinion and Order Sustaining in Part and Denying in Part the Debtor's Thirteenth Omnibus Objection. Docket No. 2334. In that opinion, the Court noted "that discussions regarding the scope of that [claim objection related] discovery remain ongoing. The parties should contact the Courtroom Deputy to schedule a conference if they are at an impasse and cannot reach agreement." *Id*. at 12.

20.     Prior to Mr. Stoneking's letter of January 12, 2024 and my response of January 16, 2024, neither the Committee, any of the pertinent claimants' counsel, or the Debtor had contacted the Court about any discovery in connection with the Objections.[2]

**The Diocese's Objection-related Discovery Follow-up and Proposal**

21.     As described in Mr. Geremia's letter of July 16, 2023, as part of preparing its discovery proposals and meeting and conferring with opposing counsel in May and June of 2023

---

[2] During the summer and fall of 2023, in light of the potential of a October 31, 2023 dismissal of this bankruptcy if there was no consensual plan by that date, the Debtor did not expect to be able to complete the process of claim objection discovery, claim amendment, and further claim objections before the case was to be dismissed. As a result, it turned to other priorities rather than continue to pursue a process to press objections it anticipated could not be resolved before October 31, 2023.

concerning the discovery to be provided in connection with the Eighth Omnibus Claims Objections, the Debtor took steps to inventory and prepare files related to the Objections for production. *See* Ex. A, n. 2.

22.     In the course of preparing the Objections, Jones Day attorneys had: (i) identified the alleged abuser with respect to each claim; and (ii) determined whether that alleged abuser met the selection criteria for the Objections.

23.     The alleged abusers identified in connection with the Objections were: Fr. Alban Rimmer, Michael Palagonia, Msgr. Thomas Hartman, Thomas Murtaugh, Allan Parker, Fr. Robert Lane, Fr. Hugh Reilly, Fr. Brian Gallagher, Fr. John Mahoney,[3] Fr. Joseph Granata, James Bridgette Hanley, Sr. Matthew Mary Gay, Fr. Thomas Moriarty, Fr. Philip Reehil, John Pulick, Br. Benignus McBride, Fr. Punakateal Ivor, Sr. Mary Aileen, Dorothy Ticho, Michael Hart, Fr. Peter Nolan, Fr. Vincent P. Loy, Fr. Richard Nilsson, Mitchell Wolper, Br. Bernard Nolan, Fr. Fred Voltaggio, Fr. Charles Kohli, Sr. Helen Edward, Sr. Mary Eulich, Sr. Paul Francis, Fr. Richard Kondziolka, Br. Alfred Benigni Jr., and Sr. Mary Thoma.

24.     As part of determining whether a Proof of Claim met the selection criteria for the Objections, Jones Day attorneys searched the Debtor's electronic database (*see supra* ¶¶ 2-9) for the names of the accused and reviewed the personnel files of individuals located within the database. A Proof of Claim was considered to meet the Debtor's criteria that "There is not otherwise any supported allegation or indication that the Diocese was aware, prior to the alleged abuse, that the alleged perpetrator was likely to engage in such conduct" where: (i) a personnel file

---

[3] Note that at least three priests by the name of Fr. John Mahoney have served in the Diocese of Rockville Centre. Based on the information available, we have identified the personnel file relating to the Fr. John Mahoney at issue in connection with Objection at issue and I have re-reviewed it in connection with this Objection.

was identified for the accused abuser at issue and it contained no such indication; or (ii) no personnel file (and thus no additional support for an allegation of notice) was available.

25.     While, as described more fully above, Jones Day and the Diocese had already performed multiple document searches and collections in connection with both State Court Actions and this bankruptcy, as part of preparing the proposed productions in connection with the Objections, I asked Diocesan personnel at both the Chancery and the Archives to perform follow up searches for personnel files for any accused at issue in the Objections where no personnel file had yet been located.

26.     In connection with that follow up effort, on May 31, 2023, I requested that Diocesan personnel perform additional searches for personnel files for: Fr. Punakateal Ivor, Msgr. Thomas Hartman, Sr. James Bridgette, Thomas Murtaugh, Fr. John Mahoney, Br. Benignus McBride, Fr. Alban Rimmer, Sr. Mary Aileen, Fr. Hugh Reilly, Dorothy Ticho, Michael Hart, Michael Palagonia, Mitchell Wolper, Br. Bernard Nolan, Fr. Fred Voltaggio, Fr. Philip Reehil, Alan Parker, John Pulick, Fr. Peter Nolan, and Sr. Matthew Mary Gay.

27.     On June 1, 2023, the Diocesan Archivist notified me that paper files had been located in the Diocese's archives for the following individuals: Msgr. Thomas Hartman, Thomas Murtaugh, Fr. Hugh Reilly, Dorothy Ticho, Michael Palagonia, Fr. Fred Voltaggio, Fr. Philip Reehil, Fr. Peter Nolan, and Sr. Matthew Mary Gay. I then made immediate arrangements to have those files collected, scanned, and added to the Debtor's electronic database of documents.

28.     Based upon my review of Jones Day and Diocesan records, June 1, 2023 is the first time that the files for Thomas Murtaugh, Fr. Hugh Reilly, Dorothy Ticho, Michael Palagonia, Fr. Fred Voltaggio, Fr. Philip Reehil, and Sr. Matthew Mary Gay were located in connection with discovery for this case. Files for Msgr. Thomas Hartman and Fr. Peter Nolan were previously

located and scanned on-site at the Diocesan Archives in February 2022, however, based on my review of the relevant records, those files do not appear to have been reviewed before the Objections were made.

### My Review of Objections-related Personnel Files Located June 1, 2023

29.     In accordance with the Court's instruction, I have reviewed: (i) summaries of the additional personnel files prepared by Jones Day attorneys in June 2023; and (ii) the underlying additional personnel files related to the Objections. The result of that review is set forth below. In light of the age and handwritten nature of many of the documents within the files, not every word on every page remains legible. My review is based on my best understanding of the files in their current condition. Consistent with the Debtor's proposal of June 16, 2023, the Debtor has also now prepared each of these personnel files for production to the relevant claimants' counsel—so that they may also review the files—and those productions will be served in short order.

30.     Based upon my review of the personnel file for Msgr. Thomas Hartman, that file does not contain any allegations of sexual abuse.

31.     Based upon my review of the personnel file for Thomas Murtaugh, that file does not contain any allegations of sexual abuse. The file does contain an allegation of physical abuse subsequent to the allegations in the claim at issue in the Objections.

32.     Based upon my review of the personnel file for Fr. John Mahoney, that file does not contain any allegations of sexual abuse.

33.     Based upon my review of the personnel file for Fr. Hugh Reilly, that file does not contain any allegations of sexual abuse.

34.     Based upon my review of the personnel file for Dorothy Ticho, that file does not contain any allegations of sexual abuse.

35.     Based upon my review of the personnel file for Michael Palagonia, that file contains an allegation of sexual abuse that took place after and is reflected in a record dated after the date of the alleged abuse in the claim at issue in the Objections. The Palagonia file was produced to claimant's counsel on October 31, 2023 in connection with an active State Court Action.

36.     Based upon my review of the personnel file for Fr. Fred Voltaggio, that file does not contain any allegations of sexual abuse.

37.     Based upon my review of the personnel file for Fr. Philip Reehil, that file does not contain any allegations of sexual abuse. The Reehil file was produced to claimant's counsel on January 19, 2024 in connection with an active State Court Action.

38.     Based upon my review of the personnel file for Fr. Peter Nolan, that file does not contain any allegations of sexual abuse.

39.     Based upon my review of the personnel file for Sr. Matthew Mary Gay, that file does not contain any allegations of sexual abuse. The Gay file was produced to claimant's counsel on January 19, 2024 in connection with an active State Court Action.

40.    No personnel file has been located for: Fr. Punakateal Ivor, Sr. James Bridgette, Br. Benignus McBride, Fr. Alban Rimmer, Sr. Mary Aileen, Michael Hart, Mitchell Wolper, Br. Bernard Nolan, Alan Parker, and John Pulick.

41.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Canmore, Alberta, Canada on January 24, 2024.


_____
Eric P. Stephens

EXHIBIT A

Letter from T. Geremia to Hon. Chief Judge Glenn, dated June 16, 2023

# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

DIRECT NUMBER: 2123263429
TRGEREMIA@JONESDAY.COM

June 16, 2023

**BY EMAIL**

The Honorable Chief Judge Martin Glenn
U.S. Bankruptcy Court for the Southern District of New York
1 Bowling Green
New York, New York 10004

Re:     *In re Roman Catholic Diocese of Rockville Centre,*
        *No. 20-12345 (Bankr. S.D.N.Y.)*

Dear Chief Judge Glenn:

We represent the Debtor in the above-captioned case. We write to provide the Court with a proposed Order in connection with the Debtor's Eighth Omnibus Objection to Claims, and in response to the Court's Memorandum Opinion ruling on this omnibus objection (see ECF Doc. No. 2062). The Court's Memorandum Opinion sustained the Debtor's objection without prejudice as to 25 claims, ruling that these claimants have not adequately alleged that the Debtor had advance notice of the alleged perpetrator's propensity to engage in sexual abuse, as required by New York law. As directed by the Court at a May 16, 2023 conference, the Debtor has met and conferred with counsel for the Official Committee of Unsecured Creditors, Mr. Mones, Mr. Amala, and Mr. Stoneking. Through that process, we have resolved several issues and believe that only two remain as to which there is disagreement.[1]

***First***, at the May 16, 2023 conference, the Court stated that the Debtor would have to certify the scope of the search that it made when it produces documents to these claimants. *See* 5/16/23 Tr. at 50:19-22 ("I have required this in other cases, and that is going to be a certification on the scope of the search that's been made. I think that's required. Well, I'm requiring it."). In response to this directive, the Debtor's proposed Order provides that the Debtor will file a sworn declaration or declarations, when the Debtor produces to each claimant the pertinent personnel file and any other documents in the Diocese's electronic collection that include the name of the

---

[1] The parties began their meet-and-confer process nearly a month ago with a May 17, 2023 meeting, followed by another meeting and several rounds of correspondence including proposed Orders. The Debtor responded to a June 7, 2023 letter from Mr. Amala on June 9, and the Debtor included a revised proposed Order. Mr. Amala's June 7 letter stated that "[t]he parties will see if they can resolve their differences, and if not, we will submit proposed orders in the later part of next week and request a status conference with the Court." We asked for claimants to respond to the Diocese's June 9 letter by June 13. They did not do that, and have still not responded as of the date of this letter, but in accordance with Mr. Amala's stated schedule for making submissions to the Court the Debtor believes that the issues addressed in this letter are the only two that remain and are ripe to present for resolution.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Chief Judge Martin Glenn
June 16, 2023
Page 2

pertinent abuser, which describe the physical locations that have been searched for the personnel files, the organization and composition of the personnel files, the Diocese's document retention policy, and the process that was followed to collect the documents. *See* Proposed Order ¶ 3. The declaration will further state that, with respect to the abusers at issue on these claims, the Diocese's production is complete or that there are no documents that the Diocese has in its possession related to certain of the alleged abusers at issue. *See id.* ¶ 3(e). In response to comments from claimants' counsel during this meet-and-confer process, the Diocese also added that the declaration will state that the Diocese has no reason to believe that records regarding these alleged abusers were ever destroyed or are missing. *See id.* ¶ 3(c).

The sole dispute that we believe there is with respect to this issue is that the Debtor proposes that this declaration will accompany the Debtor's document production to each claimant. Mr. Dowd, who works with Mr. Mones, agreed with this proposal on a June 6, 2023 telephone call. Other claimants' counsel, however, have taken the position that this declaration should be produced *before* any documents are produced. They seem to have in mind to raise and address disputes about the Diocese's production—including about whether there should be "discovery about discovery," i.e., discovery about the Diocese's document production efforts— before the documents are produced. The Diocese believes that the Court did not contemplate such a further, adjunct process before the Diocese produces documents and the claimants amend their claims as directed by the Court. The Diocese produced the larger universe of personnel files to the Committee and counsel for claimants on the Committee (including Mr. Mones, Mr. Amala, and Mr. Stoneking) more than a year ago, pursuant to a Court-ordered stipulation. The Committee has not voiced any concerns with this production and, in fact, expressly stated to the Court, as referenced in the Court's opinion (ECF Doc. No. 2062 at 45 & nn.18-20), that the Debtor has produced the personnel files, including the confidential files, for the alleged abusers.[2] *See* 4/19/23 Tr. at 234:1-5 (the Court: "The testimony has been that all of the personnel files, including the confidential personnel files for all of the alleged abuser has been produced to the Committee. Do you agree with that? MR. BROWN: Yes."). A formal certification of a document production, when it is required, is also done after the production has been made. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 22, § 202.20-c (describing "the affidavit of the responding party" to be provided "at the conclusion" of document productions). While the Debtor does not believe that the Court had in mind engaging in a full-blown, pre-trial discovery and discovery-dispute process here, any concerns about the production with respect to any claim or abuser can then be raised in light of the documents that the claimants' counsel will actually

---

[2] As a further effort to ensure the completeness of its document production in preparation for the document production called for by the Court in its Memorandum Opinion, the Diocese has conducted a supplemental search and collection of files from its Chancery and archives relating to the accused at issue. Those efforts will be described in the forthcoming certification and the Diocese will include any non-duplicative, non-privileged documents located by this search in its productions to these claimants.

JONES DAY

Chief Judge Martin Glenn
June 16, 2023
Page 3

have in hand.  *See* 5/16/23 Tr. at 10 8-10 (where the Court stated: "[A]s I said in the opinion, I'm certainly not inclined to open up broad discovery.").  This is a more efficient, better-informed, and concrete way to address any issues a claimant may raise with respect to documents, instead of litigating about what the declaration should say concerning the production before the specific productions have been made to the counsel for each of the claimants at issue on this Objection.

The ***second*** issue raised by the claimants has to do with medical treatment records.  These claimants' counsel have taken the position in our discussion that all medical treatment records in the Diocese's possession must be produced.  The Debtor's proposed Order provides for disclosure of a privilege log reflecting any documents withheld or redacted on the basis of attorney-client privilege, work-product privilege, personally identifying information for claimants, and protected health information.  *See* Proposed Order ¶ 2(c).  The governing Protective Order in this case sets forth a process for the Debtor to redact and withhold "Protected Health Information" from its production of documents related to the claims in this case.  *See* ECF No. 320, Part I.  The Committee knows exactly what Protected Health Information has been withheld from the Debtor's document production, as do Mr. Mones, Mr. Amala, and Mr. Stoneking, because this material has been unredacted from the Diocese's document production at the Committee's request in connection with the mediation.  The Protective Order also provides for a process to raise and address disputes about the disclosure of Protected Health Information. *See* ECF No. 320, Part I ¶¶ 3-4.  Neither the Committee nor any member on the Committee has invoked this process in the nearly one-year period since the Debtor made its production of abuser personnel files.

The Debtor does not believe that this proposed Order should override the negotiated, detailed, Court-ordered process set forth in the Protective Order.  And, as the Debtor has conveyed to the Committee and claimants' counsel—both during this meet-and-confer process and when negotiating the Protective Order—the Debtor is subject to directly on-point authority in the Appellate Division, Second Department, providing for protection of a patient's physician-patient privilege in this context.  *See Friel v. Papa*, 930 N.Y.S.2d 39, 42 (2d Dep't 2011) ("Contrary to plaintiff's contention, [Father Charles E.] Papa did not waive the physician-patient privilege . . . by allowing his supervisor [Bishop William J.] Murphy [of the Diocese of Rockville Centre] to review his confidential medical records for the limited purpose of determining whether Papa could resume his duties as a pastor" following his psychological counseling).  Here again, any disputes concerning the disclosure of Protective Health Information can be raised and addressed by individual claimants as warranted, after the Diocese has made the production of documents directed by the Court in deciding the Debtor's Eighth Omnibus Objection.  They should not be summarily resolved in this Order—nor can they be, in light of notice provisions in the Protective Order—before the pertinent documents have even been produced to the claimants at issue.  *See* ECF No. 320 Part I ¶ 4 (providing that the Diocese

JONES DAY

Chief Judge Martin Glenn
June 16, 2023
Page 4

must provide a notice to the individual whose Protected Health Information is subject to a
dispute as to its disclosure).

We appreciate the Court's consideration of the Debtor's proposed Order and the issues
addressed by this letter. We are of course available for a conference, if the Court believes that
will be helpful to move this process along.

Respectfully submitted,

Todd R. Geremia

cc.    Brittany Michael, Esq.
Jason P. Amala, Esq.
Paul Mones, Esq.
Patrick Stoneking, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* | Chapter 11 |
| The Roman Catholic Diocese of Rockville Centre, New York | Case No. 20-12345 (MG) |
| Debtor.[1] | |

## [PROPOSED] ORDER CONCERNING LIMITED DISCOVERY IN CONNECTION WITH DEBTOR'S EIGHTH OMNIBUS OBJECTION TO CLAIMS

Upon the Debtor's *Eighth Omnibus Objection to Claims* that allege abuse by perpetrators as to whom the Debtor asserts claimants have not adequately alleged legally sufficient notice to the Debtor (the "Objection"), pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3007; the Court having reviewed the Objection, the responses thereto, and the Debtor's reply, having considered the statements of counsel with respect to the Objection at a hearing on April 5, 2023 (the "Hearing") and at a discovery conference on May 16, 2023 (the "Conference"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (d) notice of the Objection, Hearing, and Conference were sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Objection, responses thereto, and statements of counsel establish just cause for the relief granted herein;

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

**IT IS HEREBY ORDERED THAT:**

1.      In connection with any documents produced pursuant to this Order, counsel for Claimants with claims where the Objection was sustained with leave to amend that are not already parties to the Confidentiality Agreement and Protective Order Between the Debtor and Official Committee of Unsecured Creditors, dated January 20, 2021 [Dkt. No. 320] (the "Protective Order") shall be treated as "State Court Attorneys" and "Recipients" as those terms are defined in the Protective Order.

2.      The "documents in the possession of the Diocese that should be produced to counsel for the Claimants before they must file amended claims" as set forth in the *Memorandum Opinion Sustaining In Part and Overruling In Part Debtor's Eighth Omnibus Objection To Claims*, dated May 1, 2023 [Dkt. No. 2062] (the "Opinion") at 45 are:

  a.  The complete personnel file, if any, for the alleged abuser(s) at issue in the Claimant's claim.  For the avoidance of doubt, the term "personnel file" includes any "confidential" or "secret" portions thereof;

  b.  Any other documents within the Diocese's electronic document collection that include the name of the alleged abuser(s) at issue in the Claimant's claim; and

  c.  A privilege log reflecting any document(s) relating to the alleged abuser(s) at issue in the Claimant's claim withheld or redacted on the basis of: (i) attorney client privilege; (ii) attorney work product; (iii) Survivor PII; or (iv) Protected Health Information.[2] Any such privilege log shall comply with Bankruptcy Local Rule 7034-1.

---

[2] The definitions, redaction protocols, and dispute resolution mechanisms for Survivor PII and Protected Health Information are set forth in the Protective Order.

3.   Within ten (10) days of entry of this Order, the Diocese shall file sworn

declarations of individual(s) with personal knowledge or sufficient foundation

describing:

   a.   The physical locations that have been searched for personnel files and

        other records in connection with these matters;

   b.   The organization and physical composition of the Diocese's personnel

        files, including the "confidential" or "secret" portions thereof;

   c.   The Diocese's document retention policy applicable to personnel files, and

        that the Diocese has no reason to believe that records regarding these

        alleged abusers were ever destroyed or are missing;

   d.   The process that was followed to collect, electronically scan, and return

        documents to the Diocese in connection with these matters; and

   e.   Stating that (i) the production of documents in the Diocese's possession,

        custody or control related to the alleged abusers at issue on the Objection

        is complete; or (ii) there are no documents in the Diocese's possession,

        custody or control that relate to certain of the alleged abusers at issue on

        the Objection.

4.   The Diocese shall produce the documents described in paragraph 2, above, within

ten (10) days of entry of this Order to counsel for each of the Claimants with

claims where the Objection was sustained with leave to amend.

5.   Claimants with claims where the Objection was sustained with leave to amend

shall withdraw or amend their proofs of claims within twenty-one (21) days of the

Diocese's document production pursuant to this Order.  A claim may be amended

in accordance with this Order by filing with the Court and serving on the Diocese,

a rider setting forth allegations of fact that the Claimant contends support notice

to the Diocese of the alleged "abuser's propensity to commit abuse." Opinion at

25.


**IT IS SO ORDERED.**

    Dated: June [XX], 2023
           New York, New York


                                    _____

                                    MARTIN GLENN
                                    Chief United States Bankruptcy Judge

EXHIBIT B

Letter from J. Amala to Hon. Chief Judge Glenn, dated June 23, 2023

# PFAU COCHRAN
# VERTETIS AMALA
## ATTORNEYS AT LAW

**SEATTLE**
701 FIFTH AVENUE
SUITE 4300
SEATTLE, WA 98104
(206) 462-4334

June 23, 2023

**PARTNERS**
MICHAEL T. PFAU
DARRELL L. COCHRAN[2]
THOMAS B. VERTETIS[1 2 4]
JASON P. AMALA
MALLORY C. ALLEN[1]
IAN M. BAUER
ELIZABETH P. CALORA
ANELGA DOUMANIAN[1 5]
COLLEEN DURKIN PETERSON
KEVIN M. HASTINGS
CHRISTOPHER E. LOVE
VINCENT T. NAPPO[1]
STEVEN T. REICH[7]
ANDREW S. ULMER

**ASSOCIATES**
PATRICK A. BROWN
SYDNEY E. CODD[3]
ALEXANDER G. DIETZ
BRIDGET T. GROTZ
WILLIAM T. MCCLURE
MICHAEL D. MCNEIL
ALYSSA R. NEVALA
MARIAH E. OGDEN[3]
LESLEY O'NEILL[6]
BENJAMIN B. WATSON

ALL ATTORNEYS
LICENSED IN WA
EXCEPT MARIAH OGDEN

1 LICENSED IN NY
2 LICENSED IN OR
3 LICENSED IN CA
4 LICENSED IN NJ
5 LICENSED IN MO
6 LICENSED IN GA
7 LICENSED IN ID

<u>Via Email</u>
The Honorable Chief Judge Martin Glenn
U.S. Bankruptcy Court for the Southern District of New York
1 Bowling Green
New York, New York 10004

Re:        *The Roman Catholic Diocese of Rockville Centre, New York*

Dear Chief Judge Glenn,

Please let this letter serve as a response to the Diocese of Rockville Centre's letter dated June 16, 2023, including its proposed order regarding the 8th Omnibus Objection to Claims. While this letter is on our firm's letterhead, it is sent on behalf of all claimants' counsel who participated in the status conference the Court held on May 16, 2023. To that end, we have attached a "redlined" version of the Debtor's proposed order that addresses the questions and concerns the Court raised at that status conference.

We are particularly alarmed given the Debtor's June 16, 2023, letter to the Court states (in a footnote, no less) that it conducted a "supplemental search" after the Court and claimants' counsel raised questions and concerns about its production, and that the "supplemental search" apparently resulted in the Debtor finding more documents regarding some of the alleged abusers. As detailed below, this type of "supplemental search" is precisely why claimants' counsel have asked the Debtor to provide its "scope declarations" in advance of its document production – to avoid or limit the number of additional "supplemental searches" and production that will be inefficient and costly to the estate. The Debtor's admission that its "supplemental search" yielded additional records supports the position of claimants' counsel.

As brief background, the parties have held two separate meet and confer conferences to address the questions and concerns the Court raised at the May 16th status conference. Despite claimants' counsel repeatedly asking the Debtor to provide substantive information regarding those questions and concerns, it has generally refused to do so. Instead of continuing a meaningful dialogue with claimants' counsel, the Debtor wrote to the Court with its own proposed order. We do not believe the Debtor's proposed order addresses the Court's questions and concerns, and worse, will result in a significant waste of estate assets.

**TACOMA:** 909 A STREET, SUITE 700 • TACOMA, WA 98402 • (253) 777-0799
**NEW YORK:** 31 HUDSON YARDS, 11TH FLOOR • NEW YORK, NY 10001 • (212) 300-2444

WWW.PCVA.LAW



June 23, 2023

On that note, the Court opened the status conference on May 16, 2023, by stating that it wanted to "express what my concerns were and are" with regard to the Debtor's Eighth Omnibus Objections and the Court's order regarding those objections. Tr. at 10. After describing the Debtor's criteria for the objections, including whether an alleged perpetrator is identified on various lists, the Court stated that "I was concerned about gaps" in the Debtor's criteria for the objections.

For example, the Court noted that it remained unclear whether the Debtor had made all of its files available to the claimants whose claims were the subject of its objections, and the Court noted that an alleged perpetrator might not be on the Debtor's list of credibly accused perpetrators "if the accused perpetrator never had a determination before the Diocesan Review Board." Tr. at 11-12. The Court also expressed concern that the Debtor may have information that an alleged perpetrator may have sexually abused children, but the Debtor never acted on that information: "I guess if they acted on it is one thing. But what if there was no determination?" Tr. at 12. To that end, the Court pointedly noted that "I don't know whether there was, you know, whether it never got that far, whether yes, there was information about Priest X, but it never resulted in a determination by the Diocesan Review Board or they found it unsubstantiated, but nevertheless, the records indicate there were allegations against them." Tr. at 13.

After raising these concerns, the Court asked the Debtor whether someone from the Debtor could certify under oath that the Debtor had accounted for the information in its possession and it had no information that the alleged perpetrator may have sexually abused a child:

> But let me ask you this, can you provide evidence under oath from people who can demonstrate they would have knowledge of this, that there never was an allegation made against a priest who was alleged to have abused, you know, one of Mr. Mones' or Mr. Amala's clients? In other words, it may well be that yeah, they had some, the confidential personnel folder indicated yeah, there were some allegations made, but they were never substantiated. But if, in fact, there were allegations made about particular priests but no adverse determination made against them, I think it would particularly relevant to the claimant's counsel to know that. And I kept studying the limitations. I'm not accusing you of anything improper about it. But when I looked at how you defined those creditors as to which you were carrying objections forward or not, I couldn't be sure that there hadn't been allegations made against the particular priest. It didn't result in an adverse determination.

Tr. at 14. The parties and the Court then had a lengthy conversation about the limitations the Court had identified. For example, counsel for some claimants raised concerns that it appeared the Debtor had withheld records regarding treatment, including records that may show an alleged perpetrator had sexually abused children regardless of whether those records reflect an "allegation" or "accusation" of child sexual abuse. Alternatively, if the Debtor did not withhold such records, the lack of treatment records raised concerns about what effort the Debtor made to account for the records in its possession, particularly when some of the files specifically refer to priests being sent to facilities that treated priests who were sexually abusing children.

Similarly, counsel for other claimants noted that the Debtor produced virtually no records regarding certain alleged abusers, including the most basic documents that the Debtor possesses on the vast majority of its priests. The lack of these records raised similar concerns about whether the Debtor had withheld records, and if not, what effort the Debtor made to account for the records in its possession. As detailed below, the Debtor has failed to provide a meaningful explanation for why it has virtually no records on these individuals.

June 23, 2023



After hearing from the parties on these issues, the Court directed the parties to meet and confer to discuss the Court's concerns. The Court ended the hearing by stating "the devil is going to be in the details" and "I have required this in other cases, and that is going to be a certification on the scope of the search that's been made. I think that's required. Well, I'm requiring it."

The parties promptly scheduled a time to meet and confer as directed by the Court. In advance of that meeting, counsel for some of the claimants asked the Debtor a number of questions with the hope that the meet and confer would be productive. Unfortunately, during the meet and confer, the Debtor stated it was not prepared to answer most of those questions and indicated it would need to respond in writing. The Debtor was also unable to answer additional questions that counsel for some of the claimants asked during the call, but indicated it would respond in writing.

The Debtor did not address claimants' counsel's questions or concerns, or more importantly, the Court's questions or concerns. Instead, the Friday before Memorial Day weekend, the Debtor sent a proposed order that glossed over the questions and concerns of the Court and claimants' counsel.

On June 6, 2023, claimants' counsel sent the Debtor a detailed letter that explained why its proposed order was unworkable. The parties met and conferred that same day, but the Debtor generally refused to reconsider its positions. On June 7, 2023, claimants' counsel sent the Debtor another detailed letter that again explained why its proposed order remained unworkable. The Debtor responded by letter on June 9, 2023, but rather than hold another meet and confer, the Debtor sent its proposed order to the Court.

Given the Debtor apparently believes the parties are at an impasse, claimants' counsel has attached a redlined copy of the Debtor's proposed order that addresses the questions and concerns the Court raised at the status conference on May 16, 2023, questions and concerns that are shared by claimants' counsel. However, given the issues raised in this letter, claimants' counsel believes it may be more appropriate for the Court to order the Debtor to provide the "scope declarations" to claimants' counsel and to order the parties to then continue their meet and confer efforts. Claimants' counsel believes this approach would likely be the most cost efficient in terms of preserving estate assets, and would ultimately lead to a faster resolution of these issues.

**The Diocese's Continued Use of the Term "Personnel File":** The Debtor continues to use the term "personnel file" in its proposed order, even though the term is vague and has no particular meaning in this circumstance. During the first meet and confer, the Debtor admitted to claimants' counsel that the term is misleading because it does *not* maintain a "personnel file" on each alleged abuser. Claimants' counsel is concerned that use of this term seems to allow the Debtor to avoid production of other files it maintained on these individuals, a point underscored by the Debtor's offer to electronically search its records for the names of these individuals. If the "personnel file" actually included all records the Debtor maintains on these individuals it would not need to propose an electronic search of its records, a proposal that is also problematic given many of its records are in handwriting (not searchable) and/or are of poor quality (not searchable).

As reflected by the records it has produced, the Debtor maintains *substantial* records on its diocesan priests, and the Debtor is in nearly constant communication with them all throughout their career. Every time a priest is assigned to a location by the Debtor, takes a leave of absence, or otherwise has a change in their status, there is paperwork documenting the change. There are letters to supervising priests asking about a priest's performance and whether there are any concerns. There are evaluations of priests and very candid (often coded) letters expressing concerns of various types to the Bishop's office. If a priest is removed from an assignment, or

June 23, 2023



if a religious order priest is granted or denied faculties to practice within the Diocese, there was correspondence reflecting that change that was undeniably within the Debtor's possession. When a priest resigns from the priesthood, they do not just pack up and leave – there is a process called laicization that involves the Vatican. Even when laicization is voluntary, there is a thick paper file that is generated. If a priest is laicized against his will, one would expect to find a litigation file associated with that highly contested proceeding.

To be clear, substantial correspondence with a diocesan priest and thick files of paperwork are not simply the result of child sexual abuse allegations – they are a part of the employment relationship between the Debtor and all of its priests. *Any* diocesan priest will have this type of documentation with the Debtor down to the most mundane detail of their employment. It simply is not credible that this type of documentation was never generated for a priest working within the Diocese, especially those who have switched assignments, taken a leave of absence, received treatment, moved geographically, or been laicized.

For some reason, this type of documentation is missing for a number of the priests who are the subject of the Debtor's objection. These priests served within the Diocese for decades and allegedly have "personnel files" that amount to a few scraps of paper. Laicized priests with empty files. Changes in assignment to the military without any documentation. Leaves of absence without any correspondence that memorializes why.

The Debtor has refused to explain why it lacks its normal records regarding these priests. Instead, it asserts that there must not have been any issue with these priests. But as detailed above, that is simply not how the Debtor operated – the missing records should exist for all priests, regardless of whether they had "issues."

One of the potential reasons for this inadequate production could be the Diocese's use of the term "personnel file," which is apparently intended to describe an amalgamation of records that the Diocese has pulled from certain files. If a record regarding a particular alleged abuser is located outside of those files, like in a Bishop's correspondence files, the record would not be included in the priest's "personnel file" because the Diocese did not search for records in each Bishop's correspondence files. So if a particular Bishop wrote to a victim's mother and apologized for the misconduct of a priest, and if the only copy of that letter was in the Bishop's correspondence files, that letter would not be included in the priest's "personnel file."

The term "personnel file" is incredibly misleading because the Debtor has used the term to suggest that every record regarding an alleged perpetrator is located in their "personnel file," but the Debtor admitted to claimants' counsel that this is not accurate – the only records in the "personnel file" are records the Debtor pulled from certain files, not all of its files. In turn, the Debtor has conspicuously refused to certify that (1) it has reviewed the production for each individual, (2) it is familiar with what is expected to be maintained by the Diocese with respect to each individual, and (3) for each individual there is nothing missing from the production, or alternatively, why it believes its standard records are missing from the production.

**The Diocese Refuses to Explain the Scope of Its Production:** Despite admitting that it does not maintain a "personnel file" on each alleged abuser, the Diocese has refused to meaningfully address the Court's questions and concerns regarding the scope of its production. Instead of providing that information now so the parties can meaningfully meet and confer about the Diocese's production, the Diocese wants to wait until *after* its production to provide declarations that will supposedly explain the scope of its search for records.



June 23, 2023

When the parties met and conferred about this issue on June 6, 2023, claimants' counsel asked the Diocese to provide us with its "scope declarations" in advance of the document production so that we could meet and confer and address any apparent deficiencies before the Debtor spends a significant amount of estate assets producing records that may be deficient, particularly given the material questions the Court and claimants' counsel have raised about the Debtor's production to date.

The Debtor's response to this request was alarming. The Debtor stated it would not agree to provide us with the "scope declarations" in advance of its document production because it did not want claimants' counsel to raise concerns about the scope of the Diocese's production in advance of the production, including whether the declarations fairly address the questions and concerns raised by the Court and by claimants' counsel.

Claimants' counsel responded that the Debtor's proposal defeats the purpose of the parties meeting and conferring about the scope of the Diocese's production, as the Court ordered, and will prevent the Court from resolving any issues before the Diocese spends a significant amount of time and money producing records. The Court held the May 16, 2023, status conference to raise genuine questions and concerns about the basis for the Debtor's objections and its proposed document production. The Court then directed the parties to meet and confer about those questions and concerns and how to address them. The fact that the Debtor does not want to provide claimants' counsel with the same information that it proposes to provide after its document production makes no sense – this approach is rather plainly designed to allow the Debtor to spend considerable estate assets on its document production, produce the "scope declarations," and then cry foul when claimants' counsel raise material questions about the scope of its production. When those material questions are raised (again), the Debtor will no doubt bemoan the cost of addressing those questions and concerns and the cost of re-reviewing its records to address them. The Debtor is essentially refusing to provide the basic information that should address the questions and concerns the Court and claimants' counsel raised during the May 16th status conference. On the other hand, and as noted above, the Diocese's June 16th letter to the Court includes a footnote that states the Debtor conducted a "supplemental search" after hearing the concerns of the Court and claimants' counsel and apparently found more responsive records.

In its letter to the Court dated June 16, 2023, the Debtor's suggests that its proposal to provide the "scope declarations" after its document production is in line with New York law that requires parties to provide a certification regarding the production of records. As claimants' counsel has repeatedly pointed out, the Debtor's position is not well taken given it has *already* produced records and the parties are now trying to resolve issues that were raised by this Court regarding the basis for its objections and the scope of its discovery production. Put more simply, the parties are well past the point of a party's initial certification regarding discovery – the parties are at the point where a court, this Court, has raised questions and concerns about the scope of that production and Debtor is now refusing to provide information regarding those questions and concerns. The fact that the Debtor will not provide the "scope declarations" before its production speaks volumes. How can the parties resolve the Court's questions and concerns if the Debtor refuses to provide the most basic information about the basis for its objections and the scope of its production?



**Treatment Records, Including Records Regarding Child Sexual Abuse:** When the parties met and conferred, the Debtor stated it intends to withhold or redact information that may indicate the perpetrator may have sexually abused children, including such information that is contained in treatment records, because the Debtor maintains the information is privileged.

First and foremost, claimants' counsel pointed out it is unclear how the Debtor can object to a claim based on an assertion that there is no evidence that the alleged abuser may have sexually abused children (e.g., because the alleged abuser does not appear on a list of abusers), but then withhold or redact information that shows the alleged abuser may have sexually abused children. The Debtor responded that it did not object to a claim if it had information that the alleged abuser may have sexually abused children. However, nothing in its proposed order addresses this issue, which raises concerns about the scope of the Debtor's production and what it intends to withhold or redact based on privilege. Our proposed order includes a requirement that the Debtor represent that it has not objected to any claims where it has knowledge that the alleged abuser may have sexually abused a child.

Second, the Debtor's assertion that information shared with the Debtor about an alleged abuser is privileged is not well taken. The Debtor relies solely on a 2011 case, *Friel v. Papa*, 930 N.Y.S.2d 39, 42 (2d Dep't 2011), where the employee's medical records were produced to the employer pursuant to a narrowly drawn authorization. The Debtor has provided no evidence that the records it wants to withdraw or redact were obtained by the Debtor pursuant to a narrowly drawn authorization.

To the contrary, and as claimants' counsel explained at length during the status conference on May 16, 2023, the Debtor possesses the records it wants to withhold or redact because it sent alleged abusers to treatment, paid for the treatment, received status reports on their progress, and then shared that information with whomever it wanted. It is highly unlikely the Debtor will be able to show that any of the information it wants to withhold or redact was obtained pursuant to a narrowly drawn authorization like the one at issue in *Friel*.

Moreover, and as claimants' counsel has also repeatedly pointed out, the Debtor's argument has been recently rejected by *five* separate courts. In the 2022 case of *Harmon v Diocese of Albany*, 204 AD3d 1270 [3d Dept 2022], the appellate court rejected the reasoning in *Friel* (as the trial court had done) and concluded that "any arrangement between [the Bishop and any treating provider] does not create a psychologist-patient relationship," and thus all treatment files must be produced. The court further held – as is the case with the Debtor here – that "any privilege was destroyed by the submission of [the priest's] file, including the psychologist's report, to the Attorney General's office in connection with its civil investigations in 2018 into clergy sexual abuse against each Diocese in New York."

Multiple trial courts have similarly rejected the Debtor's reliance on *Friel*. In July 2022, in *PC 37-Doe v Herricks Union Free School District* (Index No. 900100/2020), the trial court rejected any assertion of privilege where the perpetrator at issue had permitted his employer to review treatment records. The court noted: "School defendants argue that although Cohen may have signed an authorization for his employer to review his mental health records, that is not a waiver … *Harmon* rejected that argument." Next, in January 2023 the trial court in *Maida v. Diocese of Brooklyn* (Index No. 523967/2020), rejected the Diocese of Brooklyn's argument that treatment records were privileged because records shared with the Diocese are not treatment records subject to privilege, but records created for the benefit of the Diocese. The court held that even assuming there ever was a privilege, it was waived when those treatment records were shared with the Diocese, a third party. More recently,



in April 2023, in *Lisiecki v. Archdiocese of New York* (Index No. 70413/2021E), after noting that the arguments made by the Archdiocese (the same arguments made by the Diocese here) were "utterly irrelevant," the court ordered production of all treatment files noting that the "medical report at issue is central to the issue of whether the Archdiocese knew of the potential dangers posed by [the priest] and there is a strong public interest in the discoverability of these records."   And just yesterday, on June 22, 2023, the trial court in *McNierney v. Archdiocese of New York* (Index No. 950415/2020), rejected the Archdiocese of New York's argument that treatment records were privileged, holding that such records must be immediately produced as it had "rejected all of defendant's grounds set forth in the motion papers and at oral argument for redacting or withholding the requested information."

The Court should order the Debtor to produce all records on these individuals without limitation.  To the extent that documents are missing as to any of these individuals, the Debtor should acknowledge that documents are missing instead of continuing its charade that it has made a full production. If the Debtor believes it has a good faith basis to withhold or redact any records in light of privilege, the Debtor should be required to file a motion for a protective order that provides the factual basis for its position.  The Debtor should not object to this proposal given its representation to claimants' counsel that it did not object to any claims if the Debtor has information that suggests the alleged abuser may have sexually abused a child.

Sincerely,

Jason P. Amala

cc:    Claimants' counsel (who participated in the May 16, 2023, status conference)
       James Stang, Brittany Michael, Karen Dine, Counsel to the Committee
       Todd R. Geremia and Eric Stephens, Counsel to the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

*In re*

The Roman Catholic Diocese of Rockville Centre,
New York

Debtor.[1]

Chapter 11

Case No. 20-12345 (MG)

---

## [PROPOSED] ORDER CONCERNING LIMITED DISCOVERY IN CONNECTION WITH DEBTOR'S EIGHTH OMNIBUS OBJECTION TO CLAIMS

Upon the Debtor's *Eighth Omnibus Objection to Claims* that allege abuse by perpetrators as to whom the Debtor asserts claimants have not adequately alleged legally sufficient notice to the Debtor (the "Objection"), pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3007; the Court having reviewed the Objection, the responses thereto, and the Debtor's reply, having considered the statements of counsel with respect to the Objection at a hearing on April 5, 2023 (the "Hearing") and at a discovery conference on May 16, 2023 (the "Conference"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (d) notice of the Objection, Hearing, and Conference were sufficient under the circumstances; and the Court having determined that the legal and factual bases set forth in the Objection, responses thereto, and statements of counsel establish just cause for the relief granted herein;

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

**IT IS HEREBY ORDERED THAT:**

1.      In connection with any documents produced pursuant to this Order, counsel for Claimants with claims where the Objection was sustained with leave to amend that are not already parties to the Confidentiality Agreement and Protective Order Between the Debtor and Official Committee of Unsecured Creditors, dated January 20, 2021 [Dkt. No. 320] (the "Protective Order") shall be treated as "State Court Attorneys" and "Recipients" as those terms are defined in the Protective Order.

2.      The "documents in the possession of the Diocese that should be produced to counsel for the Claimants before they must file amended claims" as set forth in the *Memorandum Opinion Sustaining In Part and Overruling In Part Debtor's Eighth Omnibus Objection To Claims*, dated May 1, 2023 [Dkt. No. 2062] (the "Opinion") at 45 are:

    a.   All records the Diocese possesses ~~The complete personnel file, if any,~~ for the alleged abuser(s) at issue in the Claimant's claim, including ~~. For the avoidance of doubt, the term "personnel file" includes~~ any "confidential" or "secret" portions thereof;

    b.   Any other documents within the Diocese's electronic document collection that include the name of the alleged abuser(s) at issue in the Claimant's claim; and

    c.   A privilege log reflecting any document(s) relating to the alleged abuser(s) at issue in the Claimant's claim withheld or redacted on the basis of: (i) attorney client privilege; (ii) attorney work product; or (iii) Survivor PII~~, or (iv) Protected Health Information~~.[2] Any such privilege log shall comply with

---

[2] The definitions, redaction protocols, and dispute resolution mechanisms for Survivor PII ~~and Protected Health Information~~ are set forth in the Protective Order.

2

Bankruptcy Local Rule 7034-1.  If the Debtor believes it has a good faith basis to withhold or redact Protected Health Information regarding an alleged abuser in light of the decision in *Harmon v Diocese of Albany,* 204 AD3d 1270 [3d Dept 2022], the Debtor shall file a motion for a protective order that explains the factual basis for its position.

3. Before the Debtor provides the foregoing production, and wW~~ithin~~ ten (10) days of entry of this Order, the Diocese shall file sworn declarations of individual(s) from the Diocese with personal knowledge and~~or~~ sufficient foundation that include the following information~~describing~~:

   a.   A representation that the Diocese has produced all records in its possession regarding the alleged abuser, and has identified any withheld or redacted records on a privilege log;

   b.   A representation that the Diocese has produced all records in its possession that may indicate that an alleged abuser sexually abused a child;

   c.   A representation that the Diocese did not object to any claims where it has information that suggests the alleged abuser may have sexually abused a child;

   ~~a.~~d. The physical locations that have been searched for ~~personnel files~~information regarding each alleged abuser and other records in connection with these matters, including the locations identified in the index, inventory, or similar record the Diocese shall produce pursuant to Paragraph 3(f) below;

e.   The physical locations that have not been searched for information regarding each alleged abuser and other records in connection with these matters, including the locations identified in the index, inventory, or similar record the Diocese shall produce pursuant to Paragraph 3(f) below;

b.f. A copy of the index, inventory, or similar record maintained by the Diocese in its regular course of business that shows tThe organization, substance, and physical composition of the Diocese's personnel files, including the "confidential" or "secret" portions thereof;

g.   The Diocese's document retention policy applicable to personnel filesinformation regarding each alleged abuser and other records in connection with these matters, and that t;

c.h. A representation that tThe Diocese has no reason to believe that records regarding these alleged abusers were ever destroyed or are missing;

i.   A representation that the Diocese has reviewed the production for each alleged abuser and certifies that no other documents relating to that individual were ever in its possession.  To the extent that there is any correspondence, employment information, memoranda, or other records that are not within the production, the Diocese shall so state, including its position on why it believes such documents are missing;

d.j. The process that was followed to collect, electronically scan, and return documents to the Diocese in connection with these matters; and

k.   A representation that Stating that (i) the production of documents in the Diocese's possession, custody or control related to the alleged abusers at

issue on the Objection is complete; or (ii) there are no documents in the

Diocese's possession, custody or control that relate to certain of the

alleged abusers at issue on the Objection; and, .

l.   The factual basis for why the Diocese believes the declarant has personal

knowledge and a sufficient foundation to attest to the matters in their

declaration.

e.

4.   After providing the foregoing declarations, the Diocese and counsel to the

claimants who are the subject of this Order shall meet and confer in good faith

regarding any concerns regarding the substance of the declarations or the

Diocese's search for responsive information.

4.5.Once the parties agree that they have finished meeting and conferring, tThe

Diocese shall produce the documents described in paragraph 2, above, within ten

(10) days of entry of this Order to counsel for each of the Claimants with claims

where the Objection was sustained with leave to amend.  If the Debtor objects to

any other claims for the same or similar reasons, the Debtor shall provide the

same information to those claimants with sufficient time for the claimant to

review the information before responding to the Debtor's objection.

5.6.Claimants with claims where the Objection was sustained with leave to amend

shall withdraw or amend their proofs of claims within twenty-one (21) days of the

Diocese's document production pursuant to this Order.  A claim may be amended

in accordance with this Order by filing with the Court and serving on the Diocese,

a rider setting forth allegations of fact that the Claimant contends support notice

to the Diocese of the alleged "abuser's propensity to commit abuse." Opinion at

25.

**IT IS SO ORDERED.**

Dated:  June [XX], 2023
New York, New York

_____

MARTIN GLENN
Chief United States Bankruptcy Judge