UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE,<br><br>      Debtor,<br><br>CLAIMANT 20101,<br><br>      Claimant-Appellant<br><br>v.<br><br>THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE,<br><br>      Defendant-Appellee. | 23 Civ. 6708 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  This appeal arises from the bankruptcy proceedings of the Roman Catholic Diocese of Rockville Centre, New York (the "Debtor"). Appellant Claimant 20101 (the "Claimant") challenges an order of the United States Bankruptcy Court for the Southern District of New York (Martin Glenn, C.B.J.), sustaining objections to their claim (the "Claim") as untimely. For the reasons explained below, the Bankruptcy Court's order is AFFIRMED.

## BACKGROUND

  The facts relevant to this appeal are undisputed and are summarized briefly below.

  Beginning in August 2019, approximately 200 formerly time-barred lawsuits were brought against the Debtor under the New York Child Victims Act ("CVA"). A7-8.[1] The CVA opened a window for formerly time-barred claims arising from allegations of sexual abuse of a minor until August 13, 2020, a date that was subsequently extended to August 14, 2021. *See* N.Y. C.P.L.R. § 214-g (McKinney 2020).

---

[1] Claimant-Appellant's Appendix, ECF No. 10-1, is cited as "A__." Debtor-Appellee's Supplemental Appendix, ECF No. 12-1, is cited as "SA__."

On October 1, 2020, the Debtor commenced this bankruptcy case. *See In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345 (MG) (Bankr. S.D.N.Y.). On January 27, 2021, the Bankruptcy Court entered an Order setting August 14, 2021 as the deadline for claims predicated on allegations of sexual abuse (the "Sexual Abuse Bar Date"), *see* SA2 ¶ 2—i.e., the same date as the deadline for state law claims under the CVA.

The proof of Claim at issue here was filed approximately three months after that deadline, on November 22, 2021. *See* A117. On May 26, 2023, the Debtor filed its Twelfth Omnibus Claim Objection (the "Objection") to various claims on the grounds that they were untimely; these claims were listed on Schedule 1 of the Debtor's Proposed Order accompanying its Objection (the "Schedule 1 Claims"). *See* A10 ¶¶ 13-15. On June 15, 2023, the Bankruptcy Court adjourned its hearing on two of the claims subject to the Objection, including the Claim at issue here. *See* A122.

On July 12, 2023, the Bankruptcy Court sustained the Objection to, and disallowed all of the Schedule 1 Claims that had not been adjourned. *See* A121-44. In its Order, the Bankruptcy Court considered the four factors set forth by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), governing whether a court should enlarge the filing period for a claim due to "excusable neglect" under Federal Rule of Bankruptcy Procedure 9006. The Court found that the Schedule 1 Claimants had "made strong arguments" on three of the four *Pioneer* factors, A139—i.e., good faith, the danger of prejudice to the Debtor, and the possibility of a negative impact on judicial proceedings—and that these three factors weighed in their favor. *See* A135-39. But the Court then determined that the third *Pioneer* factor—i.e., whether the reason for the delay was within the reasonable control of the movant—did not, and sustained the Objection on that basis. *See* A139-43.

Specifically, the Bankruptcy Court found that the Schedule 1 Claimants, despite asserting that they lacked actual notice of the bar date for claims, had "constructive notice" of that date, A141, because it had been "publicized through an extensive, Court-approved, publication program which included television, radio, online, print, social media, mailings, and community outreach." A140. The Schedule 1 Claimants explained "that the delay in bringing their claims was due to the fact that it took decades to come to terms with the abuse they had suffered, and to find the strength to seek legal redress," A142, and the Bankruptcy Court agreed that this was a "sympathetic" reason for delay. A143. But the Court noted that, in cases finding excusable neglect, "the challenges complained of [had] caused confusion about the nature of the[] claims or the relevant deadlines or interfered with the notice process," none of which was the case here. A142. The Court further noted that "hundreds of other claimants in this case were able to file their claims before the applicable bar date while likely facing similar difficulties," and that the Schedule 1 Claimants failed to explain their "delay in filing the late claims *after* learning about the applicable bar date." *Id.* Citing the Second Circuit's "hard line" approach emphasizing the third *Pioneer* factor, A139-40 (quoting *In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005)), the Bankruptcy Court then sustained the timeliness Objection to the Schedule 1 Claim under consideration, and disallowed them.

The Bankruptcy Court did not, at that time, rule on the Objection with respect to the Claim at issue here, because it had been adjourned. But on July 18, 2023, the Bankruptcy Court held a hearing on the Claim. *See* SA119-28. The following day, on July 19, 2023, the Bankruptcy Court issued an Order sustaining the Objection and disallowing the Claim. *See* A161-62. This appeal ensued.

3

## LEGAL STANDARDS

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See, e.g.*, *In re Quebecor World (USA) Inc.*, 480 B.R. 468, 473 (S.D.N.Y. 2012). A bankruptcy court's decision "to permit a late claim, however, is reviewed only for abuse of discretion. *See, e.g.*, *In re Calpine Corp.*, No. 07 Civ. 8493 (JGK), 2007 WL 4326738, at *3 (S.D.N.Y. Nov. 21, 2007). As the Second Circuit has explained, a bankruptcy court "exceeds its allowable discretion where its decision (1) rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Schwartz v. Geltzer (In re Smith)*, 507 F.3d 64, 73 (2d Cir. 2007) (internal quotations omitted); *see also In re Tribeca Market, LLC*, 516 B.R. 254, 269-70 (S.D.N.Y. 2014) (same).

## DISCUSSION

For the reasons explained below, the Bankruptcy Court did not abuse its discretion in finding that the Claim was untimely, and that this untimeliness was not the product of excusable neglect.

The Claimant raises three arguments on appeal. Each is discussed in turn.

### A. Purported Absence of a Rationale

First, the Claimant argues that "the Bankruptcy Court provided no rationale explaining its order," disallowing their claim. Appellant's Br. 5. But that is not correct. On July 12, 2023, the Bankruptcy Court issued a memorandum and opinion (the "July 12 Opinion") carefully considering but ultimately rejecting the various arguments raised by Schedule 1 Claimants as to why their claims should be deemed timely. *See In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345 (MG), 2023 WL 4497418 (Bankr. S.D.N.Y. July 12, 2023).

4

It is true that the July 12 Opinion did not specifically address the Claim at issue here—but that was the case only because the Bankruptcy Court had briefly adjourned its consideration of the Claim. The Bankruptcy Court's subsequent order on July 19, 2023 ultimately sustained the Debtor's timeliness objection to this Claim specifically. *See In re Roman Cath. Diocese of Rockville Ctr.*, No. 20-12345 (MG), 2023 WL 4633217 (Bankr. S.D.N.Y. July 19, 2023). In so doing, the Court overruled objections that were materially identical (indeed, almost word-for-word in some places) to objections that the Court had previously rejected as to another Schedule 1 Claimant in its careful July 12 Opinion. *Compare, e.g.*, A104 ¶¶ 37-38 (from Claimant's Response), *with* Response and Objection to Debtor's Twelfth Omnibus Objection to Late Claims at 9, 2023 WL 4497418 (Bankr. S.D.N.Y. July 12, 2023) (No. 20-12345), No. 2176 ¶ 37 (from other Schedule 1 Claimants' Response). Given the procedural history, it cannot be fairly said that the Bankruptcy Court altogether failed to provide a rationale for its ruling.

### B. Purported Misapplication of the *Pioneer* Factors

Second, Claimant contends that the Bankruptcy Court failed to properly apply the *Pioneer* factors regarding the standard for excusable neglect. As explained below, while the Bankruptcy Court could have exercised its discretion differently, there is no basis for concluding that the Court made a legal error or abused its discretion, particularly in light of any assertion by the Claimant that they were in some way confused about the bar date for claims.

Under *Pioneer*, the "equitable considerations" to accept a late-filed proof of claim include:

>  (1) the danger of prejudice to the debtor;
>  (2) the length of the delay and its potential impact on judicial proceedings;
>  (3) the reason for the delay, including whether it was within the reasonable control of the movant; and
>  (4) whether the movant acted in good faith.

*See In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D.N.Y. 2003) (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). The Second Circuit has identified the third factor—"the reason for delay," and whether it was within the party's reasonable control—"as the most important *Pioneer* factor," and has instructed courts to treat it as essentially "dispositive." *Alexander v. Saul*, 5 F.4th 139, 149 (2d Cir. 2021) (holding that the district court did not abuse its discretion in denying claim based on excusable neglect even though the first, second, and fourth factors weighed in favor of claimant (collecting cases)).

Here, the Bankruptcy Court considered the *Pioneer* factors individually, and held that the first, second, and fourth *Pioneer* factors weighed in favor of the Schedule 1 Claimants. *See* A135-39. But the Court determined that the third *Pioneer* factor—the reason for the delay—did not, finding that "[t]he claimants fail[ed] to show that the challenges they faced in bringing their claims constituted excusable neglect." A142. The Bankruptcy Court noted that, in cases finding excusable neglect, the claimants had faced circumstances that "caused confusion about the nature of their claims or the relevant deadlines or interfered with the notice process." *Id.* Neither was the case here. And the Court noted that the Schedule 1 Claimants did not provide "an explanation for the delay in filing *after* learning about the applicable bar date." *Id.* In light of the Second Circuit's "hard line" approach to the essentially dispositive third *Pioneer* factor, the Bankruptcy Court sustained the objection to, and disallowed the Schedule 1 Claims. A130 (quoting *In re Enron*, 419 F.3d at 122).

Claimant contends that this was an error and that their delay was excusable, "because it took Claimant time to come to terms with what happened to them as a child and then to seek legal redress. Like other survivors of child sexual abuse, it took the Survivor time to receive the

care and treatment s/he needed to address their trauma." Appellant's Br. 14.[2] In support of their position, Claimant cites a recent decision by the Bankruptcy Court in the Northern District of New York, *In re Roman Catholic Diocese of Syracuse*, 638 B.R. 33 (Bankr. N.D.N.Y. 2022) ("*Syracuse*"), excusing a brief delay in filing a claim beyond the bar date set by the court, "considering the years of psychological pain [the claimant] has had to endure as a result of the Debtor's negligence." *Id.* at 40.

This Court is sympathetic to Claimant's position. But given the standard of review and the Second Circuit's "hard line" approach to the third *Pioneer* factor, the fact that this Court might have applied that factor differently as a matter of first impression does not mean that the Bankruptcy Court's decision amounted to legal error or that it "cannot be located within the range of permissible decisions," *Schwartz*, 507 F.3d at 73, so as to justify reversal. At most, *Syracuse* suggests that the Bankruptcy Court could have exercised its discretion differently—but it does not compel the conclusion that the Court went so far as to abuse its discretion.

That is particularly so given that *Syracuse* is distinguishable, because the court there found that the claim was filed late due to confusion on the part of the claimant—a factor that was not "within the[ir] reasonable control." *Syracuse*, 638 B.R. at 40. In *Syracuse*, the bar date for claims in the bankruptcy proceeding had been set at four months earlier than the deadline to file state law claims under the CVA; and while the *Syracuse* claimant filed their claim after the bankruptcy bar date, they did so (and filed a state court lawsuit) before the CVA window expired, on the "mistaken belief that the CVA Deadline governed his/her claim" in the bankruptcy court—an explanation that the *Syracuse* court found "plausible given the widespread

---

[2] This explanation was offered in briefing by Claimant's counsel, and is not supported by direct testimony by the Claimant.

7

publication of that date and the legal action taken within that time limit." *Syracuse*, 638 B.R. at 40 (internal quotations omitted).

By contrast, here, the bar date for claims and the CVA cutoff were identical, and Claimant does not assert that they were confused about the deadline for claims. Again, while this Court is sympathetic to the Claimant's position, it cannot say that, on this record, the Bankruptcy Court abused its discretion in sustaining the Objection and disallowing the Claim.

### C. Purported Failure to Consider Alternative Relief

Third and finally, the Claimant contends that the Bankruptcy Court committed reversible error by failing to consider the Claimant's alternative request for relief, in the form of being permitted "to participate in any late claims fund that may be established" in the future. Appellant's Br. 20. But that argument fails because the Bankruptcy Court was not required to rule on the Claimant's perfunctory request, which was made in a single sentence in the conclusion section of his response to the Debtor's Objection, *see* A108 ¶ 65, rather than in a formal motion. *Cf. Miller v. Metro. Life Ins. Co.*, No. 17 Civ. 7284 (AT), 2018 WL 5993477, at *2 (S.D.N.Y. Nov. 15, 2018) ("[T]here is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." (quoting *Driessen v. Royal Bank Int'l*, No. 14 Civ. 1300 (VAB), 2015 WL 881205, at *2 (D. Conn. Mar. 2, 2015))). Indeed, such a ruling would likely have been inappropriate given that the Claimant sought an essentially advisory opinion on a hypothetical scenario, as no such fund has been established at this time. *See Sullivan v. Maha*, 834 F. App'x 619, 622 (2d Cir. 2020) ("A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them."). The Bankruptcy Court could not properly rule on the permissibility of participation of a fund that does not exist, and for which there are no procedures or criteria for applying.

8

## CONCLUSION

For the reasons given above, the judgment of the Bankruptcy Court is AFFIRMED.

SO ORDERED.

Dated: January 26, 2024
       New York, New York

                                    DALE E. HO
                           United States District Judge