Hearing Date and Time:  February 8, 2024 at 10:00 a.m. (Prevailing Eastern Time)

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:   (212) 561-7700
Facsimile:    (212) 561-7777
Email:           jstang@pszjlaw.com
                     inasatir@pszjlaw.com
                     kdine@pszjlaw.com
                     bmichael@pszjlaw.com

and

BURNS BAIR LLP
Timothy W. Burns, Esq. (admitted *pro hac vice*)
Jesse J. Bair, Esq. (admitted *pro hac vice*)
10 E. Doty St., Suite 600
Madison, WI 53703-3392
Telephone: (608) 286-2808
Email:  tburns@burnsbair.com
Email:  jbair@burnsbair.com

*Counsel and Special Insurance Counsel for the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br>      Debtor. | Chapter 11<br>Case No. 20-12345 (MG) |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO ORDER OF COURT REGARDING DEBTOR'S THIRD MODIFIED
DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S FIRST
<u>AMENDED PLAN OF REORGANIZATION</u>**

The Official Committee of Unsecured Creditors (the "Committee") of The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese" or the "Debtor") in the above captioned case (the "Bankruptcy Case"), through its undersigned counsel, hereby files this response (the "Response") to the Bankruptcy Court's *Order Regarding the Third Modified Disclosure Statement for First Amended Plan Of Reorganization Proposed By The Roman Catholic Diocese Of Rockville Centre, New York* [Docket No. 2859] asking the Committee to reconcile its objection to the concept of "Litigating Abuse Claim" as defined in the Third Modified First Amended Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Rockville Centre, New York [Docket No. 2855] (the "DRVC Plan")[1] to the support of the concept of a Litigation Option for Abuse Claims in connection with the Joint Plan of Reorganization for the Diocese of Rochester (the "Rochester Plan") by the Official Committee of Unsecured Creditors in that case who, like the Committee in this Case, are represented by Pachulski, Stang Ziehl & Jones LLP and Burns Bair LLP. In support of its Response, the Committee respectfully represents:

**RESPONSE**

1. A "Litigating Abuse Claim"[2] in the DRVC Plan is entirely different from the concept of a litigation option for certain abuse claimants in connection with the Rochester Plan.[3] "Litigating Abuse Claims" in the DRVC Plan refers to litigation ***against survivors*** of sexual abuse and are a continuation of the Diocese's practice of objecting to Abuse Claims rather than having such claims resolved through trust distribution procedures or a trust allocation protocol established by a confirmed plan. In comparison, the proposed trust agreement in the Rochester Plan (the

---

[1] The Debtor also filed an amended Disclosure Statement with respect to the DRVC Plan. [Docket No. 2858] (the "DRVC Disclosure Statement").

[2] DRVC Plan Art. I. A. 84.

[3] See Notice of Filing of Second Plan Supplement to First Amended Joint Chapter 11 Plan of Reorganization for the Diocese Of Rochester Dated September 13, 2023 [W.D.N.Y. Bankr. Case No. 19-20905 ("Rochester Docket") Docket No. 2391-2]

"Rochester Trust") incorporates a "Claim Litigation Protocol"[4] as a mechanism to use litigation to allow survivors to obtain judgments that can be used to enforce their insurance rights and, as such, is litigation ***by*** survivors in pursuit of recoveries for survivors. As part of that mechanism, the trustee may authorize certain claimants (defined as "Litigation Claimants")[5] with claims within the policy period of the non-settling insurer to voluntarily litigate their claims in order to obtain judgments that will allow for pursuit of the available insurance.

2. The DRVC Plan trust distribution procedures [Docket No. 2857 (Exhibit A)] (the "DRVC TDP") have a comparable provision for Settling Abuse Claims to voluntarily litigate (Section 6.1.) against the Diocese and/or Covered Parties (but paid for out of the applicable Settlement Trust).[6]

3. In contrast (and unrelated to the DRVC TDP), the Diocese's "Litigating Abuse Claim" is a mechanism for the *Diocese* to continue to object to and litigate the ***allowance*** of Abuse Claims outside of the DRVC TDP. *See Disclosure Statement* Art. I. C. ("The Trust Distribution Procedures provide procedures for evaluating and providing distributions to Settling Abuse Claims, and *have limited application* to Litigating Abuse Claims.") (emphasis added). The Committee has consistently objected to the Debtor wasting professional fees objecting to claims rather than having those claims determined through a trust allocation protocol. *See Objection to Debtor's Motion for an Order (I) Approving Claim Objection Procedures, (II) Approving Claim Settlement Procedures and (III) Granting Related Relief* [Docket No. 1510]. Indeed, as the Committee predicted in that Objection, the Diocese's aggressive objection process has not led to

---

[4] Exhibit 2 (Claim Litigation Protocol) to the Rochester Trust.
[5] *See Id.* at §§1.2-1.4.
[6] The Diocese's parallel provision (which is only applicable to Settling Abuse Claimants), however, does not appear to be designed to focus estate litigation resources on most effectively obtaining non-settling insurance recoveries as it lacks the Trustee's role as a gate-keeper and does not limit which Settling Abuse Claimants may pursue litigation.

2

a consensual plan and instead has wasted millions of fees, including for the disallowance of claims against the DRVC that nonetheless will still be channeled to the Settlement Trusts to the extent that those same claims are still pending against Covered Parties.

4. The DRVC Plan defines a Litigating Abuse Claim as follows:

"Litigating Abuse Claim" means each Abuse Claim on account of which (a) the holder has elected on his, her or its Ballot (as defined by the Voting Procedures) to be treated as a Litigating Abuse Claim, (b) the Debtor has filed an objection to such Abuse Claim prior to the Voting Deadline, (c) any Abuse Claim filed against a Covered Party when the holder of such Abuse Claim has not timely filed, or does not have, an Abuse Proof of Claim against the Debtor, or (d) any Indirect Abuse Claim.

DRVC Plan Art. I. A. 84.

5. The DRVC Disclosure Statement's limited discussion of the meaning of Litigating Abuse Claim [Art. I.C.] describes a very different process and treatment –continuing litigation and objection by the Diocese to the Abuse Claim --when compared to the "Litigation Option" in the Rochester Trust, the DRVC TDP for Settling Abuse Claims, or in the trust allocation procedures that the Committee proposed in connection with the proposed plan that it filed in this Case. *See First Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors* Exhibits A (Trust Agreement) and A-1 (Trust Allocation Protocol) [Docket No. 1643].

6. The Committee does have objections to the Diocese's definition and treatment of Litigating Abuse Claims as the Diocese uses that term in the proposed DRVC Plan. Under the DRVC Plan, the Diocese has already designated approximately 130 claims as Litigating Abuse Claims. Unlike the structure in the Rochester Trust, in which survivors **voluntarily** opt to become Litigation Claims, here many survivors have no choice in their treatment. While a Settling Abuse Claimant could elect to be a Litigating Abuse Claim (though it is hard to see why one would),

3

being a Litigating Abuse Claim is not voluntary if the **Diocese unilaterally determines** that the Abuse Claim is a Litigating Abuse Claim.

7. To be clear, in the DRVC Plan, the Diocese is singling out Litigating Abuse Claims for disparate treatment from Settling Abuse Claims. If ultimately allowed, such Litigating Abuse Claimants might in some distant future receive a distribution from the applicable subfund in the applicable Settlement Trust, assuming *any* funds remain *after* payment of *all* the Diocese's expenses to litigate *all* of the Litigating Abuse Claims, as to which there is *no cap or oversight*.[7] Additionally, Litigating Abuse Claims would receive *no* distribution from the applicable Settlement Trust until *all* Litigating Abuse Claims are finally resolved. [DRVC TDP § 8.2].[8] Notably, particularly for distribution purposes, Litigating Abuse Claims are not limited to claims to which the Diocese has already objected in this Case, but also includes all Abuse Claims against Covered Parties that are being channeled to the Settlement Trusts and incudes Indirect Abuse Claims such as those of other potentially indemnified parties.

8. Critically, in its use of "Litigating Abuse Claims," the Diocese is not leaving open an option for an Abuse Claimant to choose to litigate its claim in connection with an insurance strategy. Rather, the DRVC Plan would allow the Diocese to continue to employ its professionals to litigate those claims. The Committee continues to believe that this expense could be substantial, and as the Diocese concedes in the DRVC Disclosure Statement, amounts allocated to the

---

[7] The Committee has requested clarification from the Diocese of the consequences if the litigation expenses exceed the amount in the applicable litigation sub fund. The Diocese has not responded, and the Committee has not been able to determine what happens in that situation based on its review of the DRVC Disclosure Statement.

[8] There appears to be only a single reference in the DRVC Disclosure Statement to this crucial limitation on distributions to Litigating Abuse Claimants. Particularly as the Debtor is suggesting that a Settling Abuse Claim can make an election to be a Litigating Abuse Claim, the potential consequences of such an election need to be clearly stated.

4

Settlement Trusts for the litigation sub funds could be exhausted simply in paying the costs of such litigation.  See DRVC Disclosure Statement Risk Factors.[9]

9. Given the difference in use of the same term in other diocesan plans, the Committee considered the Diocese's use of "Litigating Abuse Claim" confusing and suggested that the Debtor use a term that more accurately described the treatment of such claims, for example "Contested Abuse Claim."  The Diocese rejected this proposed change.  The Diocese's Disclosure Statement should clarify that a Litigating Abuse Claim in the DRVC Plan is fundamentally different than the concept of a "litigating abuse claim" as typically used in consensual trust distribution procedures/allocation protocols in diocesan cases.[10]

10. The Committee believes that Litigating Abuse Claims that are ultimately allowed are not receiving fair and equitable treatment under the DRVC Plan within the meaning of the Bankruptcy Code as the holders of such Litigating Abuse Claims may receive substantially less than similarly situated Abuse Claims.

11. The Committee hopes that this Response reconciles for the Court the distinction between the objections that the Committee has to the provisions of the Debtor's proposed Plan in this Case with respect to "Litigating Abuse Claims," which are detached from trust distribution procedures and are intended to deny recovery to Survivors, from the support that the Rochester

---

[9] This appears to be the only reference to this risk in the DRVC Disclosure Statement.  The Disclosure Statement contains no analysis of what these expenses could be or even how many Litigating Abuse Claims there are based on the Diocese's designation.

[10] See proposed Joint Chapter 11 Plan of Reorganization for the Roman Catholic Diocese of Syracuse, New York (Bankr. N.D.N.Y. Case No. 20-30663) [Docket No. 1565] § 1.1.105 ("Litigation Claimant means any Abuse Claimant who elects to be treated as a Litigation Claimant pursuant to Section 4.3.1.b of the Plan or who is deemed to be a Litigation Claimant pursuant to the terms of Section 4.3.1.c [a claimant is deemed to be a Litigation Claimant if they do not make an election to either be a "Distribution Claimant" or a "Litigation Claimant" of the Plan."); Proposed Trust Distribution Plan in Connection with Second Modified Eighth Amended Plan of Reorganization for The Diocese of Camden, New Jersey (Bankr. N.J. Case No. 20-21257 (JNP) [Docket No. 3598] § 9 (Setting forth when and how an abuse claimant can elect to be a "State Court Option Claimant" and pursue its abuse claim in state court against the trustee as the successor in interest to the "Diocese Affiliated Entities").

4868-6711-1841.4 18491.002

Committee has expressed with respect to the Rochester Plan and the Rochester Trust, in which the term "Litigating Abuse Claims" refers to a voluntary Litigation Option that gives Survivors additional opportunities for recover.

12.    The Committee is continuing its review of the Diocese's Disclosure Statement, Plan and Trust Documents to determine what objections remain following the changes made by the Diocese and intends to submit any further objections in accordance with the agreed schedule.

Dated:    February 1, 2024

PACHULSKI STANG ZIEHL & JONES LLP

*/s/  James I. Stang*
James I. Stang, Esq. (admitted *pro hac vice*)
Iain Nasatir, Esq.
Karen Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777
jstang@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

BURNS BAIR LLP

*/s/  Timothy W. Burns*
Timothy W. Burns, Esq. (admitted *pro hac vice*)
Jesse J. Bair, Esq. (admitted *pro hac vice*)
10 E. Doty St., Suite 600
Madison, WI 53703-3392
Telephone: (608) 286-2808
Email:  tburns@burnsbair.com
Email:  jbair@burnsbair.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors*

4868-6711-1841.4 18491.002