**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Case No. 20-12345 (MG) |
| | ) |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

## NOTICE OF FILING OF PROPOSED LETTER OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO THE DEBTOR'S THIRD MODIFIED FIRST AMENDED PLAN AND ADDITIONAL DISCLOSURE STATEMENT COMMENTS

**PLEASE TAKE NOTICE** that attached as Exhibit A is the Proposed Letter of the Official Committee of Unsecured Creditors (the "Committee Plan Letter") with Respect to the Debtor's Third Modified First Amended Plan (the "Debtor's Plan").[1]

**PLEASE TAKE FURTHER NOTICE** the Committee is submitting the Committee Plan Letter for inclusion in the Solicitation Materials in connection the Debtor's Plan.

**PLEASE TAKE FURTHER NOTICE** that the Committee reserves the right to amend or withdraw the Committee Plan Letter based on the final, Bankruptcy Court-approved version of the Debtor's Disclosure Statement, if any.

---

[1] The Debtor filed its *Third Modified First Amended Plan of Reorganization and Third Modified Disclosure Statement* on January 29, 2024 [Docket No. 2855]. The Debtor filed *Fourth Modified Disclosure Statement for First Amended Plan of Reorganization* on February 6, 2024 [Docket No. 2885] (the "Debtor's Disclosure Statement"). Capitalized terms used and not otherwise defined herein have the meanings ascribed thereto in the Debtor's Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that attached as Exhibit B hereto is an email from counsel for the Committee to counsel for the Diocese regarding questions and comments to the Debtor's Disclosure Statement filed on February 6, 2024.

**PLEASE TAKE FURTHER NOTICE** that this Notice is being sent for informational purposes only and that the Committee Plan Letter has not been approved by the Bankruptcy Court for distribution for any purpose.

Dated: February 7, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James I. Stang*
James I. Stang, Esq. (admitted *pro hac vice*)
Karen B. Dine, Esq.
Iain Nasatir, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Tel: 212-561-7700
Fax: 212-561-7777
Email:    jstang@pszjlaw.com
             kdine@pszjlaw.com
             inasatir@pszjlaw.com
             bmichael@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

# EXHIBIT A

**DRAFT\*\*\*NOT APPROVED FOR OR FOR PURPOSES OF SOLICITATION**

**THE COMMITTEE RECOMMENDS THAT SEXUAL ABUSE SURVIVORS
<u>VOTE TO REJECT</u> THE DIOCESE PLAN**

The Official Committee of Unsecured Creditors in the chapter 11 bankruptcy of The Roman Catholic Diocese of Rockville Centre New York urges you and all survivors to ***<u>vote to REJECT the Diocese's Plan</u>***.  The Committee, comprised of 9 members, 8 of whom are themselves survivors, and appointed by the U.S. Justice Department (U.S. Trustee), believes the Plan is not worthy of your support.

**The fundamental problems with the Diocese's Plan are that the Diocese is not doing anything more to protect children, the actual settlement amount is far too low, and it does not treat all survivors fairly.  The Diocese's insurance is tied up in lawsuits with no insurance payments expected in the immediate future.**

**The Diocese's "headline" settlement number is $200 million.  The devil is in the details.  The Committee estimates that the amount that will go to survivors could be less than $135 million.**

**The Committee urges all survivors or their counsel to attend the Committee's "Town Hall" meetings at which we will discuss its recommendation to vote to reject the Plan. You can get the schedule and Zoom link for the Town Hall meetings by emailing DRVUCC@pszjlaw.com.**

The key flaws in Diocese's Plan include:

- The Diocese is not doing anything to improve its policies and procedures to protect children.  For the Diocese, it is all about the money.
- The Parishes are paying far too little given their responsibility for the abuse and their substantial cash and real estate assets.
- The Diocese "headlines" a settlement of $200 million which grossly overstates how much survivors will get out of the settlement.  The "headline" number is reduced by the following amounts:
   - At least $16 million to pay Diocese bankruptcy-related expenses, including the fees of the Diocese's professionals.
   - $4 million for creditors who are not survivors.
   - $9.9 million being set aside for certain survivors who did not file timely claims- if the money is not used up, it ***goes back*** to the Diocese instead of going towards the settlement for you and other survivors.
   - Potentially $10s of millions in expenses for the Diocese to continue to fight certain survivors rather than to resolve those abuse claims through a simplified evaluation

process. The Diocese intends to use its own lawyers to fight survivors' claims and does not even try to tell you how much that will cost or how long it will take.

- o The Diocese promises that it has lots of insurance that will increase the settlement but it does not tell the whole story. Getting the insurance companies to pay is not as easy as the Diocese makes it sound. All the insurance companies are saying that they do not owe anything at all and one of the insurance companies has gone "bankrupt" itself. The legal fees for the fights with the insurance companies will come out of the "headline" $200 million settlement. The Diocese does not even try to estimate how much the fights with the insurance companies will cost or how long that fights will take.

- o $50 million of the "headline" number is paid over three years - with no interest and those payments are not secured by a mortgage on any property. Thus, there is a risk that the Diocese, Parishes and/or Seminary will not make the payment.

- o Additionally, because the $50 million is not paid upfront but paid over time without interest, the Committee estimates its real value should be reduced by $4 million.

- Under the Plan, the Parishes get releases for any abuse claims. The Parishes are not paying a fair amount for those releases. Exhibit 5 to the Debtor's Disclosure Statement shows the Parishes *have over $200 million in cash and other assets* before considering their substantial real estate. The Diocese and the Parishes do not provide any values for most of their real estate. The Committee believes that the Parish real estate has significant value that could be used to compensate survivors. Reviewing public information of the Parish real estate indicates that the real estate has a total assessed value of about $57 million and with a market value of over a billion dollars. Collectively the Parishes are only contributing $78.1 million in cash (over three years) notwithstanding their substantial assets and potential liability for hundreds of claims relating to childhood sexual abuse.

- The Diocese proposes that the Cemetery Corporation and Cemetery Trust contribute only $10 million in cash to resolve fraud claims against them resulting from the Diocese's transfer of *$100s of millions* to the Cemetery Corporation and Cemetery Trust before the bankruptcy. While the Diocese is asking the Cemetery Trust to make a $35 million loan to the Diocese that will further fund the settlement, the Diocese (not the Cemetery Trust) is securing that loan with the Diocese's ownership of an insurance company known as Ecclesia and a mortgage on the Diocese's broadcast licenses. Thus, the Diocese would be using its own property to get this loan and claiming that the contribution is from the Cemetery Trust. The Committee believes that the Cemetery Corporation and the Cemetery Trust should make a far larger contribution to settle the fraud claims against them. If the Cemetery Trust and Cemetery Corporation even agreed to this proposed settlement (and we do not know if they will agree), the Committee does not believe that the proposed settlement is fair.

- There are two separate settlement trusts that will pay you depending on when your abuse happened and the potential insurance coverage for that abuse. Your recovery could vary significantly depending on which settlement trust you are assigned to by the Diocese

  meaning that some survivors will receive a greater percentage of recovery than others with similar claims. That is not fair to all survivors.

- Because certain Abuse Claimants receive a guaranteed payment regardless of the abuse suffered, survivors with more severe claims may receive a lower percentage of recovery than survivors with "less severe" claims. That is not fair to all survivors.

- The Diocese intends to continue fighting over at least 130 survivors' claims. None of those 130 survivors can receive a payment until all those 130 claims are finally resolved. Resolving all such claims could take years. After all these years, continuing to fight survivors in court is not fair.

- The Diocese intends to hire its own lawyers to carry on the fight with those 130+ survivors. Those lawyers' fees are paid from the settlement funds assigned to help those very same survivors. If those lawyers' fees are more than the amount of the settlement funds set aside, then the settlement funds for the other survivors will be used to carry on the fight. Using monies assigned to pay survivors to fight with survivors is not fair.

If enough survivors vote to reject the Diocese's Plan, the Diocese's bankruptcy case may be dismissed, leaving you free to pursue any viable claims against the Diocese, its Parishes and the other non-debtor affiliates of the Diocese (subject to potential delays due to one of the Diocese's insurer's insolvency proceedings, delays in litigation generally, statutes of limitations and other applicable defenses).

The Committee believes that survivors as a group can do better if the Diocese's Plan is rejected. However, there can be no guaranty that survivors will do better and individual survivors may receive nothing or less than they would if the Diocese Plan is accepted and confirmed.

For more detailed information, we welcome your attendance at the Committee's Town Halls. Schedule and Zoom link for the Town Hall meetings can be found by emailing **DRVUCC@pszjlaw.com.**

*We urge Abuse Claimants to join with us in opposing the Plan and to*
<u>*VOTE TO REJECT*</u>

**FEBRUARY __ , 2024**

*THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS*

**EXHIBIT B**

# Karen B. Dine

| | |
|---|---|
| **From:** | Brittany M. Michael |
| **Sent:** | Tuesday, February 6, 2024 6:42 PM |
| **To:** | Karen B. Dine; Corinne Ball - Jones Day (cball@jonesday.com); Andrew Butler - Jones Day (abutler@jonesday.com); Ben Rosenblum - Jones Day (brosenblum@jonesday.com); Geremia, Todd R.; epstephens@jonesday.com; Kramer, Ann V.; Law, Timothy P.; Berringer, John B. |
| **Cc:** | James Stang; Timothy Burns; Jesse Bair 2 |
| **Subject:** | Re: Comments to Revised Disclosure Statement |
| **Attachments:** | DRVC Committee Letter Re Plan.pdf |

Counsel,

Attached is the Committee's proposed letter to accompany the disclosure statement that we intend to file with the Court tomorrow.

We have also done a preliminary review of the Fourth Modified Disclosure Statement for Third Modified First Amended Plan of Reorganization. The Committee reserves the right to raise additional questions and issues, however below are certain key remaining questions and concerns the Committee requests the Debtor address prior to Thursday's hearing.

Questions:
- What happens if an Ecclesia claimant goes through the IRO, the trustee rejects the recommendation (as you foreshadow), and the claimant restarts litigation and gets a judgment?
- Similarly, what happens if a claimant gets a judgment in restarted litigation but a global settlement is not reached?
- If a global settlement is reached with an insurer, are those funds only paid to the settling subfund or split between the settling subfund and litigation subfund?
- Can Indirect Abuse Claimants serve on the TAC?

Remaining Issues:
- The Committee continues to object to the inclusion of the graphs allegedly comparing recovery to other bankruptcy cases.
- The Committee continues to object to the use of the term "Litigation Claimant."
- The Committee notes that the Court has previously expressed a need for the Diocese to disclose the amount of contribution from each Covered Party.

Finally, the Committee continues to have the same objections to the proposed solicitation procedures outlined in its Objection filed last week.

Many thanks,
Brittany

**Brittany M. Michael**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7700 | Cell: 310.488.8144
bmichael@pszjlaw.com
V-Card| Bio

Los Angeles | San Francisco | Wilmington, DE | New York | Houston

1

**From:** Karen B. Dine <kdine@pszjlaw.com>
**Date:** Friday, February 2, 2024 at 3:56 PM
**To:** Corinne Ball - Jones Day (cball@jonesday.com) <cball@JonesDay.com>, Andrew Butler - Jones Day (abutler@jonesday.com) <abutler@jonesday.com>, Ben Rosenblum - Jones Day (brosenblum@jonesday.com) <brosenblum@JonesDay.com>, Geremia, Todd R. <trgeremia@JonesDay.com>, epstephens@jonesday.com <epstephens@jonesday.com>, Kramer, Ann V. <AKramer@ReedSmith.com>, Law, Timothy P. <TLaw@ReedSmith.com>, Berringer, John B. <JBerringer@ReedSmith.com>
**Cc:** James Stang <jstang@pszjlaw.com>, Brittany M. Michael <bmichael@pszjlaw.com>, Timothy Burns <tburns@burnsbair.com>, Jesse Bair 2 <jbair@burnsbair.com>
**Subject:** RE: Comments to Revised Disclosure Statement

We attached a revised redline of the Disclosure Statement to our objection. I attach a redline that shows the changes made from the draft that we sent to you on Thursday. Karen


**Karen B. Dine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7731
Tel: 212.561.7700 | Cell: 917.279.7047 | Fax: 212.561.7777
KDine@pszjlaw.com
vCard | Bio



Los Angeles | San Francisco | Wilmington, DE | New York | Houston


**From:** Karen B. Dine
**Sent:** Thursday, February 1, 2024 1:51 PM
**To:** Corinne Ball - Jones Day (cball@jonesday.com) <cball@JonesDay.com>; Andrew Butler - Jones Day (abutler@jonesday.com) <abutler@jonesday.com>; Ben Rosenblum - Jones Day (brosenblum@jonesday.com) <brosenblum@JonesDay.com>; Geremia, Todd R. <trgeremia@JonesDay.com>; epstephens@jonesday.com; Kramer, Ann V. <AKramer@ReedSmith.com>; Law, Timothy P. <TLaw@ReedSmith.com>; Berringer, John B. <JBerringer@ReedSmith.com>
**Cc:** James Stang <jstang@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>; Timothy Burns <tburns@burnsbair.com>; Jesse Bair 2 <jbair@burnsbair.com>
**Subject:** Comments to Revised Disclosure Statement

We are continuing our review of the modified Disclosure Statement and related documents. For your consideration, we attach a redline showing our comments to the revised Disclosure Statement. As noted, our review is continuing and the attached remains subject to further review and comment in all respects. Regards, Karen

**Karen B. Dine**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7731

Tel: 212.561.7700 | Cell: 917.279.7047 | Fax: 212.561.7777
KDine@pszjlaw.com
vCard | Bio



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

3