JONES DAY
250 Vesey Street
New York, New York  10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306

*Counsel for the Debtor
and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | : | Case No. 20-12345 (MG) |
| | : | |
| Debtor. | : | |

**DEBTOR'S OBJECTION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR FURTHER DISCLOSURE AND RESPONSE TO DECLARATION OF ERIC P. STEPHENS**

---

[1] The last four digits of the Debtor's federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, New York 11571-9023.

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

THE MOTION IS AN ATTEMPT TO MISLEAD THE COURT ABOUT PERSONNEL
    FILE DISCOVERY ..................................................................................................... 4

THE COMMITTEE IS CORRECT THAT THE DEBTOR HAS NOT HIDDEN
    PERSONNEL FILES; THERE ARE NO FACTS TO JUSTIFY A FROLIC AND
    DETOUR ON THE DEBTOR'S DISCOVERY EFFORTS .............................................. 6

THE COMMITTEE HAS NO PRESENT RIGHT TO ADDITIONAL DISCOVERY
    AND SOUGHT THE RIGHT TO MAKE PERSONNEL FILES PUBLIC...................... 8

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aviles v. S&P Glob., Inc.*, 583 F. Supp. 3d 507 (S.D.N.Y. 2022) .................................................. 8
*Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) ........................................................... 8

The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor" or "Diocese"), respectfully files this objection to the Official Committee of Unsecured Creditor's Corrected Motion for Further Disclosure and Response to Declaration of Eric P. Stephens, dated February 5, 2024, Dkt. No. 2880 (the "Motion").

**INTRODUCTION**

1. The Motion provides no basis to engage in the wide ranging, disruptive, and expensive discovery-about-discovery that it seeks. It does not dispute that the Debtor has complied with the Court's directive to provide additional information about personnel files it identified in June 2023 in connection with the Debtor's Eighth Omnibus Claim Objections or the facts the Debtor provided in response. Instead, the Motion seeks to leverage the results of routine, discovery follow up activities, into a wide ranging investigation of the Debtor's discovery efforts of the last four years.

2. Stripped of its inflammatory rhetoric and personal attacks, the Motion does not and cannot dispute these fundamental truths about the discovery that has been conducted in this bankruptcy: (i) the Debtor has never required and the Committee has never served a formal discovery request on the Debtor, *see* Adv. Pro. Dkt. No. 128, ¶ 10; (ii) the Debtor has engaged in a years-long voluntary effort to produce millions of pages of documents to the Committee, including the personnel files of alleged abusers, *see id*. ¶¶ 18, 30; (iii) during the course of that discovery, the Debtor and Committee held dozens upon dozens of weekly discovery status calls to raise and resolve discovery issues, *id*. ¶ 21, 24 (describing weekly discovery meetings and updates), Dkt. No. 371, ¶ 9 (same); (iv) more than two years ago, following the close of the CVA window and the passing of the Bar Date, the Debtor and Committee undertook a joint process to identify any alleged abusers for whom the Committee believed personnel files had not yet been

produced, and the Debtor responded by identifying files within its existing productions, engaging in supplemental searches, and producing additional documents, *see* Supplemental Declaration of Eric P. Stephens, dated February 7, 2024, Ex. AA (email chain reflecting reconciliation process); (v) in the nearly two years that have followed, neither the Committee nor any State Court Counsel with access to the Debtor's document production has brought a motion seeking additional personnel files; (vi) in April of 2023, consistent with and based upon this substantial and collaborative discovery record, the Committee represented to this Court that it, like the Debtor, understood that "all of the personnel files, including the confidential personnel files for all of the alleged abusers have been produced to the Committee," 4/19/2023 Hearing Tr. 234:1-5; and (vii) *the Committee continues to cite to the completeness of the Debtor's document production as support for other motions* it continues to bring in this court. *See*, *e.g*,. Dkt. No. 2769, ¶ 4 ("The continued confidentiality of the CVA Claims Documents will force the Survivor Plaintiffs in the Unstayed Actions to start the discovery process anew and pay a second time for the Diocese to review, redact, and produce these same documents all over again, further depleting dwindling estate assets."); Dkt. No. 2816 ¶¶ 3, 13 (same).

3. Likewise, the Motion does not and cannot identify a single instance where the Debtor refused to conduct a supplemental search for personnel files in response to a request from the Committee, and, in fact, is based upon information learned in the course of supplemental searches that the Debtor proactively and voluntarily conducted and disclosed. Similarly, the Motion does not attempt to dispute the facts presented in the Stephens Declaration to which it responds. Unable to grapple with the actual facts, the Motion instead lobs unfounded allegations and seeks to distort the true status of discovery in an effort to impose distraction and delay. And having ignored the facts, the Motion is equally silent on the law or any legal basis for the relief it

2

seeks. Based on these manifest shortcomings, the Motion should be denied.

4. That said, and notwithstanding the Motion's shortcomings, the Debtor understands the continued importance of conducting a discovery process that the Court and all stakeholders can have confidence in. To that end, the Debtor has undertaken another voluntary supplemental search of its Chancery and archives for the personnel file of any alleged abuser identified in a CVA lawsuit or proof of claim for which no file had yet been located. The supplemental search has resulted in the identification of potentially responsive documents at the archives requiring further review. Those documents have been collected, are being scanned, and will be reviewed in short order. The documents will need to be reviewed to determine whether they relate to any alleged abuser[2] and to determine if they are duplicative of documents previously produced. The Debtor will provide a report on the status of that review at the hearing in this matter scheduled for February 12. Any new alleged abuser personnel files that are identified as part of this review process will be included in the Debtor's forthcoming personnel file productions in connection with its Plan of Reorganization and Disclosure Statement.[3] These searches should put to rest any concerns about the Debtor's efforts to identify, locate, and produce the personnel files of alleged abusers in this matter.

5. A further response to each of the points raised in the Motion is set forth below.

---

[2] Due to things like spelling differences and individuals identified by less than their full names, files identified in this most recent search must be reviewed in full to determine whether or not they pertain to the alleged abusers in the CVA complaints and proofs of claim at issue.

[3] On February 6, 2024, the Debtor and Committee agreed to resolve the Committee's Motion Pursuant to Section 105 for Relief from Confidentiality Agreement and the Declassification of Certain Documents. Dkt No. 2769. Pursuant to the terms of the order resolving that motion, the Debtor has agreed to prepare and make available to claimants' counsel, including pro se claimants, alleged abuser personnel files on a confidential basis. Dkt. No. 2887.

3

## THE MOTION IS AN ATTEMPT TO MISLEAD THE COURT
## ABOUT PERSONNEL FILE DISCOVERY

6.     The Motion bends over backward in an effort to create the impression that the Debtor has resisted discovery of its personnel files throughout this case. That is not true.

7.     As set forth in the Stephens Declaration to which the Motion responds, the Diocese has spent years identifying individuals alleged to have committed acts of abuse in CVA complaints and proofs of claim, so that their personnel files could be searched for, collected, and produced. Dkt. No. 2836, ¶¶ 6-8.

8.     As the Committee is aware, as part of those efforts, following the closing of the CVA window and the passing of the bar date, the Debtor and Committee engaged in a monthslong effort to reconcile missing documents for every alleged abuser for which the Committee believed it did not have a personnel file. Supp. Stephens Decl. Ex. AA. As part of the reconciliation process, the Debtor identified previously produced documents within its existing productions and conducted subsequent searches for any remaining missing files. *Id.* When those subsequent searches identified missing files, they were collected and produced. *See, e.g.*, Dkt. No. 2836, ¶ 28 (describing files identified and scanned in February 2022). That reconciliation process concluded in June of 2022. Supp. Stephens Decl. Ex. AA.

9.     Following the reconciliation process, the Committee did not raise any concern with the Debtor that personnel files had not been located or produced. Furthermore, in connection with its objection to continuing the preliminary injunction in this matter, the Committee cited the Debtor's personnel file production efforts with approval (Adv. Pro. Dkt. No. 172, n. 81) and when asked a direct question by the Court, agreed "all of the personnel files, including the confidential personnel files for all of the alleged abusers have been produced to the Committee." 4/19/2023 Hearing Tr. 234:1-5. Most tellingly, less than four weeks ago, the

4

Committee continued to cite the completeness of the Diocese's production of personnel files as a source of potential efficiency in state court litigation. Dkt. No. 2816, ¶¶ 3 ("Allowing the Survivors to see the universe of the CVA Claims Documents at this stage of the Bankruptcy Case would minimize the depletion of estate assets that would result from forcing the Survivors to go through the discovery process a second time for the production of documents already produced to the Committee."), 13 ("the discovery the Survivors now seek from the Debtor in the Unstayed Actions should be encompassed within the universe of CVA Claims Documents already produced to the Committee.  Estate resources will continue to be depleted if the Survivors are forced to incur the cost of re-doing millions of dollars-worth of discovery."), *see also* Dkt. No. 2769, ¶ 4 (same). The Court should credit the Committee's repeated (and recent) statements affirming the Debtor's personnel file production efforts.

10. In an effort to avoid these facts, the Motion opens with the statement that, "Frequent issues with discovery in this Case resulted in an off-the-record chambers conference with Judge Chapman in the April 2022." Motion at 2. What the Motion omits from this ominous-sounding description is that the parties had already agreed to and were in the midst of the monthslong bilateral process to reconcile any missing alleged abuser files described above (*see* Supp. Stephens Decl. Ex. AA), and as a result, the April 2022 chambers conference before Judge Chapman was focused on organizational and financial information. *See* Dkt. No. 1043 (seeking production of "a copy of electronic accounting system(s) in native format(s) (e.g. electronic data files) for the Diocese and each Diocese Affiliate that utilizes the Diocese's MIPS accounting system."). Those disputes – all of which were resolved consensually – provide no basis to conclude that the Debtor's efforts to locate and produce personnel files represents a longstanding issue or to undermine the Committee's repeated statements, made in the nearly two years that

5

have followed that conference, affirming the Debtor's personnel file efforts. Dkt. No. 1067.

11. The Motion also takes pains to suggest that the Debtor has not been candid or truthful with the Court concerning its personnel file production. That too is not borne out by the facts. As set forth above, the Committee has long understood that the Debtor has gone to great lengths to identify, locate, and produce personnel files. And while the Debtor located a small number of additional files in June of 2023 as part of a supplemental search in connection with claim objections, there is no evidence that anyone had any knowledge of files that had not been collected at the time of the statements at issue. *Compare* Dkt. No. 2836, ¶¶ 25-28 (describing results of June 1, 2023 search) *with* Motion at 2-3 (citing statements made in April and May 2023). Indeed, those subsequent searches are evidence of the Diocese's continuing efforts to address any concern that personnel files have not been located or produced, and the steps it takes to correct any issues that are identified.

### THE COMMITTEE IS CORRECT THAT THE DEBTOR HAS NOT HIDDEN PERSONNEL FILES; THERE ARE NO FACTS TO JUSTIFY A FROLIC AND DETOUR ON THE DEBTOR'S DISCOVERY EFFORTS

12. The Motion acknowledges that none of the files located by the Debtor in its June 1, 2023 search were hidden or destroyed. Motion at 4. And the deposition transcript of the Debtor's archivist attached to the Motion confirms key aspects of the personnel files that have been located and produced. Far from "tell[ing] two very different stories," the archivist's deposition testimony confirms the Debtor's prior statements concerning personnel file discovery. Motion at 4.

13. Specifically, the Diocese's archivist deposition confirms that: (i) the Debtor's personnel files are kept under lock and key, Motion, Ex. B, 12:22-13:3; (ii) files for active priests are kept at the Debtor's Chancery, *id.* 18:24-7; (iii) files for terminated priests are kept at the Debtor's archives, *id.* 18:21-23; (iv) the confidential or "secret" portions of personnel files are

6

kept separate from other portions of the personnel file, in filing cabinets at the Debtor's Chancery, *id*. 42:2-11, 43:2-9; (v) personnel files are retained indefinitely, *id*. 29:9-16; (vi) the Debtor's prior searches for personnel files included its archives, *id*. 44:22-45:2; (vii) the Debtor's collection efforts have included both off-site and on-site scanning of archive files, *id*. 48:9-12, 49:2-25; and (viii) no documents from the archives have been destroyed during the archivist's tenure, *id*. 60:16-19.

14.   While the Motion argues that whether a personnel file can be located is simple and "binary" process (Motion at 4), it ignores the practical reality that over the course of a yearslong discovery process seeking millions of pages of records from decades past, some level of human error and technological mishap is highly likely, if not inevitable. Indeed, the Committee participated in a reconciliation process and the Debtor has performed repeated supplemental searches for that very reason.

15.   The Motion also accuses the Stephens Declaration of "carefully cho[osing] its language." Right again. Throughout this matter, the Debtor has worked hard to verify and accurately describe the discovery efforts it has undertaken. Far from any effort to "gloss[] over" the details of the searches that are the subject of the Motion, the statements in the Stephens Declaration are indicative of the fact that given the passage of time, the Debtor has been unable to determine whether the fact that certain files were not located in earlier searches was the result of human error, technology issues, or both. What is certain is that these files were not located during earlier searches as the result of the routine challenges posed by large scale document discovery of ancient paper records kept in multiple locations, during a global pandemic and its aftermath, and not a nefarious plot to concoct a "one free sexual abuse pass" regime. Motion at 10.

16. And while the Motion presents no legal authority and there are no formal discovery requests at issue, a review of the case law makes clear that even in response to formal discovery demands, the Debtor's failure to conduct a perfect search does not provide the basis for wide-ranging follow up requests and never ending discovery-about-discovery. Instead, the law requires the Debtor to have undertaken "a diligent search, which involves developing a reasonably comprehensive search strategy." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006); it does not impose on the Debtor an "obligation . . . to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations." *Id*. Where there is evidence that a responding party has been diligent in its discovery obligations, "[t]he [c]ourt does not require a separate certification," as requested by the Committee here. *See Aviles v. S&P Glob., Inc.*, 583 F. Supp. 3d 507, 516 (S.D.N.Y. 2022) (denying request for certification where court found "no basis to believe that Plaintiffs have not attempted to diligently collect documents.").

### THE COMMITTEE HAS NO PRESENT RIGHT TO ADDITIONAL DISCOVERY AND SOUGHT THE RIGHT TO MAKE PERSONNEL FILES PUBLIC

17. Finally, the Motion complains that although the Debtor has produced the files it located in June of 2023 to the relevant State Court Counsel, it has not yet provided copies to the Committee. Motion at 7. That too deliberately ignores the relevant facts.

18. The Debtor's initial agreement to provide the Committee with documents, including personnel files, is set forth in the parties' Stipulation and Order Pursuant to 11 U.S.C. § 105(a) Staying Continued Prosecution of Certain Lawsuits, so-ordered January 22, 2021. Adv. Pro. Dkt. 59. Pursuant to that stipulation, the Debtor agreed to produce "Documents that would otherwise be produced to plaintiffs in the underlying CVA Actions …" *Id*., ¶ 12, Schedule 4. Following its entry, the parties proceeded pursuant to that stipulation throughout 2021 and 2022,

8

including the parties' personnel file reconciliation process.

19. On January 14, 2023, the Committee withdrew its consent to the continuation of the preliminary injunction (Adv. Pro. Dkt. No. 166, the "Termination Notice") thereby terminating its right to any future document productions from the Debtor. Adv. Pro. Dkt. No. 157 ¶ 14 ("For the avoidance of doubt, all rights of all parties are reserved with respect to any requests made or discovery sought or received after termination of the Stay as a result of a Committee Consent Withdrawal Notice.").

20. Despite the Committee's Termination Notice, the Debtor continued to provide the Committee with documents and financial information, throughout the first half of 2023. And consistent with that approach, within days of locating additional personnel files in June 2023, the Debtor notified the Court and the parties, and made a proposal to produce the non-duplicative, non-privileged documents located by that search. Dkt. No. 2836, Ex. A, n. 2.[4]

21. However, the Debtor's proposal to produce the June 2023 personnel files was rejected (Dkt. No. 2836, Ex. B) and up until yesterday, the Committee was seeking to strip the Debtor's personnel files of any confidentiality whatsoever. Dkt. No. 2769. Removing that confidentiality would have provided the Committee and anyone else with access to the documents, the ability to make public the sensitive personal information of the Debtor's current and former personnel. *See* Dkt. No. 2804 (describing personal and confidential information contained in personnel files). No reasonable litigant would voluntarily provide confidential personnel files to an adversary under those circumstances.

22. Regardless, the issue is now moot. The Debtor has agreed to prepare and make

---

[4] The Motion's contention that the Debtor did not notify the parties of additional documents is belied by the response that disclosure provoked. Dkt. No. 2836, Ex. B (acknowledging "the 'supplemental search' apparently resulted in the Debtor finding more documents regarding some of the alleged abusers.").

9

available to claimants' counsel, including pro se claimants, alleged abuser personnel files on a confidential basis. Dkt. No. 2887. The Debtor will also provide the Committee with those same productions.

## CONCLUSION

23.     Finally, while the Committee is not entitled to any of the relief sought in the Motion, it bears mentioning that much of the information sought has already been provided, including how the Debtor has searched for, collected, and produced documents in the case. And that information is confirmed by the deposition of the archivist that has already been taken in the deposition transcript the Committee attached to the Motion. The remaining requests cover matters that have nothing to do with the personnel files at issue (i.e. files concerning the Diocese of Brooklyn), seek privileged communications (i.e. communications between counsel for the Debtor and its archivist), or are unknowable or beyond the Debtor's control (i.e. requests for the production of and information concerning "records that exist but are not in the Diocese possession, custody, or control." Motion at 8-10.

24.     The motion should be denied.

| | |
|---|---|
| Dated: February 7, 2024<br>New York, New York | Respectfully submitted,<br><br>*/s/ Eric P. Stephens*<br>Corinne Ball<br>Todd R. Geremia<br>Eric P. Stephens<br>Benjamin Rosenblum<br>Andrew Butler<br>JONES DAY<br>250 Vesey Street<br>New York, New York 10281-1047<br>Telephone: (212) 326-3939<br>Facsimile: (212) 755-7306<br>Email: trgeremia@jonesday.com<br>       cball@jonesday.com<br>       trgeremia@jonesday.com<br>       epstephens@jonesday.com<br>       brosenblum@jonesday.com<br>       abutler@jonesday.com<br><br>*Counsel for the Debtor*<br>*and Debtor-in-Possession* |

11