PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Iain A. W. Nasatir, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777
Email:    jstang@pszjlaw.com
         inasatir@pszjlaw.com
         kdine@pszjlaw.com
         bmichael@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 20-12345 (MG) |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK, | Chapter 11 |
| Debtor. | |

**NOTICE OF FILING OF FINAL PROPOSED LETTER OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO THE DEBTOR'S <u>FOURTH MODIFIED FIRST AMENDED PLAN</u>**

**PLEASE TAKE NOTICE** that attached as <u>**Exhibit A**</u> is the Final Proposed Letter of the Official Committee of Unsecured Creditors (the "<u>Final Committee Plan Letter</u>") reflecting the changes required by the Court on the record of the hearing before the Bankruptcy Court on February 15, 2024.

**PLEASE TAKE FURTHER NOTICE** the Committee is submitting the Final Committee Plan Letter for inclusion in the Solicitation Materials in connection the *Debtor's Fifth Amended*

4895-3212-4837.2 18491.002

*Disclosure Statement* [Docket No. 2928] with respect *Debtor's Fourth Modified First Amended Plan of Reorganization* [Docket No. 2925].

**PLEASE TAKE FURTHER NOTICE** that attached as **Exhibit B** hereto is a redline version comparing the Final Proposed Committee Plan Letter against the Revised Proposed Committee Plan Letter [Docket No. 2912].

**PLEASE TAKE FURTHER NOTICE THAT THIS IS NOT A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN.**

Dated: February 20, 2024                **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James I. Stang*
James I. Stang, Esq. (admitted *pro hac vice*)
Karen B. Dine, Esq.
Iain Nasatir, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 36th Floor
New York, New York 10017
Tel: 212-561-7700
Fax: 212-561-7777
Email:      jstang@pszjlaw.com
            kdine@pszjlaw.com
            inasatir@pszjlaw.com
            bmichael@pszjlaw.com

*Counsel for the Official Committee of Unsecured Creditors*

# **EXHIBIT A**

**THE COMMITTEE RECOMMENDS THAT SEXUAL ABUSE SURVIVORS**
**VOTE TO REJECT THE DIOCESE PLAN**

The Official Committee of Unsecured Creditors in the chapter 11 bankruptcy of The Roman Catholic Diocese of Rockville Centre New York urges you and all survivors to ***vote to REJECT the Diocese's Plan***. The Committee, comprised of 9 members, 8 of whom are themselves survivors, and appointed by the U.S. Justice Department (U.S. Trustee), believes the Plan is not worthy of your support.

**The fundamental problems with the Diocese's Plan are that the actual settlement amount for survivors is far too low, and it does not treat all survivors fairly. While the Diocese speaks of its "substantial" insurance coverage, the Diocese's insurance is tied up in lawsuits with no insurance payments expected in the immediate future.**

**The Diocese's stated settlement number for all claims, not just claims of survivors, is $200 million. The devil is in the details. The Committee estimates that the amount that will go to survivors could be less than $135 million.**

**The Committee urges all survivors or their counsel to attend the Committee's "Town Hall" meetings at which we will discuss its recommendation to vote to reject the Plan. You can get the schedule and Zoom link for the Town Hall meetings by emailing DRVUCC@pszjlaw.com.**

The key flaws in Diocese's Plan include:

- The Diocese is not proposing any **additional** child protection measures or any non-monetary measures for reconciliation and healing of survivors.
- The Parishes are paying far too little to resolve the claims of survivors against them given their responsibility for the abuse and their substantial cash and real estate assets.
- The Diocese promotes a total bankruptcy settlement amount of $200 million acknowledging that $10s of millions of that total settlement will not be paid to survivors. The amount of the total bankruptcy settlement number available to pay survivors is reduced by the following:
  - At least $16 million to pay Diocese bankruptcy-related expenses, including the fees of the Diocese's professionals.
  - $4 million for creditors who are not survivors.
  - $9.9 million being set aside for "future" survivors (survivors whose Abuse occurred prior to the Diocese's bankruptcy, but who have a valid legal excuse for not filing a timely claim). If no or few such claimants come forward, any of the $9.9 million that is not used to pay future claims goes back to the Diocese instead of going towards the settlement for you and other current survivors.
  - Potentially $10s of millions in expenses for the Diocese to continue to fight 130+ survivors rather than to resolve those Diocese-disputed abuse claims through a

simplified evaluation process. The Diocese intends to use its own lawyers to fight survivors' claims and does not tell you how much that will cost or how long it will take.

- o The Diocese promises that it has lots of insurance that will increase the settlement but it does not tell the whole story. Getting the insurance companies to pay is not as easy as the Diocese makes it sound. The insurers have not paid anything yet and reserve all rights, including the right to decline coverage. The legal fees for the fights with the insurance companies will come out of the $200 million total bankruptcy settlement. The Diocese does not estimate how much the fights with the insurance companies will cost or how long that fights will take.

- o $50 million of the total bankruptcy settlement number is paid over three years - with no interest and those payments are not secured by a mortgage on any property. Thus, there is a risk that the Diocese, Parishes and/or Seminary will not make the payment leaving the Settlement Trustees to chase after the Diocese, Parishes and/or Seminary for those monies (and having to use money that would otherwise go to pay survivors to try and collect any unpaid funds).

- o Additionally, because the $50 million is paid over time without interest, the Committee estimates its real value should be reduced by $4 million.

- Under the Plan, the Parishes get releases for any abuse claims. The Parishes are not paying a fair amount for those releases. Exhibit 5 to the Debtor's Disclosure Statement shows the Parishes **have over $200 million in cash and other assets** before considering their substantial real estate. The Diocese and the Parishes do not provide any values for most of their real estate. The Committee believes that the Parish real estate has significant value that could be used to compensate survivors. Reviewing public information of the Parish real estate indicates that the real estate has a total assessed value of about $57 million and with a market value of over a billion dollars. Collectively the Parishes are only contributing $78.1 million in cash (over three years) notwithstanding their substantial assets and potential liability for hundreds of claims relating to childhood sexual abuse.

- The Diocese proposes that the Cemetery Corporation and Cemetery Trust contribute only $10 million in cash to resolve fraud claims against them resulting from the Diocese's transfer of *$100s of millions* to the Cemetery Corporation and Cemetery Trust before the bankruptcy. While the Diocese is asking the Cemetery Trust to make a $35 million loan to the Diocese that will further fund the settlement, the Diocese (not the Cemetery Trust) is securing that loan with the Diocese's ownership of an insurance company known as Ecclesia and a mortgage on the Diocese's broadcast licenses. Thus, the Diocese would be using its own property to get this loan and claiming that the contribution is from the Cemetery Trust. The Committee believes that the Cemetery Corporation and the Cemetery Trust should make a far larger contribution to settle the fraud claims against them. If the Cemetery Trust and Cemetery Corporation even agreed to this proposed settlement (and we do not know if they will agree), the Committee does not believe that the proposed settlement is fair.

- There are two separate settlement trusts that will pay you depending on when your abuse happened and the potential insurance coverage for that abuse. Your recovery could vary significantly depending on which settlement trust (or settlement subtrust) you are assigned to by the Diocese meaning that some survivors may receive a greater percentage of recovery than others with similar claims. That is not fair to all survivors.

- Because certain Abuse Claimants receive a guaranteed minimum payment regardless of the abuse suffered, survivors with more severe claims may receive a lower percentage of recovery than survivors with "less severe" claims. That is not fair to all survivors.

- The Diocese intends to continue fighting over at least 130 survivors' claims. None of those 130 survivors can receive a payment, other than the minimum consideration payments, until all those 130+ claims are finally resolved. Resolving all such claims could take years. After all these years, continuing to fight survivors in court is not fair.

- The Diocese intends to hire its own lawyers to carry on the fight with those 130+ survivors. Those lawyers' fees are paid from the settlement funds assigned to help those very same survivors. If those lawyers' fees are more than the amount of the settlement funds set aside for those survivors, then such survivors who have allowed claims may receive *nothing* from those settlement funds and would only receive the minimum consideration payments. Using monies assigned to pay survivors to fight with survivors is not fair. All of the survivors' claims should go through the same determination process rather than the Diocese wasting survivor money to fight survivor claims separately.

**The Committee also believes that the Debtor's Plan should include provisions to improve their existing child protection protocols to promote the healing of survivors, including, but not limited to, the following:**

- Retaining a lay expert Child Protection Consultant and following the Consultant's recommendations;

- Publishing documents related to Abuse but removing survivor information;

- Releasing survivors from existing confidentiality restrictions;

- Bishop's commitment to participate personally in survivor forums/discussion groups unrelated to religious services;

- Issuing individual apology letters signed by the Bishop, including recognition of the courage of survivors who have come forward;

- Removing perpetrator recognitions on buildings, if any; and

- Creating places of remembrance at the parishes and schools.

If enough survivors vote to reject the Diocese's Plan, the Diocese's bankruptcy case may be dismissed, leaving you free to pursue any viable claims against the Diocese, its Parishes and the other non-debtor affiliates of the Diocese subject to potential delays due to one of the Diocese's insurer's insolvency proceedings, as well as delays in litigation generally, and for those that do not have pending lawsuits a limited time to commence such a suit against the Diocese (subject to statutes of limitations and other applicable defenses).

The Committee believes that survivors as a group can do better if the Diocese's Plan is rejected. However, there can be no guaranty that survivors will do better and individual survivors may receive nothing or less than they would if the Diocese Plan is accepted and confirmed.

For more detailed information, we welcome your attendance at the Committee's Town Halls. Schedule and Zoom link for the Town Hall meetings can be found by emailing **DRVUCC@pszjlaw.com.**

*We urge Abuse Claimants to join with us in opposing the Plan and to*
*<u>VOTE TO REJECT</u>*

**FEBRUARY 15, 2024**

*THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS*

## **EXHIBIT B**

~~DRAFT***NOT APPROVED FOR OR FOR PURPOSES OF SOLICITATION~~

## THE COMMITTEE RECOMMENDS THAT SEXUAL ABUSE SURVIVORS VOTE TO REJECT THE DIOCESE PLAN

The Official Committee of Unsecured Creditors in the chapter 11 bankruptcy of The Roman Catholic Diocese of Rockville Centre New York urges you and all survivors to ***vote to REJECT the Diocese's Plan***. The Committee, comprised of 9 members, 8 of whom are themselves survivors, and appointed by the U.S. Justice Department (U.S. Trustee), believes the Plan is not worthy of your support.

**The fundamental problems with the Diocese's Plan are that the actual settlement amount for survivors is far too low, and it does not treat all survivors fairly. While the Diocese speaks of its "substantial" insurance coverage, the Diocese's insurance is tied up in lawsuits with no insurance payments expected in the immediate future.**

**The Diocese's stated settlement number for all claims, not just claims of survivors, is $200 million. The devil is in the details. The Committee estimates that the amount that will go to survivors could be less than $135 million.**

**The Committee urges all survivors or their counsel to attend the Committee's "Town Hall" meetings at which we will discuss its recommendation to vote to reject the Plan. You can get the schedule and Zoom link for the Town Hall meetings by emailing DRVUCC@pszjlaw.com.**

The key flaws in Diocese's Plan include:

- The Diocese is not proposing any **additional** child protection measures or any non-monetary measures for reconciliation and healing of survivors.
- The Parishes are paying far too little to resolve the claims of survivors against them given their responsibility for the abuse and their substantial cash and real estate assets.
- The Diocese promotes a total bankruptcy settlement amount of $200 million acknowledging that $10s of millions of that total settlement will not be paid to survivors. The amount of the total bankruptcy settlement number available to pay survivors is reduced by the following:
  - At least $16 million to pay Diocese bankruptcy-related expenses, including the fees of the Diocese's professionals.
  - $4 million for creditors who are not survivors.
  - $9.9 million being set aside for "future" survivors (survivors whose Abuse occurred prior to the Diocese's bankruptcy, but who have a valid legal excuse for not filing a timely claim). If no or few such claimants come forward, any of the $9.9 million that is not used to pay future claims goes back to the Diocese instead of going towards the settlement for you and other current survivors.

- o Potentially $10s of millions in expenses for the Diocese to continue to fight 130+ survivors rather than to resolve those Diocese-disputed abuse claims through a simplified evaluation process. The Diocese intends to use its own lawyers to fight survivors' claims and does not tell you how much that will cost or how long it will take.

- o The Diocese promises that it has lots of insurance that will increase the settlement but it does not tell the whole story. Getting the insurance companies to pay is not as easy as the Diocese makes it sound. The insurers have not paid anything yet and reserve all rights, including the right to decline coverage. The legal fees for the fights with the insurance companies will come out of the $200 million total bankruptcy settlement. The Diocese does not estimate how much the fights with the insurance companies will cost or how long that fights will take.

- o $50 million of the total bankruptcy settlement number is paid over three years - with no interest and those payments are not secured by a mortgage on any property. Thus, there is a risk that the Diocese, Parishes and/or Seminary will not make the payment leaving the Settlement Trustees to chase after the Diocese, Parishes and/or Seminary for those monies (and having to use money that would otherwise go to pay survivors to try and collect any unpaid funds).

- o Additionally, because the $50 million is paid over time without interest, the Committee estimates its real value should be reduced by $4 million.

- Under the Plan, the Parishes get releases for any abuse claims. The Parishes are not paying a fair amount for those releases. Exhibit 5 to the Debtor's Disclosure Statement shows the Parishes **have over $200 million in cash and other assets** before considering their substantial real estate. The Diocese and the Parishes do not provide any values for most of their real estate. The Committee believes that the Parish real estate has significant value that could be used to compensate survivors. Reviewing public information of the Parish real estate indicates that the real estate has a total assessed value of about $57 million and with a market value of over a billion dollars. Collectively the Parishes are only contributing $78.1 million in cash (over three years) notwithstanding their substantial assets and potential liability for hundreds of claims relating to childhood sexual abuse.

- The Diocese proposes that the Cemetery Corporation and Cemetery Trust contribute only $10 million in cash to resolve fraud claims against them resulting from the Diocese's transfer of *$100s of millions* to the Cemetery Corporation and Cemetery Trust before the bankruptcy. While the Diocese is asking the Cemetery Trust to make a $35 million loan to the Diocese that will further fund the settlement, the Diocese (not the Cemetery Trust) is securing that loan with the Diocese's ownership of an insurance company known as Ecclesia and a mortgage on the Diocese's broadcast licenses. Thus, the Diocese would be using its own property to get this loan and claiming that the contribution is from the Cemetery Trust. The Committee believes that the Cemetery Corporation and the Cemetery Trust should make a far larger contribution to settle the fraud claims against them. If the Cemetery Trust and Cemetery Corporation even agreed to this proposed

settlement (and we do not know if they will agree), the Committee does not believe that the proposed settlement is fair.

- There are two separate settlement trusts that will pay you depending on when your abuse happened and the potential insurance coverage for that abuse. Your recovery could vary significantly depending on which settlement trust (or settlement subtrust) you are assigned to by the Diocese meaning that some survivors may receive a greater percentage of recovery than others with similar claims. That is not fair to all survivors.

- Because certain Abuse Claimants receive a guaranteed minimum payment regardless of the abuse suffered, survivors with more severe claims may receive a lower percentage of recovery than survivors with "less severe" claims. That is not fair to all survivors.

- The Diocese intends to continue fighting over at least 130 survivors' claims. None of those 130 survivors can receive a payment, other than the minimum consideration payments, until all those 130+ claims are finally resolved. Resolving all such claims could take years. After all these years, continuing to fight survivors in court is not fair.

- The Diocese intends to hire its own lawyers to carry on the fight with those 130+ survivors. Those lawyers' fees are paid from the settlement funds assigned to help those very same survivors. If those lawyers' fees are more than the amount of the settlement funds set aside for those survivors, then such survivors who have allowed claims may receive *nothing* from those settlement funds and would only receive the minimum consideration payments. Using monies assigned to pay survivors to fight with survivors is not fair. All of the survivors' claims should go through the same determination process rather than the Diocese wasting survivor money to fight survivor claims separately.

**The Committee also believes that the Debtor's Plan should include provisions to improve their existing child protection protocols to promote the healing of survivors, including, but not limited to, the following:**

    o   Retaining a lay expert Child Protection Consultant and following the Consultant's recommendations;

    o   ~~Publicly p~~Publishing documents related to Abuse but removing survivor information;

    o   Releasing survivors from existing confidentiality restrictions;

    o   Bishop's commitment to participate personally in survivor forums/discussion groups unrelated to religious services;

    o   Issuing individual ~~and public~~ apology letters signed by the Bishop, including recognition of the courage of survivors who have come forward;

    o   Removing perpetrator recognitions on buildings, if any; and

    o   Creating places of remembrance at the ~~Chancery,~~ parishes and schools.

If enough survivors vote to reject the Diocese's Plan, the Diocese's bankruptcy case may be dismissed, leaving you free to pursue any viable claims against the Diocese, its Parishes and the other non-debtor affiliates of the Diocese subject to potential delays due to one of the Diocese's insurer's insolvency proceedings, as well as delays in litigation generally, and for those that do

not have pending lawsuits a limited time to commence such a suit against the Diocese (subject to statutes of limitations and other applicable defenses).

The Committee believes that survivors as a group can do better if the Diocese's Plan is rejected. However, there can be no guaranty that survivors will do better and individual survivors may receive nothing or less than they would if the Diocese Plan is accepted and confirmed.

For more detailed information, we welcome your attendance at the Committee's Town Halls. Schedule and Zoom link for the Town Hall meetings can be found by emailing **DRVUCC@pszjlaw.com.**

*We urge Abuse Claimants to join with us in opposing the Plan and to*
<u>*VOTE TO REJECT*</u>

**FEBRUARY 15, 2024**

*THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS*