**<u>Annex 1</u>**

**Application**

JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Nicholas Morin
Andrew Butler
250 Vesey Street
New York, New York  10281
Telephone:	(212) 326-3939
Facsimile:	(212) 755-7306

*Counsel for the Debtor
and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | Case No. 20-12345 (MG) |
| Debtor. | |

**APPLICATION OF THE DEBTOR FOR
AN ORDER AUTHORIZING IT TO RETAIN AND
EMPLOY EGAN-JONES RATINGS COMPANY AS RATINGS AGENT**

The Roman Catholic Diocese of Rockville Centre, New York, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), hereby applies to the Court (this "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), for the entry of an order, in substantially the form attached as **Exhibit A** (the "Proposed Order"), (i) authorizing it

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

NAI-1539444445v1

to retain and employ Egan-Jones Ratings Company ("Egan-Jones") to provide a credit rating and other related services concerning a potential loan transaction; and (ii) granting certain related relief. In support of this Application, the Debtor submits the Declaration of Eric Mandelbaum (the "Mandelbaum Declaration"), a copy of which is attached hereto as **Exhibit B**. In further support of this Application, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and pursue its religious, non-profit mission and ministry, and manage its properties and affairs as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

3. Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the *Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date.

NAI-1539444445v1

**RELIEF REQUESTED**

4.     The Debtor requests entry of an order, in substantially the form of the Proposed Order, (a) authorizing it to retain and employ Egan-Jones to provide a credit rating and other related services concerning a potential loan transaction in accordance with (i) the terms and conditions contained in the Rating Services Agreement dated as of February 26, 2024 (the "Agreement"), a copy of which is attached hereto as **Exhibit C** and (ii) the terms and conditions contained in the Statement of Work, dated as of February 26, 2024, attached to the Agreement as Annex B (the "SOW"), and (b) granting certain related relief.

5.     In the Debtor's process of soliciting interest in respect of a lending transaction whereby the Debtor's spectrum-related assets would serve as collateral, the Debtor has become aware that a rating of such loan is a condition precedent to obtaining a financing commitment from certain potential lenders.  Thus, in order to further understand the universe of potential lenders, the Debtor must obtain the services of a highly-regarded ratings firm, such as Egan-Jones, to provide a rating as to such potential loan.

**BASIS FOR RELIEF REQUESTED**

6.     Section 327(a) of the Bankruptcy Code authorizes a debtor, with court approval, to retain:

> one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).  Section 328(a) of the Bankruptcy Code authorizes a debtor, again with court approval, to employ professionals retained under section 327(a) "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

### A. Services to Be Provided by Egan-Jones

7. The Debtor proposes to retain Egan-Jones as ratings agent to provide a credit rating and other related services concerning a potential loan transaction. In particular, the Debtor anticipates that Egan-Jones will perform, among others, the following services:[2]

- Egan-Jones shall use its best efforts to provide the Debtor with a "Written Indicative Credit Assessment" (as contemplated by the SOW) of the potential loan transaction within 30 days after entry of an order approving the Application;

- Egan-Jones will use its best efforts to provide the Debtor with a "Final Rating" of the potential loan transaction (as contemplated by the SOW) by the earlier of (a) 150 days after the issuance of the Written Indicative Credit Assessment and (b) the closing of the potential loan transaction; and

- Following the issuance of the Final Rating, Egan-Jones will provide ongoing surveillance monitoring of the transaction, including a surveillance report with respect to a credit rating no less frequently than annually.

8. Egan-Jones' proposed retention is for the matters referenced above. Egan-Jones will not be involved in the day-to-day administration of this chapter 11 case and will not be responsible for the Debtor's general restructuring efforts. By delineating Egan-Jones' role, the Debtor intends to eliminate duplication of services.

### B. Egan-Jones' Qualifications

9. Egan-Jones is an independently owned nationally recognized statistical ratings organization ("NRSRO") registered with the U.S. Securities and Exchange Commission ("SEC") with a long-established reputation for issuing timely, accurate credit ratings and related services. Egan-Jones is a market leader in private placement ratings. Since its founding in 1995, it has

---

[2] The following description of services is qualified in its entirety by the terms of the Agreement and the SOW.

issued over 6,000 private placement ratings and over 20,000 credit research ratings. Egan-Jones specializes in, among other things: (a) private placement credit ratings; (b) credit ratings and research including subscription ratings; and (c) proxy advisory services. *See* Mandelbaum Declaration ¶ 2.

10. As a NRSRO regulated by the SEC, Egan-Jones is subject to regulations which are intended to foster accountability and transparency in the credit rating process. Egan-Jones follows its publicly available methodologies for determining credit ratings and is required to file their ratings performance on their website as part of their annual filing with the SEC on Form NRSRO. Egan-Jones' credit ratings are based on the likelihood of payment, capacity, and willingness of the obligor to meet its financial commitment on an obligation in accordance with the terms of the obligation, the nature of and provisions of the obligation, the protection afforded by and relative position of the obligation in the event of bankruptcy, reorganization or other arrangement under the laws of bankruptcy, and other laws affecting creditors' rights. *See* Mandelbaum Declaration ¶ 3.

C. **Egan-Jones' Terms of Retention**

11. Egan-Jones intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered on November 4, 2020 [Docket No. 129] (the "Interim Compensation Order"). Egan-Jones' fees for the services under the Agreement and SOW are as follows:[3] (a) $45,000 or 8 basis points ("bps") of the rated size of instrument, whichever is greater, for the Final Rating; (b) 80% of the cost of the Final Rating for the Written Indicative Credit Assessment, which amounts shall be credited against the

---

[3] The following description of fees is qualified in its entirety by the terms of the Agreement and the SOW.

NAI-1539444445v1

amount owed in respect of a subsequently issued Final Rating; (c) $22,500 or 4 bps of the rated size of the instrument, whichever is greater, for surveillance monitoring, paid annually;[4] (d) $22,500 or 8 bps of the rated size of the instrument, whichever is greater, for any re-rating following the Final Rating; and (e) 8 bps on the incremental upsize of the rated instrument. These fees may be subject to increase as set forth in the Agreement and the SOW.

12. Generally, the rates charged by Egan-Jones are comparable or lower to what is generally charged by other ratings agencies of similar stature to Egan-Jones for comparable engagements. Egan-Jones and the Debtor believe that the foregoing compensation arrangement is reasonable, market-based and consistent with Egan-Jones' normal and customary billing levels for comparably sized and complex instruments, both in and out of court, involving the services to be provided in this chapter 11 case.

### D.     **Disinterestedness and Disclosure of Connections**

13. Egan-Jones has reviewed its files to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor attached to the Mandelbaum Declaration as <u>Schedule 1</u> and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Mandelbaum Declaration, Egan-Jones represents that it neither holds nor represents any interest adverse to the Debtor's estate in connection with any matter on which it would be employed.

14. To the extent that Egan-Jones discovers additional information that requires disclosure after the filing of this Application, Egan-Jones will file supplemental disclosures with the Court.

---

[4] Egan-Jones reserves the right to increase the surveillance fee by up to 5% *per annum* as determined by Egan-Jones in its sole discretion and reflected in each surveillance invoice.

NAI-1539444445v1

15. In reliance on the Mandelbaum Declaration, the Debtor believes that (a) Egan-Jones has no connection with the Debtor, its creditors, the United States Trustee for the Southern District of New York (the "U.S. Trustee"), any person employed in the Office of the U.S. Trustee, or any other party with an actual or potential interest in this chapter 11 case or its respective attorneys or accountants, except as set forth in the Mandelbaum Declaration, and (b) Egan-Jones neither represents nor holds any interest adverse to the Debtor or its estate with respect to any matter on which Egan-Jones is to be employed by the Debtor. The Debtor believes that Egan-Jones' representation of the Debtor is permissible under section 327(a) of the Bankruptcy Code and is in the best interest of the Debtor's estate.

## NOTICE

16. Notice of this Application will be provided to: (a) the Office of the U.S. Trustee; (b) the Committee; and (c) all other parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

17. No prior request for the relief sought herein has been made to this Court or any other court.

[*Remainder of Page Left Blank Intentionally*]

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order and grant such other and further relief to the Debtor as may be appropriate.

Dated:  February 26, 2024

Respectfully submitted,

<u>/s/ Thomas Renker</u>
Thomas Renker
Chief Operating Officer
and General Counsel

-8-

NAI-1539444445v1