March 13, 2024

**VIA ELECTRONIC FILING**

The Honorable Martin Glenn
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

    Re:    Re: In re. The Roman Catholic Diocese of Rockville Centre, New York Case No. 20-12345

Dear Judge Glenn:

The Official Committee of Unsecured Creditors (the "Committee") and Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company ("Interstate") and its affiliate and claims handler, Allianz Reinsurance America, Inc., dba, Allianz Resolution Management ("AZRA," and together with Interstate and the Committee, the "Parties"), in the above-captioned bankruptcy case (the "Bankruptcy Case"), by and through their respective undersigned counsel, hereby submit this joint letter to update the Court with respect to this matter.

**The Committee's Statement**

In early May 2023, Interstate violated the Bar Date Order by disclosing survivor personal information (the "Survivor Information") from proofs of claim filed by sexual abuse claimants (the "Survivors") to unauthorized third parties.[1] Over four months later, on September 27, 2023, Interstate alerted the Court of the unauthorized disclosure of Survivor Information to third parties. *See* Letter of Todd C. Jacobs on Behalf of the Interstate Insurers [Docket No. 2524] (the "Disclosure Letter").

The Disclosure Letter states that Survivor Information from approximately 178 proofs of claim in the Bankruptcy Case, including claimants' names, a categorical description of their alleged injury, a general loss cause description, and the insured on the policy at issue, was disclosed to a third-party service provider, Insurance Services Office ("ISO"). ISO contracts with AZRA to process claims and detect claims fraud. ISO disclosed the Survivor Information of two claimants in a database accessible to ISO's third-party clients (the "Participating Organizations"). *See* Disclosure Letter at 2.

---

[1] Refers to the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 333].

4870-2377-2077.7 18491.002

March 13, 2024
Page 2

The disclosure of the Survivor Information to ISO (and the Participating Organizations) violated the Bar Date Order. ISO is not a party authorized to receive Survivor Information under the Bar Date Order. ISO signed the *Authorized Party Confidentiality Agreement* [Docket No. 333 at PDF p. 50] (the "Confidentiality Agreement," and together with the Bar Date Order, the "Orders") over 4 months *after* first receiving the Survivor Information and only 10 days *before* the Interstate Insurers filed the Disclosure Letter with this Court. *See* Disclosure Letter at PDF pp. 4-6.

Nevertheless, in the Disclosure Letter, Interstate claimed that (i) ISO, as an "administrator" of AZRA, is an "Authorized Party" permitted to receive Survivor Information under the terms of the Bar Date Order, and (ii) the disclosure of the Survivor Information to ISO was for a "Permitted Use" under the Confidentiality Agreement. *See* Disclosure Letter at 3. Interstate also maintained that although ISO was not aware of the Bar Date Order at the time the Survivor Information was disclosed to it, ISO "has now signed the [Confidentiality] Agreement" and "voided the confidential information," and therefore, "AZRA has attempted to comply with its obligations under the Order and Agreement." *Id.*[2]

Based on terms of the Orders, and as further corroborated by ample deposition testimony, it is clear that ISO is not an "Authorized Party" and did not obtain the Survivor Information for a "Permitted Use." The Bar Date Order expressly limits "Authorized Parties" to an "insurance company of the Debtor that may provide coverage for Sexual Abuse Claims" or the "respective successors, reinsurers, administrators, [or] counsel" for such an insurance company." Bar Date Order ¶ 15(c)(iv). ISO does not fall within any of the above categories and is therefore not an Authorized Party under the Bar Date Order.

---

[2] As of May 17, 2023, the process that led to the inadvertent disclosure of Survivor Information was "stopped," and on May 22, 2023 ISO "voided" the Survivor Information it received, and such information is not available to any other party. *See* October 16, 2023 Declaration of Brook Green [Docket No. 2571].

March 13, 2024
Page 3

The disclosure of Survivor information to ISO was also not for a "Permitted Use." The Confidentiality Agreement expressly provides that recipients of Confidential Information may use Confidential Information (including Survivor Information) "***only in connection with the evaluation, prosecution or defense of the claims asserted in such Proofs of Claim in the Debtor's Chapter 11 Case***, any related adversary proceedings or contested matters in the Chapter 11 Case, any related insurance or reinsurance coverage demands, claims, disputes, or litigation, and settlement negotiations or mediations regarding all of the foregoing, and as otherwise required by applicable federal or state laws or regulations." Confidentiality Agreement ¶ 4 (emphasis added).

On October 9, 2023, the Committee filed its motion seeking discovery to investigate Interstate's violation of Bar Date Order. *See* Docket No. 2556 (the "Rule 2004 Motion"). Therein, the Committee maintained that contrary to Interstate's representations in the Disclosure Letter, ISO is not an "Authorized Party" under the plain terms of the Bar Date Order, and did not receive the Survivor Information for a "Permitted Use." *See* Rule 2004 Motion at 4-5 (stating that under the express terms of the Orders, "merely signing the [Confidentiality Agreement] does not make a party an Authorized Party under the Bar Date Order.")

Over the last several months, Interstate has cooperated in discovery, including by producing documents and participating in depositions. The Committee's investigation has only crystallized its position that under the clear terms of the Orders, ISO (i) is not an "Authorized Party" and (ii) did not obtain the Survivor Information for a "Permitted Use." During discovery, agents of AZRA testified that while ISO contracts with AZRA to ferret out fraud claims, ISO did not "have any role in the evaluation of abuse claims by AZRA," or "in the prosecution or defense of claims by AZRA." *See* 12-8-23 Campbell Deposition Transcript at 24:14-19;[3] *see also* 10-25-23 Green Deposition Transcript at 63:7-21[4] (testifying that "we never really were using" ISO "to look for alleged fraud" in the diocese bankruptcy cases, explaining that ISO was "just not something that people were consulting" for abuse claims, noting ISO is instead consulted for matters relating to "auto back injury and the Workers' Comp" cases).

Under the clear terms of the Orders, and as the deposition testimony confirms, ISO is not an "administrator" of Interstate and does not have any role with Interstate in the "evaluation, prosecution, or defense" of the Survivors' claims. Accordingly, the Committee reiterates its position herein that ISO is not an Authorized Party who received the Survivor Information for a Permitted Use.

---

[3] Heather Campbell is the Claims Specialist for AZRA.
[4] Brooke Green is the Chief Claims Officer for AZRA.

March 13, 2024
Page 4

      The disclosure of Survivor Information to ISO is a serious and material breach of the Bar Date Order. The filing of proofs of claims by Survivors is no simple thing. Survivors are often reluctant to report their abuse because of the stigma associated with being a "victim." Disclosing their past abuse is also traumatic for survivors because of the psychological distress associated with having to re-live the memories of their abuse. For survivors of sexual abuse, filing a claim as an abuse survivor in the court system takes courage. It is not a single step, but a process that can, as is the case here, take years to resolve. This is why in cases involving childhood sexual abuse, the provisions of the bar date orders are, as they were here, carefully negotiated, and often litigated, to ensure the protection of the Survivor Information. Survivors of sexual abuse rely on such orders to maintain their confidential information when pursuing their claims, and such orders are therefore critical in encouraging survivors to come forward. Breaches of these carefully crafted protections in the bar date orders, even if inadvertent, undermine abuse survivors' trust and confidence in this process. It is already difficult for many survivors to trust institutions to protect them or their information, and the failure to abide by the promised protections is a serious matter.

      The Committee is also troubled by Interstate's months-long delay in disclosing its violation of the Orders to the Debtor, the Committee, and the Court.[5] Although Interstate claims that it waited four months to file its Disclosure Letter because it was investigating the precise scope of the unauthorized disclosure,[6] this is no excuse. Interstate should have disclosed this matter to the Court and the Committee as soon as it learned of the unauthorized disclosure of Survivor Information in early May. The Committee is equally concerned about Interstate's misrepresentations in the Disclosure Letter that ISO is an "Authorized Party" who obtained the Survivor Information for a "Permitted Use." In so arguing, Interstate flouts the clear and unambiguous terms of the Orders. Interstate's statement also undermines the very purpose of the Orders, which is to maintain the privacy of sensitive Survivor Information by allowing only certain authorized parties to obtain such information for limited reasons explicitly set forth in the Orders. Interstate cannot unilaterally broaden the scope of the Orders.

      Finally, in light of the Interstate Insurers' cooperation in discovery, the Committee withdraws its Rule 2004 Motion without prejudice. The Committee is continuing to participate in voluntary discovery with ISO as part of its investigation of Interstate's violation of the Orders. The Committee anticipates that once a confidentiality stipulation

---

[5] Upon information and belief, as of the date of this letter, Interstate is in the process of notifying affected claimants or their counsel of the unauthorized disclosure of their Survivor Information.

[6] *See* October 20, 2023 Declaration of Brooke Green ¶¶ 9-18 (marked as confidential and not publicly filed).

March 13, 2024
Page 5

is approved by the Court, the Committee and ISO will be able to efficiently complete discovery.

**Interstate's Statement**

Immediately upon learning of the inadvertent disclosure of limited claimant information to ISO in May 2023, Interstate took steps to investigate and remediate the disclosure, as it recognizes the sensitivity of the claimant information provided pursuant to the Bar Date Order. In assessing when and what Interstate did, it is important to start with four key facts, all of which the investigation by the Committee has confirmed: (1) the disclosure to ISO was part of a company-wide automated process for claims that inadvertently included limited claimant information (as more fully described below); (2) Proofs of Claim were not transmitted by Interstate to ISO or any other third-party; (3) the information feed to ISO of any information related to claimants in this matter was stopped by May 17, 2023, and all information in ISO's possession "voided" as of May 22, 2023; and (4) the limited information of only two claimants was provided to a third-party insurer through the ISO "ClaimSearch" system.[7]

With these undisputed facts in mind, the following is a more detailed explanation of Interstate's discovery and disclosure of the ISO issue. The details of this timeline – and Interstate's and ISO's efforts to investigate and remediate – were confirmed in two declarations under oath of Brooke Green, Chief Claims Officer for AZRA, as well as in her five-hour deposition.

Interstate, National Surety Insurance Corporation ("National") and Fireman's Fund Fund Insurance Company ("FFIC") are affiliates of AZRA, within the Allianz SE group of companies (collectively, "Interstate"), which are all four ultimately owned by Allianz SE and Allianz of America, Inc. AZRA reinsures the Interstate, National and FFIC legacy insurance portfolios at issue in this case, acts as a third-party claims administrator, manages the claims on AZRA's IT claims platform and serves as the professional legacy portfolio manager for Interstate, National and FFIC. All of the claims in this matter are adjusted by AZRA employees. Thus, AZRA is the legal entity acting on behalf of Interstate, National and FFIC, and AZRA is an Authorized Party under the Bar Date Order.

Interstate contracts with ISO for access to ISO's "ClaimSearch" product. Interstate uses ClaimSearch to improve claims processing and to detect and prevent claims fraud. Interstate understands that when an insurer or claims administrator uses ClaimSearch, ISO

---

[7] As ISO is expected to confirm, the third-party insurers have purged the limited information about these two claimants they obtained from ClaimSearch.

March 13, 2024
Page 6

may create a record that contains information including the claimant's name, the insured on the policy at issue, and general and categorical descriptions of the claimant's alleged injury and claimed loss. It is records of this type that may be provided to Interstate or another Participating Organization (generally limited to entities in the business of providing insurance, claims administrators, and select law enforcement) when they submit a claim or inquiry involving the same name or other matching data points.

Interstate does not provide a copy of the claim file documents or the Proofs of Claims to ISO in connection with its use of ClaimSearch. Rather, when a new claim file is created as part of the intake process, data from the following specific data fields – Claim Number, Claims Reported To, Claims Report Date, Claim Loss Date, Claim Loss Time, Incident Description, Loss Location Address, Coverage Code, Loss Cause Code, Claim Status, Adjuster Name, Adjuster Business Phone Number, Total Payment Amount (Total paid Indemnity + Expenses), Accident Witness Indicator (Y/N), Claimant Name, Claimant Address and Claimant Injury (the "Claimant Information") – is automatically sent to ISO by Interstate's claims software.

On May 2, 2023, Interstate's management was made aware of the possibility that certain Claimant Information was being provided to ISO through ClaimSearch. Led by its general counsel's office, Interstate then began investigating whether any confidentiality agreements or protective orders might be implicated by the provision of Claimant Information to ISO, and rapidly started a process to stop the automatic feed and void any information with ISO.

Between May 10, 2023 and May 12, 2023, Interstate communicated with ISO to determine the process for removing claims previously submitted by Interstate from the ClaimSearch program. At the same time, Interstate began working to modify its own software to prevent Claimant Information for sexual abuse claims from being sent to ISO.

On May 17, 2023, modifications to Interstate's software were completed that prevented any further submission of sexual abuse claims to ISO. On May 22, 2023, Interstate provided ISO with a complete list of claim numbers for claimants to be voided from ClaimSearch. Later that day, ISO confirmed that the Claimant Information previously provided by Interstate to ISO was "voided" by ISO in their system, and therefore would not be the subject of any new match reports or otherwise sent to any third parties, and it is only being preserved and maintained for purposes of necessary disclosures (such as the present situation or related court proceedings). Interstate understands that no third party besides ISO may access such information as of May 22, 2023. ISO informed us that the Claimant Information was reviewed by ISO only to the limited extent necessary to void it.

March 13, 2024
Page 7

From mid-May 2023 and continuing through the next few months, Interstate worked to determine several pieces of critical information. Specifically, it needed to determine (a) the identity of the claimants whose information was in fact provided to ISO, (b) the number of claimants whose Claimant Information was provided to ISO, (c) whether such information was subsequently provided to another Participating Organization (i.e., another insurance provider) via match report, (d) whether the claimants were subject to a confidentiality agreement, protective order or other limit on disclosure; and (e) whether any of these claimants had made their identities known publicly. This necessitated reviewing a spreadsheet with over 35,000 rows of data, and extensive work to add and standardize insured and claimant names and then de-duplicate the claims. By late July 2023, Interstate had compiled preliminary lists of potential claimants whose Claimant Information was provided to ISO and claimants for which such information was potentially provided to another Participating Organization.

Unfortunately, this process returned an overinclusive list of affected claimants, as unknown to it, Interstate did not possess the complete and necessary information to determine what Claimant Information was provided through ClaimSearch to other Participating Organizations. As a result, the review of this massive amount of information had to start virtually anew, this time with ISO's more active involvement. After this was completed in August 2023, Interstate then needed to work to confirm the precise claimants whose Claimant Information was put into ISO but was never sent to another Participating Organization. This included reviewing, standardizing and deduplicating 6000 lines of data which included every claim where (1) Interstate had coded the claim number as an abuse claim in the Interstate system and (2) ISO had created a record for that claim number.

It was at that point, in September 2023, that Interstate was comfortable that it had accurate enough information to make disclosure to the Court and the parties. On September 27, 2023, Interstate alerted the Court and all the parties through the Disclosure Letter. Subsequently, after the Committee filed the Rule 2004 Motion, AZRA/Interstate cooperated fully with the Committee in discovery, including document production and depositions. The Rule 2004 Motion has now been withdrawn.

Although the Committee's discussion above is largely an accurate recitation of the facts, two points bear comment. First, Interstate made the assertion that ISO was an "Authorized Party" in good faith. The Bar Date Order includes as Authorized Parties "any insurance company of the Debtor that may provide coverage for Sexual Abuse Claims, together with their respective successors, reinsurers, administrators, and counsel." The term "administrators" is undefined. In addition, the Authorized Party agreement states that a recipient can use Proofs of Claims and "Confidential Information" received thereunder "in connection with the evaluation, prosecution, or defense of . . . any related insurance or reinsurance coverage demands, claims, disputes or litigation. . . ." (Authorized Party

March 13, 2024
Page 8

Agreement, ¶4.) Taken together, these provisions can be reasonably read to include an organization such as ISO that assists an insurer like Interstate with the evaluation and defense of claims by performing fraud detection and prevention services.[8] Nonetheless, Interstate has conceded that even if that was the case, ISO should have executed an Authorized Party Agreement – which it has now done – before being provided any Claimant Information.

Second, although from the outside the time that Interstate needed to investigate and reach a conclusion as to who was affected by the disclosure may seem lengthy, that time was necessary for Interstate to make accurate disclosures. As detailed by Ms. Green in her declaration and in more detail in her deposition, if Interstate had made disclosure in May – or even July – 2023, it certainly would have inaccurately disclosed a much larger list of claimants affected by the disclosure. This would have unnecessarily caused many more claimants to be told their information had been disclosed to ISO and/or third-party Participating Organizations than was true. Given that the feed to ISO was immediately stopped, all information voided, and the very limited third-party disclosure remedied, there was no reason to make a rushed disclosure of inaccurate information. After discovery and initial investigation of the disclosure, it was always Interstate's intention to disclose to the Court, the Committee, and the claimants. To avoid compounding the situation with inaccurate information, Interstate had to be confident first that it had accurate information. Unfortunately, this was a complicated and lengthy process made more so by the necessity of working through a third-party (ISO) with confidentiality obligations of its own.

Throughout this process, Interstate has voluntarily cooperated with the Committee (and the Debtor) in discovery and investigation, facilitated the Committee's discussions with ISO, and made full disclosure as it became aware of any additional facts. Interstate will continue to do so.[9]

---

[8] The isolated testimony of Ms. Green and Ms. Campbell cited by the Committee only indicates that Interstate did not specifically use ClaimSearch for the claims here and that its utility was likely more limited in these circumstances. But Interstate's intent in general in using ClaimSearch was as a tool to evaluate and investigate all insurance claims submitted to it including these claims.

[9] Interstate has no objection to the Committee continuing to work with ISO to complete its investigation.

March 13, 2024
Page 9

    Respectfully submitted,

    */s/ James I. Stang*
    James I. Stang, Esq.
    Iain A. W. Nasatir, Esq.
    Karen B. Dine, Esq.
    Brittany M. Michael, Esq.
    Hayley R. Winograd, Esq.
    **PACHULSKI STANG ZIEHL & JONES LLP**
    780 Third Avenue, 34th Floor
    New York, NY  10017-2024
    Telephone: 212/561-7700
    Facsimile: 212/561-7777
    jstang@pszjlaw.com
    inasatir@pszjlaw.com
    kdine@pszjlaw.com
    bmichael@pszjlaw.com
    hwinograd@pszjlaw.com

    *Counsel for the Official Committee of Unsecured Creditors*


    */s/ Steven Allison*
    Steven Allison, Esq.
    Samrah Mahmoud, Esq.
    **TROUTMAN PEPPER HAMILTON SANDERS LLP**
    5 Park Plaza, Suite 1400
    Irvine, CA 92614

    *Counsel for Allianz Reinsurance America, Inc. dba Allianz Resolution Management, Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company*