**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br><div align="right">Debtor.</div> | Chapter 11<br><br>Case No. 20-12345 (SCC) |

## DECLARATION OF KAREN B. DINE, ESQ.

Pursuant to 28 U.S.C. § 1746, I, Karen B. Dine, hereby submit this declaration (the "Declaration") under penalty of perjury:

1.      I am of counsel at the law firm of Pachulski Stang Ziehl & Jones LLP ("PSZJ") with an office at 780 Third Avenue, 34th Floor, New York, NY 10017.  I am duly admitted to practice law in the United States District Courts for the Southern and Eastern Districts of New York.

2.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.  If called as a witness, I would testify as to those facts.

3.      The Court has approved PSZJ's employment as counsel to the Official Committee of Unsecured Creditors (the "Committee") in The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese" or the "Debtor") in the above-captioned case (the "Case"). *See* Docket No. 163.

4.      I submit this Declaration in support of the *Objection of the Official Committee of Unsecured Creditors* to the *Debtor's Motion to Dismiss*[1] [Docket No. 3071] (the "Objection"), filed concurrently herewith.

5.      Attached hereto at **Exhibit A** is a copy of relevant portions of the transcript of the hearing held before the Bankruptcy Court on September 26, 2023.

6.      Attached hereto at **Exhibit B** is a copy of relevant portions of the transcript of the hearing held before the Bankruptcy Court on December 19, 2023.

7.      Attached hereto at **Exhibit C** is a copy of relevant portions of the transcript of the hearing held before the Bankruptcy Court on November 1, 2023.

8.      Attached hereto at **Exhibit D** is a true and correct copy of an email exchange between E. Stephens of Jones Day and J. Stang of PSZJ.

9.      Attached hereto at **Exhibit E** is a true and correct copy of an email exchange between Leander James of James, Vernon & Weeks, P.A. and Eric Stephens of Jones Day.

10.      Attached hereto as **Exhibit F** is a true and correct copy of a letter dated December 1, 2023 from C. DiPompeo of Jones Day to K. Brown and G. Greenwood of PSZJ.

11.      Attached hereto at **Exhibit G** is a copy of the transcript of the November 29, 2023 Proceeding in *Ark457 Doe v. Holy Family, et al*, Index No. 900094/21 at 2:10-3:10.

12.      Attached hereto as **Exhibit H** is a true and correct copy of a letter dated December 13, 2023 from G. Greenwood of PSZJ to C. DiPompeo of Jones Day.

13.      Attached hereto at **Exhibit I** is a copy of the statement of Bishop Barres regarding the bankruptcy filing from The Dialog, October 1, 2020 (*Bishop John Barres Makes Difficult Decision to have Diocese of Rockville Centre File for Bankruptcy*).

---

[1] *Debtor's Motion to Dismiss the Case for Entry of an Order Dismissing the Debtor's Chapter 11 Case* [Docket No. 3053] (the "Motion to Dismiss").  Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  I executed this Declaration on April 26, 2024 at New York, New York.

*/s/Karon B. Dine*
Karen B. Dine, Esq.

# EXHIBIT A

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  United States Bankruptcy Court

12                  One Bowling Green

13                  New York, NY  10004

14

15                  September 26, 2023

16                  3:00 PM

17

18

19

20

21    B E F O R E :

22    HON MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:   JONATHAN

Page 2

1   HEARING re Motion to Authorize / An Order Granting Leave,

2   Standing, and Authority to Prosecute a Cause of Action on

3   Behalf of the Debtor and its Estate.  (Doc ## 2425,  2429,

4   2435, 2456, 2457, 2466 to 2469, 2500, 2501, 2510, 2511,

5   2513, 2515)

6

7   HEARING re Application for FRBP 2004 Examination Motion for

8   Entry of an Order Pursuant to Bankruptcy Rule 2004

9   Authorizing Examination of Witnesses and the Production of

10  Documents. (Doc ## 2388 to 2390, 2400, 2461, 2475, 2485,

11  2513, 2515)

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    REED SMITH LLP

4         Special Insurance Counsel to the Diocese

5         Three Logan Square

6         1717 Arch Street, Suite 3100

7         Philadelphia, PA 19103

8

9    BY:  TIM LAW

10

11   PARKER HUDSON RAINER DOBBS LLP

12        Attorneys for Interstate Fire Casualty Company

13        303 Peachtree Street NW, Suite 3600

14        Atlanta, GA 30308

15

16   BY:  HARRIS WINSBERG

17

18   DUANE MORRIS

19        Attorneys for Certain Underwriters at Lloyd's London

20        and Certain London Market Insurers

21        865 South Figueroa Street, Suite 3100

22        Los Angeles, CA 90017

23

24   BY:  RUSSELL ROTEN

25

                                                          **Page 4**

 1   PACHULSKI STANG ZIEHL & JONES

 2        Attorneys for the Committee

 3        780 Third Avenue, 34th Floor

 4        New York, NY 10017

 5

 6   BY:  KAREN DINE

 7

 8   PORZIO BROMBERG & NEWMAN

 9        Attorneys for Arrowood

10        1675 Broadway, Suite 1810

11        New York, NY 10019

12

13   BY:  BRETT MOORE

14

15   ALSO PRESENT:

16   TIM BURNS

17   JESSE BAIR

18   CORRINE BALL

19   NATHANIEL ALLARD

20   JOHN BERRINGER

21   KENNEDY RHEA BODNAREK

22   STEPHENIE LANNIGAN BROSS

23   JOHN BUCHEIT

24   DYLAN CASSIDY

25   ANDREW CIRIELLO

Page 5

1   SHARA CLAIRE CORNELL

2   WAYNE MATTHEW COX

3   JILLIAN DENNEHY

4   STEPHEN DONATO

5   THERESA DRISCOLL

6   AREILLE FELDSHON

7   ROBERT GERBER

8   TRUSHA GOFFE

9   WILLIAM HEUER

10   ADAM HOROWITZ

11   TODD JACOBS

12   AARON JAVIAN

13   ANN KRAMER

14   JUSTIN KRELL

15   BRITTANY MITCHELL MICHAEL

16   GEOFFREY MILLER

17   SIOBHAIN PATRICIA MINAROVICH

18   JAMES MOFFITT

19   IAIN NASATIR

20   CHRIS PERKINDS

21   THOMAS SLOME

22   ADAM SMITH

23   PATRICK STONEKING

24   CATALINA SUGAYAN

25   NORA ANNE VALENZA-FROST

Page 6

1   CHELSIE WARNER

2   MATTHEW MICHAEL WEISS

3   JACOB WORLOW

4   GREG ZIPES

5   UDAY GORREPATI

6   EMILY LEVER

7   KAREN MORIARTY

8   VINCE SULLIVAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  All right, we're

3     here in the Roman Catholic Diocese of Rockville Centre, 20-

4     12345.  And the first matter on the calendar is the

5     Committee's motion for standing and authority to prosecute a

6     claim on behalf of the Estate.  Who's going to argue for the

7     Committee?

8              MR. BURNS:  Good afternoon, Your Honor.  Tim

9     Burns, Special Insurance Counsel for the Committee.

10             THE COURT:  Good afternoon, Mr. Burns.  f

11             MR. BURNS:  The Committee's motions today, Your

12    Honor, the derivative standing notion and the 2004 motion,

13    are part of a five-part strategy to protect the insurance to

14    measure the likelihood of the in payment by the insurers,

15    and to maximize payment under state law.

16             So, why now?  Why not earlier?  Why are we

17    bringing these motions before the Court now?  It all has to

18    do with bargaining power, Your Honor.  And I want to talk

19    about that a bit, to put the motions into context.

20             In the early stages of a bankruptcy case,

21    survivors have very little bargaining power vis-à-vis the

22    insurance companies.  We do not, survivors do not have, the

23    Committee does not have a direct right of action to pursue

24    the insurance company until there is a judgment or a

25    settlement.

Page 8

```
 1              The survivors have a means of pushing the insurers

 2      to the courthouse steps ordinarily, until there's a

 3      settlement or a judgment.  Insurers recognize this, Your

 4      Honor.  They understand that at the early stages of the

 5      bankruptcy case, there's no immediate payment application,

 6      and they can sit back and wait.  They can bargain, as if

 7      they have overweening bargaining power in the case.  And

 8      they can make money on what Justice Brandeis would call

 9      other people's money, while they wait.

10              And we've learned from other cases that the more

11      Committee focuses on insurance, and trying to obtain the

12      insurance for recoveries, we can certainly expect the

13      Diocese to try to ratchet down its contribution, based on

14      our focus on insurance recoveries; even though there's not a

15      hope that the combination of the two Diocese in parish

16      contribution, and insurance money will make the survivors

17      whole.  It's only once the Committee reaches a resolution on

18      the Diocese' in parish contribution that we start having

19      what starts to approach equal bargaining power with the

20      insurer's.  We're closer to the courthouse steps with

21      respect to the insurers.

22              THE COURT:  Is the Committee close a resolution

23      now?

24              MR. BURNS:  My next point, Your Honor, which is,

25      we don't have a deal here.  We may not reach a deal on
```

Page 9

1    Diocesan in parish contribution.  But if it's going to

2    happen, it needs to happen soon.  And so, these motions that

3    we're bringing, this five-part strategy --

4              THE COURT:  What's the other four parts?

5              MR. BURNS:  It's my next point, Your Honor,

6    because I do want to give context about where these motions

7    fit.  So, there are five parts altogether.  The derivative

8    standing motion is to protect the insurance from what

9    happened in Camden and Rochester.  In addition, you've

10   probably seen, Your Honor --

11             THE COURT:  I didn't read the -- I see Camden

12   seems to have an amended plan that's going to deal with it.

13   I haven't read what it is, but I have seen the headline.

14             MR. BURNS:  I saw it this morning as well, and

15   looked briefly at the plan in the (indiscernible) that

16   wasn't attached in the Law360 story, but I as able to find

17   it.  And so … I will … more talking about Camden and

18   Rochester slightly later in the presentation.  But to answer

19   the Court's question about the other part of the insurance

20   strategy, so, their Motions for Relief from the Stay

21   pending, the Court's probably seen, and the Committee has

22   joined into this, to enable certain State Court counsel to

23   make insurance demands; something that's done day in, day

24   out, in the tort system in New York.  So, that's the second

25   part.

Page 10

```
1            The third part is, we've asked the Diocese.  They
2    haven't responded yet.  In fairness to them, we just asked
3    them, sent them a letter last week, so we're expecting a
4    response.  But we've also asked that two motions for partial
5    summary judgment be made on an issue in two of the adversary
6    proceedings, which we believe will give the parties guidance
7    and help maximize the insurance available.
8            There's, the fourth part, of course, is the 2004
9    motion, where we're attempting to measure the likelihood
10   that Arrowood can pay, is going to pay, have any intention
11   to pay.
12           And the fifth part of that discovery shows us what
13   we believe to be the case we will also be … that Arrowood is
14   effectively denying coverage for these claims.  It may say
15   it's reserving its rights.  That leads to one basket or
16   rights on behalf of policyholders and claimants.  But if
17   they're effectively denying, that leads to a different
18   basket of rights on behalf of policyholders and claimants,
19   in terms of when and how they can settle.  So that will be
20   the fifth part of this.
21           Judge, I wanted to start with the relative
22   bargaining power of the Committee, based in the time of the
23   case, for this reason:  A few weeks ago, I was flying to
24   Vienna and I reread David Dorsen's biography of Judge
25   Friendly.  And David Dorsen makes the point that you may
```

Page 11

1    have witnessed, Judge, that one of the things that made

2    Judge Friendly such a great judge, in civil cases, in

3    particularly securities cases, was his sense, after 30 years

4    of practice, and as General Counsel of Pan Am; his sense of

5    relative bargaining powers of parties.  And, of course,

6    Dorsen's overall theme in the point was Judge Friendly tried

7    to level the playing field.

8              THE COURT:  But he always followed the law.

9              MR. BURNS:  Absolutely, Your Honor, and we would

10   want nothing else here, although it is -- another of David

11   Dorsen's stories in the book, you may remember, involved us;

12   the clerk probably after you, or close to ten years after

13   you, the current Chief Justice.  Judge Friendly was deciding

14   the private right of action case under the securities law.

15   And then law clerk, John Roberts said Supreme Court doesn't

16   favor private right of actions at the moment.  It hasn't

17   happened and (indiscernible) Judge Friendly's response was,

18   "Yes, but they haven't told me that I can't create a private

19   right of action."

20             An important thing to remember in these cases, in

21   case you are wearing the Chancellor's robe, Your Honor, with

22   respect to some of these issues, are we going to be able to

23   point you to case law where they've enjoined us this before,

24   or they've done such and such before?  No.  But we think

25   we're on a sound legal basis here.

Page 12

1          That really brings me again, I'm sorry for the

2     large windup, but I did want to get out the points about

3     earning power.  That does bring me to the derivative

4     standing motion.

5          And here, Your Honor, we're simply trying to avoid

6     the harm caused by the insurers in the Diocese --

7          THE COURT:  The Diocese has ever incentive to

8     maximize the insurance coverage and he insurer's

9     contribution.  This is not a case where you could stand

10    there and argue that divided loyalty would counsel granting

11    the Committee standing to do this, or that the Debtor has a

12    conflict of pursuing his claims, which it filed immediately

13    upon filing the chapter 11 case.

14          MR. BURNS:  Can I push back just a little bit --

15          THE COURT:  Sure.

16          MR. BURNS:  -- on the (indiscernible), and it goes

17    to bargaining power.  Your Honor, for sometimes, and I want

18    to be careful here, not to reveal any mediation

19    communication.  I don't think it will come as a surprise to

20    the Court, that alternate Diocesan in parish contribution

21    will likely be made based upon what they can pay.  And we

22    have, obviously, have a disagreement about what they can

23    pay.  And, in all likelihood, even though it wasn't our

24    first choice, what's going to happen at the end of this, the

25    likelihood is there be an insurance assignment, where a

Page 13

1   trust gets to pursue --

2           THE COURT:  It's happened in a lot of the Diocese

3   cases.

4           MR. BURNS:  Yes, Your Honor, but it does bring up

5   the incentive point.  The Diocese actually has an incentive

6   to reduce what it pays, but it doesn't say the insurance is

7   reducing what it pays, because its payment is based on its

8   ability to pay, in a situation where you have massive

9   uninsured exposure and too little insurance.  So, I just

10  wanted to be clear on that incentive point, because I do

11  think it's important.  Their focus is on, as I understand

12  it, is what they can pay, not what the insurers are going to

13  pay.  That's going to be (indiscernible) at the end of the

14  day.  We didn't want that as a problem, but the likelihood

15  is, if there's a resolution with the Diocese --

16          THE COURT:  The Diocese, through a combination of

17  its own (indiscernible) contributions and insurance, hopes

18  that survivors recover the maximum amount they can for the

19  harm that they achieved, they received?

20          MR. BURNS:  I'm probably not the right one, Your

21  Honor, to look into their heart, because I -- you know, we

22  battled these cases with Diocese across the country.  So, I

23  carry with me a certain view about things.

24          So, second point I want to make, Your Honor, on

25  the derivative standing motion; the first one was we're just

Page 14

```
1    trying to avoid the Camden, Rochester harm.  The second

2    point is this:  We did everything possible, I think, Your

3    Honor, not to be here today.  We want to avoid the harm of

4    Camden and Rochester.  But we wrote to the insurers.  We

5    wrote to the Diocese multiple times, saying, just give us

6    some assurance that you're not going to try to do the type

7    of harm that was done in Camden and Rochester, that you're

8    not going to enter an agreement without the Committee's

9    consent, that causes a bunch of problems later.

10              I didn't want to be standing up here in front of

11   you on this.  I wanted to have assurance that we weren't

12   going to see the type of harm we see in Rochester, in

13   Camden.

14              Third point:  We're not asking the Diocese and the

15   insurers not to talk to one another.  We applaud their

16   efforts.  It's a complete red herring that we're asking them

17   not to negotiate.  Policyholders and the insurance

18   negotiate.  For the 30 years before I represented, starting

19   representing survivors in our law firm.  I represented large

20   corporations in disputes with insurance companies.  Of

21   course, policyholders talk to their insurers all the time.

22   I applaud it.  I'm not going to say anything about it.

23              Actually, I'm going to stop there.  I'm going to

24   applaud it.

25              Next point:  We have disclosed a mediation
```

Page 15

1    communication.  We ended up hearing about these

2    communications of the Motion to Dismiss hearing, and that

3    alerted us to it.  We were concerned because of what

4    happened in Rochester and Camden, but we don't need

5    mediation communications to make our case.  We have the same

6    insurers as in Rochester and Camden, and they've done the

7    same thing within the past two years.  And we have assurance

8    letters where we asked them not to do it, and we got no

9    assurance.

10          The harm in Camden and Rochester, of course, was

11   when those earlier insured Diocesan settlements fell apart

12   as they were bound to fall apart, because they didn't have

13   Committee consent.  It led the insurers to contend that they

14   now had huge administrative claims; the difference between

15   what they could have settled for with the Diocese under

16   those settlements, and what they might actually pay.

17          The Committee recognizes it doesn't have perfect

18   tools to stop this conduct.  But it was simply not

19   appropriate for the Committee to remain silent, knowing what

20   kind of harm happened in those other cases.  So, we

21   fashioned the strongest claim that we could fashion, not

22   having direct coverage right of action.

23          And so that brings me to the derivative standing

24   requirements, which I understand under the case law are

25   four.  We have to request the Diocese do it, and we have to

Page 16

1    have a hearing before this Court.  Then we also have to have

2    a colorable claim.  And the final of the four points is the

3    Diocese has to justifiably refuse that claim; so, we did

4    request the Diocese, that's in our papers, we're here before

5    the Court.

6              That brings us to the colorable claim.  We believe

7    that we've stated a colorable claim under the New York

8    General Business Law.  It's evaluated, as I understand the

9    case law and derivative standing.  It's essentially

10   evaluated like a 12(a)(6) motion for facial deficiency of

11   the claim.  And we think we've pled all of the elements of

12   the claim.  We've pled something materially misleading.

13   Insurers are in the business of settling cases when they

14   purport to settle, when they know that the settlement can be

15   approved without Committee consent.  We believe that's

16   misleading.  We believe it will cause the harm in, that

17   we've witnessed in Camden and Rochester.

18             And finally, we do believe it is consumer

19   oriented, as that term is used, under New York law, in two

20   ways.  It does impact a lot of consumers, and particularly

21   survivors around the state, who are survivors of Diocese

22   that had these insurers as part of their program.  And

23   that's many diocese.

24             THE COURT:  Isn't your, with respect to whether

25   you've asserted a colorable claim, I mean, the issue that I

Page 17

1    have is, essentially, whether your claim is unripe.  It

2    depends on future events that have not yet occurred, and may

3    or may not occur.

4            MR. BURNS:  Every … I think the Second Circuit

5    said this -- I'm going to get it wrong, because I don't have

6    Judge Friendly's memory, much more normal mental ability --

7            THE COURT:  I appreciate all your references to

8    Judge Friendly, but let's leave it out of this argument.

9    Let's just deal with the facts and the law.

10            MR. BURNS:  Sure.  Every irreparable injury, Your

11   Honor, becomes irreparable at the time --

12            THE COURT:  May or may not, you know.  It's

13   uncertain.  It's unknown.

14            MR. BURNS:  If it becomes irreparable there's

15   nothing we can do to fix it, and all they have to do is

16   strike a deal.

17            THE COURT:  Well, they have to strike a deal, they

18   have to get me to approve it.

19            MR. BURNS:  So, the challenge in this, Your Honor,

20   if they had to get your approval before they struck a deal,

21   to cause the harm --

22            THE COURT:  They don't have to do it before, but

23   they -- you know, if they're going to strike a deal while

24   they're a chapter 11 debtor, which is a big issue, they're

25   going to have to get my approval.

Page 18

1          MR. BURNS:  My point is this, Your Honor:  In

2    Rochester and in Camden, neither of those deals were

3    approved by the Court.  But all of the harms nevertheless

4    materialized in the sense that now, in Rochester, the

5    insurers can contend that they have a huge administrative

6    claim.  Now, in Camden, they're contending that they have a

7    huge administrative claim that they're pursuing.  Those

8    deals weren't approved.  And in fact, the judge in Camden

9    just disapproved the deal, earlier insurance settlement in

10   Camden, but left the administrative claim in place.  He was

11   skeptical of the administrative claim, but he left it in

12   place as being capable of being pursued.

13          It's -- I would love a situation --

14          THE COURT:  What deceptive acts have you alleged?

15          MR. BURNS:  I think it's  fundamental deceptive

16   act, Your Honor, in the insurance business, which involves

17   the resolution of claims to say I -- we are settling this

18   case with the Diocese, knowing that without overwhelming

19   committee support, that settlement is going nowhere.  It's

20   what we called in our papers and exploding nullity.  It

21   doesn't -- it hasn't been approved.  It doesn't have force

22   in effect, but it nevertheless gives the insurers an

23   argument that the have a huge administrative claim if the

24   Diocese doesn't follow through on it.

25          I wish that were the case.  It doesn't make any

Page 19

1    sense to me that that's the case before approval.  We may

2    have to fight in various cases that that's the case.  But it

3    can't be that they get a whole new set of arguments based on

4    a settlement that's going nowhere without us saying

5    something about it, because it harms the state, it harms the

6    Committee's position as well.  And once they ink it, the

7    harm's done.

8              THE COURT:  Anything else?

9              MR. BURNS:  I'm concluding at this time.  Thank

10   you, Your Honor.

11             THE COURT:  All right.  Opposition.  Who's going

12   to argue first?

13             MR. LAW:  Good afternoon, Your Honor, Tim Law from

14   Reed Smith, special insurance counsel to the Diocese.  I'll

15   speak briefly.

16             Our main point is that the Committee has not met

17   its burden to show that it should be granted derivative

18   standing to pursue the claim it seeks to pursue.  The

19   Diocese has not unjustifiably failed to pursue a claim that

20   is likely to benefit the estate.  The relief requested by

21   the Committee in its complaint is limited to injunctive

22   relief.  It seeks to enjoin the insurers from entering any

23   settlement, or attempting to enter into any settlement with

24   the Diocese, without the Committee's consent.

25             THE COURT:  Does this -- if the Diocese does reach

Page 20

1      a settlement, does it require this Court's approval?

2                  MR. LAW:  Excuse me, Your Honor?

3                  THE COURT:  If the Diocese reaches a settlement

4      with the insurers, does it require this Court's approval?

5                  MR. LAW:  Absolutely.  And then the Committee can

6      appear and object to the settlement in due course.  And in

7      fact, in practice, the only way we would reach a settlement

8      without the Committee's consent, is if we have a strong

9      disagreement with the Committee.  We're talking with the

10     Committee, we're talking with LMI.  We're talking with

11     Allianz, all as it should be.  We should be speaking with

12     everyone.

13                  The proof in their motion that we're doing

14     something wrong, or that the insurer is doing something

15     wrong, I think it was maybe footnote 2, where they quote

16     time records about us speaking with the mediators and

17     speaking with Allianz and speaking with LMI.  That's all

18     fine.  We haven't reached a deal with LMI.  We haven't

19     reached a deal with Allianz.  The Committee hasn't reached a

20     deal with Allianz.  They haven't reached a deal with LMI.

21     We're talking, as it should be.

22                  And hopefully, we'll all get on the same page and

23     all agree on an appropriate contribution from the insurance

24     companies.  And if we do, we'll come to you with a

25     settlement that everyone loves, perhaps --

Page 21

1           THE COURT:  I don't think I've ever had a

2    settlement before me that everyone loves.

3           MR. LAW:  That's a rosy picture, Your Honor.  So,

4    it's possible that the Committee and the Diocese could

5    disagree.  And we think maybe a contribution from LMI, that

6    LMI is willing to make, would be beneficial to the

7    creditors.  In that instance, we would talk to the Committee

8    and explain why we think that's true.  But the Committee

9    does not have veto rights over an insurance settlement.  It

10   can present its arguments to Your Honor if we fail to reach

11   agreement amongst ourselves.

12           But that's not the reason to provide derivative

13   standing to use as datasets for the Committee to go off and

14   sue for deceptive practices in this matter.

15           We should be focused on mediation.  We should be

16   focused on trying to reach settlements.  And that's what the

17   Diocese wants to do.

18           THE COURT:  How many mediation sessions are

19   schedules between now and the end of October?

20           MR. LAW:  A lot.  Does anyone know the answer to

21   the Judge's question?

22           MS. BALL:  Corrine Ball, Your Honor, Jones Day.

23   We are due to mediate all day tomorrow and all day Thursday.

24   And additional dates have been made available in October.

25           THE COURT:  Thank you.

Page 22

1          MR. LAW:  Thank you.  Unless Your Honor has

2     questions, that's really all I had to say.

3          THE COURT:  Thank you very much, Mr. Law.

4          MR. LAW:  Thank you, Your Honor.

5          THE COURT:  Who else is going to argue?

6          MR. WINSBERG:  Good afternoon, Your Honor.  Harris

7     Winsberg on behalf of Interstate. I'll try to be brief, Your

8     Honor.

9          I would start with the prayer for relief in the

10    complaint.  The prayer for relief is it seeks to enjoin the

11    insurers from entering into any settlement, or attempting to

12    enter into any settlement with the Diocese, without

13    Committee consent.

14          In the reply brief, the Committee appears to kind

15    of backtrack from that comment and says we're just seeking

16    to bar a deal without Committee consent.

17          THE COURT:  You agree, I take it, that any

18    settlement will require approval of this Court.

19          MR. WINSBERG:  Of course, Your Honor.  And we'll

20    get to having sat in the Camden courtroom for 14 days.  I

21    certainly disagree with counsel's comments on Camden.  And

22    the Camden insurance settlement, before I go on, there was a

23    disclosure statement.  Judge Poslusny approved the

24    disclosure statement with that insurance settlement.  So,

25    the notion that those deals are just dead on arrival, that's

Page 23

1     just not accurate.

2              Going back to the motion today, Your Honor, I want

3     to focus on whether they're seeking to bar the Diocese from

4     entering into a settlement with an insurer without their

5     consent, or broader like the complaint, seeking to -- I

6     think the language they use, attempting to enter into any

7     settlement -- it's effectively a consent point over a

8     settlement, which chills the mediation process.  And that's

9     a process that should be run by the mediators.

10             The proposed consent right, and I believe Your

11    Honor's picked up on that, has no support in the Bankruptcy

12    Code and rules, which plainly allow the Debtor to enter into

13    a settlement subject to your, the Court's approval.  And the

14    Committee doesn't cite any authority that would prohibit the

15    Diocese from negotiating with the insurers, or that

16    insurer's entry into an insurance settlement without

17    Committee consent, is somehow deceptive or misleading.

18    Insurers and insureds are encouraged to negotiate with each

19    other and reach resolutions.

20             So, there are three main reasons we set forth in

21    our --

22             THE COURT:  What's also fundamentally true is that

23    it will be extremely difficult to confirm a plan in this

24    case that does not have the support of the Committee and its

25    constituencies; particularly, if a plan that's proposed

Page 24

1    includes releases of the parishes and other debtor-related

2    parties.

3           So, whether there's an express consent right or

4    not, without the support of the Committee, it would be

5    extremely difficult for the Diocese to confirm a plan that

6    includes (indiscernible) that I understand why they're

7    seeking.  So, whether you've -- I don't equate that to a

8    veto right, but I also don't equate it that you, the

9    insurers can do what it wished to do in negotiating without

10   regard to what the position of the Committee is.  I'm not

11   saying the Committee has to be present at every step in the

12   process or all mediation sessions, but it's just unrealistic

13   if the insurers think that the Committee can be neutered

14   with respect to any proposed settlement with the insurers.

15          MR. WINSBERG:  And that's absolutely not the case,

16   Your Honor.  We have engaged with the Committee in this

17   process, without getting into mediation discussions.  But

18   you heard counsel for the Committee say that's not their

19   preferred choice.  They want to get a negotiation with the

20   Diocese and the parishes, and then focus on insurance

21   (indiscernible).

22          THE COURT:  I didn't hear that.  No one said that

23   today, that I'm sure of.  Maybe you were in a different

24   hearing than I was.

25          MR. WINSBERG:  Well, Your Honor, what I took away

Page 25

1   is that the insurance was -- we have tried to negotiate with

2   the Committee.  It's not where their focus is right now,

3   Your Honor.  But we absolutely agree, the Committee are

4   willing to bargain with anybody.  We're trying to be part of

5   the solution, not part of the problem, Your Honor.

6          So, going back to, Your Honor, the three main

7   reasons why this motion should be denied, it essentially

8   seeks a veto right, which we believe is a collateral attack

9   on the mediation order and process.  That process has been

10  put in place.  The parties have followed it and bargained in

11  good faith.  And we will continue to bargain in good faith

12  with the Diocese and the Committee, with both.

13         THE COURT:  But the Committee, on other issues in

14  this case, before I was presiding over the case, the

15  Committee was giving derivative standing with respect to

16  other issues in the case.  So, the fact that they're seeking

17  derivative standing with respect to the insurance, doesn't

18  particularly surprise me.  That doesn't say which way it

19  will come out.  But you know, with the Diocese' agreement,

20  essentially, the Committee was given derivative standing on

21  some very important issues.

22         MR. WINSBERG:  My point on this argument, Your

23  Honor, is that negotiating at arm's length and in good faith

24  with the Diocese, and complying with -- who has

25  sophisticated counsel -- and complying with the mediation

Page 26

1    process, which is overseen by experienced mediators, cannot

2    possibly give rise to some sort of deceptive practice --

3           THE COURT:  I'm not getting involved in the

4    mediation.  There are two, there are co-mediators.  I'm glad

5    to hear there are dates scheduled.  I am not -- it's

6    completely up to the mediators, how they want to order those

7    proceedings, who they want to talk to and when they want to

8    talk to.  That's for them to decide; certainly not for me to

9    interject myself in that process.

10          MR. WINSBERG:  Your Honor, and so, in reply, the

11   Committee said that the mediation arguments were straw

12   person.  But the consent right and having someone being

13   excluded from even seeking to have discussions with the

14   settlement, with the Diocese, certainly, in our view, is

15   inappropriate and inconsistent with the mediation process.

16          And to the second point, the Committee said

17   they're not seeking discussions in the mediation, they're

18   not seeking mediation communications.  But how could the

19   Committee prove, or the insurers disprove, a

20   misrepresentation or some sort of deceptive conduct that

21   happened in the mediation, without getting into,

22   effectively, those communications?  There would be no way

23   around it.

24          So, we do believe the motion should be denied

25   because it is a collateral attack on the mediation order and

Page 27

1     the mediation process in place.

2              THE COURT:  Thank you.

3              MR. WINSBERG:  The second point, Your Honor, is

4     that the claims -- we believe Your Honor picked up on this -

5     - are not right for adjudication.  There may result in

6     multiple hypotheticals that may or may not never occur.  And

7     just to give a couple in the chain, Your Honor, the Diocese

8     would have to enter into a settlement with the insurers.

9     The Diocese would have to, essentially, not do its homework

10    or exercise its fiduciary obligation.  Your Honor, pointed

11    out, there's no conflict of interest here that you would

12    typically sometimes see when derivative standing is sought.

13    And the Diocese would try to sign an agreement that's not in

14    the best interests of the estate.

15              The Committee, they would assume the Committee

16    would not accept this settlement.  And the Committee assumes

17    that this Court would not, could not and would not approve

18    this settlement.  And the Diocese would later repudiate the

19    settlement in favor of another deal --

20              THE COURT:  Well, there's no settlements are

21    repudiated --

22              MR. WINSBERG:  Right.

23              THE COURT:  -- until, unless the provider prove

24    it.

25              MR. WINSBERG:  Your Honor, so my point being, is

Page 28

1    there's a long line of causal --

2              THE COURT:  If the insurers think they're going to

3    get an administrative claim, because you've reached a

4    settlement that isn't approved by the Court, forget it.

5              MR. WINSBERG:  The administrative claims, just

6    like Judge Poslusny has in Camden, and Judge --

7              THE COURT:  I don't care what --

8              MR. WINSBERG:  But those are for those courts to

9    decide.

10             THE COURT:  I'm just telling you, if this case

11   survives, and there's a settlement that comes on for

12   approval, and it's not approved, you're not getting into

13   approved.  No one should have the expectation, no insurer

14   should have an expectation, because you've negotiated an

15   agreement with the Diocese, that is later rejected by this

16   Court, that you're sometime, somehow, going to have an

17   administrative claim.  Get it clear, it's not going to

18   happen.

19             MR. WINSBERG:  I understand, Your Honor.  My point

20   on what was said about Camden and Rochester, it wasn't the

21   settlement agreement the Diocese entering into a settlement

22   agreement that caused an admin claim; it was the Diocese'

23   later conduct in repudiating the settlement agreements that

24   caused --

25             THE COURT:  There isn't going to be a repudiation

Page 29

1    of an agreement that isn't approved by the Court.  You

2    understand that clearly?

3              MR. WINSBERG:  I understand, Your Honor.

4    (indiscernible) on why that should be denied, Your Honor, is

5    that the claims -- they don't state a claim under a 349,

6    which is the consumer protection statute.  We've covered the

7    admin claim.  That's what they had focused on.  Your Honor's

8    made its position clear on the admin claim --

9              THE COURT:  I made it clear to all the insurers.

10             MR. WINSBERG:  You made it clear to all the

11   insurers, Your Honor.  What I would say here, Your Honor, is

12   that harm is a business harm.  And the Courts are pretty

13   clear that's the kind of harm that's not consumer protection

14   oriented; it's the harm to the bankruptcy estate, so to

15   speak.  And Your Honor has made it clear to all the insurers

16   there would be no admin claim for repudiation.

17             So, with that, Your Honor, I'm happy to answer any

18   questions Your Honor has.

19             THE COURT:  Thank you very much.  Anybody else

20   want to be heard?  Come on up.

21             MR. ROTEN:  Good afternoon, Your Honor.  I'm

22   Russell Roten.  I'm with Duane Morris.  I represent certain

23   underwriters at Lloyd's London and certain London Market

24   Insurers.  We refer to ourselves as the London Market

25   Insurers, or LMI.

Page 30

1           We endorse and echo the arguments and comments of

2    the Debtor and Interstate, that Your Honor just heard.  I

3    have a few specific points that I'd like to make.  And let

4    me start out by saying, Your Honor, we certainly understand

5    the administrative claim issue.  I'm going to touch on that,

6    but from a different perspective.  But first, let me make

7    just a couple of succinct points.

8           First of all, as Mr. Winsberg said, Section 349 is

9    a consumer protection statute that's not a private right of

10   action type statute.  And we have researched the case law in

11   New York, Your Honor, and there's no case where a Court has

12   ever provided a claimant or a committee standing to pursue a

13   claim under Section 349; it's never happened.

14          The second basis for the Committee's derivative

15   action, Your Honor, is Section 2601 of the New York

16   Insurance Law.  And as we pointed out in our brief, there is

17   no private right of action under that statute.  I can give

18   you the cases again, but they're in our brief.  And it,

19   specifically, we've cited a case that says the New York

20   State Superintendent of Insurance has this exclusive

21   jurisdiction to pursue any claim under that statute.  So,

22   the Committee has no right to go forward o either of the

23   statutes they're going forward on.  That's my first point.

24          The second point I want to make, Your Honor, I had

25   trouble understanding when I read the Committee's brief.  It

Page 31

1    literally took me repeated readings, until I finally sort of

2    got a grasp on what they were saying the deceit was, the

3    dishonesty.  And then I heard it repeated again today.  And

4    basically, what they're saying, what the Committee is

5    saying, is that there's no chance of any settlement with the

6    Debtor -- excuse me, there's no chance of an insurer's

7    settlement with the Debtor to be approved unless the

8    Committee endorses it.  And for us to attempt a settlement

9    in the face of the reality, is deceptive.  And I just find

10   that in comprehensible.

11            THE COURT:  What is not incomprehensible --

12            MR. ROTEN:  Sir?

13            THE COURT:  What is not incomprehensible is that a

14   plan, any plan that's proposed, that includes releases, non-

15   Debtor releases, will be confirmed over the face of the

16   opposition of the Committee and its constituencies.  Yes,

17   there's vote requirements.  I don't have a plan in front of

18   me that's going out for remote, but the chances of any plan

19   being confirmed over the strenuous opposition of the

20   Committee, is extremely remote.  The insurers better

21   understand that.

22            MR. ROTEN:  Oh, Your Honor, we understand that.  I

23   wasn't driving at that point.  What I was trying to do was

24   describe what my understanding was of what the Committee is

25   saying is deceptive.  And what's the deception is they're

Page 32

1   trying to settle with the Committee -- excuse me, with the

2   Debtor.

3               Your Honor, we can settle with the Debtor without

4   the Committee's consent, and bring it in front of Your

5   Honor, pursuant to Rule 9019.

6               THE COURT:  You can do that.

7               MR. ROTEN:  We can do it.  We can have a hearing.

8   We can have evidence.  And then Your Honor can decide

9   whether, over the Committee's objection, that's a fair

10  settlement.  That's our option.

11              THE COURT:  And whether I would consider that,

12  absent a plan that's all before the Court, is also a big

13  question.

14              MR. ROTEN:  Absolutely.

15              THE COURT:  It's the issue of timing.  And so, if

16  a plan is proposed, and a disclosure statement comes on for

17  a hearing, and if it then, you know, submitted for votes,

18  we'll deal with it.  But don't assume that you would have

19  any settlement with the Debtor approved by the Court, absent

20  a plan.

21              MR. ROTEN:  Your Honor, that's not the direction

22  I'm going in.  I certainly understand what Your Honor --

23              THE COURT:  You seem to be.  You seem to think

24  you're going to negotiate a settlement with the Debtor, have

25  it come here absent consideration of plan, as to which is

Page 33

```
 1    the central component.  I have complete control over the

 2    timing of any 9019 motion.

 3              MR. ROTEN:  Absolutely, Your Honor.  I understand

 4    all of those points.  The point I'm trying to make is a

 5    different point.  I'm just trying to say there's no

 6    deception in that.  There's nothing, there's no

 7    misrepresentation.  There's nothing that all the parties

 8    wouldn't know about.  The Debtor is represented by two

 9    outstanding law firms in bankruptcy and in insurance, and

10    they certainly know what's going on here.

11              THE COURT:  Any other points you want to make?

12              MR. ROTEN:  Yes, Your Honor, a couple.  The

13    administrative claim argument that the Committee raised, is

14    a canard.  They argue that the administrative claim that we

15    have the right to object to plans, to propose our own plan

16    based on the existence of an administrative claim, and

17    that's not so.  An administrative claim has nothing to do

18    with --

19              THE COURT:  Let's pass onto your next argument.  I

20    don't want to hear anymore about administrative claims.

21              MR. ROTEN:  Okay.  So, my final argument, Your

22    Honor, has to do with the two cases that the Committee has

23    talked about, Camden and Rochester. I was lead bankruptcy

24    counsel for London in both of those cases, and I was

25    physically present when all these things happened.  So, what
```

Page 34

1    you're getting from the Committee -- and the Committee was

2    in Rochester -- what you're getting from the Committee is a

3    very distorted representation of what actually happened in

4    those cases.

5          What happened in those cases was the insurer

6    settled.  We settled with the Debtor in Rochester because

7    they couldn't make any progress with the Committee, and we

8    settled with the Debtor in Camden for the same reason.

9    Those were good faith settlements.  Everything was above

10   board, everything was in writing.

11         But in both of those cases, the Debtor, after we

12   had a settlement agreement, and I think -- I can't remember

13   whether the 9092 motion was actually filed in Rochester; I

14   think it was -- but it was filed in Camden, and was pending.

15   So, we thought we had a deal because the, in those cases,

16   the -- it was impossible to reach agreement, a universal --

17         THE COURT:  I'm just curious, of any of the ones

18   where there were settlements before confirmation, if any of

19   the settlement agreements included a fiduciary out for the

20   Diocese?

21         MR. ROTEN:  Not in the two, not in those two, Your

22   Honor.  There was such an agreement, I think, in boy scouts.

23   And this fiduciary out issue is a very interesting issue.

24   In fact, when the, in Camden, when the Diocese rejected the

25   deal, we started looking for precedent as to whether or not

Page 35

1       this can be done.  And it's extremely rare.

2                THE COURT:  The settlement's been approved by the

3       --

4                MR. ROTEN:  No.  No, Your Honor.  And we certainly

5       understand that.  But the point I'm trying to make here,

6       Your Honor, about both of these cases, is it wasn't the

7       insurers who were being deceptive; we thought we had a deal.

8       Both of those deals were done through mediation.  Everything

9       was out there and aboveboard.  We thought it was over

10      because the Committees were preventing a communal deal,

11      wouldn't have it.  So, we didn't have a choice.  So, we made

12      deals in both of those cases.

13               So, here's what happened.  The Debtors in both of

14      those cases took those bills to the Committee and said, hey,

15      we got to deal with the insurers.  And they used those deals

16      as leverage to get the Committee to get reasonable with the

17      Debtors.  The Debtors are the ones who tricked us, Your

18      Honor.  We didn't trick anybody.

19               THE COURT:  Let's not talk (indiscernible), let's

20      -- what other points do you have?

21               MR. ROTEN:  That's all I have, Your Honor.

22               THE COURT:  Okay, thank you very much.  Anybody

23      else want to be heard?  The Court is going to take this

24      under submission.  Ms. Ball?

25               MS. BALL:  Thank you, Your Honor.  I really came

Page 36

1    today to provide Your Honor --

2              THE COURT:  Always nice to see you.

3              MS. BALL:  It's always nice to see you as well,

4    Judge, even if we get a little soggy on our way in.

5              THE COURT:  Is it raining again?

6              MS. BALL:  Oh, yes, sir.  Yes, sir.  I was here to

7    answer your questions and kind of review, at least briefly,

8    with you, where we are, because we don't get the opportunity

9    --

10             THE COURT:  That would be nice to know.

11             MS. BALL:  -- to do that for you very often.

12             THE COURT:  I wasn't even going to ask today, but

13   I'm very mindful of the calendar.

14             MS. BALL:  As are we all.  And I agree with your

15   remark about settlements.  We think a good one is one where

16   everyone is equally unhappy, in most instances.  Well, where

17   we are; well, Your Honor, there are now 563 potentially

18   viable claims of survivors.  I say potentially viable,

19   because that number includes more than 50 claims which Your

20   Honor has already disallowed, but with leave, without a

21   deadline.

22             THE COURT:  One of the interesting -- the only

23   other point I would make, including this morning when I

24   issued another opinion -- I really wonder, for example, if

25   the case were dismissed, I decided -- central to most of

Page 37

1    those claims' objection opinions was federal pleading

2    standards.  And if the case is dismissed, and the litigation

3    goes back on State Court, I'm not sure that those decisions

4    count for anything, because the State -- this has been said

5    in multiple opinions, the State has quite different, in my

6    view, pleading standards, and has been missive in permitting

7    discoveries.  Even though a bankruptcy court sustained

8    objections by applying federal pleading standards, if the

9    case doesn't survive, it may be more than 563 State Court

10   claims that you're dealing with.

11           MS. BALL:  Well, Your Honor, to that point, one,

12   we are at the 500 claims we disclosed in February.  But

13   there are some 403 CVA actions against parishes, very few of

14   which are going to be affected by the rulings that you've

15   talked about.  And I assure you --

16           THE COURT:  I agree.

17           MS. BALL:  Okay.  I assure you, particularly since

18   three out of four of those cases are pending against the

19   same 45 or so parishes; that they are all very much focused

20   on what happens if we don't have a deal.  The remaining two

21   thirds of the parishes, perhaps their perspective is a

22   little different.  But currently, the parities, primarily,

23   as you've heard, the Dioceses, the parishes and the

24   Committee, or more accurately really State Court counsel for

25   certain of the Committee members, are all focused on three

Page 38

1    kinds of activities; one you've heard about, which is

2    mediation.

3           A small update as to areas of your prior inquiry,

4    Your Honor; the proposed releasees have been identified.

5    They're the parishes plus five affiliated entities.

6    Interestingly, as you mentioned, what we refer to as the IAC

7    transactions, meaning Independent Advisory Committee, the

8    Committee has concluded a settlement which, effectively

9    releases three of those five entities on effective date of a

10   plan, and all the remaining proposed releasees have provided

11   and continue to provide financial and real estate

12   information to facilitate the mediation.

13          We have two more sessions this week.  Offers have

14   been exchanged.  And with that, Your Honor, I think I should

15   end the discussion there.

16          THE COURT:  I wish you success.

17          MS. BALL:  We are clinging to that hope, Your

18   Honor.  Litigation is the other activity, 140 cases have

19   been remanded, most to Judge Steinman, who sits in the

20   Regional CA part in Nassau and Suffolk County.  What Your

21   Honor may not realize is that Jones Day represents two

22   Defendants, which are actually just the Diocese, but the

23   named Defendants are not separately incorporated nor any way

24   a juridic person.  So, we are there.  And Judge Steinman

25   expects the Diocese to be the main source of document

Page 39

1   discovery, not surprisingly.  The next big date in that

2   pathway is September 29.

3             THE COURT:  How many of the EDNY cases have not

4   yet been remanded?

5             MS. BALL:  Just under 100.  With respect to Judge

6   (indiscernible) and the motion that we filed under

7   157(b)(5), it was fully briefed on September 8.  But I

8   remind Your Honor, that that motion was conceived, intended,

9   and remains a safety valve, and always was to serve as one,

10  in the event Purdue is not, in our view, rightfully

11  resolved.

12            THE COURT:  Consensual releases are just fine.

13            MS. BALL:  Your Honor, I think you're going to

14  find new limits to coercion, but I guess we are aiming at

15  consensual releases.  And then, Your Honor, the other third

16  -- well, the second path of, in litigation, is the insurance

17  litigation.  And I think you've heard enough about that.  We

18  have made a proposal -- because of course, we have no

19  hesitation in tendering whatever demands we get to the

20  insurers.  So we're, we hope that will be resolved.

21            THE COURT:  Has the District Court set a hearing,

22  your motion on the Southern District.

23            MS. BALL:  Not as far as I am aware.

24            THE COURT:  You said it was fully briefed on

25  September 8.

Page 40

1           MS. BALL:  Not as far as I am aware.  The second

2    stream, well the third stream of activities and, perhaps, in

3    our view, the most important, are the plan-related

4    activities.  We are pursuing every avenue to monetize the

5    state resources for survivors.  There were three

6    transactions for which the Committee obtained derivative

7    standing.  I've already mentioned that one, the Department

8    of Education and two diocesan high schools, the Committee

9    has concluded a settlement, effective upon a consensual

10   plan.

11          A second against a seminary, the Committee has

12   also concluded the terms of a settlement.  And there should

13   shortly be a 9019 motion for this settlement with the

14   seminary, as it involves a very time sensitive transaction

15   with the State of New York, to take over all that real

16   estate for a price that has been determined to be

17   acceptable.

18          We have also recently been tasked, or have

19   undertaken, at the request of the Committee, every effort to

20   monetize the only remaining derivative action, and that's

21   the action against the cemetery preparation and the

22   permanent maintenance trust.  That is moving forward,

23   meetings scheduled, already happening this week, and more

24   later this week.

25          THE COURT:  Let me just say, in response to one of

Page 41

1   your comments, my schedule for October and November is quite

2   full.  But what I've been doing is, where matters need to be

3   heard, I've been scheduling them for like 4:30 or five

4   o'clock in the afternoon, so that anything that requires a

5   prompt hearing will get a prompt hearing, even though I'm at

6   trial for two months.

7            MS. BALL:  We are very mindful of how busy and

8   hardworking you are, Judge, and we appreciate the heads up.

9            THE COURT:  That doesn't matter.  But I'm just

10  saying that if there's a 9019 that requires shortened notice

11  and prompt action, it's likely the hearings are going to be

12  like at five o'clock in the afternoon, but you'll get a

13  hearing.

14           MS. BALL:  Thank you, Your Honor.  And we

15  absolutely will be here.  We can get to that.

16           The appraisal that you authorized earlier this

17  month for the spectrum has been completed, and our efforts

18  to get a major financing against the spectrum assets are

19  moving ahead.  Indeed, the only thing that's left is

20  obtaining an investment-grade rating for that.  That is

21  ongoing.  It has been somewhat expensive, but we need it for

22  a plan.

23           The bar date amendment that the Court authorized

24  has cleared the way for diligence on the value of the

25  Diocesan insurance coverage in the period allocable to

Page 42

1    Royal, now known as Arrowood.  I note, out of three out of

2    five claims in this case, fall within the periods allocable

3    to the Royal Insurance coverage periods.  It is

4    substantialist data that, which in the event of an Arrowood

5    insolvency enjoys a benefit of a New York State guarantee;

6    which is why we are seeking to try to get more cash on the

7    effective date for survivors, and will work with the

8    Committee to make sure that it does not jeopardize their

9    efforts in a trust, or whatever may result.

10           Although we think the answer is fairly clear, the

11   question of why a plan is better than dismissal --

12           THE COURT:  I think clearly better than dismissal.

13   Obviously, it depends on the terms of the plan, but I've

14   said this multiple times --

15           MS. BALL:  But Your Honor, we have, as you've also

16   heard, we've met with some 16 State Court counsel, we've met

17   with the Committee.  But the question is why is the plan

18   better, since there's such substantial insurance in both

19   scenarios?  So, for some State Court counsel that question

20   remails; for some parishes that question remains.  And we

21   are dedicated to try to resolve that, to the obvious

22   conclusion, which you know we share.

23           THE COURT:  And why do you believe that a plan is

24   better for the survivors than the litigation

25   (indiscernible)?

Page 43

1          MS. BALL:  I believe that a failure will surely

2     result in such State Court counsel, many parishes, and the

3     Diocese, being right back here next year.  Indeed, it is

4     more likely than not, that those parishes that I described,

5     will have no choice, that we'll be here, that it will be

6     months later --

7          THE COURT:  They may be on the other side of the

8     river --

9          MS. BALL:  I would not guarantee that, Your Honor.

10    It may be months from now, and it will clearly be with less

11    resources.  No one should want to experience that Groundhog

12    Day.  It just would be never ending, and we'd be right back

13    here.  To me, that's the easy answer.

14          THE COURT:  One of the things I've focused on, and

15    maybe you disagree, in the plans that have been confirmed,

16    and the Diocese cases that have been confirmed, the claims

17    resolution process is a much more streamlined, not bound by

18    the Federal Rules of Civil Procedure, or really, even for

19    the State Rules of Civil Procedure.  And personally, I view

20    it as an advantage to survivors being able to much more

21    quickly being able to resolve their claims and receive a

22    recovery, which is something I've said in writing, and from

23    the bench, I'm very focused on, want that to happen.  But

24    there is so much more flexibility for what the Committee can

25    negotiate with the Debtors for a claims resolution process,

Page 44

1    that will provide for a much speedier and efficient way of

2    actually getting recovery to the people who need it.  Let me

3    stop there.

4         MS. BALL:  Fairly and more rapidly, we

5    wholeheartedly endorse.  Two comments; one somewhat on a

6    lighter note.  We definitely share Mr. Burns' desire not to

7    be Camden or Rochester.  Because both of those cases reached

8    an arrangement with the Committee, and are still months away

9    from getting out; Camden is more than a year.  Nobody wants

10   to be in litigation.

11        Secondly, Your Honor, I just have to reserve, out

12   of respect for the survivors of the process, we have never

13   directly taken on valuation of the claims.  That really is

14   something, frankly, in our judgment, that really needs to be

15   between the insurers and the Committee.  That's when that

16   has relevance.  So, we have, in order to facilitate

17   continuing discussions, we have never undertaken that.

18        However, I do think that I must dissent on the

19   representation of not a hope of fully paying the 500 or so

20   legitimate claims that remain here.  Your Honor may recall,

21   there are no aggregate limits on these insurance policies.

22   And they are quite substantial coverage, in most, not all,

23   on most years.  So, I think we're well aware of what we

24   think our uninsured exposure is, but that issue remains to

25   be seen.  I'm hoping we never do have to wrangle about the

Page 45

1    value of claims.

2            And that flexibility you mentioned, Your Honor, on

3    dealing with clients, Your Honor, that's why we talk about

4    potentially viable claims, including those you have

5    disallowed.  We have excluded those that you have disallowed

6    and are on appeal, but we have some 11-plus appeals by Mr.

7    Anderson, and we have Mr. Amala appealing a release, and we

8    have Mr. Mersen appealing a few, among others.  So, it is

9    unclear to me, in the context of dismissal or a trust, what

10   would happen with those claims.  But I assume they fall into

11   that flexibility regime you just talked --

12           THE COURT:  I think I asked Mr. Geremia this at

13   one of the claim objection hearings, which I think it dealt

14   with the release issue.  Because the independent review

15   process didn't apply pleading standards, and didn't impose

16   the same requirements that State Law does --

17           MS. BALL:  True.

18           THE COURT:  -- or extending liability to the

19   Diocese, or they're (indiscernible) negotiated plan would

20   have the same claims resolution process or not, is not for

21   me to decide.  But I just … it doesn't … but to be clear, it

22   doesn't mean the committee and the survivors should accept

23   anything that's offered because the claims resolution

24   process is simpler than that.  I do not mean to say that at

25   all.  But it should definitely enter into the calculus of

Page 46

1    negotiations that survivors may see recoveries much quicker

2    if there is a consensual agreement.  And if a consensual

3    agreement includes third-party releases, it's not going to

4    run afoul of whatever the Supreme Court does in Purdue.

5           You know, somebody told me, in one of the -- not

6    Rochester or Camden, one of the confirmed cases that had

7    third-party release and which never really became a big

8    issue during the confirmation hearing, and I asked the

9    question, were there survivors who voted against?  And I was

10   told one or two.  So, you know, with the right agreement

11   you'll get broad support.

12          MS. BALL:  Consent will move this forward far more

13   quickly.  That is a concept, Your Honor, we totally

14   understand.  We also understand the numbers of clients held

15   by State Court counsel serving on the Committee; State Court

16   counsel, one of whose clients served on the Committee.  And

17   it does boil down to one or two firms.

18          THE COURT:  All right, leave it at that.

19          MS. BALL:  That's it for today.

20          THE COURT:  I have another hearing, I'm 10 minutes

21   late for already.  And we have another matter in this case,

22   so we'll deal with that.

23          MS. BALL:  We do, we have --

24          THE COURT:  Ms. Dodd, are you going to deal?

25          MS. DINE:  (indiscernible) but I may just --

1           THE COURT:  Go ahead, please, go ahead Ms. Dodd.

2      Thank you, Ms. Ball.

3           MS. BALL:  You're welcome.

4           MS. DINE:  Your Honor, Karen Dine, Pachulski Stang

5      Ziehl & Jones, on behalf of the Committee.  And I won't

6      belabor any points because I do know you want to move onto

7      the next matter.  But I'd like to at least address to you,

8      as one, as Your Honor just noted, part of the issue with any

9      settlement, and whether being dismissed or not, is going to

10     depend on what the alternatives are.  And the notion, from

11     the Debtor's counsel, the particular meeting with the State

12     Court counsel, that somehow the State Court counsel and

13     their claimants do not understand what is at stake here.

14     Frankly, it is very disturbing to us.  And you know, they

15     know, many of these State Court counsel have been involved

16     in many cases.  We are in touch with State Court counsel,

17     not (indiscernible) those who represent Committee members,

18     but those outside of the Committee members.  And they are

19     very focused and unified by what we think that the level of

20     the contribution needs to be, from the Diocese and the

21     parties it is seeking compensation for.

22           And while we would absolutely prefer to have a

23     plan with a settlement trust, in which people can make their

24     claims, and it is streamlined, that all, again, depends on

25     the amount.  And we don't --

Page 48

1           THE COURT:  I was remiss in waiting until almost

2     the end of my comments to make the point that a consensual

3     settlement was only going to be reached if the Committee, on

4     behalf of the survivors, believes that the amount of

5     compensation, in combination of the Diocese, parishes,

6     insurers, is fair.  And you know, there are cases that have

7     resulted in confirmed plans where the insurance claims go

8     into a trust.  The insurers want to spend the next many,

9     many years in litigation?

10          MS. DINE:  I understand Your Honor.  And Ms. Ball

11    speaks about respect for survivors, you know, not raising

12    the valuation issues.  There's been, in my understanding, no

13    other case where thee has been a level of direct objections

14    to survivor claims as there have been in this one.  And as

15    you --

16          THE COURT:  All I would say on this is, when I

17    raised the issue about estimation, which would deal with

18    value, I got resounding silence from both the Committee and

19    the Debtor.

20          MS. DINE:  Understood, Your Honor.  But as you

21    pointed out also, that for many of these claimants, where

22    the claims have, where Your Honor has now sustained the

23    objections to the claims, for some, that actually doesn't

24    really change the mix, because there may still be claims

25    against parishes and third parties.  But also, it may

Page 49

```
 1   incentivize some, that State Court is, in fact, the better

 2   outcome.

 3           THE COURT:  I didn't -- I never said that

 4   estimation couldn't also deal with claims that may have

 5   been, you know, objection sustained without prejudice or

 6   whatever.  I mean, what the parameters of that -- I think,

 7   let's -- you know, the clock is running.

 8           MS. DINE:  And Your Honor, that is my overall

 9   point.  The Committee is very focused on the fact that there

10   is this October 31 deadline.  We appreciate that parties are

11   still mediating, and we are continuing to mediate in good

12   faith, and that the Debtor is taking action to try and

13   modify its assets, to hopefully reach that sum.  But

14   nonetheless, we are still, you know, only a few weeks away

15   from the deadlines.

16           THE COURT:  Keep at it.  Well, look, with respect

17   to the Committee's motion for an order for leave, for

18   standing, authority to prosecute, I'm going to take it under

19   submission.

20           MS. DINE:  Understood, Your Honor, and I believe

21   the --

22           THE COURT:  That leaves the discovery issue.  Are

23   you going to argue that?

24           MS. DINE:  Yes, Your Honor, and I'll allow Mr.

25   Burns to take my --
```

Page 50

1              THE COURT:  Okay, Mr. Burns?  Who is going to --

2      pass it down the room, go ahead.

3              MR. BAIR:  Good afternoon, Your Honor.  My name is

4      Jesse Bair, special insurance counsel for the Committee.  I

5      understand Your Honor is a bit short on time, so I'll

6      endeavor to keep this brief.  Ms. Ball provided a nice segue

7      into this motion a moment ago.  She mentioned the great

8      value of the insurance policies, the lack of aggregates in

9      certain years.  But she also mentioned that three out of

10     five of the claims in this case fall in the Arrowood period,

11     and that's exactly what the Committee's 2004 motion is

12     targeted at here.

13             The Committee's motion seeks to understand

14     Arrowood's financial ability to pay under those policies.

15     And the Committee believes its 2004 requests are appropriate

16     for two reasons.  First, the Committee's 2004 request fall

17     within the broad parameters of Rule 2004.  They retain to

18     the property of the Debtor's estate, namely, the Arrowood

19     policies, as ell as the Diocese' financial condition.

20             THE COURT:  You wouldn't, and I understand in the

21     District Court, you've got standing, limited standing.  But

22     this wouldn't be, this discovery, proposed discovery, would

23     not be appropriate in the District Court.

24             MR. BAIR:  That's correct, Your Honor.  And we

25     think Arrowood's brief actually makes that point quite

Page 51

1    nicely.  They say that we're seeking post-judgment discovery

2    prejudgment.  And that's more or less correct.  The

3    Committee, the insurance adversary proceeding relates to the

4    issue of whether Arrowood had the legal obligation to pay

5    under the policies.  That's the issue being decided in the

6    insurance adversary proceeding.  Our 2004 requests, on the

7    other hand, deal with the separate, unrelated issue of does

8    Arrowood have the financial ability to pay under those

9    policies.  And we believe the cases that Arrowood cites, of

10   whether a policyholder or a tort plaintiff could get this

11   sort of discovery under the narrower federal rules, are

12   distinguishable.

13          The Committee, of course, is an entity that has

14   the statutory obligation to investigate a debtor and it's

15   property and financial conditions.  And so, we think

16   comparing a Committee with its statutory, investigatory

17   obligations, to a policyholder in a typical coverage case,

18   is apples and oranges.  It's … there are different issues

19   that are being adjudicated --

20          THE COURT:  Let's assume you get this discovery.

21          MR. BAIR:  Okay.

22          THE COURT:  Who's entitled to receive the results

23   of it.  It's the Debtor that's the Plaintiff in the District

24   Court; they could receive this information, right?

25          MR. BAIR:  Well, the Debtor has requested receipt

Page 52

1   of this information, assuming that the Committee's motion is

2   granted.  They've made that relief and we have, at present,

3   incorporated that into or proposed order.  If that is an

4   issue that the Court is concerned about, the Committee would

5   still, still believes it is entitled to this information.

6              THE COURT:  Who is the District Judge for the

7   Arrowood case?

8              MR. BAIR:  It's Judge Rochon.

9              THE COURT:  Tell me what the status is?

10             MR. BAIR:  Well, counsel for the Diocese may weigh

11  in as well.  But effectively, the status of the Arrowood

12  insurance adversary proceeding, is that discover on the duty

13  to indemnify has been stayed.  And so, the only issue being

14  litigated at present is the duty to defend.  In other words,

15  Arrowood's duty to pay the Diocese' defense cost.  And there

16  is discovery ongoing in that matter, but pertaining only to

17  the duty to defend, which I believe is limited to certain

18  issues regarding loss policies; whether Arrowood issued

19  policies in particular years, and if so, what the terms and

20  limits of those policies were; perhaps whether particular

21  parishes were incorporated -- were insured, in particular

22  years.  So, that is ongoing.  And I believe the Court

23  permitted limited discovery on the issue of notice; whether

24  the Diocese provided timely notice of the CVA claims.  And

25  there's a bit of fine line that the judge drew there between

Page 53

1    whether the notice evidence speaks to the merits of the

2    underlying case, which is not being considered, or whether

3    it does not.  But effectively, the status is discovery on

4    the duty to defend, at present.

5             THE COURT:  So, what -- I mean, I … it's my

6    intention to call Judge Rochon.

7             MR. BAIR:  Okay.

8             THE COURT:  And to talk to her about the discovery

9    requests here, whatever orders she entered in the District

10   Court.  I view it as my decision, whether or not to permit

11   this discovery, but I'm very keenly aware and focused on

12   what she's done in the -- who did she inherit the case from?

13   If she (indiscernible).

14            MR. BAIR:  She inherited it from Judge Caproni.

15   Just one comment on that, Your Honor.  I would say that the

16   reason certain of the discovery is limited in the District

17   Court, is because the Diocese had requested that limitation

18   to protect itself from certain merits to discovery, that it

19   believed may prejudice its ranks in the underlying case.

20   Here, by contrast, we're seeking financial information from

21   Arrowood.  And so, it really doesn't speak to the same

22   issues that motivated the concern in that case.  And that's

23   aside from the general point that I made earlier, that the

24   discovery we're seeking, it just doesn't overlap with the

25   legal (indiscernible) --

Page 54

```
1              THE COURT:  Does your discovery request run afoul
2     of any state insurance regulatory scheme?
3              MR. BAIR:  No, not that we're aware of.
4              THE COURT:  Let me hear from the other side.
5              MR. BAIR:  Thank you, Your Honor.
6              MR. MOORE:  Good afternoon, Your Honor.  Brett
7     Moore from Porzio, Bromberg & Newman, on behalf of Arrowood.
8              Your Honor, I think I want to go back first just
9     to the initial statement by Committee counsel for the
10    earlier argument, which was, this is a five-point plan all
11    based on bargaining power.  And --
12             THE COURT:  I don't want to hear that.  Let's
13    (indiscernible) --
14             MR. MOORE:  Your Honor, my only point in raising
15    that is, 2004(b), as Your Honor well knows, allows
16    discovery, only that relates to the acts, conduct, property,
17    or liability --
18             THE COURT:  Property.  The policies are property
19    of the estate.  They have, don't they have a right to
20    understand what the property estate is, what the value --
21    it's an asset of the estate.  And the value, the potential
22    value -- here, the District Court will decide the coverage
23    issues.  But what the potential -- if Arrowood is insolvent
24    and the District Court were to determine, yes, it's liable
25    on the policies, they'd get a big zero, other than potential
```

Page 55

1    state recovery funds, okay.  But they're asking about the

2    value of an asset of the estate.  I have lots of cases where

3    I'm granted 2004 discovery against third parties, where

4    there's been avoidance claims, a whole host of things where

5    a committee has wanted to understand what's the value of the

6    property of the estate.  Isn't that what they're asking for?

7             MR. MOORE:  It's not, Your Honor.

8             THE COURT:  Tell me why.

9             MR. MOORE:  IF you look at, actually, the demands

10   that they put in there, they're asking for communications

11   between Arrowood and the claims monitor.  They're asking for

12   communications relating to policyholder complaints.

13            THE COURT:  Do you agree that they're entitled,

14   under 2004, to obtain discovery about Arrowood's ability to

15   meet any claims for the coverage years?  Yes or no?

16            MR. MOORE:  Not at this time, Your Honor, no.

17            THE COURT:  Why not?

18            MR. MOORE:  Because --

19            THE COURT:  If not now, we're at a critical stage,

20   this case may get tossed, okay.  The ability of the Debtors

21   and the insurers to put up money to come to a confirmed

22   plan, now is the time -- not three months from now or six

23   months from now -- it's now.  So, tell me what it is that

24   they've asked for that doesn't go to Arrowood's ability to

25   satisfy claims for the policy years involved?

Page 56

1            MR. MOORE:  Respectfully, Your Honor, none of

2     their request go to that.

3            THE COURT:  Oh, really?

4            MR. MOORE:  There are financial statements for

5     Arrowood that are followed publicly.  They have that

6     information in terms of assets.

7            THE COURT:  Have you sat down with Mr. Burns and

8     sought to refine the discovery requests that would give the

9     Committee the information that it needs to evaluate

10    Arrowood's ability to satisfy claims if coverages failed?

11    Yes or no?

12            MR. MOORE:  No, Your Honor.

13            THE COURT:  Okay, well, you're going to do that.

14    Okay?  You're going to do that tomorrow, okay.  And you're

15    going to have a good faith meet and confer.  Because I am

16    going to -- first I'm going to talk to Judge Rochon.  But

17    I'm very strongly inclined to give Arrowood, to give the

18    Committee discovery about Arrowood's ability to satisfy

19    claims for the coverage years, okay.  I've been hearing,

20    since I've gotten this case, that Arrowood is in serious

21    financial distress and doesn't have the ability to meet

22    claims, okay.  This is going to be the way for the Committee

23    to test it.  You think that their requests are overbroad.

24    You haven't done what I always require to be done: a meet

25    and confer.  And we'll have, you know, we'll do a zoom

Page 57

1    hearing late in the afternoon.  So, today's Tuesday … let me

2    see what my calendar for Thursday is.

3              CLERK:  Judge, I believe you're on a train --

4              THE COURT:  I know, I'm on a train to Washington.

5    I know.  Thanks, Diana.  I'm trying to look and see when I

6    can do this.  Diana, what do we have on the calendar

7    tomorrow?

8              CLERK:  At 10:00 AM we have he Marcus case,

9    otherwise it's clear.

10             THE COURT:  Okay, let me just look at my other

11   calendar.  Well, we're going to do it -- you're going to met

12   and confer and we're going to have a Zoom hearing tomorrow

13   afternoon at 4:30.  And I'm going to determine whether

14   there's been a good faith negotiation of the scope of

15   discovery regarding the financial ability of Arrowood to

16   meet claims for the coverage years.  And I understand about

17   the, of the claims that have been filed, how many of them

18   are, you know, potentially would trigger the Arrowood

19   coverage.  Okay.

20             The Committee is entitled to this.  2004 discovery

21   is expressly intended to permit a part in interest to obtain

22   discovery about the assets of the Debtor.  These policies

23   are an asset of the Debtor.  Yes, the District Court will

24   decide whether there's coverage.  And ordinarily, you

25   couldn't get prejudgment discovery as to ability to pay.

Page 58

1    But that's not what's before the Bankruptcy Court.  So, I

2    want face-to-face meeting.  You may be both from out of

3    town; rearrange your schedules.  Meet tomorrow.  We will

4    have a 4:30 Zoom.  My courtroom deputy will provide the

5    link.  We'll do a 4:30 Zoom.  You'll update me on where they

6    are, what you've agreed on, what you disagreed on, make it

7    make the list as specific as possible.  That's what's going

8    to happen tomorrow?

9           MR. MOORE:  Very good, Your Honor, thank you.

10          THE COURT:  Okay.  All right, this matter is

11   adjourned.  Diana, you can call the next case.

12          CLERK:  So, the next case is going to be just in

13   courtroom, so I'm going to stop the Zoom and Jonahtan is

14   going to do the, take the … record the hearing.

15          THE COURT:  Thanks very much, Diana.

16          CLERK:  You're welcome.

17          (Whereupon these proceedings were concluded.)

18

19

20

21

22

23

24

25

**Page 59**

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 2, 2023

[& - actually]                                                                                    Page 1

| **&** | **2388** 2:10 | **4** | **aboveboard** |
|---|---|---|---|

**&**

**&**   4:1,8 47:5
54:7

**1**

**10**   46:20
**100**   39:5
**10004**   1:13
**10017**   4:4
**10019**   4:11
**10:00**   57:8
**11**   12:13 17:24
45:6
**11501**   59:23
**12**   16:10
**12151**   59:6
**12345**   7:4
**14**   22:20
**140**   38:18
**157**   39:7
**16**   42:16
**1675**   4:10
**1717**   3:6
**1810**   4:10
**19103**   3:7

**2**

**2**   20:15 59:25
**20**   7:3
**20-12345**   1:3
**2004**   2:7,8 7:12
10:8 50:11,15
50:16,17 51:6
54:15 55:3,14
57:20
**2023**   1:15
59:25

**2388**   2:10
**2390**   2:10
**2400**   2:10
**2425**   2:3
**2429**   2:3
**2435**   2:4
**2456**   2:4
**2457**   2:4
**2461**   2:10
**2466**   2:4
**2469**   2:4
**2475**   2:10
**2485**   2:10
**2500**   2:4
**2501**   2:4
**2510**   2:4
**2511**   2:4
**2513**   2:5,11
**2515**   2:5,11
**26**   1:15
**2601**   30:15
**29**   39:2

**3**

**30**   11:3 14:18
**300**   59:22
**303**   3:13
**30308**   3:14
**31**   49:10
**3100**   3:6,21
**330**   59:21
**349**   29:5 30:8
30:13
**34th**   4:3
**3600**   3:13
**3:00**   1:16

**4**

**403**   37:13
**45**   37:19
**4:30**   41:3 57:13
58:4,5

**5**

**5**   39:7
**50**   36:19
**500**   37:12
44:19
**563**   36:17 37:9

**6**

**6**   16:10

**7**

**780**   4:3

**8**

**8**   39:7,25
**865**   3:21

**9**

**90017**   3:22
**9019**   32:5 33:2
40:13 41:10
**9092**   34:13

**a**

**aaron**   5:12
**ability**   13:8
17:6 50:14
51:8 55:14,20
55:24 56:10,18
56:21 57:15,25
**able**   9:16 11:22
43:20,21
**above**   34:9

**aboveboard**
35:9
**absent**   32:12
32:19,25
**absolutely**   11:9
20:5 24:15
25:3 32:14
33:3 41:15
47:22
**accept**   27:16
45:22
**acceptable**
40:17
**accurate**   23:1
59:4
**accurately**
37:24
**achieved**   13:19
**act**   18:16
**action**   2:2 7:23
11:14,19 15:22
30:10,15,17
40:20,21 41:11
49:12
**actions**   11:16
37:13
**activities**   38:1
40:2,4
**activity**   38:18
**acts**   18:14
54:16
**actually**   13:5
14:23 15:16
34:3,13 38:22
44:2 48:23
50:25 55:9

**adam** 5:10,22
**addition** 9:9
**additional**
  21:24
**address** 47:7
**adjourned**
  58:11
**adjudicated**
  51:19
**adjudication**
  27:5
**admin** 28:22
  29:7,8,16
**administrative**
  15:14 18:5,7
  18:10,11,23
  28:3,5,17 30:5
  33:13,14,16,17
  33:20
**advantage**
  43:20
**adversary** 10:5
  51:3,6 52:12
**advisory** 38:7
**affected** 37:14
**affiliated** 38:5
**afoul** 46:4 54:1
**afternoon** 7:8
  7:10 19:13
  22:6 29:21
  41:4,12 50:3
  54:6 57:1,13
**aggregate**
  44:21
**aggregates**
  50:8

**ago** 10:23 50:7
**agree** 20:23
  22:17 25:3
  36:14 37:16
  55:13
**agreed** 58:6
**agreement**
  14:8 21:11
  25:19 27:13
  28:15,21,22
  29:1 34:12,16
  34:22 46:2,3
  46:10
**agreements**
  28:23 34:19
**ahead** 41:19
  47:1,1 50:2
**aiming** 39:14
**alerted** 15:3
**allard** 4:19
**alleged** 18:14
**allianz** 20:11
  20:17,19,20
**allocable** 41:25
  42:2
**allow** 23:12
  49:24
**allows** 54:15
**alternate** 12:20
**alternatives**
  47:10
**altogether** 9:7
**amala** 45:7
**amended** 9:12
**amendment**
  41:23

**amount** 13:18
  47:25 48:4
**anderson** 45:7
**andrew** 4:25
**angeles** 3:22
**ann** 5:13
**anne** 5:25
**answer** 9:18
  21:20 29:17
  36:7 42:10
  43:13
**anybody** 25:4
  29:19 35:18,22
**anymore** 33:20
**apart** 15:11,12
**appeal** 45:6
**appealing** 45:7
  45:8
**appeals** 45:6
**appear** 20:6
**appears** 22:14
**applaud** 14:15
  14:22,24
**apples** 51:18
**application** 2:7
  8:5
**apply** 45:15
**applying** 37:8
**appraisal**
  41:16
**appreciate**
  17:7 41:8
  49:10
**approach** 8:19
**appropriate**
  15:19 20:23
  50:15,23

**approval** 17:20
  17:25 19:1
  20:1,4 22:18
  23:13 28:12
**approve** 17:18
  27:17
**approved**
  16:15 18:3,8
  18:21 22:23
  28:4,12,13
  29:1 31:7
  32:19 35:2
**arch** 3:6
**areas** 38:3
**areille** 5:6
**argue** 7:6
  12:10 19:12
  22:5 33:14
  49:23
**argument** 17:8
  18:23 25:22
  33:13,19,21
  54:10
**arguments**
  19:3 21:10
  26:11 30:1
**arm's** 25:23
**arrangement**
  44:8
**arrival** 22:25
**arrowood** 4:9
  10:10,13 42:1
  42:4 50:10,18
  51:4,8,9 52:7
  52:11,18 53:21
  54:7,23 55:11
  56:5,17,20

57:15,18
**arrowood's**
50:14,25 52:15
55:14,24 56:10
56:18
**aside** 53:23
**asked** 10:1,2,4
15:8 45:12
46:8 55:24
**asking** 14:14
14:16 55:1,6
55:10,11
**asserted** 16:25
**asset** 54:21
55:2 57:23
**assets** 41:18
49:13 56:6
57:22
**assignment**
12:25
**assume** 27:15
32:18 45:10
51:20
**assumes** 27:16
**assuming** 52:1
**assurance** 14:6
14:11 15:7,9
**assure** 37:15
37:17
**atlanta** 3:14
**attached** 9:16
**attack** 25:8
26:25
**attempt** 31:8
**attempting**
10:9 19:23
22:11 23:6

**attorneys** 3:12
3:19 4:2,9
**authority** 2:2
7:5 23:14
49:18
**authorize** 2:1
**authorized**
41:16,23
**authorizing**
2:9
**available** 10:7
21:24
**avenue** 4:3
40:4
**avoid** 12:5 14:1
14:3
**avoidance** 55:4
**aware** 39:23
40:1 44:23
53:11 54:3

**b**

**b** 1:21 39:7
54:15
**back** 8:6 12:14
23:2 25:6 37:3
43:3,12 54:8
**backtrack**
22:15
**bair** 4:17 50:3
50:4,24 51:21
51:25 52:8,10
53:7,14 54:3,5
**ball** 4:18 21:22
21:22 35:24,25
36:3,6,11,14
37:11,17 38:17
39:5,13,23

40:1 41:7,14
42:15 43:1,9
44:4 45:17
46:12,19,23
47:2,3 48:10
50:6
**bankruptcy**
1:1,11,23 2:8
7:20 8:5 23:11
29:14 33:9,23
37:7 58:1
**bar** 22:16 23:3
41:23
**bargain** 8:6
25:4,11
**bargained**
25:10
**bargaining**
7:18,21 8:7,19
10:22 11:5
12:17 54:11
**based** 8:13
10:22 12:21
13:7 19:3
33:16 54:11
**basically** 31:4
**basis** 11:25
30:14
**basket** 10:15
10:18
**battled** 13:22
**behalf** 2:3 7:6
10:16,18 22:7
47:5 48:4 54:7
**belabor** 47:6
**believe** 10:6,13
16:6,15,16,18

23:10 25:8
26:24 27:4
42:23 43:1
49:20 51:9
52:17,22 57:3
**believed** 53:19
**believes** 48:4
50:15 52:5
**bench** 43:23
**beneficial** 21:6
**benefit** 19:20
42:5
**berringer** 4:20
**best** 27:14
**better** 31:20
42:11,12,18,24
49:1
**big** 17:24 32:12
39:1 46:7
54:25
**bills** 35:14
**biography**
10:24
**bit** 7:19 12:14
50:5 52:25
**board** 34:10
**bodnarek** 4:21
**boil** 46:17
**book** 11:11
**bound** 15:12
43:17
**bowling** 1:12
**boy** 34:22
**brandeis** 8:8
**brett** 4:13 54:6
**brief** 22:7,14
30:16,18,25

50:6,25

**briefed**  39:7,24

**briefly**  9:15
19:15 36:7

**bring**  12:3 13:4
32:4

**bringing**  7:17
9:3

**brings**  12:1
15:23 16:6

**brittany**  5:15

**broad**  46:11
50:17

**broader**  23:5

**broadway**  4:10

**bromberg**  4:8
54:7

**bross**  4:22

**bucheit**  4:23

**bunch**  14:9

**burden**  19:17

**burns**  4:16 7:8
7:9,10,11 8:24
9:5,14 11:9
12:14,16 13:4
13:20 17:4,10
17:14,19 18:1
18:15 19:9
44:6 49:25
50:1 56:7

**business**  16:8
16:13 18:16
29:12

**busy**  41:7

**c**

**c**  3:1 7:1 59:1,1

**ca**  3:22 38:20

**calculus**  45:25

**calendar**  7:4
36:13 57:2,6
57:11

**call**  8:8 53:6
58:11

**called**  18:20

**camden**  9:9,11
9:17 14:1,4,7
14:13 15:4,6
15:10 16:17
18:2,6,8,10
22:20,21,22
28:6,20 33:23
34:8,14,24
44:7,9 46:6

**canard**  33:14

**capable**  18:12

**caproni**  53:14

**care**  28:7

**careful**  12:18

**carry**  13:23

**case**  1:3 7:20
8:5,7 10:13,23
11:14,21,23
12:9,13 15:5
15:24 16:9
18:18,25 19:1
19:2 23:24
24:15 25:14,14
25:16 28:10
30:10,11,19
36:25 37:2,9
42:2 46:21

48:13 50:10
51:17 52:7
53:2,12,19,22
55:20 56:20
57:8 58:11,12

**cases**  8:10 11:2
11:3,20 13:3
13:22 15:20
16:13 19:2
30:18 33:22,24
34:4,5,11,15
35:6,12,14
37:18 38:18
39:3 43:16
44:7 46:6
47:16 48:6
51:9 55:2

**cash**  42:6

**cassidy**  4:24

**casualty**  3:12

**catalina**  5:24

**catholic**  1:7 7:3

**causal**  28:1

**cause**  2:2 16:16
17:21

**caused**  12:6
28:22,24

**causes**  14:9

**cemetery**  40:21

**central**  33:1
36:25

**centre**  1:7 7:3

**certain**  3:19,20
9:22 13:23
29:22,23 37:25
50:9 52:17
53:16,18

**certainly**  8:12
22:21 26:8,14
30:4 32:22
33:10 35:4

**certified**  59:3

**chain**  27:7

**challenge**
17:19

**chance**  31:5,6

**chancellor's**
11:21

**chances**  31:18

**change**  48:24

**chapter**  12:13
17:24

**chelsie**  6:1

**chief**  11:13

**chills**  23:8

**choice**  12:24
24:19 35:11
43:5

**chris**  5:20

**circuit**  17:4

**ciriello**  4:25

**cite**  23:14

**cited**  30:19

**cites**  51:9

**civil**  11:2 43:18
43:19

**claim**  7:6 15:21
16:2,3,6,7,11
16:12,25 17:1
18:6,7,10,11
18:23 19:18,19
28:3,17,22
29:5,7,8,16
30:5,13,21

[claim - conclusion]                                                      Page 5

33:13,14,16,17
45:13
**claimant**  30:12
**claimants**
10:16,18 47:13
48:21
**claims**  10:14
12:12 15:14
18:17 27:4
28:5 29:5
33:20 36:18,19
37:1,10,12
42:2 43:16,21
43:25 44:13,20
45:1,4,10,20
45:23 47:24
48:7,14,22,23
48:24 49:4
50:10 52:24
55:4,11,15,25
56:10,19,22
57:16,17
**claire**  5:1
**clear**  13:10
28:17 29:8,9
29:10,13,15
42:10 45:21
57:9
**cleared**  41:24
**clearly**  29:2
42:12 43:10
**clerk**  11:12,15
57:3,8 58:12
58:16
**clients**  45:3
46:14,16

**clinging**  38:17
**clock**  49:7
**close**  8:22
11:12
**closer**  8:20
**code**  23:12
**coercion**  39:14
**collateral**  25:8
26:25
**colorable**  16:2
16:6,7,25
**combination**
8:15 13:16
48:5
**come**  12:19
20:24 25:19
29:20 32:25
55:21
**comes**  28:11
32:16
**comment**
22:15 53:15
**comments**
22:21 30:1
41:1 44:5 48:2
**committee**  4:2
7:7,9,23 8:11
8:17,22 9:21
10:22 12:11
15:13,17,19
16:15 18:19
19:16,21 20:5
20:9,10,19
21:4,7,8,13
22:13,14,16
23:14,17,24
24:4,10,11,13

24:16,18 25:2
25:3,12,13,15
25:20 26:11,16
26:19 27:15,15
27:16 30:12,22
31:4,8,16,20
31:24 32:1
33:13,22 34:1
34:1,2,7 35:14
35:16 37:24,25
38:7,8 40:6,8
40:11,19 42:8
42:17 43:24
44:8,15 45:22
46:15,16 47:5
47:17,18 48:3
48:18 49:9
50:4,15 51:3
51:13,16 52:4
54:9 55:5 56:9
56:18,22 57:20
**committee's**
7:5,11 14:8
19:6,24 20:8
30:14,25 32:4
32:9 49:17
50:11,13,16
52:1
**committees**
35:10
**communal**
35:10
**communicati...**
12:19 15:1
**communicati...**
15:2,5 26:18
26:22 55:10,12

**companies**
7:22 14:20
20:24
**company**  3:12
7:24
**comparing**
51:16
**compensation**
47:21 48:5
**complaint**
19:21 22:10
23:5
**complaints**
55:12
**complete**  14:16
33:1
**completed**
41:17
**completely**
26:6
**complying**
25:24,25
**component**
33:1
**comprehensi...**
31:10
**conceived**  39:8
**concept**  46:13
**concern**  53:22
**concerned**  15:3
52:4
**concluded**  38:8
40:9,12 58:17
**concluding**
19:9
**conclusion**
42:22

**condition**
  50:19
**conditions**
  51:15
**conduct**  15:18
  26:20 28:23
  54:16
**confer**  56:15
  56:25 57:12
**confirm**  23:23
  24:5
**confirmation**
  34:18 46:8
**confirmed**
  31:15,19 43:15
  43:16 46:6
  48:7 55:21
**conflict**  12:12
  27:11
**consensual**
  39:12,15 40:9
  46:2,2 48:2
**consent**  14:9
  15:13 16:15
  19:24 20:8
  22:13,16 23:5
  23:7,10,17
  24:3 26:12
  32:4 46:12
**consider**  32:11
**consideration**
  32:25
**considered**
  53:2
**constituencies**
  23:25 31:16

**consumer**
  16:18 29:6,13
  30:9
**consumers**
  16:20
**contend**  15:13
  18:5
**contending**
  18:6
**context**  7:19
  9:6 45:9
**continue**  25:11
  38:11
**continuing**
  44:17 49:11
**contrast**  53:20
**contribution**
  8:13,16,18 9:1
  12:9,20 20:23
  21:5 47:20
**contributions**
  13:17
**control**  33:1
**cornell**  5:1
**corporations**
  14:20
**correct**  50:24
  51:2
**corrine**  4:18
  21:22
**cost**  52:15
**counsel**  3:4 7:9
  9:22 11:4
  12:10 19:14
  24:18 25:25
  33:24 37:24
  42:16,19 43:2

  46:15,16 47:11
  47:12,12,15,16
  50:4 52:10
  54:9
**counsel's**  22:21
**count**  37:4
**country**  13:22
  59:21
**county**  38:20
**couple**  27:7
  30:7 33:12
**course**  10:8
  11:5 14:21
  15:10 20:6
  22:19 39:18
  51:13
**court**  1:1,11
  7:2,10,17 8:22
  9:4,11,22 11:8
  11:15 12:7,15
  12:20 13:2,16
  16:1,5,24 17:7
  17:12,17,22
  18:3,14 19:8
  19:11,25 20:3
  21:1,18,25
  22:3,5,17,18
  23:22 24:22
  25:13 26:3
  27:2,17,20,23
  28:2,4,7,10,16
  28:25 29:1,9
  29:19 30:11
  31:11,13 32:6
  32:11,12,15,19
  32:23 33:11,19
  34:17 35:2,19

  35:22,23 36:2
  36:5,10,12,22
  37:3,7,9,16,24
  38:16 39:3,12
  39:21,21,24
  40:25 41:9,23
  42:12,16,19,23
  43:2,7,14
  45:12,18 46:4
  46:15,15,18,20
  46:24 47:1,12
  47:12,15,16
  48:1,16 49:1,3
  49:16,22 50:1
  50:20,21,23
  51:20,22,24
  52:4,6,9,22
  53:5,8,10,17
  54:1,4,12,18
  54:22,24 55:8
  55:13,17,19
  56:3,7,13 57:4
  57:10,23 58:1
  58:10,15
**court's**  9:19,21
  20:1,4 23:13
**courthouse**  8:2
  8:20
**courtroom**
  22:20 58:4,13
**courts**  28:8
  29:12
**coverage**  10:14
  12:8 15:22
  41:25 42:3
  44:22 51:17
  54:22 55:15

56:19 57:16,19
57:24
**coverages**
56:10
**covered** 29:6
**cox** 5:2
**create** 11:18
**creditors** 21:7
**critical** 55:19
**curious** 34:17
**current** 11:13
**currently**
37:22
**cva** 37:13
52:24

**d**

**d** 7:1
**data** 42:4
**datasets** 21:13
**date** 38:9 39:1
41:23 42:7
59:25
**dates** 21:24
26:5
**david** 10:24,25
11:10
**day** 9:23,23
13:14 21:22,23
21:23 38:21
43:12
**days** 22:20
**dead** 22:25
**deadline** 36:21
49:10
**deadlines**
49:15

**deal** 8:25,25
9:12 17:9,16
17:17,20,23
18:9 20:18,19
20:20,20 22:16
27:19 32:18
34:15,25 35:7
35:10,15 37:20
46:22,24 48:17
49:4 51:7
**dealing** 37:10
45:3
**deals** 18:2,8
22:25 35:8,12
35:15
**dealt** 45:13
**debtor** 1:9 2:3
12:11 17:24
23:12 24:1
30:2 31:6,7,15
32:2,3,19,24
33:8 34:6,8,11
48:19 49:12
51:14,23,25
57:22,23
**debtor's** 47:11
50:18
**debtors** 35:13
35:17,17 43:25
55:20
**deceit** 31:2
**deception**
31:25 33:6
**deceptive**
18:14,15 21:14
23:17 26:2,20
31:9,25 35:7

**decide** 26:8
28:9 32:8
45:21 54:22
57:24
**decided** 36:25
51:5
**deciding** 11:13
**decision** 53:10
**decisions** 37:3
**dedicated**
42:21
**defend** 52:14
52:17 53:4
**defendants**
38:22,23
**defense** 52:15
**deficiency**
16:10
**definitely** 44:6
45:25
**demands** 9:23
39:19 55:9
**denied** 25:7
26:24 29:4
**dennehy** 5:3
**denying** 10:14
10:17
**department**
40:7
**depend** 47:10
**depends** 17:2
42:13 47:24
**deputy** 58:4
**derivative** 7:12
9:7 12:3 13:25
15:23 16:9
19:17 21:12

25:15,17,20
27:12 30:14
40:6,20
**describe** 31:24
**described** 43:4
**desire** 44:6
**determine**
54:24 57:13
**determined**
40:16
**diana** 57:5,6
58:11,15
**difference**
15:14
**different** 10:17
24:23 30:6
33:5 37:5,22
51:18
**difficult** 23:23
24:5
**diligence** 41:24
**dine** 4:6 46:25
47:4,4 48:10
48:20 49:8,20
49:24
**diocesan** 9:1
12:20 15:11
40:8 41:25
**diocese** 1:7 3:4
7:3 8:13,15,18
10:1 12:6,7
13:2,5,15,16
13:22 14:5,14
15:15,25 16:3
16:4,21,23
18:18,24 19:14
19:19,24,25

20:3 21:4,17
22:12 23:3,15
24:5,20 25:12
25:19,24 26:14
27:7,9,13,18
28:15,21,22
34:20,24 38:22
38:25 43:3,16
45:19 47:20
48:5 50:19
52:10,15,24
53:17
**diocese** 37:23
**direct** 7:23
  15:22 48:13
**direction** 32:21
**directly** 44:13
**disagree** 21:5
  22:21 43:15
**disagreed** 58:6
**disagreement**
  12:22 20:9
**disallowed**
  36:20 45:5,5
**disapproved**
  18:9
**disclosed** 14:25
  37:12
**disclosure**
  22:23,24 32:16
**discover** 52:12
**discoveries**
  37:7
**discovery**
  10:12 39:1
  49:22 50:22,22
  51:1,11,20

52:16,23 53:3
53:8,11,16,18
53:24 54:1,16
55:3,14 56:8
56:18 57:15,20
57:22,25
**discussion**
  38:15
**discussions**
  24:17 26:13,17
  44:17
**dishonesty**
  31:3
**dismiss** 15:2
**dismissal** 42:11
  42:12 45:9
**dismissed**
  36:25 37:2
  47:9
**disprove** 26:19
**disputes** 14:20
**dissent** 44:18
**distinguishable**
  51:12
**distorted** 34:3
**distress** 56:21
**district** 1:2
  39:21,22 50:21
  50:23 51:23
  52:6 53:9,16
  54:22,24 57:23
**disturbing**
  47:14
**divided** 12:10
**dobbs** 3:11
**doc** 2:3,10

**document**
  38:25
**documents**
  2:10
**dodd** 46:24
  47:1
**doesn't** 13:6
**doing** 20:13,14
  41:2
**donato** 5:4
**dorsen** 10:25
**dorsen's** 10:24
  11:6,11
**drew** 52:25
**driscoll** 5:5
**driving** 31:23
**duane** 3:18
  29:22
**due** 20:6 21:23
**duty** 52:12,14
  52:15,17 53:4
**dylan** 4:24

**e**

**e** 1:21,21 3:1,1
  7:1,1 59:1
**earlier** 7:16
  15:11 18:9
  41:16 53:23
  54:10
**early** 7:20 8:4
**earning** 12:3
**easy** 43:13
**echo** 30:1
**ecro** 1:25
**edny** 39:3
**education** 40:8

**effect** 18:22
**effective** 38:9
  40:9 42:7
**effectively**
  10:14,17 23:7
  26:22 38:8
  52:11 53:3
**efficient** 44:1
**effort** 40:19
**efforts** 14:16
  41:17 42:9
**either** 30:22
**elements** 16:11
**ell** 50:19
**emily** 6:6
**enable** 9:22
**encouraged**
  23:18
**endeavor** 50:6
**ended** 15:1
**endorse** 30:1
  44:5
**endorses** 31:8
**engaged** 24:16
**enjoin** 19:22
  22:10
**enjoined** 11:23
**enjoys** 42:5
**enter** 14:8
  19:23 22:12
  23:6,12 27:8
  45:25
**entered** 53:9
**entering** 19:22
  22:11 23:4
  28:21

[entities - floor]                                                     Page 9

entities  38:5,9
entitled  51:22
  52:5 55:13
  57:20
entity  51:13
entry  2:8 23:16
equal  8:19
equally  36:16
equate  24:7,8
essentially  16:9
  17:1 25:7,20
  27:9
estate  2:3 7:6
  19:20 27:14
  29:14 38:11
  40:16 50:18
  54:19,20,21
  55:2,6
estimation
  48:17 49:4
evaluate  56:9
evaluated  16:8
  16:10
event  39:10
  42:4
events  17:2
evidence  32:8
  53:1
exactly  50:11
examination
  2:7,9
example  36:24
exchanged
  38:14
excluded  26:13
  45:5

exclusive  30:20
excuse  20:2
  31:6 32:1
exercise  27:10
existence  33:16
expect  8:12
expectation
  28:13,14
expecting  10:3
expects  38:25
expensive
  41:21
experience
  43:11
experienced
  26:1
explain  21:8
exploding
  18:20
exposure  13:9
  44:24
express  24:3
expressly
  57:21
extending
  45:18
extremely
  23:23 24:5
  31:20 35:1

f

f  1:21 7:10 59:1
face  31:9,15
  58:2,2
facial  16:10
facilitate  38:12
  44:16

fact  18:8 20:7
  25:16 34:24
  49:1,9
facts  17:9
fail  21:10
failed  19:19
  56:10
failure  43:1
fair  32:9 48:6
fairly  42:10
  44:4
fairness  10:2
faith  25:11,11
  25:23 34:9
  49:12 56:15
  57:14
fall  15:12 42:2
  45:10 50:10,16
far  39:23 40:1
  46:12
fashion  15:21
fashioned
  15:21
favor  11:16
  27:19
february  37:12
federal  37:1,8
  43:18 51:11
feldshon  5:6
fell  15:11
fiduciary  27:10
  34:19,23
field  11:7
fifth  10:12,20
fight  19:2
figueroa  3:21

filed  12:12
  34:13,14 39:6
  57:17
filing  12:13
final  16:2
  33:21
finally  16:18
  31:1
financial  38:11
  50:14,19 51:8
  51:15 53:20
  56:4,21 57:15
financing
  41:18
find  9:16 31:9
  39:14
fine  20:18
  39:12 52:25
fire  3:12
firm  14:19
firms  33:9
  46:17
first  7:4 12:24
  13:25 19:12
  30:6,8,23
  50:16 54:8
  56:16
fit  9:7
five  7:13 9:3,7
  38:5,9 41:3,12
  42:2 50:10
  54:10
fix  17:15
flexibility
  43:24 45:2,11
floor  4:3

**[flying - hear]**                                                      Page 10

flying  10:23
focus  8:14
  13:11 23:3
  24:20 25:2
focused  21:15
  21:16 29:7
  37:19,25 43:14
  43:23 47:19
  49:9 53:11
focuses  8:11
follow  18:24
followed  11:8
  25:10 56:5
footnote  20:15
force  18:21
foregoing  59:3
forget  28:4
forth  23:20
forward  30:22
  30:23 40:22
  46:12
four  9:4 15:25
  16:2 37:18
fourth  10:8
frankly  44:14
  47:14
frbp  2:7
friendly  10:25
  11:2,6,13 17:8
friendly's
  11:17 17:6
front  14:10
  31:17 32:4
frost  5:25
full  41:2
fully  39:7,24
  44:19

fundamental
  18:15
fundamentally
  23:22
funds  55:1
future  17:2

**g**

g  7:1
ga  3:14
general  11:4
  16:8 53:23
geoffrey  5:16
gerber  5:7
geremia  45:12
getting  24:17
  26:3,21 28:12
  34:1,2 44:2,9
give  9:6 10:6
  14:5 26:2 27:7
  30:17 56:8,17
  56:17
given  25:20
gives  18:22
giving  25:15
glad  26:4
glenn  1:22
go  21:13 22:22
  30:22 47:1,1
  48:7 50:2 54:8
  55:24 56:2
goes  12:16 37:3
goffe  5:8
going  7:6 9:1
  9:12 10:10
  11:22 12:24
  13:12,13 14:6
  14:8,12,22,23

14:23 17:5,23
  17:25 18:19
  19:4,11 22:5
  23:2 25:6 28:2
  28:16,17,25
  30:5,23 31:18
  32:22,24 33:10
  35:23 36:12
  37:14 39:13
  41:11 46:3,24
  47:9 48:3
  49:18,23 50:1
  56:13,14,15,16
  56:16,22 57:11
  57:11,12,13
  58:7,12,13,14
good  7:8,10
  19:13 22:6
  25:11,11,23
  29:21 34:9
  36:15 49:11
  50:3 54:6
  56:15 57:14
  58:9
gorrepati  6:5
gotten  56:20
grade  41:20
granted  19:17
  52:2 55:3
granting  2:1
  12:10
grasp  31:2
great  11:2 50:7
green  1:12
greg  6:4
groundhog
  43:11

guarantee  42:5
  43:9
guess  39:14
guidance  10:6

**h**

hand  51:7
happen  9:2,2,
  12:24 28:18
  43:23 45:10
  58:8
happened  9:9
  11:17 13:2
  15:4,20 26:21
  30:13 33:25
  34:3,5 35:13
happening
  40:23
happens  37:20
happy  29:17
hardworking
  41:8
harm  12:6
  13:19 14:1,3,7
  14:12 15:10,20
  16:16 17:21
  29:12,12,13,14
harm's  19:7
harms  18:3
  19:5,5
harris  3:16
  22:6
headline  9:13
heads  41:8
hear  24:22
  26:5 33:20
  54:4,12

**heard**   24:18
    29:20 30:2
    31:3 35:23
    37:23 38:1
    39:17 41:3
    42:16
**hearing**   2:1,7
    15:1,2 16:1
    24:24 32:7,17
    39:21 41:5,5
    41:13 46:8,20
    56:19 57:1,12
    58:14
**hearings**   41:11
    45:13
**heart**   13:21
**held**   46:14
**help**   10:7
**herring**   14:16
**hesitation**
    39:19
**heuer**   5:9
**hey**   35:14
**high**   40:8
**homework**
    27:9
**hon**   1:22
**honor**   7:8,12
    7:18 8:4,24 9:5
    9:10 11:9,21
    12:5,17 13:4
    13:21,24 14:3
    17:11,19 18:1
    18:16 19:10,13
    20:2 21:3,10
    21:22 22:1,4,6
    22:8,19 23:2

    24:16,25 25:3
    25:5,6,23
    26:10 27:3,4,7
    27:10,25 28:19
    29:3,4,11,11
    29:15,17,18,21
    30:2,4,11,15
    30:24 31:22
    32:3,5,8,21,22
    33:3,12,22
    34:22 35:4,6
    35:18,21,25
    36:1,17,20
    37:11 38:4,14
    38:18,21 39:8
    39:13,15 41:14
    42:15 43:9
    44:11,20 45:2
    45:3 46:13
    47:4,8 48:10
    48:20,22 49:8
    49:20,24 50:3
    50:5,24 53:15
    54:5,6,8,14,15
    55:7,16 56:1
    56:12 58:9
**honor's**   23:11
    29:7
**hope**   8:15
    38:17 39:20
    44:19
**hopefully**
    20:22 49:13
**hopes**   13:17
**hoping**   44:25
**horowitz**   5:10

**host**   55:4
**hudson**   3:11
**huge**   15:14
    18:5,7,23
**hyde**   2:25 59:3
    59:8
**hypotheticals**
    27:6

**i**

**iac**   38:6
**iain**   5:19
**identified**   38:4
**immediate**   8:5
**immediately**
    12:12
**impact**   16:20
**important**
    11:20 13:11
    25:21 40:3
**impose**   45:15
**impossible**
    34:16
**inappropriate**
    26:15
**incentive**   12:7
    13:5,5,10
**incentivize**
    49:1
**inclined**   56:17
**included**   34:19
**includes**   24:1,6
    31:14 36:19
    46:3
**including**
    36:23 45:4
**incomprehen...**
    31:11,13

**inconsistent**
    26:15
**incorporated**
    38:23 52:3,21
**indemnify**
    52:13
**independent**
    38:7 45:14
**indiscernible**
    9:15 11:17
    12:16 13:13,17
    24:6,21 29:4
    35:19 39:6
    42:25 45:19
    46:25 47:17
    53:13,25 54:13
**information**
    38:12 51:24
    52:1,5 53:20
    56:6,9
**inherit**   53:12
**inherited**   53:14
**initial**   54:9
**injunctive**
    19:21
**injury**   17:10
**ink**   19:6
**inquiry**   38:3
**insolvency**
    42:5
**insolvent**   54:23
**instance**   21:7
**instances**   36:16
**insurance**   3:4
    7:9,13,22,24
    8:11,12,14,16
    9:8,19,23 10:7

12:8,25 13:6,9
13:17 14:17,20
18:9,16 19:14
20:23 21:9
22:22,24 23:16
24:20 25:1,17
30:16,20 33:9
39:16 41:25
42:3,18 44:21
48:7 50:4,8
51:3,6 52:12
54:2
**insured** 15:11
52:21
**insureds** 23:18
**insurer** 20:14
23:4 28:13
34:5
**insurer's** 8:20
12:8 23:16
31:6
**insurers** 3:20
7:14 8:1,3,21
12:6 13:12
14:4,15,21
15:6,13 16:13
16:22 18:5,22
19:22 20:4
22:11 23:15,18
24:9,13,14
26:19 27:8
28:2 29:9,11
29:15,24,25
31:20 35:7,15
39:20 44:15
48:6,8 55:21

**intended** 39:8
57:21
**intention** 10:10
53:6
**interest** 27:11
57:21
**interesting**
34:23 36:22
**interestingly**
38:6
**interests** 27:14
**interject** 26:9
**interstate** 3:12
22:7 30:2
**investigate**
51:14
**investigatory**
51:16
**investment**
41:20
**involved** 11:11
26:3 47:15
55:25
**involves** 18:16
40:14
**irreparable**
17:10,11,14
**issue** 10:5
16:25 17:24
30:5 32:15
34:23,23 44:24
45:14 46:8
47:8 48:17
49:22 51:4,5,7
52:4,13,23
**issued** 36:24
52:18

**issues** 11:22
25:13,16,21
48:12 51:18
52:18 53:22
54:23
**i'm** 24:10

**j**

**jacob** 6:3
**jacobs** 5:11
**james** 5:18
**javian** 5:12
**jeopardize**
42:8
**jesse** 4:17 50:4
**jillian** 5:3
**john** 4:20,23
11:15
**joined** 9:22
**jonahtan** 58:13
**jonathan** 1:25
**jones** 4:1 21:22
38:21 47:5
**judge** 1:23
10:21,24 11:1
11:2,2,6,13,17
17:6,8 18:8
22:23 28:6,6
36:4 38:19,24
39:5 41:8 52:6
52:8,25 53:6
53:14 56:16
57:3
**judge's** 21:21
**judgment** 7:24
8:3 10:5 44:14
51:1

**juridic** 38:24
**jurisdiction**
30:21
**justice** 8:8
11:13
**justifiably** 16:3
**justin** 5:14

**k**

**karen** 4:6 6:7
47:4
**keenly** 53:11
**keep** 49:16
50:6
**kennedy** 4:21
**kind** 15:20
22:14 29:13
36:7
**kinds** 38:1
**know** 13:21
16:14 17:12,23
21:20 25:19
32:17 33:8,10
36:10 42:22
46:5,10 47:6
47:14,15 48:6
48:11 49:5,7
49:14 56:25
57:4,5,18
**knowing** 15:19
18:18
**known** 42:1
**knows** 54:15
**kramer** 5:13
**krell** 5:14

**l**

**lack** 50:8
**language** 23:6
**lannigan** 4:22
**large** 12:2
 14:19
**late** 46:21 57:1
**law** 3:9 7:15
 11:8,14,15,23
 14:19 15:24
 16:8,9,19 17:9
 19:13,13 20:2
 20:5 21:3,20
 22:1,3,4 30:10
 30:16 33:9
 45:16
**law360** 9:16
**lead** 33:23
**leads** 10:15,17
**learned** 8:10
**leave** 2:1 17:8
 36:20 46:18
 49:17
**leaves** 49:22
**led** 15:13
**ledanski** 2:25
 59:3,8
**left** 18:10,11
 41:19
**legal** 11:25
 51:4 53:25
 59:20
**legitimate**
 44:20
**length** 25:23
**letter** 10:3

**letters** 15:8
**level** 11:7
 47:19 48:13
**lever** 6:6
**leverage** 35:16
**liability** 45:18
 54:17
**liable** 54:24
**lighter** 44:6
**likelihood** 7:14
 10:9 12:23,25
 13:14
**likely** 12:21
 19:20 41:11
 43:4
**limitation**
 53:17
**limited** 19:21
 50:21 52:17,23
 53:16
**limits** 39:14
 44:21 52:20
**line** 28:1 52:25
**link** 58:5
**list** 58:7
**literally** 31:1
**litigated** 52:14
**litigation** 37:2
 38:18 39:16,17
 42:24 44:10
 48:9
**little** 7:21
 12:14 13:9
 36:4 37:22
**lloyd's** 3:19
 29:23

**llp** 3:3,11
**lmi** 20:10,17,18
 20:20 21:5,6
 29:25
**logan** 3:5
**london** 3:19,20
 29:23,23,24
 33:24
**long** 28:1
**look** 13:21
 49:16 55:9
 57:5,10
**looked** 9:15
**looking** 34:25
**los** 3:22
**loss** 52:18
**lot** 13:2 16:20
 21:20
**lots** 55:2
**love** 18:13
**loves** 20:25
 21:2
**loyalty** 12:10

**m**

**made** 10:5 11:1
 12:21 21:24
 29:8,9,10,15
 35:11 39:18
 52:2 53:23
**main** 19:16
 23:20 25:6
 38:25
**maintenance**
 40:22
**major** 41:18
**make** 8:8,16
 9:23 13:24

 15:5 18:25
 21:6 30:3,6,24
 33:4,11 34:7
 35:5 36:23
 42:8 47:23
 48:2 58:6,7
**makes** 10:25
 50:25
**marcus** 57:8
**market** 3:20
 29:23,24
**martin** 1:22
**massive** 13:8
**materialized**
 18:4
**materially**
 16:12
**matter** 1:5 7:4
 21:14 41:9
 46:21 47:7
 52:16 58:10
**matters** 41:2
**matthew** 5:2
 6:2
**maximize** 7:15
 10:7 12:8
**maximum**
 13:18
**mean** 16:25
 45:22,24 49:6
 53:5
**meaning** 38:7
**means** 8:1
**measure** 7:14
 10:9
**mediate** 21:23
 49:11

**mediating**
49:11
**mediation**
12:18 14:25
15:5 21:15,18
23:8 24:12,17
25:9,25 26:4
26:11,15,17,18
26:21,25 27:1
35:8 38:2,12
**mediators**
20:16 23:9
26:1,4,6
**meet** 55:15
56:15,21,24
57:16 58:3
**meeting** 47:11
58:2
**meetings** 40:23
**members**
37:25 47:17,18
**memory** 17:6
**mental** 17:6
**mentioned**
38:6 40:7 45:2
50:7,9
**merits** 53:1,18
**mersen** 45:8
**met** 19:16
42:16,16 57:11
**mg** 1:3
**michael** 5:15
6:2
**miller** 5:16
**minarovich**
5:17

**mindful** 36:13
41:7
**mineola** 59:23
**minutes** 46:20
**misleading**
16:12,16 23:17
**misrepresent...**
26:20 33:7
**missive** 37:6
**mitchell** 5:15
**mix** 48:24
**modify** 49:13
**moffitt** 5:18
**moment** 11:16
50:7
**monetize** 40:4
40:20
**money** 8:8,9,16
55:21
**monitor** 55:11
**month** 41:17
**months** 41:6
43:6,10 44:8
55:22,23
**moore** 4:13
54:6,7,14 55:7
55:9,16,18
56:1,4,12 58:9
**moriarty** 6:7
**morning** 9:14
36:23
**morris** 3:18
29:22
**motion** 2:1,7
7:5,12 9:8 10:9
12:4 13:25
15:2 16:10

20:13 23:2
25:7 26:24
33:2 34:13
39:6,8,22
40:13 49:17
50:7,11,13
52:1
**motions** 7:11
7:17,19 9:2,6
9:20 10:4
**motivated**
53:22
**move** 46:12
47:6
**moving** 40:22
41:19
**multiple** 14:5
27:6 37:5
42:14

**n**

**n** 3:1 7:1 59:1
**name** 50:3
**named** 38:23
**narrower**
51:11
**nasatir** 5:19
**nassau** 38:20
**nathaniel** 4:19
**need** 15:4 41:2
41:21 44:2
**needs** 9:2
44:14 47:20
56:9
**negotiate** 14:17
14:18 23:18
25:1 32:24
43:25

**negotiated**
28:14 45:19
**negotiating**
23:15 24:9
25:23
**negotiation**
24:19 57:14
**negotiations**
46:1
**neither** 18:2
**neutered** 24:13
**never** 27:6
30:13 43:12
44:12,17,25
46:7 49:3
**nevertheless**
18:3,22
**new** 1:2,13 4:4
4:11 9:24 16:7
16:19 19:3
30:11,15,19
39:14 40:15
42:5
**newman** 4:8
54:7
**nice** 36:2,3,10
50:6
**nicely** 51:1
**non** 31:14
**nora** 5:25
**normal** 17:6
**note** 42:1 44:6
**noted** 47:8
**notice** 41:10
52:23,24 53:1
**notion** 7:12
22:25 47:10

**november** 41:1
**nullity** 18:20
**number** 36:19
**numbers** 46:14
**nw** 3:13
**ny** 1:13 4:4,11
  59:23

**o**

**o** 1:21 7:1
  30:22 59:1
**o'clock** 41:4,12
**object** 20:6
  33:15
**objection** 32:9
  37:1 45:13
  49:5
**objections** 37:8
  48:13,23
**obligation**
  27:10 51:4,14
**obligations**
  51:17
**obtain** 8:11
  55:14 57:21
**obtained** 40:6
**obtaining**
  41:20
**obvious** 42:21
**obviously**
  12:22 42:13
**occur** 17:3
  27:6
**occurred** 17:2
**october** 21:19
  21:24 41:1
  49:10 59:25

**offered** 45:23
**offers** 38:13
**oh** 31:22 36:6
  56:3
**okay** 33:21
  35:22 37:17
  50:1 51:21
  53:7 55:1,20
  56:13,14,14,19
  56:22 57:10,19
  58:10
**old** 59:21
**once** 8:17 19:6
**ones** 34:17
  35:17
**ongoing** 41:21
  52:16,22
**opinion** 36:24
**opinions** 37:1,5
**opportunity**
  36:8
**opposition**
  19:11 31:16,19
**option** 32:10
**oranges** 51:18
**order** 2:1,8
  25:9 26:6,25
  44:16 49:17
  52:3
**orders** 53:9
**ordinarily** 8:2
  57:24
**oriented** 16:19
  29:14
**outcome** 49:2
**outside** 47:18

**outstanding**
  33:9
**overall** 11:6
  49:8
**overbroad**
  56:23
**overlap** 53:24
**overseen** 26:1
**overweening**
  8:7
**overwhelming**
  18:18
**own** 13:17
  33:15

**p**

**p** 3:1,1 7:1
**pa** 3:7
**pachulski** 4:1
  47:4
**page** 20:22
**pan** 11:4
**papers** 16:4
  18:20
**parameters**
  49:6 50:17
**parish** 8:15,18
  9:1 12:20
**parishes** 24:1
  24:20 37:13,19
  37:21,23 38:5
  42:20 43:2,4
  48:5,25 52:21
**parities** 37:22
**parker** 3:11
**part** 7:13,13
  9:3,19,25 10:1
  10:8,12,20

16:22 25:4,5
  38:20 47:8
  57:21
**partial** 10:4
**particular**
  47:11 52:19,20
  52:21
**particularly**
  11:3 16:20
  23:25 25:18
  37:17
**parties** 10:6
  11:5 24:2
  25:10 33:7
  47:21 48:25
  49:10 55:3
**parts** 9:4,7
**party** 46:3,7
**pass** 33:19 50:2
**past** 15:7
**path** 39:16
**pathway** 39:2
**patricia** 5:17
**patrick** 5:23
**pay** 10:10,10
  10:11 12:21,23
  13:8,12,13
  15:16 50:14
  51:4,8 52:15
  57:25
**paying** 44:19
**payment** 7:14
  7:15 8:5 13:7
**pays** 13:6,7
**peachtree** 3:13
**pending** 9:21
  34:14 37:18

people  44:2
  47:23
people's  8:9
perfect  15:17
period  41:25
  50:10
periods  42:2,3
perkinds  5:20
permanent
  40:22
permit  53:10
  57:21
permitted
  52:23
permitting
  37:6
person  26:12
  38:24
personally
  43:19
perspective
  30:6 37:21
pertaining
  52:16
philadelphia
  3:7
physically
  33:25
picked  23:11
  27:4
picture  21:3
place  18:10,12
  25:10 27:1
plainly  23:12
plaintiff  51:10
  51:23

plan  9:12,15
  23:23,25 24:5
  31:14,14,17,18
  32:12,16,20,25
  33:15 38:10
  40:3,10 41:22
  42:11,13,17,23
  45:19 47:23
  54:10 55:22
plans  33:15
  43:15 48:7
playing  11:7
pleading  37:1
  37:6,8 45:15
please  7:2 47:1
pled  16:11,12
plus  38:5 45:6
pm  1:16
point  8:24 9:5
  10:25 11:6,23
  13:5,10,24
  14:2,14,25
  18:1 19:16
  23:7 25:22
  26:16 27:3,25
  28:19 30:23,24
  31:23 33:4,5
  35:5 36:23
  37:11 48:2
  49:9 50:25
  53:23 54:10,14
pointed  27:10
  30:16 48:21
points  12:2
  16:2 30:3,7
  33:4,11 35:20
  47:6

policies  44:21
  50:8,14,19
  51:5,9 52:18
  52:19,20 54:18
  54:25 57:22
policy  55:25
policyholder
  51:10,17 55:12
policyholders
  10:16,18 14:17
  14:21
porzio  4:8 54:7
position  19:6
  24:10 29:8
poslusny  22:23
  28:6
possible  14:2
  21:4 58:7
possibly  26:2
post  51:1
potential  54:21
  54:23,25
potentially
  36:17,18 45:4
  57:18
power  7:18,21
  8:7,19 10:22
  12:3,17 54:11
powers  11:5
practice  11:4
  20:7 26:2
practices  21:14
prayer  22:9,10
precedent
  34:25
prefer  47:22

preferred
  24:19
prejudgment
  51:2 57:25
prejudice  49:5
  53:19
preparation
  40:21
present  4:15
  21:10 24:11
  33:25 52:2,14
  53:4
presentation
  9:18
presiding
  25:14
pretty  29:12
preventing
  35:10
price  40:16
primarily
  37:22
prior  38:3
private  11:14
  11:16,18 30:9
  30:17
probably  9:10
  9:21 11:12
  13:20
problem  13:14
  25:5
problems  14:9
procedure
  43:18,19
proceeding
  51:3,6 52:12

**proceedings** 10:6 26:7 58:17 59:4
**process** 23:8,9 24:12,17 25:9 25:9 26:1,9,15 27:1 43:17,25 44:12 45:15,20 45:24
**production** 2:9
**program** 16:22
**progress** 34:7
**prohibit** 23:14
**prompt** 41:5,5 41:11
**proof** 20:13
**property** 50:18 51:15 54:16,18 54:18,20 55:6
**proposal** 39:18
**propose** 33:15
**proposed** 23:10,25 24:14 31:14 32:16 38:4,10 50:22 52:3
**prosecute** 2:2 7:5 49:18
**protect** 7:13 9:8 53:18
**protection** 29:6 29:13 30:9
**prove** 26:19 27:23
**provide** 21:12 36:1 38:11 44:1 58:4

**provided** 30:12 38:10 50:6 52:24
**provider** 27:23
**publicly** 56:5
**purdue** 39:10 46:4
**purport** 16:14
**pursuant** 2:8 32:5
**pursue** 7:23 13:1 19:18,18 19:19 30:12,21
**pursued** 18:12
**pursuing** 12:12 18:7 40:4
**push** 12:14
**pushing** 8:1
**put** 7:19 25:10 55:10,21

**q**

**question** 9:19 21:21 32:13 42:11,17,19,20 46:9
**questions** 22:2 29:18 36:7
**quicker** 46:1
**quickly** 43:21 46:13
**quite** 37:5 41:1 44:22 50:25
**quote** 20:15

**r**

**r** 1:21 3:1 7:1 59:1

**rainer** 3:11
**raining** 36:5
**raised** 33:13 48:17
**raising** 48:11 54:14
**ranks** 53:19
**rapidly** 44:4
**rare** 35:1
**ratchet** 8:13
**rating** 41:20
**reach** 8:25 19:25 20:7 21:10,16 23:19 34:16 49:13
**reached** 20:18 20:19,19,20 28:3 44:7 48:3
**reaches** 8:17 20:3
**read** 9:11,13 30:25
**readings** 31:1
**real** 38:11 40:15
**reality** 31:9
**realize** 38:21
**really** 12:1 22:2 35:25 36:24 37:24 43:18 44:13,14 46:7 48:24 53:21 56:3
**rearrange** 58:3
**reason** 10:23 21:12 34:8 53:16

**reasonable** 35:16
**reasons** 23:20 25:7 50:16
**recall** 44:20
**receipt** 51:25
**receive** 43:21 51:22,24
**received** 13:19
**recently** 40:18
**recognize** 8:3
**recognizes** 15:17
**record** 58:14 59:4
**records** 20:16
**recover** 13:18
**recoveries** 8:12 8:14 46:1
**recovery** 43:22 44:2 55:1
**red** 14:16
**reduce** 13:6
**reducing** 13:7
**reed** 3:3 19:14
**refer** 29:24 38:6
**references** 17:7
**refine** 56:8
**refuse** 16:3
**regard** 24:10
**regarding** 52:18 57:15
**regime** 45:11
**regional** 38:20
**regulatory** 54:2

**rejected** 28:15
34:24
**related** 24:1
40:3
**relates** 51:3
54:16
**relating** 55:12
**relative** 10:21
11:5
**release** 45:7,14
46:7
**releasees** 38:4
38:10
**releases** 24:1
31:14,15 38:9
39:12,15 46:3
**relevance**
44:16
**relief** 9:20
19:20,22 22:9
22:10 52:2
**remails** 42:20
**remain** 15:19
44:20
**remaining**
37:20 38:10
40:20
**remains** 39:9
42:20 44:24
**remanded**
38:19 39:4
**remark** 36:15
**remember**
11:11,20 34:12
**remind** 39:8
**remiss** 48:1

**remote** 31:18
31:20
**repeated** 31:1
31:3
**reply** 22:14
26:10
**represent**
29:22 47:17
**representation**
34:3 44:19
**represented**
14:18,19 33:8
**representing**
14:19
**represents**
38:21
**repudiate**
27:18
**repudiated**
27:21
**repudiating**
28:23
**repudiation**
28:25 29:16
**request** 15:25
16:4 40:19
50:16 54:1
56:2
**requested**
19:20 51:25
53:17
**requests** 50:15
51:6 53:9 56:8
56:23
**require** 20:1,4
22:18 56:24

**requirements**
15:24 31:17
45:16
**requires** 41:4
41:10
**reread** 10:24
**researched**
30:10
**reserve** 44:11
**reserving**
10:15
**resolution** 8:17
8:22 13:15
18:17 43:17,25
45:20,23
**resolutions**
23:19
**resolve** 42:21
43:21
**resolved** 39:11
39:20
**resounding**
48:18
**resources** 40:5
43:11
**respect** 8:21
11:22 16:24
24:14 25:15,17
39:5 44:12
48:11 49:16
**respectfully**
56:1
**responded**
10:2
**response** 10:4
11:17 40:25

**result** 27:5
42:9 43:2
**resulted** 48:7
**results** 51:22
**retain** 50:17
**reveal** 12:18
**review** 36:7
45:14
**rhea** 4:21
**right** 7:2,23
11:14,16,19
13:20 15:22
19:11 23:10
24:3,8 25:2,8
26:12 27:5,22
30:9,17,22
33:15 43:3,12
46:10,18 51:24
54:19 58:10
**rightfully**
39:10
**rights** 10:15,16
10:18 21:9
**rise** 26:2
**river** 43:8
**road** 59:21
**robe** 11:21
**robert** 5:7
**roberts** 11:15
**rochester** 9:9
9:18 14:1,4,7
14:12 15:4,6
15:10 16:17
18:2,4 28:20
33:23 34:2,6
34:13 44:7
46:6

**rochon** 52:8
53:6 56:16
**rockville** 1:7
7:3
**roman** 1:7 7:3
**room** 50:2
**rosy** 21:3
**roten** 3:24
29:21,22 31:12
31:22 32:7,14
32:21 33:3,12
33:21 34:21
35:4,21
**royal** 42:1,3
**rule** 2:8 32:5
50:17
**rules** 23:12
43:18,19 51:11
**rulings** 37:14
**run** 23:9 46:4
54:1
**running** 49:7
**russell** 3:24
29:22

**s**

**s** 3:1 7:1
**safety** 39:9
**sat** 22:20 56:7
**satisfy** 55:25
56:10,18
**saw** 9:14
**saying** 14:5
19:4 24:11
30:4 31:2,4,5
31:25 41:10
**says** 22:15
30:19

**scenarios**
42:19
**schedule** 41:1
**scheduled** 26:5
40:23
**schedules**
21:19 58:3
**scheduling**
41:3
**scheme** 54:2
**schools** 40:8
**scope** 57:14
**scouts** 34:22
**seated** 7:2
**second** 9:24
13:24 14:1
17:4 26:16
27:3 30:14,24
39:16 40:1,11
**secondly** 44:11
**section** 30:8,13
30:15
**securities** 11:3
11:14
**see** 9:11 14:12
14:12 27:12
36:2,3 46:1
57:2,5
**seeking** 22:15
23:3,5 24:7
25:16 26:13,17
26:18 42:6
47:21 51:1
53:20,24
**seeks** 19:18,22
22:10 25:8
50:13

**seem** 32:23,23
**seems** 9:12
**seen** 9:10,13,21
44:25
**segue** 50:6
**seminary**
40:11,14
**sense** 11:3,4
18:4 19:1
**sensitive** 40:14
**sent** 10:3
**separate** 51:7
**separately**
38:23
**september**
1:15 39:2,7,25
**serious** 56:20
**serve** 39:9
**served** 46:16
**serving** 46:15
**sessions** 21:18
24:12 38:13
**set** 19:3 23:20
39:21
**settle** 10:19
16:14 32:1,3
**settled** 15:15
34:6,6,8
**settlement** 7:25
8:3 16:14 18:9
18:19 19:4,23
19:23 20:1,3,6
20:7,25 21:2,9
22:11,12,18,22
22:24 23:4,7,8
23:13,16 24:14
26:14 27:8,16

27:18,19 28:4
28:11,21,21,23
31:5,7,8 32:10
32:19,24 34:12
34:19 38:8
40:9,12,13
47:9,23 48:3
**settlement's**
35:2
**settlements**
15:11,16 21:16
27:20 34:9,18
36:15
**settling** 16:13
18:17
**shara** 5:1
**share** 42:22
44:6
**short** 50:5
**shortened**
41:10
**shortly** 40:13
**show** 19:17
**shows** 10:12
**side** 43:7 54:4
**sign** 27:13
**signature** 59:6
**silence** 48:18
**silent** 15:19
**simpler** 45:24
**simply** 12:5
15:18
**siobhain** 5:17
**sir** 31:12 36:6,6
**sit** 8:6
**sits** 38:19

situation   13:8
   18:13
six   55:22
skeptical   18:11
slightly   9:18
slome   5:21
small   38:3
smith   3:3 5:22
   19:14
soggy   36:4
solution   25:5
solutions   59:20
somebody   46:5
somewhat
   41:21 44:5
sonya   2:25
   59:3,8
soon   9:2
sophisticated
   25:25
sorry   12:1
sort   26:2,20
   31:1 51:11
sought   27:12
   56:8
sound   11:25
source   38:25
south   3:21
southern   1:2
   39:22
speak   19:15
   29:15 53:21
speaking   20:11
   20:16,17,17
speaks   48:11
   53:1

special   3:4 7:9
   19:14 50:4
specific   30:3
   58:7
specifically
   30:19
spectrum
   41:17,18
speedier   44:1
spend   48:8
square   3:5
stage   55:19
stages   7:20 8:4
stake   47:13
stand   12:9
standards   37:2
   37:6,8 45:15
standing   2:2
   7:5,12 9:8 12:4
   12:11 13:25
   14:10 15:23
   16:9 19:18
   21:13 25:15,17
   25:20 27:12
   30:12 40:7
   49:18 50:21,21
stang   4:1 47:4
start   8:18
   10:21 22:9
   30:4
started   34:25
starting   14:18
starts   8:19
state   7:15 9:22
   16:21 19:5
   29:5 30:20
   37:3,4,5,9,24

40:5,15 42:5
   42:16,19 43:2
   43:19 45:16
   46:15,15 47:11
   47:12,15,16
   49:1 54:2 55:1
stated   16:7
statement
   22:23,24 32:16
   54:9
statements
   56:4
states   1:1,11
status   52:9,11
   53:3
statute   29:6
   30:9,10,17,21
statutes   30:23
statutory   51:14
   51:16
stay   9:20
stayed   52:13
steinman   38:19
   38:24
step   24:11
stephen   5:4
stephenie   4:22
steps   8:2,20
stoneking   5:23
stop   14:23
   15:18 44:3
   58:13
stories   11:11
story   9:16
strategy   7:13
   9:3,20

straw   26:11
stream   40:2,2
streamlined
   43:17 47:24
street   3:6,13,21
strenuous
   31:19
strike   17:16,17
   17:23
strong   20:8
strongest   15:21
strongly   56:17
struck   17:20
subject   23:13
submission
   35:24 49:19
submitted
   32:17
substantial
   42:18 44:22
substantialist
   42:4
success   38:16
succinct   30:7
sue   21:14
suffolk   38:20
sugayan   5:24
suite   3:6,13,21
   4:10 59:22
sullivan   6:8
sum   49:13
summary   10:5
superintendent
   30:20
support   18:19
   23:11,24 24:4
   46:11

[supreme - trust]                                                                    Page 21

| | | | |
|---|---|---|---|
| **supreme** 11:15 46:4 | **talking** 9:17 20:9,10,10,21 | 34:12,14,22 36:15 38:14 | 36:1,12 46:19 |
| **sure** 12:15 17:10 24:23 37:3 42:8 | **targeted** 50:12 | 39:13,17 42:10 | **today's** 57:1 |
| | **tasked** 40:18 | 42:12 44:18,23 | **todd** 5:11 |
| | **tell** 52:9 55:8 55:23 | 44:24 45:12,13 | **told** 11:18 46:5 46:10 |
| **surely** 43:1 | | 47:19 49:6 | |
| **surprise** 12:19 25:18 | **telling** 28:10 | 50:25 51:15 | **tomorrow** 21:23 56:14 |
| **surprisingly** 39:1 | **ten** 11:12 | 54:8 56:23 | 57:7,12 58:3,8 |
| | **tendering** 39:19 | **third** 4:3 10:1 14:14 39:15 | **took** 24:25 31:1 35:14 |
| **survive** 37:9 | **term** 16:19 | 40:2 46:3,7 | **tools** 15:18 |
| **survives** 28:11 | **terms** 10:19 40:12 42:13 | 48:25 55:3 | **tort** 9:24 51:10 |
| **survivor** 48:14 | 52:19 56:6 | **thirds** 37:21 | **tossed** 55:20 |
| **survivors** 7:21 7:22 8:1,16 | **test** 56:23 | **thomas** 5:21 | **totally** 46:13 |
| 13:18 14:19 | **thank** 19:9 21:25 22:1,3,4 | **thought** 34:15 35:7,9 | **touch** 30:5 47:16 |
| 16:21,21 36:18 40:5 42:7,24 | 27:2 29:19 | **three** 3:5 23:20 25:6 37:18,25 | **town** 58:3 |
| 43:20 44:12 | 35:22,25 41:14 | 38:9 40:5 42:1 | **train** 57:3,4 |
| 45:22 46:1,9 | 47:2 54:5 58:9 | 50:9 55:22 | **transaction** 40:14 |
| 48:4,11 | **thanks** 57:5 58:15 | **thursday** 21:23 57:2 | **transactions** 38:7 40:6 |
| **sustained** 37:7 48:22 49:5 | **thee** 48:13 | **tim** 3:9 4:16 7:8 19:13 | **transcribed** 2:25 |
| **system** 9:24 | **theme** 11:6 | **time** 10:22 | **transcript** 59:4 |
| **t** | **theresa** 5:5 | 14:21 17:11 | **trial** 41:6 |
| **t** 59:1,1 | **thing** 11:20 15:7 41:19 | 19:9 20:16 | **trick** 35:18 |
| **take** 22:17 | **things** 11:1 | 40:14 50:5 | **tricked** 35:17 |
| 35:23 40:15 | 13:23 33:25 | 55:16,22 | **tried** 11:6 25:1 |
| 49:18,25 58:14 | 43:14 55:4 | **timely** 52:24 | **trigger** 57:18 |
| **taken** 44:13 | **think** 11:24 | **times** 14:5 | **trouble** 30:25 |
| **talk** 7:18 14:15 | 12:19 13:11 | 42:14 | **true** 21:8 23:22 |
| 14:21 21:7 | 14:2 16:11 | **timing** 32:15 | 45:17 59:4 |
| 26:7,8 35:19 | 17:4 18:15 | 33:2 | **trusha** 5:8 |
| 45:3 53:8 | 20:15 21:1,5,8 | **today** 7:11 | **trust** 13:1 |
| 56:16 | 23:6 24:13 | 14:3 23:2 | 40:22 42:9 |
| **talked** 33:23 | 28:2 32:23 | 24:23 31:3 | 45:9 47:23 |
| 37:15 45:11 | | | |

**[trust - wholeheartedly]**                                        Page 22

48:8

**try**  8:13 14:6
22:7 27:13
42:6,21 49:12

**trying**  8:11
12:5 14:1
21:16 25:4
31:23 32:1
33:4,5 35:5
57:5

**tuesday**  57:1

**two**  8:15 10:4,5
15:7 16:19
26:4 33:8,22
34:21,21 37:20
38:13,21 40:8
41:6 44:5
46:10,17 50:16

**type**  14:6,12
30:10

**typical**  51:17

**typically**  27:12

**u**

**u.s.**  1:23

**uday**  6:5

**uncertain**
17:13

**unclear**  45:9

**under**  7:15
11:14 15:15,24
16:7,19 29:5
30:13,17,21
35:24 39:5,6
49:18 50:14
51:5,8,11
55:14

**underlying**
53:2,19

**understand**  8:4
13:11 15:24
16:8 24:6
28:19 29:2,3
30:4 31:21,22
32:22 33:3
35:5 46:14,14
47:13 48:10
50:5,13,20
54:20 55:5
57:16

**understanding**
30:25 31:24
48:12

**understood**
48:20 49:20

**undertaken**
40:19 44:17

**underwriters**
3:19 29:23

**unhappy**  36:16

**unified**  47:19

**uninsured**  13:9
44:24

**united**  1:1,11

**universal**
34:16

**unjustifiably**
19:19

**unknown**
17:13

**unrealistic**
24:12

**unrelated**  51:7

**unripe**  17:1

**update**  38:3
58:5

**use**  21:13 23:6

**used**  16:19
35:15

**v**

**valenza**  5:25

**valuation**
44:13 48:12

**value**  41:24
45:1 48:18
50:8 54:20,21
54:22 55:2,5

**valve**  39:9

**various**  19:2

**veritext**  59:20

**veto**  21:9 24:8
25:8

**viable**  36:18,18
45:4

**vienna**  10:24

**view**  13:23
26:14 37:6
39:10 40:3
43:19 53:10

**vince**  6:8

**vis**  7:21,21

**vote**  31:17

**voted**  46:9

**votes**  32:17

**w**

**wait**  8:6,9

**waiting**  48:1

**want**  7:18 9:6
11:10 12:2,17

13:14,24 14:3
14:10 23:2
24:19 26:6,7,7
29:20 30:24
33:11,20 35:23
43:11,23 47:6
48:8 54:8,12
58:2

**wanted**  10:21
13:10 14:11
55:5

**wants**  21:17
44:9

**warner**  6:1

**washington**
57:4

**way**  20:7 25:18
26:22 36:4
38:23 41:24
44:1 56:22

**wayne**  5:2

**ways**  16:20

**we've**  8:10
10:1,4 16:7,11
16:12,17 29:6
30:19 42:16,16

**wearing**  11:21

**week**  10:3
38:13 40:23,24

**weeks**  10:23
49:14

**weigh**  52:10

**weiss**  6:2

**welcome**  47:3
58:16

**wholehearte...**
44:5

| | |
|---|---|
| **william** 5:9 | 57:16 |
| **willing** 21:6 | **york** 1:2,13 4:4 |
| 25:4 | 4:11 9:24 16:7 |
| **windup** 12:2 | 16:19 30:11,15 |
| **winsberg** 3:16 | 30:19 40:15 |
| 22:6,7,19 | 42:5 |
| 24:15,25 25:22 | **z** |
| 26:10 27:3,22 | **zero** 54:25 |
| 27:25 28:5,8 | **ziehl** 4:1 47:5 |
| 28:19 29:3,10 | **zipes** 6:4 |
| 30:8 | **zoom** 56:25 |
| **wish** 18:25 | 57:12 58:4,5 |
| 38:16 | 58:13 |
| **wished** 24:9 | **à** |
| **witnessed** 11:1 | **à** 7:21 |
| 16:17 | |
| **witnesses** 2:9 | |
| **wonder** 36:24 | |
| **words** 52:14 | |
| **work** 42:7 | |
| **worlow** 6:3 | |
| **wrangle** 44:25 | |
| **writing** 34:10 | |
| 43:22 | |
| **wrong** 17:5 | |
| 20:14,15 | |
| **wrote** 14:4,5 | |
| **x** | |
| **x** 1:4,10 | |
| **y** | |
| **year** 43:3 44:9 | |
| **years** 11:3,12 | |
| 14:18 15:7 | |
| 44:23 48:9 | |
| 50:9 52:19,22 | |
| 55:15,25 56:19 | |

# EXHIBIT B

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   United States Bankruptcy Court

12                   One Bowling Green

13                   New York, NY  10004

14

15                   December 19, 2023

16                   2:01 PM

17

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

Page 2

1    HEARING re Jones Day's Ninth Interim Application for

2    Allowance of Compensation for Services Rendered and

3    Reimbursement of Actual and Necessary Expenses Incurred

4    During Retention Period from June 1, 2023 to September 30,

5    2023 for Jones Day, Debtor's Attorney, period: 6/1/2023 to

6    9/30/2023, fee:$4,613,361.75, expenses: $53,593.33.  (Doc #

7    2647, 2673, 2686, 2731)

8

9    HEARING re Ninth Interim Application of Alvarez & Marsal

10   North America, LLC for Allowance of Compensation for

11   Services Rendered and Reimbursement of Expenses Incurred as

12   Restructuring Advisor to the Debtor During the Period June 1

13   , 2023 Through September 30, 2023 for Alvarez & Marsal North

14   America , LLC , Other Professional , period : 6/1 /2023 to

15   9/30/ 2023, fee:$706, 1 12.50, expenses: $13,823.51. filed

16   by Alvarez & Marsal North America, LLC . ( Doc # 2648, 2673,

17   2686, 2731)

18

19   HEARING re Ninth Application for Interim Professional

20   Compensation for Reed Smith LLP, Special Counsel, period:

21   6/1/2023 to 9/30/2023, fee:$1 ,010,870.50, expenses:

22   $153,662.18. filed by Reed Smith LLP. (Doc # 2649, 2670,

23   2686, 2731)

24

25   HEARING re Ninth Application for Interim Professional

1   Compensation for Professional Services Rendered and

2   Reimbursement of Expenses Incurred as Special Counsel to the

3   Debtor from June 1, 2023 through September 30, 2023 for

4   Nixon Peabody LLP. (Doc # 2650, 2670, 2686, 2731)

5

6   HEARING re Sixth Application for Interim Professional

7   Compensation for Services as Future Claims Representative

8   for Robert E. Gerber, Other Professional, period: 6/1/2023

9   to 9/30/2023, fee:$86,240.00, expenses: $448.41. filed by

10   Robert E. Gerber. (Doc # 2651, 2654, 2686, 2731)

11

12   HEARING re Ninth Interim Application For Allowance Of

13   Compensation And Reimbursement Of Expenses By Bums Bair LLP

14   As Special Insurance Counsel For The Period From June 1,

15   2023 Through September 30, 2023 for Bums Bowen Bair LLP,

16   Creditor Comm. Aty, period: 6/1/2023 to 9/30/2023,

17   fee:$516,604.80, expenses: $17,357.31. filed by Bums Bowen

18   Bair LLP. (Doc # 2652, 2654, 2686, 2731)

19

20   HEARING re Sixth Application for Interim Professional

21   Compensation for Services as Counsel to Future Claims

22   Representative for Joseph Hage Aaronson LLC, Other

23   Professional, period: 6/1/2023 to 9/30/2023, fee:$9,810.00,

24   expenses: $0. (Doc # 2653, 2654, 2686, 2731)

25

Page 4

1    HEARING re Informal Conference Request of the Committee re

2    Production of Documents

3

4    HEARING re Ninth Interim Application For Allowance Of

5    Compensation And Reimbursement Of Expenses By Berkeley

6    Research Group, LLC As Financial Advisor For The Period From

7    June 1, 2023 Through September 30, 2023 for Berkeley

8    Research Group, LCC, Other Professional, period: 6/1/2023 to

9    9/30/2023, fee:$318,659.00, expenses: $4,230.36. filed by

10   Berkeley Research Group, LCC. (Doc No. 2661, 2685, 2686,

11   2731)

12

13   HEARING re Sixth Application for Interim Professional

14   Compensation for services rendered and reimbursement of

15   actual and necessary expenses incurred for Forchelli Deegan

16   Terrana LLP, Special Counsel, period: 6/1/2023 to 9/30/2023,

17   fee:$9,495.00, expenses: $26.65. filed by Forchelli Deegan

18   Terrana LLP. (Doc # 2663, 2686, 2731)

19

20   HEARING re Ninth Interim Application For Allowance Of

21   Compensation And Reimbursement Of Expenses By Bums Bair LLP

22   As Special Insurance Counsel For The Period From June 1,

23   2023 Through September 30, 2023 for Bums Bowen Bair LLP,

24   Creditor Comm. Aty, period: 6/1/2023 to 9/30/2023,

25   fee:$516,604.80, expenses: $17,357.31. filed by Bums Bowen

Page 5

1   Bair LLP. (Doc # 2662, 2665, 2686, 2731)

2

3   HEARING re Ninth Interim Application For Allowance Of

4   Compensation And Reimbursement Of Expenses By Pachulski

5   Stang Ziehl & Jones LLP As Counsel To The Official Committee

6   Of Unsecured Creditors For The Period From June 1, 2023

7   Through September 30, 2023 for Pachulski Stang Ziehl & Jones

8   LLP, Creditor Comm. Aty, period: 6/1/2023 to 9/30/2023,

9   fee:$3,933,595.25, expenses: $880,996.95. filed by Pachulski

10   Stang Ziehl & Jones LLP. (Doc # 2664, 2665, 2686, 2725,

11   2726, 2731)

12

13   HEARING re Ninth Application for Interim Professional

14   Compensation Quarterly Report For June 2023 through

15   September 2023 for Sitrick And Company Inc., Debtor's

16   Attorney, period: 6/1/2023 to 9/30/2023, fee:$22,244.00,

17   expenses: $0.50. (Doc # 2666, 2686, 2731)

18

19   HEARING re Amended Third Application for Interim

20   Professional Compensation for Lerman Senter PLLC, Special

21   Counsel, period: 6/1/2023 to 9/30/2023, fee:$6,247.50,

22   expenses: $0. (Doc # 2680, 2686, 2721, 2731)

23

24   HEARING re Corrected Motion Of The Official Committee Of

25   Unsecured Creditors Pursuant To Sections 105, 305 and 362 Of

1    The Bankruptcy Code To Permit Proceeding With Certain State

2    Court Actions And Temporary Suspension Of The Chapter 11

3    Case. (Doc# 2677 to 2679, 2681, 2710, 2711, 2712, 2713,

4    2727, 2729, 2730)

5

6    HEARING re Adversary proceeding: 20-01226-mg The Roman

7    Catholic Diocese of Rockville Centre, Ne v. ARK 320 DOE, et

8    al. Doc# 204 Notice of Hearing /Notice of Status Conference

9    in Connection with Discovery (related document(s)59)

10

11   HEARING re Doc# 2734 Notice of Agenda / Amended Agenda for

12   Matters Scheduled for December 19, 2023 at 2:00 p.m.

13   (Prevailing Eastern Time) (related document(s)2731)

14

15   HEARING re Doc# 2736 Notice of Agenda / Second Amended

16   Agenda for Matters Scheduled for December 19, 2023 at 2:00

17   p.m. (Prevailing Eastern Time) (related document(s)2734)

18

19   HEARING re Doc# 2735 Notice of Hearing /Notice of Status

20   Conference in Connection with Discovery

21

22   HEARING re Informal Conference Request. (Doc ## 320, 794,

23   2732)

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 7

```
1    A P P E A R A N C E S :

2

3    NIXON PEABODY LLP

4        Attorneys for Nixon Peabody LLP

5        55 W 46th St

6        New York, NY 10022

7

8    BY:  CHRIS DESIDERIO

9

10   PACHULSKI STANG ZIEHL & JONES LLP

11       Attorneys for the Committee

12       780 Third Avenue, 34th Floor

13       New York, NY 10017

14

15   BY:  KAREN DINE

16

17   JONES DAY LLP

18       Attorneys for the Debtor

19       250 Vesey Street

20       New York, NY, 10281

21

22   BY:  ERIC P. STEPHENS

23       TODD GEREMIA

24

25
```

Page 8

```
 1   BURNS BAIR LLP

 2        Special Insurance Attorneys for the Committee

 3        10 E. Doty Street, Suite 600

 4        Madison, WI 53703

 5

 6   BY:  JESSE BAIR

 7

 8   PACHULSKI STANG ZIEHL JONES LLP

 9        Attorneys for the Committee

10        10100 Santa Monica Blvd., Suite 1300

11        Los Angeles, CA 90067

12

13   BY:  JAMES I. STANG

14

15   FORCHELLI DEEGAN TERRANA

16        Attorneys for the Debtors

17        333 Earie Ovington Boulevard, Suite 1010

18        Uniondale, NY 11553

19

20   BY:  GERARD R. LUCKMAN

21

22

23

24

25
```

**Page 9**

```
 1   LERMAN SENTER PLLC
 2        Attorneys for
 3        2001 L Street NW, Suite 400
 4        Washington, DC 20036
 5
 6   BY:  STEPHEN CORAN
 7
 8   REED SMITH LLP
 9        Special Insurance Counsel to the Debtor
10        599 Lexington Avenue
11        New York, NY 10022
12
13   BY:  AARON JAVIAN
14
15   UNITED STATES DEPARTMENT OF JUSTICE
16        Attorneys for the U.S. Trustee
17        201 Varick Street, Suite 1006
18        New York, NY 10014
19
20   BY:  GREG M. ZIPES
21
22
23
24
25
```

Page 10

1   JONES DAY LLP

2        Attorneys for the Debtor

3        250 Vesey Street

4        New York, NY, 10281

5

6   BY:  CORRINE BALL

7        ANDREW BUTLER

8

9   PACHULSKI STANG ZIEHL & JONES LLP

10        Attorneys for

11        780 Third Avenue, 34th Floor

12        New York, NY 10017

13

14   BY:  JAMES I. STANG

15

16   PFAU COCHRAN VERTETIS AMALA PLLC

17        Attorneys for Pfau Cochran Vertetis Amala PLLC

18        403 Columbia Street, Suite 500

19        Seattle, WA 98104

20

21   BY:  JASON P. AMALA

22

23

24

25

Page 11

1    ALSO PRESENT:

2

3    CHARLES MOORE

4    PAUL SHIELDS

5    ROBERT E. GERBER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 12

1                  P R O C E E D I N G S

2               THE COURT:  Please be seated.  All right.  Good

3     afternoon.  We are obviously here in the Roman Catholic

4     Diocese of Rockville Centre, 20-12345.  I have the amended

5     agenda.

6               MR. BUTLER:  Good morning, Your Honor.  Andrew

7     Butler with Jones Day for the Debtor.

8               Your Honor, we filed a second amended agenda --

9               THE COURT:  We have the second-amended agenda.

10              MR. BUTLER:  Docket Number 2736.  We apologize for

11    the late addition, Your Honor.

12              The first items set on that hearing agenda are the

13    interim fee applications.  We have two items after that,

14    both discovery items, and one of which will be handled by my

15    colleague, Mr. Stephens, and the other I believe by Ms. Dine

16    from the Pachulski firm.  And then the Committee test case

17    motion after that.

18              On the interim fee applications, Your Honor, two

19    points to begin with.  One, a global update, and then one,

20    an update for the Jones Day fee application in particular if

21    we go there next in the order of the agenda.

22              The global update -- and I'm happy for Mr. Zipes

23    to confirm this as well -- but my understanding is that Mr.

24    Zipes' office, the Office of United States Trustee, has

25    requested a ten percent continuing holdback for this fee

Page 13

1    application going forward.  And my understanding is that all

2    professionals have agreed to that consensually.  And if Mr.

3    Zipes has anything to add, I'm happy to have him do so.

4            THE COURT:  Well, Mr. Butler, we can talk about

5    this a little bit later.  But not including this fee

6    application that I have in front of me, series of fee

7    applications today, I was strongly inclined to have a 50

8    percent holdback going forward.  How long this is going

9    forward, I don't know.  But this case is in terrible shape.

10   The Debtor has quite openly said it can't afford to continue

11   on.  Fees are out of control.  And I will come to this

12   after, but I came to the bench having in mind beginning with

13   the next round of fee applications a 50 percent holdback.

14           So if you want to go ahead with the applications,

15   we can.

16           MR. BUTLER:  Thank you, Your Honor.  That was the

17   global update on the holdback and then a specific update on

18   the Jones Day fee application.

19           Your Honor, often the United States Trustee

20   reviews our applications, discusses those interim

21   applications with us.  We did that again on this round.  The

22   United States Trustee's Office raised a number of issues

23   with us.  We reviewed those issues with them, discussed

24   them, reviewed them internally, and have agreed to an

25   $18,000 consensual reduction with the Office of the United

Page 14

1    States Trustee for the Jones Day interim fee application.

2    That's for fees, not costs or expenses.  We're thankful that

3    we're able to work that out with the Office of the United

4    States Trustee without a formal objection.  I wanted to

5    recognize that and state so on the record.

6              THE COURT:  Mr. Zipes, if you could limit it to

7    the discussion of the Jones Day application, but I would

8    like to hear from you about your office's review of this

9    very large group of applications generally.  We'll obviously

10   go through them individually.  I have some questions on

11   several of them.  So go ahead, Mr. Zipes, if you would.

12             MR. ZIPES:  Your Honor, as this Court is aware,

13   there's approximately nine interim fee applications that

14   have been filed in this case, and not for every professional

15   because some had not put in fee applications for every

16   interim --

17             THE COURT:  Yeah.  There were some where the

18   applications were small, it was more cost-effective to hold

19   off and -- with some of them.

20             MR. ZIPES:  Yes.  And, Your Honor, we did have

21   this discussion about the holdback.  And I think that the

22   professionals are reluctantly agreeable to --

23             THE COURT:  I'm sure they're not agreeable to the

24   50 percent, but that's my -- well, we can talk about that

25   after.

Page 15

1          MR. ZIPES:  But there are statements on the

2     record, as this Court noted.  There's a cash problem and

3     this case has been going on.  So I don't think, Your Honor,

4     we specifically discussed going forward, but it is a topic

5     of concern.

6          THE COURT:  Very much.

7          MR. ZIPES:  Yes.  And, Your Honor, we do review

8     interim fees and try to get comments, but we don't

9     necessarily have comments to every fee application for every

10    hearing.  So we try to get comments as we can.  And this

11    Court doesn't necessarily get the benefit of some of the

12    back and forth, and probably rightfully so.  But, Your

13    Honor, we do review fee applications for the standard things

14    like vague entries and time entries that don't comply with

15    the U.S. Trustee guidelines and case precedent in this court

16    and in the circuit.

17         So, Your Honor, we do reserve our rights until the

18    end of the --

19         THE COURT:  The end of the case, yes.

20         MR. ZIPES:  -- case to review legal fees and

21    professional fees generally.  And in some cases, it turns

22    out that the discussion is subsumed by lack of funds in the

23    case as well.  So there's a certain balance on how much to

24    review on an interim basis versus --

25         THE COURT:  Let me just ask you.  Mr. Butler has

Page 16

1    indicated the consensual agreement of Jones Day for an

2    $18,000 reduction.  Are there other applications that we're

3    going to deal with today as to which there are also

4    consensual adjustments?

5         MR. ZIPES:  Your Honor, there aren't any that we

6    brought to any professional's attention, but we are

7    reviewing them.  And we sort of send the emails not

8    necessarily connected to specific hearings saying we looked

9    at this fee application and had X, Y, and Z issues.  So

10   professionals have been getting that throughout the

11   bankruptcy case.

12        THE COURT:  Okay.

13        MR. ZIPES:  I don't know if that answers your

14   question.

15        THE COURT:  I think it does for now.  All right.

16   Mr. Butler, so the Jones Day application sought fees of

17   $4,613,361.75 and expenses of $53,593.33.

18        MR. BUTLER:  Yes, Your Honor.

19        THE COURT:  And you've indicated that your firm

20   has agreed to an $18,000 reduction in the fees.

21        MR. BUTLER:  Yes, Your Honor.  As well as a ten

22   percent holdback.

23        MR. BUTLER:  And the ten percent holdback.  Does

24   anybody wish to be heard with respect to the Jones Day

25   application?

Page 17

1            All right, it is approved with those changes.

2            MR. BUTLER:  Thank you, Your Honor.

3            THE COURT:  So the next on my list, may not be the

4    same as yours, is the Alvarez & Marsal application.  Is

5    there someone who is going to speak to that?  I should have

6    said the Jones Day application is ECF 2647.  The Alvarez

7    application is 2678.

8            MR. MOORE:  Good afternoon, Your Honor.  Charles

9    Moore for Alvarez & Marsal.

10           THE COURT:  And so the application was for fees of

11   $706,112.50 and expenses of $13,823.51.

12           MR. MOORE:  That's correct.

13           THE COURT:  Just give me a second.  All right.

14   Does anybody else wish to be heard with respect to the

15   Alvarez application?

16           All right.  It's approved subject again to the ten

17   percent holdback for this one.  Okay?

18           MR. MOORE:  Thank you, Your Honor.

19           THE COURT:  Thank you very much.  Next I have is

20   Reed Smith.

21           MR. JAVIAN:  Good afternoon, Your Honor.  Aaron

22   Javian for Reed Smith, LLP.  Can you hear me?

23           THE COURT:  Yes, I can.  And the Reed Smith

24   application is ECF 2649.  It seeks fees of $1,010,870.50 and

25   expenses of $22,910.93.  It also seeks fees and expenses for

Page 18

1    Debtor's consulting expert, KCIC LLC, of $130,751.25.   Go

2    ahead if you want to be heard.

3              MR. JAVIAN:   That's correct, Your Honor.   I don't

4    have anything else to add to that other than that I am

5    available if Your Honor has any questions about the fee

6    application.

7              THE COURT:   Anybody else wish to be heard?   All

8    right.

9              So both the Reed Smith application and the KCIC

10   LLC applications are approved.

11             MR. JAVIAN:   Thank you, Your Honor.

12             THE COURT:   All right.   Next on my list is Nixon,

13   ECF 2650.   And Nixon Peabody is -- their application is at

14   ECF 2650.   It seeks fees of $273,698.50 and expenses of

15   $647.59.   Is someone to speak to the Nixon Peabody

16   application?

17             MR. DESIDERIO:   Good afternoon, Your Honor.   Chris

18   Desiderio from Nixon Peabody.   And that accurately reflects

19   the fee application for this period.

20             THE COURT:   All right.   Does anybody else wish to

21   be heard with respect to the Nixon Peabody application?

22             It's approved as well.

23             MR. DESIDERIO:   Thank you, Your Honor.

24             THE COURT:   Next on my list is the sixth interim

25   application of the future claims representative.   It's at

Page 19

```
 1    ECF 2651 and it seeks fees of $86,240 and expenses of

 2    $448.41.  Mr. Gerber?

 3              MR. GERBER:  Yes.  That's correct, Your Honor.

 4    And I rest on the motion unless the Court has questions.

 5              THE COURT:  Does anybody wish to be heard with

 6    respect to the future claims representative application?

 7              All right.  It's approved.

 8              Next is the sixth interim fee application of

 9    Michael R. Hogan.  It's at ECF 2652.  Who is going to

10    present on that?

11              MR. GERBER:  I'm not sure if Mr. Hogan was able to

12    get on, Your Honor.  But the $7,990 that the Court mentioned

13    is the correct figure.  He received no payments on account

14    of monthly fee statements that weren't large enough to

15    warrant the filing of.

16              THE COURT:  Right.  So this one is, as I said, at

17    ECF 2652.  He is the financial advisor to the future claims

18    representative.  And again, it's $7,990 in fees and no

19    expenses.  Anybody wish to be heard?

20              All right.  It is approved.

21              Next is the sixth interim fee application of

22    Joseph Hage Aaronson LLC.  It's at ECF 2653.  It seeks fees

23    of $9,810 and no expenses.

24              Mr. Gerber?

25              MR. GERBER:  Yes.  I will speak on the firm's
```

Page 20

1    behalf on that.  The Court's understanding of the figures is

2    correct.  And once again, I will rest on the motion unless

3    the Court has any questions.

4              THE COURT:  All right.  Does anybody wish to be

5    heard with respect to that application?

6              All right, it is approved as well.

7              Next is the ninth interim fee application of

8    Berkeley Research Group LLC.  It's at ECF 2661 and it seeks

9    fees of $318,659 and expenses of $4,230.36.  Who is going to

10   speak to that?

11             MR. SHIELDS:  Good afternoon, Your Honor.  This is

12   Paul Shields from Berkeley Research Group.  And that does

13   accurately reflect the amount sought.

14             THE COURT:  Does anybody else wish to be heard

15   with respect to the Berkeley Research?  All right.  It's

16   approved as well.

17             MR. SHIELDS:  Thank you, Your Honor.

18             THE COURT:  Thank you.  Next is the sixth interim

19   fee application for Forchelli Deegan.  And it's at ECF 2663

20   and it seeks fees of $9,495 and expenses of $26.65.

21             MR. LUCKMAN:  Good afternoon, Your Honor.  Gerard

22   Luckman, Forchelli Deegan Terrana, special counsel to the

23   Debtor.  That accurately reflects the application, Your

24   Honor, unless Your Honor has any questions.

25             THE COURT:  Anybody else want to be heard with

Page 21

1    respect to that?

2              All right.  It is approved as well.

3              MR. LUCKMAN:  Thank you, Your Honor.

4              THE COURT:  Next is the ninth interim application

5    of Pachulski Stang Ziehl & Jones LLC as counsel to the

6    Committee.  It's at ECF 2664 and it seeks fees of

7    $3,933,595.25 and expenses of $880,996.95.  Mr. Stang?

8              MR. STANG:  Good afternoon, Your Honor.  James

9    Stang, Pachulski Stang Ziehl & Jones, appearing for the

10   firm.

11             THE COURT:  I have an issue that -- well, first

12   let me see whether anybody else wishes to be heard with

13   respect to the Pachulski application.  Mr. Zipes?

14             MR. ZIPES:  Your Honor, I don't know if it's

15   appropriate at this time, but I did note that there was a

16   requirement that a letter be sent with expenses related to

17   the litigation, and that was sent to my office.  I just

18   wanted to make the Court aware.

19             THE COURT:  Thank you, Mr. Zipes.

20             I have -- for the most part, Mr. Stang, I don't

21   have a question except for one issue.  And it involves your

22   firm and Burns Bair as well.  And I will deal with that

23   issue.  So I'm not giving my approval of the application

24   yet.  Here's -- let me lay out this issue.

25             The Court was presented with a group of motions

Page 22

```
1   seeking to lift the automatic stay filed by certain

2   claimants for an order pursuant to 362(d) and Bankruptcy

3   Rule 4001(a) to allow the claimants to make settlement

4   demands on the diocese.  The Committee filed a joinder,

5   which is at ECF 2488.

6            I heard argument on those motions, which were

7   really carried by the committee, on October 23rd, 2023 and

8   entered an order denying the motions on October 24th, 2023.

9   Mr. Burns was the one who argue the motion here.

10           When I reviewed the fee applications from the firm

11  and Burns Bair, I tried as best I could to identify the fees

12  that were charged for the motions that -- I mean the gist of

13  the motions was seeking to compel the Diocese -- allow the

14  Claimants to provide a demand, a settlement demand for the

15  Diocese to give to the insurers.  And I would describe the

16  strategy, the motion, as concocted, misguided strategy by

17  the committee.  An absolute waste.  I denied the motion from

18  the bench.  I entered the order the next day.

19           When I asked the question what prevents you from

20  having your clients make -- having the Claimants make a

21  demand?  And the answer was nothing.  I'm still waiting to

22  see that.  I don't know.  There have been some updates as to

23  whether or not those demands have ever been made.

24           MR. STANG:  I can give you that --

25           THE COURT:  Just let me finish.  I'm venting.
```

Page 23

1              It was an utter, complete waste of time.  And

2      while you didn't carry the laboring -- when I say you, your

3      firm didn't carry the laboring oar on it, I tried to

4      identify what if any fees your firm was charging in

5      connection with that motion -- motions.  There were separate

6      motions filed by claimants, but the real gist of it was the

7      joinder filed by the Committee, and Mr. Burns argued that.

8              So I don't know how much responsibility you and

9      your firm bear for that, whether we charged anything in

10     connection with it.  I don't know whether you can tell me

11     offhand or not.

12             MR. STANG:  I would have the breakdown for Your

13     Honor, but we will attempt to do that.

14             THE COURT:  So I don't know, is Mr. Burns here or

15     is he on the...

16             MR. STANG:  Mr. Bair is here.

17             THE COURT:  Mr. Bair is here.  So you'll bear my

18     ire when you stand.

19             You know, whatever you may think, I think I've

20     bene pretty reserved throughout this case.  There's lots of

21     difficult issues.  This was a joke.  And in going through

22     your firm's fees, you identified $84,366.60.  That doesn't

23     include the argument, not that the argument was really

24     extensive, because the fee period cut off in September and

25     we didn't -- the argument had gotten adjourned and it got

Page 24

1   pushed so it was made in October.  So I don't think I've

2   seen the last of what you would dare put in a fee

3   application for it.

4           But I am appalled.  There are so many difficult

5   issues in this case that you've all worked so hard for.  And

6   it costs a lot of money.  That's not one of them.  It wasn't

7   even close.  So you stand there to bear the brunt of my

8   diatribe about it.  And Mr. Burns made the argument and, you

9   know, he's special insurance counsel.

10          Well, I can tell you what I'm going to do now is

11  I'm ordering the two firms to submit declarations by January

12  3rd that specifically identify the time entries and fee

13  amounts sought in connection with the motions.  And I

14  couldn't parcel it from your firm, Mr. Stang.  As best I

15  could tell form Burns Bair, it was $84,366.  It's being

16  disallowed.  I've already prepared a written order I may

17  mark up a little bit explaining what the standards are that

18  the Court is supposed to apply in reviewing fee

19  applications.

20          Mr. Stang, this obviously has been a really

21  expensive case.  On the whole I think your firm has done

22  excellent work.  And you had the misfortune of standing up

23  first to hear me vent about it.

24          MR. STANG:  Your Honor, both of us represent the

25  Committee.  So I'm not going to put this all on Mr. Bair.

Page 25

1           Our time is what it would be for the declaration.

2     But --

3           THE COURT:  Well, you're not going to charge for

4     the declaration.

5           MR. STANG:  I'm not going to sidestep answering

6     your -- or responding to what you said just because Mr. Bair

7     is special insurance counsel.

8           MR. BAIR:  And I'm happy to respond.

9           THE COURT:  Yeah, and I'm going to have you.

10          So, look, I'm not going to give final approval of

11    your fee application until I know how much of anything needs

12    to be deducted from it.  Or you could talk to Mr. Zipes if

13    there is an amount and agree on a voluntary reduction for

14    this.  And let me be clear, anything having to do with that

15    motion is coming out, is not getting approved.  And I

16    suspect because they are special insurance counsel that they

17    have -- you know, it -- Mr. Burns thought it was a great

18    motion.  Okay, I'm finished venting.

19          MR. STANG:  Your Honor, the professionals' concern

20    was that making a demand upon the Debtor -- and by the way,

21    at some point I think the Debtor said the Committee made the

22    demands.  The Committee did not make the demands.

23          THE COURT:  All right, the claimants.

24          MR. STANG:  It was state court counsel made the

25    demands.  But in speaking with them, it was part of a larger

Page 26

```
1    strategy on how to put pressure on the insurance companies.

2    We felt -- we were concerned that because the insurance

3    policies are property of the estate that putting that demand

4    on the Debtor, who we hope has communicated with its

5    carriers as to whether they're going to pay those demands

6    and if not, why not, could be a violation of the stay.

7              Now, Your Honor, I understand -- I was at the --

8    if I wasn't at the hearing, I was attending it.  I heard

9    what you had to say.

10             THE COURT:  You were on the screen.

11             MR. STANG:  We've been reminded of your

12   characterization of the motion by Debtor's counsel.  You are

13   going to see that in a slide presentation they're going to

14   put on today.  But we had a legitimate concern.  And you

15   didn't.

16             THE COURT:  So why didn't you just come and say

17   that, Judge, we think that -- and I said it at the hearing.

18   I asked the question.  I said is there anything that stops

19   you from making a demand, a settlement demand?  No, of

20   course the automatic stay doesn't stop you from making a

21   settlement -- they can ignore it.  They can do what they

22   want.

23             MR. STANG:  They could also seek sanctions against

24   us for violating the stay.

25             THE COURT:  For making a settlement demand?  I
```

Page 27

1   don't think so.

2            MR. STANG:  Well, a demand that was then going to

3   be conveyed to the carriers that could have affected

4   property of the estate given the nature of these policies.

5            THE COURT:  Well, if the Debtor receives a demand,

6   I think they're obligated under the policy to pass it on to

7   the insurance company.  I mean, it really isn't rocket

8   science.  I've had enough to say about this.

9            MR. STANG:  Okay.  Your Honor, we will submit the

10  declaration and --

11           THE COURT:  Let's put it this way.  The sooner you

12  submit the declaration, the faster I will approve your fees.

13           MR. STANG:  Given the time difference, accounting

14  will be working on it today.  Thank you, Your Honor.

15           THE COURT:  Okay.  Your turn.

16            So the ninth interim fee application of Burns Bair

17  LLP as special insurance counsel to the Unsecured Creditors'

18  Committee.  It's at ECF 2662.  It seeks fees of $516,604.80

19  and expenses of $17,357.31, which reflects a reduction of

20  $1,808.80 for two flights that were incorrectly included in

21  the September invoice.

22           MR. BAIR:  That's correct, Your Honor.

23           THE COURT:  So make your appearance and then

24  we'll...

25           MR. BAIR:  Yes, Your Honor.  Jesse Bair, special

1    insurance counsel on behalf of the Committee.  And Your

2    Honor correctly reported the figures.

3             THE COURT:  Well, when I -- when you say I

4    correctly reported the -- I correctly reported what your fee

5    application is.  I told you my clerks and I did the best we

6    could in trying to isolate out how much you were charging

7    for the joinder.  What it was a joinder.  And we saw it as

8    $84,366.60.  I don't know whether we missed something or put

9    something in there that we shouldn't have.

10            MR. BAIR:  I don't know offhand, Your Honor.  We

11   would have to take a look at that.

12            THE COURT:  Okay.

13            MR. BAIR:  I don't have a sense of -- that very

14   well could be accurate, Your Honor.

15            THE COURT:  Well, again, the order I'm going to

16   enter is going to require that you file a declaration by

17   January 3rd (indiscernible) Debtor, but...

18            MR. BAIR:  Your Honor, if I may could I have a

19   moment to lay the background of the motion?

20            THE COURT:  Sure.  You can.

21            MR. BAIR:  And I appreciate Your Honor's ruling.

22            THE COURT:  Well, I ruled on the motion right

23   away.

24            MR. BAIR:  Yes.

25            THE COURT:  It was the next day when I entered the

Page 29

```
1    order.  I was gentle about it at the time.  I've only had

2    steam coming out of my ears since, particularly by the fee

3    applications.

4              MR. BAIR:  Thank you, Your Honor.  By way of

5    background, we represent certain committees in these cases

6    around the country as special insurance counsel.  And so in

7    the Rochester Diocesan bankruptcy, the Committee in that

8    case served a number of demand letters.  There's one non-

9    settling insurer in that case.  And so as a way to hopefully

10   move that case forward towards potentially one day a global

11   resolution, the Committee there sent a series of demand

12   letters to that insurance company.  That insurance company

13   responded in part by asserting that the automatic stay

14   applied and that those letters were in violation of the stay

15   such that those demands were ineffective.

16              That issue was never brought before the Court, but

17   that was the response from the carriers.  And so --

18              THE COURT:  All you had to do was at one of the

19   many hearings in the case, Judge, we would like to serve a

20   demand -- or the claimants would like to serve a demand and

21   we're uncomfortable -- we had this experience in Rochester,

22   and I would have done exactly what I did when I heard the

23   motion.  First, I would have asked the Debtor -- I mean,

24   they said at that hearing make a demand.  You know?

25              MR. BAIR:  Thank you, Your Honor.
```

Page 30

1              THE COURT:  And we wouldn't have incurred that

2    $84,000-plus in fees on a worthless motion.

3              MR. BAIR:  I appreciate that, Your Honor.  After

4    the -- unfortunately, after the Rochester events took place,

5    a decision was made in the Syracuse case to seek relief.

6    Given CNA's position in Rochester, the Committee in Syracuse

7    wanted to ensure that the demands would be effective.

8              THE COURT:  Well, but the demand you made is to

9    the Debtor, not to the insurance company.

10             MR. BAIR:  Understood.  And we actually agree with

11   Your Honor's ruling that the stay doesn't prohibit these

12   demands.  But unfortunately in Syracuse, the judge in that

13   case ruled against the Committee and held that the automatic

14   stay did apply to prohibit the demands.  And so --

15             THE COURT:  A demand on the Debtor?

16             MR. BAIR:  Correct, Your Honor.  And so we lost

17   that decision unfortunately to some of the insurance

18   carriers.

19             And so after the Syracuse decision came out -- and

20   we had dialogue with the Debtor on this -- the Debtor had

21   the view, which turned out to be correct in Your Honor's

22   opinion, that the automatic stay didn't apply.  However, as

23   the Committee, we felt we were in a position --

24             THE COURT:  All you've got to do is ask me.  And I

25   would have turned to the Debtor and said do you have an

Page 31

1    objection to serving a demand on -- some of the demands on

2    here.  You said you did that and they told you no.  So

3    instead you spent $85,000 on a motion.

4            MR. BAIR:  Obviously we will abide by Your Honor's

5    ruling.  I just wanted to inform the Court about the

6    background that informed why this occurred.

7            So after the Syracuse ruling, we felt that if we

8    made demands, the insurance carriers would take the

9    position, which they did in the motions, that those demands

10   would violate the automatic stay and, as Mr. Stang pointed

11   out, potentially seek remedies as a violation of that and/or

12   state that the demands were ineffective.

13           In the insurance company's responses to our

14   motion, which were quite voluminous -- they filed a number

15   of them -- the Syracuse decision was attached, a transcript,

16   to those decisions.  And so again, Your Honor, we were

17   pleased with your ultimate decision that allowed the state

18   court counsel to ultimately send the demand letters.

19           THE COURT:  How many demand letters have been

20   sent?  Because I had asked about this at another hearing.

21   Well, we're still kind of working on it.

22           MR. BAIR:  So of the originally 38, a number of

23   them were Arrowood cases.  And so there are 14 LMI

24   interstate demands that have been sent to date.  We thought

25   there was one more, but we have now learned that the state

Page 32

```
 1    court lawyers were not able to connect with that client, so

 2    that one is still pending.  But there are 14 that have been

 3    sent.  The responses to those are to our knowledge currently

 4    due either at the end of this month or early January.  We

 5    don't have insight into what the Debtor has done, but we

 6    assume, acting as a reasonably prudent insured, they would

 7    have requested their carriers pay those demands.  And

 8    obviously --

 9              THE COURT:  Well, they don't want to blow their

10    coverage, so they're going to make sure that they let the

11    insurers know there's a demand.

12              MR. BAIR:  We would hope so, Your Honor.  And so

13    obviously we are respectful of Your Honor's decision.  We

14    will of course abide by that.  But I did want to provide the

15    background of the reason the Committee felt that we were

16    forced to bring the motion was the negative decision in the

17    other New York Diocesan case that we -- at least at the time

18    as the Committee did feel comfortable, you know, not seeking

19    relief given the order where we lost.  Obviously Your Honor

20    had a different view of that.  And we are grateful we were

21    able to send the demands.  We were not able to send them in

22    Syracuse.  And so that's why we filed the motion.  Your

23    Honor will give that justification whatever weight he deems

24    appropriate.

25              THE COURT:  I'm telling you, you're not getting
```

Page 33

1    paid for the motion.

2            MR. BAIR:  Okay, understood.

3            THE COURT:  This case obviously was before Judge

4    Chapman before it moved in front of me.  One of the things

5    I've always tried to make clear -- and we've had a number of

6    status Zoom conferences -- if you have an issue and you

7    can't -- first approach the Debtor.  And if you agree, well,

8    we'll put it in a letter.  And if you can't, you can request

9    a conference.  And I'll usually have within a day or two and

10   resolve it.  And if I heard both sides, if the Debtor took

11   the position no, they can't do this and your position was

12   you should, (indiscernible) the motion.  Okay.

13           MR. BAIR:  I don't have anything further unless

14   Your Honor has any questions.

15           THE COURT:  This is -- you know, it was a big

16   enough piece of the total fee application that was filed

17   that maybe got me on a bad day.  But it just -- it's kind of

18   been chewing at me for awhile.

19           Okay, Mr. Stang?

20           MR. STANG:  Your Honor, I just wanted to

21   supplement or emphasize something Mr. Bair said.  It would

22   be one thing where the Debtor says it's okay, we're not

23   going to assert a stay violation.  But the insurance

24   carriers said this is essentially null and void because it

25   violates the stay.

Page 34

1          THE COURT:  Ask for a conference and we'll have a

2    quick conference and you'll get a quick answer and you won't

3    spend $85,000 writing a motion.

4          MR. STANG:  I just wanted to point out this isn't

5    a two-party issue.  It's a multi-party issue with insurance

6    companies who said --

7          THE COURT:  I'm the judge.

8          MR. STANG:  You are the judge.  And we communicate

9    to you through motions.  And occasionally --

10         THE COURT:  Well, yes, with conferences.  And

11   we've had conferences.

12         MR. STANG:  I understand.  I would be stunned and

13   surprised --

14         THE COURT:  I do conferences -- everybody should

15   know, I think other than one session where everyone agreed,

16   the U.S. Trustee was here and we had an off-the-record

17   discussion at some point.  But otherwise, everything else is

18   on the record.  That's my typical...

19         MR. STANG:  I would be loath to speculate whether

20   the insurance carriers would ask you for permission to brief

21   the issue of whether that demand was enforceable when the

22   Debtor communicated it to them without stay relief.  But

23   Your Honor --

24         THE COURT:  Look, as you know, I wasn't a

25   bankruptcy lawyer.  But I did practice law for 34 years as a

Page 35

1   litigator and I actually spent -- it wasn't the majority of

2   my time, but was involved in insurance coverage litigation,

3   and usually on the side of the insurers.  So I am not a

4   total neophyte when it comes to insurance coverage issues.

5   Enough said on the subject.

6          MR. STANG:  Okay.  Thank you, Your Honor.

7          MR. BAIR:  Anything further, Your Honor?

8          THE COURT:  No.

9          MR. BAIR:  Thank you.

10         THE COURT:  Next is the sixth interim fee

11  application of Forchelli Deegan Terrana LLP.  It's at ECF

12  2663.  It's application fees of $9,495 and expenses of

13  $26.65.  Is there a representative of the firm?

14         MR. BUTLER:  Your Honor, Andrew Butler with Jones

15  Day for the Debtor.  I believe Mr. Luckman already addressed

16  this with Your Honor.

17         THE COURT:  Yeah.  It was -- it's approved.  It's

18  approved.  Let me get back to where I was.

19         Mr. Stang, from my notes just to come back to -- I

20  don't know whether your firm has fees.  What raised

21  questions for me is I didn't know whether it is included in

22  this category.  You have a summary of hours and fees

23  organized by task.  And for insurance litigation it was

24  $111,980.50.  (indiscernible) insurance litigation not

25  involving this.  I didn't know whether anything relating to

Page 36

1    the subject we just finished discussing is sort of embedded

2    in that or not.

3              MR. STANG:  Your Honor, we will review the bill in

4    total and not just the category that might have encompassed

5    it.

6              THE COURT:  Mr. Zipes, did you have any issues

7    about the Pachulski Stang application?

8              MR. ZIPES:  Your Honor, my office is frankly still

9    reviewing this one and the -- we are going to offer comments

10   not necessarily in conjunction with this fee hearing.  So as

11   everything is (indiscernible).

12             THE COURT:  Okay.  All right.  So I've asked all

13   my questions on it.  I'll wait to see what your response is

14   on this.  Okay.

15             Next is Sitrick and Company.  The application is

16   at ECF 2666.  Fees of $22,244 and 50 cents in expenses.  I

17   don't even need to hear this, but it's approved.

18             Last is the amended third interim application of

19   Lerman Senter PLLC.  It's at ECF 2721.  It seeks fees of

20   $4,141, no expenses.

21             Is there someone from the firm in attendance?

22             MR. CORAN:  Yes, Your Honor.  Steven Coran here

23   for Lerman Senter.

24             THE COURT:  Okay.  It's a small amount in the

25   scheme of things, but I want to remind you to use project

Page 37

1    billing categories as required by the Southern District

2    amended guidelines.  Okay.  I'm approving it.

3              MR. CORAN:  Thank you.

4              THE COURT:  All right.  That concludes the fee

5    applications.

6              All right, Mr. Butler, are you running the show

7    today or one of your colleagues?

8              MR. BUTLER:  Thank you, Your Honor.  Nothing

9    further for the fee applications.  I believe Mr. Stephens

10   will be addressing the discovery items.

11             THE COURT:  Okay.  Mr. Stephens?  Sure.

12             MR. STEPHENS:  Good afternoon, Your Honor.  Eric

13   Stephens of Jones Day on behalf of the Debtor.  Very

14   briefly, Your Honor.

15             You will recall that at the last conference and

16   hearing on this matter on November 28th, the Court directed

17   that there be an examination of the Everlaw database in

18   connection with breaches of protective order.

19             Following that directive, we have met and

20   conferred with the Committee and they have informed us that

21   they do not intend to comply with that directive even to

22   provide the Court with reports of Everlaw activity in-

23   camera.  We would simply ask that they comply with the

24   Court's directive at the last hearing.

25             THE COURT:  And I read -- Mr. Amala, I see him on

Page 38

1    the screen.  I read his declaration.  I guess I saw it

2    today.  I don't know if it was filed today.  Do you have

3    more issues with Mr. Amala?

4           MR. STEPHENS:  I think, Your Honor, the

5    declaration itself doesn't address the conduct that we

6    raised with him.  It doesn't mention state court litigation

7    or the subpoena.

8           THE COURT:  Sure it does.

9           MR. STEPHENS:  I didn't see references to the

10   state court subpoena or state court litigation in the

11   declaration.  But we are not seeking any amended

12   declaration.

13          THE COURT:  Okay.  Mr. Amala, do you want to be

14   heard?

15          MR. AMALA:  I don't, Your Honor, other than I

16   would be there in-person, Your Honor, if this was filed on

17   Friday.  So apologies I am not there in-person.  And I also

18   don't know if I look as weird on your screen as I look on

19   mine.  I don't know why that's happening.  But anyways, I

20   apologize I'm not there in person, Your Honor, even though I

21   don't have anything to offer.  I would have been there in-

22   person.  Thank you.

23          THE COURT:  Anything you want to add to what's in

24   your declaration?

25          MR. AMALA:  I don't, Your Honor.

Page 39

1          THE COURT:  Okay.  Does somebody from the

2    committee want to address the issue about providing the logs

3    for in-camera review?

4          MR. STANG:  Thank you, Your Honor.  James Stang,

5    Pachulski Stang Ziehl & Jones for the Committee.

6          Your Honor, at the hearing, we were caught --

7    caught is not the right word.  We didn't expect that

8    discussion regarding Everlaw.  And the comments that we

9    made, I hope you'll consider that it was kind of on the fly.

10   But we went back and thought about and studied what rights

11   people had under the confidentiality agreement, which is at

12   Docket Number 320.

13         And reading that carefully, Paragraph 6 and

14   Paragraph 10 of the confidentiality order provide for what

15   the Debtor is allowed to see in the context of the Everlaw

16   reports and what the remedies are if there has been an

17   impermissible use of the information.  And specifically

18   Paragraph 6 of the order says that the Diocese -- that any

19   information that is conveyed to the Diocese should not track

20   or record the access of confidential information or

21   otherwise notify the Debtor or any other party that a

22   recipient has accessed confidential information from the

23   Everlaw format.  It doesn't say Everlaw format, it says from

24   such format.

25         And then Paragraph 10 spells out what the remedy

1    is, which is that if there's a use that was not permitted or

2    not contemplated, that the Committee will assist the Diocese

3    in remedying such use or disclosure, which we think has been

4    addressed as to Mr. Amala.

5            We don't believe that the reports that the Debtor

6    has asked for are permissible under the order.  Because what

7    they're looking for, without any even smoke, is to find out

8    if state court counsel has violated the terms of the

9    confidentiality agreement.

10            THE COURT:  I didn't see this in any writing that

11   you filed with the Court to explain why you say they're not

12   supposed to be able to -- did you?

13            MR. STANG:  No, Your Honor.

14            THE COURT:  That's the usual way one responds, is

15   by -- it could have been a very short pleading that just

16   recited -- I would have gone back and I would have looked --

17   confirmed that the confidentiality order has the language

18   you've read to me.

19            MR. STANG:  Your Honor, we -- if you want us to,

20   we will do that.

21            THE COURT:  I want this to go away.

22            MR. STANG:  I want it to go away too.  Because,

23   frankly, I don't know if there's any there there, and the

24   Debtor has not shown us if there's any there there except

25   for Mr. Amala, who has made the offers he has made to you in

1     his declaration.

2              THE COURT:  Let me ask this.  Did you call Mr.

3     Stephens and say here's the language in the confidentiality

4     order, we don't believe you are entitled to receive it under

5     these circumstances.  Did you do that?

6              MR. STANG:  Your Honor, I'm going to have to turn

7     to -- I personally did not.

8              THE COURT:  Did anybody?

9              MR. STANG:  I do not know that Ms. Dine or Ms.

10    Michael did that.

11             MS. DINE:  Your Honor, Karen Dine, Pachulski Stang

12    Ziehl & Jones.  We did send a note.  Mr. Stephens I believe

13    attached it to the letter in which we explained why we did

14    not think that doing the Everlaw searches was a reasonable

15    request.  I don't know that we cite it in there, that

16    paragraph.  And I know we mentioned it this morning when we

17    had a meet and confer on the next conference issue with Mr.

18    Stephens.  But I don't think in our response to them to the

19    Debtor to let them know that we did not think that the

20    searches were appropriate, that we specifically referenced

21    that portion of the confidentiality agreement.  But I should

22    say we did raise it with them, and as you heard, they

23    believe that we should go forward.  And they were

24    considering making a motion for a protective order, but they

25    asked for this conference.

1              MR. STANG:  Your Honor, to be frank, one of our

2      colleagues went back over the last couple of days and really

3      reread the confidentiality order and saw the two provisions

4      that I quoted to you.  But we did tell the Debtor that we

5      thought that the disclosures they wanted would violate work

6      product privilege and potentially the attorney-client

7      privilege.  That was communicated to them.  But this part

8      about the two provisions is something that one of my

9      colleagues -- who was involved with the preliminary

10     injunction hearing just as an aside -- went back and really

11     read it.  And she said, look, there are these two provisions

12     in here.  And so we had not raised it with them before.

13              THE COURT:  Okay.

14              MR. STANG:  But I guess, Your Honor, having been

15     through my share of did you violate court order proceedings

16     and especially regarding confidential information, Mr. Amala

17     has taken responsibility for what he did.  He has been very

18     clear in his declaration that he has no knowledge of other

19     state court counsel doing this.  I have -- we have no

20     knowledge that state court counsel misused the information.

21              THE COURT:  We're not going off on a detour

22     (indiscernible).

23              MR. STANG:  I understand.  And if the Debtor --

24     you know what?  I'm going to just leave it at that.

25              THE COURT:  Leave it at that.  Mr. Stephens?

Page 43

1            MR. STEPHENS:  Just very briefly, Your Honor.

2            The first time that the Committee raised Paragraph

3    6 of the protective order was in a meet and confer with me

4    this morning.  I think it's very clear when you read that

5    paragraph, it talks about the mechanism in which the Debtor

6    will produce and provide the documents.  And it was that we

7    could not set up a database that allowed us to snoop on them

8    as they reviewed the documents.  It does not say that in the

9    event that there are violations of the protective order --

10           THE COURT:  All right.  That's enough.  I'm

11   satisfied with Mr. Amala's declaration and his presentation

12   at the last hearing.  This matter is closed.

13           MR. STEPHENS:  Thank you, Your Honor.

14           THE COURT:  What's the discovery issue that you

15   wanted to raise?

16           MS. DINE:  Your Honor, Karen Dine, Pachulski Stang

17   Ziehl & Jones, on behalf of the Committee.

18           As mentioned in the letter requesting the

19   conference to Your Honor, we had learned last Friday that in

20   state court, which we had been understood to say that the

21   debtor had produced new what we'll call CVA claim documents.

22   And naturally given that those were documents to be produced

23   to the Committee in this proceeding, we were concerned about

24   the discovery of new information.

25           Since submitting that letter, we did have a meet

Page 44

1     and confer with Mr. Stephens and Mr. Butler from Jones Day

2     and they explained what the issue was.  It has to do with

3     documents that were provided in response to the original

4     request in the bankruptcy case that were actually provide in

5     a non-redacted form as oppose to the redacted.  And what

6     they were referring to in the court proceeding were

7     materials that were now newly had to be redacted and not new

8     what we'll call CVA claim documents.

9             Mr. Stephens also explained to us what situations

10    might occur in terms of whether certain John Does might be

11    identified, which would lead to the discovery of new CVA

12    claim documents.  We had a very productive discussion about

13    the Debtor will share with us the information they are

14    producing in the state courts so that we can continue to

15    keep an eye on this issue from our perspective.  And they

16    will also be providing us with the Bates numbers for the

17    documents that were produced only in the unredacted form as

18    opposed to a redacted form.  So we think that, at least for

19    now, that that resolve the issue.  And we appreciate Your

20    Honor setting it for conference, but we appreciate the

21    Debtor making time in advance of this hearing so we could

22    meet and confer on the issue.

23            Your Honor, if I may?

24            THE COURT:  Go ahead, Ms. Dine.

25            MS. DINE:  I promised Mr. Stephens that I would

1   actually also add that they have made clear to us that they

2   have not at this point found any new CVA documents, and

3   that's their position.

4           THE COURT:  Okay.  Mr. Stephens, anything you

5   wanted to...

6           MR. STEPHENS:  No thank you, Your Honor.

7           THE COURT:  Let's move on on the agenda then, on

8   to contested matters.  Committee's motion to proceed with

9   certain state court actions and temporarily suspend the

10  Chapter 11 case.

11          MR. STANG:  Good afternoon.  Pachulski Stang Ziehl

12  & Jones for the Committee.

13          Your Honor, the Committee filed the motion for two

14  purposes.  One was that we hoped -- we hoped that the test

15  cases can serve to breach an impasse that is between the

16  committee and state court counsel on the one hand and the

17  Debtors, the Debtor's affiliates, and perhaps as importantly

18  or maybe more importantly, the insurers.

19          You have time and time again urged all of us to

20  consider alternatives to dismissal.  You've been very

21  proactive that way.  And we appreciated that, to hear your

22  thoughts about how perhaps this could lead to a consensual

23  plan.

24          THE COURT:  One thing that I never said was pick

25  your strongest cases, and those are the ones that ought to

1    be tried.

2            MR. STANG:  In fact, I think you told us that we

3    weren't going to get to do that.  Right?

4            THE COURT:  Of course your motion omitted that.

5    It just said we think you ought to pick our strongest cases.

6    They need to get the message.

7            MR. STANG:  We did say that.  But on two

8    occasions, both before we identified the cases, we invited

9    the diocese to tell us what cases it would like to have as

10   test cases.  And the answer was no, because they stand on

11   the position that they will only agree to test cases after

12   confirmation of a plan.  Essentially only test cases for the

13   carriers.  But not as to them because they'll have their

14   confirmation order.  And not as to their affiliates because

15   they will have whatever releases would be in the plan.

16           So, no, you didn't tell us that you would just

17   sign off on what we wanted.  But I will tell you in a few

18   moments why we picked those three cases.  It might be of

19   interest to you.

20           So at the October 23rd hearing when you suggested

21   test cases, we listened.  And we prepared the motion on the

22   basis that, well, maybe Judge Glenn has got an idea that for

23   all of the collective wisdom on this side of the podium, you

24   know, we didn't present yet.  And so that's why we filed the

25   motion.

Page 47

1          So on two occasions we asked the Debtor to

2     collaborate with us and have them pick the cases they want.

3     The first time before we identified the cases they said no.

4     And then after we identified the cases, they said no again.

5     Their no is evidenced by a plan that has to the best of our

6     knowledge absolutely no support at the state court counsel

7     level.  And without the support of the state court counsel -

8     - and we heard this maybe ad nauseum in the motion to

9     dismiss -- they are never going to hit the 75 percent that

10    they need.  And for all we know, the percentage may be

11    greater.  Even under Purdue, it might be greater.  Because

12    the 75 percent was the bare minimum.  And there may be

13    circumstances where it should even be higher.  But even at

14    75 percent, they're not going to make it with their plan.

15         So they have taken the position of no, we are

16    simply not going to discuss test cases with you.  Not here

17    are a couple that we think evidence the weaknesses of the

18    cases and we have to then struggle with whether we would

19    tolerate that.

20         THE COURT:  Let me ask you a question.  I

21    recognize you're not state court counsel.  But are there any

22    more developments to report before Judge Steinman, who has

23    indicated his desire to go ahead with -- is it four trials?

24         MR. STANG:  Your Honor, I don't attend his status

25    conferences.  My understanding is he is still pursuing and

Page 48

1    pressuring people to move forward quickly with trials.  I

2    know Mr. Stephens and me spoke this morning about some of

3    the things that he was doing -- he meaning Justice Steinman

4    -- regarding case management orders or form, discovery

5    objections and that sort of thing.

6           But in terms of identifying additional cases, I

7    don't know if other state court counsel are still on the

8    phone.  By the way, Mr. Amala has dropped out of that

9    process because he has an Arrowood --

10           THE COURT:  He has Arrowood cases.

11           MR. STANG:  But if Mr. Stoneking is on, and I saw

12   Mr. Anderson appear, he might be able to give you a better

13   idea of what's actually going on, wherever over there is, in

14   the other courthouse.

15           THE COURT:  I didn't contemplate these trials were

16   going to occur in federal court, they were going to occur in

17   state court.  And Justice Steinman -- I reported I have not

18   spoken to him since the last hearing.  Whatever

19   conversations I've had with Justice Steinman I have reported

20   on the record.  But he's going to be the one to agree, okay,

21   those are the four or the six cases that we'll try.  Not me.

22   I've tried to provide some general guidance and thoughts.  I

23   mean, I thought that the opposition that Jones Day filed

24   missed the mark in a lot of respects.  The notion that

25   personal injury cases don't get tried as bellwether trials

Page 49

```
 1   is not true.  They cite General Motors.  Judge Furman tried

 2   a series of personal injury cases.  Sure, there are

 3   different priests who are alleged to have committed the

 4   abuse, but the basic issue is pick a group of cases of the

 5   victims and try those.  Some strong cases, some not-so-

 6   strong.  (indiscernible) be involved and let Justice

 7   Steinman decide, okay, those are the ones we'll try.  All

 8   right.  But they're not going to be tried in my court.

 9            I know this is not the disclosure statement

10   hearing.  I've already spoken -- I've now read the

11   disclosure statement front to back.  This is not a

12   disclosure statement hearing.  I don't know whether the

13   Debtor plans to file an amended disclosure statement before

14   January -- what is it, 14th or 16th?

15            MR. STANG:  19th.  16th or 19th.

16            THE COURT:  It's one of those dates.  Yeah.

17            Doesn't disclose anything about the finances of

18   the parishes.  What it says is we have given the Committee

19   information under a protective order.  If they want to stand

20   on the disclosure statement, we'll go forward on -- they'd

21   better not file something three days before the hearing and

22   expect that the hearing is going forward.

23            They put a toggle in their plan, but they haven't

24   said what happens if Judge Glenn denies the motion to

25   approve the disclosure statement.  Okay.
```

Page 50

1          Look, I tried to think -- and you all are better

2     at doing this than I am I'm sure -- are there ways to sort

3     of break the ice to move this case forward that has any hope

4     of moving forward.  I came up with the test case, bellwether

5     case approach.  Get some data points for what these cases

6     are -- you know, what juries are going to value these cases.

7          I could certainly -- nothing in the -- the

8     disclosure statement gives the aggregate number of abuse

9     claims that have been filed.  It gives the number when the

10    Court has sustained objections without leave to amend.  It's

11    giving some projections.  And again, you know, I looked at

12    it this morning.  I'm just pulling it out of my head.  You

13    know, whether it's going to be 500 or 450 claims that they

14    think are viable and they think they're going to confirm a

15    plan that only gives survivors $100,000 and rights to

16    insurance.  Without saying how many claims -- 135 parishes

17    and other related parties.

18          You've all told me in the past there are some

19    parishes with a lot of claims and some with none or a few.

20    If I were a state court plaintiff with no issues about

21    notice or anything and it was against a parish that only had

22    two or three claims and assets worth $10 million, $20

23    million, I could understand they would be leery about voting

24    in favor of a plan.

25          The disclosure statement suggests $400,000 average

Page 51

1      per claimant plus insurance.

2              Is it enough information for a survivor to decide

3      whether to vote in favor of the plan when they have no idea

4      how many claims against the priest or the parish, where

5      their claim lies, and what are the assets in that parish.

6      I'm sure I will hear this when I get to the disclosure

7      statement hearing.  I'm not deciding it now.  I have

8      questions about it.  Okay?

9              They have a nice little picture chart and colors

10     with -- this was greater recovery than most of the diocese

11     cases that have been resolved before.  You know, but Justice

12     Steinman tried six cases and three of them resulted in $10

13     million verdicts and three of them -- you know, two of them

14     washed out completely and one miniscule damages.  You know,

15     I mean, sure, creditors would have to think about am I

16     better off with something in hand.  And they'll -- you know,

17     if the disclosure statement gets approved, if it goes out

18     for a vote, the creditors will decide.  But the disclosure

19     statement is going to have to have adequate information.

20     And I'm sure the Jones Day lawyers will do their best to

21     persuade me that the four corners of that disclosure

22     statement have adequate information.  I have my doubts,

23     let's put it that way.  I expressed that before.  I thought

24     before I got on the bench today, I would make sure I had

25     read it cover to cover.

1          MR. STANG:  Your Honor, we also, since I know you

2     read everything, attached to Ms. Dine's declaration our

3     initial laundry list of issues.  But I will add that when

4     that state court lawyer is advising a client other than a

5     committee member and one who is not on Judge Steinman's

6     released claim list -- because especially with Arrowood now

7     so many of them have gone away -- they have no idea what's

8     in the CVA files.  There are state court counsel that

9     haven't signed the agreement that gives them access to the

10    Everlaw.  But they have no idea.  There is a universe of

11    claimants who will have no idea what the CVA files that have

12    been produced says about their claim, including notice

13    issues.  Not a word.

14          And so as you know from -- our papers contain Ms.

15    Michaels' letter to the Debtor asking them to eliminate the

16    confidentiality designation for all the CVA documents, and

17    we have been told no.

18          We have to then move to -- I'll ask you -- I'll

19    ask the Debtor again, will you remove the confidentiality

20    designation from the CVA documents so that all survivors can

21    see the files that pertain to their case.  Because we're

22    going to file a motion that -- I think we're going to file a

23    motion that does that.  Because they said no to our request

24    as provided for in the various agreements and orders they

25    have regarding CVA access.

Page 53

1           So it's one thing to know about the parishes'

2    assets.  That's important.  And you said very clearly last

3    time without that by a parish-by-parish basis, you're not

4    approving the disclosure statement.

5           But I would add that people are also in the blind

6    about what the diocese has.  And even --

7           THE COURT:  Maybe I can be persuaded that I don't

8    need to know how many CVA claims against each parish or

9    diocese-related party.  It seems important to me, but maybe

10   I'll be persuaded I don't need that.  And not saying there

11   has to be appraisals, but something that shows what are the

12   assets of the parish or diocese-related party.  So creditors

13   could make an informed assessment whether to vote in favor

14   of the plan.  It doesn't get to a vote unless I am satisfied

15   that the disclosure statement provides adequate information.

16   The purpose of adequate information is to inform the

17   creditors and allow them to make an intelligent choice as to

18   whether to vote in favor of a plan.  And I'm missing, you

19   know, half of the standards that the cases have set.  You

20   know, that's the gist of it.

21           MR. STANG:  We'll have our formal objections.  But

22   in addition to what was said in the attachment to Ms. Dine's

23   declaration, which we forwarded to the Debtor very promptly.

24   There is this issue that's going to come up before you

25   regarding whether the survivors should be allowed access to

Page 54

```
1    information regarding what the Diocese knows about their

2    cases.  And what's going on in Judge Steinman's court room

3    in part is that subpoenas are being served on the Debtor as

4    a non-party.  It's possible that if you grant these three

5    test cases -- and welcome to -- we've invited them twice.

6    I'll invite them a third time.  Please tell us what cases

7    you want to have as test cases.  But maybe those will

8    overlap.  Maybe bringing -- the Debtor is named in one of

9    the lawsuits.  High schools which -- and you saw some

10   correspondence back and forth about whether the actions

11   against the high schools are stayed or not.  Maybe we will

12   get into that today.

13             There's one involving ecclesia that we've agreed

14   vis-á-vis the preliminary injunction should not have been on

15   the flight list.  It should be back on the no-fly list.  But

16   now we're asking you to give relief from the stay as to it.

17             But those survivors should be able to find out how

18   strong their cases are or weak their cases are by seeing the

19   CVA documents.  Like I said, there are hundreds and hundreds

20   of people who have no access to those documents today.  And

21   whether or not their counsel is signed in Everlaw approval

22   document, access document, or even if they have, if it's

23   limited --

24             THE COURT:  And let me ask you this.  I'm

25   obviously not deciding it today.  You've met and conferred
```

Page 55

```
 1    with the Debtor about the relief you suggest that you be

 2    granted?

 3              MR. STANG:  We sent them a latter asking them.

 4    They told us no.

 5              THE COURT:  Make a motion.  File your opposition.

 6              MR. STANG:  So, Your Honor, I'll try to cut to the

 7    chase here.

 8              THE COURT:  The motion that you made is denied.

 9    Because making a motion is not an opportunity to negotiate

10    with me about who should pick the cases, weak cases, strong

11    cases.  You filed a motion and you said let us pick the

12    strongest cases.  That's not how it works.  Okay?  That's

13    not what the purpose of bellwether trials are, test cases.

14    It's to set the data points so that potentially all -- the

15    plaintiffs and defendants can all get a sense of this is

16    kind of the -- here's a selection of cases, this is the

17    range of outcomes in those, and it should guide the

18    discussions and negotiations.

19              And, you know, in GM, it served exactly that

20    purpose.  Judge Furman tried a bunch of bellwether trials.

21    Some of them settled before they actually were tried.  And

22    basically all of them settled.

23              MR. STANG:  Your Honor, I appreciate that

24    bellwether is in the context of sheep, so I am mixing my

25    analogies.  But the horse won't eve approach the water.
```

Page 56

1    We've asked them twice.  They have -- Ms. Ball could not

2    have been clearer with me --

3              THE COURT:  So let the state court counsel tell

4    Justice Steinman these are the cases that already tried.  If

5    they say, you know, we don't think there should be any more

6    or -- fine.

7              MR. STANG:  But, Your Honor, those cases -- and

8    we made the decision on preliminary injunction opposition as

9    to which cases we would ask to -- which cases the opposition

10   would address and which ones it didn't.

11             But having the empty chair of the diocese in Judge

12   Steinman's courtroom is not as helpful -- it would be much

13   more helpful to have them there.

14             THE COURT:  You could have moved to lift the stay.

15             MR. STANG:  And how do I have a conversation about

16   data points with someone who just keeps on saying no to me.

17   And so you know what?  I would have liked to have done it

18   the way you suggested.  But when were told no the first --

19   when Ms. Ball stands up here and says only if there's a

20   confirmed plan, which means only as to the carriers and we

21   get told no twice, what are we supposed to do?

22             So if they want to come up and tell you the three

23   cases that they think are going have state court counsel

24   strike out, so be it.  But they won't talk to us about this.

25             So I'm not -- I don't know -- we didn't know what

Page 57

1    to do except say these are our three.

2              THE COURT:  So I've lost count of the number of

3    cases that the district court and Eastern District -- it's

4    like eight or nine judges now have remanded to state court.

5              MR. STANG:  Well over half.  And some are just

6    siting waiting -- they're waiting for a decision.

7              THE COURT:  Are they all Arrowood cases or are

8    they...

9              MR. STANG:  No, no.  We also have the 157 -- the

10   something motion in front of the Southern District of New

11   York where they're trying to get him back that way.  And so

12   it's kind of a two-pronged attack to make sure that

13   (indiscernible) removal and then the 157 motion --

14             THE COURT:  And anything happen in that?

15             MR. STANG:  She withdrew the reference without

16   giving us an opportunity to be heard.  We briefed that

17   issue, and she's sitting on a ruling regarding whether the

18   matter should return.  But Ms. Dine is standing, so...

19             MS. DINE:  Your Honor, Karen Dine, Pachulski Stang

20   Ziehl & Jones on behalf of the Committee.

21             My understanding is there are about 40 cases

22   currently pending before Judge Steinman.

23             THE COURT:  Non-Arrowood cases?

24             MS. DINE:  Yes.  That are active and ongoing is

25   what I meant to say.

Page 58

1           THE COURT:  And none of those include the Debtor

2    as a defendant.  Because when you move -- when you --

3           MR. STANG:  Your Honor, there are two high school

4    cases that --

5           MS. DINE:  Actually, there's -- sorry.

6           MR. STANG:  I'm sorry.  I will yield to Ms. Dine.

7           MS. DINE:  Your Honor, there are a number of

8    cases.  We know of at least two where the Debtor has taken

9    the position that those were -- that those are not

10   separately incorporated and basically doing business as.

11   And so the diocese is a defendant in those cases.  And I

12   believe that they have identified several others.  And as

13   you may have seen from the correspondence, they actually

14   recently requested that we reaffirm the stay with respect to

15   those cases.  And what we pointed out to Your Honor is at

16   least with respect to those two, the request to stay the

17   cases have actually been made by the plaintiffs in those

18   cases about six months ago.  And the debtor said, well, the

19   order says they are not stayed, that Your Honor's order on

20   the preliminary injunction says they are not stayed.  So

21   those have gone forward.  So our position is that all of

22   those allegedly DBA cases should continue to go forward,

23   although we did agree that the -- and Your Honor, I believe

24   a notice of presentment was filed today -- that there were

25   places that implicate the ecclesia insurance where we did

Page 59

1   agree that those could be restated effectively.  But that is

2   where we are.  And as Mr. Stang is saying, while those 40

3   cases are going forward, while there is some number that do

4   include the diocese -- and naturally that's the purpose of

5   the test case motion was for relief from the stay for others

6   to go forward against the Diocese.

7           MR. STANG:  Your Honor, one of our test cases

8   involves this DBA.  It was a high school that I think

9   eventually ended up with the Department of Education.  But

10  before that happened, it was an unincorporated entity.  It

11  was Proof of Claim 960.  And it has LMI, interstate

12  insurance.  And when you add up all the available insurance,

13  we believe it's $149 million per occurrence, including

14  primary and aggregate.  There is an SIR on that one of

15  $200,000.

16          If you counted each act of abuse separately --

17  there's precedent for that -- the allegations are 8 to 13

18  instances of abuse.  So you can see these insurance numbers

19  really start to mount up.

20          And initially Mr. Lee James wrote to the Debtor --

21  I forget which counsel -- and said hey, you know, these seem

22  to be -- you're taking the position that -- are you taking

23  the position these are stayed.  I think Mr. James got the

24  notice of deposition.

25          And they wrote back and said no, no, no, they're

Page 60

```
 1     not stayed because the preliminary injunction order said

 2     these aren't stayed.  And there was a schedule and this

 3     case, Mr. James' case was on the schedule.  Then --

 4              THE COURT:  You all gave me a list of the cases.

 5     I mean, I didn't --

 6              MR. STANG:  Absolutely.  They then come back and

 7     say no, they are not stayed.  And now they're saying they

 8     are stayed, they should have been stayed.  Inadvertent?  I

 9     don't know.  They should be stayed.

10              So after six months of Mr. James and other people

11     who have cases against those DBAs are working in Justice

12     Steinman's courthouse and moving the cases along.  Now all

13     of the sudden we think they're stayed when in correspondence

14     what you have, Mr. James was told they were not stayed.

15              So we did agree to the ecclesia.  They got moved

16     over to the no-fly list.  But that's one of the test cases

17     to bring the Debtor in -- I mean, the high schools were

18     named.  So the Debtor is there on that one.

19              The second proof of claim -- the second test case

20     has coverage -- occurrence coverage limits of $359 million.

21     The SIR on that is $600,000.  This is against Father Soave,

22     who was one of the most notorious of the abusers.  Numerous

23     times are alleged in the abuse documents.

24              So there are two LMI interstate cases.  One names

25     the debtor by name.  The other names the two high schools or
```

Page 61

```
 1   a high school, which they'll tell you whether it's

 2   (indiscernible) or not, because I can't keep track of what

 3   their position is as of today.  And then the third one is an

 4   ecclesia case, which we agreed should be off Justice

 5   Steinman's list and now we're asking you to relieve it.

 6   There the coverages are much less.  But it really highlights

 7   why the Debtor and the affiliates need to step up and really

 8   cinch their belts and do more.  There the coverage is

 9   $750,000 with an SIR of 250.  And there were 30 instances of

10   abuse during the course of -- according to the proof of

11   claim.  So now the defense costs in that case do reduce the

12   750.  So those are the three cases.  We had Arrowood cases,

13   but they had to go away.

14            So like I said, Your Honor, I can't make the horse

15   drink the water.  I know you don't like what we did.  But

16   what was I supposed to do?

17            THE COURT:  So the record is clear, I haven't

18   heard the other side.  I don't need to.  Your motion was

19   filed as ECF 2767.  You asked for too much.  Your motion is

20   denied.  I'm not going to get into negotiating what the

21   scope of the relief should be.  I still think...

22            For the -- I'm just going to use this -- I'm going

23   to use 500 claimants just a number.  You know, they went

24   through the math, subtracted out the number where I had

25   expunged the claims without leave.  I still think if the
```

Page 62

1   case gets dismissed, it's going to be a really interesting

2   issue -- maybe even not so interesting -- in state court

3   whether my rulings applying federal pleading standards has

4   any preclusive effect when each of those rulings acknowledge

5   the state court uses a different pleading standard.

6           I can just say if I was a state court judge, I'd

7   say, oh, that's nice.  But that's not state law.  We're back

8   in state court.  You can all argue about it if it gets back

9   there.  Okay.

10          MR. STANG:  And certainly not as to the parishes

11  or anybody who is not a debtor.

12          THE COURT:  Mr. Stang, if I were one of the many

13  claimants, I would have very mixed feelings if three of them

14  were tried and they resulted in multimillion dollar verdicts

15  and they raced to collect.  It's great if you were a

16  claimant who wasn't going to get their case tried for a

17  couple of years whether there's anything left to collect.

18          So I've thought all along and I've said it, I

19  think the claimants are much better off with a confirmed

20  plan.  It may be they don't like the one that they've

21  proposed, but after the first few claimants hit home runs at

22  trial, the rest of the claimants are going to think is there

23  going to be anything left by the time I get to try a case?

24          MR. STANG:  Your Honor, we filed the emotion to

25  dismiss out of frustration.  We had hoped that the Debtor

Page 63

1    and the affiliates and the carriers would see the wisdom of

2    try to engage with us.  On October -- November 1st -- I

3    think it was the 1st -- I'm sorry.  In connection with the

4    dismissal motion, you talked about a consensual plan.

5          Now, there have been three cases where plans have

6    been filed by committees.  Harrisburg and Guam where the

7    disclosure statements weren't even approved, and consensual

8    plans were reached in each.

9          In the Archdiocese of St. Paul Minneapolis, plans

10   went out for vote.  More than 90 percent of the survivors

11   voted against the Archdiocese plan and voted for the

12   survivor plan and vice versa.  And Judge -- I think it's

13   Kressel -- did not approve either.  And it went back and

14   they finally reached an agreement.

15         THE COURT:  So will you finally reach an

16   agreement, please?

17         MR. STANG:  Your Honor, if I could even know -- if

18   I could even know whether the $200 million, which is their

19   headline number -- and I do mean headline in the pejorative

20   sense -- after all the deducts actually is a number that I

21   could even compute.  But they have said -- and we wrote to

22   them and asked them in our objections to the disclosure

23   statement.  We have yet to receive a response.  When you say

24   it's 200 less all allowed administrative expenses, is there

25   anything left at all?  I mean, the fees in this case -- you

Page 64

1    hear reports they are $80 million, $100 million.  They're a

2    lot.  Is that coming out of the 200?  Because that's what

3    your plan says.  And what about all the other deducts.  So

4    if I knew a number that I could actually put a pin on --

5             THE COURT:  Stop with the -- it doesn't do any

6    good making this argument to me.

7             MR. STANG:  Your Honor, I've made it to them.  We

8    have not received a word in response to our disclosure --

9    our first stab at a disclosure statement list of objections.

10   Not a word.

11            THE COURT:  Can I ask you a question?  What do you

12   do -- because I know you're involved in cases in the Fifth

13   and Ninth Circuits.

14            MR. STANG:  Yes.  And we had some in the Tenth.

15            THE COURT:  Where third-party releases are not

16   available.

17            MR. STANG:  Right.

18            THE COURT:  What do you do in those cases?

19            MR. STANG:  We get everyone to sign off.  You

20   don't get your money unless you sign a release.  We have

21   never had an objection.  I've had two cases in the Tenth

22   Circuit.  The Fifth Circuit, Judge Grabel has still got that

23   pending.  We had Spokane --

24            THE COURT:  You know she is one of my former law

25   clerks.

Page 65

1          MR. STANG:  I know.  Spokane.  We cite to you all

2     the time.  We had Spokane, Fairbanks, Jesuit.  San Diego

3     dismissed voluntarily.  Stockton.  Not a single person held

4     back giving a release.  Not one.

5          THE COURT:  And what was the recovery per claimant

6     average in those cases?  Yeah, well, you don't even talk

7     about that.

8          MR. STANG:  It varied.  And some of them overlap

9     because, for example, Spokane -- it was like a triangle.

10    Spokane, Fairbanks, and Jesuits were all Jesuit-type cases.

11    And some people collected from all three.  So it's a little

12    hard to add up.  But it was well north of the headline

13    number when you consider that some of these people had

14    claims against different entities because of the Jesuit

15    connection.

16          And I don't remember Gallup and -- before Judge

17    David Thuma, Gallup and Santa Fe.  I don't remember the

18    numbers.

19          But, Your Honor, I've said it in pleadings, I've

20    said it to you.  What got paid in another case is

21    irrelevant.  It really is.  The assets differ.  The judge in

22    San Diego.  We have a view of the Pacific when she was told

23    we were going to (indiscernible).  The insurance programs

24    are different.  And so I frankly think --

25          THE COURT:  They're tossing in all the insurance.

1           MR. STANG:  I'm sorry?

2           THE COURT:  They want to toss in all the

3    insurance.

4           MR. STANG:  Yeah.  Thank you for Arrowood.  Thank

5    you very much.  That's a big headline number.

6           THE COURT:  Well, that's -- you know, you take the

7    case as you find it.

8           MR. STANG:  You're right.  And don't tell

9    everybody you're going to make all this money when they know

10   full well that Arrowood is a very tough nut to crack.  I've

11   got insurance counsel who can't wait to tell us why there

12   are coverage defenses and why they don't have to pay --

13          THE COURT:  I'm sure you read the new case

14   yesterday.

15          MR. STANG:  Yes, I did.

16          THE COURT:  I have it sitting on my desk inside.

17          MR. STANG:  Look at the LMI opposition that they

18   filed to the test case motion.  We're not paying any defense

19   costs.  We don't have to pay anything until it's all done.

20   This is what we are facing and why we think the test cases

21   are -- and I heard you.  I know I'm not going to change your

22   mind as I'm arguing, at least I don't think I'm going to.

23          We keep on trying and we keep on getting told our

24   way or the highway.  And I know what they're going to say to

25   you; let the creditors vote.  And the answer is, you know

1   what?  If you could even show me that you're making any

2   progress -- on two occasions this Debtor has tried to go

3   around the Committee to talk directly to the state court

4   counsel.  And one time -- we cite it to you in our papers --

5   you said, really?  You know, without the Committee?  No case

6   has ever been confirmed without Committee support in the

7   cases that I've had or any of the ones that my competitors

8   have had.  Not one.

9          And so they have -- they reached out a second time

10  recently to state court counsel again.  This time at least

11  they copied me with their letter.  I'm not aware of a single

12  law firm that has said we like your proposal.  Not one.  And

13  so -- and maybe they've got one, but they ain't getting the

14  75 percent.  Because I know the state court counsel who are

15  on the committee, and you heard them testify.  And this plan

16  is not all that much different except they put the toggle

17  on.  It's really not that much different.

18         So I can't make heads or tails of their disclosure

19  statement, either.  I can't tell who is going to get paid

20  the promised $100,000 or who is not.  Because if you're

21  litigating, you're a litigant-claimant, you don't get it.

22  Of course they get to decide who that is.

23         There's just -- when I reviewed the list of

24  objections today in preparation for the hearing, I go like,

25  wow, another page?  Another page?  There's quite a bit.

Page 68

1              THE COURT:  Let me hear from Ms. Ball.

2              MS. BALL:  Thank you, Your Honor.  And thank you

3     for denying the motion.

4              THE COURT:  It may not stay that way.  If it was a

5     real motion...

6              MS. BALL:  We hear you, Your Honor.  Just as we

7     heard you on all the points you raised again today.  But now

8     that we know you are not suspending the case, is that a...

9              THE COURT:  I am denying their motion.

10             MS. BALL:  All right.  Now that we know that --

11             THE COURT:  But imposing a 50 percent holdback.

12             MS. BALL:  I understand that.  I think we'll work

13    that out on how the $200 million is affected.  But let me

14    start with three facts that we would like to share with you.

15             And they're not known, but every single issue you

16    raised today will be known on a public basis by this time

17    tomorrow.

18             THE COURT:  You're waiting until tomorrow?  Why

19    don't you --

20             MS. BALL:  Well, if you're going to suspend the

21    case, Judge, why would we have filed it?

22             THE COURT:  Because you had confidence in your

23    position.

24             MS. BALL:  I do.  Thank you.  Thank you, Mr.

25    Geremia and Judge.  But all those facts that you talked

Page 69

1    about will be there.

2              But the second thing that I want to remind --

3              THE COURT:  By the way, if I said test cases, it

4    wouldn't necessarily mean suspend the case while that goes

5    on.  But that's a different issue.

6              MS. BALL:  Okay.  The second thing that I want to

7    draw your attention, we keep getting pillared for reaching

8    out to state court counsel.  Your Honor, in this case, as

9    will be obvious from the exhibits we file tomorrow --

10             THE COURT:  Are you filing an amended disclosure

11   statement tomorrow?

12             MS. BALL:  That will follow with the trust

13   distribution procedures as well.  We took -- and we thank --

14   actually, we thank Ms. Dine for her comments on the

15   disclosure statement and we are busily working on that.

16             But we met with at least 16 of the roughly 20

17   state court counsel in all of these cases.  And we shared

18   with each one in detail the number of cases that they had

19   against each parish and what the competition of other cases

20   were in that parish.

21             THE COURT:  Are you putting that in a disclosure

22   statement?

23             MS. BALL:  Yes, we are.  It's all going to be

24   there.  Because we've already shared it.  They all know it.

25             THE COURT:  I wish you had shared it to me before

Page 70

1    I spent the time going through every page.

2              MS. BALL:  Well, now you deny the motion, that

3    will be there.

4              In addition to that, Your Honor, we met with

5    counsel.  We asked them exactly the question you just asked,

6    which is what are you going to do.  Your Honor saw from the

7    disclosure statement that we filed that there are 312 cases

8    against parishes that have three or more cases.

9              And so when we met with each of these counsel, we

10   asked them, what are you going to do?  How can dismissal

11   help you at all?  They said, well, we'll have insurance.

12   Given all the complications on foreclosing on churches and

13   schools, we'll still have the insurance.  Which is what led

14   -- frankly, and I think it's a concession that the committee

15   made -- that they're looking for more money.  It's all going

16   to come from three places, Judge.  Co-defendants, which Mr.

17   Stang just spoke eloquently about with the Jesuits, they are

18   free to go after co-defendants here.  Of course, including

19   the Jesuits, the Franciscans, the Marists.  No one is

20   stopping that.  That's free.  Our claim doesn't even touch

21   that.

22              But beyond all that information and disclosure

23   that we have made already, the three places you get more

24   money are working with us to increase the borrowing against

25   Arrowood and line up against New York state with the benefit

Page 71

1    of the decision Your Honor just recognized that we got out

2    of New York Supreme on Friday night against Chubb.  Co-

3    defendants, if you want our help in trying to get them to

4    come in and put in more money, we're happy to do that.  We

5    offered that.  So insurance co-defendants and whatever we

6    can get on an Arrowood borrowing.  They don't talk to us

7    about that.  So this failure to communicate seems to

8    continue.

9            But in any event, our failure to communicate with

10   you, Your Honor, is clearly being remedied.  By this time

11   tomorrow, they will have those exhibits.  Shortly after that

12   --

13           THE COURT:  As I said, I would have appreciated

14   reading it before I spent hours and hours...

15           MS. BALL:  Well, it's not going to change that

16   much.  But it will give you the facts behind what you

17   wanted.

18           I am sorry that Your Honor went through that.  But

19   if we were -- as you know, we had homework to do, which we

20   did.  And in the face of the motion to suspend, part of our

21   homework was, well, if that happens, you shouldn't do it.

22   But if you deny the motion, it will now be there.  And my

23   apologies, Judge, that our homework, we got connected to

24   that consequence which you have now undone and that

25   information would clearly be there.

Page 72

1           So, Your Honor, the other fact is it is also

2    unknown to Mr. Stang, through no fault of his own, but I can

3    tell you we are getting responses from state court counsel

4    who are waking up to the reality of what dismissal will mean

5    to them and their clients.  And I think in some respects I

6    don't know how two-thirds of the claimants in this case --

7    well, a little bit less -- almost 65 percent affected by

8    Arrowood, which means that they can't even try their cases,

9    at least for six months.  A lot of people think a lot

10   longer.  It may have caused people to seriously rethink.

11          But we are standing, there is no more from the

12   parishioners and there is no more from the diocese.  That's

13   where we are.  The other three sources remain; co-

14   defendants, insurance, and getting in the boat and rowing

15   with this.

16          THE COURT:  You say no more from the parishes.  It

17   will be interesting to see what happens if some of the

18   plaintiffs' lawyers hit it big against the parishes.  Are

19   they really going to be saying no more?

20          MS. BALL:  Well, Your Honor, aren't you assuming

21   that a parish would withstand the verdict?

22          THE COURT:  I'm sorry?

23          MS. BALL:  Aren't you assuming that a parish would

24   withstand the verdict?

25          THE COURT:  They'll get every penny they can out

Page 73

```
 1    of a parish.

 2              MS. BALL:  How?

 3              THE COURT:  Well, we'll see I guess.

 4              MS. BALL:  We'll see.

 5              THE COURT:  Let me ask you a couple of questions.

 6    You may know the answers to these.  So there are how many

 7    cases in state court that have been filed?  Two-hundred-

 8    and...

 9              MS. BALL:  You mean overall?  No, Your Honor.

10    Including cases against the Diocese -- Mr. Stephens, correct

11    me -- but it's over 400.

12              MR. STEPHENS:  Yes.  It's approximately 450 in

13    total, Your Honor.  Roughly half of those name the Diocese

14    and are subject to the automatic stay.  And the other

15    roughly 225 were the subject of the PI hearing.

16              THE COURT:  Here's my question.  I don't know,

17    maybe there isn't anybody in this category.  Are there

18    people who filed claims in this case who did not file state

19    court actions?

20              MS. BALL:  Yes.

21              THE COURT:  And what happens if the case is

22    dismissed because the window closed on CVA?  What happens to

23    them?

24              MS. BALL:  Well, that's a very good question, Your

25    Honor.  We have asked the Committee if they've considered
```

1    that.  I don't know.  But maybe they have an answer.

2           THE COURT:  So you don't have an answer.

3           MS. BALL:  I don't have an answer, Your Honor.

4           THE COURT:  Your position is what?

5           MS. BALL:  But we have pointed out to them the

6    number of pro se claimants, mostly pro se.  Some with

7    lawyers as well.  And we've met with individual state court

8    counsel --

9           THE COURT:  How many --

10          MS. BALL:  This -- we asked that.

11          THE COURT:  How many people does that involve?

12   How many people filed claims in this case who do not have a

13   pending state court action?

14          MS. BALL:  I am hearing directionally, Your Honor,

15   the number is somewhere in the area of 50.

16          THE COURT:  In what?

17          MS. BALL:  I think it's in the area of 50.

18          THE COURT:  Okay.

19          MS. BALL:  Fifty.  But we can't -- we obviously

20   can confirm that again with the Committee.

21          THE COURT:  I spent a little bit of time thinking

22   about what happens if the case gets dismissed.  What are the

23   consequences of it?  How many people are there who filed

24   claims in this case but don't have pending state court

25   actions?  The CVA window closed.  I don't know whether there

Page 75

1    is a state court doctrine that would allow them to file

2    lawsuits in state court.  That was one area I thought about.

3            I also thought about what happens to the adversary

4    proceedings that have been filed here.

5            MS. BALL:  Your Honor, only one remains unsettled.

6            THE COURT:  That's the cemetery?

7            MS. BALL:  Cemetery.  And I think it will become

8    clear that we are working very hard on bringing a settlement

9    for that and have counted on it as we move forward towards a

10   plan.

11           THE COURT:  What happens --

12           MS. BALL:  It is dismissed --

13           THE COURT:  What happens to the four district

14   court insurance coverage adversaries?

15           MS. BALL:  I think if Your Honor looks at our

16   proposed order of dismissal that we attached to the motion

17   to approve our solicitation procedures, we provide that

18   those continue.  Post-coverage will still be an issue.

19           THE COURT:  Because I looked -- a complaint today,

20   and it alleged 1334 jurisdiction.  I think there may be

21   diversity as to all of the insurers who are named, and it

22   doesn't assert diversity jurisdiction.  But I did have a

23   question.  What happens to those cases?  Do they have to

24   start all over again?  Maybe they start in New York Supreme

25   Court.

Page 76

1          MS. BALL:  I think, Your Honor, that would depend

2     on whether the insurers move to dismiss for a lack of

3     jurisdiction.  And we don't think they will succeed.  But

4     our order at least preserve those actions.

5          THE COURT:  Well, your order can say whatever it

6     wants.  It doesn't mean it's necessarily the order that gets

7     entered.

8          MS. BALL:  I understand, Your Honor.  But that's

9     our proposal.

10          THE COURT:  I just don't know whether -- I tried

11     to think through what are the consequences.  I thought about

12     insurance coverage claims, I've thought about proofs of

13     claim where there's no state court action that was filed.

14          MS. BALL:  Proofs of claim in Delaware on

15     Arrowood.  Pursuing the New York State Security Fund as the

16     only insured that has a massive claim worth fighting them

17     on.

18          THE COURT:  All right.  I don't know.  This is not

19     the time for it.

20          MS. BALL:  Your Honor, this is -- all I wanted to

21     do was clarify that all that information -- we heard you

22     will be available.  We're aiming for this time tomorrow.

23     State court counsel are talking -- oh, by the way, Your

24     Honor, the reason why we were talking to them was so they

25     would be aware of this information.  They weren't.

1          THE COURT:  The only other point I would make on

2     it is as I understand it, the two mediators are willing to

3     resume.

4          MS. BALL:  Well, let us think about that, Your

5     Honor.  But I apologize for the length of what I said given

6     your action in denying the -- I just wanted to point out

7     those three sources, the ones that Mr. Stang identified in

8     California were made available here to the Claimants, co-

9     defendants.  Have at it.

10          THE COURT:  In denying Mr. Stang's motion, it is

11     in no way intended to preclude if Justice Steinman has a

12     proposal that he is going to make to counsel in the case and

13     they make another motion to lift the stay as to particular

14     actions to the extent there is a stay.  What I ruled in

15     denying there motion is not at all intended to suggest that

16     such a motion wouldn't be appropriately considered and ruled

17     on.

18          MS. BALL:  I understand that, Your Honor.  And

19     since we've heard -- we understand Judge Steinman has

20     control over his -- I thought it's roughly 50 cases.

21     Correct?  And perhaps you can address the discovery issue.

22          MR. GEREMIA:  There are roughly 44 --

23          THE COURT:  Identify yourself.

24          MR. GEREMIA:  May it please the Court.  Todd

25     Geremia from Jones day for the Debtor.

1            Your Honor, there are 44 cases being actively

2    litigated before Judge Steinman that involve parishes.

3    There are a separate group of six of those that are high

4    school cases.

5            As to the 44 cases -- and you heard Mr. Stang

6    talking about the fact that they want to proceed as against

7    parishes and proceed with respect to insurers -- there is

8    that whole universe of cases that is proceeding before Judge

9    Steinman.

10           THE COURT:  None of those are Arrowood cases.

11           MR. GEREMIA:  None of those are Arrowood cases.

12   Judge Steinman has directed that any case subjected to the

13   Arrowood stay will remain stayed unless and until a

14   plaintiff brings the issue before Judge Steinman to try to

15   get that case to resume.

16           THE COURT:  Okay.

17           MR. GEREMIA:  So those cases are proceeding.  The

18   Diocese is providing non-party discovery with respect to the

19   parish cases.  We are just now in the process of working out

20   a coordinated procedure at Judge Steinman's direction to

21   arrange for a uniform set of disclosures, a uniform

22   response, and a procedure to arrange for coordinated

23   depositions of diocesan personnel.

24           One of the many reasons -- there's no point in

25   piling on test cases on top of that.  They've already got

Page 79

1      all these cases being actively litigated.

2              THE COURT:  Well, the test cases may be among

3      those.  I don't know.

4              MR. GEREMIA:  Yeah.  In fact, state counsel

5      proposed four test cases to Judge Steinman from among that

6      universe.

7              THE COURT:  And you're not -- I don't know, who is

8      representing the parishes in those cases?

9              MR. GEREMIA:  Parish have separate counsel, Mr.

10     Davie and Charles Adams.

11             THE COURT:  Did the parishes suggest that test

12     cases ought to include -- you know, if it's going to be

13     meaningful, it's going to be an array of cases, strong and

14     weak.  Because otherwise it's a meaningless exercise.

15     Meaningless exercise for those who it payday.  And I take it

16     you remain unwilling to confer with the Committee about

17     selection of any test cases.

18             MR. GEREMIA:  We do, Your Honor.  I mean, for some

19     of the reasons addressed in our papers, we don't think it's

20     appropriate in this context.

21             THE COURT:  Well, I think your opposition, which I

22     read carefully and read some of the cases cited, is not

23     well-taken.

24             MR. GEREMIA:  It's also going about it improperly.

25     You don't just leapfrog the whole process by plucking out

Page 80

1    cases and saying we're going to --

2              THE COURT:  No.  You would meet and confer and you

3    would agree that we're each going to pick two, we're each

4    going to pick three.  We think they should more or less be -

5    - you know, what the characteristics should be.  That's what

6    happened in GM.  Okay.  There was an initial flurry of

7    activity as to what happened.  But that's essentially what

8    happened.  That's what -- that's what happens when

9    bellwether or test cases are suggested.  There's a dialogue.

10   There is a selection.  They're intended to be representative

11   in some fashion or another.  But people engage in good faith

12   in discussions.  They don't just say just say no.  And

13   that's what your position is.  So we'll deal with it

14   accordingly.

15             MR. GEREMIA:  Yeah.  And we don't think there's

16   ever been a case, abuse context, where this has been an

17   appropriate mechanism.

18             THE COURT:  You know, if the case gets dismissed,

19   you're going to be in that context.  You're going to be in

20   that context.  And you're hanging on by a bare thread.  If a

21   disclosure statement gets denied and the Committee -- I'm

22   not going to sua sponte rule.  If the disclosure statement

23   gets denied the Committee makes a motion to dismiss,

24   what I said in the last order I entered, I meant.  Okay?  It

25   seems obvious to me the committee didn't really mean it.  I

Page 81

1    questioned whether they really meant it then.  But

2    subsequent history shows they didn't really mean it.  But

3    there comes a point where they say we really mean it, Judge.

4    This has gone on too long.  You know, we put off from the

5    docket for today the motions to remand to state court in New

6    York County.  Those will come on for hearing.

7              MS. BALL:  We are aware of that, Your Honor.  I

8    rise only for two reasons.  One, I am corrected by my

9    colleagues that the number of POCs without a CVA action is

10   150 of our remaining 500.  So the issue is much larger than

11   I had initially thought.  And of course we will share that

12   list with the committee if they don't already have it.

13             Your Honor, just food for thought.  And this is

14   certainly not my area and certainly not Mr. Stang's area.

15   But to the extent that you draw a ring around cases you

16   think will make it to trial, haven't you already preselected

17   cases that aren't representative?

18             THE COURT:  No, we haven't.

19             MS. BALL:  If you just erase --

20             THE COURT:  No, I'm sorry.

21             MS. BALL:  If you just erase the notice issue,

22   Judge, if you erase it, what kind of test cases do you have?

23   You need pretrial procedure.

24             THE COURT:  So tell Justice Steinman that you want

25   noticed cases.

Page 82

1           MS. BALL:  Guess what we are doing, Judge Glenn?

2     That is exactly what we are doing.  Thank you.

3           THE COURT:  And produce all of your files so that

4     everybody -- all other claimants can --

5           MS. BALL:  Well, that is -- indeed, I didn't know

6     you wanted to hear about discovery.  But that is indeed

7     pending in front of Judge Steinman.

8           THE COURT:  I know.  If you can't work it out and

9     it comes here, I will decide it.

10          MS. BALL:  Well, Judge Steinman may decide it

11    when?  This coming week?

12          THE COURT:  I'll be very happy if he decides it.

13          MS. BALL:  It's before him.

14          MR. GEREMIA:  There is a process in place to

15    determine if the Diocese is going to be producing abuser-

16    specific files in each case and there will be a process

17    further to that for --

18          THE COURT:  I would be much happier if he decides

19    it than I.

20          MR. GEREMIA:  Yeah.  It's underway in state court.

21          THE COURT:  All right, Mr. Stang?

22          MR. STANG:  Your Honor, my comment wasn't just

23    about those cases about Justice Steinman, it was

24    (indiscernible).

25          Just two comments.

Page 83

1          THE COURT:  Do you have a position on what about

2     those people that filed proofs of claim that haven't filed?

3          MR. STANG:  Section 108.  They have 30 days.

4          Your Honor, we are asking you to continue the

5     disclosure statement if in fact they file it tomorrow.  I

6     wasn't quite sure I heard a commitment to that.  It sounded

7     like we were close.  But we need our full --

8          THE COURT:  It sounds like they're filing exhibits

9     to the disclosure statement.  I don't know whether they're

10    filing the disclosure -- a new disclosure statement.

11         MR. STANG:  Given the holidays and our entitlement

12    to 28 days' notice, we would ask that the disclosure

13    statement hearing be vacated because we will not have the

14    full period of time.  And you made a comment at the last

15    hearing about deadlines -- the effect of holidays.  And we

16    should be given full time and not have to deal with the

17    Christmas --

18         THE COURT:  You were the unreasonable one.

19         MR. STANG:  Sorry?

20         THE COURT:  You were the unreasonable one.

21         MR. STANG:  No, they were.

22         THE COURT:  Oh, were they?

23         MR. STANG:  I think you blamed them.  I think it

24    was shame on you.  Right, right.

25         THE COURT:  You're right.  It was shame on them.

Page 84

1    It was shame on the Debtor.  I apologize, Mr. Stang.

2              MR. STANG:  It's okay.  There will be occasions,

3    I'm sure.  We've already had them earlier today.

4              So we are asking to have that vacated.

5              THE COURT:  I'll have to see what they file.  Put

6    in a letter -- after you see it, you can -- don't file a

7    formal motion.  File a letter request.

8              MR. STANG:  Okay.  Thank you.

9              THE COURT:  First ask them and then --

10             MS. BALL:  The 28 days to the 16th is from today.

11   So we may be behind, but not by much.  And we would

12   anticipate --

13             THE COURT:  You want Mr. Stang to work on New

14   Year's Eve on your papers.

15             MS. BALL:  No.  I will notice it tomorrow.  And to

16   the extent --

17             THE COURT:  You want me to work on New Year's Eve?

18             MS. BALL:  No, I don't.  I hope all of this will

19   be filed this week, Your Honor.  That is our objective.

20             THE COURT:  I'm leaving on Friday and coming back

21   on January 2nd.

22             MS. BALL:  Well, do you want it or not?

23             THE COURT:  And I wasn't planning on reading

24   several hundred pages disclosure statement --

25             MS. BALL:  Well, you already read it.  So

1    blackline should be very helpful.

2              THE COURT:  Thank you very much.

3              MS. BALL:  And the exhibits answer your questions.

4              THE COURT:  Thank you very much.

5              MS. BALL:  Well, Your Honor, time is money.

6              THE COURT:  Please -- well...

7              MS. BALL:  And you've just made that clear.  And

8    we painfully understand it.

9              THE COURT:  Maybe it should be a higher holdback.

10   I don't know.  In deciding when I'm going to hear it, I will

11   primarily take account of my schedule and my law clerks'

12   schedules.  Because I am not going to have us knock

13   ourselves out because you decided to file just before the

14   Christmas and New Year holiday.  So we'll see.  So talk to -

15   - let him see what you file.  Talk to Mr. Stang as to

16   whether you can agree on an adjustment schedule.  If not,

17   I'll see what happens when I see it.

18             MS. BALL:  As you said, it will be up to Your

19   Honor in the end.  And we can only recommend to you.  Thank

20   you, Your Honor.

21             THE COURT:  Mr. Stang is correct.  It was one of

22   your colleagues that I got very upset about not respecting

23   professional courtesy with respect to scheduling.  Take my -

24   -

25             MS. BALL:  Your Honor --

1          THE COURT:  Use some professional courtesy to me

2    as well.  Okay?

3          MS. BALL:  He was well-intentioned and motivated

4    by what he had read in Mr. Moore's declaration about the

5    longer it takes, the less money we have.  Not to burden

6    anyone.  But it's now the 16th.  That's 28 days from today

7    or tomorrow depending on how you count.  So we are doing

8    what we can.

9          And thank you, Your Honor.  We did our homework,

10   we'll be ready.

11         THE COURT:  I want to be clear; I don't want to

12   spend my holiday break reading your papers.  Okay?  That's -

13   - I won't say any more about it now.  Okay.  We are

14   adjourned.

15         (Whereupon these proceedings were concluded at

16   3:54 PM)

17

18

19

20

21

22

23

24

25

Page 87

1                C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 21, 2023

**[& - 2725]**                                                     Page 1

| & | 11   6:2 45:10 | 2 | 2650   3:4 18:13 |
|---|---|---|---|
| **&**   2:9,13,16 5:5 5:7,10 7:10 10:9 17:4,9 21:5,9 39:5 41:12 43:17 45:12 57:20 | **111,980.50.** 35:24 **11501**   87:23 **11553**   8:18 **12.50**   2:15 **12151**   87:6 **13**   59:17 **13,823.51.**   2:15 17:11 **130,751.25.** 18:1 **1300**   8:10 **1334**   75:20 **135**   50:16 **14**   31:23 32:2 **149**   59:13 **14th**   49:14 **150**   81:10 **153,662.18.** 2:22 **157**   57:9,13 **16**   69:16 **16th**   49:14,15 84:10 86:6 **17,357.31** 27:19 **17,357.31.**   3:17 4:25 **18,000**   13:25 16:2,20 **19**   1:15 6:12,16 **19th**   49:15,15 **1st**   63:2,3 | **20**   50:22 69:16 **20-01226**   6:6 **20-12345**   1:3 12:4 **200**   63:18,24 64:2 68:13 **200,000**   59:15 **2001**   9:3 **20036**   9:4 **201**   9:17 **2023**   1:15 2:4,5 2:13,13,14,15 3:3,3,15,15 4:7 4:7,23,23 5:6,7 5:14,15 6:12 6:16 22:7,8 87:25 **204**   6:8 **21**   87:25 **22,244**   36:16 **22,244.00**   5:16 **22,910.93.** 17:25 **225**   73:15 **23rd**   22:7 46:20 **2488**   22:5 **24th**   22:8 **250**   7:19 10:3 61:9 **26.65.**   4:17 20:20 35:13 **2647**   2:7 17:6 **2648**   2:16 **2649**   2:22 17:24 | 18:14 **2651**   3:10 19:1 **2652**   3:18 19:9 19:17 **2653**   3:24 19:22 **2654**   3:10,18 3:24 **2661**   4:10 20:8 **2662**   5:1 27:18 **2663**   4:18 20:19 35:12 **2664**   5:10 21:6 **2665**   5:1,10 **2666**   5:17 36:16 **2670**   2:22 3:4 **2673**   2:7,16 **2677**   6:3 **2678**   17:7 **2679**   6:3 **2680**   5:22 **2681**   6:3 **2685**   4:10 **2686**   2:7,17,23 3:4,10,18,24 4:10,18 5:1,10 5:17,22 **2710**   6:3 **2711**   6:3 **2712**   6:3 **2713**   6:3 **2721**   5:22 36:19 **2725**   5:10 |

| 0 |
|---|
| **0**   3:24 5:22 **0.50.**   5:17 **010,870.50** 2:21 |

| 1 |
|---|
| **1**   2:4,12 3:3,14 4:7,22 5:6 **1,010,870.50** 17:24 **1,808.80**   27:20 **10**   8:3 39:14,25 50:22 51:12 **100**   64:1 **100,000**   50:15 67:20 **10004**   1:13 **10014**   9:18 **10017**   7:13 10:12 **10022**   7:6 9:11 **1006**   9:17 **1010**   8:17 **10100**   8:10 **10281**   7:20 10:4 **105**   5:25 **108**   83:3 |

**2726**   5:11
**2727**   6:4
**2729**   6:4
**273,698.50**
   18:14
**2730**   6:4
**2731**   2:7,17,23
   3:4,10,18,24
   4:11,18 5:1,11
   5:17,22 6:13
**2732**   6:23
**2734**   6:11,17
**2735**   6:19
**2736**   6:15
   12:10
**2767**   61:19
**28**   83:12 84:10
   86:6
**28th**   37:16
**2:01**   1:16
**2nd**   84:21

**3**

**3,933,595.25**
   5:9 21:7
**30**   2:4,13 3:3
   3:15 4:7,23 5:7
   61:9 83:3
**300**   87:22
**305**   5:25
**312**   70:7
**318,659**   20:9
**318,659.00**   4:9
**320**   6:7,22
   39:12
**330**   87:21
**333**   8:17

**34**   34:25
**34th**   7:12
   10:11
**359**   60:20
**362**   5:25 22:2
**38**   31:22
**3:54**   86:16
**3rd**   24:12
   28:17

**4**

**4,141**   36:20
**4,230.36.**   4:9
   20:9
**4,613,361.75**
   2:6 16:17
**40**   57:21 59:2
**400**   9:3 73:11
**400,000**   50:25
**4001**   22:3
**403**   10:18
**44**   77:22 78:1,5
**448.41.**   3:9
   19:2
**450**   50:13
   73:12
**46th**   7:5

**5**

**50**   13:7,13
   14:24 36:16
   68:11 74:15,17
   77:20
**500**   10:18
   50:13 61:23
   81:10
**516,604.80**
   3:17 4:25

   27:18
**53,593.33.**   2:6
   16:17
**53703**   8:4
**55**   7:5
**59**   6:9
**599**   9:10

**6**

**6**   39:13,18 43:3
**6,247.50**   5:21
**6/1**   2:14
**6/1/2023**   2:5,21
   3:8,16,23 4:8
   4:16,24 5:8,16
   5:21
**600**   8:3
**600,000**   60:21
**647.59.**   18:15
**65**   72:7

**7**

**7,990**   19:12,18
**706**   2:15
**706,112.50**
   17:11
**75**   47:9,12,14
   67:14
**750**   61:12
**750,000**   61:9
**780**   7:12 10:11
**794**   6:22

**8**

**8**   59:17
**80**   64:1
**84,000**   30:2
**84,366**   24:15

**84,366.60.**
   23:22 28:8
**85,000**   31:3
   34:3
**86,240**   19:1
**86,240.00**   3:9
**880,996.95.**   5:9
   21:7

**9**

**9,495**   20:20
   35:12
**9,495.00**   4:17
**9,810**   19:23
**9,810.00**   3:23
**9/30**   2:15
**9/30/2023**   2:6
   2:21 3:9,16,23
   4:9,16,24 5:8
   5:16,21
**90**   63:10
**90067**   8:11
**960**   59:11
**98104**   10:19

**a**

**aaron**   9:13
   17:21
**aaronson**   3:22
   19:22
**abide**   31:4
   32:14
**able**   14:3 19:11
   32:1,21,21
   40:12 48:12
   54:17
**absolute**   22:17

[absolutely - amended]                                                           Page 3

| | | | |
|---|---|---|---|
| **absolutely** 47:6 60:6 | **actual** 2:3 4:15 | **adversary** 6:6 75:3 | **agreements** 52:24 |
| **abuse** 49:4 50:8 59:16,18 60:23 61:10 80:16 | **actually** 30:10 35:1 44:4 45:1 48:13 55:21 58:5,13,17 63:20 64:4 69:14 | **advising** 52:4 **advisor** 2:12 4:6 19:17 **affected** 27:3 68:13 72:7 | **ahead** 13:14 14:11 18:2 44:24 47:23 **aiming** 76:22 **ain't** 67:13 |
| **abuser** 82:15 **abusers** 60:22 **access** 39:20 52:9,25 53:25 54:20,22 | **ad** 47:8 **adams** 79:10 **add** 13:3 18:4 38:23 45:1 52:3 53:5 59:12 65:12 | **affiliates** 45:17 46:14 61:7 63:1 **afford** 13:10 **afternoon** 12:3 17:8,21 18:17 20:11,21 21:8 37:12 45:11 | **al** 6:8 **allegations** 59:17 **alleged** 49:3 60:23 75:20 **allegedly** 58:22 **allow** 22:3,13 53:17 75:1 |
| **accessed** 39:22 **account** 19:13 85:11 **accounting** 27:13 | **addition** 12:11 53:22 70:4 **additional** 48:6 **address** 38:5 39:2 56:10 77:21 | **agenda** 6:11,11 6:15,16 12:5,8 12:9,12,21 45:7 | **allowance** 2:2 2:10 3:12 4:4 4:20 5:3 **allowed** 31:17 39:15 43:7 53:25 63:24 |
| **accurate** 28:14 87:4 **accurately** 18:18 20:13,23 | **addressed** 35:15 40:4 79:19 **addressing** 37:10 | **aggregate** 50:8 59:14 **ago** 58:18 **agree** 25:13 30:10 33:7 | **alternatives** 45:20 **alvarez** 2:9,13 2:16 17:4,6,9 17:15 |
| **acknowledge** 62:4 **act** 59:16 **acting** 32:6 **action** 74:13 76:13 77:6 81:9 | **adequate** 51:19 51:22 53:15,16 **adjourned** 23:25 86:14 **adjustment** 85:16 | 46:11 48:20 58:23 59:1 60:15 80:3 85:16 | **amala** 10:16,17 10:21 37:25 38:3,13,15,25 40:4,25 42:16 48:8 |
| **actions** 6:2 45:9 54:10 73:19 74:25 76:4 77:14 | **adjustments** 16:4 **administrative** 63:24 | **agreeable** 14:22,23 **agreed** 13:2,24 16:20 34:15 54:13 61:4 | **amala's** 43:11 **amend** 50:10 **amended** 5:19 6:11,15 12:4,8 |
| **active** 57:24 **actively** 78:1 79:1 **activity** 37:22 80:7 | **advance** 44:21 **adversaries** 75:14 | **agreement** 16:1 39:11 40:9 41:21 52:9 63:14,16 | 12:9 36:18 37:2 38:11 |

49:13 69:10
**america** 2:10
  2:14,16
**amount** 20:13
  25:13 36:24
**amounts** 24:13
**analogies**
  55:25
**anderson**
  48:12
**andrew** 10:7
  12:6 35:14
**angeles** 8:11
**answer** 22:21
  34:2 46:10
  66:25 74:1,2,3
  85:3
**answering** 25:5
**answers** 16:13
  73:6
**anticipate**
  84:12
**anybody** 16:24
  17:14 18:7,20
  19:5,19 20:4
  20:14,25 21:12
  41:8 62:11
  73:17
**anyways** 38:19
**apologies**
  38:17 71:23
**apologize**
  12:10 38:20
  77:5 84:1
**appalled** 24:4
**appear** 48:12

**appearance**
  27:23
**appearing** 21:9
**application** 2:1
  2:9,19,25 3:6
  3:12,20 4:4,13
  4:20 5:3,13,19
  12:20 13:1,6
  13:18 14:1,7
  15:9 16:9,16
  16:25 17:4,6,7
  17:10,15,24
  18:6,9,13,16
  18:19,21,25
  19:6,8,21 20:5
  20:7,19,23
  21:4,13,23
  24:3 25:11
  27:16 28:5
  33:16 35:11,12
  36:7,15,18
**applications**
  12:13,18 13:7
  13:13,14,20,21
  14:9,13,15,18
  15:13 16:2
  18:10 22:10
  24:19 29:3
  37:5,9
**applied** 29:14
**apply** 24:18
  30:14,22
**applying** 62:3
**appraisals**
  53:11
**appreciate**
  28:21 30:3

44:19,20 55:23
**appreciated**
  45:21 71:13
**approach** 33:7
  50:5 55:25
**appropriate**
  21:15 32:24
  41:20 79:20
  80:17
**appropriately**
  77:16
**approval** 21:23
  25:10 54:21
**approve** 27:12
  49:25 63:13
  75:17
**approved** 17:1
  17:16 18:10,22
  19:7,20 20:6
  20:16 21:2
  25:15 35:17,18
  36:17 51:17
  63:7
**approving** 37:2
  53:4
**approximately**
  14:13 73:12
**archdiocese**
  63:9,11
**area** 74:15,17
  75:2 81:14,14
**aren't** 16:5
  60:2 72:20,23
  81:17
**argue** 22:9
  62:8

**argued** 23:7
**arguing** 66:22
**argument** 22:6
  23:23,23,25
  24:8 64:6
**ark** 6:7
**arrange** 78:21
  78:22
**array** 79:13
**arrowood**
  31:23 48:9,10
  52:6 57:7,23
  61:12 66:4,10
  70:25 71:6
  72:8 76:15
  78:10,11,13
**aside** 42:10
**asked** 22:19
  26:18 29:23
  31:20 36:12
  40:6 41:25
  47:1 56:1
  61:19 63:22
  70:5,5,10
  73:25 74:10
**asking** 52:15
  54:16 55:3
  61:5 83:4 84:4
**assert** 33:23
  75:22
**asserting** 29:13
**assessment**
  53:13
**assets** 50:22
  51:5 53:2,12
  65:21

**assist** 40:2
**assume** 32:6
**assuming**
  72:20,23
**attached** 31:15
  41:13 52:2
  75:16
**attachment**
  53:22
**attack** 57:12
**attempt** 23:13
**attend** 47:24
**attendance**
  36:21
**attending** 26:8
**attention** 16:6
  69:7
**attorney** 2:5
  5:16 42:6
**attorneys** 7:4
  7:11,18 8:2,9
  8:16 9:2,16
  10:2,10,17
**aty** 3:16 4:24
  5:8
**automatic** 22:1
  26:20 29:13
  30:13,22 31:10
  73:14
**available** 18:5
  59:12 64:16
  76:22 77:8
**avenue** 7:12
  9:10 10:11
**average** 50:25
  65:6

**aware** 14:12
  21:18 67:11
  76:25 81:7
**awhile** 33:18

**b**

**b** 1:21
**back** 15:12
  35:18,19 39:10
  40:16 42:2,10
  49:11 54:10,15
  57:11 59:25
  60:6 62:7,8
  63:13 65:4
  84:20
**background**
  28:19 29:5
  31:6 32:15
**bad** 33:17
**bair** 3:13,15,18
  4:21,23 5:1 8:1
  8:6 21:22
  22:11 23:16,17
  24:15,25 25:6
  25:8 27:16,22
  27:25,25 28:10
  28:13,18,21,24
  29:4,25 30:3
  30:10,16 31:4
  31:22 32:12
  33:2,13,21
  35:7,9
**balance** 15:23
**ball** 10:6 56:1
  56:19 68:1,2,6
  68:10,12,20,24
  69:6,12,23
  70:2 71:15

72:20,23 73:2
73:4,9,20,24
74:3,5,10,14
74:17,19 75:5
75:7,12,15
76:1,8,14,20
77:4,18 81:7
81:19,21 82:1
82:5,10,13
84:10,15,18,22
84:25 85:3,5,7
85:18,25 86:3
**bankruptcy**
  1:1,11,23 6:1
  16:11 22:2
  29:7 34:25
  44:4
**bare** 47:12
  80:20
**basic** 49:4
**basically** 55:22
  58:10
**basis** 15:24
  46:22 53:3
  68:16
**bates** 44:16
**bear** 23:9,17
  24:7
**beginning**
  13:12
**behalf** 20:1
  28:1 37:13
  43:17 57:20
**believe** 12:15
  35:15 37:9
  40:5 41:4,12
  41:23 58:12,23

59:13
**bellwether**
  48:25 50:4
  55:13,20,24
  80:9
**belts** 61:8
**bench** 13:12
  22:18 51:24
**bene** 23:20
**benefit** 15:11
  70:25
**berkeley** 4:5,7,
  4:10 20:8,12
  20:15
**best** 22:11
  24:14 28:5
  47:5 51:20
**better** 48:12
  49:21 50:1
  51:16 62:19
**beyond** 70:22
**big** 33:15 66:2
  72:18
**bill** 36:3
**billing** 37:1
**bit** 13:5 24:17
  67:25 72:7
  74:21
**blackline** 85:1
**blamed** 83:23
**blind** 53:5
**blow** 32:9
**blvd** 8:10
**boat** 72:14
**borrowing**
  70:24 71:6

**boulevard** 8:17
**bowen** 3:15,17
  4:23,25
**bowling** 1:12
**breach** 45:15
**breaches** 37:18
**break** 50:3
  86:12
**breakdown**
  23:12
**brief** 34:20
**briefed** 57:16
**briefly** 37:14
  43:1
**bring** 32:16
  60:17
**bringing** 54:8
  75:8
**brings** 78:14
**brought** 16:6
  29:16
**brunt** 24:7
**bums** 3:13,15
  3:17 4:21,23
  4:25
**bunch** 55:20
**burden** 86:5
**burns** 8:1
  21:22 22:9,11
  23:7,14 24:8
  24:15 25:17
  27:16
**busily** 69:15
**business** 58:10
**butler** 10:7
  12:6,7,10 13:4
  13:16 15:25

16:16,18,21,23
17:2 35:14,14
37:6,8 44:1

**c**

**c** 7:1 12:1 87:1
  87:1
**ca** 8:11
**california** 77:8
**call** 41:2 43:21
  44:8
**camera** 37:23
  39:3
**can't** 13:10
  33:7,8,11 61:2
  61:14 66:11
  67:18,19 72:8
  74:19 82:8
**carefully** 39:13
  79:22
**carried** 22:7
**carriers** 26:5
  27:3 29:17
  30:18 31:8
  32:7 33:24
  34:20 46:13
  56:20 63:1
**carry** 23:2,3
**case** 1:3 6:3
  12:16 13:9
  14:14 15:3,15
  15:19,20,23
  16:11 23:20
  24:5,21 29:8,9
  29:10,19 30:5
  30:13 32:17
  33:3 44:4
  45:10 48:4

50:3,4,5 52:21
59:5 60:3,3,19
61:4,11 62:1
62:16,23 63:25
65:20 66:7,13
66:18 67:5
68:8,21 69:4,8
72:6 73:18,21
74:12,22,24
77:12 78:12,15
80:16,18 82:16
**cases** 15:21
  29:5 31:23
  45:15,25 46:5
  46:8,9,10,11
  46:12,18,21
  47:2,3,4,16,18
  48:6,10,21,25
  49:2,4,5 50:5,6
  51:11,12 53:19
  54:2,5,6,7,18
  54:18 55:10,10
  55:11,12,13,16
  56:4,7,9,9,23
  57:3,7,21,23
  58:4,8,11,15
  58:17,18,22
  59:3,7 60:4,11
  60:12,16,24
  61:12,12 63:5
  64:12,18,21
  65:6,10 66:20
  67:7 69:3,17
  69:18,19 70:7
  70:8 72:8 73:7
  73:10 75:23
  77:20 78:1,4,5

78:8,10,11,17
78:19,25 79:1
79:2,5,8,12,13
79:17,22 80:1
80:9 81:15,17
81:22,25 82:23
**cash** 15:2
**categories** 37:1
**category** 35:22
  36:4 73:17
**catholic** 1:7 6:7
  12:3
**caught** 39:6,7
**caused** 72:10
**cemetery** 75:6
  75:7
**centre** 1:7 6:7
  12:4
**cents** 36:16
**certain** 6:1
  15:23 22:1
  29:5 44:10
  45:9
**certainly** 50:7
  62:10 81:14,14
**certified** 87:3
**chair** 56:11
**change** 66:21
  71:15
**changes** 17:1
**chapman** 33:4
**chapter** 6:2
  45:10
**characteristics**
  80:5
**characterizat...**
  26:12

[charge - compensation]

charge  25:3

charged  22:12
23:9

charging  23:4
28:6

charles  11:3
17:8 79:10

chart  51:9

chase  55:7

chewing  33:18

choice  53:17

chris  7:8 18:17

christmas
83:17 85:14

chubb  71:2

churches  70:12

cinch  61:8

circuit  15:16
64:22,22

circuits  64:13

circumstances
41:5 47:13

cite  41:15 49:1
65:1 67:4

cited  79:22

claim  43:21
44:8,12 51:5
52:6,12 59:11
60:19 61:11
70:20 76:13,14
76:16 83:2

claimant  51:1
62:16 65:5
67:21

claimants  22:2
22:3,14,20
23:6 25:23

29:20 52:11
61:23 62:13,19
62:21,22 72:6
74:6 77:8 82:4

claims  3:7,21
18:25 19:6,17
50:9,13,16,19
50:22 51:4
53:8 61:25
65:14 73:18
74:12,24 76:12

clarify  76:21

clear  25:14
33:5 42:18
43:4 45:1
61:17 75:8
85:7 86:11

clearer  56:2

clearly  53:2
71:10,25

clerks  28:5
64:25

clerks'  85:11

client  32:1 42:6
52:4

clients  22:20
72:5

close  24:7 83:7

closed  43:12
73:22 74:25

cna's  30:6

cochran  10:16
10:17

code  6:1

collaborate
47:2

colleague
12:15

colleagues  37:7
42:2,9 81:9
85:22

collect  62:15
62:17

collected  65:11

collective
46:23

colors  51:9

columbia
10:18

come  13:11
26:16 35:19
53:24 56:22
60:6 70:16
71:4 81:6

comes  35:4
81:3 82:9

comfortable
32:18

coming  25:15
29:2 64:2
82:11 84:20

comm  3:16
4:24 5:8

comment
82:22 83:14

comments  15:8
15:9,10 36:9
39:8 69:14
82:25

commitment
83:6

committed
49:3

committee  4:1
5:5,24 7:11 8:2
8:9 12:16 21:6
22:4,7,17 23:7
24:25 25:21,22
27:18 28:1
29:7,11 30:6
30:13,23 32:15
32:18 37:20
39:2,5 40:2
43:2,17,23
45:12,13,16
49:18 52:5
57:20 67:3,5,6
67:15 70:14
73:25 74:20
79:16 80:21,23
80:25 81:12

committees
29:5 63:6

committee's
45:8

communicate
34:8 71:7,9

communicated
26:4 34:22
42:7

companies
26:1 34:6

company  5:15
27:7 29:12,12
30:9 36:15

company's
31:13

compel  22:13

compensation
2:2,10,20 3:1,7

[compensation - counsel]                                      Page 8

3:13,21 4:5,14
4:21 5:4,14,20
**competition**
69:19
**competitors**
67:7
**complaint**
75:19
**complete** 23:1
**completely**
51:14
**complications**
70:12
**comply** 15:14
37:21,23
**compute** 63:21
**concern** 15:5
25:19 26:14
**concerned** 26:2
43:23
**concession**
70:14
**concluded**
86:15
**concludes** 37:4
**concocted**
22:16
**conduct** 38:5
**confer** 41:17
43:3 44:1,22
79:16 80:2
**conference** 4:1
6:8,20,22 33:9
34:1,2 37:15
41:17,25 43:19
44:20

**conferences**
33:6 34:10,11
34:14 47:25
**conferred**
37:20 54:25
**confidence**
68:22
**confidential**
39:20,22 42:16
**confidentiality**
39:11,14 40:9
40:17 41:3,21
42:3 52:16,19
**confirm** 12:23
50:14 74:20
**confirmation**
46:12,14
**confirmed**
40:17 56:20
62:19 67:6
**conjunction**
36:10
**connect** 32:1
**connected** 16:8
71:23
**connection** 6:9
6:20 23:5,10
24:13 37:18
63:3 65:15
**consensual**
13:25 16:1,4
45:22 63:4,7
**consensually**
13:2
**consequence**
71:24

**consequences**
74:23 76:11
**consider** 39:9
45:20 65:13
**considered**
73:25 77:16
**considering**
41:24
**consulting** 18:1
**contain** 52:14
**contemplate**
48:15
**contemplated**
40:2
**contested** 45:8
**context** 39:15
55:24 79:20
80:16,19,20
**continue** 13:10
44:14 58:22
71:8 75:18
83:4
**continuing**
12:25
**control** 13:11
77:20
**conversation**
56:15
**conversations**
48:19
**conveyed** 27:3
39:19
**coordinated**
78:20,22
**copied** 67:11
**coran** 9:6
36:22,22 37:3

**corners** 51:21
**correct** 17:12
18:3 19:3,13
20:2 27:22
30:16,21 73:10
77:21 85:21
**corrected** 5:24
81:8
**correctly** 28:2
28:4,4
**corresponde...**
54:10 58:13
60:13
**corrine** 10:6
**cost** 14:18
**costs** 14:2 24:6
61:11 66:19
**couldn't** 24:14
**counsel** 2:20
3:2,14,21 4:16
4:22 5:5,21 9:9
20:22 21:5
24:9 25:7,16
25:24 26:12
27:17 28:1
29:6 31:18
40:8 42:19,20
45:16 47:6,7
47:21 48:7
52:8 54:21
56:3,23 59:21
66:11 67:4,10
67:14 69:8,17
70:5,9 72:3
74:8 76:23
77:12 79:4,9

**count** 57:2
86:7
**counted** 59:16
75:9
**country** 29:6
87:21
**county** 81:6
**couple** 42:2
47:17 62:17
73:5
**course** 26:20
32:14 46:4
61:10 67:22
70:18 81:11
**court** 1:1,11
6:2 12:2,9 13:4
14:6,12,17,23
15:2,6,11,15
15:19,25 16:12
16:15,19 17:3
17:10,13,19,23
18:7,12,20,24
19:4,5,12,16
20:3,4,14,18
20:25 21:4,11
21:18,19,25
22:25 23:14,17
24:18 25:3,9
25:23,24 26:10
26:16,25 27:5
27:11,15,23
28:3,12,15,20
28:22,25 29:16
29:18 30:1,8
30:15,24 31:5
31:18,19 32:1
32:9,25 33:3

33:15 34:1,7
34:10,14,24
35:8,10,17
36:6,12,24
37:4,11,16,22
37:25 38:6,8
38:10,10,13,23
39:1 40:8,10
40:11,14,21
41:2,8 42:13
42:15,19,20,21
42:25 43:10,14
43:20 44:6,24
45:4,7,9,16,24
46:4 47:6,7,20
47:21 48:7,10
48:15,16,17
49:8,16 50:10
50:20 52:4,8
53:7 54:2,24
55:5,8 56:3,3
56:14,23 57:2
57:3,4,7,14,23
58:1 60:4
61:17 62:2,5,6
62:8,12 63:15
64:5,11,15,18
64:24 65:5,25
66:2,6,13,16
67:3,10,14
68:1,4,9,11,18
68:22 69:3,8
69:10,17,21,25
71:13 72:3,16
72:22,25 73:3
73:5,7,16,19
73:21 74:2,4,7

74:9,11,13,16
74:18,21,24
75:1,2,6,11,13
75:14,19,25
76:5,10,13,18
76:23 77:1,10
77:23,24 78:10
78:16 79:2,7
79:11,21 80:2
80:18 81:5,18
81:20,24 82:3
82:8,12,18,20
82:21 83:1,8
83:18,20,22,25
84:5,9,13,17
84:20,23 85:2
85:4,6,9,21
86:1,11
**courtesy** 85:23
86:1
**courthouse**
48:14 60:12
**courtroom**
56:12
**courts** 44:14
**court's** 20:1
37:24
**cover** 51:25,25
**coverage** 32:10
35:2,4 60:20
60:20 61:8
66:12 75:14,18
76:12
**coverages** 61:6
**crack** 66:10
**creditor** 3:16
4:24 5:8

**creditors** 5:6
5:25 51:15,18
53:12,17 66:25
**creditors'**
27:17
**currently** 32:3
57:22
**cut** 23:24 55:6
**cva** 43:21 44:8
44:11 45:2
52:8,11,16,20
52:25 53:8
54:19 73:22
74:25 81:9

---

**d**

**d** 12:1 22:2
**damages** 51:14
**dare** 24:2
**data** 50:5
55:14 56:16
**database** 37:17
43:7
**date** 31:24
87:25
**dates** 49:16
**david** 65:17
**davie** 79:10
**day** 2:5 7:17
10:1 12:7,20
13:18 14:1,7
16:1,16,24
17:6 22:18
28:25 29:10
33:9,17 35:15
37:13 44:1
48:23 51:20
77:25

**[day's - different]**

**day's** 2:1
**days** 42:2
  49:21 83:3
  84:10 86:6
**days'** 83:12
**dba** 58:22 59:8
**dbas** 60:11
**dc** 9:4
**deadlines**
  83:15
**deal** 16:3 21:22
  80:13 83:16
**debtor** 1:9 2:12
  3:3 7:18 9:9
  10:2 12:7
  13:10 20:23
  25:20,21 26:4
  27:5 28:17
  29:23 30:9,15
  30:20,20,25
  32:5 33:7,10
  33:22 34:22
  35:15 37:13
  39:15,21 40:5
  40:24 41:19
  42:4,23 43:5
  43:21 44:13,21
  47:1 49:13
  52:15,19 53:23
  54:3,8 55:1
  58:1,8,18
  59:20 60:17,18
  60:25 61:7
  62:11,25 67:2
  77:25 84:1
**debtor's** 2:5
  5:15

**debtors** 8:16
  45:17
**debtor's** 18:1
  26:12 45:17
**december** 1:15
  6:12,16 87:25
**decide** 49:7
  51:2,18 67:22
  82:9,10
**decided** 85:13
**decides** 82:12
  82:18
**deciding** 51:7
  54:25 85:10
**decision** 30:5
  30:17,19 31:15
  31:17 32:13,16
  56:8 57:6 71:1
**decisions** 31:16
**declaration**
  25:1,4 27:10
  27:12 28:16
  38:1,5,11,12
  38:24 41:1
  42:18 43:11
  52:2 53:23
  86:4
**declarations**
  24:11
**deducted** 25:12
**deducts** 63:20
  64:3
**deegan** 4:15,17
  8:15 20:19,22
  35:11
**deems** 32:23

**defendant** 58:2
  58:11
**defendants**
  55:15 70:16,18
  71:3,5 72:14
  77:9
**defense** 61:11
  66:18
**defenses** 66:12
**delaware** 76:14
**demand** 22:14
  22:14,21 25:20
  26:3,19,19,25
  27:2,5 29:8,11
  29:20,20,24
  30:8,15 31:1
  31:18,19 32:11
  34:21
**demands** 22:4
  22:23 25:22,22
  25:25 26:5
  29:15 30:7,12
  30:14 31:1,8,9
  31:12,24 32:7
  32:21
**denied** 22:17
  55:8 61:20
  80:21,23
**denies** 49:24
**deny** 70:2
  71:22
**denying** 22:8
  68:3,9 77:6,10
  77:15
**department**
  9:15 59:9

**depend** 76:1
**depending**
  86:7
**deposition**
  59:24
**depositions**
  78:23
**describe** 22:15
**desiderio** 7:8
  18:17,18,23
**designation**
  52:16,20
**desire** 47:23
**desk** 66:16
**detail** 69:18
**determine**
  82:15
**detour** 42:21
**developments**
  47:22
**dialogue** 30:20
  80:9
**diatribe** 24:8
**didn't** 23:2,3
  23:25 26:15,16
  30:22 35:21,25
  38:9 39:7
  40:10 46:16,24
  48:15 56:10,25
  60:5 80:25
  81:2 82:5
**diego** 65:2,22
**differ** 65:21
**difference**
  27:13
**different** 32:20
  49:3 62:5

65:14,24 67:16
67:17 69:5
**difficult**  23:21
24:4
**dine**  7:15 12:15
41:9,11,11
43:16,16 44:24
44:25 57:18,19
57:19,24 58:5
58:6,7 69:14
**dine's**  52:2
53:22
**diocesan**  29:7
32:17 78:23
**diocese**  1:7 6:7
12:4 22:4,13
22:15 39:18,19
40:2 46:9
51:10 53:6,9
53:12 54:1
56:11 58:11
59:4,6 72:12
73:10,13 78:18
82:15
**directed**  37:16
78:12
**direction**  78:20
**directionally**
74:14
**directive**  37:19
37:21,24
**directly**  67:3
**disallowed**
24:16
**disclose**  49:17
**disclosure**  40:3
49:9,11,12,13

49:20,25 50:8
50:25 51:6,17
51:18,21 53:4
53:15 63:7,22
64:8,9 67:18
69:10,15,21
70:7,22 80:21
80:22 83:5,9
83:10,10,12
84:24
**disclosures**
42:5 78:21
**discovery**  6:9
6:20 12:14
37:10 43:14,24
44:11 48:4
77:21 78:18
82:6
**discuss**  47:16
**discussed**
13:23 15:4
**discusses**  13:20
**discussing**  36:1
**discussion**  14:7
14:21 15:22
34:17 39:8
44:12
**discussions**
55:18 80:12
**dismiss**  47:9
62:25 76:2
80:23
**dismissal**  45:20
63:4 70:10
72:4 75:16
**dismissed**  62:1
65:3 73:22

74:22 75:12
80:18
**distribution**
69:13
**district**  1:2
37:1 57:3,3,10
75:13
**diversity**  75:21
75:22
**doc**  2:6,16,22
3:4,10,18,24
4:10,18 5:1,10
5:17,22 6:3,8
6:11,15,19,22
**docket**  12:10
39:12 81:5
**doctrine**  75:1
**document**  6:9
6:13,17 54:22
54:22
**documents**  4:2
43:6,8,21,22
44:3,8,12,17
45:2 52:16,20
54:19,20 60:23
**doe**  6:7
**doesn't**  15:11
23:22 26:20
30:11 38:5,6
39:23 49:17
53:14 64:5
70:20 75:22
76:6
**doing**  41:14
42:19 48:3
50:2 58:10
82:1,2 86:7

**dollar**  62:14
**don't**  13:9 15:3
15:8,14 16:13
18:3 21:14,20
22:22 23:8,10
23:14 24:1
27:1 28:8,10
28:13 32:5,9
33:13 35:20
36:17 38:2,15
38:18,19,21,25
40:5,23 41:4
41:15,18 47:24
48:7,25 49:12
53:7,10 56:5
56:25 60:9
61:15,18 62:20
64:20 65:6,16
65:17 66:8,12
66:19,22 67:21
68:19 71:6
72:6 73:16
74:1,2,3,24,25
76:3,10,18
79:3,7,19,25
80:12,15 81:12
83:9 84:6,18
85:10 86:11
**doty**  8:3
**doubts**  51:22
**draw**  69:7
81:15
**drink**  61:15
**dropped**  48:8
**due**  32:4

| e | | | |
|---|---|---|---|
| **e**  1:21,21 3:8 3:10 7:1,1 8:3 11:5 12:1,1 87:1 | **embedded**  36:1 | **event**  43:9 71:9 | 19:1,19,23 |
| **earie**  8:17 | **emotion**  62:24 | **events**  30:4 | 20:9,20 21:7 |
| **earlier**  84:3 | **emphasize** 33:21 | **eventually**  59:9 | 21:16 27:19 |
| **early**  32:4 | **empty**  56:11 | **everlaw**  37:17 37:22 39:8,15 39:23,23 41:14 52:10 54:21 | 35:12 36:16,20 63:24 |
| **ears**  29:2 | **encompassed** 36:4 | | **expensive** 24:21 |
| **eastern**  6:13,17 57:3 | **ended**  59:9 | **everybody** 34:14 66:9 82:4 | **experience** 29:21 |
| **ecclesia**  54:13 58:25 60:15 61:4 | **enforceable** 34:21 | **evidence**  47:17 | **expert**  18:1 |
| **ecf**  17:6,24 18:13,14 19:1 19:9,17,22 20:8,19 21:6 22:5 27:18 35:11 36:16,19 61:19 | **engage**  63:2 80:11 | **evidenced**  47:5 | **explain**  40:11 |
| | **ensure**  30:7 | **exactly**  29:22 55:19 70:5 82:2 | **explained** 41:13 44:2,9 |
| | **enter**  28:16 | | **explaining** 24:17 |
| | **entered**  22:8 22:18 28:25 76:7 80:24 | **examination** 37:17 | **expressed** 51:23 |
| **ecro**  1:25 | **entities**  65:14 | **example**  65:9 | **expunged** 61:25 |
| **education**  59:9 | **entitled**  41:4 | **excellent**  24:22 | **extensive**  23:24 |
| **effect**  62:4 83:15 | **entitlement** 83:11 | **except**  21:21 40:24 57:1 67:16 | **extent**  77:14 81:15 84:16 |
| **effective**  14:18 30:7 | **entity**  59:10 | **exercise**  79:14 79:15 | **eye**  44:15 |
| **effectively**  59:1 | **entries**  15:14 15:14 24:12 | **exhibits**  69:9 71:11 83:8 85:3 | f |
| **eight**  57:4 | **erase**  81:19,21 81:22 | | **f**  1:21,25 87:1 |
| **either**  32:4 63:13 67:19 | **eric**  7:22 37:12 | **expect**  39:7 49:22 | **face**  71:20 |
| **eliminate** 52:15 | **especially** 42:16 52:6 | **expenses**  2:3,6 2:11,15,21 3:2 3:9,13,17,24 4:5,9,15,17,21 4:25 5:4,9,17 5:22 14:2 16:17 17:11,25 17:25 18:14 | **facing**  66:20 |
| **eloquently** 70:17 | **essentially** 33:24 46:12 80:7 | | **fact**  46:2 72:1 78:6 79:4 83:5 |
| **emails**  16:7 | **estate**  26:3 27:4 | | **facts**  68:14,25 71:16 |
| | **et**  6:7 | | **failure**  71:7,9 |
| | **eve**  55:25 84:14,17 | | **fairbanks**  65:2 65:10 |
| | | | **faith**  80:11 |
| | | | **fashion**  80:11 |

**faster** 27:12
**father** 60:21
**fault** 72:2
**favor** 50:24
  51:3 53:13,18
**fe** 65:17
**federal** 48:16
  62:3
**fee** 2:6,15,21
  3:9,17,23 4:9
  4:17,25 5:9,16
  5:21 12:13,18
  12:20,25 13:5
  13:6,13,18
  14:1,13,15
  15:9,13 16:9
  18:5,19 19:8
  19:14,21 20:7
  20:19 22:10
  23:24 24:2,12
  24:18 25:11
  27:16 28:4
  29:2 33:16
  35:10 36:10
  37:4,9
**feel** 32:18
**feelings** 62:13
**fees** 13:11 14:2
  15:8,20,21
  16:16,20 17:10
  17:24,25 18:14
  19:1,18,22
  20:9,20 21:6
  22:11 23:4,22
  27:12,18 30:2
  35:12,20,22
  36:16,19 63:25

**felt** 26:2 30:23
  31:7 32:15
**ferguson** 1:25
**fifth** 64:12,22
**fifty** 74:19
**fighting** 76:16
**figure** 19:13
**figures** 20:1
  28:2
**file** 28:16 49:13
  49:21 52:22,22
  55:5 69:9
  73:18 75:1
  83:5 84:5,6,7
  85:13,15
**filed** 2:15,22
  3:9,17 4:9,17
  4:25 5:9 12:8
  14:14 22:1,4
  23:6,7 31:14
  32:22 33:16
  38:2,16 40:11
  45:13 46:24
  48:23 50:9
  55:11 58:24
  61:19 62:24
  63:6 66:18
  68:21 70:7
  73:7,18 74:12
  74:23 75:4
  76:13 83:2,2
  84:19
**files** 52:8,11,21
  82:3,16
**filing** 19:15
  69:10 83:8,10

**final** 25:10
**finally** 63:14
  63:15
**finances** 49:17
**financial** 4:6
  19:17
**find** 40:7 54:17
  66:7
**fine** 56:6
**finish** 22:25
**finished** 25:18
  36:1
**firm** 12:16
  16:19 21:10,22
  22:10 23:3,4,9
  24:14,21 35:13
  35:20 36:21
  67:12
**firms** 24:11
**firm's** 19:25
  23:22
**first** 12:12
  21:11 24:23
  29:23 33:7
  43:2 47:3
  56:18 62:21
  64:9 84:9
**flight** 54:15
**flights** 27:20
**floor** 7:12
  10:11
**flurry** 80:6
**fly** 39:9 54:15
  60:16
**follow** 69:12
**following**
  37:19

**food** 81:13
**forced** 32:16
**forchelli** 4:15
  4:17 8:15
  20:19,22 35:11
**foreclosing**
  70:12
**foregoing** 87:3
**forget** 59:21
**form** 24:15
  44:5,17,18
  48:4
**formal** 14:4
  53:21 84:7
**format** 39:23
  39:23,24
**former** 64:24
**forth** 15:12
  54:10
**forward** 13:1,8
  13:9 15:4
  29:10 41:23
  48:1 49:20,22
  50:3,4 58:21
  58:22 59:3,6
  75:9
**forwarded**
  53:23
**found** 45:2
**four** 47:23
  48:21 51:21
  75:13 79:5
**franciscans**
  70:19
**frank** 42:1
**frankly** 36:8
  40:23 65:24

70:14

**free** 70:18,20

**friday** 38:17
43:19 71:2
84:20

**front** 13:6 33:4
49:11 57:10
82:7

**frustration**
62:25

**full** 66:10 83:7
83:14,16

**fund** 76:15

**funds** 15:22

**furman** 49:1
55:20

**further** 33:13
35:7 37:9
82:17

**future** 3:7,21
18:25 19:6,17

**g**

**g** 12:1

**gallup** 65:16
65:17

**general** 48:22
49:1

**generally** 14:9
15:21

**gentle** 29:1

**gerard** 8:20
20:21

**gerber** 3:8,10
11:5 19:2,3,11
19:24,25

**geremia** 7:23
68:25 77:22,24

77:25 78:11,17
79:4,9,18,24
80:15 82:14,20

**getting** 16:10
25:15 32:25
66:23 67:13
69:7 72:3,14

**gist** 22:12 23:6
53:20

**give** 17:13
22:15,24 25:10
32:23 48:12
54:16 71:16

**given** 27:4,13
30:6 32:19
43:22 49:18
70:12 77:5
83:11,16

**gives** 50:8,9,15
52:9

**giving** 21:23
50:11 57:16
65:4

**glenn** 1:22
46:22 49:24
82:1

**global** 12:19,22
13:17 29:10

**gm** 55:19 80:6

**go** 12:21 13:14
14:10,11 18:1
40:21,22 41:23
44:24 47:23
49:20 58:22
59:6 61:13
67:2,24 70:18

**goes** 51:17 69:4

**going** 13:1,8,8
15:3,4 16:3
17:5 19:9 20:9
23:21 24:10,25
25:3,5,9,10
26:5,13,13
27:2 28:15,16
32:10 33:23
36:9 41:6
42:21,24 46:3
47:9,14,16
48:13,16,16,20
49:8,22 50:6
50:13,14 51:19
52:22,22 53:24
54:2 56:23
59:3 61:20,22
61:22 62:1,16
62:22,23 65:23
66:9,21,22,24
67:19 68:20
69:23 70:1,6
70:10,15 71:15
72:19 77:12
79:12,13,24
80:1,3,4,19,19
80:22 82:15
85:10,12

**good** 12:2,6
17:8,21 18:17
20:11,21 21:8
37:12 45:11
64:6 73:24
80:11

**gotten** 23:25

**grabel** 64:22

**grant** 54:4

**granted** 55:2

**grateful** 32:20

**great** 25:17
62:15

**greater** 47:11
47:11 51:10

**green** 1:12

**greg** 9:20

**group** 4:6,8,10
14:9 20:8,12
21:25 49:4
78:3

**guam** 63:6

**guess** 38:1
42:14 73:3
82:1

**guidance** 48:22

**guide** 55:17

**guidelines**
15:15 37:2

**h**

**hage** 3:22
19:22

**half** 53:19 57:5
73:13

**hand** 45:16
51:16

**handled** 12:14

**hanging** 80:20

**happen** 57:14

**happened**
59:10 80:6,7,8

**happening**
38:19

[happens - hope]                                                    Page 15

| | | | |
|---|---|---|---|
| **happens** 49:24 | 68:7 76:21 | **highlights** 61:6 | 30:16 31:16 |
| 71:21 72:17 | 77:19 78:5 | **highway** 66:24 | 32:12,19,23 |
| 73:21,22 74:22 | 83:6 | **history** 81:2 | 33:14,20 34:23 |
| 75:3,11,13,23 | **hearing** 2:1,9 | **hit** 47:9 62:21 | 35:6,7,14,16 |
| 80:8 85:17 | 2:19,25 3:6,12 | 72:18 | 36:3,8,22 37:8 |
| **happier** 82:18 | 3:20 4:1,4,13 | **hogan** 19:9,11 | 37:12,14 38:4 |
| **happy** 12:22 | 4:20 5:3,13,19 | **hold** 14:18 | 38:15,16,20,25 |
| 13:3 25:8 71:4 | 5:24 6:6,8,11 | **holdback** | 39:4,6 40:13 |
| 82:12 | 6:15,19,19,22 | 12:25 13:8,13 | 40:19 41:6,11 |
| **hard** 24:5 | 12:12 15:10 | 13:17 14:21 | 42:1,14 43:1 |
| 65:12 75:8 | 26:8,17 29:24 | 16:22,23 17:17 | 43:13,16,19 |
| **harrisburg** | 31:20 36:10 | 68:11 85:9 | 44:20,23 45:6 |
| 63:6 | 37:16,24 39:6 | **holiday** 85:14 | 45:13 47:24 |
| **haven't** 49:23 | 42:10 43:12 | 86:12 | 52:1 55:6,23 |
| 52:9 61:17 | 44:21 46:20 | **holidays** 83:11 | 56:7 57:19 |
| 81:16,18 83:2 | 48:18 49:10,12 | 83:15 | 58:3,7,15,23 |
| **head** 50:12 | 49:21,22 51:7 | **home** 62:21 | 59:7 61:14 |
| **headline** 63:19 | 67:24 73:15 | **homework** | 62:24 63:17 |
| 63:19 65:12 | 74:14 81:6 | 71:19,21,23 | 64:7 65:19 |
| 66:5 | 83:13,15 | 86:9 | 68:2,6 69:8 |
| **heads** 67:18 | **hearings** 16:8 | **hon** 1:22 | 70:4,6 71:1,10 |
| **hear** 14:8 | 29:19 | **honor** 12:6,8 | 71:18 72:1,20 |
| 17:22 24:23 | **held** 30:13 65:3 | 12:11,18 13:16 | 73:9,13,25 |
| 36:17 45:21 | **help** 70:11 71:3 | 13:19 14:12,20 | 74:3,14 75:5 |
| 51:6 64:1 68:1 | **helpful** 56:12 | 15:3,7,13,17 | 75:15 76:1,8 |
| 68:6 82:6 | 56:13 85:1 | 16:5,18,21 | 76:20,24 77:5 |
| 85:10 | **here's** 21:24 | 17:2,8,18,21 | 77:18 78:1 |
| **heard** 16:24 | 41:3 55:16 | 18:3,5,11,17 | 79:18 81:7,13 |
| 17:14 18:2,7 | 73:16 | 18:23 19:3,12 | 82:22 83:4 |
| 18:21 19:5,19 | **hey** 59:21 | 20:11,17,21,24 | 84:19 85:5,19 |
| 20:5,14,25 | **he's** 24:9 48:20 | 20:24 21:3,8 | 85:20,25 86:9 |
| 21:12 22:6 | **high** 54:9,11 | 21:14 23:13 | **honor's** 28:21 |
| 26:8 29:22 | 58:3 59:8 | 24:24 25:19 | 30:11,21 31:4 |
| 33:10 38:14 | 60:17,25 61:1 | 26:7 27:9,14 | 32:13 58:19 |
| 41:22 47:8 | 78:3 | 27:22,25 28:2 | **hope** 26:4 |
| 57:16 61:18 | **higher** 47:13 | 28:10,14,18 | 32:12 39:9 |
| 66:21 67:15 | 85:9 | 29:4,25 30:3 | 50:3 84:18 |

hoped  45:14,14
  62:25
hopefully  29:9
horse  55:25
  61:14
hours  35:22
  71:14,14
hundred  73:7
  84:24
hundreds
  54:19,19
hyde  6:25 87:3
  87:8

**i**

ice  50:3
idea  46:22
  48:13 51:3
  52:7,10,11
identified
  23:22 44:11
  46:8 47:3,4
  58:12 77:7
identify  22:11
  23:4 24:12
  77:23
identifying
  48:6
ignore  26:21
impasse  45:15
impermissible
  39:17
implicate
  58:25
important  53:2
  53:9
importantly
  45:17,18

imposing  68:11
improperly
  79:24
inadvertent
  60:8
inclined  13:7
include  23:23
  58:1 59:4
  79:12
included  27:20
  35:21
including  13:5
  52:12 59:13
  70:18 73:10
incorporated
  58:10
incorrectly
  27:20
increase  70:24
incurred  2:3
  2:11 3:2 4:15
  30:1
indicated  16:1
  16:19 47:23
indiscernible
  28:17 33:12
  35:24 36:11
  42:22 49:6
  57:13 61:2
  65:23 82:24
individual  74:7
individually
  14:10
ineffective
  29:15 31:12
inform  31:5
  53:16

informal  4:1
  6:22
information
  39:17,19,20,22
  42:16,20 43:24
  44:13 49:19
  51:2,19,22
  53:15,16 54:1
  70:22 71:25
  76:21,25
informed  31:6
  37:20 53:13
initial  52:3
  80:6
initially  59:20
  81:11
injunction
  42:10 54:14
  56:8 58:20
  60:1
injury  48:25
  49:2
inside  66:16
insight  32:5
instances  59:18
  61:9
insurance  3:14
  4:22 8:2 9:9
  24:9 25:7,16
  26:1,2 27:7,17
  28:1 29:6,12
  29:12 30:9,17
  31:8,13 33:23
  34:5,20 35:2,4
  35:23,24 50:16
  51:1 58:25
  59:12,12,18

65:23,25 66:3
  66:11 70:11,13
  71:5 72:14
  75:14 76:12
insured  32:6
  76:16
insurer  29:9
insurers  22:15
  32:11 35:3
  45:18 75:21
  76:2 78:7
intelligent
  53:17
intend  37:21
intended  77:11
  77:15 80:10
intentioned
  86:3
interest  46:19
interesting
  62:1,2 72:17
interim  2:1,9
  2:19,25 3:6,12
  3:20 4:4,13,20
  5:3,13,19
  12:13,18 13:20
  14:1,13,16
  15:8,24 18:24
  19:8,21 20:7
  20:18 21:4
  27:16 35:10
  36:18
internally
  13:24
interstate
  31:24 59:11
  60:24

[invite - june]                                                                    Page 17

**invite**  54:6
**invited**  46:8
  54:5
**invoice**  27:21
**involve**  74:11
  78:2
**involved**  35:2
  42:9 49:6
  64:12
**involves**  21:21
  59:8
**involving**
  35:25 54:13
**ire**  23:18
**irrelevant**
  65:21
**isn't**  27:7 34:4
  73:17
**isolate**  28:6
**issue**  21:11,21
  21:23,24 29:16
  33:6 34:5,5,21
  39:2 41:17
  43:14 44:2,15
  44:19,22 49:4
  53:24 57:17
  62:2 68:15
  69:5 75:18
  77:21 78:14
  81:10,21
**issues**  13:22,23
  16:9 23:21
  24:5 35:4 36:6
  38:3 50:20
  52:3,13
**items**  12:12,13
  12:14 37:10

**it's**  17:16 18:22
  18:25 19:7,9
  19:18,22 20:8
  20:15,19 21:6
  21:14 24:15
  27:18 33:17,22
  34:5 35:11,12
  35:17,17 36:17
  36:19,24 43:4
  49:16 50:10,13
  53:1 54:4,22
  57:3,12 59:13
  61:1 62:1,15
  63:12 65:11
  66:19 67:17
  69:23 70:14,15
  71:15 73:11,12
  74:17 76:6
  77:20 79:12,13
  79:14,19,24
  82:13,20 84:2
  86:6
**i'd**  62:6
**i'll**  33:9 36:13
  52:18,18 53:10
  54:6 55:6
  82:12 84:5
  85:17
**i'm**  12:22 13:3
  14:23 19:11
  21:23 22:21,25
  24:10,11,25
  25:5,8,9,10,18
  28:15 32:25
  34:7 37:2
  38:20 41:6
  42:24 43:10

  50:2,12 51:6,7
  51:20 53:18
  54:24 56:25
  58:6 61:20,22
  61:22 63:3
  66:1,13,21,22
  66:22 67:11
  72:22 80:21
  81:20 84:3,20
  85:10
**i've**  23:19 24:1
  24:16 27:8
  29:1 33:5
  36:12 48:19,22
  49:10,10 57:2
  62:18,18 64:7
  64:21 65:19,19
  66:10 67:7
  76:12

### j

**james**  8:13
  10:14 21:8
  39:4 59:20,23
  60:10,14
**james'**  60:3
**january**  24:11
  28:17 32:4
  49:14 84:21
**jason**  10:21
**javian**  9:13
  17:21,22 18:3
  18:11
**jesse**  8:6 27:25
**jesuit**  65:2,10
  65:14
**jesuits**  65:10
  70:17,19

**john**  44:10
**joinder**  22:4
  23:7 28:7,7
**joke**  23:21
**jones**  2:1,5 5:5
  5:7,10 7:10,17
  8:8 10:1,9 12:7
  12:20 13:18
  14:1,7 16:1,16
  16:24 17:6
  21:5,9 35:14
  37:13 39:5
  41:12 43:17
  44:1 45:12
  48:23 51:20
  57:20 77:25
**joseph**  3:22
  19:22
**judge**  1:23
  26:17 29:19
  30:12 33:3
  34:7,8 46:22
  47:22 49:1,24
  52:5 54:2
  55:20 56:11
  57:22 62:6
  63:12 64:22
  65:16,21 68:21
  68:25 70:16
  71:23 77:19
  78:2,8,12,14
  78:20 79:5
  81:3,22 82:1,7
  82:10
**judges**  57:4
**june**  2:4,12 3:3
  3:14 4:7,22 5:6

**[june - litigator]** Page 18

5:14
**juries** 50:6
**jurisdiction**
75:20,22 76:3
**justice** 9:15
48:3,17,19
49:6 51:11
56:4 60:11
61:4 77:11
81:24 82:23
**justification**
32:23

**k**

**karen** 7:15
41:11 43:16
57:19
**kcic** 18:1,9
**keep** 44:15
61:2 66:23,23
69:7
**keeps** 56:16
**kind** 31:21
33:17 39:9
55:16 57:12
81:22
**knew** 64:4
**knock** 85:12
**know** 13:9
16:13 21:14
22:22 23:8,10
23:14,19 24:9
25:11,17 28:8
28:10 29:24
32:11,18 33:15
34:15,24 35:20
35:21,25 38:2
38:18,19 40:23

41:9,15,16,19
42:24 46:24
47:10 48:2,7
49:9,12 50:6
50:11,13 51:11
51:13,14,16
52:1,14 53:1,8
53:19,20 55:19
56:5,17,25,25
58:8 59:21
60:9 61:15,23
63:17,18 64:12
64:24 65:1
66:6,9,21,24
66:25 67:5,14
68:8,10 69:24
71:19 72:6
73:6,16 74:1
74:25 76:10,18
79:3,7,12 80:5
80:18 81:4
82:5,8 83:9
85:10
**knowledge**
32:3 42:18,20
47:6
**known** 68:15
68:16
**knows** 54:1
**kressel** 63:13

**l**

**l** 2:15,21 9:3
**laboring** 23:2,3
**lack** 15:22 76:2
**language** 40:17
41:3

**large** 14:9
19:14
**larger** 25:25
81:10
**late** 12:11
**laundry** 52:3
**law** 34:25 62:7
64:24 67:12
85:11
**lawsuits** 54:9
75:2
**lawyer** 34:25
52:4
**lawyers** 32:1
51:20 72:18
74:7
**lay** 21:24 28:19
**lcc** 4:8,10
**lead** 44:11
45:22
**leapfrog** 79:25
**learned** 31:25
43:19
**leave** 42:24,25
50:10 61:25
**leaving** 84:20
**led** 70:13
**ledanski** 6:25
87:3,8
**lee** 59:20
**leery** 50:23
**left** 62:17,23
63:25
**legal** 15:20
87:20
**legitimate**
26:14

**length** 77:5
**lerman** 5:20
9:1 36:19,23
**letter** 21:16
33:8 41:13
43:18,25 52:15
67:11 84:6,7
**letters** 29:8,12
29:14 31:18,19
**let's** 27:11 45:7
51:23
**level** 47:7
**lexington** 9:10
**lies** 51:5
**lift** 22:1 56:14
77:13
**liked** 56:17
**limit** 14:6
**limited** 54:23
**limits** 60:20
**line** 70:25
**list** 17:3 18:12
18:24 52:3,6
54:15,15 60:4
60:16 61:5
64:9 67:23
81:12
**listened** 46:21
**litigant** 67:21
**litigated** 78:2
79:1
**litigating** 67:21
**litigation** 21:17
35:2,23,24
38:6,10
**litigator** 35:1

**little** 13:5
24:17 51:9
65:11 72:7
74:21
**llc** 2:10,14,16
3:22 4:6 18:1
18:10 19:22
20:8 21:5
**llp** 2:20,22 3:4
3:13,15,18
4:16,18,21,23
5:1,5,8,10 7:3
7:4,10,17 8:1,8
9:8 10:1,9
17:22 27:17
35:11
**lmi** 31:23
59:11 60:24
66:17
**loath** 34:19
**logs** 39:2
**long** 13:8 81:4
**longer** 72:10
86:5
**look** 25:10
28:11 34:24
38:18,18 42:11
50:1 66:17
**looked** 16:8
40:16 50:11
75:19
**looking** 40:7
70:15
**looks** 75:15
**los** 8:11
**lost** 30:16
32:19 57:2

**lot** 24:6 48:24
50:19 64:2
72:9,9
**lots** 23:20
**luckman** 8:20
20:21,22 21:3
35:15

**m**

**m** 9:20
**made** 22:23
24:1,8 25:21
25:24 30:5,8
31:8 39:9
40:25,25 45:1
55:8 56:8
58:17 64:7
70:15,23 77:8
83:14 85:7
**madison** 8:4
**majority** 35:1
**make** 21:18
22:3,20,20
25:22 27:23
29:24 32:10
33:5 47:14
51:24 53:13,17
55:5 57:12
61:14 66:9
67:18 77:1,12
77:13 81:16
**makes** 80:23
**making** 25:20
26:19,20,25
41:24 44:21
55:9 64:6 67:1
**management**
48:4

**marists** 70:19
**mark** 24:17
48:24
**marsal** 2:9,13
2:16 17:4,9
**martin** 1:22
**massive** 76:16
**materials** 44:7
**math** 61:24
**matter** 1:5
37:16 43:12
57:18
**matters** 6:12
6:16 45:8
**mean** 22:12
27:7 29:23
48:23 51:15
60:5,17 63:19
63:25 69:4
72:4 73:9 76:6
79:18 80:25
81:2,3
**meaning** 48:3
**meaningful**
79:13
**meaningless**
79:14,15
**means** 56:20
72:8
**meant** 57:25
80:24 81:1
**mechanism**
43:5 80:17
**mediators** 77:2
**meet** 41:17
43:3,25 44:22
80:2

**member** 52:5
**mention** 38:6
**mentioned**
19:12 41:16
43:18
**message** 46:6
**met** 37:19
54:25 69:16
70:4,9 74:7
**mg** 1:3 6:6
**michael** 19:9
41:10
**michaels'**
52:15
**million** 50:22
50:23 51:13
59:13 60:20
63:18 64:1,1
68:13
**mind** 13:12
66:22
**mine** 38:19
**mineola** 87:23
**minimum**
47:12
**miniscule**
51:14
**minneapolis**
63:9
**misfortune**
24:22
**misguided**
22:16
**missed** 28:8
48:24
**missing** 53:18

misused 42:20
mixed 62:13
mixing 55:24
moment 28:19
moments 46:18
money 24:6
64:20 66:9
70:15,24 71:4
85:5 86:5
monica 8:10
month 32:4
monthly 19:14
months 58:18
60:10 72:9
moore 11:3
17:8,9,12,18
moore's 86:4
morning 12:6
41:16 43:4
48:2 50:12
motion 5:24
12:17 19:4
20:2 22:9,16
22:17 23:5
25:15,18 26:12
28:19,22 29:23
30:2 31:3,14
32:16,22 33:1
33:12 34:3
41:24 45:8,13
46:4,21,25
47:8 49:24
52:22,23 55:5
55:8,9,11
57:10,13 59:5
61:18,19 63:4
66:18 68:3,5,9

70:2 71:20,22
75:16 77:10,13
77:15,16 80:23
84:7
motions 21:25
22:6,8,12,13
23:5,6 24:13
31:9 34:9 81:5
motivated 86:3
motors 49:1
mount 59:19
move 29:10
45:7 48:1 50:3
52:18 58:2
75:9 76:2
moved 33:4
56:14 60:15
moving 50:4
60:12
multi 34:5
multimillion
62:14

n

n 7:1 12:1 87:1
name 60:25
73:13
named 54:8
60:18 75:21
names 60:24
60:25
naturally
43:22 59:4
nature 27:4
nauseum 47:8
ne 6:7
necessarily
15:9,11 16:8

36:10 69:4
76:6
necessary 2:3
4:15
need 36:17
46:6 47:10
53:8,10 61:7
61:18 81:23
83:7
needs 25:11
negative 32:16
negotiate 55:9
negotiating
61:20
negotiations
55:18
neophyte 35:4
never 29:16
45:24 47:9
64:21
new 1:2,7,13
7:6,13,20 9:11
9:18 10:4,12
32:17 43:21,24
44:7,11 45:2
57:10 66:13
70:25 71:2
75:24 76:15
81:5 83:10
84:13,17 85:14
newly 44:7
nice 51:9 62:7
night 71:2
nine 14:13 57:4
ninth 2:1,9,19
2:25 3:12 4:4
4:20 5:3,13

20:7 21:4
27:16 64:13
nixon 3:4 7:3,4
18:12,13,15,18
18:21
non 29:8 44:5
54:4 57:23
78:18
north 2:10,13
2:16 65:12
note 21:15
41:12
noted 15:2
notes 35:19
notice 6:8,8,11
6:15,19,19
50:21 52:12
58:24 59:24
81:21 83:12
84:15
noticed 81:25
notify 39:21
notion 48:24
notorious
60:22
november
37:16 63:2
null 33:24
number 12:10
13:22 29:8
31:14,22 33:5
39:12 50:8,9
57:2 58:7 59:3
61:23,24 63:19
63:20 64:4
65:13 66:5
69:18 74:6,15

[number - parishes]                                                          Page 21

81:9
**numbers** 44:16
59:18 65:18
**numerous**
60:22
**nut** 66:10
**nw** 9:3
**ny** 1:13 7:6,13
7:20 8:18 9:11
9:18 10:4,12
87:23

**o**

**o** 1:21 12:1
87:1
**oar** 23:3
**objection** 14:4
31:1 64:21
**objections** 48:5
50:10 53:21
63:22 64:9
67:24
**objective** 84:19
**obligated** 27:6
**obvious** 69:9
80:25
**obviously** 12:3
14:9 24:20
31:4 32:8,13
32:19 33:3
54:25 74:19
**occasionally**
34:9
**occasions** 46:8
47:1 67:2 84:2
**occur** 44:10
48:16,16

**occurred** 31:6
**occurrence**
59:13 60:20
**october** 22:7,8
24:1 46:20
63:2
**offer** 36:9
38:21
**offered** 71:5
**offers** 40:25
**offhand** 23:11
28:10
**office** 12:24,24
13:22,25 14:3
21:17 36:8
**office's** 14:8
**official** 5:5,24
**oh** 62:7 76:23
83:22
**okay** 16:12
17:17 25:18
27:9,15 28:12
33:2,12,19,22
35:6 36:12,14
36:24 37:2,11
38:13 39:1
42:13 45:4
48:20 49:7,25
51:8 55:12
62:9 69:6
74:18 78:16
80:6,24 84:2,8
86:2,12,13
**old** 87:21
**omitted** 46:4
**once** 20:2

**ones** 45:25
49:7 56:10
67:7 77:7
**ongoing** 57:24
**openly** 13:10
**opinion** 30:22
**opportunity**
55:9 57:16
**oppose** 44:5
**opposed** 44:18
**opposition**
48:23 55:5
56:8,9 66:17
79:21
**order** 12:21
22:2,8,18
24:16 28:15
29:1 32:19
37:18 39:14,18
40:6,17 41:4
41:24 42:3,15
43:3,9 46:14
49:19 58:19,19
60:1 75:16
76:4,5,6 80:24
**ordering** 24:11
**orders** 48:4
52:24
**organized**
35:23
**original** 44:3
**originally**
31:22
**ought** 45:25
46:5 79:12
**outcomes**
55:17

**overall** 73:9
**overlap** 54:8
65:8
**ovington** 8:17
**own** 72:2

**p**

**p** 7:1,1,22
10:21 12:1
**p.m.** 6:12,17
**pachulski** 5:4,7
5:9 7:10 8:8
10:9 12:16
21:5,9,13 36:7
39:5 41:11
43:16 45:11
57:19
**pacific** 65:22
**page** 67:25,25
70:1
**pages** 84:24
**paid** 33:1
65:20 67:19
**painfully** 85:8
**papers** 52:14
67:4 79:19
84:14 86:12
**paragraph**
39:13,14,18,25
41:16 43:2,5
**parcel** 24:14
**parish** 50:21
51:4,5 53:3,3,8
53:12 69:19,20
72:21,23 73:1
78:19 79:9
**parishes** 49:18
50:16,19 62:10

70:8 72:16,18
78:2,7 79:8,11
**parishes'** 53:1
**parishioners**
72:12
**part** 21:20
25:25 29:13
42:7 54:3
71:20
**particular**
12:20 77:13
**particularly**
29:2
**parties** 50:17
**party** 34:5,5
39:21 53:9,12
54:4 64:15
78:18
**pass** 27:6
**past** 50:18
**paul** 11:4
20:12 63:9
**pay** 26:5 32:7
66:12,19
**payday** 79:15
**paying** 66:18
**payments**
19:13
**peabody** 3:4
7:3,4 18:13,15
18:18,21
**pejorative**
63:19
**pending** 32:2
57:22 64:23
74:13,24 82:7

**penny** 72:25
**people** 39:11
48:1 53:5
54:20 60:10
65:11,13 72:9
72:10 73:18
74:11,12,23
80:11 83:2
**percent** 12:25
13:8,13 14:24
16:22,23 17:17
47:9,12,14
63:10 67:14
68:11 72:7
**percentage**
47:10
**period** 2:4,5,12
2:14,20 3:8,14
3:16,23 4:6,8
4:16,22,24 5:6
5:8,16,21
18:19 23:24
83:14
**permissible**
40:6
**permission**
34:20
**permit** 6:1
**permitted** 40:1
**person** 38:16
38:17,20,22
65:3
**personal** 48:25
49:2
**personally**
41:7

**personnel**
78:23
**perspective**
44:15
**persuade** 51:21
**persuaded**
53:7,10
**pertain** 52:21
**pfau** 10:16,17
**phone** 48:8
**pi** 73:15
**pick** 45:24 46:5
47:2 49:4
55:10,11 80:3
80:4
**picked** 46:18
**picture** 51:9
**piece** 33:16
**piling** 78:25
**pillared** 69:7
**pin** 64:4
**place** 30:4
82:14
**places** 58:25
70:16,23
**plaintiff** 50:20
78:14
**plaintiffs** 55:15
58:17
**plaintiffs'**
72:18
**plan** 45:23
46:12,15 47:5
47:14 49:23
50:15,24 51:3
53:14,18 56:20
62:20 63:4,11

63:12 64:3
67:15 75:10
**planning** 84:23
**plans** 49:13
63:5,8,9
**pleading** 40:15
62:3,5
**pleadings**
65:19
**please** 12:2
54:6 63:16
77:24 85:6
**pleased** 31:17
**pllc** 5:20 9:1
10:16,17 36:19
**plucking** 79:25
**plus** 30:2 51:1
**pm** 1:16 86:16
**pocs** 81:9
**podium** 46:23
**point** 25:21
34:4,17 45:2
77:1,6 78:24
81:3
**pointed** 31:10
58:15 74:5
**points** 12:19
50:5 55:14
56:16 68:7
**policies** 26:3
27:4
**policy** 27:6
**portion** 41:21
**position** 30:6
30:23 31:9
33:11,11 45:3
46:11 47:15

58:9,21 59:22
59:23 61:3
68:23 74:4
80:13 83:1
**possible** 54:4
**post** 75:18
**potentially**
29:10 31:11
42:6 55:14
**practice** 34:25
**precedent**
15:15 59:17
**preclude** 77:11
**preclusive** 62:4
**preliminary**
42:9 54:14
56:8 58:20
60:1
**preparation**
67:24
**prepared**
24:16 46:21
**preselected**
81:16
**present** 11:1
19:10 46:24
**presentation**
26:13 43:11
**presented**
21:25
**presentment**
58:24
**preserve** 76:4
**pressure** 26:1
**pressuring**
48:1

**pretrial** 81:23
**pretty** 23:20
**prevailing** 6:13
6:17
**prevents** 22:19
**priest** 51:4
**priests** 49:3
**primarily**
85:11
**primary** 59:14
**privilege** 42:6
42:7
**pro** 74:6,6
**proactive**
45:21
**probably** 15:12
**problem** 15:2
**procedure**
78:20,22 81:23
**procedures**
69:13 75:17
**proceed** 45:8
78:6,7
**proceeding** 6:1
6:6 43:23 44:6
78:8,17
**proceedings**
42:15 75:4
86:15 87:4
**process** 48:9
78:19 79:25
82:14,16
**produce** 43:6
82:3
**produced**
43:21,22 44:17
52:12

**producing**
44:14 82:15
**product** 42:6
**production** 4:2
**productive**
44:12
**professional**
2:14,19,25 3:1
3:6,8,20,23 4:8
4:13 5:13,20
14:14 15:21
85:23 86:1
**professionals**
13:2 14:22
16:10
**professionals'**
25:19
**professional's**
16:6
**programs**
65:23
**progress** 67:2
**prohibit** 30:11
30:14
**project** 36:25
**projections**
50:11
**promised**
44:25 67:20
**promptly**
53:23
**pronged** 57:12
**proof** 59:11
60:19 61:10
**proofs** 76:12
76:14 83:2

**property** 26:3
27:4
**proposal** 67:12
76:9 77:12
**proposed**
62:21 75:16
79:5
**protective**
37:18 41:24
43:3,9 49:19
**provide** 22:14
32:14 37:22
39:14 43:6
44:4 48:22
75:17
**provided** 44:3
52:24
**provides** 53:15
**providing** 39:2
44:16 78:18
**provisions** 42:3
42:8,11
**prudent** 32:6
**public** 68:16
**pulling** 50:12
**purdue** 47:11
**purpose** 53:16
55:13,20 59:4
**purposes** 45:14
**pursuant** 5:25
22:2
**pursuing** 47:25
76:15
**pushed** 24:1
**put** 14:15 24:2
24:25 26:1,14
27:11 28:8

33:8 49:23
51:23 64:4
67:16 71:4
81:4 84:5
**putting** 26:3
69:21

**q**

**quarterly** 5:14
**question** 16:14
21:21 22:19
26:18 47:20
64:11 70:5
73:16,24 75:23
**questioned**
81:1
**questions**
14:10 18:5
19:4 20:3,24
33:14 35:21
36:13 51:8
73:5 85:3
**quick** 34:2,2
**quickly** 48:1
**quite** 13:10
31:14 67:25
83:6
**quoted** 42:4

**r**

**r** 1:21 7:1 8:20
12:1 19:9 87:1
**raced** 62:15
**raise** 41:22
43:15
**raised** 13:22
35:20 38:6
42:12 43:2

68:7,16
**range** 55:17
**reach** 63:15
**reached** 63:8
63:14 67:9
**reaching** 69:7
**read** 37:25
38:1 40:18
42:11 43:4
49:10 51:25
52:2 66:13
79:22,22 84:25
86:4
**reading** 39:13
71:14 84:23
86:12
**ready** 86:10
**reaffirm** 58:14
**real** 23:6 68:5
**reality** 72:4
**really** 22:7
23:23 24:20
27:7 42:2,10
59:19 61:6,7
62:1 65:21
67:5,17 72:19
80:25 81:1,2,3
**reason** 32:15
76:24
**reasonable**
41:14
**reasonably**
32:6
**reasons** 78:24
79:19 81:8
**recall** 37:15

**receive** 41:4
63:23
**received** 19:13
64:8
**receives** 27:5
**recently** 58:14
67:10
**recipient** 39:22
**recited** 40:16
**recognize** 14:5
47:21
**recognized**
71:1
**recommend**
85:19
**record** 14:5
15:2 34:16,18
39:20 48:20
61:17 87:4
**recovery** 51:10
65:5
**redacted** 44:5
44:5,7,18
**reduce** 61:11
**reduction**
13:25 16:2,20
25:13 27:19
**reed** 2:20,22
9:8 17:20,22
17:23 18:9
**reference**
57:15
**referenced**
41:20
**references** 38:9
**referring** 44:6

**reflect** 20:13
**reflects** 18:18
20:23 27:19
**regarding** 39:8
42:16 48:4
52:25 53:25
54:1 57:17
**reimbursement**
2:3,11 3:2,13
4:5,14,21 5:4
**related** 6:9,13
6:17 21:16
50:17 53:9,12
**relating** 35:25
**release** 64:20
65:4
**released** 52:6
**releases** 46:15
64:15
**relief** 30:5
32:19 34:22
54:16 55:1
59:5 61:21
**relieve** 61:5
**reluctantly**
14:22
**remain** 72:13
78:13 79:16
**remaining**
81:10
**remains** 75:5
**remand** 81:5
**remanded** 57:4
**remedied**
71:10
**remedies** 31:11
39:16

**remedy** 39:25
**remedying**
   40:3
**remember**
   65:16,17
**remind** 36:25
   69:2
**reminded**
   26:11
**removal** 57:13
**remove** 52:19
**rendered** 2:2
   2:11 3:1 4:14
**report** 5:14
   47:22
**reported** 28:2
   28:4,4 48:17
   48:19
**reports** 37:22
   39:16 40:5
   64:1
**represent**
   24:24 29:5
**representative**
   3:7,22 18:25
   19:6,18 35:13
   80:10 81:17
**representing**
   79:8
**request** 4:1
   6:22 33:8
   41:15 44:4
   52:23 58:16
   84:7
**requested**
   12:25 32:7
   58:14

**requesting**
   43:18
**require** 28:16
**required** 37:1
**requirement**
   21:16
**reread** 42:3
**research** 4:6,8
   4:10 20:8,12
   20:15
**reserve** 15:17
**reserved** 23:20
**resolution**
   29:11
**resolve** 33:10
   44:19
**resolved** 51:11
**respect** 16:24
   17:14 18:21
   19:6 20:5,15
   21:1,13 58:14
   58:16 78:7,18
   85:23
**respectful**
   32:13
**respecting**
   85:22
**respects** 48:24
   72:5
**respond** 25:8
**responded**
   29:13
**responding**
   25:6
**responds** 40:14
**response** 29:17
   36:13 41:18

   44:3 63:23
   64:8 78:22
**responses**
   31:13 32:3
   72:3
**responsibility**
   23:8 42:17
**rest** 19:4 20:2
   62:22
**restated** 59:1
**restructuring**
   2:12
**resulted** 51:12
   62:14
**resume** 77:3
   78:15
**retention** 2:4
**rethink** 72:10
**return** 57:18
**review** 14:8
   15:7,13,20,24
   36:3 39:3
**reviewed** 13:23
   13:24 22:10
   43:8 67:23
**reviewing** 16:7
   24:18 36:9
**reviews** 13:20
**right** 12:2
   16:15 17:1,13
   17:16 18:8,12
   18:20 19:7,16
   19:20 20:4,6
   20:15 21:2
   25:23 28:22
   36:12 37:4,6
   39:7 43:10

   46:3 49:8
   64:17 66:8
   68:10 76:18
   82:21 83:24,24
   83:25
**rightfully**
   15:12
**rights** 15:17
   39:10 50:15
**ring** 81:15
**rise** 81:8
**road** 87:21
**robert** 3:8,10
   11:5
**rochester** 29:7
   29:21 30:4,6
**rocket** 27:7
**rockville** 1:7
   6:7 12:4
**roman** 1:7 6:6
   12:3
**room** 54:2
**roughly** 69:16
   73:13,15 77:20
   77:22
**round** 13:13,21
**rowing** 72:14
**rule** 22:3 80:22
**ruled** 28:22
   30:13 77:14,16
**ruling** 28:21
   30:11 31:5,7
   57:17
**rulings** 62:3,4
**running** 37:6
**runs** 62:21

| **s** | | | |
|---|---|---|---|
| **s** 6:9,13,17 7:1 12:1 | **scope** 61:21 | **seen** 24:2 58:13 | **settled** 55:21 55:22 |
| **san** 65:2,22 | **screen** 26:10 38:1,18 | **selection** 55:16 79:17 80:10 | **settlement** 22:3 22:14 26:19,21 26:25 75:8 |
| **sanctions** 26:23 | **se** 74:6,6 | **send** 16:7 31:18 32:21,21 41:12 | **settling** 29:9 |
| **santa** 8:10 65:17 | **searches** 41:14 41:20 | **sense** 28:13 55:15 63:20 | **several** 14:11 58:12 84:24 |
| **satisfied** 43:11 53:14 | **seated** 12:2 | **sent** 21:16,17 29:11 31:20,24 32:3 55:3 | **shame** 83:24 83:25 84:1 |
| **saw** 28:7 38:1 42:3 48:11 54:9 70:6 | **seattle** 10:19 | **senter** 5:20 9:1 36:19,23 | **shape** 13:9 |
| **saying** 16:8 50:16 53:10 56:16 59:2 60:7 72:19 80:1 | **second** 6:15 12:8,9 17:13 60:19,19 67:9 69:2,6 | **separate** 23:5 78:3 79:9 | **share** 42:15 44:13 68:14 81:11 |
| **says** 33:22 39:18,23 49:18 52:12 56:19 58:19,20 64:3 | **section** 83:3 | **separately** 58:10 59:16 | **shared** 69:17 69:24,25 |
| **schedule** 60:2 60:3 85:11,16 | **sections** 5:25 | **september** 2:4 2:13 3:3,15 4:7 4:23 5:7,15 23:24 27:21 | **sheep** 55:24 |
| **scheduled** 6:12 6:16 | **security** 76:15 | **series** 13:6 29:11 49:2 | **she's** 57:17 |
| **schedules** 85:12 | **see** 21:12 22:22 26:13 36:13 37:25 38:9 39:15 40:10 52:21 59:18 63:1 72:17 73:3,4 84:5,6 85:14,15,17,17 | **seriously** 72:10 | **shields** 11:4 20:11,12,17 |
| **scheduling** 85:23 | **seeing** 54:18 | **serve** 29:19,20 45:15 | **short** 40:15 |
| **scheme** 36:25 | **seek** 26:23 30:5 31:11 | **served** 29:8 54:3 55:19 | **shortly** 71:11 |
| **school** 58:3 59:8 61:1 78:4 | **seeking** 22:1 22:13 32:18 38:11 | **services** 2:2,11 3:1,7,21 4:14 | **shouldn't** 28:9 71:21 |
| **schools** 54:9,11 60:17,25 70:13 | **seeks** 17:24,25 18:14 19:1,22 20:8,20 21:6 27:18 36:19 | **serving** 31:1 | **show** 37:6 67:1 |
| **science** 27:8 | **seem** 59:21 | **session** 34:15 | **shown** 40:24 |
| | **seems** 53:9 71:7 80:25 | **set** 12:12 43:7 53:19 55:14 78:21 | **shows** 53:11 81:2 |
| | | **setting** 44:20 | **side** 35:3 46:23 61:18 |
| | | | **sides** 33:10 |
| | | | **sidestep** 25:5 |
| | | | **sign** 46:17 64:19,20 |
| | | | **signature** 87:6 |
| | | | **signed** 52:9 54:21 |

**simply** 37:23
47:16
**single** 65:3
67:11 68:15
**sir** 59:14 60:21
61:9
**siting** 57:6
**sitrick** 5:15
36:15
**sitting** 57:17
66:16
**situations** 44:9
**six** 48:21 51:12
58:18 60:10
72:9 78:3
**sixth** 3:6,20
4:13 18:24
19:8,21 20:18
35:10
**slide** 26:13
**small** 14:18
36:24
**smith** 2:20,22
9:8 17:20,22
17:23 18:9
**smoke** 40:7
**snoop** 43:7
**soave** 60:21
**solicitation**
75:17
**solutions** 87:20
**somebody** 39:1
**sonya** 6:25
87:3,8
**sooner** 27:11
**sorry** 58:5,6
63:3 66:1

71:18 72:22
81:20 83:19
**sort** 16:7 36:1
48:5 50:2
**sought** 16:16
20:13 24:13
**sounded** 83:6
**sounds** 83:8
**sources** 72:13
77:7
**southern** 1:2
37:1 57:10
**speak** 17:5
18:15 19:25
20:10
**speaking** 25:25
**special** 2:20
3:2,14 4:16,22
5:20 8:2 9:9
20:22 24:9
25:7,16 27:17
27:25 29:6
**specific** 13:17
16:8 82:16
**specifically**
15:4 24:12
39:17 41:20
**speculate**
34:19
**spells** 39:25
**spend** 34:3
86:12
**spent** 31:3 35:1
70:1 71:14
74:21
**spokane** 64:23
65:1,2,9,10

**spoke** 48:2
70:17
**spoken** 48:18
49:10
**sponte** 80:22
**st** 7:5 63:9
**stab** 64:9
**stand** 23:18
24:7 46:10
49:19
**standard** 15:13
62:5
**standards**
24:17 53:19
62:3
**standing** 24:22
57:18 72:11
**stands** 56:19
**stang** 5:5,7,10
7:10 8:8,13
10:9,14 21:5,7
21:8,9,9,20
22:24 23:12,16
24:14,20,24
25:5,19,24
26:11,23 27:2
27:9,13 31:10
33:19,20 34:4
34:8,12,19
35:6,19 36:3,7
39:4,4,5 40:13
40:19,22 41:6
41:9,11 42:1
42:14,23 43:16
45:11,11 46:2
46:7 47:24
48:11 49:15

52:1 53:21
55:3,6,23 56:7
56:15 57:5,9
57:15,19 58:3
58:6 59:2,7
60:6 62:10,12
62:24 63:17
64:7,14,17,19
65:1,8 66:1,4,8
66:15,17 70:17
72:2 77:7 78:5
82:21,22 83:7
83:11,19,21,23
84:1,2,8,13
85:15,21
**stang's** 77:10
81:14
**start** 59:19
68:14 75:24,24
**state** 6:1 14:5
25:24 31:12,17
31:25 38:6,10
38:10 40:8
42:19,20 43:20
44:14 45:9,16
47:6,7,21 48:7
48:17 50:20
52:4,8 56:3,23
57:4 62:2,5,6,7
62:8 67:3,10
67:14 69:8,17
70:25 72:3
73:7,18 74:7
74:13,24 75:1
75:2 76:13,15
76:23 79:4
81:5 82:20

statement 49:9
49:11,12,13,20
49:25 50:8,25
51:7,17,19,22
53:4,15 63:23
64:9 67:19
69:11,15,22
70:7 80:21,22
83:5,9,10,13
84:24
statements
15:1 19:14
63:7
states 1:1,11
9:15 12:24
13:19,22 14:1
14:4
status 6:8,19
33:6 47:24
stay 22:1 26:6
26:20,24 29:13
29:14 30:11,14
30:22 31:10
33:23,25 34:22
54:16 56:14
58:14,16 59:5
68:4 73:14
77:13,14 78:13
stayed 54:11
58:19,20 59:23
60:1,2,7,8,8,9
60:13,14 78:13
steam 29:2
steinman 47:22
48:3,17,19
49:7 51:12
56:4 57:22

77:11,19 78:2
78:9,12,14
79:5 81:24
82:7,10,23
steinman's
52:5 54:2
56:12 60:12
61:5 78:20
step 61:7
stephen 9:6
stephens 7:22
12:15 37:9,11
37:12,13 38:4
38:9 41:3,12
41:18 42:25
43:1,13 44:1,9
44:25 45:4,6
48:2 73:10,12
steven 36:22
stockton 65:3
stoneking
48:11
stop 26:20 64:5
stopping 70:20
stops 26:18
strategy 22:16
22:16 26:1
street 7:19 8:3
9:3,17 10:3,18
strike 56:24
strong 49:5,6
54:18 55:10
79:13
strongest 45:25
46:5 55:12
strongly 13:7

struggle 47:18
studied 39:10
stunned 34:12
sua 80:22
subject 17:16
35:5 36:1
73:14,15
subjected
78:12
submit 24:11
27:9,12
submitting
43:25
subpoena 38:7
38:10
subpoenas
54:3
subsequent
81:2
subsumed
15:22
subtracted
61:24
succeed 76:3
sudden 60:13
suggest 55:1
77:15 79:11
suggested
46:20 56:18
80:9
suggests 50:25
suite 8:3,10,17
9:3,17 10:18
87:22
summary
35:22

supplement
33:21
support 47:6,7
67:6
supposed
24:18 40:12
56:21 61:16
supreme 71:2
75:24
sure 14:23
19:11 28:20
32:10 37:11
38:8 49:2 50:2
51:6,15,20,24
57:12 66:13
83:6 84:3
surprised
34:13
survivor 51:2
63:12
survivors
50:15 52:20
53:25 54:17
63:10
suspect 25:16
suspend 45:9
68:20 69:4
71:20
suspending
68:8
suspension 6:2
sustained
50:10
syracuse 30:5
30:6,12,19
31:7,15 32:22

| t | | | |
|---|---|---|---|
| **t** 87:1,1 | **terrana** 4:16 | 55:12,12 59:4 | **things** 15:13 |
| **tails** 67:18 | 4:18 8:15 | 60:16 62:7,7 | 33:4 36:25 |
| **take** 28:11 31:8 | 20:22 35:11 | 64:2 66:5,6 | 48:3 |
| 66:6 79:15 | **terrible** 13:9 | 69:5 70:20 | **think** 14:21 |
| 85:11,23 | **test** 12:16 | 72:12 73:24 | 15:3 16:15 |
| **taken** 42:17 | 45:14 46:10,11 | 75:6 76:8 80:5 | 23:19,19 24:1 |
| 47:15 58:8 | 46:12,21 47:16 | 80:7,8,8,13 | 24:21 25:21 |
| 79:23 | 50:4 54:5,7 | 86:6,12 | 26:17 27:1,6 |
| **takes** 86:5 | 55:13 59:5,7 | **there's** 14:13 | 34:15 38:4 |
| **talk** 13:4 14:24 | 60:16,19 66:18 | 15:2,23 23:20 | 40:3 41:14,18 |
| 25:12 56:24 | 66:20 69:3 | 29:8 32:11 | 41:19 43:4 |
| 65:6 67:3 71:6 | 78:25 79:2,5 | 40:1,23,24 | 44:18 46:2,5 |
| 85:14,15 | 79:11,17 80:9 | 54:13 56:19 | 47:17 50:1,14 |
| **talked** 63:4 | 81:22 | 58:5 59:17 | 50:14 51:15 |
| 68:25 | **testify** 67:15 | 62:17 67:23,25 | 52:22 56:5,23 |
| **talking** 76:23 | **thank** 13:16 | 76:13 78:24 | 59:8,23 60:13 |
| 76:24 78:6 | 17:2,18,19 | 80:9,15 | 61:21,25 62:19 |
| **talks** 43:5 | 18:11,23 20:17 | **they'd** 49:20 | 62:22 63:3,12 |
| **task** 35:23 | 20:18 21:3,19 | **they'll** 46:13 | 65:24 66:20,22 |
| **tell** 23:10 24:10 | 27:14 29:4,25 | 51:16 61:1 | 68:12 70:14 |
| 24:15 42:4 | 35:6,9 37:3,8 | 72:25 | 72:5,9 74:17 |
| 46:9,16,17 | 38:22 39:4 | **they're** 14:23 | 75:7,15,20 |
| 54:6 56:3,22 | 43:13 45:6 | 26:5,13 27:6 | 76:1,3,11 77:4 |
| 61:1 66:8,11 | 66:4,4 68:2,2 | 32:10 40:7,11 | 79:19,21 80:4 |
| 67:19 72:3 | 68:24,24 69:13 | 47:14 49:8 | 80:15 81:16 |
| 81:24 | 69:14 82:2 | 50:14 57:6,11 | 83:23,23 |
| **telling** 32:25 | 84:8 85:2,4,19 | 59:25 60:7,13 | **thinking** 74:21 |
| **temporarily** | 86:9 | 64:1 65:25 | **third** 5:19 7:12 |
| 45:9 | **thankful** 14:2 | 66:24 68:15 | 10:11 36:18 |
| **temporary** 6:2 | **that's** 14:2,24 | 70:15 80:10 | 54:6 61:3 |
| **ten** 12:25 16:21 | 17:12 18:3 | 83:8,9 | 64:15 |
| 16:23 17:16 | 19:3 24:6 | **they've** 62:20 | **thirds** 72:6 |
| **tenth** 64:14,21 | 27:22 32:22 | 67:13 73:25 | **thought** 25:17 |
| **terms** 40:8 | 34:18 38:19 | 78:25 | 31:24 39:10 |
| 44:10 48:6 | 40:14 43:10 | **thing** 33:22 | 42:5 48:23 |
| | 45:3 46:24 | 45:24 48:5 | 51:23 62:18 |
| | 53:2,20,24 | 53:1 69:2,6 | 75:2,3 76:11 |

76:12 77:20
81:11,13
**thoughts** 45:22
48:22
**thread** 80:20
**three** 46:18
49:21 50:22
51:12,13 54:4
56:22 57:1
61:12 62:13
63:5 65:11
68:14 70:8,16
70:23 72:13
77:7 80:4
**thuma** 65:17
**time** 6:13,17
15:14 21:15
23:1 24:12
25:1 27:13
29:1 32:17
35:2 43:2
44:21 45:19,19
47:3 53:3 54:6
62:23 65:2
67:4,9,10
68:16 70:1
71:10 74:21
76:19,22 83:14
83:16 85:5
**times** 60:23
**today** 13:7
16:3 26:14
27:14 37:7
38:2,2 51:24
54:12,20,25
58:24 61:3
67:24 68:7,16

75:19 81:5
84:3,10 86:6
**todd** 7:23
77:24
**toggle** 49:23
67:16
**told** 28:5 31:2
46:2 50:18
52:17 55:4
56:18,21 60:14
65:22 66:23
**tolerate** 47:19
**tomorrow**
68:17,18 69:9
69:11 71:11
76:22 83:5
84:15 86:7
**took** 30:4
33:10 69:13
**top** 78:25
**topic** 15:4
**toss** 66:2
**tossing** 65:25
**total** 33:16
35:4 36:4
73:13
**touch** 70:20
**tough** 66:10
**towards** 29:10
75:9
**track** 39:19
61:2
**transcribed**
6:25
**transcript**
31:15 87:4

**trial** 62:22
81:16
**trials** 47:23
48:1,15,25
55:13,20
**triangle** 65:9
**tried** 22:11
23:3 33:5 46:1
48:22,25 49:1
49:8 50:1
51:12 55:20,21
56:4 62:14,16
67:2 76:10
**true** 49:1 87:4
**trust** 69:12
**trustee** 9:16
12:24 13:19
14:1,4 15:15
34:16
**trustee's** 13:22
**try** 15:8,10
48:21 49:5,7
55:6 62:23
63:2 72:8
78:14
**trying** 28:6
57:11 66:23
71:3
**turn** 27:15
41:6
**turned** 30:21
30:25
**turns** 15:21
**twice** 54:5 56:1
56:21
**two** 12:13,18
24:11 27:20

33:9 34:5 42:3
42:8,11 45:13
46:7 47:1
50:22 51:13
57:12 58:3,8
58:16 60:24,25
64:21 67:2
72:6 73:7 77:2
80:3 81:8
82:25
**type** 65:10
**typical** 34:18

**u**

**u.s.** 1:23 9:16
15:15 34:16
**ultimate** 31:17
**ultimately**
31:18
**uncomfortable**
29:21
**under** 27:6
39:11 40:6
41:4 47:11
49:19
**understand**
26:7 34:12
42:23 50:23
68:12 76:8
77:2,18,19
85:8
**understanding**
12:23 13:1
20:1 47:25
57:21
**understood**
30:10 33:2
43:20

| | | | |
|---|---|---|---|
| **underway** 82:20 | **usual** 40:14 | **violation** 26:6 29:14 31:11 33:23 | **wanted** 14:4 21:18 30:7 31:5 33:20 34:4 42:5 43:15 45:5 46:17 71:17 76:20 77:6 82:6 |
| **undone** 71:24 | **usually** 33:9 35:3 | **violations** 43:9 | |
| **unfortunately** 30:4,12,17 | **utter** 23:1 | **vis** 54:14,14 | |

**v**

- **underway** 82:20
- **undone** 71:24
- **unfortunately** 30:4,12,17
- **uniform** 78:21 78:21
- **unincorporated** 59:10
- **uniondale** 8:18
- **united** 1:1,11 9:15 12:24 13:19,22,25 14:3
- **universe** 52:10 78:8 79:6
- **unknown** 72:2
- **unreasonable** 83:18,20
- **unredacted** 44:17
- **unsecured** 5:6 5:25 27:17
- **unsettled** 75:5
- **unwilling** 79:16
- **update** 12:19 12:20,22 13:17 13:17
- **updates** 22:22
- **upset** 85:22
- **urged** 45:19
- **use** 36:25 39:17 40:1,3 61:22,23 86:1
- **uses** 62:5

- **usual** 40:14
- **usually** 33:9 35:3
- **utter** 23:1

**v**

- **v** 6:7
- **vacated** 83:13 84:4
- **vague** 15:14
- **value** 50:6
- **varick** 9:17
- **varied** 65:8
- **various** 52:24
- **vent** 24:23
- **venting** 22:25 25:18
- **verdict** 72:21 72:24
- **verdicts** 51:13 62:14
- **veritext** 87:20
- **versa** 63:12
- **versus** 15:24
- **vertetis** 10:16 10:17
- **vesey** 7:19 10:3
- **viable** 50:14
- **vice** 63:12
- **victims** 49:5
- **view** 30:21 32:20 65:22
- **violate** 31:10 42:5,15
- **violated** 40:8
- **violates** 33:25
- **violating** 26:24

- **violation** 26:6 29:14 31:11 33:23
- **violations** 43:9
- **vis** 54:14,14
- **void** 33:24
- **voluminous** 31:14
- **voluntarily** 65:3
- **voluntary** 25:13
- **vote** 51:3,18 53:13,14,18 63:10 66:25
- **voted** 63:11,11
- **voting** 50:23

**w**

- **w** 7:5
- **wa** 10:19
- **wait** 36:13 66:11
- **waiting** 22:21 57:6,6 68:18
- **waking** 72:4
- **want** 13:14 18:2 20:25 26:22 32:9,14 36:25 38:13,23 39:2 40:19,21 40:22 47:2 49:19 54:7 56:22 66:2 69:2,6 71:3 78:6 81:24 84:13,17,22 86:11,11

- **wanted** 14:4 21:18 30:7 31:5 33:20 34:4 42:5 43:15 45:5 46:17 71:17 76:20 77:6 82:6
- **wants** 76:6
- **warrant** 19:15
- **washed** 51:14
- **washington** 9:4
- **wasn't** 24:6 26:8 34:24 35:1 62:16 82:22 83:6 84:23
- **waste** 22:17 23:1
- **water** 55:25 61:15
- **way** 25:20 27:11 29:4,9 40:14 45:21 48:8 51:23 56:18 57:11 66:24 68:4 69:3 76:23 77:11
- **ways** 50:2
- **weak** 54:18 55:10 79:14
- **weaknesses** 47:17
- **week** 82:11 84:19

| | | | |
|---|---|---|---|
| **weight** 32:23 | **wisdom** 46:23 | **x** | 50:18 54:25 |
| **weird** 38:18 | 63:1 | **x** 1:4,10 16:9 | 85:7 |
| **welcome** 54:5 | **wish** 16:24 | **y** | **z** |
| **went** 39:10 | 17:14 18:7,20 | **y** 16:9 | **z** 16:9 |
| 42:2,10 61:23 | 19:5,19 20:4 | **yeah** 14:17 | **ziehl** 5:5,7,10 |
| 63:10,13 71:18 | 20:14 69:25 | 25:9 35:17 | 7:10 8:8 10:9 |
| **weren't** 19:14 | **wishes** 21:12 | 49:16 65:6 | 21:5,9 39:5 |
| 46:3 63:7 | **withdrew** | 66:4 79:4 | 41:12 43:17 |
| 76:25 | 57:15 | 80:15 82:20 | 45:11 57:20 |
| **we'll** 14:9 | **withstand** | **year** 85:14 | **zipes** 9:20 |
| 27:24 33:8 | 72:21,24 | **years** 34:25 | 12:22 13:3 |
| 34:1 43:21 | **won't** 34:2 | 62:17 | 14:6,11,12,20 |
| 44:8 48:21 | 55:25 56:24 | **year's** 84:14,17 | 15:1,7,20 16:5 |
| 49:7,20 53:21 | 86:13 | **yesterday** | 16:13 21:13,14 |
| 68:12 70:11,13 | **word** 39:7 | 66:14 | 21:19 25:12 |
| 73:3,4 80:13 | 52:13 64:8,10 | **yield** 58:6 | 36:6,8 |
| 85:14 86:10 | **work** 14:3 | **york** 1:2,7,13 | **zipes'** 12:24 |
| **we're** 14:2,3 | 24:22 42:5 | 7:6,13,20 9:11 | **zoom** 33:6 |
| 16:2 29:21 | 68:12 82:8 | 9:18 10:4,12 | **á** |
| 31:21 33:22 | 84:13,17 | 32:17 57:11 | **á** 54:14 |
| 42:21 52:21,22 | **worked** 24:5 | 70:25 71:2 | |
| 54:16 61:5 | **working** 27:14 | 75:24 76:15 | |
| 62:7 66:18 | 31:21 60:11 | 81:6 | |
| 71:4 76:22 | 69:15 70:24 | **you'll** 23:17 | |
| 80:1,3,3 | 75:8 78:19 | 34:2 39:9 | |
| **we've** 26:11 | **works** 55:12 | **you're** 25:3 | |
| 33:5 34:11 | **worth** 50:22 | 32:25 47:21 | |
| 54:5,13 56:1 | 76:16 | 53:3 59:22 | |
| 69:24 74:7 | **worthless** 30:2 | 64:12 66:8,9 | |
| 77:19 84:3 | **wouldn't** 30:1 | 67:1,20,21 | |
| **what's** 38:23 | 69:4 77:16 | 68:18,20 79:7 | |
| 43:14 48:13 | **wow** 67:25 | 80:19,19,20 | |
| 52:7 54:2 | **writing** 34:3 | 83:25 | |
| **wi** 8:4 | 40:10 | **you've** 16:19 | |
| **willing** 77:2 | **written** 24:16 | 24:5 30:24 | |
| **window** 73:22 | **wrote** 59:20,25 | 40:18 45:20 | |
| 74:25 | 63:21 | | |

# EXHIBIT C

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 20-12345-mg

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   One Bowling Green

14                   New York, NY  10004

15

16                   November 1, 2023

17                   2:03 PM

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  KS

1    HEARING re Hybrid Status Conference RE: Mediation.

2    (Doc # 2590)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   JONES DAY LLP

 4        Attorneys for the Debtor

 5        250 Vesey Street

 6        New York, NY, 10281

 7

 8   BY:  CORRINE BALL

 9

10   DUANE MORRIS LLP

11        Attorneys for Certain Underwriters at Lloyd's London

12        and Certain London Market Insurers

13        865 South Figueroa Street, Suite 3100

14        Los Angeles, CA 90017

15

16   BY:  RUSSELL WEBB ROTEN

17

18   REED SMITH LLP

19        Attorneys for the Debtor's Insurance Counsel

20        599 Lexington Avenue, 22nd Floor

21        New York, NY, 10022

22

23   BY:  ANN V. KRAMER

24

25
```

1  PORZIO, BROMBERG & NEWMAN, P.C.

2       Attorneys for Arrowood Indemnity

3       1675 Broadway, Suite 1810

4       New York, NY 10019

5

6  BY:  BRETT MOORE

7

8  JOSEPH HAGE AARONSON LLC

9       Future Claims Rep, Pro Se

10       800 Third Avenue, 30th Floor

11       New York, NY 10022

12

13  BY:  ROBERT E. GERBER

14

15  BURNS BAIR LLP

16       Attorneys for Special Insurance

17       Counsel for the Committee

18       10 East Doty Street, Suite 600

19       Madison, WI 53703

20

21  BY:  TIMOTHY W. BURNS

22

23

24

25

**Page 5**

1    PACHULSKI STANG ZIEHL & JONES LLP

2         Attorneys for

3         780 Third Avenue, 34th Floor

4         New York, NY 10017

5

6    BY:  JAMES I. STANG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              CLERK:  All rise.

3              THE COURT:  All right.  Please be seated.  All

4    right.  Before we begin, I know, Ms. Dine, you had asked on

5    behalf of the Committee to postpone this hearing for today.

6    I wanted to move forward, and I'll explain why in a second.

7              So yesterday afternoon, my chambers received a

8    phone call from Justice Leonard Steinman.  I returned the

9    call.  I spoke to him for 10 to 15 minutes.  I told Justice

10   Steinman that at the last hearing in this case, I had raised

11   questions about the possibility of test cases being selected

12   by the parties and expedited for trial in the state court,

13   assuming that the bankruptcy case isn't dismissed.

14   Obviously if the case is dismissed, state court will deal

15   with them as it wishes.

16             In substance, Justice Steinman said he was open to

17   doing so and would expedite such cases.  Obviously we didn't

18   go beyond that.  I made clear that the issue arose solely

19   from my questions that I asked during the hearing and not

20   from any suggestions by the parties.

21             My conversation with Justice Steinman, however,

22   raised some questions that I wanted to raise today so that I

23   have a better understanding of what happens if cases proceed

24   to trial in state court.  And my questions are specifically

25   with respect to comparative fault or liability.

Page 7

1   Specifically does CPLR Section 1601 apply with respect to

2   noneconomic loss in sex abuse cases that, for example, name

3   a priest, a parish, and a diocese as defendants.  I

4   basically was trying to think through what's the potential

5   exposure of the diocese, of a parish, of a priest.  And I

6   understand that many of the alleged abusers may have died.

7   These are some very old cases that would raise questions

8   about what happens in that context.

9           Justice Steinman didn't raise CPLR Section 1601

10  with me, but after talking with him and thinking about it

11  some more, it popped into my head, let's put it that way.

12  And I tried to look at it -- I didn't find any cases -- I

13  actually did look on Westlaw, too.  I didn't find any cases

14  where it had been applied, and in sex abuse cases I

15  couldn't.  Certainly plenty of cases where 1601 has been

16  applied.  But it was because I had that conversation with

17  him yesterday, I really wanted to have this hearing today

18  and at least get on the record that I had that conversation

19  with him.

20          So with that, let me first -- Ms. Ball, do you

21  want to -- has the needle moved at all since our last

22  hearing?

23          MS. BALL:  Corinne Ball, Jones Day, for the

24  Diocese of Rockville Centre.

25          Your Honor, there is no more.  The Diocese stands

Page 8

1    on its offer and reminds the Court that 150 million of the

2    200 offer is sourced in loans and contributions from the

3    released parties.  We have sold or are borrowing everything.

4    There is no more.  We are there.  Although as you know and

5    as you recognize, we do not believe dismissal is in the

6    interest of claimants or the Diocese or parishes, the

7    schools, the hospital, and all the others that are served by

8    the Diocese in its charitable/education/religious missions.

9           We have taken Your Honor's call for creativity to

10   heart.  Creativity continues, but in the direction of

11   monetizing our very substantial insurance assets.  That's

12   where we see the flex.  And I think we discussed that last

13   time with Your Honor.  But nothing else has changed.

14          Our activities to date are focused on three

15   different categories; those that advance our ability to

16   execute on those loans and perform on the plan, those that

17   advance the Diocese's position in the event of dismissal

18   such as defending Your Honor's orders on appeal, and those

19   that potentially would assist both focusing on settling the

20   adversary proceeding against the cemetery.  But nothing

21   else, Your Honor, at this point.  Frankly, that's -- all

22   those are directed at hopefully getting us out of here as

23   expeditiously as possible.

24          THE COURT:  Well, you may be out of here faster

25   than you wanted to be out of here, but...

1          MS. BALL:  I understand that, Your Honor.  For

2     what it's worth, the parishes have continually, and I

3     believe in briefs in this Court, taken the position that the

4     allocation of liability does apply.  And indeed, they are

5     proffering that as one of their defenses.  Not us that --

6          THE COURT:  Well, I assume it would be a diocese

7     defense if less than -- if the Diocese is less than 50

8     percent culpable, 1601 applies.

9          MS. BALL:  It does.

10         THE COURT:  Again, I didn't talk to Justice

11    Steinman about 1601.  After some conversation, it was just

12    about how in cases that have been tried around the state,

13    the issues of allocation --

14         MS. BALL:  We will have to find out the answer.

15    We do have litigators, as you know, and the parishes have

16    their own litigators who are also defending other cases.  So

17    we will make inquiry of them for the benefit of Your Honor.

18         THE COURT:  Are any of the coverage cases any

19    closer to settlement?  You've been in mediation about that.

20    But are any of them near -- have schedules that would lead

21    to any resolution within the next six months, for example?

22         MS. BALL:  As I suggested to Your Honor, the area

23    where creativity, at least on this side, is still a focus is

24    on our substantial insurance assets.  We do not believe that

25    the coverage actions will move quickly enough to meet our

Page 10

1    dwindling resources.  But that is not to say that there

2    haven't been some discussions.  But that is kind of the only

3    realm remaining to be explored as far as we see it.

4           THE COURT:  All right.  Thank you.

5           MS. BALL:  You're welcome.  I wish we had better

6    news.

7           THE COURT:  Mr. Stang or Ms. Dine?  Sure.

8           MR. STANG:  Good afternoon, Your Honor.  There has

9    been no change in the bid and ask in terms of monetary

10   demands.  The Committee has met and is considering

11   alternatives to dismissal, including what you suggested last

12   time and what you touched upon with Justice Steinman.  We

13   are preparing a motion for your consideration that would be

14   that alternative, and there are essential details to it that

15   we are working on that really go to the heart of our ability

16   to make a feasible proposal.

17          We heard Ms. Ball last time about the committee --

18   I'm sorry, the Debtor's position on test cases outside of a

19   plan context.  But ultimately that's something that you'll

20   decide when you see our proposal.  As to the creativity that

21   the debtor may be working on, we have had no information

22   from the debtor in any recent period of time regarding his

23   efforts to monetize its insurance policies.  We did tell the

24   debtor that if it could negotiate its cemetery settlement,

25   notwithstanding our standing to prosecute the fraudulent

Page 11

```
 1    conveyance action, that we would welcome its efforts to try

 2    to reach that settlement without giving up our rights under

 3    the standing order.  We've not heard anything about that.

 4              And as far as defending orders on appeal, since

 5    all of the claims, including claims against the parishes,

 6    would be channeled under a consensual plan, we from day one

 7    of this claims objection process have wondered what the

 8    purpose of it was because none of your orders go to the

 9    parish claims or claims against the other affiliates.  And

10    defending those orders is something they obviously want to

11    do.  But at the end of the day -- and I'm just using

12    numbers, Judge -- they're roughly correct, but they're just

13    numbers, if there were 600 claims filed initially and

14    through their claims objection process they've reduced it to

15    500, there will still be 600 claims channeled into the

16    trust.  And how those claims are treated in the trust is

17    obviously a different story.  But they will be -- all of

18    them will be channeled.  So they can spend their time

19    defending appeals, but we don't see and have never seen the

20    utility of this (indiscernible).

21              As far as the insurance coverage actions are

22    concerned, while we are intervenors or intervenors for a

23    limited purpose, we don't disagree with Ms. Ball's

24    assessment of timing.  The mediation has included offers and

25    counteroffers with the insurers, but there's been -- I can't
```

Page 12

```
 1    report to you that the mediation is resulting in a
 2    settlement of any particular insurance liability.
 3              THE COURT:  So let me just -- again, I don't want
 4    to -- I'm not inquiring about what's happened in the
 5    mediation.  Ms. Ball talked about trying to be creative
 6    about ways of monetizing insurance.  And I gather one issue
 7    that may be currently discussed is a loan against the policy
 8    coverage.  I don't know what -- Mr. Stang, you've got lots
 9    of experience in these sex abuse cases where only
10    occasionally do insurers seem to want to step forward and
11    come to an early resolution.  I don't know what creative
12    ways you've thought about engaging -- and this isn't the
13    place to talk about it -- engaging with the Diocese if
14    there's a way of in fact monetizing in the short term, but
15    in a longer period whether it includes some agreements for
16    backstops over a period of years from the Diocese or
17    parishes.  And you've undoubtedly had this issue with
18    multiple cases.  And if not you, then others representing
19    committees in multiple cases where the insurers have been
20    unwilling to step up.  And I understand that they have
21    defenses and they are entitled to stand on their defenses at
22    they want.  At some point courts -- have any courts in any
23    of the sex abuse cases actually -- and it may be not a
24    bankruptcy court, it may be a district court if the
25    reference is withdrawn as it has been here.  Have any of
```

Page 13

1    those cases resolved similar policy defenses that are being

2    asserted in New York?

3              MR. STANG:  Well, there have been coverage actions

4    that have progressed towards dispositive motions.  Ms. Burns

5    just got an opinion a few days ago regarding expected and

6    intended in one of the Minnesota Diocese cases from -- I

7    don't know if it was the district court or the state court,

8    but it was a coverage action where a motion for summary

9    judgement was denied.  And that was an important

10   development.

11             I would say generally in my experience the

12   coverage actions don't historically -- and I give credit to

13   Mr. Burns for the advances that have been made in Minnesota

14   -- have not yielded much in the way of results.  The

15   Committee has, after some back and forth with the Debtor,

16   worked with it to provide access to proofs of claim for one

17   or more entities that might be interested in trying to

18   monetize the insurance policies.  And so to that extent we

19   have -- again, it took a little back and forth as to the

20   information that was going to be disclosed in the terms, but

21   that's been done.

22             The Debtor has not shared with us any real

23   substantive terms of what a loan or monetization might look

24   like, but they've told us that's because it hasn't developed

25   to that stage yet.  We are concerned about what the market

Page 14

1    might require in terms of premium returns if such a device

2    was utilized, but we'll certainly consider it if the Debtor

3    can present a proposal to us.

4           And one other thing, Judge.  While this --

5           THE COURT:  I don't know what happened in Camden.

6    I gather that the proposed plan in Camden, the insurers went

7    ballistic about it and it's been altered.  Obviously the

8    insured is limited in what action it can take with respect

9    to the insurers without jeopardizing its potential coverage.

10   I have some sense of that.  But the first -- look, when I

11   was in practice, maybe it was on -- I used to deal with E&O

12   and D&O policies a lot.  And this is the first time I've

13   ever seen policies without aggregate limits.  Never.

14          MR. STANG:  We're glad the market provided those

15   to the Debtor.  We wish the insurers would recognize that

16   they should pay on those policies of course.  But I'm not

17   trying to -- that was a little tongue in cheek.

18          THE COURT:  No, I understand.  And I'm not

19   suggesting -- look, they may well have very good defenses

20   that a court ultimately will sustain.  I don't know.

21          MR. STANG:  Your Honor, in terms of creativity,

22   your ruling about a week ago denying the motion for stay

23   relief because it was unnecessary in terms of making demands

24   has been something that is being acted upon.  I'm not sure

25   if all the letters that could go out have gone out, but it's

Page 15

1    certainly to be acted upon.  And we appreciated the Court's

2    comments enabling individual survivors to do that.

3             And in terms of your comment about historically

4    what insurers have or have not done, there have been about I

5    think 30 what I'll call religious sex-abuse-centered Chapter

6    11 cases, and I would say certainly in the first half, which

7    fortunately my firm was able to be committee counsel in most

8    of those, there were global settlement with (indiscernible).

9    But the world has changed.

10            THE COURT:  Yeah, the world has changed.  The

11   increasing number of diocese cases being filed all over the

12   country, I'm sure many with the same insurers.

13            MR. STANG:  Yes.  I think that's part of what has

14   caused the change.  But, for example, you mentioned Camden.

15   I'm not counsel in Camden.  I only hear in the grapevine

16   what's going on there, and I'm not -- therefore, it's not

17   worth me talking about.  Other people on this call are

18   involved in the --

19            THE COURT:  I only know what I've read in the

20   blogs and things about Camden, so I haven't talked to

21   anyone.

22            MR. STANG:  In Rochester, which has competing

23   plans going on, competing between the debtor and the

24   committee on the one hand and CNA on the other, the court,

25   Judge Warren, has approved scheduling for those matters to

Page 16

1    go forward, and there is a settlement with two insurance

2    companies, and significant insurance companies, embedded in

3    the plan that the diocese and the committee are jointly

4    proposing.  There is no consent or no settlement I should

5    say with CAN.  Obviously they have a competing plan.  And so

6    it's not that settlements can't be reached, it's just that

7    the idea of naturally these cases were resulting truly

8    global settlements I think is sadly -- in my opinion sadly

9    not in our future.

10              THE COURT:  Ms. Ball?

11              MS. BALL:  If I may.  There are facts, if they

12   would be helpful, that we can assemble and share with both

13   the Committee and yourself, Your Honor.  There are 20

14   diocesan cases that have an order of confirmation.  That

15   means there are 20 disclosure statements describing exactly

16   what would happen.

17              THE COURT:  Yeah.  I told you I went to the Penn

18   State -- I haven't read all of them.  They're all --

19              MS. BALL:  Professor Reilly has listed more

20   because she includes religious orders.  She includes San

21   Diego, which was not a Chapter 11, and she includes all the

22   recent cases filed that do not yet have a --

23              THE COURT:  I'm sure all of you have read all of

24   that stuff.  I only occasionally look at the website.

25              MS. BALL:  But in studying, we studied those when

Page 17

1    we prepared that long-ago disclosure statement.  But we've

2    recently gone back and looked again.  And from those

3    disclosure statements, you can get settlement totals, you

4    can get insurance portion, not always parish portion, and

5    the per claim.  And the reason why we did that again

6    recently is the offer we've made is the highest ever made in

7    those 20 cases when you think about our insurance and the

8    cash.  Indeed, our cash alone puts us in the top five.  So

9    maybe that's where the 500 claims are relevant when we talk

10   about average per-claim recoveries.  But we can pull that

11   together if Your Honor and/or Mr. Stang would find that

12   useful.

13           THE COURT:  Well, I don't know that I would.  But

14   because -- you know, I don't have a plan in front of me.  I

15   don't have a disclosure statement in front of me.  You each

16   filed both.  Neither side brought on a disclosure statement

17   hearing.  I commented at the time I hadn't read them.

18           MS. BALL:  You did.

19           THE COURT:  And it seemed to me that neither was

20   confirmable, but that -- I wasn't ruling.  I mean, if you

21   think -- the landscape has changed against you in the sense

22   that we're all dealing with Purdue.

23           MS. BALL:  Well, as Your Honor may be aware, we

24   did just file an amicus on behalf of the U.S. Catholic

25   Conference of Bishops in that case.  So yes, we are very

Page 18

1    much aware of it.

2            THE COURT:  And I haven't read anything where

3    anyone suggested that consensual releases don't work, but

4    that does require a consent.

5            MS. BALL:  True.  And I think we may be testing

6    the limits of how one might obtain consent in the post-

7    Purdue world for sure.  I have no doubt.

8            MR. STANG:  Your Honor.

9            THE COURT:  Go ahead, Mr. Stang.

10           MR. STANG:  To the extent -- it's just an

11   observation.  San Diego was a Chapter 11 case.  It was

12   dismissed upon a settlement that did not include a Chapter

13   11 plan.

14           And I'm going to say something that I hope --

15   well, will reflect how I feel about these cases in general,

16   but especially about this, gee, we're offering more than

17   anyone else has.  There is no fair market value for child

18   rape.  There just isn't.

19           THE COURT:  Yeah.  I just read the law journal --

20   I understand it wasn't a Catholic church case, but it was a

21   $13 million judgement in Westchester County last week.

22           MR. STANG:  Yeah.  And so I told you the anecdote

23   last time about Judge Adler, that we have a view of the

24   Pacific when this -- I'm sorry, I'm blanking on her name --

25   when counsel for another diocese talked about what was paid

Page 19

1   in Davenport when we were in front of Judge Adler in San

2   Diego.  And she said yes, but we have a view of the Pacific.

3   We have spent an enormous amount of time and effort -- and

4   the dioceses where (indiscernible), they see BRG's bills --

5   in assessing what this enterprise can pay.  And Ms. Ball's

6   number in her plan can be the top of the chart for all I

7   care, it doesn't matter.  It depends on getting our

8   consents-- because of the way they are approaching these

9   affiliate releases, to getting the consents of the abuse

10  survivor.  And right now, notwithstanding what she has said

11  about moths coming out of their pockets, we do not believe

12  that they are putting forth a reasonable settlement offer

13  when we include their ability to continue performing the

14  enterprise's charitable mission.

15          THE COURT:  All I can do is ask that before you

16  pull the trigger, either side -- I mean, the Diocese could

17  say just dismiss the case, Judge, or you could make your

18  motion to dismiss.  I'm sure you will all continue some

19  discussions and just think about what you think is the best

20  for your respective clients.

21          And I think that you all face this big unknown of

22  what ultimately can be recovered by settlement or judgment

23  against insurers with lots of potential exposure but also

24  defenses.  And creative approaches may include some kind of

25  contingent compensation arrangements depending on timing and

Page 20

```
 1    recovery or lack of recovery.  You all share the same
 2    interests in recovering from insurance companies.  They all
 3    right you really hard, obviously.  You know that.  But
 4    everybody in this room or on the screen -- I don't know,
 5    maybe insurance counsel is on the screen too.  Many of you
 6    share the same interest in having a substantial recovery.
 7    You'll either get it or you won't.  I don't know.  It isn't
 8    going to be because of me, because those cases aren't before
 9    me.  And some of it clearly is timing.
10            Mr. Stang, when I denied the Diocese's motion for
11    preliminary injunction and said much -- some of which was
12    picked up by district judges when they remanded the cases
13    back to state court, the survivors have gone too long
14    without recovering.  I believe that entirely.  And sometimes
15    people can be better off if they get this much now with the
16    expectation of perhaps this much more in the future.  And so
17    be creative.  It may be -- you can disagree with the Diocese
18    as to whether they've put their best foot forward on the --
19    you know, put their best plan on the table.  That's not
20    going to be for me to decide unless you agree.
21            But there are certainly -- is someone who is 60
22    years old going to be better off if they get however much
23    they get today with a respective recovery going forward
24    maybe backstopped by the Dioceses, the parishes up to a
25    point?  I don't know.  You may have explored that already.
```

Page 21

1       I don't know.

2               MR. STANG:  Your Honor, our committee consists of

3       -- excluding the young man who was bullied by using racist

4       bullying tactics, our committee consists of abuse survivors

5       who share all of the concerns you've expressed, both

6       personally and on behalf of the greater constituency of

7       which they are really aware of their responsibilities to

8       these folks.  And so the demographic, if I can call it that,

9       of the abuse survivors weighs heavily upon the committee

10      when it's deciding what to do.

11              THE COURT:  How many cases in a year do you think

12      that Justice Steinman can try?

13              MR. STANG:  I don't know.  Obviously it would not

14      be limited to him alone.  And honestly -- and this gets a

15      little bit to what Ms. Ball used to say about taking cases

16      to verdict.  The pattern in settlements throughout the

17      country when there have been settlements outside of the

18      bankruptcy has been not to have to try every single case.

19              THE COURT:  That's why (indiscernible) bellwether

20      approach, because that's what's usually applied in mass tort

21      cases.

22              MR. STANG:  Well, sometimes it's bellwether in the

23      sense that there has been a disciplined approach to which

24      cases go forward.  Sometimes it's just been the cases going

25      forward however the docket allows.  But you don't end up

Page 22

1    trying every case.  You end up getting some kind of mass of

2    decisions, some in favor, some against, and the parties

3    think about how that can be extended to the entirety of the

4    docket, if you will.

5             And so the answer is I have no idea.  But what we

6    do know is that Judge Steinman -- because I spoke with one

7    plaintiff's counsel yesterday -- that there are some matters

8    that he has started trying -- not in this case, but in some

9    other ones -- that he has set -- this is my understanding

10   and I don't know this from examining the docket myself --

11   that he has set the end of December as the discovery cutoff

12   in many if not all of the cases that were released through

13   the preliminary injunction ruling.  And like I said, he can

14   field them out to other judges as well.  I don't think they

15   all have to fall on his bench.

16             THE COURT:  Well, I think -- let me just interrupt

17   you for this.  Number one, it clearly wasn't said in

18   confidence.  If there are test cases, make sure you pick

19   ones for Nassau County, because he'll try those.

20             MR. STANG:  We got them.

21             THE COURT:  He said the other counties, he may

22   handle them until they're ready for trial.  Then they go

23   back to the county from which they came.  Okay.  So he said

24   to me if I pick test cases, I should pick ones that are

25   Nassau County.  He'll try them.  He'll expedite them.  I

Page 23

1   don't know where that gets you in the end of the day.  So I

2   assume -- because this is what's happened in the

3   (indiscernible), you know, when each side sort of picks

4   their bellwether cases, the defendants pick the ones they

5   think they're going to do really well with, and the

6   plaintiffs pick the ones they think they're really going to

7   do well with.  And you hope to get enough points on that

8   graph so you can sort of figure out how that array of cases

9   -- some of those bellwether cases settled.  But that sort of

10  goes into the mix of how you value them.  But that's when I

11  got to thinking about this issue of comparative fall and

12  1601 of the CPLR.  You may have great cases against a priest

13  -- they may or may not still be alive -- decent case against

14  a parish, and not very good cases against the diocese unless

15  you really have proof that they had knowledge of the

16  predisposition of a priest who abusees.  I could easily

17  foresee that there could be judgements against priests,

18  against parishes or schools and maybe not against a diocese.

19  How that shakes our here, because I'm sure the Diocese

20  doesn't want to leave its parishes.

21         And then I was told I think by both sides,

22  certainly by the debtors, about the high percentage of abuse

23  claims focused on like 38 parishes or something like that.

24  I don't remember if that was the exact --

25         MS. BALL:  Roughly that's right, Your Honor.  I

Page 24

1    think it's forty-plus.  Three out of four cases.

2           THE COURT:  All right.  So you can result in

3    wiping out the parishes and leaving the abuse survivors with

4    very little recovery if they can't recover against the

5    Diocese.  And then good luck against the insurers which you

6    have now.  I'm talking out loud on a lot of this stuff.

7           Look, I've tried to think through -- I've said

8    this before.  I don't want to be the first judge to dismiss

9    one of these cases, but that sounds like where this is

10   headed.  All I'm asking is all of you try to be as creative

11   as you can.  Come up with some solutions.  You know?  The

12   best settlements are ones that neither side is entirely

13   happy with.

14          MR. STANG:  Your Honor, the Committee has -- since

15   you've gotten on the bench this morning, the Committee has

16   not filed a motion to dismiss.  As I indicated, we are

17   preparing a motion that provides we think a process that can

18   get us to we hope ultimately a global settlement.  There are

19   essential details, including some of the things you've

20   raised this morning that we have considered and need to

21   consider, especially your comments resulting from your

22   conversation with Justice Steinman which we certainly

23   appreciate you putting on the record.

24          THE COURT:  He knows that I was having this

25   hearing this afternoon.  And I said I would report back to

Page 25

1   him.  And there's nothing hidden in what he and I talked

2   about.  I've sort of laid out the gist of what we talked

3   about.  And so I'm not holding anything back that he said or

4   I said.

5           MR. STANG:  Your Honor, I was thinking you would

6   ask me so when am I going to see this proposal.  There is a

7   hearing scheduled for the end of November, and that's

8   certainly a date that we have on our calendars.  And we are

9   working to come to something that can be acceptable to our

10  greater constituency because we have stat court counsel who

11  represent committee members who represent a lot of other

12  people.  And so our intention is that when we present an

13  idea to you that it has the support obviously of the

14  committee, but also the people who at the end of the day

15  have to garner the votes to get a settlement that would pass

16  at least present Purdue standards.

17          THE COURT:  Okay.  You all decide you need a

18  hearing earlier, you let me know.

19          MR. STANG:  Will do.

20          MS. BALL:  Thank you, Your Honor.  Just as a

21  reminder --

22          THE COURT:  Just identify yourself for the record,

23  Ms. Ball.

24          MS. BALL:  Corinne Ball of Jones Day for the

25  Diocese.  Just as a reminder, liquidity is an issue.  We've

Page 26

1    got to be out of here one way or another very quickly.

2    Please bear that in mind as you think about your motion.

3            THE COURT:  Your liquidity isn't going to be much

4    improved if you're back fighting all these cases in state

5    court, Ms. Ball.

6            MS. BALL:  Your Honor, our resources and attention

7    will be devoted to a different direction rather than giving

8    every claimant and plaintiff $100,000 within 90 days plus

9    the promises of more.

10           MR. STANG:  Your Honor, this really isn't the time

11   to solicit the Debtor's plan.  I'm sorry, I just...

12           THE COURT:  All right.  Anybody else have

13   anything?  Anyway, Ms. Dine, that's why I wanted to go

14   forward today because I had the conversation with Justice

15   Steinman yesterday and I wanted to get that all on the

16   record today.

17           MS. DINE:  Thank you, Your Honor.

18           THE COURT:  Otherwise I would have agreed to put

19   it off.

20           All right.  We are adjourned.

21           MR. STANG:  Thank you, Your Honor.

22           THE COURT:  Would you please talk to each other?

23           (Whereupon these proceedings were concluded)

24

25

Page 27

1              C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 6, 2023

[& - approaching]                                                                                    Page 1

| & | 3 | | |
|---|---|---|---|
| **&**  4:1 5:1 | **30**  15:5 | 23:22 24:3 | **ahead**  18:9 |
| **1** | **300**  27:22 | **abusees**  23:16 | **alive**  23:13 |
| **1**  1:16 | **30th**  4:10 | **abusers**  7:6 | **alleged**  7:6 |
| **10**  4:18 6:9 | **3100**  3:13 | **acceptable** | **allocation**  9:4 |
| **100,000**  26:8 | **330**  27:21 | 25:9 | 9:13 |
| **10004**  1:14 | **34th**  5:3 | **access**  13:16 | **allows**  21:25 |
| **10017**  5:4 | **38**  23:23 | **accurate**  27:4 | **altered**  14:7 |
| **10019**  4:4 | **5** | **acted**  14:24 | **alternative** |
| **10022**  3:21 | **50**  9:7 | 15:1 | 10:14 |
| 4:11 | **500**  11:15 17:9 | **action**  11:1 | **alternatives** |
| **10281**  3:6 | **53703**  4:19 | 13:8 14:8 | 10:11 |
| **11**  15:6 16:21 | **599**  3:20 | **actions**  9:25 | **amicus**  17:24 |
| 18:11,13 | **6** | 11:21 13:3,12 | **amount**  19:3 |
| **11501**  27:23 | **6**  27:25 | **activities**  8:14 | **anecdote**  18:22 |
| **12151**  27:6 | **60**  20:21 | **actually**  7:13 | **angeles**  3:14 |
| **13**  18:21 | **600**  4:18 11:13 | 12:23 | **ann**  3:23 |
| **15**  6:9 | 11:15 | **adjourned** | **answer**  9:14 |
| **150**  8:1 | **7** | 26:20 | 22:5 |
| **1601**  7:1,9,15 | **780**  5:3 | **adler**  18:23 | **anybody**  26:12 |
| 9:8,11 23:12 | **8** | 19:1 | **anyway**  26:13 |
| **1675**  4:3 | **800**  4:10 | **advance**  8:15 | **appeal**  8:18 |
| **1810**  4:3 | **865**  3:13 | 8:17 | 11:4 |
| **2** | **9** | **advances**  13:13 | **appeals**  11:19 |
| **20**  16:13,15 | **90**  26:8 | **adversary**  8:20 | **applied**  7:14 |
| 17:7 | **90017**  3:14 | **affiliate**  19:9 | 7:16 21:20 |
| **20-12345**  1:3 | **a** | **affiliates**  11:9 | **applies**  9:8 |
| **200**  8:2 | **aaronson**  4:8 | **afternoon**  6:7 | **apply**  7:1 9:4 |
| **2023**  1:16 | **ability**  8:15 | 10:8 24:25 | **appreciate** |
| 27:25 | 10:15 19:13 | **aggregate** | 24:23 |
| **22nd**  3:20 | **able**  15:7 | 14:13 | **appreciated** |
| **250**  3:5 | **abuse**  7:2,14 | **ago**  13:5 14:22 | 15:1 |
| **2590**  2:2 | 12:9,23 15:5 | 17:1 | **approach** |
| **2:03**  1:17 | 19:9 21:4,9 | **agree**  20:20 | 21:20,23 |
| | | **agreed**  26:18 | **approaches** |
| | | **agreements** | 19:24 |
| | | 12:15 | **approaching** |
| | | | 19:8 |

**approved**
15:25
**area** 9:22
**aren't** 20:8
**arose** 6:18
**arrangements**
19:25
**array** 23:8
**arrowood** 4:2
**asked** 6:4,19
**asking** 24:10
**assemble** 16:12
**asserted** 13:2
**assessing** 19:5
**assessment**
11:24
**assets** 8:11
9:24
**assist** 8:19
**assume** 9:6
23:2
**assuming** 6:13
**attention** 26:6
**attorneys** 3:4
3:11,19 4:2,16
5:2
**avenue** 3:20
4:10 5:3
**average** 17:10
**aware** 17:23
18:1 21:7

**b**

**b** 1:21
**back** 13:15,19
17:2 20:13
22:23 24:25
25:3 26:4

**backstopped**
20:24
**backstops**
12:16
**bair** 4:15
**ball** 3:8 7:20,23
7:23 9:1,9,14
9:22 10:5,17
12:5 16:10,11
16:19,25 17:18
17:23 18:5
21:15 23:25
25:20,23,24,24
26:5,6
**ballistic** 14:7
**ball's** 11:23
19:5
**bankruptcy**
1:1,12,23 6:13
12:24 21:18
**basically** 7:4
**bear** 26:2
**behalf** 6:5
17:24 21:6
**believe** 8:5 9:3
9:24 19:11
20:14
**bellwether**
21:19,22 23:4
23:9
**bench** 22:15
24:15
**benefit** 9:17
**best** 19:19
20:18,19 24:12
**better** 6:23
10:5 20:15,22

**beyond** 6:18
**bid** 10:9
**big** 19:21
**bills** 19:4
**bishops** 17:25
**bit** 21:15
**blanking** 18:24
**blogs** 15:20
**borrowing** 8:3
**bowling** 1:13
**brett** 4:6
**brg's** 19:4
**briefs** 9:3
**broadway** 4:3
**bromberg** 4:1
**brought** 17:16
**bullied** 21:3
**bullying** 21:4
**burns** 4:15,21
13:4,13

**c**

**c** 3:1 6:1 27:1,1
**ca** 3:14
**calendars** 25:8
**call** 6:8,9 8:9
15:5,17 21:8
**camden** 14:5,6
15:14,15,20
**can't** 11:25
16:6 24:4
**care** 19:7
**case** 1:3 6:10
6:13,14 17:25
18:11,20 19:17
21:18 22:1,8
23:13

**cases** 6:11,17
6:23 7:2,7,12
7:13,14,15
9:12,16,18
10:18 12:9,18
12:19,23 13:1
13:6 15:6,11
16:7,14,22
17:7 18:15
20:8,12 21:11
21:15,21,24,24
22:12,18,24
23:4,8,9,12,14
24:1,9 26:4
**cash** 17:8,8
**categories** 8:15
**catholic** 1:7
17:24 18:20
**caused** 15:14
**cemetery** 8:20
10:24
**centered** 15:5
**centre** 1:7 7:24
**certain** 3:11,12
**certainly** 7:15
14:2 15:1,6
20:21 23:22
24:22 25:8
**certified** 27:3
**chambers** 6:7
**change** 10:9
15:14
**changed** 8:13
15:9,10 17:21
**channeled** 11:6
11:15,18

**[chapter - cutoff]**                                                        Page 3

chapter 15:5
  16:21 18:11,12
charitable 8:8
  19:14
chart 19:6
cheek 14:17
child 18:17
church 18:20
claim 13:16
  17:5,10
claimant 26:8
claimants 8:6
claims 4:9 11:5
  11:5,7,9,9,13
  11:14,15,16
  17:9 23:23
clear 6:18
clearly 20:9
  22:17
clerk 6:2
clients 19:20
closer 9:19
cna 15:24
come 12:11
  24:11 25:9
coming 19:11
comment 15:3
commented
  17:17
comments 15:2
  24:21
committee
  4:17 6:5 10:10
  10:17 13:15
  15:7,24 16:3
  16:13 21:2,4,9
  24:14,15 25:11

25:14
committees
  12:19
companies
  16:2,2 20:2
comparative
  6:25 23:11
compensation
  19:25
competing
  15:22,23 16:5
concerned
  11:22 13:25
concerns 21:5
concluded
  26:23
conference 2:1
  17:25
confidence
  22:18
confirmable
  17:20
confirmation
  16:14
consensual
  11:6 18:3
consent 16:4
  18:4,6
consents 19:8,9
consider 14:2
  24:21
consideration
  10:13
considered
  24:20
considering
  10:10

consists 21:2,4
constituency
  21:6 25:10
context 7:8
  10:19
contingent
  19:25
continually 9:2
continue 19:13
  19:18
continues 8:10
contributions
  8:2
conversation
  6:21 7:16,18
  9:11 24:22
  26:14
conveyance
  11:1
corinne 7:23
  25:24
correct 11:12
corrine 3:8
couldn't 7:15
counsel 3:19
  4:17 15:7,15
  18:25 20:5
  22:7 25:10
counteroffers
  11:25
counties 22:21
country 15:12
  21:17 27:21
county 18:21
  22:19,23,25
course 14:16

court 1:1,12
  6:3,12,14,24
  8:1,24 9:3,6,10
  9:18 10:4,7
  12:3,24,24
  13:7,7 14:5,18
  14:20 15:10,19
  15:24 16:10,17
  16:23 17:13,19
  18:2,9,19
  19:15 20:13
  21:11,19 22:16
  22:21 24:2,24
  25:10,17,22
  26:3,5,12,18
  26:22
courts 12:22
  12:22
court's 15:1
coverage 9:18
  9:25 11:21
  12:8 13:3,8,12
  14:9
cplr 7:1,9
  23:12
creative 12:5
  12:11 19:24
  20:17 24:10
creativity 8:9
  8:10 9:23
  10:20 14:21
credit 13:12
culpable 9:8
currently 12:7
cutoff 22:11

[d - enterprise's]                                                    Page 4

| **d** | | | |
|---|---|---|---|
| **d** 6:1 | **demographic** 21:8 | **dioceses** 19:4 20:24 | **doing** 6:17 |
| **d&o** 14:12 | **denied** 13:9 20:10 | **diocese's** 8:17 20:10 | **don't** 11:19,23 12:3,8,11 13:7 13:12 14:5,20 |
| **date** 8:14 25:8 27:25 | **denying** 14:22 | **directed** 8:22 | 17:13,14,15 18:3 20:4,7,25 |
| **davenport** 19:1 | **depending** 19:25 | **direction** 8:10 26:7 | 21:1,13,25 22:10,14 23:1 |
| **day** 3:3 7:23 11:6,11 23:1 25:14,24 | **depends** 19:7 | **disagree** 11:23 20:17 | 23:24 24:8 |
| **days** 13:5 26:8 | **describing** 16:15 | **disciplined** 21:23 | **doty** 4:18 |
| **deal** 6:14 14:11 | **details** 10:14 24:19 | **disclosed** 13:20 | **doubt** 18:7 |
| **dealing** 17:22 | **developed** 13:24 | **disclosure** 16:15 17:1,3 | **duane** 3:10 |
| **debtor** 1:9 3:4 10:21,22,24 13:15,22 14:2 14:15 15:23 | **development** 13:10 | 17:15,16 | **dwindling** 10:1 |
| | **device** 14:1 | **discovery** 22:11 | **e** |
| **debtors** 23:22 | **devoted** 26:7 | **discussed** 8:12 12:7 | **e** 1:21,21 3:1,1 4:13 6:1,1 27:1 |
| **debtor's** 3:19 10:18 26:11 | **didn't** 6:17 7:9 7:12,13 9:10 | **discussions** 10:2 19:19 | **e&o** 14:11 |
| **december** 22:11 | **died** 7:6 | **dismiss** 19:17 19:18 24:8,16 | **earlier** 25:18 |
| **decent** 23:13 | **diego** 16:21 18:11 19:2 | **dismissal** 8:5 8:17 10:11 | **early** 12:11 |
| **decide** 10:20 20:20 25:17 | **different** 8:15 11:17 26:7 | **dismissed** 6:13 6:14 18:12 | **easily** 23:16 |
| **deciding** 21:10 | **dine** 6:4 10:7 26:13,17 | **dispositive** 13:4 | **east** 4:18 |
| **decisions** 22:2 | **diocesan** 16:14 | **district** 1:2 12:24 13:7 20:12 | **ecro** 1:25 |
| **defendants** 7:3 23:4 | **diocese** 1:7 7:3 7:5,24,25 8:6,8 9:6,7 12:13,16 | **doc** 2:2 | **education** 8:8 |
| **defending** 8:18 9:16 11:4,10 11:19 | 13:6 15:11 16:3 18:25 | **docket** 21:25 22:4,10 | **effort** 19:3 |
| **defense** 9:7 | 19:16 20:17 23:14,18,19 | **doesn't** 19:7 23:20 | **efforts** 10:23 11:1 |
| **defenses** 9:5 12:21,21 13:1 14:19 19:24 | 24:5 25:25 | | **either** 19:16 20:7 |
| **demands** 10:10 14:23 | | | **embedded** 16:2 |
| | | | **enabling** 15:2 |
| | | | **engaging** 12:12 12:13 |
| | | | **enormous** 19:3 |
| | | | **enterprise** 19:5 |
| | | | **enterprise's** 19:14 |

| | | | |
|---|---|---|---|
| **entirely** 20:14 24:12 | **extended** 22:3 | **focus** 9:23 | **gist** 25:2 |
| **entirety** 22:3 | **extent** 13:18 18:10 | **focused** 8:14 23:23 | **give** 13:12 |
| **entities** 13:17 | **f** | **focusing** 8:19 | **giving** 11:2 26:7 |
| **entitled** 12:21 | **f** 1:21 27:1 | **folks** 21:8 | **glad** 14:14 |
| **especially** 18:16 24:21 | **face** 19:21 | **foot** 20:18 | **glenn** 1:22 |
| **essential** 10:14 24:19 | **fact** 12:14 | **foregoing** 27:3 | **global** 15:8 16:8 24:18 |
| **event** 8:17 | **facts** 16:11 | **foresee** 23:17 | **go** 6:18 10:15 11:8 14:25 |
| **everybody** 20:4 | **fair** 18:17 | **forth** 13:15,19 19:12 | 16:1 18:9 21:24 22:22 |
| **exact** 23:24 | **fall** 22:15 23:11 | **fortunately** 15:7 | 26:13 |
| **exactly** 16:15 | **far** 10:3 11:4 11:21 | **forty** 24:1 | **goes** 23:10 |
| **examining** 22:10 | **faster** 8:24 | **forward** 6:6 12:10 16:1 | **going** 13:20 15:16,23 18:14 |
| **example** 7:2 9:21 15:14 | **fault** 6:25 | 20:18,23 21:24 21:25 26:14 | 20:8,20,22,23 21:24 23:5,6 |
| **excluding** 21:3 | **favor** 22:2 | **four** 24:1 | 25:6 26:3 |
| **execute** 8:16 | **feasible** 10:16 | **frankly** 8:21 | **good** 10:8 14:19 23:14 |
| **expectation** 20:16 | **feel** 18:15 | **fraudulent** 10:25 | 24:5 |
| **expected** 13:5 | **field** 22:14 | **front** 17:14,15 19:1 | **gotten** 24:15 |
| **expedite** 6:17 22:25 | **fighting** 26:4 | **future** 4:9 16:9 20:16 | **grapevine** 15:15 |
| **expedited** 6:12 | **figueroa** 3:13 | **g** | **graph** 23:8 |
| **expeditiously** 8:23 | **figure** 23:8 | **g** 6:1 | **great** 23:12 |
| **experience** 12:9 13:11 | **file** 17:24 | **garner** 25:15 | **greater** 21:6 25:10 |
| **explain** 6:6 | **filed** 11:13 15:11 16:22 17:16 24:16 | **gather** 12:6 14:6 | **green** 1:13 |
| **explored** 10:3 20:25 | **find** 7:12,13 9:14 17:11 | **gee** 18:16 | **h** |
| **exposure** 7:5 19:23 | **firm** 15:7 | **general** 18:15 | **hadn't** 17:17 |
| **expressed** 21:5 | **first** 7:20 14:10 14:12 15:6 24:8 | **generally** 13:11 | **hage** 4:8 |
| | **five** 17:8 | **gerber** 4:13 | **half** 15:6 |
| | **flex** 8:12 | **getting** 8:22 19:7,9 22:1 | **hand** 15:24 |
| | **floor** 3:20 4:10 5:3 | | **handle** 22:22 |

happen  16:16
happened  12:4
  14:5 23:2
happens  6:23
  7:8
happy  24:13
hard  20:3
hasn't  13:24
haven't  10:2
  15:20 16:18
  18:2
head  7:11
headed  24:10
hear  15:15
heard  10:17
  11:3
hearing  2:1 6:5
  6:10,19 7:17
  7:22 17:17
  24:25 25:7,18
heart  8:10
  10:15
heavily  21:9
helpful  16:12
he'll  22:19,25
  22:25
hidden  25:1
high  23:22
highest  17:6
historically
  13:12 15:3
holding  25:3
hon  1:22
honestly  21:14
honor  7:25
  8:13,21 9:1,17
  9:22 10:8

14:21 16:13
  17:11,23 18:8
  21:2 23:25
  24:14 25:5,20
  26:6,10,17,21
honor's  8:9,18
hope  18:14
  23:7 24:18
hopefully  8:22
hospital  8:7
hybrid  2:1
hyde  2:25 27:3
  27:8

**i**

idea  16:7 22:5
  25:13
identify  25:22
important  13:9
improved  26:4
include  18:12
  19:13,24
included  11:24
includes  12:15
  16:20,20,21
including
  10:11 11:5
  24:19
increasing
  15:11
indemnity  4:2
indicated
  24:16
indiscernible
  11:20 15:8
  19:4 21:19
  23:3

individual  15:2
information
  10:21 13:20
initially  11:13
injunction
  20:11 22:13
inquiring  12:4
inquiry  9:17
insurance  3:19
  4:16 8:11 9:24
  10:23 11:21
  12:2,6 13:18
  16:1,2 17:4,7
  20:2,5
insured  14:8
insurers  3:12
  11:25 12:10,19
  14:6,9,15 15:4
  15:12 19:23
  24:5
intended  13:6
intention  25:12
interest  8:6
  20:6
interested
  13:17
interests  20:2
interrupt
  22:16
intervenors
  11:22,22
involved  15:18
isn't  6:13
  12:12 18:18
  20:7 26:3,10
issue  6:18 12:6
  12:17 23:11

25:25
issues  9:13
it's  9:2 14:7,25
  15:16 16:6,6
  18:10 21:10,22
  21:24 24:1
i'll  6:6 15:5
i'm  10:18
  11:11 12:4
  14:16,18,24
  15:12,15,16
  16:23 18:14,24
  18:24 19:18
  23:19 24:6,10
  25:3 26:11
i've  14:12
  15:19 24:7,7
  25:2

**j**

james  5:6
jeopardizing
  14:9
jointly  16:3
jones  3:3 5:1
  7:23 25:24
joseph  4:8
journal  18:19
judge  1:23
  11:12 14:4
  15:25 18:23
  19:1,17 22:6
  24:8
judgement
  13:9 18:21
judgements
  23:17

judges   20:12
  22:14
judgment
  19:22
justice   6:8,9,16
  6:21 7:9 9:10
  10:12 21:12
  24:22 26:14

**k**

kind   10:2
  19:24 22:1
know   6:4 8:4
  9:15 12:8,11
  13:7 14:5,20
  15:19 17:13,14
  20:3,4,7,19,25
  21:1,13 22:6
  22:10 23:1,3
  24:11 25:18
knowledge
  23:15
knows   24:24
kramer   3:23
ks   1:25

**l**

lack   20:1
laid   25:2
landscape
  17:21
law   18:19
lead   9:20
leave   23:20
leaving   24:3
ledanski   2:25
  27:3,8

legal   27:20
leonard   6:8
letters   14:25
let's   7:11
lexington   3:20
liability   6:25
  9:4 12:2
limited   11:23
  14:8 21:14
limits   14:13
  18:6
liquidity   25:25
  26:3
listed   16:19
litigators   9:15
  9:16
little   13:19
  14:17 21:15
  24:4
llc   4:8
lloyd's   3:11
llp   3:3,10,18
  4:15 5:1
loan   12:7 13:23
loans   8:2,16
london   3:11,12
long   17:1 20:13
longer   12:15
look   7:12,13
  13:23 14:10,19
  16:24 24:7
looked   17:2
los   3:14
loss   7:2
lot   14:12 24:6
  25:11

lots   12:8 19:23
loud   24:6
luck   24:5

**m**

made   6:18
  13:13 17:6,6
madison   4:19
make   9:17
  10:16 19:17
  22:18
making   14:23
man   21:3
market   3:12
  13:25 14:14
  18:17
martin   1:22
mass   21:20
  22:1
matter   1:5
  19:7
matters   15:25
  22:7
mean   17:20
  19:16
means   16:15
mediation   2:1
  9:19 11:24
  12:1,5
meet   9:25
members
  25:11
mentioned
  15:14
met   10:10
mg   1:3
million   8:1
  18:21

mind   26:2
mineola   27:23
minnesota   13:6
  13:13
minutes   6:9
mission   19:14
missions   8:8
mix   23:10
monetary   10:9
monetization
  13:23
monetize   10:23
  13:18
monetizing
  8:11 12:6,14
months   9:21
moore   4:6
morning   24:15
  24:20
morris   3:10
moths   19:11
motion   10:13
  13:8 14:22
  19:18 20:10
  24:16,17 26:2
motions   13:4
move   6:6 9:25
moved   7:21
multiple   12:18
  12:19

**n**

n   3:1 6:1 27:1
name   7:2 18:24
nassau   22:19
  22:25
naturally   16:7

near  9:20
need  24:20
  25:17
needle  7:21
negotiate  10:24
neither  17:16
  17:19 24:12
never  11:19
  14:13
new  1:2,7,14
  3:6,21 4:4,11
  5:4 13:2
newman  4:1
news  10:6
noneconomic
  7:2
notwithstand...
  10:25 19:10
november  1:16
  25:7 27:25
number  15:11
  19:6 22:17
numbers  11:12
  11:13
ny  1:14 3:6,21
  4:4,11 5:4
  27:23

**o**

o  1:21 6:1 27:1
objection  11:7
  11:14
observation
  18:11
obtain  18:6
obviously  6:14
  6:17 11:10,17
  14:7 16:5 20:3

21:13 25:13
occasionally
  12:10 16:24
offer  8:1,2 17:6
  19:12
offering  18:16
offers  11:24
okay  22:23
  25:17
old  7:7 20:22
  27:21
ones  22:9,19,24
  23:4,6 24:12
open  6:16
opinion  13:5
  16:8
order  11:3
  16:14
orders  8:18
  11:4,8,10
  16:20
outside  10:18
  21:17
own  9:16

**p**

p  3:1,1 6:1
p.c.  4:1
pachulski  5:1
pacific  18:24
  19:2
paid  18:25
parish  7:3,5
  11:9 17:4
  23:14
parishes  8:6
  9:2,15 11:5
  12:17 20:24

23:18,20,23
  24:3
part  15:13
particular  12:2
parties  6:12,20
  8:3 22:2
pass  25:15
pattern  21:16
pay  14:16 19:5
penn  16:17
people  15:17
  20:15 25:12,14
percent  9:8
percentage
  23:22
perform  8:16
performing
  19:13
period  10:22
  12:15,16
personally
  21:6
phone  6:8
pick  22:18,24
  22:24 23:4,6
picked  20:12
picks  23:3
place  12:13
plaintiff  26:8
plaintiffs  23:6
plaintiff's  22:7
plan  8:16
  10:19 11:6
  14:6 16:3,5
  17:14 18:13
  19:6 20:19
  26:11

plans  15:23
please  6:3 26:2
  26:22
plenty  7:15
plus  24:1 26:8
pm  1:17
pockets  19:11
point  8:21
  12:22 20:25
points  23:7
policies  10:23
  13:18 14:12,13
  14:16
policy  12:7
  13:1
popped  7:11
portion  17:4,4
porzio  4:1
position  8:17
  9:3 10:18
possibility  6:11
possible  8:23
post  18:6
postpone  6:5
potential  7:4
  14:9 19:23
potentially
  8:19
practice  14:11
predisposition
  23:16
preliminary
  20:11 22:13
premium  14:1
prepared  17:1
preparing
  10:13 24:17

**present** 14:3
25:12,16
**priest** 7:3,5
23:12,16
**priests** 23:17
**pro** 4:9
**proceed** 6:23
**proceeding**
8:20
**proceedings**
26:23 27:4
**process** 11:7
11:14 24:17
**professor**
16:19
**proffering** 9:5
**progressed**
13:4
**promises** 26:9
**proof** 23:15
**proofs** 13:16
**proposal** 10:16
10:20 14:3
25:6
**proposed** 14:6
**proposing** 16:4
**prosecute**
10:25
**provide** 13:16
**provided** 14:14
**provides** 24:17
**pull** 17:10
19:16
**purdue** 17:22
18:7 25:16
**purpose** 11:8
11:23

**put** 7:11 20:18
20:19 26:18
**puts** 17:8
**putting** 19:12
24:23

**q**

**questions** 6:11
6:19,22,24 7:7
**quickly** 9:25
26:1

**r**

**r** 1:21 3:1 6:1
27:1
**racist** 21:3
**raise** 6:22 7:7,9
**raised** 6:10,22
24:20
**rape** 18:18
**rather** 26:7
**reach** 11:2
**reached** 16:6
**read** 15:19
16:18,23 17:17
18:2,19
**ready** 22:22
**real** 13:22
**really** 7:17
10:15 20:3
21:7 23:5,6,15
26:10
**realm** 10:3
**reason** 17:5
**reasonable**
19:12
**received** 6:7

**recent** 10:22
16:22
**recently** 17:2,6
**recognize** 8:5
14:15
**record** 7:18
24:23 25:22
26:16 27:4
**recover** 24:4
**recovered**
19:22
**recoveries**
17:10
**recovering**
20:2,14
**recovery** 20:1
20:1,6,23 24:4
**reduced** 11:14
**reed** 3:18
**reference**
12:25
**reflect** 18:15
**regarding**
10:22 13:5
**reilly** 16:19
**released** 8:3
22:12
**releases** 18:3
19:9
**relevant** 17:9
**relief** 14:23
**religious** 8:8
15:5 16:20
**remaining** 10:3
**remanded**
20:12

**remember**
23:24
**reminder**
25:21,25
**reminds** 8:1
**rep** 4:9
**report** 12:1
24:25
**represent**
25:11,11
**representing**
12:18
**require** 14:1
18:4
**resolution** 9:21
12:11
**resolved** 13:1
**resources** 10:1
26:6
**respect** 6:25
7:1 14:8
**respective**
19:20 20:23
**responsibilities**
21:7
**result** 24:2
**resulting** 12:1
16:7 24:21
**results** 13:14
**returned** 6:8
**returns** 14:1
**right** 6:3,4 10:4
19:10 20:3
23:25 24:2
26:12,20
**rights** 11:2

rise  6:2
road  27:21
robert  4:13
rochester
  15:22
rockville  1:7
  7:24
roman  1:7
room  20:4
roten  3:16
roughly  11:12
  23:25
ruling  14:22
  17:20 22:13
russell  3:16

**s**

s  3:1 6:1
sadly  16:8,8
san  16:20
  18:11 19:1
scheduled  25:7
schedules  9:20
scheduling
  15:25
schools  8:7
  23:18
screen  20:4,5
se  4:9
seated  6:3
second  6:6
section  7:1,9
see  8:12 10:3
  10:20 11:19
  19:4 25:6
seem  12:10
seemed  17:19

seen  11:19
  14:13
selected  6:11
sense  14:10
  17:21 21:23
served  8:7
set  22:9,11
settled  23:9
settlement  9:19
  10:24 11:2
  12:2 15:8 16:1
  16:4 17:3
  18:12 19:12,22
  24:18 25:15
settlements
  16:6,8 21:16
  21:17 24:12
settling  8:19
sex  7:2,14 12:9
  12:23 15:5
shakes  23:19
share  16:12
  20:1,6 21:5
shared  13:22
short  12:14
side  9:23 17:16
  19:16 23:3
  24:12
sides  23:21
signature  27:6
significant
  16:2
similar  13:1
single  21:18
six  9:21
smith  3:18

sold  8:3
solely  6:18
solicit  26:11
solutions  24:11
  27:20
sonya  2:25
  27:3,8
sorry  10:18
  18:24 26:11
sort  23:3,8,9
  25:2
sounds  24:9
sourced  8:2
south  3:13
southern  1:2
special  4:16
specifically
  6:24 7:1
spend  11:18
spent  19:3
spoke  6:9 22:6
stage  13:25
stand  12:21
standards
  25:16
standing  10:25
  11:3
stands  7:25
stang  5:1,6
  10:7,8 12:8
  13:3 14:14,21
  15:13,22 17:11
  18:8,9,10,22
  20:10 21:2,13
  21:22 22:20
  24:14 25:5,19
  26:10,21

started  22:8
stat  25:10
state  6:12,14
  6:24 9:12 13:7
  16:18 20:13
  26:4
statement  17:1
  17:15,16
statements
  16:15 17:3
states  1:1,12
status  2:1
stay  14:22
steinman  6:8
  6:10,16,21 7:9
  9:11 10:12
  21:12 22:6
  24:22 26:15
step  12:10,20
story  11:17
street  3:5,13
  4:18
studied  16:25
studying  16:25
stuff  16:24
  24:6
substance  6:16
substantial
  8:11 9:24 20:6
substantive
  13:23
suggested  9:22
  10:11 18:3
suggesting
  14:19
suggestions
  6:20

suite  3:13 4:3
    4:18 27:22
summary  13:8
support  25:13
sure  10:7 14:24
    15:12 16:23
    18:7 19:18
    22:18 23:19
survivor  19:10
survivors  15:2
    20:13 21:4,9
    24:3
sustain  14:20

**t**

t  27:1,1
table  20:19
tactics  21:4
take  14:8
taken  8:9 9:3
talk  9:10 12:13
    17:9 26:22
talked  12:5
    15:20 18:25
    25:1,2
talking  7:10
    15:17 24:6
tell  10:23
term  12:14
terms  10:9
    13:20,23 14:1
    14:21,23 15:3
test  6:11 10:18
    22:18,24
testing  18:5
thank  10:4
    25:20 26:17,21

that's  8:11,21
    10:19 13:21,24
    15:13 17:9
    20:19 21:19,20
    23:10,25 25:7
    26:13
there's  11:25
    12:14 25:1
they're  11:12
    11:12 16:18
    22:22 23:5,6
they've  11:14
    13:24 20:18
thing  14:4
things  15:20
    24:19
think  7:4 8:12
    15:5,13 16:8
    17:7,21 18:5
    19:19,19,21
    21:11 22:3,14
    22:16 23:5,6
    23:21 24:1,7
    24:17 26:2
thinking  7:10
    23:11 25:5
third  4:10 5:3
thought  12:12
three  8:14 24:1
time  8:13
    10:12,17,22
    11:18 14:12
    17:17 18:23
    19:3 26:10
timing  11:24
    19:25 20:9

timothy  4:21
today  6:5,22
    7:17 20:23
    26:14,16
together  17:11
told  6:9 13:24
    16:17 18:22
    23:21
tongue  14:17
took  13:19
top  17:8 19:6
tort  21:20
totals  17:3
touched  10:12
towards  13:4
transcribed
    2:25
transcript  27:4
treated  11:16
trial  6:12,24
    22:22
tried  7:12 9:12
    24:7
trigger  19:16
true  18:5 27:4
truly  16:7
trust  11:16,16
try  11:1 21:12
    21:18 22:19,25
    24:10
trying  7:4 12:5
    13:17 14:17
    22:1,8
two  16:1

**u**

u.s.  1:23 17:24
ultimately
    10:19 14:20
    19:22 24:18
under  11:2,6
understand  7:6
    9:1 12:20
    14:18 18:20
understanding
    6:23 22:9
underwriters
    3:11
undoubtedly
    12:17
united  1:1,12
unknown
    19:21
unnecessary
    14:23
unwilling
    12:20
used  14:11
    21:15
useful  17:12
using  11:11
    21:3
usually  21:20
utility  11:20
utilized  14:2

**v**

v  3:23
value  18:17
    23:10
verdict  21:16

[veritext - ziehl]                                                    Page 12

| | | |
|---|---|---|
| **veritext** 27:20 | **we've** 11:3 | 5:4 13:2 |
| **vesey** 3:5 | 17:1,6 25:25 | **young** 21:3 |
| **view** 18:23 | **what's** 7:4 12:4 | **you'll** 10:19 |
| 19:2 | 15:16 21:20 | 20:7 |
| **votes** 25:15 | 23:2 | **you're** 10:5 |
| **w** | **wi** 4:19 | 26:4 |
| **w** 4:21 | **wiping** 24:3 | **you've** 9:19 |
| **want** 7:21 | **wish** 10:5 | 12:8,12,17 |
| 11:10 12:3,10 | 14:15 | 21:5 24:15,19 |
| 12:22 23:20 | **wishes** 6:15 | **z** |
| 24:8 | **withdrawn** | **ziehl** 5:1 |
| **wanted** 6:6,22 | 12:25 | |
| 7:17 8:25 | **wondered** 11:7 | |
| 26:13,15 | **won't** 20:7 | |
| **warren** 15:25 | **work** 18:3 | |
| **wasn't** 17:20 | **worked** 13:16 | |
| 18:20 22:17 | **working** 10:15 | |
| **way** 7:11 12:14 | 10:21 25:9 | |
| 13:14 19:8 | **world** 15:9,10 | |
| 26:1 | 18:7 | |
| **ways** 12:6,12 | **worth** 9:2 | |
| **webb** 3:16 | 15:17 | |
| **website** 16:24 | **x** | |
| **week** 14:22 | **x** 1:4,10 | |
| 18:21 | **y** | |
| **weighs** 21:9 | **yeah** 15:10 | |
| **welcome** 10:5 | 16:17 18:19,22 | |
| 11:1 | **year** 21:11 | |
| **went** 14:6 | **years** 12:16 | |
| 16:17 | 20:22 | |
| **westchester** | **yesterday** 6:7 | |
| 18:21 | 7:17 22:7 | |
| **westlaw** 7:13 | 26:15 | |
| **we'll** 14:2 | **yielded** 13:14 | |
| **we're** 14:14 | **york** 1:2,7,14 | |
| 17:22 18:16 | 3:6,21 4:4,11 | |

# EXHIBIT D

## Karen B. Dine

| | |
|---|---|
| **From:** | Stephens, Eric P. <epstephens@jonesday.com> |
| **Sent:** | Monday, August 28, 2023 11:04 PM |
| **To:** | James Stang; Ball, Corinne |
| **Cc:** | Rosenblum, Benjamin; Butler, Andrew M.; Karen B. Dine; Brittany M. Michael; Geremia, Todd R. |
| **Subject:** | RE: Diocese of Rockville Centre |

Jim, your email is not correct.

Two of the cases where the Committee sought to lift the PI and that have now been remanded to state court are against non-separately incorporated defendants. Those cases are:

Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021
ARK457 Doe v. Holy Family et al, Index No. 900094/2021

As reflected in the notices of appearance in those cases, Jones Day represents Defendants: The Roman Catholic Diocese of Rockville Centre, New York f/d/b/a St. Pius X Preparatory Seminary and The Roman Catholic Diocese of Rockville Centre, New York f/d/b/a Holy Family Diocesan High School, respectively.

As is reflected in the state court records, we have been appearing before Judge Steinman on behalf of those defendants in those cases. As you probably know, Judge Steinman has been conferencing all of the remanded cases together.

As you should also know from the extensive briefing, factual development, and argument in connection with the preliminary injunction, it is all parties' (and, per a conference held earlier today, Judge Steinman's) expectation that the Diocese will be a significant source of document discovery in nearly all of the remanded cases. It should therefore come as no surprise to anyone that Judge Steinman has asked the Diocese and its counsel to take the lead on document related issues like a standard protective order in the cases where the Diocese is a defendant and those where it is not.

Of course, as we have already previewed with Judge Steinman in writing and during today's conference, in order to protect estate resources in the remanded cases where the Diocese is not a party, we will be seeking to have plaintiffs defray the costs, including reasonable attorneys fees, of any Diocese document productions pursuant to CPLR 3122(d) ("The reasonable production expenses of a non-party witness shall be defrayed by the party seeking discovery.")

Now that you have the facts, I hope that addresses any concern you might have.

Eric P. Stephens (bio)
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3916
Fax: (212) 755-7306
epstephens@jonesday.com

---

**From:** James Stang <jstang@pszjlaw.com>
**Sent:** Monday, August 28, 2023 5:29 PM
**To:** Ball, Corinne <cball@JonesDay.com>
**Cc:** Rosenblum, Benjamin <brosenblum@JonesDay.com>; Butler, Andrew M. <abutler@jonesday.com>; Karen B. Dine <kdine@pszjlaw.com>; Brittany M. Michael <bmichael@pszjlaw.com>; Geremia, Todd R. <trgeremia@JonesDay.com>;

Stephens, Eric P. <epstephens@jonesday.com>
**Subject:** Diocese of Rockville Centre


Corinne,

We understand that Jones Day has been appearing in front of Judge Steinman. Who is Jones Day
representing in the state court proceedings in which the Diocese is not a defendant and to whom is Jones Day
billing its time?

Jim

Sent from my iPhone
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying
it and notify sender by reply e-mail, so that our records can be corrected.***

# EXHIBIT E

Received November 11, 2023 at 21:21:00 Central Standard Time

**Subject:** RE: Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

**Date:**  Thursday, October 12, 2023 at 4:34:51 PM Central Daylight Time

**From:**  Leander James

**To:**  Stephens, Eric P.

**CC:**  Matthew Lombardi, Sandy Kluessendorf, Geremia, Todd R., Chan, Melanie K., Brittany M. Michael, Kenneth Brown

Dear Mr. Stephens,

Thank you for responding to my email. There is a difference of opinion between you and the Creditors' Committee Counsel regarding this case being stayed or not.  They disagree with your reading of Judge Glenn's order.  They believe the order lifts the stay only for non-debtor entities.  It does not lift the stay for debtor entities, such as this defendant.  I and my client are thus caught in the middle of your disagreement.  I am copying Ms. Michael and Mr. Brown with this email so they can discuss and resolve this issue with you, one way or another.   However, I do note that if the bankruptcy is dismissed, which it looks like it is going to be, this issue will be moot.

To be clear, I have no problem with Plaintiff being deposed and moving the case forward, so long as you will coordinate the date with me and my Co-Counsel. You have indicated you will do so, and I thank you for that.

Regarding what you presume I know, you shouldn't.  Mr. Noaker was the lead attorney in this case until just recently.  I am taking over for him, and there may be history in the case I do not know.

Regarding my client proceeding "at its own risk," we all proceed every day in this work at our own risk.

Respectfully,

Leander L. James, of the firm
**JAMES, VERNON & WEEKS, P.A.**
*Helping people solve problems®*

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061

Telephone:  (547) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

e-mail:  ljames@jvwlaw.net
Facebook:  https://www.facebook.com/leander.james.7
Home Page:  http://www.jvwlaw.net/

CONFIDENTIALITY NOTICE:  This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine.  The information is intended only for the use of the individual or entity stated in this e-mail.  If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

**From:** Stephens, Eric P. <epstephens@jonesday.com>
**Sent:** Thursday, October 12, 2023 2:02 PM
**To:** Leander James <ljames@jvwlaw.net>
**Cc:** Matthew Lombardi <lombardi@tolmagepeskinlaw.com>; Sandy Kluessendorf <Sandy@jvwlaw.net>; Geremia, Todd R. <trgeremia@JonesDay.com>; Chan, Melanie K. <melaniechan@jonesday.com>
**Subject:** RE: Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

Mr. James, of course we'll work with you on dates for depositions in this and any of our other matters together. As you well know, deposition notices are frequently served with placeholder dates that are revised pursuant to subsequent agreements among parties.

As you also know, the Creditors' Committee in the Diocese's bankruptcy has obtained an order lifting the preliminary injunction in over 220 CVA cases, including the above-referenced matter. That order states "the 228 State Court Actions identified in Exhibit A attached hereto are not stayed or otherwise enjoined and may proceed." The order is explicit that this matter is "not stayed or otherwise enjoined." Accordingly there has been no stay to notify Judge Steinman of as you suggested below or basis to nullify the discovery demands the Diocese has served pursuant to Judge Steinman's orders.

The Diocese will continue to proceed in accordance with the plain language of the orders of the bankruptcy court and the Regional CVA Part for the Ninth and Tenth Judicial District. To the extent your client continues to assert this case is stayed and it need not follow these same orders, it does so at its own risk.

Eric P. Stephens (bio)
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3916
Fax: (212) 755-7306
epstephens@jonesday.com

**From:** Leander James <ljames@jvwlaw.net>
**Sent:** Thursday, October 12, 2023 2:33 PM
**To:** Stephens, Eric P. <epstephens@jonesday.com>
**Cc:** Matthew Lombardi <lombardi@tolmagepeskinlaw.com>; Sandy Kluessendorf <Sandy@jvwlaw.net>
**Subject:** Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

**Subject:** Anonymous WWW v. St. Pius X Preparatory Seminary, Index No.: 900289/2021

Dear Mr. Stephens,

I am in receipt of your Notice for Deposition.

Please see my two emails below, to which you have not responded.  You have taken the position that the Defendant in this matter, St. Pius X Preparatory Seminary, is a d/b/a of the Debtor, Diocese of Rockville Centre, and a non-separately incorporated defendant.  As such the automatic stay in bankruptcy applies.  Your Notice of Deposition is void ab Initio.

It would be most helpful if you would respond to my emails.  Similarly, it would be helpful and professional for you to coordinate deposition dates with Mr. Lumbardi and me in our cases.

Respectfully,

Leander L. James, of the firm
**JAMES, VERNON & WEEKS, P.A.**
*Helping people solve problems®*

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

e-mail:  ljames@jvwlaw.net
Facebook:  https://www.facebook.com/leander.james.7
Home Page:  http://www.jvwlaw.net/

CONFIDENTIALITY NOTICE:  This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine.  The information is intended only for the use of the individual or entity stated in this e-mail.  If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If

copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

---

**From:** Leander James
**Sent:** Tuesday, September 5, 2023 2:28 PM
**To:** epstephens@jonesday.com
**Subject:** RE: Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

Dear Mr. Stephens,

I'm following up on my email below. Are you agreeable to drafting the stipulation or notice to the court that the automatic stay applies?

Respectfully,

Leander L. James, of the firm

# JAMES, VERNON & WEEKS, P.A.

*Helping people solve problems®*

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

e-mail:  ljames@jvwlaw.net
Facebook:  https://www.facebook.com/leander.james.7
Home Page:  http://www.jvwlaw.net/

CONFIDENTIALITY NOTICE:  This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine.  The information is intended only for the use of the individual or entity stated in this e-mail.  If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If

you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

---

**From:** Leander James
**Sent:** Thursday, August 31, 2023 4:07 PM
**To:** epstephens@jonesday.com
**Subject:** Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

Dear Mr. Stephens,

By way of introduction, I am one of the attorneys representing Plaintiff in the above-entitled matter. Heretofore, my co-counsel, Pat Noaker has been the point of contact on this case.  Recently I have taken over that role.

It is my understanding that you recently raised the issue that the Defendant in this matter, St. Pius X Preparatory Seminary, is a d/b/a of the Debtor, Diocese of Rockville Centre, and a non-separately incorporated defendant. Assuming my understanding is correct, it would seem the automatic stay precludes this case from going forward at this time, and we should alert Judge Steinman of the same.  If you agree, would you be so kind as to draft a stipulation for us to submit to the Court stipulating to the say?

Thank you in advance for your consideration of this request.


Respectfully,

Leander L. James, of the firm
**JAMES, VERNON & WEEKS, P.A.**
*Helping people solve problems®*

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR d'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

e-mail:  ljames@jvwlaw.net
Facebook:  https://www.facebook.com/leander.james.7
Home Page:  http://www.jvwlaw.net/

CONFIDENTIALITY NOTICE:  This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine.  The information is intended only for the use of the individual or entity stated in this e-mail.  If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

# EXHIBIT F

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, DC 20001.2113

TELEPHONE: +1.202.879.3939 • JONESDAY.COM

Direct Number: +1.202.879.7686
CDIPOMPEO@JONESDAY.COM

December 1, 2023

**BY EMAIL**

Kenneth H. Brown
Gail S. Greenwood
Pachulski Stang Ziehl & Jones
One Sansome Street, Ste. 3430
San Francisco, CA 94104

Re:    Consensual Preliminary Injunction of Select Cases
*In re Roman Catholic Diocese of Rockville Centre, New York*

Dear Ken and Gail:

We write regarding various cases inadvertently listed in the Order Denying the Debtor's Motion for a Preliminary Injunction [Adv. Pro. 20-01226 Docket. No. 203] (providing in Exhibit A a list of the CVA Actions no longer subject to the PI) that are being actively litigated in the Regional CVA Part for the Ninth and Tenth Judicial Districts. While Eric Stephens and Jim Stang previously corresponded about a small number of these cases in which Jones Day continues to act as state court litigation counsel, following state court conferences this week, it appears the list is materially larger than previously understood.

There are two types of impacted cases: (i) those implicating Ecclesia insurance policies; and (ii) those in which the defendants include entities that are not separately incorporated from the Diocese of Rockville Centre. As these actions have been set for individual conferences this week in the Regional CVA Part, that Court as well as plaintiff and defense counsel have asked the Diocese to confer with the Committee and report back on how these cases should be treated going forward. Pursuant to that directive, and in light of the Committee's prior expressions of concern on this issue, we seek your agreement that the cases listed below should be restored to the consensual injunction.

In connection with the preliminary injunction motion, the Committee "recognize[d] that prosecution of … claims that fall within" the insurance policies provided by Ecclesia Assurance Company, "could materially affect limits available to the Diocese," thereby implicating the automatic stay. Committee's Brief in Opp. Dkt. 170 ¶ 31, No. 20-01226-mg (Mar. 17, 2023). So the Committee did "not oppose an injunction of such State Court Actions." *Id.* The Committee also agreed that cases against the Debtor are automatically stayed, and did not seek to lift the stay as to those actions. Similarly, the Diocesan high schools (including St. Pius X Preparatory Seminary), as you know, are / were not separately incorporated but are / were Debtor entities.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

We thus seek the Committee's agreement that the following cases remain subject to the consensual injunction and/or automatic stay and should be returned to the list of enjoined cases.

Cases covered by Ecclesia Assurance Company policies:

- Index No. 900261/2021
- Index No. 900235/2021
- Index No. 900160/2021
- Index No. 951159/2021
- Index No. 900369/2021
- Index No. 614400/2021
- Index No. 900398/2021
- Index No. 951160/2021
- Index No. 900146/2021
- Index No. 900041/2021
- Index No. 610849/2021

Cases against high schools that are not separately incorporated from the Diocese:

- Index No. 900307/2021
- Index No. 900363/2021
- Index No. 900403/2021
- Index No. 900095/2021
- Index No. 900099/2021
- Index No. 900094/2021
- Index No. 900144/2021
- Index No. 900269/2021
- Index No. 900289/2021
- Index No. 900344/2021
- Index No. 900147/2021

Notably, five of these cases are stayed on independent grounds: Index No. 900358/2021, due to the death of Plaintiff; and Index Nos. 900144/2021, 900269/2021, 900289/2021, and 900344/2021, due to the Order by the Delaware Court of Chancery in the Arrowood liquidation proceedings.

Please let us know at your earliest convenience if you agree or would like to discuss this.


Sincerely,

*/s/ Christopher DiPompeo*

Christopher DiPompeo

# EXHIBIT G

1     SUPREME COURT OF THE STATE OF NEW YORK

2     COUNTY OF NASSAU:   TRIAL TERM:   PART 6
      -------------------------------------------X
3     ARK 457 DOE,
                                         Index No.
4                        Plaintiff,      900094/21

5                -against-

6

7     HOLY FAMILY a/k/a HOLY FAMILY DIOCESAN
      HIGH SCHOOL, DOES 1-5 Whose Identities
      Are Unknown to Plaintiff,
8                        Defendants.
      -------------------------------------------X
9                        Nassau Supreme Court
                         Mineola, New York 11501
10                       November 29, 2023

11

12    B E F O R E: THE HONORABLE LEONARD D. STEINMAN,
                   Justice of the Supreme Court

13

14    A P P E A R A N C E S:
                   JEFF ANDERSON & ASSOCIATES
15                 Attorney for the Plaintiff
                   363 Seventh Avenue, 12th Floor
16                 New York, New York 10001
      BY:          PATRICK SMITH STONEKING, ESQ.
17

18                 JONES DAY
                   250 Vesey Street
19                 New York, New York 10281
      BY:          ERIC P. STEPHENS, ESQ.
20                 TODD R. GEREMIA, ESQ.

21

22

23

24

25                             JENNIFER SAMPUGNARO, RPR
                               OFFICIAL COURT REPORTER
                    JS

Proceedings

1          THE COURT:  This is Ark 457 v. Holy Family.

2          Appearances of counsel for the record.

3          MR. STONEKING:  Patrick Stoneking, Jeff Anderson

4    & Associates for the plaintiff.

5          MR. GEREMIA:  Todd Geremia from Jones Day for

6    defendant.

7          THE COURT:  Good morning, Mr. Geremia.

8          MR. STEPHENS:  Also Eric Stephens from Jones

9    Day.

10         THE COURT:  So with respect to this matter,

11   counsel was telling me that this matter perhaps should not

12   have been sent down to me by Judge Glenn because it's

13   still subject to the automatic stay.

14         Is that plaintiff's position or plaintiff fears

15   that's defendant's position?

16         MR. STONEKING:  I think the way your Honor

17   described it is right both ways.  That's my position and

18   that's my fear.

19         THE COURT:  Do the defendants have a position?

20         MR. GEREMIA:  I know they're concerned and we

21   spoke with Mr. Stoneking this morning outside in the

22   corridor that we are going to make a motion to dismiss, it

23   will get denied and then we will say the stay applies.  We

24   don't intend to do that.

25         This case is down the road now to getting

JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM
NYSCEF DOC. NO. 75
INDEX NO. 900094/2021
RECEIVED NYSCEF: 01/10/2024

20-12345-mg    Doc 3072    Filed 04/26/24    Entered 04/26/24 14:00:14    Main Document
Pg 263 of 292

Proceedings

```
 1        litigated and it is not subject to the stay any longer,

 2        and the Diocese wants to proceed.  They named as a

 3        defendant Holy Family Diocesan High School not the

 4        Diocese.

 5                    So to address that fear, that will not happen.

 6                    THE COURT:  So in other words, you are not going

 7        to assert later on that this matter is subject to the

 8        automatic stay?

 9                    MR. GEREMIA:  Correct.

10                    MR. STONEKING:  Okay.

11                    THE COURT:  Let's go off the record.

12                    (Whereupon, a discussion was held off the

13        record.)

14                    THE COURT:  Back on the record.

15                    So have discovery demands and responses been

16        served in this case?

17                    MR. STONEKING:  Yes, your Honor.

18                    THE COURT:  And do you have dates for

19        depositions?

20                    MR. STONEKING:  We have -- I have dates on me,

21        yes, availability.

22                    THE COURT:  Have you spoken with counsel about

23        agreeing on dates?

24                    MR. STONEKING:  No.

25                    THE COURT:  Is that true with respect to all the
```

JS

Proceedings

1       matters that you have before me?

2               MR. STONEKING:  No, that's not, just the case

3       with Jones Day.

4               THE COURT:  Do you have dates with other counsel

5       for depositions?

6               MR. STONEKING:  Well, mostly with Mr. Davey

7       we've got a number of different matters and we are

8       coordinating between offices to set them up.

9               THE COURT:  You don't have the dates yet?

10              MR. STONEKING:  We don't.

11              THE COURT:  All these cases you will give me

12      dates by the end of the week.

13              MR. STEPHENS:  Your Honor, on the deposition

14      date issued for the Diocese, the likely witnesses here

15      given the age of the case and age of the allegations and

16      the fact that the high school is no longer in existence

17      will be folks like the risk manager, the person who is the

18      head of child protection as well as custodians of record.

19              We heard your Honor's comments this morning that

20      there would be additional third-party subpoenas can be

21      served on the Diocese, and I think as your Honor is aware

22      about 20 third-party subpoenas have been served on the

23      Diocese in the last ten days or so.

24              The witnesses that will be required to

25      authenticate those documents and speak to the risk

                          JS

Proceedings

```
 1        protocols and the risk management that will be at issue in

 2        those cases are the same witnesses that Mr. Stoneking has

 3        asked us to coordinate with him on depositions.

 4                 Rather than have those folks deposed in

 5        connection with potentially 60 third-party subpoenas and

 6        this action, we would like to discuss coordination as your

 7        Honor has encouraged the parties in the other matters in

 8        the conferences today.

 9                 THE COURT:  I think that is a good idea, but I

10        am confused about something.

11                 With respect to these later subpoenas, are you

12        seeking documents or both?

13                 MS. BROSS:  We were originally seeking

14        documents.  After yesterday's conference I am going to be

15        serving a subpoena for testimony as well, but I don't

16        anticipate taking depositions in every case, only if

17        needed based upon the document production that we get if

18        that makes sense.

19                 THE COURT:  Yes.

20                 So now getting back to this case.  You've

21        already served the documents?

22                 MR. STEPHENS:  Yes, that's correct, your Honor.

23                 THE COURT:  And would it be the same documents

24        on all the cases or not necessarily?

25                 MR. STEPHENS:  So, your Honor, there will be,
```

JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM
INDEX NO. 900094/2021

NYSCEF DOC. NO. 175    20-12345-mg    Doc 3072    Filed 04/26/24    Entered 04/26/24 14:00:14    Main Document
RECEIVED NYSCEF: 01/10/2024

Pg 266 of 292

Proceedings

1    for example, to the extent that child protection protocols

2    are issued in every case --

3              THE COURT:  Let me interrupt.

4              Generally these cases, there are two types of

5    documents, policy and procedure documents, if you will,

6    and personal files.

7              MR. STEPHENS:  Correct, that's a good short

8    name.

9              THE COURT:  As it relates to policies and

10   procedures, the documents that you served in this case are

11   somewhat the documents that you're likely to serve in

12   response to the subpoenas seeking those type of documents.

13             MR. STEPHENS:  Yes, your Honor.  In fact prior

14   to the bankruptcy the Diocese had complied with the

15   uniform production of policies and procedures, insurance

16   documents, et cetera.  Those are among the documents that

17   we have served in response to Mr. Stoneking.

18             THE COURT:  You have one or more policy and

19   procedure witnesses that you would like to produce at one

20   time on all the cases for those plaintiffs who wish to

21   depose somebody concerning policies and procedures?

22             MR. STEPHENS:  Yes.  And to put it specifically

23   in reference to this case, we have identified two

24   witnesses on issues of notice and child protection, and we

25   anticipate that those witnesses will be called upon on

                              JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM
INDEX NO. 900094/2021

NYSCEF DOC. NO. 75    20-12345-mg    Doc 3072    Filed 04/26/24    Entered 04/26/24 14:00:14    Main Document    RECEIVED NYSCEF: 01/10/2024

Pg 267 of 292

Proceedings

1    those topics in every case.

2              And you will recall, your Honor, at a conference

3    that you held in August where we raised this very issue

4    and we talked about ways that we would mitigate this when

5    the issue arose.

6              THE COURT:  So if you were to have conversations

7    with some counsel, I don't know if it's practical to have

8    conversations with all counsel, in an attempt to agree

9    upon a date or dates for those policy and procedure

10   witnesses, and then send an email out to all plaintiffs

11   counsel in these cases saying that you intend to produce

12   at this time in all the cases, I support that and I don't

13   know what, if anything, I would be required to sign in the

14   nature of an order with respect to that.

15             I leave it to counsel, but I support the goal.

16   You let me know how I can help you achieve that.

17             MR. STEPHENS:  Thank you, your Honor.

18             With respect to time, I've heard your comments

19   about third-party depositions being scheduled for January.

20   I also heard your Honor's comments that subpoenas should

21   be issued by December 13th.  I guess my comment there is,

22   December 13th should identify the universal folks that

23   we'll need to coordinate with having received those

24   subpoenas.

25             Is that consistent with what your Honor has in

JS

Proceedings

1    mind for third-party discovery?

2              THE COURT:  Let's go off the record.

3              (Whereupon, a discussion was held off the

4    record.)

5              THE COURT:  Back on the record.

6              Deposition dates you're going to get me.  You

7    indicated you are going to make a motion to dismiss.

8              MR. GEREMIA:  We made a motion to dismiss

9    yesterday evening.  We did it, your Honor, by order to

10   show cause because your directive was to do everything by

11   order to show cause.

12             We spoke with Mr. Stoneking outside the court

13   and the parties at least are agreeable to a

14   December 8th opposition date.  I'm sorry,

15   December 15th opposition date and December 23rd reply.

16             THE COURT:  I was thinking that maybe I should

17   make the motion to dismiss returnable after the trial.

18   That is what I would prefer.

19             Do you really need to make a motion to dismiss

20   as opposed to a summary judgment motion?

21             MR. GEREMIA:  I think the issues can and should

22   be dealt with on a motion to dismiss.

23             THE COURT:  There's a whole lot of cases that

24   say, and I don't know what the basis of your motion to

25   dismiss is because I haven't seen the papers, but there

                              JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM
INDEX NO. 900094/2021

NYSCEF DOC. NO. 75        20-12345-mg    Doc 3072    Filed 04/26/24    Entered 04/26/24 14:00:14    Main Document    9    RECEIVED NYSCEF: 01/10/2024

Pg 269 of 292

Proceedings

1     are some that relate to notice.  That is a difficult

2     motion to dismiss.

3              If it relates to certain causes of action,

4     social services law or duplicative causes of action,

5     that's a different story.  Perhaps counsel can agree to

6     trim the complaint if there is causes of action that don't

7     belong there.

8              MR. GEREMIA:  We think this lines up pretty

9     precisely with the Second Department, governing Second

10    Department case Fuller versus Family Services of

11    Westchester.

12             In a nutshell, the holding there is when your

13    allegation of notice is the defendant knew or should have

14    known or learned or should have learned that the

15    perpetrator had propensity to engage in sexual assault,

16    that is not enough to withstand a motion to dismiss.

17             THE COURT:  That's the only case that you're

18    going to find from the Second Department.

19             MR. GEREMIA:  There is another that Mr. Davey

20    did.

21             THE COURT:  And he won?

22             MR. GEREMIA:  Correct.

23             THE COURT:  That's fine.  That's a tough motion.

24    Honestly, I know that there is one case because I try and

25    do my best to try to read all the CVA cases that come

                              JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM
INDEX NO. 900094/2021
NYSCEF DOC. NO. 75
RECEIVED NYSCEF: 01/10/2024

20-12345-mg    Doc 3072    Filed 04/26/24    Entered 04/26/24 14:00:14    Main Document
Pg 270 of 292
10

Proceedings

```
 1   down, and I think that's the only case that has come down

 2   from the Appellate Division that held that way.  And there

 3   was like a whole stack of cases that go the other way,

 4   but, you know, you made your motion so you've got a return

 5   date and I will decide it.  It's already made.

 6            I mean I would just encourage you with respect

 7   to other cases to just wait and make a summary judgment

 8   motion.  Realistically I am not going to decide the motion

 9   probably until after all discovery is done.

10            You might as well wait because summary judgment

11   motion will be a stronger motion if indeed there is no

12   notice.  And I wouldn't hesitate to dismiss if there's no

13   notice.

14            So anything else we need to do on Ark 457?

15            MR. STONEKING:  There is another matter,

16   protective order.  Your Honor brought up, advised the

17   parties to get together and discuss terms of the

18   protective orders.

19            Mr. Stephens sent out the copy of the protective

20   order to Judge Jaeger implemented in 2019.  I emailed a

21   response asking for one additional term allowing

22   plaintiff's lawyers to share information about the same

23   perpetrator, it's a term that New York City cases included

24   and they said no.  They wanted to bring it up here.  I

25   think it's a reasonable term.
```

JS

Proceedings

1          Notice is a big issue on these cases.  I don't
2    represent everybody and if there is a reason.  There are
3    several Bud Ribaudo, R-I-B-A-U-D-O, cases.  And if
4    information is produced in one case then the other claims
5    should know about it.
6          THE COURT:  So you're saying that with respect
7    to you should be allowed to share information with another
8    plaintiff's firm if they have an action against --
9    relating to that same abuser?  Is that what you're saying?
10         MR. STONEKING:  Yes.
11         THE COURT:  And you object to that?
12         MR. GEREMIA:  Your Honor, we simply asked
13   Mr. Stoneking to agree to the same protective order that
14   he signed in 2020.  After ignoring our request that we
15   made in August for two-and-a-half months he is now holding
16   it up to insert provisions to allow him to share
17   information across cases.
18         He's got one case with us with one abuser.  The
19   proposal -- this is one case.  It's one case, one abuser
20   and I don't believe he's even a repeat abuser.
21         So the provision -- we don't understand what's
22   holding this up.  We have asked Mr. Stoneking to simply
23   agree to it.
24         THE COURT:  Are you familiar with any other
25   actions against, relating to this abuser?

                          JS

Proceedings

```
 1              MR. STEPHENS:  No, your Honor.  This is a lay
 2      teacher.
 3              MR. STONEKING:  It was my understanding from the
 4      conference that the protective order might be applicable
 5      to all these cases.  I don't know that any protective
 6      order has been entered, and I thought the discussion we
 7      had in the conference was that he was going to reach out
 8      to all counsel to do a protective order that would apply.
 9              THE COURT:  I think they would like to do that,
10      but my understanding from conferences that we've had is
11      that plaintiff's counsels didn't want to -- right,
12      plaintiff's counsel didn't want to do that.
13              MR. STEPHENS:  We have largely not received
14      responses.  We did receive a response from Mr. Stoneking
15      so we thought the most straightforward thing to do would
16      be to enter it into the one case we were in.
17              At that time we had not received any third-party
18      subpoenas so we had no other information to protect or
19      that we were worried about.  We thought it was going to be
20      straightforward to have Mr. Stoneking agree to what he
21      agreed to in a single case.
22              THE COURT:  Well, Mr. Stoneking, if you were to
23      agree to that without prejudice to seeking to be relieved
24      from the order, and not shifting any burden with respect
25      to the implementation of the order.
```

                              JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM
INDEX NO. 900094/2021
NYSCEF DOC. NO. 75
20-12345-mg    Doc 3072    Filed 04/26/24    Entered 04/26/24 14:00:14    Main Document
RECEIVED NYSCEF: 01/10/2024
Pg 273 of 292
13

Proceedings

1              So, in other words, right now the burden is on

2        the defense I think if they want a protective order

3        concerning the documents they're going to produce.

4              So let's assume that you would agree to

5        confidentiality order without prejudice to you seeking to

6        modify that order, and with respect to such modification

7        the burden remains on the defendant to establish as to why

8        you shouldn't be allowed to share the information.  Is

9        that something you could agree to?

10             MR. STONEKING:  Yes, absolutely.

11             THE COURT:  Is that something you could agree

12       to?

13             MR. GEREMIA:  Yes, if we can just simply enter

14       the prior order in this case.  Certainly a protective

15       order discussion will be need to be had, but rather than

16       complicate the issue in this one case --

17             THE COURT:  Right.

18             So my question is, he signs that order in this

19       case, but it's without prejudice seeking to modify the

20       order.  And if he does seek to modify the order, the

21       burden is on you to establish why whatever it is he

22       doesn't want to be confidential anymore should remain

23       confidential.

24             You can't simply rely upon, we have this

25       protective order in place and there is no need to change

                              JS

Proceedings

1    it and he hasn't demonstrated why it needs to be changed.

2            MR. STEPHENS:  I think, your Honor, if there is

3    going to be a broader discussion about a protective order

4    covering the third-party productions of the Diocese, I do

5    think we will point to the fact that half dozen

6    plaintiff's counsel signed on to this prior order in 2020

7    that's been applicable and in this part for three years.

8            THE COURT:  You can make all those arguments,

9    but in terms of where the burden lies, though, it's not

10   going to shift the burden.

11           In other words, if I was in his shoes I would be

12   concerned about signing a confidentiality order that now

13   if I want to get out from under it in all or in part, that

14   now the burden is shifted to me where the burden used to

15   be on you because that's really the prejudice that he may

16   face by signing an order that he might want to modify.

17           MR. GEREMIA:  I think to be fair we just want to

18   say, parties reserve rights on all sides.

19           THE COURT:  You don't think it's fair to say

20   entering into this order does not shift whatever burden

21   there might be in the law?

22           MR. GEREMIA:  I mean let us work with

23   Mr. Stoneking on the language, but I think something

24   generic that makes clear this protective order doesn't

25   prejudice the parties' rights and arguments with respect

                            JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM          INDEX NO. 900094/2021

NYSCEF DOC. NO. 75    20-12345-mg    Doc 3072    Filed 04/26/24    Entered 04/26/24 14:00:14    Main Document    RECEIVED NYSCEF: 01/10/2024

Pg 275 of 292                                                                     15

Proceedings

1    to protective orders in other cases.  I mean that's a more

2    balanced way to do it, and frankly seems to me that it's

3    sort of saying the burden is going to be back on us.

4              MR. STONEKING:  Judge, I believe that the

5    protective order that Judge Jaeger put in place does have

6    the proper burden shifting dynamic.  That's not my issue.

7              I was confused because every other plaintiff

8    lawyer was on the chain of emails about the protective

9    order that it obviously extended beyond this case.  So my

10   concern was including the other cases where there would be

11   a need to share that information amongst each other.

12   That's the sole issue.  If it is just this case --

13             THE COURT:  Don't worry about the other

14   plaintiffs counsel, just worry about yourself.

15             MR. STONEKING:  If it is just this case I have

16   no problem.

17             MR. GEREMIA:  We were asked to send that around

18   to other plaintiff's counsel.  Nobody responded except for

19   Mr. Stoneking.

20             MR. STEPHENS:  Thank you.

21             THE COURT:  Let's go off the record.

22             (Whereupon, a discussion was held off the

23   record.)

24             THE COURT:  Back on the record.

25             Is there anything else I should know?

                          JS

Proceedings

1          MR. STEPHENS:  Just, your Honor, the parties

2    have exchanged deficiency letters.  We are working through

3    those.

4          We also have notified Mr. Stoneking that a

5    number of the authorizations that we had received have

6    been rejected so we've asked for revised authorizations

7    based on responses from institutions that rejected the

8    initial authorizations, so we are awaiting those as well.

9    But they're at least -- at least from our perspective

10   there is a substantial issue with respect to the harms

11   alleged in this case, extent to strain relationships,

12   divorce, et cetera, and at least at the moment the

13   plaintiffs have not produced any and refuse to produce

14   family photographs, social media relating to those

15   relationships, et cetera.

16         We don't think that's a sustainable position,

17   but we haven't discussed our discussions with

18   Mr. Stoneking on that.

19         THE COURT:  If you think you have exhausted them

20   make the motion.  Bring it by order to show cause.  Make

21   it sooner rather than later, but the deadline will be

22   December 11th to make any discovery related motions for

23   both sides, but I would hope that you can work it out.

24         MR. GEREMIA:  December 15th for the opposition

25   and December 22nd for reply?

JS

FILED: NASSAU COUNTY CLERK 01/12/2024 05:40 PM INDEX NO. 900094/2021

NYSCEF DOC. NO. 75   20-12345-mg   Doc 3072   Filed 04/26/24   Entered 04/26/24 14:00:14   Main Document   RECEIVED NYSCEF: 01/10/2024

Pg 277 of 292                                                        17

Proceedings

1          THE COURT:  This relates to the motion to

2    dismiss?

3          MR. GEREMIA:  Correct.

4          THE COURT:  You said that was filed yesterday.

5          MR. GEREMIA:  Correct.

6          THE COURT:  I haven't seen that yet.

7    Thank you.

8                    *         *         *

9               C E R T I F I C A T E

10         I, Jennifer Sampugnaro, an official court reporter of

11   the State of New York, do hereby certify that the foregoing is

12   a true and accurate transcript of my stenographic notes.

13

14

15              JENNIFER SAMPUGNARO, RPR
                SENIOR COURT REPORTER

16

17

18

19   So ordered:_____, JSC
               Honorable Leonard D. Steinman

20

21   Dated:

22                    **ENTERED**

                      **Jan 12 2024**

23                  NASSAU COUNTY
                 COUNTY CLERK'S OFFICE

24

25

                         JS

# EXHIBIT H



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

WILMINGTON, DE
LOS ANGELES, CA
SAN FRANCISCO, CA
NEW YORK, NY
HOUSTON, TX

919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302.652.4100
FACSIMILE: 302.652.4400

LOS ANGELES
10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

TELEPHONE: 310.277.6910
FACSIMILE: 310.201.0760

SAN FRANCISCO
ONE SANSOME STREET
34th FLOOR, SUITE 3430
SAN FRANCISCO
CALIFORNIA 94104

TELEPHONE: 415.263.7000
FACSIMILE: 415.263.7010

NEW YORK
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212.561.7700
FACSIMILE: 212.561.7777

TEXAS
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

TELEPHONE: 713.691.9385
FACSIMILE: 713.691.9407

WEB: www.pszjlaw.com

Gail S. Greenwood

December 13, 2023

415.217.5115
ggreenwood@pszjlaw.com

<u>Via E-mail</u>

Christopher DiPompeo
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001
cdipompeo@jonesday.com

Re:   The Roman Catholic Diocese of Rockville
      Centre, New York v. ARK320 DOE, et al.,
      <u>Adv. Pro. No. 20-01226 (MG) (Bankr. S.D.N.Y.)</u>

Dear Chris:

In response to your letter received on December 1, the Committee will stipulate to the stay of eleven additional cases that implicate coverage under Ecclesia insurance policies. The Committee does not agree to stay the additional cases that you have identified as naming certain defendant high schools that allegedly are not separately incorporated from the Diocese of Rockville Centre.

With regards to the latter category, state court counsel asked the Diocese months ago to agree that cases against certain high schools that are not separately incorporated should be stayed. The Diocese took the unequivocal position that the *Order Denying the Debtor's Motion for a Preliminary Injunction* [Adv. Docket No. 203] "is explicit" that the cases are "not stayed or otherwise enjoined" and refused to consensually stay any cases identified in the exhibit to the order. The Diocese proceeded to notice depositions. *See* Exhibit A, email communication between L. James and E. Stephens. The Committee therefore joins the Diocese's position that the Preliminary Injunction Order eliminated any application of a stay to listed cases. There is no justification for staying the cases now that plaintiffs and the state court have invested months in moving those cases forward.

SF 4860-1459-5735.1 18491.002



PACHULSKI

STANG

ℰ  ZIEHL

JONES

LAW OFFICES

Christopher DiPompeo
December 13, 2023
Page 2

We are available to further discuss as needed.

Very truly yours,

Gail S. Greenwood

Monday, December 11, 2023 at 21:21:00 Central Standard Time

**Subject:** RE: Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

**Date:** Thursday, October 12, 2023 at 4:34:51 PM Central Daylight Time

**From:** Leander James

**To:** Stephens, Eric P.

**CC:** Matthew Lombardi, Sandy Kluessendorf, Geremia, Todd R., Chan, Melanie K., Brittany M. Michael, Kenneth Brown

Dear Mr. Stephens,

Thank you for responding to my email. There is a difference of opinion between you and the Creditors' Committee Counsel regarding this case being stayed or not.  They disagree with your reading of Judge Glenn's order.  They believe the order lifts the stay only for non-debtor entities.  It does not lift the stay for debtor entities, such as this defendant.  I and my client are thus caught in the middle of your disagreement.  I am copying Ms. Michael and Mr. Brown with this email so they can discuss and resolve this issue with you, one way or another.   However, I do note that if the bankruptcy is dismissed, which it looks like it is going to be, this issue will be moot.

To be clear, I have no problem with Plaintiff being deposed and moving the case forward, so long as you will coordinate the date with me and my Co-Counsel. You have indicated you will do so, and I thank you for that.

Regarding what you presume I know, you shouldn't.  Mr. Noaker was the lead attorney in this case until just recently.  I am taking over for him, and there may be history in the case I do not know.

Regarding my client proceeding "at its own risk," we all proceed every day in this work at our own risk.

Respectfully,

Leander L. James, of the firm

# JAMES, VERNON & WEEKS, P.A.

*Helping people solve problems®*

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061

Telephone: (347) 832-8061
Toll-Free: (888) 667-0683
Facsimile: (208) 664-1684


e-mail: ljames@jvwlaw.net
Facebook: https://www.facebook.com/leander.james.7
Home Page: http://www.jvwlaw.net/


CONFIDENTIALITY NOTICE: This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine. The information is intended only for the use of the individual or entity stated in this e-mail. If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

---

**From:** Stephens, Eric P. <epstephens@jonesday.com>
**Sent:** Thursday, October 12, 2023 2:02 PM
**To:** Leander James <ljames@jvwlaw.net>
**Cc:** Matthew Lombardi <lombardi@tolmagepeskinlaw.com>; Sandy Kluessendorf <Sandy@jvwlaw.net>; Geremia, Todd R. <trgeremia@JonesDay.com>; Chan, Melanie K. <melaniechan@jonesday.com>
**Subject:** RE: Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

Mr. James, of course we'll work with you on dates for depositions in this and any of our other matters together. As you well know, deposition notices are frequently served with placeholder dates that are revised pursuant to subsequent agreements among parties.

As you also know, the Creditors' Committee in the Diocese's bankruptcy has obtained an order lifting the preliminary injunction in over 220 CVA cases, including the above-referenced matter. That order states "the 228 State Court Actions identified in Exhibit A attached hereto are not stayed or otherwise enjoined and may proceed." The order is explicit that this matter is "not stayed or otherwise enjoined." Accordingly there has been no stay to notify Judge Steinman of as you suggested below or basis to nullify the discovery demands the Diocese has served pursuant to Judge Steinman's orders.

The Diocese will continue to proceed in accordance with the plain language of the orders of the bankruptcy court and the Regional CVA Part for the Ninth and Tenth Judicial District. To the extent your client continues to assert this case is stayed and it need not follow these same orders, it does so at its own risk.

Eric P. Stephens (bio)
**JONES DAY® - One Firm Worldwide℠**
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3916
Fax: (212) 755-7306
epstephens@jonesday.com

---

**From:** Leander James <ljames@jvwlaw.net>
**Sent:** Thursday, October 12, 2023 2:33 PM
**To:** Stephens, Eric P. <epstephens@jonesday.com>
**Cc:** Matthew Lombardi <lombardi@tolmagepeskinlaw.com>; Sandy Kluessendorf <Sandy@jvwlaw.net>
**Subject:** Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

**Subject:** Anonymous MWM v. St. Pius X Preparatory Seminary, Index No: 900289/2021

Dear Mr. Stephens,

I am in receipt of your Notice for Deposition.

Please see my two emails below, to which you have not responded.  You have taken the position that the Defendant in this matter, St. Pius X Preparatory Seminary, is a d/b/a of the Debtor, Diocese of Rockville Centre, and a non-separately incorporated defendant.  As such the automatic stay in bankruptcy applies.  Your Notice of Deposition is void ab Initio.

It would be most helpful if you would respond to my emails.  Similarly, it would be helpful and professional for you to coordinate deposition dates with Mr. Lumbardi and me in our cases.

Respectfully,

Leander L. James, of the firm

# JAMES, VERNON & WEEKS, P.A.

*Helping people solve problems®*

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

e-mail:  ljames@jvwlaw.net
Facebook:  https://www.facebook.com/leander.james.7
Home Page:  http://www.jvwlaw.net/

CONFIDENTIALITY NOTICE:  This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine.  The information is intended only for the use of the individual or entity stated in this e-mail.  If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If

copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

**From:** Leander James
**Sent:** Tuesday, September 5, 2023 2:28 PM
**To:** epstephens@jonesday.com
**Subject:** RE: Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

Dear Mr. Stephens,

I'm following up on my email below.  Are you agreeable to drafting the stipulation or notice to the court that the automatic stay applies?

Respectfully,

Leander L. James, of the firm
**JAMES, VERNON & WEEKS, P.A.**
*Helping people solve problems*®

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

e-mail:  ljames@jvwlaw.net
Facebook:  https://www.facebook.com/leander.james.7
Home Page:  http://www.jvwlaw.net/

CONFIDENTIALITY NOTICE:  This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine.  The information is intended only for the use of the individual or entity stated in this e-mail.  If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If

you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

---

**From:** Leander James
**Sent:** Thursday, August 31, 2023 4:07 PM
**To:** epstephens@jonesday.com
**Subject:** Anonymous MWM v. St. Pius X Preparatory Seminary, Index No. 900289/2021

Dear Mr. Stephens,

By way of introduction, I am one of the attorneys representing Plaintiff in the above-entitled matter. Heretofore, my co-counsel, Pat Noaker has been the point of contact on this case.  Recently I have taken over that role.

It is my understanding that you recently raised the issue that the Defendant in this matter, St. Pius X Preparatory Seminary, is a d/b/a of the Debtor, Diocese of Rockville Centre, and a non-separately incorporated defendant. Assuming my understanding is correct, it would seem the automatic stay precludes this case from going forward at this time, and we should alert Judge Steinman of the same.  If you agree, would you be so kind as to draft a stipulation for us to submit to the Court stipulating to the say?

Thank you in advance for your consideration of this request.


Respectfully,

Leander L. James, of the firm
**JAMES, VERNON & WEEKS, P.A.**
*Helping people solve problems®*

*Inland Northwest Office*
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Telephone:  (208) 667-0683
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*New York City Office*
7th Floor
20 Vesey Street
New York, NY  10007
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

*Rochester New York Office*
2 State Street
Suite 1000
Rochester, NY
Telephone:  (347) 852-8061
Toll-Free:  (888) 667-0683
Facsimile:  (208) 664-1684

e-mail:  ljames@jvwlaw.net
Facebook:  https://www.facebook.com/leander.james.7
Home Page:  http://www.jvwlaw.net/

CONFIDENTIALITY NOTICE:  This e-mail and attachments accompanying it contain information belonging to the sender, which may be legally privileged or subject to the work product doctrine.  The information is intended only for the use of the individual or entity stated in this e-mail.  If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this e-mail or attachments is strictly prohibited.  If you have received this e-mail in error, please immediately notify us by e-mail or telephone (collect, if necessary) to arrange for disposition of the original.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

# EXHIBIT I



The Dialog



- HOME
- OUR DIOCESE
- YOUTH
- EVENTS
- SPECIAL FEATURES
- ABOUT US
- RESOURCES
- ADVERTISE

Home   National News   Bishop John Barres makes difficult decision to have Diocese of Rockville Centre...

- NATIONAL NEWS

# I.    Bishop John Barres makes difficult decision to have Diocese of Rockville Centre file for bankruptcy

By
**Catholic News Service**
-
1 October 2020, 15:10
3781



St. Agnes Cathedral in Rockville Centre, N.Y., is seen Aug. 29, 2020. (CNS photo/Gregory A. Shemitz, Long Island Catholic)




**ROCKVILLE CENTRE, N.Y.** — Facing over 200 lawsuits alleging sex abuse filed since New York state lifted the statute of limitations on such cases, the Diocese of Rockville Centre Oct. 1 filed "a voluntary petition for reorganization" under Chapter 11 of the U.S. Bankruptcy Code.

The petition was filed in U.S. Bankruptcy Court for the Southern District of New York.

"We believe that this process offers the only way to ensure a fair and equitable outcome for everyone involved, including abuse survivors whose compensation settlements will be resolved by the courts," said Bishop John O. Barres said in a statement.

2



Bishop John O. Barres of Rockville Centre, N.Y., is seen imparting a blessing during Mass at St. Agnes Cathedral in Rockville Centre in 2017. (CNS photo/Gregory A. Shemitz, Long Island Catholic)

"This decision was not made lightly," he said, "but, with the passage of the Child Victims Act, the failure of the diocese's insurers to honor their contractual obligations and the number of suits filed to date, it has become clear the diocese would not able to continue its spiritual, charitable and educational missions while shouldering the increasingly heavy burden of litigation expenses associated with these cases."

Last year, Gov. Andrew Cuomo signed the Child Victims Act to lift the statute of limitations on filing childhood sex abuse cases that previously had been "time-barred or expired." The new law gave survivors a year to file, but Cuomo has twice extended the deadline because of difficulties posed by the ongoing pandemic, he said. On May 8, he extended the deadline to Jan. 14, 2021, and on Aug. 3, he extended it further to Aug. 14, 2021.

Regarding the bankruptcy filing, "we know that this will be difficult news for people across the diocese to hear, especially for the many people of Long Island, Catholic and non-Catholic alike, who depend on the church in so many ways," Bishop Barres said in a 10-minute video posted on the diocese's website, www.drvc.org.

The financial burden of litigation expenses "has been severe" and has "only been compounded" by the financial toll of COVID-19 on the diocese, he said.

3

The bankruptcy will allow the diocese to still carry out its "spiritual, charitable and educational missions," Bishop Barres said, while at the same time "make sure all clergy sex abuse survivors are afforded just and equitable compensation" and "offer survivors some measure of healing from these horrific abuses."

The news release, and Bishop Barres in his video message, said the diocese "believes its current and future liquidity will be sufficient to fund operations and ministries during the restructuring process and beyond."

"Vendors will be paid for all goods and services delivered after the filing, and transactions that occur in the ordinary course of business will continue as before. Employees will be paid their normal wages, and their benefit programs will continue uninterrupted," the release said.

The diocese said its parishes and Catholic schools are separate legal entities and therefore are not included in the filing. "Operations of the parishes and schools are expected to continue as normal," it said.

Some parishes are named in Child Victims Act lawsuits along with the diocese, and Bishop Barres said the diocese "intends to petition the Bankruptcy Court to stay any separate civil actions against these parishes and bring these cases under the umbrella of the settlement process in the diocese's Chapter 11 case."

"We carefully and prayerfully considered other alternatives, but Chapter 11 was the only way to provide fair settlements to survivors while continuing to be of service to the 1.4 million Catholics in the geographical boundaries of the Diocese of Rockville Centre," Bishop Barres said in his message.

The diocese began implementing cost reductions and streamlining its operations in October 2019, a move expected to save the diocese about $3.5 million annually.

"Like many other institutions, the diocese has suffered a strain on its finances as a result of the COVID-19 pandemic. Approximately 40% of its annual revenue comes from offertory collections, which have dropped precipitously (along) with attendance at Sunday Mass," the news release said.

4

This past August, the diocese cut its budget and reduced staff by 10% at the pastoral center in Rockville Centre, cuts it said will save about $5 million annually.

"We will work diligently with all survivors, creditors and ministries to maintain open communication while we work toward our goal of completing a settlement and finalizing a restructuring plan that includes a comprehensive and final resolution for suffering survivors," the diocese said.

The diocese created the Office for the Protection of Children and Young People in 2003 to oversee implementation and compliance with the U.S. bishops' "Charter for the Protection of Children and Young People and the Essential Norms" first approved in June 2002.

The office also ensures the protection and safety of children by enforcing protocols for reporting and investigating alleged incidents of abuse.

In 2017, the diocese launched its Independent Reconciliation and Compensation Program to provide abuse survivors "a confidential avenue for being heard" and provide "some measure of reconciliation and compensation based on an independent review by nationally recognized fund administrators."

The program ended with the Chapter 11 filing, the diocese said, but since it was instituted, it had provided varying amounts of compensation to about 350 survivors totaling more than $62 million.

"Participation in the IRCP had been completely voluntary," the diocese said.