PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
John Morris, Esq.
Karen B. Dine, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 34th Floor
New York, NY  10017-2024
Tel: 212-561-7700; Fax: 212-561-7777
jstang@pszjlaw.com
jmorris@pszjlaw.com
kdine@pszjlaw.com
bmichael@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK, | Case No. 20-12345 (MG) |
| Debtor. | |

**DECLARATION OF CHARLES D'ESTRIES IN SUPPORT OF OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S**
<u>**MOTION TO DISMISS CHAPTER 11 CASE [DOCKET NO. 3071]**</u>

I, Charles D'Estries, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, declare:

1. I am over twenty-one years of age and am competent to make this declaration (this "<u>Declaration</u>") in support of the *Objection of the Official Committee of Unsecured Creditors to the Debtor's Motion to Dismiss Chapter 11 Case* [Docket No. 3071] ( the "<u>Objection</u>"), filed by the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 case of The Roman Catholic Diocese of Rockville Centre, New York

LA:4874-2379-8199.7 18491.002

(the "Debtor" or "Diocese") objecting to the *Debtor's Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case* [Docket No. 3053] ("Motion to Dismiss").

2. Except as otherwise stated in this Declaration, all facts set forth herein are based on my personal experience, knowledge or understanding.

## I. INTRODUCTION AND BACKGROUND

3. Beginning when I was 13 years old, I was sexually abused by a Diocesan priest.

4. Following the passage of New York's Child Victims Act in 2019 that opened the statutory window for asserting sexual abuse claims (the "CVA"), my personal lawyer, Jason P. Amala, a member of the law firm Pfau Cochran Vertetis Amala PLLC ("PCVA"), filed a complaint on my behalf in New York state court against the Diocese and St. Patrick's Parish in connection with the abuse to which I suffered during 1968-1970 (the "State Court Case"). My State Court Case is pending, but has been stayed because of the commencement of the Diocese's bankruptcy case and the preliminary injunction entered in the bankruptcy case staying state court litigation against non-debtors.

## II. THE COMMENCEMENT OF THE DIOCESE'S BANKRUPTCY CASE AND APPOINTMENT AND ROLE OF THE COMMITTEE

5. On October 1, 2020 (the "Petition Date"), the Diocese filed a bankruptcy case under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Case"). On October 16, 2020, the Office of the United States Trustee formed the Committee, and I was appointed to serve as a member of the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 71]. I have served on the Committee since its formation. Following its formation, the Committee selected Pachulski Stang Ziehl & Jones LLP ("PSZJ") as its bankruptcy counsel, Burns Bair LLP ("Burns Bair") as its special insurance counsel, and

Berkeley Research Group, LLC ("BRG") as its financial advisor. I have continued to be represented in my personal capacity by Mr. Amala and PCVA.

6. The Committee has at all times since its formation had nine (9) members, including eight individuals who were sexually abused as minors (myself included) and one representative of a minor with a civil rights claim against the Diocese. Committee members (including me) are responsible for unsecured creditors of the estate, including the 600-plus survivors that that have filed claims against the Diocese in the Bankruptcy Case (the "Survivors"). While the Committee is responsible for the Survivors as a constituency, the Committee does not represent any Survivor directly in his or her individual capacity.

7. The Committee works closely with our advisors and considers information regarding the Diocese, the Bankruptcy Case and the claims of Survivors and other unsecured creditors. Based largely on this information and the advice provided to the Committee, the Committee votes on positions regarding issues in the Bankruptcy Case. A number of state court counsel representing certain members of the Committee also participate in our meetings, each bringing a wealth of experience and expertise relevant to the issues facing the Committee. Once the Committee votes on an issue, counsel to the Committee executes on the decisions made by the Committee.

8. I have attended well over one hundred Committee meetings since the commencement of the Bankruptcy Case over three years ago in October 2020. Our counsel attends and provides information and advice at each meeting. My personal counsel also attends most of the meetings. I regularly receive and read emails from Committee advisors regarding Committee business, generally several times a week, depending on case activities or developments. I prepare for Committee meetings in advance, and review information provided

by the Committee's advisors regarding the issues to be discussed and/or determined by the Committee.

9. As a Committee member, when deciding on behalf of the Committee, the impact of the Committee's decision on my personal claim does not affect my decision. As a Committee member, I work for the Survivor constituency. I take very seriously, and so do my colleagues on the Committee, our responsibility to the people who are seeking fair compensation settlement so their lives can go on. As Committee members, we must consider the various situations, including the severity and difficulties faced by the 600-plus Survivors, each of whom faces impacts from the abuse he or she suffered, and who seeks fair compensation for such abuse and the protection of children.

10. And this case is not just about the 600-plus Survivors. Thousands of people are impacted because each Survivor has people who love them, who are trying to support them, and who are also working through the impacts the abuse has had on *their* lives. The Survivors are not simply a number, nor are they faceless "claims" seeking undue recompense.

11. The Committee's goal is to do its best to help Survivors obtain fair and adequate compensation on account of their abuse claims.

### III.    THE SURVIVORS REJECTION OF THE DIOCESE'S PLAN

12. As a Committee member, I was informed about the Debtor's Plan and Disclosure Statement by the Committee's counsel and my personal counsel. I also personally reviewed the Disclosure Statement and Plan.

13. The Committee's position on the Plan was that the Plan provided wholly inadequate compensation to Survivors, would use money otherwise available for Survivors to

continue to litigate against Survivors, and lacked any non-monetary provisions for child-protection or reconciliation and healing of Survivors.

14. I agreed with the Committee's position and voted to reject the Plan.

15. I understood that the Diocese threatened to seek dismissal of the Bankruptcy Case if the Plan was rejected. I further understood that such dismissal was by no means automatic and would need to be determined by the Bankruptcy Court, with the Committee and other parties in interest having an opportunity to object to and argue against such dismissal.

16. I voted to reject the Plan because it was inadequate. My vote to reject the Plan was in no way a vote supporting dismissal. I oppose dismissal of the Debtor's Bankruptcy Case at this time.

17. The Committee believes — and I agree — that permitting the Trial Cases to move forward is the best path forward for this Case. I believe that moving forward with the Trial Cases will cause the parties (including the Committee, the Diocese, and Insurers) to reassess their positions and become more realistic about their risks thereby fostering an opportunity for settlement.

**IV.    THE COMMITTEE DISMISSAL MOTION**

18. In March of 2023, following the filing of the first Diocese proposed plan, and in light of the Diocese's and Non-Debtor Entities' unwillingness to meaningfully engage in the mediation process with the Committee or provide fair value to the Survivors, the Committee filed a motion to dismiss the bankruptcy case [Docket No. 1912] (the "Committee Dismissal Motion"). I submitted a Declaration [Docket No. 2232] and testified at the hearing in support of the Committee Dismissal Motion.

19. At the time of the Committee Dismissal Motion, I testified why I, as a Survivor and Committee member, believed the dismissal of the case at that time was appropriate. I offered the following reasons, among others, in support of dismissal:

- Based on the Diocese's approach taken in the Bankruptcy Case and the utter lack of progress in the resolution of Survivor's claims, there appeared to be no real alternative to a dismissal of the Bankruptcy Case and a return to the state court process.

- Because of the lack of progress, delay, and frustration, we—the Survivors—wanted to go back to where we were before the bankruptcy. We wanted our day in court and wanted to undertake discovery to move forward with our claims. We wanted to pursue the parishes and others responsible for our abuse. We wanted to tell our stories and describe what happened to us, not just when we were young but the impact it had on our whole lives and the lives of our families. Survivors wanted to stop the money that should be available to pay our claims from going to bankruptcy professionals; finally ending the Diocese's spending tens of millions of dollars in legal fees while penny-pinching when it came to Survivor recompense.

- The Bankruptcy Case had resulted in a nearly 3-year delay with Survivors being no closer to resolution than we were on the Petition Date, only at that point we were facing a much depleted pool of assets. We found the time and money wasted by the Diocese astonishing, as was the Diocese's failure to listen to the voices of the Survivors.

- There was no reasonable basis to believe that continuation of the Bankruptcy Case would benefit any Survivor in terms of resolving their claims.

- The Bankruptcy Case had been pending for nearly three years without real progress in resolving the Survivors' claims, notwithstanding numerous mediation sessions and attempts by the Committee to "bring the Diocese to the table." The Diocese, for reasons unknown to the Committee, was not taking seriously the lives of the Survivors and the resolution of our claims as seriously as it should have. The Committee did its job, but the Committee's efforts in this Bankruptcy Case have gone largely unanswered and unmatched by the Diocese. The parties were at an impasse with no visible prospect of an immediate, acceptable change in position by the Diocese and the Non-Debtor Entities.

- The Diocese's estate was hemorrhaging money on professional fees. Because of the Diocese's lack of engagement with the Committee regarding a resolution of the Bankruptcy Case, there was no end in sight to the burn. The Committee believed that the bleeding of Diocese assets—assets that should rightly pay Survivors for the abuse committed—needed to cease. As there was no settlement in prospect, dismissal was the only way to stop incurrence of expenses at this extraordinary rate.

20. Even though I and the Committee understood that dismissal of the Bankruptcy Case would not be a panacea, and would present challenges to Survivors, the Committee still believed dismissal to be the better alternative compared to the negative and stalled experience of the bankruptcy process endured by Survivors. It was, therefore, the Committee's position that returning to state court was at that time a better alternative than what was going on in the Bankruptcy Case, which was nothing.

V.  **DISMISSAL IS NO LONGER THE BEST PATH FORWARD FOR SURVIVORS**

21. After the Committee Dismissal Motion was denied, the Bankruptcy Court suggested the pursuit of "test cases" in state court to enable the parties to become more realistic about their exposures and risks and to move away from unacceptable ultimatums and instead engage in good faith negotiation. The Committee promptly accepted the Court's suggestion.

22. I understand that there are at least four cases, the Trial Cases, progressing towards trial in state court. I believe the Trial Cases should proceed. I understand that if the bankruptcy is dismissed many other state cases will be unstayed and so there will likely be delay in the Trial Cases as well as all of the state court cases, all of which would be detrimental to Survivors.

23. I further understand that the Diocese has said that if the case is dismissed, the Diocese and other members of the Diocesan Enterprise will likely need to file for bankruptcy in the near future. Another bankruptcy filing by the Diocese would again stop the Survivors' state court cases and lead to significant additional delay in the Survivors having their day in court and ultimately receiving any compensation for the harm suffered.

24. In March of 2023, I believed that dismissal would mean that Survivors would be able to exit a stagnating bankruptcy and finally have their day in court. Now, I see certain Survivors actually on the verge of having that day in court and the Diocese is seeking to further

delay the Survivors by using dismissal. Though I remain concerned about the costs of the Bankruptcy Case, I believe the Diocese may deplete even more of its assets defending itself against hundreds of cases outside of bankruptcy.

25. I believe the Bankruptcy Court should deny the Diocese's Motion to Dismiss and instead permit the Trial Cases to move forward.

## VI. ATTENDANCE AT HEARING ON MOTION TO DISMISS AND AVAILABILITY FOR CROSS-EXAMINATION

26. I plan to attend the hearing on the Motion to Dismiss scheduled for May 9th in person and will be available for cross-examination. I request the opportunity to address the Bankruptcy Court on these issues and request that the Bankruptcy Court permit me to testify at the hearing. My previous testimony is the only occasion in the three and half years this Case has been pending that a Survivor spoke in Court. If there is a possibility that the hearing on May 9th is the last hearing in this Case, I believe it is important that a Survivor's voice be included among those considered by the Court in making its decision.

I declare under penalty of perjury that the foregoing is true and correct to the best of knowledge and belief. I executed this Declaration on April 26, 2024, at Buffalo, New York.

*/s/ Charles D'Estries*
Charles D'Estries