JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Counsel to the Debtor and Debtor in Possession*

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
William C. Heuer
1201 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 622-9200
Facsimile: (516) 622-9212

*Counsel to the Additional Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Rockville Centre, New York,<br><br>               Debtor. | Chapter 11<br><br>Case No. 20-12345 (MG) |

**MEMORANDUM OF LAW
IN SUPPORT OF CONFIRMATION OF MODIFIED CHAPTER
11 PLAN OF REORGANIZATION PROPOSED BY THE ROMAN CATHOLIC
DIOCESE OF ROCKVILLE CENTRE, NEW YORK AND ADDITIONAL DEBTORS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ...................................................................................... 3

I.    Procedural History ........................................................................ 3

II.   Voting Results ............................................................................... 3

ARGUMENT ........................................................................................... 5

I.    The Plan Satisfies Each Requirement For Confirmation .................................... 6

    A.    The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ................. 6

        1.    The Plan Satisfies the Classification Requirements of Section 1122(a) ................. 6

        2.    The Plan Satisfies the Requirements of Section 1123 ............................. 9

            (i)    The Plan Satisfies the Mandatory Provisions of Section 1123(a) ................. 9

            (ii)    The Plan Satisfies the Discretionary Provisions of Section 1123(b) ................. 13

                a.    The Plan's Exculpation Provision Should Be Approved .................. 14

                b.    The Channeling Injunction Should Be Approved ........... 15

                c.    The Gatekeeper Injunction Should Be Approved ........... 16

                d.    The Plan's Judgment Reduction Provision Should Be Approved .................. 17

                e.    The Plan's Settlements Should Be Approved ................. 17

            (iii)    The Plan's Cure Process is Appropriate under Section 1123(d) ................. 19

    B.    The Plan Satisfies Section 1129(a)(2) ................................ 20

        1.    The Debtor and Additional Debtors Provided Adequate Information About the Plan to Stakeholders as Required Under Section 1125 .................. 20

        2.    The Debtor and Additional Debtors Only Solicited Parties Entitled to Vote Under Section 1126 of the Bankruptcy Code ............ 21

    C.    The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law Pursuant to Section 1129(a)(3) .................. 22

    D.    The Plan Provides for Court Approval of Certain Administrative Payments in Compliance with Section 1129(a)(4) .................. 24

# TABLE OF CONTENTS
(continued)

**Page**

E.   The Debtor and Additional Debtors Have Complied with the Governance Disclosure Requirement in Compliance with Section 1129(a)(5) ...................... 25

F.   The Plan Does Not Require Governmental Regulatory Approval of Rate Changes and Therefore Complies with Section 1129(a)(6) ................................ 25

G.   The Plan is in the Best Interests of Creditors in Accordance with Section 1129(a)(7) ......................................................................................................... 26

H.   Each Class Has Accepted the Plan or Is Unimpaired as Required by Section 1129(a)(8) ..................................................................................... 27

I.   The Plan Treats Administrative and Priority Tax Claims in Accordance with Section 1129(a)(9) .......................................................................... 27

J.   The Plan Was Accepted by at Least One Impaired Class as Required by Section 1129(a)(10) ................................................................................. 29

K.   The Plan is Feasible Within the Meaning of 1129(a)(11) ................................... 29

L.   The Plan Complies with Section 1129(a)(12) .................................................... 31

M.   The Plan Assumes All Retiree Obligations in Compliance with Section 1129(a)(13) ......................................................................................... 31

N.   Sections 1129(a)(14) and (15) of the Bankruptcy Code Are Inapplicable ......... 32

O.   The Plan Complies with Section 1129(a)(16) .................................................... 32

P.   Section 1129(b) of the Bankruptcy Code Is Inapplicable .................................. 32

Q.   The Plan is the Only Plan for Purposes of Section 1129(c) ............................... 32

R.   The Plan's Principal Purpose is Not Avoidance of Taxes or Section 5 of the Securities Act as Prohibited by Section 1129(d) ........................................... 33

S.   Section 1129(e) of the Bankruptcy Code Does Not Apply to the Plan ............... 33

II.   THE OBJECTION OF THE U.S. TRUSTEE SHOULD BE OVERRULED ................. 33

A.   The Contractual Releases Contemplated by the Plan Comply with Applicable Law ................................................................................................ 33

B.   The Plan's Injunction Provisions Are Necessary And Appropriately Tailored. ........................................................................................................... 38

C.   The Plan's Exculpation Provision Have Already Been Revised ........................ 39

III.   CAUSE EXISTS TO WAIVE STAY OF CONFIRMATION ORDER ........................ 39

CONCLUSION .................................................................................................................. 40

## <u>TABLE OF AUTHORITIES</u>

**Page**

C<small>ASES</small>

*Austin Instrument, Inc. v. Loral Corp.*,
   29 N.Y.2d 124 (1971) ..................................................................................37

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
   526 U.S. 434 (1999)....................................................................................23

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995)..........................................................................17

*First Nat'l Bank of Cincinnati v. Pepper*,
   454 F.2d 626 (2d Cir. 1972).........................................................................37

*In re Adelphia Commc'ns Corp.*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007).........................................................26

*In re Aegerion Pharm., Inc.*,
   605 B.R. 22 (Bankr. S.D.N.Y. 2019) .............................................................7

*In re Archbishop of Agana*,
   No. 19-00010 (Bankr. D. Guam Jul. 19, 2022).............................................34

*In re Archdiocese of Saint Paul and Minneapolis*,
   No. 15-30125 (Bankr. D. Minn. Aug. 9, 2018) ............................................34

*In re Boy Scouts of Am. & Del. BSA*,
   642 B.R. 504 (Bankr. D. Del. 2022) .............................................................11

*In re Boy Scouts of Am. and Del. BSA, LLC*,
   No. 20-10343 (Bankr. D. Del. Sept. 8, 2022) ................................................8

*In re Bush Industries, Inc.*,
   315 B.R. 292 (Bankr. W.D.N.Y. 2004) ........................................................23

*In re Cent. Med. Ctr., Inc.*,
   122 B.R. 568 (Bankr. D. Mo. 1990) .............................................................10

*In re Chateaugay Corp.*,
   89 F.3d 942 (2d Cir. 1996).............................................................................7

*In re Chemtura Corp.*,
   439 B.R. 561 (Bankr. S.D.N.Y. 2010).................................................22, 23, 24

*In re Commissioner of Social Services*,
   141 A.D.2d 821 (2d Dep't 1988).................................................................37

*In re Dana Corp.*,
   412 B.R. 53 (S.D.N.Y. 2008)......................................................................10

*In re Diocese of Duluth*,
   No. 15-50792 (Bankr. D. Minn. Aug. 16, 2019) ........................................34

*In re Diocese of New Ulm*,
   No. 17-30601 (Bankr. D. Minn. Dec. 18, 2019)........................................34

*In re Dow Corning Corp.*,
   255 B.R. 445 (E.D. Mich. 2000)...........................................................10, 11

*In re Drexel Burnham Lambert Group, Inc.*,
   134 B.R. 499 (Bankr. S.D.N.Y. 1991)........................................................18

*In re Drexel Burnham Lambert Grp., Inc.*,
   138 B.R. 723 (Bankr. S.D.N.Y. 1992).......................................................6, 7

*In re Fed.-Mogul Glob. Inc.*,
   684 F.3d 355 (3d Cir. 2012).......................................................................12

*In re Greensill Cap., Inc.*,
   No. 21-10561 (Bankr. S.D.N.Y. Oct. 26, 2021) ........................................15

*In re Herald Hotel Assocs., L.P.*,
   No. 20-12266 (Bankr. S.D.N.Y. Oct. 28, 2021) ........................................14

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007).......................................................................18

*In re J. Reg. Co.*,
   407 B.R. 520 (Bankr. S.D.N.Y 2009), *appeal dismissed sub nom.*, *Freeman* v.
   *J. Reg. Co.*, 452 B.R. 367 (S.D.N.Y. 2010).............................................24

*In re Johns-Manville Corp.*,
    837 F.2d 93 (2008) .................................................................................................16, 29

*In re Joint E. & S. Dist. Asbestos Litig.*,
    982 F.2d 721 (2d Cir. 1992), *opinion modified on rehearing*,
    993 F. 2d 7 (2d Cir. 1993) ...............................................................................................10

*In re The Leslie Fay Cos., Inc.*,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997) .............................................................................22

*In re LSC Commc'ns, Inc.*,
    No. 20-10950 (Bankr. S.D.N.Y. Feb. 24, 2021) ...............................................................15

*In re Madison Hotel Assocs.*,
    749 F.2d 410 (7th Cir. 1984) ...........................................................................................22

*In re Manhattan Jeep Chrysler Dodge, Inc.*,
    602 B.R. 483 (Bankr. S.D.N.Y. 2019) .............................................................................26

*In re Motors Liquidation Co.*,
    541 B.R. 104 (Bankr. S.D.N.Y. 2015) .............................................................................16

*In re Munford, Inc.*,
    97 F.3d 449 (11th Cir. 1996) ...........................................................................................17

*In re PG&E Corp.*,
    No. 19-30088 (Bankr. N.D. Cal. Mar. 17, 2020) ...............................................................8

*In re Quigley Co., Inc.*,
    377 B.R. 110 (Bankr. S.D.N.Y. 2007) .........................................................................6, 10

*In re Refco Inc.*,
    505 F.3d 109 (2d Cir. 2007) .............................................................................................18

*In re Resorts Int'l, Inc.*,
    145 B.R. 412 (Bankr. D.N.J. 1990) .................................................................................24

*In re Roman Catholic Bishop of Great Falls, Montana*,
    No. 17-60271 (Bankr. D. Mont. May 30, 2018) ...............................................................35

*In re Roman Catholic Church of the Archdiocese of Santa Fe*,
    No. 18-13027 (Bankr. D.N.M. Dec. 28, 2022) .............................................................8, 34

*In re Roman Catholic Church of the Diocese of Gallup*,
  No. 13-13676 (Bankr. D.N.M. May 16, 2016) ........................................................35

*In re Roman Catholic Diocese of Harrisburg*,
  No. 20-00599 (Bankr. M.D. Pa. Dec. 21, 2022) ...................................................34

*In re Sabine Oil & Gas Corp.*,
  555 B.R. 180 (Bankr. S.D.N.Y. 2016) ...................................................................6

*In re Texaco Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed*,
  92 B.R. 38 (S.D.N.Y. 1988) .................................................................................24

*In re TK Holdings Inc.*,
  No. 17-11375 (Bankr. D. Del. Feb. 21, 2018) .......................................................8

*In re Trib. Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011) .....................................................................17

*In re USA Gymnastics*,
  No. 18-09108 (Bankr. S.D. Ind. Dec. 16, 2021) ....................................................8

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012), *aff'd*, 729 F.3d 311 (3d Cir. 2013) .....................10, 23

*In re Wash. Mut., Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) .....................................................................36

*In re Wash. Mut., Inc.*,
  461 B.R. 200 (Bankr. D. Del. 2011), *unrelated parts vacated*, 2012 Bankr.
  LEXIS 895, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012) ...........................38

*In re WorldCom, Inc.*,
  347 B.R. 123 (Bankr. S.D.N.Y. 2006) ...............................................18, 23, 24, 30

*Koelbl* v. *Glessing (In re Koelbl)*,
  751 F.2d 137 (2d Cir. 1984) .................................................................................22

*Matter of Highland Cap. Mgmt.*,
  48 F.4th 419 (5th Cir. 2022) ................................................................................16

*Matter of Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part*, *rev'd in part on other
  grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d. Cir. 1988) ..........6

*McDermott, Inc. v. AmClyde*,
    511 U.S. 202 (1994)..............................................................................................17

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
    25 F.3d 1132 (2d Cir. 1994)................................................................................20

*Nat'l Union Fire Ins. v. BSA (In re BSA)*,
    650 B.R. 87 (D. Del. 2023)..................................................................................38

*NLRB* v. *Bildisco & Bildisco*,
    465 U.S. 513 (1984).............................................................................................23

*Pizza of Hawaii, Inc.* v. *Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
    761 F.2d 1374 (9th Cir. 1985) ............................................................................29

*Regent Partners, Inc. v. Parr Dev. Co.*,
    960 F. Supp. 607 (E.D.N.Y. 1997), *aff'd*, 131 F.3d 131 (2d Cir. 1997) .................37

*Reichert v. Rapid Invs., Inc.*,
    56 F.4th 1220 (9th Cir. 2022) .............................................................................37

*U.S. v. Como*,
    340 F.2d 891 (2d. Cir. 1965)...............................................................................37

*U.S. v. Twenty MILJAM-350 IED Jammers*,
    669 F.3d 78 (2d Cir. 2011).............................................................................35, 36

STATUTES

11 U.S.C.
    § 365(b)(1) ..............................................................................................................19
    § 507(a)(2) ...............................................................................................................31
    § 726(a) ...................................................................................................................26
    § 1122........................................................................................................................6
    § 1122(a) ...................................................................................................................6
    § 1123........................................................................................................................6
    § 1123(a)(1)-(3) .......................................................................................................9
    § 1123(a)(4) ........................................................................................................9, 10
    § 1123(a)(5) .............................................................................................................11
    § 1123(a)(6) .............................................................................................................12
    § 1123(d) .................................................................................................................19
    § 1125(b) .................................................................................................................20
    § 1126(a) ............................................................................................................21, 22

§ 1126(c) ...................................................................................................................22

§ 1126(f)...............................................................................................................4, 21, 27

§ 1126(g) ..............................................................................................................3, 21

§ 1129(a)(1) ..........................................................................................................6

§ 1129(a)(3) ..........................................................................................................22

§ 1129(a)(4) ..........................................................................................................24

§ 1129(a)(5) ..........................................................................................................25

§ 1129(a)(6) ..........................................................................................................25

§ 1129(a)(7) ......................................................................................................26, 38

§ 1129(a)(8) ..........................................................................................................27

§ 1129(a)(9) ..........................................................................................................27

§ 1129(a)(9)(A) .....................................................................................................27

§ 1129(a)(9)(B)(i) .................................................................................................28

§ 1129(a)(9)(B)(ii) ...............................................................................................28

§ 1129(a)(9)(C)(i) .................................................................................................28

§ 1129(a)(9)(C)(ii) ...............................................................................................28

§ 1129(a)(10) ........................................................................................................29

§ 1129(a)(11) ........................................................................................................29

§ 1129(a)(12) ........................................................................................................31

§ 1129(a)(13) ........................................................................................................31

§ 1129(a)(16) ........................................................................................................32

§ 1129(c) ...............................................................................................................32

§ 1129(d) ...............................................................................................................33

§ 1129(e) ...............................................................................................................33

## RULES

Fed. R. Bankr. P. 3020(e) ..................................................................................39

Fed. R. Bankr. P. 9019(a) ..................................................................................17

## OTHER AUTHORITIES

H.R. Rep. No. 95-595 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963 ......................................20

The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor") and the Additional Debtors (as defined in the Plan) hereby submit this memorandum of law (a) in support of the request for entry of an order confirming the *Modified Chapter 11 Plan of Reorganization Proposed By The Roman Catholic Diocese of Rockville Centre, New York and Additional Debtors* (Doc. No. 3354) (including all exhibits and other supplements thereto, and as modified, amended, or supplemented, including by the technical modification filed contemporaneously herewith, the "Plan"), including the agreements and other documents set forth in supplements to the Plan, dated November 19, 2024 (Doc. Nos. 3418, 3419) (collectively, the "Plan Supplement"), and (b) in reply to the objection of the U.S. Trustee to confirmation of the Plan (the "Objection").

## PRELIMINARY STATEMENT

1.      The Debtor is the seat of the Roman Catholic Church on Long Island and provides ministry, education and other services to 1.4 million Catholics on Long Island through the administration of (i) local churches, known as parishes, and parish schools; and (ii) other charitable, educational, and religious-service affiliates. The Additional Debtors are 136 parishes located within Suffolk and Nassau counties.

2.      Additional information regarding the Debtor, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the Disclosure Statement and the *Declaration of Charles Moore, Managing Director of Alvarez & Marsal North America, LLC, Proposed Restructuring Advisor to the Roman Catholic Diocese of Rockville Centre, New York, in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed on the Petition Date. The Plan, the Disclosure Statement, the Disclosure Statement Order and the Plan Supplement provide an overview of the Debtor's and Additional Debtors' operations and other relevant facts that may bear on confirmation of the Plan. The facts and circumstances supporting confirmation of the Plan are set forth in, among other filings, the *Declaration of Reverand Eric*

*Fasano* (the "Fasano Declaration"), (ii) the *Declaration of Andrew Ciriello* (the "Ciriello
Declaration"), (iii) the *Declaration of Emily Young* (the "Tabulation Declaration") (collectively,
the "Supporting Declarations"). The Supporting Declarations are also fully incorporated herein.

3.      The Plan addresses all Claims against the Debtor and all Abuse Claims against the
Additional Debtors. The Plan also builds upon a settlement with the Settling Insurers that provides
for the sale and buyback of certain insurance policies. Among other things, the Plan provides for
the channeling of Channeled Claims against the Debtors, Additional Debtors and Settling Insurers
to the Trust on the Effective Date, and the Trust will thereafter exclusively administer and resolve
the Abuse Claims in accordance with the Plan and the Trust Documents.

4.      The Plan was negotiated by, and is supported by, the Committee representing
holders of Abuse Claims, the Future Claims Representative, the Additional Debtors, certain
affiliated missions of the Debtor and the Settling Insurers. The Plan has been overwhelming
accepted—almost 99% of claimants voted to accept the Plan.

5.      On the Effective Date, Abuse Claims will be channeled to the Trust, and the sole
recourse for holders of such Abuse Claims against the Debtors and Additional Debtors, whenever
asserted, lies against the Trust. To the extent the claim has not been previously asserted, the Plan
allows for previously unknown claimants to file proofs of claim against the Additional Debtors on
a post-confirmation basis. The Plan also builds upon a settlement with certain Settling Insurers
providing for the sale and buy back of certain insurance policies for the purchase price, in
aggregate, of $85.525 million in cash. Pursuant to the Court's order approving the settlement and
sale, the Settling Insurers will receive various injunction protections.

6.      The Debtor and Additional Debtors submit that the Plan is in the best interests of
the Debtor, Additional Debtors, their estates, and creditors as it resolves pending Abuse Claims in

a manner that equitably and fairly compensates survivors of abuse and enables the Debtor and Additional Debtors to continue their charitable and religious missions. The Plan represents a multi-year effort to resolve CVA-related litigation through a consensual, global resolution with claimants, their insurers, and other stakeholders.

7.     The only outstanding objection to confirmation of the Plan is the objection filed by the U.S. Trustee. For the reasons set forth herein and in the Supporting Declarations, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

## BACKGROUND

### I.     PROCEDURAL HISTORY

8.     On October 1, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 the Bankruptcy Code. The Debtor continues to operate and pursue its religious, non-profit mission and ministry, and manage its properties and affairs as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

9.     The deadline for all holders of claims entitled to vote on the Plan to cast their ballots was November 26, 2024, at 5:00 p.m. (ET). The deadline to file objections to the Plan was also November 26, 2024, at 5:00 p.m. (ET). In connection with the filing of this Memorandum, the Debtor is (a) filing a revised Plan, which reflects certain technical modifications that do not affect the treatment of any claimants under the Plan and (b) submitting a proposed form of order confirming the Plan (the "Confirmation Order").

### II.     VOTING RESULTS

10.     In accordance with section 1126 of the Bankruptcy Code, only holders of claims in impaired classes receiving or retaining property on account of such claims were entitled to vote on the Plan. *See* 11 U.S.C. § 1126(g). In addition, holders of claims were not entitled to vote if their

rights are unimpaired by the Plan.  *See* 11 U.S.C. § 1126(f).  As a result, the following classes of claims were not entitled to vote on the Plan, and neither the Debtor nor Additional Debtors solicited votes from holders of such claims:

| Class | Designation | Status | Voting Rights |
|-------|-------------|--------|---------------|
| 1 | Priority Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Secured Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 5 | Post-Confirmation Claims against the Additional Debtors | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 7 | Lay Pension Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 8 | Priest Pension Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 9 | Claims against the Additional Debtors, other than Abuse Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |

11.     Votes on the Plan were solicited from holders of claims in impaired classes receiving or retaining property on account of such claims.  The voting results, as reflected in the Tabulation Declaration, are summarized as follows:

| TOTAL BALLOTS COUNTED | | | | |
|---|---|---|---|---|
| | ACCEPT | | REJECT | |
| VOTING CLASS | Amount | Number | Amount | Number |
| | $ / % | # / % | $ / % | # / % |
| **Class 3**<br>General Unsecured Claims against the Debtor | $1.00 /<br>100.00% | 1 /<br>100.00% | $0.00 / 0.00% | 0 /<br>0.00% |
| **Class 4**<br>Abuse Claims (other than Post-Confirmation Claims against the Additional Debtors) | $472.00 /<br>98.74% | 472 /<br>98.74% | $6.00 / 1.26% | 6 /<br>1.26% |
| **Class 6**<br>Convenience Claims against the Debtor | $80.00 /<br>100.00% | 1 /<br>100.00% | $0.00 / 0.00% | 0 /<br>0.00% |

12.     In sum, Class 3, Class 4 and Class 6 each voted to accept the Plan.  Tabulation Declaration, Ex. A.  The Debtor also notes that 478 of 629 eligible Ballots in Class 4 were returned and tabulated, representing a turnout in excess of 75%.  *Id.* at n.3.  Accordingly, the Plan has been accepted by, or has been deemed accepted by, each class of claims under the Plan.

## **ARGUMENT**

13.     The Court should confirm the Plan and overrule the U.S. Trustee's objection.  The Plan achieves the reorganization of the Debtor and Additional Debtors while providing for equitable treatment for creditors.  The Debtor and Additional Debtors have satisfied the requirements for confirmation under section 1129 of the Bankruptcy Code.  Finally, the Debtor requests a waiver of the fourteen-day stay imposed by the Bankruptcy Rules.

## I.      THE PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION

14.      To confirm the Plan, the Debtor and Additional Debtors must show by a preponderance of the evidence that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code.  *See In re Sabine Oil & Gas Corp*., 555 B.R. 180, 310 (Bankr. S.D.N.Y. 2016).  Supported by the Supporting Declarations and other filings with the Court, and any further evidence provided at the hearing, the Debtor and Additional Debtors assert the Plan complies with all relevant sections of the Bankruptcy Code, including sections 1122, 1123, and 1129, the Bankruptcy Rules, and applicable non-bankruptcy law.  Therefore, the Plan should be confirmed.

### A.      The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code

15.      Section 1129(a)(1) of the Bankruptcy Code requires a plan to comply with all applicable provisions of the Bankruptcy Code, including the rules governing the classification of and the provisions dictating the contents of a plan.  11 U.S.C. §§ 1122, 1123, 1129(a)(1); *see also Matter of Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123."), *aff'd in part*, *rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d. Cir. 1988); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992).  As demonstrated below, the Plan complies with all requirements of the Bankruptcy Code, including sections 1122 and 1123.

#### 1.      The Plan Satisfies the Classification Requirements of Section 1122(a)

16.      Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  "Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason."  *In re Quigley*

*Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) (quoting *In re Chateaugay Corp.*, 89 F.3d

942, 949 (2d Cir. 1996)).

17.     Substantial similarity, however, does not require all claims in a class to be identical

or equal treatment of similar claims.  Separate classification of similar claims is appropriate as

long as the proponent can articulate a reasonable justification.  *See Drexel Burnham Lambert Grp.,*

*Inc.*, 138 B.R. at 757 ("A plan proponent is afforded significant flexibility in classifying claims

under § 1122(a) if there is a reasonable basis for the classification scheme and if all claims within

a particular class are substantially similar."); *see also In re Aegerion Pharm., Inc.,* 605 B.R. 22,

30 (Bankr. S.D.N.Y. 2019) (separate classification of trade creditors from other unsecured

creditors was permissible where "the Debtors had good business reasons for the separate

classification" because "section 1122 of the Bankruptcy Code provides a debtor with a great degree

of flexibility to create classification schemes that will facilitate its chapter 11 plan").  Here, the

Plan appropriately classifies claims as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Secured Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3 | General Unsecured Claims against the Debtor | Impaired | Entitled to Vote |
| 4 | Abuse Claims (other than Post-Confirmation Claims against the Additional Debtors) | Impaired | Entitled to Vote |
| 5 | Post-Confirmation Claims against the Additional Debtors | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 6 | Convenience Claims against the Debtor | Impaired | Entitled to Vote |
| 7 | Lay Pension Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 8 | Priest Pension Claims against the Debtor | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 9 | Claims against the Additional Debtors, other than Abuse Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |

18.     The Plan's classification scheme satisfies the requirements of section 1122.  All claims within each class have the same or similar rights.  The Plan provides for separate classification of claims against the Debtor and Additional Debtors based on differences in such claims' nature and the asserted rights against the Debtor's and Additional Debtors' property and their priority.

19.     Specifically, the Debtor and Additional Debtors have sound justification for the separate classification of claims in Class 3, Class 4, and Class 6.  Claims in Class 3 all arise from the ordinary course operations of the Debtor.  Claims in Class 4 all arise out of allegations of abuse.  Additionally, holders of Abuse Claims against the Debtor and Additional Debtors will have their claims channeled to the Trust.  *See, e.g.*, *In re PG&E Corp.*, No. 19-30088 (Bankr. N.D. Cal. Mar. 17, 2020) (Doc. No. 6353) (classifying separately unsecured creditors whose recoveries were to come from different trusts); *In re TK Holdings Inc.*, No. 17-11375 (Bankr. D. Del. Feb. 21, 2018) (Doc. No. 2120) (same).  Class 6 consists of all Convenience Claims, or general unsecured claims in amounts less than $30,000, against the Debtor.  The separate classification of Abuse Claims, General Unsecured Claims, and Convenience Claims is consistent with what courts have approved in similar chapter 11 cases dealing with abuse claims.  *See, e.g.*, *In re Boy Scouts of Am. and Del. BSA, LLC*, No. 20-10343 (Bankr. D. Del. Sept. 8, 2022) (Doc. No. 10316) (confirming a plan of reorganization which separately classified general unsecured and abuse claims); *In re USA Gymnastics*, No. 18-09108 (Bankr. S.D. Ind. Dec. 16, 2021) (Doc. No. 1776) (same); *In re Roman*

*Catholic Church of the Archdiocese of Santa Fe*, No. 18-13027 (Bankr. D.N.M. Dec. 28, 2022) (Doc. No. 1214) (same).  Accordingly, the Debtor and Additional Debtors have a legitimate basis for the classification scheme under the Plan, and the support for the Plan by all impaired classes demonstrates the classification scheme is not intended to gerrymander acceptance by an impaired class.  The Plan complies with section 1122 of the Bankruptcy Code.

### 2. The Plan Satisfies the Requirements of Section 1123

20.     Section 1123 of the Bankruptcy Code provides certain mandatory and optional provisions that a plan must and may include.  The Plan satisfies the mandatory requirements of section 1123(a), includes settlements permitted under section 1123(b), and includes provisions not inconsistent with other provisions of the Bankruptcy Code pursuant to section 1123(b)(6).

### (i) The Plan Satisfies the Mandatory Provisions of Section 1123(a)

21.     Plans of reorganization under chapter 11 must comply with the seven mandatory criteria set out in section 1123(a) of the Bankruptcy Code.  The Plan satisfies these requirements.

22.     ***Specification of Classes, Impairment, and Treatment***.  The first three requirements of section 1123(a) are that a plan specify:  (a) the classification of claims and interests; (b) whether such claims and interests are impaired or unimpaired; and (c) the precise nature of their treatment under the plan.  11 U.S.C. § 1123(a)(1)-(3).  The Plan properly designates classes of claims, identifies impaired and unimpaired classes and their respective voting rights, and indicates the treatment of each class.  *See* Plan, Art. III.

23.     ***Equal Treatment***.  Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).  Under the Plan, holders of allowed claims will receive the same rights and treatment as other holders of allowed claims within such holders' respective class.  *See* Plan,

Art. III.B.  Each holder of an allowed General Unsecured Claim will receive the lesser of (i) the holder's *pro rata* share of the GUC Plan Distribution, and (ii) payment of the General Unsecured Claim in full, subject to the holder's ability to elect Convenience Claim treatment.  *Id.*

24.    The Plan provides for equal treatment of all holders of Abuse Claims in Class 4. Courts have found that section 1123(a)(4) "does not require precise equality, only approximate equality." *Quigley*, 377 B.R. at 116; *see also In re W.R. Grace & Co.*, 475 B.R. 34, 121 (D. Del. 2012), *aff'd*, 729 F.3d 311 (3d Cir. 2013) (in satisfying section 1123(a)(4), "perfect or precise equality is not required—only approximate equality"); *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 749 (2d Cir. 1992), *opinion modified on rehearing*, 993 F. 2d 7 (2d Cir. 1993) ("Without question, the 'same treatment' standard of section 1123(a)(4) does not require that all claimants within a class receive the same amount of money."). Furthermore, the equality requirement of section 1123(a)(4) of the Bankruptcy Code is met where members of the same class are subject to the same claim satisfaction process, despite resulting in different results for class members. *See In re Cent. Med. Ctr., Inc.*, 122 B.R. 568, 575 (Bankr. D. Mo. 1990) (finding that a plan's lottery system did not unfairly discriminate between members of the same class where bondholders chosen first would receive a different interest rate and greater present value than those chosen to be paid later, especially given bondholders' acceptance of the plan); *In re Dow Corning Corp.*, 255 B.R. 445, 500 (E.D. Mich. 2000) ("As to whether the claim is being treated fairly within the class, the inquiry is whether the claim is subject to the same process in satisfying the claim as the other claims within the class."). Courts have also recognized that the "same treatment" requirement is met if all claimants in the same class have "the same opportunity" for recovery.  *In re Dana Corp.,* 412 B.R. 53, 61-62 (S.D.N.Y. 2008). In the mass tort context, courts will evaluate the requirements of section 1123(a)(4) in light of settlements of disputed and unliquidated claims.

*See Dow Corning Corp.*, 255 B.R. at 497 ("Requiring a bankruptcy court to inquire as to the amount of consideration involved in each claim involving a disputed and unliquidated personal injury claim, especially in a mass tort situation, would be an unrealistic, unworkable and an unduly burdensome position for the bankruptcy court to be in. Settlement negotiations would not be effective under such a standard and the bankruptcy court would be placed in a situation where it would become involved in the negotiation process.").

25.    In exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Abuse Claim, each holder of an Abuse Claim will receive distributions from the Trust pursuant to the Trust Allocation Protocol. *See* Plan, Art. III.B. The Abuse Claims Reviewer, William Bettinelli, will consider all facts and evidence presented by the Abuse Claimant in the Abuse Claimant's filed proof of claim. *See* Disclosure Statement, Executive Summary. The Abuse Claims Reviewer will conduct an initial evaluation of each Abuse Claim, and, if such evaluation satisfies the initial criteria, the Abuse Claim Reviewer will then allocate to the Abuse Claimant a number of points. *Id.* The Trustee shall calculate the value of an individual "point" after all Abuse Claims have been reviewed. *Id.* Such a scaling allocation system has been approved in other bankruptcy cases. *See, e.g., In re Boy Scouts of Am. & Del. BSA*, 642 B.R. 504, 541-46 (Bankr. D. Del. 2022) (approving trust allocation procedures that provided for scaled distributions based on a settlement trustee's individual review of claims).

26.    In sum, the Plan's treatment of Abuse Claims is consistent with the requirements of section 1123(a)(4) of the Bankruptcy Code and is appropriate under the circumstances.

27.    ***Means for Implementation.*** Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means" for its implementation. 11 U.S.C. § 1123(a)(5). The Plan satisfies this requirement by providing for:

- the means for implementing, among other things, the establishment of the Trust, the transfer of the Trust Assets to the Trust, and the channeling of Abuse Claims to the Trust; *see* Plan, Arts. IV, V.A;

- the authorization for the Debtor, the Reorganized Debtor, the Additional Debtors, and the Reorganized Additional Debtors, as applicable, to take all actions consistent with the Plan and Confirmation Order as may be necessary to effectuate the Plan; *see id.*, Art. V.G;

- the means by which the Debtor and Additional Debtors will effectuate the insurance rights assignment to the Trust pursuant to section 541 and 1123(a)(5) of the Bankruptcy Code as an assignment of the right to receive insurance proceeds available with respect to the Non-Settling Abuse Insurance Rights Transfer; *see id.*, Art. IV.E;[1]

- the sources of distributions under the Plan for the GUC Plan Distribution; *see id.,* Art. III.B.3;

- the continued corporate existence of the Debtor and the Additional Debtors on and after the Effective Date, and identification of the Reorganized Debtor's and the Reorganized Additional Debtors' directors and officers; *see id.*, Art. V.F, H; Plan Supplement Ex. C; and

- the vesting of all of the Debtor's and Additional Debtors' assets, other than the Trust Assets, in the Reorganized Debtor and Reorganized Additional Debtors, as applicable, free and clear of all Liens, Claims, charges, rights, or other Encumbrances on the Effective Date; *see id.*, Art. V.I.

28.    ***Non-Voting Stock.***    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.  *See* 11 U.S.C. § 1123(a)(6).  The Debtor and Additional Debtors are nonprofit corporations and have no voting equity securities.  The Plan satisfies the requirements of section 1123(a)(6).

29.    ***Selection of Officers and Directors.***    Section 1123(a)(7) of the Bankruptcy Code requires the manner of selection of any director, officer, or trustee, or successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy."  *Id.*

---

[1]    A chapter 11 debtor's assignment of insurance policies to a trust has been routinely approved by courts in the mass-tort context, notwithstanding any anti-assignment provisions included in the policies. *See In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 366-67 (3d Cir. 2012).

The Reorganized Debtor's and Additional Debtors' trustees and officers are set forth in the Plan

Supplement, *see* Plan Supplement, Ex. C, and the Plan complies with section 1123(a)(7).  The Plan

contains all of the provisions required by section 1123(a) of the Bankruptcy Code.

> ### (ii)    The Plan Satisfies the Discretionary Provisions of Section 1123(b)

30.    Section 1123(b) of the Bankruptcy Code allows a plan to include a variety of non-

mandatory provisions. Each of the Plan's permissive provisions comports with these requirements:

- as permitted under section 1123(b)(1) of the Bankruptcy Code, Article III identifies which claims are unimpaired;

- as permitted under section 1123(b)(2) of the Bankruptcy Code, Article VI.A provides for the assumption of all Executory Contracts and Unexpired Leases which have not expired by their own terms on or prior to the Effective Date as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Claims.  The Debtor filed its Schedule of Assumed Executory Contracts and Unexpired Leases as part of the Plan Supplement.  *See* Plan Supplement, Ex. A;

- as permitted under section 1123(b)(3)(A) of the Bankruptcy Code, Article V of the Plan incorporates certain settlements.  *See* Plan, Art. V;

- as permitted by section 1123(b)(5) of the Bankruptcy Code, Article III modifies the rights of holders of claims as set forth therein; and

- as permitted by section 1123(b)(6) of the Bankruptcy Code, the plan "may include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  As further discussed below, in accordance with section 1123(b)(6) of the Bankruptcy Code, Article XI of the Plan contains certain discharge, injunction, and exculpation provisions (including the Channeling Injunction) that are essential to the Debtor's and Additional Debtors' reorganization and consistent with the applicable provisions of the Bankruptcy Code and caselaw in the Second Circuit.

31.    Each of the foregoing permissive provisions is consistent with section 1123(b) and

essential to the successful reorganization of the Debtor and Additional Debtors.

a.    **The Plan's Exculpation Provision Should Be Approved**

32.    Article XI.J of the Plan contains a customary exculpation for claims arising out of, or relating to, the Chapter 11 Cases and the agreements made in connection therewith during the Chapter 11 Cases (the "Exculpation Provision").  The Exculpation Provision is fair and appropriate under both applicable law and the facts and circumstances of this Chapter 11 Case.  The Exculpated Parties are limited to:   (a) the Debtor; (b) the Additional Debtors; (c) the Future Claimants' Representative; (d) any mediator or special mediator appointed in the Chapter 11 Cases; (e) the Committee, including each member of the Committee; and (f) with respect to the foregoing Entities in clauses (a) through (e), such Entities' current and former officers, directors, fiduciaries (including members and trustees) and professionals (including attorneys, financial advisors, accountants, investment bankers, and consultants).  Additionally, the scope of the Exculpation Provision is limited to any act or omission occurring on or after the *applicable* Petition Date through and including the Effective Date in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or implementation of the Chapter 11 Cases, the Plan Documents, the pursuit of entry of the Confirmation Order, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into during the Chapter 11 Cases in connection with the Chapter 11 Cases, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to the foregoing.  The Exculpation Provision does not protect the Exculpated Parties from liability resulting from actual fraud, willful misconduct, or gross negligence.

33.    The Exculpation Provision is consistent with what courts in this District and others routinely approve.  *See, e.g.*, *In re Herald Hotel Assocs., L.P.*, No. 20-12266 (Bankr. S.D.N.Y.

Oct. 28, 2021) (Doc. No. 136) (confirmed plan with exculpated parties limited to the debtor and

its various representatives and professionals); *In re Greensill Cap., Inc.*, No. 21-10561 (Bankr.

S.D.N.Y. Oct. 26, 2021) (Doc. No. 311) (confirmed plan with exculpated parties limited to the

debtor, the creditors' committee and its members, and respective representatives and

professionals); *In re LSC Commc'ns, Inc.*, No. 20-10950 (Bankr. S.D.N.Y. Feb. 24, 2021) (Doc.

No. 1246) (confirmed plan with exculpated parties limited to the debtors, the creditors' committee,

the ad hoc group, and their respective representatives and professionals).

34.    The Exculpated Parties have acted in good faith and in compliance with the law,

and the exculpation provision should be approved.

### b.    The Channeling Injunction Should Be Approved

35.    The proposed Channeling Injunction is an essential element of the Plan.    In

accordance with Article XI.D of the Plan, all Abuse Claims (other than certain Post-Confirmation

Claims against the Additional Debtors) will be permanently channeled to the Trust on the Effective

Date and, to the extent not otherwise disallowed prior to the Effective Date or subject to specific

exceptions set forth in the Plan, Abuse Claims may continue to be asserted only against the Trust

and not against the Protected Parties.    The finality that the Channeling Injunction brings to the

Debtor, the Additional Debtors and the Settling Insurers with respect to the CVA litigation is

essential to the reorganization and a key component of the Insurance Settlement Agreements.

Holders of Abuse Claims will be able to pursue their claims against the Trust.    The Channeling

Injunction provides the means for a holder of an Abuse Claim to obtain a recovery from the Trust,

while also preventing any further recourse to the Reorganized Debtor or Reorganized Additional

Debtors.    The insurers have been actively involved in the negotiation of the Plan, and neither the

Settling Insurers nor the Non-Settling Insurers have objected to confirmation of the Plan.

36.    The court may use injunctive orders to ensure that claims against insurance proceeds are channeled to a settlement fund instead of asserted directly against the Debtor, Additional Debtors or insurers. *In re Johns-Manville Corp.*, 837 F.2d at 93 ("The authority to issue the injunction is thus a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds.").  The Channeling Injunction is narrowly tailored to preserve and enforce the Insurance Settlement Agreements and the Plan.  As discussed below, the Channeling Injunction does not apply to "a direct claim by an Abuse Claimant that is premised on an independent legal duty owed to such Abuse Claimant by an Insurer Party and outside the jurisdiction of the Bankruptcy Court."  Plan, Art. XI.G.6.  Accordingly, the Channeling Injunction should be approved.

### c.    The Gatekeeper Injunction Should Be Approved

37.    The "Gatekeeper Injunction" in Article XI.H of the Plan prevents the commencement of actions against any Protected Party without the Court (i) determining that the cause of action represents a "colorable claim" and (ii) authorizing the bringing of such action. "Courts have long recognized bankruptcy courts can perform a gatekeeping function." *Matter of Highland Cap. Mgmt.*, 48 F.4th 419, 439 (5th Cir. 2022) (approving the inclusion of a gatekeeping provision in a plan of reorganization). Furthermore, the court may use injunctive orders to ensure that claims against insurance proceeds are channeled to a settlement fund instead of asserted directly against insurers. *See In re Johns-Manville Corp.*, 837 F.2d at 93. Similar relief has been approved in other bankruptcy cases.  *See, e.g., In re Motors Liquidation Co.*, 541 B.R. 104, 107, 129 (Bankr. S.D.N.Y. 2015).  The Gatekeeper Injunction is consistent with precedent and applicable law and thus should be approved.

16

            **d.**      **The Plan's Judgment Reduction Provision Should Be
Approved**

38.      The Plan contains a judgment reduction provision in Article XI.X. Courts regularly
approve settlements with similar mechanics, such as settlements that do not include all defendants
and enjoin claims against settling defendants. *See, e.g.*, *McDermott, Inc. v. AmClyde*, 511 U.S.
202, 203 (1994) (adopting the "proportionate share approach," whereby the settlement diminishes
the injured party's claim against non-settling tortfeasors by the amount of the equitable share of
the obligation of the settling tortfeasor). "[M]odern settlements increasingly incorporate
settlement bar orders"—that is, "a final discharge of all obligations of the settling defendants and
bar[of] any further litigation of claims made by non-settling defendants"—"into partial
settlements." *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) (approving a partial
settlement of a federal securities lawsuit which barred non-settling defendants from asserting
contribution claims against their settling co-defendants) (citation omitted).

39.      Bankruptcy courts recognize the same principles. *See, e.g.*, *In re Trib. Co.*, 464
B.R. 126, 176 (Bankr. D. Del. 2011) ("Bankruptcy courts have authority to enter settlement bar
orders.") (citing *In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) (concluding that "section
105(a) and [Federal Rule of Civil Procedure] 16 taken together provide ample authority" for the
bankruptcy court to bar non-settling defendants from asserting contribution and indemnity claims
against a settling defendant)). The Plan's judgment reduction provision is consistent with
applicable law and should be approved.

            **e.**      **The Plan's Settlements Should Be Approved**

40.      Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice
and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).
As set forth in the Disclosure Statement, "[t]he Plan serves as a motion to approve settlements with

each of CemCo, the DOE, the Seminary, Charities and CYO and Ecclesia." Disclosure Statement (Doc. No. 3375), ECF Page 27 of 247. Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is (a) fair and equitable and (b) in the best interests of the debtor's estate. *See In re Refco Inc.*, 505 F.3d 109, 119 (2d Cir. 2007) ("a bankruptcy court's obligation is to determine whether a settlement is in the best interests of the estate") (emphasis omitted). The settlement need not result in the best possible outcome for the debtor, so long as it does not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (citation omitted).

41. Courts frequently invoke additional factors, sometimes referred to as the *Iridium* factors, in determining whether a proposed compromise and settlement is fair and equitable, including:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (citing *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

42. As demonstrated by the record in this case, the various settlements embodied in the Plan are well within the range of reasonableness, which were reached through years of good-faith, extensive, arm's-length negotiations, and multiple-rounds of mediation with experienced

mediators. *See, e.g.*, Mediator's Status Reports: Doc. Nos. 913, 1030, 1075, 1175, 1390, 2113, 2515, and 2589. The relevant *Iridium* factors weigh in favor of the various settlements embodied in the Plan and such settlements are fair and equitable and in the best interests of the estates. *See* Disclosure Statement (Doc. No. 3375), at ECF Page 112 of 247 (Seminary Settlement Agreement), ECF Page 113 of 247 (DoE Settlement Agreement), ECF Page 113-14 (Charities and CYO Settlement), ECF Page 114 and 115 of 247 (CemCo Settlement); ECF Page 152 of 247 (Ecclesia Settlement); Fasano Declaration, ¶¶ 17-33.

### (iii)    The Plan's Cure Process is Appropriate under Section 1123(d)

43.    Section 1123(d) of the Bankruptcy Code states that amounts necessary to cure defaults under executory contracts proposed to be assumed shall be "determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). Article VI.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract or Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. *See* 11 U.S.C. § 365(b)(1). Exhibit A of the Debtor's Plan Supplement lists the Debtor's Schedule of Assumed Contracts and Cure Amounts. Plan Supplement Ex. A. The Debtor or the Reorganized Debtor, as applicable, shall pay undisputed Cure Amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties may agree. *See* Plan Art. VI.C.[2] Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption and Cure Amount and shall be forever barred, estopped, and enjoined from contesting the Debtor's assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts

---

[2]    The form of the Cure Notice was approved in the Disclosure Statement Order at ¶ 32 and Exhibit 7 thereto.

paid or proposed to be paid by the Debtor or the Reorganized Debtor.  *Id.*  Any disputed Cure Claims will be determined in accordance with the procedures set forth in Article VI.C of the Plan and applicable law.  As such, the Plan provides that the Debtor will cure, or provide adequate assurance that the Debtor will promptly cure, defaults with respect to assumed Executory Contracts or Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code, and therefore complies with section 1123(d) of the Bankruptcy Code.

44.    Based upon the foregoing, the Plan complies with sections 1122 and 1123 and satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

**B.    The Plan Satisfies Section 1129(a)(2)**

45.    Section 1129(a)(2) of the Bankruptcy Code requires compliance with the disclosure and voting requirements of sections 1125 and 1126 of the Bankruptcy Code, respectively.  *See* H.R. Rep. No. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963 ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

**1.    The Debtor and Additional Debtors Provided Adequate Information About the Plan to Stakeholders as Required Under Section 1125**

46.    Section 1125(b) of the Bankruptcy Code prohibits the post-petition solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."  11 U.S.C. § 1125(b).  Section 1125(g) of the Bankruptcy Code allows for the prepetition solicitation of votes in accordance with applicable non-bankruptcy law.  The provisions ensure that all parties-in-interest have sufficient information regarding the debtors and the plan to allow them to make an informed vote on the plan.  *See, e.g.*, *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re*

*Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (ruling that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

47.     By distributing the Disclosure Statement and soliciting acceptances of the Plan through Epiq Corporate Restructuring, LLC in accordance with the Disclosure Statement Order, the Debtor and Additional Debtors have complied with sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018.  Solicitation of votes in accordance with the Court-approved Solicitation and Voting Procedures also complied with Bankruptcy Rule 3017(a) and Rule 3017-1(a) of the Local Bankruptcy Rules for the Southern District of New York with respect to the contents and transmittal of the Disclosure Statement.

### 2.     The Debtor and Additional Debtors Only Solicited Parties Entitled to Vote Under Section 1126 of the Bankruptcy Code

48.     Section 1126 of the Bankruptcy Code provides, in pertinent part, that:

(a)     The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan.

*             *             *

(f)     Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g)     Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

11 U.S.C. § 1126(a), (f), (g).

49.     The Debtor and Additional Debtors solicited acceptances of the Plan from the holders of claims in Class 3, Class 4 and Class 6.  These are the only classes of claims that are

impaired and entitled to vote under the Plan. The Debtor and Additional Debtors did not solicit

votes from Classes 1, 2, 5, 7, 8, and 9, all of which are unimpaired. These classes are presumed to

have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. *Id*.

50.     Under section 1126(c) of the Bankruptcy Code:

> [a] class of claims has accepted a plan if such plan has been accepted by
> creditors, other than any entity designated under subsection (e) of this
> section, that hold at least two-thirds in amount and more than one-half in
> number of the allowed claims of such class held by creditors, other than any
> entity designated under subsection (e) of this section, that have accepted or
> rejected such plan.

11 U.S.C. § 1126(c). The acceptances in Class 3, Class 4 and Class 6 are in excess of two-thirds

in amount and one-half in number of those who timely voted to accept or reject the Plan. Based

upon the foregoing, the requirements of sections 1125 and 1126 of the Bankruptcy have been

satisfied, and thus, the Debtor has satisfied the requirements of section 1129(a)(2).

### C.     The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law Pursuant to Section 1129(a)(3)

51.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in

good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit

has defined the good faith standard as "requiring a showing that the plan was proposed with

'honesty and good intentions' and with 'a basis for expecting that a reorganization can be

effected.'" *Koelbl* v. *Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984) (citations omitted).

"Good faith is 'generally interpreted to mean that there exists a reasonable likelihood that the plan

will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re*

*Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (quoting *In re Madison Hotel Assocs.*,

749 F.2d 410, 425 (7th Cir. 1984)); *see also In re The Leslie Fay Cos.*, *Inc.*, 207 B.R. 764, 781

(Bankr. S.D.N.Y. 1997). "Whether a [chapter 11] plan has been proposed in good faith must be

viewed in the totality of the circumstances, and the requirement of [s]ection 1129(a)(3) speaks

more to the process of plan development than to the content of the plan." *In re Chemtura Corp.*, 439 B.R. at 608 (quoting *In re Bush Industries, Inc.*, 315 B.R. 292, 304 (Bankr. W.D.N.Y. 2004)) (internal citations omitted). As stated in *WorldCom*:

> The primary goal of chapter 11 is to promote the rehabilitation of the debtor. Congress has recognized that the continuation of the operation of a debtor's business as a viable entity benefits the national economy through the preservation of jobs and continued production of goods and services. The Supreme Court similarly has recognized that "[t]he fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."

*WorldCom, Inc.*, 2003 WL 23861928, at *51 (quoting *NLRB* v. *Bildsco & Bildsco*, 465 U.S. 513, 528 (1984)) (alteration in original).

52.    The Debtor and Additional Debtors have proposed the Plan in good faith and for purpose of resolving Abuse Claims in a fair and equitable manner, maximizing recoveries for creditors, and positioning the Debtor and Additional Debtors to continue their religious and charitable missions. The Debtor and Additional Debtors engaged in extensive mediation with the Committee, the Future Claims Representative, various affiliated missions of the Debtor, and the Settling Insurers in order to facilitate the settlement and establish the Trust. The Plan has been carefully crafted to implement the settlement and efficiently distribute the proceeds of the settlement to the claimants. Therefore, the Plan achieves the twin aims of the Bankruptcy Code—preserving the Debtor and Additional Debtors as going concerns and maximizing the value of distributions for creditors. *See W.R. Grace*, 475 B.R. at 88 ("The Supreme Court of the United States has specifically identified two purposes of Chapter 11 as: (1) preserving going concerns; and (2) maximizing property available to satisfy creditors.") (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)).

53.    The Plan's acceptance by holders of claims in Classes 3, 4 and 6, the Committee's support of the Plan, the Future Claims Representative's support of the Plan, and the Settling

Insurers' support of the Plan reflects the parties' good faith efforts to achieve the objectives of chapter 11 and the fairness of the Plan. The Plan is in compliance with the Bankruptcy Code and applicable non-bankruptcy law and is not proposed "by any means forbidden by law."

54.    Accordingly, the Debtor and Additional Debtors have proposed the Plan in good faith, with the best intentions for its creditors and stakeholders. *See In re Chemtura Corp.*, 439 B.R. at 608-09 (finding good faith requirement met because, among other things, debtor negotiated and reached agreements with several parties in interest to put forward a chapter 11 plan which "in the aggregate . . . demonstrate a good faith effort on the part of the debtor to consider the needs and concerns of all major constituencies in this case").

### D.    The Plan Provides for Court Approval of Certain Administrative Payments in Compliance with Section 1129(a)(4)

55.    Section 1129(a)(4) of the Bankruptcy Code requires that "[a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval as to their reasonableness by the court. *See In re J. Reg. Co.*, 407 B.R. 520, 537 (Bankr. S.D.N.Y 2009), *appeal dismissed sub nom.*, *Freeman v. J. Reg. Co.*, 452 B.R. 367 (S.D.N.Y. 2010); *WorldCom, Inc.*, 2003 WL 23861928, at *54; *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Texaco Inc.*, 84 B.R. 893, 907-08 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).

56.    Article II of the Plan provides that all Professional Fee Claims must be approved by the Court pursuant to final fee applications. Plan, Art. II.A.3. To that end, Article XII of the Plan provides that the Bankruptcy Court retains jurisdiction to "to hear and determine all

applications for compensation of Professionals and the Future Claimants' Representative for reimbursement of expenses under sections 328, 330, 331, 503(b) and/or the *Order Appointing a Legal Representative for Future Claimants* (Docket No. 799)."  Plan, Art. XII.B.5.

57.    Thus, all payments for services provided to the Debtor and Additional Debtors during the Chapter 11 Cases within the meaning of section 1129(a)(4) of the Bankruptcy Code must be approved by the Court in accordance with section 1129(a)(4) of the Bankruptcy Code.

### E.    The Debtor and Additional Debtors Have Complied with the Governance Disclosure Requirement in Compliance with Section 1129(a)(5)

58.    Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and, to the extent there are any insiders that will be retained or employed by the debtor, that there be disclosure of the identity and nature of any compensation of any such insiders.  11 U.S.C. § 1129(a)(5).  Article V.F of the Plan and Exhibit C of the Plan Supplement list the Reorganized Debtor's and Reorganized Additional Debtors directors and officers, their titles, and their affiliations.  Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

### F.    The Plan Does Not Require Governmental Regulatory Approval of Rate Changes and Therefore Complies with Section 1129(a)(6)

59.    Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."  11 U.S.C. § 1129(a)(6).  The Plan does not provide for rate changes by the Debtor or Additional Debtors, and section 1129(a)(6) of the Bankruptcy Code is inapplicable.

**G.      The Plan is in the Best Interests of Creditors in Accordance with Section 1129(a)(7)**

60.      Section 1129(a)(7) of the Bankruptcy Code, also referred to as the "best interests"

test, requires that each individual holder of an allowed impaired claim or equity interest has either

accepted the plan or will receive or retain on account of their claim or interest property having, as

of the effective date of the plan, a present value of not less than what such holder would receive if

the debtor were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7).  The

best interests test is satisfied where the estimated recoveries under a proposed plan for a debtor's

stakeholders that reject that plan are greater than or equal to the recoveries such stakeholders would

receive in a hypothetical chapter 7 liquidation.  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140,

252 (Bankr. S.D.N.Y. 2007) ("In determining whether the best interests standard is met, the court

must measure what is to be received by rejecting creditors in the impaired classes under the plan

against what would be received by them in the event of liquidation under chapter 7.").  The best

interests test does not apply to unimpaired classes.

61.      The "best interests test" requires a determination of what the holders of allowed

claims in each impaired class would receive in a hypothetical liquidation of the Debtor's and

Additional Debtors' assets in the context of a liquidation under chapter 7 of the Bankruptcy Code.

*See In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 493-94 (Bankr. S.D.N.Y. 2019)

("Chapter 11 of the Bankruptcy Code contemplates that the holders of 'allowed' claims and

'allowed' interests will share in distributions . . ."); *see also* 11 U.S.C. § 726(a) (referring to

distributions to "any allowed unsecured claim").  To determine if the Plan is in the best interests

of holders of allowed claims in each impaired class, the value of the distributions from the proceeds

of the hypothetical liquidation of the Debtor's and Additional Debtors' assets is compared with

the value offered to such classes of claims under the Plan.  *See* 11 U.S.C. § 1129(a)(7).  The

liquidation analyses annexed to the Disclosure Statement as Exhibit 2, and the Ciriello Declaration, demonstrate that holders of Abuse Claims and holders of General Unsecured Claims will receive more value under the Plan as compared to the distributable value available to such claimants in a hypothetical chapter 7 liquidation. Therefore, the Plan complies with and satisfies the "best interests test" and all other requirements of section 1129(a)(7).

### H.    Each Class Has Accepted the Plan or Is Unimpaired as Required by Section 1129(a)(8)

62.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or not be impaired by a plan. 11 U.S.C. § 1129(a)(8). A class of claims or interests that is not impaired under a plan is presumed to have accepted the plan and need not be further examined under section 1129(a)(8) of the Bankruptcy Code. 11 U.S.C. § 1126(f). In excess of two-thirds in amount and one-half in number of holders entitled to vote in Classes 3, 4 and 6 who voted on the Plan voted to accept the Plan. *See* Tabulation Declaration, Ex. A. Accordingly, the Plan satisfies the requirements of section 1129(a)(8).

### I.    The Plan Treats Administrative and Priority Tax Claims in Accordance with Section 1129(a)(9)

63.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that holders of certain other priority claims receive deferred cash payments, unless such holders agree to different treatment for such claim. 11 U.S.C. § 1129(a)(9). In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (*i.e.*, administrative claims allowed under section 503(b) of the Bankruptcy Code) must receive on the effective date cash equal to the allowed amount of such claims. 11 U.S.C. § 1129(a)(9)(A). Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally domestic support obligations, wage,

27

employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan) or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan). 11 U.S.C. § 1129(a)(9)(B)(i), (ii). Finally, section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code (*i.e.*, priority tax claims) must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim. 11 U.S.C. § 1129(a)(9)(C)(i), (ii).

64.    The Plan satisfies section 1129(a)(9) of the Bankruptcy Code. First, Article II.A provides that each holder of an allowed Administrative Claim will receive full payment in cash "on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtor or the Reorganized Debtor or Additional Debtor or Reorganized Additional Debtor shall have agreed" pursuant to section 1129(a)(9)(A). Second, no holders of the types of claims specified by section 1129(a)(9)(B) are impaired under the Plan and such claims have been paid in the ordinary course. Third, Article II.B specifically provides, in accordance with section 1129(a)(9)(C), that the holders of allowed Priority Tax Claims, will receive

> (1) cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Debtor reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (2) regular installment payments in cash of a total value, as

28

of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date.

The Plan satisfies all of the requirements of section 1129(a)(9).

**J.    The Plan Was Accepted by at Least One Impaired Class as Required by Section 1129(a)(10)**

65.    Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).  Class 3, Class 4, and Class 6 are impaired and have each accepted the Plan, without including the acceptance of the Plan by any insiders in such classes. Tabulation Declaration, Ex. A.  Accordingly, the Plan satisfies section 1129(a)(10).

**K.    The Plan is Feasible Within the Meaning of 1129(a)(11)**

66.    Section 1129(a)(11) of the Bankruptcy Code requires that the Plan be feasible to be confirmed.  Specifically, the Court must determine that:

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  Feasibility does not require a guarantee of the success of a plan.  *See Johns-Manville*, 843 F.2d at 649 ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed."). Instead, courts will find that a plan is feasible if a debtor demonstrates a reasonable assurance that consummation of the plan will not likely be followed by a further need for financial reorganization.  *See id.* "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."  *Pizza of Hawaii, Inc.* v. *Shakey's, Inc.* (*In re Pizza of Haw., Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted).

67.     Courts consider a number of factors when assessing feasibility of a plan, including: (i) the prospective earnings of the business or its earning power; (ii) the soundness and adequacy of the capital structure and working capital for the business which the debtor will engage in post-confirmation; (iii) the prospective availability of credit; (iv) whether the debtor will have the ability to meet its requirements for capital expenditures; (v) economic and market conditions; and (vi) the ability of management, and the likelihood that the same management will continue; and any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *See, e.g.*, *WorldCom Inc.*, 2003 WL 23861928, at *58.

68.     The Plan demonstrates the Debtor's and Additional Debtors' ability to successfully emerge from chapter 11 and satisfy their obligations under the Plan in accordance with the feasibility requirements of section 1129(a)(11). The Debtor's and Additional Debtors' financial projections and business plans have been thoroughly reviewed, and the Debtor and Additional Debtors submit that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization. *See* Ciriello Declaration at ¶¶ 57–60. This is further supported by the prospective financial information annexed as Exhibit 3 to the Disclosure Statement.

69.     As demonstrated in these financial projections, the Reorganized Debtor and Additional Debtors will possess sufficient liquidity to meet the required distributions under the Plan and to sustain operations going forward. *Id.* Likewise, the Reorganized Debtor and Additional Debtors are anticipated to have sufficient operating cash to fund capital expenditures related to ongoing operations. *Id.* Furthermore, the Reorganized Debtor and Additional Debtors will be able to make all payments required pursuant to the Plan, and the Debtor will be able to satisfy its obligations to the Trust, as well as its obligations under the Exit Facility and CemCo Loan. Therefore, confirmation of the Plan is not likely to be followed by liquidation or the need

for further reorganization. *Id.* Accordingly, the Reorganized Debtor's and Additional Debtors' operations will be positioned for a successful emergence from bankruptcy, and the Plan satisfies the feasibility requirement of section 1129(a)(11).

**L.    The Plan Complies with Section 1129(a)(12)**

70.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan[.]" 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930] of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2). Article II.A of the Plan provides for the payment of all fees payable pursuant to section 1930(a). Finally, the Plan provides that the U.S. Trustee shall not be required to file any proof of claim or request for payment for quarterly fees. *Id.* The Plan therefore complies with section 1129(a)(12).

**M.    The Plan Assumes All Retiree Obligations in Compliance with Section 1129(a)(13)**

71.    Section 1129(a)(13) of the Bankruptcy Code requires that retiree benefits are paid post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(13). Article VI.E of the Plan satisfies this requirement by providing that "[o]ther than those Compensation and Benefits Programs assumed by the Debtor prior to entry of the Confirmation Order, all of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan and deemed assumed under sections 365 and 1123 of the Bankruptcy Code, and the Debtor's and Reorganized Debtor's obligations under the Compensation and Benefits Programs survive and remain unaffected by entry of the Confirmation Order and be fulfilled in the ordinary course of the Debtor's and Reorganized Debtor's operations." Plan, Art.

VI.E.  The Plan also provides for all such obligations to continue with respect to the Additional

Debtors.  Plan, Art. III.B.9.  Accordingly, neither the Debtor nor Additional Debtors are seeking

to modify retiree benefits pursuant to section 1114 of the Bankruptcy Code.

### N.    Sections 1129(a)(14) and (15) of the Bankruptcy Code Are Inapplicable

72.    Neither the Debtor nor Additional Debtors are required by a judicial or

administrative order, or by statute, to pay a domestic support obligation and the Debtor and

Additional Debtors are not individuals.  Thus, section 1129(a)(14)-(15) is inapplicable here.

### O.    The Plan Complies with Section 1129(a)(16)

73.    Section 1129(a)(16) of the Bankruptcy Code requires that transfers of property

under the plan are made in accordance with any applicable provisions of non-bankruptcy law that

govern the transfer of property by a corporation or trust that is not a moneyed, business, or

commercial corporation or trust.  11 U.S.C. § 1129(a)(16).  The Debtor is a religious, not-for-profit

corporation and is not a moneyed, business, or commercial corporation or trust.  All transfers of

property under the Plan are being made in accordance with applicable provisions of non-

bankruptcy law governing such transfers.  Accordingly, the Plan satisfies section 1129(a)(16).

### P.    Section 1129(b) of the Bankruptcy Code Is Inapplicable

74.    Each impaired class of claims under the Plan has voted to accept the Plan, and there

are no non-accepting classes.  Tabulation Declaration, Ex. A.  Section 1129(b) is thus inapplicable.

### Q.    The Plan is the Only Plan for Purposes of Section 1129(c)

75.    Section 1129(c) of the Bankruptcy Code provides that the bankruptcy court may

confirm only one plan.  11 U.S.C. § 1129(c).  The Plan is the only plan currently before the Court

and is the result of a compromise between the Debtor, Additional Debtors, Future Claims

Representative, Committee, Settling Insurers, and many other parties.  Section 1129(c) is satisfied.

**R.** **The Plan's Principal Purpose is Not Avoidance of Taxes or Section 5 of the Securities Act as Prohibited by Section 1129(d)**

76.    Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933." 11 U.S.C. § 1129(d). The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933. Article II.B of the Plan contemplates the payment of all allowed Priority Tax Claims. Moreover, no party has requested that the Court decline to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Therefore, the Plan satisfies the requirements of section 1129(d).

**S.** **Section 1129(e) of the Bankruptcy Code Does Not Apply to the Plan**

77.    The provisions of section 1129(e) of the Bankruptcy Code apply only to a "small business case" as defined therein. 11 U.S.C. § 1129(e). The Debtor's and Additional Debtors' cases are not a "small business case." Accordingly, section 1129(e) does not apply to the Plan.

**II.** **THE OBJECTION OF THE U.S. TRUSTEE SHOULD BE OVERRULED**

78.    The Debtor and Additional Debtors received some informal objections and have resolved each of those issues raised by parties in interest through the modifications filed contemporaneously herewith. The Debtor and Additional Debtors received only one formal objection to the Plan, filed by the U.S. Trustee, which is addressed below.

**A.** **The Contractual Releases Contemplated by the Plan Comply with Applicable Law**

79.    The U.S. Trustee objects to the contractual release that claimants will be required to sign to receive a distribution from the Trust, but the U.S. Trustee fails to cite any relevant authority in support of this argument. Not a single authority in the Objection relating to this

argument involved a bankruptcy proceeding, let alone a release executed in the context of a chapter 11 plan.  Instead, the Objection relies on inapposite caselaw.

80.    A long line of precedent supports requiring a claimant to execute a release to obtain a distribution.  In many other diocesan chapter 11 cases, courts have approved conditioning a distribution on claimants executing a release.  *See In re Roman Catholic Diocese of Harrisburg*, No. 20-00599 (Bankr. M.D. Pa. Dec. 21, 2022) (Doc. No. 1471) at 22 ("No Class 4 Claimant [Known Survivor Claimant] shall receive any payment from the Trust unless and until such Class 4 Claimant has executed the Survivor Claimant Release attached as Exhibit D to the Plan. Each Class 4 Claimant must execute a release of Claims against the Settling Insurers as provided in Exhibit D to the Plan and must release all Claims against the Debtor, the Reorganized Debtor, and any other Protected Party."); *In re Roman Catholic Church of the Archdiocese of Santa Fe*, No. 18-13027 (Bankr. D.N.M. Nov. 03, 2022) (Doc. No. 1152) at 13 ("As part of the Plan settlement, each Tort Claimant's Distribution is conditioned upon the Tort Claimant delivering a General Release to Protected Parties…"); *In re Archbishop of Agana*, No. 19-00010 (Bankr. D. Guam Jul. 19, 2022) (Doc. No. 919) at 16 ("A Tort Claimant's Distribution is conditioned upon the Tort Claimant delivering a General Release to Protected Parties. The Ballots for the Tort Claimants contain the releases."); *In re Diocese of Duluth*, No. 15-50792 (Bankr. D. Minn. Aug. 16, 2019) (Doc. No. 392) at 9 ("In addition, Tort Claimants must sign a general release of the Protected Parties and Settling Insurer Entities as a prerequisite to receiving settlement amounts through the Plan and from the Trust."); *In re Diocese of New Ulm*, No. 17-30601 (Bankr. D. Minn. Dec. 18, 2019) (Doc. No. 339) at 16 ("Prior to any Survivor Claimant receiving a payment from the Trust, the Claimant shall sign the Release attached as Exhibit E to the Plan."); *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Bankr. D. Minn. Aug. 9, 2018) (Doc. No. 1224) at 36 ("No

Class 6 Claimant shall receive any payment on any award unless and until such Class 6 Claimant [Tort Claims Other Than Future Tort Claims] has executed a written release, attached as Exhibit E to this Plan."); *In re Roman Catholic Bishop of Great Falls, Montana*, No. 17-60271 (Bankr. D. Mont. May 30, 2018) (Doc. No. 377) at 9 ("In consideration for such contributions, the parishes, missions and programs within the Diocese and the St. Labre Indian School and its affiliated entities will be beneficiaries of the Channeling Injunction and Supplemental Injunction as part of the Plan of Reorganization, and will require tort claimants to sign a general release as a prerequisite to receiving settlement amounts through the Plan."); *In re Roman Catholic Church of the Diocese of Gallup*, No. 13-13676 (Bankr. D.N.M. May 16, 2016) (Doc. No. 568) at 35 ("Notwithstanding the foregoing, no Tort Claimant shall receive any payment from the Trust unless and until the Tort Claimant has executed a written release of any and all past, present, and future Claims against the Protected Parties, in the form provided for in the Ballot; provided, however, that nothing in Article 15 of the Plan shall require any Tort Claimant to release any Claims against any Co-Defendants except as expressly provided in the Plan.").

81.     The U.S. Trustee ignores all of these other approved plan provisions and does not address the applicable test under New York law. The contractual releases contemplated by the Plan are not, contrary to the U.S. Trustee's conclusory, undeveloped argument, the product of duress or coercion.    Under New York law, economic duress—which is extraordinarily difficult to demonstrate—"requires a showing of *both* [1] a wrongful threat and [2] the effect of precluding the exercise of free will." *U.S. v. Twenty MILJAM-350 IED Jammers*, 669 F.3d 78, 88 (2d Cir. 2011) (emphasis added).    The release here is neither wrongful, nor does it deprive the claimants of free will.

82.      Giving claimants different treatment based on whether they choose to settle or litigate is not a "wrongful threat."  *See In re Wash. Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (creditors who agree to settle instead of litigate can receive different treatment and rejecting U.S. Trustee's "object[ion] to the Plan's conditioning any distribution on whether the entity grants a third party release").  Under New York law, a threat is not wrongful if it is legally permissible, *U.S. v. Twenty MILJAM-350 IED Jammers*, 669 F.3d at 88-89, and numerous cases have approved of this treatment.  *See supra* at ¶ 80 and *infra* at ¶ 87.  As set out above, many courts have ruled that it *is* permissible to condition a distribution on executing a release.

83.      For this reason alone, the Objection should be overruled.  But the Plan also does not deprive claimants of free will, which is an independent ground to overrule the Objection.  Economic duress is not available where the party has another option (even a bad one). *U.S. v. Twenty MILJAM-350 IED Jammers*, 669 F.3d at 89.   Specifically, under New York law, a party is not under economic duress if they have recourse to a court.  Here, each claimant has been given notice and the opportunity to object to the Plan.  *See* Order Approving Disclosure Statement (Doc. No. 3376).  None have done so, despite the terms of this condition being plainly disclosed in the approved Disclosure Statement. Disclosure Statement, at 2.

84.      In addition to being able to object, claimants also had the opportunity to vote on the Plan, and almost 99% of claimants voted to accept, with a very strong voter turnout.  Tabulation Declaration, Ex. A.  Claimants are also overwhelmingly represented by counsel, who were actively involved in the chapter 11 case and, indeed, in negotiating the overall resolution here.  Even for the relatively few *pro se* claimants, the Committee stands as their Court-appointed fiduciary, which offers an additional protection for claimants not present in the non-bankruptcy cases cited in the Objection.  The circumstances presented here do not come close to constituting duress or coercion

under New York or any other applicable law.  *See*, *e.g.*, *Regent Partners, Inc. v. Parr Dev. Co.*, 960 F. Supp. 607, 612 (E.D.N.Y. 1997) ("the party seeking to make out a defense of duress had access to 'competent and knowledgeable counsel' at the time it entered into the disputed contract makes it still more difficult to 'demonstrate the element of compulsion necessary to a finding of duress.'"), *aff'd*, 131 F.3d 131 (2d Cir. 1997).

85.    The Objection does not address either of the two requisite prongs to make out the extraordinarily difficult showing to establish economic duress as a ground for invalidating a release.  Instead, the U.S. Trustee invokes inapposite case law.  For example, the Objection cites *U.S. v. Como*, 340 F.2d 891 (2d. Cir. 1965), a 1965 case addressing consent to an unconstitutional search and seizure of one's person in the context of narcotics possession.  Obj. at 21.  Next, it relies on *In re Commissioner of Social Services*, 141 A.D.2d 821 (2d Dep't 1988), where the court determined that a mother voluntarily consented to an adoption and rejected her attempts to vacate the consent, notwithstanding the existence of "emotion, tensions and pressures."  Obj. at 21.  If anything, the case shows the extreme respect that New York law has for signed instruments.  The Objection also cites *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1224 (9th Cir. 2022), which interprets Washington law (not New York) on when the acceptance of a service can constitute acceptance of an offer in the absence of a signed agreement; the facts of the case involved the issuance of a prepaid debit card to an inmate and whether the use of the card constituted acceptance. Obj. at 21.  Neither the facts of these cases, nor the legal principles discussed in them, have anything to do with the circumstances presented here.

86.    Similarly, the Objection cites *Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124 (1971) and *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626 (2d Cir. 1972), which do not have to do with chapter 11 bankruptcies or releases, but are instead economic duress cases

interpreting New York law.  Obj. at 21.  *Austin* involved a single-source supplier of military goods refusing, without basis, to deliver such goods in an emergency situation, and *First Nat'l* involved a situation where a self-dealing lawyer withheld, without legal justification, documents on the date of closing necessary to consummate a time-sensitive sale of the company.  These cases are legally and factually inapposite and do not support the Objection.

87.    Lastly, the U.S. Trustee, in a single paragraph and without citation to any authority, suggests that the contractual release violates 11 U.S.C. § 1129(a)(7).  This argument lacks merit.  *See Nat'l Union Fire Ins. v. BSA (In re BSA)*, 650 B.R. 87, 160 (D. Del. 2023) (holding "the condition requiring a release in order to receive a distribution does not violate the best interest of creditors test.") (*quoting In re Wash. Mut., Inc.*, 461 B.R. 200, 251 (Bankr. D. Del. 2011), *unrelated parts vacated*, 2012 Bankr. LEXIS 895, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012)).

**B.    The Plan's Injunction Provisions Are Necessary And Appropriately Tailored.**

88.    The U.S. Trustee objects to provisions in the Plan that could be construed to go beyond the Court's jurisdiction and enjoin or release certain direct claims against the Settling Insurers, notwithstanding a claimant's refusal to sign a release.  Obj. at 22-26.  The U.S. Trustee's concerns are not well-founded.

89.    The Court-approved Disclosure Statement provides:  "Nothing in the Settling Insurer Supplemental Injunction and Channeling Injunction shall enjoin a Claim, if any, of an Abuse Claimant against an Insurer Party that is outside the jurisdiction of the Bankruptcy Court."  Disclosure Statement, at 2.  Likewise, as the Objection notes, counsel for the Debtor acknowledged the limitations on such injunctions at the sale hearing.  Obj. at 23.

90.    To further address the U.S. Trustee's concerns, however, the Debtor has added language to the Plan:

6.    *Limitation on Injunctions*

Nothing in the Settling Insurer Supplemental Injunction or Channeling Injunction shall enjoin a Claim, if any, of an Abuse Claimant against any of the Insurer Parties (as defined in the Sale Order) to the extent that such Claim (if any) is a direct claim by an Abuse Claimant that is premised on an independent legal duty owed to such Abuse Claimant by an Insurer Party and outside the jurisdiction of the Bankruptcy Court.  While the Settling Insurer Supplemental Injunction and Channeling Injunction do not enjoin or release such direct claims (if any), (a) the contractual release, which is set forth in the Plan Supplement and provided for in Section 4.3(d) of the Trust Agreement, includes such direct claims, and (b) the Indemnified Claims that are the subject of Article V.CC include such direct claims.

Plan, Art. XI.G.6.

**C.    The Plan's Exculpation Provision Have Already Been Revised**

91.    The U.S. Trustee objects to the Plan's exculpation provision, but this seems to be a mistake.  The Objection quotes the exculpation provision from an earlier version of the Plan.  In response to the U.S. Trustee's disclosure statement objection, the Debtor previously amended this provision to address the precise arguments raised by the U.S. Trustee here.  *See Notice of Filing of Modified Plan and Disclosure Statement* (Doc. No. 3341), at ECF Page 109 and 180 of 419.

**III.    CAUSE EXISTS TO WAIVE STAY OF CONFIRMATION ORDER**

92.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).  The Advisory Committee Notes to Bankruptcy Rule 3020(e) state that "the court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately."  Fed. R. Bankr. P. 3020(e), Advisory Committee's Note to 1999 amendment.

**93.**    Under the circumstances, it is appropriate for the Court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and permit the Debtor and Additional Debtors to consummate the Plan and commence its implementation as soon as possible following entry of

the Confirmation Order.  The Debtor's and Additional Debtors' prompt emergence from chapter 11 will alleviate uncertainty regarding the Debtor's and Additional Debtors' ability to continue their religious and charitable missions post-confirmation.  Without relief from the fourteen-day stay of the confirmation order, the Debtor and Additional Debtors will also incur additional administrative and professional costs.  The Debtor, the Additional Debtors, advisors, and other key constituents will expedite the Debtor's and Additional Debtors' entry into and consummation of the documents and transactions necessary to effectuate the Plan so that the Effective Date and funding of the Trust may occur as soon as possible after the entry of the Confirmation Order. Therefore, the requested waiver of the fourteen (14)-day stay is in the best interests of the Debtor's and Additional Debtors, their estates and creditors and will not prejudice any parties in interest.

**<u>CONCLUSION</u>**

WHEREFORE, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code, and the Debtor and Additional Debtors respectfully request that this Court enter the Confirmation Order, overrule the U.S. Trustee's Objection, and confirm the Plan.

New York, New York
Dated:  December 1, 2024

*/s/ Corinne Ball*
_____

Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email:  cball@jonesday.com
          trgeremia@jonesday.com
          brosenblum@jonesday.com
          abutler@jonesday.com

*Counsel to the Debtor and Debtor in Possession*

-    *and -*

William C. Heuer
WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 622-9200
Facsimile: (516) 622-9212
E-mail:   wheuer@westermanllp.com

*Counsel to the Additional Debtors*