JONES DAY
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
250 Vesey Street
New York, New York  10281
Telephone:    (212) 326-3939
Facsimile:    (212) 755-7306

*Counsel for the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,[1] | Case No. 20-12345 (MG) |
| Debtor. | |

**NOTICE OF FILING OF REVISED PLAN SUPPLEMENT**
**EXHIBITS IN CONNECTION WITH THE CHAPTER 11**
**PLAN OF REORGANIZATION PROPOSED BY THE ROMAN CATHOLIC**
**DIOCESE OF ROCKVILLE CENTRE, NEW YORK AND ADDITIONAL DEBTORS**

**PLEASE TAKE NOTICE** that on **October 7, 2024,** the above-captioned debtor and debtor-in-possession (the "Debtor") filed its *Chapter 11 Plan of Reorganization Proposed by The Roman Catholic Diocese of Rockville Centre, New York and Additional Debtors* [Docket No. 3292] (as it may be amended from time to time, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that in connection with the Plan, the Debtor previously filed Plan Supplement Exhibits, including the Trust Agreement [Docket No. 3362], Trust Allocation Protocol [Docket No. 3361] and Form of Release [Docket No. 3361].

**PLEASE TAKE FURTHER NOTICE** that the Debtor hereby files this Notice of Filing of Revised Plan Supplement Exhibits, attaching a revised version of the Trust Agreement as **Exhibit A** with a redline against the previously filed version as **Exhibit B**.

---

[1]    The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit C** is a revised version of the Trust Allocation Protocol, with a redline against the previously filed version as **Exhibit D**.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit E** is a revised version of the Form of Release, with a redline against the previously filed version as **Exhibit F**.

**PLEASE TAKE FURTHER NOTICE** that the Debtor reserves its rights to further supplement, amend, or modify the exhibits attached hereto at any time.

**PLEASE TAKE FURTHER NOTICE** that if the Plan is confirmed by the Bankruptcy Court, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that this Notice is being sent to you for informational purposes only. If you have questions with respect to your rights under the Plan or about anything stated herein or if you would like to obtain additional information, please contact Epiq Corporate Restructuring, LLC (the "Solicitation Agent") by either (i) visiting the Document Website at https://dm.epiq11.com/drvc or (ii) calling (888) 490-0633. Please note that the Solicitation Agent may not provide legal advice. If you need legal advice, please consult with your attorney.

Dated: December 4, 2024
      New York, New York

Respectfully submitted,

*/s/ Corinne Ball*
Corinne Ball
Todd Geremia
Benjamin Rosenblum
Andrew Butler
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Email:  cball@jonesday.com
      trgeremia@jonesday.com
      brosenblum@jonesday.com
      abutler@jonesday.com

*Counsel for the Debtor*
*and Debtor in Possession*

## **EXHIBIT A**

Trust Agreement

**TRUST AGREEMENT**

**DATED AS OF _____, 2024**

**PURSUANT TO CHAPTER 11 PLAN OF**

**REORGANIZATION FOR**

**THE DIOCESE OF ROCKVILLE CENTRE**

## Table of Contents

**ARTICLE 1. AGREEMENT OF TRUST** ................................................................. **2**

**Section 1.1**    **Creation and Name.** ..................................................................**2**

**Section 1.2**    **Purposes.** ..................................................................**2**

**Section 1.3**    **Transfer of Assets.** ..................................................................**2**

**Section 1.4**    **Acceptance of Assets.** ..................................................................**3**

**Section 1.5**    **Receipt of Proceeds.** ..................................................................**3**

**Section 1.6**    **Beneficiaries.** ..................................................................**4**

**Section 1.7**    **Privileged and Confidential Information.** ..................................................................**4**

**Section 1.8**    **Relation-back election.** ..................................................................**4**

**Section 1.9**    **Employer identification number.** ..................................................................**4**

**Section 1.10**    **Relationship to Plan.** ..................................................................**4**

**ARTICLE 2. POWERS AND TRUST ADMINISTRATION** ................................................................. **5**

**Section 2.1**    **Powers.** ..................................................................**5**

**Section 2.2**    **Limitations on the Trustee.** ..................................................................**8**

**Section 2.3**    **G** ..................................................................**9**

**eneral Administration.** ..................................................................**9**

**Section 2.4**    **Accounting.** ..................................................................**9**

**Section 2.5**    **Financial Reporting.** ..................................................................**9**

**Section 2.6**    **Names and addresses.** ..................................................................**10**

**Section 2.7**    **Transfers of the Trust Assets.** ..................................................................**10**

**ARTICLE 3. ACCOUNTS, INVESTMENTS, EXPENSES** ................................................................. **10**

**Section 3.1**    **Accounts.** ..................................................................**10**

**Section 3.2**    **Investment Guidelines.** ..................................................................**10**

**Section 3.3**    **Payment of Trust Operating Expenses.** ..................................................................**11**

i

**ARTICLE 4. CLAIMS ADMINISTRATION AND DISTRIBUTIONS** ................................ 11

**Section 4.1**    Claims Administration and Distributions ....................................................... 11

**Section 4.2**    Manner of Payment. ................................................................................... 12

**Section 4.3**    Delivery of Distributions. ........................................................................... 12

**Section 4.4**    Medicare Reimbursement and Reporting Obligations. ................................. 14

**ARTICLE 5. TRUSTEE** ......................................................................................... 14

**Section 5.1**    Initial Trustee. .......................................................................................... 14

**Section 5.2**    Term of Service, Successor Trustee. ............................................................ 14

**Section 5.3**    Appointment of Successor Trustee. .............................................................. 15

**Section 5.4**    Trustee and TAC Meetings. ....................................................................... 15

**Section 5.5**    Compensation and Expenses of Trustee. ..................................................... 17

**Section 5.6**    Trustee's Independence. ............................................................................. 18

**Section 5.7**    Standard of Care; Exculpation. .................................................................. 18

**Section 5.8**    Protective Provisions. ................................................................................ 19

**Section 5.9**    Indemnification. ....................................................................................... 20

**Section 5.10**    Bond. ..................................................................................................... 20

**ARTICLE 6.** ......................................................................................................... 21

**GENERAL PROVISIONS** ...................................................................................... 21

**Section 6.1**    Irrevocability. .......................................................................................... 21

**Section 6.2**    Term; Termination. ................................................................................... 21

**Section 6.3**    Outgoing Trustee Obligations. ................................................................... 22

**Section 6.4**    Taxes. ...................................................................................................... 22

**Section 6.5**    Modification. ............................................................................................ 23

**Section 6.6**    Severability. ............................................................................................. 24

**Section 6.7**    Notices. .................................................................................................... 24

**Section 6.8**    Successors and Assigns. ............................................................................. 25

Section 6.9     Limitation on Transferability; Beneficiaries' Interests. ........................................26

Section 6.10     Exemption from Registration. .........................................................................26

Section 6.11     Entire Agreement; No Waiver. ........................................................................26

Section 6.12     Headings. .......................................................................................................27

Section 6.13     Governing Law. ..............................................................................................27

Section 6.14     Settlors' Representative. .................................................................................27

Section 6.15     Independent Legal and Tax Counsel. ..............................................................27

Section 6.16     Waiver of Jury Trial. ......................................................................................27

Section 6.17     Jurisdiction. ...................................................................................................27

Section 6.18     Effectiveness. .................................................................................................28

Section 6.19     Counterpart Signatures. .................................................................................28

**EXHIBIT 1  TRUST ALLOCATION PROTOCOL** ...................................................... 1

**EXHIBIT 2 GENERAL CONTRACTUAL RELEASE FORM** ............................................ 1

**EXHIBIT 3  TRUSTEE INITIAL HOURLY RATES** .............................................................. 1

## TRUST AGREEMENT

This Trust Agreement (this "**Trust Agreement**"), dated as of _____, 2024 is entered into in accordance with the *Chapter 11 Plan of Reorganization Dated _____, 2024* (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by The Roman Catholic Diocese of Rockville Centre, New York (the "**Debtor**") and the Additional Debtors (together with the Debtor, the "**Settlors**," in their capacity as settlors of the Trust, on the one hand, and Alan D. Halperin as trustee (together with any successor serving in such capacity, the "**Trustee**") and the Trust Advisory Committee, who are the individuals identified in Section 5.4(e) (together with any successors serving in such capacity, the "**TAC**"), on the other hand;

## RECITALS

(A)    The Debtor will reorganize under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, administered and known as *In re The Roman Catholic Diocese of Rockville Centre, New York,* Case No. 20-12345-MG (Bankr. S.D.N.Y. (the "**Chapter 11 Case**").

(B)    The Additional Debtors will reorganize under the provisions of chapter 11 of the Bankruptcy Code in cases jointly administered with the Chapter 11 Case.  The Debtor's and the Additional Debtors' cases are collectively referred to as the Chapter 11 Case, unless the context requires otherwise.

(C)    The Plan and the Confirmation Order in the Chapter 11 Case provide, among other things, for the creation of the Trust.

(D)    This Trust Agreement has been approved by the Bankruptcy Court to implement the Plan and confirm the creation of the Trust (the "**Trust**") for the exclusive benefit of the holders of Abuse Claims.

(E)    The Bankruptcy Court has or will determine in the Confirmation Order that, subject to the occurrence of the Effective Date, all the prerequisites for the Channeling Injunction have been satisfied and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the Channeled Claims.

(F)    The "**Trust Assets**" are, collectively, (a) $176.8 million, which includes, without limitation, the Ecclesia Contribution, the DOE Contribution, the CemCo Effective Date Cash Contribution, the proceeds of the Exit Financing, and the proceeds of the CemCo Loan, (b) subject to the terms and conditions of Article V.Y of the Plan, the Charities Contribution, (c) the Seminary Contribution, (d) the CemCo Deferred Cash Contribution, (e) subject to Article IV.W of the Plan, the Additional Debtors Deferred Contribution, (f) the Insurance Settlement Amount

---

[1]    All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable, or, if not defined therein, as set forth in the Trust Allocation Protocol (as defined in Section 1.2).  References to "Section" refer to Sections of this Trust Agreement unless otherwise stated.

1

(which, for the avoidance of doubt excludes the Ecclesia Contribution) (collectively, (a) through (f), the "**Aggregate Settlement Consideration**," (g) the PSZJ Trust Contribution, (h) the Insurance Rights that are the subject of the Non-Settling Insurance Rights Transfer, and (i) any income or gain earned and proceeds derived, including proceeds of any recoveries from any litigation or claims of the Trust derived from any and all of the foregoing (a) through (h). Any payments made by the Debtor to the Abuse Claims Reviewer prior to the Effective Date shall be deducted from the Trust Assets.

(G)     The Plan and Confirmation Order provide or will provide that, on the Effective Date and continuing thereafter until fully funded by the Debtor and Additional Debtors in accordance with the Plan, the Aggregate Settlement Consideration (as defined in Section 1.3) and all of the Trust Assets shall be transferred to and vested in the Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor, the Additional Debtors, any creditor of the Debtor or the Additional Debtors or any other person or entity that may assert a claim against the Debtor or the Additional Debtors, other than as provided in the Plan, the Channeling Injunction with respect to the Channeled Claims or as provided in the Insurance Settlement Agreements with respect to the Channeled Claims and Barred Claims and as provided in Section 1.3.

NOW, THEREFORE, it is hereby agreed as follows:

## ARTICLE 1.
## AGREEMENT OF TRUST

Section 1.1     *Creation and Name.* The Debtor and Additional Debtors as Settlors hereby create a trust known as the "**DRVC Abuse Claim Trust**" which is the Trust provided for and referred to in the Plan. The Trustee may transact the business and affairs of the Trust in the name of the DRVC Abuse Claim Trust and references herein to the Trust shall include the Trustee acting on behalf of the Trust. The Confirmation Order, the Plan and this Trust Agreement, including the Exhibits hereto, including the Trust Allocation Protocol as defined in Section 1.2, (collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust. The Trustee is hereby authorized to execute and file a Certificate of Trust with the New York Secretary of State.

Section 1.2     *Purposes.* The purposes of the Trust are to (i) implement the treatment of the Channeled Claims; (ii) administer the Abuse Claims; and (iii) make Distributions to holders of Abuse Claims, in accordance with the Trust Allocation Protocol attached hereto as **Exhibit 1** (the "**Trust Allocation Protocol**"). In connection therewith, the Trust shall hold, manage, protect and monetize the Trust Assets in accordance with the terms of the Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a)). All Abuse Claims shall be resolved exclusively in accordance with the Trust Allocation Protocol.

Section 1.3     *Transfer of Assets.* Pursuant to the Plan, the Debtor, the Additional Debtors, the Settling Insurers and all other persons and entities obligated to make payments or transfers to the Trust shall transfer the Trust Assets to the Trust in accordance with the Plan, and in connection therewith shall (i) pay all funds to the Trust by wire transfer, unless otherwise set forth in the Insurance Settlement Agreements, or agreed in writing by the Trustee, and (ii) promptly effectuate

the transfers of non-cash assets to the Trust as required by the Plan. The Trust will receive and hold all right, title and interest in and to the funds transferred, the Aggregate Settlement Consideration, and the other Trust Assets. The Trust Assets shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, the Additional Debtors or their affiliates, any creditor of the Debtor or the Additional Debtors, or any other person or entity that may assert a claim against the Debtor or the Additional Debtors, other than as provided in the Plan, the Channeling Injunction with respect to the Channeled Claims or as provided in the Insurance Settlement Agreements with respect to Channeled Claims and Barred Claims. The Debtor or Reorganized Debtor shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign any assets comprising all or a portion of the Trust Assets to the Trust. On the Effective Date, Pachulski Stang Ziehl & Jones LLP shall also transfer its contribution of 10% of its Chapter 11 Case fees to the Trust (the "**PSZJ Contribution**").

Section 1.4    _Acceptance of Assets._   In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly accepts the transfer to the Trust of the Aggregate Settlement Consideration and other Trust Assets, subject to the terms of the Trust Documents and the Plan Documents. The Trust shall succeed, as applicable, to all of the Debtor and the Additional Debtors' respective rights, title, and interest, including all legal privileges, in the Trust Assets and neither the Debtor, the Additional Debtors, the Settling Insurers, nor any other person or entity transferring such Aggregate Settlement Consideration and other Trust Assets will, except as otherwise expressly provided herein or in the Plan, have any further equitable or legal interest in, or with respect to, the Trust Assets or the Trust.

(b)    Except as otherwise provided in the Plan, Confirmation Order or Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Channeled Claims that the Debtor, Reorganized Debtor, Additional Debtors, the Reorganized Additional Debtors, or the Co-Insured Parties have or would have had under applicable law.

(c)    No provision herein or in the Trust Allocation Protocol shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations (as defined in Section 8.4(a) below).

(d)    Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the terms of the Plan or Confirmation Order.

(e)    In this Trust Agreement and the Trust Allocation Protocol, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

Section 1.5    _Receipt of Proceeds._

The proceeds of any recoveries from any litigation or claims of the Trust will be deposited in the Trust's accounts and become the property of the Trust.

Section 1.6    *Beneficiaries.*

(a)    The Trust is established for the benefit of the holders of Abuse Claims (known as of this date and as any become known in the future) (the "**Beneficiaries**").

(b)    The Beneficiaries shall be subject to the terms of this Trust Agreement and Trust Documents, including without limitation, the Trust Allocation Protocol.

Section 1.7    *Privileged and Confidential Information.*

The transfer or assignment of any information subject to an attorney-client or similar privilege to the Trust or the Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto.  Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Trustee to perform his or her duties to administer the Trust and collect the Trust Assets and (b) they are vested solely in the Trustee and the TAC, not in the Trust, or any other person, committee or subcomponent of the Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled Claim.

Section 1.8    *Relation-back election.*

Upon request of the Trustee, the Settlors shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

Section 1.9    *Employer identification number.*

Upon the establishment of the Trust or as otherwise authorized by the Bankruptcy Court, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

Section 1.10    *Relationship to Plan.*

The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the Trust Allocation Protocol, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; (3) this Trust Agreement; and (4) the Trust Allocation Protocol.

# ARTICLE 2.
# POWERS AND TRUST ADMINISTRATION

Section 2.1    *Powers.*

(a)    The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which is inconsistent with the foregoing.

(b)    The Trustee is and shall act as the fiduciary to the Trust Assets in accordance with the provisions of the Trust Documents. The Trustee shall administer the Trust, and the Trust Assets in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Plan and the Trust Documents. Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take any and all actions that in the judgment of the Trustee are necessary or advisable to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of New York. Nothing in the Trust Documents or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law. In addition to all powers enumerated in the Trust Documents, from and after the Effective Date, the Trust shall succeed to all of the rights and standing of the Debtor, Additional Debtors, or the Co-Insured Parties with respect to the Trust Assets in the Trust's capacity as a trust administering assets for the benefit of the Beneficiaries.

(c)    Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of the Bankruptcy Court or any other court in the exercise of any power or discretion conferred hereunder.

(d)    Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Trust Documents and by applicable law, the Trustee shall have the power to:

(i)    supervise and administer the Trust in accordance with the Trust Documents, including the Trust Allocation Protocol;

(ii)    receive and hold the Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Trust Assets;

(iii)    invest the monies held from time to time by the Trust in accordance with Section 3.2;

(iv)    sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper and consistent with the other terms of the Trust Documents;

5

(v)    enter into leasing, financing or other agreements with third parties, as determined by the Trustee, in his or her discretion, to be useful in carrying out the purposes of the Trust;

(vi)    determine and pay liabilities and pay all fees and expenses incurred in administering the Trust, managing the Trust Assets and making Distributions in accordance with the Trust Documents (the "**Trust Operating Expenses**");

(vii)    establish accounts and reasonable reserves within the Trust, in her/his discretion, to be necessary, prudent or useful in administering the Trust;

(viii)    sue and participate as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding relating to the Trust Assets, this Trust Agreement, or the Plan, however nothing herein shall be deemed to allow any party asserting an Abuse Claim and/or Channeled Claim to commence any action against the Trustee or the Trust with respect to such claim;

(ix)    appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires, which may be those formerly retained by the Committee or by the Future Claims Representative, and delegate to such persons such powers and authorities as this Trust Agreement provides or the fiduciary duties of the Trustee permits and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(x)    pay reasonable compensation and reimbursement of expenses to any of the Trust's consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and any other activities as the Trust requires;

(xi)    compensate the TAC members for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, it being understood that the legal fees and expenses of a TAC member shall not be compensable pursuant to this subsection (xi);[2]

(xii)    compensate the Trustee and the Trust's professionals for services, costs and expenses incurred prior to the Effective Date in accordance with the terms of the Trust Documents;

(xiii)    execute and deliver such instruments as the Trustee considers advisable or necessary in administering the Trust;

---

[2] For avoidance of doubt, legal fees and expenses of TAC members may be compensable pursuant to the indemnification provisions of this Agreement, as specifically set forth therein.

6

(xiv)    timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xv)    require, in respect of any Distribution of Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xvi)    resolve all applicable lien resolution matters with respect to Beneficiaries that may be subject to liens arising pursuant to the MMSEA (as defined below) in accordance with the Plan; provided, however, that for claims that are property of an open chapter 7 bankruptcy case, such lien resolution is subject to the approval of the chapter 7 bankruptcy trustee and applicable bankruptcy court; and provided further, however, that in such cases, the chapter 7 bankruptcy trustee shall have sole responsibility to seek court approval for such lien resolution;

(xvii)    register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") as required under Section 4.4 below and the terms of the Plan;

(xviii)    enter into such other arrangements with third parties as are deemed by the Trustee to be useful or advisable in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of the Trust Documents;

(xix)    in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the Trust Assets and to the fullest extent permitted by law;

(xx)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable investment advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xxi)    delegate any or all of the authority conferred with respect to the protection, preservation, and monetization of the non-cash Trust Assets;

(xxii)    initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust, including, without limitation, to recover, on behalf of the Trust, any part or the entirety of a Deferred Contribution from any Additional Debtor or other Entity that is liable for such;

(xxiii)    enter into structured settlements and other similar arrangements with any Beneficiary (including a minor or other person in need of special consideration) or any attorney of any Beneficiary, upon such terms as the Trustee and such Beneficiary (or such Beneficiary's

7

counsel or other authorized person) agree, in all cases in accordance with the Trust Allocation Protocol;

(xxiv)  take any and all actions appropriate or necessary in order to carry out the terms of the Trust Documents;

(xxv)   taken any actions or make any payments as required under the Plan, including, but not limited to, the payment of compensation, pursuant to an order of the Bankruptcy Court allowing such compensation, to the Committee's Professionals, the FCR and the FCR's Professionals as provided in the Plan;

(xxvi)  take any actions or make any payments required under the Insurance Settlement Agreements (as defined in the Plan), including without limitation the payment of Indemnified Claims (as defined in the Insurance Settlement Agreements); and

(xxvii) except as otherwise expressly provided in the Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of New York.

(e)     The Trustee shall have the power to (i) authorize Non-Settling Insurer Abuse Claimants to pursue their Claims in any court of competent jurisdiction, under the Plan, only to determine any liability that the Debtor and/or any Additional Debtor may have regarding an Abuse Claim and the amount of that liability, and (ii) enter into any settlement that causes an Insurer to become a Settling Insurer (an "**Insurance Settlement**"), provided however, the powers set forth in this Section 2.1(e) shall in each case be subject to the provisions of the Trust Documents.

(f)     The Trustee, in his or her sole discretion, may take all actions necessary or advisable for the enforcement of the non-monetary commitments of the Debtor and Additional Debtors with respect to Child Protection as set forth in the Plan and Confirmation Order.

(g)     The Trustee shall consult with the TAC on the matters as set forth in in the Trust Documents.

Section 2.2    _Limitations on the Trustee._

(a)     Notwithstanding anything in the Trust Documents to the contrary, the Trustee shall not:

(i)      assume or guaranty any debt for borrowed money or pledge any of the Trust Assets to secure any debt;

(ii)     make or enter into any loan of Trust Assets;

(iii)    make any transfer or Distribution of Trust Assets other than those authorized by the Trust Documents;

8

(iv)    engage in any trade or business with respect to the Trust Assets or proceeds therefrom, other than managing such assets;

(v)    engage in any investment of the Trust Assets, other than as explicitly authorized by this Trust Agreement;

(vi)    undertake any action inconsistent with the terms of the Insurance Settlement Agreements; or

(vii)    engage in any activities inconsistent with the treatment of the Trust as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1.

(b)    _Insurance Settlements_.

The Trustee may effectuate proposed Insurance Settlements upon ten (10) days' notice to the TAC but without Bankruptcy Court approval.  Notwithstanding the foregoing, if a TAC member dissents from approval of the proposed Insurance Settlement and, within said ten (10) day notice period makes a written demand on the Trustee to seek Bankruptcy Court approval of the proposed settlement, such settlement shall be conditioned on the Bankruptcy Court finding that the proposed settlement is in the best interest of the Trust.

Section 2.3    _General Administration._

The Trustee shall act in accordance with the Trust Documents.

Section 2.4    _Accounting._

The fiscal year of the Trust shall begin on January 1 and shall end on December 31 of each calendar year, except that the first fiscal year shall run from the Effective Date to December 31. The Trustee shall maintain the books and records of the Trust.  The detail of these books and records and the duration of time during which the Trustee shall keep such books and records shall be such as to allow the Trustee to make a full and accurate accounting of all Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Trust, including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided however, that the Trustee shall maintain such books and records until the wind-up of the Trust's affairs and dissolution of the Trust.

Section 2.5    _Financial Reporting._

(a)    Within one hundred twenty (120) days following the end of each calendar year, the Trustee shall file the Annual Report with the Bankruptcy Court.

(b)    All materials filed with the Bankruptcy Court pursuant to this Section 2.5 need not be served on any parties in the Chapter 11 Case, except as set forth herein.

Section 2.6     *Names and addresses.*

The Trustee shall keep a register (the "**Register**") in which the Trustee shall always maintain the names and addresses of the Beneficiaries and the Distributions made to the Beneficiaries pursuant to the Trust Documents.  The Trustee may rely upon the Register for the purposes of delivering Distributions or notices.  In preparing and maintaining the Register, the Trustee may rely on the name and address of each Abuse Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Abuse Claim holder to the Trustee.  The Trustee may deliver Distributions and notices to counsel for any Abuse Claimant identified in such Abuse Claimant's proof of claim or proper notice of a name or address change.

Section 2.7     *Transfers of the Trust Assets.*

To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered, except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.  Notwithstanding the foregoing, to the extent an Beneficiary is the subject of a pending Chapter 7 case, distribution(s) are subject to the rights of the Chapter 7 Trustee.

# ARTICLE 3.
## ACCOUNTS, INVESTMENTS, EXPENSES

Section 3.1     *Accounts.*

(a)     The Trustee shall maintain one or more accounts ("**Trust Accounts**") on behalf of the Trust, including at the Trustee's discretion a disputed claims trust reserve, with one or more financial depository institutions (each a "**Financial Institution**").

(b)     The Trustee may replace any Financial Institution with a successor Financial Institution at any time.

(c)     The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts, including a disputed claim trust reserve, as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for Distributions to the Beneficiaries and the payment of Trust Operating Expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and may be considered to be a "disputed ownership fund" within the meaning of the Internal Revenue Code ("**IRC**") or Treasury Regulations.

Section 3.2     *Investment Guidelines.*

The Trustee may invest the Trust Assets and monetize such non-liquid assets in accordance with the Trust Documents.  This Section 3.2(b) is intended to modify the application to the Trust

of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

Section 3.3    *Payment of Trust Operating Expenses.*

All Trust operating expenses shall be payable out of the Trust Assets and the Trustee may periodically reserve such amounts as he or she deems advisable and/or appropriate for payment of such expenses. None of the Trustee, the TAC, the Beneficiaries nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any Trust operating expense or any other liability of the Trust.

## ARTICLE 4.
## CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1    *Claims Administration and Distributions.*

The Trust shall compensate and make Distributions to Abuse Claims in accordance with the Trust Documents, including the Trust Allocation Protocol. In order to be eligible for distribution, the following conditions (in additional to any others set forth in the Trust Allocation Protocol, the Plan and/or the Confirmation Order) must be satisfied with respect to the Beneficiary and the Abuse Claim:

    a) The validity and point allocation of the Abuse Claim must be determined by the Abuse Claim Reviewer;

    b) The Beneficiary must provide the Trust with all information requested by the Trust for queries and (if applicable) reporting to Medicare;

    c) The Beneficiary must provide the Trust with a completed and executed lien certification;

    d) Any unsatisfied lien that the Trust receives actual notice of must be paid or otherwise resolved;

    e) The Beneficiary must provide the Trustee with a completed and executed general contractual release of the Debtors and Additional Debtors, in the form attached to as **Exhibit 2,** and the Beneficiary may elect to provide the general contractual release of the Settling Insurers in the form attached as **Exhibit 2**;

    f) The Beneficiary shall also inform the Trustee in the certification referenced in subsection c) above whether the Beneficiary is the debtor in a pending Chapter 7 bankruptcy case, and to the extent a Beneficiary discloses that he/she is the subject of a pending Chapter 7 case, whether distribution(s) to the Beneficiary rather than the Chapter 7 Trustee have been consented to by the Chapter 7 Trustee; and

11

g) The Beneficiary must provide the Trust with such tax documents, including but not limited to a completed IRS form W-9, as the Trustee may request in writing.

Section 4.2    *Manner of Payment.*

Distributions from the Trust to the Beneficiaries may be made by the Trustee on behalf of the Trust or, in the Trustee's discretion, by a disbursing agent retained by the Trust to make Distributions on behalf of the Trust. Payments to a Beneficiary shall be made to counsel of record for such Beneficiary, who will then be solely responsible for forwarding such funds to the Beneficiary in accordance with any agreement between such Beneficiary and his/her counsel of record. If a Beneficiary does not have counsel of record, then distributions shall be made directly to the Beneficiary. For avoidance of doubt, if a Chapter 7 case is pending as to a Beneficiary, the Distribution shall be made to the Chapter 7 Trustee unless the Trustee is otherwise directed in writing by the Beneficiary and the Chapter 7 Trustee.

Section 4.3    *Delivery of Distributions.*

(a)    Distributions shall be payable to the Beneficiary (or to counsel for the Beneficiary) on the date approved for Distribution by the Trustee (the "**Distribution Date**") in accordance with the terms of the Trust Documents, including the Trust Allocation Protocol. With respect to each Abuse Claim approved for payment, Distributions shall be made only after all conditions to the Distribution with respect to each such Abuse Claim have been satisfied. In the event that any Distribution to a Beneficiary is returned as undeliverable, no further Distribution to such Beneficiary shall be made unless and until the Trustee has been notified of the then current address of such Beneficiary, at which time such Distribution shall be made to such Beneficiary without interest; provided however, that all Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of twelve (12) months from the applicable Distribution Date. After such date, (i) all unclaimed Distributions shall revert to the Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), (ii) the Abuse Claim of such Beneficiary shall be deemed released, settled, compromised and forever barred as against the Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the Trust Documents, as if the Abuse Claim of such Beneficiary had been disallowed as of the date the undeliverable Distribution was first made. The Trustee shall take reasonable efforts to obtain a current address for any Beneficiary with respect to which any Distribution is returned as undeliverable.

(b)    If the Trust holds cash insufficient for making a Distribution to Beneficiaries at the time of its dissolution, after paying all Trust Operating Expenses and making all Distributions contemplated under the Trust Documents, such remaining cash shall be distributed to a national recognized charitable organization of the Trustee's choice to the extent economically feasible, which charitable organization shall be independent of the Trustee and, to the extent possible, shall have a charitable purpose consistent with the protection of children from sexual abuse or its ramifications. No Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

12

(c)    Notwithstanding any provision in the Trust Documents to the contrary, no payment shall be made to any Beneficiary on account of any Abuse Claim if the Trustee determines that the cost of making such Distribution is greater than the amount of the Distribution to be made, and the Trustee shall have no obligation to make a Distribution to a Beneficiary if the amount of that Distribution is less than $100.

(d)    (i) To receive a monetary distribution from the Trust, a Beneficiary must execute the general contractual release in the form set forth in Exhibit 2. If a Beneficiary elects to grant the general contractual release of the Settling Insurers also set forth in Exhibit 2, such Beneficiary will be entitled to a reward equal to such Beneficiary's pro rata share of the Settling Insurer Sub-Fund at such time as those funds are available for Distribution to Abuse Claimants. Upon the written request of the Reorganized Debtor, Reorganized Additional Debtors, or a Settling Insurer, the Trustee shall provide such party copies of the general contractual releases executed by the Beneficiaries. To facilitate this Section 4.3(d)(i), all Insurance Settlement Amounts shall be segregated, and separately accounted for, by the Trust in the Settling Insurer Sub-Fund.

(ii) The Trustee shall segregate the Insurance Settlement Amount in the Settling Insurer Sub-Fund. Upon receipt of the full Insurance Settlement Amount, $32 million shall be held in reserve (the "Settling Insurer Sub-Fund Reserve"). At such time as 450 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be reduced to $14 million, and the released $18 million shall be available for Distributions to Abuse Claimants. At such time as 500 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be reduced to $9 million, and the released $5 million shall be available for Distributions to Abuse Claimants. At such time as 550 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be reduced to $6 million, and the released $3 million shall be available for Distributions to Abuse Claimants. At such time as 616 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be dissolved, and the released $6 million shall be available for Distributions to Abuse Claimants. Provided, however, that, in addition to the foregoing, the sum of $1 million shall be reserved for each of the following claims: 90209, 90242, 90275, 90304, 90329, 90354, 90385, 90391, 90397, 90406 and 90507. Upon the written election by each such Claimant to take his or her share of the Insurance Settlement Amounts as set forth in the General Release, each $1 million reserved shall be released for Distributions to Abuse Claimants. "Non-Communicative Abuse Claimant" shall mean an Abuse Claimant who has not responded to any Trustee communications within 1 year of the Effective Date. For the avoidance of doubt, nothing in this Section 4.3(d) shall limit Article V.CC of the Plan (Trust Indemnification of Settling Insurers), and the obligations set forth therein shall survive the exhaustion or depletion of the Settling Insurer Sub-Fund Reserve.

(iii) No less frequently than quarterly, the Trustee shall provide a report to the Settling Insurers identifying the Abuse Claimants that are deemed to be Non-Communicative Abuse Claimants and those Abuse Claimants that have signed the general contractual release of the Settling Insurers. The Trustee or his professionals will make themselves reasonably available

13

to the Settling Insurers to address questions regarding the reporting provided to the Settling Insurers.

Section 4.4     *Medicare Reimbursement and Reporting Obligations.*

(a)     The Trust shall register as an RRE under the reporting provisions of section 111 of MMSEA (as defined in the Plan); provided that this requirement shall apply only to Channeled Claims that arose after December 5, 1980.

(b)     The Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)     Before remitting funds to Beneficiary's counsel, or to the Beneficiary if such Beneficiary is acting *pro se*, in respect of any Channeled Claim, the Trustee shall, if applicable, obtain a certification from said Beneficiary (or such Beneficiary's authorized decedent's estate representative) that (i) said Beneficiary shall provide or has provided to the Trust all information required for that Beneficiary under MMSEA; (ii) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Channeled Claim and (iii) said Beneficiary indemnifies the Trust for any such obligations.

(d)     To the extent that the Trust receives actual notice of any unsatisfied MMSEA lien, the Trust may (i) pay such lien from proceeds allocated to that Beneficiary, or (ii) withhold distribution to such Beneficiary while such Beneficiary or Beneficiary's counsel resolves such lien.

## ARTICLE 5.
## TRUSTEE

Section 5.1     *Initial Trustee.*  The initial Trustee shall be Alan D. Halperin.

Section 5.2     *Term of Service, Successor Trustee.*

(a)     The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) below, (iii) his or her removal pursuant to Section 5.2(c) below, and (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)     The Trustee may resign at any time upon written notice to the TAC and filed with the Bankruptcy Court.  Such notice shall specify a date when such resignation shall take

effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) The Trustee may be removed by consent of at least two/thirds (2/3) majority of the TAC, at any time with or without cause, or by an order from the Bankruptcy Court, in the event that the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or on another reasonable basis as determined by at least two/thirds (2/3) majority of the TAC, provided the Trustee has received reasonable notice and an opportunity to be heard. Cause shall include gross negligence, fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder. For the avoidance of doubt, any removal of the Trustee pursuant to this Section 5.2(c) shall require the approval of the Bankruptcy Court.

Section 5.3    *Appointment of Successor Trustee.*

(a) In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee or successor Trustee, such vacancy shall be filled by the TAC as set forth herein. The TAC will nominate an individual to serve as successor Trustee. If the majority of the TAC then in office agrees upon a successor Trustee, then such successor may be appointed by a written agreement signed by each member of the TAC. If the TAC cannot agree on a successor Trustee, then any member of the TAC may make an application to the Bankruptcy Court on notice to the other TAC members seeking appointment of a successor Trustee.

(b) Immediately upon the appointment of any successor Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c) Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

Section 5.4    *Trustee and TAC Meetings.*

(a) **Regular Updates**. The Trustee shall hold regular meetings with or regularly update the TAC not less than quarterly.

(b) **Special Meetings**. Special meetings of the Trustee with the TAC may be called by the Trustee by giving written notice to the TAC not less than one (1) business day prior to the date of the meeting. Any such notice shall include the time, place and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar

15

means of communication.  Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice.  Notice by overnight courier shall be deemed to have been given one (1) business day after the time that written notice is provided to such overnight courier.  Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or if transmitted electronically, actually transmitted by electronic means to the recipient.

(c)      **Participation in Virtual Meetings**.  The Trustee may convene, and persons may participate in, a meeting by teleconference, telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 5.4(c) shall constitute presence in person at such meeting.

(d)      **Waiver of Notice**. Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trustee and TAC meeting need be specified in any waiver of notice.

(e)      **TAC Members**. The initial TAC members shall consist of the following (a) Jeffrey Anderson of Jeff Anderson & Associates PA, (b) Jeffrey Herman of Herman Law, and (c) Adam Slater of Slater Slater Schulman LLP provided that each such TAC member may designate another party from such TAC member's firm to act on such TAC Member's behalf.  Except as otherwise set forth in the Trust Documents, the TAC shall act by majority vote of TAC members then serving, provided however, the TAC may continue to act in the event of one or more vacancies on the TAC, in which case majority vote of the TAC members then serving shall be required for action by the TAC.  It is agreed and understood that in the event that during any period in which the TAC has fewer than three members, TAC approval shall mean an unanimous vote.

(f)      **TAC Duties**.  The members of the TAC (and any of their designees) shall serve in a fiduciary capacity representing the Beneficiaries. The TAC shall not have any fiduciary duties or responsibilities to any party other than the Beneficiaries. Except for the duties and obligations expressed in this Trust Agreement, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC. To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto, or any Beneficiary, such duties and liabilities are replaced by the duties and liabilities of the TAC expressly set forth in this Trust Agreement. The applicable designated alternate TAC member for a TAC member may vote and act in that TAC member's stead when that TAC member is unavailable.

(g)      **TAC Access to Information**.  The TAC shall have reasonable access to the Trust's consultants and other advisors retained by the Trust, and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

16

(h)      **Term of Service**.  Each member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation, (iii) his or her removal, and (iv) the termination of the Trust.

(i)      **Resignation of TAC Member**.  A member of the TAC may resign at any time by written notice to the other members of the TAC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(j)      **Removal of TAC Member**.  A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the TAC has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the TAC and such removal shall take effect only upon the approval of the Bankruptcy Court

(k)      **Appointment of Successor TAC Members**.  In the event of a TAC member vacancy, the remaining TAC Members shall nominate a successor TAC Member.  If the TAC cannot agree on a successor, the Trustee may seek Bankruptcy Court approval of the appointment of a successor.

(l)      **Successor TAC Member Service**.  Each successor member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation, (iii) his or her removal, and (iv) the termination of the Trust.

(m)      **No Personal Liability**.  No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member. No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member. No TAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 5.5      _Compensation and Expenses of Trustee._

The Trustee shall receive compensation from the Trust for his or her services as Trustee. The Trustee shall be compensated on an hourly basis based initially on the rates set forth in **Exhibit 3**.  The Trustee's hourly rates may be adjusted annually on notice to the TAC.  The Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the Trustee in the course of carrying out his or her duties as Trustee in accordance with reasonable policies and procedures as may be adopted from time to time, including in connection with attending meetings of the Trustee and TAC.  The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Annual Report.

Section 5.6    _Trustee's Independence._

(a)    The Trustee shall not, during his or her service, hold a financial interest in, act as attorney or agent for or serve as any other professional for the Reorganized Debtor or its affiliated persons, the Additional Debtors, or any Non-Settling Insurer.  No Trustee shall act as an attorney for, or otherwise represent, any Person in connection with the Debtor's or the Additional Debtors' Chapter 11 Cases or the Trust, who holds or held an Abuse Claim, in the Chapter 11 Case or against the Trust.

(b)    The Trustee shall be indemnified by the Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)    Persons dealing with the Trust and the Trustee, with respect to the affairs of the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust or the Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, the Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.7    _Standard of Care; Exculpation._

(a)    As used herein, the term "**Trust Indemnified Party**" shall mean the Trustee, the Abuse Claims Reviewer, the TAC, and each of their respective members, officers, employees, agents, consultants, lawyers, advisors or professionals (collectively, the "**Trust Indemnified Parties**").

(b)    No Trust Indemnified Party shall be liable to the Trust, any other Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation, operation, administration, enforcement or termination of the Trust, except in the case of such Trust Indemnified Party's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims. To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the Trust Indemnified Parties. None of the provisions of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.7 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of the willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary,

18

consequential or special damages under any circumstances. Any action taken or omitted by the Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c)    To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 5.7 and its subparts.

Section 5.8    _Protective Provisions._

(a)    In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  A successor to any Trustee shall succeed to and hold the same respective rights and benefits of the predecessor Trustee for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.  For avoidance of doubt, the provisions of this subsection (a) apply regardless of whether the fees and expenses of counsel are paid by the Trustee or the Trust, and it is contemplated that the fees and expenses of the Trustee's counsel shall be paid by the Trust.

(b)    To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto to the Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to Section 5.7 herein.

(c)    In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.9    *Indemnification.*

(a)    Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of New York, is entitled to indemnify, hold harmless and defend such persons against any and all liabilities, expenses, claims, damages or losses (including reasonable attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust may be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)    The Trustee may purchase and maintain, as a Trust Operating Expense, appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)    The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Termination or modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)    The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

Section 5.10    *Bond.*

The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

# ARTICLE 6.

## GENERAL PROVISIONS

Section 6.1    *Irrevocability.*

To the fullest extent permitted by applicable law, the Trust is irrevocable. The Settlors shall not (i) retain any ownership or residual interest whatsoever with respect to any Trust Assets, including, but not limited to, the funds transferred to the Trust, and (ii) have any rights or role with respect to the management or operation of the Trust or the Trustee's administration of the Trust.

Section 6.2    *Term; Termination.*

(a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the following provisions.

(b)    The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution of the Trust when (i) all reasonably expected assets have been collected by the Trust, (ii) all Distributions have been made to the extent set forth in the Trust Allocation Protocol, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining Trust obligations and Trust Operating Expenses in a manner consistent with the Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)    Following the dissolution and Distribution of the Trust Assets, the Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(d)    After termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until his or her duties hereunder have been fully performed. The Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Trustee until Distribution of all the Trust Assets. For purposes of this provision, Trust Assets will be deemed distributed when the total amount remaining in the Trust is less than $50,000 and no further actions are pending or have yet to be brought. At the Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (i) the first anniversary of the Dissolution Date, and (ii) the date until which the Trustee is required by applicable law to retain such books, records, documents and files; provided however, that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents or files relating to the Trust without giving the Reorganized Debtor the opportunity to take control of such books, records, documents and/or files, provided, however, the Trustee shall not be required to provide the Reorganized Debtor with any privileged documents. The costs of providing/transferring such books, records, documents and/or files shall be borne by the Reorganized Debtor

(e)    Upon termination of the Trust and accomplishment of all activities described in this Trust Agreement, the Trustee and his or her professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Trustee or his agents or representatives). The Trustee may, at the expense of the Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 6.3    _Outgoing Trustee Obligations._

In the event of the resignation or removal of the Trustee, the resigning or removed Trustee shall:

(a)    execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee, as necessary;

(b)    deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c)    otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d)    consistent with Section 5.3 hereof, irrevocably appoint the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment. The Bankruptcy Court also may enter such orders as are deemed necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee, but Bankruptcy Court approval of the appointment of a successor Trustee is not required.

Section 6.4    _Taxes._

(a)    The Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 et seq. of the Treasury Regulations promulgated under section 468B of the IRC, as amended (the "**QSF Regulations**").

(b)    The Trustee shall be the "administrator" of the Trust within the meaning of section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the

Trust as a qualified settlement fund, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations. The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the Dissolution Date.

(c) As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Trust shall make a good faith valuation of the Aggregate Settlement Consideration and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Trust shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d) The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or Distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement. The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this Trust Agreement. In order to receive Distributions, all Beneficiaries shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. The Trustee may refuse to make a payment or Distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the Trustee shall make such delayed payment or Distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Trust. In no event shall any funds of the Trust escheat to any federal, state or local government or any other entity.

Section 6.5    *Modification.*

(a) Material modifications to this Trust Agreement, including Exhibits hereto, may be made only with the consent of the Trustee and the majority of the TAC and subject to the approval of the Bankruptcy Court; provided however, that the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice on the Bankruptcy Court docket, to make minor corrective or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after notice to on the Bankruptcy Court docket, subject to any objection by a Beneficiary. Except as permitted pursuant to the preceding sentence, the Trustee shall not modify this Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court. The Trustee shall file notice of any modification of this Trust Agreement with the Bankruptcy Court.

23

(b)    Notwithstanding anything set forth in this Trust Agreement to the contrary, none of this Trust Agreement, nor any document related thereto shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction, Settling Insurer Supplemental Injunction (as defined in the Plan), or any other benefit, injunction, or release issued or granted in connection with the Insurance Settlement Agreements, Plan and Confirmation Order, or (iii) the Trust's qualified settlement fund status and grantor trust status under the QSF Regulations.

(c)    For the avoidance of doubt, this Section 6.5 is subject in all respects to Article IV.M of the Plan.

Section 6.6    _Severability._

If any provision of this Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 6.7    _Notices._

Any notices or other communications required or permitted hereunder to the following parties shall be in writing and hand delivered at the addresses designated below, or sent by email pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Trustee:

Alan D. Halperin, Esq., Trustee (ahalperin@halperinlaw.net)
Halperin Battaglia Benzija, LLP
40 Wall Street, 37th floor
New York NY 10005

with a copy (which shall not constitute notice) to:

Donna H. Lieberman, Esq. (dlieberman@halperinlaw.net)
Halperin Battaglia Benzija, LLP
40 Wall Street, 37th floor
New York NY 10005

with a copy to:

James Stang, Esq. (jstang@pszjlaw.com)

24

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4003

- and -

Brittany Michael, Esq. (bmichael@pszjlaw.com)
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY  10036

If to the Reorganized Debtor:

The Diocese of Rockville Centre, New York
P.O. Box 9023
Rockville Centre, New York 11571-9023
Attn:  []

with copies to:

Corinne Ball, Esq. (cball@jonesday.com)
Todd Geremia, Esq. (tgeremia@jonesday.com)
Benjamin Rosenblum, Esq. (brosenblum@jonesday.com)
Andrew Butler, Esq. (abutler@jonesday.com)
Jones Day
250 Vesey Street
New York, NY 10281-1047

If to Reorganized Additional Debtors

William C. Heuer (wheuer@westermanllp.com)
Westerman Ball Ederer Miller Zucker & Sharfstein LLP
1201 RXR Plaza
Uniondale, New York 11556
Telephone No. (516) 622-9200
Facsimile No. (516) 622-9212

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 6.8       *Successors and Assigns.*

The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the TAC and their respective successors and assigns, except that none of

25

such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 and Section 5.2 above.

Section 6.9    _Limitation on Transferability; Beneficiaries' Interests._

The Beneficiaries' interests in the Trust shall not (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio*; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Trust or the Trust Assets; (e) entitle the holders thereof to seek the removal or replacement of any Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on Distributions; and (g) give rise to any rights to seek a partition or division of the Trust Assets. Beneficiaries shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of the Trust, but only to the extent such cash assets are declared by the Trustee to be distributable as Distributions in accordance with the Trust Documents. For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the Trust Documents.

Section 6.10    _Exemption from Registration._

The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 6.11    _Entire Agreement; No Waiver._

Except as to the Plan, the Confirmation Order, and the other Trust Documents, the entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 6.12    _Headings._ The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

Section 6.13    _Governing Law._

This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. For the avoidance of doubt, none of the following provisions of New York law shall apply to the extent inconsistent with the terms of the Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of Trust Assets, (g) the existence of rights or interests (beneficial or otherwise) in Trust Assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee or the TAC set forth or referenced in this Trust Agreement.

Section 6.14    _Settlors' Representative._

The Reorganized Debtor and Reorganized Additional Debtors shall cooperate with the Trustee as and to the extent set forth in the Plan.

Section 6.15    _Independent Legal and Tax Counsel._

All parties to this Trust Agreement have been represented by counsel and/or advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 6.16    _Waiver of Jury Trial._

Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

Section 6.17    _Jurisdiction._

The Bankruptcy Court shall have continuing jurisdiction with respect to the Trust; provided however, the courts of the State of New York, including any federal court located therein, shall

27

also have jurisdiction over the Trust only if and to the extent the Bankruptcy Court cannot exercise or abstains from exercising jurisdiction over the Trust.

Section 6.18    _Effectiveness._

This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 6.19    _Counterpart Signatures._

This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this Trust Agreement or any amendment hereto delivered by facsimile, email or other means of electronic transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[SIGNATURE PAGES TO FOLLOW]*

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date of the Plan.

**SETTLORS:**

The Diocese of Rockville Centre, New York

By: _____

[Add Additional Debtors or can the Diocese sign on behalf of all?]

**TRUSTEE:**

By: _____

**TAC MEMBERS:**

**EXHIBIT 1**
**TRUST ALLOCATION PROTOCOL**


**[TO BE FILED SEPARATELY AS  PART OF PLAN SUPPLEMENT]**

**EXHIBIT 2**
**GENERAL CONTRACTUAL RELEASE FORM**

**[TO BE FILED AS PART OF PLAN SUPPLEMENT]**

**EXHIBIT 3**
**TRUSTEE INITIAL HOURLY RATES**


[TO COME]

# **EXHIBIT B**

Trust Agreement Redline

**TRUST AGREEMENT**

**DATED AS OF _____, 2024**

**PURSUANT TO CHAPTER 11 PLAN OF**

**REORGANIZATION FOR**

**THE DIOCESE OF ROCKVILLE CENTRE**

# Table of Contents

**ARTICLE 1. AGREEMENT OF TRUST** ................................................................ **2**

**Section 1.1    Creation and Name.** ................................................................ **2**

**Section 1.2    Purposes.** ................................................................................. **2**

**Section 1.3    Transfer of Assets.** ................................................................. **2**

**Section 1.4    Acceptance of Assets.** ........................................................... **3**

**Section 1.5    Receipt of Proceeds.** ............................................................. **3**

**Section 1.6    Beneficiaries.** ........................................................................ **4**

**Section 1.7    Privileged and Confidential Information.** ......................... **4**

**Section 1.8    Relation-back election.** ......................................................... **4**

**Section 1.9    Employer identification number.** ....................................... **4**

**Section 1.10      Relationship to Plan.** ....................................................... **4**

**ARTICLE 2. POWERS AND TRUST ADMINISTRATION** ............................... **5**

**Section 2.1    Powers.** .................................................................................... **5**

**Section 2.2    Limitations on the Trustee.** ................................................. **8**

**Section 2.3    G** ............................................................................................... **9**

**eneral Administration.** ................................................................................ **9**

**Section 2.4    Accounting.** ............................................................................ **9**

**Section 2.5    Financial Reporting.** ............................................................. **10**

**Section 2.6    Names and addresses.** ........................................................... **10**

**Section 2.7    Transfers of the Trust Assets.** .............................................. **10**

**ARTICLE 3. ACCOUNTS, INVESTMENTS, EXPENSES** ................................ **10**

**Section 3.1    Accounts.** ............................................................................... **10**

**Section 3.2    Investment Guidelines.** ......................................................... **11**

**Section 3.3    Payment of Trust Operating Expenses.** .............................. **11**

**ARTICLE 4. CLAIMS ADMINISTRATION AND DISTRIBUTIONS** ................................. 11

Section 4.1    Claims Administration and Distributions. ................................................ 11

Section 4.2    Manner of Payment. ................................................................................. 12

Section 4.3    Delivery of Distributions. ........................................................................ 12

Section 4.4    Medicare Reimbursement and Reporting Obligations. ............................ 13

**ARTICLE 5. TRUSTEE** ................................................................................................. 14

Section 5.1    Initial Trustee. ......................................................................................... 14

Section 5.2    Term of Service, Successor Trustee. ........................................................ 14

Section 5.3    Appointment of Successor Trustee. ......................................................... 14

Section 5.4    Trustee and TAC Meetings. ..................................................................... 15

Section 5.5    Compensation and Expenses of Trustee. ................................................. 17

Section 5.6    Trustee's Independence. ........................................................................... 17

Section 5.7    Standard of Care; Exculpation. ............................................................... 17

Section 5.8    Protective Provisions. .............................................................................. 18

Section 5.9    Indemnification. ....................................................................................... 19

Section 5.10    Bond. ...................................................................................................... 20

**ARTICLE 6.** ..................................................................................................................... 20

**GENERAL PROVISIONS** .............................................................................................. 20

Section 6.1    Irrevocability. .......................................................................................... 20

Section 6.2    Term; Termination. ................................................................................. 20

Section 6.3    Outgoing Trustee Obligations. ............................................................... 21

Section 6.4    Taxes. ...................................................................................................... 22

Section 6.5    Modification. ........................................................................................... 23

Section 6.6    Severability. ............................................................................................ 23

Section 6.7    Notices. .................................................................................................... 24

Section 6.8      **Successors and Assigns.** .................................................................................... 25

Section 6.9      **Limitation on Transferability; Beneficiaries' Interests.** .................................. 25

Section 6.10      **Exemption from Registration.** .......................................................................... 26

Section 6.11      **Entire Agreement; No Waiver.** .......................................................................... 26

Section 6.12      **Headings.** .......................................................................................................... 26

Section 6.13      **Governing Law.** ................................................................................................ 26

Section 6.14      **Settlors' Representative.** .................................................................................. 27

Section 6.15      **Independent Legal and Tax Counsel.** ................................................................ 27

Section 6.16      **Waiver of Jury Trial.** ........................................................................................ 27

Section 6.17      **Jurisdiction.** ...................................................................................................... 27

Section 6.18      **Effectiveness.** .................................................................................................... 27

Section 6.19      **Counterpart Signatures.** .................................................................................... 27

**EXHIBIT 1  TRUST ALLOCATION PROTOCOL** ............................................................. 1

**EXHIBIT 2  GENERAL CONTRACTUAL RELEASE FORM** ............................................ 1

**EXHIBIT 3  TRUSTEE INITIAL HOURLY RATES** ......................................................... 1

# TRUST AGREEMENT

This Trust Agreement (this "**Trust Agreement**"), dated as of _____, 2024 is entered into in accordance with the *Chapter 11 Plan of Reorganization Dated _____, 2024* (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by The Roman Catholic Diocese of Rockville Centre, New York (the "**Debtor**") and the Additional Debtors (together with the Debtor, the "**Settlors**," in their capacity as settlors of the Trust, on the one hand, and Alan D. Halperin as trustee (together with any successor serving in such capacity, the "**Trustee**") and the Trust Advisory Committee, who are the individuals identified in Section 5.4(e) (together with any successors serving in such capacity, the "**TAC**"), on the other hand;

## RECITALS

(A)    The Debtor will reorganize under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, administered and known as *In re The Roman Catholic Diocese of Rockville Centre, New York,* Case No. 20-12345-MG (Bankr. S.D.N.Y. (the "**Chapter 11 Case**").

(B)    The Additional Debtors will reorganize under the provisions of chapter 11 of the Bankruptcy Code in cases jointly administered with the Chapter 11 Case.  The Debtor's and the Additional Debtors' cases are collectively referred to as the Chapter 11 Case, unless the context requires otherwise.

(C)    The Plan and the Confirmation Order in the Chapter 11 Case provide, among other things, for the creation of the Trust.

(D)    This Trust Agreement has been approved by the Bankruptcy Court to implement the Plan and confirm the creation of the Trust (the "**Trust**") for the exclusive benefit of the holders of Abuse Claims.

(E)    The Bankruptcy Court has or will determine in the Confirmation Order that, subject to the occurrence of the Effective Date, all the prerequisites for the Channeling Injunction have been satisfied and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the Channeled Claims.

(F)    The "**Trust Assets**" are, collectively, (a) $176.8 million, which includes, without limitation, the Ecclesia Contribution, the DOE Contribution, the CemCo Effective Date Cash Contribution, the proceeds of the Exit Financing, and the proceeds of the CemCo Loan, (b) subject to the terms and conditions of Article V.Y of the Plan, the Charities Contribution, (c) the Seminary Contribution, (d) the CemCo Deferred Cash Contribution, (e) subject to Article IV.W of the Plan, the Additional Debtors Deferred Contribution, (f) the Insurance Settlement Amount (which, for the avoidance of doubt excludes the Ecclesia Contribution) (collectively, (a)

---

[1]    All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable, or, if not defined therein, as set forth in the Trust Allocation Protocol (as defined in Section 1.2).  References to "Section" refer to Sections of this Trust Agreement unless otherwise stated.

1

through (f), the "**Aggregate Settlement Consideration**," (g) the PSZJ Trust Contribution, (h) the Insurance Rights that are the subject of the Non-Settling Insurance Rights Transfer, and (i) any income or gain earned and proceeds derived, including proceeds of any recoveries from any litigation or claims of the Trust derived from any and all of the foregoing (a) through (h).  Any payments made by the Debtor to the Abuse Claims Reviewer prior to the Effective Date shall be deducted from the Trust Assets.

(G)    The Plan and Confirmation Order provide or will provide that, on the Effective Date and continuing thereafter until fully funded by the Debtor and Additional Debtors in accordance with the Plan, the Aggregate Settlement Consideration (as defined in Section 1.3) and all of the Trust Assets shall be transferred to and vested in the Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor, the Additional Debtors, any creditor of the Debtor or the Additional Debtors or any other person or entity that may assert a claim against the Debtor or the Additional Debtors, other than as provided in the Plan, the Channeling Injunction with respect to the Channeled Claims or as provided in the Insurance Settlement Agreements with respect to the Channeled Claims and Barred Claims and as provided in Section 1.3.

**NOW, THEREFORE**, it is hereby agreed as follows:

## ARTICLE 1.
## AGREEMENT OF TRUST

Section 1.1    *Creation and Name.* The Debtor and Additional Debtors as Settlors hereby create a trust known as the "**DRVC Abuse Claim Trust**" which is the Trust provided for and referred to in the Plan.  The Trustee may transact the business and affairs of the Trust in the name of the DRVC Abuse Claim Trust and references herein to the Trust shall include the Trustee acting on behalf of the Trust.  The Confirmation Order, the Plan and this Trust Agreement, including the Exhibits hereto, including the Trust Allocation Protocol as defined in Section 1.2, (collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust.  The Trustee is hereby authorized to execute and file a Certificate of Trust with the New York Secretary of State.

Section 1.2    *Purposes.* The purposes of the Trust are to (i) implement the treatment of the Channeled Claims; (ii) administer the Abuse Claims; and (iii) make Distributions to holders of Abuse Claims, in accordance with the Trust Allocation Protocol attached hereto as **Exhibit 1** (the "**Trust Allocation Protocol**").  In connection therewith, the Trust shall hold, manage, protect and monetize the Trust Assets in accordance with the terms of the Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a)). All Abuse Claims shall be resolved exclusively in accordance with the Trust Allocation Protocol.

Section 1.3    *Transfer of Assets.* Pursuant to the Plan, the Debtor, the Additional Debtors, the Settling Insurers and all other persons and entities obligated to make payments or transfers to the Trust shall transfer the Trust Assets to the Trust in accordance with the Plan, and in connection therewith shall (i) pay all funds to the Trust by wire transfer, unless otherwise set forth in the Insurance Settlement Agreements, or agreed in writing by the Trustee, and (ii) promptly effectuate the transfers of non-cash assets to the Trust as required by the Plan. The Trust will receive and hold all right, title and interest in and to the funds transferred, the Aggregate Settlement Consideration, and the other Trust Assets.  The Trust Assets shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, the Additional Debtors or their affiliates, any creditor of the Debtor or the Additional Debtors, or any other person or entity that may assert a claim against the Debtor or the Additional Debtors, other than as provided in the Plan, the Channeling Injunction with respect to the Channeled Claims or as provided in the Insurance Settlement Agreements with respect to Channeled Claims and Barred Claims.  The Debtor or Reorganized Debtor shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign any assets comprising all or a portion of the Trust Assets to the Trust.  On the Effective Date, Pachulski Stang Ziehl & Jones LLP shall also transfer its contribution of 10% of its Chapter 11 Case fees to the Trust (the "**PSZJ Contribution**").

Section 1.4    *Acceptance of Assets.*  In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly accepts the transfer to the Trust of the Aggregate Settlement Consideration and other Trust Assets, subject to the terms of the Trust Documents and the Plan Documents. The Trust shall succeed, as applicable, to all of the Debtor and the Additional Debtors' respective rights, title, and interest, including all legal privileges, in the Trust Assets and neither the Debtor, the Additional Debtors, the Settling Insurers, nor any other person or entity transferring such Aggregate Settlement Consideration and other Trust Assets will, except as otherwise expressly provided herein or in the Plan, have any further equitable or legal interest in, or with respect to, the Trust Assets or the Trust.

(b)    Except as otherwise provided in the Plan, Confirmation Order or Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Channeled Claims that the Debtor, Reorganized Debtor, Additional Debtors, the Reorganized Additional Debtors, or the Co-Insured Parties have or would have had under applicable law.

(c)    No provision herein or in the Trust Allocation Protocol shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations (as defined in Section 8.4(a) below).

(d)    Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the terms of the Plan or Confirmation Order.

(e)    In this Trust Agreement and the Trust Allocation Protocol, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

4

Section 1.5     *Receipt of Proceeds.*

The proceeds of any recoveries from any litigation or claims of the Trust will be deposited in the Trust's accounts and become the property of the Trust.

Section 1.6     *Beneficiaries.*

(a)     The Trust is established for the benefit of the holders of Abuse Claims (known as of this date and as any become known in the future) (the "**Beneficiaries**").

(b)     The Beneficiaries shall be subject to the terms of this Trust Agreement and Trust Documents, including without limitation, the Trust Allocation Protocol.

Section 1.7     *Privileged and Confidential Information.*

The transfer or assignment of any information subject to an attorney-client or similar privilege to the Trust or the Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto. Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Trustee to perform his or her duties to administer the Trust and collect the Trust Assets and (b) they are vested solely in the Trustee and the TAC, not in the Trust, or any other person, committee or subcomponent of the Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled Claim.

Section 1.8     *Relation-back election.*

Upon request of the Trustee, the Settlors shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

Section 1.9     *Employer identification number.*

Upon the establishment of the Trust or as otherwise authorized by the Bankruptcy Court, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

Section 1.10     *Relationship to Plan.*

The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the Trust Allocation Protocol, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; (3) this Trust Agreement; and (4) the Trust Allocation Protocol.

## ARTICLE 2.
## POWERS AND TRUST ADMINISTRATION

Section 2.1     *Powers.*

(a)     The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which is inconsistent with the foregoing.

(b)     The Trustee is and shall act as the fiduciary to the Trust Assets in accordance with the provisions of the Trust Documents. The Trustee shall administer the Trust, and the Trust Assets in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Plan and the Trust Documents. Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take any and all actions that in the judgment of the Trustee are necessary or advisable to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of New York. Nothing in the Trust Documents or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law. In addition to all powers enumerated in the Trust Documents, from and after the Effective Date, the Trust shall succeed to all of the rights and standing of the Debtor, Additional Debtors, or the Co-Insured Parties with respect to the Trust Assets in the Trust's capacity as a trust administering assets for the benefit of the Beneficiaries.

(c)     Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of the Bankruptcy Court or any other court in the exercise of any power or discretion conferred hereunder.

(d)     Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Trust Documents and by applicable law, the Trustee shall have the power to:

(i)     supervise and administer the Trust in accordance with the Trust Documents, including the Trust Allocation Protocol;

(ii)     receive and hold the Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Trust Assets;

(iii)     invest the monies held from time to time by the Trust in accordance with Section 3.2;

6

(iv)    sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper and consistent with the other terms of the Trust Documents;

(v)    enter into leasing, financing or other agreements with third parties, as determined by the Trustee, in his or her discretion, to be useful in carrying out the purposes of the Trust;

(vi)    determine and pay liabilities and pay all fees and expenses incurred in administering the Trust, managing the Trust Assets and making Distributions in accordance with the Trust Documents (the "**Trust Operating Expenses**");

(vii)    establish accounts and reasonable reserves within the Trust, in her/his discretion, to be necessary, prudent or useful in administering the Trust;

(viii)    sue and participate as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding relating to the Trust Assets, this Trust Agreement, or the Plan, however nothing herein shall be deemed to allow any party asserting an Abuse Claim and/or Channeled Claim to commence any action against the Trustee or the Trust with respect to such claim;

(ix)    appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Trust requires, which may be those formerly retained by the Committee or by the Future Claims Representative, and delegate to such persons such powers and authorities as this Trust Agreement provides or the fiduciary duties of the Trustee permits and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(x)    pay reasonable compensation and reimbursement of expenses to any of the Trust's consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and any other activities as the Trust requires;

(xi)    compensate the TAC members for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder, it being understood that the legal fees and expenses of a TAC member shall not be compensable pursuant to this subsection (xi);[2]

(xii)    compensate the Trustee and the Trust's professionals for services, costs and expenses incurred prior to the Effective Date in accordance with the terms of the Trust Documents;

---

[2] For avoidance of doubt, legal fees and expenses of TAC members may be compensable pursuant to the indemnification provisions of this Agreement, as specifically set forth therein.

(xiii)   execute and deliver such instruments as the Trustee considers advisable or necessary in administering the Trust;

(xiv)   timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xv)   require, in respect of any Distribution of Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xvi)   resolve all applicable lien resolution matters with respect to Beneficiaries that may be subject to liens arising pursuant to the MMSEA (as defined below) in accordance with the Plan; provided, however, that for claims that are property of an open chapter 7 bankruptcy case, such lien resolution is subject to the approval of the chapter 7 bankruptcy trustee and applicable bankruptcy court; and provided further, however, that in such cases, the chapter 7 bankruptcy trustee shall have sole responsibility to seek court approval for such lien resolution;

(xvii)   register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") as required under Section 4.4 below and the terms of the Plan;

(xviii)   enter into such other arrangements with third parties as are deemed by the Trustee to be useful or advisable in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of the Trust Documents;

(xix)   in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the Trust Assets and to the fullest extent permitted by law;

(xx)   delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable investment advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xxi)   delegate any or all of the authority conferred with respect to the protection, preservation, and monetization of the non-cash Trust Assets;

(xxii)   initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust, including, without limitation, to recover, on behalf of the Trust, any part or the entirety of a Deferred Contribution from any Additional Debtor or other Entity that is liable for such;

8

(xxiii) enter into structured settlements and other similar arrangements with any Beneficiary (including a minor or other person in need of special consideration) or any attorney of any Beneficiary, upon such terms as the Trustee and such Beneficiary (or such Beneficiary's counsel or other authorized person) agree, in all cases in accordance with the Trust Allocation Protocol;

(xxiv) take any and all actions appropriate or necessary in order to carry out the terms of the Trust Documents;

(xxv) taken any actions or make any payments as required under the Plan, including, but not limited to, the payment of compensation, pursuant to an order of the Bankruptcy Court allowing such compensation, to the Committee's Professionals, the FCR and the FCR's Professionals as provided in the Plan;

(xxvi) take any actions or make any payments required under the Insurance Settlement Agreements (as defined in the Plan), including without limitation the payment of Indemnified Claims (as defined in the Insurance Settlement Agreements); and

(xxvii) except as otherwise expressly provided in the Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of New York.

(e)    The Trustee shall have the power to (i) authorize Non-Settling Insurer Abuse Claimants to pursue their Claims in any court of competent jurisdiction, under the Plan, only to determine any liability that the Debtor and/or any Additional Debtor may have regarding an Abuse Claim and the amount of that liability, and (ii) enter into any settlement that causes an Insurer to become a Settling Insurer (an "**Insurance Settlement**"), provided however, the powers set forth in this Section 2.1(e) shall in each case be subject to the provisions of the Trust Documents.

(f)    The Trustee, in his or her sole discretion, may take all actions necessary or advisable for the enforcement of the non-monetary commitments of the Debtor and Additional Debtors with respect to Child Protection as set forth in the Plan and Confirmation Order.

(g)    The Trustee shall consult with the TAC on the matters as set forth in in the Trust Documents.

Section 2.2    _Limitations on the Trustee._

(a)    Notwithstanding anything in the Trust Documents to the contrary, the Trustee shall not:

(i)    assume or guaranty any debt for borrowed money or pledge any of the Trust Assets to secure any debt;

(ii)    make or enter into any loan of Trust Assets;

9

(iii)    make any transfer or Distribution of Trust Assets other than those authorized by the Trust Documents;

(iv)    engage in any trade or business with respect to the Trust Assets or proceeds therefrom, other than managing such assets;

(v)    engage in any investment of the Trust Assets, other than as explicitly authorized by this Trust Agreement;

(vi)    undertake any action inconsistent with the terms of the Insurance Settlement Agreements; or

(vii)    engage in any activities inconsistent with the treatment of the Trust as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1.

(b)    _Insurance Settlements._

The Trustee may effectuate proposed Insurance Settlements upon ten (10) days' notice to the TAC but without Bankruptcy Court approval.  Notwithstanding the foregoing, if a TAC member dissents from approval of the proposed Insurance Settlement and, within said ten (10) day notice period makes a written demand on the Trustee to seek Bankruptcy Court approval of the proposed settlement, such settlement shall be conditioned on the Bankruptcy Court finding that the proposed settlement is in the best interest of the Trust.

Section 2.3    _General Administration._

The Trustee shall act in accordance with the Trust Documents.

Section 2.4    _Accounting._

The fiscal year of the Trust shall begin on January 1 and shall end on December 31 of each calendar year, except that the first fiscal year shall run from the Effective Date to December 31.  The Trustee shall maintain the books and records of the Trust.  The detail of these books and records and the duration of time during which the Trustee shall keep such books and records shall be such as to allow the Trustee to make a full and accurate accounting of all Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Trust, including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided however, that the Trustee shall maintain such books and records until the wind-up of the Trust's affairs and dissolution of the Trust.

Section 2.5     _Financial Reporting._

(a)     Within one hundred twenty (120) days following the end of each calendar year, the Trustee shall file the Annual Report with the Bankruptcy Court.

(b)     All materials filed with the Bankruptcy Court pursuant to this Section 2.5 need not be served on any parties in the Chapter 11 Case, except as set forth herein.

Section 2.6     _Names and addresses._

The Trustee shall keep a register (the "**Register**") in which the Trustee shall always maintain the names and addresses of the Beneficiaries and the Distributions made to the Beneficiaries pursuant to the Trust Documents.  The Trustee may rely upon the Register for the purposes of delivering Distributions or notices.  In preparing and maintaining the Register, the Trustee may rely on the name and address of each Abuse Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Abuse Claim holder to the Trustee.  The Trustee may deliver Distributions and notices to counsel for any Abuse Claimant identified in such Abuse Claimant's proof of claim or proper notice of a name or address change.

Section 2.7     _Transfers of the Trust Assets._

To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered, except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.  Notwithstanding the foregoing, to the extent an Beneficiary is the subject of a pending Chapter 7 case, distribution(s) are subject to the rights of the Chapter 7 Trustee.

### ARTICLE 3.
### ACCOUNTS, INVESTMENTS, EXPENSES

Section 3.1     _Accounts._

(a)     The Trustee shall maintain one or more accounts ("**Trust Accounts**") on behalf of the Trust, including at the Trustee's discretion a disputed claims trust reserve, with one or more financial depository institutions (each a "**Financial Institution**").

(b)     The Trustee may replace any Financial Institution with a successor Financial Institution at any time.

(c)     The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts, including a disputed claim trust reserve, as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for Distributions to the Beneficiaries and the payment of Trust Operating Expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose

11

(the "**Trust Subaccounts**"). Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and may be considered to be a "disputed ownership fund" within the meaning of the Internal Revenue Code ("**IRC**") or Treasury Regulations.

Section 3.2     *Investment Guidelines.*

The Trustee may invest the Trust Assets and monetize such non-liquid assets in accordance with the Trust Documents. This Section 3.2(b) is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule and any other rule of law that would require the Trustee to diversify the Trust Assets.

Section 3.3     *Payment of Trust Operating Expenses.*

All Trust operating expenses shall be payable out of the Trust Assets and the Trustee may periodically reserve such amounts as he or she deems advisable and/or appropriate for payment of such expenses. None of the Trustee, the TAC, the Beneficiaries nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any Trust operating expense or any other liability of the Trust.

## ARTICLE 4.
## CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1     *Claims Administration and Distributions.*

The Trust shall compensate and make Distributions to Abuse Claims in accordance with the Trust Documents, including the Trust Allocation Protocol. In order to be eligible for distribution, the following conditions (in additional to any others set forth in the Trust Allocation Protocol, the Plan and/or the Confirmation Order) must be satisfied with respect to the Beneficiary and the Abuse Claim:

    a) The validity and point allocation of the Abuse Claim must be determined by the Abuse Claim Reviewer;

    b) The Beneficiary must provide the Trust with all information requested by the Trust for queries and (if applicable) reporting to Medicare;

    c) The Beneficiary must provide the Trust with a completed and executed lien certification;

    d) Any unsatisfied lien that the Trust receives actual notice of must be paid or otherwise resolved;

    e) The Beneficiary must provide the ~~Debtor~~Trustee with a completed and executed general contractual release of the Debtors and Additional Debtors, in the form attached to as **Exhibit 2, and the Beneficiary may**

elect to provide the general contractual release of the Settling Insurers in the form attached as **Exhibit 2**;

f) The Beneficiary shall also inform the Trustee in the certification referenced in subsection c) above whether the Beneficiary is the debtor in a pending Chapter 7 bankruptcy case, and to the extent a Beneficiary discloses that he/she is the subject of a pending Chapter 7 case, whether distribution(s) to the Beneficiary rather than the Chapter 7 Trustee have been consented to by the Chapter 7 Trustee; and

g) The Beneficiary must provide the Trust with such tax documents, including but not limited to a completed IRS form W-9, as the Trustee may request in writing.

Section 4.2    *Manner of Payment.*

Distributions from the Trust to the Beneficiaries may be made by the Trustee on behalf of the Trust or, in the Trustee's discretion, by a disbursing agent retained by the Trust to make Distributions on behalf of the Trust. Payments to a Beneficiary shall be made to counsel of record for such Beneficiary, who will then be solely responsible for forwarding such funds to the Beneficiary in accordance with any agreement between such Beneficiary and his/her counsel of record. If a Beneficiary does not have counsel of record, then distributions shall be made directly to the Beneficiary. For avoidance of doubt, if a Chapter 7 case is pending as to a Beneficiary, the Distribution shall be made to the Chapter 7 Trustee unless the Trustee is otherwise directed in writing by the Beneficiary and the Chapter 7 Trustee.

Section 4.3    *Delivery of Distributions.*

(a)    Distributions shall be payable to the Beneficiary (or to counsel for the Beneficiary) on the date approved for Distribution by the Trustee (the "**Distribution Date**") in accordance with the terms of the Trust Documents, including the Trust Allocation Protocol. With respect to each Abuse Claim approved for payment, Distributions shall be made only after all conditions to the Distribution with respect to each such Abuse Claim have been satisfied. In the event that any Distribution to a Beneficiary is returned as undeliverable, no further Distribution to such Beneficiary shall be made unless and until the Trustee has been notified of the then current address of such Beneficiary, at which time such Distribution shall be made to such Beneficiary without interest; provided however, that all Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of twelve (12) months from the applicable Distribution Date. After such date, (i) all unclaimed Distributions shall revert to the Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), (ii) the Abuse Claim of such Beneficiary shall be deemed released, settled, compromised and forever barred as against the Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the Trust Documents, as if the Abuse Claim of such Beneficiary had been disallowed as of the date the undeliverable Distribution was first made. The Trustee shall take reasonable efforts to obtain

a current address for any Beneficiary with respect to which any Distribution is returned as undeliverable.

(b)    If the Trust holds cash insufficient for making a Distribution to Beneficiaries at the time of its dissolution, after paying all Trust Operating Expenses and making all Distributions contemplated under the Trust Documents, such remaining cash shall be distributed to a national recognized charitable organization of the Trustee's choice to the extent economically feasible, which charitable organization shall be independent of the Trustee and, to the extent possible, shall have a charitable purpose consistent with the protection of children from sexual abuse or its ramifications. No Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

(c)    Notwithstanding any provision in the Trust Documents to the contrary, no payment shall be made to any Beneficiary on account of any Abuse Claim if the Trustee determines that the cost of making such Distribution is greater than the amount of the Distribution to be made, and the Trustee shall have no obligation to make a Distribution to a Beneficiary if the amount of that Distribution is less than $100.

(d)    (i) To receive a monetary distribution from the Trust, a Beneficiary must execute the general contractual release in the form set forth in Exhibit 2. If a Beneficiary elects to grant the general contractual release of the Settling Insurers also set forth in Exhibit 2, such Beneficiary will be entitled to a reward equal to such Beneficiary's pro rata share of the Settling Insurer Sub-Fund at such time as those funds are available for Distribution to Abuse Claimants. Upon the written request of the Reorganized Debtor, Reorganized Additional Debtors, or a Settling Insurer, the Trustee shall provide such party copies of the general contractual releases executed by the Beneficiaries. To facilitate this Section 4.3(d)(i), all Insurance Settlement Amounts shall be segregated, and separately accounted for, by the Trust in the Settling Insurer Sub-Fund.

(ii) The Trustee shall segregate the Insurance Settlement Amount in the Settling Insurer Sub-Fund. Upon receipt of the full Insurance Settlement Amount, $32 million shall be held in reserve (the "Settling Insurer Sub-Fund Reserve"). At such time as 450 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be reduced to $14 million, and the released $18 million shall be available for Distributions to Abuse Claimants. At such time as 500 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be reduced to $9 million, and the released $5 million shall be available for Distributions to Abuse Claimants. At such time as 550 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be reduced to $6 million, and the released $3 million shall be available for Distributions to Abuse Claimants. At such time as 616 Abuse Claimants have signed the general contractual release of the Settling Insurers or been deemed to be Non-Communicative Claimants, the Settling Insurer Sub-Fund Reserve shall be dissolved, and the released $6 million shall be available for Distributions to Abuse Claimants. Provided, however, that, in addition to the foregoing, the sum of $1 million shall be reserved for

14

each of the following claims: 90209, 90242, 90275, 90304, 90329, 90354, 90385, 90391, 90397, 90406 and 90507.  Upon the written election by each such Claimant to take his or her share of the Insurance Settlement Amounts as set forth in the General Release, each $1 million reserved shall be released for Distributions to Abuse Claimants.  "Non-Communicative Abuse Claimant" shall mean an Abuse Claimant who has not responded to any Trustee communications within 1 year of the Effective Date.  For the avoidance of doubt, nothing in this Section 4.3(d) shall limit Article V.CC of the Plan (Trust Indemnification of Settling Insurers), and the obligations set forth therein shall survive the exhaustion or depletion of the Settling Insurer Sub-Fund Reserve.

(iii) No less frequently than quarterly, the Trustee shall provide a report to the Settling Insurers identifying the Abuse Claimants that are deemed to be Non-Communicative Abuse Claimants and those Abuse Claimants that have signed the general contractual release of the Settling Insurers.  The Trustee or his professionals will make themselves reasonably available to the Settling Insurers to address questions regarding the reporting provided to the Settling Insurers.

Section 4.4    *Medicare Reimbursement and Reporting Obligations.*

(a)    The Trust shall register as an RRE under the reporting provisions of section 111 of MMSEA (as defined in the Plan); provided that this requirement shall apply only to Channeled Claims that arose after December 5, 1980.

(b)    The Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)    Before remitting funds to Beneficiary's counsel, or to the Beneficiary if such Beneficiary is acting *pro se*, in respect of any Channeled Claim, the Trustee shall, if applicable, obtain a certification from said Beneficiary (or such Beneficiary's authorized decedent's estate representative) that (i) said Beneficiary shall provide or has provided to the Trust all information required for that Beneficiary under MMSEA; (ii) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Channeled Claim and (iii) said Beneficiary indemnifies the Trust for any such obligations.

(d)    To the extent that the Trust receives actual notice of any unsatisfied MMSEA lien, the Trust may (i) pay such lien from proceeds allocated to that Beneficiary, or (ii)

withhold distribution to such Beneficiary while such Beneficiary or Beneficiary's counsel resolves such lien.

## ARTICLE 5.
## TRUSTEE

Section 5.1    *Initial Trustee.*  The initial Trustee shall be Alan D. Halperin.

Section 5.2    *Term of Service, Successor Trustee.*

(a)    The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) below, (iii) his or her removal pursuant to Section 5.2(c) below, and (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)    The Trustee may resign at any time upon written notice to the TAC and filed with the Bankruptcy Court.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The Trustee may be removed by consent of at least two/thirds (2/3) majority of the TAC, at any time with or without cause, or by an order from the Bankruptcy Court, in the event that the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or on another reasonable basis as determined by at least two/thirds (2/3) majority of the TAC, provided the Trustee has received reasonable notice and an opportunity to be heard.  Cause shall include gross negligence, fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder.  For the avoidance of doubt, any removal of the Trustee pursuant to this Section 5.2(c) shall require the approval of the Bankruptcy Court.

Section 5.3    *Appointment of Successor Trustee.*

(a)    In the event of any vacancy in the office of the Trustee, including the death, resignation or removal of any Trustee or successor Trustee, such vacancy shall be filled by the TAC as set forth herein. The TAC will nominate an individual to serve as successor Trustee.  If the majority of the TAC then in office agrees upon a successor Trustee, then such successor may be appointed by a written agreement signed by each member of the TAC.  If the TAC cannot agree on a successor Trustee, then any member of the TAC may make an application to the Bankruptcy Court on notice to the other TAC members seeking appointment of a successor Trustee.

(b)    Immediately upon the appointment of any successor Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act.

16

No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c)    Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

Section 5.4    *Trustee and TAC Meetings.*

(a)    **Regular Updates**. The Trustee shall hold regular meetings with or regularly update the TAC not less than quarterly.

(b)    **Special Meetings**. Special meetings of the Trustee with the TAC may be called by the Trustee by giving written notice to the TAC not less than one (1) business day prior to the date of the meeting. Any such notice shall include the time, place and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail or other similar means of communication. Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice. Notice by overnight courier shall be deemed to have been given one (1) business day after the time that written notice is provided to such overnight courier. Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or if transmitted electronically, actually transmitted by electronic means to the recipient.

(c)    **Participation in Virtual Meetings**. The Trustee may convene, and persons may participate in, a meeting by teleconference, telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another. Participation in a meeting pursuant to this Section 5.4(c) shall constitute presence in person at such meeting.

(d)    **Waiver of Notice**. Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting. All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting. Attendance at a meeting shall constitute a waiver of notice of such meeting. Neither the business to be transacted at, nor the purpose of, any Trustee and TAC meeting need be specified in any waiver of notice.

(e)    **TAC Members**. The initial TAC members shall consist of the following (a) Jeffrey Anderson of Jeff Anderson & Associates PA, (b) Jeffrey Herman of Herman Law, and (c) Adam Slater of Slater Slater Schulman LLP provided that each such TAC member may designate another party from such TAC member's firm to act on such TAC Member's behalf. Except as otherwise set forth in the Trust Documents, the TAC shall act by majority vote of TAC members then serving, provided however, the TAC may continue to act in the event of one or more vacancies on the TAC, in which case majority vote of the TAC members then serving shall be required for action by the TAC. It is agreed and understood that in the event that during

17

any period in which the TAC has fewer than three members, TAC approval shall mean an unanimous vote.

(f)    **TAC Duties**.  The members of the TAC (and any of their designees) shall serve in a fiduciary capacity representing ~~holders of Abuse Claims~~the Beneficiaries. The TAC shall not have any fiduciary duties or responsibilities to any party other than ~~holders of Abuse Claims~~the Beneficiaries. Except for the duties and obligations expressed in this Trust Agreement, there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the TAC. To the extent that, at law or in equity, the TAC has duties (including fiduciary duties) and liabilities relating thereto to the Trust, the other parties hereto, or any Beneficiary, such duties and liabilities are replaced by the duties and liabilities of the TAC expressly set forth in this Trust Agreement. The applicable designated alternate TAC member for a TAC member may vote and act in that TAC member's stead when that TAC member is unavailable.

(g)    **TAC Access to Information**.  The TAC shall have reasonable access to the Trust's consultants and other advisors retained by the Trust, and information available to the Trustee, which access shall be made available as determined by the Trustee in his or her discretion.

(h)    **Term of Service**.  Each member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation, (iii) his or her removal, and (iv) the termination of the Trust.

(i)    **Resignation of TAC Member**.  A member of the TAC may resign at any time by written notice to the other members of the TAC and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than thirty (30) days after the date such notice is given, where practicable.

(j)    **Removal of TAC Member**.  A member of the TAC may be removed in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the member of the TAC has received reasonable notice and an opportunity to be heard. Other good cause shall mean fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated non-attendance at scheduled meetings. Such removal shall require the majority vote of the other members of the TAC and such removal shall take effect only upon the approval of the Bankruptcy Court

(k)    **Appointment of Successor TAC Members**.  In the event of a TAC member vacancy, the remaining TAC Members shall nominate a successor TAC Member.  If the TAC cannot agree on a successor, the Trustee may seek Bankruptcy Court approval of the appointment of a successor.

(l)  **Successor TAC Member Service**.  Each successor member of the TAC shall serve until the earliest of (i) his or her death, (ii) his or her resignation, (iii) his or her removal, and (iv) the termination of the Trust.

(m)  **No Personal Liability**.  No successor TAC member shall be liable personally for any act or omission of his or her predecessor TAC member. No successor TAC member shall have any duty to investigate the acts or omissions of his or her predecessor TAC member. No TAC member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 5.5  *Compensation and Expenses of Trustee.*

The Trustee shall receive compensation from the Trust for his or her services as Trustee. The Trustee shall be compensated on an hourly basis based initially on the rates set forth in **Exhibit 3**.  The Trustee's hourly rates may be adjusted annually on notice to the TAC.  The Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the Trustee in the course of carrying out his or her duties as Trustee in accordance with reasonable policies and procedures as may be adopted from time to time, including in connection with attending meetings of the Trustee and TAC.  The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Annual Report.

Section 5.6  *Trustee's Independence.*

(a)  The Trustee shall not, during his or her service, hold a financial interest in, act as attorney or agent for or serve as any other professional for the Reorganized Debtor or its affiliated persons, the Additional Debtors, or any Non-Settling Insurer.  No Trustee shall act as an attorney for, or otherwise represent, any Person in connection with the Debtor's or the Additional Debtors' Chapter 11 Cases or the Trust, who holds or held an Abuse Claim, in the Chapter 11 Case or against the Trust.

(b)  The Trustee shall be indemnified by the Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)  Persons dealing with the Trust and the Trustee, with respect to the affairs of the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust or the Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, the Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.7  *Standard of Care; Exculpation.*

(a)  As used herein, the term "**Trust Indemnified Party**" shall mean the Trustee, the Abuse Claims Reviewer, the TAC, and each of their respective members, officers,

19

employees, agents, consultants, lawyers, advisors or professionals (collectively, the "**Trust Indemnified Parties**").

(b)     No Trust Indemnified Party shall be liable to the Trust, any other Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation, operation, administration, enforcement or termination of the Trust, except in the case of such Trust Indemnified Party's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims. To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the Trust Indemnified Parties. None of the provisions of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.7 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of the willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary, consequential or special damages under any circumstances. Any action taken or omitted by the Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c)     To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 5.7 and its subparts.

Section 5.8     *Protective Provisions.*

(a)     In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder.  A successor to any Trustee shall succeed to and hold the same respective rights and benefits of the predecessor Trustee for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege

discussed herein as any such exceptions are hereby waived by all parties. For avoidance of doubt, the provisions of this subsection (a) apply regardless of whether the fees and expenses of counsel are paid by the Trustee or the Trust, and it is contemplated that the fees and expenses of the Trustee's counsel shall be paid by the Trust.

(b)     To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto to the Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to Section 5.7 herein.

(c)     In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.9     _Indemnification._

(a)     Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of New York, is entitled to indemnify, hold harmless and defend such persons against any and all liabilities, expenses, claims, damages or losses (including reasonable attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Trust may be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

21

(c)     The Trustee may purchase and maintain, as a Trust Operating Expense, appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified. Termination or modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

Section 5.10    _Bond._

The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## ARTICLE 6.

## GENERAL PROVISIONS

Section 6.1    _Irrevocability._

To the fullest extent permitted by applicable law, the Trust is irrevocable. The Settlors shall not (i) retain any ownership or residual interest whatsoever with respect to any Trust Assets, including, but not limited to, the funds transferred to the Trust, and (ii) have any rights or role with respect to the management or operation of the Trust or the Trustee's administration of the Trust.

Section 6.2    _Term; Termination._

(a)     The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the following provisions.

(b)     The Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution of the Trust when (i) all reasonably expected assets have been collected by the Trust, (ii) all Distributions have been made to the extent set forth in the Trust Allocation Protocol, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining

22

Trust obligations and Trust Operating Expenses in a manner consistent with the Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)      Following the dissolution and Distribution of the Trust Assets, the Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(d)      After termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until his or her duties hereunder have been fully performed.  The Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Trustee until Distribution of all the Trust Assets.  For purposes of this provision, Trust Assets will be deemed distributed when the total amount remaining in the Trust is less than $50,000 and no further actions are pending or have yet to be brought.  At the Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (i) the first anniversary of the Dissolution Date, and (ii) the date until which the Trustee is required by applicable law to retain such books, records, documents and files; provided however, that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents or files relating to the Trust without giving the Reorganized Debtor the opportunity to take control of such books, records, documents and/or files, provided, however, the Trustee shall not be required to provide the Reorganized Debtor with any privileged documents.  The costs of providing/transferring such books, records, documents and/or files shall be borne by the Reorganized Debtor

(e)      Upon termination of the Trust and accomplishment of all activities described in this Trust Agreement, the Trustee and his or her professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Trustee or his agents or representatives). The Trustee may, at the expense of the Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 6.3      _Outgoing Trustee Obligations._

In the event of the resignation or removal of the Trustee, the resigning or removed Trustee shall:

(a)      execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee, as necessary;

(b)     deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c)     otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d)     consistent with Section 5.3 hereof, irrevocably appoint the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment. The Bankruptcy Court also may enter such orders as are deemed necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee, but Bankruptcy Court approval of the appointment of a successor Trustee is not required.

Section 6.4    _Taxes._

(a)     The Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 et seq. of the Treasury Regulations promulgated under section 468B of the IRC, as amended (the "**QSF Regulations**").

(b)     The Trustee shall be the "administrator" of the Trust within the meaning of section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of the Trust as a qualified settlement fund, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations.  The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the Dissolution Date.

(c)     As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Trust shall make a good faith valuation of the Aggregate Settlement Consideration and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Trust shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)     The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or

24

local tax law with respect to any payment or Distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement. The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this Trust Agreement. In order to receive Distributions, all Beneficiaries shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes. The Trustee may refuse to make a payment or Distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the Trustee shall make such delayed payment or Distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Trust. In no event shall any funds of the Trust escheat to any federal, state or local government or any other entity.

Section 6.5   *Modification.*

(a)    Material modifications to this Trust Agreement, including Exhibits hereto, may be made only with the consent of the Trustee and the majority of the TAC and subject to the approval of the Bankruptcy Court; provided however, that the Trustee may amend this Trust Agreement from time to time without the consent, approval or other authorization of, but with notice on the Bankruptcy Court docket, to make minor corrective or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after notice to on the Bankruptcy Court docket, subject to any objection by a Beneficiary. Except as permitted pursuant to the preceding sentence, the Trustee shall not modify this Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court. The Trustee shall file notice of any modification of this Trust Agreement with the Bankruptcy Court.

(b)    Notwithstanding anything set forth in this Trust Agreement to the contrary, none of this Trust Agreement, nor any document related thereto shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction, Settling Insurer Supplemental Injunction (as defined in the Plan), or any other benefit, injunction, or release issued or granted in connection with the Insurance Settlement Agreements, Plan and Confirmation Order, or (iii) the Trust's qualified settlement fund status and grantor trust status under the QSF Regulations.

(c)    For the avoidance of doubt, this Section 6.5 is subject in all respects to Article IV.M of the Plan.

Section 6.6      *Severability.*

      If any provision of this Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 6.7      *Notices.*

      Any notices or other communications required or permitted hereunder to the following parties shall be in writing and hand delivered at the addresses designated below, or sent by email pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

      To the Trustee:

      Alan D. Halperin, Esq., Trustee (ahalperin@halperinlaw.net)
      Halperin Battaglia Benzija, LLP
      40 Wall Street, 37th floor
      New York NY 10005

with a copy (which shall not constitute notice) to:

      Donna H. Lieberman, Esq. (dlieberman@halperinlaw.net)
      Halperin Battaglia Benzija, LLP
      40 Wall Street, 37th floor
      New York NY 10005

with a copy to:

      James Stang, Esq. (jstang@pszjlaw.com)
      Pachulski Stang Ziehl & Jones LLP
      10100 Santa Monica Blvd., 13th Floor
      Los Angeles, CA  90067-4003

          - and -

      Brittany Michael, Esq. (bmichael@pszjlaw.com)
      Pachulski Stang Ziehl & Jones LLP
      780 Third Avenue, 34th Floor
      New York, NY  10036

If to the Reorganized Debtor:

The Diocese of Rockville Centre, New York
P.O. Box 9023
Rockville Centre, New York 11571-9023
Attn:  []

with copies to:

Corinne Ball, Esq. (cball@jonesday.com)
Todd Geremia, Esq. (tgeremia@jonesday.com)
Benjamin Rosenblum, Esq. (brosenblum@jonesday.com)
Andrew Butler, Esq. (abutler@jonesday.com)
Jones Day
250 Vesey Street
New York, NY 10281-1047

If to Reorganized Additional Debtors

William C. Heuer (wheuer@westermanllp.com)
Westerman Ball Ederer Miller Zucker & Sharfstein LLP
1201 RXR Plaza
Uniondale, New York 11556
Telephone No. (516) 622-9200
Facsimile No. (516) 622-9212

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 6.8    *Successors and Assigns.*

The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust, the Trustee, the TAC and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 and Section 5.2 above.

Section 6.9    *Limitation on Transferability; Beneficiaries' Interests.*

The Beneficiaries' interests in the Trust shall not (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio*; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Trust or the Trust Assets; (e) entitle the holders thereof to seek the removal or replacement of any

Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on Distributions; and (g) give rise to any rights to seek a partition or division of the Trust Assets. Beneficiaries shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of the Trust, but only to the extent such cash assets are declared by the Trustee to be distributable as Distributions in accordance with the Trust Documents. For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the Trust Documents.

Section 6.10   *Exemption from Registration.*

The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 6.11   *Entire Agreement; No Waiver.*

Except as to the Plan, the Confirmation Order, and the other Trust Documents, the entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 6.12   *Headings.* The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

Section 6.13   *Governing Law.*

This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. For the avoidance of doubt, none of the following provisions of New York law shall apply to the extent inconsistent with the terms of the Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or

other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of Trust Assets, (g) the existence of rights or interests (beneficial or otherwise) in Trust Assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee or the TAC set forth or referenced in this Trust Agreement.

Section 6.14   *Settlors' Representative.*

The Reorganized Debtor and Reorganized Additional Debtors shall cooperate with the Trustee as and to the extent set forth in the Plan.

Section 6.15   *Independent Legal and Tax Counsel.*

All parties to this Trust Agreement have been represented by counsel and/or advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 6.16   *Waiver of Jury Trial.*

Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

Section 6.17   *Jurisdiction.*

The Bankruptcy Court shall have continuing jurisdiction with respect to the Trust; provided however, the courts of the State of New York, including any federal court located therein, shall also have jurisdiction over the Trust only if and to the extent the Bankruptcy Court cannot exercise or abstains from exercising jurisdiction over the Trust.

Section 6.18   *Effectiveness.*

This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 6.19   *Counterpart Signatures.*

This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this Trust Agreement or any amendment hereto delivered by

29

facsimile, email or other means of electronic transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[SIGNATURE PAGES TO FOLLOW]*

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date of the Plan.

**SETTLORS:**

The Diocese of Rockville Centre, New York

By: _____

[Add Additional Debtors or can the Diocese sign on behalf of all?]


**TRUSTEE:**


By: _____


**TAC MEMBERS:**

**EXHIBIT 1**
**TRUST ALLOCATION PROTOCOL**

**[TO BE FILED SEPARATELY AS  PART OF PLAN SUPPLEMENT]**

**EXHIBIT 2**
**GENERAL CONTRACTUAL RELEASE FORM**

**[TO BE FILED AS PART OF PLAN SUPPLEMENT]**

**EXHIBIT 3**
**TRUSTEE INITIAL HOURLY RATES**


[TO COME]

| Summary report: Litera Compare for Word 11.9.1.1 Document comparison done on 12/4/2024 8:47:41 AM | |
|---|---|
| **Style name:** JD Blackline | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://naiweb.firm.jonesday.net/NAI/1541488065/3 | |
| **Modified DMS:** iw://naiweb.firm.jonesday.net/NAI/1542029219/6 | |
| **Changes:** | |
| Add | 10 |
| Delete | 3 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 13 |

## **EXHIBIT C**

Trust Allocation Protocol

## TRUST ALLOCATION PROTOCOL

### 1.    **PURPOSE**

The Trust Allocation Protocol is to provide for the distribution of funds to Abuse Claimants.

### 2.    **DEFINITIONS**

#### a.    **Capitalized Terms.**

Capitalized terms used shall have the meanings given them in the Plan or the Bankruptcy Code, unless otherwise defined, and such definitions are incorporated herein by reference.

"**Perpetrator of the Debtor**" Means a person: (1) who was an employee or other agent of the Debtor or any other Additional Debtor (as defined in the Plan) when such person committed an act of Abuse; or (2) for whom or for whose actions the Debtor or any other Additional Debtor (as defined in the Plan) was otherwise responsible.

"**Non-Settling Insurer Claimant**" means any Abuse Claimant whose Abuse Claim the Trustee believes in good faith to involve Abuse that falls, in whole or in part, during the period of policies of insurance issued by one or more Non-Settling Insurers, and who is authorized by the Trustee to pursue their Abuse Claim under the Plan. The Trustee may, but is not required to, consult the Debtor prior to making such a determination.

### 3.    **RULES OF INTERPRETATION AND GENERAL GUIDELINES**

#### a.    **Sole and Exclusive Method.**

The Plan and the Trust Agreement contemplate that the Trust will be established for payment of Abuse Claims.  The Plan and this protocol shall together be the sole and exclusive method by which an Abuse Claimant may seek distribution because of an Abuse Claim against the Debtor and/or Additional Debtors.

#### b.    **Conflict with Plan.**

The terms of the confirmed Plan (as it may be amended) or the Confirmation Order shall prevail if there is any conflict between the terms of the Plan and the terms of this allocation protocol.

#### c.    **Non-Compensatory Damages and Other Theories of Liability.**

In determining the distribution to any Abuse Claimant, punitive damages and damages that can be classified as economic damages that do not compensate the Abuse Claimant for bodily injury and/or emotional distress or mental anguish attributable to their bodily injury shall not be considered or allowed, even if these damages could have been considered or

allowed under applicable non-bankruptcy law. Any distribution to an Abuse Claimant shall be solely because of bodily injury and/or emotional distress or mental anguish attributable to the bodily injury to such Abuse Claimant.

### d. Withdrawal of Claims.

An Abuse Claimant can irrevocably withdraw an Abuse Claim at any time upon written notice to the Trustee and the Diocese. Once withdrawn, the Abuse Claim may not be reasserted against the Trust (including filing a Future Abuse Claim by Abuse Claimants who withdrew their Abuse Claims).

### e. Res Judicata Effect.

The Abuse Claims Reviewer's determination regarding an Abuse Claim shall have no preclusive, res judicata, judicial estoppel or similar effect outside of this Case as to any third party. The Abuse Claims Reviewer's determination shall not be used against any Abuse Claimant in any other matter, case or proceeding.

### f. Confidentiality and Privilege.

All information that the Abuse Claims Reviewer receives from any source about any Abuse Claimant shall be held in strict confidence and shall not be disclosed absent an Order of the Bankruptcy Court or the written consent of the Abuse Claimant (or such Claimant's counsel of record), *provided, however*, that the Abuse Claims Reviewer may share such information with the Trustee, or any party retained by the Trustee on behalf of the Trust who is an Authorized Party within the meaning of the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 333] (as thereafter amended, the "Bar Date Order"). All information that the Abuse Claims Reviewer received from any Abuse Claimant (including from counsel to such Claimant) shall be subject to a mediation privilege and receipt of such information by the Abuse Claims Reviewer shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

### g. Successor to Abuse Claimant.

An Abuse Claim filed by or on behalf of an Abuse Claimant who died before receiving a distribution shall be reviewed and scored in accordance with the terms of this Trust Allocation Protocol without penalty and shall be paid to the Abuse Claimant's successor, estate or survivors in accordance with applicable law. The executor or administrator of the estate or other person authorized under applicable law to administer the assets of the decedent (an "estate representative") shall provide documentation satisfactory in form and substance to the Trustee affirming such estate representative's authority to administer the Abuse Claim on behalf of the decedent Abuse Claimant's estate within 60 days of the Abuse Claims Reviewer or Trustee's request for such documentation.

4. **ABUSE CLAIMS REVIEWER**

Hon. William Bettinelli is the "Abuse Claims Reviewer" (the "Abuse Claims Reviewer") under the terms of this protocol and an order of the Bankruptcy Court. The Abuse Claims Reviewer shall review each of the Abuse Claims (as and when such Claims may be filed) and, according to the guidelines in section 5 below, make determinations upon which individual monetary distributions will be made subject to the Plan and the Trust Documents. The Abuse Claims Reviewer's review as to each Abuse Claimant shall be the final review, subject only to reconsideration as set forth in section 7 below and court review as set forth in section 5.2 below.

The Committee shall provide electronic copies of all Abuse Proof of Claim forms (including any attachments thereto and as the same may have been amended from time to time) to the Abuse Claims Reviewer.

5. **PROCEDURE FOR ALLOCATION AMONG ABUSE CLAIMS**

   a. **Proof of Abuse.**

The Abuse Claims Reviewer shall consider all of the facts and evidence presented by the Abuse Claimant in the Abuse Claimant's filed proof of claim, or in the claim form submitted by a Future Abuse Claimant. Abuse Claimants may provide supplemental evidence and information to the Abuse Claims Reviewer pursuant to the below procedures.

Future Abuse Claimants may send their claim form directly to the Trustee without filing such claim first with the Diocese's claims agent or the bankruptcy court. Future Abuse Claimants must submit their claim form at least sixty (60) days prior to the anniversary of the Effective Date to be included in the annual distribution. The Trustee shall transmit a copy of any claims received to the Abuse Claims Reviewer within a reasonable time after receipt thereof.

The Abuse Claims Reviewer may request additional information from an Abuse Claimant. Failure to respond to such request shall not be construed against the Abuse Claimant.

Each Abuse Claimant can submit a written statement (a "**Supplemental Submission**") to the Abuse Claims Reviewer. Any Supplemental Submission from an Abuse Claimant, other than Future Abuse Claimants, must be submitted to Committee counsel by November 26, 2024 (the "**Submission Deadline**"). Notice of the Submission Deadline (the "**Supplement Notice**") shall provide, among other things, the method for submission of Supplemental Statements. All notices by the Abuse Claims Reviewer to Abuse Claimants, including the Supplement Notice, shall be sent to each Abuse Claimant's counsel of record via email and first class mail at the address(es) provided in the applicable Abuse Proof of Claim Form.

The Supplemental Submission shall be no longer than 5 pages, single sided, double spaced with 12-point font; provided, however, that an Abuse Claimant not represented by counsel

may submit a handwritten Supplemental Submission not to exceed 5 single sided pages in length.  A Supplemental Submission shall be submitted by the Submission Deadline unless the Abuse Claims Reviewer determines, in his sole discretion, there is good cause for delay.  The Abuse Claims Reviewer, in his sole discretion, may allow an Abuse Claimant to exceed the page limit for the Supplemental Submission.   Abuse Claimant may submit a Supplemental Submission to the Abuse Claims Reviewer, instead of a written statement, via video that is no more than ten minutes.  An Abuse Claimant may submit either a written or video Supplemental Submission, but not both.  A video submission may only record the Abuse Claimant; *provided however* that an agent or representative of an Abuse Claimant may participate in the submission with the substance being from the claimant; provided, however, a video may include recording the Abuse Claimant's deposition if such recording is not more than ten minutes.  If an Abuse Claimant declines to submit a written or video Supplemental Submission, such declination shall not be held against the Abuse Claimant or be used as grounds to discount the claim.  **The medium of the Supplemental Submission (whether in writing or by video) shall not advantage or disadvantage an Abuse Claimant.**

 **b.  Guidelines for Allocation for Abuse Claims.**

  **i.  Initial Evaluation.**

The Abuse Claims Reviewer shall consider whether the Abuse Claimant has proven by credible evidence that the Abuse was perpetrated by a Perpetrator of the Debtor.  For Abuse that occurred before the Petition Date but a Claim was not filed by the Bar Date, the Abuse Claims Reviewer will additionally determine whether a valid legal excuse (as defined in the definition of Future Abuse Claim in the Plan) exists.  The Abuse Claims Reviewer shall give notice to the Abuse Claimant and the Trustee if he determines that the Abuse Claimant has not met the burden of proof (or, where applicable, has failed to establish the required valid legal excuse), and will provide the Abuse Claimant a reasonable opportunity to provide facts and/or legal basis to establish that the burden of proof or requirement for a valid legal excuse, as the case may be, has been satisfied.  The Abuse Claimant may appeal such adverse determination regarding the Claimant's qualification as a Future Abuse Claimant to the Bankruptcy Court.  On request of the Trustee, the Abuse Claims Reviewer shall evaluate the Claim under Section 5.2(d) to let the Trustee reserve sufficient amounts to pay the Abuse Claimant if the Abuse Claims Reviewer determines that the Abuse Claimant has met the burden of proof. If the Abuse Claimant is found to have not met its burden under this initial evaluation, the Abuse Claimant will not receive a distribution from the Trust.

### ii.  Evaluation Factors

Each Abuse Claim that has meet its burden under the initial evaluation described in section 5.2(a) will be evaluated by the Abuse Claims Reviewer.  The Abuse Claims Reviewer shall not consider the mere fact that a Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Claimant was convicted includes any fraud or misrepresentation.

### a.  Nature and Impact of Abuse

Each Claim will be scored on a scale of up to one hundred (100) based on these factors:

(1)  Nature of the Sexual Abuse:

    i.  Duration;

    ii.  Frequency/number of instances;

    iii.  Degree of intrusiveness into child's body (*e.g.* clothed/unclothed, masturbation by or of perpetrator, oral penetration, anal penetration, vaginal penetration);

    iv.  Level or severity of force/violence/coercion/threats;

    v.  Control of environment (*e.g.* boarding school, orphanage, trip under supervision of perpetrator, day school, employment relationship with Perpetrator of the Debtors);

    vi.  Number of Perpetrators of the Debtors that abused the Claimant;

    vii.  Physical pain suffered;

    viii.  Grooming; and/or

    ix.  Additional factors that may be provided by the Claimant.

(2)  Impact of Abuse:

    i.  School behavior problems;

    ii.  School academic problems;

    iii.  Getting into legal trouble as a minor;

  iv. Loss of faith;

  v. Damage to family relationships/ interpersonal difficulties;

  vi. Mental health symptoms, including:

   1. Depression;

   2. Suicide Attempt and suicidal ideation;

   3. Anxiety;

   4. Substance abuse;

   5. Sexual acting out;

   6. Runaway;

   7. Flashbacks; and/or

   8. Nightmares; and/or

  vii. Adult and current functioning:

   1. Criminal record as an adult;

   2. Underemployment/unemployment;

   3. Relationship problems;

   4. Substance abuse; and/or

  viii. The risk of the foregoing factors affecting the Abuse Claimant in the future based on the Abuse Claimant's age at the present time; and/or

  ix. Additional factors that may be provided by the Claimant.

**b. Additional Factors**

Level of participation by the Abuse Claimant in public/litigation events related to the Abuse Claims, including but not limited to:

  i. participation in litigation against the Diocese;

  ii. leadership role in helping sexual abuse survivors;

iii.   participation in criminal proceedings against a Perpetrator of the Debtor;

iv.   testimony at the Suffolk County Grand Jury; and/or

v.   filing of a lawsuit naming an Additional Debtor or Co-Insured in state court.

c.     There will be no consideration of an Abuse Claimant's claims against any other entity that may be liable for the abuse to the Abuse Claimant.

6.     **ADJUSTMENTS.**

   **a.  Consent**

   The Abuse Claim Reviewer has discretion to reduce by twenty percent (20%) to eighty percent (80%) based on whether there was a lack of consent for the at issue contact between the Abuse Claimant and the Perpetrator of the Debtor.  All contact that occurred prior to the Claimant's eighteenth birthday will be deemed as non-consensual.

   **b.  No Award for Non-Abuse.**

   The Abuse Claims Reviewer shall allocate zero (0) points for any Claim that is not an Abuse Claim.

   **c.  No Award for Released Claims.**

   The Abuse Claims Reviewer will award zero (0) points to any Claim that the Abuse Claims Reviewer determines was released by such Abuse Claimant prior to the Petition Date.

7.     **DETERMINATION OF POINT TO DOLLAR VALUE.**

The Abuse Claims Reviewer will arrive at a point total for each Abuse Claimant considering the above factors and will provide such determinations to the Trustee.

The Trustee shall calculate the value of an individual "point" after all Abuse Claims, except Future Abuse Claims, have been reviewed.  The point value will be determined by dividing (a) the total dollars in the amount funded to the Trust for the Abuse Claims and held by the Trust for the Abuse Claims after deducting reserves for expenses of the Trust, by (b) the total of points among the individual Abuse Claims.  For example, if there are 50 claimants awarded 10,000 points within a Claimant Pool, with a total settlement fund of $2 million, each point would be valued at $200.

8.    **DETERMINATIONS BY THE ABUSE CLAIMS REVIEWER AND REQUESTS FOR RECONSIDERATION AND APPEAL.**

The Trustee shall notify each Abuse Claimant in writing of the monetary distribution regarding the Abuse Claimant's Claim (the "**Allocated Payment**"), which distribution may be greater or smaller than the actual distribution to be received based on reserves established by the Trustee and the outcome of any reconsideration of claims. The Trustee shall send by electronic and/or first class mail this preliminary determination to the Abuse Claimant's counsel of record, or in the case of unrepresented parties, to the last address based on the Abuse Claimant's filed proof of claim.  The Abuse Claims Reviewer's determination shall be final unless the Abuse Claimant makes a timely request for the point award to be reconsidered by the Abuse Claims Reviewer.  The Abuse Claimant shall not have a right to any other appeal of the Abuse Claims Reviewer's point award.  The Abuse Claimant may request reconsideration of the Abuse Claims Reviewer's point award by delivering a written request for reconsideration to the Abuse Claims Reviewer within 10 calendar days after the mailing of notice of the preliminary monetary distribution.  The Abuse Claimant, with the request for reconsideration, may submit additional evidence and argument supporting such request upon a showing that such additional information could not have been provided under this protocol.  The Abuse Claims Reviewer shall have sole discretion to determine how to respond to the request for reconsideration.  The Abuse Claims Reviewer's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including a court.

9.    **MONETARY DISTRIBUTIONS**

   a.    **Distributions to Abuse Claimants (except Future Abuse Claimants)**

Once the Abuse Claims Reviewer's determinations are final, the Trustee shall make monetary distributions to the Abuse Claimants, except Future Abuse Claimants, in accordance with the terms of the Plan, the Trust Agreement, and this Trust Allocation Protocols.  Distributions to Non-Settling Insurer Claimants will be made in accordance with Section 10 below. To receive a monetary distribution from the Trust, an Abuse Claimant must execute the general contractual release in the form set out in the Plan Supplement and provide such other forms and information as may be required by the Trustee in accordance with the Trust Documents. If a Beneficiary elects to grant the general contractual release of the Settling Insurers also set forth in Exhibit 2, such Beneficiary will be entitled to a reward equal to such Beneficiary's pro rata share of the Settling Insurer Sub-Fund at such time as those funds are available for distribution to Abuse Claimants.

   b.    **Distributions to Future Abuse Claimants**

The Trustee shall pay Future Abuse Claimants in accordance with the terms of the Plan, Confirmation Order, and the Trust Documents, as follows:

   i.    The Trustee shall make a Distribution to Future Abuse Claimants at least once during every twelve (12) months after the Effective Date following the

Trust's receipt of the Additional Debtors Deferred Contribution and/or the CemCo Deferred Cash Contribution if and to the extent any such claims have been filed. The date of any such Distribution is referred to herein as a "Distribution Date."

    ii.   The value of a point allocated to the Future Abuse Claimants pursuant to this Allocation Protocol shall be equal to the value of a point allocated to all Class 4 Abuse Claimants (such amount, the "<u>Minimum Future Abuse Claim Amount</u>").

    iii.   Future Abuse Claimants will receive first priority of distributions from all Deferred Contributions up to their Minimum Future Abuse Claim Amount. After a Future Abuse Claimant has received his or her Minimum Future Abuse Claim Amount, the Future Abuse Claimant will share in any future distributions equally based on their pro rata point allowance with all other Abuse Claimants.

## 10.   <u>PROCEDURE FOR PURSUIT OF NON-SETTLING INSURER CLAIMS</u>

### a.  <u>Litigation Against Co-Defendant Parties</u>

For the avoidance of doubt, all Abuse Claimants are free to pursue litigation against any Co-Defendant Parties without any permission, oversight, or any restriction by the Trustee.

### b.  <u>Claim Pursuit Authorization.</u>

Upon written request to the Trustee, the Trustee may authorize Non-Settling Insurer Claimants, at such Non-Settling Insurer Claimants' expense, to pursue their Claims in any court of competent jurisdiction, subject to and in accordance with the Plan, only to determine any liability that the Debtor and/or any Additional Debtor may have regarding an Abuse Claim and the amount of that liability.

To the extent the Trustee enters into a settlement agreement (such settlement, a "**<u>Trust Insurance Settlement</u>**") with any Non-Settling Insurer that covers a Non-Settling Insurer Claimant's Abuse Claim (the policy or policies that cover such Claim(s) are a "**<u>Target Policy</u>**"), such Non-Settling Insurer Claimants shall receive a point enhancement (the "**<u>Claim Enhancement</u>**") to his or her point allocation. The Claim Enhancement shall be payable only from the proceeds of the distribution of payments from that Non-Settling Insurer. The Trust Advisory Committee shall vote on the appropriate Claim Enhancements for efforts to maximize recovery from the Non-Settling Insurer.

### c.  <u>Procedures with respect to Arrowood's Ancillary Receivership</u>

In exchange for the right to receive Distributions from the Settling Insurer payments to the Trust, the Abuse Claimants will assign to the Trust any recoveries due from (a) the Estate of Arrowood Indemnity Company and (b) the New York Property/Casualty

Security Fund administered by the New York Liquidation Bureau, which is part of the New York State Department of Financial Services, and which has been appointed as ancillary receiver of Arrowood by the Supreme Court of the State of New York; or (c) any other receiver, liquidator, liquidation bureau, guaranty association, or security fund that may provide recoveries in connection with Insurance Policies issued by Arrowood.

The Trust shall have the right to take any action, including but not limited to the execution and submission of documentation, on behalf of all Abuse Claimants as may be necessary to pursue any recoveries from: (1) the liquidation of Arrowood Indemnity Company, which is under the supervision of the Insurance Commissioner of Delaware (and his successors) as the appointed receiver of Arrowood; (2) the New York Property/Casualty Security Fund administered by the New York Liquidation Bureau, which is part of the New York State Department of Financial Services, and which has been appointed as ancillary receiver of Arrowood by the Supreme Court of the State of New York; or (3) any other receiver, liquidator, liquidation bureau, guaranty association, or security fund that may provide recoveries in connection with Insurance Policies issued by Arrowood.

If a holder of an Abuse Claim unreasonably fails to file a proof of claim with the ancillary receiver of Arrowood or unreasonably fails to render necessary assistance to the Trust in pursue of recovery from Arrowood, the holder of the Abuse Claim shall forfeit any distribution of payments received from Arrowood.

## **<u>EXHIBIT D</u>**

Trust Allocation Protocol Redline

## TRUST ALLOCATION PROTOCOL

1.    **PURPOSE**

The Trust Allocation Protocol is to provide for the distribution of funds to Abuse Claimants.

2.    **DEFINITIONS**

   a.    **Capitalized Terms.**

Capitalized terms used shall have the meanings given them in the Plan or the Bankruptcy Code, unless otherwise defined, and such definitions are incorporated herein by reference.

   "**Perpetrator of the Debtor**" Means a person: (1) who was an employee or other agent of the Debtor or any other Additional Debtor (as defined in the Plan) when such person committed an act of Abuse; or (2) for whom or for whose actions the Debtor or any other Additional Debtor (as defined in the Plan) was otherwise responsible.

   "**Non-Settling Insurer Claimant**" means any Abuse Claimant whose Abuse Claim the Trustee believes in good faith to involve Abuse that falls, in whole or in part, during the period of policies of insurance issued by one or more Non-Settling Insurers, and who is authorized by the Trustee to pursue their Abuse Claim under the Plan. The Trustee may, but is not required to, consult the Debtor prior to making such a determination.

3.    **RULES OF INTERPRETATION AND GENERAL GUIDELINES**

   a.    **Sole and Exclusive Method.**

The Plan and the Trust Agreement contemplate that the Trust will be established for payment of Abuse Claims.  The Plan and this protocol shall together be the sole and exclusive method by which an Abuse Claimant may seek distribution because of an Abuse Claim against the Debtor and/or Additional Debtors.

   b.    **Conflict with Plan.**

The terms of the confirmed Plan (as it may be amended) or the Confirmation Order shall prevail if there is any conflict between the terms of the Plan and the terms of this allocation protocol.

   c.    **Non-Compensatory Damages and Other Theories of Liability.**

In determining the distribution to any Abuse Claimant, punitive damages and damages that can be classified as economic damages that do not compensate the Abuse Claimant

for bodily injury and/or emotional distress or mental anguish attributable to their bodily injury shall not be considered or allowed, even if these damages could have been considered or allowed under applicable non-bankruptcy law. Any distribution to an Abuse Claimant shall be solely because of bodily injury and/or emotional distress or mental anguish attributable to the bodily injury to such Abuse Claimant.

### d. Withdrawal of Claims.

An Abuse Claimant can irrevocably withdraw an Abuse Claim at any time upon written notice to the Trustee and the Diocese. Once withdrawn, the Abuse Claim may not be reasserted against the Trust (including filing a Future Abuse Claim by Abuse Claimants who withdrew their Abuse Claims).

### e. Res Judicata Effect.

The Abuse Claims Reviewer's determination regarding an Abuse Claim shall have no preclusive, res judicata, judicial estoppel or similar effect outside of this Case as to any third party. The Abuse Claims Reviewer's determination shall not be used against any Abuse Claimant in any other matter, case or proceeding.

### f. Confidentiality and Privilege.

All information that the Abuse Claims Reviewer receives from any source about any Abuse Claimant shall be held in strict confidence and shall not be disclosed absent an Order of the Bankruptcy Court or the written consent of the Abuse Claimant (or such Claimant's counsel of record), *provided, however*, that the Abuse Claims Reviewer may share such information with the Trustee, or any party retained by the Trustee on behalf of the Trust who is an Authorized Party within the meaning of the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 333] (as thereafter amended, the "Bar Date Order"). All information that the Abuse Claims Reviewer received from any Abuse Claimant (including from counsel to such Claimant) shall be subject to a mediation privilege and receipt of such information by the Abuse Claims Reviewer shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

### g. Successor to Abuse Claimant.

An Abuse Claim filed by or on behalf of an Abuse Claimant who died before receiving a distribution shall be reviewed and scored in accordance with the terms of this Trust Allocation Protocol without penalty and shall be paid to the Abuse Claimant's successor, estate or survivors in accordance with applicable law. The executor or administrator of the estate or other person authorized under applicable law to administer the assets of the decedent (an "estate representative") shall provide documentation satisfactory in form and substance to the Trustee affirming such estate representative's authority to administer the Abuse Claim on behalf of the decedent

Abuse Claimant's estate within 60 days of the Abuse Claims Reviewer or Trustee's request for such documentation.

4.    **ABUSE CLAIMS REVIEWER**

Hon. William Bettinelli is the "Abuse Claims Reviewer" (the "Abuse Claims Reviewer") under the terms of this protocol and an order of the Bankruptcy Court.  The Abuse Claims Reviewer shall review each of the Abuse Claims (as and when such Claims may be filed) and, according to the guidelines in section 5 below, make determinations upon which individual monetary distributions will be made subject to the Plan and the Trust Documents.  The Abuse Claims Reviewer's review as to each Abuse Claimant shall be the final review, subject only to reconsideration as set forth in section 7 below and court review as set forth in section 5.2 below.

The Committee shall provide electronic copies of all Abuse Proof of Claim forms (including any attachments thereto and as the same may have been amended from time to time) to the Abuse Claims Reviewer.

5.    **PROCEDURE FOR ALLOCATION
      AMONG ABUSE CLAIMS**

   a.   **Proof of Abuse.**

The Abuse Claims Reviewer shall consider all of the facts and evidence presented by the Abuse Claimant in the Abuse Claimant's filed proof of claim, or in the claim form submitted by a Future Abuse Claimant. Abuse Claimants may provide supplemental evidence and information to the Abuse Claims Reviewer pursuant to the below procedures.

Future Abuse Claimants may send their claim form directly to the Trustee without filing such claim first with the Diocese's claims agent or the bankruptcy court.  Future Abuse Claimants must submit their claim form at least sixty (60) days prior to the anniversary of the Effective Date to be included in the annual distribution. The Trustee shall transmit a copy of any claims received to the Abuse Claims Reviewer within a reasonable time after receipt thereof.

The Abuse Claims Reviewer may request additional information from an Abuse Claimant.  Failure to respond to such request shall not be construed against the Abuse Claimant.

Each Abuse Claimant can submit a written statement (a "**Supplemental Submission**") to the Abuse Claims Reviewer.  Any Supplemental Submission from an Abuse Claimant, other than Future Abuse Claimants, must be submitted to Committee counsel by November 26, 2024 (the "**Submission Deadline**").  Notice of the Submission Deadline (the "**Supplement Notice**") shall provide, among other things, the method for submission of Supplemental Statements.  All notices by the Abuse Claims Reviewer to Abuse Claimants, including the Supplement Notice, shall be sent to each Abuse Claimant's

counsel of record via email and first class mail at the address(es) provided in the applicable Abuse Proof of Claim Form.

The Supplemental Submission shall be no longer than 5 pages, single sided, double spaced with 12-point font; provided, however, that an Abuse Claimant not represented by counsel may submit a handwritten Supplemental Submission not to exceed 5 single sided pages in length. A Supplemental Submission shall be submitted by the Submission Deadline unless the Abuse Claims Reviewer determines, in his sole discretion, there is good cause for delay. The Abuse Claims Reviewer, in his sole discretion, may allow an Abuse Claimant to exceed the page limit for the Supplemental Submission. Abuse Claimant may submit a Supplemental Submission to the Abuse Claims Reviewer, instead of a written statement, via video that is no more than ten minutes. An Abuse Claimant may submit either a written or video Supplemental Submission, but not both. A video submission may only record the Abuse Claimant; *provided however* that an agent or representative of an Abuse Claimant may participate in the submission with the substance being from the claimant; provided, however, a video may include recording the Abuse Claimant's deposition if such recording is not more than ten minutes. If an Abuse Claimant declines to submit a written or video Supplemental Submission, such declination shall not be held against the Abuse Claimant or be used as grounds to discount the claim. **The medium of the Supplemental Submission (whether in writing or by video) shall not advantage or disadvantage an Abuse Claimant.**

   **b.** <u>**Guidelines for Allocation for Abuse Claims.**</u>

      **i.   Initial Evaluation.**

The Abuse Claims Reviewer shall consider whether the Abuse Claimant has proven by credible evidence that the Abuse was perpetrated by a Perpetrator of the Debtor. For Abuse that occurred before the Petition Date but a Claim was not filed by the Bar Date, the Abuse Claims Reviewer will additionally determine whether a valid legal excuse (as defined in the definition of Future Abuse Claim in the Plan) exists. The Abuse Claims Reviewer shall give notice to the Abuse Claimant and the Trustee if he determines that the Abuse Claimant has not met the burden of proof (or, where applicable, has failed to establish the required valid legal excuse), and will provide the Abuse Claimant a reasonable opportunity to provide facts and/or legal basis to establish that the burden of proof or requirement for a valid legal excuse, as the case may be, has been satisfied. The Abuse Claimant may appeal such adverse determination regarding the Claimant's qualification as a Future Abuse Claimant to the Bankruptcy Court. On request of the Trustee, the Abuse Claims Reviewer shall evaluate the Claim under Section 5.2(d) to let the Trustee reserve sufficient amounts to pay the Abuse Claimant if the Abuse Claims Reviewer determines that the Abuse Claimant has met the burden of proof. If the Abuse Claimant is found to have not met its burden under this initial evaluation, the Abuse Claimant will not receive a distribution from the Trust.

### ii.  Evaluation Factors

Each Abuse Claim that has meet its burden under the initial evaluation described in section 5.2(a) will be evaluated by the Abuse Claims Reviewer.  The Abuse Claims Reviewer shall not consider the mere fact that a Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Claimant was convicted includes any fraud or misrepresentation.

### a.  Nature and Impact of Abuse

Each Claim will be scored on a scale of up to one hundred (100) based on these factors:

(1)  Nature of the Sexual Abuse:

  i.  Duration;

  ii.  Frequency/number of instances;

  iii.  Degree of intrusiveness into child's body (*e.g.* clothed/unclothed, masturbation by or of perpetrator, oral penetration, anal penetration, vaginal penetration);

  iv.  Level or severity of force/violence/coercion/threats;

  v.  Control of environment (*e.g.* boarding school, orphanage, trip under supervision of perpetrator, day school, employment relationship with Perpetrator of the Debtors);

  vi.  Number of Perpetrators of the Debtors that abused the Claimant;

  vii.  Physical pain suffered;

  viii.  Grooming; and/or

  ix.  Additional factors that may be provided by the Claimant.

(2)  Impact of Abuse:

  i.  School behavior problems;

  ii.  School academic problems;

  iii.  Getting into legal trouble as a minor;

    iv.    Loss of faith;

    v.    Damage to family relationships/ interpersonal difficulties;

    vi.    Mental health symptoms, including:

        1.    Depression;

        2.    Suicide Attempt and suicidal ideation;

        3.    Anxiety;

        4.    Substance abuse;

        5.    Sexual acting out;

        6.    Runaway;

        7.    Flashbacks; and/or

        8.    Nightmares; and/or

    vii.    Adult and current functioning:

        1.    Criminal record as an adult;

        2.    Underemployment/unemployment;

        3.    Relationship problems;

        4.    Substance abuse; and/or

    viii.    The risk of the foregoing factors affecting the Abuse Claimant in the future based on the Abuse Claimant's age at the present time; and/or

    ix.    Additional factors that may be provided by the Claimant.

**b.    Additional Factors**

Level of participation by the Abuse Claimant in public/litigation events related to the Abuse Claims, including but not limited to:

    i.    participation in litigation against the Diocese;

    ii.    leadership role in helping sexual abuse survivors;

iii.    participation in criminal proceedings against a Perpetrator of the Debtor;

iv.    testimony at the Suffolk County Grand Jury; and/or

v.    filing of a lawsuit naming an Additional Debtor or Co-Insured in state court.

c.    There will be no consideration of an Abuse Claimant's claims against any other entity that may be liable for the abuse to the Abuse Claimant.

6.    **ADJUSTMENTS.**

    **a. Consent**

The Abuse Claim Reviewer has discretion to reduce by twenty percent (20%) to eighty percent (80%) based on whether there was a lack of consent for the at issue contact between the Abuse Claimant and the Perpetrator of the Debtor.  All contact that occurred prior to the Claimant's eighteenth birthday will be deemed as non-consensual.

    **b. No Award for Non-Abuse.**

The Abuse Claims Reviewer shall allocate zero (0) points for any Claim that is not an Abuse Claim.

    **c. No Award for Released Claims.**

The Abuse Claims Reviewer will award zero (0) points to any Claim that the Abuse Claims Reviewer determines was released by such Abuse Claimant prior to the Petition Date.

7.    **DETERMINATION OF POINT TO DOLLAR VALUE.**

The Abuse Claims Reviewer will arrive at a point total for each Abuse Claimant considering the above factors and will provide such determinations to the Trustee.

The Trustee shall calculate the value of an individual "point" after all Abuse Claims, except Future Abuse Claims, have been reviewed.  The point value will be determined by dividing (a) the total dollars in the amount funded to the Trust for the Abuse Claims and held by the Trust for the Abuse Claims after deducting reserves for expenses of the Trust, by (b) the total of points among the individual Abuse Claims.  For example, if there are

50 claimants awarded 10,000 points within a Claimant Pool, with a total settlement fund of $2 million, each point would be valued at $200.

**8.    DETERMINATIONS BY THE ABUSE CLAIMS REVIEWER AND REQUESTS FOR RECONSIDERATION AND APPEAL.**

The Trustee shall notify each Abuse Claimant in writing of the monetary distribution regarding the Abuse Claimant's Claim (the "**Allocated Payment**"), which distribution may be greater or smaller than the actual distribution to be received based on reserves established by the Trustee and the outcome of any reconsideration of claims. The Trustee shall send by electronic and/or first class mail this preliminary determination to the Abuse Claimant's counsel of record, or in the case of unrepresented parties, to the last address based on the Abuse Claimant's filed proof of claim.  The Abuse Claims Reviewer's determination shall be final unless the Abuse Claimant makes a timely request for the point award to be reconsidered by the Abuse Claims Reviewer.  The Abuse Claimant shall not have a right to any other appeal of the Abuse Claims Reviewer's point award.  The Abuse Claimant may request reconsideration of the Abuse Claims Reviewer's point award by delivering a written request for reconsideration to the Abuse Claims Reviewer within 10 calendar days after the mailing of notice of the preliminary monetary distribution.  The Abuse Claimant, with the request for reconsideration, may submit additional evidence and argument supporting such request upon a showing that such additional information could not have been provided under this protocol.  The Abuse Claims Reviewer shall have sole discretion to determine how to respond to the request for reconsideration.  The Abuse Claims Reviewer's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including a court.

**9.    MONETARY DISTRIBUTIONS**

   **a.    Distributions to Abuse Claimants (except Future Abuse Claimants)**

Once the Abuse Claims Reviewer's determinations are final, the Trustee shall make monetary distributions to the Abuse Claimants, except Future Abuse Claimants, in accordance with the terms of the Plan, the Trust Agreement, and this Trust Allocation Protocols.  Distributions to Non-Settling Insurer Claimants will be made in accordance with Section 10 below. To receive a monetary distribution from the Trust, an Abuse Claimant must execute the general contractual release in the form set out in the Plan Supplement and provide such other forms and information as may be required by the Trustee in accordance with the Trust Documents. If a Beneficiary elects to grant the general contractual release of the Settling Insurers also set forth in Exhibit 2, such Beneficiary will be entitled to a reward equal to such Beneficiary's pro rata share of the Settling Insurer Sub-Fund at such time as those funds are available for distribution to Abuse Claimants.

### b.  Distributions to Future Abuse Claimants

The Trustee shall pay Future Abuse Claimants in accordance with the terms of the Plan, Confirmation Order, and the Trust Documents, as follows:

    i.  The Trustee shall make a Distribution to Future Abuse Claimants at least once during every twelve (12) months after the Effective Date following the Trust's receipt of the Additional Debtors Deferred Contribution and/or the CemCo Deferred Cash Contribution if and to the extent any such claims have been filed. The date of any such Distribution is referred to herein as a "Distribution Date."

    ii.  The value of a point allocated to the Future Abuse Claimants pursuant to this Allocation Protocol shall be equal to the value of a point allocated to all Class 4 Abuse Claimants (such amount, the "Minimum Future Abuse Claim Amount").

    iii.  Future Abuse Claimants will receive first priority of distributions from all Deferred Contributions up to their Minimum Future Abuse Claim Amount. After a Future Abuse Claimant has received his or her Minimum Future Abuse Claim Amount, the Future Abuse Claimant will share in any future distributions equally based on their pro rata point allowance with all other Abuse Claimants.

## 10.    PROCEDURE FOR PURSUIT OF NON-SETTLING INSURER CLAIMS

### a.  Litigation Against Co-Defendant Parties

For the avoidance of doubt, all Abuse Claimants are free to pursue litigation against any Co-Defendant Parties without any permission, oversight, or any restriction by the Trustee.

### b.  Claim Pursuit Authorization.

Upon written request to the Trustee, the Trustee may authorize Non-Settling Insurer Claimants, at such Non-Settling Insurer Claimants' expense, to pursue their Claims in any court of competent jurisdiction, subject to and in accordance with the Plan, only to determine any liability that the Debtor and/or any Additional Debtor may have regarding an Abuse Claim and the amount of that liability.

To the extent the Trustee enters into a settlement agreement (such settlement, a "**Trust Insurance Settlement**") with any Non-Settling Insurer that covers a Non-Settling Insurer Claimant's Abuse Claim (the policy or policies that cover such Claim(s) are a "**Target Policy**"), such Non-Settling Insurer Claimants shall receive a point enhancement (the "**Claim Enhancement**") to his or her point allocation.  The Claim Enhancement shall be payable only from the proceeds of the distribution of payments from that Non-Settling

Insurer.   The Trust Advisory Committee shall vote on the appropriate Claim Enhancements for efforts to maximize recovery from the Non-Settling Insurer.

### c.   <u>Procedures with respect to Arrowood's Ancillary Receivership</u>

In exchange for the right to receive Distributions from the Settling Insurer payments to the Trust, the Abuse Claimants will assign to the Trust any recoveries due from (a) the Estate of Arrowood Indemnity Company and (b) the New York Property/Casualty Security Fund administered by the New York Liquidation Bureau, which is part of the New York State Department of Financial Services, and which has been appointed as ancillary receiver of Arrowood by the Supreme Court of the State of New York; or (c) any other receiver, liquidator, liquidation bureau, guaranty association, or security fund that may provide recoveries in connection with Insurance Policies issued by Arrowood.

The Trust shall have the right to take any action, including but not limited to the execution and submission of documentation, on behalf of all Abuse Claimants as may be necessary to pursue any recoveries from: (1) the liquidation of Arrowood Indemnity Company, which is under the supervision of the Insurance Commissioner of Delaware (and his successors) as the appointed receiver of Arrowood; (2) the New York Property/Casualty Security Fund administered by the New York Liquidation Bureau, which is part of the New York State Department of Financial Services, and which has been appointed as ancillary receiver of Arrowood by the Supreme Court of the State of New York; or (3) any other receiver, liquidator, liquidation bureau, guaranty association, or security fund that may provide recoveries in connection with Insurance Policies issued by Arrowood.

If a holder of an Abuse Claim unreasonably fails to file a proof of claim with the ancillary receiver of Arrowood or unreasonably fails to render necessary assistance to the Trust in pursue of recovery from Arrowood, the holder of the Abuse Claim shall forfeit any distribution of payments received from Arrowood.

| Summary report: Litera Compare for Word 11.9.1.1 Document comparison done on 12/4/2024 7:50:04 AM | |
|---|---|
| **Style name:** JD Blackline | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://naiweb.firm.jonesday.net/NAI/1541714014/1 | |
| **Modified DMS:** iw://naiweb.firm.jonesday.net/NAI/1542029104/1 | |
| **Changes:** | |
| Add | 1 |
| Delete | 0 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1 |

## **EXHIBIT E**

Form of Release

**EXHIBIT F**
**(FORM OF RELEASE)**

## GENERAL RELEASE AGREEMENT

This General Release Agreement (this "Release") is made and entered into by [___ _____] ("Claimant"), pursuant to the *Chapter 11 Plan of Reorganization Proposed by The Roman Catholic Diocese of Rockville Centre, New York and Additional Debtors* (as it may be amended or supplemented, the "Plan"), filed by The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor") and 136 parishes (the "Additional Debtors") in their jointly-administered bankruptcy cases captioned *In re The Roman Catholic Diocese of Rockville Centre, New York* (Case No. 20-12345, Bankr. S.D.N.Y.) (the "Chapter 11 Cases"), and in connection with the receipt of distributions from the Trust[1] under the Trust Agreement and the Trust Allocation Protocol. **All capitalized terms in this Release are defined terms in the Plan and they have the meanings ascribed to them in the Plan.**

> **YOU MUST EXECUTE AND DELIVER THIS RELEASE**
> **TO BE ENTITLED TO RECEIVE COMPENSATION FROM THE TRUST**

WHEREAS, Claimant has asserted an Abuse Claim against the Debtor and/or Additional Debtors;

WHEREAS, on [_____], 2024, the Court entered an order confirming the Plan; and

WHEREAS, the Effective Date of the Plan occurred on [_____], 2024;

NOW, THEREFORE, in consideration of the treatment to be provided to Claimant's Abuse Claim under the Plan, the Trust Agreement, and the Trust Allocation Protocol, Claimant hereby irrevocably covenants and agrees as follows:

1.     In addition to the other funds available in the Trust for the payment of Abuse Claims, the Settling Insurers (excluding Ecclesia) are expected to provide $85,525,000 for the payment of Abuse Claims. A Claimant may elect on the signature page hereto to take his or her share of the Insurance Settlement Amounts. A Claimant who elects to take his or her share of the Insurance Settlement Amounts will receive an enhanced Trust Distribution, which is estimated, once all the funds due to be contributed to the Trust are contributed and are available to pay Abuse Claims, to be approximately 36% higher than would be received by a Claimant who elects not to take his or her share of the Insurance Settlement Amounts ("Non-Electing Claimant"). In such event, such Non-Electing Claimant reserves any direct Claim against a Settling Insurer that is (a) premised on an independent legal duty owed to such Claimant by an Insurer and (b) is outside the jurisdiction of the Bankruptcy Court, if any such Claim exists.

2.     Upon electing to receive a share of Insurance Settlement Amounts on the signature page hereto, Claimant, on Claimant's own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, heirs, next

---

[1]     All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Disclosure Statement, Plan or in the Confirmation Order, as applicable.

of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or Entity to the extent he, she, or it is entitled to assert any claim on Claimant's behalf, including, but not limited to, any legal representative(s), does hereby as of the Effective Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against the Settling Insurers from and with respect to any and all Channeled Claims. Claimant covenants and agrees that Claimant will honor the release as set forth herein, and, further, that Claimant will not knowingly (i) institute or continue prosecution of a lawsuit or other action against any Settling Insurer based upon, arising out of, or relating to any Channeled Claims, (ii) knowingly participate, assist, or cooperate in any such action, or (iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

3.      Claimant, on Claimant's own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or Entity to the extent he, she, or it is entitled to assert any claim on Claimant's behalf, including, but not limited to, any legal representative(s), does hereby as of the Effective Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully forever discharge, and covenant not to knowingly sue or continue prosecution against the Debtor or Additional Debtors from and with respect to any and all Channeled Claims; provided, however, that such discharge with respect to the Debtor and Additional Debtor shall be subject in all respects to the Plan, including Article XI.O of the Plan.

4.      Claimant hereby acknowledges and agrees that Claimant is subject to and bound by Plan, including the releases and injunctions as set forth in Article XI.I of the Plan, and further that Claimant will not knowingly (i) institute or continue prosecution of a lawsuit or other action in violation of the Plan, (ii) knowingly participate, assist, or cooperate in any such action, or (iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

5.      Claimant hereby acknowledges that, pursuant to the Plan, the Confirmation Order, the Sale Order, and the injunctions contained in the foregoing, the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be against the Trust. Claimant hereby further acknowledges that Claimant shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, except as set forth in Article XI.O of the Plan and in compliance with the Trust Allocation Protocol.

6.      In further consideration of the benefit of the opportunity to seek compensation from the Trust, as of the Effective Date, Claimant shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of, the Trust and the Trustee arising from my failure to comply with the terms of this Release.

7.      Claimant acknowledges that the Trust is not providing any tax advice with respect to the receipt of any compensation or any component thereof, and Claimant understands and agrees that Claimant shall be solely responsible for compliance with all tax laws with respect to any compensation received, to the extent applicable.

8.      Claimant represents and warrants that Claimant is the sole holder of the Abuse Claim that Claimant has asserted against the Protected Parties, and that Claimant has not assigned, transferred or granted any interest in such Abuse Claim to any other Entity.

9.      Claimant represents and warrants that Claimant will provide for the payment and/or resolution of any obligation owing or potentially owing under the Medicare Secondary Payer Statute relating to Claimant's Abuse Claim.

10.      Claimant agrees to provide the Trustee with any information necessary to comply with reporting obligations arising under the MMSEA, and has provided or will provide for the payments/and or resolution of any obligations owing or potentially owing under the MSPA relating to Claimant's Abuse Claim and any Distribution from the Trust.  Claimant acknowledges and agrees that if Claimant does have any obligations owing or potentially owing under the MSPA relating to any Abuse Claim or Distribution from the Trust, the Trustee may withhold from any payment directly or indirectly to Claimant funds sufficient to assure that any obligations owing or potentially owing under the MSPA relating to such Abuse Claim are paid to the applicable agency.

11.      Claimant agrees that the Trust shall have the right to take any action, including but not limited to the execution and submission of documentation, as may be necessary to pursue any recoveries from: (1) the liquidation of Arrowood Indemnity Company, which is under the supervision of the Insurance Commissioner of Delaware (and his successors) as the appointed receiver of Arrowood; (2) the New York Property/Casualty Security Fund administered by the New York Liquidation Bureau, which is part of the New York State Department of Financial Services, and the Supreme Court of the State of New York has appointed as an ancillary receiver of Arrowood; or (3) any other liquidator, liquidation bureau, guaranty association, or security fund that may provide recoveries in connection with Insurance Policies issued by Arrowood. Any recoveries from the foregoing obtained by the Trust, or by the Claimant, will become Trust Assets to be distributed pursuant to the Trust Allocation Procedures. Claimant agrees, to the extent Claimant has an Abuse Claim covered by Insurance Policies issued by Arrowood, to reasonably cooperate with the Trust in pursuing recoveries on such Claim.

12.      Claimant acknowledges that Claimant is voluntarily and freely entering into this Release in exchange for consideration.   Claimant further declares that Claimant is or has been given the opportunity to be represented by legal counsel and has had the opportunity to receive legal advice prior to entering into this Release.

13.      The provisions of this Release shall be binding upon Claimant, and upon Claimant's heirs, successors, assigns, agents, and representatives.

14.      The beneficiaries of this release are the Protected Parties and the other parties that are the beneficiaries of the releases referenced in Article XI.I. of the Plan, and this Agreement may be enforced by any of them.

15.      This Agreement, the Plan, the Trust Agreement, and the Trust Allocation Protocol contain the entire understanding of the parties.  Any modification of any of the provisions of this Release shall be effectively only if made in writing and executed by the Claimant and all Protected Parties.

16.    This Release shall be governed and construed pursuant to the laws of the State of New York, without regard to its conflicts of law principles.

*[signature page follows]*

| **I ELECT TO RECEIVE A SHARE OF INSURANCE SETTLEMENT AMOUNTS AND RELEASE THE SETTLING INSURERS AS SET FORTH IN PARAGRAPH 2 ABOVE** |
| --- |
| **Signature:** |

        IN WITNESS THEREOF, this Release has been executed by Claimant (or, in the case of death or legal disability, Claimant's duly-authorized legal representative acting under power of attorney) and delivered to the Trustee as of the date set forth below.

Dated: [_____], 2024

_____
Signature

_____
Print or type full name of Claimant

_____
Claim number (if known)

_____
Address

_____
Claimant's date of birth

_____
Claimant's full Social Security Number

# **EXHIBIT F**

Form of Release Redline

**EXHIBIT F**
**(FORM OF RELEASE)**

## GENERAL RELEASE AGREEMENT

This General Release Agreement (this "Release") is made and entered into by [___ _____] ("Claimant"), pursuant to the *Chapter 11 Plan of Reorganization Proposed by The Roman Catholic Diocese of Rockville Centre, New York and Additional Debtors* (as it may be amended or supplemented, the "Plan"), filed by The Roman Catholic Diocese of Rockville Centre, New York (the "Debtor") and 136 parishes (the "Additional Debtors") in their jointly-administered bankruptcy cases captioned *In re The Roman Catholic Diocese of Rockville Centre, New York* (Case No. 20-12345, Bankr. S.D.N.Y.) (the "Chapter 11 Cases"), and in connection with the receipt of distributions from the Trust[1] under the Trust Agreement and the Trust Allocation Protocol. **All capitalized terms in this Release are defined terms in the Plan and they have the meanings ascribed to them in the Plan.**

> ### YOU MUST EXECUTE AND DELIVER THIS RELEASE
> ### TO BE ENTITLED TO RECEIVE COMPENSATION FROM THE TRUST

WHEREAS, Claimant has asserted an Abuse Claim against the Debtor and/or Additional Debtors;

WHEREAS, on [_____], 2024, the Court entered an order confirming the Plan; and

WHEREAS, the Effective Date of the Plan occurred on [_____], 2024;

NOW, THEREFORE, in consideration of the treatment to be provided to Claimant's Abuse Claim under the Plan, the Trust Agreement, and the Trust Allocation Protocol, Claimant hereby irrevocably covenants and agrees as follows:

1. In addition to the other funds available in the Trust for the payment of Abuse Claims, the Settling Insurers (excluding Ecclesia) are expected to provide $85,525,000 for the payment of Abuse Claims. A Claimant may elect on the signature page hereto to take his or her share of the Insurance Settlement Amounts. A Claimant who elects to take his or her share of the Insurance Settlement Amounts will receive an enhanced Trust Distribution, which is estimated, once all the funds due to be contributed to the Trust are contributed and are available to pay Abuse Claims, to be approximately 36% higher than would be received by a Claimant who elects not to take his or her share of the Insurance Settlement Amounts ("Non-Electing Claimant"). In such event, such Non-Electing Claimant reserves any direct Claim against a Settling Insurer that is (a) premised on an independent legal duty owed to such Claimant by an Insurer and (b) is outside the jurisdiction of the Bankruptcy Court, if any such Claim exists.

2. ~~1.~~ Upon electing to receive a share of Insurance Settlement Amounts on the signature page hereto, Claimant, on Claimant's own behalf and on behalf of his or her respective

---

[1] All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Disclosure Statement, Plan or in the Confirmation Order, as applicable.

predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or Entity to the extent he, she, or it is entitled to assert any claim on Claimant's behalf, including, but not limited to, any legal representative(s), does hereby as of the Effective Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully waive, release, remit, acquit, forever discharge, and covenant not to knowingly sue or continue prosecution against the Settling Insurers from and with respect to any and all Channeled Claims. Claimant covenants and agrees that Claimant will honor the release as set forth herein, and, further, that Claimant will not knowingly (i) institute or continue prosecution of a lawsuit or other action against any Settling Insurer based upon, arising out of, or relating to any Channeled Claims, (ii) knowingly participate, assist, or cooperate in any such action, or (iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

3.    2.  Claimant, on Claimant's own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or Entity to the extent he, she, or it is entitled to assert any claim on Claimant's behalf, including, but not limited to, any legal representative(s), does hereby as of the Effective Date voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, and fully forever discharge, and covenant not to knowingly sue or continue prosecution against the Debtor or Additional Debtors from and with respect to any and all Channeled Claims; provided, however, that such discharge with respect to the Debtor and Additional Debtor shall be subject in all respects to the Plan, including Article XI.O of the Plan.

4.    3.  Claimant hereby acknowledges and agrees that Claimant is subject to and bound by Plan, including the releases and injunctions as set forth in Article XI.I of the Plan, and further that Claimant will not knowingly (i) institute or continue prosecution of a lawsuit or other action in violation of the Plan, (ii) knowingly participate, assist, or cooperate in any such action, or
(iii) knowingly encourage, assist and/or solicit any third party to institute any such action.

5.    4.  Claimant hereby acknowledges that, pursuant to the Plan, the Confirmation Order, the Sale Order, and the injunctions contained in the foregoing, the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be against the Trust. Claimant hereby further acknowledges that Claimant shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, except as set forth in Article XI.O of the Plan and in compliance with the Trust Allocation Protocol.

6.    5.  In further consideration of the benefit of the opportunity to seek compensation from the Trust, as of the Effective Date, Claimant shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of, the Trust and the Trustee arising from my failure to comply with the terms of this Release.

7.    6.  Claimant acknowledges that the Trust is not providing any tax advice with respect to the receipt of any compensation or any component thereof, and Claimant understands

and agrees that Claimant shall be solely responsible for compliance with all tax laws with respect to any compensation received, to the extent applicable.

8. ~~7.~~ Claimant represents and warrants that Claimant is the sole holder of the Abuse Claim that Claimant has asserted against the Protected Parties, and that Claimant has not assigned, transferred or granted any interest in such Abuse Claim to any other Entity.

9. ~~8.~~ Claimant represents and warrants that Claimant will provide for the payment and/or resolution of any obligation owing or potentially owing under the Medicare Secondary Payer Statute relating to Claimant's Abuse Claim.

10. ~~9.~~ Claimant agrees to provide the Trustee with any information necessary to comply with reporting obligations arising under the MMSEA, and has provided or will provide for the payments/and or resolution of any obligations owing or potentially owing under the MSPA relating to Claimant's Abuse Claim and any Distribution from the Trust. Claimant acknowledges and agrees that if Claimant does have any obligations owing or potentially owing under the MSPA relating to any Abuse Claim or Distribution from the Trust, the Trustee may withhold from any payment directly or indirectly to Claimant funds sufficient to assure that any obligations owing or potentially owing under the MSPA relating to such Abuse Claim are paid to the applicable agency.

11. ~~10.~~ Claimant agrees that the Trust shall have the right to take any action, including but not limited to the execution and submission of documentation, as may be necessary to pursue any recoveries from: (1) the liquidation of Arrowood Indemnity Company, which is under the supervision of the Insurance Commissioner of Delaware (and his successors) as the appointed receiver of Arrowood; (2) the New York Property/Casualty Security Fund administered by the New York Liquidation Bureau, which is part of the New York State Department of Financial Services, and the Supreme Court of the State of New York has appointed as an ancillary receiver of Arrowood; or (3) any other liquidator, liquidation bureau, guaranty association, or security fund that may provide recoveries in connection with Insurance Policies issued by Arrowood. Any recoveries from the foregoing obtained by the Trust, or by the Claimant, will become Trust Assets to be distributed pursuant to the Trust Allocation Procedures. Claimant agrees, to the extent Claimant has an Abuse Claim covered by Insurance Policies issued by Arrowood, to reasonably cooperate with the Trust in pursuing recoveries on such Claim.

12. ~~11.~~ Claimant acknowledges that Claimant is voluntarily and freely entering into this Release in exchange for consideration. Claimant further declares that Claimant is or has been given the opportunity to be represented by legal counsel and has had the opportunity to receive legal advice prior to entering into this Release.

13. ~~12.~~ The provisions of this Release shall be binding upon Claimant, and upon Claimant's heirs, successors, assigns, agents, and representatives.

14. ~~13.~~ The beneficiaries of this release are the Protected Parties and the other parties that are the beneficiaries of the releases referenced in Article XI.I. of the Plan, and this Agreement may be enforced by any of them.

15.    ~~14.~~ This Agreement, the Plan, the Trust Agreement, and the Trust Allocation Protocol contain the entire understanding of the parties.  Any modification of any of the provisions of this Release shall be effectively only if made in writing and executed by the Claimant and all Protected Parties.

16.    ~~15.~~ This Release shall be governed and construed pursuant to the laws of the State of New York, without regard to its conflicts of law principles.

*[signature page follows]*

| |
|---|
| **I ELECT TO RECEIVE A SHARE OF INSURANCE SETTLEMENT AMOUNTS AND RELEASE THE SETTLING INSURERS AS SET FORTH IN PARAGRAPH 2 ABOVE** |
| **Signature:** |

IN WITNESS THEREOF, this ~~Released~~Release has been executed by Claimant (or, in the case of death or legal disability, Claimant's duly-authorized legal representative acting under power of attorney) and delivered to the Trustee as of the date set forth below.

Dated: [_____], 2024

_____
Signature

_____
Print or type full name of Claimant

_____
Claim number (if known)

_____
Address

_____
Claimant's date of birth

_____
Claimant's full Social Security Number

| **Summary report:** | |
|---|---|
| **Litera Compare for Word 11.9.1.1 Document comparison done on 12/4/2024 7:52:48 AM** | |
| **Style name:** JD Blackline | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://naiweb.firm.jonesday.net/NAI/1541655105/5 | |
| **Modified DMS:** iw://naiweb.firm.jonesday.net/NAI/1542004934/3 | |
| **Changes:** | |
| Add | 23 |
| Delete | 20 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 44 |