**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| THE ROMAN CATHOLIC DIOCESE OF | : | Case No. 20-12345 (MG) |
| ROCKVILLE CENTRE, NEW YORK *et al.*,[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) CONFIRMING MODIFIED CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK AND ADDITIONAL DEBTORS

This matter coming before the Court on the *Motion (A) For an Order (I) Approving Disclosure Statement, (II) Approving Form and Manner of Service of Disclosure Statement Notice, (III) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Reorganization, (IV) Approving Related Notice Procedures, and (V) Scheduling Hearing on Confirmation of Plan of Reorganization* (the "Motion"), filed by the above-captioned debtor and debtor in possession (the "Diocese" or the "Debtor");[2] and the *Additional Debtors' Motion for Entry of an Order (I) Approving Adequacy of Disclosure Statement, (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (III) Establishing Plan and Disclosure Statement Procedural Deadlines and Related Procedures, (IV) Approving the Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Reorganization, (V) Waiving Certain Requirements of the Bankruptcy Code, and*

---

[1] The Debtor in this chapter 11 case is The Roman Catholic Diocese of Rockville Centre, New York, the last four digits of its federal tax identification number are 7437, and its mailing address is P.O. Box 9023, Rockville Centre, NY 11571-9023. The Additional Debtors listed on Exhibit A to the Plan are co-proponents of the Plan and filed for chapter 11 relief on the Additional Debtors Petition Date. The Chapter 11 Cases are being jointly administered.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

*(VI) Granting Related Relief* (the "<u>Additional Debtors' Motion</u>") filed by the above-captioned additional debtors and debtors in possession (the "<u>Additional Debtors</u>"); and (i) the Declaration of Reverand Eric Fasano (the "<u>Fasano Declaration</u>"), (ii) the Declaration of Andrew Ciriello (the "<u>Ciriello Declaration</u>"), (iii) the Declaration of Emily Young (the "<u>Tabulation Declaration</u>"); and (iv) the *Second Modified Chapter 11 Plan of Reorganization Proposed by The Roman Catholic Diocese of Rockville Centre, New York and Additional Debtors* having been filed; and (iv) the *Memorandum of Law in Support of Confirmation of Modified Chapter 11 Plan of Reorganization Proposed by the Roman Catholic Diocese of Rockville Centre, New York and Additional Debtors* having been filed; and the Court having reviewed the Motion and related pleadings and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

THE COURT HEREBY FINDS AND DETERMINES THAT:

**A.     Finding of Fact and Conclusions of Law**

1.     The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.     Jurisdiction and Venue**

2.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  A United States Bankruptcy Judge, like this Court, has the statutory power to enter this Order under 28 U.S.C. § 157; the authority to rule on this matter under the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and the constitutional power to issue final findings of fact and enter a final order in this case.  This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue in this Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).

**C.    Eligibility for Relief**

3.    The Debtor and Additional Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**D.    Commencement of the Chapter 11 Cases**

4.    On the DRVC Petition Date, the Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On October 16, 2020, the U.S. Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code [Docket No. 71].  On the Additional Debtors Petition Date, the Additional Debtors commenced chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

**E.    Bankruptcy Rule 3016**

5.    The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtor and Additional Debtors appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b).

**F.        Disclosure Statement**

6.        On November 6, 2024, this Court entered the Disclosure Statement Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) approved the solicitation, voting, and Plan and Disclosure Statement objection procedures; (c) approved the Solicitation Packages; (d) approved the form of Confirmation Hearing Notice and related notices; (e) approved the form of assumption and rejection notices; (f) set November 26, 2024 at 5:00 p.m. (prevailing Eastern Time), as the deadline for voting to accept or reject the Plan, as well as the deadline for objecting to the Plan; and (g) set December 3, 2024, at 10:00 a.m. (prevailing Eastern Time), which was adjourned to December 4, 2024, at 10:00 a.m. (prevailing Eastern Time), as the date and time for commencement of the Confirmation Hearing. On December 4, 2024, this Court entered and approved the Disclosure Statement Order with respect to the Additional Debtors.  The period during which the Debtor and Additional Debtors solicited votes on the Plan is a reasonable and adequate period of time for creditors to have made an informed decision to accept or reject the Plan.

7.        The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Additional Debtors, the Plan, and the transactions contemplated therein.

**G.        Solicitation and Notice**

8.      The Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order to each holder of a Claim entitled to vote on the Plan.  Consistent with the Disclosure Statement Order, the applicable Notice of Non-Voting Status and Confirmation Hearing Notice were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.  The solicitation of votes on the Plan complied with the Voting Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, and all other applicable rules, laws, and regulations.  As evidenced by the Fasano Declaration, Ciriello Declaration and the Tabulation Declaration, all parties required to be given notice of the Hearing (including the deadline for filing and serving objections to Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

**H.      Voting Report**

9.      Prior to the Hearing, the Debtor filed the Tabulation Declaration.  As set forth in the Tabulation Declaration, 478 votes (approximately 76% of a total of 629 potential votes) were received in Class 4 in connection with acceptance or rejection of the Plan.  Of these, 472 votes (more than 98% of those voting) were in favor of acceptance of the Plan, and 6 votes (less than 2% of those voting) were received rejecting the Plan.  The procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations. As set forth in the Plan, holders of Claims in Classes 3, 4 and 6 were eligible to vote on the Plan

pursuant to the Voting Procedures.  In addition, holders of Claims in Classes 1, 2, 5, 7, 8 and 9 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.   As evidenced by the Tabulation Declaration, Class 3 (General Unsecured Claims) and Class 4 (Abuse Claims) voted to accept the Plan in the number and amount required by section 1126 of the Bankruptcy Code.

### I.    Good Faith Solicitation

10.    Based on the record in the Chapter 11 Cases, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article XI.J of the Plan on the terms set forth therein.

### J.    Plan Supplement

11.    The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Debtor and Additional Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of the Plan, this Confirmation Order,

the Bankruptcy Code, and the Bankruptcy Rules, provided, for the avoidance of doubt, that any

modifications to the Trust Allocation Protocol or Trust Agreement as they now provide in the

Plan Supplement that materially and adversely affect holders of Future Abuse Claims may be

made (if at a time when the Future Claims Representative is still in office, or empowered to act

for Future Claimants under ¶ 160 of this Order or otherwise) only with the written consent of the

Future Claimants' Representative, or, absent such consent, by an order of this Court approving

such modifications, entered after notice to the Future Claimants' Representative; or (if the Future

Claims is no longer still in office or empowered so to serve), only after notice and an opportunity

to object provided to the Future Claims Representative by an order of this Court approving such

modifications.  The Future Claims Representative, even if no longer still in office, will have

standing to object or otherwise be heard with respect to such requested modification and/or to

ask the Court to be reappointed, or to appoint a successor fiduciary in connection with such

proposed modification.

> ### K.    Modifications to the Plan

12.    Pursuant to, and in compliance with, section 1127 of the Bankruptcy Code, the

Debtor has proposed certain modifications to the Plan as reflected therein (the "Plan

Modifications").  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a)

constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b)

cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code,

(c) materially or adversely affect or change the treatment of any Claims, (d) require re-

solicitation of any holders of Claims, or (e) require that any such holders be afforded an

opportunity to change previously cast acceptances or rejections of the Plan. Under the

circumstances, the form and manner of notice of the Plan Modifications were adequate, and no

other or further notice of the Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims that voted to accept the Plan or that are conclusively presumed to have accepted the Plan, as applicable, are deemed to have accepted the Plan as modified by the Plan Modifications. No holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

13.    To the extent this Confirmation Order contains modifications to the Plan, such modifications were made to address objections and informal comments received from various parties-in-interest. Modifications to the Plan since the entry of the Disclosure Statement Order are consistent with the provisions of the Bankruptcy Code. The disclosure of any Plan Modifications prior to or on the record at the Confirmation Hearing, with an opportunity to be heard with respect to such Plan Modifications at the Confirmation Hearing, constitutes due and sufficient notice of any and all Plan Modifications. The Plan as modified shall constitute the Plan submitted for Confirmation.

**L.    Insurance Settlements**

14.    The Insurance Settlement Agreements with London Market Insurers, Evanston, Lexington and Interstate (as defined in the applicable Insurance Settlement Agreements) are the result of long-term negotiations amongst the parties, which began November 15, 2021, following the Bankruptcy Court's entry of the Mediation Order, and which ended in September 2024.

15.    The Subject Policies are property of the Debtor's bankruptcy estate and are therefore subject to the *in rem* jurisdiction of the Bankruptcy Court.

16. Subject to the limitations set forth in the Plan, the Channeled Claims that are the subject of the Channeling Injunction are within the jurisdiction of the Bankruptcy Court because they seek property of the Debtor's bankruptcy estate.

17. Because it would be impractical to divide the Subject Policies amongst the Diocese Signatory Parties and Non-Debtor Releasors, it was necessary for the Debtor to obtain the participation of the Diocese Signatory Parties and the Non-Debtor Releasors in and (as applicable) in connection with the Agreements.

18. Subject to the limitations set forth in the Plan, the Coverage Claims (as defined in the applicable Insurance Settlement Agreement) that are subject to the Settling Insurer Supplemental Injunction and other injunctions are within the jurisdiction of the Bankruptcy Court because such Claims could enhance the estate.

19. Each of London Market Insurers, Evanston, Lexington and Interstate required that the Debtor obtain for the London Market Insurers, Evanston, Lexington and Interstate the benefits of the Channeling Injunction and the Settling Insurer Supplemental Injunction, for each of the Settling Insurers as conditions precedent to entering into each of the Insurance Settlement Agreements and contributing each of their respective Insurance Settlement Amounts to the Trust.

20. London Market Insurers, Evanston, Lexington and Interstate are each purchasing the Purchased Property pursuant to their respective Insurance Settlement Agreements. None of London Market Insurers, Evanston, Lexington or Interstate are purchasing any other assets of the Diocese Signatory Parties or the Non-Debtor Releasors and are not a continuation of the Diocese Signatory Parties or the Non-Debtor Releasors, nor engaging in a continuation of the Diocese Signatory Parties' or the Non-Debtor Releasors' businesses.

21.     As and to the extent set forth in the Sale Order, London Market Insurers, Evanston, Lexington and Interstate shall not have any responsibility or liability with respect to any of the Diocese Signatory Parties' or the Non-Debtor Releasors' other assets. London Market Insurers, Evanston, Lexington and Interstate are not, and shall not be deemed to be, successors to the Diocese Signatory Parties or any of the Non-Debtor Releasors, or any of them, by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Insurance Settlement Agreements, the Plan, or otherwise.

22.     London Market Insurers, Evanston, Lexington and Interstate shall not assume, or be deemed to have assumed, any liabilities or other obligations of the Diocese Signatory Parties or the Non-Debtor Releasors.

**M.     Ecclesia Settlement**

23.     The settlement with Ecclesia, the Debtor's wholly-owned captive insurance company, is necessary and appropriate and satisfies the *Iridium* factors and other requirements of the Bankruptcy Code.  The Ecclesia Contribution represents the full extent of Ecclesia's aggregate limit for sexual abuse claims during the applicable periods.

**N.     CemCo Settlement Agreement**

24.     The Debtor and CemCo, by and through their respective board members, in their fiduciary capacities, and their advisors, in an effort to avoid the time and significant expense of litigation, the potential outcome of which posed substantial adverse risks to the parties, engaged in hard fought, good faith negotiations, which ultimately resulted in a settlement, the terms of which were reached under a court ordered mediation which included former Bankruptcy Judge Chapman as one of the mediators, that those terms are fair and reasonable and in the best interests of both parties and their respective stakeholders, including the families whose loved

ones are interred at the cemeteries, as the settlement enables CemCo to continue to operate and maintain the cemeteries without interruption.

25.    The settlement with CemCo is necessary and appropriate and satisfies the *Iridium* factors and other requirements of the Bankruptcy Code.

**O.    Department of Education Settlement**

26.    The settlement with Education Parties is necessary and appropriate and satisfies the *Iridium* factors and other requirements of the Bankruptcy Code.

**P.    Seminary Settlement**

27.    The Seminary Settlement Agreement was previously approved by the Bankruptcy Court pursuant to a stand-alone Bankruptcy Rule 9019 settlement.  Article V.T of the Plan, entitled *Seminary Settlement*, is necessary and appropriate and satisfies the *Iridium* factors and other requirements of the Bankruptcy Code.

**Q.    Charities/CYO Settlement**

28.    Article V.V of the Plan, entitled *Catholic Charities and CYO Settlement*, is an appropriate component of the Plan.  To the extent the provision is subject to Rule 9019, the settlement with Charities and CYO is necessary and appropriate and satisfies the *Iridium* factors and other requirements of the Bankruptcy Code.

**R.    Additional Debtors Sexual Abuse Bar Date**

29.    Service of the Additional Debtors Bar Date Notice on all known potential holders of Abuse Claims against the Additional Debtors and the publication of the Additional Debtors Bar Date Publication Notice in the *New York Times* shall be deemed good and sufficient notice of the Additional Debtors Sexual Abuse Bar Date on all holders of Abuse Claims against the Additional Debtors.

S.    **Vesting of Assets**

30.    Except as otherwise explicitly provided in the Plan and expressly excluding the

Trust Assets, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy

Code, all property comprising the Estates, and any and all property of the Debtor and Additional

Debtors shall vest in the Reorganized Debtor and Reorganized Additional Debtors, as applicable,

free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any

kind, including successor liability Claims; provided, however, the foregoing shall not be

construed to authorize the Reorganized Debtor or Reorganized Additional Debtors to use

property in contravention of any legally enforceable restrictions requiring the use or disposition

of such assets for a particular donative purpose or to use property that is held in a fiduciary

capacity other than in accordance with such fiduciary obligations.  On and after the Effective

Date and excluding Trust Assets, the Reorganized Debtor and the Reorganized Additional

Debtors may continue operations and may use, acquire, or dispose of property, and compromise

or settle any Claims, or Causes of Action without supervision or approval of the Bankruptcy

Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

T.    **Trust**

31.    On and after the Effective Date, the Trust shall be administered and implemented

by the Trustee as provided in the Trust Documents and Plan. Specifically, the Trust shall,

without limitation: (1) assume liability for all Channeled Claims in accordance with the terms of

the Plan (including Future Abuse Claims, to the extent and as provided in the Trust Allocation

Protocol); (2) assume and pay the Trust Assumed Administrative Expenses; (3) pay the Trust

Expenses; (4) hold and administer the Trust Assets when they are contributed pursuant to the

Trust Asset Payment Schedule; (5) enforce the Insurance Rights; and (6) make Trust

Distributions to holders of Channeled Claims from the Trust Assets.

32.     On the Effective Date, the Trustee shall implement the Trust Allocation Protocol

in accordance with the terms of the Trust Documents.  The Trust Allocation Protocol was

developed by the Committee and was not developed by, or submitted for the approval of, any of

the Protected Parties or the Non-Settling Insurers, nor are the Protected Parties or the Non-

Settling Insurers deemed to have accepted or acquiesced in the adoption of the Trust Allocation

Protocol. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the

Settling Insurers' or the Non-Settling Insurers' support for the Trust Allocation Protocol, and no

party shall argue that the Settling Insurers or the Non-Settling Insurers agreed to or acquiesced in

the terms or use of the Trust Allocation Protocol in any proceeding; the Settling Insurers take no

position on the Trust Allocation Protocol, and the Non-Settling Insurers reserve all rights under

applicable non-bankruptcy law as to the Trust Allocation Protocol.

### U.     Burden of Proof

33.     The Debtor and Additional Debtors, as proponents of the Plan, have met their

burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy

Code by a preponderance of the evidence, which is the applicable evidentiary standard for

Confirmation.

### V.     Plan Compliance with the Bankruptcy Code

34.     The Plan complies with all applicable provisions of section 1129 of the

Bankruptcy Code.

### W.     Compliance with Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))

35.    As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123.

36.    ***Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))***.  The classification of Claims under the Plan is proper under the Bankruptcy Code.  Article III of the Plan designates Classes of Claims, other than Administrative Claims, including Professional Fee Claims and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims that are substantially similar to the other Claims within that Class.  Valid reasons exist for separately classifying the various Classes of Claims created under the Plan.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

37.    ***Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3))***.  Article III of the Plan specifies that Classes 1, 2, 5, 7, 8 and 9 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4 and 6.  The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

38.    ***No Disparate Treatment (11 U.S.C. § 1123(a)(4))***.  Article III of the Plan provides the same treatment for each Claim within a particular Class unless the holder of a particular Claim has agreed to a less favorable treatment with respect to such Claim.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

39.    ***Implementation of the Plan (11 U.S.C. § 1123(a)(5))***.  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means

for the Plan's implementation, including, without limitation: (a) consummation of the Insurance

Settlement Agreements, CemCo Settlement Agreement, Article V.U of the Plan (Department of

Education Settlement), Article V.T of the Plan (Seminary Settlement) and the Seminary

Settlement Agreement and generally allowing for all corporate action necessary to effectuate

such transactions; (b) funding distributions under the Plan with, among other things, (i) Cash on

hand on the Effective Date; (ii) the Exit Facility; (iii) the CemCo Loan; and (iv) proceeds from

various settlements; (c) creation of the Trust; (d) entry into the Exit Facility and the Exit Facility

Documents; (e) the continued corporate existence of the Debtor and Additional Debtors; (f)

vesting of assets in the Reorganized Debtor and Reorganized Additional Debtors (excluding the

Trust Assets as set forth in the Plan); (g) the reinstatement of the Debtor's and Additional

Debtors' existing organizational documents; (h) subject to the Insurance Settlements Agreements

and the Sale Order, the Non-Settling Insurance Rights Transfer and as otherwise set forth in the

Plan, the assumption of all of the Debtor's insurance policies and any agreements, documents, or

instruments relating thereto, other than the including assumption and reinstatement of the D&O

Liability Insurance Policies; (i) authorization and approval of all corporate actions contemplated

under the Plan; (j) continuation of the Debtor's and Additional Debtors directors and officers as

the directors and officers of the Reorganized Debtor and Reorganized Additional Debtors; and

(k) exemption from certain taxes pursuant to section 1146 of the Bankruptcy Code.  The Plan,

therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

40.    ***Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).***  The organizational

documents of the Reorganized Debtor and Reorganized Additional Debtors do not provide for

the issuance of non-voting equity securities.  The Plan, therefore, satisfies the requirements of

section 1123(a)(6) of the Bankruptcy Code.

41. ***Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))***. Article V.F. of the Plan and the Plan Supplement identify the members and trustees of the Reorganized Debtors and Reorganized Additional Debtors and the persons proposed to serve as officers of the Reorganized Debtors and Reorganized Additional Debtors, which are the same persons holding such roles during the pendency of the Chapter 11 Cases. The Plan, therefore, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

42. ***Discretionary Contents of the Plan (11 U.S.C. § 1123(b))***. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1123(b) of the Bankruptcy Code. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

**(a) Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))**

43. Article VI of the Plan governs the assumption of the Debtor's Executory Contracts and Unexpired Leases.

44. Article VI of the Plan provides on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed assumed by the Reorganized Debtor and the Reorganized Additional Debtors as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 and 1123 of the Bankruptcy Code, except, solely with respect to the Debtor, for Executory Contracts or Unexpired Leases (1) that are identified on the Rejected Contracts Schedule; (2) that previously expired or terminated pursuant to their terms; (3) that the Debtor has previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (4) that are the subject of a motion to reject that remains pending as of the Confirmation Date; (5) that have been deemed rejected pursuant to the provisions of section 365(d)(4), or (6) as to which the effective date of rejection will occur (or is requested by

16

the Debtor to occur) after the Confirmation Date. Article IV of the Plan further provides to the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by the commencement of the case, the Debtor's or Additional Debtors' financial condition, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed unenforceable such that the non-debtor party thereto shall not be able to terminate, restrict, or modify such Executory Contract or Unexpired Lease, or to exercise any other default-related rights with respect thereto, in each case, based upon the commencement of the Chapter 11 Cases, the Debtor's and Additional Debtors' financial condition or the assumption of such Executory Contract or Unexpired Lease.

45.     The Debtor has exercised reasonable business judgment in determining whether to assume each of its Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan, including Article VI of the Plan, and as set forth in the Plan Supplement.  Each assumption of an Executory Contract or Unexpired Lease pursuant to the Plan shall be legal, valid, and binding to the same extent as if such assumption were effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.  Except as set forth herein and/or in separate orders entered by the Court relating to assumption of Executory Contracts or Unexpired Leases, the Debtor has cured or provided adequate assurances that the Debtor will cure defaults (if any) under or relating to each Executory Contract or Unexpired Lease assumed under the Plan and, for each Executory Contract or Unexpired Lease being assumed under the Plan provided adequate assurance of future performance as required under section 365 of the Bankruptcy Code.

17

**(b) Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))**

46.    The Court, having considered the Confirmation of the Plan, finds and determines that all such exculpation, injunction, and preservation of claims and cause of action provisions are consistent with the provisions of the Bankruptcy Code and/or applicable caselaw.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the discharge, compromises, exculpations and injunctions set forth in the Plan, including Article XI of the Plan. Sections 105(a), 363 and 1123(b) and 1125(e) of the Bankruptcy Code permit the issuance of the injunctions and approval of the exculpations, and injunctions set forth in the Plan and the Confirmation Order.

47.    Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Hearing, the Court finds that the discharge, compromises, exculpations, and injunctions set forth in the Plan and the Confirmation Order are consistent with the Bankruptcy Code and applicable law. Further, the discharge, compromises, exculpations, and injunctions contained in the Plan and the Confirmation Order are integral components of the Plan. The discharge, compromises, exculpations, and injunctions set forth in the Plan and the Confirmation Order are hereby approved and authorized in their entirety.

48.    The injunctions set forth in Article XI of the Plan, including the Channeling Injunction, shall be in full force and effect on and after the Effective Date, and the Settling Insurer Supplemental Injunction and Channeling Injunction shall be in full force and effect with respect to a particular Settling Insurer only as of the date that such Settling Insurer has paid its Settlement Amount to the Trust pursuant to the terms of the applicable Insurance Settlement Agreement.

49.     The exculpation provision set forth in Article XI.J of the Plan for the benefit of the Exculpated Parties is appropriate under applicable law in this district because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope and tailored to the circumstances of these Chapter 11 Cases.  Each Exculpated Party has participated in these Chapter 11 Cases; in the preparation for their filing; and/or in the development of the Plan in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated with respect to Claims and Causes of Action for a claim related to an act or omission occurring between the applicable Petition Date and the Effective Date in connection with the matters set forth in Article XI.J of the Plan.

50.     The injunction provisions set forth in Article XI of the Plan, including the Channeling Injunction and the Settling Insurer Supplemental Injunction, are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the exculpation provision set forth in Article XI.J of the Plan and other provisions in Article XI of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

### (c) Preservation of Causes of Action

51.     The provisions set forth in Article V.L of the Plan regarding the preservation of Causes of Action in the Plan are appropriate and are in the best interests of the Debtor, the Additional Debtors, and the Estates, and identify preserved causes of action with the requisite detail.

### X.      The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))

52.     The Debtor and Additional Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the

Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

53.     As set forth in greater detail in the Tabulation Declaration, votes to accept or reject the Plan were solicited by the Debtor, Additional Debtors and/or their agents after this Court approved the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code and entered the Disclosure Statement Order.

54.     The Debtor, the Additional Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article XI.J. of the Plan.

55.     The Debtor, the Additional Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made thereunder, so long as such distributions are made consistent with and pursuant to the Plan.

**Y.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**

56.     The Debtor and Additional Debtors have proposed the Plan in good faith and not by any means forbidden by law.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of equitably compensating holders of Abuse Claims and General Unsecured Claims, maximizing value for all stakeholders, and enabling the Debtor and Additional Debtors to continue their not-for-profit missions.

57.     The Debtor, the Additional Debtors, the Committee, the Settling Insurers and the various stakeholders and their respective counsel and advisors participated in good faith in negotiating at arm's-length the Plan and the contracts, instruments, agreements, and documents necessary and related to implementing, effectuating and consummating the Plan.  In determining that the Plan satisfies section 1129(a)(3) of the Bankruptcy Code, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its Confirmation.  The Plan, therefore, satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

58.     The Debtor, the Additional Debtors and each of their stakeholders, including, among others, the Committee and the Settling Insurers, who negotiated the Plan, the Plan Supplement, and other Confirmation documents (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, transactions, transfers, and documentation contemplated by the Plan and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, transactions, transfers, and documentation contemplated by the Plan, and (b) take any actions authorized and directed or contemplated by this Confirmation Order.

**Z.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**

59.     Payments made or to be made by the Debtor and Additional Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Case, have been approved by, or are subject to the approval of, this Court as reasonable.  The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

### AA.     Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5))

60.     The Reorganized Debtor's and Reorganized Additional Debtors' initial directors and officers have been disclosed in the Plan Supplement.  The continuance of the proposed officers and directors in such roles for the Reorganized Debtor and Reorganized Additional Debtors is consistent with the interests of Estates and with public policy.  Accordingly, the Plan, in conjunction with the Plan Supplement, satisfies the requirements of section 1129(a)(5).

### BB.     No Rate Change (11 U.S.C. § 1129(a)(6))

61.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

### CC.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7))

62.     Each holder of an Impaired Claim either has accepted the Plan (or does not object to the Plan) or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor or Additional Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  The liquidation analyses contained in Exhibit 2 of the Disclosure Statement, the Declarations, and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Hearing, are reasonable, persuasive and credible and have

22

not been controverted by other evidence. The methodology used and assumptions made in the

liquidation analyses contained in Exhibit 2 of the Disclosure Statement are reasonable and

appropriate and have not been controverted by other evidence.

**DD.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**

63.    Classes 3, 4 and 6 voted to accept the Plan by the requisite number and amount of

Claims.  Classes 1, 2, 5, 7, 8 and 9 are Unimpaired by the Plan.  The Plan, therefore, satisfies the

requirements of section 1129(a)(8) of the Bankruptcy Code.

**EE.    Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the
Bankruptcy Code (11 U.S.C. § 1129(a)(9))**

64.    The treatment of Administrative Claims, Professional Fee Claims and Priority

Tax Claims as set forth in Article II of the Plan is in accordance with the requirements of section

1129(a)(9) of the Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section

1129(a)(9) of the Bankruptcy Code.

**FF.    Acceptance by at Least One Impaired Class of Claims (11 U.S.C. §
1129(a)(10))**

65.    As set forth in the Voting Tabulation Declaration, Classes 3, 4 and 6 as the voting

Classes are Impaired and Classes 3, 4 and 6 voted to accept the Plan by the requisite number and

amount of Claims, determined without including any acceptance of the Plan by any insider (as

that term is defined in section 101(31) of the Bankruptcy Code) at the Debtor or Additional

Debtors.  The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy

Code.

**GG.    Feasibility of the Plan (11 U.S.C. § 1129(a)(11))**

66.    Based upon the evidence proffered or adduced at or prior to the Hearing, the

Declarations, the Confirmation Brief, and the Prospective Financial Information contained in

Exhibit 3 of the Disclosure Statement, which this Court finds (a) is reasonable, persuasive, and

credible; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not

been controverted by other evidence, the Plan is feasible, and Confirmation is not likely to be

followed by the Reorganized Debtor or Reorganized Additional Debtors liquidating or requiring

further financial reorganization.  The Plan, therefore, satisfies the requirements of section

1129(a)(11) of the Bankruptcy Code.

### HH.    Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))

67.    Article II of the Plan provides for the payment of all fees payable under 28 U.S.C.

§ 1930(a).  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the

Bankruptcy Code.

### II.    Retiree Benefits (11 U.S.C. §§ 1129(a)(13))

68.    Pursuant to Article III.B.9 and Article VI.E of the Plan, from and after the

Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy

Code), if any, shall continue to be paid in accordance with applicable law.

### JJ.    Non-applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14) and (15)).

69.     The Debtor and Additional Debtors do not owe any domestic support obligations

and are not individuals.  Therefore, sections 1129(a)(14) and 1129(a)(15) do not apply to the

Chapter 11 Cases.

### KK.    Nonprofit Corporation (11 U.S.C. § 1129(a)(16))

70.    All transfers of property under the Plan are being made in accordance with any

applicable provisions of non-bankruptcy law that governs the transfer of property by a

corporation that is not a moneyed business or commercial corporation or trust.  The Plan satisfies

section 1129(a)(16) of the Bankruptcy Code, to the extent applicable.

**LL.   Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b))**

71.    Section 1129(b) of the Bankruptcy Code is not applicable with respect to the Plan because each Impaired Class of Claims under the Plan has voted to accept the Plan, and there are no non-accepting Classes.

**MM.   Only One Plan (11 U.S.C. § 1129(c))**

72.    Other than the Plan, no other plan has been filed and is capable of confirmation in the Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**NN.   Principal Purpose of the Plan (11 U.S.C. § 1129(d))**

73.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**OO.   Not a Small Business Case (11 U.S.C. § 1129(e))**

74.    The Chapter 11 Cases are not a small business case and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**PP.   Satisfaction of Confirmation Requirements.**

75.    Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**QQ.   Plan Implementation**

76.    The terms of the Plan and Plan Documents, including, without limitation, the Plan Supplement and all exhibits and schedules thereto, and all other agreements, instruments, or other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications

of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order. The Debtor and Additional Debtors exercised reasonable business judgment in determining which agreements to enter into and has provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been negotiated in good faith and at arm's length, are fair and reasonable, and are reaffirmed and approved.

**RR.    Binding**

77.    The Plan and Plan Documents have been negotiated in good faith and at arm's length.  As of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan by the Debtor, the Reorganized Debtor, the Additional Debtors, the Reorganized Additional Debtors and the Trust Documents, shall be binding upon the Debtor, the Additional Debtors, the Estates, the Reorganized Debtor, the Reorganized Additional Debtors, the Settling Insurers, all holders of Claims against the Debtor, the Additional Debtors, all holders of Abuse Claims, each such holder's respective successors and assigns, and all other Entities that are affected in any manner by the Plan, regardless of whether the Claim of such holder is Impaired under the Plan and whether such holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect and shall bind all Entities referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Entities have actually executed such agreement.  All Entities shall act or refrain from acting as specified in the Plan.

**SS.    Exit Facility / CemCo Loan**

78.    The Exit Facility and CemCo Loan are essential elements of the Plan and the Debtor and Additional Debtors' ability to emerge from chapter 11, and entry into and consummation of the transactions contemplated by the Exit Facility, CemCo Loan and related documents, including the Exit Facility Documents related thereto, are in the best interests of the Debtor, the Additional Debtors and the Estates, and are approved in all respects.  The Debtor has exercised reasonable business judgment in determining to enter into the Exit Facility and the CemCo Loan, and the proposed terms and conditions of each have been negotiated in good faith and at arm's-length, and without intent to hinder, delay, or defraud any creditor of the Debtor or the Additional Debtors and each party thereto may rely upon the provisions of this Confirmation Order in effectuating the Exit Facility and CemCo Loan.  Sufficient and adequate notice of the terms of the Exit Facility has been provided to all parties in interest in these Chapter 11 Cases.

**TT.    Conditions to Effective Date**

79.    The Debtor and Additional Debtors have disclosed all material facts regarding the Plan and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtor or Additional Debtors.

**UU.    Retention of Jurisdiction**

80.    Except as otherwise provided in the Plan or this Confirmation Order, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including the matters set forth in Article XII of the Plan, subject to the limitations and other provisions set forth in Article XII of the Plan.

\* \* \*

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:**

81.    The Plan, which is attached hereto as Exhibit A, is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.

82.    The terms of the Plan and the Debtor's and Additional Debtors' entry into the materials and agreements comprising the Plan Supplement and the performance thereunder, including, without limitation, the Trust Documents, the Exit Facility Documents, and the CemCo Settlement Agreement (including CemCo Loan), are hereby approved and authorized. The Debtor, the Reorganized Debtor, Additional Debtors, and Reorganized Additional Debtors, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan, including entry into any agreements contained in the Plan Supplement. The terms of the Plan, the Plan Supplement, and all exhibits thereto, shall be effective and binding as of the Effective Date.

83.    The terms of the Plan, including the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of the Plan and this Confirmation Order. The terms of the Plan and the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

### Objections

84.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtor and Additional Debtors on the record of the Hearing, all such objections are hereby overruled on the merits.

### Continued Existence

85.    The Debtor and Additional Debtors shall continue to exist on and after the
Effective Date, with all of the powers of such Entities under applicable law, including pursuant
to the Act to Incorporate the Roman Catholic Diocese of Rockville Centre, New York, other
formation, organizational and governance documents immediately prior to the Effective Date,
and nonprofit law.

*Corporate Action*

86.    Upon the Effective Date, all actions contemplated by the Plan shall be deemed
authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects
without any requirement of further action by members, creditors, directors, or managers of the
Debtor or Additional Debtors, the Reorganized Debtor, the Reorganized Additional Debtors, the
Trust, the Trustee or any other Entity.

*Establishment of the Compensation Trust*

87.    Pursuant to the *Order Granting Motion Of Official Committee Of Unsecured
Creditors For Entry Of An Order Pursuant To 11 U.S.C. § 105(A) (A) Approving Creation Of
Trust Pursuant To The Plan And Trust Agreement, (B) Approving Appointment Of Trustee, (C)
Authorizing Trust To Obtain Tax Identification Number And Open Bank Accounts, And (D)
Granting Related Relief* and this Confirmation, the Trust has been established in accordance with
the Trust Documents.  On and after the Effective Date, the Trust shall be funded with the Trust
Assets subject to and in accordance with the Plan.

*Trust Assets*

88.    As set forth in Article V.A of the Plan, on the Effective Date, Cash in the total
amount of $176.8 million shall be contributed to the Trust as set forth herein; provided, however,
any payments made by the Debtor to the Abuse Claims Reviewer prior to the Effective Date

shall be deducted from such amounts. On the Effective Date, subject to the terms and conditions of Article V.Y. of the Plan, the Charities Contribution shall be contributed to the Trust as set forth in the Plan. On the Effective Date, Pachulski Stang Ziehl & Jones LLP shall contribute the PSZJ Trust Contribution to the Trust Assets as set forth in the Plan.

89.     Each of the Settling Insurers will pay to the Trust the sums set forth in each of their respective Insurance Settlement Agreements pursuant to the terms and conditions of each such Insurance Settlement Agreement.

### *Insurance Settlement Agreements*

90.     The terms and provisions of the Insurance Settlement Agreements are incorporated herein as though fully set forth herein.

91.     The Insurance Settlements Agreements are binding in all respects upon the Debtor and its Related Persons, the Additional Debtors and their Related Persons, their Estates, the Trust, the Reorganized Debtor, the Reorganized Additional Debtors, and any successors of the Trust, Reorganized Debtor and Reorganized Additional Debtors, and all of the Diocese Bound Parties (as defined in the Sale Order), in each case, as set forth in the applicable Insurance Settlement Agreements. The Trustee is hereby ordered to perform the obligations imposed upon the Trustee by the Insurance Settlement Agreements.

92.     If the "effective date" of the Plan fails to occur, or if this Confirmation Order is vacated or reversed on appeal, then the Court retains the power to return the parties to the *status quo ante*, including by ordering the return of each Settlement Amount to each of London Market Insurers, Interstate, Lexington and Evanston, respectively.

### *Non-Settling Insurance Rights Transfer*

93.     The Non-Settling Insurance Rights Transfer is hereby approved as and to the extent set forth in Article V.E of the Plan.

### *Ecclesia Settlement*

94.     On the Effective Date, the Debtor and the Additional Debtors shall sell, pursuant to section 363(f) of the Bankruptcy Code, the Insurance Policies issued by Ecclesia to Ecclesia free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind and, in exchange for the sale, complete and final satisfaction, settlement, and discharge of Ecclesia's obligations relating to Abuse Claims, and the releases, and other benefits provided to Ecclesia under the Plan, Ecclesia shall contribute the Ecclesia Contribution to the Trust Assets for the benefit of holders of Abuse Claims.  For the avoidance of doubt, other than with respect to Ecclesia's obligations relating to Abuse Claims, all of the Debtor's, the Additional Debtors', the Estate's and the Covered Parties' policies, agreements, rights with respect to, and Causes of Action against or concerning, Ecclesia or an insurance policy or agreement issued by Ecclesia shall be fully reserved.  Notwithstanding anything else herein to the contrary, but subject to the sale, settlement and release of the Covered Parties' rights against Ecclesia with respect to Abuse Claims, all of the Debtor's, Additional Debtor's or the Estate's policies, agreements, rights with respect to, and Causes of Action against or concerning, Ecclesia or an insurance policy or agreement issued by Ecclesia and, subject to the Ecclesia Contribution, all of the Debtor's or its Estate's right, title and interest in and to any and all shares and ownership interests in or of Ecclesia shall, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, vest in the Reorganized Debtor free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind, including successor liability Claims.

95.     The Ecclesia Settlement embodied in Article V.Q of the Plan is hereby approved.

The "Settlement Agreement Effective Date" shall be the Effective Date, the "Settlement

Amount" shall be the Ecclesia Contribution, and the Insurance Settlement Agreement shall refer

to Article V.Q of the Plan; provided, however, the Debtor and Ecclesia may also memorialize the

Ecclesia Settlement in such ancillary agreements as are necessary and appropriate.

### *Charities and CYO Settlement*

96.     Article V.V of the Plan, entitled *Catholic Charities and CYO Settlement*, is an

appropriate component of the Plan and, to the extent required, is approved as a reasonable and

appropriate settlement and compromise.

97.     Upon occurrence of the Effective Date, and in exchange for a general contractual

release in the form set out in the Plan Supplement by all of the holders of Abuse Claims in the

Charities CVAs and the CYO CVA as well as the other provisions of this Plan, (a) Charities shall

make the Charities Contribution and the Non-Settling Insurance Rights Transfer to the Trust, and

(b) CYO shall make the Non-Settling Insurance Rights Transfer to the Trust.  In the event that

the holder of the Abuse Claim in the CYO CVA does not contractually release CYO by the

Effective Date, CYO shall not make the Non-Settling Insurance Rights Transfer to the Trust.  In

the event that no holders of Abuse Claims in the Charities CVAs contractually release Charities

by the Effective Date, Charities shall not make the Non-Settling Insurance Rights Transfer and

shall not make the Charities Contribution to the Trust.  In the event that some, but not all, of the

holders of Abuse Claims do not contractually release Charities by the Effective Date, then

Charities shall make the Non-Settling Insurance Rights Transfer to the Trust, but Charities shall

not make the Charities Contribution to the Trust.

### *CemCo Settlement*

98.     The CemCo Settlement Agreement, including the derivative releases contained therein, is hereby approved as a reasonable and appropriate settlement and compromise and the Debtor and CemCo are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of such settlement.

### Department of Education Settlement

99.     The terms of Article V.U of the Plan, entitled *Department of Education Settlement*, including the derivative releases contained therein, is hereby approved as a reasonable and appropriate settlement and compromise and the Debtor and the Educational Parties are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of such settlement.

### Seminary Settlement

100.     The terms of Article V.T of the Plan, entitled Seminary Settlement, including the derivative releases contained therein, is hereby approved as a reasonable and appropriate settlement and compromise and the Debtor and the Seminary are authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of such settlement.   Upon the Effective Date, the *lis pendens* on the Seminary's property shall be removed.  The Committee, the Trustee, and the Seminary are each authorized to take such actions as may be necessary to remove the *lis pendens* from the Seminary's real property.

### U.S. Federal Income Tax Treatment of the Compensation Trust

101.     The Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 et seq. of the Treasury Regulations promulgated under section 468B of the IRC, as amended (the "**QSF Regulations**").  The Trustee shall be the "administrator" of the Trust within the meaning of section 1.468B-2(k)(3) of the Treasury

Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to

be prepared and timely filed, such income tax and other tax returns and statements required to be

filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which

assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii)

comply with all applicable tax reporting and withholding obligations, (iii) satisfy all

requirements necessary to qualify and maintain qualification of the Trust as a qualified

settlement fund, within the meaning of the QSF Regulations, and (iv) take no action that could

cause the Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF

Regulations.

### *Trustee*

102.    Alan D. Halperin has been appointed the Trustee.  On and after the Effective

Date, the Trustee shall serve in accordance with, and shall have the functions and rights provided

in, the Trust Documents.

### *Indemnification Provisions*

103.    The indemnification and reimbursement provisions in the Plan, including, without

limitation, Article IV.D, Article IV.F., Article IV.L, Article IV.N, and Article V.CC. are hereby

approved in all respects.

### *Preservation of Privilege*

104.    The transfer or assignment of information, which may include privileged

information, to the Trustee under the Plan shall not result in the destruction or waiver of any

applicable privileges pertaining to privileged information. Further, with respect to any privileges:

(a) they are transferred to or contributed for the sole purpose of enabling the Trustee to perform

his or her duties to administer the Trust and for no other reason, (b) they are vested solely in the

Trustee and not in the Trust, the Future Claimants' Representative, the Trust Advisory

Committee or any other Entity, committee or subcomponent of the Trust, or any other Entity

(including counsel and other professionals) who has been engaged by, represents or has

represented any holder of an Abuse Claim, (c) they shall be preserved and not waived, and (d) no

privileged information shall be publicly disclosed by the Trustee or the Trust or communicated to

any Entity not entitled to receive such information or in a manner that would diminish the

protected status of any such information. Notwithstanding the foregoing, nothing herein shall

preclude the Trustee from providing information received pursuant to this section to any Insurer

as necessary to preserve, secure, or obtain the benefit of the Insurance Rights.

### *Additional Debtors Sexual Abuse Claim Bar Date*

105.    Except for a Previously Asserted Abuse Claim (which, for the avoidance of doubt,

will be classified and treated in accordance with Article III.B.4 of the Plan), all Proofs of Claim

for Abuse Claims against Additional Debtors, if any, must be filed by the Additional Debtors

Sexual Abuse Claim Bar Date.

106.    Any Abuse Claim (other than a Previously Asserted Abuse Claim) against an

Additional Debtor for which a timely Proof of Claim is not filed shall be automatically

disallowed, forever barred from assertion, and unenforceable against the Additional Debtors or

the Reorganized Additional Debtors, the Estates, or their property without the need for any

objection by the Reorganized Additional Debtors or further notice to, or action, order, or

approval of the Bankruptcy Court, and any such Abuse Claim against an Additional Debtor shall

be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of

Claim to the contrary. For the avoidance of doubt, if and when Future Abuse Claims are filed,

such Future Abuse Claimants shall receive distributions as and to the extent provided in the Trust

Allocation Protocol in the Plan Supplement.

107.    For the avoidance of doubt, the fact that an Abuse Claim is or may be time-barred

or subject to a statute of limitations or other defense under applicable non-bankruptcy law does

not excuse the holder of such Abuse Claim from compliance with the provisions of the Plan,

including Article V.Z of the Plan and the Additional Debtors Sexual Abuse Bar Date, and this

Confirmation Order.

108.    The Additional Debtors Sexual Abuse Proof of Claim Form, the Additional

Debtors Bar Date Notice, and the Additional Debtors Bar Date Publication Notice, and the

manner of providing notice of the Additional Debtors Sexual Abuse Bar Date, are hereby

approved in all respects.

109.    The following procedures for the filing of proofs of claim shall apply: (a)

Additional Debtors Sexual Abuse Proofs of Claim must conform substantially to the Additional

Debtors Sexual Abuse Proof of Claim Form; (b) Additional Debtors Sexual Abuse Proofs of

Claim must be submitted (i) electronically through the Claims Agent website for the lead

Chapter 11 Case at https://dm.epiq11.com/drvc by following instructions for filing proofs of

claim electronically; or (ii) by delivering the original proof of claim either by U.S. Postal Service

mail to The Roman Catholic Diocese of Rockville Centre, New York et al. Claims Processing

Center c/o Epiq Corporate Restructuring, LLC P.O. Box 4421 Beaverton, OR 97076-4421, or by

hand delivery or overnight mail to The Roman Catholic Diocese of Rockville Centre, New York

et al. Claims Processing Center c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd.

Beaverton, OR 97005; (c) Additional Debtors Sexual Abuse Proofs of Claim will be deemed

filed only when received by the Claims Agent on or before the Additional Debtors Sexual Abuse

Bar Date; (d) Additional Debtors Sexual Abuse Proofs of Claim must (i) be signed, (ii) include supporting documentation (if voluminous, attach a summary) or an explanation as to why documentation is not available; and (iii) be in the English language; and (e) Additional Debtors Sexual Abuse Proofs of Claim sent by facsimile, telecopy, or electronic mail transmission will not be accepted. Pursuant to Bankruptcy Rule 3003(c)(2), all holders of Additional Debtors Sexual Abuse Claims that fail to comply with Article V.Z of the Plan by timely filing a proof of claim in appropriate form shall not be treated as a creditor with respect to such Claim for the purpose of distributions. Parties asserting Additional Debtors Sexual Abuse Claims that arose before the Additional Debtors Petition Date must use the form substantially in the form of the Additional Debtors Sexual Abuse Proof of Claim Form. Due to the sensitive nature of the information requested in the Additional Debtors Sexual Abuse Proof of Claim Form, the Confidentiality Protocol, as stated in the Bar Date Order (Docket No. 333), as amended by the Amended Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (Docket No. 813) and the Order Further Amending the Bar Date Order (Docket No. 867), and as may be further amended from time to time, shall apply to all Additional Debtors Sexual Abuse Proof of Claim Forms submitted by holders of Abuse Claims against the Additional Debtors.

110.    Nothing in this Article V.Z shall (a) prejudice the right of the Additional Debtors, Reorganized Additional Debtors, the Trust, the Trustee, or any other Co-Insured Party or Insurer to dispute or assert offsets or defenses to any Abuse Claim, (b) limit the releases, discharges and injunctions set forth elsewhere in the Plan or this Confirmation Order or (c) be construed to modify, amend or enlarge any creditor's rights with respect to any Claim.

111.    In accordance with Article XI.M of the Plan, this Confirmation Order, except as otherwise provided herein or in the Plan, shall constitute an order Disallowing all Claims to the extent such Claims are not allowable under any provision of section 502 of the Bankruptcy Code, including time-barred Claims, and Claims for unmatured interest.

***Disallowance of Contribution Claims; Judgment Reduction for Co-Defendants***

112.    The release of Abuse Claims as contemplated in the Plan and in the Trust Documents are provided in good faith by the holder of the Abuse Claim.  Without limiting the discharges, releases and injunctions set forth in the Plan and Confirmation Order, including, without limitation, the Channeling Injunction, pursuant to New York General Obligation Law 15-108, (a) any Co-Defendant Party shall not be entitled to recover against the Co-Insured Parties, the Trust or any other Entity on account of a Claim against any Co-Insured Party for contribution and (b) any Abuse Claim against such Co-Defendant Party shall be reduced against such Co-Defendant Party to the extent of (i) any amount stipulated by the releases provided for in the Plan and Trust Documents, or (ii) in the amount of the Trust Distribution received by such holder of such Abuse Claim, or (iii) in the amount of the Co-Insured Party's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

113.    To facilitate the foregoing judgment reduction, notwithstanding anything in the Trust Documents to the contrary, the Trustee shall be authorized to and shall, upon the written request of a Co-Defendant Party that identifies a particular holder of an Abuse Claim against the Co-Defendant Party (which identification may be made by reference to a particular CVA Action), disclose the amount of the Trust Distribution by the Trust, if any, to such holder of an Abuse Claim to such Co-Defendant Party for which such holder of an Abuse Claim has asserted an Abuse Claim against such Co-Defendant Party.

114.    The preceding two paragraphs shall be binding upon, and inure to the benefit of, a Co-Defendant Party.

### *Continuation of CVA Actions against Co-Defendant Parties; Section 157(b)(5) Motion*

115.    The *Stipulation and Order Pursuant to 11 U.S.C. § 105(a) Staying Continued Prosecution of Certain Lawsuits* is hereby vacated.  The automatic stay is hereby lifted upon the Effective Date to the extent necessary to allow any holder of an Abuse Claim to move the court presiding over the CVA Action to sever the Debtor or Additional Debtors from a CVA Action where there are one or more Co-Defendant Parties to the CVA Action.

116.    Upon the Effective Date, the *Notice of Joint Petition to Fix Venue For Claims Related to The Roman Catholic Diocese of Rockville Centre's Bankruptcy Under 28 U.S.C. 157(B)(5) and 1334(B)* shall be deemed resolved and withdrawn.

### *References to and Omissions of Plan Provisions*

117.    References in this Confirmation Order to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan or Plan Supplement in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of this Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference, and that the Plan Supplement and all exhibits and schedules thereto, and all other agreements, instruments or other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made

pursuant to the provisions of the Plan governing such amendments and modifications are approved in their entirety.

### *Professional Fee Claims*

118.    All Professionals or other Entities requesting the final allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331, 503(b) and/or the    Order Appointing a Legal Representative for Future Claimants (Docket No. 799) for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtor, counsel for the Additional Debtors, counsel for the Trustee and the Office of the United States Trustee for the Southern District of New York no later than the first Business Day that is forty-five (45) days after the Effective Date.  Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor, Reorganized Additional Debtors, the Trustee and the applicable Professional or Entity within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtor, the Trust or the Reorganized Debtor, as applicable, or, in the case of an Additional Debtor, the Additional Debtor or the Reorganized Additional Debtor, as applicable, and the Professional or Entity requesting allowance and payment of a Professional Fee Claim).

119.    Allowed Professional Fee Claims shall be paid in full, in cash, in such amounts as are Allowed by the Bankruptcy Court on or as soon as reasonably practicable after the later of: (a) the date upon which an order relating to any such Allowed Professional Fee Claim is entered; and (b) such other date(s) as the holders of the Allowed Professional Fee Claim and the Debtor, the Trust or the Reorganized Debtor, as applicable, or, in the case of an Additional Debtor, the Additional Debtor or the Reorganized Additional Debtor, as applicable, shall have agreed.  The

Reorganized Debtor shall pay all Allowed Professional Fee Claims, except for those that constitute Trust Assumed Administrative Expenses.

120.    The Reorganized Debtor and Reorganized Additional Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred by their respective Professionals or other Entities entitled to compensation after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

121.    Notwithstanding anything else herein or in the Trust Documents to the contrary, the Trust will assume and shall pay as a first priority administrative expense, with priority and distribution preference over any other Claim, the Allowed Trust Assumed Administrative Expenses.  The Debtor, Reorganized Debtor, Additional Debtors and Reorganized Additional Debtors shall have no responsibility for the Trust Assumed Administrative Expenses.

122.    The Trust and the Trustee are authorized to pay compensation for services rendered or reimbursement of expenses incurred by their Professionals after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### *Classifications*

123.    The terms of the Plan shall govern the classification of Claims for purposes of the distributions to be made thereunder.

### *Plan Supplement*

124.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtor or Additional Debtors at the Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtor, the Reorganized Debtor, Additional Debtors or Reorganized

Additional Debtors are authorized when they are finalized, executed, and delivered. Subject to

the proviso of Paragraph 11 above, without further order or authorization of this Court, the

Debtor, Reorganized Debtor, Additional Debtors, and Reorganized Additional Debtors and their

successors are authorized and empowered to make all modifications to all documents included as

part of the Plan Supplement that are consistent with the Plan. Execution versions of the

documents comprising or contemplated by the Plan Supplement shall constitute legal, valid,

binding, and authorized obligations of the respective parties thereto, enforceable in accordance

with their terms and, to the extent applicable, shall create, as of the Effective Date, all mortgages,

Liens, deeds of trust, pledges, and security interests purported to be created thereby.

### Plan Modifications

125.    Entry of this Confirmation Order shall mean that any modifications or

amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of

the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy

Rule 3019.

### Exit Facility

126.    Upon entry of the Confirmation Order, the Debtor and Reorganized Debtor (as

applicable), and their subsidiaries (as applicable), shall be authorized to execute and deliver, and

to consummate the transactions contemplated by or permitted under, the Exit Facility Documents

(including any asset transfers contemplated thereby) in all respects without further notice to or

order of the Bankruptcy Court, act or action under applicable Law, regulation, order or rule or

the vote, consent, authorization or approval of any person or entity, subject to such modifications

as the Debtor or Reorganized Debtor (as applicable), and their subsidiaries (as applicable), may

deem to be necessary to consummate the Exit Facility Documents. Confirmation of the Plan shall

be deemed approval of the Exit Facility and Exit Facility Documents, including the transactions contemplated thereby (including the assignment of the FCC Licenses and FCC Leases contemplated thereby), and all actions to be taken, undertakings to be made, obligations and guarantees to be incurred and fees paid in connection therewith. On the Effective Date, the Exit Facility shall constitute legal, valid, binding and authorized indebtedness and obligations of the Reorganized Debtor and its subsidiaries (as applicable), enforceable in accordance with its terms and such indebtedness and obligations (and the transactions effectuated to implement the Exit Facility (including the assignment of the FCC Licenses and FCC Leases contemplated thereby)) shall not be and shall not be deemed to be, enjoined or subject to discharge, impairment, release or avoidance under the Plan, the Confirmation Order or on account of the confirmation or consummation of the Plan.

127.    On the Effective Date, all the liens and security interests granted in accordance with the Exit Facility Documents shall be legal, valid, and binding upon the Reorganized Debtor and its subsidiaries (as applicable), enforceable in accordance with their respective terms, and no obligation, payment, transfer or grant of security under the Exit Facility Documents (or other asset transfer contemplated thereby (including the assignment of the FCC Licenses and FCC Leases contemplated thereby)) shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim. Such liens and security interests (and other asset transfers contemplated by the Exit Facility Documents) shall be deemed automatically perfected on the Effective Date without the need for the taking of any further filing, recordation, approval, consent or other action, and such liens and security interests (and other asset transfers) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization or subordination

(including equitable subordination) for any purposes whatsoever and shall not constitute

preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable

non-bankruptcy law.

128.    On the Effective Date, the Reorganized Debtor and its subsidiaries (as

applicable), and the Exit Facility Lender and the Exit Facility Agent shall be authorized to make

all filings and recordings, obtain all governmental approvals and consents, and take any other

actions necessary to establish and perfect such liens and security interests under the provisions of

the applicable state, federal, or other law (whether domestic or foreign) that would be applicable

in the absence of the Plan and the Confirmation Order (it being understood that perfections shall

occur automatically by virtue of the entry of the Confirmation Order and any such filings,

recordings, approvals, and consents shall not be required), and the Reorganized Debtor and its

subsidiaries (as applicable) shall thereafter cooperate to make all other findings and recordings

that otherwise would be necessary under applicable law to give notice of such liens and security

interests to third parties.

129.    After entry of this Confirmation Order and no later than concurrently with the

execution of the Exit Facility Loan Agreement, the Debtor and Reorganized Debtor (as

applicable), shall (a) assign the FCC Licenses to DRVC SPV and (b) assume the FCC Leases,

and assign the FCC Leases to the DRVC SPV, pursuant section 365 of the Bankruptcy Code.

130.    After entry of this Confirmation Order and no later than concurrently with the

execution of the Exit Facility Loan Agreement, the Debtor and Reorganized Debtor (as

applicable) and their subsidiaries (as applicable), shall enter into that certain Non-Disturbance

and Subordination Agreement by and between WBSY Licensing, LLC, the Roman Catholic

Diocese of Rockville Centre, New York, DRVC SPV Intermediate, LLC, DRVC SPV, LLC, and the Exit Facility Agent.

### *Exemption from Certain Transfer Taxes and Recording Fees.*

131.    To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and, upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and are allowed to accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.  Such exemption specifically applies, without limitation, to the creation, modification, consolidation, or recording of any mortgage, deed of trust, lien, or other security interest under the Exit Facility or CemCo Loan.

### *Effectuating Documents and Further Transactions*

132.    Each of the officers, managers, or members of the Debtor, the Additional Debtors, the Reorganized Debtor, the Reorganized Additional Debtors, the Trust or the Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### *Treatment of Executory Contracts and Unexpired Leases*

133.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article VI of the Plan (including the procedures regarding the resolution of

any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety.

134.    Entry of this Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan or the Rejected Contracts Schedule, pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise set forth herein, the assumption or rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by the Reorganized Debtor and Reorganized Additional Debtors in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtor.

135.    Unless otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Amount must be filed, served, and actually received by the counsel to the Debtor within ten (10) days of the service of assumption and proposed Cure Amount, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption and Cure Amount and shall be forever barred, estopped, and enjoined from

contesting the Debtor's assumption of the applicable Executory Contract or Unexpired Lease and

from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be

paid by the Debtor or the Reorganized Debtor, in each case without the need for any objection by

the Debtor or the Reorganized Debtor or any further notice to or action, order, or approval of the

Bankruptcy Court. The Reorganized Debtor may settle any Cure Amount without any further

notice to or action, order, or approval of the Bankruptcy Court.

136.    The Debtor's assumption of any Executory Contract or Unexpired Lease pursuant

to the Plan or otherwise and payment of the applicable Cure Amount shall result in the full

release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including

defaults of provisions restricting the change in control or ownership interest composition or other

bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease

at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon

Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases,

including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of

the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation

Order) approving such assumption, (2) the effective date of such assumption or (3) the Effective

Date, in each case without the need for any objection by the Debtor or the Reorganized Debtor or

any further notice to or action, order, or approval of the Bankruptcy Court.

### *The Releases Under the Plan*

137.    Upon the Effective Date, the releases in the Insurance Settlement Agreements,

CemCo Settlement Agreement, Article V.U of the Plan (Department of Education Settlement),

Article V.T of the Plan (Seminary Settlement) and the Seminary Settlement Agreement are

hereby fully adopted and ratified in all respects. Upon the Effective Date, the foregoing releases

shall be binding upon the Debtor, Additional Debtors, Reorganized Debtor, Reorganized Additional Debtors, and all other Entities as and to the extent set forth in the Plan and applicable settlement agreements.

### *The Discharge, Injunction, Exculpation, and Related Provisions Under the Plan*

138.    The injunctions and exculpations set forth in the Plan, including those set forth in Article XI thereof, (i) are appropriate and consistent with the Bankruptcy Code and applicable law, (ii) are hereby approved and authorized in all respects, and (iii) shall be immediately effective and binding on all Persons and Entities on and after the Effective Date, to the extent provided in the Plan, without further order or action of this Court or any other party.

139.    <u>Discharge of Claims</u>. The discharge provisions and related discharge injunction set forth in Article XI.C of the Plan are hereby approved.

140.    <u>Channeling Injunction</u>. The Channeling Injunction set forth in Article XI.D of the Plan is hereby approved.

141.    In consideration of the undertakings of the Protected Parties, their contributions to the Trust, and other consideration, and, where applicable, pursuant to their respective settlements with the Debtor or Additional Debtors and to further preserve and promote the agreements between and among the Protected Parties, and to supplement where necessary the injunctive effect of the discharge as provided in section 1141 and 524 of the Bankruptcy Code, and pursuant to sections 105 and 363 of the Bankruptcy Code:

>   1.    Any and all Channeled Claims against the Protected Parties are channeled into the Trust and shall be administered under the procedures and protocols and in the amounts established under the Plan and the Trust Documents as the sole and exclusive remedy for all Channeled Claimants;

>   2.    all Entities that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claims against the Protected Parties shall be permanently and forever stayed, restrained, enjoined and barred from taking any action for the purpose of directly or indirectly asserting, enforcing,

collecting, recovering, or receiving payments, satisfaction, or recovery from any Protected Party, including:

**1.**  commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Channeled Claim against any Protected Party or any property or interest in property of any Protected Party;

**2.**  enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interest in property of any Protected Party with respect to any such Channeled Claim;

**3.**  creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien or Encumbrance of any kind against any Protected Party or any property or interest in property of any Protected Party with respect to any such Channeled Claim;

**4.**  asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Protected Party or any property or interest in property of any Protected Party with respect to any such Channeled Claim; and

**5.**  taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents with respect to any such Channeled Claim.

142.    The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation.  The channeling of the Channeled Claims, provided in Article XI.D of the Plan, inures only to the benefit of the Protected Parties.  In a successful action to enforce the injunctive provisions of this Article in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

143.    Notwithstanding anything to the contrary in Article XI.D of the Plan, the Channeling Injunction shall not enjoin:

1.  the right of any Entity to the treatment afforded to such Entity under the Plan, including the rights of holders of Channeled Claims to assert such Channeled Claims in accordance with the Trust Documents solely through the Trust;

2.  the right of any Entity to assert any Claim for payment of Trust Expenses solely against the Trust;

3.  the Trustee from enforcing rights under the Trust Documents;

4.  the Settling Insurers from enforcing rights under the Insurance Settlement Agreements;

5.  the rights of the Trust, the Trustee, the holders of Abuse Claims, the Co-Insured Parties, the Reorganized Debtor and Reorganized Additional Debtors (in each case, to the extent permitted or required under the Plan) to prosecute any Claims, including Insurance Actions, or seek recovery of any Insurance Proceeds, in each case, against the Non-Settling Insurers based on or arising from the Non-Settling Insurance Rights Transfer or otherwise;

6.  the rights of the Co-Insured Parties with respect to Co-Insured Claims against, or with respect to, the Trust; or

7.  the rights of the Co-Insured Parties against Settling Insurers solely with respect to the Retained Workers Compensation Coverage as set forth in the Insurance Settlement Agreements.

144. <u>Settling Insurer Supplemental Injunction</u>. The Settling Insurer Supplemental Injunction set forth in Article XI.E of the Plan and in the Sale Order is hereby adopted and ratified in all respects.  On the Effective Date, with respect to Ecclesia, the Supplemental Injunction set forth in Article XI.E of the Plan and in the Sale Order is hereby approved and imposed in all respects.

145. Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, and in consideration of the undertakings of Interstate, the London Market Insurers, Evanston and Lexington pursuant to their respective Agreements, including Interstate's, the London Market Insurers', Evanston's and Lexington's purchase of the applicable Purchased Property free and clear of all Claims and Interests pursuant to Section 363(f) of the Bankruptcy Code as provided

herein,  any and all Entities that have held, now hold, or who may in the future hold any Claims

or Interests (including without limitation all debt holders, all equity holders, governmental, tax

and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, Misconduct

Claimants, perpetrators, Covered Parties, any other additional insureds or named insureds, Non-

Settling Insurers, the Diocese Bound Parties, and all others holding Claims or Interests of any

kind or nature whatsoever, including, without limitation, those Claims released or to be released

pursuant to the respective Agreements), which Claims or Interests are under, arise out of, relate

to, or connect in any way with any of the Purchased Property, including, without limitation, (a)

Other Parties Claims, Abuse Claims, Misconduct Claims, Future Misconduct Claims, Coverage

Claims, Co-Insured Claims, Inbound Contribution Claims, Insurer Contribution Claims, Related

Insurance Claims, Direct Action Claims and Post-Confirmation Claims and Channeled Claims,

(b) the payment of any of the Claims identified previously, including, without limitation,

Medicare Claims, and (c) all other Barred Claims or Interests, are, to the maximum extent

permitted by law, hereby permanently stayed, enjoined, barred, and restrained from taking any

action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or

Interest against any of (x) the Interstate Released Parties, Interstate's Related Persons, the LMI

Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI

Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities or Lexington Entities,

(y) the assets or property of any Interstate Released Parties, Interstate's Related Persons, the LMI

Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI

Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities or Lexington Entities,

or (z) the Purchased Property, including, without limitation, by:

> (i)    commencing or continuing in any manner any action or other proceeding of
> any kind against any Interstate Released Parties, Interstate's Related Persons, the LMI

Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities and Lexington Entities, or against the property of any of the foregoing;

(ii)    enforcing, attaching, collecting, or recovering, or seeking to accomplish any of the preceding, by any manner or means, any judgment, award, decree, or order against any Interstate Released Parties, Interstate's Related Persons, the LMI Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities and Lexington Entities, or against the property of any of the foregoing;

(iii)    creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind against any Interstate Released Parties, Interstate's Related Persons, the LMI Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities and Lexington Entities, or against the property of any of the foregoing;

(iv)    asserting, implementing, or effectuating any such Claim of any kind against: (A) any obligation due to any of the Interstate Released Parties, Interstate's Related Persons, the LMI Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities, or Lexington Entities, as applicable, (B) any of the Interstate Released Parties, Interstate's Related Persons, the LMI Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities, or Lexington Entities, as applicable, or (C) the property of any of Interstate Released Parties, Interstate's Related Persons, the LMI Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities, or Lexington Entities, as applicable;

(v)    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Order; and

(vi)    asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to Interstate Released Parties, Interstate's Related Persons, the LMI Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities or Lexington Entities, as applicable, or the property of any of the foregoing.

The actions described in this paragraph are "**Enjoined Actions**," and the injunction set forth herein is the "**Supplemental Settling Insurer Injunction**." The Supplemental Settling Insurer Injunction shall be a permanent injunction against the Enjoined Actions and may not be modified, dissolved, or terminated.

146.    Notwithstanding anything to the contrary in the foregoing, the Supplemental Settling Insurer Injunction does not apply to WC Coverage or the ISO Exception (as and to the extent provided in the Insurance Settlement Agreements).

147.    The above Supplemental Settling Insurer Injunction will be effective as to each Settling Insurer only as of the date that the Trust receives the Settlement Amount from that Settling Insurer pursuant to the terms of its Agreement.  The above Settling Insurer Supplemental Injunction bars pursuit of the above referenced Claims and/or Interests against the Interstate Released Parties, Interstate's Related Persons, the LMI Entities, the Underwriter Third-Party Beneficiaries, and/or the Related Entities of the LMI Entities and the Underwriter Third-Party Beneficiaries, Evanston Entities or Lexington Entities, or the property or assets of each (including, without limitation, the Purchased Property), as applicable, but against no other person or thing.  In a successful action to enforce this Supplemental Settling Insurer Injunction in response to a willful violation thereof, the moving party may seek an award of costs (including, without limitation, reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

148.    The Supplemental Settling Insurer Injunction shall not enjoin (a) the right of any Entity against the Trust or a Non-Settling Insurer, or (b) the Trustee from enforcing the Trust Documents.

149.    Exculpation. The Exculpation provision set forth in Article XI.J of the Plan is hereby approved.

150.    Injunctions Related to Exculpation.   The injunction provision related to Exculpation set forth in Article XI.K.2 of the Plan is hereby approved.

151.   <u>Injunctions Related to Releases</u>.  The injunction provisions related to releases referenced in Article XI.I set forth in Article XI.K.1 of the Plan are hereby approved.

152.   <u>Gatekeeper Injunction</u>.  To the extent permitted by law, and subject in all respects to Article XI of the Plan, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or Cause of Action that arose or arises from or is related to an Abuse Claim, the Chapter 11 Cases, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the business of the Debtor, the Additional Debtors, the Reorganized Debtor, the Reorganized Additional Debtors, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Supplemental Injunction, specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against any such Protected Party. The Bankruptcy Court will have jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article XII of the Plan shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

153.   For the avoidance of doubt, the Gatekeeper Injunction above does not apply to Claims seeking recovery from Non-Settling Insurers.

***Limitation on Injunctions***

154.   Nothing in the Settling Insurer Supplemental Injunction or Channeling Injunction shall enjoin a Claim, if any, of an Abuse Claimant against any of the Insurer Parties (as defined in the Sale Order) to the extent that such Claim (if any) is a direct claim by an Abuse Claimant

that is premised on an independent legal duty owed to such Abuse Claimant by an Insurer Party and outside the jurisdiction of the Bankruptcy Court. While the Settling Insurer Supplemental Injunction and Channeling Injunction do not enjoin or release such direct claims (if any), (a) the contractual release, which is set forth in the Plan Supplement and provided for in Section 4.3(d) of the Trust Agreement, includes such direct claims, and (b) the Indemnified Claims that are the subject of Article V.CC include such direct claims.

### *Enforcement of the Injunctions*

155.    The Debtor, the Reorganized Debtor, or any Protected Parties may enforce the Channeling Injunction as a defense to any Claim (in whole or in part) brought against such Protected Parties that is enjoined under the Plan as to such Protected Parties and may seek to enforce such injunction in this Court or another court of competent jurisdiction. All Claims that will be discharged, exculpated or enjoined under any provision of Article IX of the Plan upon the occurrence of the Effective Date are and shall be stayed and enjoined pending the satisfaction of the conditions to the Effective Date. The Protected Parties have and shall retain standing under the Plan to object to any Claims filed in the Chapter 11 Case and enforce the injunctions set forth in Article IX of the Plan.

156.    Upon the effectiveness of the Settling Insurer Supplemental Injunction, all Channeled Claimants are ordered to dismiss with prejudice any pending actions or Claims against the Protected Parties based on Channeled Claims to the extent a Settling Insurer provides, or is alleged to provide, insurance coverage for such Claims, and provided that a Non-Settling Insurer does not also provide or is alleged to provide insurance coverage for such Claims, and instead to assert such Claims against the Trust for resolution pursuant to the Trust Agreement. In no event shall any Channeled Claims that are subject to the Channeling Injunction or the Settling

Insurer Supplemental Injunction be asserted against the Settling Insurers. For the avoidance of doubt and as set forth in Article XI.E of the Plan, the Settling Insurer Supplemental Injunction set forth in the Sale Order is adopted and ratified in all respects without modification in this Confirmation Order.

### *Judgment Reduction*

157.    The Channeling Injunction shall channel all Insurer Contribution Claims against Protected Parties and all Indirect Abuse Claims against Protected Parties to the Trust in accordance with Article XI of the Plan. If, for any reason any court does not recognize the channeling of the Insurer Contribution Claims to the Trust, or such Claims are not channeled for any reason, then the following shall apply:

1.    The Settling Insurers shall retain their SI Contribution Claims, provided, however, that

    a.    The Settling Insurers shall not pursue any SI Contribution Claims against any Non-Settling Insurer, (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of Article V.X of the Plan; or (C) that does not assert an Insurer Contribution Claim against them;

    b.    If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then the Settling Insurers shall assign any SI Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such SI Contribution Claims against such Non-Settling Insurer;

    c.    If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against a Settling Insurer, then such released Settling Insurer shall release its SI Contribution Claims against such releasing Non-Settling Insurer;

    d.    If a Non-Settling Insurer asserts an Insurer Contribution Claim against any Settling Insurer, and

    (1) the Trust fully indemnifies the Settling Insurer, then the Settling Insurer shall assign its SI Contribution Claim to the Trust; or

(2) the Trust partially, but not fully, indemnifies the Settling Insurer for such Claim, then the Settling Insurer shall retain its SI Contribution Claims and may assert those Claims against the Non-Settling Insurer asserting the Insurer Contribution Claim against the Settling Insurer. Any recovery by the Settling Insurer exceeding the amount necessary to satisfy the Trust's full indemnity obligation plus litigation costs shall be turned over to the Trust.

2.      In any Insurance Action, including the Coverage Adversary Case, involving the Debtor, a Co-Insured Party, or the Trust (collectively, "**Alleged Insured**") or the holder of an Abuse Claim, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Insurer Contribution Claim against a Settling Insurer, then any judgment or award obtained by such Alleged Insured or holder of an Abuse Claim against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such Settling Insurer is liable to pay such Non-Settling Insurer as a result of its Insurer Contribution Claim, so that the Insurer Contribution Claim is thereby satisfied and extinguished entirely ("**Reduction Amount**"). In any Insurance Action involving an Alleged Insured or the holder of an Abuse Claim against a Non-Settling Insurer, where the respective Settling Insurer is not a party, such Alleged Insured or the holder of an Abuse Claim shall obtain a finding from that court or arbitrator(s), as applicable, of the Reduction Amount before entry of judgment against such Non-Settling Insurer. In the event that such a reduction is not made as described above, then any Insurer Contribution Claim by any Non-Settling Insurer against any Settling Insurer shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Insurer Contribution Claim is filed. Settling Insurers shall be required to cooperate in good faith with the Alleged Insured to take reasonable steps to defend against any Insurer Contribution Claim. In the event that the reduction eliminates the Non-Settling Insurer's Insurer Contribution Claim, then any determination regarding the reimbursement of costs and expenses, including legal fees, shall be determined by a court of competent jurisdiction.

3.      If an Alleged Insured or a holder of an Abuse Claim and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases its Insurer Contribution Claims against each Settling Insurer so long as Settling Insurer release their SI Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against Settling Insurers, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount. In such event, the settling parties shall obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount. If (a) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (b) such a reduction is not otherwise made as described above, then any Insurer Contribution Claim by any Non-Settling Insurer against any Settling Insurer shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Insurer Contribution Claim is filed. Settling Insurers shall be required to cooperate in good faith with the Alleged Insured to take reasonable steps to defend against any Insurer Contribution Claim by a Non-Settling Insurer. In the event that the reduction eliminates the Non-Settling Insurer's Insurer Contribution Claim, then any determination regarding the reimbursement

of costs and expenses, including legal fees, shall be determined by a court of competent jurisdiction.

4. To ensure that the reduction contemplated in Article V.X of the Plan is accomplished, the Settling Insurers shall be entitled to: (i) notice, within a reasonable time of the initiation of any future Insurer Action against or future settlement negotiations with any Non-Settling Insurer in which an Insurer Contribution Claim is asserted against any Settling Insurer, and periodic notices thereafter on at least an annual basis of the status of such Insurer Action or negotiations; (ii) the opportunity to participate in the Insurer Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in Article V.X of the Plan; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of the Settling Insurers, so that the Settling Insurers can assert Article V.X of the Plan as a defense in any Insurer Action against any of them for any Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Insurer Contribution Claim. The notice required above shall be given by (a) the Alleged Insured that is a party to such Insurer Action or settlement negotiations; or (b) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Insurer Action or settlement negotiations; or (c) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the holder of the Abuse Claim bound by the Plan.

158. The above procedures shall bind, and inure to the benefit of, all Settling Insurers.

### *Notice of Confirmation and Effective Date*

159. The Debtor shall cause to be served a notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and the Administrative Claims Bar Date, substantially in the form attached hereto as Exhibit B (the "Notice of Effective Date"), upon counsel for all persons listed on Exhibit 6 of the Disclosure Statement and all other parties listed in the creditor matrix for the Debtor maintained by Epiq Corporate Restructuring, LLC within five business days after the Effective Date, or as soon as reasonably practicable there, and such additional Entities as deemed appropriate by the Debtor. The Debtor shall cause the Notice of Effective Date to be published in the *New York Times*, within seven business days after the Effective Date, or as soon as reasonably practicable thereafter. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

### *The Committee and Future Claimants' Representative*

160.    Except as set forth below, the Committee and the Future Claimants'

Representative shall continue in existence until the Effective Date.  On the Effective Date, the

Future Claimants' Representative, and each Professional acting for the Future Claimants'

Representative, shall be released and discharged from all rights, duties, responsibilities, and

obligations arising from, or related to, the Debtor, the Additional Debtors, the Plan, or the

Chapter 11 Cases, except with respect to (x) any matters concerning any Professional Fee Claims

held or asserted by the Future Claimants' Representative or any Professional retained by the

Future Claimants' Representative; and (y) any services reasonably necessary or desirable to

represent the interests of Future Abuse Claimants in the event of a future request to amend the

Trust Allocation Protocol, either by consent, or Court approval, under ¶ 11 of this Order.  On the

Effective Date, the Committee shall dissolve and, as of the Effective Date, each member of the

Committee and each Professional retained by the Committee shall be released and discharged

from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtor, its

membership on the Committee, the Plan, or the Chapter 11 Cases, except with respect to any

matters concerning any Professional Fee Claims held or asserted by any Professional retained by

the Committee. For the avoidance of doubt, neither the Debtor, Additional Debtors, Reorganized

Debtor nor the Reorganized Additional Debtors shall have any obligation to pay any fees or

expenses of any Professional retained by the Committee, or the Future Claimants' Representative

that are earned or incurred on or after the Effective Date. Nor shall the Debtor, Additional

Debtors, the Reorganized Debtor or Reorganized Additional Debtors have any obligation to pay

fees or expenses of any Professional retained by the Committee or the Future Claimants'

Representative that are earned or incurred before the Effective Date to the extent such fees or

expenses (or any portion thereof) are outstanding on the Effective Date, in which case such fees

and expenses (or the applicable portion thereof) shall be paid by the Trust.  All Trust Assumed

Administrative Expenses are the responsibility of the Trust.

### Headings

161.    Headings utilized herein are for convenience and reference only, and do not

constitute a part of the Plan or this Confirmation Order for any other purpose.

### Final Order

162.    This Confirmation Order is a final, appealable order and the period in which an

appeal must be filed shall commence upon the entry hereof.

### Governing Law

163.    Except to the extent that the Bankruptcy Code or other federal law is applicable,

the rights, duties, and obligations arising under the Plan shall be governed by, and construed and

enforced in accordance with, the laws of the State of New York, without giving effect to the

principles of conflict of laws thereof.

### Relief Regarding Additional Debtors

164.    In accordance with Section VI.C(4) of the *Amended Procedural Guidelines for

Prepackaged Chapter 11 Cases*, ordered by General Order M-621 (January 22, 2024), the

Additional Debtors' obligation to file corporate ownership statements, schedules, statements of

financial affairs, and a list of the largest 20 unsecured claims pursuant to FED. R. BANKR. P. 1007

is waived.  The Additional Debtors' compliance with the requirements of FED. R. BANKR. P.

1007, 2002(f)(1), 2003, and 4002, and any Local Rules with respect to each of the foregoing, are

likewise waived. The Court, upon the request of a party in interest and after notice and a hearing,

for cause, orders that the United States Trustee not convene a meeting of creditors because the

Additional Debtors filed a plan as to which they solicited acceptances prior to the

commencement of the case.  Upon entry of this Confirmation Order, the Additional Debtors shall

be authorized to continue their operations in the ordinary course of business, including paying

Claims in Class 9.

### *Miscellaneous*

165.    This Court may properly, and upon the Effective Date shall, retain jurisdiction

over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in Article

XII of the Plan.

166.    Pursuant to Article XIII.I of the Plan, and notwithstanding Bankruptcy Rules

3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the

Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed

binding upon and inure to the benefit of the Debtor, Additional Debtors, the holders of Claims,

the Covered Parties, and each of their respective successors and assigns, including the

Reorganized Debtor and Reorganized Additional Debtors.

167.    If the Confirmation Order is vacated or the Effective Date does not occur within

180 days after entry of the Confirmation Order (subject to extension by the Debtor and

Additional Debtors in their sole discretion), the Plan shall be null and void in all respects and

nothing contained in the Plan or the Disclosure Statement shall (1) constitute a waiver or release

of any Causes of Action by or Claims against the Debtor or Additional Debtors; (2) prejudice in

any manner the rights of the Debtor, the Additional Debtors, any holders of a Claim or any other

Entity; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, the

Additional Debtors, any holders, or any other Entity in any respect; or (4) be used by the Debtor,

the Additional Debtors or any other Entity as evidence (or in any other way) in any litigation,

including with respect to the strengths and weaknesses of positions, arguments or claims of any

of the parties to such litigation.

168.    This Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Article VIII.G of the Plan, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor or the Reorganized Debtor (as the case may be), and (3) nonseverable and mutually dependent.

169.    On or before the Effective Date, the Debtor and Additional Debtors may file with this Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor, Reorganized Debtor, the Additional Debtors or Reorganized Additional Debtors, as applicable, and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

170.    If any of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor and Additional Debtors.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such acts or obligations incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

171.    The Debtor and Additional Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article X.B of the Plan.

172.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.  To the fullest extent possible, the Plan, the Disclosure Statement, the Plan Supplement, the Sale Order and this Confirmation Order shall be read harmoniously.   In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order or Sale Order (including the Insurance Settlement Agreement approved thereby)) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that in the event of a conflict between Confirmation Order, on the one hand, and any of the other Plan Documents, on the other hand, the Confirmation Order shall govern and control in all respects; provided, further, however, that in the event of a conflict between the Confirmation Order, on the one hand, and any Sale Order, on the other hand, the Sale Order (including the Insurance Settlement Agreements approved thereby) shall govern and control in all respects.  For the avoidance of doubt, in the event of any conflict between the terms and provisions in the Plan (including the Plan Supplement and any other instrument or document created or executed pursuant to the Plan), on the one hand, and the terms and provisions of the

63

Insurance Settlement Agreements, on the other hand, the Insurance Settlement Agreements shall govern and control in all respects.

173.    This Confirmation Order is a final order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof. In the absence of any Entity obtaining a stay pending appeal, the Debtor and Additional Debtors are authorized to consummate the Plan.

174.    Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties:  (a) the Reorganized Debtor and its counsel; (b) the Reorganized Additional Debtors and their counsel, (c) the U.S. Trustee; (d) the Trustee; and (e) any party known to be directly affected by the relief sought.

Dated: New York, New York
      December 4, 2024                 _____/s/Martin Glenn_____
                                     UNITED STATES BANKRUPTCY JUDGE