```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
```
|  |  |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC DIOCESE OF<br>ROCKVILLE CENTRE, NEW YORK,<br><br>            Debtor. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 20-12345 (MG) |

**MEMORANDUM OPINION AND ORDER SUSTAINING REORGANIZED
ADDITIONAL DEBTORS' OBJECTION TO CLAIM NO. 50007**

*A P P E A R A N C E S :*

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
*Attorneys for the Reorganized Additional Debtors*
1201 RXR Plaza
Uniondale, NY 11556
By: William C. Huer, Esq.
   Alexandra Pontrello, Esq.

Pro Se Claimant 50007


**MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE**

   Pending before the Court is the Additional Debtors' First Omnibus Objection (ECF Doc. # 3613, "Objection") to claim no. 50007. (The omnibus objection was granted with respect to all other applicable claims, *see* ECF Doc. # 3634, including claim no. 90622, *see* ECF Doc. # 3649.) The claimant ("Claimant") filed a response ("Response," ECF Doc. # 3647) *pro se* to the Objection. The Additional Debtors filed a reply ("Reply," ECF Doc. # 3655), and the Claimant filed a sur-reply ("Sur-Reply," ECF Doc. # 3657).

   For the following reasons, the Court **SUSTAINS** the Objection and **EXPUNGES** claim no. 50007.

# I. BACKGROUND

## A. First Omnibus Objection

The Additional Debtors—the parishes under the Rockville Center Diocese—filed voluntary petitions for relief under chapter 11 on December 3, 2024. (Obj. ¶ 1.) The Additional Debtors' prepackaged plans were confirmed, along with the Diocese's chapter 11 plan, on December 4, 2024. (*Id.* ¶ 3.) This objection concerns an abuse claim filed against the Additional Debtors.

There are two broad categories of abuse claims: (1) previously-asserted (pre-confirmation) abuse claims and (2) new abuse claims filed post-confirmation. (*Id.* ¶ 6.) Only the new abuse claims are at issue. New abuse claimants can seek to recover from one of two sources: if they elect to be a participating post-confirmation claim, they will be treated in accordance with the trust documents and the Diocese's chapter 11 plan, which provides for payment out of a trust established for abuse victims. (*Id.* ¶ 9.) If they do not so elect, such non-participating post-confirmation Claimants choose their own claim allowance and objection process. (*Id.*) This dispute concerns a non-participating post-confirmation claim. (*Id.* ¶ 10.)

The Additional Debtors expressly preserved all their objections to claims in their chapter 11 plan, including objections based on the statute of limitations. (*Id.* ¶ 11.)

The Additional Debtors argue that this claim is time-barred under applicable non-bankruptcy law and should therefore be disallowed under sections 502(b)(1) and 558 of the Code. (*Id.* ¶ 16.) The statute of limitations for negligence claims in New York is three years from the date of injury or from attaining the age of 18. (*Id.* ¶ 17.) The Additional Debtors argue that the allegations set out in the proof of claim demonstrate that the claim is barred by the applicable statute of limitations. (*Id.* ¶ 21.)

### B. Claim No. 50007

The Claimant filed a timely proof of claim on December 30, 2024. (Response at 1, Reply at 2.) He used the "Confidential Adult Survivors Act Sexual Abuse proof of Claim" form. (Proof of Claim ("POC") 50007.)[1] He identified the alleged perpetrator [name redacted in this Opinion], and he stated that he knew him because he "was a friend" who "[a]t the time [] was in the Seminary for the Diocese." (*Id.* at 7.) He claims that the abuse occurred "in Lynbrook outside a bar," specifically in the perpetrator's car when the Claimant was 19. (*Id.* at 8.) He provides some details on the nature of the abuse and states that he has "since filed a Police Report." (*Id.* at 9.)

The claim, as originally filed, did not identify an Additional Debtor, nor did it make any allegations relating to an Additional Debtor. On March 24, 2025, Claimant contacted the Additional Debtors by email, in response to an earlier application for a final decree in certain of the Reorganized Debtors' cases. (Reply at 2.) Claimant responded to an assertion in the application for a final decree that he did not "elect" to be channeled to the Settlement Trust. (*Id.*) Claimant indicated that the claim form he submitted did not give him an option to "elect" having his Claim channeled to the Settlement Trust. (*Id.*) The Additional Debtors thereafter had email exchanges with Claimant regarding the claim and the claim process. (*Id.*)

On April 15, 2025, the Additional Debtors sent Claimant a letter indicating that an objection would be filed regarding the Claim, based on expiration of the statute of limitations and failure to identify an Additional Debtor. (*Id.* at 2–3.) Claimant was also given an opportunity to amend his Claim to include an election to be channeled to the Settlement Trust if he chose to. (*Id.* at 3.) The April 15, 2025 correspondence was followed by extensive email

---

[1] As with other proofs of claim for sexual abuse filed in this matter, this proof of claim and the others cited in this Opinion remain sealed.

3

correspondence between Claimant and the Additional Debtors, with counsel to the Trustee of the Settlement Trust copied. (*Id.*) Thereafter, on April 24, 2025, Claimant submitted a revised Claim form (dated April 19, 2025) that made the "election" to be a channeled claim addressed by the Trustee and the Settlement Trust claim process. (POC 60049 at 3.) In that first amended proof of claim, the Claimant alleges that he was assaulted by perpetrator "who is was [sic] enrolled in the seminary of the Diocese of RVC"; the Claimant states that perpetrator was "an adult leader in an Antioch Youth Ministry group at St. Raymond's Church" when they met, and that the perpetrator was "attending the Seminary of the Immaculate Conception of Diocese of RVC" at the time. (*Id.* at 9.) The Claimant states that the abuse occurred when he was 19, and identifies the year as 1983. (*Id.* at 10.) He says the abuse occurred inside the perpetrator's car, and one detail of the alleged abuse changed. (*Id.* at 11.) He also added details to the damages he claims he suffered as a result, but he omits the point about the police report he filed. (*Id.* at 12.)

The Additional Debtors argue that the first amended claim is different from the original POC: whereas (i) the original claim did not identify an Additional Debtor and (ii) referred to the alleged abuser as "a friend," the amended claim indicated that the alleged abuser was "an adult leader in an Antioch Youth Ministry Group at St. Raymond's Church" when Claimant met him (i.e., the "friend" reference was not included in the amended Claim); the amended claim also contained (iii) additional background facts and information regarding Claimant, (iv) additional information regarding the time and place when/where the alleged abuse took place, (v) changed the year (although not the day) on which the alleged abuse took place, (vi) changed what was stated about whether anyone was informed of the alleged abuse at the time, (vii) changed what was stated about the injuries/damages sustained, (viii) changed Claimant's response as to

4

whether counseling or other treatment had been sought, and (ix) changed some of the substantive allegations regarding the alleged incident of abuse. (Reply at 3.)

On April 28, 2025, the Claimant contacted the Additional Debtors and stated that he was "finally speaking with an attorney to review the claim form" that he had sent. (*Id*.) Later that same day, Claimant indicated that "[a]fter counsel with any Attorney, I have changed my selection." (*Id.*) (Claimant later confirmed that he is not represented by counsel. (*Id.* at 4.)) He then filed a second amended proof of claim, also dated April 19, 2025, in which Claimant "elected" to have his Claim "resolved pursuant to the Bankruptcy Court's claims allowance process." (POC 60048 at 3.) The seconded amended proof of claim is similar to the first amended proof of claim, but it adds back the point about the police report.

The Additional Debtors argue that Claimant's claim, though timely filed, is not enforceable against the Additional Debtor's estate because it was time-barred due to expiration of the statute of limitations. (Objection ¶¶ 16–18; Reply at 5.)

The Claimant in his Response states that he filed his amended claim "due to a discrepancy with the original claim form missing the Election of Treatment selection page"— i.e., the form he used the first time did not let him opt into the Settlement Trust process. (Response at 1.) He argues that his claim is not time-barred, but does not explain why, merely stating that the question whether his claim is barred by the statute of limitations "involves factual and legal issues that cannot be resolved on the basis of the Objection alone" and that his "amended claim provides additional factual support and documentation relevant to tolling and the delayed discovery of the abuse." (*Id.*) He asks that his claim proceed on the merits. (*Id.* at 2.)

The Additional Debtors' Reply explains that the statute of limitations applicable to the claim is three years from the date of injury or attaining the age of 18, pursuant to NY CPLR § 214(5). (Reply at 6.) Because the Claimant was older than 18 at the time of the abuse, the New York's 2019 Child Victims Act, N.Y. C.P.L.R. § 214-g, ("CVA"), does not apply in this case. That statute revived the statute of limitations in New York for sexual abuse survivors' claims for people sexually abused as minors in New York whose claims were already time-barred; but all such claims must have been asserted by August 14, 2021, to have been timely. (*Id.*)

In addition, however, on May 24, 2022, New York Governor Kathy Hochul signed the Adult Survivors Act (S.66A/A.648A) (the "ASA"). (*Id.*) The ASA revived claims resulting from sexual offenses against individuals that occurred when the person was 18 years of age or older. It allowed such persons to sue on account of such claims, regardless of prior limitations periods, as long as such claims were filed not later than November 24, 2023. (*Id.*) Bur the Claimant's claim was asserted initially on Dec. 30, 2024. (*Id.*)

As for the Claimant's tolling argument, the Additional Debtors point out that the period of limitations for his claim, as he was 19 at the time of the alleged abuse and the age of majority is 18 in New York, is three years; since the Claimant's cause of action accrued in November 1983, his limitations period expired three years later. Although the AVA "revived" or opened a window for the assertion of time-barred claims, the additional period for the assertion of claims pursuant to the AVA closed on November 24, 2023. Claimant did not assert his Claim before then. (*Id.*)

The Additional Debtors argue that under New York law, no "delayed discovery" rule exists to toll the statute of limitations in actions for personal injury based on sexual abuse. (*Id.*)

6

They also argue that, under New York law, there is no support for the application of equitable estoppel to any of the claims filed by the Claimant. (*Id.* at 9.)

In his sur-reply, the Claimant states that he did not "recall or recognize the abuse" he suffered "until November 5, 2024, when a publicly available news article identified the perpetrator . . . in connection with similar allegations," upon which time the Claimant "regain[ed] memory of the incident" and filed his original proof of claim "within weeks of that discovery." (Sur-Reply at 1.) He states that the abuse occurred on November 21, 1983, when he was 19. (*Id.*) But due to "trauma from the incident," he "experienced complete psychological repression of the memory and had no conscious recollection for decades." (*Id.*) He also claims the claim form he used originally "was deficient because it lacked the TREATMENT ELECTION INSTRUCTIONS," which were not presented to him until April 15, 2025. The Claimant argues that equitable tolling applies because this is an "exceptional circumstance[]" since he "could not reasonably be expected to file suit within the statutory period due to extraordinary barriers," and severe psychological memory repression counts as an extraordinary barrier. (*Id.* at 2.) He also argues for the application of equitable estoppel because this is a case where the defendant's "post-abuse conduct or position of authority effectively prevented the plaintiff from filing timely"; here, "the abuse occurred in the context of a church ministry, [the perpetrator] held a position of authority and trust, creating an environment of silence and intimidation that contributed to Claimant's inability to process or disclose the abuse." (*Id.*) The Claimant argues that the defendant's "institutional affiliation and the historical pattern of secrecy in such matters also contributed to Claimant's repressed memory and delayed filing." (*Id.*)

7

## II.  LEGAL STANDARD

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate.  11 U.S.C. § 501(a).  Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)."  4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019).  Pursuant to Federal Bankruptcy Rule 3001(f), a claimant establishes a *prima facie* case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim.  *See* FED. R. BANKR. P. 3001(f).

"To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  If the objector does not "introduce[ ] evidence as to the invalidity of the claim or the excessiveness of its amount, the Claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019).  But by producing "evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal citation and quotation marks omitted); *see*

8

*also In re Allegheny Int'l, Inc*., 954 F.2d 167, 173–74 (3d Cir. 1992) (reciting identical burden-shifting framework).

"To determine whether a claim is allowable by law, bankruptcy courts look to applicable nonbankruptcy law." *In re Roman Cath. Diocese of Rockville Ctr., New York*, 650 B.R. 58, 67 (Bankr. S.D.N.Y. 2023) (cleaned up). Section 502(b)(1) of the Code provides that claims may be disallowed if they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Section 558 of the Code provides that a debtor's "estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation." 11 U.S.C. § 558.

### III.    **DISCUSSION**

The statute of limitations has expired. The CVA is inapplicable here; the extended window for adult survivor claims under the AVA had closed before the claim was filed. In New York, "no 'delayed discovery' rule exists to toll the Statute of Limitations in actions for personal injury based on sexual abuse." *Bassile v. Covenant House*, 191 A.D.2d 188, 594 N.Y.S.2d 192 (1st Dep't 1993).

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir.1996) (citation omitted). Under New York law,[2] the doctrines of equitable tolling

---

[2] This is assuming the Claimant's cause of action arises under New York law. If it does not, a very similar analysis would apply, as federal law on equitable tolling in this Circuit is nearly identical to New York law. *See Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 381–82 (S.D.N.Y. 2012) (setting out the test under federal law); *Doe v. Warren & Baram Mgmt. LLC*, No. 20-CV-9522 (ER) (VF), 2024 WL 2941222, at *4 (S.D.N.Y. May 3, 2024), *report and recommendation adopted sub nom. Doe v. Baram*, No. 20-CV-9522 (ER), 2024 WL 3342602 (S.D.N.Y. July 9, 2024) (same). There is one important distinction: there are some federal cases in this circuit addressing whether mental disabilities warrant equitable tolling. Such cases call for a "highly case-specific" inquiry. *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002) (holding that "equitable tolling may be appropriate where the plaintiff's failure to comply with the statute of limitations is attributable to the plaintiff's medical condition" and remanding to the district court for additional fact-finding as to whether plaintiff's medical condition warranted equitable tolling); *Boos v. Runyon*, 201 F.3d 178, 184–85 (2d Cir. 2000) (holding that

or equitable estoppel "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794 (3d Dep't 2005) ("*Holy See*") (internal quotations and citation omitted); *see also Kotlyarsky v. New York Post*, 195 Misc.2d 150, 152 (N.Y. Sup. Ct. 2003); *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 422 (S.D.N.Y. 2015) ("The doctrine of equitable tolling applies where defendant's fraudulent conduct results in plaintiff's lack of knowledge of a cause of action.") (assessing New York law). "For equitable tolling to apply, plaintiff must show that the defendant wrongfully concealed its actions, such that plaintiff was unable, despite due diligence, to discover facts that would allow him to bring his claim in a timely manner, or that defendant's actions induced plaintiff to refrain from commencing a timely action." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 318 (S.D.N.Y. 2013). "[D]ue diligence on the part of the plaintiff in bringing [an] action" is an essential element of equitable relief. *Holy See*, 17 A.D.3d at 796 (internal citation and quotation marks omitted). "The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (cleaned up) (assessing New York law).

---

Social Security Claimant who averred that mental disability prevented her from timely pursuing her federal claim had not presented sufficient evidence to warrant equitable tolling because the plaintiff offered "no more than a statement that she suffers from 'paranoia, panic attacks, and depression,'" and that "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling"). Even if his claim were one based on federal law, the Claimant has not sufficiently pleaded mental incapacity under the federal equitable tolling standard: he stated generally that he had suppressed his memory of the abuse and notes in one claim that he has sought counseling, but does not provide the necessary "particularized description" of how his mental state affected his ability to pursue his claim. "*Pro se* filings, although held to more lenient standards, are not excused from establishing these elements." *Pietri v. N.Y.S. Off. of Ct. Admin.*, 936 F. Supp. 2d 120, 135 (E.D.N.Y. 2013).

Similarly, equitable estoppel is an "extraordinary remedy."[3] *Pulver v. Dougherty*, 58 A.D.3d 978, 979 (3d Dep't 2009) (Slip Op.); *see also E. Midtown Plaza Hous. Co. v. City of New York*, 218 A.D.2d 628, 628 (1st Dep't 1995). "The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006). This is the case where a plaintiff is "induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Id.* at 674 (internal citation omitted); *see also Pulver*, 58 A.D.3d at 979–80 (holding that equitable estoppel applies "where a party is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the other" (cleaned up)). Such fraud, misrepresentations, or deception must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough, nor are broad misstatements to the community at large. *See Doe v. Kolko*, No. 06 Civ. 2096, 2008 WL 4146199, at *4 (E.D.N.Y. Sept. 5, 2008) ("Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, not a community at large."); *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006) ("A plaintiff seeking to apply the doctrine of equitable estoppel must establish that subsequent and specific actions by defendants somehow kept [him or her] from timely bringing suit." (alteration in original) (citation and internal quotation marks omitted)).

The Claimant's briefs and proofs of claim do not set out an argument for equitable tolling or equitable estoppel, since he did not pursue his claim prior to the expiry of the statute of

---

[3] Again, federal law is similar. *See Baba v. Grand Cent. P'shp*, No. 99 Civ. 5818 (TPG), 2000 WL 1808971, at *2 (S.D.N.Y. Dec. 8, 2000) (setting out the standard); *see also Riddle v. Citigroup*, 449 Fed. Appx. 66, 69 (2d Cir. 2011) (same).

limitations, nor has he shown that the defendant concealed the cause of action or made any misrepresentations about any facts: while he may have subjectively felt that the Rockville Diocese was an entity with a significant amount of power, he does not allege that any relevant entity—the Diocese, the Additional Debtors, or the perpetrator—concealed the cause of action or prevented him from obtaining relevant information bearing on the existence of his claim. His sole argument is that he repressed his memory of the abuse, which he experienced as an adult (as New York law views people over the age of 18).

The case the Claimant cited in support of his theory, *Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir. 1995), cuts against him. It notes that, in "repressed-memory child abuse cases, New York has consistently refused to toll the statute of limitations on the theory that the abuse victim's memory loss constituted insanity, that the abuser was somehow profiting from his own wrongdoing (equitable estoppel), or that the limitations period should begin after the abuse was 'discovered' through psychotherapy." *Id.* at 400 (internal citations omitted). (That case concerns child abuse, but since "victims of child abuse are entitled to special protections in our courts," *id.*, higher standards are applied in such cases. The court in *Overall* held against the plaintiff, a victim of sexual abuse as a minor who argued for equitable tolling of the applicable statute of limitations of her abuse-related claims by 41 years because she repressed her memories of the abuse until she was an adult.)

As for the Claimant's argument that his initial proof of claim form was faulty because it did not provide for the opportunity to participate in the Settlement Trust, even if true (and it seems that the Claimant might have just used the wrong form), this argument is mooted by the Additional Debtors' offer to the Claimant to allow him to participate in the Settlement Trust process.

## IV. CONCLUSION

For the foregoing reasons, the Court **SUSTSAINS** the Objection and **EXPUNGES** claim no. 50007.

**IT IS SO ORDERED.**

Dated:   August 8, 2025
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge